BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION

MDL No. 2741

**INTERESTED PARTY RESPONSE
IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C.
§ 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs Teri Michelle McCall, Peter Johansing, and Vicky Porath[1] ("Plaintiffs") respectfully submit this Interested Party Response supporting, in part, Plaintiffs Hardeman and Giglio's ("Movants") Motion for Transfer of Actions to the Southern District of Illinois Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("Motion to Transfer") (CM/ECF Doc. 1, July 27, 2016).  Like Movants, Plaintiffs assert personal injury and wrongful death claims against Defendant Monsanto Company ("Monsanto") alleging that exposure to Monsanto's Roundup caused the development of non-Hodgkin's lymphoma ("NHL").  Plaintiffs agree that centralization is appropriate for these actions and do not oppose transfer to the Southern District of Illinois.  Additionally, Plaintiffs do not oppose Interested Parties Stevick, Johnson, Sheppard, Ruiz, and Hernandez's proposal to centralize these cases in the District of Hawaii (CM/ECF Doc. 5, July 29, 2016).  That said, Plaintiffs believe these cases should be centralized in the Central District of California before the Honorable Dolly M. Gee.

**FACTUAL BACKGROUND**

Movants' Brief in Support of the Motion to Transfer fairly lays out the factual predicates of these related actions.  These related actions all involve the same core set of facts, i.e., that exposure to Monsanto's Roundup (glyphosate + adjuvant) caused Plaintiffs or their loved ones to

---

[1] Plaintiffs' claims are pending in the Central District of California and Western District of Wisconsin: *McCall v. Monsanto Company*, 2:16-cv-01609-DMG-E (C.D. Cal.), *Johansing v. Monsanto Company*, 2:16-cv-05035-FMO-GJS (C.D. Cal.); and *Porath v. Monsanto Company*, 3:16-cv-00518-wmc (W.D. Wis.).

1

develop NHL. There are, however, a few points that warrant additional discussion, particularly in light of the arguments and documents Monsanto has submitted in its various motions to dismiss, and which Plaintiffs expect Monsanto will raise in its opposition to Movants' motion to transfer.[2]

In a motion to dismiss in the *McCall* case, Monsanto spent a considerable portion of its brief arguing about the merits of whether Roundup is associated with NHL. Specifically, Monsanto attempted to discredit the recent scientific consensus reached by the World Health Organization's International Agency for Research on Cancer ("IARC") that glyphosate is, more likely than not, a human carcinogen and that there is a strong association between glyphosate exposure and NHL. Additionally, Monsanto spent considerable ink citing to and discussing a document that Monsanto claims is the Environmental Protection Agency's ("EPA") "final report evaluating the carcinogenic potential of glyphosate[.]" Motion to Dismiss at 3-5, *McCall v. Monsanto Company*, 16-cv-01609-DMG-E, CM/ECF Doc. 36-1 (C.D. Cal.). Although multiple district courts have already rejected these arguments, Plaintiffs anticipate Monsanto raising them, again, here. *See, e.g.*, *Mendoza v. Monsanto Co.*, No. 116CV00406DADSMS, 2016 WL 3648966, at *3-4 (E.D. Cal. July 8, 2016) (rejecting documents submitted by Monsanto as evidence that glyphosate is not carcinogenic).

First, as discussed in the Movants' brief, it is largely undisputed that IARC is one of the most preeminent cancer-assessment authorities in the United States and the world. Several federal and state laws specifically rely on IARC monograph assessments. For example, under the Toxic Substances Control Act of 1976, as interpreted by the EPA, "[a] chemical is

---

[2] *See Hardeman v. Monsanto Co.*, -- F. Supp. 3d. -- , No. 16-CV-00525VC, 2016 WL 1749680 (N.D. Cal. Apr. 8, 2016); *Giglio v. Monsanto Co.*, No. 15CV2279 BTM(NLS), 2016 WL 1722859 (S.D. Cal. Apr. 29, 2016); *Sheppard v. Monsanto Co.*, No. 16-00043 JMS-RLP, 2016 WL 3629074 (D. Haw. June 29, 2016); *Mendoza v. Monsanto Co.*, No. 116CV00406DADSMS, 2016 WL 3648966 (E.D. Cal. July 8, 2016); *Hernandez v. Monsanto Company*, CV 16-1988-DMG (Ex), Minute Order (C.D. Cal. July 12, 2016).

