BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ROUNDUP § | | MDL - 2741 |
| PRODUCTS LIABILITY § | | |
| LITIGATION § | | |

**MOVANTS' REPLY BRIEF IN SUPPORT OF TRANSFER, COORDINATION, AND/OR CONSOLIDTION PURSUANT TO 28 U.S.C. § 1407**

For the reasons set forth below and in the original motion, the motion for transfer should be granted and all actions transferred to the Southern District of Illinois before the Honorable David R. Herndon, Nancy J. Rosenstengel, or alternatively, Staci M. Yandle.

**I.      Introduction**

Monsanto attempts to avoid centralization by advancing the following three arguments, each of which fails:

1. Monsanto argues that centralization is unnecessary because the informal coordination of discovery has been a success. This argument is not accurate.

2. Monsanto argues that centralization is inappropriate because the two Northern District of California cases are too far advanced. This argument is not accurate and is misleading.

3. Monsanto argues that, even though the "later-filed cases contain no novel allegations that would require substantively different discovery as to the issue of general causation," (Opp. at 7), centralization is still inappropriate because specific causation will vary from Plaintiff to Plaintiff. The Panel has heard, and rejected, this argument numerous times under circumstances analogous to the case at bar.

Plaintiffs discuss each argument in turn. Because common issues among Plaintiffs dominate the litigation, as Monsanto tacitly acknowledges in its Response, and formal coordination will promote the just and efficient conduct of the litigation while

serving the convenience of all parties and witnesses, the Panel should centralize the cases pursuant to 28 U.S.C. § 1407.

II. <u>Argument</u>

   A. **<u>Any Limited Successes of Informal Coordination Between Two Law Firms Is Irrelevant to Whether Informal Coordination Is Viable Among the Eleven Different Law Firms Litigating these Cases in Eighteen Federal Districts.</u>**

Monsanto's principal argument against centralization — that voluntary coordination has been successful thus far — is misleading and irrelevant. Monsanto highlights what it claims are successful efforts to coordinate the actions informally; coordinating discovery in three cases, involving two law firms and two courts. Even if informal coordination were progressing smoothly in these matters, which it is not[1], the limited size of these informally coordinated proceedings has no bearing upon the parties' ability to informally coordinate *the entirety* of the litigation. Whatever purported success Monsanto's informal coordination efforts have wrought to date is simply inapplicable to the issues before the Panel and irrelevant to the ability of the parties to efficiently coordinate *all* pending and future-filed actions.

Monsanto's argument that informal coordination is already achieving efficiencies ignores the size of this litigation, which is national in scope, and growing. Although the Panel has noted that informal coordination is possible when litigation involves limited districts and counsel, the same is not true when the litigation is national in scope and involves multiple distinct plaintiffs' counsel. *See In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014) (effective informal coordination

---

[1] For example, in the two related cases situated in the Northern District of California (*Hardeman* & *Stevick*), the Court entered two different Protective Orders because all Parties could not agree on the same terms.

unlikely with actions pending in 22 districts); *In re Mirena IUD Prods. Liab. Litig.*, 938 F. Supp. 2d 1355, 1357 (J.P.M.L. 2013) (centralizing actions pending in 17 districts); *In re Pradaxa (dabigatran etexilate) Prod. Liab. Litig.*, 883 F. Supp. 2d 1355 (J.P.M.L. 2012) (centralizing actions pending in 23 districts). Here, this litigation already involves eighteen (18) federal districts and is steadily growing. Centralization is warranted.

B. **Informal Coordination Is Impractical And Has Not Been Successful.**

Monsanto's idea of informal coordination benefits no one except Monsanto. Monsanto is willing to coordinate when it is tactically advantageous (i.e., limiting all Plaintiffs to the same general causation discovery), but it is unwilling to do so when coordination does not bolster its litigation position. As a recent example, undersigned counsel flew to St. Louis last week to begin the process of duplicating much of the same ESI discovery that was the subject of an earlier deposition in another case. Although two depositions related to ESI and corporate structure already took place on May 24, 2016, both conducted by the Miller Firm (counsel for federal *Stevick* case) in a state action, the depositions were not cross-noticed in any other case and no other counsel was invited to participate. Additionally, Monsanto informed undersigned counsel it would object to federal Plaintiff *Hardeman* cross-noticing the August 24, 2016 marketing 30(b)(6) noticed in a state action, virtually guaranteeing duplicative discovery will take place in the future. This is the *opposite* of voluntary coordination; it is taking advantage of the multiplicity of litigation[2].

