```
                UNITED STATES JUDICIAL PANEL

                 on MULTIDISTRICT LITIGATION
```

---------------------------------------------X

IN RE: ROUNDUP PRODUCTS

**LIABILITY LITIGATION**

---------------------------------------------X    MDL No.2741

Whereupon, a hearing in the above-entitled matter commenced on September 29, 2016 at the E. Barrett Prettyman U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C., Courtroom 20, pursuant to notice,

BEFORE:

        JUDGE SARAH S. VANCE, Chair

        JUDGE MARJORIE O. RENDELL, Member

        JUDGE CHARLES R. BREYER, Member

        JUDGE LEWIS A. KAPLAN, Member

        JUDGE ELLEN SEGAL HUVELLE, Member

        JUDGE R. DAVID PROCTOR, Member

        JUDGE CATHERINE D. PERRY, Member

Court Reporter:   Lisa Walker Griffith, RPR
                  U.S. District Courthouse
                  Room 6507
                  Washington, D.C.  20001
                  (202) 354-3247

P R O C E E D I N G S

1
2   **JUDGE VANCE:** 2741, Ms. Wagstaff, Roundup Products Liability Litigation.

**MS. WAGSTAFF:** Yes, good morning, Your Honors. It's an honor to be here before you guys. And I'd like to start off by telling Judge Perry I was born and raised in Kansas City, so Kansas City, Kansas, and I've spent my entire life explaining the differences between Kansas City, Kansas and Missouri, so I understand that very well.

Since we filed our motion for consolidation on July 27th, we have almost doubled in case numbers. We're now up to 37 cases in 21 different districts. And the reason why this case is ripe for consolidation, it's the same product, it's the same defendant, it's the same type of exposure, it's the same injury, and it's the same active ingredient within that product.

And the reason why we are asking for the Southern District of Illinois, which I recognize several other groups of the torts have asked for that district is there's actually a logical reason in this case why we would ask for the Southern District of Illinois.

One --

**JUDGE HUVELLE:** We can't send everything to the Southern District of Illinois.

**MS. WAGSTAFF:** I agree that --

```
 1              JUDGE PROCTOR:  Has the Southern District of
 2   Illinois become the new Northern District of California?
 3              MS. WAGSTAFF:  That may be true, Your Honor.
 4              JUDGE HUVELLE:  They think there's a beach there.
 5              MS. WAGSTAFF:  There's no beach there.  But the
 6   reason why we asked for it to go there is that's where all
 7   the activity happened, that's where the main headquarters of
 8   Monsanto is.  It's not in the Southern District of Illinois,
 9   I understand that, it's in Missouri.  But as you saw in their
10   papers, Monsanto has said that they're not willing to waive
11   *Lexicon*.  And we have no federal --
12              JUDGE PERRY:  Do you know if the Bayer merger is
13   going to make any difference to this?
14              MS. WAGSTAFF:  Your Honor, I'm not sure.  That may
15   be a better question left --
16              JUDGE PERRY:  For the defense counsel.
17              MS. WAGSTAFF:  Yes.  But we believe that the
18   corporate defendants are there.  The limited discovery, that
19   has happened, the depositions have taken place in St. Louis,
20   defense counsel --
21              JUDGE VANCE:  I was going to ask you about that
22   discovery, while you're on that subject.  Monsanto argues
23   that a significant amount of general causation discovery has
24   already been done, and the rest is set to conclude in two
25   cases in the next four -- or less than four months.  I mean,
```

