# U.S. District Court
## Eastern District of Missouri (St. Louis)
## CIVIL DOCKET FOR CASE #: 4:18-cv-00407-AGF

Acosta et al v. Monsanto Company
Assigned to: District Judge Audrey G. Fleissig
Case in other court: Circuit Court, St. Louis County, Missouri,
    18SL-CC00893
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 03/13/2018
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Brenda Acosta**

represented by **Eric D. Holland**
HOLLAND LAW FIRM LLC
300 N. Tucker Blvd.
Suite 801
St. Louis, MO 63101
314-241-8111
Fax: 314-241-5554
Email: eholland@allfela.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
HOLLAND LAW FIRM LLC
300 N. Tucker Blvd.
Suite 801
St. Louis, MO 63101
314-244-2005
Fax: 314-241-5554
Email: pdowd@allfela.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
HOLLAND LAW FIRM LLC
300 N. Tucker Blvd.
Suite 801
St. Louis, MO 63101
314-241-8111
Fax: 314-241-5554
Email: scrompton@allfela.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brian Anderson**

represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Leif Arvidson**
                                   represented by  **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenny Beddington**
                             represented by  **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Danny Binkley**
                             represented by  **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emery Bridgers**                            represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Matthew Brown**                            represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Deborah Buss**                            represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chris Daniels**                            represented by   **Eric D. Holland**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Doyle**                        represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Patricia Ermeloff**                    represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Esler**                         represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Laura Faraschuk**                    represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jesse Gates**                    represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald Gleysteen**                    represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marvin Greenleaf**                    represented by   **Eric D. Holland**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Patrick R Dowd**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Randall S. Crompton**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Hansen**                      represented by   **Eric D. Holland**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Patrick R Dowd**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Randall S. Crompton**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Hendrickson**                 represented by   **Eric D. Holland**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Patrick R Dowd**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Randall S. Crompton**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Norman Henson**                    represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Anthony Hoisington**              represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Maureen Hubert**                  represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Lilian Humphries**                represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Ken Irish                                     represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Michael Jackson                               represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

George Jennings                               represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Randall S. Crompton
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Linda Johnson**             represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lawrence Karns**            represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Maxine Kelly**             represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Boris Kofman**                                    represented by **Eric D. Holland**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Patrick R Dowd**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Randall S. Crompton**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Lewis Lane**                                      represented by **Eric D. Holland**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Patrick R Dowd**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Randall S. Crompton**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**David Largent**                                   represented by **Eric D. Holland**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Patrick R Dowd**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Randall S. Crompton**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Marcia Larson**                                   represented by **Eric D. Holland**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gary Lenna**                                represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Lewis**                             represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eugene Locken**                             represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Randall S. Crompton
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Marson**                          represented by  **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Mason**                          represented by  **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Mayes**                          represented by  **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mitch Meunier**  represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Timothy Miskinis**  represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Murray**  represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Earnestine Nicholson**  represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Jeffrey Olsen                                   represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Betty Peay                                      represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

DeAnn Pinter                                    represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Pruitt**                    represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jason Ratliff**                    represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Arlie Raynor**                    represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Scott Reed**                                  represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Patrick R Dowd**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Randall S. Crompton**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joan Salogar**                                represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Patrick R Dowd**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Randall S. Crompton**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barbara Schiltz**                             represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Patrick R Dowd**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Randall S. Crompton**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peggy Sellers**                               represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Morgan Seymour                    represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Betty Shadeck                     represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Joseph Smith                      represented by    **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Randall S. Crompton
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jennie Son**                                          represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lynn Soule**                                          represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Winfred Spain**                                       represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Clyde Stansell**                              represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Patrick R Dowd**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Randall S. Crompton**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Stellflug**                            represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Patrick R Dowd**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Randall S. Crompton**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Norman Sundstrom**                            represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Patrick R Dowd**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Randall S. Crompton**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Tanner**                                 represented by **Eric D. Holland**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Darrell Tarte        represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Bill Theys        represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

John Thompson        represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cheryl Trowbridge**                  represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eduardo Vazquez**, MD                represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lucinda Whitley**                    represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Loren Wilhelm**

represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barry Willis**

represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thomas Zupa**

represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joe Coleman**
*by and through his representative Brenda
Coleman, Brenda Coleman, surviving
spouse of Joe Coleman, on behalf of all
legal heirs of Joe Coleman*

represented by **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Judith Keehn**
*by and through her representative Kelly Allen, Kelly Allen, next of kin of Judith Keehn on behalf of all legal heirs of Judith Keehn*

represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Claude Smithhart**
*by and through his representative Patricia Woods-Smithhart, Patricia Woods-Smithhart, surviving spouse of Claude Smithhart on behalf of all legal heirs of Claude Smithhart*

represented by   **Eric D. Holland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick R Dowd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randall S. Crompton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**Monsanto Company**
Monsanto Co.
800 N. Lindbergh Blvd.
St. Louis, MO 63167

represented by   **Christine F. Miller**
HUSCH BLACKWELL, LLP
190 Carondelet Plaza
Suite 600
St. Louis, MO 63105
314-480-1500
Fax: 314-480-1505
Email: chris.miller@huschblackwell.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/13/2018 | 1 | NOTICE OF REMOVAL from Twenty-First Judicial Circuit, St. Louis County, case number 18SL-CC00893, with receipt number 0865-6429442, in the amount of $400 Jury Demand,, filed by Monsanto Company. (Attachments: # 1 Exhibit A - State Court File, # 2 Original Filing Form, # 3 Civil Cover Sheet)(Miller, Christine) (Entered: 03/13/2018) |
| 03/13/2018 | 2 | DISCLOSURE OF ORGANIZATIONAL INTERESTS CERTIFICATE by Defendant Monsanto Company. Parent companies: None, Subsidiaries: Agroeste Sementes Paraguay S.A., Deltapine de Mexico, S. de R.L. de C.V., Dido, LLC, Hebei Ji Dai Cotton Seed Technology Company, Ltd., Liaoning Tuanhua Seeds Co., Ltd., Monsanto Korea, Inc., Publicly held company: None,. (Miller, Christine) (Entered: 03/13/2018) |
| 03/13/2018 | 3 | NOTICE OF FILING NOTICE OF REMOVAL filed by Defendant Monsanto Company Sent To: Plaintiff (Miller, Christine) (Entered: 03/13/2018) |
| 03/13/2018 | 4 | ANSWER to Complaint by Monsanto Company.(Miller, Christine) (Entered: 03/13/2018) |
| 03/14/2018 | 5 | ENTRY of Appearance by Eric D. Holland for Plaintiffs Brenda Acosta, Brian Anderson, Leif Arvidson, Kenny Beddington, Danny Binkley, Emery Bridgers, Matthew Brown, Deborah Buss, Joe Coleman, Chris Daniels, Michael Doyle, Patricia Ermeloff, Robert Esler, Laura Faraschuk, Jesse Gates, Ronald Gleysteen, Marvin Greenleaf, Richard Hansen, Richard Hendrickson, Norman Henson, Anthony Hoisington, Maureen Hubert, Lilian Humphries, Ken Irish, Michael Jackson, George Jennings, Linda Johnson, Lawrence Karns, Judith Keehn, Maxine Kelly, Boris Kofman, Lewis Lane, David Largent, Marcia Larson, Gary Lenna, Richard Lewis, Eugene Locken, Robert Marson, Michael Mason, Richard Mayes, Mitch Meunier, Timothy Miskinis, David Murray, Earnestine Nicholson, Jeffrey Olsen, Betty Peay, DeAnn Pinter, Robert Pruitt, Jason Ratliff, Arlie Raynor, Scott Reed, Joan Salogar, Barbara Schiltz, Peggy Sellers, Morgan Seymour, Betty Shadeck, Joseph Smith, Claude Smithhart, Jennie Son, Lynn Soule, Winfred Spain, Clyde Stansell, Robert Stellflug, Norman Sundstrom, John Tanner, Darrell Tarte, Bill Theys, John Thompson, Cheryl Trowbridge, Eduardo Vazquez, Lucinda Whitley, Loren Wilhelm, Barry Willis, Thomas Zupa. (Holland, Eric) (Entered: 03/14/2018) |
| 03/14/2018 | 6 | ENTRY of Appearance by Randall S. Crompton for Plaintiffs Brenda Acosta, Brian Anderson, Leif Arvidson, Kenny Beddington, Danny Binkley, Emery Bridgers, Matthew Brown, Deborah Buss, Joe Coleman, Chris Daniels, Michael Doyle, Patricia Ermeloff, Robert Esler, Laura Faraschuk, Jesse Gates, Ronald Gleysteen, Marvin Greenleaf, Richard Hansen, Richard Hendrickson, Norman Henson, Anthony Hoisington, Maureen Hubert, Lilian Humphries, Ken Irish, Michael Jackson, George Jennings, Linda Johnson, Lawrence Karns, Judith Keehn, Maxine Kelly, Boris Kofman, Lewis Lane, David Largent, Marcia Larson, Gary Lenna, Richard Lewis, Eugene Locken, Robert Marson, Michael Mason, Richard Mayes, Mitch Meunier, Timothy Miskinis, David Murray, Earnestine Nicholson, Jeffrey Olsen, Betty Peay, DeAnn Pinter, Robert Pruitt, Jason Ratliff, Arlie Raynor, Scott Reed, Joan Salogar, Barbara Schiltz, Peggy Sellers, Morgan Seymour, Betty Shadeck, Joseph Smith, Claude Smithhart, Jennie Son, Lynn Soule, Winfred Spain, Clyde Stansell, Robert Stellflug, Norman Sundstrom, John Tanner, Darrell Tarte, Bill Theys, John Thompson, Cheryl Trowbridge, Eduardo Vazquez, Lucinda Whitley, Loren Wilhelm, Barry Willis, Thomas Zupa. (Crompton, Randall) (Entered: 03/14/2018) |
| 03/14/2018 | 7 | ENTRY of Appearance by Patrick R Dowd for Plaintiffs Brenda Acosta, Brian Anderson, Leif Arvidson, Kenny Beddington, Danny Binkley, Emery Bridgers, Matthew Brown, Deborah Buss, Joe Coleman, Chris Daniels, Michael Doyle, Patricia Ermeloff, Robert Esler, |

