# U.S. District Court
## Eastern District of Missouri (St. Louis)
## CIVIL DOCKET FOR CASE #: 4:18-cv-01806-SPM

Bouzeanes et al v. Monsanto Company
Assigned to: Magistrate Judge Shirley Padmore Mensah
Case in other court: Circuit Court, St. Louis County, Missouri,
　　　　　18SL-CC03814
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 10/24/2018
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**George Bouzeanes**　　　　　　represented by　**James T. Corrigan**
　　　　　　　　　　　　　　　　　　　O'LEARY AND SHELTON, LLC
　　　　　　　　　　　　　　　　　　　The University Tower
　　　　　　　　　　　　　　　　　　　1034 S. Brentwood Blvd., Penthouse 1-A
　　　　　　　　　　　　　　　　　　　St. Louis, MO 63117
　　　　　　　　　　　　　　　　　　　314-405-9000
　　　　　　　　　　　　　　　　　　　Email: corrigan@osclaw.com
　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Campbell**　　　　　　represented by　**James T. Corrigan**
　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Olivier Durand**　　　　　　represented by　**James T. Corrigan**
　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Johanne Durand**　　　　　　represented by　**James T. Corrigan**
　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Hans Elmer**　　　　　　represented by　**James T. Corrigan**
　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kay Elmes**　　　　　　represented by　**James T. Corrigan**
　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven Ezell**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Angela Ezell**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Warren Garnier**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Ham**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Frank Lattimore**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daphnie Lattimore**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Frank Morton**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charlotte Morton**      represented by   **James T. Corrigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steve Vitale**      represented by   **James T. Corrigan**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Edward Zabolotny                    represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

Denton Bray                         represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

Frederick Forward                   represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

Donald Hurt                         represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

Freddie Martin                      represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

William Pelicot                     represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

Robert Rauh                         represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

Richard Richards                    represented by **James T. Corrigan**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

| | |
|---|---|
| **George Yaekle** | represented by **James T. Corrigan** |
| | (See above for address) |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | |
|---|---|
| **Danny White** | represented by **James T. Corrigan** |
| | (See above for address) |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | |
|---|---|
| **Melissa White** | represented by **James T. Corrigan** |
| | (See above for address) |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | |
|---|---|
| **Monsanto Company** | represented by **Erik L. Hansell** |
| | HUSCH BLACKWELL, LLP |
| | 190 Carondelet Plaza |
| | Suite 600 |
| | St. Louis, MO 63105 |
| | 314-480-1500 |
| | Fax: 314-480-1505 |
| | Email: erik.hansell@huschblackwell.com |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 10/24/2018 | 1 | NOTICE OF REMOVAL from St. Louis County Circuit Court, case number 18SL-CC03814, with receipt number 0865-6835867, in the amount of $400 Jury Demand,, filed by Monsanto Company. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet, # 3 Original Filing Form)(Hansell, Erik) (Entered: 10/24/2018) |
| 10/24/2018 | 2 | NOTICE OF FILING NOTICE OF REMOVAL filed by Defendant Monsanto Company Sent To: Plaintiff (Hansell, Erik) (Entered: 10/24/2018) |
| 10/25/2018 | 3 | SUPPLEMENTAL - State Docket sheet. (BAK) (Entered: 10/25/2018) |
| 10/25/2018 | 4 | Petition (Removal/Transfer) Received From: Circuit Court, St. Louis County, Missouri, filed by Frank Lattimore, William Pelicot, Steven Ezell, Melissa White, Michael Campbell, Denton Bray, Robert Rauh, George Bouzeanes, Frederick Forward, Edward Zabolotny, Richard Richards, Frank Morton, Danny White, Kay Elmes, Olivier Durand, Warren Garnier, Daphnie Lattimore, Steve Vitale, Freddie Martin, Charlotte Morton, Angela Ezell, Johanne Durand, George Yaekle, Richard Ham, Donald Hurt, Hans Elmer.(BAK) (Entered: 10/25/2018) |
| 10/25/2018 | | Case Opening Notification: All parties must file the Notice Regarding Magistrate Judge Jurisdiction Form consenting to or opting out of the Magistrate Judge jurisdiction. Click here for the instructions. and all non-governmental organizational parties (corporations, |

