# U.S. District Court [LIVE]
## Western District of Texas (Austin)
## CIVIL DOCKET FOR CASE #: 1:17-cv-01095-RP

Adelson v. Monsanto Company
Assigned to: Judge Robert Pitman
Cause: 28:1332 Diversity-Product Liability

Date Filed: 11/17/2017
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Sally Adelson**                  represented by    **Terry Wayne Yates**
Terry W. Yates & Associates
6750 West Loop South, Suite 845
Bellaire, TX 77401
(713) 861-3100
Fax: 713/621-0000
Email: tyates@yateslawoffices.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**               represented by    **Danielle A. Gilbert**
Husch Blackwell LLP
111 Congress Avenue
Suite 1400
Austin, TX 78701
512-472-5456
Email:
danielle.gilbert@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth G. Bloch**
Brown McCarroll, LLP
111 Congress Ave.
Suite 1400
Austin, TX 78701
(512) 472-5456
Fax: 512/480-5033
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/17/2017 | 1 | COMPLAINT ( Filing fee $ 400 receipt number 0542-10193023), filed by Sally Adelson. (Attachments: # 1 Request for Issuance of Summons and Civil Cover Sheet)(Yates, Terry) Modified on 11/20/2017 to amend attachment title (afd). (Entered: 11/17/2017) |
| 11/17/2017 | | Case assigned to Judge Robert Pitman. CM WILL NOW REFLECT THE JUDGE |

| | | INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (afd) (Entered: 11/20/2017) |
|---|---|---|
| 11/17/2017 | | DEMAND for Trial by Jury by Sally Adelson. (afd) (Entered: 11/20/2017) |
| 11/20/2017 | 2 | Summons Issued as to Monsanto Company. (afd) (Entered: 11/20/2017) |
| 11/20/2017 | 3 | ATTACHMENT *Conditional Transfer Order* to 1 Complaint by Sally Adelson. (Yates, Terry) (Entered: 11/20/2017) |
| 04/24/2018 | 4 | Courtesy Copy of Conditional Transfer Order by Sally Adelson. (Yates, Terry) Modified on 4/24/2018 (dm). (Entered: 04/24/2018) |
| 10/25/2018 | 5 | SUMMONS Returned Executed by Sally Adelson. Monsanto Company served on 10/24/2018, answer due 11/14/2018. (Attachments: # 1 Affidavit Declaration of Terry W. Yates)(Yates, Terry) (Entered: 10/25/2018) |
| 11/30/2018 | 6 | ORDER TO SHOW CAUSE as to Sally Adelson. Show Cause Response due by 12/7/2018,. Signed by Judge Robert Pitman. (dm) (Entered: 11/30/2018) |
| 12/05/2018 | 7 | *Monsanto Company's* ANSWER to 1 Complaint with Jury Demand . Attorney Danielle A. Gilbert added to party Monsanto Company(pty:dft) by Monsanto Company.(Gilbert, Danielle) (Entered: 12/05/2018) |
| 12/05/2018 | 8 | RULE 7 DISCLOSURE STATEMENT filed by Monsanto Company. (Gilbert, Danielle) (Entered: 12/05/2018) |

| **PACER Service Center** | | | | |
|---|---|---|---|---|
| **Transaction Receipt** | | | | |
| 12/19/2018 13:22:55 | | | | |
| **PACER Login:** | hllp1982:2634105:4722683 | **Client Code:** | 1417.0049 | |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-01095-RP | |
| **Billable Pages:** | 2 | **Cost:** | 0.20 | |

TERRY W. YATES
TERRY W. YATES & ASSOCIATES
6750 West Loop South, #845
Bellaire, TX  77401
Telephone:  713-861-3100
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SALLY ADELSON,<br><br>              Plaintiff,<br><br>vs.<br><br>MONSANTO COMPANY,<br><br>              Defendant. | Case No. 1:17-cv-01095<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff, by and through her counsel, alleges as follows:

<u>INTRODUCTION</u>

This is a product liability case brought by Plaintiff Adelson against Monsanto Company ("Monsanto") for injuries she suffered due to her exposure to Roundup®.  The risk for injuries due to exposure were known and concealed by Monsanto.

