# U.S. District Court
## Eastern District of Missouri (St. Louis)
## CIVIL DOCKET FOR CASE #: 4:18-cv-02147-CDP

Healy et al v. Monsanto Company

Assigned to: District Judge Catherine D. Perry

Case in other court: Circuit Court, St. Louis County, Missouri, 18SL-CC04814

Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 12/27/2018

Jury Demand: Both

Nature of Suit: 365 Personal Inj. Prod. Liability

Jurisdiction: Diversity

**Plaintiff**

**Delores Healy**                    represented by   **Grant L. Davis**
                                                      DAVIS AND BETHUNE
                                                      1100 Main Street
                                                      2930 City Center Square
                                                      Kansas City, MO 64105
                                                      816-421-1600
                                                      Fax: 816-472-5972
                                                      Email: gdavis@dbjlaw.net
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Liza Hubbard**                     represented by   **Grant L. Davis**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Linda Johnston**                   represented by   **Grant L. Davis**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Keathley**                 represented by   **Grant L. Davis**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edward Kolaczewski**               represented by   **Grant L. Davis**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Patricia Lehne**                          represented by   **Grant L. Davis**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Lane**                            represented by   **Grant L. Davis**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Leah Larsen**                             represented by   **Grant L. Davis**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Vickie Minick**                           represented by   **Grant L. Davis**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sandra Raper**                            represented by   **Grant L. Davis**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Monsanto Company**                        represented by   **Erik L. Hansell**
                                                             HUSCH BLACKWELL, LLP
                                                             190 Carondelet Plaza
                                                             Suite 600
                                                             St. Louis, MO 63105
                                                             314-480-1500
                                                             Fax: 314-480-1505
                                                             Email:
                                                             erik.hansell@huschblackwell.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/27/2018 | 1 | |

| | | |
|---|---|---|
| | | NOTICE OF REMOVAL from St. Louis County Circuit Court, case number 18SL-CC04814, with receipt number 0865-6946004, in the amount of $400 Jury Demand,, filed by Monsanto Company. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet, # 3 Original Filing Form)(Hansell, Erik) (Entered: 12/27/2018) |
| 12/27/2018 | 2 | NOTICE OF FILING NOTICE OF REMOVAL filed by Defendant Monsanto Company Sent To: Plaintiff (Hansell, Erik) (Entered: 12/27/2018) |
| 12/27/2018 | 3 | ANSWER to Complaint by Monsanto Company.(Hansell, Erik) (Entered: 12/27/2018) |
| 12/27/2018 | 4 | SUPPLEMENTAL - State Court Docket Sheet. (BAK) (Entered: 12/27/2018) |
| 12/27/2018 | 5 | Petition (Removal/Transfer) Received From: Circuit Court, St. Louis County, Missouri, filed by Patricia Lehne, Linda Johnston, Charles Lane, Vickie Minick, Liza Hubbard, Leah Larsen, Delores Healy, Charles Keathley, Sandra Raper, Edward Kolaczewski.(BAK) (Entered: 12/27/2018) |
| 12/27/2018 | | Case Opening Notification: All non-governmental organizational parties (corporations, limited liability companies, limited liability partnerships) must file Disclosure of Organizational Interests Certificate (moed-0001.pdf). Judge Assigned: U.S. District Judge Catherine D. Perry. (BAK) (Entered: 12/27/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/28/2018 06:51:08 | | | |
| **PACER Login:** | hllp1982:2634105:4722683 | **Client Code:** | 1417.0049 |
| **Description:** | Docket Report | **Search Criteria:** | 4:18-cv-02147-CDP |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| DELORES HEALY, LIZA HUBBARD, LINDA JOHNSTON, CHARLES KEATHLEY, EDWARD KOLACZEWSKI, PATRICIA LEHNE, CHARLES LANE, LEAH LARSEN, VICKIE MINICK, and SANDRA RAPER, <br><br> Plaintiffs, <br><br> v. <br><br> MONSANTO COMPANY, <br><br> Defendant. | Case No. 4:18-cv-02147 <br><br> JURY TRIAL DEMANDED |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' PETITION

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs' Petition (the "Petition"), except as set forth below.  As defined in the Petition and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in the fourth sentence of paragraph 1, Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") or other cancers and states that the scientific studies upon which the International Agency for Research on Cancer ("IARC") purported to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto denies the remaining allegations in paragraph 1.

