JURY

# U.S. District Court
## District of South Carolina (Aiken)
## CIVIL DOCKET FOR CASE #: 1:18-cv-03607-MDL
## Internal Use Only

Gabor et al v. Monsanto Company
Assigned to: Unassigned - MDL
Case in other court: Allendale County, 2018-CP-03-00230
Cause: 28:1446 Notice of Removal-Personal Injury

Date Filed: 12/31/2018
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Gary M Gabor**



A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

BY: _Inqui Snipes_

DEPUTY CLERK

represented by **Lee D Cope**
Peters Murdaugh Parker Eltzroth and Detrick PA
PO Box 457
101 Mulberry Street E
Hampton, SC 29924
803-943-2111
Fax: 803-943-3943
Email: lcope@pmped.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Teresa A Gabor**

represented by **Lee D Cope**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

represented by **James Andrew Bradshaw**
Gallivan White and Boyd
55 Beattie Place
Suite 1200
Greenville, SC 29601
864-241-7003
Fax: 864-271-7502
Email: dbradshaw@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald K Wray , II**
Gallivan White and Boyd

55 Beattie Place
Suite 1200
Greenville, SC 29601
864-271-9580
Fax: 864-271-7502
Email: rwray@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/31/2018 | 1 | NOTICE OF REMOVAL from Allendale County, case number 2018-CP-03-0230. (Filing fee $ 400 receipt number 0420-8183010), filed by Monsanto Company. (Attachments: # 1 State Court Documents, # 2 Notice of Filing)(asni, ) (Entered: 01/02/2019) |
| 12/31/2018 | 2 | ANSWER to Complaint (Notice of Removal) by Monsanto Company. (asni, ) (Entered: 01/02/2019) |
| 12/31/2018 | 3 | Local Rule 26.01 Answers to Interrogatories by Monsanto Company.(asni, ) (Entered: 01/02/2019) |
| 12/31/2018 | 🔒🔒 4 | (Court only) CIVIL COVER SHEET - Private Entry. (asni, ) (Entered: 01/02/2019) |
| 01/02/2019 | 🔒🔒 5 | (Court only) ***Clerk Staff notes notification to MDL of tag along case filed in the district. (asni, ) (Entered: 01/02/2019) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

GARY M. GABOR and TERESA A. GABOR,

        Plaintiffs,

    v.

MONSANTO COMPANY,

        Defendant.

Case No. 1:18-03607-MDL

A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

BY: _____
DEPUTY CLERK

## NOTICE OF REMOVAL

Defendant Monsanto Company ("Monsanto"), by filing this Notice of Removal and related papers, removes this lawsuit from the Court of Common Pleas for Allendale County, South Carolina to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## Introduction

In this products liability lawsuit, plaintiffs sue Monsanto Company ("Monsanto") for injuries allegedly caused by Monsanto's Roundup®-branded herbicides, which have glyphosate as their active ingredient. Farmers have used glyphosate-based herbicides for decades to increase crop yields. Glyphosate is one of the most thoroughly studied herbicides in the world, and glyphosate-based herbicides have received regulatory approval in more than 160 countries. Since 1974, when Monsanto first introduced a Roundup®-branded herbicide to the marketplace, the United States Environmental Protection Agency repeatedly has concluded that glyphosate does not cause cancer. Nevertheless, plaintiffs allege here that Gary Gabor developed cancer – specifically, non-Hodgkin's lymphoma ("NHL") – caused by exposure to Roundup®-branded herbicides. Numerous federal lawsuits filed by other plaintiffs alleging that they developed NHL due to exposure to Roundup®-branded herbicides have been transferred for coordinated

multidistrict litigation ("MDL") proceedings to U.S. District Judge Vince Chhabria in the

Northern District of California. *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC

(N.D. Cal.).

