**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

IN Re: ROUNDUP PRODUCTS LIABILITY
LITIGATION                                                                                    MDL No. 2741

_____

*Terry Knox and Carolyn "Coke" Knox, vs. Monsanto Company and Kerry Yates*,
D. Mont., Great Falls Division, No. 4:19-cv-00036

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE CTO-133

### INTRODUCTION

In order for this case to be subject to transfer to MDL 2741, there must be a valid basis for subject-matter jurisdiction and a determination that such jurisdiction exists. The constitutional limitation on federal jurisdiction makes federal courts "courts of limited jurisdiction," *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) as opposed to state courts which are generally presumed to have subject-matter jurisdiction over a case. See 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure*, § 3522, p. 100 (3d ed. 2008). A federal court must generally determine whether it has jurisdiction at the outset of litigation and must always make the determination before deciding the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998) (rejecting doctrine of "hypothetical jurisdiction" that would allow a court to rule on an issue of law before adjudicating jurisdiction). It is presumed that a cause lies outside of federal courts' limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am*; 511 U.S. 375, 377 (1994). All courts have an "independent obligation" to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhgras v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). In the context of this Multidistrict Litigation, if subject matter jurisdiction is lacking in the putative transferor District Court (United

1

States District Court for the District of Montana), the District Court may not transfer this case because without such jurisdiction there is no case to transfer. See *Bancohio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975), holding that a transfer to consolidate litigation may not be made unless the District Court properly has jurisdiction of the subject matter of the case.

## PROCEDURAL BACKGROUND

On April 8, 2019, Plaintiffs filed their Complaint in Montana's Eighth Judicial District Court in Cascade County, Montana against Defendant Monsanto Company ("Monsanto") and its sales representative/chemistry account manager in Montana, Defendant Kerry Yates, alleging that exposure to Monsanto's Roundup herbicide caused Plaintiff Terry Knox to develop non-Hodgkin lymphoma and that Monsanto and Yates covered up the risks of Roundup. Doc. 1-1.[1] In an attempt to maintain this action in federal court and deny Plaintiffs their chosen forum, Monsanto removed the case on May 13, 2019 alleging federal jurisdiction based solely on diversity of citizenship. Doc. 1. However, in its Notice of Removal, Monsanto admits that Plaintiffs are citizens of the State of Montana and Defendant Kerry Yates is likewise a citizen of the State of Montana. Doc. 1, ¶ 3. Consequently, there is no complete diversity. Recognizing the lack of diversity, Monsanto contends that Defendant Yates was fraudulently joined and argues his citizenship should be disregarded for purposes of diversity jurisdiction.

On May 14, 2019, Defendant Monsanto then filed its Notice of Potential Tag-Along Actions including the case. MDL Doc. 997-1. CTO-133 was issued the next day on May 15, 2019. MDL Doc. 1000. On May 21, 2019, Plaintiffs timely filed their Notice of Opposition to CTO-133. MDL Doc. 1007. On May 23, 2019, Plaintiffs filed their Motion for Remand in the

---

[1] Plaintiffs cite to the docket for MT/4:19-cv-00036 (Cause No. CV-19-36-GF-BBM) pending in the District of Montana as "Doc. ___" and cite to the docket for MDL No. 2741 as "MDL Doc. ___".

U.S. District Court, because Plaintiffs alleged valid Montana state law claims against a Montana citizen, so there is no fraudulent joinder of the non-diverse Defendant, and, therefore, no diversity jurisdiction.

The most efficient course of action now, both for the parties and for the courts, is to permit the United States District Court for the District of Montana to decide the threshold issue: whether removal was proper. A transfer at this stage would not promote the "just and efficient" conduct of this action and would prejudice Plaintiff by causing further needless delay and unnecessary expense. In addition to justice and efficiency, principles of comity would dictate against the transfer of any action that has an important motion under submission and/or pending especially a motion that will render the question of transfer under §1407 moot if decided in Plaintiffs' favor.

