# U.S. District Court
## Eastern District of Louisiana (New Orleans)
## CIVIL DOCKET FOR CASE #: 2:19-cv-11252-NJB-JVM

Christy et al v. Monsanto Company et al
Assigned to: Chief Judge Nannette Jolivette Brown
Referred to: Magistrate Judge Janis van Meerveld
Cause: 28:1332 Diversity-Wrongful Death

Date Filed: 06/17/2019
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Monique Christy**
*Individually, and as Executrix of the Estate of Whitney Joseph Christy*

represented by **Wanda Anderson Davis**
Leefe, Gibbs, Sullivan, & Dupre, LLP
One Lakeway Center
3900 N. Causeway Blvd.
Suite 1470
Metairie, LA 70002
504-830-3990
Email: wadavis@leefegibbs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Whitney Marquette Christy**

represented by **Wanda Anderson Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

**Defendant**

**Bayer**

**Defendant**

**Scotts Miracle-Gro Company**



CLERK'S OFFICE
A TRUE COPY

Jun 18 2019

Deputy Clerk, U.S. District Court
Eastern District Of Louisiana
New Orleans, LA

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2019 | 1 | COMPLAINT against MONIQUE CHRISTY (Filing fee $ 400 receipt number 053L-7710065) filed by MONIQUE CHRISTY. (Attachments: # 1 Civil Cover Sheet)Attorney Wanda Anderson Davis added to party MONIQUE CHRISTY(pty:selreq).(Davis, Wanda) (Entered: 06/17/2019) |
| 06/18/2019 | 2 | Initial Case Assignment to Chief Judge Nannette Jolivette Brown and Magistrate Judge Janis van Meerveld. (cc) (Entered: 06/18/2019) |

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MONIQUE CHRISTY, INDIVIDUALLY** | * | CIVIL ACTION NO. |
| **AND AS EXECUTRIX OF THE ESTATE** | | |
| **OF WHITNEY JOSEPH CHRISTY, AND** | | |
| **WHITNEY MARQUETTE CHRISTY** | | |
| | * | |
| **V.** | * | **SECTION _____:** |
| | * | |
| MONSANTO COMPANY, a Missouri | * | |
| Corporation; Bayer, a German Corporation and | * | |
| SCOTTS MIRACLE-GRO | * | |
| COMPANY, an Ohio Corporation, | * | |
| Defendants | * | **JUDGE:** |
| | * | |
| | * | **MAGISTRATE JUDGE:** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *******

## COMPLAINT FOR DAMAGES

**Plaintiffs,** MONIQUE CHRISTY, INDIVIDUALLY AND AS EXECUTRIX OF THE

ESTATE OF WHITNEY JOSEPH CHRISTY, AND WHITNEY MARQUETTE CHRISTY, are

citizens of the United States of America, and are domiciled in and reside the Parish of Ascension,

State of Louisiana and for causes of action alleges as to the defendant(s) as follows:

### I.   PARTY DEFENDANTS

Made defendants herein are:

1. Monsanto Company, a Delaware corporation headquartered in St. Louis, Missouri, and a

   leading marketer of biocides nationwide. Monsanto is and was, at all relevant times,

   engaged in commercial transactions throughout the United States, including in the state of

   Louisiana.

2. Monsanto manufactured and/or causes the manufacture of Roundup Products, and markets

   and distributes the Products in retail stores throughout the United States, including in the

   state of Louisiana, and through the Internet nationwide.

3. Bayer, is a life sciences, pharmaceuticals and chemical company that is headquartered in Leverkusen, Germany and having the principal place of business in St. Louis, Missouri and in 2018 acquired the Monsanto Company.

4. Scotts Miracle-Gro Company (Scotts) is an Ohio corporation headquartered in Marysville, Ohio. Scotts is and was, at all relevant times, engaged in commercial transactions throughout the United States, including in the state of Louisiana.

5. At all relevant times herein Scotts Miracle-Gro Company was the exclusive marketer of Monsanto's herbicide Roundup.

## II.  NATURE OF CASE

6. This is a lawsuit for damages, disability, pain, suffering, survivor's action, and wrongful death of Whitney Joseph Christy as a result of the unfair and deceptive trade practices and negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, failure to warn and/or sale of the herbicide Roundup®, manufactured by Defendant Monsanto Company and distributed, nationwide, by Defendant Scotts Miracle-Gro Company containing the active ingredient glyphosate.

7. Plaintiffs maintain and assert that Roundup® and/or glyphosate is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce, and lacked proper warnings and directions as to the dangers associated with its use.

8. The injuries of Whitney Joseph Christy were avoidable.

9. Defendants label, advertise, and promote their retail Roundup® products, including but not limited to their Roundup® with the false statement that Roundup's active ingredient, glyphosate, targets an enzyme that is not found "in people or pets."

10. However, this claim is false, misleading, and deceptive, as the enzyme that glyphosate targets is found in people and pets—specifically, in beneficial gut bacteria critical to their health and wellbeing, including their immune system, digestion, allergies, metabolism, and even their brain function.

### III.     JURISDICTION

Jurisdiction is vested in this court pursuant to 28 U.S.C.A. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the action is between Lucy Bentley, a citizen of the State of Louisiana and  Walmart Louisiana, LLC, having its principal place of business in Bentonville, Arkansas and incorporated in Delaware.

### IV. VENUE

Venue is proper in this District under 28 U.S.C. § 1391(b)(1). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of the false statement, occurred within this district.

