A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, Montana 59102
Telephone: (406) 256-8155
Facsimile: (406) 256-8159
triel@edwardslawfirm.org
chris@edwardslawfirm.org
john.edwards@edwardslawfirm.org

*Attorneys for Plaintiffs*

## IN THE UNITED STATE DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| TERRY KNOX and CAROLYN "COKE" KNOX,<br><br>Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY and KERRY YATES,<br><br>Defendants. | Cause No. CV-19-36-BMM<br><br><br>**PLAINTIFFS' BRIEF IN REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND** |

Monsanto's opposition to remand rests solely on the argument that Kerry Yates was fraudulently joined. The proper standard in determining whether a defendant was fraudulently joined is whether the plaintiff has demonstrated any

**EXHIBIT A**

possibility of a legitimate claim against a local defendant under applicable state law. Monsanto's argument fails because Plaintiffs have sufficiently pled legitimate Montana state law claims demonstrating a prima facie case of negligence, strict product liability and breach of warranty against Defendant Yates in conformity with the federal and Montana's pleading standards. Monsanto also fails it its attempt to distinguish the many factually similar cases from this District.

### I. PLAINTIFFS' NEGLIGENCE CLAIM AGAINST DEFENDANT YATES IS PLAUSIBLE UNDER BOTH THE FEDERAL AND STATE PLEADING STANDARDS.

Monsanto goes to great lengths to argue that federal pleading standards apply to this Court's fraudulent joinder analysis. However, Monsanto's argument, while incorrect, really makes no difference because Plaintiffs have sufficiently pled a negligence claim under either standard.

#### A. Montana's More Liberal Pleading Standards Apply.

Monsanto premises its argument on the pleading requirements articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). However, Monsanto overreaches in its argument by claiming that it is well-settled that the federal pleading standards apply. Monsanto is wrong as this issue is not well-settled.

For purposes of determining fraudulent joinder, courts employ the pre-*Twombly* plaintiff can prove "no set of facts" standard of *Conley v. Gibson,* 355 U.S.

2

41, 45–46, 78 (1957), to assess whether under the facts alleged, the plaintiff can state a claim for relief. *See Wong v. Michaels Stores, Inc.,* 2012 U.S. Dist. LEXIS 28791, at *14-15 (E.D.Cal. Mar. 5, 2012); *Willhite v. Int'l Paper Co.*, 2015 U.S. Dist. LEXIS 60216, at *4 (E.D. Cal. May 7, 2015).

Monsanto concedes that *Conley* is still applicable. Doc. 16, pg. 3. Monsanto further concedes that the "no set of facts" or "no chance of recovering" standard is similar to the notice pleading standard in Montana. Doc. 16, pg. 3 citing *Cossitt v. Flathead Indus.*, 2018 MT 82, ¶ 9, 415 P.3d 486. Under Montana law, the primary "consideration in determining the sufficiency of the pleadings is whether the other party has adequate notice of the claim [to] prepare a responsive pleading." *Poeppel v. Flathead Cty.,* 1999 MT 130, ¶ 17. "A district court may dismiss a complaint for failure to state a claim if it appears 'beyond doubt' the plaintiff can 'prove no set of facts in support of his claim that would entitle him to relief.'" *Cossitt* at ¶ 9 (citation omitted). Here, Monsanto has failed to prove "beyond doubt" that Plaintiffs can prove no set of facts to support a claim against Defendant Yates.

### B.  Monsanto Exaggerates Federal Pleading Standards.

Even if federal pleading standards apply, the burden is not nearly as high as Monsanto contends. Rule 8(a)(2) requires that a complaint must provide a short and plain statement that provides the defendant with notice of the claim being asserted, and supply enough factual matter, taken as true, to suggest a violation. *Bell Atlantic*

3

*Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).  The Supreme Court explained in *Twombly* that a complaint is "not require[d] [to include] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.  Consequently, Monsanto concedes that under the plausibility standard of *Bell* and *Iqbal*, all a plaintiff needs to do is plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; Doc. 16, pg. 3.  Plaintiffs have met the standard here.

    **C.**    **Plaintiffs Have Alleged Negligent Conduct Nearly Identical To The *Woller* Case And Well Within The Bounds Of The Other Cases Decided In This District That Have Rejected Fraudulent Joinder Arguments.**

Monsanto fails woefully in its attempt to distinguish the eleven cases cited in Plaintiffs' initial brief.  Monsanto repeatedly ignores Montana law in its arguments and tries to impose additional requirements on claims for personal liability.  Monsanto continues to claim that Plaintiffs are required to allege personal interaction with Yates.  There is no such requirement.  All that is required is to show that the corporate agent's actions were tortious in nature as shown by the decisions in *Castro, Christian,* and *Staley.*  For example, if personal interaction were a

4

requirement, the manager of Anaconda's Smelter Operations in *Christian* would have to know and have personally interacted with all 108 of the plaintiffs.

