**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Roundup Products Liability Litigation<br><br>*Trosclair v. Monsanto Company, et al.*<br>2:19-cv-10689-CBJ-MBN | MDL Docket No. 2741 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE<br>CONDITIONAL TRANSFER ORDER**

Pursuant to Rule 7.1(f) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML"), Plaintiff in the above-captioned matter submits his Memorandum in Support of Plaintiff's Motion to Vacate Conditional Transfer Order No. 138, and respectfully asks the Court to consider the following arguments in support of that Motion:[1]

### I. JURISDICTION

The facts of the instant matter support not only the JPML's vacating of the Conditional Transfer Order ("CTO"), but further the remand of Trosclair's action under Rule 10.2(a) of the JPML Rules of Procedure.

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute… It is presumed that a cause lies outside [federal courts'] limited jurisdiction, … and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokonen v. Guardian Life Ins. Co. of America*, 511 U.S 375, 377 (1994) (internal cites omitted). In the absence of jurisdiction, a court may not "proceed at all in any case," which requires that jurisdiction be "the first and fundamental question." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

---

[1] Included as required: Exhibit A – Numbered Schedule; Exhibit B – Complaint; Exhibit C – Docket Sheet.

1

> The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. All doubts about federal jurisdiction should be resolved in favor of remand to state court.

*In re Prempro Prods. Liab. Litig.*, 591 F. 3d 613, 620 (8th Cir. 2010), citing *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005) and *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. App).

When evaluating improper joinder claims, the Court must evaluate all factual allegations and resolve all contested issues of substantive fact and all ambiguities in the plaintiff's favor. *Burden v. General Dynamic Corp.*, 60 F.3d 213, 216 (5th Cir., 1995). On finding the "plaintiff has any possibility of recovery… the joinder is not fraudulent in act or law." *Id*. Upon a showing of good cause, the JPML will remand an action prior to consolidated pretrial proceedings. *In re South Cent. States Bakery Products Antitrust* Litigation, 462 F. Supp. 388, 390 (JPML, 1978).

Plaintiff ("Trosclair") moves to vacate the transfer of the civil action, *Trosclair v. Monsanto Company, et al.*, associated with CTO No. 138, issued on June 18, 2019, for lack of subject-matter jurisdiction due to a lack of complete diversity among the parties pursuant to 18 U.S.C § 1441(b)(2). In the present matter, Trosclair has pled all causes of actions under Louisiana law, and has raised no federal questions. Because Louisiana defendants are properly joined, the "forum defendant rule" dictates this action may not be removed to federal court. *Hurley v. Motor Coach Industries, Inc*., 222 F.2d 377, 378 (7th Cir. 2000). Furthermore, transferring the case would neither result in convenience to the parties or witnesses, nor promote just and efficient litigation, as this matter involves significant facts and allegations which are unique to this particular litigation, and are not common to other cases in MDL No. 2741. The remand issues have already been fully briefed by both Trosclair and defendant Monsanto Company in the U.S. District Court for the Eastern District of Louisiana. Oral arguments were to be heard by the District Court the day after

CTO No. 138 was entered. Justice would be best served by vacating CTO No. 138 as it pertains to Trosclair, and, because Trosclair herein shows good cause, this matter should be remanded.

## II.   BACKGROUND

Trosclair was exposed to Roundup® and/or undiluted concentrated Roundup® ("UCR") [2] from 2012 through 2018, while spraying herbicide on a farm owned by defendant 3M Cattle LLC ("3M") in St. Charles Parish, Louisiana, to control weeds. *See* Petition (ESF No. 1.2) at ¶ 22. The backpack sprayer provided by 3M to Trosclair leaked. Further, 3M failed to provide Trosclair with training regarding the safe application of herbicides, or with any personal protective equipment ("PPE"). *Id*. at ¶ 200. 3M provided Trosclair with both Roundup® and/or UCR. The UCR was provided to 3M in repurposed jugs by Luling Plant employee, defendant Randy Jacobs ("Jacobs"). *Id*. at ¶¶ 189-198. Trosclair used both Roundup® and the UCR provided by Jacobs to kill weeds on 3M's farm. *Id*.  Trosclair was diagnosed with non-Hodgkin's lymphoma ("NHL") on June 24, 2015. *Id.* at ¶ 23. Trosclair continued to be exposed to Roundup® and/or UCR until he became aware of Roundup® and/or UCR's carcinogenicity, and its association with NHL. *Id.* at ¶ 22.

