MIDP,VALDEZ

# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 6.3.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:19–cv–06482

Walter v. Monsanto Company et al
Assigned to: Honorable Sharon Johnson Coleman
Demand: $75,000
Case in other court: Circuit Court of Cook County, Illinois,
        Law Divisi, 2019 L 003401
Cause: 28:1446 Petition for Removal

Date Filed: 09/30/2019
Jury Demand: Plaintiff
Nature of Suit: 367 Personal Injury: Health
Care/Pharmaceutical Personal Injury
Product Liability
Jurisdiction: Diversity

**Plaintiff**

**David Walter**
                        represented by   **Clifford Wolf Horwitz**
Horwitz, Horwitz & Associates
25 East Washington Street
Suite 900
Chicago, IL 60602
(312) 372–8822
Email: cliff@horwitzlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jay Richard Luchsinger**
Horwitz, Horwitz & Associates
25 East Washington Street
Suite 900
Chicago, IL 60602
(312) 372–8822
Email: office@horwitzlaw.com
*ATTORNEY TO BE NOTICED*

**Michael Matthew Cannon**
Horwitz, Horwitz & Associates
25 E. Washington St
Suite 900
Chicago, IL 60602
(312) 372–8822
Email: matt@horwitzlaw.com
*ATTORNEY TO BE NOTICED*

**Thomas Aquinas Kelliher**
Horwitz, Horwitz & Associates, Ltd.
25 East Washington
Suite 900
Chicago, IL 60602
(312) 372–8872
Email: tom@horwitzlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**
                       represented by   **Thomas Joseph Dammrich , II**
Shook, Hardy & Bacon LLP (Chicago)
111 South Wacker Drive
Suite 4700
Chicago, IL 60606
312 704 7721
Email: docket@shb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Peter Francis O'Neill
Shook, Hardy & Bacon Llp
111 S. Wacker
Chicago, IL 60606
(312) 704–7710
Email: pfoneill@shb.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kimberly McKinnon, D.O.**

**Defendant**

**Nicholas Zoretic, D.O.**

**Defendant**

**Northwestern Memorial Healthcare**
**dba Northwestern Medicine**

**Defendant**

**Bayer AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2019 | 1 | NOTICE of Removal from Circuit Court of Cook County, Illinois, Law Division, case number (2019 L 003401) filed by Monsanto Company Filing fee $ 400, receipt number 0752–16288267. *Summons, Amended Complaint, and all other process papers, pleadings and orders* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Dammrich, Thomas) (Entered: 09/30/2019) |
| 09/30/2019 | 2 | ATTORNEY Appearance for Defendant Monsanto Company by Thomas Joseph Dammrich, II (Dammrich, Thomas) (Entered: 09/30/2019) |
| 09/30/2019 | 3 | CIVIL Cover Sheet (Dammrich, Thomas) (Entered: 09/30/2019) |
| 09/30/2019 | 4 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Monsanto Company (Dammrich, Thomas) (Entered: 09/30/2019) |
| 09/30/2019 | 5 | ATTORNEY Appearance for Defendant Monsanto Company by Peter Francis O'Neill (O'Neill, Peter) (Entered: 09/30/2019) |
| 09/30/2019 |  | CASE ASSIGNED to the Honorable Sharon Johnson Coleman. Designated as Magistrate Judge the Honorable Maria Valdez. Case assignment: Random assignment. (acm, ) (Entered: 09/30/2019) |
| 10/01/2019 | 6 | NOTICE TO THE PARTIES – The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in this Notice which includes a link to the (MIDP) Standing Order and a Checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the following documents (Notice of Mandatory Initial Discovery and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third–Party Complaint is served. (las, ) (Entered: 10/01/2019) |
| 10/01/2019 | 7 | E–MAILED notice of removal letter to Clifford Wolf Horwitz (las, ) (Entered: 10/01/2019) |
| 10/02/2019 | 8 | ATTORNEY Appearance for Plaintiff David Walter by Clifford Wolf Horwitz (Horwitz, Clifford) (Entered: 10/02/2019) |

| 10/02/2019 | 9 | ATTORNEY Appearance for Plaintiff David Walter by Thomas Aquinas Kelliher (Kelliher, Thomas) (Entered: 10/02/2019) |
| 10/02/2019 | 10 | ATTORNEY Appearance for Plaintiff David Walter by Jay Richard Luchsinger (Luchsinger, Jay) (Entered: 10/02/2019) |
| 10/02/2019 | 11 | ATTORNEY Appearance for Plaintiff David Walter by Michael Matthew Cannon (Cannon, Michael) (Entered: 10/02/2019) |

