**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: ROUNDUP PRODUCTS LIABILITY            MDL No. 2741
LITIGATION

*John Thomas Moore, Jr. v. Monsanto Company, et al., Alabama Southern, Case No. 2:19-cv-00707*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO VACATE CTO- 156**

**INTRODUCTION**

In order for this case to be subject to transfer to MDL 2741, there must be a valid basis for subject-matter jurisdiction and a determination that such jurisdiction exists. Here, subject matter jurisdiction does not exist. This case began in state court in Dallas County, Alabama where it remained for one year until Monsanto in an effort to avoid an upcoming trial abruptly removed the case to federal court. The removal was untimely as it should have been filed within thirty days of service (it was filed 365 days after the action was commenced). Monsanto attempted to explain its untimeliness by offering an incomplete and inadmissible deposition of the Plaintiff. Under Alabama law, the deposition cannot be used because it was not only incomplete, but it had not been read and signed by the Plaintiff. The incomplete and inadmissible partial deposition relied upon by Monsanto is due to be stricken and the case remanded. Further, Monsanto's theory that the Alabama Co-Op was fraudulently joined to defeat jurisdiction fails because the undisputed evidence illustrates Plaintiff has ten viable causes of action against the non-diverse defendant under Alabama law. Further, transfer is no longer required as all common issues have resolved.

The constitutional limitation on federal jurisdiction makes federal courts "courts of limited jurisdiction," *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) as opposed to state courts which are generally presumed to have subject-matter jurisdiction over a case. See 13 Charles

1

Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure*, § 3522, p. 100 (3d ed. 2008). A federal court must generally determine whether it has jurisdiction at the outset of litigation and must always make the determination before deciding the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998) (rejecting doctrine of "hypothetical jurisdiction" that would allow a court to rule on an issue of law before adjudicating jurisdiction). It is presumed that a cause lies outside of federal courts' limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am*; 511 U.S. 375, 377 (1994). The District Court does not have subject matter jurisdiction in this case. This case is due to be remanded to the Circuit Court of Dallas County so that it can proceed with trial as previously set.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2019, Mr. Moore filed suit in the Circuit Court of Dallas County, Alabama against three defendants including Defendant Monsanto (manufacturer), Defendant Helena Agri-Enterprises, LLC ("Helena") (specialized distributor, representative, trainer, agent and seller), and Defendant Central Alabama Farmers Cooperative ("Alabama Co-Op") (specialized distributor, representative, agent, trainer, marketer and seller).  Defendant Alabama Co-Op is an Alabama entity while Defendants Monsanto and Helena are out of state corporations. The citizenship of the defendants was well stated in Mr. Moore's Complaint. [Doc. #2][1] The same allegations are asserted against all Defendants – both the diverse and non-diverse defendants.

On December 4, 2019, Defendant Monsanto answered the Complaint. [Doc. #15] On January 14, 2019, Defendant Helena answered the Complaint. [Doc. #28] On February 15, 2019, Plaintiff

---

[1] Plaintiff cites to the docket for cause no. 27-CV-2018-900242.00 pending in the Circuit Court of Dallas County, Alabama as "Doc.#__", cite to the docket for the Southern District of Alabama (cause no. 2:19-cv-00707) as "USDC Doc.#__", and cite to the docket for MDL No. 2741 as "MDL Doc.#__".

amended his Complaint. [Doc. #34] On March 13, 2019, Defendant Monsanto answered the Amended Complaint. [Doc. #38]. On February 25, 2019, Defendant Helena answered the Amended Complaint. [Doc. #36] On April 30, 2019, Defendant Alabama Co-Op answered the Amended Complaint. [Doc. #78] A trial date was set for March 2, 2020. Subsequently, all the defendants collectively agreed upon a Scheduling Order which the circuit court adopted. [Doc. #95] The parties worked together in accordance with the Scheduling Order.

Mr. Moore himself began his deposition on Monday, September 23, 2019 where it was attended by representatives for all defendants. The deposition ended prior to its completion Mr. Moore's counsel did not have an opportunity to cross-examine Mr. Moore. Moreover, Defendant Monsanto's counsel had not finished questioning Mr. Moore. All counsel agreed to continue the deposition and to tentatively resume it four days later Friday, September 27, 2019.

