JURYDEMAND

# U.S. District Court
# United States District Court for the Western District of Washington (Seattle)
# CIVIL DOCKET FOR CASE #: 2:19-cv-01573-RSM

Tostenrude v. Monsanto Company
Assigned to: Judge Ricardo S. Martinez
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 10/02/2019
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Katherine A Tostenrude**
*as personal representative of the*
*estate of*
Kirk A Tostenrude

represented by **Timothy Rolland Tesh**
RESSLER & TESH
821 SECOND AVE
STE 2200
SEATTLE, WA 98104
206-388-0333
Fax: 206-388-0197
Email: tim@resslertesh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2019 | 1 | COMPLAINT *for Damages* against defendant(s) Monsanto Company with JURY DEMAND (Receipt # 0981-5949243), filed by Katherine Tostenrude. (Attachments: # 1 Summons, # 2 Civil Cover Sheet)(Tesh, Timothy) (Entered: 10/02/2019) |
| 10/03/2019 | | Judge Ricardo S. Martinez added. (GT) (Entered: 10/03/2019) |
| 10/03/2019 | 2 | NOTICE TO FILER: re 1 Complaint. ** **Reminder** ** **Documents omitted** See attached letter for more information and instructions. (GT) (Entered: 10/03/2019) |
| 10/03/2019 | 3 | Summons Electronically Issued as to defendant Monsanto Company. (GT) (Entered: 10/03/2019) |
| 10/03/2019 | 4 | ORDER TO SHOW CAUSE re: Transfer of Venue. The Court hereby finds and ORDERS that Plaintiff shall file a Response to this Order to Show Cause no later than twenty-one (21) days from the date of this Order. Signed by Judge Ricardo S. Martinez. (SWT) (Entered: 10/03/2019) |
| 10/03/2019 | 5 | NOTICE of Pendency of Other Action in Northern District of California, case number in other court 16-md-02741 ; filed by Plaintiff Katherine A Tostenrude. (Tesh, Timothy) (Entered: 10/03/2019) |
| 10/10/2019 | 6 | RESPONSE TO ORDER TO SHOW CAUSE by Plaintiff Katherine A Tostenrude (Tesh, Timothy) (Entered: 10/10/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/25/2019 14:53:36 | | | |
| **PACER Login:** | hllp1982:2634105:4722683 | **Client Code:** | 1417.0005 |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-cv-01573-RSM |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

Timothy R. Tesh, WSBA #28249
RESSLER & TESH PLLC
821 Second Avenue, Suite 2200
Seattle, WA 98104
Tel: 206-388-0333
Fax: 206-388-0197
tim@resslertesh.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KATHERINE A. TOSTENRUDE as personal representative of the ESTATE OF KIRK A. TOSTENRUDE, <br><br> Plaintiff, <br><br> vs. <br><br> MONSANTO COMPANY, <br><br> Defendant. | NO. <br><br> COMPLAINT FOR DAMAGES <br><br> JURY TRIAL DEMANDED |

## I.    CIVIL COMPLAINT

Plaintiff Katherine Tostenrude as personal representative of the Estate of Kirk A. Tostenrude ("Plaintiff"), by and through her undersigned attorney, hereby brings this Complaint for Damages against Defendant Monsanto Company, ("Defendant") and alleges the following:

## II.    NATURE OF THE CASE

1.    This is an action for damages suffered by the Kirk A. Tostenrude as a direct and proximate result of Defendant's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution,

COMPLAINT FOR DAMAGES – 1

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

1  labeling, and/or sale of the herbicide Roundup® ("Roundup"), containing the active ingredient

2  glyphosate.

3      2.      Plaintiff maintains that Roundup and/or glyphosate are defective, dangerous to

4  human health, unfit and unsuitable to be marketed and sold in commerce and lacked proper

5  warnings and directions as to the dangers associated with their use.

6      3.      Kirk A. Tostenrude's injuries and death, like those striking or having struck

7  thousands of similarly situated victims across the country, were avoidable.

