FILED
7/31/2019 12:41 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L003401

5991003

ATTORNEY CODE # 04771

STATE OF ILLINOIS       )
                     ) SS:

COUNTY OF COOK     )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| DAVID WALTER )<br><br>Plaintiff )<br><br>v. )<br><br>MONSANTO COMPANY, BAYER AG, )<br>NORTHWESTERN MEMORIAL )<br>HEALTHCARE, KIMBERLY )<br>MCKINNON, and NICHOLAS ZORETIC, )<br>)<br>)<br>)<br>)<br>)<br>Defendants ) | NO. 19 L 003401 |

### FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys,

HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants,

BAYER AG, MONSANTO COMPANY, NORTHWESTERN MEMORIAL

HEALTHCARE, NICHOLAS ZORETIC, and KIMBERLY MCKINNON, states as

follows:

### PARTIES

1. At all relevant times, Plaintiff, DAVID WALTER, was and is a resident of Illinois.



FILED DATE: 7/31/2019 12:41 PM   2019L003401

2.  At all relevant times, Defendant BAYER AG (hereinafter "BAYER") was and/or is a multinational business headquartered in Germany, doing business throughout the United States, including Illinois.

3.  BAYER is the parent company of Defendant MONSANTO COMPANY (hereinafter "MONSANTO"). MONSANTO was/is a wholly owned subsidiary of BAYER: BAYER acquired MONSANTO and became the sole owner of MONSANTO and Roundup® products (hereinafter "Roundup")—the Roundup products kept their brand name and became a part of BAYER's portfolio of products.

4.  At all relevant times, MONSANTO was and/or is a multinational business, incorporated in Delaware and headquartered in Missouri, doing business throughout the United States, including Illinois.

5.  At all relevant times, Defendant NORTHWESTERN MEMORIAL HEALTHCARE (hereinafter "NMH") was and/or is an Illinois corporation with its principal place of business in the County of Cook, and State of Illinois.

6.  At all relevant times, Defendant KIMBERLY MCKINNON, D.O. (hereinafter "MCKINNON") was and/or is an individual physician who on information and belief is a resident of the City of La Grange Park, County of Cook, and State of Illinois.

7.  At all relevant times, Defendant NICOLAS ZORETIC, D.O. (hereinafter "ZORETIC") was and/or is an individual physician who on information and belief is a resident of the City of St. Charles, County of Kane, and State of Illinois.

## INTRODUCTION

### Allegations Applicable to All Counts

FILED DATE: 7/31/2019 12:41 PM   2019L003401

8. At all times material, BAYER and/or MONSANTO, individually and by and/or through their agents and or employees, distributed and sold Roundup in Illinois. BAYER and/or MONSANTO did regular and substantial business in Illinois.

9. DAVID WALTER was a consumer of Roundup and used Roundup in Illinois from approximately 2007 through 2017.

10. At all material times, BAYER and/or MONSANTO's Roundup reached the intended consumers, handlers, and users or other persons coming into contact with these products in Illinois and throughout the United States, including DAVID WALTER, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by BAYER and/or MONSANTO.

11. On March 20, 2015, the International Agency for Research on Cancer (hereinafter "IARC"), an agency of the World Health Organization (hereinafter "WHO"), issued an evaluation of several herbicides, including glyphosate. That evaluation was based, in part, on studies of exposures to glyphosate in several countries around the world, and it traces the health implications from exposure to glyphosate since 2001.

12. On July 29, 2015, IARC issued the formal monograph relating to glyphosate. In that monograph, the IARC Working Group provides a thorough review of the numerous studies and data relating to glyphosate exposure in humans.

13. The IARC evaluation is significant. It confirms what has been believed and/or known for years: glyphosate is toxic to humans.

14. The IARC Working Group classified glyphosate as a Group 2A herbicide, which means that it is probably carcinogenic to humans.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

15. The IARC Working Group concluded that the cancers most associated with glyphosate exposure are non-Hodgkin's lymphoma and other haematopoietic cancers.

16. At all times material, BAYER and/or MONSANTO knew and/or should have known, of the unreasonable dangers of glyphosate and its Roundup products and the unreasonable risks to consumers and users health.

17. Nevertheless, MONSANTO and/or BAYER, since it began selling Roundup, has represented it as safe to humans and the environment. And MONSANTO and/or BAYER has repeatedly proclaimed and continues to proclaim to the world, and particularly to United States and Illinois consumers, including DAVID WALTER, that glyphosate based herbicides, including Roundup, create no unreasonable risks to human health or to the environment.

18. On or about March of 2015 through October of 2017, and at all material times, NMH by and through their agents or apparent agents, inclusive of ZORETIC and MCKINNON, provided medical care and treatment to DAVID WALTER.

19. DAVID WALTER was diagnosed with stage IV non-Hodgkin's lymphoma on or around October of 2017.

20. DAVID WALTER's stage IV non-Hodgkin's lymphoma was proximately caused by the conduct of all defendants in this matter and the injury is single and indivisible.

21. It was not until sometime after the diagnosis of non-Hodgkin's lymphoma that DAVID WALTER discovered that his conditions and/or ailments, including non-Hodgkin's lymphoma, could be related in any way to his exposure to Roundup.

## COUNT I – STRICT LIABILITY PRODUCTS LIABILITY

FILED DATE: 7/31/2019 12:41 PM   2019L003401

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants, BAYER AG and MONSANTO COMPANY states as follows:

22. DAVID WALTER incorporates by reference paragraphs 1-21 above.

23. That on and prior to October 10, 2017, the aforementioned Defendant BAYER and/or MONSANTO had been engaged or participated in the business of designing, developing, testing, preparing, manufacturing, advertising, marketing, promoting, packaging, distributing, supplying, and/or selling a certain product and/or its appurtenances, commonly known as Roundup and that prior to the said date, BAYER and/or MONSANTO had in fact designed, developed, tested, prepared, manufactured, advertised, marketed, promoted, packaged, distributed, supplied, and/or sold the aforesaid product and/or its appurtenances that DAVID WALTER was exposed to.

24. That at said time, there was no abnormal use of the aforesaid product and/or its appurtenances.

25. That at said time there was no reasonable secondary cause of the injury, rather DAVID WALTER suffered one single, indivisible injury.

26. That at said time, the aforesaid product failed to perform as reasonably expected in light of its nature and function.

27. That at said time the aforesaid product and/or its appurtenances was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product and/or its appurtenances left the control of BAYER and/or MONSANTO in one or more of the following ways:

FILED DATE: 7/31/2019 12:41 PM   2019L003401

a.  The product has a propensity to cause cancer;

b.  Failed to adequately warn/ instruct of the product could cause cancer;

c.  Failed to adequately warn how to prevent the product from causing cancer;

d.  Failed to adequately design the product to prevent a user from developing cancer by coming in contact with the product;

e.  Designed the product such that a user could develop cancer from coming in contact with the product;

f.  Designed a product that was hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

g.  The product lacked any warning as to any or all of the above;

h.  The product lacked adequate warning as to any or all of the above;

i.  The product did not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup and specifically, the active ingredient glyphosate.

j.  Failed to have an adequate method or procedure to prevent any or all of the above;

k.  Failed to adequately train to prevent any or all of the above;

l.  Failed to adequately test, investigate, or study the product, and specifically the active ingredient glyphosate, to prevent any or all of the above;

28. DAVID WALTER was exposed to Defendant BAYER and/or MONSANTO's Roundup products while using aforesaid products at his residence in Illinois from approximately 2007 to 2017, without knowledge of its dangerous characteristics.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

29. DAVID WALTER was exposed to the use of Defendant BAYER and/or MONSANTO's Roundup products in an intended or reasonably foreseeable manner without knowledge of its dangerous characteristics.

30. DAVID WALTER could not have reasonably discovered the defects and risks associated with Roundup or glyphosate-containing products before or at the time of exposure.

31. As a direct and proximate result of Defendant BAYER and/or MONSANTO's placing defective Roundup products into the stream of commerce and exposing DAVID WALTER to them, DAVID WALTER has suffered and continues to suffer severe injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment. And DAVID WALTER will continue to incur these expenses in the future.

32. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendants, BAYER AG and MONSANTO COMPANY, in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

.

## COUNT II – PRODUCTS NEGLIGENCE

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants, BAYER AG and MONSANTO COMPANY states as follows:

FILED DATE: 7/31/2019 12:41 PM   2019L003401

33. DAVID WALTER incorporates by reference paragraphs 1-21 above.

34. BAYER and/or MONSANTO, directly or indirectly, caused Roundup products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by DAVID WALTER.

35. At all times relevant to this litigation, BAYER and/or MONSANTO had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

36. At all times relevant to this litigation, BAYER and/or MONSANTO had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup products.

37. BAYER and/or MONSANTO's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup products and appropriate, complete and accurate warnings concerning the potential adverse effects of exposure to Roundup products, and, in particular, its active ingredient glyphosate.

38. At all times relevant to this litigation, BAYER and/or MONSANTO knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and specifically, the carcinogenic properties of the chemical glyphosate.

39. Accordingly, at all times relevant to this litigation, BAYER and/or MONSANTO knew or, in the exercise of reasonable care, should have known that use of or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

exposure to Roundup products could cause or be associated with DAVID WALTER's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including DAVID WALTER.

40. BAYER and/or MONSANTO also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup products and glyphosate-containing products.

41. As such, BAYER and/or MONSANTO breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup products, in that BAYER and/or MONSANTO manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous effects, and failed to prevent or adequately warn of these risks and injuries.

42. Despite ability and means to investigate, study, and test products and to provide adequate warnings, BAYER and/or MONSANTO failed to do so. Indeed, BAYER and/or MONSANTO wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or exposure to Roundup products and glyphosate.

43. BAYER and/or MONSANTO engaged in the following negligent acts and/or omissions:

FILED DATE: 7/31/2019 12:41 PM   2019L003401

a.  The product has a propensity to cause cancer;

b.  Failed to adequately warn/ instruct of the product could cause cancer;

c.  Failed to adequately warn how to prevent the product from causing cancer;

d.  Failed to adequately design the product to prevent a user from developing cancer by coming in contact with the product;

e.  Designed the product such that a user could develop cancer from coming in contact with the product;

f.  Designed a product that was hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

g.  The product lacked any warning as to any or all of the above;

h.  The product lacked adequate warning as to any or all of the above;

i.  The product did not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup and specifically, the active ingredient glyphosate.

j.  Failed to have an adequate method or procedure to prevent any or all of the above;

k.  Failed to adequately train to prevent any or all of the above;

l.  Failed to adequately test, investigate, or study the product, and specifically the active ingredient glyphosate, to prevent any or all of the above.

