JURY,MDL

# U.S. District Court
## District of South Carolina (Aiken)
## CIVIL DOCKET FOR CASE #: 1:19−cv−03133−MDL

Bodiford v. Monsanto Company et al
Assigned to: Unassigned − MDL
 Case in other court:  Allendale County, 2019−CP−03−00140
Cause: 28:1441 Notice of Removal−Personal Injury

Date Filed: 11/04/2019
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Randy Bodiford**
represented by
**Neil Edward Alger**
Peters Murdaugh Parker Eltzroth and Detrick PA
PO Box 457
101 Mulberry Street E
Hampton, SC 29924
803−943−2111
Fax: 803−943−3943
Email: nalger@pmped.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Hunter Alexander**
William H Alexander LLC
222 Main Street
Barnwell, SC 29812
803−571−0039
Fax: 803−526−7685
Email: wjl@whalawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**
represented by
**James Andrew Bradshaw**
Gallivan White and Boyd
55 Beattie Place
Suite 1200
Greenville, SC 29601
864−241−7003
Fax: 864−271−7502
Email: dbradshaw@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald K Wray , II**
Gallivan White and Boyd
55 Beattie Place
Suite 1200
Greenville, SC 29601
864−271−9580
Fax: 864−271−7502
Email: rwray@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

represented by

**Helena Agri–Enterprises LLC**
*doing business as*
Helena Chemical Co

**James Andrew Bradshaw**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald K Wray , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Browning Farms Inc**

represented by **Brett Harris Bayne**
McAngus Goudelock and Courie LLC
1320 Main Street
Tenth Floor
PO Box 12519
Columbia, SC 29211
803–227–2281
Email: brett.bayne@mgclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sterling G Davies**
McAngus Goudelock and Courie LLC
1320 Main Street
Tenth Floor
PO Box 12519
Columbia, SC 29211
803–779–2300
Email: sdavies@mgclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/04/2019 | 1 | NOTICE OF REMOVAL from Allendale County, case number 2019–CP–03–00140. (Filing fee $ 400 receipt number 0420–8759084), filed by Monsanto Company. (Attachments: # 1 Exhibit 1 State Court Documents, # 2 Exhibit 2 Helena's Consent to Removal, # 3 Exhibit 3 Browning Affidavit, # 4 Exhibit 4 August 8, 2019 EPA News Release)(asni, ) (Entered: 11/05/2019) |
| 11/04/2019 | 2 | Local Rule 26.01 Answers to Interrogatories by Monsanto Company.(asni, ) (Entered: 11/05/2019) |

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP030140

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF ALLENDALE | ) | CIVIL ACTION NO.:  2019-CP-03-_____ |
| | ) | |
| Randy Bodiford, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | *(Jury Trial Requested)* |
| MONSANTO COMPANY; HELENA | ) | |
| AGRI-ENTERPRISES, LLC d/b/a Helena | ) | |
| Chemical Co.; and BROWNING FARMS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW, Plaintiff Randy Bodiford, by and through his undersigned counsel, and for his causes of action against Defendants Monsanto Company, Helena Agri-Enterprises LLC and Browning Farms, Inc., alleging the following upon information and belief (including investigation made by and through Plaintiffs' counsel), except those allegations that pertain to Plaintiffs, which are based on personal knowledge:

## INTRODUCTION

Plaintiff brings this cause of action against Defendants pursuant to Rule Three of the South Carolina Rules of Civil Procedure.  All claims in this action are a direct and proximate result of Defendants' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, and/or sale of the products known as Roundup®. Plaintiff seeks recovery for damages as a result of developing a form of Non-Hodgkin's Lymphoma ("NHL"), which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of Roundup®,

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

and its active ingredient, glyphosate, and/or its surfactant(s) or other ingredients and the attendant effects of developing NHL. All of the claims involve common questions of law and fact and share legal and medical issues that arise out of the Plaintiff's exposure to Roundup®.

## PARTIES

1.      Plaintiff Randy Bodiford is over eighteen years of age, is a resident of the County of Barnwell, in the State of South Carolina.

2.      Defendant Monsanto Company is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri. Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup®, which contains the active ingredient glyphosate and the surfactant POEA, as well as adjuvants and other "inert" ingredients.

3.      Defendant Helena Agri-Enterprises LLC is a Delaware corporation with its headquarters and principal place of business in Collierville, Tennessee. Helena Agri-Enterprises LLC is located throughout the United States. Defendant has over 4,000 employees, over 450 branch locations, as well as division offices; including multiple division and branch offices in the State of South Carolina.

4.      Defendant Browning Farms Inc. is a South Carolina corporation with its headquarters and principle place of business in Barnwell, South Carolina. Defendant is in the primary business of growing and selling row crops.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter as Plaintiff's purchase of and exposure to the subject Roundup® products took place in Allendale County, South Carolina.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

6.    Defendant Monsanto Company ("Monsanto") maintains sufficient contacts with the State of South Carolina that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

7.    Defendant Helena Agri-Enterprises LLC owns, operates, and maintains Helena Chemical, a retail location for the sale of Roundup® in the City of Fairfax, which is located in Allendale County, South Carolina.   Defendant actively sells Monsanto's Roundup® product in its stores.

