BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS<br>LIABILITY LITIGATION | MDL DOCKET NO. 2741 |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO
<u>VACATE CONDITIONAL TRANSFER ORDER (CTO-167)</u>

Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
bhensley@rblaw.net
*Attorney for Plaintiff*

# TABLE OF CONTENTS

Introduction……………………………………………………………………………………..1

Background……………………………………………………………………………………..2

Argument………………………………………………………………………………………..4

    I.     As an initial and dispositive matter, Monsanto failed to timely remove this case and Caruso properly named Russo as a defendant; therefore, subject matter jurisdiction is absent…..…………….4

          A.  Monsanto waited over nine months to remove this case to federal court………………………………………………………………….5

          B.  Monsanto failed to show that Caruso has "no reasonable possibility" of success against Russo……………………………………….5

    II.    Because Caruso has an expiring deadline to amend and add defendants pursuant to a unique Illinois statute, transfer creates a risk of substantial prejudice without the benefit of efficiency or convenience……………………………………………………..6

    III.   Although Roundup cases are pending before the MDL Court, Defendants suffer no prejudice by having these uniquely Illinois-specific issues decided by a federal court in Illinois……………….11

    IV.   Caruso's Motion to Remand is currently pending and already being briefed in the Northern District of Illinois……………………………..12

Conclusion……………………………………………………………………………………..14

## Introduction

After litigating in Illinois state court for mere days short of a year, Monsanto improperly removed this case to federal court and now seeks transfer to the MDL Court in the Northern District of California. As a threshold matter, federal jurisdiction does not exist and this case should be remanded.[1] More importantly for this Panel, prior to removal and just before the two year statute of limitations expired, Plaintiff Meghan Caruso properly utilized an idiosyncratic Illinois procedural mechanism which allows for the naming of "respondents in discovery" and a subsequent six-month toll on the statute of limitations for converting them to defendants.[2] Caruso named four such entities. There is no analogous provision to this Illinois statute in federal court or any other state court around the country. Should this matter be transferred, Caruso severely risks the expiration of the six-month deadline to convert those potentially culpable parties to defendants under Illinois law while waiting for the MDL Court to trudge through thousands of other cases.[3]

Adding to the distinctly Illinois flavor of this case are Russo Hardware, Inc., an Illinois-based distributor, and Caruso's Illinois state law claims against it. Russo's presence in the suit and potential liability under Illinois law are the crux of Monsanto's Notice of Removal and Caruso's Motion to Remand.[4] Notably, Russo is not named in any other case pending before the MDL Court or any other court around

---

[1] *See* Ex. 1, Pl. Mt. to Remand; Ex. 2, Pl. Memorandum in Support of Mt. to Remand.
[2] *See* 735 ILCS 5/2-402.
[3] Caruso's Motion to Remand is already being briefed in the Northern District of Illinois. On November 12, 2019, the Honorable Virginia M. Kendall entered a briefing schedule, which provides for Monsanto to file its response on December 6, 2019, and Caruso to file her reply on December 20, 2019.
[4] *See* Ex. 3, Def. Notice of Removal; *see also* Ex. 1; Ex. 2.

the country in claims involving Roundup. As such, the preclusive effect on either defendant and risk of inconsistent litigation are nonexistent.

While the MDL statute and process are in place to promote efficiency through relocation and aggregation, the JPML exists to protect parties from potential prejudice inherent in that process. This is especially so when no efficiency is to be gained. The transfer of this matter to the MDL Court—a court far less familiar with Illinois procedural and substantive law—where thousands of other cases pend, risks Caruso being precluded from naming four additional defendants in her husband's wrongful death claim without any practical benefit to be gained. The Panel is tasked here with weighing ostensible efficiency and legitimate prejudice. The scales tip decisively in Caruso's favor.

In order to safeguard the federal court's exercise of jurisdiction, to preserve Caruso's potential claims against the Respondents in Discovery, and to facilitate the expeditious resolution of the pending Motion to Remand, this Motion to Vacate should be granted. Alternatively, any transfer should be stayed until after the Northern District of Illinois decides the Motion to Remand.

