UNITED STATES DISTRICT COURT
NORTHERN DISTRICT
EASTERN DIVISION

| | |
|---|---|
| MEGHAN CARUSO, individually and as Independent Executor of the Estate of John Caruso, deceased,<br><br>   Plaintiff,<br><br> v.<br><br>RUSSO HARDWARE INC., et al.<br><br>   Defendants,<br><br>UNIVERSITY OF ILLINOIS-CHICAGO,<br><br>   Intervenor,<br><br> and<br><br>HOME DEPOT USA, INC, et al.<br><br>   Respondents in Discovery. | No.: 19-CV-7121<br><br>The Honorable Judge Virginia M. Kendall<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND** |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**</u>

### I. INTRODUCTION

Plaintiff's case properly belongs in the Circuit Court of Cook County. Defendant Monsanto Company, Inc. ("Monsanto") filed an untimely and substantively deficient Notice of Removal over 360 days after Plaintiff commenced this action. Monsanto was equipped with all of the information it now claims serves as a basis for removal over 270 days ago after Defendant Russo Hardware, Inc. ("Russo") filed its Answer to Plaintiff's Amended Complaint. Rather than remain in

1

EXHIBIT 2

state court where Plaintiff's claims have proceeded unchallenged for nearly a year, Monsanto now claims that Russo was fraudulently joined.

Monsanto's Notice of Removal fails to comply with the procedural requirements of the removal statute and fails to meet the heavy burden required to prove fraudulent joinder. As such, the case should be remanded.

## II. STANDARD FOR REMOVAL

A defendant may remove a civil action filed in state court only if the federal district court has original jurisdiction over the action. 28 U.S.C. §1441(a); *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). In general, there is a strong presumption in favor of remand, and all doubts about the propriety of removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). It is the Court's "nondelegable duty to police the limits of federal jurisdiction with meticulous care. . ." *Mkt. St. Assoc. Ltd. P'ship v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991). To that end, a district court must "jealously guard" its jurisdiction, and "remain vigilant to ensure the presence of jurisdiction even though the parties may disregard the subject (or, worse, try to sneak one by the judge)." *In re Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992); *see also Douglas v. E.G. Baldwin & Assocs., Inc.,* 150 F.3d 604, 606 (6th Cir. 1998).

> While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim. Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing. . . where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.

2

*Wolf v. Kennelly*, 540 F. Supp. 2d 955, 959 (N.D. Ill. 2008) (Pallmeyer, J.) (citation omitted).

Monsanto has the burden of proving that its removal to federal court was timely and complied with the statutory provisions of removal. *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013); *California ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). Monsanto also bears the burden of establishing federal jurisdiction. *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts . . . interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). If the court's jurisdiction is challenged as a factual matter, the party invoking jurisdiction bears the burden of supporting its jurisdictional allegations by "competent proof," meaning by "proof to a reasonable probability that jurisdiction exists." *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (citations omitted); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). If a defendant fails to meet its burdens, the action must be remanded to state court pursuant to 28 U.S.C. §1447(c).

### III. PROCEDURAL DEFECTS

#### A. Monsanto Had the Information Claimed as a Basis for Removal Since January 25, 2019 and Failed to Remove the Case

The timeliness inquiry is limited to examining the contents of the clock-triggering pleading and whether that document, on its face or in combination with earlier filed pleadings, provides notice that the case is removable. *Walker v. Trailer*

3

*Transit, Inc.*, 727 F.3d 819, 825 (7th Cir. 2013). "Although the 30-day time limit in §1446(b) is not jurisdictional, it is mandatory and strictly applied." *Fox Valley Mall, LLC, v. Pretz. Corp.*, No. 19 C 361, Dkt. 15, p.3 (Kendall, J.)[1] (*citing McCoy by Webb v. General Motors Corp.*, 226 F.Supp.2d 939, 943 (N.D. Ill. 2002)). While the information Monsanto relies upon is insufficient to result in a proper removal, it has had this information for more than 270 days. Therefore, removal is untimely.[2] Dkt. 1 ¶27

Plaintiff filed her First Amended Complaint at Law on November 1, 2018, *See* Ex. C, to which Russo filed an Answer, *See* Ex. E, on January 25, 2019. As a basis for their allegations that Russo was fraudulently joined, Monsanto highlights six pieces of information it purportedly learned from Russo and Plaintiff's answers to written discovery that show "no reasonable possibility that a state court would rule against Russo." Dkt. 1 ¶¶27-28. Specifically, Monsanto relies on Russo's discovery responses, which it generated through its counsel, claiming, *inter alia*, (2)[3] that it was unaware of the glyphosate monograph; (3) that it was unaware that Roundup® and/or glyphosate are carcinogenic; (4) that it had no role in the design, manufacture, or testing of Roundup®; and (5) that it never trained customers on how to safely use

---

[1] Attached as a supplement pursuant to the Court's Standing Order.

