**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MEGHAN CARUSO, Independent Executor of the Estate of John Caruso, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| | ) No.    1:19-cv-7121 |
| v. | ) ) |
| RUSSO HARDWARE, INC. d/b/a RUSSO POWER EQUIPMENT, INC., d/b/a RUSSO POWER EQUPMENT, d/b/a GREEN INDUSTRY FINANCE; and MONSANTO COMPANY, INC., | ) ) ) ) ) |
| Defendants, | ) ) |
| UNIVERSITY OF ILLINOIS-CHICAGO, | ) ) |
| Intervenor, | ) ) |
| and | ) ) |
| HOME DEPOT USA, INC.; MENARD, INC.; MAC RESTORATION CONTRACTING, INC.; and ARCHER PINES LANDSCAPING, INC., | ) ) ) ) |
| Respondents in Discovery. | ) |

EXHIBIT

3

© StenoWorks
The Court Reporting Store

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Monsanto Company,[1]

Monsanto Illinois Production Co., LLC, Monsanto Production Supply, LLC and Monsanto

Technology, LLC (collectively "Monsanto"), hereby give notice of removal of this action,

captioned *Meghan Caruso, Independent Executor of the Estate of John Caruso, deceased v.*

*Monsanto Company, et al.*, bearing case number 2018-L-011723, from the Circuit Court of Cook

County, State of Illinois, Law Division, to the United States District Court for the Northern

---

[1]     Plaintiff previously dismissed Monsanto Illinois Production Co., LLC, Monsanto Production Supply, LLC and Monsanto Technology, LLC. *See* Ex. G.

District of Illinois.  Pursuant to 28 U.S.C. § 1446(a), Monsanto provides the following statement of grounds for removal.

### INTRODUCTION

1.      This action arises out of Plaintiff's claims against out-of-state Defendant Monsanto, and in-state Defendant Russo Hardware, Inc. ("Russo"), for negligence (Russo and Monsanto), strict liability for a design defect (Monsanto), and strict liability for failure to warn (Monsanto) arising from use of Roundup®-branded herbicides and the allegations that they caused non-Hodgkin's Lymphoma ("NHL").

2.      Removal is proper because there is complete diversity of citizenship between Plaintiff and Monsanto, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The Court should disregard the presence of Russo in determining whether complete diversity exists because Russo was fraudulently joined.

### MULTIDISTRICT LITIGATION (MDL) PROCEEDING

3.      This is one of many cases that have been filed in both state and federal courts across the country against Monsanto involving Roundup®.  An MDL proceeding is pending in the United States District Court for the Northern District of California, before the Honorable Vince G. Chhabria, pursuant to 28 U.S.C. § 1407.  *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, 214 F. Supp. 3d 1346 (J.P.M.L. 2016).  Monsanto intends to seek the transfer of this action to that MDL, and will provide the Judicial Panel on Multidistrict Litigation (JPML) with notice of this action pursuant to the procedure for "tag along" actions set forth in the Rules and Procedures of the JPML.

## VENUE AND JURISDICTION

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 112, 1391, 1441(a), and

1446(a), because the Circuit Court of Cook County, Law Division, is a court within the Northern

District of Illinois.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because:

(1) there is complete diversity of citizenship between Plaintiff and all properly-joined

Defendants; (2) the amount in controversy exceeds $75,000, exclusive of interests and costs; and,

(3) all other requirements for removal have been satisfied.

## BASIS FOR REMOVAL – DIVERSITY JURISDICTION

### I.      Complete Diversity Of Citizenship.

#### A.      There Is Complete Diversity Between Plaintiff And Monsanto.

6.      Based on the allegations of the complaint, Plaintiff is, and was at the time of

filing, a citizen of Illinois for purposes of federal diversity jurisdiction.  Sec. Am. Compl.

("Compl.") at ¶¶ 14–15.