considered to be a known or potential human carcinogen, for purposes of TSCA section 12(b) export notification, if that chemical is . . . classified as . . . 'probably carcinogenic to humans' (Group 2A) . . . by the World Health Organization International Agency for Research on Cancer (IARC)[.]" 40 C.F.R. § 707.60(2)(c).  Similarly, the U.S. Consumer Product Safety Commission and the Occupational Safety and Health Administration both recognize and accept the authority of IARC in assessing the potential cancer hazard of an agent.  *See* 16 C.F.R. § 1500.135(a)(1)-(3) (describing similarities between IARC and EPA assessments); 29 C.F.R. § 1910.1450(b) (defining carcinogen as any substance identified as such by IARC).  And, in California, by law, any substance listed as a probable carcinogen by IARC is presumed to be a carcinogen by the State of California.  *See* Cal. Lab. Code § 6382(b)(1); *California Chamber of Commerce v. Brown*, 196 Cal. App. 4th 233, 242, 126 Cal. Rptr. 3d 214, 219 (Ct. App. 2011).  Although IARC is not binding on a country, the agency is highly regarded by the United States and California (and Europe) as an authority in identifying cancer risks.  Notably, the Federal Judicial Center ("FJC") specifically lists IARC as one "of the most well-respected and prestigious scientific bodies."  Reference Manual on Scientific Evidence (Third) at 20 (2011).  In discussing the IARC monograph process, the FJC explains:

> IARC, a well-regarded international public health agency, evaluates the human carcinogenicity of various agents. In doing so, IARC obtains all of the relevant evidence, including animal studies as well as any human studies. On the basis of a synthesis and evaluation of that evidence, IARC publishes a monograph containing that evidence and its analysis of the evidence and provides a categorical assessment of the likelihood the agent is carcinogenic.

*Id.* at 564 n.46.  Any attempt to discredit IARC should be viewed with a grain of salt.

Second, Monsanto will likely cite to and quote from a document that was posted to the EPA website on April 2016 and then promptly removed.  The document, which was titled "*Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate*"

3

purported to be a final report by the EPA's Cancer Assessment Review Committee, completed in October 2015. After posting the document on EPA's website, it was immediately retracted by the EPA, disclaiming the report as "not final" and asserting that the posting was "inadvertent." P.J. Huffstutter, EPA takes offline report that says glyphosate not likely carcinogenic, Reuters (May 2, 2016) *available at* http://www.reuters.com/article/us-usa-glyphosate-epa-idUSKCN0XU01K. Notwithstanding, Monsanto has presented the document in various courts claiming that the document is evidence that glyphosate is not carcinogenic. This document, however, was expressly disavowed by the EPA, which has indicated that it intends to finalize its assessment of glyphosate, including a scientific advisory board and meeting, at some point in 2017. Should Monsanto attempt to present the document here, as it has attempted to do in the *McCall* matter, it should not only be viewed with a grain of salt, it should be entirely disregarded.

## ARGUMENT

### I. Centralization under 28 U.S.C. § 1407 Makes Sense

Transfer is appropriate where: (A) "civil actions involving one or more common questions of fact are pending in different districts"; (B) transfer and coordination "will promote the just and efficient conduct of such actions"; and (C) transfer and coordination will serve "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). All three factors governing transfer under 28 U.S.C. § 1407 support centralization here.

There are two dozen cases involving nearly identical claims involving the same product, injury, and defendant.[3] These cases are pending in fifteen judicial districts and are being

---

[3] As of the date of this filing, there appear to now be 24 cases nationwide—three substantially-related cases have been filed since the initial petition was lodged with the Panel: *Turner v. Monsanto Company*, 2:16-cv-00836-RJS (D. Utah, July 28, 2016); *Ricci v. Monsanto Company*, 1:16-cv-04583-JBS-AMD (D.N.J., July 29, 2016); and *Perkins v. Monsanto Company*, 8:16-cv-01410 (C.D. Cal., July 29, 2016).

4

litigated by nearly a dozen different law firms. Each case involves common issues of fact and law as demonstrated by Monsanto filing nearly identical motions to dismiss asserting the same affirmative defenses (preemption and Comment J & K of Restatement (Second) of Torts) in each case. Indeed, Monsanto has also been filing the same motion to bifurcate discovery in each case, asking each court to limit discovery and require a full *Daubert* hearing on the single issue of general causation, i.e., whether Roundup can cause NHL. There is going to be significant discovery and litigation involved that applies equally to all cases. Centralizing that effort in a single court makes sense, especially since coordination will significantly reduce costs to both Plaintiffs and Monsanto and ensure needless duplication of depositions and discovery does not burden witnesses or courts.

## II. Voluntary Coordination Is Not an Option Since Monsanto Has Continually Refused to Work with Plaintiffs' Counsel

Should Monsanto argue that voluntary coordination is preferable to coordination under 28 U.S.C. § 1407, Monsanto's actions in discovery thus far tell a different story. Monsanto has systematically refused to voluntary coordinate discovery across the different federal actions. This is illustrated in Monsanto's conduct in the *McCall* case.