---

[2] Yet another example is the *Sanders* case, wherein Monsanto initially demanded counsel to agree to four procedural orders entered in *Hardeman* in exchange for access to the *Hardeman* general causation discovery. First, Plaintiffs, other than those in *Hardeman*, may be entitled to more or "different" rather than just the "same" materials as those produced in *Hardeman*. As such, using *Hardeman* as the baseline could deprive other

3

The "Baum Hedlund Response" further details Monsanto's refusal to informally coordinate discovery unless it is advantageous to its position.  Int. Party Resp. in Supp. of Mot. for Transfer, at 5–7, ECF No. 10. These are but a few examples of Monsanto's version of "informal coordination," which is nothing more than a tactical ploy. Such a process is inefficient, unfair to other plaintiffs around the country who are not participating but are then expected to accept the results, and ripe for abuse. In sum, Monsanto's contention that it can or will coordinate with Plaintiffs' counsel across the entire litigation stands in sharp contrast to its actions thus far.

More importantly, informal coordination provides no efficiencies.  Monsanto argues that the same general-causation discovery is common in every case (Opp. at 7), yet omits any explanation as to why disputes over this common inquiry, involving the same documents and witnesses, should be heard by the eighteen (18) federal courts with pending Roundup-NHL cases.  Absent formal coordination, inefficiency and overlap is guaranteed. *See In re: Cooper Tire & Rubber Co. Tires Prods. Liab. Litig*., 2001 U.S. Dist. LEXIS 2099, at 3 (J.P.M.L. Feb. 23, 2001) (centralization under Section 1407 granted where "[m]otion practice and relevant discovery will overlap substantially in each action."); *In re: Cuisinart Food Processor Antitrust Litig*., 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").  Instead, this undisputedly common issue of fact should be decided by one court, which will save the parties and other courts considerable resources, prevent overlap, and avoid potential

---

plaintiffs from obtaining relevant documents.  Further, without centralization, Monsanto could alter or cease its "voluntary" coordination at any time.

conflicting rulings. *See In re Transocean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976) ("[T]he likelihood of motions for partial dismissal and summary judgment in all three actions grounded at least in part on [a common issue] makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort.").

### C. The Litigation is Not Procedurally Advanced.

Monsanto argues that centralization should be denied on the rationale that the actions are "at different procedural stages," suggesting that a few federal cases are too advanced to centralize the litigation. Opp. at 9. This argument is deceptive. Only two federal courts have commenced discovery: *Hardeman/Stevick* and *Giglio*. Monsanto produced documents in the federal *Hardeman* matter on June 30, 2016—only 2 months ago, and only produced its first custodial files on August 4, 2016, approximately three weeks ago. Discovery commenced in *Gigio* just seven (7) days ago. No depositions have taken place in any federal action.

Even though discovery has not reached an advanced stage in *any* Roundup-NHL case, advanced procedural posture does not undermine the benefits of centralization. The Panel has previously held that an advanced stage of litigation does not negate the benefits of centralization and that the transferee judge "is in the best position to incorporate those actions in a manner that accommodates the progress already made." *In re Mirena IUD Prods. Liab. Litig.*, 938 F. Supp. 2d 1355, 1357 (J.P.M.L. 2013). Indeed, the Panel routinely centralizes cases where actions are far more advanced than they are in the instant litigation and Monsanto presents no credible argument for declining to do so

5

here.[3] *See e.g., In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 148 F. Supp. 3d 1383, 1385 (J.P.M.L. 2015) ("...to the extent that the somewhat more advanced status of the two actions warrants their expedited treatment, the transferee judge is free to handle them accordingly.")