1  how do you -- do you dispute that?
2          MS. WAGSTAFF:  Yes, Your Honor.  I actually do
3  dispute that.  The first documents were just produced in
4  June, which -- June 30th, so the last day of June.  We've
5  taken no federal depositions.  They have produced a limited
6  portion of five custodial files.  And we have an agreement
7  with Monsanto's counsel that when a custodial file is
8  complete, we will oversee the certification of completion,
9  and we have received no such certification of completion.
10         And like I said --
11         JUDGE BREYER:  So you're in California, in the
12 Northern District, right?
13         MS. WAGSTAFF:  Yes, sir.
14         JUDGE BREYER:  It's not moving along fast enough
15 there?  You've encountered difficulties in the Northern
16 District of California which you think if it went to Illinois
17 or you wouldn't encounter?
18         MS. WAGSTAFF:  Well, no, Your Honor, we're in front
19 of Judge Chhabria, who is a very experienced jurist and a
20 great judge, and the Northern District of California is a
21 very experienced MDL district.  We believe that if the cases
22 are sent there, there's only two cases pending there right
23 now before two law firms, and we believe that if the cases
24 are sent there -- I'm sorry.  There are two plaintiffs' law
25 firms participating in the Northern District of California

1  and only one defendant.  And we believe if the cases are sent
2  there, then we will have to recreate a lot of the work and
3  basically start afresh.  And when you do that, I think that
4  you'll need to look at where is the most logical place to
5  send the cases and where is the most fair place to send the
6  cases, and we believe that's in the Southern District because
7  Monsanto is within 15 to 20 miles of the courthouse.
8             JUDGE VANCE:  All right.  Thank you, ma'am.
9             Next up, Ms. Greenwald.
10            MS. GREENWALD:  Good morning, Your Honors.  I'd
11  like to address the third component of 1407, which is the
12  transfer would promote just and efficient conduct of these
13  cases.
14            And the reason for that is, right now, there have
15  already been -- I'm going to start with efficiency.  There
16  have been five federal district courts that have had to deal
17  with defendant's motion to dismiss on preemption.  They've
18  all ruled, and they have all denied the motion, but there are
19  others still spending.  And those other districts have stayed
20  those pending Your Honors' decisions today.
21            And it doesn't make any sense for dozens and dozens
22  of districts around the country to have to wrestle with these
23  legal issues over and over again.  And without
24  centralization, it would be the same issue on discovery
25  orders --

| | |
|---|---|
| 1 | JUDGE KAPLAN:  Where do you think it should go? |
| 2 | MS. GREENWALD:  Well, Your Honor, we would propose |
| 3 | the Central District of California.  And before I get to why, |
| 4 | I'd like to say that we really are not opposed to any of the |
| 5 | districts which our plaintiffs' counsel are recommending |
| 6 | today.  Roundup is ubiquitous in the United States, around |
| 7 | the world actually.  And so there's not necessarily a place |
| 8 | where this belongs, but as Ms. Wagstaff just said, Monsanto's |
| 9 | made it clear it's not going to waive *Lexicon*.  And they are |
| 10 | the most amount of plaintiffs filed right now. |
| 11 | JUDGE VANCE:  You said that it will not?  I didn't |
| 12 | hear what you said. |
| 13 | MS. GREENWALD:  Monsanto has represented in its |
| 14 | papers that it will not waive *Lexicon*.  So therefore, we are |
| 15 | left with where are the most amount of plaintiffs presently |
| 16 | sitting.  And that happens to be the Central District of |
| 17 | California before Judge Gee.  There are five or six |
| 18 | plaintiffs there.  We're not exactly sure, I'm sorry.  There |
| 19 | may be two plaintiffs in one case, so I believe there are -- |
| 20 | JUDGE BREYER:  But if it goes anywhere in |
| 21 | California, it can be easily dealt with with the judges in |
| 22 | California, right? |
| 23 | MS. GREENWALD:  Right.  That's true, Your Honor. |
| 24 | And if I can just address for a moment -- |
| 25 | JUDGE BREYER:  *Lexicon* doesn't really present a |