| | | |
|---|---|---|
| | | Laura Faraschuk, Jesse Gates, Ronald Gleysteen, Marvin Greenleaf, Richard Hansen, Richard Hendrickson, Norman Henson, Anthony Hoisington, Maureen Hubert, Lilian Humphries, Ken Irish, Michael Jackson, George Jennings, Linda Johnson, Lawrence Karns, Judith Keehn, Maxine Kelly, Boris Kofman, Lewis Lane, David Largent, Marcia Larson, Gary Lenna, Richard Lewis, Eugene Locken, Robert Marson, Michael Mason, Richard Mayes, Mitch Meunier, Timothy Miskinis, David Murray, Earnestine Nicholson, Jeffrey Olsen, Betty Peay, DeAnn Pinter, Robert Pruitt, Jason Ratliff, Arlie Raynor, Scott Reed, Joan Salogar, Barbara Schiltz, Peggy Sellers, Morgan Seymour, Betty Shadeck, Joseph Smith, Claude Smithhart, Jennie Son, Lynn Soule, Winfred Spain, Clyde Stansell, Robert Stellflug, Norman Sundstrom, John Tanner, Darrell Tarte, Bill Theys, John Thompson, Cheryl Trowbridge, Eduardo Vazquez, Lucinda Whitley, Loren Wilhelm, Barry Willis, Thomas Zupa. (Dowd, Patrick) (Entered: 03/14/2018) |
| 03/14/2018 | 8 | Petition (Removal/Transfer) Received From: Circuit Court, St. Louis County, Missouri, filed by Gary Lenna, Marcia Larson, Darrell Tarte, Maureen Hubert, Thomas Zupa, Matthew Brown, Linda Johnson, Richard Hendrickson, Joe Coleman, Marvin Greenleaf, Betty Peay, Joseph Smith, Claude Smithhart, Lawrence Karns, Lynn Soule, Norman Sundstrom, Anthony Hoisington, Michael Doyle, David Largent, Eugene Locken, Patricia Ermeloff, Arlie Raynor, John Thompson, Boris Kofman, Joan Salogar, Mitch Meunier, Bill Theys, Winfred Spain, David Murray, Robert Esler, Ronald Gleysteen, Peggy Sellers, Robert Stellflug, Jennie Son, Cheryl Trowbridge, DeAnn Pinter, Judith Keehn, Norman Henson, John Tanner, Betty Shadeck, Eduardo Vazquez, Barry Willis, Lucinda Whitley, Brian Anderson, Richard Hansen, Brenda Acosta, Lewis Lane, George Jennings, Maxine Kelly, Timothy Miskinis, Jesse Gates, Loren Wilhelm, Clyde Stansell, Scott Reed, Michael Jackson, Morgan Seymour, Lilian Humphries, Earnestine Nicholson, Robert Pruitt, Ken Irish, Laura Faraschuk, Emery Bridgers, Leif Arvidson, Robert Marson, Chris Daniels, Barbara Schiltz, Jason Ratliff, Deborah Buss, Richard Mayes, Kenny Beddington, Richard Lewis, Michael Mason, Jeffrey Olsen, Danny Binkley.(BAK) (Entered: 03/14/2018) |
| 03/14/2018 | | Case Opening Notification: Judge Assigned: U.S. District Judge Audrey G. Fleissig. (BAK) (Entered: 03/14/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/15/2018 11:54:09 | | | |
| **PACER Login:** | hllp1982:2634105:4722683 | **Client Code:** | 1417.0005 |
| **Description:** | Docket Report | **Search Criteria:** | 4:18-cv-00407-AGF |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

18SL-CC00893

Electronically Filed - St. Louis County - February 27, 2018 - 10:14 AM

**MISSOURI CIRCUIT COURT**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**ST. LOUIS COUNTY**

BRENDA ACOSTA, BRIAN ANDERSON,
LEIF ARVIDSON, KENNY BEDDINGTON,
DANNY BINKLEY, EMERY BRIDGERS,
MATTHEW BROWN, DEBORAH BUSS,
CHRIS DANIELS, MICHAEL DOYLE,
PATRICIA ERMELOFF, ROBERT ESLER,
LAURA FARASCHUK, JESSE GATES,
RONALD GLEYSTEEN, MARVIN
GREENLEAF, RICHARD HANSEN,
RICHARD HENDRICKSON, NORMAN
HENSON, ANTHONY HOISINGTON,
MAUREEN HUBERT, LILIAN HUMPHRIES,
KEN IRISH, MICHAEL JACKSON, GEORGE
JENNINGS, LINDA JOHNSON, LAWRENCE
KARNS, MAXINE KELLY, BORIS KOFMAN,
LEWIS LANE, DAVID LARGENT, MARCIA
LARSON, GARY LENNA, RICHARD LEWIS,
EUGENE LOCKEN, ROBERT MARSON,
MICHAEL MASON, RICHARD MAYES,
MITCH MEUNIER, TIMOTHY MISKINIS,
DAVID MURRAY, EARNESTINE
NICHOLSON, JEFFREY OLSEN, BETTY
PEAY, DEANN PINTER, ROBERT PRUITT,
JASON RATLIFF, ARLIE RAYNOR, SCOTT
REED, JOAN SALOGAR, BARBARA
SCHILTZ, PEGGY SELLERS, MORGAN
SEYMOUR, BETTY SHADECK, JOSEPH
SMITH, JENNIE SON, LYNN SOULE,
WINFRED SPAIN, CLYDE STANSELL,
ROBERT STELLFLUG, NORMAN
SUNDSTROM, JOHN TANNER, DARRELL
TARTE, BILL THEYS, JOHN THOMPSON,
CHERYL TROWBRIDGE, EDUARDO
VAZQUEZ, LUCINDA WHITLEY, LOREN
WILHELM, BARRY WILLIS, THOMAS
ZUPAN, JOE COLEMAN, by and through his
representative BRENDA COLEMAN,
BRENDA COLEMAN, surviving spouse of JOE
COLEMAN, on behalf of all legal heirs of JOE
COLEMAN, JUDITH KEEHN, by and through
her representative KELLY ALLEN, KELLY
ALLEN, next of kin of JUDITH KEEHN on

Case No._____

Division No. _____

**JURY TRIAL DEMANDED**

Electronically Filed - St. Louis County - February 27, 2018 - 10:14 AM

behalf of all legal heirs of JUDITH KEEHN,
CLAUDE SMITHHART, by and through his
representative PATRICIA WOODS-
SMITHHART, PATRICIA WOODS-
SMITHHART, surviving spouse of CLAUDE
SMITHHART on behalf of all legal heirs of
CLAUDE SMITHHART

Plaintiffs,

**v.**

**MONSANTO COMPANY**

Serve: Registered Agent
CSC of St. Louis County, Inc.
130 South Bemiston Avenue
Suite 700
Clayton, MO 63105

Defendant.