| | | limited liability companies, limited liability partnerships) must file Disclosure of Organizational Interests Certificate (moed-0001.pdf). Judge Assigned: U.S. Magistrate Judge Shirley P. Mensah. (BAK) (Entered: 10/25/2018) |
|---|---|---|
| 10/25/2018 | 5 | ANSWER to Complaint by Monsanto Company.(Hansell, Erik) (Entered: 10/25/2018) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">10/25/2018 15:07:16</td></tr>
<tr><td>**PACER Login:**</td><td>hllp1982:2634105:4722683</td><td>**Client Code:**</td><td>1417.0049</td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>4:18-cv-01806-SPM</td></tr>
<tr><td>**Billable Pages:**</td><td>5</td><td>**Cost:**</td><td>0.50</td></tr>
</table>

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

GEORGE BOUZEANES, *et al.*,

        Plaintiffs,

        v.

MONSANTO COMPANY,

        Defendant.

Case No. 4:18-cv-1806

JURY TRIAL DEMANDED

## MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs' Complaint, except as set forth below. As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Although many paragraphs in the Complaint refer only to "Plaintiff," Monsanto nevertheless responds to the allegations in those paragraphs as if brought by any of the plaintiffs. Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in the fourth sentence of paragraph 1, Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") or other cancers and states that the scientific studies upon which the International Agency for Research on Cancer ("IARC") purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto denies the remaining allegations in paragraph 1.

2.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies those allegations.

3.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore denies those allegations.

4.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies those allegations.

5.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 and therefore denies those allegations.

6.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies those allegations.

7.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore denies those allegations.

8.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 8 and therefore denies those allegations.

9.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies those allegations.

12.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore denies those allegations.

13.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies those allegations.

14.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 14 and therefore denies those allegations.

15.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore denies those allegations.

16.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore denies those allegations.

17.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 17 and therefore denies those allegations.

18.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 18 and therefore denies those allegations.

19.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore denies those allegations.

20.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 20 and therefore denies those allegations.

21.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 21 and therefore denies those allegations.

22.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 22 and therefore denies those allegations.

23.    In response to the allegations in paragraph 23, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri.

24.     In response to the allegations in paragraph 24, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactures Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.

25.     In response to the allegations in paragraph 25, Monsanto denies that it has made fraudulent misrepresentations or otherwise engaged in fraudulent concealment.  The remaining allegations in paragraph 25 set forth conclusions of law for which no response is required or consist of attorney characterizations and are accordingly denied.

26.     Monsanto admits the allegations in the first and second sentences of paragraph 26. Monsanto also admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 26 and therefore denies those allegations.

27.     In response to the allegations in paragraph 27, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 27.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific

numbers and statistics provided in the remaining sentences of paragraph 27 and therefore denies those allegations.

28.     In response to the allegations in paragraph 28, Monsanto admits that its glyphosate products are registered in at least 130 countries and approved for use on over 100 different crops.  Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media. Monsanto denies the remaining allegations in paragraph 28.

29.     Monsanto admits the allegations in the first sentence of paragraph 29.  Monsanto denies the allegations in the second sentence of paragraph 29 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

30.     Monsanto admits the allegations in the first sentence of paragraph 30.  Monsanto denies the allegations in the second sentence of paragraph 30.

31.     In response to the allegations in paragraph 31, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 31.

32.     Monsanto denies the allegations in paragraph 32.

33.     In response to the allegations in paragraph 33, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based

herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 33 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

34.     Monsanto denies the allegations in paragraph 34.

35.     In response to the allegations in paragraph 35, Monsanto admits that its principal place of business is in St. Louis County, Missouri and that it is incorporated in Delaware.  The remaining allegations in paragraph 35 are conclusions of law for which no response is required.