<u>JURISDICTION AND VENUE</u>

1.   Federal diversity jurisdiction in this Court is proper under 28 USC § 1332 because Plaintiff is a citizen of Texas, a different state than the Defendant's states of citizenship, and the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.

COMPLAINT AND DEMAND FOR JURY TRIAL  - 1

2. This Court has personal jurisdiction over Monsanto because Monsanto knew or should have known that its Roundup® products are sold throughout the State of Texas and, more specifically, caused Roundup® to be sold to Plaintiff in the State of Texas.

3. In addition, Monsanto maintains sufficient contacts with the State of Texas such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

4. Venue is proper within this District under 28 USC § 1391(b)(2) because Plaintiff lives in and was diagnosed in this District. Further, Monsanto, as a corporate entity, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

5. Plaintiff respectfully notifies this Court that a transfer order, pertaining to Roundup®-related actions, has been issued by the United States Judicial Panel on Multi-District Litigation, In re: Roundup® Products Liability Litigation, MDL No. 2741. The Order transfers related/tag-along actions pending outside the Northern District of California to the Northern District of California for coordinated or consolidated pretrial hearings. *See* attached Order.

THE PARTIES

Plaintiff Sally Adelson

6. Plaintiff Sally Adelson is a citizen of Texas and resides in Round Rock, Texas. She was exposed to Roundup® in the early 1990's when she applied it on a regular, ongoing basis to her real property from that time to the present. She has had continual exposure using Roundup® as a weed and grass killer on these properties. Plaintiff was diagnosed with Multiple Myeloma in December 2015.

COMPLAINT AND DEMAND FOR JURY TRIAL  - 2

<u>Defendant</u>

7.  Defendant Monsanto Company is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.

8.  At all times relevant to this Complaint, Monsanto was the entity that discovered the herbicidal properties of glyphosate, and the manufacturer of Roundup® , which contains active ingredient glyphosate and the surfactant POEA, as well as adjuvants and other "inert" ingredients.

<u>ALLEGATIONS RE: ROUNDUP®</u>

9.  Glyphosate is a broad-spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world.

10.  Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions, and fruit, where it interferes with the plant's inability to form aromatic amino acids necessary for protein synthesis.

11.  For nearly 40 years, farms across the world have used Roundup® without knowing of the dangers its use poses.  Monsanto introduced Roundup®, it marketed glyphosate as an ingredient that could kill almost every weed without causing harm either to people or to the environment.  However, the main chemical ingredient of Roundup® - glyphosate - is a probable cause of cancer.  In addition to the active ingredient glyphosate, Roundup® formulations also contain adjuvants and other chemicals, such as the surfactant POEA, which are considered "inert" and therefore protected as "trade secrets" in manufacturing.   Growing evidence suggests that these adjuvants and additional components of Roundup® formulations are not, in fact, inert and are toxic in their own right.

COMPLAINT AND DEMAND FOR JURY TRIAL  - 3

12.  Monsanto has assured and continues to assure the public that Roundup® is harmless.  Monsanto has falsified data and has attacked legitimate studies that revealed Roundup®'s dangers.  Monsanto has led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup® is safe.

13.  The manufacture, formulation, and distribution of herbicides, such as Roundup®, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA" or "Act"), 7 USC § 136a(a).

14.  Because pesticides are toxic to plants, animals, and humans, the EPA requires as part of the registration process, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and the environment.

15.  Based on early studies showing that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as *possibly carcinogenic to humans* in 1985.  After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to *evidence of non-carcinogenicity in humans* in 1991.  In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer.

16.  On two occasions, the EPA found that the laboratories hired by Monsanto to test the toxicity of its Roundup® products for registration purposes committed fraud.

17.  In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup® products.  Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup®, were **"safer than table salt"** and **"practically non-toxic"** to mammals, birds, and fish.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

18. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication, that its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk.

19. Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief, it still has not done so today.

20. Glyphosate has been identified as the second-most used household herbicide in the United States for weed control between 2001 and 2007, and the most heavily used herbicide in the world in 2012.