2.      For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 2.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 2 and therefore denies those allegations.

3.      For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 3.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 and therefore denies those allegations.

4.      For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 4.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 and therefore denies those allegations.

5.      For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 5.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 and therefore denies those allegations.

6.      For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 6.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 and therefore denies those allegations.

7.      For purposes of this answer, Monsanto accepts the allegations regarding Minnesota residency in the first sentence of paragraph 7.  Monsanto lacks information or

knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 and therefore denies those allegations.

8.     For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 8.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 8 and therefore denies those allegations.

9.     For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 9.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 and therefore denies those allegations.

10.     For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 10.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 and therefore denies those allegations.

11.     For purposes of this answer, Monsanto accepts the allegations regarding Arkansas residency in the first sentence of paragraph 11.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 and therefore denies those allegations.

12.     In response to the allegations in the first sentence of paragraph 12, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri.  The remaining allegations in the first sentence of paragraph 12 are conclusions of law for which no response is required.  The allegations in the second sentence of paragraph 12 are vague and conclusory and comprise attorney characterizations, and are

accordingly denied.  Monsanto admits the allegations in the last sentence of paragraph 12.

13.     In response to the allegations in paragraph 13, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactures Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto also admits that certain of these herbicides contain POEA and adjuvants and that the United States Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert.  In response to the final sentence of paragraph 13, Monsanto admits that certain scientific, manufacturing, marketing, and sales decisions regarding Roundup®-branded products were made in the State of Missouri, but states that the terms "important" and "business decisions" are vague and ambiguous, and therefore Monsanto denies the same.

14.     Monsanto denies the allegations in paragraph 14.

15.     The allegations in paragraph 15 set forth conclusions of law for which no response is required.

16.     Monsanto denies the allegations in paragraph 16 that exposure to Roundup®-branded products and glyphosate exposed plaintiffs to risk of their alleged cancers and denies that exposure to Roundup®-branded products did or could have caused plaintiffs' alleged cancers.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.  The remaining allegations in paragraph 16 set forth conclusions of law for which no response is required or consist of attorney characterizations and are accordingly denied.

17.     Monsanto denies the allegation in paragraph 17 that exposure to Roundup®-branded products and glyphosate exposed plaintiffs to risk of their alleged cancers.  Monsanto

states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.  The remaining allegations in paragraph 17 set forth conclusions of law for which no response is required or consist of attorney characterizations and are accordingly denied.

18.     Monsanto denies the allegations in paragraph 18 that exposure to Roundup®-branded products and glyphosate exposed plaintiffs to risk of their alleged cancers and denies that exposure to Roundup®-branded products did or could have caused plaintiffs' alleged cancers.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.  The remaining allegations in paragraph 18 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations.

19.     In response to the allegations in paragraph 19, Monsanto denies that it has concealed the alleged "true risks associated with the use of and/or exposure" to Roundup®-branded products and glyphosate and denies that Monsanto has made fraudulent misrepresentations or otherwise engaged in fraudulent conduct.  The remaining allegations in paragraph 19 set forth conclusions of law for which no response is required or consist of attorney characterizations and are accordingly denied.

20.     Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed plaintiffs to risk of their alleged cancers and denies the remaining allegations in paragraph 20.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

21.      Monsanto denies that it concealed "the truth regarding the safety of Roundup®."
The remaining allegations in paragraph 21 set forth conclusions of law for which no response is
required or consist of attorney characterizations and are accordingly denied.  To the extent that a
response is deemed required, Monsanto denies all of plaintiffs' allegations in paragraph 21.
Monsanto states, however, that the scientific studies upon which IARC purported to base its
classification were all publicly available before March 2015.

22.      Monsanto denies that exposure to Roundup®-branded products and glyphosate
exposed plaintiffs to risk of their alleged cancers and denies the remaining allegations in
paragraph 22.  Monsanto states, however, that the scientific studies upon which IARC purported
to base its classification were all publicly available before March 2015.

23.      Monsanto denies the allegations in paragraph 23.

24.      In response to the allegations in paragraph 24, Monsanto admits that its principal
place of business is in St. Louis County, Missouri and that it is incorporated in Delaware.  The
remaining allegations in paragraph 24 are conclusions of law for which no response is required.