As discussed in more detail below, Monsanto removes this lawsuit because this Court has

subject matter jurisdiction based on diversity of citizenship. Monsanto is a citizen of Missouri

(which is where its principal place of business is located) and Delaware (Monsanto's state of

incorporation). Plaintiffs are citizens of Tennessee. Accordingly, complete diversity of

citizenship exists in this case as required by 28 U.S.C. § 1332. The statutory amount-in-

controversy requirement is also satisfied because plaintiffs seek damages for cancer (NHL)

allegedly caused by exposure to Monsanto's Roundup®-branded herbicides.

### Basis For Removal

1.      Plaintiffs commenced this action in the Court of Common Pleas for Allendale

County, South Carolina on or about December 7, 2018 by filing a Complaint, captioned *Gabor v.*

*Monsanto Co.*, Case No. 2018CP0300230 (the "State Court Action"). A copy of the Complaint

and any other papers filed in the State Court Action are attached collectively as Exhibit 1.

2.      Plaintiffs seek damages for NHL allegedly caused by exposure to Monsanto's

Roundup®-branded herbicides. *See, e.g.*, Complaint ¶¶ 6, 25, 46 & page 18 (Prayer for Relief).

3.      The Court of Common Pleas for Allendale County, South Carolina is located

within the Aiken Division of the United States District Court for the District of South Carolina.

Therefore, removal to this Court satisfies the venue requirements of 28 U.S.C. § 1446(a). *See* 28

U.S.C. §§ 1441(a), 121(4).

4.      Plaintiffs are citizens of Tennessee. Complaint ¶ 1.

5.      Monsanto is, and has been at all relevant times, a corporation incorporated under

the laws of the State of Delaware, with its principal place of business in the State of Missouri.

Thus, Monsanto is a citizen of Missouri and Delaware.

6.    The Complaint seeks compensatory and punitive damages based on the

allegations that Monsanto's Roundup®-branded herbicides caused cancer (NHL).  Therefore, it is

plausible from the face of the Complaint that plaintiffs seek damages in excess of $75,000,

exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy

requirement.  28 U.S.C. § 1332(a); *see Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct.

547, 554 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that

the amount in controversy exceeds the jurisdictional threshold.").  In fact, other lawsuits seeking

damages for NHL allegedly caused by Roundup®-branded herbicides have been filed against

Monsanto in other federal courts asserting jurisdiction under § 1332(a) and alleging damages in

excess of $75,000, exclusive of interest and costs.  As discussed above, those cases have been

transferred to the Northern District of California for coordinated MDL proceedings.  *See In re*

*Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.).

7.    In sum, this Court has original subject matter jurisdiction over this action based

on § 1332(a) because there is complete diversity of citizenship between all parties (plaintiffs and

Monsanto) and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.    Monsanto was served with the Summons and Complaint on December 19, 2018.

Therefore, this Notice of Removal is timely pursuant to 28 U.S.C § 1446(b).

9.    For the reasons set forth above, this lawsuit is properly removed to this Court.

10.    The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the

Court of Common Pleas for Allendale County, South Carolina and promptly served on plaintiffs.

Dated: December 31, 2018                    Respectfully submitted,


                                           s/ Ronald K. Wray, II
                                           Ronald K. Wray, II      (Fed Bar # 5763)
                                           James A. Bradshaw    (Fed Bar #11680)
                                           GALLIVAN, WHITE & BOYD, P.A.
                                           55 Beattie Place, Suite 1200
                                           P.O. Box 10589
                                           Greenville, SC 29603
                                           Telephone:  (864) 271-9580
                                           Facsimile:  (864) 271-7502


                                           Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 31, 2018, he caused to have served copies of the Notice of Removal and Notice of Electronic Filing of the Notice of Removal, with attachments; Notice of Filing Notice of Removal; Answers to Interrogatories Pursuant to Local Civil Rule 26.01; and Acknowledgment of the State Clerk of Court to be executed by the Clerk, by electronically filing said documents with the United States District Court for the District of South Carolina Clerk of Court and also placing them in the U.S. Mail with prepaid postage affixed and addressed as follows:

Lee D. Cope
Peters, Murdaugh, Parker, Eltzroth, & Detrick, P.A.
P.O. Box 457
Hampton, SC 29924

s/Ronald K. Wray, II
Ronald K. Wray, II    (Fed Bar # 5763)
James A. Bradshaw    (Fed Bar # 11680)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC 29603
Telephone:  (864) 271-9580
Facsimile:  (864) 271-7502