## FACTUAL BACKGROUND

Plaintiffs Terry and Coke Knox are husband and wife. They are residents of Denton, Fergus County, Montana. Plaintiff Terry Knox, who sprayed Monsanto's Roundup extensively for decades on his large farm, now suffers from Non-Hodgkin Lymphoma. Plaintiffs allege that Monsanto's Roundup was a substantial factor in causing Terry Knox to develop cancer, specifically, non-Hodgkin Lymphoma. Plaintiffs maintain that Roundup is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked the proper warnings and directions as to the dangers associated with the use of Roundup. Plaintiffs assert three categories of legal claims against Defendants Monsanto and Yates: 1) strict product liability claims for design defect and failure to warn (Counts I and II), 2) breach of express and implied warranty claims (Counts IV and V), and 3) negligence to include negligent failure to warn and loss of consortium (Counts III and VI). Doc. 1-1, ¶¶ 59-118. Plaintiffs alleged that Defendants promoted, warrantied, marketed and sold the commercial herbicide Roundup. Doc. 1-1, ¶ 4.

Specific to Defendant Yates, Plaintiffs have alleged in their Complaint that Yates was "Monsanto's sales representative in Montana and promoted its commercial herbicide Roundup and other products." Doc. 1-1, ¶ 3. In addition to promotion of the Roundup, the Complaint also specifically alleges that Yates "marketed, promoted and warrantied Roundup <u>that was used by Terry Knox</u>." Doc. 1-1, ¶¶ 62 and 70. Plaintiffs have further alleged that Defendant Monsanto and Yates' promotion of Roundup, without regard to its toxic effects and the high probability of injury, constituted actual fraud or malice as those terms are defined by Montana law. Doc. 1-1, ¶ 58.

For the most part, Plaintiffs' Complaint alleges all of the same legal claims against Yates as Plaintiffs allege against Monsanto. In acting as the sales representative and warrantor for Monsanto in the promotion of Roundup as safe to farmers in Montana, Plaintiffs have alleged that Defendant Yates was negligent. Doc. 1-1, ¶ 87 (f, g, h, k, l, and m).

In its Notice of Removal, Monsanto confirms many of Plaintiffs' allegations about Defendant Yates. Monsanto admits that Yates is employed by it as a "Sales Rep." and a Chemistry Account Manager in Montana and has been employed by it since 1979. Doc. 1, ¶ 10. Further, Monsanto concedes that Yates receives a salary and <u>incentives</u> from Monsanto based on the promotion or sale of Roundup. Doc. 1, ¶ 10.

Defendant Yates has filed a Declaration in the District for Montana. Doc. 1-2. He admits that he has been the Monsanto Chemistry Account Manager responsible for the State of Montana including Denton, Montana since 2002. Doc. 1-2, ¶ 1. He admits that he provides "support to distributors and retailers of Bayer/Monsanto products regarding product performance issues." Doc. 1-2, ¶ 2. He admits that he promotes and supports the use of Roundup by Bayer/Monsanto

customers." Doc. 1-2, ¶ 10. He claims he has "no knowledge of Roundup being carcinogenic or being a threat to the general public's health." Doc. 1-2, ¶ 11.

Defendant Yates has also filed an Answer in the District of Montana. Doc. 7. In his Answer, he admits that "he resides, and works for Monsanto, in Montana and that he has promoted Roundup branded products in Montana." Doc. 7, ¶ 5. He admits that he "has in the past promoted, and continues to promote, Roundup branded herbicides as safe when used in accordance with the products' labeling. Doc. 7, ¶ 48. He denies that "he warrantied any Roundup branded herbicides." Doc. 7, ¶¶ 62 and 70. Regarding whether he marketed and promoted Roundup products specifically to Terry Knox, he claims he lacks information sufficient to form a belief as to the truth of the allegations. Doc. 7, ¶¶ 62 and 70. He admits "that in March 2015 IARC classified glyphosate as a class 2A carcinogen," Doc. 7, ¶ 26, but denies that Roundup branded products are carcinogens. Doc. 7, ¶ 18. This denial is made despite the fact that Monsanto admits that Roundup contains glyphosate as its active ingredient. Doc. 1, ¶ 1. In his Answer, Defendant Yates denies that Roundup branded products have "dangerous characteristics." Doc. 7, ¶ 65. He denies that Roundup branded products failed to provide adequate warnings or instructions. Doc. 7, ¶¶ 63 and 71. As to himself, Defendant Yates denies that he failed to provide adequate warnings regarding Roundup branded products. Doc. 7, ¶ 73.