### V.     Roundup Use By Whitney Joseph Christy

Defendants herein are jointly severally and in solido liable and indebted unto petitioner for such damages as are reasonable in the premises, including past physical pain and suffering, mental pain and suffering, medical expenses, loss of earnings, loss of earning capacity and permanent disability to the body, survivor's action, wrongful death, loss of consortium,  together with expert witness fees and legal interest, from the date of judicial demand until paid, and for all costs of these proceedings for the following reasons to wit:

1. At all relevant times, Defendants were in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have acquired and are responsible for Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the commercial herbicide Roundup.

2. Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate.

3. Defendants discovered the herbicidal properties of glyphosate during the 1970's and subsequently began to design, research, manufacture, sell and began distributing glyphosate based "Roundup" as a broad spectrum herbicide in approximately 1974.

4. Whitney Joseph Christy purchased and used Roundup, a product manufactured by Defendant Monsanto and distributed by Defendant, for many years.

5. On June 15, 2018, Whitney Joseph died after contracting non-Hodgkin lymphoma (acute lymphocytic leukemia ) at the age of 36 in 2002, and Monique Christy, wife, and Whitney Marquette Christy, daughter, did not learn until after the death of Whitney Joseph Christy that the potential cause of the non-Hodgkin lymphoma was linked to usage of Roundup and its active ingredient, glyphosate.

6. Whitney Joseph Christy suffered for many years having to have a bone marrow transplant, graphs due to rejections, blood filtering, extreme stress, strokes , loss of vision from radiation, became totally disabled, muscle loss becoming wheel chair dependent for many years before his death.

7. Whitney Joseph Christy used the Roundup® product at least a biweekly for approximately 3 years from 1999 to 2002 and used Roundup more sporadically until approximately 2003 on two acres of property located at in Ascension Parish at 35312 Hwy 1 North Donaldsonville, La 7034 resulting in personal injury, including but not limited to physical pain and suffering, mental pain and suffering, disability and death.

8. Whitney Joseph Christy purchased the product primarily in large quantities from a local community co-op.

9.  Whitney Joseph Christy purchased a tractor and attached a tank to the tractor to spray the 2 acre parcel of land to build his family's home and then continued to use the product until he became too disabled to use the tractor and maintain the land in approximately 2003.

## VI.    Roundup®

10. Roundup® is sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots, and detectable quantities accumulate in the plant tissues.

11. Glyphosate inhibits the enzyme 5-enolpyruvylshikimic acid-3-phosphate synthase that interferes with the shikimic pathway in plants, resulting in the accumulation of shikimic acid in plant tissue and ultimately plant death.

12. The same enzyme—the EPSP synthase that glyphosate "targets"—is present in many beneficial bacteria that inhabit the human and other mammalian gut. Hence, contrary to Defendants' representation that the enzyme targeted by Roundup's glyphosate is not found in people or pets, that enzyme is found in people and pets.

13. Glyphosate, the active ingredient in Roundup, is a non-selective biocide, meaning that it will kill most plants and many simple organisms. Unlike selective biocides, glyphosate cannot be used on most conventional lawns, as it would kill grass that has not been genetically modified.

14. The Roundup purchased by Whitney Joseph Christy on multiple occasions had labels falsely stating, "Glyphosate targets an enzyme not found in humans." Whitney Joseph Christy relied on this representation.

15. In deciding to purchase Roundup Products bearing labels falsely stating, "Glyphosate targets an enzyme not found in humans.," Whitney Joseph relied on this representation in deciding to purchase those Roundup Products.

16. Defendants repeat these false and misleading representations throughout their marketing, including in video advertisements.

17. Glyphosate targets the enzyme EPSP synthase. The beneficial bacteria in our gut (and the gut of other mammals), on which our immune systems rely, produce and utilize EPSP synthase.

18. Thus, the targeted enzyme EPSP synthase is found in people and pets. Defendants' claim to the contrary is demonstrably false.

19. Defendants' false statements and omissions regarding glyphosate and the enzyme it targets are material. There is widespread controversy and concern around glyphosate and its effects on humans and animals. Studies indicate that the health of the beneficial bacteria in our bodies is directly linked to our general health. Studies also suggest that interference with the gut flora may have serious effects on humans and pets.

20. In light of this controversy, and to exploit consumer concerns about glyphosate's effects, Monsanto markets Roundup with the false statement that it targets an enzyme that is not found in people or pets. Monsanto omits material, contrary information, namely, that human gut bacteria produce and utilize the enzyme targeted by Roundup.

21. These false statements deceived Plaintiffs and all Class Members, and caused Whitney Joseph Christy harm.

22. Christy would have acted differently had he known the material information omitted by Defendants and/or the falsity of the statements made by the Defendants.

23. Because of the false statements and material omissions, Defendants were able to sell more Roundup Products and were able to charge more for Roundup than they otherwise would have been.

24. Studies show that the health of beneficial gut bacteria is essential to the overall health of humans and other mammals.

25. Microorganisms that populate the human body out number human cells 10 to one.

26. Studies have also demonstrated that even exposure to low doses of glyphosate can have effects in humans and animals.

27. As a result of such studies, widespread controversy and consumer concern exist regarding glyphosate's effect on humans and animals.

28. The manufacture, formulation and distribution of herbicides, such as Roundup, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7. U.S.C. § 136 et seq. FIFRA requires that all pesticides be registered with the Environmental Protection Agency ("EPA") prior to their distribution, sale, or use, except as described by FIFRA 7 U.S.C. 136a(a).