Moreover, despite Monsanto's efforts to twist their allegations, Plaintiffs have alleged personal interaction with Defendant Yates in support of their claims of negligence. Plaintiffs have alleged that Defendant Yates "marketed, promoted, and warrantied" some of the Roundup **used** by Terry Knox in his farming operation. Doc. 1-1, ¶¶ 62 and 70. Based on this warranty, Defendant Yates had personal knowledge of the size of Plaintiffs' farming operation and the Complaint alleges that "Kerry Yates knew that Terry Knox used thousands of gallons of Monsanto's Roundup products but failed to warn him of any dangers." Doc. 1-1, ¶ 3. Thus, it has been alleged Defendant Yates was personally aware of Terry Knox's use of Roundup in large quantities on his farm. Yates himself admits that he promoted Roundup to farmers in Montana and promoted this as safe. Doc. 7, ¶ 48. Defendant Yates doesn't specifically deny the personal promotion of Roundup to Terry Knox, he simply states that he does not recall it. Doc. 7, ¶¶ 62 and 70. Thus, Plaintiffs have adequately alleged that Defendant Yates had personal knowledge of Terry Knox, his farming operation, and his use of Roundup.

The most analogous case to the case at bar is the one most recently decided by the District of Montana involving personal injury from exposure to asbestos. In *Woller v BNSF Ry. Co.*, CV-17-93-GF-BMM-JTJ, 2018 U.S. Dist. LEXIS 18736

5

(D. Mont.), United States Magistrate Judge Johnston found that the plaintiff had sufficiently asserted a negligence claim against BNSF's managing agent, Mr. Swing, in Libby Montana:

> Ms. Woller's complaint alleges that Mr. Swing was incorporated by reference into all allegations as to BNSF's conduct as follows:
>
>> During [1969-1991], Plaintiff resided or remained in proximity to the real property of BNSF and was thereby exposed to asbestos dust from BNSF's property and operations. John Swing was a managing agent for BNSF in Libby, Montana, and as such is separately responsible for acts wrongful in this nature. Allegations herein as to BNSF's conduct and knowledge by this reference specifically include defendant John Swing.
>
> (*Id.* at ¶ 80). The complaint further alleges that Mr. Swing was negligent because he failed to inquire, study, and evaluate the dust hazard to human health, failed to take measures to prevent toxic dust from collecting upon and escaping from BNSF's property, and failed to warn Ms. Woller of the true nature of the hazardous effects of the dust. (*Id.* at ¶ 85; *see id.* at ¶¶ 79-92). Therefore, these allegations are sufficient to state a negligence claim against Mr. Swing personally, and BNSF cannot show that Ms. Woller has not or cannot state a claim for relief against Mr. Swing under the applicable Montana law.

*Id.*, *6-7 (footnotes omitted). There is no mention that Mr. Swing had met or knew the Wollers.

The allegations of potential harm in the case at bar are just as strong. Defendant Yates admits that he knew glyphosate had been classified as a carcinogen by the International Agency for Research on Cancer ("IARC"), Doc. 7, ¶ 26. The IARC is the specialized intergovernmental agency that the World Health Organization of the United Nations tasked with conducting and coordinating research into the causes of cancer. Complaint, Doc. 1-1, ¶ 24. Many of the studies

6

relied on by the IARC had been in Monsanto's possession since 1995.  Complaint, Doc. 1-1, ¶ 26.  Despite Yates' personal knowledge that the IARC had classified glyphosate as a carcinogen, Yates denies that Roundup products are carcinogens even though they contain glyphosate.  Doc. 7, ¶ 18. In fact, he admits he continues to promote Roundup as safe when used in accordance with the products' labeling.  Doc. 7, ¶ 48.

The allegations of misconduct by Defendant Yates are much more than Monsanto's mischaracterization of "limited" and "generalized" allegations and exceed the allegations against Mr. Swing in *Woller*.  There, Ms. Woller alleged that Mr. Swing failed to "inquire, study, and evaluate the dust hazard to human health, failed to take measures to prevent toxic dust from collecting upon and escaping from BNSF's property, and failed to warn Ms. Woller of the true nature of the hazardous effects of the dust."  Here, Plaintiffs have alleged that Defendant Yates, despite the ability and means to investigate, study, and test Roundup products and to provide adequate warnings, he failed to do so and, even worse, wrongfully concealed information and made false and/or misleading statements concerning the safety and/or exposure to Roundup and glyphosate.  Doc. 1-1, ¶ 86.  In fact, Defendant Yates admits that he "**continues to promote, Roundup-branded herbicides as safe** when used in accordance with the products' labeling." Doc. 7, ¶ 48.  There does not appear to be any allegation that Mr. Swing had declared that asbestos dust was safe.