Both 3M and Jacobs deny the allegations against them. 3M, through the declaration of Courtney Mongrue, denies directing Trosclair to use Roundup® and/or UCR. 3M further alleges that Trosclair was directed to spray a different herbicide, 2,4-D. *See* Declaration of Courtney Mongrue ("3M Decl.") (ECF No. 1.8). Finally, 3M denies receiving Roundup® and/or UCR from Jacobs, but 3M does admit to providing the sprayer used by Trosclair. *Id.* Jacobs, through

---

[2] As outlined below, defendant 3M Cattle received chemicals from defendant Randy Jacobs, an employee of Monsanto's glyphosate plant in Luling, Louisiana. Trosclair understood these chemicals to have come directly from the plant. Arthur Kelm declares he also received chemicals directly from an employee at the plant, which Kelm understood to be product taken from the plant's production line prior to dilution, and which was referred to as "the good stuff" and "real deal" Roundup®. *See* Declaration of Arthur O. Kelm, attached hereto as Exhibit 1.

declaration, denies providing Roundup® and/or UCR to 3M and Trosclair. *See* Declaration of Randy Jacobs ("Jacobs Decl.") (ECF No. 1.7). Jacobs denies knowing Trosclair, but does not deny knowing 3M or the Mongrue brothers who own 3M. *Id*. Jacobs also denies ever removing Roundup® and/or UCR from the Luling Plant. *Id*.

The factual allegations made by Trosclair - that he applied product taken from the Luling Plant by an employee without Monsanto's authorization are distinct from the cases currently being litigated within the MDL. In particular, the fact that defendant Jacobs, an employee at Luling Plant, removed UCR from the plant without authorization, and distributed it from his garage to 3M and/or Trosclair in repurposed and mislabeled jugs, is a unique fact which distinguishes this matter from the common questions of fact required for the transfer of a tag-a-long action. *See* Petition (ESF No. 1.2) at ¶¶ 29-30. Trosclair then used 3M's leaky backpack sprayer provided by 3M to apply the mislabeled product provided by Jacobs as an herbicide, and in the absence of 3M's providing of any training or protective equipment. *Id*.

Case specific discovery unique to this case as to the non-diverse defendants will be required to ferret out the liability of 3M and Jacobs. If CTO No. 138 is not vacated, and the instant matter is not remanded, discovery will be delayed and evidence of these distinctive issues may be forever lost as memories fade, and employment turnover at the plant results in lost witnesses. For these reasons, and the reasons below, Trosclair has met the burden of "a showing of good cause" that the CTO should be vacated, and this issue should be remanded by this panel.

### III.   PROCEDURAL HISTORY

Trosclair properly brought his state law claims in the 29th Judicial District Court for the Parish of St. Charles, State of Louisiana. Defendant Monsanto Company ("Monsanto"), a Delaware

corporation with its principal place of business located in St. Louis, Missouri, operates a manufacturing facility ("Luling Plant") in Luling, Louisiana, located in St. Charles Parish. *See* Petition at ¶ 1. Defendant 3M is a Louisiana limited liability company, doing business in the State of Louisiana, and its registered Agent for Service of Process is located in Luling, Louisiana. *Id*. Defendant Randy Jacobs is a natural person, residing in the State of Louisiana, and domiciled in Luling, Louisiana. *Id*. Additionally, through Louisiana's Direct Action statute, Monsanto's insurer, XL Bermuda, Ltd. and two of its Louisiana subsidiaries, Catlin Insurance Services, Inc. and T.H.E. Insurance Company, have been named as co-defendants. *Id.* Each of these defendants were named as defendants in the original petition. The plaintiff, Roland Joseph Trosclair, Jr., is a citizen of Louisiana, and a resident of St. Charles Parish, Louisiana. *Id.*

Trosclair's claims are based entirely on Louisiana state law causes of action, and raise no federal questions. All defendants, including the forum defendants, have been properly served in this matter, with the possible exception of XL Bermuda. Defendants 3M and Jacobs are each citizens of the forum state, as is Trosclair. Defendants T.H.E. Insurance Company and Catlin Insurance Service, Inc. are each citizens of the forum state, and upon information and belief, provide and/or have provided insurance policies which pertain to Monsanto and/or Luling Plant. *Id* at ¶ 19. Furthermore, Trosclair and defendants 3M and Jacobs are each domiciled within the jurisdiction of the 29th Judicial District.