FILED
7/31/2019 12:41 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L003401

5991003

ATTORNEY CODE # 04771
STATE OF ILLINOIS                      )
                                       ) SS:
COUNTY OF COOK                         )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DAVID WALTER                           )
                                       )
                    Plaintiff          )
                                       )
v.                                     )        NO. 19 L 003401
                                       )
MONSANTO COMPANY, BAYER AG,            )
NORTHWESTERN MEMORIAL                  )
HEALTHCARE, KIMBERLY                   )
MCKINNON, and NICHOLAS ZORETIC,        )
                                       )
                                       )
                                       )
                                       )
                                       )
                    Defendants         )
                                       )

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys,

HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants,

BAYER AG, MONSANTO COMPANY, NORTHWESTERN MEMORIAL

HEALTHCARE, NICHOLAS ZORETIC, and KIMBERLY MCKINNON, states as

follows:

## PARTIES

1.  At all relevant times, Plaintiff, DAVID WALTER, was and is a resident of Illinois.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

FILED DATE: 7/31/2019 12:41 PM   2019L003401

2. At all relevant times, Defendant BAYER AG (hereinafter "BAYER") was and/or is a multinational business headquartered in Germany, doing business throughout the United States, including Illinois.

3. BAYER is the parent company of Defendant MONSANTO COMPANY (hereinafter "MONSANTO"). MONSANTO was/is a wholly owned subsidiary of BAYER: BAYER acquired MONSANTO and became the sole owner of MONSANTO and Roundup® products (hereinafter "Roundup")—the Roundup products kept their brand name and became a part of BAYER's portfolio of products.

4. At all relevant times, MONSANTO was and/or is a multinational business, incorporated in Delaware and headquartered in Missouri, doing business throughout the United States, including Illinois.

5. At all relevant times, Defendant NORTHWESTERN MEMORIAL HEALTHCARE (hereinafter "NMH") was and/or is an Illinois corporation with its principal place of business in the County of Cook, and State of Illinois.

6. At all relevant times, Defendant KIMBERLY MCKINNON, D.O. (hereinafter "MCKINNON") was and/or is an individual physician who on information and belief is a resident of the City of La Grange Park, County of Cook, and State of Illinois.

7. At all relevant times, Defendant NICOLAS ZORETIC, D.O. (hereinafter "ZORETIC") was and/or is an individual physician who on information and belief is a resident of the City of St. Charles, County of Kane, and State of Illinois.

## INTRODUCTION

### Allegations Applicable to All Counts

FILED DATE: 7/31/2019 12:41 PM   2019L003401

8.  At all times material, BAYER and/or MONSANTO, individually and by and/or through their agents and or employees, distributed and sold Roundup in Illinois. BAYER and/or MONSANTO did regular and substantial business in Illinois.

9.  DAVID WALTER was a consumer of Roundup and used Roundup in Illinois from approximately 2007 through 2017.

10. At all material times, BAYER and/or MONSANTO's Roundup reached the intended consumers, handlers, and users or other persons coming into contact with these products in Illinois and throughout the United States, including DAVID WALTER, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by BAYER and/or MONSANTO.

11. On March 20, 2015, the International Agency for Research on Cancer (hereinafter "IARC"), an agency of the World Health Organization (hereinafter "WHO"), issued an evaluation of several herbicides, including glyphosate. That evaluation was based, in part, on studies of exposures to glyphosate in several countries around the world, and it traces the health implications from exposure to glyphosate since 2001.

12. On July 29, 2015, IARC issued the formal monograph relating to glyphosate. In that monograph, the IARC Working Group provides a thorough review of the numerous studies and data relating to glyphosate exposure in humans.

13. The IARC evaluation is significant. It confirms what has been believed and/or known for years: glyphosate is toxic to humans.

14. The IARC Working Group classified glyphosate as a Group 2A herbicide, which means that it is probably carcinogenic to humans.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

15. The IARC Working Group concluded that the cancers most associated with glyphosate exposure are non-Hodgkin's lymphoma and other haematopoietic cancers.

16. At all times material, BAYER and/or MONSANTO knew and/or should have known, of the unreasonable dangers of glyphosate and its Roundup products and the unreasonable risks to consumers and users health.