Despite this fact, Monsanto abruptly filed its Notice of Removal on September 25, 2019, [USDC Doc.#1], one year after Plaintiff's Complaint was filed, based on arguments of diversity of citizenship and fraudulent joinder. On September 26, 2019, Plaintiff filed his Motion to Remand [USDC Doc. #2] and subsequently on September 30, 2019, a Supplemental Brief for Remand [USDC Doc. #3][2] stating that Plaintiff alleged valid Alabama state law claims against an Alabama corporation, so there is no fraudulent joinder of the non-diverse Defendant, and, therefore, no diversity jurisdiction. On October 1, 2019 this Panel issued a Conditional Transfer Order [MDL Doc. #1279] and a Notice of Filing of CTO and Publication of Briefing Schedule. [MDL Doc. #1280] On October 2, 2019, Plaintiff filed with the District Court a Motion to Expedite Ruling on Plaintiffs Motion to Remand. [USDC Doc. #8]

On October 3, 2019, Monsanto filed a Motion to Stay. (USDC Doc. #11). Subsequently, on

---

[2] Plaintiff incorporates his Motion to Remand and Request for Attorneys fees, Supplemental Brief for Remand, and Motion to Strike as if stated fully herein.

October 4, 2019, Plaintiff filed his Motion to Suppress and Strike Plaintiff's unsigned and unfinished deposition transcript [USDC Doc. #13] as well as Monsanto's Notice of Removal, Monsanto's brief support thereof, and Monsanto's Motion to Stay. (USDC Doc. #14). In his Motion to Suppress and Strike, Plaintiff outlined the specific issues under Alabama law that are presently before this Court. On October 7, 2019, at 1:51pm, Plaintiff filed his Response in Opposition to Monsanto's Motion to Stay, (USDC Doc. #15), citing applicable case law and referencing Plaintiff's previously filed Motion to Strike as dispositive of both Monsanto's Motion to Stay and Notice of Removal. On the same date, at 4:32 pm, the Court granted Monsanto's Motion to Stay without ruling on any of Plaintiff's motions. (USDC Doc. #17). On October 8, 2019, Plaintiff filed his Notice of Opposition with the JPML. [MDL Doc. #1308] Plaintiff subsequently filed his Motion for Reconsideration with the District Court on October 9, 2109 [USDC Doc. #18]. On October 22, 2019, the District Court issued a text order denying Plaintiff's Motion for Reconsideration.

## ARGUMENT AND AUTHORITY

A conditional transfer order is an administrative act of the Panel Clerk "which can and will be vacated upon the showing of good cause by any party." *In re: Grain Shipment Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (*citing In re: IBM Antitrust Litig.*, 316 F. Supp.976 (J.P.M.L. 1970)). Good cause exists where consolidation fails to promote the "just and efficient" conduct of the action. See 28 U.S.C. § 1407(a); see also H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968 USCCAN 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient conduct of such actions and be for the convenience of the parties and witnesses"). Congress intended for consolidation to be ordered "only where significant economy and efficiency in judicial administration may be obtained." See H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1900 (emphasis added).

This Court should vacate the CTO- 156 regarding AL/ ***No. 2:19-cv-00707*** and remand this

4

matter to The Circuit Court of Dallas County, Alabama, or to permit the United States District Court for the Southern District of Alabama to decide the threshold issue: whether removal was proper. A transfer pursuant to 28 U.S.C. §1407 is not proper when the transferring U.S. District Court does not have proper jurisdiction, as is the case here. *See BancOhio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975). In addition, as to justice and efficiency, principles of comity would dictate against the transfer of any action that has an important motion under submission and/or pending especially a motion that will render the question of transfer under §1407 moot if decided in Plaintiff's favor.

### I. MONSANTO'S NOTICE OF REMOVAL IS SOLELY BASED ON INADMISSABLE AND IMPROPER EVIDENCE AND UNTIMELY.

As referenced above, Plaintiff's deposition began on September 23, 2019; however, the deposition was not completed. It was to be continued, with the completion set for a proposed date later that week. **Plaintiff requested to read and sign his deposition**. (*See* Affidavit of John Thomas Moore, Jr., [USDC Doc. #13-1, ¶ 3]; *see also* Affidavit of Lois Anne Robinson, [USDC Doc. #13-2, ¶ 4]). The Defendants never agreed on a date to finish Plaintiff's deposition, as was previously discussed. (*See* Affidavit of John Thomas Moore, Jr., [USDC Doc. #13-1, ¶ 3]).

Monsanto filed its Notice of Removal on September 25, 2019, (USDC Doc. #1), one year after Plaintiff's Complaint was filed, based on arguments of diversity of citizenship and fraudulent joinder. As its sole support for Removal, Monsanto used excerpts from Plaintiff's **unfinished** and **unsigned** deposition transcript to allege fraudulent joinder. In fact, Monsanto asserted that it "*It was not until the plaintiff's deposition on September 23, 2019, that Monsanto learned critical new information clearly establishing that plaintiff has no reasonable possibility of prevailing against that local defendant [Central Alabama Farmers Cooperative, Inc.]* (USDC Doc. #1, p. 3, ¶ 5). It is this purported revelation which Monsanto claims to serve as "other paper," allowing it to file a Notice of Removal more than 30 days following Monsanto's receipt of Plaintiff's initial claim for relief as

5

required by 28 U.S.C. § 1446(b)(1). (USDC Doc. #1, p. 15, ¶ 34).