8                  **III.    JURISDICTION AND VENUE**

9      4.      This Court has jurisdiction over Defendant and this action pursuant to 28 U.S.C. §

10  1332 because there is complete diversity of citizenship between Plaintiff and Defendant. Defendant

11  was incorporated and had its principal place of business outside the State of Washington, where the

12  Plaintiff resides.

13     5.      The amount in controversy between Plaintiff and Defendant exceeds $75,000.00,

14  exclusive of interest and cost.

15     6.      Venue is proper within this district pursuant to 28 U.S.C. § 1391 in that Defendant

16  conducts business here and is subject to personal jurisdiction in this district. Furthermore, Defendant

17  sells, markets, and/or distributes Roundup within the Western District of Washington (Seattle).

18                      **IV.    PARTIES**

19     7.      Plaintiff, KATHERINE TOSTENRUDE who is currently a resident of Spokane

20  County, Washington, is the duly appointed Personal Representative (Executor) of the Estate of

21  KIRK A. TOSTENRUDE by Order of the Superior Court of Spokane County dated September 17,

22  2019 (Spokane County Cause No. 19-4-01389-32) and as such is authorized to commence and

23

24

COMPLAINT FOR DAMAGES – 2

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

1   maintain this action on behalf of the Estate of Kirk A. Tostenrude and the statutory beneficiaries.

2   Kirk A. Tostenrude is survived by his wife Katherine Tostenrude and one adult child.

3        8.     Defendant MONSANTO COMPANY ("Monsanto") was, at all times relevant to

4   this action, a Delaware corporation, with a principle place of business in St. Louis, Missouri.

5   (Missouri Secretary of State Charter No. F00488018). Monsanto has transacted and conducted

6   business within Washington State and has derived substantial revenue from goods and products

7   used in this State.

8        9.     "Roundup" refers to all formulations of Defendant's Roundup products, including,

9   but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom

10   Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide,

11   Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass

12   and Weed Killer, Roundup Herbicide, Roundup Original 2K Herbicide, Roundup Original II

13   Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup

14   Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate

15   Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup

16   Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-

17   Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry,

18   Roundup-Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass

19   Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass

20   killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed &

21   Grass Killer Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide,

22   or any other formulation of containing the active ingredient glyphosate.

23

24

COMPLAINT FOR DAMAGES – 3

10.     All references to the acts and omissions of Defendant in this Complaint shall mean and refer to the actions of Monsanto by contract, sales agreement, the common law, or otherwise.

11.     Defendant advertised and sold goods, specifically Roundup, in the State of Washington.

12.     Defendant transacted and conducted business that relates to the allegations in this Complaint within the State of Washington.

13.     Defendant derived substantial revenue from goods and products used in the State of Washington.

14.     Defendant expected or should have expected its acts to have consequences within the State of Washington, and derived substantial revenue from interstate commerce.

15.     Defendant engaged in the business of designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup.

16.     Upon information and belief, Defendant purposefully availed itself of the privilege of conducting activities with the State of Washington, thus invoking the benefits and protections of its laws.

17.     Upon information and belief, Defendant did design, sell, advertise, manufacture and/or distribute Roundup, with full knowledge of its dangerous and defective nature.

## V.     FACTUAL ALLEGATIONS

18.     At all relevant times, Defendant was in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have acquired and are responsible for the commercial herbicide Roundup.

COMPLAINT FOR DAMAGES – 4

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

19.     Monsanto, at all times relevant, was a multinational agricultural biotechnology corporation based in St. Louis, Missouri. At all times relevant, Monsanto was the world's leading producer of glyphosate.

20.     Monsanto discovered the herbicidal properties of glyphosate during the 1970's and subsequently began to design, research, manufacture, sell and distribute glyphosate based "Roundup" as a broad-spectrum herbicide.

21.     Glyphosate is the active ingredient in Roundup.

22.     Glyphosate is a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

23.     Glyphosate is a "non-selective" herbicide, meaning it kills indiscriminately based only on whether a given organism produces a specific enzyme, 5-enolpyruvylshikimic acid-3-phosphate synthase, known as EPSP synthase.

24.     Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots, and detectable quantities accumulate in the plant tissues.