44. BAYER and/or MONSANTO knew and/or should have known that it was foreseeable that consumers, such as DAVID WALTER, would suffer injuries as a result of BAYER and/or MONSANTO's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup products.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

45. DAVID WALTER did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup products or its active ingredient glyphosate.

46. As a direct and proximate result of BAYER and/or MONSANTO's wrongful acts and omissions, DAVID WALTER has suffered and continues to suffer severe injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment. And DAVID WALTER will continue to incur these expenses in the future.

47. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendants, BAYER AG and MONSANTO COMPANY, in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

## COUNT III – PROFESSIONAL NEGLIGENCE—KIMBERLY MCKINNON, D.O.

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendant, KIMBERLY MCKINNON, D.O. states as follows:

48. DAVID WALTER incorporates by reference allegations 1-21.

49. That during the years 2015 through 2017, and at all times relevant herein, the Defendant, MCKINNON, was a physician duly licensed under the laws of the State of Illinois, and was engaged in the practice of her profession in the City of Bloomingdale, County of DuPage, and State of Illinois.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

50. On and before March 30, 2015, and at all relevant times herein, Defendant, MCKINNON, was a duly authorized actual and/or apparent agent/employee of Defendant, NORTHWESTERN MEMORIAL HEALTHCARE (hereinafter "NMH"), and was acting within the scope of her employment.

51. That during September of 2016, and for a continuing course of negligent medical treatment through October of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, was a patient under the care and treatment of the Defendant, MCKINNON.

52. That on or about September 13, 2016, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, entrusted himself to the care of the Defendant.

53. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety and was free from any contributory negligence.

54. That during September of 2016, and for a continuing course of negligent medical treatment through October of 2017, and for some time prior and subsequent thereto, the Defendant, MCKINNON, did have come under her care and did attend to and treat the Plaintiff, DAVID WALTER, for routine serial physical examinations.

55. That there was a duty on the part of the Defendant, MCKINNON, to diagnose and treat the Plaintiff, DAVID WALTER, in accordance with the accepted standards of medical practice and opinion prevailing in the medical community in the years 2015

through 2017, and to exercise that degree of care and caution commonly exercised by other members of her profession in the community.

56. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, MCKINNON, was then and there guilty of one or more of the following wrongful acts and/or omissions:

   a.  failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

   b.  failed to perform proper and adequate tests upon Plaintiff; or

   c.  failed to take a proper and thorough medical history of the Plaintiff; or

   d.  failed to order proper treatment for the Plaintiff's medical condition; or

   e.  failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

   f.  failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

   g.  failed to treat the Plaintiff in a manner customary and suitable to her profession; or

   h.  failed to adequately evaluate Plaintiff's medical condition; or

   i.  failed to institute proper treatment at the appropriate time for the Plaintiff's medical condition; or

   j.  failed to perform screening diagnostic studies;

   k.  read results of Plaintiff's tests; or

   l.  failed to follow up on abnormal imaging results; or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

FILED DATE: 7/31/2019 12:41 PM   2019L003401

   m.  failed to follow up on abnormal laboratory test results; or

   n.  failed to order necessary tests; or

   o.  failed to advise plaintiff to return for follow-up care and tests; or

   p.  failed to timely diagnose Plaintiff's lymphatic cancer; or

   q.  failed to timely treat Plaintiff's lymphatic cancer; or

   r.  failed to diagnose a cancerous condition; or

   s.  failed to treat the condition of the Plaintiff in a manner suitable and customary with her profession.

57. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned. Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer; the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

58. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendant, KIMBERLY MCKINNON, D.O., in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

### COUNT IV – PROFESSIONAL NEGLIGENCE—NICHOLAS ZORETIC, D.O.

NOW COMES the Plaintiff, DAVID WALTER, by and through his attorneys, HORWITZ, HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendant, NICHOLAS ZORETIC, D.O. states as follows:

59. DAVID WALTER incorporates by paragraphs 1-21.

60. That during the years 2015 through 2017, and at all times relevant herein, the Defendant, ZORETIC, was a physician duly licensed under the laws of the State of Illinois, and was engaged in the practice of his profession in the City of Bloomingdale, County of DuPage, and State of Illinois.

61. On and before March 30, 2015, and at all relevant times herein, Defendant, ZORETIC, was a duly authorized actual and/or apparent agent and/or employee of Defendant, NMH, and was acting within the scope of his employment.

62. That on or about March 30, 2015, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, was a patient under the care and treatment of the Defendant, ZORETIC.

63. That on or about March 30, 2016, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, entrusted himself to the care of the Defendant.

64. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety and was free from any contributory negligence.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

65. That on or about March 30, 2015, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Defendant, ZORETIC, did have come under his care and did attend to and treat the Plaintiff, DAVID WALTER, for routine serial physical examinations.

66. That there was a duty on the part of the Defendant, ZORETIC, to diagnose and treat the Plaintiff, DAVID WALTER, in accordance with the accepted standards of medical practice and opinion prevailing in the medical community in the years 2015 through 2017, and to exercise that degree of care and caution commonly exercised by other members of his profession in the community.

67. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, ZORETIC, was then and there guilty of one or more of the following wrongful acts and/or omissions:

   a.   failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

   b.   failed to perform proper and adequate tests upon Plaintiff; or

   c.   failed to take a proper and thorough medical history of the Plaintiff; or

   d.   failed to order proper treatment for the Plaintiff's medical condition; or

   e.   failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

   f.   failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

g.   failed to treat the Plaintiff in a manner customary and suitable to his
     profession; or

h.   failed to adequately evaluate Plaintiff's medical condition; or

i.   failed to institute proper treatment at the appropriate time for the Plaintiff's
     medical condition; or

j.   failed to perform screening diagnostic studies; or

k.   read results of Plaintiff's tests; or

l.   failed to follow up on abnormal imaging results; or

m.   failed to follow up on abnormal laboratory test results; or

n.   failed to order necessary tests; or

o.   failed to advise Plaintiff to return for follow-up care and tests; or

p.   failed to timely diagnose Plaintiff's lymphatic cancer; or

q.   failed to timely treat Plaintiff's lymphatic cancer; or

r.   failed to diagnose a cancerous condition; or

s.   failed to treat the condition of the Plaintiff in a manner suitable and customary
     with his profession.

68. That as a direct and proximate result of one or more of the aforesaid acts and/or
    omissions of the Defendant(s), the Plaintiff then and there sustained severe and
    permanent injuries, both internally and externally, and was and will be in the future
    hindered and prevented in whole or in part from attending to usual duties and affairs,
    and has lost and in the future will lose, the value of that time, and has suffered a loss
    of earning capacity, as aforementioned. Further, that the Plaintiff also suffered great
    pain and anguish both in mind and body, and will in the future continue to so suffer;

FILED DATE: 7/31/2019 12:41 PM   2019L003401

facilities, personnel, equipment, and information to properly care for and treat the Plaintiff, DAVID WALTER.

73. That on or about March 30, 2015, and for some time prior and subsequent thereto, the Plaintiff entered the Defendant's facilities for medical and diagnostic care and treatment and entrusted himself entirely to the care of the Defendant's facilities and their various authorized agents, apparent agents, servants, employees, physicians, and other personnel, including but not limited to the Defendants, MCKINNON and ZORETIC, as aforesaid: that the Plaintiff, DAVID WALTER, possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend, or cure himself.

74. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety.

75. That at all times mentioned herein, the Defendants, MCKINNON and ZORETIC, were physicians duly licensed in the practice of their professions in the State of Illinois.

76. That at all times mentioned herein, the Defendants, MCKINNON and ZORETIC, were employees, servants, agents and/or apparent agents of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, and as such practiced their profession in the facilities of the Defendant, NMH, pursuant to their employment.

77. That from March of 2015 through October of 2017, and for some time prior and subsequent thereto, the Defendants, MCKINNON and ZORETIC, individually, and as an agents, apparent agents, servants and/or employees of the Defendant, NMH, a

FILED DATE: 7/31/2019 12:41 PM   2019L003401

not-for profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, in their professional capacity as aforesaid, while acting in the scope of the employment, apparent agency and/or agency as aforesaid, did then and there have come under their care and did attend to and treat the Plaintiff, DAVID WALTER, while the Plaintiff was a patient at NORTHWESTERN MEDICINE throughout Illinois.

78. That it then and there became and was the duty of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents, apparent agents, servants, employees, and physicians, including but not limited to, the Defendants, ZORETIC and MCKINNON, to render medical services consistent with the medical requirements of the patients therein, and so as not to cause injury to said patients, including the Plaintiff, DAVID WALTER.

79. That there was a duty on the part of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents, apparent agents, servants, employees and physicians, including, but not limited to, the Defendants MCKINNON and ZORETIC, to treat the Plaintiff, DAVID WALTER, with that degree of knowledge, skill, and care possessed by a reasonably well-qualified physician in their community or a similar community, and to exercise that degree of knowledge, skill, and care commonly exercised by other members of their profession.

80. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents,

FILED DATE: 7/31/2019 12:41 PM   2019L003401

apparent agents, servants, employees, and physicians, including but not limited to, the
Defendants, MCKINNON and ZORETIC, were then and there guilty of one or more
of the following wrongful acts and/or omissions in treating the Plaintiff, DAVID
WALTER:

    a.  failed to properly treat the Plaintiff in a manner consistent with his medical
needs; or

    b.  failed to perform proper and adequate tests upon Plaintiff; or

    c.  failed to take a proper and thorough medical history of the Plaintiff; or

    d.  failed to order proper treatment for the Plaintiff's medical condition; or

    e.  failed to request consultation with other physicians skilled in other specialties
of medicine and specialties in diagnosing and treating the condition being
suffered by the Plaintiff; or

    f.  failed to call in a qualified specialist or refer Plaintiff to another physician
capable of treating Plaintiff's condition; or

    g.  failed to treat the Plaintiff in a manner customary and suitable to their
profession; or

    h.  failed to adequately evaluate Plaintiff's medical condition; or

    i.  failed to institute proper treatment at the appropriate time for the Plaintiff's
medical condition; or

    j.  failed to perform screening diagnostic studies; or

    k.  read results of Plaintiff's tests; or

    l.  failed to follow up on abnormal imaging results; or

    m.  failed to follow up on abnormal laboratory test results; or

FILED DATE: 7/31/2019 12:41 PM   2019L003401

    n.  failed to order necessary tests; or

    o.  failed to advise Plaintiff to return for follow-up care and tests; or

    p.  failed to timely diagnose Plaintiff's lymphatic cancer; or

    q.  failed to timely treat Plaintiff's lymphatic cancer; or

    r.  failed to diagnose a cancerous condition; or

    s.  failed to treat the condition of the Plaintiff in a manner suitable and customary with their profession.

81. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned.  Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer; the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

82. DAVID WALTER has suffered a single indivisible injury proximately caused by all the defendants to this action.

    WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendant, Northwestern Memorial Hospital in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

FILED DATE: 7/31/2019 12:41 PM   2019L003401

Respectfully submitted,

*Clifford Horwitz*

Clifford W. Horwitz
**Horwitz, Horwitz, and Associates, LTD.**
25 E. Washington, Suite 900
Chicago, IL  60602
Office: (312) 372-8822
Email: clmail@horwitzlaw.com

**12-Person Jury**

1900 - Appearance & Jury Demand
0900 - Appearance Only
Appearance _____ (3-81 ) CCG-

| | | |
|---|---|---|
| David Walter, | ) | 5240944 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Court No.:   19 L 003401 |
| | ) | |
| Kimberly McKinnon, D.O., Nicholas Zoretic, | ) | FILED |
| D.O., and Northwestern Memorial HealthCare, | ) | 5/30/2019 4:18 PM |
| d/b/a Northwestern Medicine | ) | DOROTHY BROWN |
| | ) | CIRCUIT CLERK |
| | ) | COOK COUNTY, IL |
| Defendants. | ) | 2019L003401 |

### APPEARANCE AND JURY DEMAND

The undersigned, as attorney, enters the appearance and jury demand of the Defendant, Kimberly McKinnon, D.O.

*Defendants demand a jury of twelve (12) jurors.*

| | |
|---|---|
| Name | BAKER & ENRIGHT |
| Attorney for | Kimberly McKinnon, D.O. |
| Address | 33 W. Jackson Blvd., 3rd Floor |
| City | Chicago, IL 60604 |
| Telephone | 312/663-9600 |
| E-mail | enright@bakerandenright.com |
| Atty No. | 31368 |

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

Attorneys for Defendant,
Kimberly McKinnon, D.O.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**



EXHIBIT

B

**12-Person Jury**

1900 - Appearance & Jury Demand
0900 - Appearance Only
<u>Appearance</u>                                                                                   <u>(3-81 ) CCG-</u>

| | | |
|---|---|---|
| David Walter, | ) | 5240944 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Court No.: 19 L 003401 |
| | ) | |
| Kimberly McKinnon, D.O., Nicholas Zoretic, | ) | FILED |
| D.O., and Northwestern Memorial HealthCare, | ) | 5/30/2019 4:18 PM |
| d/b/a Northwestern Medicine | ) | DOROTHY BROWN |
| | ) | CIRCUIT CLERK |
| | ) | COOK COUNTY, IL |
| Defendants. | ) | 2019L003401 |

### APPEARANCE AND JURY DEMAND

The undersigned, as attorney, enters the appearance and jury demand of the Defendant, Kimberly McKinnon, D.O.

*Defendants demand a jury of twelve (12) jurors.*

| | |
|---|---|
| Name | BAKER & ENRIGHT |
| Attorney for | Kimberly McKinnon, D.O. |
| Address | 33 W. Jackson Blvd., 3rd Floor |
| City | Chicago, IL 60604 |
| Telephone | 312/663-9600 |
| E-mail | enright@bakerandenright.com |
| Atty No. | 31368 |

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

Attorneys for Defendant,
Kimberly McKinnon, D.O.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID WALTER,                              )
                                           )
                    Plaintiff,             )
                                           )
            v.                             )   No.  1:19-cv-06482
                                           )
MONSANTO COMPANY, a foreign corporation,   )   Honorable Sharon J. Coleman
KIMBERLY McKINNON, D.O., NICHOLAS          )
ZORETIC, D.O., NORTHWESTERN MEMORIAL       )   Magistrate Judge Maria Valdez
HEALTHCARE d/b/a NORTHWESTERN              )
MEDICINE, a domestic not-for-profit corporation, )
and BAYER AG, a foreign corporation,       )
                                           )
                    Defendants.            )

## DEFENDANT MONSANTO COMPANY'S ANSWER TO
## DAVID WALTER'S FIRST AMENDED COMPLAINT AT LAW

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto

Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying

all allegations contained in plaintiff David Walter's First Amended Complaint at Law ("the

Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer,

Monsanto refers to Monsanto Company, a United States based company incorporated in

Delaware, and not to other Monsanto-affiliated companies.  Monsanto Company denies – and

objects to – allegations by plaintiff that purport to lump Monsanto Company together with other

defendants.  Monsanto Company responds to this Complaint only on behalf of Monsanto

Company and not on behalf of any other defendant.  Silence as to any allegations shall constitute

a denial.

     1.      For purposes of this answer, Monsanto accepts the allegations in paragraph 1.

     2.      The allegations in paragraph 2 are directed at a defendant other than Monsanto, so

no response from Monsanto is required for these allegations.

4839-7538-8329



3.     Monsanto admits that it is an indirect, wholly-owned subsidiary of Bayer AG. Monsanto denies the remaining allegations in paragraph 3.

4.     In response to the allegations in paragraph 4, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri; that it does business throughout the United States; and that Monsanto and affiliated companies have operations and offices countries around the world.

5.     The allegations in paragraph 5 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

6.     The allegations in paragraph 6 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

7.     The allegations in paragraph 7 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

8.     In response to the allegations in paragraph 8, Monsanto admits that it is authorized to do, and has done, business in Illinois, including distributing and selling Roundup®-branded products. The remaining allegations in paragraph 8 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

9.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11.    Monsanto admits the allegations in the first sentence of paragraph 11. Monsanto denies the allegations in the second sentence of paragraph 11 to the extent they suggest that the

International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

12.    Monsanto admits the allegations in the first sentence of paragraph 12.  Monsanto denies the allegations in the second sentence of paragraph 12.

13.    Monsanto denies the allegations in paragraph 13.

14.    In response to the allegations in paragraph 14, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto further states that:  (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Additionally, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  In addition to the conclusions in the two

---

[1]    EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2]    Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3]    EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of

safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 14.

15.     In response to the allegations in paragraph 15, Monsanto states that the cited

document speaks for itself and does not require a response. To the extent that the allegations in

paragraph 15 go beyond a restatement of the cited document, Monsanto denies those allegations.

16.     Monsanto denies the allegations in paragraph 16.

17.     In response to the allegations in paragraph 17, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that paragraph 17 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

18.     The allegations in paragraph 18 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

19.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore denies those allegations.

20.     Monsanto denies the allegations in paragraph 20.

21.     In response to the allegations in paragraph 21, Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 21. Monsanto states, however, that, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 and therefore denies those allegations.

22.     Monsanto incorporates by reference its responses to paragraphs 1 through 21 in response to paragraph 22 of plaintiff's Complaint.

5

23.     In response to the allegations in paragraph 23, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used Roundup®-branded products and therefore denies those allegations.  Monsanto admits that it has designed, developed, tested, prepared, manufactured, advertised, marketed, promoted, packaged, distributed, supplied, and sold Roundup®-branded products.  Monsanto denies the remaining allegations in paragraph 23.

24.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore denies those allegations.

25.     Monsanto lacks information or knowledge sufficient to form a belief as to the allegations in paragraph 25 and therefore denies those allegations.

26.     Monsanto denies the allegations in paragraph 26.

27.     Monsanto denies the allegations in paragraph 27, including each of its sub-parts.

28.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 28 concerning plaintiff's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 28, including that Roundup®-branded products have "dangerous characteristics."

29.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 29 concerning plaintiff's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 29, including that Roundup®-branded products have "dangerous characteristics."

30.     Monsanto denies the allegations in paragraph 30.

31.　　Monsanto denies the allegations in paragraph 31.

32.　　Monsanto denies the allegations in paragraph 32.

In response to the "WHEREFORE" paragraph following paragraph 32, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

33.　　Monsanto incorporates by reference its responses to paragraphs 1 through 32 in response to paragraph 33 of plaintiff's Complaint.

34.　　In response to the allegations in paragraph 34, Monsanto states that the phrase "directly or indirectly" is vague and ambiguous and that Monsanto lacks information or knowledge sufficient to form a belief as to the truth of those allegations and therefore Monsanto denies those allegations.

35.　　The allegations in paragraph 35 set forth conclusions of law for which no response is required.

36.　　The allegations in paragraph 36 set forth conclusions of law for which no response is required.

37.　　The allegations in paragraph 37 set forth conclusions of law for which no response is required.

38.　　Monsanto denies the allegations in paragraph 38.

39.　　Monsanto denies the allegations in paragraph 39.

40.　　Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 40 regarding users' and consumers' knowledge and

therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 40.
All labeling of Roundup®-branded products has been and remains EPA-approved and in
compliance with all federal requirements under FIFRA.

41.    Monsanto denies the allegations in paragraph 41.

42.    Monsanto denies the allegations in paragraph 42.

43.    Monsanto denies the allegations in paragraph 43, including each of its subparts.

44.    Monsanto denies the allegations in paragraph 44.

45.    Monsanto lacks information or knowledge sufficient to form a belief as to the
truth of the allegations in paragraph 45 regarding plaintiff's knowledge and therefore denies
those allegations.  Monsanto denies the remaining allegations in paragraph 45, including that
intended use of and/or exposure to Roundup®-branded products causes any injuries.

46.    Monsanto denies the allegations in paragraph 46.

47.    Monsanto denies the allegations in paragraph 47.

In response to the "WHEREFORE" paragraph following paragraph 47, Monsanto
demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be
dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's
fees as allowed by law and such further and additional relief as this Court may deem just and
proper.

48. – 82. Counts III-V (paragraphs 48-82) are directed at other defendants and do not
require any responses from Monsanto.

Every allegation in the Complaint that is not specifically and expressly admitted in this
Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.      The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.      Plaintiff's claims are misjoined and should be severed.

3.      Plaintiff's claims against Monsanto are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

5.      Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.      Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

7.      Plaintiff's claims against Monsanto are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9

8.      Plaintiff's claims against Monsanto are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims against Monsanto are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims against Monsanto are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12.     All or part of plaintiff's claims are barred by the applicable statutes of limitations, statutes of repose, jurisdictional time limits, or any other limitations on the period of time within which to file suit, whether in this or any other state, including, without limitation, 735 ILCS 5/13-202, 5/13-203, 5/13-213, 5/13-215 and 740 ILCS 180/2.

13.     Plaintiff may not recover on the claims pleaded in the Complaint because the damages sought are too speculative and remote.

14.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims against Monsanto in whole or in part.