8.    Defendant Browning Farms Inc. operates and maintains its farming operations in Allendale and Barnwell Counties, in South Carolina.   Defendant Browning Farms employed Plaintiff to apply Roundup®, amongst other tasks, for its farming operations that took place in Allendale and Barnwell Counties.

9.    Venue is proper within this Court because the purchase of and exposure to Roundup® complained of herein took place in Allendale County, South Carolina.

## FACTS

10.    Glyphosate is a broad-spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world.

11.    Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions, and fruit, where it interferes with the plant's ability to form aromatic amino acids necessary for protein synthesis. Treated plants generally die within two to three days. Because plants absorb glyphosate, it cannot be completely removed by washing or peeling produce or by milling, baking or brewing grains.

12.    For nearly forty years, farms across the world have used Roundup®  and glyphosate-containing products without knowledge of the dangers its use poses. That is because when

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

Monsanto first introduced Roundup®, it touted glyphosate as a technological breakthrough: it could kill almost every weed without causing harm either to people or to the environment.

13.     History has shown that not to be true. According to the World Health Organization, the main chemical ingredient of Roundup® - glyphosate – is a probable cause of cancer. Monsanto assured the public that Roundup® was harmless.

14.     In order to prove this, Monsanto has championed falsified data and has attacked legitimate studies that revealed Roundup®'s dangers.

15.     Monsanto has led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup® is safe.

16.     The herbicidal properties of glyphosate were discovered by Monsanto in 1970 through chemist John Franz. The first glyphosate-based herbicide was introduced to the market in the mid-1970s under the brand name Roundup®. Monsanto marketed it as a "safe" general purpose herbicide for widespread commercial and consumer use. It still markets it as safe today.

17.     In addition to the active ingredient glyphosate, Roundup® formulations also contain adjuvants and other chemicals, such as the POEA, which are considered "inert" and therefore protected as "trade secrets" in manufacturing. Growing evidence suggests that these adjuvants and additional components of Roundup® formulations are not, in fact, inert and are toxic in their own right.

18.     The manufacture, formulation and distribution of herbicides such as Roundup®, are regulated under the FIFRA, 7 U.S.C. 136 et seq. FIFRA requires that all pesticides be registered with the EPA prior to their distribution, sale or use except as described by the FIFRA.

19.     Because pesticides are toxic to plants, animals and humans, at least to some degree, the EPA requires as part of the registration process, among other things, a variety of tests to evaluate

6

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

the potential exposure to pesticides, toxicity to people and other potential non-target organisms and other adverse effects on the environment. Registration by the EPA, however, is not an assurance or finding of safety.

20.     Based on early studies showing that glyphosate could cause cancer in lab animals, the EPA originally classified glyphosate as possibly carcinogenic to humans in 1985.

21.     After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to evidence of non-carcinogenicity in humans in 1991. In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer: "It should be emphasized, however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances.

22.     On two occasions, the EPA found that the labs hired by Monsanto to test the toxicity of Roundup® products for registration purposes committed fraud.

23.     In the first instance, Monsanto hired Industrial Bio-Test Laboratories (IBT) to perform and evaluate pesticide toxicology studies relating to Roundup®. IBT performed about 30 tests on glyphosate and glyphosate-containing products, including nine of the 15 residue studies needed to register Roundup®.

24.     In 1976, the FDA performed an inspection of IBT that revealed discrepancies between the raw data and the final report relating to the toxicological impacts of glyphosate.

25.     The EPA subsequently audited IBT; it too found the toxicology studies conducted for the Roundup® herbicide to be invalid. An EPA reviewer stated, after finding "routine falsification of data" at IBT, that it was "hard to believe the scientific integrity of the studies when they said they took specimens of the uterus from male rabbits."

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

26.     Three top executives of IBT were convicted of fraud in 1983.

27.     In the second incident of data falsification, Monsanto hired Craven Labs in 1991 to perform pesticide and herbicide studies including for Roundup®. In that same year, the owner of Craven Labs and three of its employees were indicted, and later convicted, of fraudulent laboratory practices in the testing of pesticides and herbicides.

28.     Despite the falsity of the tests that underlie its registration, within a few years of its launch, Monsanto was marketing Roundup® in 115 countries.

29.     The success of Roundup® was key to Monsanto's continued reputation and dominance in the marketplace. Largely due to the success of Roundup® sales, Monsanto's agriculture division was outperforming its chemicals division's operating income, and that gap increased yearly. But with its patent for glyphosate expiring in the United States in the year 2000, Monsanto needed a strategy to maintain its Roundup® market dominance and to ward off impending competition.

30.     In response, Monsanto began the development and sale of genetically engineered Roundup Ready® seeds in 1996. Since Roundup Ready® crops are resistant to glyphosate, farmers can spray Roundup® onto their fields during the growing season without harming the crop.