## Background

In October 2017, at the age of 33, John Caruso—husband, father, and landscaper—passed away from non-Hodgkin's lymphoma as a result of exposure to Monsanto's Roundup® herbicide. Russo is an Illinois-based company, a landscaping industry leader, and one of the companies that sold Roundup® to John Caruso's employer, the University of Illinois-Chicago, for years. Russo is not and has not been

named in any other Roundup case around the country. Meghan Caruso, a citizen and resident of Illinois, filed her initial Complaint in state court against Russo on October 30, 2018. Caruso served Russo the following day on October 31, 2018. Caruso later amended her Complaint and added claims against Monsanto on November 1, 2018. Russo answered the Complaint on January 25, 2019, providing responses to Caruso's allegations which form the purported basis for Monsanto's fraudulent joinder argument on removal.[5]

Critically, in October 2019, after engaging in written discovery and receiving documents from Intervenor University of Illinois-Chicago showing four other potential culpable distributors under Illinois law, Caruso filed her Second Amended Complaint on October 21, 2019. Caruso named those other distributors as "Respondents in Discovery" and issued discovery to assess the viability of potential claims against them.[6]

Rather than attempt to remove the case in early 2019 when prudent and procedurally required, Monsanto elected to wait until October 29, 2019 — just two days before the one-year removal deadline, 277 days after Russo's Answer, and just over a week after Caruso added the respondents in discovery – to remove this case to federal court alleging Russo was fraudulently joined. Tellingly, Russo never made such an argument in state court through a motion to dismiss or otherwise. Caruso then filed her Motion to Remand on November 4, 2019. Monsanto filed a Motion to

---

[5] Caruso does not agree that any facts in this case support removal. *See* Ex. 1; Ex. 2.
[6] Illinois law provides that a plaintiff has an additional six months after naming an entity as a respondent to conduct discovery and convert them into a proper defendant on good cause. 735 ILCS 5/2-402.

3

Stay Proceedings pending this Panel's ruling on the transfer to the MDL Court on November 6, 2019. Caruso filed her Response in Opposition to the Stay on November 11, 2019. The parties appeared before the Honorable Virginia M. Kendall on November 12, 2019. While taking Monsanto's Motion to Stay under advisement, the Court entered a briefing schedule for the Motion to Remand where Monsanto was ordered to respond by December 6, 2019 and Caruso to reply by December 20, 2019.

Caruso received notice of the filing of CTO-167 on November 15, 2019 with a deadline to file an opposition by November 22, 2019.[7] That same day, Caruso filed her Notice of Opposition to CTO-167.[8] Caruso has filed her Motion to Vacate CTO-167 concurrently with this Memorandum.

## Argument

I. **As an initial and dispositive matter, Monsanto failed to timely remove this case and Caruso properly named Russo as a defendant; therefore, subject matter jurisdiction is absent.**

Monsanto's argument for federal jurisdiction fails for two reasons. First, Monsanto's removal was procedurally defective. Second, Monsanto failed to meet the exacting burden required to prove Caruso, an Illinois citizen, fraudulently joined Illinois-based Russo. Because Russo is properly joined, complete diversity does not exist between the parties. The legal reasoning supporting these claims is more fully discussed in Plaintiff's Motion to Remand and the accompanying Memorandum.[9] A brief recap of those arguments is warranted and follows.

---

[7] JPML Dkt. 1415.
[8] JPML Dkt. 1417.
[9] Ex. 1; Ex. 2.

4

### A. Monsanto waited over nine months to remove this case to federal court.

As stated in Caruso's Remand documents, Monsanto's October 29, 2019 removal came 277 days after Russo filed its Answer to Caruso's First Amended Complaint on January 25, 2019.[10] While Caruso does not agree that the facts Monsanto relies on serve as a basis to prove fraudulent joinder or support removal, those facts were nevertheless apparent on the face of Russo's January pleading.[11] Monsanto also failed to exercise the most basic levels of diligence or apply "a reasonable amount of intelligence," *Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136 (9th Cir. 2013), when its counsel began jointly representing the allegedly fraudulently-joined Russo and had the ability to assess removability.[12] It failed to do so and the case must be remanded.