[2] Importantly, Plaintiff unequivocally and explicitly denies there are any facts in this case that support removal as the matter belongs in state court. Plaintiff is not admitting that Russo is fraudulently joined. Rather, for the sake of argument only, Plaintiff is accepting that the facts identified by Monsanto are grounds for removal and is demonstrating that Monsanto's knowledge of such facts far surpasses the 30-day deadline set forth in the removal statute.

[3] The numbers in this section are references to the listed numbers in Defendant's Notice of Removal. Dkt. 1 ¶27.

4

Roundup®. Dkt. 1 ¶27. However, each of those claims can also be found in Russo's Answer, which had been filed over 270 days prior to removal.

In particular, in Russo's Answer, it denied its awareness of the IARC's 2015 findings and other evidence regarding glyphosate and its carcinogenic qualities. Ex. E ¶¶100-101. Russo denied the toxicity of glyphosate and Roundup® and denied that they cause non-Hodgkin's lymphoma. Ex. E ¶¶9-12, 100-101. Russo denied having knowledge of the dangerous and defective nature of Roundup®. Ex. E ¶29. Russo denied failing to warn consumers about the dangers associated with Roundup® and glyphosate. Ex. E ¶102. Plaintiff has compiled the following chart for ease of reference:

| Facts Cited in Notice of Removal | Facts Found in Russo's Answer |
|---|---|
| (2) Russo was unaware of the glyphosate monograph. Dkt. 1 ¶27 | Russo denied its awareness of the IARC's 2015 findings and other evidence regarding glyphosate and its carcinogenic qualities. Ex. E ¶¶100-101. |
| (3) Russo was unaware that Roundup® and/or glyphosate are carcinogenic. Dkt. 1 ¶27 | Russo denied the toxicity of glyphosate and Roundup® and denied that they cause non-Hodgkin's lymphoma. Ex. E ¶¶9-12, 100-101. |
| (4) Russo had no role in the design, manufacture, or testing of Roundup®. Dkt. 1 ¶27. | Russo denied selling, marketing, and distributing Roundup® having with full knowledge of its dangerous and defective nature. Ex. E ¶29. |
| (5) Russo never trained customers on how to safely use Roundup®. Dkt. 1 ¶27. | Russo denied failing to warn consumers about the dangers associated with Roundup® and glyphosate. Ex. E ¶102. |

Monsanto then further relies on Points (1) and (6), *see* Dkt. 1 ¶27, which discuss Plaintiff and her decedent's alleged knowledge of the dangers of glyphosate. This argument is irrelevant with no bearing on the fraudulent joinder analysis. Such allegations are not dispositive of Plaintiff's negligence claims against Russo as they

5

are claims of contributory negligence and apportionment of fault which are fact questions for a jury. More importantly, they are affirmative defenses that cannot serve as a basis for removal. *See Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1986). Finally, any such disputes are to be resolved in the non-moving party's favor when analyzing claims of fraudulent joinder. *Schur*, 577 F.3d at 758 (any doubts are to be resolved in favor of the plaintiff).

Even if these points did serve as grounds for showing that Plaintiff has no reasonable chance of success, which they do not, Russo denied having superior knowledge to Roundup® users and consumers in their Answer. Ex. E ¶93. Monsanto was also on notice of Plaintiff's decedent's job landscaping for UIC for eight years spraying Roundup® across 240 acres of the college campus. Ex. C ¶104-07. Simply put, all of the information Monsanto claims it just recently realized through discovery as a basis for its fraudulent joinder argument were readily available to it and unambiguous from a plain reading of Plaintiff's First Amended Complaint and Russo's Answer. Removal is therefore untimely pursuant to §1446(b)(3).

### B. Counsel for Monsanto Failed to Act Reasonably in Assessing the Removability of the Case After Being Retained by the Allegedly Fraudulently Joined Defendant

Even if this Court finds that Monsanto did not have information to support removal from Russo's Answer, which based off of Monsanto's own arguments it clearly did, the Court should find that Monsanto's counsel failed to timely remove the case after its attorneys were retained by Russo. "[V]arious discovery documents such as. . . . correspondence between the parties and their attorneys or between the attorneys

6

usually are accepted as 'other papers,' receipt of which can initiate a 30-day period of removability." *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 78 (1st Cir. 2014).