7.      Monsanto is, and was at the time of filing, a corporation organized under the laws

of the State of Delaware with its principal place of business in the State of Missouri.  *Id.* at

¶¶ 19–22.  Accordingly, Monsanto is deemed to be a citizen of Delaware and Missouri for

purposes of federal diversity jurisdiction.

8.      Intervenor University of Illinois-Chicago ("UIC") is a state-run university

"located in Cook County, Illinois." *Id.* at ¶ 34.  However, UIC does not destroy diversity

because it is aligned with Plaintiff in these proceedings. *See, e.g.*, *Perez v. J.A.S. Granite & Tile,*

*LLC*, No. 10 C 4150, 2013 WL 1632055, at *3 (N.D. Ill. Apr. 16, 2013) (assessing alignment of

proposed intervenor when determining whether complete diversity of citizenship exists);

3

*Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993) (observing that diversity is only destroyed if there are residents of the same state on "both sides of a lawsuit").

9. Specifically, UIC intervened on the basis of a worker's compensation lien, *see* Ex. A, on which it can only execute if an "award" or "judgment" is entered against Defendants. *See* 820 Ill. Comp. Stat. Ann. 305/5(b) (an employer may "claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party," and an employer "may in his own name or in the name of the employee . . . commence a proceeding"). UIC and Plaintiff are thus aligned and diversity exists between them and all properly joined Defendants. *See, e.g.*, *Finger v. Firestone Tire & Rubber Co.*, No. 87 C 6901, 1988 WL 1443, at *1 (N.D. Ill. Jan. 5, 1988) (observing that diversity jurisdiction exists where "complete diversity existed both at the time the state court suit was filed and at the time of removal").

10. Plaintiff also named Respondents in Discovery ("RIDs") Home Depot USA, Inc., Menard, Inc., Mac Restoration Contracting, Inc., and Archer Pines Landscaping, Inc. *See generally* Compl. Though Plaintiff does not allege the citizenship of the RIDs, their citizenship is "is irrelevant for diversity purposes." *Sargent v. Cassens Corp.*, No. 06-CV-1042-MJR, 2007 WL 1673289, at *1 (S.D. Ill. June 7, 2007). Indeed, a "respondent in discovery" is the "creature of a special provision of Illinois law that permits a plaintiff to seek no relief other than the possible provision of information relevant to plaintiff's underlying substantive claims." *Wisniewski v. City of Chicago*, 1998 WL 895746, *1 n.1 (N.D. Ill. 1998). "As such, those respondents are purely nominal defendants for federal purposes, so that they play *no part in any removal equation*." *Id.* (emphasis added). Accordingly, as far as federal courts are concerned, a "respondent in discovery" is not a party to a lawsuit and is irrelevant for diversity purposes. *Id.*;

4

*Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1485 n.3 (7th Cir. 1996); *Ford v. Mannesmann Dematic Corp.*, 2000 WL 1469371, *4 (N.D. Ill. 2000); *Murphy v. Schering Corp.*, 878 F. Supp. 124, 125–26 (N.D. Ill. 1995).

11.    Russo is, and was at the time of the filing, a corporation organized under the laws of the State of Illinois with its principal place of business in the State of Illinois.  Compl. at ¶ 26.  However, Russo was fraudulently joined (as set forth in Section B below) and must therefore be disregarded for purposes of assessing whether complete diversity exists.

12.    Thus, complete diversity exists between Plaintiff and UIC, on one side, and Monsanto on the other.

**B.    Russo Was Fraudulently Joined, And Should Be Disregarded For Purposes Of Assessing Diversity Of Citizenship.**

13.    Russo is, and was at the time of the filing, a corporation organized under the laws of the State of Illinois with its principal place of business in the State of Illinois.  *Id.* at ¶ 26.  Accordingly, Russo is deemed to be a citizen of Illinois for purposes of federal diversity jurisdiction.  However, as set forth below, the Court should disregard the presence of Russo for purposes of assessing the propriety of removal because Russo was fraudulently joined.