The *McCall* matter was filed on March 9, 2016. After Monsanto entered an appearance and objected to the case being assigned to the Honorable Dolly M. Gee, Plaintiff McCall asked Monsanto whether it would agree to participate in Federal Rule of Civil Procedure 26(f) conference to begin negotiations about protective orders, electronically stored information ("ESI") protocols, and other preliminary discovery issues. *See* Exh. A, Letter from R. Brent Wisner to Richard A. Clark (Mar. 14, 2016). Monsanto stated that it would not discuss discovery matters until *after* the court ruled on a motion to dismiss Monsanto planned to file. Exh. B, Letter from Eric G. Lasker to R. Brent Wisner (Mar. 18, 2016). Notably, the same

5

motion to dismiss had already been denied in *Hardeman v. Monsanto Co.*, -- F. Supp. 3d. -- , No. 16-CV-00525VC, 2016 WL 1749680 (N.D. Cal. Apr. 8, 2016).  This prompted Plaintiff McCall to file a motion to compel Monsanto to participate in a Rule 26(f) conference and allow discovery.  Plaintiff McCall noted that discovery was commencing in the *Hardeman* matter and Plaintiffs' counsel wanted to participate in the negotiations to allow coordination.  Monsanto, in turn, filed a motion to stay.  The Court, however, denied both motions.  *See* Exh. C, *McCall v. Monsanto Company*, CV 16-1609-DMG (Ex)**,** Civil Minutes (C.D. Cal, Apr. 29, 2016).  The court explained that "motions to stay of the sort sought here are rarely sought and almost never granted" and that "the Court expects that the parties' counsel will exercise sound professional judgment to refrain from making burdensome or duplicative discovery requests, especially in a case such as this where discovery between the parties has already begun in the context of other related cases[.]" *Id.* at 3.  Regarding Plaintiff McCall's motion to compel, the court held "the parties are *not required* to participate in a Rule 26(f) conference, although they may *voluntarily* do so in order to expedite the proceedings." *Id.* at 4.

Notwithstanding the Court's admonition, Monsanto refused to allow Plaintiff McCall to participate in any ongoing discovery.  For example, a corporate structure deposition was taken of Monsanto and Plaintiff McCall was not permitted to attend.  Protective orders and ESI protocols have been negotiated in the *Hardeman* and *Stevick* cases, and Plaintiffs' counsel has not been consulted or allowed to participate in those negotiations.   Indeed, Plaintiffs' counsel was forced to send, prior to the court's ruling on the motions regarding discovery, a letter explaining:

> Since we have not been consulted on any discovery issues in this or any other Roundup case, please be advised that any discovery protocols you negotiate with other plaintiffs' counsel in other Roundup cases will not govern here. To be sure, we are willing to cooperate with Monsanto in developing discovery and search protocols. But, we have specific ideas about what is appropriate in an ESI protocol, protective order, search protocol, etc., and we will not be limited to

> whatever agreements you come to with other attorneys in other cases without our input. In other words, we will not let you limit what we will attempt to do here based on negotiations we are not part of. The fact that some other plaintiffs' counsel may have agreed to a specific search or discovery protocol in another case should not limit the discovery we intend to conduct here, particularly since you negotiated those protocols without involving us and, in fact, have specifically refused to engage in such negotiations as part of a Rule 26(f) conference.

Exh. D, Letter from R. Brent Wisner to Richard A. Clark (Apr. 20, 2016).  As of the date of this filing, despite repeated requests, Monsanto has refused to coordinate discovery.

### III.  Centralization and Pretrial Coordination in the Central District of California Is Appropriate

The selection of an appropriate transferee court is based on a balancing test of several factors, no one of which is dispositive.  *See* Manual For Complex Litigation (Fourth) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977)).  These factors include "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges."  *Id*.  While Plaintiffs do not oppose transfer to the Southern District of Illinois, as proposed by the Movants, or the District of Hawaii as proposed by Interested Parties Stevick, Johnson, Sheppard, Ruiz, and Hernandez, Plaintiffs submit that coordination in the Central District of California before the Honorable Dolly M. Gee is the most logical and convenient forum.

#### A.  The Central District of California Has the First-Filed and Largest Number of Roundup Cancer Cases

The Central District of California has the oldest and largest number of Roundup cancer cases.  There are currently five (5) cases pending before judges in the Central District of California, the oldest of which was filed in 2015.  The first Roundup cancer case filed in federal court was *Rubio v. Monsanto Company*, 2:15-cv-07426-DMG-E (C.D. Cal.), filed on September

22, 2015.[4]  Since *Rubio*, five additional cases have been filed in the Central District of California[5] and the court, presided over by the Honorable Dolly M. Gee, has issued several preliminary discovery orders and ruled on a motion to remand and motion to dismiss. Thus, "[t]he Central District of California is an appropriate transferee forum because the first-filed and most procedurally advanced actions are pending there." *In re Land Rover LR3 Tire Wear Products Liab. Litig.*, 598 F. Supp. 2d 1384,  (Feb. 23, 2009).