### D. Centralization is Proper Because Common Issues And Shared Allegations Predominate.

All actions undisputedly share common questions as to causation, background science, and regulatory issues. On the basis of these commonalities alone, the Panel has recognized the need for centralization. Specifically, centralization is warranted where all actions share common issues of fact as to general causation, background science, and common regulatory issues. *In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015). When these commonalities are present, "the existence of individualized factual issues does not negate the efficiencies gained by centralization." *Id.* Monsanto does not and cannot dispute that the actions share these three commonalities. *See* Opp. at 7. Monsanto also acknowledges that causation discovery is relevant to *all* Plaintiffs—claiming that it is the threshold question in every action. Accordingly, even Monsanto's arguments support centralization.

Additionally, all actions share questions of fact as to liability. Monsanto concedes, and the record reflects, that the actions share common allegations and similar causes of action. Opp. at 7. Documents pertaining to Monsanto's sales and marketing practices, post-injury conduct, and/or Monsanto's knowledge of Roundup/glyphosate

---

[3] Monsanto relies primarily on *In re Cymbalta (No. II)*, 138 F. Supp. 3d at 1376–77, to support its argument against centralization. However, that case involved actions that were considerably more advanced with four cases having gone to trial.

exposure causing NHL are likely to contain discoverable evidence in all Roundup cases because they are relevant to lack of adequate warnings, causation, and/or punitive damages. *See In re: Levaquin Products Liability Litigation*, MDL No. 08-md-1943 (D. Minn.), Dkt. 23326; *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1249 (10th Cir. 2000).

Monsanto's argument that individual factual issues will predominate is not new. At least three district courts (applying a similar standard to 28 U.S.C. § 1407[4]) have heard, and denied, this same argument when Monsanto filed written oppositions to "relating" cases in the Central and Northern Districts of California and the District of Hawaii. Monsanto argued, as it does here, that NHL subtypes are distinct injuries, and that the cases involve different Roundup formulations, product uses, and exposures. Thus, three courts have considered and rejected substantively identical arguments to the ones Monsanto presents to the Panel and ordered that Roundup-NHL cases are related pursuant to substantively identical standards to Section 1407 centralization. *See, e.g.*, *Sheppard v. Monsanto Co.*, 1:16-cv-00075-JMS-RLP, ECF. No. 21 (D. Haw 2016) ("This case involves the same or substantially identical subject matter, events, and/or questions of law ... It serves the interests of judicial economy and court administration for

---

[4] Compare 28 U.S.C. § 1407 with Northern District of California Local Rule 3-12(a) ("an action is related to another when: (1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."); District of Hawaii Local Rule 40.2 (relating cases "Whenever it shall appear that civil actions or proceedings involve the same or substantially identical transactions, happenings, or events, or the same or substantially the same parties or property or subject matter, or the same or substantially identical questions of law, or for any other reason said cases could be more expeditiously handled"); Central District of California Local Rule 83-1.3.1 (relating cases that "(a) arise from the same or a closely related transaction, happening, or event; (b) call for determination of the same or substantially related or similar questions of law and fact; or (c) for other reasons would entail substantial duplication of labor if heard by different judges.")

these cases to be adjudicated by the same district judge ..."); *Hardeman v. Monsanto Co.*, 3:16-cv-00525-VC, ECF No. 60 (5/20/2016) (rejecting Monsanto's arguments as to the differences in NHL subtypes, different products, and different exposure periods and ordering two Roundup-NHL cases administratively related); *McCall v. Monsanto* Co., 2:16-cv-01609-DMG-E, ECF No. 13 (Roundup-NHL cases "[c]all for determination of the same or substantially related or similar questions of law and fact" and "... would entail substantial duplication of labor if heard by different judges."). Although undersigned counsel does not suggest that these opinions supplant the judgment of the Panel, they are instructive. Plaintiff will address these arguments in turn.

### i. The possibility of different NHL subtypes does not support denial.

Monsanto's argument that different subtypes of NHL constitute different injuries, and thus uncommon issues of fact, is a red herring and does not support denial of centralization. As a preliminary matter, the Panel has repeatedly held that distinct injuries and plaintiff risk profiles are not impediments to centralization where common issues of fact predominate as they do here. *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014); *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, 717 F.Supp.2d 1376, 1378 (J.P.M.L. 2010). More importantly, NHL is assessed as a singular injury by scientists, researchers, and oncologists the world over, including in the retracted EPA report Monsanto relies heavily upon.[5] Additionally, NHL subtypes are not static but fluid classifications and can transform from one subtype into

---

[5] *See* Cancer Assessment Review Committee, heath Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate*, at 70 (Retracted Report, October 1, 2015), http://src.bna.com/eAi. ("the epidemiological evidence at this time is inconclusive for a causal or clear associative relationship between glyphosate exposure and NHL.")