1 problem in California for conflicting --
2          MS. GREENWALD:  Right.  So the issue with the
3 Northern District of California is, as Your Honors may know,
4 that judge, Judge Chhabria, has bifurcated the general, the
5 causation going first.  And the other plaintiffs have had no
6 opportunity to engage in motion practice on that issue.  We
7 have in other districts.  And with all due respect to
8 everyone, we took a very different approach on why
9 bifurcation wasn't appropriate in this kind of case.  And we
10 believe that this case should really go to a judge that will
11 look at this issue anew.
12          JUDGE VANCE:  All right.  Thank you.
13          JUDGE BREYER:  You don't like the ruling of Judge
14 Chhabria.
15          MS. GREENWALD:  I don't.  I think it's
16 fundamentally unfair, actually, for us not to have been able
17 to participate.
18          JUDGE BREYER:  I promise not to discuss it.
19          MS. GREENWALD:  No, no, no, no.
20          JUDGE VANCE:  All right.  Thank you, ma'am.
21          MS. GREENWALD:  Thank you, Your Honors.
22          JUDGE VANCE:  Mr. Wisner.
23          MR. WISNER:  Good morning, Your Honors.  I'm just
24 going to follow up on what Ms. Greenwald was just discussing,
25 and that is simply the fact that I have a case pending in the

```
 1   Central District of California, it's out in March.  And I
 2   have been shut out of any discovery negotiations, all ESI
 3   particles.  And I've actually asked Monsanto to participate
 4   in that coordination in the Northern District of California.
 5   They said no.  I filed a motion to compel forcing them to
 6   cooperate with me, they opposed.  And the judge said, I can't
 7   force them to play nice, but I hope they do.
 8               JUDGE RENDELL:  That is in the Northern District?
 9               MR. WISNER:  That is my Central District of
10   California.
11               JUDGE RENDELL:  Central District, okay.
12               MR. WISNER:  We are seeking centralization within
13   the Central District of California.  The logical reason, in
14   my view, for that is because all of the named plaintiffs'
15   firms who are litigating this case have a case pending there.
16   So they all have a voice in how that case gets prosecuted.
17               What's happening up in the Northern District of
18   California, putting aside the merits of Judge Chhabria's
19   rulings, we haven't had a chance to participate.  And because
20   of that, I recently actually entered an appearance in one of
21   those cases as local counsel, but I haven't had a chance to
22   meaningfully participate in any of that work.  So that's why
23   we support centralization in the Central District of
24   California.
25               JUDGE VANCE:  Thank you.
```

1            Next up, Mr. Miller.
2            MR. MILLER:  Good morning.  I represent Shepherds,
3  they have a trial date in Honolulu, so when one looks at the
4  Monsanto briefs and one looks at the analysis and the
5  importance of the rulings that you people have done before,
6  Hawaii, Honolulu, is the place to put this, and I --
7            JUDGE VANCE:  Where is Hawaii central to other than
8  the northern Pacific Ocean?
9            MR. MILLER:  I'm sorry, Your Honor, I didn't hear.
10           JUDGE VANCE:  I said where is Hawaii central to
11  other than the northern Pacific Ocean?
12           MR. MILLER:  Nowhere, Your Honor, absolutely
13  nowhere.  And if we're going to do central, then we need to
14  go to Missouri because Monsanto wants to go to Florida.  Even
15  though their factory is in Missouri, they want to go to my
16  case in Florida.
17           But the key, I think, that's more important than
18  the centrality because Judge Seabright, Your Honor, has been
19  able to do hearings with me in Virginia and counsel for
20  Monsanto in Washington, D.C. just fine.  We do hearings all
21  the time.
22           JUDGE BREYER:  So is that the answer to the
23  question?  I mean, what one concern would be, with the
24  multitude of these cases and a multitude of plaintiffs'
25  counsel, is to require them to get on a plane and fly to