<u>**PETITION**</u>

COME NOW Plaintiffs, Brenda Acosta, Brian Anderson, Leif Arvidson, Kenny

Beddington, Danny Binkley, Emery Bridgers, Matthew Brown, Deborah Buss, Chris Daniels,

Michael Doyle, Patricia Ermeloff, Robert Esler, Laura Faraschuk, Jesse Gates, Ronald Gleysteen,

Marvin Greenleaf, Richard Hansen, Richard Hendrickson, Norman Henson, Anthony Hoisington,

Maureen Hubert, Lilian Humphries, Ken Irish, Michael Jackson, George Jennings, Linda Johnson,

Lawrence Karns, Maxine Kelly, Boris Kofman, Lewis Lane, David Largent, Marcia Larson, Gary

Lenna, Richard Lewis, Eugene Locken, Robert Marson, Michael Mason, Richard Mayes, Mitch

Meunier, Timothy Miskinis, David Murray, Earnestine Nicholson, Jeffrey Olsen, Betty Peay,

DeAnn Pinter, Robert Pruitt, Jason Ratliff, Arlie Raynor, Scott Reed, Joan Salogar, Barbara

Schiltz, Peggy Sellers, Morgan Seymour, Betty Shadeck, Joseph Smith, Jennie Son, Lynn Soule,

Winfred Spain, Clyde Stansell, Robert Stellflug, Norman Sundstrom, John Tanner, Darrell Tarte,

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

Bill Theys, John Thompson, Cheryl Trowbridge, Eduardo Vazquez, Lucinda Whitley, Loren Wilhelm, Barry Willis, Thomas Zupan, Joe Coleman, by and through his representative Brenda Coleman, Brenda Coleman, surviving spouse of Joe Coleman, on behalf of all legal heirs of Joe Coleman, Judith Keehn, by and through her representative Kelly Allen, Kelly Allen, next of kin of Judith Keehn on behalf of all legal heirs of Judith Keehn, Claude Smithhart, by and through his representative Patricia Woods-Smithhart, Patricia Woods-Smithhart, surviving spouse of Claude Smithhart on behalf of all legal heirs of Claude Smithhart, and for their cause of action against defendant Monsanto Company state to the Court as follows:

## INTRODUCTION

Plaintiffs bring this cause of action against Defendant pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure, as their claims arise out of the same series of transactions and occurrences, and their claims involve common questions of law and/or fact. All claims in this action are a direct and proximate result of Defendant's negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, and/or sale of Roundup and/or other Monsanto glyphosate-containing products ("Roundup"). All Plaintiffs in this action seek recovery for damages as a result of developing Non-Hodgkin's Lymphoma ("NHL"), which was directly and proximately caused by such wrongful conduct by Defendant, the unreasonably dangerous and defective nature of Roundup, and its active ingredient, glyphosate, and the attendant effects of developing NHL. No Plaintiff knew of an association between exposure to Roundup® and the increased risk of developing NHL until well after July 29, 2015, when the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), first published its evaluation of glyphosate. All of

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

the claims involve common questions of law and fact and share legal and medical issues that arise out of all of the Plaintiffs' exposures to Roundup.

## I.   THE PARTIES

1.   Plaintiff Brenda Acosta is a resident of Mississippi and was at all relevant times a resident of Mississippi. Ms. Acosta purchased and used Roundup for at least 15 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

2.   Plaintiff Brian Anderson is a resident of California and was at all relevant times a resident of California. Mr. Anderson purchased and used Roundup for at least 15 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2016.

3.   Plaintiff Leif Arvidson is a resident of New Hampshire and was at all relevant times a resident of New Hampshire. Mr. Arvidson purchased and used Roundup for at least 10 continuous years through approximately 1999, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

4.   Plaintiff Kenny Beddington is a resident of North Carolina and was at all relevant times a resident of North Carolina. Mr. Beddington purchased and used Roundup for several continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

5.   Plaintiff Danny Binkley is a resident of Michigan and was at all relevant times a resident of Michigan. Mr. Binkley purchased and used Roundup for at least 25 continuous years

Case: MDL No. 2741  Document 526-3  Filed: 03/15/18  Page: 30 of 75  PageID #: 25
Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2007.

6.     Plaintiff Emery Bridgers is a resident of South Carolina and was at all relevant times a resident of South Carolina. Mr. Bridgers purchased and used Roundup for at least 20 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2005.

7.     Plaintiff Matthew Brown is a resident of Maryland and was at all relevant times a resident of PA or MD. Mr. Brown purchased and used Roundup for at least 10 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2013.

8.     Plaintiff Deborah Buss is a resident of Wisconsin and was at all relevant times a resident of Wisconsin. Ms. Buss purchased and used Roundup for at least 20 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2005.

9.     Plaintiff Chris Daniels is a resident of Michigan and was at all relevant times a resident of Michigan. Mr. Daniels purchased and used Roundup for at least 10 continuous years through approximately 2011, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2011.

10.     Plaintiff Michael Doyle is a resident of Maryland and was at all relevant times a resident of Maryland. Mr. Doyle purchased and used Roundup for at least 15 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

11.     Plaintiff Patricia Ermeloff is a resident of Washington and was at all relevant times a resident of Washington. Ms. Ermeloff purchased and used Roundup for at least 20 continuous years through approximately 1996, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

12.     Plaintiff Robert Esler is a resident of Michigan and was at all relevant times a resident of Michigan. Mr. Esler purchased and used Roundup for at least 20 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

13.     Plaintiff Laura Faraschuk is a resident of Washington and was at all relevant times a resident of Washington. Ms. Faraschuk purchased and used Roundup for at least 25 continuous years through approximately 2015, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2002.

14.     Plaintiff Jesse Gates is a resident of South Carolina and was at all relevant times a resident of South Carolina. Mr. Gates purchased and used Roundup for at least 35 continuous years through approximately 2012, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2012.

15.     Plaintiff Ronald Gleysteen is a resident of South Dakota and was at all relevant times a resident of South Dakota. Mr. Gleysteen purchased and used Roundup for at least 35 continuous years through approximately 2010, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

16.     Plaintiff Marvin Greenleaf is a resident of Mississippi and was at all relevant times a resident of Mississippi. Mr. Greenleaf purchased and used Roundup for at least 15

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2014.

17. Plaintiff Richard Hansen is a resident of Wisconsin and was at all relevant times a resident of Wisconsin. Mr. Hansen purchased and used Roundup for at least 20 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2012.

18. Plaintiff Richard Hendrickson is a resident of Washington and was at all relevant times a resident of Washington. Mr. Hendrickson purchased and used Roundup for at least 30 continuous years through approximately 2014, and was diagnosed with a form of Non-Hodgkin's lymphoma in 1998.

19. Plaintiff Norman Henson is a resident of Maryland and was at all relevant times a resident of Maryland. Mr. Henson purchased and used Roundup for at least 35 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2004.

20. Plaintiff Anthony Hoisington is a resident of Vermont and was at all relevant times a resident of Vermont. Mr. Hoisington purchased and used Roundup for at least 7 continuous years through approximately 2002, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2002.

21. Plaintiff Maureen Hubert is a resident of Connecticut and was at all relevant times a resident of Connecticut. Ms. Hubert purchased and used Roundup for at least 35 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2004.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

22.     Plaintiff Lilian Humphries is a resident of South Carolina and was at all relevant times a resident of South Carolina. Ms. Humphries purchased and used Roundup for at least 30 continuous years through approximately 2008, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

23.     Plaintiff Ken Irish is a resident of Washington and was at all relevant times a resident of Washington. Mr. Irish purchased and used Roundup for at least 30 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

24.     Plaintiff Michael Jackson is a resident of Arkansas and was at all relevant times a resident of Arkansas. Mr. Jackson purchased and used Roundup for at least 15 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2012.

25.     Plaintiff George Jennings is a resident of Idaho and was at all relevant times a resident of Idaho. Mr. Jennings purchased and used Roundup for at least 20 continuous years through approximately 2006, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

26.     Plaintiff Linda Johnson is a resident of Washington and was at all relevant times a resident of Washington. Ms. Johnson purchased and used Roundup for at least 4 continuous years through approximately 2001, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2002.

27.     Plaintiff Lawrence Karns is a resident of Michigan and was at all relevant times a resident of Wisconsin. Mr. Karns purchased and used Roundup for at least 20 continuous years

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

28.     Plaintiff Maxine Kelly is a resident of Mississippi and was at all relevant times a resident of Mississippi. Ms. Kelly purchased and used Roundup for at least 25 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2011.