36.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 36 regarding the timeliness of this lawsuit and therefore denies those allegations.  The remaining allegations in paragraph 36 set forth conclusions of law for which no response is required.

37.     The allegations in paragraph 37 set forth conclusions of law for which no response is required.

38.     The allegations in paragraph 38 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 39 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 and therefore denies those allegations.

40.     Monsanto admits the first sentence of paragraph 40.  Monsanto denies the
allegations in the second sentence of paragraph 40 because the impact of glyphosate on treated
plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto
denies the allegations in the third sentence of paragraph 40 to the extent that they suggest that
glyphosate is present in any plants at anything other than *de minimis* amounts well within
regulatory safety levels, as determined by EPA.

41.     In response to the allegations in paragraph 41, Monsanto admits that farmers have
safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining
allegations in paragraph 41.

42.     Monsanto admits the allegations in the first two sentences of paragraph 42 and
admits that at all relevant times it has marketed Roundup®-branded products in accord with
EPA's regulatory determinations under FIFRA.  Monsanto denies the remaining allegations in
paragraph 42.

43.     Monsanto admits the allegations in paragraph 43.

44.     In response to the allegations in paragraph 44, Monsanto admits that EPA requires
registrants of herbicides to submit extensive data in support of the human health and
environmental safety of their products and further admits that EPA will not register or approve
the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining
allegations in paragraph 44 set forth conclusions of law for which no response is required.

45.     The allegations in paragraph 45 set forth conclusions of law for which no
response is required.

46.     In response to the allegations in paragraph 46, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States, including in Missouri and Illinois.

47.     In response to the allegations in paragraph 47, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 47 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 47 set forth conclusions of law for which no response is required.

48.     Monsanto denies the allegations in paragraph 48 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 48 regarding such pesticide products generally.  The remaining allegations in paragraph 48 set forth conclusions of law for which no response is required.

49.     In response to the allegations in paragraph 49, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and that EPA has not released its final findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses

relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October

2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which

CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic

to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed,

lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion

that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]

Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

remaining allegations in paragraph 49 and therefore denies those allegations.

50.    In response to the allegations in paragraph 50, Monsanto admits that an EPA

review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with

respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded

that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

two EPA OPP reports and the EPA CARC Final Report discussed above, specific findings of

safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 50.

51.　　In response to the allegations in paragraph 51, Monsanto admits that it – along

with a large number of other companies and governmental agencies – was defrauded by two

chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct

testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct

toxicity tests of glyphosate. Monsanto denies that EPA's registration of glyphosate or any

glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 51 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

52.    In response to the allegations in paragraph 52, Monsanto admits that Industrial Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

53.    Monsanto denies the allegations in paragraph 53 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate. Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid. As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 53 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

54.    In response to the allegations in paragraph 54, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the

individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

55.     In response to the allegations in paragraph 55, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 55 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

56.     Monsanto denies the allegations in paragraph 56.

57.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 57 regarding alleged reliance by the public and EPA and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 57.

58.     Monsanto denies the allegations in paragraph 58.

59.     In response to the allegations in paragraph 59, Monsanto admits that in March 2015, the Joint Glyphosate Task Force issued a press release, which speaks for itself.  Monsanto denies the remaining allegations in paragraph 59.

60.     Monsanto admits the allegations in the first sentence of paragraph 60.  Monsanto denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that

OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution. On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 61 set forth conclusions of law for which no response is required.