21. Exposure pathways are identified as air (especially during spraying), water, and food. Community exposure to glyphosate is widespread and found in soil, air, surface water, and groundwater, as well as in food.

22. In addition to the toxicity of the active ingredient, glyphosate, several studies support the finding that the glyphosate-based formulation in Defendant's Roundup® products is more dangerous and toxic than glyphosate alone

23. There have been several studies completed examining the effects of Roundup®. The results of these studies were at all times available to Defendant. Defendant knew or should have known that Roundup® is more toxic than glyphosate alone and that safety studies of Roundup®, Roundup®'s adjuvants and "inert" ingredients were necessary to protect Plaintiff from Roundup®. Many countries now ban the use of Roundup® due to its toxic effects.

24. Despite its knowledge that Roundup® is considerably more dangerous than glyphosate alone, Defendant continued to promote Roundup® as safe.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

25.   On February 17, 2016, a consensus statement published in the journal *Environmental Health*, entitled "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," assessed the safety of glyphosate-based herbicides (GBHs).[1] The paper's "focus is on the unanticipated effects arising from the worldwide increase in use of GBHs, coupled with recent discoveries about the toxicity and human health risks stemming from use of GBHs.[2] The researchers drew seven factual conclusions about GBHs:

      a.   GBHs are the most heavily applied herbicide in the world and usage continues to rise;

      b.   Worldwide, GBHs often contaminate drinking water sources, precipitation, and air, especially in agricultural regions;

      c.   The half-life of glyphosate in water and soil is longer than previously recognized;

      d.   Glyphosate and its metabolites are widely present in the global soybean supply;

      e.   Human exposures to GBHs are rising;

      f.   Glyphosate is now authoritatively classified as a probable human carcinogen; and

      g.   Regulatory estimates of tolerable daily intakes for glyphosate in the United States and European Union are based on outdated science.[3]

26.   The researchers noted that GBH use has increased approximately 100-fold since the 1970s.  Further, far from posing a limited hazard to vertebrates, as previously believed, two decades of evidence demonstrated that "several vertebrate pathways are

---

[1] John P. Myers, et al, *Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement*, Environmental Health (2016) available at http://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0.
[2] *Id.*
[3] *Id.*

likely targets of action, including hepatorenal damage, effects on nutrient balance through glyphosate chelating action and endocrine disruption.4

<u>ALLEGATIONS RE: PLAINTIFF AND EXPOSURE</u>

27.   Plaintiff Sally Adelson is 66 years old.  From the early 1990's through 2017 she used Roundup® on as a weed and grass killer and for maintenance of the same on her real property.  She was routinely and regularly exposed to consistent ground application of Roundup® through domestic and/or household use.

28.   From early 1990's, Plaintiff Adelson mixed and applied Roundup® year-round as a weed and grass killer and as maintenance of the same to her property. Plaintiff was exposed to Roundup® regularly as part of her weed and grass control routine on her real property.   Plaintiff Adelson bought the Roundup® from local retailers.   She applied the Roundup® to weeds and grass with a hand-held pump sprayer.

29.   Because Plaintiff Adelson did not know that Roundup® was injurious to hers health and/or to the health of others, she did not wear protective gear while mixing or spraying Roundup® or while Roundup® was being applied.

30.   On or about December of 2015, Plaintiff Adelson was diagnosed with Multiple Myeloma, in Texas.   Plaintiff has under treatment including radiation, hip replacement/femur bone surgery, chemotherapy, stem cell transplant and bone marrow transplant at Texas Oncology and St.. David's South Austin Hospital in Austin, Texas.

31.   During the time that Plaintiff Adelson was exposed to Roundup®, she did not know that exposure to Roundup® was injurious to her health or the health of others.

32.   Plaintiff Adelson first learned that exposure to Roundup® can cause Multiple Myeloma and other serious illness sometime during the latter part of 2017.

---

4 *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL  - 7

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

33.  Plaintiff had no way of knowing of the risk of serious illness associated with the use of and/or exposure to Roundup® and glyphosate until after she was diagnosed with Multiple Myeloma, and began researching the several studies on Roundup® and its cause of Multiple Myeloma, which studies have been concealed by Monsanto.