25.      Monsanto lacks information or knowledge sufficient to form a belief as to the
truth of the allegations in paragraph 25 regarding the timeliness of this lawsuit and therefore
denies those allegations.  The remaining allegations in paragraph 25 set forth conclusions of law
for which no response is required.

26.      Monsanto lacks information or knowledge sufficient to form a belief as to the
truth of the allegations regarding where plaintiffs were first injured and therefore denies those
allegations.  Monsanto further states that its registered agent is located in St. Louis County,
Missouri.  The remaining allegations in paragraph 26 set forth conclusions of law for which no
response is required.

27.    Monsanto admits the allegations in the first and second sentences of paragraph 27. Monsanto also admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 27 and therefore denies those allegations.

28.    In response to the allegations in paragraph 28, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 28.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph287 and therefore denies those allegations.

29.    In response to the allegations in paragraph 29, Monsanto admits that its glyphosate products are registered in at least 130 countries and approved for use on over 100 different crops.  Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media. Monsanto denies the remaining allegations in paragraph 29.

30.    Monsanto admits the allegations in the first sentence of paragraph 30.  Monsanto

denies the allegations in the second sentence of paragraph 30 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

31.     Monsanto admits the allegations in the first sentence of paragraph 31. Monsanto denies the allegations in the second sentence of paragraph 31.

32.     In response to the allegations in paragraph 32, Monsanto admits that the IARC working group classified glyphosate under Group 2A. Monsanto denies the remaining allegations in paragraph 32.

33.     Monsanto denies the allegations in paragraph 33.

34.     In response to the allegations in paragraph 34, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that paragraph 34 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

35.     In response to the allegations in paragraph 35, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in paragraph 35 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies

those allegations.

36.     Monsanto admits the first sentence of paragraph 36.  Monsanto denies the allegations in the second sentence of paragraph 36 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the third sentence of paragraph 36 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

37.     In response to the allegations in paragraph 37, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 37.

38.     Monsanto admits the allegations in the first two sentences of paragraph 38 and admits that at all relevant times it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto denies the remaining allegations in paragraph 38.

39.     Monsanto admits the allegations in paragraph 39.

40.     In response to the allegations in paragraph 40, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 40 set forth conclusions of law for which no response is required.

41.     The allegations in paragraph 41 set forth conclusions of law for which no response is required.

42.     In response to the allegations in paragraph 42, Monsanto admits that Roundup®-

9

branded products are registered by EPA for manufacture, sale, and distribution in the United States.  Monsanto denies the remaining allegations in paragraph 42.

43.     In response to the allegations in paragraph 43, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 43 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 43 set forth conclusions of law for which no response is required.

44.     Monsanto denies the allegations in paragraph 44 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration.  Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 44 regarding such pesticide products generally.  The remaining allegations in paragraph 44 set forth conclusions of law for which no response is required.

45.     In response to the allegations in paragraph 45, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and that EPA has not released its final findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in

2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3] Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 45 and therefore denies those allegations.

46.     In response to the allegations in paragraph 46, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration*

---

anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

> *Eligibility Decision (RED) Facts*, 2 (Sept. 1993),
> http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 46.

47.     In response to the allegations in paragraph 47, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 47 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

48.     In response to the allegations in paragraph 48, Monsanto admits that Industrial Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

49.     Monsanto denies the allegations in paragraph 49 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 49 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

50.     In response to the allegations in paragraph 50, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

51.     In response to the allegations in paragraph 51, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent

laboratory to conduct residue studies for Monsanto agricultural products. Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost. To the extent that the allegations in paragraph 51 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

52. Monsanto denies the allegations in paragraph 52.

53. In response to the allegations in paragraph 53, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 53 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

54. In response to the allegations in paragraph 54, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 54 and accordingly denies those allegations. The remaining allegations in paragraph 54 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

55. In response to the allegations in paragraph 55, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 55 and accordingly denies the same. Monsanto denies the allegations in the

last two sentences of paragraph 55.  The remaining allegations in paragraph 55 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

56.     In response to the allegations in paragraph 56, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 56 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

57.     In response to the allegations in paragraph 57, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 57 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

58.     Monsanto denies the allegations in paragraph 58.

59.     In response to the allegations in paragraph 59, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiffs' claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

paragraph 60, which are not limited as of any specified date, and accordingly denies the same.