Attorneys for Defendant Monsanto Company

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF ALLENDALE | ) | CIVIL ACTION NO.: 2018-CP-___-_____ |
| | ) | |
| Gary M. Gabor and Teresa A. Gabor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **SUMMONS** |
| v. | ) | *(Jury Trial Demanded)* |
| | ) | |
| Monsanto Company; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this complaint upon the subscriber, at 101 Mulberry Street East, Post Office Box 457, Hampton, SC 29924, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P.A.


BY:   *s/ Lee D. Cope*_____
      Lee D. Cope
      P.O. Box 457
      Hampton, SC 29924
      (803) 943-2111

ATTORNEYS FOR PLAINTIFF

December 7, 2018.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | |
| COUNTY OF ALLENDALE | ) | CIVIL ACTION NO.: 2018-CP-___-_____ |
| | ) | |
| Gary M. Gabor and Teresa A. Gabor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | *(Jury Trial Demanded)* |
| | ) | |
| Monsanto Company; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiffs allege:

## PARTIES

1.     That the Plaintiffs, Gary M. Gabor and Teresa A. Gabor, are citizens and residents of the County of Hamilton, State of Tennessee; at all times relevant hereto, Gary M. Gabor and Teresa A. Gabor were and still are husband and wife, and were residents of the County of Hampton, State of South Carolina.

2.     That upon information and belief, Defendant Monsanto Company ("Monsanto") is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri; at all times relevant to this complaint, Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup®.  Monsanto has regularly transacted and conducted business within the State of South Carolina, and has derived substantial revenue from goods and products, including Roundup®, used in the State of South Carolina.  Monsanto expected or should have expected their acts to have consequences within the State of South Carolina, and derived substantial revenue from interstate commerce.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

3.      Plaintiffs are informed and believe and based thereon allege that in committing the acts alleged herein, each and every agent, managing agent, representative, and/or employee of the Defendant was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendant and their directors, officers and/or managing agents.

4.      That the majority of Plaintiff Gary Gabor's contact with RoundUp® occurred while he was working in Allendale County in the State of South Carolina.

5.      Plaintiff Gary Gabor was, at all relevant times, employed by Century Link, where his responsibilities included the mixing of concentrated containers of Roundup®, including other non-branded forms of Roundup®, as well as the direct application to job sites of Century Link.

6.      Mr. Gabor was diagnosed with non-Hodgkin's Lymphoma on December 8, 2015 at the age of 57.

## FIRST CAUSE OF ACTION
### (Strict Liability – Design Defect)

7.      Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

8.      Plaintiffs bring this strict liability claim against Defendant for defective design.

9.      At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup® products into the stream of commerce.  These actions were under the ultimate control and supervision of Defendant.  At all times relevant to this litigation, Defendant designed, research, developed, manufactured, produced, tested, assembled, labeled, advertised,

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

promoted, marketed, sold, and distributed the Roundup® products that Plaintiff was exposed to, as described above.

10.    At all times relevant to this litigation, Defendant's Roundup® products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiff.

11.    At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in South Carolina and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant and used in the manner as designed.

12.    Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of the Defendant's manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

13.    Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of Defendant's manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

14.    At all times relevant to this action, Defendant knew or had reason to know that Roundup® products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendant.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

15.    Therefore, at all times relevant to this litigation, Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant were defective in design and formulation, in one or more of the following ways:

a.    When placed in the stream of commerce, Defendant's Roundup® products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

b.    When placed in the stream of commerce, Defendant's Roundup® products were unreasonably dangerous in that they were hazardous and posed a risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c.    When placed in the stream of commerce, Defendant's Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

d.    Defendant did not sufficiently test, investigate, or study its Roundup® products, to include the active ingredient glyphosate.

e.    Exposure to Roundup® and glyphosate-containing products presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

f.    Defendant knew or should have known at the time of marketing its Roundup® products that exposure to Roundup®, to include its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

g.    Defendant did not conduct adequate post-marketing surveillance of its Roundup® products.

h.    Defendant could have employed safer alternative designs and formulations.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

16.    Plaintiff was exposed to Defendant's Roundup® products during the course of his employment with Century Link, as described above, without knowledge of its dangerous characteristics.