## ARGUMENT AND AUTHORITY

A conditional transfer order is an administrative act of the Panel Clerk "which can and will be vacated upon the showing of good cause by any party." *In re: Grain Shipment Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (*citing In re: IBM Antitrust Litig.*, 316 F. Supp.976 (J.P.M.L. 1970)). Good cause exists where consolidation fails to promote the "just and efficient" conduct of the action. See 28 U.S.C. § 1407(a); see also H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968

USCCAN 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient conduct of such actions and be for the convenience of the parties and witnesses"). Congress intended for consolidation to be ordered "only where significant economy and efficiency in judicial administration may be obtained." See H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1900 (emphasis added).

This Court should vacate the CTO-133 with regard to MT/4:19-cv-00036 because a transfer pursuant to 28 U.S.C. §1407 is not proper when the transferring U.S. District Court does not have proper jurisdiction, as is the case here. *See BancOhio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975). Plaintiffs properly filed their action in Montana state court. Defendant Monsanto improperly removed the action to the U.S. District Court based upon a claim of diversity jurisdiction. Contrary to Defendant Monsanto's argument, the U.S. District Court does not have diversity jurisdiction, because Plaintiffs are Montana citizens who brought valid state law claims against another Montana citizen, Kerry Yates, in addition to their claims against Monsanto. Yates was not fraudulently joined, so there is no basis for federal jurisdiction in this case.

## I. THE REMOVAL STATUTE IS TO BE INTERPRETED STRICTLY AGAINST REMOVAL.

To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). There is a "strong presumption against removal jurisdiction." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). The party seeking removal has the burden of establishing federal jurisdiction. *Holcomb v. Bingham Toyota*, 871 F.2d 109, 110 (9th Cir. 1989). There must be **no doubt** that jurisdiction exists. If doubt exists, remand is required. *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is *any doubt* as to the right of removal.") (emphasis

added).  "Doubts as to removability must be resolved in favor of remanding the case to state court." *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003).

Furthermore, "plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum." *Garbie v. DaimlerChrysler Corp*., 211 F.3d 407, 410 (7th Cir. 2000) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

## II. MONSANTO HAS THE BURDEN TO ESTABLISH THAT ITS REMOVAL WAS PROPER.

As the District of Montana has previously noted:

> A strong presumption exists against federal jurisdiction over cases removed from state courts. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal maintains the burden to establish removal is proper. *Id*. Courts must strictly construe the removal statute. *Moore–Thomas v. Alaska Airlines, Inc*., 553 F.3d 1241, 1244 (9th Cir. 2009). If any doubt exists that removal is proper, courts must remand. *Id.*

*McDowell v. Burlington N. Santa Fe Ry. Co.,* No. CV 16-67-BMM-JTJ, 2017 WL 396607, at *2 (D. Mont. Jan. 30, 2017).  Moreover, as noted by United States Magistrate Judge Ostby:

> Challenges to removal raise significant federalism concerns because "the effect of removal is to deprive the state court of an action properly before it...." *County of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.,* 2012 WL 4189126 (N.D.Cal.2012) (citing *Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg.,* 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)). These federalism concerns include protecting against "a potentially enormous shift of state cases into federal court." *Id.* (quoting *Grable & Sons Metal Products, Inc.,* 545 U.S. at 312).

*Talbot v. Tokarski*, No. CV-14-117-BLG-SPW-CSO, 2014 U.S. Dist. LEXIS 151331, at *2 (D. Mont. Oct. 24, 2014).

## III. MONSANTO MUST MEET A HIGH STANDARD TO ESTABLISH FRAUDULENT JOINDER – THE LACK OF A VALID STATE CLAIM MUST BE OBVIOUS.

7

Monsanto's sole basis for its removal is the alleged existence of diversity jurisdiction based on a fraudulent joinder argument. Doc. 1, ¶ 3. Given the strong presumption against removal jurisdiction, Monsanto carries a heavy burden.

"Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is **obvious** according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)(emphasis added)(citation omitted). The removing defendant bears the burden of proving that removal is appropriate and is entitled to present facts showing that the joinder is fraudulent. *Id.* Any ambiguity in the state law must be resolved in the plaintiff's favor. "When there are real ambiguities among the relevant state law authorities, federal courts that are considering motions to remand should avoid purporting to decide how state courts would construe those authorities." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1118 (N.D. Cal. 2002).

If the plaintiff's "case against individual defendants is sufficient to withstand a dismissal motion [under Fed.R.Civ.P. 12(b)(6)] . . . the joinder of claims against them [is] not fraudulent." *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975). The defendant's burden is to show "beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *McNamara-Blad v. Assn. of Prof. Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002). Any disputed issues of fact are to be resolved in favor of the plaintiff. *Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998). Thus, in this instance, Monsanto must prove that its removal was proper, and if there is even a doubt regarding its propriety, the action should be remanded.