29. The EPA requires as part of the registration process, among other requirements, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment. Registration by the EPA, however, is not an assurance or finding of safety. The determination the EPA makes in registering or re-registering a product is not that the product is "safe," but rather that use of the product in accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136(a)(c)(5)(D).

30. FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). FIFRA

thus requires the EPA to make a risk/benefit analysis in determining whether a registration should be granted or allowed to continue to be sold in commerce.

31. The EPA and the State of Louisiana registered Roundup for distribution, sale, and manufacture in the United States and the State of Louisiana.

32. FIFRA generally requires that the registrant, Monsanto, conduct health and safety testing of pesticide products, but the government is not required, nor is it able, to perform the product tests that are required of the manufacturer.

33. The evaluation of each pesticide product distributed, sold, or manufactured is completed at the time the product is initially registered.

34. EPA demands the completion of additional tests and the submission of data for the EPA's review and evaluation.

35. In the case of glyphosate and Roundup, the EPA had planned on releasing its preliminary risk assessment – in relation to the registration process – no later than July 2015. The EPA completed its review of glyphosate in early 2015, but delayed releasing the assessment pending further review in light of the World Health Organization's findings.

36. Defendants included a false statement on the labels of their Roundup Products, stating, "Glyphosate targets an enzyme found in plants but not in people or pets."

37. This misrepresentation is presented on certain Roundup product labels under the phrase "DID YOU KNOW?"

38. Defendants know or should have known that consumers are becoming increasingly concerned about Roundup's potential effects on people and animals and that consumers

are more likely to buy—and will pay more for—Roundup; if ,they believe it targets an enzyme that is not found in people and animals.

39. Defendants include these false statements to induce consumers to purchase (or to purchase more of) the Roundup Products and/or to pay more for them.

40. In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup products. Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish. Among the representations the NYAG found deceptive and misleading about the human and environmental safety of Roundup are the following:

a) Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences ... b) And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem. b) Roundup biodegrades into naturally occurring elements. d) Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation. e) This non-residual herbicide will not wash or leach in the soil. It ... stays where you apply it. f) You can apply Accord with " confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Accord into natural products. g) Glyphosate is less toxic to rats than table salt following acute oral ingestion. h) Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety

margin in food and over a 700-fold safety margin for workers who manufacture it or use it. i) You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish. j) "Roundup can be used where kids and pets will play and breaks down into natural material." This ad depicts a person with his head in the ground and a pet dog standing in an area which has been treated with Roundup.

41. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that: a) its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk. *** b) its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable *** c) its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means. *** d) its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics." *** e) glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides; f) its glyphosate-containing products or any component thereof might be classified as "practically non-toxic.

42. On information and belief, Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief still has not done so today.

43. In 2009, France's highest court reviewing a 2007 and 2008 opinion ruled that Monsanto
had not told the truth about the safety of Roundup. The French court affirmed an earlier
judgment that Monsanto had falsely advertised its herbicide Roundup as "biodegradable"
and that it "left the soil clean."[1]

## VII.    EVIDENCE OF CARCINOGENICITY IN ROUNDUP

44. As early as the 1980's Monsanto was aware of glyphosate's carcinogenic properties.

45.  On March 4, 1985, a group of the Environmental Protection Agency's ("EPA")
Toxicology Branch published a memorandum classifying glyphosate as a Category C
oncogene.[2] Category C oncogenes are possible human carcinogens with limited evidence
of carcinogenicity.

46. In 1986, the EPA issued a Registration Standard for glyphosate (NTIS PB87-103214).
The Registration standard required additional phytotoxicity, environmental fate,
toxicology, product chemistry, and residue chemistry studies. All of the data required was
submitted and reviewed and/or waived.[3]

47. In October 1991 the EPA published a Memorandum entitled "Second Peer Review of
Glyphosate." The memorandum changed glyphosate's classification to Group E

---

[1] Monsanto Guilty in 'False Ad' Row, BBC, Oct. 15, 2009, available at
http://news.bbc.co.uk/2/hi/europe/8308903.stm.

[2] Consensus Review of Glyphosate, Casewell No. 661A. March 4, 1985. United States
Environmental Protection Agency

[3] http://www.epa.gov/oppsrrd1/reregistration/REDs/factsheets/0178fact.pdf

(evidence of noncarcinogenicity for humans). Two peer review committee members did not concur with the conclusions of the committee and one member refused to sign.[4]

48. In addition to the toxicity of the active molecule, many studies support the hypothesis that glyphosate formulations found in Defendants' Roundup products are more dangerous and toxic than glyphosate alone.[5] As early as 1991 evidence existed demonstrating that glyphosate formulations were significantly more toxic than glyphosate alone.[6]

49. Studies have established that "cell-cycle dysregulation is a hallmark of tumor cells and human cancer. Failure in the cell-cycle checkpoints leads to genomic instability and subsequent development of cancers from the initial affected cell." Further, "[s]ince cell cycle disorders such as cancer result from dysfunction of unique cell, it was of interest to evaluate the threshold dose of glyphosate affecting cells."[7]

50. Many studies have been conducted over time establish that Roundup is always more toxic than its active ingredient glyphosate.

51. The results of these studies were confirmed in other recently published peer-reviewed studies and were at all times available and/or known to Defendants.