7

Further, Monsanto admits that Defendant Yates receives a salary and incentives from Monsanto for the promotion of Roundup.  Doc. 1, ¶ 10.  Therefore, Defendant Yates had a personal financial interest at stake to promote and sell Roundup that does not appear to have been alleged in the *Woller* case.

Given the above allegations and admission, Plaintiffs' allegations of negligence against Yates constitute a prima facie case of personal negligence.  These allegations of Yates' negligence as a sales representative and a manager, like in *Woller,* include that Yates specifically:[1]

- knew, or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and, specifically, the carcinogenic properties of the chemical glyphosate.

- knew, or, in the exercise of reasonable care, should have known that use of or exposure to Roundup products could cause Plaintiffs' injuries and, thus, created a dangerous and unreasonable risk of injury to the users of these products, including Terry Knox.

- knew, or, in the exercise of reasonable care, should have known that Roundup is more toxic than glyphosate alone and that safety studies on Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Terry Knox from Roundup.

---

[1] Monsanto argues that Plaintiffs' "tag-along style of pleading fails to satisfy federal pleading standards" or somehow diminishes the strength of the claims against the individual defendant.  However, incorporation by reference is entirely proper. *Woller,* 2018 U.S. Dist. LEXIS 18736, *6 ("Ms. Woller's complaint alleges that Mr. Swing was incorporated by reference into all allegations as to BNSF's conduct").  The same is true for referring to the defendants collectively.  *Nelson v. Hartford Ins. Co. of the Midwest*, 2012 U.S.Dist. LEXIS 37794, *4 fn 1 (D. Mont. March 20, 2012) (rejecting the defendants' argument that the plaintiffs only specifically mentioned the Montana defendant once).

- knew, or, in the exercise of reasonable care, should have known that tests limited to Roundup's active ingredient glyphosate were insufficient to prove the safety of Roundup.

- knew, or, in the exercise of reasonable care, should have known that users and consumers of Roundup were unaware of the risks and the magnitude of the risks associated with the use of and/or exposure to Roundup and glyphosate-containing products.

(Doc. 1-1, ¶¶ 79-83). Plaintiffs' allegations of negligence by Defendant Yates due to concealment and a failure to warn, like in *Woller,* could not be more clear:

- Failing to disclose to Plaintiff Terry Knox, users, consumers, and the general public that the use of and exposure to Roundup presented severe risks of cancer and other grave illnesses;

- Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup and glyphosate-containing products;

- Representing that Roundup products were safe for their intended use when, in fact, Defendants knew or should have known that the products were not safe for their intended use;

(Doc. 1-1, ¶¶ 86(g), (h) and (i). As a result, Yates breached his duties owed to Plaintiffs as a Montana citizen and caused them harm. Doc. 1-1, ¶¶ 84, 87, and 90; MCA § 27-1-701.

In summary, given the allegations against Defendant Yates—not to mention the compelling admissions from Monsanto and Yates supporting them—there is a substantial and compelling basis to conclude that liability for negligence rests against this Montana defendant, just like in *Woller*, and that he acted with actual

9

malice or fraud. Monsanto's argument that this case is somehow different than *Woller* and the ten other cases simply ignores and misstates the facts.

### D. Remand Must Still Be Granted Unless There Is No Ability To Amend The Complaint Which Is Not The Case Here.

Even assuming, arguendo, that Plaintiffs' state court complaint fails to state a claim against Yates, remand must still be granted unless Monsanto shows that the Plaintiffs would not be afforded leave to amend their complaint to cure the purported deficiency. "Remand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Nasrawi v. Buck Consultants, LLC,* 776 F.Supp.2d 1166, 1170 (citing *Burris v. AT & T Wireless, Inc.,* 2006 WL 2038040, at *2 (N.D.Cal. Jul.19, 2006)). Accord, *Willhite, supra.* Further, "dismissal without leave to amend is improper unless it is clear … that the complaint could not be saved by any amendment." *Polich v. Burlington N. Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Monsanto has made no argument that Plaintiffs would not be allowed to amend their complaint. Therefore, remand is proper.

### II. PLAINTIFFS' PRODUCT LIABILITY AND BREACH OF WARRANTY CLAIMS AGAINST DEFENDANT YATES ARE PLAUSIBLE UNDER THE FEDERAL AND STATE PLEADING STANDARDS.