On May 24, 2019, defendant Monsanto removed this action to the U.S. District Court for the Eastern District of Louisiana, alleging that Monsanto and XL Bermuda are each a foreign entity to Louisiana (with Monsanto deemed a citizen of Missouri and Delaware, and XL Bermuda a foreign entity), and further alleging improper joinder regarding the remaining defendants. *See* Monsanto Company's Notice to State Court of Removal to Federal Court (hereafter "Notice of

5

Removal") (ESF No. 1) at ¶¶ 7-9. Monsanto relied on the declarations of defendant Jacobs and Courtney Mongrue of 3M, in which each defendant denied Trosclair's allegations. *Id.* at Exhibits 6-7 (ECF Nos. 1.7-1.8). Monsanto further relied on declarations from AXA XL (the parent company of XL Bermuda, T.H.E. Insurance Company and Catlin Insurance Service, Inc.) and Bayer U.S., L.L.C. (the parent company of Monsanto) which denied that T.HE. Insurance Company and Catlin Insurance Service, Inc. have ever provided insurance policies relevant to the instant matter. *Id.* at Exhibits 4-5 (ECF Nos. 1.5-1.6). Additionally, Monsanto relied on the declaration of Monsanto employee, Keith R. Abrams, asserting that the Monsanto Company Manufacturing Facility in Luling, Louisiana, is not a legal entity. *Id.* at Exhibit 3 (ECF No. 1.4).

On May 28, 2019, Plaintiff filed a Notice of Opposition to Removal (ECF No. 7), and moved to remand this case. A declaration from Trosclair which refuted the declarations of Jacobs and Courtney Mongrue of 3M was attached. ("Supp. Trosclair Decl.") (ECF No. 7.2). On June 11, 2019, Monsanto filed an Opposition to Plaintiff's Motion to Remand (ECF No. 19), relying on an additional declaration from defendant Jacobs ("Supp. Jacobs Decl.") (ECF No, 19.3). On June 14, 2019, Plaintiff filed an *Ex Parte* Motion for Leave to File Reply Memorandum in Response to Monsanto Company's Opposition to Remand (ECF No. 28). On June 17, 2019, the day before oral arguments were scheduled to take place on the remand issue in the Eastern District of Louisiana, CTO No. 138 was issued.

## IV. ARGUMENT

### A. No Undisputed Facts Exist

This Panel may only consolidate "tag-along" actions when it is for the convenience of the parties and witnesses, and to promote the just and efficient conduct of the action. 28 U.S.C. § 1407(a). JPML Rule 1.1(h) defines "tag-along" actions as "refer[ing] to a civil action pending in a

6

district court which involves common questions of fact…" Monsanto's removal and subsequent transfer as a "tag-along" matter, hinges on Monsanto's meritless claim that complete diversity exists because of improper joinder.

> [T]he test for [improper] joinder is whether the defendant has demonstrated that there is **no possibility of recovery** by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant…
>
> A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.
>
> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that **a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts** that would preclude plaintiff's recovery against the in-state defendant.

*Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-574 (5th Cir. 2004) (emphasis added).

Courts are "cautioned against 'pretrying a case to determine removal jurisdiction." *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. App., 2000) (internal citations removed).

> The burden of proving a fraudulent joinder is a heavy one. The removing party must prove **that there is absolutely no possibility that the plaintiff will be able to establish a cause of action** against the in-state defendant in state court…
>
> In making its determination, the court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings **in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff**.

*Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. App., 1983) (emphasis added).

The burden is upon Monsanto, as the removing party, to "prove that there is absolutely no possibility that [Trosclair] will be able to establish a cause of action against [3M and/or Jacobs] …" *Id*. In the evaluation of Trosclair's factual allegations, the Court must consider the allegations in the light most favorable to Trosclair. *Id*.