17. Nevertheless, MONSANTO and/or BAYER, since it began selling Roundup, has represented it as safe to humans and the environment. And MONSANTO and/or BAYER has repeatedly proclaimed and continues to proclaim to the world, and particularly to United States and Illinois consumers, including DAVID WALTER, that glyphosate based herbicides, including Roundup, create no unreasonable risks to human health or to the environment.

18. On or about March of 2015 through October of 2017, and at all material times, NMH by and through their agents or apparent agents, inclusive of ZORETIC and MCKINNON, provided medical care and treatment to DAVID WALTER.

19. DAVID WALTER was diagnosed with stage IV non-Hodgkin's lymphoma on or around October of 2017.

20. DAVID WALTER's stage IV non-Hodgkin's lymphoma was proximately caused by the conduct of all defendants in this matter and the injury is single and indivisible.

21. It was not until sometime after the diagnosis of non-Hodgkin's lymphoma that DAVID WALTER discovered that his conditions and/or ailments, including non-Hodgkin's lymphoma, could be related in any way to his exposure to Roundup.


**COUNT I – STRICT LIABILITY PRODUCTS LIABILITY**

FILED DATE: 7/31/2019 12:41 PM   2019L003401

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants, BAYER AG and MONSANTO COMPANY states as follows:

22. DAVID WALTER incorporates by reference paragraphs 1-21 above.

23. That on and prior to October 10, 2017, the aforementioned Defendant BAYER and/or MONSANTO had been engaged or participated in the business of designing, developing, testing, preparing, manufacturing, advertising, marketing, promoting, packaging, distributing, supplying, and/or selling a certain product and/or its appurtenances, commonly known as Roundup and that prior to the said date, BAYER and/or MONSANTO had in fact designed, developed, tested, prepared, manufactured, advertised, marketed, promoted, packaged, distributed, supplied, and/or sold the aforesaid product and/or its appurtenances that DAVID WALTER was exposed to.

24. That at said time, there was no abnormal use of the aforesaid product and/or its appurtenances.

25. That at said time there was no reasonable secondary cause of the injury, rather DAVID WALTER suffered one single, indivisible injury.

26. That at said time, the aforesaid product failed to perform as reasonably expected in light of its nature and function.

27. That at said time the aforesaid product and/or its appurtenances was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product and/or its appurtenances left the control of BAYER and/or MONSANTO in one or more of the following ways:

FILED DATE: 7/31/2019 12:41 PM    2019L003401

a.  The product has a propensity to cause cancer;

b.  Failed to adequately warn/ instruct of the product could cause cancer;

c.  Failed to adequately warn how to prevent the product from causing cancer;

d.  Failed to adequately design the product to prevent a user from developing cancer by coming in contact with the product;

e.  Designed the product such that a user could develop cancer from coming in contact with the product;

f.  Designed a product that was hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

g.  The product lacked any warning as to any or all of the above;

h.  The product lacked adequate warning as to any or all of the above;

i.  The product did not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup and specifically, the active ingredient glyphosate.

j.  Failed to have an adequate method or procedure to prevent any or all of the above;

k.  Failed to adequately train to prevent any or all of the above;

l.  Failed to adequately test, investigate, or study the product, and specifically the active ingredient glyphosate, to prevent any or all of the above;

28. DAVID WALTER was exposed to Defendant BAYER and/or MONSANTO's Roundup products while using aforesaid products at his residence in Illinois from approximately 2007 to 2017, without knowledge of its dangerous characteristics.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

29. DAVID WALTER was exposed to the use of Defendant BAYER and/or MONSANTO's Roundup products in an intended or reasonably foreseeable manner without knowledge of its dangerous characteristics.

30. DAVID WALTER could not have reasonably discovered the defects and risks associated with Roundup or glyphosate-containing products before or at the time of exposure.

31. As a direct and proximate result of Defendant BAYER and/or MONSANTO's placing defective Roundup products into the stream of commerce and exposing DAVID WALTER to them, DAVID WALTER has suffered and continues to suffer severe injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment. And DAVID WALTER will continue to incur these expenses in the future.

32. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendants, BAYER AG and MONSANTO COMPANY, in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

## COUNT II – PRODUCTS NEGLIGENCE

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants, BAYER AG and MONSANTO COMPANY states as follows:

FILED DATE: 7/31/2019 12:41 PM   2019L003401

33. DAVID WALTER incorporates by reference paragraphs 1-21 above.

34. BAYER and/or MONSANTO, directly or indirectly, caused Roundup products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by DAVID WALTER.

35. At all times relevant to this litigation, BAYER and/or MONSANTO had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

36. At all times relevant to this litigation, BAYER and/or MONSANTO had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup products.