As set forth in more detail in Plaintiff's Motion to Suppress and Strike, (USDC Doc. #14), Monsanto's use of Plaintiff's unfinished and unsigned deposition transcript fails to comply with Rule 30 of the Alabama Rules of Civil Procedure. Subpart (e) of Rule 30 permits the witness up to 30 days to review and sign off on his deposition transcript prior to it being used as evidence. Ala. R. Civ. P. 30. Noncompliance with this rule precludes admission of depositions where the deponent has not waived the signature requirement, the strict requirement for signatures has not been met, and the opposing party has timely moved to suppress the deposition. *See In re Fite*, 235 So.2d 809, 812 (Ala. 1970) ("The three [unsigned] depositions in the instant case are clearly not admissible unless defendant waived the statutory requirement that the witness must sign the deposition."); *see also Wiginton v. Hagler*, 585 So.2d 5, 6 (Ala. 1991) (holding that the unsigned deposition of a medical expert witness taken by defense counsel was not admissible upon presentation by plaintiff when "[t]he parties and the witness did not stipulate to any waiver of the requirement that the deponent review and sign the deposition").

Plaintiff's unfinished and unsigned deposition transcript may not be used as evidence under Alabama law and is therefore inadmissible. Plaintiff's deposition transcript is Monsanto's sole support for filing its Notice of Removal and Motion to Stay. (*See, supra*, USDC Doc. #1, p. 3, ¶ 5; and p. 15, ¶ 34). Without the use of such evidence to serve as "other paper," Monsanto's Notice of Removal is due to be stricken and Plaintiff's Motion to Remand granted.

## II. MONSANTO MUST MEET A HIGH STANDARD TO ESTABLISH FRAUDULENT JOINDER – THE LACK OF A VALID STATE CLAIM MUST BE OBVIOUS.

Defendant Monsanto argues that the non-diverse defendants' citizenship may be disregarded under theories of fraudulent joinder. Although Plaintiff's case should be remanded based on

6

Plaintiff's Motion to Strike and 28 U.S.C. § 1446(b)(1) referenced above, Defendant Monsanto's argument on fraudulent joinder also fails.

Monsanto's sole basis for its removal is the alleged existence of diversity jurisdiction based on a fraudulent joinder argument. Doc. 1, ¶ 3. Given the strong presumption against removal jurisdiction, Monsanto carries a heavy burden. For Monsanto's removal to be successful, they must establish that Defendant Co Op was fraudulently joined. The burden of establishing fraudulent joinder is a heavy one. *See Crowe v. Coleman,* 113 F. 3d 1536, 1538 (11th Cir. 1997) (emphasis added). When reviewing a claim of fraudulent joinder, the reviewing court must find that the removing defendant supported his claim by a showing of clear and convincing evidence. *Henderson v. Washington Nat. Ins. Co.,* 454 F. 3d 1278, 1284 (11th Cir. 2006); *Yates v. Medtronic, Inc.,* 2008 WL 4016599; *Abrams v. Olin Corp.* 248 F. R. D. 283, 287 (S.D. Ala. 2007). The issue then is whether Defendant Monsanto has proven by clear and convincing evidence that no Alabama court can find this Complaint sufficient to state a viable claim against Defendant Co Op. *See Henderson* 454 F. 3d at 1284. Defendant Monsanto has not done so.

In *Florence,* 484 F. 3d at 1299, the Eleventh Circuit explained the test regarding fraudulent joinder as: "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." Moreover, the Eleventh Circuit has noted that "the plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs,* 154 F. 3d at 1287. Also, in determining whether the plaintiff has presented a cause of action against a non-diverse defendant, the court must resolve all questions of both fact and law in favor of the plaintiff. *Coyne v. Am. Tobacco Co.,* 183 F. 3d 488, 493 (6th Cir. 1999)(quoting *Alexander v. Elec. Data Sys. Corp.,* 13 F. 3d 940, 949 (6th Cir. 1994)).

Monsanto accompanied by Defendant Alabama Co-Op essentially seek through their cries of fraudulent joinder an adjudication of the merits of Plaintiff's claims based on unfinished and unsigned deposition testimony. It is not appropriate for the Court to delve into the merits of the Plaintiff's claims when ruling upon a motion to remand.