25.     Defendants are intimately involved in the development, design, manufacture, marketing, sale, and/or distribution of genetically modified ("GMO") crops, many of which are marketed as being resistant to Roundup i.e., "Roundup Ready®." As of 2009, Monsanto was the world's leading producer of seeds designed to be Roundup Ready®. In 2010, an estimated 70% of corn and cotton, and 90% of soybean fields in the United States contained Roundup Ready® seeds.

26.     For nearly 40 years, consumers, farmers, and the public have used Roundup, unaware of its carcinogenic properties.

**VI.     REGISTRATION OF HERBICIDES UNDER FEDERAL LAW**

27.     The manufacture, formulation and distribution of herbicides, such as Roundup, are

COMPLAINT FOR DAMAGES – 5

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

1   regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136

2   et seq.  FIFRA requires that all pesticides be registered with the Environmental Protection Agency

3   ("EPA) prior to their distribution, sale, or use, except as described by FIFRA 7 U.S.C. 136a(a).

4         28.     The EPA requires as part of the registration process, among other requirements, a

5   variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other

6   potential nontarget organisms, and other adverse effects on the environment. Registration by the

7   EPA, however, is not an assurance or finding of safety. The determination the EPA makes in

8   registering or reregistering a product is not that the product is "safe," but rather that use of the

9   product in accordance with its label directions "will not generally cause unreasonable adverse effects

10   on the environment." 7 U.S.C. § 136(a)(c)(5)(D).

11         29.     FIFRA defines "unreasonable adverse effects on the environment" to mean "any

12   unreasonable risk to man or the environment, taking into account the economic, social, and

13   environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). FIFRA thus

14   requires the EPA to make a risk/benefit analysis in determining whether a registration should be

15   granted or allowed to continue to be sold in commerce.

16         30.     The EPA and the State of Washington registered Roundup for distribution, sale, and

17   manufacture in the United States, including the State of Washington.

18         31.     FIFRA generally requires that the registrant, Monsanto, conduct health and safety

19   testing of pesticide products. The government is not required, nor is it able, to perform the product

20   tests that are required of the manufacturer.

21         32.     The evaluation of each pesticide product distributed, sold, or manufactured is

22   completed at the time the product is initially registered. The data necessary for registration of a

23   pesticide has changed over time. The EPA is now in the process of reevaluating all pesticide

24

COMPLAINT FOR DAMAGES – 6

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

1    products through a Congressionally mandated process called "reregistration." 7 U.S.C. § 136a-1. In

2    order to reevaluate these pesticides, the EPA demands the completion of additional tests and the

3    submission of data for the EPA's review and evaluation.

4        33.    In the case of glyphosate and Roundup, the EPA had planned on releasing its

5    preliminary risk assessment in relation to the registration process no later than July 2015. The EPA

6    completed its review of glyphosate in early 2015 but delayed releasing the assessment pending

7    further review in light of the World Health Organization's March 24, 2015 finding that glyphosate is

8    a "probable carcinogen" as demonstrated by the mechanistic evidence of carcinogenicity in humans

9    and sufficient evidence of carcinogenicity in animals.

### VII.   EVIDENCE OF CARCINOGENICITY IN ROUNDUP

34.    As early as the 1980's Monsanto was aware of glyphosate's carcinogenic properties.

35.    Defendant knew or should have known that Roundup is more toxic than glyphosate alone and that safety studies on Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Plaintiff's deceased husband from Roundup.

36.    Defendant knew or should have known that tests, limited to Roundup's active ingredient glyphosate, were insufficient to prove the safety of Roundup.

37.    Defendant failed to appropriately and adequately test Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Plaintiff and her husband from Roundup.

38.    Rather than performing appropriate tests, Defendant relied upon flawed industry-supported studies designed to protect Defendants' economic interests rather than Plaintiff's husband and the consuming public.

39.    Despite its knowledge that Roundup was considerably more dangerous than glyphosate alone, Defendant continued to promote Roundup as safe.

COMPLAINT FOR DAMAGES -- 7

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

## VIII.   IARC CLASSIFICATION OF GLYPHOSATE

40.     The International Agency for Research on Cancer ("IARC") is the specialized intergovernmental cancer agency tasked by the World Health Organization ("WHO") with conducting and coordinating research into the causes of cancer.