15.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the

relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

16.   Monsanto had no legal relationship or privity with plaintiff and owed no duty to him by which liability could be attributed to it.

17.   Plaintiff's claims against Monsanto are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.   Plaintiff's claims against Monsanto are barred in whole or in part by plaintiff's contributory/comparative negligence. Pursuant to Section 2-116 of the Illinois Code of Civil Procedure, plaintiff is barred from any recovery in this matter because plaintiff's comparative fault is more than 50% of the proximate cause of his alleged injuries and damages. Alternatively, any judgment entered in favor of plaintiff should be reduced by an amount commensurate with his relative degree of fault in causing his own alleged injuries and damages.

19.   Monsanto states that, at all times relevant, 735 ILCS 5/2-1117 was in full force and effect. In the event that the jury determines that there was some liability on the part of Monsanto, which Monsanto specifically denies, and further finds that its fault is less than 25% of the total fault attributable to the defendants sued by plaintiff, and any third party defendant who could have been sued by plaintiff, any judgment entered in favor of plaintiff and against Monsanto must reflect joint and several liability for all past and future medical and medically related expenses, but only several liability for other damages.

20.   Plaintiff's claims against Monsanto are barred in whole or in part by plaintiff's failure to mitigate damages.

21.    Plaintiff's claims against Monsanto are barred in whole or in part by the sophisticated user doctrine.

22.    Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

23.    In the event that plaintiff receives a settlement from any party or non-party for the injuries described in the Complaint, Monsanto is entitled to a full set-off for the amount of each such settlement.

24.    If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

25.    Plaintiff's claims against Monsanto are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits such claims.

26.    Plaintiff's claims against Monsanto are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

27.    Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE,** Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

Dated:  October 7, 2019                    Respectfully submitted,

                                           **MONSANTO COMPANY**

                                           By:_ _/s/   Thomas J. Dammrich, II_____
                                              One of Its Attorneys

Thomas J. Dammrich, II (#6292653)
Peter F. O'Neill (#6324429)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, *Suite 4700*
Chicago, Illinois 60606
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195
Email: tdammrich@shb.com
       pfoneill@shb.com

## CERTIFICATE OF SERVICE

I, Thomas J. Dammrich, II, an attorney, hereby certify that, on October 7, 2019, I caused

a true and complete copy of the foregoing **DEFENDANT MONSANTO COMPANY'S**

**ANSWER TO DAVID WALTER'S FIRST AMENDED COMPLAINT AT LAW** to be

electronically filed with the Court via the Court's ECF system.  I further certify that I emailed a

copy of same upon the following counsel of record:

Clifford W. Horwitz
Jay R. Luchsinger
Michael Carter
Thomas A. Kelliher
Michael Cannon
**Horwitz, Horwitz, and Associates, LTD**
25 E. Washington, Suite 900
Chicago, IL 60602
Telephone:    (312) 372-8822
Email: office@horwitzlaw.com
            clmail@horwitzlaw.com
            cliff@horwitzlaw.com
            sung@horwitzlaw.com
            michael@horwitzlaw.com
            tom@horwitzlaw.com
            matt@horwitzlaw.com

*Attorneys for Plaintiff*

Ruth V. Enright
Patrick J. Vezino
**Baker & Enright**
33 W. Jackson Blvd., 3rd Floor
Chicago, IL 60604
Telephone:  (312) 663-9600
Email: enright@bakerandenright.com
            vezino@bakerandenright.com

*Attorneys for Kimberly McKinnon, D.O.*

Stetson F. Atwood
Ashley E. Dus
**Donohue Brown Mathewson & Smyth LLC**
140 S. Dearborn St., Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
Email: atwood@dbmslaw.com
            dus@dbmslaw.com
            harders@dbmslaw.com

*Attorneys for Nicholas Zoretic, D.O. and*
*Northwestern Memorial Healthcare*

_/s/   Thomas J. Dammrich, II_

4839-7538-8329

**12-Person Jury**

FILED
3/29/2019 1:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L003401

ATTORNEY CODE # 04771

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS: |
| COUNTY OF COOK | ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DAVID WALTER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. |
| | ) | |
| NICHOLAS ZORETIC, D.O.; | ) | |
| KIMBERLY MCKINNON, D.O.; and | ) | |
| NORTHWESTERN MEMORIAL | ) | |
| HEALTHCARE, d/b/a NORTHWESTERN | ) | |
| MEDICINE | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, DAVID WALTER, by his attorneys, HORWITZ,

HORWITZ AND ASSOCIATES, LTD., and complaining of the Defendants,

NORTHWESTERN MEMORIAL HEALTHCARE; a not-for-profit Illinois corporation,

d/b/a NORTHWESTERN MEDICINE; KIMBERLY MCKINNON, D.O.; and

NICHOLAS ZORETIC, D.O. and each of them, states as follows:

### COUNT I – PROFESSIONAL NEGLIGENCE—KIMBERLY MCKINNON, D.O.

1. That Defendant, KIMBERLY MCKINNON, D.O. (hereinafter "MCKINNON") is

   a resident of the City of La Grange Park, County of Cook, and State of Illinois.

2. That during the years 2015 through 2017, and at all times relevant herein, the

   Defendant, MCKINNON, was a physician duly licensed under the laws of the



FILED DATE: 3/29/2019 1:54 PM   2019L003401

State of Illinois, and was engaged in the practice of her profession in the City of Bloomingdale, County of DuPage, and State of Illinois.

3. On and before March 30, 2015, and at all relevant times herein, Defendant, MCKINNON, was a duly authorized actual and/or apparent agent/employee of Defendant, NORTHWESTERN MEMORIAL HEALTHCARE (hereinafter "NMH"), and was acting within the scope of her employment.

4. That during September of 2016, and for a continuing course of negligent medical treatment through October of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, was a patient under the care and treatment of the Defendant, MCKINNON.

5. That on or about September 13, 2016, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, entrusted himself to the care of the Defendant.

6. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety and was free from any contributory negligence.

7. That during September of 2016, and for a continuing course of negligent medical treatment through October of 2017, and for some time prior and subsequent thereto, the Defendant, MCKINNON, did have come under her care and did attend to and treat the Plaintiff, DAVID WALTER, for routine serial physical examinations.

FILED DATE: 3/29/2019 1:54 PM   2019L003401

8. That there was a duty on the part of the Defendant, MCKINNON, to diagnose and treat the Plaintiff, DAVID WALTER, in accordance with the accepted standards of medical practice and opinion prevailing in the medical community in the years 2015 through 2017, and to exercise that degree of care and caution commonly exercised by other members of her profession in the community.

9. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, MCKINNON, was then and there guilty of one or more of the following wrongful acts and/or omissions:

   a. Carelessly and negligently failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

   b. Carelessly and negligently failed to perform proper and adequate tests upon Plaintiff; or

   c. Carelessly and negligently failed to take a proper and thorough medical history of the Plaintiff; or

   d. Carelessly and negligently failed to order proper treatment for the Plaintiff's medical condition; or

   e. Carelessly and negligently failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

   f. Carelessly and negligently failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

   g. Carelessly and negligently failed to treat the Plaintiff in a manner customary and suitable to her profession; or

FILED DATE: 3/29/2019 1:54 PM   2019L003401

h.  Carelessly and negligently failed to adequately evaluate Plaintiff's medical condition; or

i.  Carelessly and negligently failed to institute proper treatment at the appropriate time for the Plaintiff's medical condition; or

j.  Carelessly and negligently failed to perform screening diagnostic studies;

k.  Carelessly and negligently read results of Plaintiff's tests; or

l.  Carelessly and negligently failed to follow up on abnormal imaging results; or

m.  Carelessly and negligently failed to follow up on abnormal laboratory test results; or

n.  Carelessly and negligently failed to order necessary tests; or

o.  Carelessly and negligently failed to advise plaintiff to return for follow-up care and tests; or

p.  Carelessly and negligently failed to timely diagnose Plaintiff's lymphatic cancer; or

q.  Carelessly and negligently failed to timely treat Plaintiff's lymphatic cancer; or

r.  Carelessly and negligently failed to diagnose a cancerous condition; or

s.  Carelessly and negligently failed to treat the condition of the Plaintiff in a manner suitable and customary with her profession.

10. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties

FILED DATE: 3/29/2019 1:54 PM   2019L003401

and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned. Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer; the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the Defendant, KIMBERLY MCKINNON, D.O., in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

## COUNT II – PROFESSIONAL NEGLIGENCE—NICHOLAS ZORETIC, D.O.

11. That Defendant, NICHOLAS ZORETIC, D.O. (hereinafter "ZORETIC") is a resident of the City of St. Charles, County of Kane, and State of Illinois.

12. That during the years 2015 through 2017, and at all times relevant herein, the Defendant, ZORETIC, was a physician duly licensed under the laws of the State of Illinois, and was engaged in the practice of his profession in the City of Bloomingdale, County of DuPage, and State of Illinois.

13. On and before March 30, 2015, and at all relevant times herein, Defendant, ZORETIC, was a duly authorized actual and/or apparent agent and/or employee of Defendant, NMH, and was acting within the scope of his employment.

14. That on or about March 30, 2015, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and

FILED DATE: 3/29/2019 1:54 PM   2019L003401

subsequent thereto, the Plaintiff, DAVID WALTER, was a patient under the care and treatment of the Defendant, ZORETIC.

15. That on or about March 30, 2016, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Plaintiff, DAVID WALTER, entrusted himself to the care of the Defendant.

16. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety and was free from any contributory negligence.

17. That on or about March 30, 2015, and for a continuing course of negligent medical treatment through September of 2017, and for some time prior and subsequent thereto, the Defendant, ZORETIC, did have come under his care and did attend to and treat the Plaintiff, DAVID WALTER, for routine serial physical examinations.

18. That there was a duty on the part of the Defendant, ZORETIC, to diagnose and treat the Plaintiff, DAVID WALTER, in accordance with the accepted standards of medical practice and opinion prevailing in the medical community in the years 2015 through 2017, and to exercise that degree of care and caution commonly exercised by other members of his profession in the community.

19. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, ZORETIC, was then and there guilty of one or more of the following wrongful acts and/or omissions:

FILED DATE: 3/29/2019 1:54 PM   2019L003401

a.  Carelessly and negligently failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

b.  Carelessly and negligently failed to perform proper and adequate tests upon Plaintiff; or

c.  Carelessly and negligently failed to take a proper and thorough medical history of the Plaintiff; or

d.  Carelessly and negligently failed to order proper treatment for the Plaintiff's medical condition; or

e.  Carelessly and negligently failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

f.  Carelessly and negligently failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

g.  Carelessly and negligently failed to treat the Plaintiff in a manner customary and suitable to his profession; or

h.  Carelessly and negligently failed to adequately evaluate Plaintiff's medical condition; or

i.  Carelessly and negligently failed to institute proper treatment at the appropriate time for the Plaintiff's medical condition; or

j.  Carelessly and negligently failed to perform screening diagnostic studies; or

k.  Carelessly and negligently read results of Plaintiff's tests; or

l.  Carelessly and negligently failed to follow up on abnormal imaging results; or

FILED DATE: 3/29/2019 1:54 PM   2019L003401

m.  Carelessly and negligently failed to follow up on abnormal laboratory test results; or

n.  Carelessly and negligently failed to order necessary tests; or

o.  Carelessly and negligently failed to advise Plaintiff to return for follow-up care and tests; or

p.  Carelessly and negligently failed to timely diagnose Plaintiff's lymphatic cancer; or

q.  Carelessly and negligently failed to timely treat Plaintiff's lymphatic cancer; or

r.  Carelessly and negligently failed to diagnose a cancerous condition; or

s.  Carelessly and negligently failed to treat the condition of the Plaintiff in a manner suitable and customary with his profession.

20. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned.  Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer; the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

FILED DATE: 3/29/2019 1:54 PM   2019L003401

WHEREFORE, Plaintiff DAVID WALTER, demands judgment against Defendant, NICHOLAS ZORETIC, D.O., in an amount in excess of $50,000, together with any other relief deemed just and proper, including but not limited to the costs of this suit.

### COUNT III – PROFESSIONAL NEGLIGENCE AGAINST NORTHWESTERN MEMORIAL HEALTHCARE UNDER *RESPONDEAT SUPERIOR*: ACTUAL OR APPARENT AGENCY

21. That during March of 2015 through October of 2017, and at all relevant times herein, the Defendant, NORTHWESTERN MEMORIAL HEALTHCARE (hereinafter "NMH"), a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, was a duly licensed healthcare institution engaged in the business of offering physician, medical, and hospital care and services in the State of Illinois and engaged on their staff various physicians and other personnel.

22. That at all times relevant to this action, Defendant NMH was located in the County of Cook, State of Illinois.

23. That during March of 2015, and at all relevant times herein, the Defendant, NMH, held itself out and otherwise informed the public, and more particularly, in the instance of the Plaintiff, that it had and possessed the requisite skill, know-how, facilities, personnel, equipment, and information to properly care for and treat the Plaintiff, DAVID WALTER.

24. That on or about March 30, 2015, and for some time prior and subsequent thereto, the Plaintiff entered the Defendant's facilities for medical and diagnostic care and treatment and entrusted himself entirely to the care of the Defendant's facilities and their various authorized agents, apparent agents, servants, employees,

FILED DATE: 3/29/2019 1:54 PM   2019L003401

physicians, and other personnel, including but not limited to the Defendants, MCKINNON and ZORETIC, as aforesaid: that the Plaintiff, DAVID WALTER, possessed no medical or professional medical knowledge, nor did he have the facilities to care for, mend, or cure himself.

25. That at all times material herein, the Plaintiff, DAVID WALTER, was in the exercise of ordinary care and caution for his own safety.

26. That at all times mentioned herein, the Defendants, MCKINNON and ZORETIC, were physicians duly licensed in the practice of their professions in the State of Illinois.

27. That at all times mentioned herein, the Defendants, MCKINNON and ZORETIC, were employees, servants, agents and/or apparent agents of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, and as such practiced their profession in the facilities of the Defendant, NMH, pursuant to their employment.

28. That from March of 2015 through October of 2017, and for some time prior and subsequent thereto, the Defendants, MCKINNON and ZORETIC, individually, and as an agents, apparent agents, servants and/or employees of the Defendant, NMH, a not-for profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, in their professional capacity as aforesaid, while acting in the scope of the employment, apparent agency and/or agency as aforesaid, did then and there have come under their care and did attend to and treat the Plaintiff, DAVID WALTER, while the Plaintiff was a patient at NORTHWESTERN MEDICINE throughout Illinois.

FILED DATE: 3/29/2019 1:54 PM   2019L003401

29. That it then and there became and was the duty of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents, apparent agents, servants, employees, and physicians, including but not limited to, the Defendants, ZORETIC and MCKINNON, to render medical services consistent with the medical requirements of the patients therein, and so as not to cause injury to said patients, including the Plaintiff, DAVID WALTER.

30. That there was a duty on the part of the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents, apparent agents, servants, employees and physicians, including, but not limited to, the Defendants MCKINNON and ZORETIC, to treat the Plaintiff, DAVID WALTER, with that degree of knowledge, skill, and care possessed by a reasonably well-qualified physician in their community or a similar community, and to exercise that degree of knowledge, skill, and care commonly exercised by other members of their profession.

31. That after assuming the care and treatment of the Plaintiff, DAVID WALTER, the Defendant, NMH, a not-for-profit corporation, individually and d/b/a NORTHWESTERN MEDICINE, by and through their duly authorized agents, apparent agents, servants, employees, and physicians, including but not limited to, the Defendants, MCKINNON and ZORETIC, were then and there guilty of one or more of the following wrongful acts and/or omissions in treating the Plaintiff, DAVID WALTER:

FILED DATE: 3/29/2019 1:54 PM   2019L003401

a. Carelessly and negligently failed to properly treat the Plaintiff in a manner consistent with his medical needs; or

b. Carelessly and negligently failed to perform proper and adequate tests upon Plaintiff; or

c. Carelessly and negligently failed to take a proper and thorough medical history of the Plaintiff; or

d. Carelessly and negligently failed to order proper treatment for the Plaintiff's medical condition; or

e. Carelessly and negligently failed to request consultation with other physicians skilled in other specialties of medicine and specialties in diagnosing and treating the condition being suffered by the Plaintiff; or

f. Carelessly and negligently failed to call in a qualified specialist or refer Plaintiff to another physician capable of treating Plaintiff's condition; or

g. Carelessly and negligently failed to treat the Plaintiff in a manner customary and suitable to their profession; or

h. Carelessly and negligently failed to adequately evaluate Plaintiff's medical condition; or

i. Carelessly and negligently failed to institute proper treatment at the appropriate time for the Plaintiff's medical condition; or

j. Carelessly and negligently failed to perform screening diagnostic studies; or

k. Carelessly and negligently read results of Plaintiff's tests; or

l. Carelessly and negligently failed to follow up on abnormal imaging results; or

FILED DATE: 3/29/2019 1:54 PM   2019L003401

m.  Carelessly and negligently failed to follow up on abnormal laboratory test results; or

n.  Carelessly and negligently failed to order necessary tests; or

o.  Carelessly and negligently failed to advise Plaintiff to return for follow-up care and tests; or

p.  Carelessly and negligently failed to timely diagnose Plaintiff's lymphatic cancer; or

q.  Carelessly and negligently failed to timely treat Plaintiff's lymphatic cancer; or

r.  Carelessly and negligently failed to diagnose a cancerous condition; or

s.  Carelessly and negligently failed to treat the condition of the Plaintiff in a manner suitable and customary with their profession.

32. That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of the Defendant(s), the Plaintiff then and there sustained severe and permanent injuries, both internally and externally, and was and will be in the future hindered and prevented in whole or in part from attending to usual duties and affairs, and has lost and in the future will lose, the value of that time, and has suffered a loss of earning capacity, as aforementioned. Further, that the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer; the Plaintiff further expended and became liable for and will in the future expend and become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

FILED DATE: 3/29/2019 1:54 PM   2019L003401

WHEREFORE, Plaintiff, DAVID WALTER, demands judgment against the

Defendant, NMH, NICHOLAS ZORETIC, D.O., and KIMBERLY MCKINNON,

D.O., in an amount in excess of $50,000, together with any other relief deemed just

and proper, including but not limited to the costs of this suit.

Respectfully submitted,

Clifford W. Horwitz
**Horwitz, Horwitz, and Associates, LTD.**
25 E. Washington, Suite 900
Chicago, IL  60602
Office: (312) 372-8822
Email: clmail@horwitzlaw.com

FILED DATE: 3/29/2019 1:54 PM   2019L003401

## AFFIDAVIT PURSUANT TO ILLINOIS SUPREME COURT RULE 222

I, Clifford W. Horwitz, having been first duly sworn, hereby depose and state as follows:

1. That I am one of the attorneys representing the Plaintiff in the above-captioned case, that I bear primary responsibility for the prosecution of said cause on behalf of the Plaintiff, and that I am authorized and qualified to make this Affidavit.

2. That I have consulted and reviewed the facts of this case with a health professional that I reasonably believe is knowledgeable regarding the relevant issues involved in this action and who practices in the same specialty as the defendants.

3. That the reviewing health professional has determined in a written report, after a review of the medical records and other relevant material involved in this action, that reasonable and meritorious cause exists for filing this action.

4. That I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action.

5. That the profession of the reviewing health professional is a Medical Doctor (M.D.).

6. That I reasonably believe that the reviewing health professional is knowledgeable about the relevant issues involved in this cause of action.

7. That I reasonably believe that the reviewing health professional practices or has practices or has taught within the last six years in the same area of health care or medicine that is at issue in this cause of action.

8. That I reasonably believe that the reviewing health professional is qualified by experience or demonstrated competence in the subject of the case.

FURTHER AFFIANT SAYETH NOT

Clifford W. Horwitz

SUBSCRIBED AND SWORN TO before me this

_33_ day of _March_, _2019_

NOTARY PUBLIC
MEDICAL REPORT

OFFICIAL SEAL
LAUREL SAMANTHA PERPER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/12/22

March 29, 2019

I have concluded that David Walter has a reasonable and meritorious action against Kimberly

McKinnon, D.O., Nicholas Zoretic, D.O, and Northwestern Memorial Healthcare. Some of the

reasons for my opinion are as follows:

I have reviewed the medical records of David Walter as it regards his care and treatment by the

above-named Defendants.