31.     This allowed Monsanto to expand its market for Roundup even further, by 2000, Monsanto's biotechnology seeds were planted on more than 80 million acres worldwide and nearly 70 percent of American soybeans were planted from Roundup Ready® seeds. It also secured Monsanto's dominant share of the glyphosate/Roundup® market thought a marketing strategy that coupled proprietary Roundup Ready® seeds with continued sales of its Roundup® herbicide.

32.     Through a three-pronged strategy of increasing production, decreasing prices, and by coupling with Roundup Ready® seeds, Roundup® became Monsanto's most profitable product.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

In 2000, it accounted for $2.8 billion in sales, outselling other herbicides by a margin of five to one. Today, glyphosate remains one of the world's largest herbicides by sales volume.

33.     In 1996, the New York Attorney General filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup® products. Some of the comments upon which the suit was based included: "safer than table salt", "practically non-toxic", "environmentally friendly", "stays where you apply it", "safety margin is much greater than required.", "you can feel good about using herbicides by Monsanto", and "can be used where kids and pets play".

34.     On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York Attorney General in which Monsanto agreed, among other things, to stop publishing advertisements in New York that represent directly or by implication that the product was safe, non-toxic, harmless and risk-free.

35.     Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and believe, it still has not done so today.

36.     In 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup®. The French court affirmed an earlier judgment that Monsanto had falsely advertised its herbicide Roundup® as biodegradable and that it left the soil clean.

37.     In addition to the toxicity of the active ingredient glyphosate several studies support the theory that the glyphosate-based formulation in Roundup® products is more dangerous and toxic than glyphosate alone. Indeed, as early as 1991, available evidence demonstrated that glyphosate formulations were significantly more toxic than glyphosate alone.

38.     Results of studies conducted in 2002 and 2004 by Julie Marc, and studies by Francisco Pexoto, Benachour, and Seralini all confirmed that the adjuvants present in Roundup® are not in fact inert and that Roundup® is potentially far more toxic than its active ingredient glyphosate

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

alone. Results of these studies were at all times available to Defendants. Defendants thus knew or should have known that Roundup® is more toxic than glyphosate alone and that safety studies of Roundup®, Roundup®'s adjuvants and "inert" ingredients and/or the surfactant POEA were necessary to protect Plaintiff from Roundup®.

39.     The countries of Argentina, Australia, Brazil, Canada, Czech Republic, Denmark, Germany, France, Belgium, Bermuda, Colombia, Netherlands, Sri Lanka, El Salvador, Saudi Arabia, Kuwait, Qatar, Bahrain, Oman, United Arab Emirates, India, Italy, Luxembourg, Portugal, Slovenia and Spain have instituted restricts or complete bans on the sale of Roundup® and other glyphosate-containing herbicides.   Many other countries throughout the world are currently investigating and evaluating restrictions on glyphosate products in the near future.

40.     Plaintiff is a farm worker who used and was exposed to Roundup® and Defendants' glyphosate-based products on a regular basis from 1982 to 2015.

41.     Plaintiff was an employee for Defendant Browning Farms.

42.     During Plaintiff's time as an employee for Defendant Browning Farms, Plaintiff was instructed to purchase and use Roundup® on Defendant's crop throughout the year.

43.     Defendants Monsanto and Helena Agri-Enterprises LLC provided Plaintiff with instructions on the usage, handling, mixing, application, and spreading of Roundup® and in doing so provided Plaintiff assurances of the safety of their glyphosate-based products.

44.     Defendants Monsanto and Helena Agri-Enterprises LLC never provided any warning that their glyphosate-based products purchased by Plaintiff were injurious to Plaintiff's health; did not recommend safety gear; did not provide nor sell to Plaintiff protective gear; and did not provide, recommend, or sell to Plaintiff applicators, sprayers, or other equipment which would have provided less exposure to Plaintiff to glyphosate.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP030140

45.     Plaintiff did not wear any protective gear while mixing or applying Roundup® and used the products in the manner recommended by the Defendants.  Plaintiff was not instructed by any Defendants to wear protective gear while mixing or applying Roundup®.

46.     In November 2015, Plaintiff was diagnosed with Non-Hodgkin Lymphoma.

47.     During the entire time that Plaintiff was exposed to Roundup® he did not know that exposure was injurious to his health or the health of others.

48.     Plaintiff had no way of knowing about the risk of serious illness associated with the use of and/or exposure to Roundup® and glyphosate until well after IARC released its formal assessment of glyphosate in July 2015. This is the quintessential case for tolling.

49.     Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to Roundup® and glyphosate is injurious to human health.

50.     Plaintiff did not discover, and did not know of facts that would cause a reasonable person to suspect the risks associated with the use of and/or exposure to Roundup® and glyphosate; nor would a reasonable and diligent investigation by him have disclosed that Roundup® and glyphosate would cause his illness.

51.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

52.     All applicable statutes of limitations have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

53.     Instead of disclosing critical safety information about Roundup® and glyphosate, Defendants Monsanto and Helena Agri-Enterprises LLC have consistently and falsely represented the safety of its Roundup® products.

54.     Defendants Monsanto and Helena Agri-Enterprises LLC were under a continuous duty to disclose to consumers, users and other persons coming into contact with its products, including Plaintiff, accurate safety information concerning its products and the risks associated with the use of and/or exposure to Roundup® and glyphosate.