### B. Monsanto failed to show that Caruso has "no reasonable possibility" of success against Russo.

Fraudulent joinder occurs when there is no possibility that a plaintiff can state a cause of action against a non-diverse defendant in state court. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). In determining whether a plaintiff has chance of success in establishing a claim against a non-diverse defendant, all disputed questions of fact and law must be resolved in favor of the plaintiff. *Poulos v. Naas Foods*, 959 F.2d 69, 73 (7th Cir. 1992).

---

[10] *See* Ex. 2, pp. 3-6.
[11] *See* Ex. 2, p. 5 (chart comparing Monsanto's bases for removal and facts pled in Russo's Answer).
[12] *See* Ex. 2, pp. 6-8.

In 2015, the World Health Organization's International Agency for Research on Cancer designated glyphosate, the primary ingredient in Roundup®, as a probable human carcinogen.[13] Russo knew or should have known of this finding and that Roundup® presented a dangerous and unreasonable risk of injury, especially as the "premier. . . landscape supply dealer of the Midwest."[14] Along with its regional prominence in the field, Russo branded itself as an innovative, environmentally-conscious company, which had employees attend shows, seminars, programs, and training sessions on landscaping in the years following the release of IARC's 2015 finding.[15] Despite the fact that Russo knew or should have known of these dangerous qualities and potential risks, it continued selling Roundup® to individuals and companies, including the University of Illinois-Chicago—John Caruso's employer.[16] Exposure to Roundup® eventually caused John Caruso's non-Hodgkin's lymphoma and death.[17] Caruso pled all of these facts and more in her Second Amended Complaint.[18] Monsanto falls woefully short of meeting the heightened burden necessary to succeed on a fraudulent joinder claim and the case must be remanded.

II. **Because Caruso has an expiring deadline to amend and add defendants pursuant to a unique Illinois statute, transfer creates a risk of substantial prejudice without any benefit of efficiency or convenience.**

The unusual circumstances and posture of this case counsel against transfer at this time. *See In re Prempro Liability Litigation*, 549 F. Supp.2d 1398, 1399

---

[13] Ex. 2, pp. 11-12, *citing to* Ex. 4, Pl. Second Am. Complaint.
[14] *Id.* at p. 11.
[15] *Id.* at pp.14-15.
[16] *See i.e.* Ex. 4., ¶ 18.
[17] *Id.* at ¶ 15, 120-21, 124.
[18] *See generally* Ex. 4.

6

(J.P.M.L. 2008). The "respondent in discovery" is a creature of a special provision of Illinois law. *Wisniewski v. City of Chicago,* No. 98 C 7682, 1998 WL 895746, * 1 (N.D. Ill. Dec. 15, 1998). It knows no parallel in any other jurisdiction, federal or state, around the country. Although initially enacted to allow for medical malpractice plaintiffs to conduct discovery before naming scores of medical professionals as defendants, the section now applies to "any civil action." 735 ILCS 5/2-402. The statute permits a plaintiff to only seek relief in the form of the possible provision of information relevant to plaintiff's underlying substantive claims. *Wisniewski*, No. 98 C 7682, 1998 WL 895746, * 1.; *see also* 735 ILCS 5/2-402. Simply put, a plaintiff may name as a respondent in discovery anyone "other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action." *Prinova Solutions, LLC v. Process Technology Corporation Ltd.*, 103 N.E.3d 366, 374 (2nd Dist. 2018). However, the statute's permission of such action is limited. A plaintiff is only provided an additional six months from the date of naming the respondents to conduct discovery, determine potential liability, and convert the respondents to defendants on good cause. *See* 735 ILCS 5/2-402; *Westwood Const. Group, Inc. v. Irus Property, LLC,* 2016 IL App (1st) 142490 ¶ 15 (internal citations omitted).