At some point prior to answering Plaintiff's written discovery requests, counsel for Monsanto was retained or entered into a representation agreement with its other current client, Russo, and had even greater access to the information it now claims to have just received on the eve of filing their Notice of Removal. *See* Pl. Mot. for Remand ¶¶16-23. Most notably, Monsanto's counsel had access to its own client: Russo and its employees. At this time, and without any discovery on this issue, Plaintiff has no way of knowing when this agreement was entered into. However, it can be reasonably inferred that discussions for such joint defense began following the August 6, 2019 Case Management Conference and in advance of the original, court-imposed September 19, 2019 deadline (both far-beyond 30 days from the date of the filing of its Notice of Removal). *See* Ex. G. Moreover, due to the extent (over 100 pages of text typed in response) of Russo's discovery responses, *See* Ex. L1-L3; the exhaustive investigation that was *surely* done to comply with the Illinois Supreme Court Rules; as well as the joint representations in emails from mid-September, *See* Ex. H; such conversations and agreement between Counsel for Monsanto and Russo and its agents definitively preceded the exchange of said discovery requests and preceded the 30 day-deadline it now argues applies. To suggest otherwise would put Monsanto and Russo's joint counsel in a situation where they admit to working on the discovery responses with an insufficient amount of time to respond in good faith.

7

Through the most basic levels of diligence in their nascent representation of Russo, Monsanto's counsel would have had the opportunity to confer with agents for Russo, most notably Eric Adams, the Operating President and Managing Director of Russo, and discovered the information contained within the Declaration that allegedly first came to Monsanto's attention on October 28, 2019. Dkt. 1 ¶22. However, Monsanto's alleged recent revelation of information from Eric Adams' Declaration is belied by the fact Eric Adams conferred with counsel for Monsanto in certifying **all** of Russo's Discovery Responses that were submitted on October 11, 2019. Ex. L1-L3. Moreover, much of the information contained within said Declaration was already known to Monsanto following Russo's Answer. The federal removal statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." See *Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136 (9th Cir. 2013). Monsanto failed to apply such reasonable efforts in this case, therefore removal is untimely.

### IV. SUBSTANTIVE DEFECTS

#### A. Monsanto Admits that Russo is an Illinois Citizen

Complete diversity under §1332(a) requires that no plaintiff is a citizen of the same state as any defendant. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). As the removing party, Monsanto bears the burden of demonstrating the citizenship of the parties sufficient to establish diversity jurisdiction. *E.g., Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000) (instructing district court to remand case for lack of subject matter jurisdiction where defendant's notice of

8

removal alleged the parties' residency, not their citizenship). Here, while there is no dispute that the amount in controversy exceeds the jurisdictional minimum, there is also no dispute that Russo is a citizen of Illinois. Dkt. 1 ¶¶11, 13. In fact, Monsanto readily admits this fact. *Id.* Monsanto has thus failed to meet its burden under §1332(a).

### B. Monsanto Failed to Meet the "Heavy Burden" Required to Show Fraudulent Joinder

Because there are non-diverse parties, Monsanto has resorted to a "fraudulent joinder" argument. "Fraudulent joinder occurs either when there is *no possibility* that a plaintiff can state a cause of action against non-diverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (emphasis added). Monsanto does not claim outright fraud in Plaintiff's pleadings, but instead contends Plaintiff has "no reasonable possibility" of success against Russo. Dkt. 1 ¶¶22, 28. As this Court has consistently recognized, in order to demonstrate fraudulent joinder of the latter type, a defendant "seeking removal bears a 'heavy burden'" of showing "no chance of success" against the nondiverse defendants. *Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d 926, 931 (N.D. Ill. 2012) (Pallmeyer, J.) (remanding plaintiff's case to state court despite allegations of fraudulent joinder); *see also Aquino v. C.R. Bard, Inc.*, 2018 WL 5717423, at n.3 (N.D. Ill. Nov. 1, 2018) (finding that even though the plaintiff's theories were "unusual and somewhat suspicious," the removing defendants failed "to meet their burden of showing why there is no chance of success. . . ."). Because Monsanto has failed to meet its heavy burden of proving Plaintiff has

9

no chance of success on her claims against Russo, complete diversity does not exist and this matter should be remanded to state court.