14.     Fraudulent joinder cannot destroy diversity jurisdiction.  *Poulos v. Naas Foods, Inc.*, 959 F. 2d 69, 72–74 (7th Cir. 1992); *see also Schwartz v. State Farm Mutual Auto Insurance Co.*, 174 F.3d 875, 878–79 (7th Cir. 1999) (affirming district court's decision to retain jurisdiction after fraudulent joinder).  A plaintiff has fraudulently joined a defendant when there is no "reasonable possibility that a state court would rule against the non-diverse defendant." *Poulos*, 959 F. 2d at 73; *see also Asperger v. Shop Vac Corp.*, 524 F. Supp. 2d 1088, 1092 (S.D. Ill. 2007) (same).  "Although plaintiffs are normally free to choose their own forum, they may not join an in-state defendant solely for the purpose of defeating federal jurisdiction." *Hill v.*

5

*C.R. Bard, Inc.*, 582 F. Supp. 2d 1041, 1045 (C.D. Ill. 2008).  Otherwise, as the Seventh Circuit has recognized, a plaintiff "could defeat diversity jurisdiction by joining his grandmother as a defendant—surely some set of facts might make her liable." *Poulos*, 959 F.2d at 74.

15.     In determining whether there has been fraudulent joinder in this case, the Court should consider the legitimacy and legal viability of the negligence claim against Russo, given: (1) the legal protections afforded to a Defendant like Russo, which is simply a pass-through retailer of consumer products, and (2) the factual circumstances pled in support of the claims. *See, e.g.*, *Hale v. Bayer Corp.*, No. 15-CV-00745-JPG-SCW, 2015 WL 5474298, at *3 (S.D. Ill. Sept. 16, 2015) (dismissing retailer under fraudulent joinder doctrine, finding there was no reasonable possibility that an Illinois state court could rule against it).  In *Hale*, the court ruled:

> Regardless of the number of ways in which the Plaintiffs state, restate, or rephrase, the basic facts to which the Plaintiffs bring their allegations against Walgreens is simply that the Plaintiffs shopped in a Walgreens store in Godfrey, Illinois and that Walgreens had Aleve for sale in the store in such as manner as to influence the Plaintiffs that Aleve is safe. ***Such general allegations are insufficient to bring a duty to Walgreens nor is it sufficient to bring a claim within a legally recognized cause of action under Illinois law.***

*Id*. (emphasis added).  Plaintiff's allegations against Russo combined with facts about Russo disclosed through discovery, show that there is no reasonable possibility that Plaintiff can recover against Russo under Illinois law.

16.     Plaintiff's only claim against Russo is for negligence.  *See* Compl. ¶¶ 110–125.

17.     A claim for negligence requires a showing that:  (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) plaintiff's injury was foreseeable; and (4) proximate cause.  *See Brown v. Union Pac. R. Co.*, 2013 IL App (1st) 122496-U, ¶ 16.  "The touchstone of [a] court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King*, 222 Ill. 2d 422, 436

(2006). In determining whether a defendant owed a duty, the Court considers (1) likelihood of injury; (2) reasonable foreseeability of such injury; (3) the magnitude of the burden of guarding against the injury; and (4) consequences of placing that burden on defendant. *Brewster v. Rush–Presbyterian–St. Luke's Med. Center*, 361 Ill. App. 3d 32, 35–36 (2005).

18.     Plaintiff's allegations that Russo owed a duty to Plaintiff are conclusory, non-specific, and made "upon information and belief." *See* Compl. at ¶¶ 26–27, 92–103. For example, Plaintiff alleges "upon information and belief" that Russo knew of the IARC's 2015 findings related to glyphosate, and that it knew of the alleged carcinogenic properties of Roundup®-branded herbicides. *Id.* ¶¶ 100–01. Plaintiff also alleges that Russo "had superior knowledge compared to Roundup® users and consumers" without providing any facts supporting such an assertion. *Id.* ¶ 93.