    **B.    The Central District of California Has the Infrastructure and Available Judge to Efficiently Manage this MDL**

The Central District of California is uniquely qualified to handle and manage this MDL. In 2013, the Central District of California had the second highest number of civil court filings and the highest number of civil court terminations.[6]  The median time from filing to disposition for all civil cases was only 5.9 months.[7]  *See In re Classicstar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007) ("[T]he district's general docket conditions permit us to make the Section 1407 assignment knowing that the court has the resources available to manage this litigation.").  In addition, the number of active MDLs in the Central District of California is relatively lower than in years past and there is no active MDL before Judge Gee.[8]  Thus, the Central District has both the infrastructure to support the coordination of these related Roundup cancer actions and a potential judge with familiarity and availability.

---

[4] The matter was ultimately severed and then transferred for proper venue to the Eastern District of California and appears on the Schedule of Actions as *Mendoza v. Monsanto Company*, 1:16-cv-00406-DAD-SMS (E.D. Cal.).
[5] An additional case was removed to the Central District of California from state court by Monsanto, but it was subsequently remanded due to a lack of subject matter jurisdiction.  *See Huerta v. Monsanto Co.*, No. EDCV16153DMGEX, 2016 WL 1532230, at *1-3 (C.D. Cal. Apr. 15, 2016).
[6] *See* Administrative Office of the United States Courts, *2013 Annual Report of the Director:Judicial Business of the United States Courts,*  Statistical Tables C-3 and C-4A (2014), *available at* http://www.uscourts.gov/ Statistics/JudicialBusiness/2013/statistical-tables-us-district-courts-civil.aspx.
[7] *Id.* at Table C-5.
[8] United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report-Distribution of Pending MDL Dockets by District* (July 15, 2016), *available at* http://www.jpml.uscourts.gov/sites/jpml/files/ Pending_MDL_Dockets_By_District-July-15-2016.pdf.

C. **The Central District of California Is an Accessible and Convenient Forum for an MDL that Has No Natural Geographic Nucleus**

The Central District of California is an accessible and convenient forum for all parties and witnesses. Plaintiffs in the currently pending actions—and in future cases that will be filed—are geographically dispersed across the country, making no single district *most* convenient to all plaintiffs. But the most cases currently on file—indeed, the most advanced cases—currently reside in the Central District of California.

Practically, the Central District of California, in Los Angeles, is one of the most convenient venues in the country. Los Angeles has three major airports (Los Angeles International Airport (LAX), LA/Ontario International Airport, and John Wayne Airport) and three smaller airports (Bob Hope Airport, Palm Springs International Airport, and Long Beach Airport). LAX is a hub for United Airlines and American Airlines and handles more "origin and destination" (*i.e.,* not connecting) passengers than any other airport in the world. Los Angeles is certainly one of the easiest cities to travel to, from anywhere in the United States. Coordination of proceedings in a major metropolitan venue such as the Central District of California allows for superior access and convenience.

## CONCLUSION

Plaintiffs support and join the Motion to Transfer these similar actions to the Southern District of Illinois, but also believe the Court should consider, in the alternative, centralization in the Central District of California.

Dated: July 29, 2016          **BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

　　　　　　　　　　　　　　　　　　 /s/ R. Brent Wisner
　　　　　　　　　　　　　　　　　R. Brent Wisner
　　　　　　　　　　　　　　　　　rbwisner@baumhedlundlaw.com
　　　　　　　　　　　　　　　　　Michael L. Baum, Esq.
　　　　　　　　　　　　　　　　　mbaum@baumhedlundlaw.com
　　　　　　　　　　　　　　　　　12100 Wilshire Blvd., Suite 950

Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

**KENNEDY & MADONNA, LLP**

Robert F. Kennedy, Jr., Esq.
rkennedy@kennedymadonna.com
Kevin J. Madonna, Esq.
kmadonna@kennedymadonna.com
48 Dewitt Mills Road
Hurley, New York 12443
Telephone:  (845) 481-2622
Facsimile:  (845) 230-3111

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

      I, Brent Wisner, hereby certify that on July 29, 2016, a copy of the foregoing INTERESTED PARTY RESPONSE IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS was electronically transmitted to the Judicial Panel on Multidistrict Litigation using the CM/ECF system. The Panel's ECF system will automatically serve copies of the documents on counsel of record and all registered CM/ECF users.

/s/ R. Brent Wisner
R. Brent Wisner
rbwisner@baumhedlundlaw.com
Michael L. Baum
mbaum@baumhedlundlaw.com
BAUM HEDLUND ARISTEI & GOLDMAN, PC
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Phone: (310) 207-3233