8

another. [6]  Accordingly, they are not "distinct" injuries as Monsanto claims but more often than not, overlap.  Opp. at 4.

### ii. Different Roundup formulations do not support denial

Monsanto's argument that different Roundup formulations create disparate questions of fact is deceptive and merits little weight.[7]  First, this Panel has previously ordered centralization in litigations involving different products and different manufacturers.  *See In re Fluoroquinolone*, 122 F. Supp. 3d at 1379; *In re Androgel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014); *In re Incretin Mimetics Prods. Liab. Litig.*, 968 F. Supp. 2d 1345 (J.P.M.L. 2013). In the instant actions, the argument for centralization is even more compelling because: (1) Monsanto manufactures all Roundup products;  and (2) all Roundup formulations contain the same active and deadly ingredient, glyphosate, which is subject to the same regulatory determinations regardless of formulation.  Moreover, Monsanto even acknowledges that the same general causation materials are applicable to *all* claims, regardless of product.  Opp. at 7-8.

The assertion that different Roundup products present specific factual and causation inquiries ignores the common regulatory treatment of all glyphosate-containing products. Of the thirty-two (32) currently registered Roundup formulations, twenty-six (26) are conditionally registered under the Federal Insecticide and Rodenticide Act ("FIFRA").[8]  This means that for these twenty-six products, the EPA has determined that "(i) the pesticide and proposed use are *identical or substantially similar* to any currently

---

[6] See Casulo, Carla, W. Richard Burack, and Jonathan W. Friedberg. "Transformed follicular non-Hodgkin lymphoma." *Blood* 125.1 (2015): 40-47.

[7] Additionally, this argument ignores that Plaintiffs may have used multiple Roundup® products.

[8] EPA Pesticide Product Label System, https://iaspub.epa.gov/apex/pesticides/f?p=PPLS:5:::NO:::

registered pesticide and use thereof, or differ *only in ways that would not significantly increase the risk of unreasonably adverse effects on the environment.*" [9] 7 U.S.C. § 136a(c)(7)(A) (emphasis added). Thus, the uses, risks, and warnings that accompany the vast majority of the products at issue are so similar as to negate any minor differences.

### iii. Uncommon issues of fact do not support denial.

Any uncommon issues of fact do not negate the need or benefits of centralization. Section 1407 does not require "complete identity or even a majority of common factual issues as a prerequisite to centralization." *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011). It is well established that "[a]lmost all personal injury litigation involves questions of causation that are plaintiff-specific. Those differences are not an impediment to centralization when common questions of fact are multiple and complex." *In re Fluoroquinolone*, 122 F. Supp. 3d at 1380-1381. Accordingly, "[o]nce discovery and other pretrial proceedings related to the common issues have been completed, the transferee judge may suggest Section 1407 remand of actions to their transferor courts for more individual discovery and trial, if necessary." *Id*. Thus, because all actions share a multitude of common, threshold, factual issues, centralization is warranted.

## III.   CONCLUSION

Centralization is appropriate in the Southern District of Illinois.

---

[9] The term ''unreasonable adverse effects on the environment'' means (1) any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide, or (2) a human dietary risk from residues that result from a use of a pesticide in or on any food inconsistent with the standard under section 408 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 346a). 7. U.S.C. § 136(bb)

Dated this 25th of August, 2016                Respectfully submitted,

                                               */s/ Aimee H. Wagstaff*
                                               **ANDRUS WAGSTAFF, P.C.**
                                               Aimee H. Wagstaff, CO. Bar No. 36819
                                               7171 W. Alaska Drive
                                               Lakewood, CO 80226
                                               Fax: (303) 376-6361
                                               aimee.wagstaff@andruswagstaff.com

*Andrus Wagstaff, P.C. is counsel of record for Movants Edwin Hardeman and Emmanuel Richard Giglio as well as plaintiffs Tonia Turner, Linda Jeanne Ricci, Goldie Perkins and Michael Tamburello.*