1  Hawaii is a financial, and also a burden with respect to
2  time.  That's a great, you know, expenditure of time and
3  resources.  So your answer is what exactly to that particular
4  argument?
5          MR. MILLER:  Yes, Your Honor, thank you.  My answer
6  is pursuant to the manual for complex litigation, Judge
7  Seabright can do these by phone.  We can do these on the
8  Internet.  We don't need to go to Hawaii every 30 days.  And
9  I don't think -- and they have a great interest in this case,
10 and they are further along.  We have two trial dates.
11         JUDGE KAPLAN:  Possibly he'd appoint the members of
12 the panel to sit there by designation during the winter.
13         MR. MILLER:  Well, Your Honor, point well taken,
14 Judge Kaplan.  If not Hawaii, I think the Southern District
15 of Illinois, and I know other people have asked for it, but
16 it makes sense here because there are factories there.  And
17 discovery is not that far along.  I started discovery, it's
18 not that far along at all.
19         JUDGE VANCE:  All right.  Thank you.
20         MR. MILLER:  Thank you very much.
21         JUDGE VANCE:  Mr. Lundy.
22         MR. LUNDY:  May it please the Court.  We ask the
23 Court to consider the Eastern District of Louisiana inasmuch
24 as three of the crops that Monsanto genetically modifies are
25 grown in the state, it's an agriculture state.  You've got

1   soy beans, corn, cotton, sugar cane and rice are both blazed
2   or burned with glyphosate with Roundup before planting.  And
3   they have --
4           JUDGE VANCE:  Does that have anything to do with
5   evidence of its carcinogenic properties where it's used?  I
6   mean, where is the evidence of whether or not it's
7   carcinogenic and who knew what, where is that --
8           MR. LUNDY:  Two locations, Your Honor.  It will be
9   in Missouri, and it could be in -- in Louisiana, there's only
10  two glyphosate manufacturing plants in the United States, and
11  one of them is in Luling, Louisiana, 23 miles from the
12  courthouse.
13          JUDGE KAPLAN:  What's the relevance of the
14  manufacturing plant?
15          MR. LUNDY:  What's the relevance?  Is during the
16  discovery, especially the conduct discovery, we're going to
17  look at the effects, we'll look at the occupational studies.
18          JUDGE KAPLAN:  I'm sorry.  The effects of what?
19          MR. LUNDY:  It causes non-Hodgkins lymphoma.
20          JUDGE KAPLAN:  Are you going to find that evidence
21  in the factory where they make it?
22          MR. LUNDY:  We're going to find some of it, Your
23  Honor.  Anytime you have an occupational environmental case
24  you always look at health studies, you might find fact
25  witnesses from those locations that you have to do -- they've

```
 1   done their own occupational, we don't know.  We haven't had
 2   the discovery yet, we haven't had any information from them.
 3           JUDGE KAPLAN:  If you could clarify of whether it's
 4   carcinogenic, a fraction of what the chemical properties of
 5   the item is, and what the effect of that in the body is?
 6           MR. LUNDY:  That's accurate, Your Honor.
 7           JUDGE KAPLAN:  And neither of those are going to be
 8   found in the factory, right?
 9           MR. LUNDY:  I mean, occupational studies, if it
10   involves people that are involved, then those people could
11   become fact witnesses, Your Honor.  I agree that the majority
12   of the information will come right out of corporate in St.
13   Louis, and so that's why we didn't object to the Southern
14   District of Illinois.
15           JUDGE HUVELLE:  Why don't you not object to St.
16   Louis?  Everybody seems to be conflating the Southern
17   District of Illinois and St. Louis.  You're saying Monsanto
18   is in the State of Missouri.
19           MR. LUNDY:  They are.
20           JUDGE HUVELLE:  In what district?
21           MR. LUNDY:  They're in the City of St. Louis, the
22   corporate office is --
23           JUDGE PERRY:  It's the Eastern District of
24   Missouri.
25           MR. LUNDY:  Eastern District of St. Louis, yes.
```