29.     Plaintiff Boris Kofman is a resident of Massachusetts and was at all relevant times a resident of Massachusetts. Mr. Kofman purchased and used Roundup for at least 20 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

30.     Plaintiff Lewis Lane is a resident of Michigan and was at all relevant times a resident of Michigan. Mr. Lane purchased and used Roundup for at least 35 continuous years through approximately 2013, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2013.

31.     Plaintiff David Largent is a resident of Maryland and was at all relevant times a resident of Maryland. Mr. Largent purchased and used Roundup for at least 20 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

32.     Plaintiff Marcia Larson is a resident of Washington and was at all relevant times a resident of Washington. Ms. Larson purchased and used Roundup for at least 25 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

33. Plaintiff Gary Lenna is a resident of North Carolina and was at all relevant times a resident of North Carolina. Mr. Lenna purchased and used Roundup for several continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2014.

34. Plaintiff Richard Lewis is a resident of Connecticut and was at all relevant times a resident of Connecticut. Mr. Lewis purchased and used Roundup for at least 40 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2008.

35. Plaintiff Eugene Locken is a resident of Washington and was at all relevant times a resident of Washington. Mr. Locken purchased and used Roundup for at least 30 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2013.

36. Plaintiff Robert Marson is a resident of Washington and was at all relevant times a resident of Washington. Mr. Marson purchased and used Roundup for at least 20 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

37. Plaintiff Michael Mason is a resident of North Carolina and was at all relevant times a resident of North Carolina. Mr. Mason purchased and used Roundup for several continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2011.

38. Plaintiff Richard Mayes is a resident of Washington and was at all relevant times a resident of Washington. Mr. Mayes purchased and used Roundup for at least 35 continuous

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2011.

39.     Plaintiff Mitch Meunier is a resident of Wisconsin and was at all relevant times a resident of Wisconsin. Mr. Meunier purchased and used Roundup for at least 30 continuous years through approximately 2012, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2004.

40.     Plaintiff Timothy Miskinis is a resident of Wisconsin and was at all relevant times a resident of Wisconsin. Mr. Miskinis purchased and used Roundup for at least 30 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2012.

41.     Plaintiff David Murray is a resident of Washington and was at all relevant times a resident of Washington. Mr. Murray purchased and used Roundup for at least 40 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

42.     Plaintiff Earnestine Nicholson is a resident of North Carolina and was at all relevant times a resident of North Carolina. Ms. Nicholson purchased and used Roundup for several continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2014.

43.     Plaintiff Jeffrey Olsen is a resident of Connecticut and was at all relevant times a resident of Connecticut. Mr. Olsen purchased and used Roundup for at least 35 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

44.     Plaintiff Betty Peay is a resident of North Carolina and was at all relevant times a resident of South Carolina. Ms. Peay purchased and used Roundup for at least 10 continuous years through approximately 1996, and was diagnosed with a form of Non-Hodgkin's lymphoma in 1996.

45.     Plaintiff DeAnn Pinter is a resident of Michigan and was at all relevant times a resident of Michigan. Ms. Pinter purchased and used Roundup for at least 10 continuous years through approximately 2015, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

46.     Plaintiff Robert Pruitt is a resident of Mississippi and was at all relevant times a resident of Arkansas. Mr. Pruitt purchased and used Roundup for at least 3 continuous years through approximately 2002, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2008.

47.     Plaintiff Jason Ratliff is a resident of Maryland and was at all relevant times a resident of Maryland. Mr. Ratliff purchased and used Roundup for at least 15 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2013.

48.     Plaintiff Arlie Raynor is a resident of North Carolina and was at all relevant times a resident of North Carolina. Mr. Raynor purchased and used Roundup for several continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2011.

49.     Plaintiff Scott Reed is a resident of Michigan and was at all relevant times a resident of Mississippi. Mr. Reed purchased and used Roundup for at least 30 continuous years

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

through approximately 2010, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

50.   Plaintiff Joan Salogar is a resident of Michigan and was at all relevant times a resident of Michigan. Ms. Salogar purchased and used Roundup for at least 30 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

51.   Plaintiff Barbara Schiltz is a resident of South Dakota and was at all relevant times a resident of South Dakota. Ms. Schiltz purchased and used Roundup for at least 20 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2013.

52.   Plaintiff Peggy Sellers is a resident of North Carolina and was at all relevant times a resident of North Carolina. Ms. Sellers purchased and used Roundup for several continuous years through approximately 2014, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2014.

53.   Plaintiff Morgan Seymour is a resident of Mississippi and was at all relevant times a resident of Mississippi. Mr. Seymour purchased and used Roundup for at least 15 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2014.

54.   Plaintiff Betty Shadeck is a resident of Rhode Island and was at all relevant times a resident of Rhode Island. Ms. Shadeck purchased and used Roundup for at least 30 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2005.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

55.     Plaintiff Joseph Smith is a resident of Montana and was at all relevant times a resident of Montana. Mr. Smith purchased and used Roundup for at least 25 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

56.     Plaintiff Jennie Son is a resident of South Carolina and was at all relevant times a resident of South Carolina. Ms. Son purchased and used Roundup for at least 40 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2005.

57.     Plaintiff Lynn Soule is a resident of Vermont and was at all relevant times a resident of Vermont. Ms. Soule purchased and used Roundup for at least 30 continuous years through approximately 2014, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2013.

58.     Plaintiff Winfred Spain is a resident of North Carolina and was at all relevant times a resident of North Carolina. Mr. Spain purchased and used Roundup for several continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2008.

59.     Plaintiff Clyde Stansell is a resident of South Carolina and was at all relevant times a resident of South Carolina. Mr. Stansell purchased and used Roundup for at least 10 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2014.

60.     Plaintiff Robert Stellflug is a resident of Washington and was at all relevant times a resident of Washington. Mr. Stellflug purchased and used Roundup for at least 30 continuous

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

61.     Plaintiff Norman Sundstrom is a resident of New Hampshire and was at all relevant times a resident of New Hampshire. Mr. Sundstrom purchased and used Roundup for at least 25 continuous years through approximately 2014, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2012.

62.     Plaintiff John Tanner is a resident of California and was at all relevant times a resident of California. Mr. Tanner purchased and used Roundup for at least 25 continuous years through approximately 2010, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2016.

63.     Plaintiff Darrell Tarte is a resident of Maryland and was at all relevant times a resident of Maryland. Mr. Tarte purchased and used Roundup for at least 4 continuous years through approximately 2012, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2012.

64.     Plaintiff Bill Theys is a resident of Wisconsin and was at all relevant times a resident of Wisconsin. Mr. Theys purchased and used Roundup for at least 20 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

65.     Plaintiff John Thompson is a resident of Maryland and was at all relevant times a resident of Maryland. Mr. Thompson purchased and used Roundup for at least 20 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2009.

66. Plaintiff Cheryl Trowbridge is a resident of Washington and was at all relevant times a resident of Washington. Ms. Trowbridge purchased and used Roundup for at least 30 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

67. Plaintiff Eduardo Vazquez is a resident of Maryland and was at all relevant times a resident of Maryland. Mr. Vazquez purchased and used Roundup for at least 15 continuous years through approximately 2006, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2006.

68. Plaintiff Lucinda Whitley is a resident of North Carolina and was at all relevant times a resident of North Carolina. Ms. Whitley purchased and used Roundup for several continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2012.

69. Plaintiff Loren Wilhelm is a resident of Wisconsin and was at all relevant times a resident of Wisconsin. Mr. Wilhelm purchased and used Roundup for at least 20 continuous years through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2011.

70. Plaintiff Barry Willis is a resident of Washington and was at all relevant times a resident of Washington. Mr. Willis purchased and used Roundup for at least 35 continuous years through approximately 2017, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2010.

71. Plaintiff Thomas Zupan is a resident of Connecticut and was at all relevant times a resident of Connecticut. Mr. Zupan purchased and used Roundup for at least 15 continuous

Electronically Filed - St. Louis County - February 27, 2018 - 10:14 AM

years through approximately 2015, and was diagnosed with a form of Non-Hodgkin's lymphoma in 2011.

72.    Plaintiff Brenda Coleman is the wife of Joe Coleman, deceased, and lives in Kentucky. She is the next of kin and Personal Representative of the Estate of Joe Coleman, a Kentucky Estate. At the time of his death, Mr. Coleman was a resident of Kentucky. Mr. Coleman purchased and used Roundup for 15 continuous years through 2012, and was diagnosed with a form of Non-Hodgkin's Lymphoma in 2000. Mr. Coleman died of his injuries in 2014.