62.     In response to the allegations in paragraph 62, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 62 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

63.     In response to the allegations in paragraph 63, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 63 and accordingly denies those allegations.  The remaining allegations in

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf

paragraph 63 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

64.     In response to the allegations in paragraph 64, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 64 and accordingly denies the same.  Monsanto denies the allegations in the last two sentences of paragraph 64.  The remaining allegations in paragraph 64 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

65.     In response to the allegations in paragraph 65, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 65 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

66.     In response to the allegations in paragraph 66, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 66 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

67.     Monsanto denies the allegations in paragraph 67.

68.     In response to the allegations in paragraph 68, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiffs' claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 69, which are not limited as of any specified date, and accordingly denies the same.

70.     In response to the allegations in paragraph 70, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 70.

71.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 71 and therefore denies those allegations.

72.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 72 and therefore denies those allegations.

73.     Monsanto denies the allegations in paragraph 73 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

74.     In response to the allegations in paragraph 74, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."  Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 74.

75.     In response to the allegations in paragraph 75, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

76.     The allegations in paragraph 76 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

77.     In response to the allegations in paragraph 77, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 77 are denied.

78.     In response to the allegations in paragraph 78, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

79.     Monsanto denies the allegations in paragraph 79.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

80.     In response to the allegations in paragraph 80, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

81.     In response to the allegations in paragraph 81, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity

17

studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 83.

84.     In response to the allegations in paragraph 84, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association

between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 85.

86.     In response to the allegations in paragraph 86, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

87.     In response to the allegations in paragraph 87, Monsanto admits that the Complaint accurately quotes from the identified document, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

88.     In response to the allegations in paragraph 88, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

89.     In response to the allegations in paragraph 89, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 89.

90.     In response to the allegations in paragraph 90, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto admits that following the IARC working group classification, in France, all non-professional plant protection products, including but not limited to glyphosate-based products, will be sold behind locked counters (no free sales).  Monsanto further admits that the French government has announced that beginning on January 1, 2019, the sale of non-professional lawn and garden products, including but not limited to non-professional use glyphosate-based products, is prohibited with certain exceptions.  Monsanto denies the remaining allegations in paragraph 91.

92.     In response to the allegations in paragraph 92, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 92.

93.     In response to the allegations in paragraph 93, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 93.

94.     In response to the allegations in paragraph 94, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has

explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto denies the remaining allegations in paragraph 94.

95. Monsanto incorporates by reference its responses to paragraphs 1 through 94 in response to paragraph 95 of plaintiffs' Complaint.

96. In response to the allegations in paragraph 96, Monsanto admits that plaintiffs purport to bring a claim for strict liability design defect, but denies any liability as to that claim.

97. In response to the allegations in paragraph 97, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiffs used Roundup®-branded products and therefore denies that allegation. Monsanto denies the remaining allegations in paragraph 97.

98. Monsanto denies the allegations in paragraph 98.

99. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 99 and therefore denies those allegations.

100. Monsanto denies the allegations in paragraph 100.

101. Monsanto denies the allegations in paragraph 101.

102. Monsanto denies the allegations in paragraph 102.

103. Monsanto denies the allegations in paragraph 103 and each of its subparts.

104.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 104 concerning plaintiffs' claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 104, including that Roundup®-branded products have "dangerous characteristics."

105.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 105 concerning plaintiffs' claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 105, including that Roundup®-branded products have "dangerous characteristics."

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto denies the allegations in paragraph 107.

108.    Monsanto denies the allegations in paragraph 108.

109.    Monsanto denies the allegations in paragraph 109.

110.    Monsanto denies the allegations in paragraph 110.

111.    Monsanto denies the allegations in paragraph 111.

112.    Monsanto denies the allegations in paragraph 112.

113.    Monsanto denies the allegations in paragraph 113.

In response to the "WHEREFORE" paragraph following paragraph 113, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

114.    Monsanto incorporates by reference its responses to paragraphs 1 through 113 in response to paragraph 114 of plaintiffs' Complaint.

115.    In response to the allegations in paragraph 115, Monsanto admits that plaintiffs purport to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

116.    Monsanto denies the allegations in paragraph 116.

117.    In response to the allegations in paragraph 117, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiffs or other entities identified purchased or used Roundup®-branded products and therefore denies that allegation.  The allegations in paragraph 117 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 117.