34.  Within the time period of any applicable statutes of limitation, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to Roundup® and glyphosate is injurious to human health.

35.  Plaintiff did not discover, and did not know of facts that would cause a reasonable person to suspect, the risks associated with the use of and/or exposure to Roundup® and glyphosate; nor would a reasonable and diligent investigation by her have disclosed that Roundup® and glyphosate would cause her illness.

36.  For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

37.  All applicable statutes of limitation have also been tolled by Monsanto's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

38.  Instead of disclosing critical safety information about Roundup® and glyphosate, Monsanto has consistently and falsely represented the safety of its Roundup® products.

Estoppel

39.  Monsanto was under a continuous duty to disclose to consumers, users and other persons coming into contact with its products, including Plaintiff, accurate safety information concerning its products and the risks associated with the use of and/or exposure to Roundup® and glyphosate.

40.  Instead, Monsanto knowingly, affirmatively, and actively concealed safety information concerning Roundup® and glyphosate and the serious risks associated with the use of and/or exposure to its products.

41.  Based on the foregoing, Monsanto is estopped from relying on any statutes of limitation in defense of this action.

FIRST CAUSE OF ACTION

Product Liability (Design Defect)

42.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

43.  Plaintiff brings this product liability claim against Defendant for defective design.

44.  At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers and users and other persons coming into contact with them, including Plaintiff, thereby placing Roundup® products into the stream of commerce.  These actions were under the ultimate control and supervision of Defendant.  At all times relevant to this litigation, Defendant designed, researched, developed, formulated, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, or

distributed the Roundup® products used by Plaintiff, and/or to which Plaintiff was exposed, as described above.

45. At all times relevant to this litigation, Defendant's Roundup® products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiff.

46. At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with those products in Idaho and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

47. Defendant's Roundup® products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of the Defendant's manufacturer's and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

48. Defendant's Roundup® products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of the Defendant's manufacturer's and/or suppliers, the foreseeable risks associated with these products' reasonably foreseeable uses exceeded the alleged benefits associated with their design and formulation.

49.   Therefore, at all times relevant to this litigation, Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant, were defective in design and formulation, in one or more of the following ways:

a. When placed in the stream of commerce, Defendant's Roundup® products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

b. When placed in the stream of commerce, Defendant's Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c. When placed in the stream of commerce, Defendant's Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

d. Defendant did not sufficiently test, investigate, or study its Roundup® products and, specifically, the active ingredient glyphosate.

e. Exposure to Roundup® and glyphosate-based products presents a risk of harmful side effects that outweighs any potential utility stemming from the use of the herbicide.

f. Defendant knew or should have known at the time of marketing its Roundup® products that exposure to Roundup® and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

g. Defendant did not conduct adequate post-marketing surveillance of its Roundup® products.

h. Defendant could have employed safer alternative designs and formulations.

50.   At all times relevant to this litigation, Plaintiff used and/or was exposed to the use of Defendant's Roundup® products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

51.  Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of exposure.

52.  The harm caused by Defendant's Roundup® products far outweighed their benefit, rendering Defendant's products dangerous to an extent beyond that which an ordinary consumer would contemplate.  Defendant's Roundup® products were and are more dangerous than alternative products and Defendant could have designed its Roundup® products to make them less dangerous.  Indeed, at the time that Defendant designed its Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

53.  At the time Roundup® products left Defendant's control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's Roundup® herbicides.

54.  Defendant's defective design of Roundup® amounts to willful, wanton, and/or reckless conduct by Defendant.

55.  Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Defendant is liable to Plaintiff.

56.  The defects in Defendant's Roundup® products were substantial and contributing factors in causing Plaintiff's grave injuries, and, but for Defendant's misconduct and omissions, Plaintiff would not have sustained her injuries.

57. As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, Plaintiff has suffered and continues to suffer grave injuries, and has endured pain and discomfort, as well as economic hardship, including

considerable financial expenses for medical care and treatment. Plaintiff has incurred these expenses and will incur them in the future.

## SECOND CAUSE OF ACTION

### Products Liability (Failure to Warn)

58. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

59. Plaintiff brings this products liability claim against Defendant for failure to warn.

60. At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup® and specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Defendant.

61. Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Roundup® products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and Defendant therefore had a duty to warn of the risks associated with the reasonably foreseeable uses of Roundup® and glyphosate-containing products.

62. At all times relevant to this litigation, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that its Roundup® products did not cause users and consumers to suffer from

unreasonable and dangerous risks. Defendant had a continuing duty to warn Plaintiff of the dangers associated with Roundup® use and exposure.

63. At the time of manufacture, Defendant could have provided warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to these products.

64. At all times relevant to this litigation, Defendant failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its Roundup® products and to those who would foreseeably use or be harmed by Defendant's herbicides, including Plaintiff.

65. Despite the fact that Defendant knew or should have known that Roundup® products posed a grave risk of harm, it failed to warn of the dangerous risks associated with their use and exposure. The dangerous propensities of its products and the carcinogenic characteristics of glyphosate, as described above, were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied, or sold the product, and not known to end users and consumers, such as Plaintiff.

66. Defendant knew or should have known that its Roundup® and glyphosate-containing products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to these products. Defendant has wrongfully concealed information concerning the dangerous nature of Roundup® and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

COMPLAINT AND DEMAND FOR JURY TRIAL - 14

67.   At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled and marketed by Defendant.

68.   At all times relevant to this litigation, Plaintiff used and/or was exposed to the use of Defendant's Roundup® products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

69.   Plaintiff would not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of Plaintiff's exposure.  Plaintiff relied upon the skill, superior knowledge, and judgment of Defendant.

70.   Defendant knew or should have known that the minimal warnings disseminated with its Roundup® products were inadequate, but it failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses.

71.   The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled at-home users such as Plaintiff to utilize the products safely and with adequate protection.  Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after it

COMPLAINT AND DEMAND FOR JURY TRIAL  - 15

knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

72.   To this day, Defendant has failed to adequately and accurately warn of the true risks of Plaintiffs injuries associated with the use of and exposure to Roundup® and its active ingredient glyphosate, a probable carcinogen.

73.   As a result of their inadequate warnings, Defendant's Roundup® products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Plaintiff.

74.   Defendant is liable to Plaintiff for injuries caused by its failure, as described above, to provide adequate warnings or other clinically relevant information and data concerning the appropriate use of its Roundup® products and the risks associated with the use of or exposure to Roundup® and glyphosate.

75.   The defects in Defendant's Roundup® products were substantial and contributing factors in causing Plaintiff's injuries, and, but for Defendant's misconduct and omissions, Plaintiff would not have sustained her injuries.

76.   Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with its Roundup® products, Plaintiff could have avoided the risk of developing injuries as alleged herein and could have taken necessary precautions and/or obtained alternative herbicides.

77.   As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, Plaintiff has suffered and continues to suffer grave injuries, and has ensured physical pain and discomfort, as well as economic hardship,

including considerable financial expenses for medical care and treatment. Plaintiff has incurred and will continue to incur these expenses in the future.

### THIRD CAUSE OF ACTION

#### Negligence

78. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

79. Defendant, directly or indirectly, caused Roundup® products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.

80. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of its Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or cell a product that was not unreasonably dangerous to consumers, users, and other persons coming into contact with the product.

81. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the marketing, advertisement, and sale of its Roundup® products. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup® and, in particular, its active ingredient glyphosate.

82. At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and specifically, the carcinogenic properties of the chemical glyphosate.

83. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that use of or exposure to its Roundup® products could cause Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

84. Defendant knew or, in the exercise of reasonable care, should have known that Roundup® is more toxic than glyphosate alone and that safety studies on Roundup®, Roundup®'s adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Plaintiff from Roundup® .

85. Defendant knew or, in the exercise of reasonable care, should have known that tests limited to Roundup®'s active ingredient glyphosate were insufficient to prove the safety of Roundup®.

86. Defendant also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with the use of and/or exposure to Roundup® and glyphosate-containing products.

87. As such, Defendant breached its duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Defendant manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

88. Defendant failed to appropriately and adequately test Roundup®, Roundup®'s adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Plaintiff from Roundup®.