61.     In response to the allegations in paragraph 61, Monsanto admits that IARC sets
forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.
Monsanto denies the remaining allegations in paragraph 61.

62.     Monsanto denies any suggestion that IARC reviewed the full body of scientific
research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it
cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form
a belief as to the truth of the remaining allegations in paragraph 62 and therefore denies those
allegations.

63.     Monsanto denies any suggestion that IARC reviewed the full body of scientific
research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it
cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form
a belief as to the truth of the remaining allegations in paragraph 63 and therefore denies those
allegations.

64.     Monsanto denies the allegations in paragraph 64 to the extent that they suggest
that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified
glyphosate as a Group 2A agent in March 2015.

65.     In response to the allegations in paragraph 65, Monsanto admits that IARC issued
its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the
monograph was prepared by a "working group" of individuals selected by IARC who met over a
one week period in March 2015 to consider glyphosate along with a number of other substances.
Monsanto denies the allegation that all members of the working group are "experts."  Monsanto
denies that the working group or anyone at IARC conducted a one-year review of the scientific

evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

67.     The allegations in paragraph 67 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

68.     In response to the allegations in paragraph 68, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 68 are denied.

69.     In response to the allegations in paragraph 69, Monsanto admits that the IARC

working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

70.     Monsanto denies the allegations in paragraph 70. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

71.     In response to the allegations in paragraph 71, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

72.     In response to the allegations in paragraph 72, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 72.

73.     In response to the allegations in paragraph 73, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 73.

74.     In response to the allegations in paragraph 74, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate

can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 74.

75.     In response to the allegations in the first and second sentences of paragraph 75, Monsanto admits that certain scientists and certain studies have made these claims, but denies the allegations to the extent they imply that those scientists' views and studies are valid or accurate. Monsanto denies the remaining allegations in paragraph 75.

76.     In response to the allegations in the first sentence of paragraph 76, Monsanto refers to the labels for its Roundup®-branded products, which are the best evidence of their contents, and denies any allegation inconsistent with their terms. Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto admits that EPA has a

19

technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation and that the Petition accurately quotes from the identified document, which should be read in context of EPA's precautionary regulatory mandate and the EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

80.      In response to the allegations in paragraph 80, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

81.      In response to the allegations in paragraph 81, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 81.

82.      In response to the allegations in paragraph 82, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 82.

83.      In response to the allegations in paragraph 83, Monsanto admits that following the IARC working group classification, in France, all non-professional plant protection products,

including but not limited to glyphosate-based products, will be sold behind locked counters (no free sales). Monsanto further admits that the French government has announced that beginning on January 1, 2019, the sale of non-professional lawn and garden products, including but not limited to non-professional use glyphosate-based products, is prohibited with certain exceptions. Monsanto denies the remaining allegations in paragraph 83.

84. In response to the allegations in paragraph 84, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 84.

85. In response to the allegations in paragraph 85, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease. Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity. Monsanto denies the remaining allegations in paragraph 85.

86. In response to the allegations in paragraph 86, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate. Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto

denies the remaining allegations in paragraph 86.

87.     Monsanto incorporates by reference its responses to paragraphs 1 through paragraph 86 in response to paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto denies that it has concealed the alleged "true risks associated with Roundup and glyphosate." The remaining allegations in paragraph 88 set forth conclusions of law for which no response is required.

89.     In response to the allegations in paragraph 89, Monsanto admits that it has stated and continues to state that Roundup®-branded products are safe when used as labeled and that they are non-toxic and non-carcinogenic.

90.     In response to the allegations in paragraph 90, Monsanto states that the cited document speaks for itself and does not require a response.

91.     Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed plaintiffs to risk of their alleged cancers and denies the remaining allegations in paragraph 91. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

92.     Monsanto denies that it concealed "the true character, quality and nature of Roundup." The remaining allegations of paragraph 92 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies all of plaintiffs' allegations in paragraph 92. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

93.     Monsanto denies that it engaged in the "wrongdoing" alleged in the Petition and denies that there is any reliable scientific evidence that exposure to glyphosate or Roundup®-branded products can cause cancer. Monsanto states, however, that the scientific studies upon

which IARC purported to base its classification were all publicly available before March 2015. The remaining allegations in paragraph 93 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations.