17.    At all times relevant to this litigation, Plaintiff was exposed to the use of Defendant's Roundup® products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

18.    Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of exposure.

19.    The harm caused by Defendant's Roundup® products far outweighed their benefit, rendering Defendant's products dangerous to an extent beyond that which an ordinary consumer would contemplate. Defendant's Roundup® products were and are more dangerous than alternative products and Defendant could have designed its Roundup® products to make them less dangerous. Indeed, at the time that Defendant designed its Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

20.    At the time Roundup® products left Defendant's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's herbicides.

21.    Defendant's defective design of its Roundup® products was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Roundup® products, including the Plaintiff herein.

22.    Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Defendant is strictly liable to Plaintiff.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

23.    The defects in Defendant's Roundup® products were substantial and contributing factors in causing Plaintiff's grave injuries, and, but for Defendant's misconduct and omissions, Plaintiff would not have sustained his injuries.

24.    Defendant's conduct, as described above, was reckless.  Defendant risked the lives of consumers and users of its products, including Plaintiff, with knowledge of the safety problems associated with Roundup® and glyphosate-containing products, and suppressed this knowledge from the general public.  Defendant made conscious decisions not to redesign, warn or inform the unsuspecting public.  Defendant's reckless conduct warrants an award of punitive damages.

25.    As a direct and proximate result of Defendant's placing defective Roundup® products into the stream of commerce, Mr. Gabor has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including radiation and chemotherapy), and surgery; Mrs. Gabor has suffered loss of consortium.

## SECOND CAUSE OF ACTION
### (Strict Liability – Failure to Warn)

26.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

27.    Plaintiffs bring this strict liability claim against Defendant for failure to warn.

28.    At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, promoting and applying Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup®, including the active ingredient glyphosate.  These actions were under the ultimate control and supervision of Defendant.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

29.     Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Roundup® products, and in the course of same, directly advertised or marketed the products to consumers and end users, including the Plaintiff, and persons responsible for consumers (such as employers), and therefore had a duty to warn of the risks associated with the use of Roundup® and glyphosate-containing products.

30.     At all times relevant to this litigation, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendant had a continuing duty to warn the Plaintiff of the dangers associated with Roundup® use and exposure.  Defendant, as manufacturer, seller, or distributor of chemical herbicides, are held to the knowledge of an expert in the field.

31.     At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

32.     At all times relevant to this litigation, Defendant failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of this product and to those who would foreseeably use or be harmed by Roundup®, including Plaintiff.

33.     Despite the fact that Defendant knew or should have known that Roundup® posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure.  The dangerous propensities of its products and the carcinogenic

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

characteristics of glyphosate, as described above, were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied or sold the product, and not known to end users and consumers, such as Plaintiff.

34.     Defendant knew or should have known that these products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to its products.  Defendant has wrongfully concealed information concerning the dangerous nature of Roundup® and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

35.     At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in California and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, marketed and sprayed/applied by Defendant.

36.     Plaintiff was exposed to Roundup® products, as described above, without knowledge of their dangerous characteristics.

37.     At all times relevant to this litigation, Plaintiff was exposed to the use of Defendant's Roundup® products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

38.     Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products prior to or at the time of Plaintiff's exposure. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendant.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

39.     Defendant knew or should have known that the minimal warnings disseminated with or accompanying the application of Roundup® products were inadequate, but they failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses, including agricultural and horticultural applications.

40.     The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled those exposed such as Plaintiff to utilize the products safely and with adequate protection.  Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

41.     To this day, Defendant has failed to adequately and accurately warn of the true risks of Plaintiff's injuries associated with the use of and exposure to Roundup® and its active ingredient glyphosate, a probable carcinogen.