**IV.   KERRY YATES IS A LEGITIMATE FORUM DEFENDANT BECAUSE PLAINTIFFS HAVE ALLEGED A VALID MONTANA STATE LAW CLAIM OF NEGLIGENCE AGAINST HIM FOR HIS INDEPENDENTLY TORTIOUS CONDUCT.**

In its Notice, Monsanto argues that Yates is "fraudulently joined" as a sham defendant. Monsanto contends Plaintiffs have not stated a valid claim against Yates because Plaintiffs' claims are based on conduct which occurred in the course and scope of Yates' employment with Monsanto and corporate employees are generally shielded from liability for negligent acts taken on behalf of the corporation.

Monsanto's fraudulent joinder argument is without merit. While Monsanto is correct that Plaintiffs' claims relate to his employment as a "Sales Rep." and Manager with Monsanto, Monsanto's conclusion that the claims are therefore invalid is contrary to Montana law, as well as multiple decisions of the District of Montana. Quite simply, the allegations of misconduct and omission by Yates constitute an exception to the corporate shield.

The controlling statute is MCA § 28-10-702(3), which provides that an agent acting in the course of his agency is personally liable "when the agent's acts are wrongful in their nature." This statute has been construed in Montana to mean that an agent is not personally liable for actions which are merely an implementation of corporate "goals, policies and business interests." *Phillips v. Mont. Ed. Assn.*, 610 P.2d 154, 158 (Mont.1980). Where, for example, the only purpose is to further a corporate goal of efficiently breaching a contract, an agent merely implementing that goal cannot be sued for tortious interference with contract. *Phillips, supra*, at 426 ("taken in furtherance of corporate purposes"). This rule reflects that implementation of a breach of contract is not wrongful in its nature. Moreover, a principal's deliberate corporate goal of efficient breach of contract can only be furthered by the corporation's agent.

In contrast, a very different situation is presented where an agent engages in negligent or intentional acts that are wrongful in their nature. On numerous occasions the Montana Supreme Court has approved individual liability for corporate employees, based on conduct undertaken on behalf of the corporation. *Kornec v. Mike Horse Mining & Milling Co.*, 120 Mont. 1, 180 P.2d 252, 254-57 (1947); *O'Fallon v. Farmers Ins. Exch.*, 260 Mont. 233, 859 P.2d 1008, 1014-15 (1993). As recently as 2009, the Montana Supreme Court affirmed the longstanding rule that corporate agents can "be held personally liable if they were personally negligent or their actions were tortious in nature." *Ammondson v. Northwestern Corp.*, 2009 MT 331, ¶92, 353 Mont. 28, 220 P.3d 1, citing *Crystal Springs Trout Co. v. First State Bank of Froid*, 225 Mont. 122, 129, 732 P.2d 819, 823 (Mont. 1987); *see also Nelson v. Hartford Ins. Co. of the Midwest*, 2012 WL 933214 *2, 2012 U.S.Dist. LEXIS 37794, *6 (D. Mont. March 20, 2012) (rejecting argument that an agent can only be subject to personal liability if the individual personally, outside the scope of his employment, commits a tort). The Court in *Nelson* emphasized the public policy behind holding corporate agents and employees accountable for torts:

> A competing public policy consideration is that individual corporate agents, employees, directors and officers should not be allowed to commit torts at will, and then be allowed to hide behind the corporate veil in order to escape accountability for those torts.

*Id.*, 2012 U.S. Dist. LEXIS 37794, *9 (citing *Phillips*, 610 P.2d at 157-58).