52. Defendants knew or should have known that Roundup is more toxic than glyphosate alone and that safety studies on Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Plaintiff from Roundup.

53. Defendants knew or should have known that tests limited to Roundup's active ingredient glyphosate were insufficient to prove the safety of Roundup.

---

[4] Second Peer Review of Glyphosate, CAS No. 1071-83-6. October 30, 1881. United States Environmental Protection Agency.
[5] Martinez et al. 2007; Benachour 2009; Gasnier et al. 2010; Peixoto 2005; Marc 2004
[6] Martinez et al 1991
[7] (Molinari, 2000; Stewart et al., 2003)

54. A working Group of 17 experts from 11 countries met at the International Agency for Research on Cancer (IARC) on 3-10 March 2015 to review the available published scientific evidence and evaluate the carcinogenicity of organophosphate insecticides including glyphosate and on March 24, 2015, after its cumulative review of human, animal, and DNA studies for more than one (1) year, many of which on information and belief have been in Defendants' possession since as early as 1985, the IARC's working group published its conclusion that the glyphosate contained in Defendants' Roundup herbicide, is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

55. In 1985 the EPA studied the effects of glyphosate in mice finding a dose related response in male mice linked to renal tubal adenomas, a rare tumor. The study concluded the glyphosate was oncogenic.

56. In 2003 Lennart Hardell and Mikael Eriksson published the results of two case controlled studies on pesticides as a risk factor for NHL and hairy cell leukemia. The study concluded that glyphosate had the most significant relationship to NHL among all herbicides studies with an increased odds ratio of 3.11.

57. In 2003 AJ De Roos published a study examining the pooled data of mid-western farmers, examining pesticides and herbicides as risk factors for NHL. The study, which controlled for potential confounders, found a relationship between increased NHL incidence and glyphosate.

58. In 2008 Mikael Eriksson published a study a population based case-control study of exposure to various pesticides as a risk factor for NHL. 90. This strengthened previous associations between glyphosate and NHL.

59. Defendants failed to appropriately and adequately test Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Plaintiff from Roundup.

60. Rather than performing appropriate tests, Defendants relied upon flawed industry supported studies designed to protect Defendants' economic interests rather than Plaintiff and the consuming public.

61. Despite their knowledge that Roundup was considerably more dangerous than glyphosate alone, Defendants continued to promote Roundup as safe.

62. In spite of this knowledge, Defendants continued to issue broad and sweeping statements suggesting that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

63. Upon information and belief, these statements and representations have been made with the intent of inducing Plaintiff, the agricultural community, and the public at large to purchase, and increase the use of, Defendants' Roundup for Defendants' pecuniary gain, and in fact did induce Plaintiff to use Roundup.

64. Defendants made these statements with complete disregard and reckless indifference to the safety of Plaintiff and the general public. 94. Notwithstanding Defendants' representations, scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of many cancers, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcoma.

65. Defendants knew or should have known that glyphosate is associated with an increased risk of developing cancer, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcomas. 96. Defendants failed to appropriately and adequately inform and warn

Plaintiff of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring and/or medications.

66. Despite Defendants' knowledge that Roundup was associated with an elevated risk of developing cancer, Defendants' promotional campaigns focused on Roundup's purported "safety profile." 104. Defendants' failure to adequately warn Whitney Joseph Christy resulted in (1) Whitney Joseph Christy using and being exposed to glyphosate instead of using another acceptable and safe method of controlling unwanted weeds and pests; and (2) scientists and physicians failing to warn and instruct consumers about the risk of cancer, including NHL, and other injuries associated with Roundup.

67. Defendants failed to seek modification of the labeling of Roundup to include relevant information regarding the risks and dangers associated with Roundup exposure.

68. The failure of Defendants to appropriately warn and inform the EPA has resulted in inadequate warnings in safety information presented directly to users and consumers.

69. The failure of Defendants to appropriately warn and inform the EPA has resulted in the absence of warning or caution statements that are adequate to protect health and the environment.

70. The failure of Defendants to appropriately warn and inform the EPA has resulted in the directions for use that are not adequate to protect health and the environment.

**VIII.   Damages**

71. By reason of the foregoing acts and omissions, Plaintiffs seeks compensatory damages as a result of Whitney Joseph Christy's use of, and exposure to, Roundup which caused or was a substantial contributing factor in causing Whitney Joseph to suffer from cancer, specifically NHL, suffered severe and personal injuries which were permanent and lasting in nature, physical pain and mental anguish, multiple surgical procedures, severe stress, medical expenses, economic and non-economic damages, including diminished enjoyment of life, termination from employment,  loss of earning capacity, medical expenses, and ultimately death on June 15, 2018.

72. At all material times herein until his untimely death at the age of 57, Monique Christy was married to Whitney Joseph Christy and depended on her husband for love, affection, sexual relations, companionship, material services, support, and felicity.

73. Monique Christy became the primary caregiver for her disabled husband as a result of the NHL and multiple aggravating medical disabling conditions that resulted from the use of Roundup, but due to an accident that she suffered in 2014, she and her husband had to also rely on their daughters, Marquita and Whitney Christy, additional paid care givers, and ultimately Whitney Joseph Christy had to be placed in a health care facility on multiple occasions up to and including his death instead of being able to spend the time he wanted to spend with his family.

74.  At all material times herein, Monique Christy and Whitney Joseph Christy were the parents of Whitney Marquette Christy, and Marquita Christy (until her death in November 2017)  and depended on their father Whitney Joseph Christy for love, affection, services, society, support, aid, and assistance.