Plaintiffs' Motion to Remand focused on the negligence claims against Defendant Yates because the law is clear that the allegations against Defendant

10

Yates are sufficient to support a claim of negligence especially when compared to the eleven similar cases decided by this District. The negligence claim alone is more than enough to carry Plaintiffs' Motion to Remand. Nonetheless, Plaintiffs will address the other legal claims against Yates and while there are no cases from this District specifically addressing the conduct of an allegedly fraudulent joined sales representative in the context of individual liability for product liability or breach of warranty claims, the public policy behind the products liability statutes strongly suggest that these claims are plausible under Montana law.

### A.   Plaintiffs Have Alleged Plausible Product Liability Claims Against Defendant Yates.

Defendant Yates concedes that there is no Montana law directly on point as to whether a sales representative is a "seller" under its products liability statutes. As a result, Federal Courts regularly remand cases where it is unclear whether a "sales representative" will fall under the definition of a "seller" in various state statutes. *Oliva v. Bristol-Myers Squibb Co.*, 2005 U.S. Dist. LEXIS 35881 (D. Conn. Dec. 15, 2005); *Gibbs v. I-Flow, Inc.*, 2009 U.S. Dist. LEXIS 14895 (S.D. Ind. Feb. 24, 2009); *Vargas v. Merck & Co.*, 2006 U.S. Dist. LEXIS 87066 (S.D. Tex. Dec. 1, 2006); *Moore v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 44198 (D. Nev. June 26, 2006); *Durove v. Fabian Transp. Inc.*, 2004 U.S. Dist. LEXIS 25258 (S.D.N.Y. Dec. 10, 2004); *Crowe v. Synthes Spine, Inc.*, 2019 U.S. Dist. LEXIS 8396.

In *Oliva*, the court determined that Connecticut had not directly addressed this issue. *Oliva* at *14. The court concluded that the case was to be remanded to state court because the sales representative's efforts to promote the sale of the drug could qualify the sales representative as a seller under Connecticut's product liability act. *Id.* at 14-15. The court recognized its duty to construe the products liability act broadly because its principal purpose and policy is to protect people from harm caused by defective and hazardous products. *Id.* at 16.

Here, Plaintiffs have alleged that Kerry Yates is Monsanto's sales representative in Montana and promoted Roundup. Doc. 1-1, ¶ 3. Defendant Monsanto has admitted that Kerry Yates is a "Sales Rep." Doc. 1, ¶ 10. Yates admits that he promoted Roundup products in Montana. Doc. 7, ¶ 5. Monsanto admits that Defendant Yates receives a salary and <u>incentives</u> from Monsanto for the promotion or sale of Roundup. Doc. 1, ¶ 10. Consequently, Plaintiffs have, like the plaintiff in *Oliva,* sufficiently alleged that Defendant Yates is a "product seller" because of his knowledge of Roundup products and the economic benefit he has derived from the sale of it due to the financial incentives that Monsanto provides him.

### B. Plaintiffs Have Alleged Plausible Breaches Of Warranties Against Defendant Yates.

Plaintiffs also allege breaches of implied and express warranties sufficient to hold Defendant Yates liable as sellers under Montana law. Doc. 1-1, ¶¶ 91-115.

Monsanto is wrong that Plaintiffs have not alleged a contractual relationship with Defendant Yates. Plaintiffs specifically allege that Defendant Yates "warrantied" the Roundup that was used by Plaintiff Terry Knox. Doc. 1-1, ¶¶ 62 and 70.

The question is whether Defendant Yates, because he personally warrantied some of Plaintiffs' Roundup, is a warrantor and seller under the governing Montana statutes: Mont. Code. Ann. §§ 30-2-313 through 30-2-315. As argued in the preceding section, public policy requires that Defendant Yates be considered a seller in the context of the product liability statutes due to his involvement with Plaintiff, his knowledge and promotion of Roundup products, and the financial incentives he derives from the sale of the Roundup products. Thus, he can also be found to be a seller in the context of the breach of warranty claims. This is especially true when Plaintiffs have alleged that he personally warrantied some of their Roundup products.

## **CONCLUSION**

Monsanto has failed to meet its burden to show that it appears "beyond doubt" the plaintiff can "prove no set of facts in support of his claim that would entitle him to relief" against Defendant Yates. Plaintiffs' Motion to Remand should be granted.

DATED this 24th day of June, 2019.

                By: /s/ Triel D. Culver
                    A. Clifford Edwards
                    Triel D. Culver
                    A. Christopher Edwards
                    John W. Edwards
                    Attorneys for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E) of the U.S. District Court for the District of Montana, I certify that this is proportionately spaced Time New Roman text typeface of 14 points; is double-spaced; and the word count calculated by Word is 3,073, excluding the Caption and Certificate of Compliance.

DATED this 24th day of June, 2019.

By: /s/ Triel D. Culver
A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
Attorneys for Plaintiff