Monsanto cannot meet its burden. While discovery has not yet begun, competing declarations set forth disputed facts relevant to liability issues. Further, if Jacobs and 3M were to be dismissed,[3] Louisiana's pure comparative fault regime (*see Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967 (La. 1985)) will allow Monsanto to include Jacobs and 3M on the verdict sheet when it inevitably argues Monsanto is not at fault if Jacobs stole its product and gave or sold it to 3M and/or Trosclair.

Monsanto alleges Trosclair "has used his 'bag of tricks' by improperly joining Louisiana defendants… [and] by asserting allegations contrary to the facts in a failed attempt to defeat diversity" and asks this Court to disregard all non-diverse defendants. *See* Notice of Removal (ESF No. 1) at ¶ 3. To support these assertions, Monsanto skipped the Rule 12(b)(6) type proceedings, and engaged in a battle of declarations, attaching two (2) separate declarations from Jacobs and a declaration from Courtney Mongrue of 3M, each denying the allegations of Trosclair. Monsanto alleges the denials of Courtney Mongrue of 3M and Jacobs establish that neither owed a duty to Trosclair because each denied providing Trosclair with Roundup® and/or UCR. *See* Notice of Removal (EMF No. 1) at ¶¶ 20, 27.

Trosclair responded with two (2) separate declarations of his own, declaring Wade Mongrue and Courtney Mongrue of 3M provided Trosclair with herbicide in Roundup®PRO jugs. *See*

---

[3] Monsanto has filed Motions to Dismiss each of these defendants in the Eastern District of Louisiana.

8

Trosclair Decl. (ESF No. 6.2). Trosclair further declares that 3M received highly concentrated Roundup® (UCR) from Luling plant employee, Jacobs. *See* Supp. Trosclair Decl. (ESF No. 28-2). At least once Trosclair even accompanied Wade Mongrue to retrieve the herbicide from Jacobs' garage. *Id.* Trosclair attached a photograph taken at the 3M farm in February of 2019 of a jug with a Potassium Phosphate label, which he declares is representative of the jugs received from Jacobs. *Id.* Visible on the jug is a black ink stamp, which states "Received by: P. Neese." *Id.* at Exhibit 1. "P. Neese" is believed to be Paul Neese, identified by the social media website LinkedIn as a twenty-three-year employee at Luling Plant who maintains the job title of "Lab Specialist and Inventory Manager." *Id.* at Exhibit C (ESF No. 28-3). Trosclair understood the jugs received from Jacobs to contain "highly concentrated Roundup® herbicide." *See* Trosclair Decl. (ESF No. 6.2).

As further evidence of his claims, Trosclair attached a photograph of a jug of Roundup®PRO, which he declared, contrary to the assertions of Courtney Mongrue of 3M, to be representative of the labeled Roundup® jugs provided to Trosclair by 3M. (ESF No. 28-2). Trosclair now submits the declaration of Arthur O. Kelm, who declares he also received undiluted Roundup® product from a neighbor, who was a Luling Plant employee, in repurposed Ocean Spray juice bottles. *See* Kelm Decl., Exhibit 1. Kelm further declares that he understood the product received from his neighbor to be product taken from the production line prior to dilution, and that it was referred to as "the good stuff" or "real deal Roundup®." Kelm also declares the product from his neighbor "worked really well. It worked better than the Roundup® [he purchased previously]." *Id.*

Trosclair's photographic evidence and the declaration of Kelm highlight the following heavily disputed facts: (1) 3M denies directing Trosclair to spray Roundup® herbicides, but a jug of Roundup®PRO was photographed at the 3M farm; (2) Jacobs denies providing Roundup® and/or UCR to 3M and/or Trosclair, but the jug with Potassium Phosphate labeling received by Luling

9

Plant was photographed at the 3M farm; and (3) Kelm's declaration supports Trosclair's claim that UCR was distributed by Luling Plant employees. This evidence raises questions as to the credibility of Courtney Mongrue/3M and/or Jacobs. Curiously, Monsanto offers no affidavit from Wade Mongrue, with whom Trosclair declares he accompanied to collect UCR from Jacobs' home. *See* Supp. Trosclair Decl. (ESF No. 28-2). The contested declarations submitted by the parties highlight the lack of "undisputed facts that would preclude [Trosclair's] recovery" from either 3M or Jacobs. *See Smallwood*, 573-574.