37. BAYER and/or MONSANTO's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup products and appropriate, complete and accurate warnings concerning the potential adverse effects of exposure to Roundup products, and, in particular, its active ingredient glyphosate.

38. At all times relevant to this litigation, BAYER and/or MONSANTO knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and specifically, the carcinogenic properties of the chemical glyphosate.

39. Accordingly, at all times relevant to this litigation, BAYER and/or MONSANTO knew or, in the exercise of reasonable care, should have known that use of or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

exposure to Roundup products could cause or be associated with DAVID WALTER's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including DAVID WALTER.

40. BAYER and/or MONSANTO also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup products and glyphosate-containing products.

41. As such, BAYER and/or MONSANTO breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup products, in that BAYER and/or MONSANTO manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous effects, and failed to prevent or adequately warn of these risks and injuries.

42. Despite ability and means to investigate, study, and test products and to provide adequate warnings, BAYER and/or MONSANTO failed to do so. Indeed, BAYER and/or MONSANTO wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or exposure to Roundup products and glyphosate.

43. BAYER and/or MONSANTO engaged in the following negligent acts and/or omissions:

FILED DATE: 7/31/2019 12:41 PM   2019L003401

a.  The product has a propensity to cause cancer;

b.  Failed to adequately warn/ instruct of the product could cause cancer;

c.  Failed to adequately warn how to prevent the product from causing cancer;

d.  Failed to adequately design the product to prevent a user from developing cancer by coming in contact with the product;

e.  Designed the product such that a user could develop cancer from coming in contact with the product;

f.  Designed a product that was hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

g.  The product lacked any warning as to any or all of the above;

h.  The product lacked adequate warning as to any or all of the above;

i.  The product did not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup and specifically, the active ingredient glyphosate.

j.  Failed to have an adequate method or procedure to prevent any or all of the above;

k.  Failed to adequately train to prevent any or all of the above;

l.  Failed to adequately test, investigate, or study the product, and specifically the active ingredient glyphosate, to prevent any or all of the above.

44. BAYER and/or MONSANTO knew and/or should have known that it was foreseeable that consumers, such as DAVID WALTER, would suffer injuries as a result of BAYER and/or MONSANTO's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup products.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

45. DAVID WALTER did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup products or its active ingredient glyphosate.

46. As a direct and proximate result of BAYER and/or MONSANTO's wrongful acts and omissions, DAVID WALTER has suffered and continues to suffer severe injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment. And DAVID WALTER will continue to incur these expenses in the future.

47. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendants, BAYER AG and MONSANTO COMPANY, in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

## COUNT III – PROFESSIONAL NEGLIGENCE—KIMBERLY MCKINNON, D.O.

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendant, KIMBERLY MCKINNON, D.O. states as follows:

48. DAVID WALTER incorporates by reference allegations 1-21.

49. That during the years 2015 through 2017, and at all times relevant herein, the Defendant, MCKINNON, was a physician duly licensed under the laws of the State of Illinois, and was engaged in the practice of her profession in the City of Bloomingdale, County of DuPage, and State of Illinois.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

50. On and before March 30, 2015, and at all relevant times herein, Defendant, MCKINNON, was a duly authorized actual and/or apparent agent/employee of Defendant, NORTHWESTERN MEMORIAL HEALTHCARE (hereinafter "NMH"), and was acting within the scope of her employment.

51. That during September of 2016, and for a continuing course of negligent medical treatment through October of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, was a patient under the care and treatment of the Defendant, MCKINNON.

52. That on or about September 13, 2016, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, entrusted himself to the care of the Defendant.

53. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety and was free from any contributory negligence.

54. That during September of 2016, and for a continuing course of negligent medical treatment through October of 2017, and for some time prior and subsequent thereto, the Defendant, MCKINNON, did have come under her care and did attend to and treat the Plaintiff, DAVID WALTER, for routine serial physical examinations.

55. That there was a duty on the part of the Defendant, MCKINNON, to diagnose and treat the Plaintiff, DAVID WALTER, in accordance with the accepted standards of medical practice and opinion prevailing in the medical community in the years 2015

FILED DATE: 7/31/2019 12:41 PM   2019L003401

through 2017, and to exercise that degree of care and caution commonly exercised by other members of her profession in the community.

56. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, MCKINNON, was then and there guilty of one or more of the following wrongful acts and/or omissions:

    a.   failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

    b.   failed to perform proper and adequate tests upon Plaintiff; or

    c.   failed to take a proper and thorough medical history of the Plaintiff; or

    d.   failed to order proper treatment for the Plaintiff's medical condition; or

    e.   failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

    f.   failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

    g.   failed to treat the Plaintiff in a manner customary and suitable to her profession; or

    h.   failed to adequately evaluate Plaintiff's medical condition; or

    i.   failed to institute proper treatment at the appropriate time for the Plaintiff's medical condition; or

    j.   failed to perform screening diagnostic studies;

    k.   read results of Plaintiff's tests; or

    l.   failed to follow up on abnormal imaging results; or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

m.  failed to follow up on abnormal laboratory test results; or

n.  failed to order necessary tests; or

o.  failed to advise plaintiff to return for follow-up care and tests; or

p.  failed to timely diagnose Plaintiff's lymphatic cancer; or

q.  failed to timely treat Plaintiff's lymphatic cancer; or

r.  failed to diagnose a cancerous condition; or

s.  failed to treat the condition of the Plaintiff in a manner suitable and customary with her profession.

57. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned.  Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer; the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

58. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendant, KIMBERLY MCKINNON, D.O., in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

## COUNT IV – PROFESSIONAL NEGLIGENCE—NICHOLAS ZORETIC, D.O.

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendant, NICHOLAS ZORETIC, D.O. states as follows:

59. DAVID WALTER incorporates by paragraphs 1-21.

60. That during the years 2015 through 2017, and at all times relevant herein, the Defendant, ZORETIC, was a physician duly licensed under the laws of the State of Illinois, and was engaged in the practice of his profession in the City of Bloomingdale, County of DuPage, and State of Illinois.

61. On and before March 30, 2015, and at all relevant times herein, Defendant, ZORETIC, was a duly authorized actual and/or apparent agent and/or employee of Defendant, NMH, and was acting within the scope of his employment.

62. That on or about March 30, 2015, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, was a patient under the care and treatment of the Defendant, ZORETIC.

63. That on or about March 30, 2016, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, entrusted himself to the care of the Defendant.

64. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety and was free from any contributory negligence.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

65. That on or about March 30, 2015, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Defendant, ZORETIC, did have come under his care and did attend to and treat the Plaintiff, DAVID WALTER, for routine serial physical examinations.

66. That there was a duty on the part of the Defendant, ZORETIC, to diagnose and treat the Plaintiff, DAVID WALTER, in accordance with the accepted standards of medical practice and opinion prevailing in the medical community in the years 2015 through 2017, and to exercise that degree of care and caution commonly exercised by other members of his profession in the community.

67. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, ZORETIC, was then and there guilty of one or more of the following wrongful acts and/or omissions:

    a.  failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

    b.  failed to perform proper and adequate tests upon Plaintiff; or

    c.  failed to take a proper and thorough medical history of the Plaintiff; or

    d.  failed to order proper treatment for the Plaintiff's medical condition; or

    e.  failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

    f.  failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

g.  failed to treat the Plaintiff in a manner customary and suitable to his profession; or

h.  failed to adequately evaluate Plaintiff's medical condition; or

i.  failed to institute proper treatment at the appropriate time for the Plaintiff's medical condition; or

j.  failed to perform screening diagnostic studies; or

k.  read results of Plaintiff's tests; or

l.  failed to follow up on abnormal imaging results; or

m.  failed to follow up on abnormal laboratory test results; or

n.  failed to order necessary tests; or

o.  failed to advise Plaintiff to return for follow-up care and tests; or

p.  failed to timely diagnose Plaintiff's lymphatic cancer; or

q.  failed to timely treat Plaintiff's lymphatic cancer; or

r.  failed to diagnose a cancerous condition; or

s.  failed to treat the condition of the Plaintiff in a manner suitable and customary with his profession.

68. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned. Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer;

FILED DATE: 7/31/2019 12:41 PM 2019L003401

the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

69. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff DAVID WALTER, demands judgment against Defendant, NICHOLAS ZORETIC, D.O., in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

## COUNT V – PROFESSIONAL NEGLIGENCE AGAINST NORTHWESTERN MEMORIAL HEALTHCARE UNDER *RESPONDEAT SUPERIOR*: ACTUAL OR APPARENT AGENCY

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendant, NORTHWESTERN MEMORIAL HEALTHCARE, states as follows:

70. DAVID WALTER incorporates by reference all the above allegations 1-21.

71. That during March of 2015 through October of 2017, and at all relevant times herein, the Defendant, NORTHWESTERN MEMORIAL HEALTHCARE (hereinafter "NMH"), a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, was a duly licensed healthcare institution engaged in the business of offering physician, medical, and hospital care and services in the State of Illinois and engaged on their staff various physicians and other personnel.