### III. ALABAMA CO-OP IS A LEGITIMATE FORUM DEFENDANT BECAUSE PLAINTIFF HAS ALLEGED VALID ALABAMA STATE LAW CLAIMS.

As previously referenced, Defendant Monsanto's petition for removal is solely based on portions of Plaintiff's deposition (which was not completed). Defendant Monsanto makes several erroneous assertions regarding Plaintiff's testimony and how it affects the possibility of Plaintiff proving his claims in this lawsuit. Although Monsanto attempts in its removal to take bits and pieces of Plaintiff's incomplete and unsigned testimony to state otherwise, there is nothing in Plaintiff's testimony that contradicts the allegations in his Complaint or that provides clear and convincing evidence to suggest there is no possibility that the plaintiff can prove a cause of action against Defendant Alabama Co-Op. However, by discussing this incomplete, unsigned and unverified deposition testimony submitted by Monsanto in support of its removal argument, <u>Plaintiff does not in any way waive his right to still review and sign and issue an errata sheet with corrections. Further, Plaintiff is not waiving his argument that Monsanto's use of this testimony makes its removal documents untimely and invalid</u>.

#### A. <u>Plaintiff's Negligence and Failure to Warn Claims against Alabama Co-Op</u>

Monsanto erroneously argues that based on Plaintiff's testimony there "were no independent acts of negligence" by Defendant Alabama Co-Op and that it was "merely a conduit" of Roundup. As illustrated below, Plaintiff's recovery against Alabama Co-Op for Negligence and Failure to Warn are still viable and possible under Alabama Law. In his Complaint Plaintiff alleges, among others not specifically referenced herein, that Alabama Co-Op: *"…provided Plaintiff instructions and assisted*

8

*Plaintiff with the usage, handling, mixing, applying, and spreading of Roundup® and in doing so provided Plaintiff assurances of the safety of Roundup®. ...never provided any warning that Roundup® ..products provided to Plaintiff which included the ingredient glyphosate were injurious to Plaintiff's health, did not recommend safety gear.." Id.* Further, Plaintiff alleges Alabama Co-Op: "… *knew, or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and, specifically, the carcinogenic properties of the chemical glyphosate.* (USDC Doc. #1-1, ¶¶ 79-83). Plaintiffs' allegations of negligence by Alabama Co-Op due to concealment and a failure to warn included: "*Failing to disclose to Plaintiff, users, consumers, and the general public that the use of and exposure to Roundup presented severe risks of cancer and other grave illnesses; and Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendants could reasonably foresee would use and/or be exposed to Roundup® products.*"

Plaintiff's unfinished and unsigned deposition testimony illustrates his regular and direct communications and training with Defendant Co Op's employee Harold Johnson regarding the Roundup Products being sold to and used by Plaintiff. The testimony also illustrates that Alabama Co-Op and Mr. Johnson were chemical specialists who had superior knowledge of the Roundup products and spent a lot of time with Plaintiff. Plaintiff testified as follows:

**Q -** *When you visited the co-op in the 1980s to pick up products, who sold those products to you?* **A - In the store? Q -** *Correct.* **A- …the main sold the Roundup products one I dealt with was Mr. Harold Johnson. Mr. Harold Johnson at that time was an Alabama Farmers Co-op chemical specialist. Q**……*Was Mr. Johnson a salesperson at the co-op?* **A -Yes. I assume he was sales. He was a chemical consultant. I assume that would be considered sales. Q -***How many times did you see him at the co-op?* **A -Regular. And he would visit our farm as well.** (Deposition pg. 59, 60) **Q-** *Did you ask them any questions*? **A- Look, I was 16 years old, and these were**

**grown men, and I respected them. And they were friends. And that's one thing -- they spent a lot of time with me…** (Deposition pg. 177: 6-10)

It is also very clear from Plaintiff's unfinished and unsigned testimony that Alabama Co-Op and Mr. Johnson took independent acts to advise and train Plaintiff on how to mix and use Roundup. Plaintiff testified as follows:

**Q-***Why did he visit at your farm?* **A -He was the one that trained me on how to calibrate spray rigs to what the product Roundup was. Q -***Besides training you on how to calibrate spray rigs, did Mr. Johnson say anything else about Roundup to you?* **A -He knew his product, and he told you what the product was designed for and its purpose and use.** (Deposition pg. 60,61)

**A -The co-op and Bruce in Helena, they're the ones that told me, you know, how to mix it and about the product and what it would do. I never did know, you know, side effects of it, not being safe.** (Deposition pg. 265: 7-11)

Plaintiff also testifies in his affidavit (attached as Exhibit A) that "..**on several occasions when he came out to the farm on behalf of Alabama Co-Op and trained me by actively mixing the Roundup himself. Mr. Johnson did not wear any gloves or any other protective equipment while mixing it or at any point when he was training me. This way of mixing and spraying Roundup without protective gear is something I learned from Mr. Johnson and Alabama Co-Op and this is the way I continued to do it the rest of my years using Roundup."** *Id.* (emphasis added)