41.     An IARC Advisory Group to Recommend Priorities for IARC Monographs during 2015-2019 met in April 2014. Though nominations for the review were solicited, a substance must meet two criteria to be eligible for review by the IARC Monographs: there must already be some evidence of carcinogenicity of the substance, and there must be evidence that humans are exposed to the substance.

42.     IARC set glyphosate for review in 2015-2016. IARC uses five criteria for determining priority in reviewing chemicals. The substance must have a potential for direct impact on public health; scientific literature to support suspicion of carcinogenicity; evidence of significant human exposure; high public interest and/or potential to bring clarity to a controversial area and/or reduce public anxiety or concern; related agents similar to one given high priority by the above considerations. Data reviewed is sourced preferably from publicly accessible, peer- reviewed data.

43.     On March 24, 2015, after its cumulative review of human, animal, and DNA studies for more than one (1) year, many of which have been in Defendants' possession since as early as 1985, the IARC's working group published its conclusion that the glyphosate contained in Defendants' Roundup herbicide, is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

44.     The IARC's full Monograph was published on July 29, 2015 and established glyphosate as a class 2A probable carcinogen to humans. According to the authors glyphosate demonstrated sufficient mechanistic evidence (genotoxicity and oxidative stress) to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.

45.     The IARC Working Group found an increased risk between exposure to glyphosate

COMPLAINT FOR DAMAGES – 8

and non-Hodgkin's lymphoma ("NHL") and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

46. The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

## IX. EARLIER EVIDENCE OF GLYPHOSATE'S DANGER

47. Glyphosate, and Roundup in particular, have long been associated with carcinogenicity and the development of numerous forms of cancer, including, but not limited to, non-Hodgkin's lymphoma ("NHL"), Hodgkin's lymphoma, multiple myeloma, and soft tissue sarcoma.

48. Defendant has known of this association since the early to mid-1980s and numerous human and animal studies have evidenced the carcinogenicity of glyphosate and/or Roundup.

49. In spite of this knowledge, Defendant continued to issue broad and sweeping statements that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

50. Upon information and belief, these statements and representations have been made with the intent of inducing Plaintiff's husband, the agricultural community, and the public at large to purchase and increase the use of Defendant's Roundup for Defendant's pecuniary gain, and in fact, did induce Kirk A. Tostenrude to use Roundup.

51. Defendant made these statements maliciously and with complete disregard and reckless indifference to the safety of Kirk A. Tostenrude and the general public.

52. Notwithstanding Defendant's representations, scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of many cancers, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcoma.

COMPLAINT FOR DAMAGES – 9

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

53. Defendant knew or should have known that glyphosate is associated with an increased risk of developing cancer, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcomas.

54. Defendant failed to appropriately and adequately inform and warn Plaintiff or her husband of these dangerous risks associated with the use of and exposure to glyphosate and/or Roundup, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring and/or medications and could result in death.

55. Defendant claimed and continues to claim that Roundup is safe, non- carcinogenic, and non-genotoxic. These misrepresentations are consistent with Defendant's cavalier approach to investigating and ensuring the safety of its products, the safety of the public at large, and the safety of Plaintiff's husband.

## X.   SCIENTIFIC FRAUD UNDERLYING CERTAIN SAFETY DETERMINATIONS OF GLYPHOSATE

56. After the EPA's 1985 classification of glyphosate as possibly carcinogenic to humans (Group C), Monsanto exerted pressure upon the EPA to change its classification.

57. This culminated in the EPA's reclassification of glyphosate to Group E, which was based upon evidence of non-carcinogenicity in humans.

58. On two occasions, the EPA found that laboratories hired by Monsanto to test the toxicity of its Roundup products for registration purposes committed scientific fraud.

59. In the first instance, Monsanto hired Industrial Bio-Test Laboratories ("IBT") to perform and evaluate pesticide toxicology studies relating to Roundup. IBT performed approximately 30 tests on glyphosate and glyphosate-containing products, including 11 of the 19 chronic toxicology studies needed to register Roundup with the EPA.