J. Michael Millis, M.D.
Professor of Surgery
Vice Chair for Global Surgery
Director, Hepatobiliary Surgery
University of Chicago
5841 S. Maryland Ave
MC 5027
Chicago, IL 60637

Health Professional

Clifford W. Horwitz
Horwitz, Horwitz, and Associates, LTD.
25 E. Washington, Suite 900
Chicago, IL 60602
Office: (312) 372-8822
Email: clmail@horwitzlaw.com

FILED DATE: 3/29/2019 1:54 PM  2019L003401



THE UNIVERSITY OF
**CHICAGO**
MEDICINE

AT THE FOREFRONT OF MEDICINE

**Transplantation Institute**

J. Michael Millis, M.D., F.A.C.S.
*Professor of Surgery*
*Vice Chair for Global Surgery*
*Director, Hepatobiliary Surgery*
mmillis@surgery.bsd.uchicago.edu

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DAVID WALTER                             )
                                         )
                          Plaintiff      )
                                         )
                                         )
v.                                       )    NO.
                                         )
NICHOLAS ZORETIC, D.O.;                  )
KIMBERLY MCKINNON, D.O.; and             )
NORTHWESTERN MEMORIAL                    )
HEALTHCARE, d/b/a NORTHWESTERN           )
MEDICINE                                 )
                          Defendants.    )
                                         )

## <u>CONSULTANT'S REPORT</u>

1. I am a physician licensed to practice medicine. I am knowledgeable in the relevant issues involved in this particular action. I practice or have practiced within the last (6) years in the same areas of health care or medicine that are at issue in this particular action. I am qualified by experience and have demonstrated competence in the subject areas of this case. I am knowledgeable regarding the applicable standard of care as it relates to the issues involved in this case, namely, the diagnosis of lymphoma.

2. I have reviewed the records pertinent to the care and treatment rendered to David Walter at Northwestern Medicine Convenient Care Center – Bloomingdale, Northwestern Medicine Delnor Hospital – Geneva, Northwestern Medicine Dermatology – Naperville, Northwestern Medicine Central DuPage Hospital, Northwestern Medicine Primary Care, Northwestern Medicine Convenient Care, Northwestern Medicine Regional Medical Group, and Northwestern Medicine Physician Network.

3. Following said review, I am of the opinion that there is a reasonable and meritorious basis for the filing of a cause of action in this case against *Nicholas Zoretic, D.O.*, *Kimberly McKinnon, D.O.*, and *Northwestern Memorial Healthcare*. This opinion is, in part, based on the fact that during the medical care and treatment of the Plaintiff, *David Walter*, all of which falls under the umbrella of *Northwestern Memorial Healthcare* as principal, the Defendants, *Nicholas Zoretic D.O.*, and *Kimberly McKinnon*, D.O., deviated from the standard of care by:

FILED DATE: 3/29/2019 1:54 PM   2019L003401

a.) failing to properly and adequately diagnose and/or evaluate and/or timely diagnose and/or evaluate the Plaintiff's medical condition on or after 3/30/2015; or

b.) by failing to timely request consultation with other physicians skilled in other specialties of medicine in diagnosing and treating lymphoma; or

c.) by failing to properly and adequately investigate and/or conduct and/or timely investigate and/or conduct sufficient tests to determine the underlying cause and/or diagnosis of Plaintiff's physical complaints and/or manifestations on or after 3/30/2015; or

d.) by failing to properly and adequately diagnose and treat and/or timely diagnose and treat the Plaintiff, including but not limited to: signs and symptoms noted during office visits when they knew or should have known the Plaintiff's medical condition on or after *08/20/15* was consistent with lymphoma; or

e.) by failing to admit or refer or timely admit or refer the Plaintiff, *David Walter*, into a hospital or oncologist on or after 09/13/16; or

f.) by failing to order, render, and/or perform and/or timely order, render, and/or perform proper and adequate treatment, including but not limited to: biopsy, formal staging and chemotherapy, given the Plaintiff's medical condition, symptoms, and history, including but not limited to: biopsy, formal staging and chemotherapy, on or after *08/20/15*; by failing to administer and/or timely administer the proper and adequate treatment to the Plaintiff, including but not limited to biopsy, staging and chemotherapy , on or after *09/13/16*; or

g.) by failing to order, render, and/or perform and/or timely order, render, and/or perform necessary and required surgical procedures upon the Plaintiff, *David Walter*, including but not limited to biopsy, on or after *03/30/15* or

h.) by rendering care and treatment that necessitated the Plaintiff undergo numerous subsequent surgeries, diagnostic procedures, and associated delay in diagnostic procedures with denials by the insurance company.

The aforementioned breaches in the standard of care led to the Plaintiff's serious injuries, including but not limited to, a worsening of his medical condition, leading to substantial and permanent injury, including but not limited to *delay in diagnosis, treatment, emotional stress, increased probability of morbidity and mortality associated with advanced stage of his lymphoma*

4. The care in question falls under the umbrella of Defendant *Northwestern Memorial Healthcare*, as they appear to be the principal in a principal-agent relationship with the physicians named above.

J. Michael Millis, MD

30132

ATTORNEY CODE # 04771

STATE OF ILLINOIS          )
                                      ) SS:
COUNTY OF COOK            )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| DAVID WALTER | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) NO. |
| | ) |
| NICHOLAS ZORETIC, D.O.; | ) |
| KIMBERLY MCKINNON, D.O.; and | ) |
| NORTHWESTERN MEMORIAL | ) |
| HEALTHCARE, d/b/a NORTHWESTERN | ) |
| MEDICINE | ) |
| | ) |
| | ) |
| Defendants. | ) |

### SUPREME COURT RULE 222(b) AFFIDAVIT

1. The undersigned, Clifford W. Horwitz, does hereby state under oath and under penalty of perjury:

2. My name is Clifford W. Horwitz.

3. I represent the Plaintiff in the above-captioned case.

4. I have conducted an investigation into this case.

5. The Plaintiff is seeking damages in excess of $50,000.00.

6. FURTHER AFFIANT SAYETH NOT.

                                        Clifford W. Horwitz
HORWITZ, HORWITZ AND ASSOCIATES, LTD.
Attorneys at Law
25 E. Washington, Suite 900

FILED DATE: 3/29/2019 1:54 PM   2019L003401

FILED DATE: 3/29/2019 1:54 PM    2019L003401

Chicago, Illinois 60602
(312) 372-8822, fax (312) 372-1673

ATTORNEY CODE # 04771

30132

STATE OF ILLINOIS                    )
                                     ) SS:
COUNTY OF COOK                       )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DAVID WALTER                         )
                                     )
                         Plaintiff   )
                                     )
v.                                   )    NO.
                                     )
NICHOLAS ZORETIC, D.O.;              )
KIMBERLY MCKINNON, D.O.; and         )
NORTHWESTERN MEMORIAL                )
HEALTHCARE, d/b/a NORTHWESTERN       )
MEDICINE                             )
                                     )
                                     )
                         Defendants. )

### JURY DEMAND

The undersigned demands a jury trial.

Clifford W. Horwitz
**Horwitz, Horwitz, and Associates, LTD.**
25 E. Washington, Suite 900
Chicago, IL  60602
Office: (312) 372-8822
Email: clmail@horwitzlaw.com

FILED DATE: 3/29/2019 1:54 PM  2019L003401

| | **12-Person Jury** | |
|---|---|---|
| Appearance | | (12/30/15) CCL N530 |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

FILED
5/17/2019 2:07 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L003401

DAVID WALTER

                                        Plaintiff

                    v.

NICHOLAS ZORETIC, D.O., KIMBERLY McKINNON, D.O., et al.

                                        Defendant

No.  19 L 3401

5099414

Calendar:  R

## APPEARANCE

☑ GENERAL APPEARANCE        0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
                            0904 - APPEARANCE FILED - FEE WAIVED

☑ JURY DEMAND               1900 - APPEARANCE & JURY DEMAND - FEE PAID
                            1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:        ☐ Plaintiff     ☑ Defendant

NICHOLAS ZORETIC, D.O., and

NORTHWESTERN MEMORIAL HEALTHCARE d/b/a NORTHWESTERN MEDICINE
(Insert litigant's name.)

*Stetson F. Atwood*
Signature

☑ INITIAL COUNSEL OF RECORD        ☐ PRO SE
☐ ADDITIONAL APPEARANCE            ☐ SUBSTITUTE APPEARANCE

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.: 32878            ☐ Pro Se 99500

(Please complete the following contact information.)

Name: Stetson F. Atwood

Atty. for: Defs - Zoretic / NMHC d/b/a NM

Address: 140 South Dearborn Suite, Suite 800

City/State/Zip: Chicago, IL  60603

Telephone: (312) 422-9939

Primary Email: atwood@dbmslaw.com

Secondary Email: dus@dbmslaw.com

Tertiary Email: service@dbmslaw.com

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**
Page 1 of 1

EXHIBIT
F

190403

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

FILED
5/17/2019 2:07 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L003401

5099414

DAVID WALTER,

     Plaintiffs,

 v.

NICHOLAS ZORETIC, D.O.; KIMBERLY
McKINNON, D.O.; and NORTHWESTERN
MEMORIAL HEALTHCARE d/b/a
NORTHWESTERN MEDICINE,

     Defendants.

No. 19 L 3401

Judge Christopher E. Lawler

Motion Call R

**NOTICE OF FILING AND PROOF OF SERVICE**

TO: Clifford W. Horwitz (cliff@horwitzlaw.com)
   Horwitz, Horwitz and Associates, Ltd.
   25 East Washington, Suite 900
   Chicago, IL 60602

   I hereby certify that on May 17, 2019, I electronically filed Defendants' Appearance and Jury Demand with the Clerk of the Circuit Court of Cook County, Law Division, by using the eFileIL system.

   I further certify that on May 17, 2019, I electronically served this notice and the above-mentioned document either through the court electronic filing manager or an approved electronic filing service provider, if available. For all parties for which such service is not available, I served this notice and the above-mentioned document by email to the email addresses listed above.

   Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct.

          /s/Shelly M. Harders
          Shelly M. Harders

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
Stetson F. Atwood (atwood@dbmslaw.com)
Ashley E. Dus (dus@dbmslaw.com)
140 South Dearborn Street, Suite 800
Chicago, IL 60603
(312) 422-0900
service@dbmslaw.com

## U.S. District Court for the Northern District Of Illinois
## Attorney Appearance Form

Case Title: David Walter vs. Monsanto Company, et al.

Case Number: 1:19-cv-06482

An appearance is hereby filed by the undersigned as attorney for:

Defendant, Kimberly McKinnon, D.O.

Attorney name (type or print): Ruth V. Enright

Firm: Baker & Enright

Street address: 33 W. Jackson Blvd., 3rd Floor

City/State/Zip: Chicago, IL 60604

Bar ID Number: 6196143
(See item 3 in instructions)

Telephone Number: 312/ 663-9600

Email Address: enright@bakerandenright.com

| | | |
|---|---|---|
| Are you acting as lead counsel in this case? | ☑ Yes | ☐ No |
| Are you acting as local counsel in this case? | ☐ Yes | ☑ No |
| Are you a member of the court's trial bar? | ☑ Yes | ☐ No |
| If this case reaches trial, will you act as the trial attorney? | ☑ Yes | ☐ No |

If this is a criminal case, check your status.