55.     Instead, Defendants Monsanto and Helena Agri-Enterprises LLC knowingly, affirmatively, and actively concealed safety information concerning Roundup® and glyphosate and the serious risks associated with the use of and/or exposure to its products.

56.     Based on the foregoing, Plaintiff did not possess, and was intentionally deprived by the Defendants, of the common knowledge and experience that would allow a person exercising reasonable diligence to determine that the Defendants have injured a right and interest of the Plaintiff. Therefore, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## COUNT I
## STRICT LIABILITY

57.     Plaintiff adopts paragraphs 1-56 of this Complaint as if fully set forth herein.

58.     Plaintiff brings this product liability claim against Defendants Monsanto and Helena Agri-Enterprises LLC.

59.     At all times relevant, Defendants Monsanto and Helena Agri-Enterprises LLC engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing and promoting Roundup® and their glyphosate-based products, which are defective and unreasonably dangerous to consumers and users and other persons coming into contact with them, including the

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

Plaintiff, thereby placing their Roundup® products in the stream of commerce. These actions were under the ultimate control and supervision of Defendant Monsanto.

60.     Defendant Monsanto designed, researched, developed, formulated, manufactured, produced, tested, assembled, mixed, labeled, sold, promoted, marketed, advertised, and distributed the Roundup® products used by Plaintiff and/or to which Plaintiff was exposed, as described above.

61.     Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® and glyphosate-based products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and in particular, the Plaintiff.

62.     Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in South Carolina and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

63.     Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold and marketed by Defendants were defective in design and formulation in that when they left the hands of the Defendants' manufacturers and/or suppliers they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

64.     Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products were researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold and marketed by Defendants.

65.     Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products were defective in that when they left the hands of the Defendants manufacturers and/or suppliers, the foreseeable risks associated with these products' reasonably foreseeable uses exceeded the alleged benefits associated with their design and formulation.

66.     Therefore, at all relevant times, Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in one or more of the following ways:

> a. When placed in the stream of commerce, Defendant Monsanto's Roundup® products were defective in design and formulation and consequently dangerous to an extent beyond that which an ordinary consumer would contemplate;
>
> b. When placed in the stream of commerce, Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.
>
> c. When placed in the stream of commerce, Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

    d. Defendants did not sufficiently test, investigate or study the Roundup® and glyphosate-based products.

    e. Exposure to Roundup® and glyphosate-containing products presents a risk of harmful side effects that outweighs any potential utility stemming from the use of the herbicide.

    f. Defendants knew or should have known at the time of marketing, selling, distributing, supplying, and promoting of their Roundup® and glyphosate-containing products that exposure to Roundup® and glyphosate-containing products, could result in cancer and other severe illnesses and injuries.

    g. Defendants did not conduct adequate post-marketing surveillance of their Roundup® and glyphosate-based products.

    h. Defendants could have employed safer alternative designs and formulations.

67.    Plaintiff used and/or was exposed to the use of Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

68.    Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® before or at the time of exposure.

69.    The harm caused by Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products far outweighed their benefit, rendering Defendants' products dangerous to an extent beyond that which an ordinary consumer would contemplate.

70.    Defendants' Roundup® products were and are more dangerous than alternative products and Defendant Monsanto could have designed their Roundup® products to make them less dangerous.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP030140

71.   Indeed, at the time that Defendant Monsanto designed its Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

72.   At the time Roundup® and other glyphosate-containing products left Defendants Monsanto and Helena Agri-Enterprises LLC's control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' herbicides.

73.   Defendant Monsanto's defective design of their Roundup products amounts to willful, wanton and/or reckless conduct by Defendants.

74.   Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Defendants are liable to Plaintiff.

75.   The defects in Defendants' products were substantial and contributing factors in causing Plaintiff's grave injuries.

76.   But for Defendants' misconduct and omissions, Plaintiff would not have sustained his injuries.

77.   As a direct and proximate result of Defendants placing their defective Roundup® products into the stream of commerce, Plaintiff has suffered and continues to suffer grave injuries, and has endured pain and discomfort, financial hardship, emotional distress, worry, anxiety, and stress.

78.   Plaintiff will continue to incur these damages in the future.

## COUNT II
## FAILURE TO WARN

79.   Plaintiff adopts paragraphs 1-78 of this Complaint as if fully set forth herein.

80.   Plaintiff brings this products liability claim against all Defendants for failure to warn.

81.   At all times relevant to this litigation, Defendants Monsanto and Helena Agri-Enterprises LLC engaged in the business for testing, developing, designing, manufacturing, marketing, selling,

distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of the active ingredient glyphosate.

82.     These actions were under the ultimate control and supervision of the Defendants.

83.     Defendants Monsanto and Helena Agri-Enterprises LLC researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Roundup® and glyphosate-containing products, and in their course, directly advertised or marketed the products to consumers and end users, including Plaintiff.

84.     Defendants Monsanto and Helena Agri-Enterprises LLC therefore had a duty to warn of the risks associated with the reasonably foreseeable uses (and misuses) of Roundup® and glyphosate-containing products.