District courts in the Seventh Circuit have consistently held that this provision carries no standing in federal court. *See i.e. Wisniewski*, No. 98 C 7682, 1998 WL 895746; *Montclair-Bohl v. Janssen Pharmaceutical, Inc.*, 06 C 2166, 2006 WL 2700013 (N.D. Ill. Sept. 13, 2006); *Bond v. Wright Medical Technology, Inc.*, No. 12-

CV-597-DRH-DGW, 2012 WL 2413051 at *3 (S.D. Ill. Jun. 16, 2012). The procedures set forth by the statute have no such applicability because a petition for discovery does not appear to be a case or controversy for purposes of Article III's strictures on federal jurisdiction. *See Bond*, No. 12-CV-597-DRH-DGW, 2012 WL 2413051 at *3 (collecting cases). Federal procedural rules do not contemplate the maintenance of a suit purely for discovery. *Id.* (collecting cases) (finding "respondents in discovery" are not capable of removal).

The removal of this action to the Northern District of Illinois, while the six-month deadline for conversion diminishes, places Caruso in a difficult, yet not impossible predicament. While the removal was improper, the briefing schedule currently set by the Court would project a ruling on Caruso's remand motion from the Court by the end January.[19] If granted, she would have three months to spare to receive discovery, review the information, enforce the statute's provisions through motion practice—if necessary—and eventually convert or dismiss the Respondents. If denied, she would be left to the whims of the federal courts applying principles of equity (i.e. equitable tolling) in attempting to add the respondents in discovery as defendants. It is unclear how the federal courts will rule on this issue.[20]

Should this matter be transferred to the MDL Court, though, the uncertainty multiplies exponentially. The same federal concerns exist should the Court deny

---

[19] *See* f.n. 3, *supra*.
[20] The relevant inquiry here, and apparently one of first impression, is whether a federal court will apply principles of equity to allow a plaintiff to name additional defendants after the running of the applicable statute of limitations when claims against them were previously tolled by the Illinois respondent in discovery statute, which is not recognized in federal courts.

8

Caruso's Motion to Remand. However, should the MDL Court eventually grant Caruso's Motion to Remand, it would likely be after the six-month provisional period to convert the respondents has lapsed. Caruso would then be addressing the same issue of first impression, only before the Illinois state courts. The size of the Roundup® MDL speaks to this delay. As the Panel may be aware, and as acknowledged by Defense Counsel in court, over 10,000 trials are pending before the MDL Court.[21] Upon transfer, Caruso will find herself at the very end of that list as "Plaintiff 10,001." Whether the MDL Court will able to address Plaintiff's Motion to Remand before her six-month deadline expires in April is highly unlikely, especially considering briefing on this Motion to Vacate will not conclude until December 30, 2019—ten days after the remand briefing is set to finish.

A recent example in the MDL Court is demonstrative of this point.[22] A motion to remand was recently granted in the matter of *Cichy v. Bayer Corp., et al.*, No 3:19-CV-4575-VC, pending before the MDL Court after a transfer from the Northern District of Illinois. A CTO was entered on April 19, 2019.[23] The plaintiff filed their opposition to the CTO on April 25, 2019. The JPML denied the plaintiff's motion to vacate on July 31, 2019 and the case was transferred. The MDL Court then took an additional approximately 2.5 months to issue an Order on the plaintiff's motion to remand. In total, from the date of the entering of the CTO to the Order on Remand, it took the case 214 days to matriculate through the JPML and the MDL Court. In

---

[21] Ex. 5, 11.12.19 Transcript, p. 2.
[22] *See* Dkt. 7844, Pretrial Order No. 191.
[23] All dates are taken from the plaintiff's motion to remand in that case. *See* Dkt. 5191-1, Memorandum of Law in Support of Plaintiff's Motion to Remand.

simpler terms, it took just over 7 months. A chart is included below to demonstrate the potential timeline Caruso can expect (Table 1), *if* the Court's current 10,000+ caseload does not grow greater in the coming weeks and the rate of disposition remains the same. The winter holidays will likely delay resolution even further.