### 1. Standard for Fraudulent Joinder

In determining whether a plaintiff has a reasonable chance of success in establishing a claim against a non-diverse defendant, the district court must resolve all disputed questions of *fact and law* in favor of the plaintiff. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Further, the district court must evaluate the removed complaint using "liberal federal notice pleading standards," not the fact pleading standard employed by Illinois state courts. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 670 (7th Cir. 2008) ("We can see no reason—why the standards of Rule 8 of the Federal Rules of Civil Procedure, rather than Illinois fact pleading requirements, should not apply here."); *Hanna v. Plumer,* 380 U.S. 460, 465, (1965); *Grivas v. Parmelee Transp. Co.,* 207 F.2d 334, 337 (7th Cir.1953); *Street v. Cottrell, Inc.*, 2010 WL 750027, at *5 (S.D. Ill. Mar. 3, 2010). Notably, the standard applied to pleadings for purpose of fraudulent joinder is even more favorable to the plaintiff than that applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Whelchel*, 850 F. Supp. 2d at 931 (Pallmeyer, J.). The only question is whether the claims against the non-diverse defendant are "wholly insubstantial and frivolous." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3rd Cir. 1992); *Robles v. Nexstar Media Grp., Inc.*, 2018 WL 898464, at *2 (N.D. Ill. Feb. 15, 2018).

10

## 2. Plaintiff's Claims Against Russo

Plaintiff's allegations against Russo are far from frivolous and more than plausibly substantiate a claim under the deferential standard employed in the fraudulent joinder analysis. Far from "simply a pass-through retailer," Dkt. 1 ¶15, Plaintiff claims that Russo was the "premier. . . landscape supply dealer of the Midwest," a claim pulled from their website. Ex. 1 ¶95. It follows then that they knew or should have known that exposure to glyphosate-based products, including Roundup® (one of the world's most widely-used herbicides) could cause non-Hodgkin's lymphoma and present a dangerous and unreasonable risk of injury. *Id.* at ¶¶3, 114. Further they knew or should have known that users of glyphosate-based products, including Roundup®, were unaware (or less aware than Russo) of the risks associated with the products, failed to use ordinary care, and breached its duties to foreseeable individuals like Decedent, causing his non-Hodgkin's lymphoma and eventual death as a result. *See* Ex. 1, Counts I and II.

It is first worth noting that Russo had been aware of Plaintiff's allegations of negligence for nearly an entire year prior to Monsanto filing its Notice of Removal. At no point in that year did Russo ever file a motion to dismiss or motion to strike, dispute their joinder or involvement in the case, or otherwise challenge the legal or factual sufficiency of Plaintiff's claims in numerous pleadings. Instead, Russo filed its Answer to Plaintiff's First Amended Complaint, affirming some allegations, denying others, and claiming to lack sufficient knowledge as to others. Ex. E, While the Court need not speculate as to Russo's lack of motion practice, the most reasonable explanation is that Plaintiff adequately pled claims of negligence against it.

11

Turning next to the pleadings, Monsanto contends that Russo's claims that it was unaware of the 2015 IARC findings, the harmful and carcinogenic qualities of glyphosate, the design review and approval, and any trade shows, seminars, conferences concerning such facts is dispositive of the issue of fraudulent joinder. As discussed above, however, such claims have been available to Monsanto since Russo filed its Answer 277 days prior. Monsanto also attempts to negate Plaintiff's claims by disputing what is alleged on information and belief in Plaintiff's Second Amended Complaint. Rather than just rely on the pleadings, though, Monsanto also points to "facts about Russo disclosed through discovery" to "show that there is no reasonable possibility that Plaintiff can recover against Russo under Illinois law." Dkt. 1 ¶15. Monsanto relies on Russo's Objections and Responses to Interrogatories, which were drafted by Monsanto's own counsel. *See* Ex. L1-L3. Monsanto also relies on the Declaration of Eric Adams, President of Russo, which disputes Russo's knowledge of the dangerous propensities of Roundup®. In combination, Monsanto argues "such assertions of fact trump Plaintiff's conclusory allegations." Dkt. 1 ¶23.

However, all disputed questions of *fact and law* must be resolved in Plaintiff's favor when analyzing a claim of fraudulent joinder. *Poulos*, 959 F.2d at 73. The standard under fraudulent joinder is even more favorable than that of a 12(b)(6) motion to dismiss, such that proof can only be shown when the claims are wholly insubstantial and frivolous. *Whelchel*, 850 F. Supp. 2d at 931; *Batoff*, 977 F.2d at 853. When taken in combination, the pleadings and discovery exchanged thus far fall far short of that high burden. Plaintiff's allegations in her Second Amended Complaint

12

remain, at the very least, disputed. Fact discovery in the case has not been completed and has resulted in countervailing evidence on both sides. Such disputes could not be resolved in a 12(b)(6) motion or a motion for summary judgment, let alone a determination of fraudulent joinder. Therefore, they must be resolved in favor of the plaintiff's choice of forum on remand.