19.     Such allegations do not plausibly establish the existence of a duty. *See, e.g.*, *Jones v. UPR Prod., Inc.*, No. 14 C 1248, 2015 WL 3463367, at *5 (N.D. Ill. May 29, 2015) (dismissing negligence claim brought against retailer for allegedly selling a defective product without warning the consumer, reasoning that plaintiff failed to provide "fact-based allegations that the nonmanufacturing defendant 'knew or should have known that the [product] was defective at the time'" the defendant sold it"); *Lexington Ins. Co. v. Office Depot, Inc.*, 943 F. Supp. 2d 844, 848 (N.D. Ill. 2013) (dismissing negligence claim brought against retailer for allegedly selling a defective product without warning the consumer, reasoning: "There are no allegations here that Office Depot knew or should have known that the electrical counterfeit currency bill detector was defective, or that the product was defective at the time Office Depot sold it to BOA").

7

20.     Moreover, on October 11, 2019 and October 28, 2019, Monsanto received

documents from which it could first be ascertained that there is no possibility that these

allegations can be cured so that an Illinois court could find that Russo owed a duty to Plaintiff's

decedent.

21.     First, in its Objections and Responses to Plaintiff's First Set of Interrogatories,

Russo stated that it was unaware: (1) of the 2015 IARC finding that glyphosate was a probable

human carcinogen or (2) that exposure to Roundup®-branded herbicides or glyphosate was

allegedly linked to non-Hodgkin's lymphoma.  Ex. B, Russo's Resp. to Pl.'s Interrogs. at 5–7.

Russo also stated that it is not responsible for the design, review, or approval of labels for

Monsanto's Roundup®-branded herbicides, and did not train customers on the use of

Roundup®-branded herbicides.  *Id.* at 10–12 (training), 28–29 (design, review, or approval of

labels).  Finally, Russo stated that it is unaware of any trade shows, industry seminars, product

seminars, training sessions, conferences, and/or meetings that concerned the IARC's 2015

findings regarding glyphosate and/or alleged dangers of Roundup®-branded herbicides or

glyphosate.  *Id.* at 28–29.

22.     These responses are consistent with the more detailed factual assertions set forth

in the Declaration of Eric Adams, attached hereto as Exhibit C, which was received by Monsanto

on October 28, 2019.  Mr. Adams is Russo's Operating President/Managing Direction and

declared the following:

> Russo Hardware, Inc. was never responsible for providing any
> input—and never provided any input—into the design or
> manufacture of Roundup®-branded herbicides or other glyphosate-
> containing products.  Russo Hardware, Inc. had no role in the design
> or manufacture of Roundup®-branded herbicides or other
> glyphosate-containing products.

Russo Hardware, Inc. was never responsible for providing—and never provided—any warnings about Roundup®-branded herbicides or other glyphosate-containing products. Russo Hardware, Inc. had no role in deciding—nor any input in deciding— what warnings were included on labeling for Roundup®-branded herbicides or other glyphosate-containing products.

Russo Hardware, Inc. was never responsible for providing—and never provided—any input in connection with the selection of any of the ingredients used in Roundup®-branded herbicides or glyphosate-containing products. Russo Hardware, Inc. had no role in deciding—nor any input in deciding—what ingredients were included on labeling for Roundup®-branded herbicides or other glyphosate-containing products.

Before this lawsuit was filed, Russo Hardware, Inc. was not aware of any alleged defect associated with nor any alleged concerns regarding the safety of Roundup®-branded herbicides or other glyphosate-containing products. Russo Hardware, Inc. has never thought or believed that Roundup®-branded herbicides or other glyphosate-containing products are defective products, or that they create a risk of cancer or other serious injuries.

Russo Hardware, Inc. would not sell Roundup®-branded herbicides or other glyphosate-containing products if it thought that they were defective products, or that they created a risk of cancer or other serious injuries.