1        JUDGE PERRY:  St. Louis is on the east side of the
2   State of Missouri.
3        MR. LUNDY:  The Eastern District of Missouri, and
4   there's no suits filed -- there's no suits filed in the
5   Eastern District of Missouri because diversity would be
6   destroyed so it would be in state court.  And so that's why
7   the cases, we're asking for the Southern District.  I know
8   it's across the river.  I know that Judge Staci Yandle has
9   asked for this case and other cases.  And we've had that
10  communication from the clerks.  So we don't object to that.
11  We don't object to --
12       JUDGE VANCE:  Sir, your time is up.  Thank you.
13       MR. LUNDY:  Thank you, ma'am.
14       JUDGE VANCE:  All right.  Mr. Paul, the Northern
15  District of Illinois, is that still your position?
16       MR. PAUL:  It is, Your Honor, thank you.  The
17  central locus of this case, I believe, is Illinois.  It makes
18  sense that the highest use, I know you question the use, but
19  in terms of a pool, other plaintiffs, this is, in fact, an
20  agricultural mass tort.  I think it makes senses to put it in
21  the corn belt where corn and soy beans are grown because
22  that's the highest use.
23       It is central to St. Louis, at least nearby.  So
24  for that reason, I do support the request for the Southern
25  District of Illinois.  I fully realize that there are lots of

1   request for the Southern District of Illinois.  And so I've
2   made the request for the Northern District of Illinois
3   because I think it's important to keep the case in Illinois.
4               JUDGE VANCE:  All right.  Thank you, sir.
5               MR. PAUL:  Thank you.
6               JUDGE VANCE:  Mr. Hollingsworth.
7               MR. HOLLINGSWORTH:  Good morning, Your Honors, Joe
8   Hollingsworth on behalf of Monsanto.  Judge Chhabria has done
9   an extraordinary thing in this case.  He has granted our
10  motion to bifurcate the issue of general causation, which is
11  the question of can glyphosate cause non-Hodgkins lymphoma.
12  From all other discovery, that 60 reviewers already at work
13  on this discovery.  We've produced 2.8 million documents
14  pursuant to Judge Chhabria's order.  We're in the process of
15  producing --
16              JUDGE VANCE:  But why shouldn't we send the cases
17  to him?
18              MR. HOLLINGSWORTH:  Well, I think that what Judge
19  Chhabria will do, certainly, will be informative for the rest
20  of the judiciary.  But there's only 38 cases.  I mean, 38
21  cases is like nothing in my experience.  And we're opposed to
22  consolidation, but we're certainly happy about going forward
23  with what Judge Chhabria has done.
24              JUDGE BREYER:  Is there any district that you think
25  ought not -- I mean, I'm not asking about the entire country,

```
 1   but of the districts that are suggested, is there any
 2   district that you'd say, look, don't send it there, that's a
 3   mistake?
 4              MR. HOLLINGSWORTH:  Well, Your Honor, it seems odd
 5   to me that the plaintiffs are recommending other districts in
 6   California.  Yet they're purposely staying way from the two
 7   districts where judges, the only judges who have decided our
 8   bifurcation motions, have each decided in favor of Monsanto,
 9   and have each decided to go ahead with general causation
10   discovery to set -- to set dates for the discovery of expert
11   witnesses, to set due dates for the completion of all
12   depositions, and to have a *Daubert* hearing beginning in May
13   of 2017.  So the Northern District and the Southern District
14   are way, way out, 2.8 million documents.
15              JUDGE PERRY:  Counsel, counsel, Monsanto is
16   opposing centralization, but you're also refusing to
17   coordinate or cooperate with the plaintiffs in other
18   districts because you're saying, no, it's going to be *Daubert*
19   and nothing else.  Is that your position?
20              MR. HOLLINGSWORTH:  No, that's not correct.  We're
21   doing discovery on all issues in a state court in Missouri.
22   And we've let these plaintiffs know that when we are done
23   with the general causation discovery that we're doing now, by
24   the way, all studies involving any health issue have been
25   turned over already that Monsanto possesses.  We'll be happy,
```