73.    Plaintiff Kelly Allen is the daughter of Judith Keehn, deceased, and lives in Illinois. She is the next of kin and Personal Representative of the Estate of Judith Keehn, an Illinois Estate. At the time of her death, Ms. Keehn was a resident of Illinois. Ms. Keehn purchased and used Roundup for 10 continuous years through 2010, and was diagnosed with a form of Non-Hodgkin's Lymphoma in 2015. Ms. Keehn died of her injuries in 2016.

74.    Plaintiff Patricia Woods-Smithhart is the wife of Claude Smithhart, deceased, and lives in Texas. She is the next of kin and Personal Representative of the Estate of Claude Smithhart, a Texas Estate. At the time of his death, Mr. Smithhart was a resident of Texas. Mr. Smithhart purchased and used Roundup for 40 continuous years through 2015, and was diagnosed with a form of Non-Hodgkin's Lymphoma in 2016. Mr. Smithhart died of his injuries in 2016.

## **Defendant**

75.    Defendant Monsanto Company ("Monsanto") is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.

76.    At all times relevant to this petition, Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup®.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

## II.    **INTRODUCTION**

77.    In 1970, Defendant Monsanto Company discovered the herbicidal properties of glyphosate and began marketing it in products in 1974 under the brand name Roundup®. Roundup® is a non-selective herbicide used to kill weeds that commonly compete with the growing of crops. By 2001, glyphosate had become the most-used active ingredient in American agriculture with 85–90 millions of pounds used annually. That number grew to 185 million pounds by 2007. As of 2013, glyphosate was the world's most widely used herbicide.

78.    Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate. As of 2009, Monsanto was the world's leading producer of seeds, accounting for 27% of the world seed market. The majority of these seeds are of the Roundup Ready® brand. The stated advantage of Roundup Ready® crops is that they substantially improve a farmer's ability to control weeds, since glyphosate can be sprayed in the fields during the growing season without harming their crops. In 2010, an estimated 70% of corn and cotton, and 90% of soybean fields in the United States were Roundup Ready®.

79.    Monsanto's glyphosate products are registered in 130 countries and approved for use on over 100 different crops. They are ubiquitous in the environment. Numerous studies confirm that glyphosate is found in rivers, streams, and groundwater in agricultural areas where Roundup® is used. It has been found in food, in the urine of agricultural workers, and even in the urine of urban dwellers who are not in direct contact with glyphosate.

80.    On March 20, 2015, the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), issued an evaluation of several herbicides, including glyphosate. That evaluation was based, in part, on studies of exposures to glyphosate in

18

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

several countries around the world, and it traces the health implications from exposure to glyphosate since 2001.

81.    On July 29, 2015, IARC issued the formal monograph relating to glyphosate. In that monograph, the IARC Working Group provides a thorough review of the numerous studies and data relating to glyphosate exposure in humans.

82.    The IARC Working Group classified glyphosate as a Group 2A herbicide, which means that it is probably carcinogenic to humans. The IARC Working Group concluded that the cancers most associated with glyphosate exposure are non-Hodgkin lymphoma and other hematopoietic cancers, including lymphocytic lymphoma/chronic lymphocytic leukemia, B-cell lymphoma, and multiple myeloma.

83.    The IARC evaluation is significant. It confirms what has been believed for years: that glyphosate is toxic to humans.

84.    Nevertheless, Monsanto, since it began selling Roundup®, has represented it as safe to humans and the environment. Indeed, Monsanto has repeatedly proclaimed and continues to proclaim to the world, and particularly to United States consumers, that glyphosate-based herbicides, including Roundup®, create no unreasonable risks to human health or to the environment.

## III.    JURISDICTION AND VENUE

85.    At all times relevant hereto, Monsanto was in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, labeling, and packaging and Monsanto was in the business of marketing, promoting, and/or advertising Roundup® products in the State of Missouri and the County of St. Louis.

86.     At all times relevant hereto, Monsanto was a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri, and therefore is a local defendant for purposes of removal and diversity jurisdiction.

87.     Plaintiffs have timely filed this lawsuit less than two years from the time the Plaintiffs knew or reasonably knew of the injury and that it may have been wrongfully caused.

88.     Venue is proper in the St. Louis County pursuant to RSMo. §508.010.5(1) because this is a tort case in which Plaintiffs were first injured outside of Missouri, and the registered agent for Defendant Monsanto is located in St. Louis County.

## IV.     FACTS

89.     Glyphosate is a broad-spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world.

90.     Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions and fruit, where it interferes with the plant's ability to form aromatic amino acids necessary for protein synthesis. Treated plants generally die within two to three days. Because plants absorb glyphosate, it cannot be completely removed by washing or peeling produce or by milling, baking, or brewing grains.

91.     For nearly 40 years, farms across the world have used Roundup® without knowing of the dangers its use poses. That is because when Monsanto first introduced Roundup®, it touted glyphosate as a technological breakthrough: it could kill almost every weed without causing harm either to people or to the environment. Of course, history has shown that not to be true. According to the WHO, the main chemical ingredient of Roundup®—glyphosate—is a probable cause of cancer. Those most at risk are farm workers and other individuals with workplace exposure to Roundup®, such as workers in garden centers, nurseries, and landscapers. Agricultural workers

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

are, once again, victims of corporate greed. Monsanto assured the public that Roundup® was harmless. In order to prove this, Monsanto championed falsified data and attacked legitimate studies that revealed its dangers. Monsanto led a prolonged campaign of misinformation to convince government agencies, farmers, and the general population that Roundup® was safe.

### The Discovery of Glyphosate and Development of Roundup®

92.     The herbicidal properties of glyphosate were discovered in 1970 by Monsanto chemist John Franz. The first glyphosate-based herbicide was introduced to the market in the mid-1970s under the brand name Roundup®. From the outset, Monsanto marketed Roundup® as a "safe" general-purpose herbicide for widespread commercial and consumer use; Monsanto still markets Roundup® as safe today.

### Registration of Herbicides under Federal Law

93.     The manufacture, formulation and distribution of herbicides, such as Roundup®, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA" or "Act"), 7 U.S.C. § 136 et seq. FIFRA requires that all pesticides be registered with the Environmental Protection Agency ("EPA" or "Agency") prior to their distribution, sale, or use, except as described by the Act. 7 U.S.C. § 136a(a).

94.     Because pesticides are toxic to plants, animals, and humans, at least to some degree, the EPA requires as part of the registration process, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment. Registration by the EPA, however, is not an assurance or finding of safety. The determination the Agency must make in registering or re-registering a product is not that the product is "safe," but rather that use of the product in

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D).

95.     FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). FIFRA thus requires EPA to make a risk/benefit analysis in determining whether a registration should be granted or allowed to continue to be sold in commerce.

96.     The EPA registered Roundup® for distribution, sale, and manufacture in the United States and the States of Missouri.

97.     FIFRA generally requires that the registrant, Monsanto in the case of Roundup®, conducts the health and safety testing of pesticide products. The EPA has protocols governing the conduct of tests required for registration and the laboratory practices that must be followed in conducting these tests. The data produced by the registrant must be submitted to the EPA for review and evaluation. The government is not required, nor is it able, however, to perform the product tests that are required of the manufacturer.

98.     The evaluation of each pesticide product distributed, sold, or manufactured is completed at the time the product is initially registered. The data necessary for registration of a pesticide has changed over time. The EPA is now in the process of re-evaluating all pesticide products through a Congressionally-mandated process called "re-registration." 7 U.S.C. § 136a-1. In order to reevaluate these pesticides, the EPA is demanding the completion of additional tests and the submission of data for the EPA's review and evaluation.

99.     In the case of glyphosate, and therefore Roundup®, the EPA had planned on releasing its preliminary risk assessment —in relation to the re-registration process—no later than

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

July 2015. The EPA completed its review of glyphosate in early 2015, but it delayed releasing the risk assessment pending further review in light of the WHO's health-related findings.

### *Scientific Fraud Underlying the Marketing and Sale of Glyphosate/Roundup*

100.    Based on early studies that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as possibly carcinogenic to humans (Group C) in 1985. After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to evidence of non-carcinogenicity in humans (Group E) in 1991. In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer: "It should be emphasized, however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

101.    On two occasions, the EPA found that the laboratories hired by Monsanto to test the toxicity of its Roundup® products for registration purposes committed fraud.