118.    The allegations in paragraph 118 set forth conclusions of law for which no response is required.

119.    Monsanto denies the allegations in paragraph 119.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

120.    Monsanto denies the allegations in paragraph 120.

121.    Monsanto denies the allegations in paragraph 121.

122.    Monsanto denies the allegations in paragraph 122.

123.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 123 and therefore denies those allegations.

124.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 124 concerning plaintiffs' alleged use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 124, including that Roundup®-branded products have "dangerous characteristics."

125.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 125 concerning plaintiffs' alleged use and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 125, including that Roundup®-branded products have "dangerous characteristics."

126.     Monsanto denies the allegations in paragraph 126.

127.     Monsanto denies the allegations in paragraph 127.

128.     Monsanto denies the allegations in paragraph 128.

129.     Monsanto denies the allegations in paragraph 129.

130.     Monsanto denies the allegations in paragraph 130.

131.     Monsanto denies the allegations in paragraph 131.

132.     Monsanto denies the allegations in paragraph 132.

133.     Monsanto denies the allegations in paragraph 133.

134.     Monsanto denies the allegations in paragraph 134.

In response to the "WHEREFORE" paragraph following paragraph 134, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

135.     Monsanto incorporates by reference its responses to paragraphs 1 through 134 in response to paragraph 135 of plaintiffs' Complaint.

136.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 136 regarding the specific products allegedly used by

plaintiffs or any advertising or marketing allegedly seen or considered by plaintiffs and therefore denies the allegations in paragraph 136.

137. The allegations in paragraph 137 set forth conclusions of law for which no response is required.

138. The allegations in paragraph 138 set forth conclusions of law for which no response is required.

139. Monsanto denies the allegations in paragraph 139.

140. Monsanto denies the allegations in paragraph 140.

141. Monsanto denies the allegations in paragraph 141. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

142. Monsanto denies the allegations in paragraph 142.

143. Monsanto denies the allegations in paragraph 143.

144. Monsanto denies the allegations in paragraph 144, including each of its subparts.

145. Monsanto denies the allegations in paragraph 145.

146. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 146 regarding plaintiffs' knowledge and therefore Monsanto denies those allegations. Monsanto denies the remaining allegations in paragraph 146, including that intended use and/or exposure to Roundup®-branded products causes any injuries.

147. Monsanto denies the allegations in paragraph 147.

148. Monsanto denies the allegations in paragraph 148.

149.     Monsanto denies the allegations in paragraph 149.  All labeling of Roundup®-
branded products has been and remains EPA-approved and in compliance with all federal
requirements under FIFRA.

In response to the "WHEREFORE" paragraph following paragraph 149, Monsanto
demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be
dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's
fees as allowed by law and such further and additional relief as this Court may deem just and
proper.

150.     In response to the allegations in paragraph 150, Monsanto denies that plaintiffs
have alleged fraud, let alone fraud with specificity.  Monsanto incorporates by reference its
responses to paragraphs 1 through 149 in response to paragraph 150 of plaintiffs' Complaint.

151.     Monsanto denies the allegations in paragraph 151.

152.     Monsanto denies the allegations in paragraph 152.

153.     Monsanto denies the allegations in paragraph 153.

154.     Monsanto denies the allegations in paragraph 154.

155.     Monsanto denies the allegations in paragraph 155.

156.     Monsanto denies the allegations in paragraph 156.

157.     Monsanto denies the allegations in paragraph 157.

158.     Monsanto denies the allegations in paragraph 158.

159.     Monsanto denies the allegations in paragraph 159.

In response to the "WHEREFORE" paragraph following paragraph 159 Monsanto
demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be
dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

fees as allowed by law and such further and additional relief as this Court may deem just and proper.

160.    In response to the allegations in paragraph 160, Monsanto denies that plaintiffs have alleged fraud, let alone fraud with specificity.  Monsanto incorporates by reference its responses to paragraphs 1 through 159 in response to paragraph 160 of plaintiffs' Complaint.