89. Despite its ability and means to investigate, study, and test its products and to provide adequate warnings, Defendant has failed to do so. Indeed, Defendant has wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

90. Defendant's negligence included.

> a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup® products without thorough and adequate pre- and post-testing;

> b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;

> c. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture, horticulture, and at-home use;

> d. Failing to undertake sufficient studies and conduct necessary tests to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup®, and the propensity of these ingredients to render Roundup® toxic, increase the toxicity of Roundup®, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup®, and whether or not the "inert" ingredients and/or adjuvants were safe for use;

> e. Failing to use reasonable and prudent care I the design, research, manufacture, formulation, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

> f. Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

g.  Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendant could reasonably foresee would use and/or be exposed to its Roundup® products;

h.  Failing to disclose to Plaintiff, users, consumers, and the general public that the use of and exposure to Roundup® presented severe risks of cancer and other grave illnesses;

I.  Failing to warn Plaintiff, users, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other users or consumers;

j.  Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

k.  Representing that its Roundup® products were safe for their intended use when, in fact, Defendant knew or should have known that the products were not safe for their intended use;

l.  Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

m.  Advertising, marketing, and recommending the use of Roundup® products, while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

n.  Continuing to disseminate information to its consumers, which indicate or imply that Defendant's Roundup® products are not unsafe for use in the agricultural, horticultural industries, and/or home use; and

o.  Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

91.  Defendant knew and/or should have known that it was foreseeable that consumers and/or users, such as Plaintiff, would suffer injuries as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup® .

COMPLAINT AND DEMAND FOR JURY TRIAL  - 20

92.  Plaintiff did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

93.  Defendant's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer, as described herein.

94.  Defendant's conduct, as described above, was reckless.  Defendant regularly risks the lives of consumers and users of its products, including Plaintiff, with full knowledge of the dangers of its products.  Defendant has made conscious decisions not to redesign, relabel, warn, or inform the unsuspecting public, including Plaintiff. Defendant's reckless conduct therefore warrants an award of punitive damages.

95.  As a proximate result of Defendant's wrongful acts and omissions in placing its defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Plaintiff has suffered and continues to suffer grave physical and emotional injuries.  Plaintiff has endured pain and suffering, has suffered economic losses (including significant expenses for medical care and treatment) and will continue to incur these expenses in the future.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

96.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

97.  Roundup® which was designed, tested, manufactured, distributed, promoted and sold by Defendant, was expected to, and did, reach Plaintiff without any substantial change in its condition.

98.    Defendant, through its advertising and promotional materials, expressly warranted that Roundup® was safe for its intended use and was not unreasonably dangerous for its intended purpose.

99.    Defendant breached its express warranties in that Roundup® was not safe for its intended use in light of the unreasonably high risk of cancer associated with its use, including the risk of Multiple Myeloma.

100.    Plaintiff reasonably relied to her detriment on Defendant's express warranties.

101.    As a proximate result of Defendant's wrongful acts and omissions in placing its defective Roundup® products into the stream of commerce, Plaintiff has suffered and continues to suffer grave physical and emotional injuries.  Plaintiff has endured pain and suffering, has suffered economic losses (including significant expenses for medical care and treatment) and will continue to incur these expenses in the future.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty

102.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

103.    Roundup® which was designed, tested, manufactured, distributed, promoted and sold by Defendant, was expected to, and did, reach Plaintiff without any substantial change in its condition.

104.    At the time Defendant manufactured, marketed, sold, and distributed Roundup®, Defendant knew of the use for which Roundup® was intended and impliedly warranted, through their advertising and promotional materials, that Roundup® was of merchantable quality, fitness, and safe for the use for which it was intended.

COMPLAINT AND DEMAND FOR JURY TRIAL  - 22

105.   Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether Roundup® was of merchantable quality and safe for its intended use and upon Defendant's implied warranty as to such matters.

106.   Contrary to the implied warranty, Defendant's product Roundup® was not of merchantable quality or safe for its intended use because it was unreasonably dangerous as described herein.

107.   As a proximate result of Defendant's wrongful acts and omissions in placing its defective Roundup® products into the stream of commerce, Plaintiff has suffered and continues to suffer grave physical and emotional injuries.   Plaintiff has endured pain and suffering, has suffered economic losses (including significant expenses for medical care and treatment) and will continue to incur these expenses in the future.