94.  Monsanto incorporates by reference its responses to paragraphs 1 through 93 in response to paragraph 94 of plaintiffs' Petition.

95.  In response to the allegations in paragraph 95, Monsanto admits that plaintiffs purport to bring claims for strict liability but denies any liability as to that claim.

96.  In response to the allegations in paragraph 96, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiffs were exposed to Roundup®-branded products and therefore denies that allegation.  Monsanto denies the remaining allegations in paragraph 96.

97.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 97 and therefore denies those allegations.

98.  In response to the allegations in paragraph 98, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiffs' used or were exposed to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 98.

99.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 99 and therefore denies those allegations.

100.  Monsanto denies the allegations in paragraph 100.

101.  Monsanto denies the allegations in paragraph 101.

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto denies the allegations in paragraph 103 and each of its subparts.

104.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 104 regarding plaintiffs' claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 104, including that Roundup®-branded products have "dangerous characteristics."

105.    Monsanto denies the allegations in paragraph 105.

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto denies the allegations in paragraph 107.

108.    Monsanto denies the allegations in paragraph 108.

109.    Monsanto denies the allegations in paragraph 109.

110.    Monsanto denies the allegations in paragraph 110.

111.    Monsanto denies the allegations in paragraph 111.

112.    Monsanto denies the allegations in paragraph 112.

In response to the "WHEREFORE" paragraph following paragraph 112, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

113.    Monsanto incorporates by reference its responses to paragraphs 1 through 112 in response to paragraph 113 of plaintiffs' Petition.

114.    In response to the allegations in paragraph 114, Monsanto admits that plaintiffs purport to bring claims for strict liability but denies any liability as to that claim.

115.    Monsanto denies the allegations in paragraph 115.

116.    In response to the allegations in paragraph 116, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiffs or other persons or entities purchased Roundup®-branded products and therefore denies those allegations. The allegations in paragraph 116 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 116.

117.    In response to the allegations in paragraph 117, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate.  The remaining allegations in paragraph 117 set forth conclusions of law for which no response is required.

118.    Monsanto denies the allegations in paragraph 118.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

119.    Monsanto denies the allegations in paragraph 119.

120.    Monsanto denies the allegations in paragraph 120.

121.    Monsanto denies the allegations in paragraph 121.

122.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 122 and therefore denies those allegations.

123.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 123 regarding plaintiffs' claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

remaining allegations in paragraph 123, including that Roundup®-branded products have "dangerous characteristics."

124.    In response to the allegations in paragraph 124, Monsanto denies that Roundup®-branded products are associated with risks of NHL or other serious illness or that Roundup®-branded products have "defects."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 124 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 124.

125.    Monsanto denies the allegations in paragraph 125.

126.    Monsanto denies the allegations in paragraph 126.

127.    Monsanto denies the allegations in paragraph 127.

128.    Monsanto denies the allegations in paragraph 128.

129.    Monsanto denies the allegations in paragraph 129.

130.    Monsanto denies the allegations in paragraph 130.

131.    Monsanto denies the allegations in paragraph 131.

132.    Monsanto denies the allegations in paragraph 132.

In response to the "WHEREFORE" paragraph following paragraph 132, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

133.    Monsanto incorporates by reference its responses to paragraphs 1 through 132 in response to paragraph 133 of plaintiffs' Petition.

134.    Monsanto denies the allegations in paragraph 134.

135.     Monsanto denies the allegations in paragraph 135.

136.     The last sentence of paragraph 136 sets forth a conclusion of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies that allegation.  Monsanto denies the remaining allegations in paragraph 136.

137.     Monsanto denies the allegations in paragraph 137.

138.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 138 regarding plaintiffs' actions and any advertising or marketing materials allegedly seen or considered by plaintiffs and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 138.

139.     Monsanto denies the allegations in paragraph 139.

In response to the "WHEREFORE" paragraph following paragraph 139, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

140.     Monsanto incorporates by reference its responses to paragraphs 1 through 139 in response to paragraph 140 of plaintiffs' Petition.

141.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 141 and therefore denies those allegations.