42.     As a result of their inadequate warnings, Roundup® products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were sold or distributed by Defendant, were applied by Defendant, and when Plaintiff became exposed.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

43. Defendant is liable to Plaintiff for injuries caused by negligent or willful failure, as describe above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of their products and the risks associated with the use of or exposure to Roundup® and glyphosate; in addition, Defendant allowed others to manufacture the product without warnings or disclosing its knowledge of the dangers.

44. The defects in these Roundup® products were substantial and contributing factors in causing Plaintiff's injuries, and, but for Defendant's misconduct and omissions, Plaintiff would not have sustained their injuries.

45. Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with Roundup® products and application, Plaintiff could have avoided the risk of developed injuries as alleged herein and the company who employed Plaintiff could have obtained alternative herbicides.

46. As a direct and proximate result of Defendant placing defective Roundup® products into the stream of commerce and exposing Plaintiff to them, Mr. Gabor has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including radiation and chemotherapy), and surgery; Mrs. Gabor has suffered loss of consortium.

## THIRD CAUSE OF ACTION
### (Negligence)

47. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

48. Defendant, directly or indirectly, caused Roundup® products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

49.    At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

50.    At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup® products. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup®, to include its active ingredient glyphosate.

51.    At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup®, including the carcinogenic properties of the chemical glyphosate.

52.    Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that use of or exposure to Roundup® could cause or be associated with Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

53.    Defendant also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup® and glyphosate-containing products.

54.    As such, Defendant breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply,

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Defendant manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

55.    Despite ability and means to investigate, study, and test products and to provide adequate warnings, Defendant has failed to do so.  Indeed, Defendant wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

56.    Defendant's negligence included:

a.    Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® products without thorough and adequate pre- and post-market testing;

b.    Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failed to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;

c.    Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture and horticulture;

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

        d.     Failing to use reasonable and prudent care in the design, research, manufacture, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

        e.     Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

        f.     Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendants could reasonably foresee would use and be exposed to its Roundup® products;

        g.     Failing to disclose to Plaintiff, users/consumers, and the general public that use of and exposure to Roundup® presented risks of cancer and other grave illnesses;

        h.     Failing to want Plaintiff, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other consumers;

        i.     Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

        j.     Representing that its Roundup® products were safe for their intended use when, in fact, Defendants knew or should have known that the products were not safe for their intended purpose;

        k.     Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

l.      Advertising, marketing, and recommending the use of the Roundup® products, while concealing and failing to disclose or warn of the dangers known by Defendants to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

m.      Continuing to disseminate information to its consumers, which indicate or imply that Defendants' Roundup® products are not unsafe for use in the agricultural and horticultural industries; and

n.      Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

57.    Defendant knew and/or should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup®.

58.    Plaintiff did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

59.    Defendant's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer, as described herein.

60.    Defendant's conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiff, will full knowledge of the dangers of its products.  Defendant made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff.  Defendant's reckless conduct therefore warrants an award of punitive damages.

61.    As a proximate result of Defendant's wrongful acts and omissions in placing defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Mr. Gabor has suffered and continues to suffer

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including radiation and chemotherapy), and surgery; Mrs. Gabor has suffered loss of consortium.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Warranties)

62.　　Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

63.　　At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup® products into the stream of commerce. These actions were under the ultimate control and supervision of Defendant.

64.　　Before the time that Plaintiff was exposed to the use of the aforementioned Roundup® product, Defendant's impliedly warranted to consumers and those exposed – including Plaintiff – that Roundup® products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as horticultural herbicides.

65.　　Defendant, however, failed to disclose that Roundup® has dangerous propensities when used as intended and that the use of and/or exposure to Roundup® and glyphosate-containing products carries an increased risk of developing severe injuries, including Plaintiff's injuries.

66.　　Plaintiff reasonably relied upon the skill, superior knowledge and judgment of Defendant and upon their implied warranties that the Roundup® products were of merchantable quality and fit for their intended purpose or use.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

67.    Plaintiff is the intended third-party beneficiary of implied warranties made by Defendant to the purchasers of their horticultural herbicides, and as such Plaintiff is entitled to assert this claim.