Based on Montana law recognizing individual liability of employees for employment related torts, this Court and the Courts in this District have routinely and historically remanded cases that have been improperly removed by corporate defendants under the guise of fraudulent joinder in which Montana employees were sued individually for torts committed on behalf of non-resident employers. *Woller v. BNSF Ry. Co.*, CV 17-93-GF-BMM, 2018 U.S. Dist. LEXIS 16849 (February 1, 2018); *Staley v. BNSF Ry.*, CV 14-136-BLG-SPW, 2015 U.S. Dist. LEXIS 24275;

*Klaboe v. Marquis Cos. I (In re Estate of Klaboe)*, CV-12-111-BLG-RFC, 2013 U.S. Dist. LEXIS 13749 (January 31, 2013); *Carman v. Burlington Northern & Santa Fe Ry.*, CV-12-77-BLG-RFC, 2012 U.S. Dist. LEXIS 160027 (November 7, 2012); *McCarthy v. NorthWestern Corp., et al.*, Cause No. CV-09-29-BU-RFC, 2009 U.S. Dist. 132304 (June 17, 2009); *Christian v. BP AMOCO Corp., et al.*, Cause No. CV 08-45-BU-RFC, 2008 U.S. Dist. LEXIS 123882 (December 9, 2008); *Anderson v. BNSF Railway Co., et al.,* Cause No. CV-08-14-H-DWM, 2008 WL 5412454, at *1, 2008 U.S. Dist. LEXIS 106017 (May 21, 2008); *Caven v. The Burlington Northern & Santa Fe Railway Co., et al.*, Cause No. CV 04-41-GF-SEH (September 22, 2004); *Ball v. International Paper Co. et al.*, Cause No. CV 04-10-H-DWM (August 24, 2004)(also denying a request to transfer to the MDL); *Patricia Olson v. American Home Products Corp.*, Cause No. CV 03-142-GF-SEH (March 2, 2004); *Greening v. Mutual Life Ins. Of NY (MONY)*, 558 F. Supp. 988, 992 (D.Mont.1983) (noting that the plaintiff's motive in joining the resident defendant is immaterial).

Many of the above cases involved claims related to toxic contamination. In those cases, Montana property owners filed suit against non-resident corporations, as well as their resident employees, seeking compensation for property damage caused by environmental pollution. The resident corporate employees were managers with responsibility for local area. The plaintiffs' claims in those cases were based on the failure to stop or control the pollution as well as the failure to inform, warn, or properly advise the plaintiffs. Recognizing it was not required to address the merits of the claims against the corporate employee, the Courts held that the plaintiffs had alleged valid negligence claims against a non-diverse defendant, requiring remand.

In *Castro v. ExxonMobil Oil Corp.*, the Court found the following allegations related to the corporate agent, who had never met the plaintiff property owners, to constitute personal negligence resulting in the granting of the plaintiffs' motion to remand:

11

> Here, for example, Plaintiffs allege Montgomery is the Terminal Superintendent for EMPC, that he had a duty to exercise reasonable care in the maintenance and operation of the Silvertip Pipeline, that he was aware that the Silvertip Pipeline was not buried deep enough below the Yellowstone River and that high water could damage the pipeline, that he was actively involved in ExxonMobil's decision to ignore the warnings about the depth of the pipeline, and that the pipeline ruptured during an episode of high water on the Yellowstone. *Doc. 4,* Complaint, at ¶¶ 11, 15, 25. Plaintiffs have sufficiently alleged that Montgomery was personally negligent with regard to the Silvertip Pipeline.

*Castro v. ExxonMobil Oil Corp.*, 2012 WL 523635, at *3, 2012 U.S. Dist. LEXIS 19850, at *8 (D. Mont. Feb. 16, 2012).

In a more recent case involving personal injury, *Staley v. BNSF Railway Co. and Lynn Ludwig,* CV-14-136-BLG-SPW, 2015 U.S. Dist. LEXIS 24275 (D. Mont.), the Court granted remand on a basis similar to that articulated in *Castro*. Staley was injured when his truck was hit by a moving train at a railroad crossing (the "West Crossing") in Hysham. The view of the crossing was obscured by a parked train. In state court, Staley sued BNSF and Lynn Ludwig, who was BNSF's local "point of contact" for issues that arose in the Hysham area. The defendants removed to Federal Court arguing that Ms. Ludwig, as local agent for BNSF, could not be held personally liable for acts taken on behalf of BNSF and was therefore fraudulently joined. *Id.* at *4. The Court noted that Staley alleged "that Ludwig ignored complaints and the allegedly unsafe conditions that existed at the West Crossing." *Id.* at *10-11. In ordering remand, the Court held:

> These allegations are sufficient to pursue a negligence claim against Ludwig personally. The alleged lack of response and ignoring of safety complaints support Staley's claim that Ludwig was personally negligent.