75.  Marquita Christy and Whitney Marquette Christy had a very close and loving relationship with their father, Whitney Joseph Christy, and even when he had to be placed

in a nursing facility, they suffered from support, aid and sacrificed their educational pursuits and careers to help care for their father.

76. As a result of the NHL and multiple aggravating medical disabling conditions that resulted from the use of Roundup, Monique Christy and Whitney Marquette Christy, have suffered and will continue to suffer from the wrongful death of Whitney Joseph Christy and a loss of consortium as well as Marquitta Christy did until her death in November 2017.

## IX. EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

77. Plaintiffs incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

78. The running of any statute of limitations or prescription has been tolled by reason of Defendants' fraudulent concealment. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Whitney Joseph Christy the true risks associated with Roundup and glyphosate.

79. Contra non valentem applies because Whitney Joseph, an innocent consumer was lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendants, or because of their failure to perform some legal duty; whereby, Whitney Joseph Christy, his wife, Monique Christy, and his daughter, Whiney Marquette Christy were kept in ignorance of their rights. Thus, contra non applies because the defendants engaged in conduct which prevented Whitney Joseph Christy, Monique Christy, Whitney Marquette Christy (Marquitta Christy) from availing themselves of their judicial remedies.

80. Defendants continue to represent to the public that "Scientists are in agreement that there is no evidence glyphosate causes cancer."

81. As a result of Defendants' actions, Whitney Joseph Christy and the Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that Roundup and/or glyphosate contact, exposed Whitney Joseph Christy to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

82. Furthermore, Defendants are estopped from relying on any statute of limitations or prescription because of their fraudulent concealment of the true character, quality and nature of Roundup.

83. Defendants were under a duty to disclose the true character, quality, and nature of Roundup because this was non-public information over which Defendants had and continue to have exclusive control, and because Defendants knew that this information was not available to Whitney Joseph Christy or Plaintiffs or to local distributors of Roundup.

84. In addition, Defendants are estopped from relying on any statute of limitations or prescription because of their intentional concealment of these facts.

85. Whitney Joseph Christ and the Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein.

86. Because of the fraudulent acts of concealment of wrongdoing by Defendants, Whitney Joseph Christy and Plaintiffs could not have reasonably discovered the wrongdoing at any time prior.

87. Additionally, the economics of this fraud should be considered.

88. Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks.

89. Whitney Joseph Christy, Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks, cause of the NHL, and were forced to rely on only the Defendants' representations. Accordingly, Defendants are precluded by the discovery rule and/or the doctrine of fraudulent concealment from relying upon any statute of limitations or prescriptive statutes.

## X.   FIRST CAUSE OF ACTION (NEGLIGENCE) LSA R.S. 2315 et seq. and Louisiana Products Liability Act, LSA R.S. 9:2800.51 et seq.

90. Plaintiffs repeat, reiterate, and re-allege, each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

91. Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of Roundup into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

92. The conduct of which the Plaintiffs complain is a cause-in-fact of the resulting NHL.

93. Defendants failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Roundup into interstate commerce in that Defendants knew or should have known that using Roundup created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of NHL, as well as other severe and personal injuries which were permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, loss of

earning capacity as well as need for lifelong medical treatment, monitoring, and/or medications until the wrongful death of Whitney Joseph Christy and loss of consortium to the Plaintiffs.

94. The risk of harm was foreseeable.

95. The negligence by the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

    a.  Manufacturing, producing, promoting, formulating, creating, and/or designing Roundup without thoroughly testing it;

    b.  Failing to test Roundup and/or failing to adequately, sufficiently, and properly test Roundup;

    c.  Failing to adequately train it's employees in adequately, sufficiently, and properly testing Roundup;

    d.  Not conducting sufficient testing programs to determine whether or not Roundup was safe for use; in that Defendants herein knew or should have known that Roundup was unsafe and unfit for use by reason of the dangers to its users;

    e.  Not conducting sufficient testing programs and studies to determine Roundup's carcinogenic properties even after Defendants had knowledge that Roundup is, was, or could be carcinogenic;

    f.  Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup, and the propensity of these ingredients to render Roundup toxic, increase the toxicity of Roundup, whether these

ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether or not "inert" ingredients and/or adjuvants were safe for use;

g. Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and agricultural professions, and the EPA of the dangers of Roundup;

h. Negligently failing to petition the EPA to strength the warnings associated with Roundup;

i. Failing to provide adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

j. Negligently marketing, advertising, and recommending the use of Roundup without sufficient knowledge as to its dangerous propensities;

k. Negligently representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

l. Negligently representing that Roundup had equivalent safety and efficacy as other forms of herbicides;

m. Negligently designing Roundup in a manner, which was dangerous to its users;

n. Negligently manufacturing Roundup in a manner, which was dangerous to its users;

o. Negligently producing Roundup in a manner, which was dangerous to its users;

p. Negligently formulating Roundup in a manner, which was dangerous to its users;

q. Concealing information from the Plaintiff while knowing that Roundup was unsafe, dangerous, and/or non-conforming with EPA regulations;

r.  Manufacturing and distributing a product that was unreasonably dangerous at the time that it was placed in commerce;

s.  Negligent breach of a duty which defendants voluntarily assumed;

t.  selling and distributing Roundup, a product that was unreasonably dangerous from a reasonably anticipated use of the product;

u.  Improperly concealing and/or misrepresenting information from the Plaintiff, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Roundup compared to other forms of herbicides.

v.  Negligently selling Roundup with a false and misleading label.

w.  Any and all other breaches of negligence and Louisiana Products liability law that may be proven at the trial of this matter.