### B. 3M and Jacobs Each Owed a Duty to Plaintiff

Monsanto is wrong in asserting that neither 3M or Jacobs owed a duty to Trosclair. "The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide." *Mathieu v. Imperial Toy Corp.*, 94-0952, p. 4 (La. 11/30/94) 646 So.2d 318, 321.

> The critical inquiry in the duty-risk analysis is whether the risk of the injury sustained by the plaintiff was within the ambit of the duty imposed on the defendant. **There must be an ease of association between the injury and the rule of law giving rise to the duty.**

*England v. Fifth La. Levee Dist.*, 49795 (La. App. 2 Cir. 06/03/15); 167 So. 3d 1105, 1110 (internal citations omitted) (emphasis added).

> The Louisiana Supreme Court has stated that "a risk is not excluded from the scope of the duty simply because it is individually unforeseeable. A particular unforeseeable risk may be included if the injury is easily associated with the rule relied upon and with other risks of the same type that are foreseeable and clearly within the ambit of protection." . . .
>
> These cases are in accord with the negligence law of most states - **that it is not necessary that a custodian might or should have foreseen the likelihood of the particular injury or harm, the extent of the harm, or the manner in which it occurred; instead, it is only necessary that the custodian should have anticipated that some injury or harm might result from the identified risk**.

*Poindexter v. United States*, 244 F. App'x 561, 565 (5th Cir. 2007) (emphasis added).

10

> Furthermore, it has been noted by a prominent authority of the "duty-risk" analysis question that "foreseeability may be a relevant factor for the judge to consider**; other factors may be and are usually more important in the determination of the defendant's duty**; **the fact of risk in the particular case is what actually took place as a result of defendant's conduct, not what was foreseen by the actor as likely to take place**, and it is this risk that must be brought into focus by the court's judgment on a duty issue."

*Stewart v. Gibson Products Co.*, 300 So.2d 870, 878 (La. 3rd Cir. App., 1974) (internal citations omitted) (emphasis added).

The "ease of association inquiry" and "foreseeability" tests, as outlined in case law, do not require knowledge of every specific illness which may result from exposure. Instead, only the anticipation of injury or harm from the identified risk is necessary. See *Poindexter* at 565. Trosclair alleges that Jacobs, without the authorization of Monsanto, removed UCR from his place of employment, and, as a de facto distributor, distributed the same for his own personal benefit. Trosclair further alleges that 3M received UCR from Jacobs, in mislabeled and repurposed containers. 3M then provided the same, as well as Roundup®, to Trosclair, absent any training or personal protective equipment ("PPE"). 3M supplied Trosclair with a leaky backpack sprayer. That Trosclair could suffer harm to his health from his exposure to the products supplied is easily associated with 3M and Jacobs' actions. Therefore, because "[t]he ease of association of the injury… is always a proper injury," Trosclair's injury was reasonably foreseeable. *See Hill v. Lundin & Assoc., Inc.*, 260 La. 542, 549, 256 So.2d 620, 622 (1972)

The *Chaisson* court instructs:

> The court may take "various moral, social, and economic factors" into account when determining whether to impose a duty. These factors include: 1) "the fairness of imposing liability;" 2) "the economic impact on the defendant and on similarly situated parties;" 3) "the need for an incentive to prevent future harm;" 4) "the nature of defendant's activity;" 5) "the potential for an unmanageable flow of litigation;" 6) "the historical

11

development of precedent;" and 7) "the direction in which society and its institutions are evolving."

*Chaisson v. Avondale Indus.*, 947 So.2d 171, 181 (La. 4th. Cir. 2006), citing *New Orleans Train Car Leakage Fir Litig.*, 00-0479, pg. 47 (La. App. 4 Cir 6/27/01), 795 So.2d. 364, 394. When considering the "moral, social, and economic factors" identified in these unique and discrete facts, it is clear that Trosclair could successfully recover from both 3M and Jacobs.