72. That during March of 2015, and at all relevant times herein, the Defendant, NMH, held itself out and otherwise informed the public, and more particularly, in the instance of the Plaintiff, that it had and possessed the requisite skill, know-how,

FILED DATE: 7/31/2019 12:41 PM    2019L003401

facilities, personnel, equipment, and information to properly care for and treat the Plaintiff, DAVID WALTER.

73. That on or about March 30, 2015, and for some time prior and subsequent thereto, the Plaintiff entered the Defendant's facilities for medical and diagnostic care and treatment and entrusted himself entirely to the care of the Defendant's facilities and their various authorized agents, apparent agents, servants, employees, physicians, and other personnel, including but not limited to the Defendants, MCKINNON and ZORETIC, as aforesaid: that the Plaintiff, DAVID WALTER, possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend, or cure himself.

74. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety.

75. That at all times mentioned herein, the Defendants, MCKINNON and ZORETIC, were physicians duly licensed in the practice of their professions in the State of Illinois.

76. That at all times mentioned herein, the Defendants, MCKINNON and ZORETIC, were employees, servants, agents and/or apparent agents of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, and as such practiced their profession in the facilities of the Defendant, NMH, pursuant to their employment.

77. That from March of 2015 through October of 2017, and for some time prior and subsequent thereto, the Defendants, MCKINNON and ZORETIC, individually, and as an agents, apparent agents, servants and/or employees of the Defendant, NMH, a

FILED DATE: 7/31/2019 12:41 PM   2019L003401

not-for profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, in their professional capacity as aforesaid, while acting in the scope of the employment, apparent agency and/or agency as aforesaid, did then and there have come under their care and did attend to and treat the Plaintiff, DAVID WALTER, while the Plaintiff was a patient at NORTHWESTERN MEDICINE throughout Illinois.

78. That it then and there became and was the duty of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents, apparent agents, servants, employees, and physicians, including but not limited to, the Defendants, ZORETIC and MCKINNON, to render medical services consistent with the medical requirements of the patients therein, and so as not to cause injury to said patients, including the Plaintiff, DAVID WALTER.

79. That there was a duty on the part of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents, apparent agents, servants, employees and physicians, including, but not limited to, the Defendants MCKINNON and ZORETIC, to treat the Plaintiff, DAVID WALTER, with that degree of knowledge, skill, and care possessed by a reasonably well-qualified physician in their community or a similar community, and to exercise that degree of knowledge, skill, and care commonly exercised by other members of their profession.

80. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents,

FILED DATE: 7/31/2019 12:41 PM   2019L003401

apparent agents, servants, employees, and physicians, including but not limited to, the Defendants, MCKINNON and ZORETIC, were then and there guilty of one or more of the following wrongful acts and/or omissions in treating the Plaintiff, DAVID WALTER:

   a. failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

   b. failed to perform proper and adequate tests upon Plaintiff; or

   c. failed to take a proper and thorough medical history of the Plaintiff; or

   d. failed to order proper treatment for the Plaintiff's medical condition; or

   e. failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

   f. failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

   g. failed to treat the Plaintiff in a manner customary and suitable to their profession; or

   h. failed to adequately evaluate Plaintiff's medical condition; or

   i. failed to institute proper treatment at the appropriate time for the Plaintiff's medical condition; or

   j. failed to perform screening diagnostic studies; or

   k. read results of Plaintiff's tests; or

   l. failed to follow up on abnormal imaging results; or

   m. failed to follow up on abnormal laboratory test results; or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

n.  failed to order necessary tests; or

o.  failed to advise Plaintiff to return for follow-up care and tests; or

p.  failed to timely diagnose Plaintiff's lymphatic cancer; or

q.  failed to timely treat Plaintiff's lymphatic cancer; or

r.  failed to diagnose a cancerous condition; or

s.  failed to treat the condition of the Plaintiff in a manner suitable and customary with their profession.

81. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned.  Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer; the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

82. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendant, Northwestern Memorial Hospital in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

Respectfully submitted,

*Clifford Horwitz*

Clifford W. Horwitz
**Horwitz, Horwitz, and Associates, LTD.**
25 E. Washington, Suite 900
Chicago, IL  60602
Office: (312) 372-8822
Email: clmail@horwitzlaw.com