The Plaintiff also testified that Mr. Johnson and the Co Op that Mr. Johnson Alabama Co-Op never discussed the risk of cancer with him. Plaintiff testified as follows:

**Q** - *did anyone from the co-op talk to you about the safety around the products?*
**A -   I know they talked to me about the use and talked -- showed me how to apply it and What not. And they should have told me about the safety of it…… because obviously it's a problem.**

**Q -** *And what did they say about the safety*? **A - … I don't remember saying anything about cancer though. That's for sure.** (Deposition pg. 176, 177)

The Plaintiff also testified that he thought Defendant Co-Op was in neglect for not telling him about the risk of cancer and safety with Roundup use. Plaintiff testified as follows:

Q - *Do you have any reason to think that those persons were concealing information from you?* **A - They wouldn't conceal… to see any bodily injury to me. But it's not to say they weren't, you know, <u>in neglect on telling me everything about it</u>.**

It is very clear from Plaintiff's deposition testimony that Alabama Co-Op not only provided the Roundup to Plaintiff but as an expert in the industry took independent acts to educate Plaintiff on the product through on-site presentations and other means. Alabama Co-Op was far more knowledgeable about the product than Plaintiff who at the time was sixteen years old. Therefore, given this circumstances, Alabama Co-Op arguably had a duty to inform Plaintiff that Roundup was cancer causing and that he should take certain safety precautions when using the product. Additionally, even when there is no duty initially, a well-recognized principle in tort law is that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for any negligence in connection with those acts. *Walden v. United States Steel Corp.*, 759 F. 2d 834 (11th Cir. 1985). It is clearly possible for Plaintiff to prove a cause of action based on a direct duty, or a voluntary undertaking of one, by Alabama Co-Op, a breach of that duty a causal relationship, and resulting injury. Therefore, Monsanto cannot validly claim that there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant.

### B. <u>Plaintiff's Fraud Claims against Alabama Co-Op</u>

Monsanto erroneously argues that based on Plaintiff's testimony there "were no independent acts of fraud" by Defendant Alabama Co-Op and that it was "merely a conduit" of Roundup. As

illustrated below, Plaintiff's recovery against Alabama Co-Op for Negligent Misrepresentation and/or Fraud is still viable and possible under Alabama Law. Plaintiff has alleged among other things in his Amended Complaint that *"Defendants had a duty to disclose material information about serious health effects to consumers such as Plaintiff. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, including Plaintiff, to purchase Defendants' dangerous products.* Plaintiff also alleges that "*Defendants fraudulently suppressed material information regarding the safety of Roundup®, including the dangers known by Defendants to be associated with or caused by the use of or exposure to Roundup® and glyphosate.*" *Id.*

Section 6-5-102, Code of Alabama (1975) provides that a suppression of a material fact which the party is under an obligation to communicate constitutes fraud, and that this obligation to communicate may arise from the confidential relation of the parties or from the particular circumstances of the case. The elements of an action for suppression are: (1) A duty to disclose facts; (2) Concealment or nondisclosure of material facts by the defendant; (3) Inducement of the plaintiff to act; and (4) Action by the plaintiff to his injury. *Ford New Holland, Inc. v. Proctor-Russell Tractor Co.* 630 So.2d 395 (Ala. 1993) Monsanto argues in its Removal that "an action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed." And further that Plaintiff testified that "he had no reasons to believe that any employees of the CAF Coop made <u>fraudulent statements</u> about Roundup branded products, or that any employees made <u>statements</u> about those products with the intent to deceive the plaintiff."

First, as to the elements of suppression referenced above, A fraudulent statement is not required to satisfy a claim for suppression under Alabama Law. In other words, "silence is fraudulent, because the silence amounts to an affirmation that a state of things exist which does not, and the party is deprived to the same extent that he would have been by positive assertion" *Corry v. Sylvia y Cia,* 192 Ala. 550,560 (1915). Furthermore, Plaintiff has alleged and testified as to Defendant Alabama

12

Co-Op and its representative, Harold Johnson's, regular and direct communications and training regarding the Roundup Products being sold to and used by Plaintiff. The testimony also illustrates that Defendant Alabama Co-Op and Mr. Johnson were chemical specialists who had superior knowledge of the Roundup products. It is also clear from Plaintiff's testimony that Mr. Johnson on behalf of Alabama Co-Op would even visit the farm to provide training.