COMPLAINT FOR DAMAGES – 10

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

60.     In 1976, the Food and Drug Administration ("FDA") performed an inspection of IBT and discovered discrepancies between the raw data and the final report relating to toxicological impacts of glyphosate. The EPA subsequently audited IBT and determined that the toxicology studies conducted for Roundup were invalid. An EPA reviewer stated, after finding "routine falsification of data" at IBT, that it was "hard to believe the scientific integrity of the studies when they said they took specimens of the uterus from male rabbits."

61.     Three top executives of IBT were convicted of fraud in 1983.

62.     In the second incident, Monsanto hired Craven Laboratories ("Craven") in 1990 to perform pesticide and herbicide studies, including several studies on Roundup.

63.     In March of 1991, the EPA announced that it was investigating Craven for "allegedly falsifying test data used by chemical firms to win EPA approval of pesticides."

64.     The investigation lead to the indictments of the laboratory owner and a handful of employees.

## XI.     MONSANTO'S CONTINUING DISREGARD FOR THE SAFETY OF PLAINTIFF'S HUSBAND AND THE PUBLIC

65.     Monsanto claims on its website that "[r]egulatory authorities and independent experts around the world have reviewed numerous long term/carcinogenicity and genotoxicity studies and agree that there is no evidence that glyphosate, the active ingredient in Roundup brand herbicides and other glyphosate based herbicides, causes cancer, even at very high doses, and that it is not genotoxic."

66.     Ironically, the primary source for this statement is a 1986 report by the WHO, the same organization that now considers glyphosate to be a probable carcinogen.

67.     Glyphosate, and Defendant's Roundup products in particular, has long been associated with serious side effects and many regulatory agencies around the globe have banned or are currently banning the use of glyphosate herbicide products.

COMPLAINT FOR DAMAGES – 11

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

1      68.    Defendant's statements proclaiming the safety of Roundup and disregarding its

2  dangers misled Kirk A. Tostenrude.

3      69.    Despite Defendant's knowledge that Roundup was associated with an elevated risk of

4  developing cancer, Defendant's promotional campaigns focused on Roundup's purported "safety

5  profile."

6      70.    Defendant's failure to adequately warn Kirk A. Tostenrude resulted in (1) Plaintiff's

7  husband using and being exposed to glyphosate and Roundup instead of using another acceptable

8  and safe method of controlling unwanted weeds and pests; and (2) scientists and physicians failing to

9  warn and instruct consumers about the risk of cancer, including NHL, and other injuries associated

10  with Roundup.

11      71.    Defendant failed to seek modification of the labeling of Roundup to include relevant

12  information regarding the risks and dangers associated with Roundup exposure.

13      72.    The failure of Defendant to appropriately warn and inform the EPA has resulted in

14  inadequate warnings in safety information presented directly to users and consumers.

15      73.    The failure of Defendant to appropriately warn and inform the EPA has resulted in

16  the absence of warning or caution statements that are adequate to protect health and the environment.

17      74.    The failure of Defendant to appropriately warn and inform the EPA has resulted in

18  the directions for use that are not adequate to protect health and the environment.

19      75.    By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages

20  as a result of Kirk A. Tostenrude's use of, and exposure to, Roundup which caused or was a

21  substantial contributing factor in causing Plaintiff's husband to suffer from cancer, specifically NHL,

22  and Plaintiff's husband suffered severe and personal injuries, pain, and mental anguish, including a

23  loss of life.

24  COMPLAINT FOR DAMAGES – 12

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

76.     By reason of the foregoing acts and omissions, Plaintiff's husband died.

## XII.   PLAINTIFF'S EXPOSURE TO ROUNDUP

77.     Kirk A. Tostenrude used Roundup regularly beginning in approximately September 2010 at his home, which was situated on a large suburban lot, until approximately September 2015. Plaintiff's husband principally used Roundup concentrate in a two-gallon pump sprayer for weed control on his large Spokane, Washington residence which bordered on a public greenbelt.

78.     For years, Plaintiff's husband applied Roundup on a regular basis, as described above. Kirk A. Tostenrude followed all safety and precautionary warnings during the course of his use.

79.     Kirk A. Tostenrude was diagnosed with Chronic Lymphocytic Leukemia ('CLL') which, unbeknownst to Plaintiff and her husband, was a form of non-Hodgkin's Lymphoma. Kirk A. Tostenrude's CLL was proximately and actually caused by his exposure to Defendant's Roundup products.