☐ Retained Counsel

☐ Appointed Counsel
If appointed counsel, are you

☐ Federal Defender

☐ CJA Panel Attorney

In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by local rules 83.12 through 83.14. I declare under penalty of perjury that the foregoing is true and correct. Under 28 U.S.C.§1746, this statement under perjury has the same force and effect as a sworn statement made under oath.

Executed on October 4, 2019

Attorney signature: S/ Ruth V. Enright

(Use electronic signature if the appearance form is filed electronically.)

Revised 8/1/2015



**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | |
|---|---|
| DAVID WALTER, | |
| Plaintiff | Case No. 1:19-cv-06482 |
| v. | |
| NORTHWESTERN MEMORIAL HEALTHCARE; KIMBERLY MCKINNON; NICHOLAS ZORETIC; MONSANTO COMPANY; BAYER AG; | |
| Defendants. | |

---

## **AFFIDAVIT**

I, Wendi Weidner, being first duly sworn, hereby deposes and states as follows:

1. I conducted research in order to attempt to determine the residences and citizenship of the parties.

2. I found this based on Internet Research.

3. I obtained this information from the following websites: cyberdriveillinois.com; LexisNexis; and Illinois Department of Financial and Professional Regulation, attached hereto.

4. I conducted research through established websites.



**EXHIBIT**

*H*

5.  I am a professional researcher.  My C.V. is attached hereto.

The above facts are within my personal knowledge and I could, and would competently testify to the same if sworn as a witness.

FURTHER AFFIANT SAYETH NOT

_____
Wendi Weidner

SUBSCRIBED AND SWORN TO before me this

_16th_ day of _October, 2019_

_____
NOTARY PUBLIC

CARMEN FRANKLIN
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
February 03, 2020



Office of the Secretary of State Jesse White
CYBERDRIVEILLINOIS.COM

## Corporation/LLC Search/Certificate of Good Standing

Corporation File Detail Report

File
Number              52577403

Entity
Name                NORTHWESTERN MEMORIAL HEALTHCARE

Status
ACTIVE

**Entity Information**

Entity Type
CORPORATION

Type of Corp
NOT-FOR-PROFIT

Incorporation Date (Domestic)
Monday, 30 November 1981

State
ILLINOIS

Duration Date
PERPETUAL

**Agent Information**

Name
DANAE K PROUSIS

Address
211 E ONTARIO ST STE 1800
CHICAGO , IL 60611

Change Date
Wednesday, 24 May 2017

## Annual Report

Filing Date
00/00/0000

For Year
2019

## Assumed Name

ACTIVE
CDH-DELNOR HEALTH SYSTEM

ACTIVE
CADENCE HEALTH

## Old Corp Name

02/03/1987
THE NORTHWESTERN MEMORIAL GROUP

01/31/2001
NORTHWESTERN MEMORIAL CORPORATION

Return to Search

File Annual Report

Adopting Assumed Name

Change of Registered Agent and/or Registered Office

(One Certificate per Transaction)

This information was printed from www.cyberdriveillinois.com, the official website of the Illinois Secretary of State's Office.          Tue Oct 15 2019

 LexisNexis·

**Search:** Public Records : Locate a Person (Nationwide)
**Terms:** ssn(325-58-XXXX) first-name(David) last-name(Walter) state(ALL) radius(30)

| **No.** | **Full Name** | **Address/Phone** | **SSN** |
|---|---|---|---|
| 1. | DAVID, WALTER<br>DAVID, WALTER JR<br>WALTER, DAVID<br>WALTER, DAVID JR<br>WALTER, DAVID J<br>WALTER, DAVID J JR<br>WALTER, DAVID N<br>(Gender: Male)<br>(DOB: 11/1959)<br>(Age: 59)<br>(DOB: 01/1959)<br>(Age: 60)<br>(DOB: 1958)<br>(Age: 61) | 848 YELLOWSTONE ST<br>CAROL STREAM, IL 60188-1438<br>DUPAGE COUNTY<br>(08/2007-Current)<br>1129 WINDING GLEN DR<br>CAROL STREAM, IL 60188-6088<br>DUPAGE COUNTY<br>(07/2003-06/2016)<br>805 DEAN ST<br>WOODSTOCK, IL 60098-3819<br>MCHENRY COUNTY<br>(04/2002-12/2007)<br>379 TEE LN<br>CARPENTERSVILLE, IL 60110-2339<br>KANE COUNTY<br>(10/1995-07/2003)<br>664 KINGSBRIDGE DR<br>CAROL STREAM, IL 60188-4368<br>DUPAGE COUNTY<br>(04/1979-01/2003)<br>900 CS ST C 5 C 5<br>WHEATON, IL 60187<br>DUPAGE COUNTY<br>(11/1992-01/1999)<br>900 CRESCENT ST APT C5<br>WHEATON, IL 60187-5607<br>DUPAGE COUNTY<br>(10/1995-05/1996)<br>900 CRESCENT ST APT 5<br>WHEATON, IL 60187-5607<br>DUPAGE COUNTY<br>(09/1992-03/1996)<br>900 E CRESCENT C 5<br>WHEATON, IL 60187<br>DUPAGE COUNTY<br>(10/1995-10/1995)<br>900C CRESCENT ST APT 5<br>WHEATON, IL 60187-5673<br>DUPAGE COUNTY<br>(10/1992-04/1995)<br>900 E CIR APT 5<br>GLEN ELLYN, IL 60137<br>DUPAGE COUNTY<br>(07/1993-07/1993)<br>2064 ESTES AVE<br>DES PLAINES, IL 60018-4003<br>COOK COUNTY<br>(11/1987-12/1991)<br>RR 2 BOX<br>BRANDENBURG, KY 40108<br>MEADE COUNTY<br>(11/1990-12/1990)<br>1361 LAGUNA RD # 41<br>TUSTIN, CA 92680<br>(02/1985-02/1985)<br>3313 S MAIN ST APT<br>SANTA ANA, CA 92707-4406<br>ORANGE COUNTY<br>(07/1984-07/1984) | 325-58-XXXX<br>(IL:1973-1974)<br>¦ ¦ ¹ SSN linked to multiple people<br>LexID(sm):002643864127 |

| No. | Full Name | Address/Phone | SSN |
|-----|-----------|---------------|-----|

Key

A    High Risk Indicator. These symbols may prompt you to investigate further

|   Moderate Risk Indicator. These symbols may prompt you to investigate further

⚐    General Information Indicator. These symbols inform you that additional information is provided

✓    The most recent telephone listing as reported by the EDA source

| | |
|---|---|
| Search: | Public Records : Locate a Person (Nationwide) |
| Terms: | ssn(325-58-XXXX) first-name(David) last-name(Walter) state(ALL) radius(30) |
| Date/Time: | Wednesday, October 16, 2019 9:05 AM |
| Permissible Use: | **Your DPPA Permissible Use: Litigation** |
| | **Your GLBA Permissible Use: Legal Compliance** |

Copyright © 2019 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**End of Document**



Illinois Department of Financial and
Professional Regulation

# Lookup Detail View

**Contact**
Contact Information

| Name | City/State/Zip | DBA |
|------|----------------|-----|
| KIMBERLY MARIE MCKINNON DO | LA GRANGE PARK, IL 60526 | |

**License**
License Information

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|----------------|-------------|--------|----------------------|----------------|-----------------|------------------|
| 036129662 | LICENSED PHYSICIAN AND SURGEON | ACTIVE | 02/24/2012 | 05/02/2017 | 07/31/2020 | N |

**Other Licenses**
Other Licenses

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|----------------|-------------|--------|----------------------|----------------|-----------------|------------------|
| 125055998 | TEMPORARY MEDICAL PERMIT | EXPIRED | 05/12/2009 | 07/01/2009 | 06/30/2012 | N |
| 33*****31 | LICENSED PHYSICIAN CONTROLLED SUBSTANCE (Schedules II III IV V ) | ACTIVE | 02/24/2012 | 05/02/2017 | 07/31/2020 | N |

Generated on:  10/15/2019 8:27:11 AM



**Search:** Public Records : Locate a Person (Nationwide)
**Terms:** first-name(Kimberly) last-name(McKinnon) state(IL) radius(30)

| **No.** | **Full Name** | **Address/Phone** | **SSN** |
|---------|---------------|-------------------|---------|
| 3. | MCKINNON, KIMBERLY<br>MCKINNON, KIMBERLY M<br>MCKINNON, KIMBERLY MARIE<br>MCKINNON, KLNBERLY M<br>SETLAK, KIMBERLY M<br>(Gender: Female)<br>(DOB: 05/1982)<br>(Age: 37) | 8 SALT CREEK LN STE 301<br>HINSDALE, IL 60521-2903<br>DUPAGE COUNTY<br>(12/2017-Current)<br>424 N BRAINARD AVE<br>LA GRANGE PARK, IL 60526-1808<br>COOK COUNTY<br>(2013-09/2019)<br>5145 N CALIFORNIA AVE APT<br>CHICAGO, IL 60625-3661<br>COOK COUNTY<br>(07/2009-06/2019)<br>⎰ ⋅ General medical or surgical hospital<br>⎱ ⋅ Home Health Care Facility<br>245 S GARY AVE APT 100<br>BLOOMINGDALE, IL 60108-2200<br>DUPAGE COUNTY<br>(2010-12/2017)<br>899 S PLYMOUTH CT APT 1005<br>CHICAGO, IL 60605-2047<br>COOK COUNTY<br>(04/2012-04/2017)<br>3231 EUCLID AVE STE 202<br>BERWYN, IL 60402-3472<br>COOK COUNTY<br>(03/2014-12/2014)<br>⎰ ⋅ General medical or surgical hospital<br>899 S PLYMOUTH CT APT 100<br>CHICAGO, IL 60605-2058<br>COOK COUNTY<br>(05/2012-09/2014)<br>899 SPLYNOUTHCT 1005<br>CHICAGO, IL 60605<br>COOK COUNTY<br>(09/2012-09/2012)<br>2020 N LINCOLN PARK W APT 34C<br>CHICAGO, IL 60614-4780<br>COOK COUNTY<br>(05/2007-04/2012)<br>2708 HAWTHORNE LN<br>FLOSSMOOR, IL 60422-1514<br>COOK COUNTY<br>(04/2001-08/2007) | 360-70-XXXX<br>(IL:1982-1984)<br>LexID(sm):002302351471 |

Key

⚠  High Risk Indicator. These symbols may prompt you to investigate further

⏐⋅  Moderate Risk Indicator. These symbols may prompt you to investigate further

⚑  General Information Indicator. These symbols inform you that additional information is provided