85.     Defendant Browning Farms knew or should have known the of the risks associated with the reasonably foreseeable uses (and misuses) of Roundup® and glyphosate-containing products and had a duty to warn Plaintiff, who they instructed to use the product, of those risks.

86.     At all times relevant to this litigation, Defendants Monsanto and Helena Agri-Enterprises LLC had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that their Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks.

87.     Defendants Monsanto and Helena Agri-Enterprises LLC had a continuing duty to warn Plaintiff of the dangers associated with Roundup® product use and exposure.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

88. Defendants Monsanto and Helena Agri-Enterprises LLC, as manufacturer, seller, or distributor of chemical herbicides, are held to the knowledge of an expert in the field.

89. At the time of manufacture, Defendant Monsanto could have provided warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because Defendant knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to these products.

90. At all times relevant to this litigation, Defendants Monsanto and Helena Agri-Enterprises LLC failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their Roundup® products and to those who would foreseeably use or be harmed by Defendants' herbicides, including Plaintiff.

91. Despite the fact that Defendants knew or should have known that Roundup® and glyphosate-containing products posed a grave risk of harm, Defendants failed to warn of the dangerous risks associated with their use and exposure.

92. The dangerous propensities of Defendants Monsanto and Helena Agri-Enterprises LLC products and the carcinogenic characteristics of glyphosate, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time it distributed, supplied, or sold the product, and not known to end users and consumers, such as Plaintiff.

93. Defendants Monsanto and Helena Agri-Enterprises LLC knew or should have known that its Roundup® products created significant risks of seriously bodily harm to consumers, as alleged herein, and Defendants failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to these products.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

94.     Defendants Monsanto and Helena Agri-Enterprises LLC have wrongfully concealed information concerning the dangerous nature of Roundup® products, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

95.     At all times relevant to this litigation, Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

96.     At all times relevant to this litigation, Plaintiff used and/or was exposed to the use of Defendants Monsanto and Helena Agri-Enterprises LLC's Roundup® products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

97.     Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of Plaintiff's exposure. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendants.

98.     Defendants Monsanto and Helena Agri-Enterprises LLC knew or should have known that the minimal warnings disseminated with its Roundup® products were inadequate, but it failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonable foreseeable uses.

99.     The information that Defendants Monsanto and Helena Agri-Enterprises LLC did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled users such as Plaintiff to utilize the products safely and with adequate protection.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

100.    Instead, Defendants Monsanto and Helena Agri-Enterprises LLC disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion; any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

101.    To this day, Defendants Monsanto and Helena Agri-Enterprises LLC have failed to adequately and accurately warn of the true risks of Plaintiff's injuries associated with the use of and exposure to Roundup® and glyphosate-containing products.

102.    As a result of their inadequate warnings, Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® and glyphosate-containing products were defective and unreasonably dangerous when they left the possession and/or control of Defendants, were distributed by Defendants, and used by Plaintiff.

103.    Defendants Monsanto and Helena Agri-Enterprises LLC are liable to Plaintiff for injuries caused by its failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of its Roundup® and glyphosate-containing products and the risks associated with the use of or exposure to Roundup® and glyphosate.

104.    The defects in Defendants Monsanto and Helena Agri-Enterprises LLC Roundup® and glyphosate-containing products were substantial and contributing factors in causing Plaintiff's injuries.

105.   But for Defendants Monsanto and Helena Agri-Enterprises LLC misconduct and omissions, Plaintiff would not have sustained his injuries.

106.   Had Defendants Monsanto and Helena Agri-Enterprises LLC provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with its Roundup® and glyphosate-containing products, Plaintiff could have avoided the risk of developing injuries as alleged herein and could have obtained alternative herbicides.

107.   As a direct and proximate result of Defendants Monsanto and Helena Agri-Enterprises LLC placing its defective Roundup® products into the stream of commerce, Plaintiff has suffered and continues to suffer severe injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment.

108.   Plaintiff will continue to incur these expenses in the future.

## COUNT III
## NEGLIGENCE

109.   Plaintiff adopts paragraphs 1-108 of this Complaint as if fully set forth herein.

110.   Plaintiff brings this products liability claim against all Defendants for negligence.

111.   Defendants Monsanto and Helena Agri-Enterprises LLC, directly or indirectly, caused their Roundup® and glyphosate-containing products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.

112.   Defendant Browning Farms, having existed for more than forty years in the agriculture industry should have been more astutely aware of the chemical impacts associated with the general usage of herbicides and other agri-chemicals, particularly Roundup®.

113.   At all times relevant to this litigation, Defendants Monsanto and Helena Agri-Enterprises LLC had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of its Roundup® products,

21

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP030140

including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers, users, and other persons coming into contact with the product.

114.    At all times relevant to this litigation, Defendants Monsanto and Helena Agri-Enterprises LLC's had a duty to exercise reasonable care in the marketing, advertisement, and sale of their Roundup® products.

115.    Defendants Monsanto and Helena Agri-Enterprises LLC's duty of care owed to consumers and the general public included;

> a.  Providing accurate, true, and correct information concerning the risks of using Roundup® and glyphosate-containing products;
>
> b.  Providing appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup® and glyphosate-containing products.