Table 1

| Case Name/ Number | CTO Date | Opposition to CTO Filed | Denial of Motion to Vacate (Potential) | Order on Remand (Potential) | Days Between CTO and Remand Order (Potential) |
|---|---|---|---|---|---|
| *Cichy v. Bayer Corp., et al.* (3:19-cv-04575-VC) | 4-19-19 | 4-25-19 | 7-31-19 103 days | 11-19-19 | 214 days 7 months |
| *Caruso v. Monsanto Co.* (1:19-cv-09721) | 11-15-19 | 11-15-19 | (2-26-19) (103 days) | (6-15-20) | (213 days 7 months) |

While Caruso will acknowledge that every case is different, with some having more complex issues than others, the projected date for an order on remand calculated above far surpasses the six-month respondent-conversion deadline in April 2020. The risk of prejudice here is immense. Should this matter be transferred to the MDL Court and the schedule remains even roughly similar to the *Cichy* case, Caruso would miss the opportunity to name four potential entities as defendants in the wrongful death claim on behalf of her husband. She has no definitive answer as to a federal court or the Illinois court's treatment of the lapsing of the six-month deadline. However, the resolution of her Motion to Remand in her favor in the Northern District of Illinois in January would provide her ample time to comply with the statute's

requirements. The Panel should eliminate as much uncertainty and risk of prejudice as it can by vacating CTO-167 or staying any transfer and allowing the Northern District of Illinois to decide Caruso's Motion to Remand.

### III. Although Roundup cases are pending before the MDL Court, Defendants suffer no prejudice by having these uniquely Illinois-specific issues decided by a federal court in Illinois.

Monsanto will not be prejudiced if the Panel vacates or, at the very least, stays transfer to allow the Northern District of Illinois to rule on Plaintiff's Motion to Remand. If the Panel denies this Motion and transfers the matter, Monsanto briefs its response to the Motion to Remand. Alternatively, if this Court grants this Motion, Monsanto briefs its response all the same. The only difference is the eventual time before a decision is reached: likely significantly longer in the MDL. This delay only prejudices one party for the reasons stated in Section II, above: Caruso.

Monsanto certainly suffers no prejudice as it relates to the briefing schedule, which it is already presumably complying with. Moreover, because Russo is not a named defendant in any other Roundup® case in the MDL or elsewhere throughout the country, there is no risk of issue preclusion. Any argument to the contrary is spurious. Similar is any argument regarding "inconsistent litigation." Monsanto's Notice of Removal and Plaintiff's Motion to Remand do not require any ruling on the substantive merits of Plaintiff's Second Amended Complaint (i.e. whether Roundup® or its ingredients cause cancer, whether Roundup® or its ingredients caused John Caruso's cancer, or even whether Russo knew or should have known of the dangers of Roundup® or its ingredients, etc.). Rather, the issue presented is simply whether

11

Caruso has any chance of success under Illinois state law against an Illinois distributor. This is a dispute as to the legal sufficiency, under Illinois law, of the pleadings against Russo. That issue's determination is wholly irrelevant to every single other Roundup® case throughout the country. Moreover, as discussed in Section II above, the implications of the Court's ruling as it relates to Illinois procedural law, cannot be emphasized enough. Every dispute currently before the Court in this case, substantive or procedural, hinges exclusively on Illinois law that have no bearing on any other Roundup® case.

### IV. Caruso's Motion to Remand is currently pending and already being briefed in the Northern District of Illinois.

A briefing schedule on Plaintiff's Motion to Remand has already been entered. Monsanto's Response is due in just under two weeks. Caruso's reply is due just two weeks after that. A status hearing is set for January 27, 2020. By that time, the parties and the Panel will have their answer as to whether the federal courts have jurisdiction. If it does remain in federal court, transfer can be effectuated at that time without prejudice to any parties.

The Panel has held that, "on principles of comity, we are reluctant to transfer any action that has an important motion under submission with a court." *In re L.E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054, 1056 (J.P.M.L. 1975); *In re Deering Milliken Patent*, 328 F. Supp. 504, 505-06 (J.P.M.L. 1970) (transfer under 1407 denied to allow decision by transferor judges on motions for transfer that might render question of transfer moot if decided favorably). A motion to remand is undoubtedly one such motion as subject matter jurisdiction determinations are

12

fundamentally preliminary and of constitutional importance. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998); *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).

The gravity of this determination is plainly indicated by the Panel's own rules, which encourage courts to rule on motions to remand pending a transfer to an MDL.[24] Rule 2.1(d) of the Rules of Procedure of the JPML, states:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.