In addressing the merits, though, in order to prevail on a claim against a retailer in a product liability negligence action, the plaintiff must demonstrate that the retailer owed a duty of care to the plaintiff. More specifically, the plaintiff must show the retailer and eventual user of the product stood in such a relationship to each other that the law imposes an obligation of reasonable conduct on the retailer for the benefit of the user. *Solis v. BASF Corp.*, 2012 IL App (1st) 110875, ¶64. To state a products liability claim based on negligence, the plaintiff must show that the defendant knew or should have known of the risk posed by the product. *Calles v. Scripto Takai Corp.*, 864 N.E.2d 249, 265 (2007). Such questions should be resolved in Plaintiff's favor on remand.

In support of their argument, Monsanto cites to three cases which are clearly distinguishable from Plaintiff's case. For instance, in *Hale v. Bayer Corp.*, the plaintiff alleged that Walgreens was liable for selling the plaintiff Aleve for less than ten days, which he alleged caused him to suffer a permanent kidney injury. 2015 WL 5474298 at *1 (S.D. Ill. Sept. 16, 2015). The Court held that there was no indication that the plaintiffs purchased *any* medication, let alone Aleve, at Walgreens. Further, the Court held that there were no specific factual allegations in the complaint

13

regarding Walgreens' misconduct other than their placement of Aleve in the store. The Court ultimately dismissed the claim against Walgreens due to general allegations which were insufficient to establish a duty. *Jones* and *Office Depot, Inc.* were dismissed on similar grounds, where the plaintiff failed to include any allegations that the retailer knew or should have known of the defective nature of the product. *See Jones v. UPR Prod. Inc.*, 2015 WL 3463367 at *5 (N.D. Ill. May 29, 2015); *Lexington Ins. Co. v. Office Depot. Inc.*, 943 F.Supp.2d 844, 848 (N.D. Ill. 2013).

Here, Plaintiff alleged numerous facts to support its claims against Russo far beyond general, conclusory allegations. Plaintiff identified in her Second Amended Complaint that Russo was a regional landscaping leader; an innovative, environmentally-conscious company; and had teams of employees that attended trade shows, industry seminars, vendor training programs, and periodic in-house training sessions led by management. Plaintiff further alleged (not on information and belief) that in such capacity, Russo had superior knowledge compared to Roundup® users and consumers such that it should have known of the dangerous qualities of Roundup®. As such, Russo stood above "the general population," including Plaintiff's wife who was able to find the IARC Report despite having no experience in landscaping, that Monsanto was deceiving through its efforts. *See* Dkt. 1 ¶26.

Further, in discovery, despite obstinate stonewalling by Monsanto on behalf of Russo in which they produced *no* documents, Plaintiff received numerous invoices reflecting sale of Roundup® to UIC from the time the Decedent was employed, including after the release of the IARC Report.

Finally, despite claims from Russo in its discovery responses and the sworn statements of its President that Russo is still unaware of glyphosate's dangers, Plaintiff received advertisements for an educational program held just months ago sponsored by Russo with the keynote presentation being, "Glyphosate: What are the Risks?" Ex. N, HRVA 011000-011001, 011032-011033. This is critical in analyzing Plaintiff's ability to succeed on the merits of its negligence claims. It proves definitively that the affiant, the company's President, is incapable of attesting to facts within the knowledge of Russo. The documents demonstrate that Russo's employees know about the dangers of glyphosate and its president does not. Plaintiff anticipates that Russo's environmentally-conscious, trade-show attending, industry-leading experts knew about the risks after the release of the March 2015 IARC monograph.

Plaintiff has pled fact-specific allegations within her Second Amended Complaint at Law that plausibly set forth a state law claim of negligence against Russo. As such, Monsanto has failed to prove Russo was fraudulently joined.

## CONCLUSION

Defendant Monsanto has failed to comply with the procedural requirements of the removal statute and has failed to meet its burden in establishing federal jurisdiction over this case. Plaintiff respectfully request this Honorable Court remand this case to the Circuit Court of Cook County pursuant to 28 U.S.C. §1447(c).

Respectfully submitted,

Date: November 4, 2019 /s/ Bryce T. Hensley (#6327025)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
bhensley@rblaw.net

15