Before this lawsuit was filed, Russo Hardware, Inc. was not aware of the 2015 IARC finding regarding glyphosate and the alleged dangerous and/or carcinogenic qualities of glyphosate.

Before this lawsuit was filed, Russo Hardware, Inc. was not aware that exposure to Roundup®-branded herbicides or glyphosate was allegedly linked to non-Hodgkin's lymphoma.

*Id.* ¶¶ 4–8, 10–11.

23.    Such assertions of fact trump Plaintiff's conclusory allegations made "upon information and belief" for purposes of assessing the viability of Plaintiff's claims. *See, e.g.*, *Rodriguez v. Sheriff's Merit Comm'n of Kane Cty.*, 843 N.E.2d 379, 380 (Ill. 2006) (recognizing that "as against the positive, detailed statements of fact in [an] affidavit, plaintiff's allegations,

9

made on information and belief, are insufficient"); *see also Fooden v. Bd. of Governors of State Colleges & Universities*, 272 N.E.2d 497, 501 (Ill 1971) (recognizing that, "as against positive, detailed averments of fact in an affidavit, allegations made on information and belief by an adverse party are insufficient, for they are not equivalent to averments of relevant facts but rather put in issue only the pleader's information and belief and not the truth or falsity of the 'facts' referred to"); *Whitley v. Frazier*, 171 N.E.2d 644, 646 (Ill. 1961) ("It is clear that an allegation made on information and belief is not equivalent to an allegation of relevant fact. The issue on such an averment simply challenges the existence of the information and belief, not the truth of the facts to which reference is thus made and proof that the plaintiffs were informed of or believed certain facts obviously could not support a finding that they are true in fact.") (internal quotation omitted).

24.     In addition to these documents produced by Russo, Plaintiff herself produced documents on October 11 negating her conclusory allegations that Russo had "superior knowledge" of the alleged defects of Roundup®-branded herbicides. On March 23, 2015, Plaintiff sent the decedent an email containing a link to the IARC's 2015 glyphosate monograph with the description: "WHO's cancer working group: Roundup is 'probably a human carcinogen.'" Ex. D.

25.     UIC also produced documents demonstrating that Plaintiff's decedent enrolled in classes at the College of DuPage including: (1) "Turf Science and Management," where the topics of discussion included "pesticide [which includes herbicides] toxicity and methods of measuring toxicity" and "safety" measures for using pesticides, such as "wear[ing] the necessary protective clothing" and "read[ing] the pesticide label carefully," Ex. E at HRVA000084, HRVA000102–03; and (2) "Landscape Maintenance," where topics of discussion included

10

"Understanding Chemicals," "types of pesticide exposure," "safety practices when applying pesticides," "non-selective herbicides" such as "glyphosate," and the purpose and importance of reading pesticide labels and understanding its contents and meaning. *Id.* at HRVA000104–08, HRVA000113, HRVA000120–137.

26.     Plaintiff's own allegations support that Russo was unaware of any alleged defects in Roundup®-branded herbicides.  Plaintiff alleges that "Defendant Monsanto led a prolonged campaign of misinformation to convince government agencies, farmers *and the general population* that Roundup was safe."  Compl. at ¶ 44 (emphasis added).

27.     In summary: (1) dating back to 2015, Plaintiff and Plaintiff's decedent received references to the IARC glyphosate monograph which serves as the basis for Plaintiff's negligence claim against Russo; (2) Russo was unaware of the glyphosate monograph; (3) Russo was also unaware that Roundup®-branded herbicides and/or glyphosate are allegedly carcinogenic; (4) Russo had no role in the design, manufacture or testing of Roundup®-branded herbicides; (5) Russo never trained customers on how to safely use Roundup®-branded herbicides; and (6) Plaintiff's decedent was trained on how to use herbicides, identify their active ingredients, and protect for any toxicity by, for example, wearing protective gear.

28.     Accordingly, there is no reasonable possibility that a state court would rule against Russo.  The Court should therefore disregard Russo and find that complete diversity exists.