1   of course, to share that with any plaintiff who's --
2              JUDGE VANCE:  But you've even opposed a motion to
3   relate cases in the same district.  I mean, how are we
4   supposed to take seriously your offer to cooperate with the
5   plaintiffs when you wouldn't even go along with relating
6   cases in the same district?
7              MR. HOLLINGSWORTH:  Well, we had two cases in the
8   same district, Your Honor, that are related and are
9   consolidated.  And we are going along with discovery in those
10  cases.  We have two of the main plaintiffs' law firms
11  involved in that.  We have Ms. Wagstaff's firm and we have
12  Mr. Miller's firm, and we're dealing with them already
13  pursuant to confidentiality.
14             JUDGE VANCE:  Aren't you going to be whipsawed if
15  some judges say we'll limit this to general causation and
16  some judges say, no, we're going to go full speed ahead,
17  don't you get whipsawed in a process like that?
18             MR. HOLLINGSWORTH:  Well, we're a little whipsawed
19  between the state and federal system now, Your Honor.
20             JUDGE VANCE:  So a little more whipsawing doesn't
21  matter?
22             MR. HOLLINGSWORTH:  Well, Judge Chhabria's case is
23  moving along much, much more quickly, Your Honor.  We'll have
24  our fourth conference hearing with him next week.  We have
25  had half a dozen meet and confers with these plaintiffs'

1 **lawyers sitting behind me already in connection with the**
2 **production of 2.8 million pages of documents.**
3 **JUDGE VANCE: We got your argument, thank you, sir.**
4 **I think Ms. Wagstaff has reserved some rebuttal.**
5 **MR. HOLLINGSWORTH: Thank you, Your Honor.**
6 **JUDGE VANCE: Thank you.**
7 **MS. WAGSTAFF: Your Honor, the discovery that's**
8 **going on in the Northern District of California before Judge**
9 **Chhabria is not as advanced as Mr. Hollingsworth would have**
10 **you believe. They have produced 2.8 million documents, that**
11 **is true. But we found out at an informal ESI meeting that**
12 **they did not include --**
13 **Would you like me to hold on?**
14 (There was a pause in the proceedings due to
15 technical difficulties.)
16 MS. WAGSTAFF: So, Your Honor, I would submit to
17 you that the discovery that has been going on in the Northern
18 District of California is not as far along as
19 Mr. Hollingsworth would have you believe.
20 JUDGE RENDELL: Even so why should we not send it
21 to the Northern District of California?
22 MS. WAGSTAFF: That's a great question. One of the
23 reasons is because there are only two firms who have
24 participated. If you were to send all of those cases, and I
25 disagree that 38 cases is a lot of cases. If we were to send

1   those to Judge Chhabria, we would need to renegotiate and
2   allow the other plaintiffs to participate.  And furthermore,
3   I do think that at our next conference, which is October 4th,
4   we will need to rediscuss and sort of extend some of those
5   deadlines.  For example--
6            JUDGE PROCTOR:  That's the case where ever we send
7   it, isn't it?  There is no where that has a scheduling order
8   that contemplates--
9            MS. WAGSTAFF:  That's exactly right.
10           JUDGE PROCTOR:  -- transfers of 38 cases.
11           MS. WAGSTAFF:  Exactly right, which is why I think
12  we will have to start afresh anyway and look at the most
13  logical place to send it.
14           JUDGE BREYER:  Really, in that calculus, fine, I
15  don't disagree.  In that calculus, should we consider the
16  fact that one judge has done these number of things with
17  respect to the case that required his or her attention in
18  dealing with the issue?  Should we look at that?  Is that a
19  factor?
20           MS. WAGSTAFF:  I think that is a factor, Your
21  Honor, but I don't think that's dispositive.  I also believe
22  that some of those decisions may not have been made if it had
23  been multiple cases.  For instance, the Southern District for
24  California order specifically said in the order that while
25  the argument against bifurcation was persuasive, he was only

1   considering one plaintiff.
2          JUDGE VANCE:  All right, thank you, ma'am.
3
4                            ooOoo
5
6
7
8
9                    CERTIFICATE OF REPORTER
10              I, Lisa Walker Griffith, certify that the
11  foregoing is a correct transcript from the record of
12  proceedings in the above-entitled matter.
13

17  _____    _____
    Lisa Walker Griffith, RPR                    Date
18
19
20
21
22
23
24
25