102.    In the first instance, Monsanto, in seeking initial registration of Roundup® by EPA, hired Industrial Bio-Test Laboratories ("IBT") to perform and evaluate pesticide toxicology studies relating to Roundup®. IBT performed about 30 tests on glyphosate and glyphosate-containing products, including nine of the 15 residue studies needed to register Roundup®.

103.    In 1976, the United States Food and Drug Administration ("FDA") performed an inspection of Industrial Bio-Test Industries ("IBT") that revealed discrepancies between the raw data and the final report relating to the toxicological impacts of glyphosate. The EPA subsequently audited IBT; it too found the toxicology studies conducted for the Roundup® herbicide to be invalid. An EPA reviewer stated, after finding "routine falsification of data" at IBT, that it was

Case: MDL No. 2741 Document 526-3 Filed 03/15/18 Page 24 of 59 PageID #: 44

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

"hard to believe the scientific integrity of the studies when they said they took specimens of the uterus from male rabbits."

104.    Three top executives of IBT were convicted of fraud in 1983.

105.    In the second incident of data falsification, Monsanto hired Craven Laboratories in 1991 to perform pesticide and herbicide studies, including for Roundup®. In that same year, the owner of Craven Laboratories and three of its employees were indicted, and later convicted, of fraudulent laboratory practices in the testing of pesticides and herbicides.

106.    Despite the falsity of the tests that underlie its registration, within a few years of its launch, Monsanto was marketing Roundup® in 115 countries.

### The Importance of Roundup® to Monsanto's Market Dominance Profits

107.    The success of Roundup® was key to Monsanto's continued reputation and dominance in the marketplace. Largely due to the success of Roundup® sales, Monsanto's agriculture division was out-performing its chemicals division's operating income, and that gap increased yearly. But with its patent for glyphosate expiring in the United States in the year 2000, Monsanto needed a strategy to maintain its Roundup® market dominance and to ward off impending competition.

108.    In response, Monsanto began the development and sale of genetically engineered Roundup Ready® seeds in 1996. Since Roundup Ready® crops are resistant to glyphosate; farmers can spray Roundup® onto their fields during the growing season without harming the crop. This allowed Monsanto to expand its market for Roundup® even further; by 2000, Monsanto's biotechnology seeds were planted on more than 80 million acres worldwide and nearly 70% of American soybeans were planted from Roundup Ready® seeds. It also secured Monsanto's

dominant share of the glyphosate/Roundup® market through a marketing strategy that coupled proprietary Roundup Ready® seeds with continued sales of its Roundup® herbicide.

109.    Through a three-pronged strategy of increased production, decreased prices, and by coupling with Roundup Ready® seeds, Roundup® became Monsanto's most profitable product. In 2000, Roundup® accounted for almost $2.8 billion in sales, outselling other herbicides by a margin of five to one, and accounting for close to half of Monsanto's revenue. Today, glyphosate remains one of the world's largest herbicides by sales volume.

### *Monsanto has known for decades that it falsely advertises the safety of Roundup®.*

110.    In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup ® products. Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup®, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish. Among the representations the NYAG found deceptive and misleading about the human and environmental safety of Roundup® are the following:

a)          Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences ...

b)    And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

c)    Roundup biodegrades into naturally occurring elements.

d)    Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation.

Electronically Filed - St. Louis County - February 27, 2018 - 10:14 AM

e)     This non-residual herbicide will not wash or leach in the soil. It ... stays where you apply it.

f)     You can apply Accord with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Accord into natural products.

g)     Glyphosate is less toxic to rats than table salt following acute oral ingestion.

h)     Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

i)     You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

j)     "Roundup can be used where kids and pets will play and breaks down into natural material." This ad depicts a person with his head in the ground and a pet dog standing in an area which has been treated with Roundup.

111.     On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

a)   its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk. ***

b)  its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable ***

Case MDL No. 2741 Document 526-3 Filed 03/15/18 Page 52 of 75
Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

c)  its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means. ***

d)  its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics." * * *

e)  glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides;

f)  its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

112.    Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief still has not done so today.

113.    In 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup®. The French court affirmed an earlier judgement that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean."

### *Classifications and Assessments of Glyphosate*

114.    The IARC process for the classification of glyphosate followed the stringent procedures for the evaluation of a chemical agent. Over time, the IARC Monograph program has reviewed 980 agents. Of those reviewed, it has determined 116 agents to be Group 1 (Known Human Carcinogens); 73 agents to be Group 2A (Probable Human Carcinogens); 287 agents to be Group 2B (Possible Human Carcinogens); 503 agents to be Group 3 (Not Classified); and one agent to be Probably Not Carcinogenic.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

115.    The established procedure for IARC Monograph evaluations is described in the IARC Programme's Preamble. Evaluations are performed by panels of international experts, selected on the basis of their expertise and the absence of actual or apparent conflicts of interest.

116.    One year before the Monograph meeting, the meeting is announced and there is a call both for data and for experts. Eight months before the Monograph meeting, the Working Group membership is selected and the sections of the Monograph are developed by the Working Group members. One month prior to the Monograph meeting, the call for data is closed and the various draft sections are distributed among Working Group members for review and comment. Finally, at the Monograph meeting, the Working Group finalizes review of all literature, evaluates the evidence in each category, and completes the overall evaluation. Within two weeks after the Monograph meeting, the summary of the Working Group findings is published in Lancet Oncology, and within a year after the meeting, the final Monograph is finalized and published.

117.    In assessing an agent, the IARC Working Group reviews the following information:

    a)  human, experimental, and mechanistic data;

    b)  all pertinent epidemiological studies and cancer bioassays; and

    c)  representative mechanistic data. The studies must be publicly available and have sufficient detail for meaningful review, and reviewers cannot be associated with the underlying study.

118.    In March 2015, IARC reassessed glyphosate. The summary published in The Lancet Oncology reported that glyphosate is a Group 2A agent and probably carcinogenic in humans.

119.    On July 29, 2015, IARC issued its Monograph for glyphosate, Monograph 112. For Volume 112, the volume that assessed glyphosate, a Working Group of 17 experts from 11

countries met at IARC from March 3–10, 2015, to assess the carcinogenicity of certain herbicides, including glyphosate. The March meeting culminated nearly a one-year review and preparation by the IARC Secretariat and the Working Group, including a comprehensive review of the latest available scientific evidence. According to published procedures, the Working Group considered "reports that have been published or accepted for publication in the openly available scientific literature" as well as "data from governmental reports that are publicly available."

120.    The studies considered the following exposure groups: occupational exposure of farmers and tree nursery workers in the United States, forestry workers in Canada and Finland, and municipal weed-control workers in the United Kingdom; and para-occupational exposure in farming families.

121.    Glyphosate was identified as the second-most used household herbicide in the United States for weed control between 2001 and 2007 and the most heavily used herbicide in the world in 2012.

122.    Exposure pathways are identified as air (especially during spraying), water, and food. Community exposure to glyphosate is widespread and found in soil, air, surface water, and groundwater, as well as in food.

123.    The assessment of the IARC Working Group identified several case control studies of occupational exposure in the United States, Canada, and Sweden. These studies show a human health concern from agricultural and other work-related exposure to glyphosate.

124.    The IARC Working Group found an increased risk between exposure to glyphosate and non-Hodgkin lymphoma ("NHL") and several subtypes of NHL, and the increased risk persisted after adjustment for other pesticides.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

125.     The IARC Working Group also found that glyphosate caused DNA and chromosomal damage in human cells. One study in community residents reported increases in blood markers of chromosomal damage (micronuclei) after glyphosate formulations were sprayed.

126.     In male CD-1 mice, glyphosate induced a positive trend in the incidence of a rare tumor, renal tubule carcinoma. A second study reported a positive trend for haemangiosarcoma in male mice. Glyphosate increased pancreatic islet-cell adenoma in male rats in two studies. A glyphosate formulation promoted skin tumors in an initiation-promotion study in mice.

127.     The IARC Working Group also noted that glyphosate has been detected in the urine of agricultural workers, indicating absorption. Soil microbes degrade glyphosate to aminomethylphosphoric acid (AMPA). Blood AMPA detection after exposure suggests intestinal microbial metabolism in humans.

128.     The IARC Working Group further found that glyphosate and glyphosate formulations induced DNA and chromosomal damage in mammals, and in human and animal cells in utero.

129.     The IARC Working Group also noted genotoxic, hormonal, and enzymatic effects in mammals exposed to glyphosate. Essentially, glyphosate inhibits the biosynthesis of aromatic amino acids, which leads to several metabolic disturbances, including the inhibition of protein and secondary product biosynthesis and general metabolic disruption.