161.    Monsanto denies the allegations in paragraph 161.

162.    Monsanto denies the allegations in paragraph 162.

163.    Monsanto denies the allegations in paragraph 163.

164.    Monsanto denies the allegations in paragraph 164.

165.    Monsanto denies the allegations in paragraph 165.

166.    Monsanto denies the allegations in paragraph 166.

167.    Monsanto denies the allegations in paragraph 167.

168.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 168 regarding plaintiffs' actions, and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 168.

169.    Monsanto denies the allegations in paragraph 169.

170.    Monsanto denies the allegations in paragraph 170.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

171.    Monsanto denies the allegations in paragraph 171.

In response to the "WHEREFORE " paragraph following paragraph 171 Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

fees as allowed by law and such further and additional relief as this Court may deem just and proper.

172.    Monsanto incorporates by reference its responses to paragraphs 1 through 171 in response to paragraph 172 of plaintiffs' Complaint.

173.    The allegations in paragraph 173 set forth conclusions of law for which no response is required.  In addition, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 173 regarding the marital status of plaintiffs and accordingly denies those allegations.

174.    Monsanto denies the allegations in paragraph 174.

175.    In response to paragraph 175, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

176.    In response to the allegations in paragraph 176, Monsanto denies that it violated the laws of plaintiffs' home states or federal law and states that it complied with all applicable law regarding Roundup®-branded products.  The remaining allegations in paragraph 176 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies all such allegations.

177.    The allegations in paragraph 177 set forth conclusions of law for which no response is required.

178.    Monsanto denies the allegations in the first sentence of paragraph 178.  The second sentence of paragraph 178 sets forth a conclusion of law for which no response is required.

In response to the "WHEREFORE" paragraph following paragraph 178, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.      The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.      Venue is inconvenient for plaintiffs' claims.

3.      Plaintiffs' claims are improperly joined and should be severed.

4.      Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

5.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

6.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

7.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

8.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

9.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

10.     Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

11.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

12.     Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiffs' pre-existing medical conditions.

13.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims against Monsanto in whole or in part.

14.     Applicable statutes of limitations and/or repose bar plaintiffs' claims in whole or in part.

15.     Plaintiffs' misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims in whole or in part.

16.     If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damage resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

17.     Monsanto had no legal relationship or privity with plaintiffs and owed no duty to them by which liability could be attributed to it.

18.     Plaintiffs' claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19.     Plaintiffs' claims for punitive, exemplary, treble, and/or aggravated damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Alabama Constitution, the Arkansas Constitution, the California Constitution,  the Maryland Constitution, the Michigan Constitution, the Missouri Constitution, the Montana Constitution, the New York Constitution, the North Carolina Constitution, the Ohio Constitution, the Oklahoma Constitution, the Oregon Constitution, the Texas Constitution, the Virginia Constitution, and/or other applicable state constitutions.

20.     Plaintiffs' claims for punitive, exemplary, treble, and/or aggravated damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under the laws of Alabama, Arkansas, California, Maryland, Michigan, Missouri, Montana, New York, North Carolina, Ohio, Oklahoma, Oregon, Texas, Virginia, and/or other applicable state laws.

21.     Plaintiffs' claims for punitive, exemplary, treble, and/or aggravated damages are barred and/or limited by operation of state and/or federal law, including Michigan law; Ala. Code § 6-11-21; Missouri Rev. Stat. § 510.265.1; N.C. Gen. Stat. §§ 1D-15, 1D-25; Ohio Rev. Code Ann. § 2315.21; Tex. Civ. Prac. & Rem. Code Ann. §§ 41.004(a), 41.008(b); and Va. Code Ann. § 801-38.1.