<u>SIXTH CAUSE OF ACTION</u>

<u>Negligent Misrepresentation and/or Fraud</u>

108.   Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

109.   Defendant is the manufacturer, designer, distributor, seller or supplier of Roundup® and, while engaged in the course of such business, made representations to Plaintiff regarding the character and/or quality of, for guidance in her decision to select Roundup for use.

110.   Defendant had a duty to disclose material information about serious health effects to consumers such as Plaintiff.   Defendant intentionally failed to disclose this information for the purpose of inducing consumers, including Plaintiff, to purchase Defendant's dangerous products.

COMPLAINT AND DEMAND FOR JURY TRIAL  - 23

111.    Specifically, Defendant's advertisements regarding Roundup® made material misrepresentations to the effect that Roundup® was safe, which misrepresentations Defendant knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiff, to purchase said product. Defendant further misrepresented that its products were just as safe, and just as effective or more effective, than other weed control products on the market.

112.    Defendant's representations regarding the character or quality of Roundup® were untrue.    In addition, Defendant fraudulently suppressed material information regarding the safety of Roundup®, including the dangers known by Defendant to be associated with or caused by the use of or exposure to Roundup® and glyphosate.

113.    Defendant had actual knowledge based on the results of trials, tests, and studies of exposure to glyphosate, of the risk of serious harm associated with human use of and exposure to Roundup®.

114.    Defendant negligently and or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its products as safe and effective in order to avoid losses and sustain profits in its sales to consumers.

115.    In supplying the false information, Defendant failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff.

116.    Plaintiff reasonably relied to her detriment upon Defendant's misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product.  Plaintiff reasonably relied upon

Defendant's representations to her that Roundup® was safe for use and that Defendant's labeling, advertisements and promotions fully described all known risks of the product.

117.   Defendant is estopped from relying on any statute of limitations defenses because Defendant actively concealed the defects from consumers, such as Plaintiff. Instead of revealing the defects, Defendant continued to represent its product as safe for its intended use.

118.   As a direct and proximate result of Plaintiff's use of Roundup® as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendant, Plaintiff suffered personal injury, non-economic damages, and will continue to suffer such harm and damages in the future.

<u>SEVENTH CAUSE OF ACTION</u>

<u>Unfair and Deceptive Trade Practices</u>

119.   Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

120.   By reason of its conduct as alleged herein, Defendant violated the provisions of Title 2, Chapter 17 of the Texas Deceptive Trade Practices Consumer Protection Act ("the Act") by inducing the Plaintiff to use Roundup® through the use of false and/or misleading advertising, representations and statements.

121.   By engaging in the conduct described herein, Defendants violated the Act by, among other things:

> a.  engaging in unfair or deceptive trade practices as defined in this statute by making false and misleading oral and written statements that had the capacity, tendency, or effect of deceiving or misleading consumers.

> b.  engaging in unfair or deceptive trade practices as defined in this statute by making representations that its products had an approval, characteristic, ingredient, use or benefit which they did not have, including

but not limited to statements concerning the health consequences of the use of Roundup®.

c. engaging in unfair or deceptive trade practices as defined in this statute by failing to state material facts, the omission of which deceived or tended to deceive, including but not limited to facts relating to the health consequences of the use of Roundup®.

d. engaging in unfair or deceptive trade practices as defined in this statute through deception, fraud, misrepresentation and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of Roundup®.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Monsanto, awarding as follows:

a. compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

b. medical expenses and other economic damages in an amount to be determined at trial of this action;

c. treble damages and attorney fees pursuant to Title 2 Chapter 17 of the Texas Business and Commerce Code,

d. costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

e. any other relief the Court may deem just and proper,

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 17th day of November, 2017.

TERRY W. YATES & ASSOCIATES

By:  /s/ *Terry W. Yates*

Terry W. Yates
State Bar No. 22142600
6750 West Loop South, Suite 845
Bellaire, Texas 77401
Phone: 713-861-3100
Fax: 713-621-0000
tyates@yateslawoffices.com