142.     The allegations in paragraph 142 set forth conclusions of law for which no response is required.

143.     The allegations in paragraph 143 set forth conclusions of law for which no response is required.

144.     Monsanto denies the allegations in paragraph 144.

145.     Monsanto denies the allegations in paragraph 145.

146.     Monsanto denies the allegations in paragraph 146.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

147.     Monsanto denies the allegations in paragraph 147.

148.     Monsanto denies the allegations in paragraph 148.

149.     Monsanto denies the allegations in paragraph 149, including each of its subparts.

150.     Monsanto denies the allegations in paragraph 150.

151.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 151 regarding plaintiffs' knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 151, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

152.     Monsanto denies the allegations in paragraph 152.

153.     Monsanto denies the allegations in paragraph 153.

154.     Monsanto denies the allegations in paragraph 154.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

In response to the "WHEREFORE" paragraph following paragraph 154, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

155.     Monsanto incorporates by references its responses to paragraphs 1 through 154 in response to paragraph 155 of plaintiffs' Petition.

156.     Monsanto denies the allegations in paragraph 156. Additionally, the last sentence in paragraph 156 sets forth a conclusion of law for which no response is required.

157.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 157 regarding plaintiffs' claimed use of Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 157 set forth conclusions of law for which no response is required.

158.     Monsanto denies the allegations in paragraph 158.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

159.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 159 regarding the claimed use of and exposure to Roundup®-branded products by plaintiffs and/or plaintiffs' employers and therefore denies those allegations.  The remaining allegations in paragraph 159 set forth conclusions of law for which no response is required.

160.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 160 regarding plaintiffs' claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 160 set forth conclusions of law for which no response is required.

161.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 161 and therefore those allegations.

162.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 162 regarding the claimed use of Roundup®-branded products by plaintiffs and others and therefore denies those allegations.  The remaining allegations in paragraph 162 set forth conclusions of law for which no response is required.

163.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 163 regarding plaintiffs' claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 163 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 163.

164.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 164 regarding plaintiffs' claimed use of Roundup®-branded products or plaintiffs' claimed reliance and therefore denies those allegations.  The allegation in paragraph 164 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

165.     Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 165 regarding plaintiffs' and/or plaintiffs' employers' knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 165.

166.     Monsanto denies the allegations in paragraph 166.

167.     Monsanto denies the allegations in paragraph 167.

168.     Monsanto denies the allegations in paragraph 168.

In response to the "WHEREFORE" paragraph following paragraph 168, Monsanto

demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

169.    Monsanto incorporates by references its responses to paragraphs 1 through 168 in response to paragraph 169 of plaintiffs' Petition.

170.    Monsanto denies the allegations in paragraph 170, including each of its subparts.

171.    Monsanto denies the allegations in paragraph 171.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

172.    Monsanto denies the allegations in paragraph 172.

173.    Monsanto denies the allegations in paragraph 173.

In response to the "WHEREFORE" paragraph following paragraph 173, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Petition be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

174.    Monsanto incorporates by references its responses to paragraphs 1 through 173 in response to paragraph 174 of plaintiffs' Petition.

175.    Monsanto denies the allegations in paragraph 175.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

176.    Monsanto denies the allegations in paragraph 176.

177.     Monsanto denies the allegations in paragraph 177.

In response to the "WHEREFORE" paragraph following paragraph 177, Monsanto

denies that plaintiffs are entitled to the relief sought therein, including any judgment for any

damages, interest, costs or any other relief whatsoever.

178.     The allegations in paragraph 178 set forth conclusions of law for which no

response is required.

Every allegation in the Petition that is not specifically and expressly admitted in this

Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.     The Petition, in whole or part, fails to state a claim or cause of action against

Monsanto upon which relief can be granted.

2.     Venue may be inconvenient.

3.     Plaintiffs' claims are improperly joined and should be severed.

4.     Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically

reliable evidence that the products at issue were defective or unreasonably dangerous.

5.     Any alleged negligent or culpable conduct of Monsanto, none being admitted,

was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of

plaintiffs' alleged injuries.

6.     Plaintiffs' claims are barred, in whole or in part, because the products at issue

were designed, manufactured, marketed and labeled with proper warnings, information, cautions

and instructions, in accordance with the state of the art and the state of scientific and

technological knowledge.

7.     Plaintiffs' claims are barred, in whole or in part, because the products at issue

were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

8.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9.      Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11.     Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiffs' pre-existing medical conditions.

12.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims against Monsanto in whole or in part.