68.    The Roundup® products were expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by Defendant.

69.    At all times relevant to this litigation, Defendant was aware that consumers and users of their products, including Plaintiff, would use Roundup® products as marketed by Defendant, which is to say that Plaintiff was a foreseeable user of Roundup®.

70.    Defendant intended that Roundup® products be used in the manner in which Plaintiff was exposed to them and Defendant impliedly warranted each product to be of merchantable quality, safe, and fit for this use, despite the fact that Roundup® was not adequately tested or researched.

71.    In reliance upon Defendant's implied warranty, Plaintiff used or was exposed to Roundup® as instructed and labeled and in the foreseeable manner intended, recommended, promoted and marketed by Defendant.

72.    Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Roundup® or glyphosate and, in fact, was deceived by the Defendant's assertion of safety.

73.    Defendant breached their implied warranty to Plaintiff in that Roundup® products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Roundup® has dangerous propensities when used as intended and can caused serious injuries, including those injuries complained of herein.

ELECTRONICALLY FILED - 2018 Dec 07 4:35 PM - ALLENDALE - COMMON PLEAS - CASE#2018CP0300230

74.     The harm caused by Roundup® products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

75.     As a direct and proximate result of Defendants' wrongful acts and omissions, Mr. Gabor has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including radiation and chemotherapy), and surgery; Mrs. Gabor has suffered loss of consortium.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and against Defendants, awarding as follows:

a.     Compensatory damages in an amount to be proven at trial;

b.     Punitive damages;

c.     Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

d.     Any other relief the Court may deem just and proper.

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P.A.


BY:  _s/ Lee D. Cope_____
        Lee D. Cope
        P.O. Box 457
        Hampton, SC 29924
        (803) 943-2111

ATTORNEYS FOR PLAINTIFF

December 7, 2018.

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | |
| COUNTY OF ALLENDALE | ) | C.A. No. 2018-CP-03-00230 |
| | ) | |
| Gary M. Gabor and Teresa Gabor, | ) | |
| | ) | **NOTICE OF FILING NOTICE OF** |
| Plaintiffs, | ) | **REMOVAL** |
| | ) | |
| v. | ) | |
| | ) | |
| Monsanto Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TO:    LEE D. COPE, ATTORNEY FOR PLAINTIFFS**

PLEASE TAKE NOTICE that on December 31, 2018, Defendant Monsanto Company ("Monsanto") filed a Notice of Removal of the above-captioned case, together with a copy of the summons and complaint and all other process and pleadings therein, in the United States District Court for the District of South Carolina, Aiken Division.  A true and correct copy of the Notice of Removal is attached hereto, and copies of the removal papers will be duly filed in the office of the Clerk of Court of the Allendale County Court of Common Pleas.

Dated: December 31, 2018                Respectfully submitted,

s/Ronald K. Wray, II
Ronald K. Wray, II (S.C. Bar 65246)
James A. Bradshaw    (S.C. Bar 100548)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
Greenville, SC 29603
Telephone:  (864) 271-9580
Facsimile:  (864) 271-7502

Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 31, 2018, he caused to have served copies of the Notice of Removal and Notice of Electronic Filing of the Notice of Removal, with attachments; Notice of Filing Notice of Removal; Answers to Interrogatories Pursuant to Local Civil Rule 26.01; and Acknowledgment of the State Clerk of Court to be executed by the Clerk, by electronically filing said documents with the Allendale County, South Carolina Clerk of Court and also placing them in the U.S. Mail with prepaid postage affixed and addressed as follows:

> Lee D. Cope
> Peters, Murdaugh, Parker, Eltzroth, & Detrick, P.A.
> P.O. Box 457
> Hampton, SC 29924

> s/Ronald K. Wray, II
> Ronald K. Wray, II (S.C. Bar 65246)
> James A. Bradshaw    (S.C. Bar 100548)
> GALLIVAN, WHITE & BOYD, P.A.
> 55 Beattie Place, Suite 1200
> Greenville, SC 29603
> Telephone:  (864) 271-9580
> Facsimile:  (864) 271-7502

> Attorneys for Defendant Monsanto Company