*Id.* at *11. This was despite the fact that Ludwig had filed an affidavit generally denying the allegations that she ignored complaints. *Id.*

The most analogous case to the case at bar is the one most recently decided by the District of Montana involving personal injury from exposure to asbestos. In *Woller v BNSF Ry. Co.*, CV-

17-93-GF-BMM-JTJ, 2018 U.S. Dist. LEXIS 18736 (D. Mont.), United States Magistrate Judge Johnston found that the plaintiff had sufficiently asserted a negligence claim against BNSF's managing agent, Mr. Swing, in Libby Montana:

> Ms. Woller's complaint alleges that Mr. Swing was incorporated by reference into all allegations as to BNSF's conduct as follows:
>
>> During [1969-1991], Plaintiff resided or remained in proximity to the real property of BNSF and was thereby exposed to asbestos dust from BNSF's property and operations. John Swing was a managing agent for BNSF in Libby, Montana, and as such is separately responsible for acts wrongful in this nature. Allegations herein as to BNSF's conduct and knowledge by this reference specifically include defendant John Swing.
>
> (*Id.* at ¶ 80). The complaint further alleges that Mr. Swing was negligent because he failed to inquire, study, and evaluate the dust hazard to human health, failed to take measures to prevent toxic dust from collecting upon and escaping from BNSF's property, and failed to warn Ms. Woller of the true nature of the hazardous effects of the dust. (*Id.* at ¶ 85; *see id.* at ¶¶ 79-92). Therefore, these allegations are sufficient to state a negligence claim against Mr. Swing personally, and BNSF cannot show that Ms. Woller has not or cannot state a claim for relief against Mr. Swing under the applicable Montana law.

*Id.*, *6-7 (footnotes omitted). The Court found that Mr. Swing was not fraudulently joined as a defendant and recommended remanding the case to state court. The Findings and Recommendations were approved and adopted in *Woller v BNSF Ry. Co.*, 2018 U.S. Dist. LEXIS 16849.

As in the case of the negligent superintendent in *Castro,* or the negligent local agent in *Staley*, or the negligent manager in *Woller,* Plaintiffs have asserted a sufficient claim for negligence against Defendant Yates. Plaintiffs' allegations of negligence against Defendant Yates are equal to the allegations made against the corporate agents in the above cited cases. Their Complaint alleges that "Kerry Yates knew that Terry Knox used thousands of gallons of Monsanto's Roundup products but failed to warn him of any dangers." Doc. 1-1, ¶ 3. Thus, it has been alleged Defendant Yates was personally aware of Terry Knox's use of Roundup in large quantities on his farm. Yates himself admits that he promoted Roundup to farmers in Montana and promoted this as safe. Doc.

13

7, ¶ 48. Defendant Yates doesn't specifically deny the personal interaction with Terry Knox or promotion of Roundup as safe to Plaintiff Terry Knox, he simply states that he does not recall it. Doc. 7, ¶¶ 62 and 70; Doc. 1-2, ¶ 2. Yet he concedes that he does on occasion interact with end-users. Doc. 1-2, ¶ 2. Thus, Plaintiffs' allegation that Defendant Yates had personal knowledge of Terry Knox and his use of Roundup stands.

Defendant Yates admits that he knew glyphosate had been classified as a carcinogen by the International Agency for Research on Cancer ("IARC"), Doc. 7, ¶ 26. The IARC is the specialized intergovernmental agency that the World Health Organization of the United Nations tasked with conducting and coordinating research into the causes of cancer. Complaint, Doc. 1-1, ¶ 24. Many of the studies relied on by the IARC had been in Monsanto's possession since 1995. Complaint, Doc. 1-1, ¶ 26. Despite Yates' personal knowledge that the IARC had classified glyphosate as a carcinogen, Yates denies that Roundup products are carcinogens even though they contain glyphosate. In fact, his Declaration claims that he has "no knowledge of Roundup being carcinogenic or being a threat to the general public's health." Doc. 1-2, ¶ 11. This claim of "no knowledge" is remarkable considering Defendant Yates acknowledged that the IARC had classified glyphosate as a carcinogen and Plaintiffs' Complaint that he recently answered put him on notice of the numerous scientific studies on the dangers of Roundup that date back as far as 1997. Doc. 1-1, ¶¶ 32-43. Further, Monsanto admits that Defendant Yates receives a salary and <u>incentives</u> from Monsanto for supporting distributors and retailers of Roundup. Doc. 1, ¶ 10. Therefore, Defendant Yates had a personal financial interest at stake to promote and sell Roundup.