96. Defendants under-reported, underestimated, and downplayed the serious dangers of Roundup.

97. Defendants negligently and deceptively compared the safety risks and/or dangers of Roundup with common everyday foods such as table salt, and other forms of herbicides.

98. Defendants were negligent and/or violated Louisiana law in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Roundup in that they:

a.  Failed to use ordinary care in designing and manufacturing Roundup so as to avoid the aforementioned risks to individuals when Roundup was used as an herbicide;

b.  Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Roundup;

c.   Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Roundup;

d.   Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Roundup;

e.   Failed to warn Whitney Joseph Christy of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects including, but not limited to, the development of NHL;

f.   Failed to conduct adequate testing, clinical testing and post-marketing surveillance to determine the safety of Roundup;

g.   Failed to conduct adequate testing, clinical testing, and post-marketing surveillance to determine the safety of Roundup's "inert" ingredients and/or adjuvants;

h.   Negligently misrepresented the evidence of Roundup's genotoxicity and carcinogenicity;

i.   Were otherwise careless and/or negligent.

99. Despite the fact that Defendants knew or should have known that Roundup caused, or could cause, unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell Roundup to consumers, including to Whitney Joseph Christy.

100.   Defendants knew or should have known that consumers such as the Whitney Joseph Christy would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

101.    Defendants' inadequate warnings, defective design, etc. of Roundup amounts to

willful, wanton, and/or reckless conduct by Defendants.

102.    Defects in Defendants' Roundup were the cause or a substantial factor in causing

Plaintiff's injuries.

103.    At the time of manufacture, Defendant could have provided the warnings or

instructions regarding the full and complete risks of Roundup and glyphosate-containing

products because it knew or should have known of the unreasonable risks of harm

associated with the use of and/or exposure to such products.

104.    At all times herein mentioned, the aforesaid product was defective and unsafe in

manufacture such that it was unreasonably dangerous to the user, and was so at the time it

was distributed by Defendants and at the time Plaintiff was exposed to and/or ingested

the product. The defective condition of Roundup was due in part to the fact that it was not

accompanied by proper warnings regarding its carcinogenic qualities and possible side

effects, including, but not limited to, developing non-Hodgkin's lymphoma as a result of

exposure and use.

105.    Roundup did not contain a warning or caution statement, which was necessary

and, if complied with, was adequate to protect health those exposed in violation of 7

U.S.C. § 136j(a)(1)(E).

106.    Defendants' failure to include a warning or caution statement which was

necessary and, if complied with, was adequate to protect the health of those exposed,

violated 7 U.S.C. § 136j(a)(1)(E) as well as the laws of the State of Louisiana Defendants

could have amended the label of Roundup to provide additional warnings.

107.     The cost of amending the labels would have be inconsequential based on the the revenue received from selling the mislabeled product;

108.      This defect caused serious injury to Whitney Joseph Christy who used Roundup in its intended and foreseeable manner.

109.     At all times herein mentioned, Defendants had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects

110.     Defendants labeled, distributed, and promoted the aforesaid product that it was dangerous and unsafe for the use and purpose for which it was intended.

111.     Defendants failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of NHL.

112.     Defendants' violations of products liability law and/or negligence were the proximate cause of Whitney Joseph Christy's injuries, death, harm and economic loss, which Whitney Joseph Cristy suffered and which Plaintiffs suffered and will continue to suffer from the wrongful death and loss of consortium.

113.     As a result of the foregoing acts and omissions, the Whitney Joseph Christy suffered from serious and dangerous side effects including, but not limited to, excessive stress, strokes, disability which was  permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, loss of earning capacity and financial expenses for hospitalization and medical care. Further, Plaintiff suffered life threatening

NHL, and severe personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

114.     WHEREFORE, Plaintiff respectfully requests that this honorable Court enter judgment in Plaintiff's favor for compensatory and punitive damages, jointly, severally and in solido in amounts as are reasonable in the premises, as Defendants herein are jointly severally and in solido liable and indebted unto petitioners for such damages as are reasonable in the premises, including physical pain and suffering, mental pain and suffering, medical expenses, loss of earnings, future loss of earnings, loss of earning capacity, loss of enjoyment of life, permanent disability to the body, survivor's pain and suffering, wrongful death loss of consortium, and such other causes of action and damages as are reasonable in the premises, together with expert witness fees and legal interest from the date of judicial demand, until paid, attorney's fees, for all costs of these proceedings and for all general and equitable relief as the nature of the case may permit. Plaintiff further prays for trial by jury.

**SECOND  CAUSE OF ACTION (BREACH OF IMPLIED WARRANTIES)**

115.     Plaintiffs repeat, reiterate, and re-allegeseach and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect all if more fully set forth herein.

116.     At all times herein mentioned, the Defendants manufactured, distributed, compounded, recommended, merchandized, advertised, promoted, and sold Roundup and/or have recently acquired the Defendants who have manufactured, compound portrayed, distributed, recommended, merchandized, advertised, promoted, and sold

Roundup, as a broad spectrum herbicide. These actions were under the ultimate control and supervision of Defendants.

117.    At the time Defendants marketed, sold, and distributed Roundup for use by Whitney Joseph Christy, Defendants knew of Roundup's intended use and impliedly warranted the product to be or merchantable quality and safe and fit for this use.