### 1. Duty of Randy Jacobs

Jacobs argues in Defendant Monsanto Company's Opposition to Plaintiff's Motion to Remand (ESF No. 9) in the U.S. District Court for the Eastern District of Louisiana, that a rule of Louisiana law originating in *Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973) forecloses any liability against him. His reliance on *Canter* is misplaced. *Canter* dealt with a situation wherein "a duty is imposed on an officer, agent, or employee *solely by reason of the employment or agency relationship*". *Id.* at 718–19 (emphasis added). That is not the case here. Jacobs is alleged to have a duty that arises from his own actions, independent of his employee status at Monsanto. Jacobs' duty comes from his unauthorized distribution of the dangerous Monsanto herbicide to 3M and ultimately to Trosclair. The rule of *Canter* and its progeny is inapplicable under the allegations made. Jacobs' duty arises from the general duty owed under Louisiana law by all people to refrain from causing harm to others.

Jacobs argues that he did not have a duty to Trosclair because there was no "special relationship" existing between himself and Trosclair. The facts alleged do not support the need for a "special relationship" between Jacobs and Trosclair in order for Jacobs to owe Trosclair a duty; and to the extent that such a requirement exists under the circumstances alleged, it is met.

In support of his "special relationship" argument, Jacobs has cited *Carroll v. Allstate Ins.*, 244 So. 3d 772, 776 (La. App. 2d Cir. 2017). The *Carroll* case involved a claim for liability arising from an injury on a trampoline, and the theory of liability was that "individuals are responsible for the damage occasioned by things in their custody[.]" *Id*. The court held that the injury was not caused by an unreasonably dangerous condition of the home (or trampoline), but by horseplay between children. *Id*. at 777. There was no special relationship present in that case that would have placed the homeowner in the position of the duty to supervise the children, when their parents were present. *Id*.

The circumstances in this case are far different from those in *Carroll*. Here, Jacobs is alleged to have taken Monsanto's undiluted unfinished glyphosate product from Luling Plant, put it in repurposed jugs, and supplied it to 3M and Trosclair. Jacobs was negligent because he took that product and provided it to 3M and ultimately Trosclair without any labeling or instructions for safe application whatsoever. There is no "special relationship" requirement under these circumstances. "Louisiana jurisprudence has held that a non-manufacturer seller of a defective product may be held liable in tort for damages caused by a defective product if the seller knew or should have known of the defect." *Knowles v. Am. Tobacco Co.*, 1998 U.S. Dist. LEXIS 22195, at *35 (E.D. La. July 8, 1998). There must simply be an "ease of association" between the injury and the rule of law giving rise to the duty. *See England* at 1110. The question to be resolved is: how easily does one associate the plaintiff's complained-of harm with the defendant's conduct?" *Roberts* 605 So. 2d 1032. The short answer is: "very easily."

There is an ease of association between supplying herbicides, and particularly in supplying undiluted, unfinished, mislabeled UCR, and a user of such developing negative health repercussions. As questioned in *Stewart*, how easily can Trosclair's harm be associated with

13

Jacobs' conduct? If Jacobs had provided a safe product, or provided instructions and labels, the injury would have been avoided. Jacobs had a duty to Trosclair and 3M when he supplied UCR to them.

Jacobs contends there are no allegations he had actual or constructive knowledge that glyphosate or Roundup® products presented a risk. This is simply incorrect, and ignores the facts that have been pled, and the relevant law. The test is not whether he knew UCR would cause cancer or other adverse health effects—the test is whether there is an ease of association between the duty to supply safe products and warnings, and the injury caused. But even if actual or constructive knowledge were the test, it is met under the facts pled.

Jacobs is a long-time employee at Monsanto's Luling Plant, which produces glyphosate. *See* Petition at pp. 18–19 ¶¶ 80–84. His own declaration indicates he was employed there for thirty-five years. *See* Jacobs Decl. (ECF No. 1.7). The allegations of knowledge of the dangers of glyphosate, the risks of it causing harm, the product's defective design, and failure to warn were all incorporated into the allegations against Jacobs. *See* Petition. at ¶ 187. Further, the pleadings allege that he distributed UCR to 3M and ultimately to Trosclair. As an employee with sufficient plant access to obtain UCR, Jacobs would also have access to the material data safety sheets ("MSDS") regarding the product formulations and their ingredients, which provided notice that the product and substances contained therein were harmful. 29 C.F.R. § 1910.1200; *see also Cisson v. C.R. Bard, Inc. (In re C.R. Bard, Inc.)*, 810 F.3d 913, 928 (4th Cir. 2016) (Material safety data sheets admitted as a "red flag" and a "safety alert" that should have put defendant on notice to investigate further). Jacobs, as a manufacturing employee familiar with the dangers of the chemicals used in the production of UCR (as well as the final product), and also as de facto

distributor of Monsanto's herbicide, is alleged to have had knowledge sufficient to establish a duty Trosclair.