Certainly, these circumstances present at least a possibility as to Defendant Alabama Co-Op's duty to disclose material facts concerning the hazards and safety concerns associated with Roundup. Plaintiff clearly testified that Alabama Co-Op and Mr. Johnson did not disclose to him the cancer risk involved with Roundup use. Furthermore, Plaintiff testified that Alabama Co-Op did discuss "safety and use" with him and showed him how to use Roundup, which included mixing and calibrating the spray rigs for spraying the product. During this process, Alabama Co-Op did not warn or advise Plaintiff about the cancer risk or about wearing protective gear when using Roundup. Not only did Mr. Johnson and Alabama Co-Op not warn Plaintiff, but Mr. Johnson actively mixed Roundup for Plaintiff without using gloves or any other protective gear. (Plaintiff's Affidavit, Exhibit A). <u>It is clear that these training sessions with Plaintiff were independent acts by Alabama Co-Op and unrelated to the product design or manufacture. These actions directly suppressed/concealed material safety information from Plaintiff.</u>

Monsanto falsely alleges that during his deposition, "*plaintiff testified that he could not recall any employee from Alabama Co-Op making any statements or representations to him about the safety of Roundup®-branded products. Moore Dep. 176:1-14*". Interestingly, Monsanto does not cite further down the same page of the deposition where Plaintiff includes Harold Johnson and Alabama Co-Op in a response about safety and Helena. In fact, Plaintiff states that Bruce Henderson for Helena and Harold Johnson for Alabama Co-Op spoke to him about the safety of Roundup and that they "for sure" did not say anything to him about a cancer risk (Deposition pg. 176: 20-25, 177: 2-5)

Also, even if Monsanto argues that Alabama Co-Op had no duty to disclose, under Alabama Law, though one may be under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiry, he is bound not only to state the truth but also not to suppress or conceal facts within his knowledge which will materially qualify those stated; if he speaks at all, he must make a full and fair disclosure. *Ellis v. Zuck,* 409 F. Supp. 1151 (N. D. Ala 1976). In the present case there is no question based on Plaintiff's testimony that Alabama Co-Op undertook this duty of explaining, and actively demonstrating, the "use and the safety" at the store and on visits to the farm but failed to say anything to Plaintiff that it could cause cancer.

Second, in its removal, Monsanto misstates who Plaintiff is actually referencing in his deposition when specifically discussing concealment to cause bodily harm or to deception. It is very clear from the transcript when read, Plaintiff only answered questions as to one specific agent/employee of Defendant Alabama Co-Op during exchanges in his testimony. The question or speculation by Plaintiff regarding the state of mind or intent of Mr. Johnson to conceal to intentionally cause Plaintiff bodily injury at that time does not include or automatically absolve the actual defendant corporation – Alabama Co-Op from liability. Alabama law clearly holds that the state of mind or knowledge of the specific agent of the corporation with whom the plaintiff deals may not necessarily be determinative of the state of mind of the defendant. In *Shelter Modular Corp. v. Cardinal Enterprises*, 347 So.2d 1334 (Ala. 1977) the court held that a corporation cannot escape liability in fraud cases by showing that the agent through whom it acted was without knowledge of the true facts. The issue in those cases is whether the corporation had knowledge of the true facts. Furthermore, an agent is deemed to have notice of whatever the principle has notice of. *Roland v. Cooper* (Ala. Civ. App. 2000 (2981433) The agent was the instrument of the company's fraud though he lacked the intent to defraud the purchaser. *Id.* In the present case, Plaintiff certainly has not testified in his deposition that the actual local Defendant in this litigation, Alabama Co-Op, did not

14

have the requisite state of mind or intent to conceal and was not misrepresenting or concealing vital information or passing along incomplete information regarding the risks involved with the use of Roundup. Further, Plaintiff sates in his Affidavit that he "*firmly believe(s) that Alabama Co-Op concealed and kept information from me about the safety of Roundup so that I would continue to use it.*" *Id*. In addition, by <u>Mr. Johnson's active participation in mixing Roundup for Plaintiff without wearing protective gear, did actively suppress/conceal from Plaintiff the need to wear protective gear while mixing and applying Roundup and induced Plaintiff to act in accordance with that training</u>. (Affidavit, Exhibit A). "*Mr. Johnson knew things…that that he didn't disclose.*" *Id*

Third, Monsanto also makes assertions in its brief regarding Plaintiff's testimony and "proof" of Alabama Co Op's knowledge. *Id*. at 77:8-22. 21. And that he testified "that he did not have any factual basis to allege that any person at CAF Coop had such knowledge". *Id*. at 77:15-178:3. Monsanto's statements above completely misconstrues Plaintiff's response. The actual question asked by Monsanto related to Alabama Co-Op was "Going back to the 1980's, do you have any proof **or** any reason to believe that the co-op knew Roundup products could allegedly cause cancer?" (77: 16-22). The transcript shows that Plaintiff answered "No" as to having "proof". Plaintiff did NOT answer "No" as to whether he had a reason to believe that Alabama Co-Op knew Roundup products could cause cancer (Also See Exhibit A)  Monsanto's deposition question regarding Plaintiff's "proof" that Alabama Co-Op knew Roundup products could allegedly cause cancer, does not solicit a response from Plaintiff regarding what the Plaintiff alleges is the case regarding Alabama Co-Op's knowledge. "Proof" against a Defendant comes through and after a full and complete discovery process.  Also, Monsanto's statement about Plaintiff testifying "that he did not have a factual basis to allege "any person" at Alabama Co-Op "had such knowledge" is simply inaccurate and that is not found in the testimony. If you look at the testimony Monsanto cites at 177:15 -178:3, Plaintiff says nothing of the sort. Again, the passage Monsanto quotes deals specifically with Mr. Johnson at