80.     As a result of his illness, Kirk A. Tostenrude was forced to undergo chemotherapy.

81.     Plaintiff's husband developed a severe reaction to the chemotherapy drugs which progressed into Stevens Johnson Syndrome.

82.     In February of 2016, Kirk A. Tostenrude died of complications related to Stevens Johnson Syndrome including Toxic Epidermal Necrolysis and Organ Failure.

83.     In July of 2019, Plaintiff was informed by a family member that the type of cancer that her husband contracted was a form of NHL.

## XIII.   FIRST CAUSE OF ACTION:
## WASHINGTON PRODUCT LIABILITY ACT

84.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

85.     At all times relevant to this litigation, Defendant engaged in the business of testing,

COMPLAINT FOR DAMAGES – 13

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

1   developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup

2   products.

3       86.    At all times relevant to this litigation, Defendant designed, researched, developed,

4   manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and

5   distributed the Roundup products used by Plaintiff's husband as described above.

6       87.    At all times relevant to this litigation, Defendant's Roundup products were expected

7   to reach and did reach the intended consumers, handlers, and users or other persons coming into

8   contact with these products in Washington and throughout the United States, including Plaintiff's

9   husband, without substantial change in their condition as designed, manufactured, sold, distributed,

10  labeled, and marketed by Defendant.

11      88.    In violation of the Washington Products Liability Act ("WPLA"), RCW 7.72, et seq.,

12  at all times relevant to this action, at the time Defendant's Roundup products left control of

13  Defendant, they were defective and not reasonably safe. These defects include, but are not limited to,

14  the following:

15      a)    Defendant is strictly liable for Kirk A. Tostenrude's injuries and damages because at

16  the time of manufacture, and at the time Defendant's Roundup products left control of Defendant,

17  the likelihood that Defendant's Roundup products would cause injury or damage similar to that

18  suffered by Plaintiff's husband, and the seriousness of such injury or damage had been known by

19  Defendant and outweighed the burden on Defendant to design a product that would have prevented

20  Kirk A. Tostenrude's injuries and damages and outweighed  the adverse effect that an alternative

21  design that was practical and feasible would have on the usefulness of the subject product.

22      b)    Defendant's Roundup products were unsafe to an extent beyond that which would be

23  contemplated by an ordinary consumer, in one or more of the following particulars: exposure to

24

COMPLAINT FOR DAMAGES – 14

1    Roundup and specifically, its active ingredient glyphosate, could result in cancer and other severe

2    illnesses and injuries, making Roundup not reasonably safe when used in the way it is ordinarily

3    used and is dangerous to an extent beyond that which would be contemplated by the ordinary

4    consumer.

5          c)      The Roundup products manufactured and/or supplied by Defendant were defective in

6    design in that, an alternative design and/or formulation exists that would prevent severe and

7    permanent injury. Indeed, at the time that Defendant designed its Roundup products, the state of the

8    industry's scientific knowledge was such that a less risky design or formulation was attainable.

9          d)      The Roundup products were not reasonably safe in design under the WPLA.

10         e)      The Roundup products manufactured and/or supplied by Defendant were not

11   reasonably safe because Defendant did not provide an adequate warning or instruction about the

12   product. At the time the Roundup products left Defendant's control, they possessed dangerous

13   characteristics and Defendant failed to use reasonable care to provide an adequate warning of such

14   characteristics and their danger to users and handlers of the product.  The Roundup products are not

15   safe and cause severe and permanent injuries. The Roundup products were not reasonably safe

16   because the warning was inadequate, and Defendant could have provided adequate warnings or

17   instructions.

18         f)      The Roundup products manufactured and/or supplied by Defendant were not

19   reasonably safe because adequate warnings or manufacturer instructions were not provided after the

20   Roundup products were manufactured and when Defendant learned of, or should have learned of, the

21   dangers connected with the Roundup products.