✓  The most recent telephone listing as reported by the EDA source

**Search:** Public Records : Locate a Person (Nationwide)
**Terms:** first-name(Kimberly) last-name(McKinnon) state(IL) radius(30)

Date/Time:        Tuesday, October 15, 2019 9:24 AM
Permissible Use:  **Your DPPA Permissible Use: Litigation**
                  **Your GLBA Permissible Use: Legal Compliance**

Copyright © 2019 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**End of Document**



Illinois Department of Financial and
Professional Regulation

# Lookup Detail View

**Contact**
Contact Information

| Name | City/State/Zip | DBA |
|------|----------------|-----|
| NICHOLAS JOSEPH ZORETIC DO | ST CHARLES, IL 60175 | |

**License**
License Information

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|---|---|---|---|---|---|---|
| 036107388 | LICENSED PHYSICIAN AND SURGEON | ACTIVE | 07/05/2002 | 05/30/2017 | 07/31/2020 | N |

**Other Licenses**
Other Licenses

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|---|---|---|---|---|---|---|
| 125041446 | TEMPORARY MEDICAL PERMIT | EXPIRED | 07/01/2000 | 07/01/2000 | 06/30/2003 | N |
| 33*****15 | LICENSED PHYSICIAN CONTROLLED SUBSTANCE (Schedules II III IV V ) | ACTIVE | 07/23/2002 | 05/30/2017 | 07/31/2020 | N |

Generated on:  10/15/2019 8:28:01 AM



**Search:** Public Records : Locate a Person (Nationwide)
**Terms:** first-name(Nicholas) last-name(Zoretic) state(IL) radius(30)

| No. | Full Name | Address/Phone | SSN |
|-----|-----------|---------------|-----|
| 1. | DO ZORETIC, NICHOLAS JOSEPH<br>NICHOLAS, J ZORETIC<br>NICHOLAS, JOSEPH ZORETIC<br>ZARETIC, NICHOLAS J<br>ZOERTIC, NICHOLAS<br>ZONETIC, NICHOLAS J<br>ZORETIC, NICHOLAS<br>ZORETIC, NICHOLAS J<br>ZORETIC, NICHOLAS JOSEPH<br>ZORETIC, NICK J<br>(Gender: Male)<br>(DOB: 10/1973)<br>(Age: 46)<br>(DOB: 10/1973)<br>(Age: 46) | 39W177 LONG MEADOW LN<br>SAINT CHARLES, IL 60175-7947<br>KANE COUNTY<br>(2012-Current)<br>39W177 W177 LONG MEADOW LN<br>ST CHARLES, IL 60175<br>KANE COUNTY<br>(10/2013-Current)<br>245 S GARY AVE APT 100<br>BLOOMINGDALE, IL 60108-2200<br>DUPAGE COUNTY<br>(05/2005-08/2019)<br>135 N OAK ST<br>HINSDALE, IL 60521-3860<br>DUPAGE COUNTY<br>(04/2003-06/2019)<br>630-856-8900<br><br>BIZ<br>HINSDALE FAMILY MEDICINE CENTER<br>(Current Listing Name)<br>5N510 PRAIRIE SPRINGS DR D<br>SAINT CHARLES, IL 60175-6750<br>KANE COUNTY<br>(12/2003-02/2014)<br>5 N 510 PRAIRIE DR<br>ST CHARLES, IL 60175<br>KANE COUNTY<br>(05/2010-06/2010)<br>5 N 510 TRAIRIE SPRING DR<br>ST CHARLES, IL 60175<br>KANE COUNTY<br>(12/2003-03/2009)<br>5 510 TRAIRIE SPR DR<br>ST CHARLES, IL 60175<br>KANE COUNTY<br>(08/2004-08/2004)<br>25741 S HILLTOP RD<br>CRETE, IL 60417-4142<br>WILL COUNTY<br>(06/1992-07/2004)<br>511510 PRAIRIE SPRING DR<br>SAINT CHARLES, IL 60175<br>KANE COUNTY<br>(12/2003-12/2003)<br>5510 N PRAIRIE SPRING DR<br>SAINT CHARLES, IL 60175<br>KANE COUNTY<br>(12/2003-12/2003)<br>688 ASPEN DR<br>ROMEOVILLE, IL 60446-3982<br>WILL COUNTY<br>(04/1998-12/2003)<br>815-886-8984<br>Phone may be disconnected<br>135 S OAK ST<br>HINSDALE, IL 60521-4246<br>DUPAGE COUNTY<br>(01/2001-01/2001) | 320-78-XXXX<br>(IL:1987-1988)<br>LexID(sm):002805233098 |

| No. | Full Name | Address/Phone | SSN |
|-----|-----------|---------------|-----|
|     |           | 688 ASPEN DR | |
|     |           | ROMEOVL, IL 60446-3982 | |
|     |           | WILL COUNTY | |
|     |           | (01/2001-01/2001) | |
|     |           | 815-886-8984 | |
|     |           | ⊦⋅⊦ Phone may be disconnected | |
|     |           | 686 ASPEN DR | |
|     |           | ROMEOVILLE, IL 60446-3982 | |
|     |           | WILL COUNTY | |
|     |           | (1999-1999) | |

Key

Δ  High Risk Indicator. These symbols may prompt you to investigate further

⊦⋅⊦  Moderate Risk Indicator. These symbols may prompt you to investigate further

⚑  General Information Indicator. These symbols inform you that additional information is provided

✓  The most recent telephone listing as reported by the EDA source

| | |
|---|---|
| Search: | Public Records : Locate a Person (Nationwide) |
| Terms: | first-name(Nicholas) last-name(Zoretic) state(IL) radius(30) |
| Date/Time: | Tuesday, October 15, 2019 9:25 AM |
| Permissible Use: | **Your DPPA Permissible Use: Litigation** |
| | **Your GLBA Permissible Use: Legal Compliance** |

Copyright © 2019 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**End of Document**

# Wendi L. Weidner
18011 37th Avenue Ct. E, Tacoma WA 98446
253-847-1374
weidner@blueworldpartners.com

## EDUCATION

### *Post University, Waterbury Connecticut*
**B.A Interdisciplinary Studies -- Communications**               **2008 expected**
Completed 33 credits

### *Fryeburg Academy, Fryeburg Maine*
**Diploma – College Prep track**                                  **1996**

## EXPERIENCE

### *Horwitz, Horwitz & Associates, Chicago Illinois*
**Research Associate – contract position**                        **2005 - Present**

- Identify applicable documentation for case work by becoming familiar with the case and what/who was involved.

    o Utilize and research resources such as: codes and standards organizations (ASME, ANSI, ASHRAE, ASSE, NIST, BOCA, etc), college and university papers, trade journals, libraries, past testimony records, federal governmental agencies (OSHA, NIOSH, NTSB, CDC, NOAA, DOT, FDA, NCD, etc.) , city & municipal offices (for municipal codes, business licenses, court records, etc), manufacturer's literature (i.e. owners and operations manuals, promotional literature (ad copy, trade shows), press releases, etc.), depositions, personal conversations, newspapers, phone books, etc.

    o Procure applicable documentation for the particular case after identifying potential literature/documentation via above resources.

    o Read through documentation, highlighting, book-marking, and identifying applicable documentation areas for case work. Upload, file and store relevant information.

- Identify potential expert witnesses

    o Utilize resources such as: Research papers, CV's, interviews with applicable people for expert referrals.

    o Contact applicable experts, request information – review information and applicability to the subject matter.

    o Provide recommendation on appropriate witness based on best fit for subject at hand.

    o Highlight, up-load, and file expert witness documentation.

- Identify business particulars where necessary: Owners, number of employees, status of business license, etc.

    o Utilize various public record resources to gather needed information – municipal offices, labor union offices, phone books, advertising, and other sources in public domain as applicable.

    o Document and provide applicable information.

- Identify and procure sample products for testing.
  - o Research manufacturer, date of manufacture, model number, etc.
  - o Procure appropriate samples based on matching criteria for testing and have them shipped to appropriate location.
- Personnel
  - o Research and identify associates and contractors that are a fit for the organization as directed.
  - o Utilize the web, and recruiters. Upload and file applicable people for consideration.
- Keep detailed records of time and expenses.
  - o Manage on-going case load, charging time and expenses to the correct case.

### *Blue World Partners, Tacoma Washington*
### Partner, Primary research role                                   2004 - Present

- As an independent publisher's representative – identify potential clients for range of publications represented.
  - o Utilize various resources to identify potential clients – Web searches, similar publications, press releases, trade show literature, etc.
  - o Once company is identified, research correct contact person and their information using various methods – web research, phone calls, press releases, etc.
  - o Document and provide information to partner for follow up.
- Contact applicable individuals utilizing email, postal mail, and phone where applicable, soliciting advertising, sending promotional literature, and correspondence.
- Write orders, document communications.

### *Miller Automotive, Wolfeboro NH*
### Manager, rental car division                                   2001-2003

- Responsible for 3 retail rental operations.
  - o Daily customer interaction and meeting customer needs in areas such as: vehicle types, duration and logistics.
  - o Responsible for budget adherence
    - Maintenance schedules and costs
    - Replacement vehicle ordering and receipt
    - Vehicle recovery after an accident
  - o Increased revenue, with decreased fleet and associated costs
  - o Daily, weekly and monthly status reports to upper management.
- Had to become familiar with state and local laws governing rentals, including taxes, age limits, registration and license application
- Coordinate rental movement between operation locations based on demand.
- Coordinate pick up and drop off of customers where necessary

W. Weidner, CV, page 2 of 3

## *Visual Legacy Group, Conway NH*
### Consultant, Independent Research

2000-2001

- Primary duties were researching potential clients
  - o Created master list of prospective clients
  - o Utilized applicable resources to identify companies by size, type, key officers and contact names
  - o Using a specific criterion, made database list of only healthcare companies of Fortune 500 status, operating specific computer systems. Reviewed thousands of companies, diluting list to a few hundred potentials.
  - o Presented finished list to client with correct key contact names and information.

## *KGW Design, Fryeburg Maine*
### Partner

1997-2001

- Start up company offering web design, consultation, marketing and database development.
  - o Researched and contacted potential clients.
    - Utilized regional business listings and company types, getting key information and contacts.
  - o Assisted in internet marketing, specifically search engine placement and Meta Tag development.
    - Researched what similar companies were doing, made recommendations and built applications to optimize searches.
    - Required researching competing companies for size and customer base.
  - o Researched customized internet marketing strategies based on company type an objective.
    - Recommended various strategies for clients based on research and current search engine usage found in the research