116.    At all times relevant to this litigation, Defendants Monsanto and Helena Agri-Enterprises LLC knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and glyphosate-containing products.

117.    Accordingly, at all times relevant to this litigation, all Defendants knew or, in the exercise of reasonable care, should have known that use of or exposure to Roundup® products could cause Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

118.    All Defendants knew or, in the exercise of reasonable care, should have known that Roundup® and glyphosate-containing products are more toxic than glyphosate alone and that safety studies on Roundup®, Roundup®'s adjuvants, and "inert" ingredients, and/or the surfactant POEA were necessary to protect Plaintiff from Roundup®.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

119.    All Defendants knew or, in the exercise of reasonable care, Defendants Monsanto and Helena Agri-Enterprises LLC should have known that tests limited to Roundup®'s active ingredient glyphosate were insufficient to prove the safety of Roundup®.

120.    All Defendants also knew, or in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with the use of and/or exposure to Roundup® and glyphosate-containing products.

121.    Defendants Monsanto and Helena Agri-Enterprises LLC breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Defendants manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonable dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

122.    Defendants Monsanto and Helena Agri-Enterprises LLC failed to appropriately and adequately test Roundup®, Roundup®'s adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Plaintiff from Roundup®.

123.    Despite its ability and means to investigate, study, and test its products and to provide adequate warnings, Defendants Monsanto and Helena Agri-Enterprises LLC have failed to do so.

124.    Defendants Monsanto and Helena Agri-Enterprises LLC have wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

125.    Defendants Monsanto and Helena Agri-Enterprises LLC negligence included:

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

a.  Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing their Roundup® products without thorough and adequate pre- and post-market testing;

b.  Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to these products;

c.  Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture, horticulture, and at-home use;

d.  Failing to undertake sufficient studies and conduct necessary tests to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup® and glyphosate-containing products and the propensity of these ingredients to render Roundup® toxic, increase the toxicity of Roundup®, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup®, and whether or not "inert" ingredients and/or adjuvants were safe for use;

e.  Failing to use reasonable and prudent care in the design, research, manufacture, formulation, and development of Roundup® and glyphosate-containing products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

f.  Failing to design and manufacture Roundup® so as to ensure they were at least as safe and effective as other herbicides on the market;

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

g.  To provide adequate instructions, guidelines, and safety precautions to those persons who Defendants could reasonably foresee would use and/or be exposed to their Roundup® products;

h.  Failing to disclose to Plaintiff, users, consumers, and the general public that the use of and exposure to Roundup® and glyphosate-containing products presented severe risks of cancer and other grave illnesses;

i.  Failing to warn Plaintiff, users, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other users or consumers;

j.  Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

k.  Representing that Defendants' Roundup® products were safe for their intended use when, in fact, Defendants knew or should have known that the products were not safe for their intended use;

l.  Declining to make or propose any changes to Defendants' products' labeling or other promotional material that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

m.  Advertising, marketing, and recommending the use of Roundup® and glyphosate-containing products, while concealing and failing to disclose or warn the dangers known by Defendants to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

n. Continuing to disseminate information to its consumers, which indicate or imply that Defendants' Roundup® and glyphosate-containing products are not unsafe for use in the agricultural, horticultural industries, and/or home use; and

o. Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

126. Defendants Monsanto and Helena Agri-Enterprises LLC knew and/or should have known that it was foreseeable that consumers and/or users, such as Plaintiff, would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup® and glyphosate-containing products.

127. Defendant Browning Farms knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and glyphosate-containing products.

128. Defendant Browning Farms, in the exercise of reasonable care, should have advised or warned Plaintiff that his purchase and use of Roundup® could cause injury to his health.

129. Defendant Browning Farms, in the exercise of reasonable care, should have ensured that Plaintiff received all proper and necessary protective equipment during his use of Roundup® as Plaintiff was instructed to use.

130. Defendant Browning Farms, in the exercise of reasonable care, should have conducted a thorough and diligent search for alternative chemicals for Plaintiff to use as to not risk serious injury to Plaintiff's health.

131. Defendant Browning Farms directly placed Plaintiff in danger by requiring him to purchase Defendants Monsanto and Helena Agri-Enterprises LLC's Roundup® product for use in their business.

132.   Plaintiff did not know the nature and extent of the injuries that could result from the intended use or and/or exposure to Roundup® or glyphosate.

133.   Defendants' negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer, as described herein.

134.   Defendants' conduct, as described above, was reckless. Defendants regularly risk the lives of consumers and users of their products, including Plaintiff, with full knowledge of the dangers of their products.

135.   Defendants Monsanto and Helena Agri-Enterprises LLC made conscious decisions not to redesign, relabel, warn, or inform the unsuspecting public, including Plaintiff. Defendants' reckless conduct therefore warrants an award of punitive damages.

136.   As a proximate result of Defendants' wrongful acts and omissions in placing defective Roundup® and glyphosate-containing products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, and instructing Plaintiff to use the product as part of his employment, Plaintiff has suffered and continues to suffer severe and permanent physical and emotional injuries.