Further the Manual for Complex Litigation, Fourth, § 20-131 (2004), states:

> The transferor court should not automatically stay discovery … Nor should the court automatically postpone ruling on pending motions, or generally suspend further proceedings.

On top of its rules and the Manual's recommendations, the Panel has previously explained that a "'Conditional Transfer Order' is an administrative device used to expeditiously transfer apparently related cases where there is *no opposition* to such a transfer." *In re Multidistrict Commodity Credit Corp. Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (emphasis added). In fact, "[i]t is simply an administrative

---

[24] *See, e.g., Terkel v. AT&T Inc.*, 06 C 2680, 2006 WL 1663456, at *1 (N.D. Ill. Jun. 9, 2016) (citing letter from Chairman of JPML noting that "jurisdiction continues until any transfer ruling by the Panel becomes effective" and a district court with a case subject to the motion to transfer is free to rule on the motion); *Hobbs v. Wyeth*, Inc., 3:04-CV-0176-GTE, 2004 WL 6005569, at *2 (E.D. Ark. July 13, 2004) (same); *Shields v. Bridgestone/Firestone, Inc.*, 232 F. Supp. 2d 715, 718 n.1 (E. D. Tex. 2002) (same); *Tenn. Consol. Ret. Sys. v. Citigroup, Inc.*, 2003 U.S. Dist. LEXIS 10266, at *4 (M.D. Tenn. May 9, 2003) (same).

13

act of the Clerk which can be and will be vacated upon the showing of *good cause* by any party." *Id.* (emphasis added).

Because opposition to transfer and good cause for vacating the transfer order exist here, CTO-167 should be vacated. Caruso filed her opposition to CTO-167 the same day it was ordered.[25] As discussed in the foregoing sections, good cause exists for vacating the transfer.

## Conclusion

The Panel should enter an Order vacating CTO-167. Meghan Caruso's case belongs in state court where the joinder of parties and merits went unchallenged for 363 days. Nine months after the 30-day deadline to remove the case to federal court, Monsanto filed a substantively deficient Notice of Removal. As set forth in Caruso's Motion to Remand and accompanying Memorandum, she properly named an Illinois distributor as a defendant whose professed landscaping expertise placed it in a position where it knew or should have known of the dangers of Roundup®, yet failed to warn users, such as John Caruso.

Jurisdictional issues on remand aside, prejudice abounds and there is no efficiency to be gained by the transfer of this matter across the country to the MDL Court. The evanescent deadline imposed by Illinois procedural law for respondents in discovery is quickly fading. The MDL Court is faced with over 10,000 cases and upcoming trials. The vacating of the CTO, or at the very least the stay of any transfer, serves judicial economy and efficiency as it removes the prospect of the MDL Court

---

[25] Dkt. 1417.

educating itself and then deciding issues solely based on Illinois state procedural and substantive law. At the heart of Monsanto's Notice of Removal, Caruso's Motion to Remand, and this present Motion are questions that depend entirely on Illinois law. The questions pertain to an Illinois corporation whose involvement with the Roundup® MDL are confined to this case alone. The answers to those questions have no impact on any of the other 10,000 cases pending in the MDL Court or elsewhere throughout the country. Vacating the CTO leaves those complex issues in the hands of a federal district court, which has already set a briefing schedule and is more than suitable to decide the issues in a timeframe that eliminates much of Caruso's concerns relating to the conversion of respondents to defendants and risk of prejudice.

As such, Plaintiff respectfully requests that the Court grant this motion to vacate CTO-167 as to *Caruso, et al. v. Russo Hardware, Inc., et al.*, No. 19-cv-7121 (N.D. Ill.), or, in the alternative, stay the transfer until Judge Kendall of the Northern District of Illinois rules on Plaintiff's Motion to Remand.

Dated: December 2, 2019                    Respectfully submitted,

                                           /s/    Bryce T. Hensley
                                           *Attorney for Plaintiff*

                                           Bryce T. Hensley
                                           **ROMANUCCI & BLANDIN, LLC**
                                           321 N. Clark Street, Suite 900
                                           Chicago, IL 60654
                                           Tel: (312) 458-1000
                                           Fax: (312) 458-1004
                                           bhensley@rblaw.net