29.     Further, the in-forum defendant rule does not preclude removal because Russo, the only Illinois defendant, was not "properly joined."  *See* 28 U.S.C. § 1441(b)(2).

## II.     The Requisite Amount In Controversy Is Satisfied.

30.     The Complaint seeks compensatory and punitive damages based on allegations that Monsanto's Roundup®-branded herbicides caused Plaintiff's decedent to develop NHL.

Therefore, it is plausible from the face of the Complaint that Plaintiff seeks damages in excess of

$75,000, exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy

requirement. 28 U.S.C. § 1332(a); *see also Dart Cherokee Basin Operating Co. v. Owens,*

135 S. Ct. 547, 554 (2014) ("[A] defendant's notice of removal need include only a plausible

allegation that the amount in controversy exceeds the jurisdictional threshold."); *Ross v. First*

*Family Fin. Servs., Inc.,* 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) ("[U]nspecified

claims for punitive damage sufficiently serve to bring the amount in controversy over the

requisite jurisdictional threshold set out in 28 U.S.C. § 1332."). In fact, other Roundup®

lawsuits seeking damages for NHL allegedly caused by Roundup®-branded herbicides have

been filed against Monsanto in other federal courts asserting jurisdiction under § 1332(a) and

alleging damages in excess of $75,000, exclusive of interest and costs.

31.     Thus, this Court has original subject matter jurisdiction over the claims of

Plaintiff based on § 1332(a) because there is complete diversity of citizenship between plaintiff

and the out-of-state Defendant (disregarding the citizenship of the fraudulently-joined hardware

store), and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

**III.     Monsanto's Notice of Removal Is Timely.**

32.     Under 28 U.S.C. § 1446(b), a defendant must file a notice of removal either

(1) "within thirty days after the receipt by the defendant . . . of a copy of the initial pleading," or

(2) "[i]f the case stated by the initial pleading is not removable, . . . within thirty days after

receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from

which it may first be ascertained that the case is one which is or has become removable."

28 U.S.C. § 1446(b). However, "[a] case may not be removed" on the basis of diversity

jurisdiction "more than 1 year after commencement of the action." 28 U.S.C. § 1446(c).

12

33.     Under Seventh Circuit precedent, "[t]he 30–day removal clock does not begin to run until the defendant receives a pleading or other paper that *affirmatively and unambiguously* reveals that the predicates for removal are present." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013) (emphasis added).

34.     "Assessing the timeliness of removal should not involve a fact-intensive inquiry about what the defendant subjectively knew or should have discovered through independent investigation." *Id.* at 825.

35.     Plaintiff filed his original Complaint on October 30, 2018, in the Circuit Court of Cook County, Law Division. *See* Ex. F, Plaintiff's Complaint at Law.  The Complaint alleged that Russo was an Illinois corporation with its principal place of business in Illinois. *Id.* ¶¶ 17–18.  Thus, "the case stated by the initial pleading was not removable" when filed.  28 U.S.C. § 1446(b).

36.     Russo made clear in its discovery responses that it was never aware of, for example, the IARC glyphosate monograph or the allegation that Roundup®-branded herbicides and glyphosate are allegedly carcinogenic. *See supra*.  Indeed, it was Plaintiff and Plaintiff's decedent who knew of the IARC glyphosate monograph back in 2015, as exhibited by documents produced by Plaintiff. *Id.*  Only when Russo and Plaintiff produced this information did it become "affirmatively and unambiguously" clear that removal was appropriate. *Walker*, 727 F.3d at 824.  Combining this information with Plaintiff's own allegation that "Defendant Monsanto led a prolonged campaign of misinformation to convince government agencies, farmers *and the general population* that Roundup was safe," Compl. at ¶¶ 44 (emphasis added), there can be no doubt that an Illinois court could not find Russo liable for negligence.