130.     The IARC Working Group also reviewed an Agricultural Health Study, consisting of a prospective cohort of 57,311 licensed pesticide applicators in Iowa and North Carolina. While this study differed from others in that it was based on a self-administered questionnaire, the results support an association between glyphosate exposure and Multiple Myeloma, Hairy Cell Leukemia (HCL), and Chronic Lymphocytic Leukemia (CLL), in addition to several other cancers.

30

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

*Other Earlier Findings About Glyphosate's Dangers to Human Health*

131.    The EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations publication, relating to glyphosate. This technical fact sheet predates the IARC March 20, 2015, evaluation. The fact sheet describes the release patterns for glyphosate as follows:

*Release Patterns*

132.    Glyphosate is released to the environment in its use as a herbicide for controlling woody and herbaceous weeds on forestry, right-of-way, cropped and non-cropped sites. These sites may be around water and in wetlands. It may also be released to the environment during its manufacture, formulation, transport, storage, disposal, and cleanup, and from spills. Since glyphosate is not a listed chemical in the Toxics Release Inventory, data on releases during its manufacture and handling are not available. Occupational workers and home gardeners may be exposed to glyphosate by inhalation and dermal contact during spraying, mixing, and cleanup. They may also be exposed by touching soil and plants to which glyphosate was applied. Occupational exposure may also occur during glyphosate's manufacture, transport storage, and disposal.

133.    In 1995, the Northwest Coalition for Alternatives to Pesticides reported that in California, the state with the most comprehensive program for reporting of pesticide-caused illness, glyphosate was the third most commonly-reported cause of pesticide illness among agricultural workers.

*Recent Worldwide Bans on Roundup®/Glyphosate*

134.    Several countries around the world have instituted bans on the sale of Roundup® and other glyphosate-containing herbicides, both before and since IARC first announced its

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

assessment for glyphosate in March 2015, and more countries undoubtedly will follow suit as the dangers of the use of Roundup® are more widely known. The Netherlands issued a ban on all glyphosate-based herbicides in April 2014, including Roundup®, which took effect by the end of 2015. In issuing the ban, the Dutch Parliament member who introduced the successful legislation stated: "Agricultural pesticides in user-friendly packaging are sold in abundance to private persons. In garden centers, Roundup® is promoted as harmless, but unsuspecting customers have no idea what the risks of this product are. Especially children are sensitive to toxic substances and should therefore not be exposed to it."

135.    The Brazilian Public Prosecutor in the Federal District requested that the Brazilian Justice Department suspend the use of glyphosate.

136.    France banned the private sale of Roundup® and glyphosate following the IARC assessment for Glyphosate.

137.    Bermuda banned both the private and commercial sale of glyphosates, including Roundup®. The Bermuda government explained its ban as follows: "Following a recent scientific study carried out by a leading cancer agency, the importation of weed spray 'Roundup' has been suspended."

138.    The Sri Lankan government banned the private and commercial use of glyphosates, particularly out of concern that glyphosate has been linked to fatal kidney disease in agricultural workers.

139.    The government of Columbia announced its ban on using Roundup® and glyphosate to destroy illegal plantations of coca, the raw ingredient for cocaine, because of the WHO's finding that glyphosate is probably carcinogenic.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

## EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

140.    Plaintiffs incorporate by reference all prior paragraphs of this Petition as if fully set forth herein.

141.    The running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs the true risks associated with Roundup and glyphosate.

142.    At all relevant times, Defendant has maintained that Roundup is safe, non-toxic, and non-carcinogenic.

143.    Indeed, even as of July 2016, Defendant continued to represent to the public that "Regulatory authorities and independent experts around the world have reviewed numerous long-term/carcinogenicity and genotoxicity studies and *agree* that there is *no evidence* that glyphosate, the active ingredient in Roundup® brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic" (emphasis added).[1]

144.    As a result of Defendant's actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that Roundup and/or glyphosate contact, exposed Plaintiffs to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

145.    Furthermore, Defendant is estopped from relying on any statute of limitations because of its fraudulent concealment of the true character, quality and nature of Roundup. Defendant was under a duty to disclose the true character, quality, and nature of Roundup because this was non-public information over which Defendant had and continues to have exclusive control, and because Defendant knew that this information was not available to Plaintiffs or to

---

[1] <u>Backgrounder - Glyphosate: No Evidence of Carcinogenicity</u>. Updated November 2014. (downloaded October 9 2015)

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

distributors of Roundup. In addition, Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

146.     Plaintiffs had no knowledge that Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by Defendant, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. Defendant had the ability to and did spend enormous amounts of money in furtherance of its purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks. Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks, and were forced to rely on only the Defendant's representations. Accordingly, Defendant is precluded by the discovery rule and/or the doctrine of fraudulent concealment from relying upon any statute of limitations.

## V.     CLAIMS

### COUNT I
### STRICT LIABILITY (DESIGN DEFECT)
### (AGAINST MONSANTO)

147.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

148.     Plaintiffs bring this strict liability claim against Monsanto for defective design.

149.     At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, manufacturing, selling, distributing, and Monsanto engaged in the marketing, packaging design, and promotion of Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiffs, thereby placing Roundup® products into the stream of commerce. These actions were under the ultimate control and supervision of Monsanto. At all

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

times relevant to this litigation, Monsanto designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Roundup® products used by the Plaintiffs, as described above.

150.    At all times relevant to this litigation, Roundup® products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiffs.

151.    At all times relevant to this litigation, Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in Missouri and throughout the United States, including Plaintiffs, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Monsanto.

152.    Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

153.    Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

154.    At all times relevant to this action, Monsanto knew or had reason to know that Roundup® products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Monsanto.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

155. Therefore, at all times relevant to this litigation, Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation, in one or more of the following ways:

a) When placed in the stream of commerce, Roundup® products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

b) When placed in the stream of commerce, Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c) When placed in the stream of commerce, Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

d) Monsanto did not sufficiently test, investigate, or study Roundup® products and, specifically, the active ingredient glyphosate.

e) Exposure to Roundup® and glyphosate-containing products presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

f) At the time of marketing its Roundup® products, Roundup® was defective in that exposure to Roundup® and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

g) Monsanto did not conduct adequate post-marketing surveillance of its Roundup® products.

h) Monsanto could have employed safer alternative designs and formulations.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

156.     Plaintiffs were exposed to Roundup® products in the course of their work, as described above, without knowledge of their dangerous characteristics.

157.     At all times relevant to this litigation, Plaintiffs used and/or were exposed to the use of Roundup® products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

158.     Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of exposure.

159.     The harm caused by Roundup® products far outweighed their benefit, rendering these products dangerous to an extent beyond that which an ordinary consumer would contemplate. Roundup® products were and are more dangerous than alternative products and Monsanto could have designed Roundup® products (including their packaging and sales aids) to make them less dangerous. Indeed, at the time that Monsanto designed Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

160.     At the time Roundup® products left Monsanto's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of those herbicides.

161.     Monsanto's defective design of Roundup® products was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Roundup® products, including the Plaintiffs herein.

162.     Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Monsanto is strictly liable to Plaintiffs.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

163.     The defects in Roundup® products caused or contributed to cause Plaintiffs' grave injuries, and, but for Monsanto's misconduct and omissions, Plaintiffs would not have sustained their injuries.

164.     Monsanto's conduct, as described above, was reckless. Monsanto risked the lives of consumers and users of its products, including Plaintiffs, with knowledge of the safety problems associated with Roundup® and glyphosate-containing products, and suppressed this knowledge from the general public. Monsanto made conscious decisions not to redesign, warn, or inform the unsuspecting public. Monsanto's reckless conduct warrants an award of aggravated damages.

165.     As a direct and proximate result of Monsanto placing defective Roundup® products into the stream of commerce, Plaintiffs have suffered and continue to suffer grave injuries, and have endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## COUNT II
## STRICT LIABILITY (FAILURE TO WARN)
## (AGAINST MONSANTO)

166.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

167.     Plaintiffs bring this strict liability claim against Monsanto for failure to warn.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

168.    At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiffs, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup® and, specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Monsanto.

169.    Monsanto researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Roundup® products, and in the course of same, directly advertised or marketed the products to consumers and end users, including the Plaintiffs, and therefore had a duty to warn of the risks associated with the use of Roundup® and glyphosate-containing products.

170.    At all times relevant to this litigation, Monsanto had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks. Monsanto had a continuing duty to warn the Plaintiffs of the dangers associated with Roundup® use and exposure. Monsanto, as manufacturer, seller, promoter, marketer, or distributor of chemical herbicides are held to the knowledge of an expert in the field.