22.     Monsanto's conduct and/or acts were not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of plaintiffs and/or the safety of the public.  Nor do any of Monsanto's conduct and/or acts demonstrate that Monsanto acted with a high degree of moral culpability.  In fact, Monsanto exercised reasonable care at all times alleged in the Complaint, and plaintiffs have failed to clearly establish any entitlement to punitive, exemplary, treble, and/or aggravated damages based on their allegations.

23.     Plaintiffs' claims are barred in whole or in part by plaintiffs' own contributory/comparative negligence.

24.     Plaintiffs' claims are barred in whole or in part by plaintiffs' own failure to mitigate damages.

25.     Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

26.     Plaintiffs' common law claims are barred, in whole or part, by application of the Ohio Products Liability Act ("OPLA"), Ohio Rev. Code Ann. §§ 2307.71-2307.80.

27.     Plaintiffs' strict liability claims are barred, in whole or in part, by the Alabama

Extended Manufacturer's Liability Doctrine; N.C. Gen. Stat. § 99B-1.1; and because Michigan

and Virginia do not recognize a cause of action for strict liability in tort.

28.     To the extent that plaintiffs recovered payments for their alleged injuries from any

collateral source(s) or other source(s), plaintiffs' recovery in this lawsuit, if any, shall be reduced

to the extent allowed by applicable law, including as allowed for under Missouri Rev. Stat. §

490.715 and NY CPLR § 4545.

29.     If plaintiffs or plaintiffs' decedents have been injured or damaged, no injury or

damages being admitted, plaintiffs' claims for damages are limited by M.D. Cts. & Jud. Proc. §

11-108.

30.     Plaintiffs' claims are barred, in whole or part, by application of Mich. Com. Laws

§ 600.2946 (4) and TEX. CIV. PRAC. & REM. CODE ANN. § 82.008.

31.     If plaintiffs have been injured or damaged, no injuries or damages being admitted,

such injuries or damages were not caused by a Monsanto product.

32.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims

that are governed by the laws of a state that does not recognize or limit such claims.

33.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws

of states that do not govern plaintiffs' claims.

34.     Plaintiffs have failed to allege fraud with sufficient particularity.

35.     Plaintiffs' recovery must be diminished in proportion to the percentage of

negligence attributed to plaintiffs.  Mont. Code Ann. § 27-1-702.  Plaintiffs' causes of action are

barred, in whole or in part, by plaintiffs' contributory negligence; alternatively, plaintiffs' right

to recover, no fault being admitted, is diminished in an amount based upon plaintiffs' individual relative degree of fault.  Or. Rev. Stat. § 31.600.

36.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

DATED: October 25, 2018                Respectfully submitted,

By: /s/ Erik L. Hansell
Erik L. Hansell, #51288
HUSCH BLACKWELL LLP
The Plaza in Clayton
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
Telephone:   (314) 480-1500
Facsimile:    (314) 480-1505
erik.hansell@huschblackwell.com

Donald W. Fowler
(*pro hac vice* motion to be filed)
Gregory S. Chernack
(*pro hac vice* motion to be filed)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639
dfowler@hollingsworthllp.com
gchernack@hollingsworthllp.com

***Attorneys for Defendant Monsanto Company***

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 25th day of October 2018, I electronically filed the foregoing

Monsanto's Answer to Plaintiffs' Complaint with the Clerk of the Court by using the

CM/ECF system. I further certify that a true and correct copy of the Monsanto's Answer

to Plaintiffs' Complaint was caused to be served upon the following counsel via United

States mail:

James T. Corrigan
James D. O'Leary
**O'Leary, Shelton, Corrigan, Peterson,**
**Dalton, & Quillin, LLC**
1034 S. Brentwood Blvd., 23rd Fl.
PH 1-A, St. Louis, MO 63117
corrigan@osclaw.com
oleary@osclaw.com
(314) 405-9000 telephone
(314) 405-9999 facsimile

*Attorneys for Plaintiffs*

By: /s/ Erik L. Hansell

Erik L. Hansell, #51288
HUSCH BLACKWELL