13.     Applicable statutes of limitations and/or repose bar plaintiffs' claims in whole or in part.

14.     Plaintiffs' misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims in whole or in part.

15.     If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is

neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

16.     Monsanto had no legal relationship or privity with plaintiffs and owed no duty to them by which liability could be attributed to it.

17.     Plaintiffs' claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiffs' claims for punitive, exemplary, and/or aggravated damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Arkansas Constitution, the Minnesota Constitution, the Missouri Constitution, and/or other applicable state constitutions.

19.     Plaintiffs' claims for punitive, exemplary, and/or aggravated damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under the laws of Arkansas, Minnesota, Missouri, and/or other applicable state laws.

20.     Plaintiffs' claims for punitive, exemplary, and/or aggravated damages are barred and/or limited by operation of state and/or federal law, including Missouri Rev. Stat. § 510.265.1.

21.     Monsanto's conduct and/or acts were not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of plaintiffs, and/or the safety of the public. Nor do any of Monsanto's conduct and/or acts demonstrate that Monsanto acted with a high degree of moral culpability. In fact, Monsanto exercised reasonable care at all times alleged

in the Petition, and plaintiffs have failed to clearly establish any entitlement to punitive, exemplary, and/or aggravated damages based on their allegations.

22.     Plaintiffs' claims are barred in whole or in part by plaintiffs' own contributory/comparative negligence.

23.     Plaintiffs' claims are barred in whole or in part by plaintiffs' own failure to mitigate damages.

24.     Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

25.     To the extent that plaintiffs recovered payments for their alleged injuries from any collateral source(s) or other source(s), plaintiffs' recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law, including as allowed for under Missouri Rev. Stat. § 490.715.

26.     If plaintiffs have been injured or damaged, no injury or damages being admitted, such injuries or damages were not caused by a Monsanto product.

27.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize or limit such claims.

28.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

29.     Plaintiffs' recovery may be barred or limited by Minn. Stat. § 604.01.

30.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs.  If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

31.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to

amend this Answer to assert such defenses.

      **WHEREFORE**, Defendant Monsanto demands judgment in its favor and against

plaintiffs, dismissing plaintiffs' Petition with prejudice, together with the costs of suit and such

other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

      Monsanto demands a jury trial on all issues so triable.


Dated: December 27, 2018              Respectfully submitted,


                                     By: /s/ Erik L. Hansell
                                     HUSCH BLACKWELL LLP
                                     Gregory J. Minana, #38004
                                     Christine F. Miller, #34430
                                     Erik L. Hansell, #51288
                                     The Plaza in Clayton
                                     190 Carondelet Plaza, Suite 600
                                     St. Louis, MO 63105
                                     Telephone:    (314) 480-1500
                                     Facsimile:    (314) 480-1505
                                     greg.minana@huschblackwell.com
                                     chris.miller@huschblackwell.com
                                     erik.hansell@huschblackwell.com

                                     HOLLINGSWORTH LLP
                                     Joe G. Hollingsworth, Esq.
                                     (*pro hac vice* anticipated)
                                     1350 I Street, N.W.
                                     Washington, DC 20005
                                     Telephone:    (202) 898-5800
                                     Facsimile:    (202) 682-1639
                                     jhollingsworth@hollingsworthllp.com

                                     *Attorneys for Defendant Monsanto Company*

## CERTIFICATE OF SERVICE

I certify that on this 27th day of December 2018, I electronically filed the foregoing

Answer with the Clerk of the Court by using the CM/ECF system.  I further certify that a true

and correct copy of the Answer was caused to be served upon the following counsel via United

States mail:

Grant L. Davis, Esq.
Thomas C. Jones, Esq.
Timothy C. Gaarder, Esq.
Thomas E. Ruzicka, Esq.
John S. Carroll, Esq.
Davis, Bethune & Jones, LLC
2930 City Center Square
1100 Main Street
Kansas City, MO 64105
Phone:  (816) 421-1600
Fax:     (816) 472-5972

Steven J. Stolze, Esq.
Eric Holland, Esq.
Holland Law Firm, LLC
300 N. Tucker, Suite 801
St. Louis, MO 63101
Phone:  (314) 640-7550
Fax:     (314) 241-5554

*Attorneys for Plaintiffs*

By: /s/ Erik L. Hansell
     Erik L. Hansell, #51288
     HUSCH BLACKWELL LLP