Given the above allegations and admission, Plaintiffs' allegations of negligence against Yates constitute a prima facie case of personal negligence. These allegations of Yates' negligence as a sales representative and a manager include that Yates:

- knew, or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and, specifically, the carcinogenic properties of the chemical glyphosate.

- knew, or, in the exercise of reasonable care, should have known that use of or exposure to Roundup products could cause Plaintiffs' injuries and, thus, created a dangerous and unreasonable risk of injury to the users of these products, including Terry Knox.

- knew, or, in the exercise of reasonable care, should have known that Roundup is more toxic than glyphosate alone and that safety studies on Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Terry Knox from Roundup.

- knew, or, in the exercise of reasonable care, should have known that tests limited to Roundup's active ingredient glyphosate were insufficient to prove the safety of Roundup.

- knew, or, in the exercise of reasonable care, should have known that users and consumers of Roundup were unaware of the risks and the magnitude of the risks associated with the use of and/or exposure to Roundup and glyphosate-containing products.

(Doc. 1-1, ¶¶ 79-83). Plaintiffs' allegations of negligence by Defendant Yates due to concealment and a failure to warn could not be more clear:

- Failing to disclose to Plaintiff Terry Knox, users, consumers, and the general public that the use of and exposure to Roundup presented severe risks of cancer and other grave illnesses;

- Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup and glyphosate-containing products;

- Representing that Roundup products were safe for their intended use when, in fact, Defendants knew or should have known that the products were not safe for their intended use;

(Doc. 1-1, ¶¶ 86(g), (h) and (i). As a result, Yates breached his duties owed to Plaintiffs as a Montana citizen and caused them harm. Doc. 1-1, ¶¶ 84, 87, and 90; MCA § 27-1-701.

In summary, given the allegations against Defendant Yates—not to mention the compelling admissions from Monsanto and Yates supporting them—of Defendant Yates' corporate role as a

15

sales representative and Chemistry Account Manager in Montana, his promotion of Roundup to farmers in Montana, his knowledge of the large use of Roundup by Terry Knox, his knowledge that glyphosate has been declared a carcinogen, his failure to follow the warnings of concerns expressed in scientific studies and regulatory findings, his failure to take measures to prevent Roundup exposure to Montana farmers by recommending personal protective equipment or other precautions, and his failure to warn Montana farmers of the true nature of the hazardous effects of Roundup and glyphosate, there is a substantial and compelling basis to conclude that liability for negligence rests against this Montana defendant and that he acted with actual malice or fraud.

## V. MONSANTO'S LEGAL AUTHORITY IS UNAVAILING.

In its Notice, Monsanto relies on the case of *Strizic v Northwestern Corp.*, 2015 U.S. Dist. LEXIS 34357, for its argument that Plaintiffs' Complaint fails to allege facts sufficient to pierce the corporate shield. However, *Strizic* is distinguishable because, unlike here, no negligence claim was asserted against NorthWestern's corporate employee who wrongfully denied a former employee's claim for short-term disability payments. The only claims asserted were a breach of contract claim for which there was no privity with the corporate employee and an unfair trade practices claim which was insufficiently pled. The case at bar is completely different.

Furthermore, the fact that Defendant Yates has denied knowledge of Plaintiffs' allegations in a self-serving declaration is of no consequence. In responding to the allegations that he marketed and promoted Roundup products specifically to Terry Knox, Defendant Yates claims he lacks information sufficient to form a belief as to the truth of the allegations. Doc. 7, ¶¶ 62 and 70. However, declarations or other statements that merely contain self-serving assertions constitute legal conclusions that should be disregarded. *See, e.g., Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972) (holding that the "absence of an affirmative showing of personal

knowledge of <u>specific facts</u> vitiates the sufficiency of the affidavits"). Further, courts in the District for Montana have repeatedly noted that the limited nature of the fraudulent joinder inquiry precludes the court from evaluating the merits of the claim at an early stage in the proceeding. *McCarthy v. NorthWestern Corp.,* 2009 U.S. Dist. LEXIS 132304, at *8-9 (D. Mont. June 17, 2009) (citations omitted). "). Consequently, Monsanto is not entitled to have the subject-matter jurisdiction of the federal courts determined on the basis of self-serving, unsubstantiated legal conclusions. Plaintiffs need not prove the merits of their claims at this stage. Rather, the burden is on Monsanto to establish that Plaintiffs have no chance of recovering against the resident defendant under Montana law and Monsanto has failed to meet its burden.