118.    The Defendants impliedly represented and warranted to Whitney Joseph Christy and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

119.    These representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality, and defective.

120.    Whitney Joseph Christy and/or the EPA did rely on said implied warranty of merchantability of fitness for particular use and purpose.

121.    Whitney Joseph Christy reasonably relied upon the skill and judgment of Defendants as to whether Roundup was of merchantable quality and safe and fit for its intended use.

122.    Roundup was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition, and the products' materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

123.    The Defendants breached the aforesaid implied warranties, as their herbicide Roundup was not fit for its intended purposes and uses.

124.    As a result of the foregoing acts and omissions, Plaintiff suffered from NHL and Plaintiff suffered severe and personal injuries which are permanent and lasting in nature,

physical pain and mental anguish, including diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

125.     WHEREFORE, Plaintiff respectfully requests that this honorable Court enter judgment in Plaintiff's favor for compensatory and punitive damages, jointly, severally and in solido in amounts as are reasonable in the premises, as Defendants herein are jointly severally and in solido liable and indebted unto petitioners for such damages as are reasonable in the premises, including physical pain and suffering, mental pain and suffering, medical expenses, loss of earnings, future loss of earnings, loss of earning capacity, loss of enjoyment of life, permanent disability to the body, survivor's pain and suffering, wrongful death loss of consortium, and such other causes of action and damages as are reasonable in the premises, together with expert witness fees and legal interest from the date of judicial demand, until paid, attorney's fees, for all costs of these proceedings and for all general and equitable relief as the nature of the case may permit. Plaintiff further prays for trial by jury.

## CAUSE OF ACTION III.
## UNFAIR AND DECEPTIVE TRADE PRACTICES LSA-R.S. 51:1401 et seq.

126.     Plaintiffs repeat, reiterate, and re-allege, each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

127.     Defendants' actions violate, among other statutes, Louisiana Unfair Trade Practices Act (" LUPTA"), La. R.S. 51:1401, *et seq*.

128.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

129.     Whitney Joseph Christy was a consumer under LUTPA.

130.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Whitney Joseph Christy the true risks associated with Roundup and glyphosate.

131.     Whitney Joseph,  an innocent consumer was lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendants, or because of their failure to perform some legal duty; whereby, Whitney Joseph Christy, his wife, Monique Christy, and his daughter, Whiney Marquette Christy were kept in ignorance of their rights. Thus, contra non applies because the defendants engaged in conduct which prevented Whitney Joseph Christy, Monique Christy, Whitney Marquette Christy (Marquitta Christy) from availing themselves of their  judicial remedies.

132.     Defendants continue to represent to the public that "Scientists are in agreement that there is no evidence glyphosate causes cancer."

133.     As a result of Defendants' actions, Whitney Joseph Christy and the Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that Roundup and/or glyphosate contact, exposed Whitney Joseph Christy to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

134.     Defendants were under a duty to disclose the true character, quality, and nature of Roundup because this was non-public information over which Defendants had and continue to have exclusive control, and because Defendants knew that this information was not available to Whitney Joseph Christy or Plaintiffs or to local distributors of Roundup.

135.     Whitney Joseph Christy and the Plaintiffs had no knowledge that Defendants were engaged in the unfair and deceptive trade practices alleged herein.

136.     Because of the fraudulent acts of concealment of wrongdoing by Defendants, Whitney Joseph Christy and Plaintiffs could not have reasonably discovered the wrongdoing at any time prior.

137.     Additionally, the economics of this fraud should be considered.

138.     Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks.

139.     Whitney Joseph Christy, Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks, cause of the NHL, and were forced to rely on only the Defendants' representations. Accordingly, Defendants are precluded by the discovery rule and/or the doctrine of fraudulent concealment from relying upon any statute of limitations or prescriptive statutes.

140.     Defendants also breached an express warranty that their product targets an enzyme not found in people or pets.

141.     Defendants were unjustly enriched through utilizing the false statement and omitting material information.

142.   As a result of the purchase and use of the Roundup Product(s), Whitney Joseph Christy suffered injuries, disability and death.

143.     LUTPA prohibits unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation . . . or the use or employment of any practice described herein.

144.     Plaintiffs are entitled to recover a money judgment for due and ascertainable losses as a result of the use and/or practice by defendants of unfair or deceptive methods, acts or practices declared unlawful.

145.     Pursuant to La. R. S. 51:1409, Plaintiffs are entitled to attorney's fees, cost and treble damages because defendants "knowingly" engaged in unfair trade practices by using acts or practices that a reasonably prudent businessman knew or should have known that the act or practice was a violation of the Louisiana Unfair Trade Practices Act.

146.     The acts of the defendants were egregious and involved elements of fraud, misrepresentation, deception, or other unethical conduct under LUTPA .

147.     As a result of the foregoing acts and omissions, Plaintiff suffered from NHL and Plaintiff suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

148.     WHEREFORE, Plaintiff respectfully requests that this honorable Court enter judgment in Plaintiff's favor for compensatory and punitive damages, jointly, severally and in solido in amounts as are reasonable in the premises, as Defendants herein are jointly severally and in solido liable and indebted unto petitioners for such damages as are reasonable in the premises, including physical pain and suffering, mental pain and suffering, medical expenses, loss of earnings, future loss of earnings, loss of earning capacity, loss of enjoyment of life, permanent disability to the body, survivor's pain and

suffering, wrongful death loss of consortium, and such other causes of action and damages as are reasonable in the premises, together with expert witness fees and legal interest from the date of judicial demand, until paid, attorney's fees, for all costs of these proceedings and for all general and equitable relief as the nature of the case may permit. Plaintiff further prays for trial by jury.