Jacobs supplied Monsanto's products without authorization from the company. His actions were not taken within the course and scope of his employment. See *Hanson v. Benelli*, 719 So. 2d 627, 635 (La. Ct. App. 1998) (finding a defendant was not within course and scope of his employment duties because the activities at the time of the accident were not "so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business."). Jacobs either sold or gave away Monsanto's products, off his employer's premises. He was not accomplishing Monsanto's business of selling herbicide, but only his own personal considerations.

Jacobs contends that Trosclair is barred from recovery by the "wrongful-conduct" rule. But he is seeking to defend himself from liability by stating that he—as an alleged illicit distributor of UCR—owes no duty to the person he injured precisely because his sale or distribution of the product was illicit. Jacobs is alleged to have unclean hands—he cannot use his own unclean hands to take advantage of an equitable defense.

The thrust of Jacobs' argument is that Trosclair is precluded from recovery because his claim is based on his own illegal or immoral act. But the allegations are that 3M obtained the UCR for use on 3M land. There is no allegation that Trosclair personally benefited from spraying the UCR on 3M's property or obtained it for his own benefit. If there was an illegal or immoral act, it was committed not by Trosclair, but by Jacobs and/or 3M. There are no allegations that Trosclair knew the transactions involving Jacobs and/or 3M were illegal or immoral. Monsanto and Jacobs apparently want this Court and others to make that inference, but Jacobs is not entitled to application of the inference in this context. Jacobs' own alleged wrongful conduct does not shield

him from the liability created by his torts. More significant is the fact that these are arguments appropriate for a Motion for Summary Judgment at the completion of discovery. They are not appropriate to prove a claim of improper joinder.

### 2. Duties of 3M

3M owed a duty to provide Trosclair with safe and effective equipment, and to train Trosclair how to safely apply herbicide. Monsanto contends that 3M did not have a duty to protect Trosclair from the risks of Roundup® and/or UCR because 3M did not know of the risks. This argument is based on foreseeability – Monsanto asserts that 3M could not "foresee" Trosclair would develop cancer from exposure to Roundup® and/or UCR. The law does not require Trosclair to show that the non-diverse defendants knew, or should have known, that exposure to Roundup® and/or UCR could cause the specific injury of cancer. *See Poindexter* at 565.

An ease of association lies between the duty to provide safe (non-leaking) herbicide spraying equipment and the risk of the user being harmed by an herbicide, even when the provider of the equipment is not aware of the exact nature of the harm. *See Poindexter* at 565. *Forest* speaks directly to the issue of whether a particular risk is foreseeable when a duty exists concerning "other risks of the same type that are foreseeable and clearly within the ambit of protection." *See Forest v. State*, 493 So. 2d 563, 570 (La. 1986). Here, the ambit of protection in both specific and general risk is exposure to herbicides. 3M had a duty to protect Trosclair from exposure to any herbicide it directed him to apply with its sprayer. The particular risk which Trosclair experienced, exposure to an herbicide that caused cancer, is a risk of the same type that 3M's foreseeable risk encompasses (risk of injury due to exposure to an herbicide). Furthermore, the duty to Trosclair is not an economically inefficient, unsound policy which would cause 3M extra cost in supplying PPE and a non-leaking backpack sprayer to spray herbicide, because the foreseeable risks

outweigh the inconvenience of the preventative measures that would satisfy the duty. *See Chaisson* at 181.

Although it was not necessary for 3M to anticipate the exact nature of the harm suffered by Trosclair, 3M nonetheless admitted that it had a greater knowledge of the dangerous propensities of herbicides than ordinary individuals, unfamiliar with herbicides in general. Courtney Mongrue, operator, officer, and registered agent of 3M, admitted by declaration that 3M provided a sprayer to Trosclair, but claimed it was for the application of the herbicide 2,4-D. *See* 3M Decl. The herbicide 2,4-D is a restricted use herbicide under Louisiana Title 7, Part XXIII §1103, which requires a pesticide applicators certification license in order to use and/or purchase concentrated 2,4-D in quantities greater than quart size. Setting aside the obvious conflict regarding which herbicide 3M claims Trosclair used on its property, having an applicators license highlights 3M had, or should have had, an understanding of the dangerousness of herbicide exposure, the proper application of herbicides, and the use of PPE. The "ease of association" test applicable to the establishment of a duty under Louisiana law is satisfied under these facts. *See Hill*, 256 So.2d at 623.