Alabama Co-Op and Bruce Henderson at Helena and whether these two men he had known since he was sixteen, concealed information to intentionally cause him bodily injury. Plaintiff did not say "any person" at Defendant Alabama Co-Op, or Alabama Co-Op as a corporation, as discussed thoroughly above. In addition, as to whether Mr. Johnson and Mr. Henderson were "deceiving" him, Plaintiff responds "*I—I don't know. I wouldn't think they would*". *Id* at 178:2-3. Plaintiff's response is hardly definitive as to whether Johnson actually deceived him. Furthermore, as referenced above, Mr. Johnson's knowledge or intent does not absolve the corporation, Alabama Co-Op. (Exhibit A)

Fourth, Monsanto also attempts to hide behind a premature argument regarding the timing of Defendant Alabama Co-Op's sales of Roundup to Plaintiff and Defendant Alabama Co-Op's knowledge at the time. Defendant Monsanto argues that *"any such claim of fraudulent statements based on CAF Coop's purported knowledge of a potential cancer risk from Roundup®-branded products is further undermined by his testimony that the last relevant sale of Roundup®-branded products by the CAF Coop was in 1986, some 19 years prior to the 2015 IARC classification of glyphosate as a probable human carcinogen."* Contrary to Monsanto's assertion, whether governmental or other agencies knew of the cancer risk of an ingredient of a product is not relevant to whether and when Defendants Monsanto and Alabama Co-Op first knew of the risks associated with the use of its own final formulated product. Plaintiff has not had the opportunity through full and complete discovery to specifically identify when Monsanto and Alabama Co-Op first knew or should have known of the risks associated with the use of Roundup. Without such discovery, Monsanto cannot validly claim that there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant Importantly, all of the issues raised by Monsanto wrongly impose an analysis of the merits of the Plaintiff's claims.

**C. Plaintiff's Breach of Warranty Claims**

Monsanto erroneously argues that based on Plaintiff's testimony there "were no independent acts for "Breach of Warranty" by Defendant Alabama Co-Op and that it was "merely a conduit" for Roundup. As illustrated above and below, Plaintiff's recovery against Alabama Co-Op for Breach of express and implied warranty is still viable and possible under Alabama Law. Interestingly, Monsanto only specifically addressed Plaintiff's Breach of <u>Express</u> Warranty Count and not Plaintiff's separate Count for Breach of Implied Warranty.

Alabama law recognizes breach of warranty claims against the sellers of defective goods. It is well established that a seller of goods can be liable under the AEMLD and for breach of warranty in Alabama. *Horton Homes, Inc. v. Brooks,* 2001 WL 1520623 (Ala. Nov. 30, 2001)(purchaser of a special order manufactured home was allowed to bring suit against both the seller and the manufacturer); *Ex parte General Motors,* 769 So. 2d 903, 912 (Ala. 2000)(buyer of a car which repeatedly stalled was allowed to bring a breach of warranty claim against the seller of the automobile); *Weaver v. Dan Jones Ford, Inc.,* 679 So. 2d 1106, 1113 (Ala. Civ. App. 1996)(implied warranty set forth in Uniform Commercial Code placed obligations on the sellers of goods. "As the seller of the truck, Dan Jones Ford may be held liable for breach of the implied warranties."). Here, the inclusion of Defendant Alabama Co-Op who sold the product Plaintiff used is a proper party to the litigation and the Plaintiff has viable claims against Alabama Co-Op. Even further in this case, the Alabama Co-Op <u>independently acted and came to the site</u> where Plaintiff worked and provided him direct instructions on the product including how to mix and use it. Alabama Co-Op knew that Plaintiff was one of the ultimate users/consumers of the product regardless if the purchase did not come from his personal account. Plaintiff was not simply a "pick up" or "delivery" person as the deposition testimony clearly shows.

The resolution of the issues raised by Defendant Monsanto in its Notice of Removal requires a merit-based analysis of issues something not permitted in determining removal jurisdiction.

Defendant Monsanto has failed to establish that there is no possibility that the Mr. Moore has stated a claim in his Complaint. Remand is warranted here.