22         g)      The Roundup products manufactured and/or supplied by Defendant were not

23   reasonably safe because they did not conform to an express warranty made by Defendant regarding

24

COMPLAINT FOR DAMAGES – 15

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

1   the product's safety and fitness for use. Defendant expressly warranted that the Roundup products

2   were safe and fit for their intended purposes, that they were of merchantable quality, that they did

3   not produce any dangerous side effects, that they were adequately tested, and that their Roundup

4   products were safe to human health and the environment, and effective, fit, and proper for their

5   intended use. Defendant did not disclose the material risks that Defendant's Roundup products

6   could cause severe and permanent injury. Defendant's express warranty regarding the Roundup

7   products induced Plaintiff to use the products, and Plaintiff's husband's damages were proximately

8   caused because Defendant's express warranty was untrue. The Roundup products were not

9   reasonably safe because of nonconformity to express warranty under the WPLA.

10       89.   As a direct and proximate result of Defendant placing its defective Roundup products

11   into the stream of commerce, Kirk A. Tostenrude suffered grave injuries, and endured physical pain

12   and discomfort, as well as economic hardship, including considerable financial expenses for medical

13   care and treatment, and ultimately, death.

14                          **XIV.   SECOND CAUSE OF ACTION:**
15                             **BREACH OF IMPLIED WARRANTIES**

16       90.   Plaintiff hereby incorporates by reference the allegations of this Complaint contained

17   in each of the preceding paragraphs as if fully stated herein.

18       91.   At all times relevant to this litigation, Defendant engaged in the business of testing,

    developing, designing, manufacturing, marketing, selling, distributing, and promoting its Roundup

19   products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby

20   placing Roundup products into the stream of commerce. These actions were under the ultimate

21   control and supervision of Defendant.

22       92.   Before the time that Kirk A. Tostenrude was exposed to the use of the aforementioned

23   Roundup products, Defendant impliedly warranted to their consumers—including Kirk A.

24   **COMPLAINT FOR DAMAGES – 16**

1    Tostenrude —that their Roundup products were of merchantable quality and safe and fit for the use

2    for which they were intended; specifically, as agricultural and horticultural herbicides.

3         93.    Defendant, however, failed to disclose that Roundup has dangerous propensities when

4    used as intended and that the use of and/or exposure to Roundup and glyphosate-containing products

5    carries an increased risk of developing severe injuries, including Kirk A. Tostenrude's injuries.

6         94.    Upon information and belief, Kirk A. Tostenrude reasonably relied upon the skill,

7    superior knowledge and judgment of Defendant and upon its implied warranties that the Roundup

8    products were of merchantable quality and fit for their intended purpose or use.

9         95.    Upon information and belief, Kirk A. Tostenrude was at all relevant times in privity

10   with Defendant.

11        96.    Kirk A. Tostenrude is the intended third-party beneficiary of implied warranties made

12   by Defendant to the purchasers of their agricultural and horticultural herbicides, and as such his

13   estate is entitled to assert this claim.

14        97.    The Roundup products were expected to reach and did in fact reach consumers and

15   users, including Kirk A. Tostenrude, without substantial change in the condition in which they were

16   manufactured and sold by Defendant.

17        98.    At all times relevant to this litigation, Defendant were aware that consumers and users

18   of its products, including Kirk A. Tostenrude, would use Roundup products as marketed by

19   Defendant, which is to say that Kirk A. Tostenrude was a foreseeable user of Roundup.

20        99.    Defendant intended that their Roundup products be used in the manner in which Kirk

21   A. Tostenrude in fact used them and Defendant impliedly warranted each product to be merchantable

22   quality, safe, and fit for this use, despite the fact that Roundup was not adequately tested or

23   researched.

24
     COMPLAINT FOR DAMAGES – 17                      LAW OFFICES OF RESSLER & TESH
                                                          821 SECOND AVENUE, SUITE 2200
                                                              SEATTLE, WA 98104
                                                               (206) 388-0333

1    100.    In reliance upon Defendant's implied warranty, Kirk A. Tostenrude used Roundup as

2    instructed, and labeled and in the foreseeable manner intended, recommended, promoted, and

3    marketed by Defendant.

4    101.    Kirk A. Tostenrude could not have reasonably discovered or known of the risks of

5    serious injury associated with Roundup or glyphosate.