137.   Plaintiff has endured pain and suffering, has suffered economic losses (including significant expenses for medical care and treatment) and will continue to incur these expenses in the future.

## COUNT V
## BREACH OF EXPRESS WARRANTY

138.   Plaintiff adopts paragraphs 1-137 of this Complaint as if fully set forth herein.

139.   Plaintiff brings this product liability claim against Defendants Monsanto and Helena Agri-Enterprises LLC.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

140.     Roundup® which was designed, tested, manufactured, distributed, promoted and sold by Defendants Monsanto and Helena Agri-Enterprises LLC, was expected to, and did, reach Plaintiff without any substantial change in its condition.

141.     Defendants Monsanto and Helena Agri-Enterprises LLC, through their advertising and promotional materials, expressly warranted that Roundup® and their other glyphosate-containing products were safe for their intended use and were not unreasonably dangerous for their intended purpose.

142.     Defendants Monsanto and Helena Agri-Enterprises LLC breached their express warranties in that Roundup® and other glyphosate-containing products are not safe for their intended use in light of the unreasonably high risk of cancer associated with their use, including the risk of NHL.

143.     Plaintiff reasonably relied, to his detriment, on Defendants Monsanto and Helena Agri-Enterprises LLC express warranties.

144.     As a proximate result of Defendants Monsanto and Helena Agri-Enterprises LLC wrongful acts and omissions in placing its defective Roundup® and glyphosate-containing products into the stream of commerce, Plaintiff has suffered and continues to suffer severe and permanent physical and emotional injuries.

145.     Plaintiff has endured pain and suffering, has suffered economical losses (including significant expenses for medical care and treatment) and will continue to incur these expenses in the future.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY**

146.     Plaintiff adopts paragraphs 1-145 of this Complaint as if fully set forth herein.

147.     Plaintiff brings this product liability claim against Defendants Monsanto and Helena Agri-Enterprises LLC

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

148.   Roundup® which was designed, tested, manufactured, distributed, promoted and sold by Defendants Monsanto and Helena Agri-Enterprises LLC, was expected to, and did, reach Plaintiff without any substantial change in condition.

149.   At the time Defendants Monsanto and Helena Agri-Enterprises LLC manufactured, marketed, sold, and distributed Roundup®, Defendants Monsanto and Helena Agri-Enterprises LLC knew of the use for which Roundup® was intended and impliedly warranted, through their advertising and promotional materials, that Roundup® was of merchantable quality, fitness, and safe for the use for which it was intended.

150.   Plaintiff reasonably relied upon the skill and judgment of Defendants Monsanto and Helena Agri-Enterprises LLC as to whether Roundup® was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

151.   Contrary to the implied warranty, Defendant Monsanto's product Roundup® was not of merchantable quality of safe for its intended use because it was unreasonably dangerous as described herein.

152.   As a proximate result of Defendants Monsanto and Helena Agri-Enterprises LLC's wrongful acts and omissions in placing its defective Roundup® products into the stream of commerce, Plaintiff has suffered and continues to suffer severe and permanent physical and emotional injuries.

153.   Plaintiff has endured pain and suffering, has suffered economic loses (including significant expenses for medical care and treatment) and will continue to incur these expenses in the future.

## COUNT VII
## FRAUD/NEGLIGENT MISREPRESENTATION

154.   Plaintiff adopts paragraphs 1-153 of this Complaint as if fully set forth herein.

155.   Plaintiff brings this product liability claim against Defendants Monsanto and Helena Agri-Enterprises LLC.

156.   Defendants Monsanto and Helena Agri-Enterprises LLC had a duty to disclose material information about serious health effects to consumers such as Plaintiff.

157.   Defendants Monsanto and Helena Agri-Enterprises LLC intentionally failed to disclose this information for the purpose of inducing consumers, including Plaintiff, to purchase Defendants Monsanto and Helena Agri-Enterprises LLC dangerous products.

158.   Defendants Monsanto and Helena Agri-Enterprises LLC advertisement regarding Roundup® and glyphosate-containing products made material misrepresentations to the effect that these products are safe, which misrepresentations Defendants Monsanto and Helena Agri-Enterprises LLC knew to be false, for the purpose of fraudulently including consumers, such as Plaintiff to purchase said product.

159.   Defendants Monsanto and Helena Agri-Enterprises LLC further misrepresented that its products were just as safe, and just as effective or more effective, than other weed control products on the market.

160.   Defendants Monsanto and Helena Agri-Enterprises LLC representations regarding the character of quality of Roundup® and glyphosate-containing products were untrue. In addition, Defendants Monsanto and Helena Agri-Enterprises LLC fraudulently suppressed material information regarding the safety of Roundup® and glyphosate-containing products, including the dangers known by Defendants Monsanto and Helena Agri-Enterprises LLC to be associated with or caused by the use of or exposure to Roundup® and glyphosate.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

161.    Defendants Monsanto and Helena Agri-Enterprises LLC had actual knowledge based on the results of trials, tests, and studies of exposure to glyphosate, of the risk of serious harm associated with human use of and exposure to Roundup®.