13

37. Russo's discovery responses, the documents produced by Plaintiff, and Russo's affidavit, constitute "other paper" sufficient to trigger the 30-day removal period under 28 U.S.C. § 1446(b). *See, e.g.*, *Chapman v. Powermatic, Inc*. 969 F.2d 160 (5th Cir. 1992) ("Clearly the answer to [the] interrogatory which triggered the filing of the notice of removal in this case is such an "other paper"); *Blake v. Wal-Mart Stores, Inc.*, 358 F. Supp. 3d 576, 580 (W.D. La. 2018) (holding that interrogatory responses constituted "other paper"); *Jernigan v. Ashland Oil*, 989 F.2d 812, 815 (5th Cir. 1993) (holding that removal period commenced when a non-diverse defendant's affidavit revealed fraudulent joinder to the diverse defendant).

38. This Notice of Removal falls within the 30-day period set forth in 28 U.S.C. § 1446(b), and the one-year period in 28 U.S.C. § 1446(c), and is therefore timely because Monsanto is filing this Notice of Removal within 30 days of the dates when the above-referenced "other papers" were received (October 11 and October 28, 2019), and not more than one year after the commencement of this action.

## IV. Other Procedural Requirements.

39. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint, as well as all other process, pleadings, and orders filed and served upon Monsanto are attached hereto as Exhibit G.

40. This Notice of Removal is timely, in accordance with 28 U.S.C. § 1446(b), for the reasons set forth above. The consent of the Russo is not required because Russo was not "properly joined." 28 U.S.C. § 1446(b)(2)(A). Moreover, the consent of Intervenor, UIC, is not required because it is aligned with Plaintiff, and the RIDs are disregarded for removal purposes. *See supra* ¶¶ 8–10.

14

41.    The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the

Circuit Court of Cook County, State of Illinois Law Division and will be promptly served on

Plaintiff.

42.    Monsanto does not waive any legal defenses, including but not limited to personal

jurisdiction, and expressly reserves its right to raise any and all legal defenses in subsequent

pleadings in this action.

43.    If any question arises as to the propriety of the removal of this action, Monsanto

requests the opportunity to present a brief and request oral argument in support of removal.

**CONCLUSION**

For the foregoing reasons, Monsanto removes this lawsuit to this Court pursuant to

28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).


Dated:  October 29, 2019                                Respectfully submitted,

                                                        **MONSANTO COMPANY**

                                                        By:  _/s/  Thomas J. Dammrich, II_____
                                                             One of Its Attorneys


Thomas J. Dammrich, II (#6292653)
Peter F. O'Neill (#6324429)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, *Suite 4700*
Chicago, Illinois 60606
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195
Email:  tdammrich@shb.com
        pfoneill@shb.com

15

## CERTIFICATE OF SERVICE

I, Thomas J. Dammrich, II, an attorney, hereby certify that, on **October 29, 2019**,

I caused a true and complete copy of the foregoing **NOTICE OF REMOVAL** to be

electronically filed with the Court via the Court's ECF system. I further certify that I emailed a

copy of same upon the following counsel of record:

Bruno Marasso (bmarasso@rblaw.net)
Bryce Hensley (bhensley(rblaw.net)
**Romanucci & Blandin**
321 N. Clark Street, #900
Chicago, IL 60654

Will Gohl (will.gohl@bartlitbeck.com)
**Bartlit Beck Herman & Associates**
54 W. Hubbard Street, Suite 3
Chicago, IL 60610

Dominique Savinelli
(Dominique.savinelli@huschblackwell.com)
**Husch Blackwell LLP**
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606

Bruce Lyon (blyon@lcllaw.com)
Leah Fuessel (lfuessel@lcllaw.com)
**LaBarge Campbell & Lyon LLC**
200 W. Jackson Street, #2050
Chicago, IL 60606

Brad A. Antonacci (bantonacci@heylroyster.com)
**Heyl, Royster, Voelker & Allen**
33 N. Dearborn Street, 7th Floor
Chicago, IL 60602

*/s/ Thomas J. Dammrich, II*