171.    At the time of manufacture, Monsanto could have provided the warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

172.    At all times relevant to this litigation, Monsanto failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by these herbicides, including Plaintiffs.

173.    Despite the fact that Monsanto knew or should have known that Roundup® posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of these products and the carcinogenic characteristics of glyphosate, as described above, were known to Monsanto, or scientifically knowable to Monsanto through appropriate research and testing by known methods, at the time it distributed, marketed, promoted, supplied, or sold the product, and not known to end users and consumers, such as Plaintiffs.

174.    These products created significant risks of serious bodily harm to consumers, as alleged herein, and Monsanto failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to its products. Monsanto has wrongfully concealed information concerning the dangerous nature of Roundup® and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

175.    At all times relevant to this litigation, Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in Missouri and throughout the United States, including Plaintiffs, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, promoted, and marketed by Monsanto.

176.    Plaintiffs were exposed to Roundup® products in the course of their employment and/or personal use of Roundup, without knowledge of its dangerous characteristics.

Electronically Filed - St. Louis County - February 27, 2018 - 10:14 AM

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

177.     At all times relevant to this litigation, Plaintiffs used and/or were exposed to the use of Roundup® products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

178.     Plaintiffs could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products prior to or at the time of Plaintiffs' exposure. Plaintiffs relied upon the skill, superior knowledge, and judgment of Monsanto.

179.     These products were defective because the minimal warnings disseminated with Roundup® products were inadequate, and they failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including agricultural and landscaping applications.

180.     The information that Monsanto did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiffs to utilize the products safely and with adequate protection. Instead, Monsanto disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

181.    To this day, Monsanto has failed to adequately and accurately warn of the true risks of Plaintiffs' injuries associated with the use of and exposure to Roundup® and its active ingredient glyphosate, a probable carcinogen.

182.    As a result of their inadequate warnings, Roundup® products were defective and unreasonably dangerous when they left the possession and/or control of Monsanto, were distributed, marketed, and promoted by Monsanto, and used by Plaintiffs in their work.

183.    Monsanto is liable to Plaintiffs for injuries caused by its negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of these products and the risks associated with the use of or exposure to Roundup® and glyphosate.

184.    The defects in Roundup® products caused or contributed to cause Plaintiffs' injuries, and, but for this misconduct and omissions, Plaintiffs would not have sustained their injuries.

185.    Had Monsanto provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with Roundup® products, Plaintiffs could have avoided the risk of developing injuries as alleged herein.

186.    As a direct and proximate result of Monsanto placing defective Roundup® products into the stream of commerce, Plaintiffs have suffered severe injuries and have endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other and further

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## COUNT III
## NEGLIGENCE
## (AGAINST MONSANTO)

187.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

188.     Monsanto, directly or indirectly, caused Roundup® products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiffs.

189.     At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

190.     At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup® products. Monsanto's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup®, and, in particular, its active ingredient glyphosate.

191.     At all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and specifically, the carcinogenic properties of the chemical glyphosate.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

192. Accordingly, at all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known that use of or exposure to its Roundup® products could cause or be associated with Plaintiffs' injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs.

193. Monsanto also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup® and glyphosate-containing products.

194. As such, Monsanto breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Monsanto manufactured, marketed, promoted, and sold defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in these products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

195. Despite an ability and means to investigate, study, and test these products and to provide adequate warnings, Monsanto has failed to do so. Indeed, Monsanto has wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

196. Monsanto was negligent in the following respects:

a) Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup® products without thorough and adequate pre- and post-market testing;

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

b) Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;

c) Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture and horticulture;

d) Failing to use reasonable and prudent care in the design, research, manufacture, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

e) Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

f) Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Monsanto could reasonably foresee would use and be exposed to its Roundup® products;

g) Failing to disclose to Plaintiffs, users/consumers, and the general public that use of and exposure to Roundup® presented severe risks of cancer and other grave illnesses;

h) Failing to warn Plaintiffs, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other consumers;

i) Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

j)   Representing that its Roundup® products were safe for their intended use when, in fact, Monsanto knew or should have known that the products were not safe for their intended purpose;

k)   Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

l)   Advertising, marketing, and recommending the use of the Roundup® products, while concealing and failing to disclose or warn of the dangers known by Monsanto to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

m) Continuing to disseminate information to its consumers, which indicate or imply that Monsanto's Roundup® products are not unsafe for use in the agricultural and horticultural industries; and

n)   Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

197.   Monsanto knew and/or should have known that it was foreseeable that consumers such as Plaintiffs would suffer injuries as a result of Monsanto's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution, and sale of Roundup®.

198.   Plaintiffs did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

199.   Monsanto's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiffs suffered, as described herein.

200.   Monsanto's conduct, as described above, was reckless. Monsanto regularly risked the lives of consumers and users of its products, including Plaintiffs, with full knowledge of the

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

dangers of these products. Monsanto has made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiffs. Monsanto's reckless conduct therefore warrants an award of aggravated or punitive damages.

201.    As a proximate result of Monsanto's wrongful acts and omissions in placing defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Plaintiffs have suffered severe and permanent physical and emotional injuries. Plaintiffs have endured pain and suffering and have suffered economic losses (including significant expenses for medical care and treatment) in an amount to be determined.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

### COUNT IV
### (WRONGFUL DEATH)
### (AGAINST MONSANTO)

202.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

203.    Plaintiffs bring this claim on behalf of and for the benefit of the Plaintiff Joe Coleman, Plaintiff Judith Keehn, Plaintiff Claude Smithhart (herein after referred to as "Decedent Plaintiffs") and their lawful beneficiaries.

204.    As a direct and proximate result of the conduct of the Defendants and the defective nature of Roundup as outlined above, Decedent Plaintiffs suffered bodily injury resulting in pain

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

and suffering, disability, disfigurement, mental anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses for hospitalization, medical and nursing treatment, loss of earnings, loss of ability to earn, funeral expenses and death.

205. As a direct and proximate cause of the conduct of Defendant, Decedent Plaintiffs' beneficiaries have incurred hospital, nursing and medical expenses, and estate administration expenses as a result of Decedent Plaintiffs' death. Decedent Plaintiffs brings this claim on behalf of their lawful beneficiaries for these damages and for all pecuniary losses under applicable state statutory and/or common laws.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## COUNT V
## (SURVIVAL ACTION)
## (AGAINST MONSANTO)

189. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

190. As a direct and proximate result of the conduct of Defendant, where appropriate, Decedent Plaintiffs, prior to their death, were obligated to spend various sums of money to treat their injuries, which debts have been assumed by their Estates. As a direct and proximate cause of the aforesaid, Decedent Plaintiffs endured pain and suffering, mental anguish and impairment of the enjoyment of life, until the date of their deaths; and, as a direct and proximate result of the aforesaid, Decedent Plaintiffs lawful beneficiaries suffered a loss of earnings and earning capacity.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

Decedent Plaintiffs brings this claim on behalf of their respective estates under applicable state statutory and/or common laws.

191.     As a direct and proximate result of the conduct of Defendant, Decedent Plaintiffs and their spouse and heirs, until the time of their death, suffered a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

192.     As a direct and proximate result of the aforesaid, and including the observance of the suffering and physical deterioration of Decedent Plaintiffs until the date of their death, Decedent Plaintiffs' spouses and heirs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and medical treatment. Decedent Plaintiffs' spouses and/or heirs, Personal Representative of their respective estates, brings the claim on behalf of the estate for damages under applicable statutory and/or common laws, and in their own right.

WHEREFORE, Decedent Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## VI.     JURY DEMAND

193.     PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS.

Electronically Filed - St Louis County - February 27, 2018 - 10:14 AM

**Dated:** February 27, 2018

Respectfully Submitted,

/s/ Eric D. Holland
Eric D. Holland (Mo. Bar # 39935)
R. Seth Crompton (Mo. Bar #57448)
Patrick R. Dowd (Mo. Bar #64820)
**HOLLAND LAW FIRM, LLC**
300 N. Tucker, Suite 801
St. Louis, MO 63101
Tel: (315) 241-8111
Fax: (314) 241-5554
Email: eholland@allfela.com
Email: scrompton@allfela.com
Email: pdowd@allfela.com

*Attorneys for Plaintiffs*

David J. Wool, CO Bar No. 44614
Aimee H. Wagstaff, CO Bar No. 36819
*To be Admitted Pro Hac Vice*
**ANDRUS WAGSTAFF, P.C.**
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
aimee.wagstaff@andruswagstaff.com
david.wool@andruswagstaff.com