## VI. KERRY YATES IS A LEGITIMATE FORUM DEFENDANT BECAUSE HE MAY BE HELD LIABLE FOR PRODUCT LIABILITY CLAIMS.

Federal Courts regularly remand cases where it is unclear whether a "sales representative" will fall under the definition of a "seller" in various state statutes. *Oliva v. Bristol-Myers Squibb Co.*, 2005 U.S. Dist. LEXIS 35881 (D. Conn. Dec. 15, 2005); *Gibbs v. I-Flow, Inc.*, 2009 U.S. Dist. LEXIS 14895 (S.D. Ind. Feb. 24, 2009); *Vargas v. Merck & Co.*, 2006 U.S. Dist. LEXIS 87066 (S.D. Tex. Dec. 1, 2006); *Moore v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 44198 (D. Nev. June 26, 2006); *Durove v. Fabian Transp. Inc.*, 2004 U.S. Dist. LEXIS 25258 (S.D.N.Y. Dec. 10, 2004); *Crowe v. Synthes Spine, Inc.*, 2019 U.S. Dist. LEXIS 8396. In *Oliva*, the court determined that a genuine question of material fact existed as to whether the sales representatives were "product sellers" because there was sufficient evidence from which a jury could find that the sales representative derived economic benefit from promoting the product and the sales representative had extensive knowledge of the product. *Id.,* at *4-5.

Here, Plaintiffs have alleged that Kerry Yates is a sales representative. Defendant Monsanto has admitted that Kerry Yates is a "sales rep." Kerry Yates has been an employee of

Monsanto for 40 years. Doc. 1-2, ¶ 1. He admits that he promotes and supports the use of Roundup by Bayer/Monsanto customers." Doc. 1-2, ¶ 10. Monsanto admits that Defendant Yates receives a salary and <u>incentives</u> from Monsanto for supporting distributors and retailers of Roundup. MT Doc. 1, ¶ 10. Consequently, there is sufficient evidence that a jury could find Defendant Yates to be a "product seller" because of his knowledge of Roundup products and the economic benefit he has derived from the sale of it due to the financial incentives that Monsanto provides him.

Importantly, the question of whether Yates is a "seller" is a question of state law and if there is any question, this court should remand for analysis by a state court. *Gibbs, supra,* at *10.

### VII. KERRY YATES IS A LEGITIMATE FORUM DEFENDANT BECAUSE HE MAY BE HELD LIABLE FOR BREACHES OF IMPLIED AND EXPRESS WARRANTIES AS SELLERS OF GOODS.

Plaintiffs allege breaches of implied and express warranties sufficient to hold Defendants Monsanto and Yates liable as sellers under Montana law. Doc. 1-1, ¶¶ 91-115. Plaintiffs specifically allege that Defendant Yates "warrantied" the Roundup that was used by Plaintiff Terry Knox. Doc. 1-1, ¶¶ 62 and 70. The question is whether Defendant Yates is a seller under the governing Montana statutes: Mont. Code. Ann. §§ 30-2-313 through 30-2-315. Given that Defendant Yates can be considered a seller in the context of product liability claims due to his involvement with Plaintiff, his knowledge and promotion of Roundup products, and the financial incentives he derives from the sale of the Roundup products, he can also be found to be seller in the context of the breach of warranty claims.

### CONCLUSION

Defendant Yates is a legitimate forum Defendant. Under existing Montana law, the negligence, products liability, and breach of warranty claims against Defendant Yates are viable and Monsanto cannot meet its heavy burden of proving fraudulent joinder. Defendant Yates is a

properly joined Defendant in this case and there is no complete diversity among the parties. Consequently, the United States. District Court does not have jurisdiction in this case, and transfer to the Multidistrict Litigation is improper.

Based upon the foregoing, Plaintiffs respectfully requests the Judicial Panel on Multidistrict Litigation vacate CTO-133 and remand this matter to the Montana Eighth Judicial District Court, Cascade County, or allow the U.S. District Court, District of Montana to rule upon Plaintiffs' Motion to Remand.

DATED this 4th day of June, 2019.

By: /s/ A. Christopher Edwards
A. Christopher Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Tel: 406-256-8155/Fax: 406-256-8159
Email: chris@edwardslawfirm.org

Counsel for Plaintiffs Terry Knox and Carolyn "Coke" Knox