## Cause of Action IV
## Survivor's Action and Wrongful Death

The sole and proximate cause of the injuries and death of Whitney Joseph Christy was the negligence and/or intentional torts and fault of the defendants in the following non-exclusive particulars:

149.     Whitney Joseph Christy purchased and used Roundup, a product manufactured by Defendant Monsanto and distributed by Defendant, for many years.

150.     On June 15, 2018, Whitney Joseph died after contracting non-Hodgkin lymphoma (acute lymphocytic leukemia ) at the age of 36 in 2002, and Monique Christy, wife, and Whitney Marquette Christy, daughter, did not learn until after the death of Whitney Joseph Christy that the potential cause of the non-Hodgkin lymphoma was linked to usage of Roundup and its active ingredient, glyphosate.

151.     Whitney Joseph Christy suffered for many years having to have a bone marrow transplant, graphs due to rejections, blood filtering, extreme stress, strokes , loss of vision from radiation, became totally disabled, muscle loss becoming wheel chair dependent for many years before his death.

152.     Monique Joseph Christy and Monique Christy are entitled to file a claim for survivors action and wrongful death in accordance with law.

153.     Whitney Joseph Christy used the Roundup® product at least a biweekly for approximately 3 years from 1999 to 2002 and used Roundup more sporadically until approximately 2003 on two acres of property located at in Ascension Parish at 35312 Hwy 1 North Donaldsonville, La 7034 resulting in

personal injury, including but not limited to physical pain and suffering, mental pain and suffering, disability and death.

154.    Whitney Joseph Christy purchased the product primarily in large quantities from a local community co-op.

155.    Whitney Joseph Christy purchased a tractor and attached a tank to the tractor to spray the 2 acre parcel of land to build his family's home and then continued to use the product until he became too disabled to use the tractor and maintain the land in approximately 2003.

156.    Whitney Joseph Christy suffered **Tremendous pain, suffering, discomfort, and mental anguish, prolonged hospitalization, stress and mental anguish, and his wife and daughter suffered severe emotional distress as a result of the wrongful death of Whitney Joseph Christy, causing Whitney Joseph Christy and the Estate of Whitney Joseph Christy to incur extensive medical bills.**

157.    As a result of the foregoing acts and omissions, Plaintiff suffered from NHL and Plaintiff suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

158.    WHEREFORE, Plaintiff respectfully requests that this honorable Court enter judgment in Plaintiff's favor for compensatory and punitive damages, jointly, severally and in solido in amounts as are reasonable in the premises, as Defendants herein are jointly severally and in solido liable and indebted unto petitioners for such damages as are reasonable in the premises, including physical pain and suffering, mental pain and suffering, medical expenses, loss of earnings, future loss of earnings, loss of earning

capacity, loss of enjoyment of life, permanent disability to the body, survivor's pain and

suffering, wrongful death loss of consortium, and such other causes of action and damages

as are reasonable in the premises, together with expert witness fees and legal interest from

the date of judicial demand, until paid, attorney's fees, for all costs of these proceedings

and for all general and equitable relief as the nature of the case may permit. Plaintiff further

prays for trial by jury.

159.     PRAYER FOR RELIEF WHEREFORE, Plaintiff demands judgment against the

Defendants on each of the above-referenced claims and causes of action and as follows: 1.

Awarding compensatory damages in excess of the jurisdictional amount, including, but not

limited to pain, suffering, emotional distress, loss of enjoyment of life, loss of earning

capacity, and other non-economic damages in an amount to be determined at trial of this

action; Awarding compensatory damages to Plaintiff for past and future damages,

including, but not limited to, Plaintiff's pain and suffering and for severe and permanent

personal injuries sustained by the Plaintiff including health care costs and economic loss;

Awarding economic damages in the form of medical expenses, out of pocket expenses, lost

earnings and other economic damages in an amount to be determine at trial of this action;

Punitive and/or exemplary damages for the wanton, willful, fraudulent, and reckless acts

of the Defendants who demonstrated a complete disregard and reckless indifference for the

safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish

Defendants and deter future similar conduct, to the extent allowed by applicable law;

survisors compensation; wrongful death, Pre-judgment interest; 6. Post-judgment interest;

Awarding Plaintiff reasonable attorneys' fees; 8. Awarding Plaintiff the costs of these

proceedings; and 9. Such other and further relief as this Court deems just and proper.

160.    DEMAND FOR JURY TRIAL

161.    Plaintiff hereby demands trial by jury as to all issues


                    RESPECTFULLY SUBMITTED,

                    LEEFE, GIBBS, SULLIVAN, DUPRÉ & ALDOUS


                    *Wanda Anderson Davis*
                    WANDA ANDERSON DAVIS (16788)
                    3900 North Causeway Blvd., Suite 1470
                    Metairie, Louisiana  70002
                    Telephone (504) 830-3990
                    Facsimile:  (504) 830-3998
                    Email:wadavis@leefegibbs.com



CLERK'S OFFICE
A TRUE COPY

Jun 18 2019

Deputy Clerk, U.S. District Court
Eastern District Of Louisiana
New Orleans, LA