In summary, defendant Jacobs is alleged to have removed unfinished undiluted product from Luling Plant without Monsanto's authorization in repurposed jugs. The jugs were unlabeled and/or labeled with improper instructions because they were created to hold a different chemical. Jacobs then distributed the jugs of unfinished undiluted product to be applied as an herbicide. Jacobs cannot escape this wrongful conduct or his duty by denying he knew the unlabeled or improperly labeled product was harmful. 3M took Jacobs' product and gave it to Trosclair for weed control on 3M's farm. 3M offered Trosclair no training or PPE, but instead gave him a leaky backpack to

17

spray the UCR. Like Jacobs, it too cannot escape its wrongful conduct by claiming it did not know that the "good stuff" could cause cancer.

## V. CONCLUSION

As cautioned by the court in *Hart*, a removal/remand issue should not result in "pretrying" a case. As shown here, the proper joinder of nondiverse defendants Jacobs and 3M, and the facts relating to the allegations against these defendants, demonstrates the unique and discrete questions of fact which are not common to this MDL.  Because Monsanto cannot show improper joinder exists here, and because it would not be convenient to the parties or witnesses, Trosclair's matter does not meet the standard for transferring a tag-along case. When the factual allegations of Trosclair's pleadings are considered in the light most favorable to Trosclair, it is clearly reasonable Trosclair could recover from each 3M and Randy Jacobs. Because all doubts regarding removal should be resolved in favor of remand, and because Monsanto has failed to demonstrate the lack of any possibility that Trosclair could be successful, the CTO must be vacated, and this matter must be remanded to state court.

Dated: July 5, 2019                                        Respectfully submitted,

**LUNDY LUNDY SOILEAU & SOUTH, LLP**

_____s/ Matthew E. Lundy_
MATTHEW E. LUNDY (#18988)
501 Broad Street
Lake Charles, Louisiana 70601
Telephone: (337) 439-0707
Fax No. (337) 439-1029
E-Mail: mlundy@lundylawllp.com

*Attorney for Plaintiff, Roland Trosclair, Jr.*

18

**CERTIFICATE OF SERVICE**

I Hereby Certify that a MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER on behalf of Plaintiff Roland Trosclair, Jr. was filed into the record July 05, 2019, thereby effecting service on counsel of record *via* the Court's ECF electronic filing system, and will also be served on opposing counsel *via* e-mail, this 5th day of July, 2019.

Judy Barrasso
Celest R. Coco-Ewing
Shaun P. McFall
Barrasso Usdin Kupperman Freeman & Sarver, LLC
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: 504-589-9700
Fax: 504-589-9701
jbarrasso@barrassousdin.com
ccoco-ewing@barrassousdin.com
smcfall@barrassousdin.com
*Counsel for Monsanto Company. AND Randy Jacobs*

Gregory Scott Chernack
Hollingsworth LLP
1350 I Street
NW Washington, DC 20005
Telephone: 202-898-5815
Fax: 202-682-1639
gchernack@hollingsworthllp.com
*Counsel for Monsanto Co.*

Mina Matin
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: 212-318-3000
Mina.matin@nortonrosefulbright.com
*Counsel for XL Bermuda Ltd.*

Edwin G. Preis, Jr.
PREIS PLC
102 Versailles Blvd., Ste. 400
Post Office Drawer 95-C
Lafayette, Louisiana 70509
Telephone: 337-237-6062
Fax: 337-237-9129
epreis@preisplc.com
*Counsel for XL Bermuda Ltd.*


Corey M. Oubre (*3M Cattle Company, LLC*)
LAW OFFICES OF COREY M. OUBRE, LLC
732 Paul Maillard Road
Luling, Louisiana 70070
Telephone: 985-785-6620
Fax: 985-785-6628
cmoubre@oubrelaw.com

/s/ Matthew E. Lundy
MATTHEW E. LUNDY