### D. Plaintiff's Other Claims

Based on the arguments set forth above, Plaintiff's other claims are viable and Monsanto's arguments must fail.

### IV. A TRANSFER IS NO LONGER REQUIRED AS ALL COMMON ISSUES HAVE BEEN RESOLVED AND PHASED REMAND OF TRANSFERRED CASES HAS BEEN SCHEDULED

A conditional transfer order is an administrative act of the Panel Clerk "which can and will be vacated upon the showing of good cause by any party." *In re: Grain Shipment Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (*citing In re: IBM Antitrust Litig.*, 316 F. Supp.976 (J.P.M.L. 1970)). Good cause exists where consolidation fails to promote the "***just and efficient***" conduct of the action. *See* 28 U.S.C. § 1407(a) (emphasis added); *see also* H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968 USCCAN 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient conduct of such actions and be for the convenience of the parties and witnesses").

Where the "bulk" of common discovery has been completed (or is in the process of being completed) and can be made available to other parties, transfer is less warranted. *In re A.H. Robins Co., Inc.*, 610 F. Supp. 1099, 1100 (J.P.M.L. 1985) (denying motion to transfer); *see also In re Richardson-Merrell, Inc.*, 582 F. Supp. 890, 891 (J.P.M.L.), on reconsideration, 588 F. Supp. 1448 (J.P.M.L. 1984) (vacating transfer where "discovery pertaining to common issues has been completed in the transferee district" and "procedures exist whereby relevant discovery already completed in the transferee district may be made available to parties in newly filed actions").

This MDL proceeding has been pending before Judge Vince Chhabria in the Northern District of California since October 6, 2016. Currently, there are numerous cases pending before

the MDL that were filed in other jurisdictions and transferred to this District pursuant to 28 U.S.C. § 1407. General discovery has been completed in MDL 2741, including *Daubert* hearings, and the completion of a bellwether trial. Pre-trial and post-trial motions were filed by both parties resulting in significant rulings on issues of facts and law that can properly be applied by the Alabama Courts. Judge Chhabria has thus ordered a phased remand schedule based upon groupings by state. (Exhibit B, PTO-150). In each group, only case-specific discovery and case-specific pre-trial motions needs to be completed at which point Judge Chhabria will suggest remand for those case. *Id.* No further general discovery is contemplated. *Id.*

The Circuit Court of Dallas County, Alabama or the Southern District of Alabama are more convenient for Plaintiff. Plaintiff currently lives in Alabama and was exposed to Roundup in Alabama. The fact witnesses in this case, including Plaintiff's physicians, all reside in Alabama. The corporate witnesses for Monsanto have already testified via video deposition and these videos can be played at trial. Therefore, transfer to the Northern District of California will not foster convenience for the parties.

## **CONCLUSION**

Defendant Alabama Co-Op is a legitimate forum Defendant. Under existing Alabama law, the negligence, fraud, products liability, breach of warranty claims, and others against Defendant Alabama Co-Op are viable and Monsanto cannot meet its heavy burden of proving fraudulent joinder. Furthermore, Plaintiff's unfinished and unverified deposition testimony is inadmissible based on Alabama law, making Monsanto's Notice of Removal untimely and invalid. Defendant Alabama Co-Op is a properly joined Defendant in this case and there is no complete diversity among the parties. Consequently, the United States District Court for the Southern District of Alabama does not have jurisdiction in this case, and transfer to the Multidistrict Litigation is improper. In addition, a transfer is no longer required as all common issues have been resolved

and a phased transfer of cases has already been scheduled by the transferee court.

Based upon the foregoing, Plaintiff respectfully requests the Judicial Panel on Multidistrict Litigation vacate CTO- 156 and remand this matter to The Circuit Court of Dallas County, Alabama, or allow the U.S. District Court for the Southern District of Alabama to rule upon Plaintiff's Motion to Strike and Motion to Remand.

Dated:  October 22, 2019                    Respectfully submitted,

*/s/ John E. Tomlinson*
John E. Tomlinson
Jere L. Beasley
Rhon E. Jones
LaBarron N. Boone
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.**
Post Office Box 4160
218 Commerce Street
Montgomery, Alabama  36103
Phone: (334) 269-2343
Fax:    (334) 954-7555
john.tomlinson@beasleyallen.com
jere.beasley@beasleyallen.com
rhon.jones@beasleyallen.com
labarron.boone@beasleyallen.com

OF COUNSEL:

Jamie A. Johnston (JOH164)
Jamie A. Johnston, P.C.
509 Cloverdale Road
Suite 101
Montgomery, Alabama 36106
Telephone:  334.202.9228
Facsimile:   334.265.8789
jamie@jjohnstonpc.com

*Attorneys for Plaintiff John T. Moore*