6    102.    Defendant breached its implied warranty to Plaintiff and Kirk A. Tostenrude in that

7    its Roundup products were not of merchantable quality, safe, or fit for their intended use, or

8    adequately tested. Roundup has dangerous propensities when used as intended and can cause serious

9    injuries, including those injuries complained of herein.

10    103.    The harm caused by the Roundup products far outweighed their benefit, rendering the

11    products more dangerous than an ordinary consumer or user would expect and more dangerous than

12    alternative products.

13    104.    As a direct and proximate result of Monsanto placing its defective Roundup products

14    into the stream of commerce, Kirk A. Tostenrude suffered injuries, and endured physical pain and

15    discomfort, as well as economic hardship, including considerable financial expenses for medical care

16    and treatment, along with other damages further discussed herein.

17    ## XV.    THIRD CAUSE OF ACTION
**VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT**

18
19    105.    Plaintiff hereby incorporate by reference the allegations of this Complaint contained
in each of the preceding paragraphs as if fully stated herein.

20    106.    Defendant violated the Washington Consumer Protection Act ("CPA").

21    107.    Defendant engaged in unfair or deceptive acts or practices including, but not limited

22    to, the following:

23    a)    engaging in acts and practices by willfully failing and refusing to timely report
information that reasonably suggested Roundup, like that used by Kirk A. Tostenrude, may cause or

24
COMPLAINT FOR DAMAGES – 18

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

contribute to cause cancer and other serious illnesses;

       b)     representing knowingly or with reason to know that Roundup has approval, characteristics, uses, or benefits that it does not have;

       c)     representing knowingly or with reason to know that Roundup is of a particular standard, quality, or grade when it differs materially from that representation; and/or

       d)     representing knowingly or with reason to know that Roundup has uses, benefits, or characteristics that have been otherwise proven incorrect;

108.    Defendant's unfair and deceptive acts or practices described above were committed in the course of Defendant's trade or commerce.

109.    Defendant's unfair and deceptive acts or practices described above affected public interest.

110.    Defendant's violation of the Washington CPA caused Plaintiff and Kirk A. Tostenrude's injuries and damages set forth herein.

## XVI.   FOURTH CAUSE OF ACTION
## PUNITIVE DAMAGES

111.    Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

112.    Defendant is liable for punitive and/or exemplary damages under choice of law principles. Defendant acted with willful disregard of the rights of the Plaintiff, her husband, and the public. Defendant's conduct was outrageous and reckless toward the safety of Kirk A. Tostenrude and the public.

## XVII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, on each of the above-referenced claims and causes of action and as follows:

1.    Awarding Plaintiff compensatory damages in excess of the jurisdictional amount, including, but not limited to past and future pain, suffering, emotional distress, disability, loss of enjoyment of life, loss of consortium, wrongful death and other non-economic damages and losses;

COMPLAINT FOR DAMAGES – 19

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

2.      Awarding Plaintiff her economic damages and losses, including without limitation past and future medical expenses, out of pocket expenses, lost earnings and lost earning capacity, lost household services, and other economic damages in an amount to be determined at trial;

3.      Awarding punitive damages;

4.      Awarding pre-judgment interest;

5.      Awarding post-judgment interest;

6.      Awarding Plaintiff reasonable attorneys' fees;

7.      Awarding Plaintiff the costs of these proceedings;

8.      Treble damages in the maximum amounts permitted by RCW 19.86.090; and

9.      Such other and further relief as this Court deems just and proper.


DATED this 1st day of October, 2019.


s/ Timothy R. Tesh
State Bar Number 28249
821 Second Avenue, Suite 2200
Attorney for Plaintiff
Seattle, WA 98104
Phone: 206-388-0333
Fax: 206-388-0197
Email: tim@resslertesh.com

COMPLAINT FOR DAMAGES – 20

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a jury trial of twelve (12) as provided by Rule 38(a) of the Federal Rules of Civil Procedure.


DATED this 1st day of October, 2019.


s/ Timothy R. Tesh
State Bar Number 28249
821 Second Avenue, Suite 2200
Attorney for Plaintiff
Seattle, WA 98104
Phone: 206-388-0333
Fax: 206-388-0197
E-mail: tim@resslertesh.com

COMPLAINT FOR DAMAGES – 21

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333