162.    Defendants Monsanto and Helena Agri-Enterprises LLC negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions, and advertisements and instead labeled, promoted, and advertised its products as safe and effective in order to avoid losses and sustain profits in its sales to consumer.

163.    In supplying the false information, Defendants Monsanto and Helena Agri-Enterprises LLC failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff.

164.    Plaintiff reasonably relied to his detriment upon Defendants Monsanto and Helena Agri-Enterprises LLC's misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product.

165.    Plaintiff reasonably relied upon Defendants Monsanto and Helena Agri-Enterprises LLC's representations to him that Roundup® was safe for use and that Defendants Monsanto and Helena Agri-Enterprises LLC's labeling, advertisements, and promotions fully described all known risks of the product.

166.    Defendants Monsanto and Helena Agri-Enterprises LLC are estopped from relying on any statute of limitations defenses because Defendants Monsanto and Helena Agri-Enterprises LLC actively concealed the defects from consumers, such as Plaintiff.

167.    Instead of revealing the defects, Defendants Monsanto and Helena Agri-Enterprises LLC' continued to represent its product as safe for its intended use.

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

168.    As a direct and proximate result of Plaintiff's use of Roundup® as manufactured, designed, sold, supplied, and introduced into the stream of commerce by Defendants Monsanto and Helena Agri-Enterprises LLC, Plaintiff suffered personal injury, non-economic damages, and will continue to suffer such harm and damages in the future.

### COUNT VIII
### UNFAIR AND DECEPTIVE TRADE PRACTICES

169.    Plaintiff adopts paragraphs 1-168 of this Complaint as if fully set forth herein.

170.    Plaintiff brings this product liability claim against Defendants Monsanto and Helena Agri-Enterprises LLC.

171.    By reason of its conduct as alleged herein, Defendants Monsanto and Helena Agri-Enterprises LLC's violated provisions of the law of South Carolina by inducing the Plaintiff to use Roundup® through the use of false and/or misleading, advertising, representations, and statements.

172.    By engaging in the conduct described herein, Defendants Monsanto and Helena Agri-Enterprises LLC's violated law of South Carolina by, among other things:

    a.    Engaging in unfair or deceptive trade practices as defined in this statute by making false and misleading oral and written statements that had the capacity, tendency, or effect of deceiving or misleading consumers.

    b.    Engaging in unfair or deceptive trade practices as defined in this statute by making representations that its products had an approval, characteristics, ingredient, use or benefit which they did not have, including but not limited to statements concerning the health consequences of the use of Roundup®.

    c.    Engaging in unfair or deceptive trade practices as defined in this statute by failing to state material facts the omission of which deceived or tended to deceive,

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP0300140

including but not limited to facts related to the health consequences of the use of Roundup®.

d.  Engaging in unfair or deceptive trade practices as defined in this statute through deception, fraud, misrepresentation and knowing concealment, suppression and mission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of Roundup®.

## PUNITIVE DAMAGES

173.  The conduct of Defendants described above was fraudulent, malicious, and willful or wanton in that it demonstrated a conscious and intentional disregard of and indifference to the safety of others, including Plaintiff, which Defendants knew or should have known was likely to result in serious injury or death to members of the consuming public, including Plaintiff.

174.  As a direct and proximate result of the intentional, willful, and wanton misconduct of Defendants, Plaintiff was caused to suffer NHL, as well as the damages alleged herein. Plaintiff is entitled to recover punitive damages as a result of Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgement in his favor and against the Defendants, awarding as follows:

a.  Compensatory damages in in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

b.  Medical expenses and other economic damages in an amount to be determined at trial of this action;

c.  Punitive damages;

ELECTRONICALLY FILED - 2019 Jul 29 5:04 PM - ALLENDALE - COMMON PLEAS - CASE#2019CP030Q140

d. Costs including reasonable attorneys' fees, court costs, and other litigation expenses;

e. Any other relief the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all counts.

Submitted Respectfully,

BY:   /s/ Neil E. Alger

Neil E. Alger
SC Bar # 100530
PETERS, MURDAUGH, PARKER,
ELTZROTH, DETRICK
101 Mulberry Street East
Post Office Box 457
Hampton, SC  29924
Phone: 803-914-2017
nalger@pmped.com

BY:   /s/ William H. Alexander

William H. Alexander
SC Bar # 102643
LAW OFFICE OF WIL H. ALEXANDER
222 Main Street
Barnwell, SC 29812
Phone: 803-571-0039
wil.@whalawoffice.com

BY:   /s/ Rhon E. Jones

Rhon E. Jones  (*To be Admitted Pro Hac Vice*)
John E. Tomlinson (*To be Admitted Pro Hac Vice*)
Andrew F. Banks (*To be Admitted Pro Hac Vice*)
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS, & MILES P.C.
218 Commerce Street
Montgomery, AL 36104
Phone: 800-898-2034
Fax: (334) 954-7555
Rhon.Jones@BeasleyAllen.com
John.Tomlinson@BeasleyAllen.com
Andrew.Banks@BeasleyAllen.com