**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: ROUNDUP PRODUCTS LIABILITY                         MDL No. 2741
LITIGATION

*Randy Bodiford v. Monsanto Company, et al., South Carolina, Case No. 1:19-cv-03133*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO VACATE CTO- 166**

**INTRODUCTION**

In order for this case to be subject to transfer to MDL 2741, there must be a valid basis for subject-matter jurisdiction and a determination that such jurisdiction exists. The constitutional limitation on federal jurisdiction makes federal courts "courts of limited jurisdiction," *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) as opposed to state courts which are generally presumed to have subject-matter jurisdiction over a case. See 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure*, § 3522, p. 100 (3d ed. 2008). A federal court must generally determine whether it has jurisdiction at the outset of litigation and must always make the determination before deciding the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998) (rejecting doctrine of "hypothetical jurisdiction" that would allow a court to rule on an issue of law before adjudicating jurisdiction). It is presumed that a cause lies outside of federal courts' limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am*; 511 U.S. 375, 377 (1994).  All courts have an "independent obligation" to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhgras v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

In the context of this Multidistrict Litigation, if subject matter jurisdiction is lacking in the putative transferor District Court (United States District Court for the District of South Carolina,

1

Aiken Division), the District Court may not transfer this case because without such jurisdiction there is no case to transfer. See *Bancohio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975), holding that a transfer to consolidate litigation may not be made unless the District Court properly has jurisdiction of the subject matter of the case.

## PROCEDURAL & FACTUAL BACKGROUND

Plaintiff is an illiterate, life-long farm worker that spent most of his career working in Barnwell and Allendale Counties in South Carolina. During his time working on farms, Plaintiff routinely used Roundup and other glyphosate-based herbicides. In 2015, Plaintiff began to experience health complications that eventually led to his cancer diagnosis of Non-Hodgkin's Lymphoma. Over the course of his treatment, Plaintiff developed partial paralysis from the waist down due to neurological complications. Plaintiff struggles daily with the difficulties that this cancer has caused in his life.

Plaintiff has brought this action based on the belief that his exposure to Roundup and other glyphosate-based herbicides caused his cancer. Plaintiff's complaint was originally filed in the Court of Common Pleas for Allendale County on July 29, 2019; Case No. 2019-CP-03-00-140. On October 4, 2019, Defendant Browning Farms, Inc. ("Browning") filed a Motion to Transfer Venue, Motion to Dismiss, Memorandum in Support of its Motions, and an Affidavit of Wayne Browning. None of those motions have been heard or decided. Defendant Monsanto Company ("Monsanto") and Helena Agri-Enterprises, LLC d/b/a Helena Chemical Co. ("Helena") filed their responsive pleadings to Plaintiff's case on October 7, 2019. Defendant Monsanto removed this action on November 4, 2019 based on arguments that it derived from the Affidavit of Wayne Browning, the Plaintiff's pleadings, and EPA regulatory findings. On November 18, 2019, Plaintiff filed a Motion to Remand and Motion to Amend his Pleadings. On November 20, 2019, Defendant

2

Monsanto filed a Motion to Stay Proceedings asking this Court to defer any action in this case including ruling on the jurisdiction issues, pending transfer of the case to the MDL Court. Plaintiff vigorously opposed such a stay in his Opposition filing. No discovery has been exchanged or requested by any parties to this matter. No proceedings have been scheduled or requested. The only pending motions before the District Court are Plaintiff's Motion to Remand (ECF No. 9), Defendant Monsanto's Motion to Stay Proceedings (ECF No. 11) and Plaintiff's Opposition to Stay (ECF No. 14).

The most efficient course of action now, both for the parties and for the courts, is for the Judicial Panel on Multidistrict Litigation to vacate CTO- 166 and remand this matter to The Court of Common Pleas for Allendale County, or to permit the United States District Court for the District of South Carolina, Aiken Division, to decide the threshold issue: whether removal was proper. A transfer at this stage would not promote the "just and efficient" conduct of this action and would prejudice Plaintiff by causing further needless delay and unnecessary expense. In addition to justice and efficiency, principles of comity would dictate against the transfer of any action that has an important motion under submission and/or pending especially a motion that will render the question of transfer under §1407 moot if decided in Plaintiff's favor.

If Plaintiff's case is transferred to the multidistrict litigation in California, the extensive delay and the condition of his health will likely prevent him from participating in his own trial. Plaintiff has and will suffer extreme prejudice if this issue is not promptly and accurately resolved.

## ARGUMENT AND AUTHORITY

A conditional transfer order is an administrative act of the Panel Clerk "which can and will be vacated upon the showing of good cause by any party." *In re: Grain Shipment Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (*citing In re: IBM Antitrust Litig.*, 316 F. Supp.976 (J.P.M.L.

1970)). Good cause exists where consolidation fails to promote the "just and efficient" conduct of the action. See 28 U.S.C. § 1407(a); see also H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968 USCCAN 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient conduct of such actions and be for the convenience of the parties and witnesses"). Congress intended for consolidation to be ordered "only where significant economy and efficiency in judicial administration may be obtained." See H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1900 (emphasis added).

This Court should vacate the CTO- 166 regarding SC/ *1:19-cv-03133* because a transfer pursuant to 28 U.S.C. §1407 is not proper when the transferring U.S. District Court does not have proper jurisdiction, as is the case here. *See BancOhio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975). Plaintiff properly filed his action in South Carolina state court. Defendant Monsanto improperly removed the action to the U.S. District Court based upon a claim of diversity jurisdiction. Contrary to Defendant Monsanto's argument, the U.S. District Court does not have diversity jurisdiction, because Plaintiff is a South Carolina citizen who brought valid state law claims against another South Carolina corporation, Browning Farms, in addition to his claims against Monsanto. As evidenced below, because Monsanto's notice of removal was untimely and Defendant Browning Farms was not fraudulently joined, there is no basis for federal jurisdiction in this case. Furthermore, a transfer is less warranted when the bulk of MDL common discovery is completed and therefore does not add to the just and efficient conduct of this action. In fact, a transfer is no longer required as all common issues have been resolved and a phased transfer of cases has already been scheduled by the transferee court. Furthermore, transfer of this case will not provide convenience for the parties or witnesses but will only severely prejudice Plaintiff.

Therefore, there are compelling facts and legal authority for this Panel to grant Plaintiff's

4

Motion to Vacate CTO-166.

### I. This Action is Not Removable Because of Incomplete Diversity Between Plaintiff and Defendant Browning Farms and the Home State Defendant Rule

The Defendants cannot meet their burden of establishing federal jurisdiction because, as the Defendants have conceded, complete diversity amongst all parties does not exist. Defendant Browning Farms is a business organization that exists under the laws, maintains its principal place of business, and exclusively operates in the State of South Carolina - the same state as Plaintiff.

Defendant Monsanto argues that Defendant Browning Farms should be disregarded because it was fraudulently joined. To prove fraudulent joinder, a Defendant must show either "that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (internal quotation marks omitted). The Defendants do not allege any outright bad faith in pleading; therefore, the proper and only inquiry is whether Plaintiff has *any possibility* of recovery against the non-diverse defendant after resolving all issues of law and fact in Plaintiff's favor. "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Id.* at 232-33. "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).

Although the "no possibility" standard is the clearly established precedent, Defendant Monsanto cites *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005), for the alternative, albeit less stringent, "real intention" standard that fraudulent joinder exists when a

5

nominal, nondiverse defendant is joined solely for the tactical reason to destroy diversity without any intention of ever recovering from such defendant. This "real intention" standard was first developed in *AIDS Counseling & Testing v. Grp. W. Tel. Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990). *AIDS Counseling* has been interpreted to support the proposition that the "no possibility" standard is to be applied reasonably, not rigidly, and that a district court should look outside the pleadings and to the entire record in order to determine whether there was fraudulent joinder insofar as the plaintiff has a "real intention to get a joint judgment." *Id*. at 1003. Importantly however, a close examination of *AIDS Counseling* and the Fourth Circuit's subsequent decisions concerning fraudulent joinder reveals that the "no possibility" standard—not the "real intention" standard—is the correct standard for fraudulent joinder, and that although a district court may look beyond the pleadings in determining whether there is fraudulent joinder in certain circumstances, it is not required nor is it appropriate in some instances. *See Mayes v. Rapaport,* 198 F.3d 457, 461 (4th Cir. 1999) (to show fraudulent joinder, a removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is ***no possibility*** that the plaintiff would be able to establish a cause of action against the in-state defendant in state court) (emphasis added).

Importantly, the Fourth Circuit has only applied the standard enumerated in *AIDS Counseling* in two subsequent cases, and then only where the plaintiff is attempting to join a non-diverse defendant ***after removal***. *See Kinley v. Husqvarna Consumer Outdoor Products, N.A., Inc.*, C/A No. 5:18-cv- 01845-CMC, 2018 WL 4403391, at *1 n.1 (D.S.C. September 17, 2018) (emphasis added) (reviewing *AIDS Counseling* precedents, declining to apply the "real intention" standard, applying the "no possibility" standard and limiting the Court's consideration to the pleadings). Furthermore, the Court has previously found that when considering the "no possibility" standard in a fraudulent joinder or fraudulent misjoinder context, courts should not solely look to

6

the intentions of the plaintiff. *See Cty. of Anderson v. Rite Aid of South Carolina, Inc.*, Case No.: 8:18-cv-1947-BHH, 2018 WL 8800188 at *6 (D.S.C. Aug. 20, 2018) ("Accordingly, a plaintiff's intention not to seek a judgment alone should not be a ground for a finding of fraudulent joinder."); *In re Lipitor Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2:14-mn-02502-RMG 2016 WL 7339811 at *6 (D.S.C. Oct. 24, 2016) (finding that the "no possibility standard is not as vague as the standard articulated by some courts" and "does not require a state-of-mind element.").

Nonetheless, Defendant Monsanto has cited to and relied on *Linnin,* as a progeny of *AIDS Counseling* and a line of analysis that has not been adopted by the Fourth Circuit. In *Linnin*, the district court applied what appears to be a modified version of the "no possibility" standard to inquire into plaintiff's real intention for naming the defendant. *See Linnin,* 372 F. Supp. 2d at 819–20. Ultimately, the *Linnin* Court held that the nominal defendant had been named for tactical reasons and that the plaintiff's claim failed because there was no possibility that defendant was a proximate cause of plaintiff's alleged injury. *Id*. at 821. More importantly, this reflects that the district court in *Linnin* still reached its conclusion based on the "no possibility" standard despite citing and considering the "real intention" language of *AIDS Counseling*. *Id*. at 821. Thus, although it may be unclear which standard the district court in *Linnin* ultimately applied, it is clear that the *Linnin* court held that even under the no possibility standard, the plaintiff's claim failed.

Defendant Monsanto relied on this case law in its Notice of Removal to soften the rigidity of the stringent "no possibility" fraudulent joinder standard. (ECF #1 – Notice of Removal, ¶ 14). Defendant Monsanto somewhat blurs the lines between the two standards by citing *Linnin* for the proposition that "the no possibility standard cannot possibly be taken literally or applied mechanically," and also that "there is no reasonable basis for the district court to predict that

plaintiff might be able to recover against an in-state defendant." *Id*. However, Defendant Monsanto's arguments do not accurately reflect the stringent and clearly established precedents of *Hartley* that there must be "no possibility" and *Mayes* that "there need be on a slight possibility of a right to relief." *Hartley*, 187 F.3d at 424; *Mayes*, 198 F.3d at 466. Furthermore, Plaintiff is unable to discover an instance in which the blended "real intention" standard addressed in *Linnine* has also been applied in a District Court for the State of South Carolina or in the Fourth Circuit other than as is mentioned above. Accordingly, Defendant Monsanto's reliance on the "real intention" standard of "predicting that plaintiff might be able to recover against an in-state defendant" is improper and is inapplicable to the present case.

Thus, an analysis of Defendant Monsanto's assertion of fraudulent joinder begins with the proper application of determining whether even a "slight possibility of a right of relief" exists for Plaintiff against Defendant Browning Farms. *Hartley*, 187 F.3d at 426. "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id*. "The chance of a challenged removal based on fraudulent joinder succeeding when the discovery period remains open fades to an infinitesimal amount when the plaintiff produces any evidence in support of the element at issue." *Boyd v. Guinyard*, C/A No.: 5:18-cv-00269-JMC, 2018 WL 3322971, at *3 (D.S.C. July 6, 2018) (internal citations omitted). "The mere fact that discovery remains open prevents the court from concluding that such evidence would be impossible to come by." *Id*. There need be only a slight possibility of a right to relief to defeat a claim of fraudulent joinder. *Hartley*, 187 F.3d at 426 (citing *Marshall*, 6 F.3d at 233). Plaintiff has alleged two specific causes of action against Defendant Browning Farms: (1) failure to warn and (2) negligence.

In order to bring a cause of action for failure to warn in South Carolina, a Plaintiff must allege that his use of the unreasonably dangerous product was without a suitable or adequate

warning that should have been provided by a Defendant. *Marchant v. Lorain Division of Koehring*, 272 S.C. 243, 247 (1979). Furthermore, when this cause of action is premised on negligence, then such duty to warn may be extended beyond the manufacturer to a purchaser-employer that provides it to their employees. *See Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 550 (Ct. App. 1995) (recognizing the interplay of the sophisticated user doctrine and an employee's reliance on his employer to recognize the dangers associated with a product); *see also Goodbar v. Whitehead Bros.*, 591 F. Supp. 552 (W.D. Va. 1984), *aff'd sub nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir.1985) (in failure to warn case brought by employees of foundry suffering from silicosis, the court found that because supplier had reason to believe that the knowledgeable industrial purchaser of the product (the foundry) would recognize the dangers associated with the product, the supplier's reliance on the foundry to warn and protect the workers was reasonable, and the supplier was not mandated to give warnings directly to the employees). Plaintiff's specific allegations directed at Defendant Browning Farms regarding the failure to warn are as follows:

> Defendant Browning Farms knew or should have known the of the risks associated with the reasonably foreseeable uses (and misuses) of Roundup® and glyphosate-containing products and had a duty to warn Plaintiff, who they instructed to use the product, of those risks.

(Complaint, ¶ 85). These allegations clearly comport with the required pleading for asserting a claim of failure to warn. Also, of importance, this negligence action is Plaintiff's only recourse for his claim against Browning Farms because pursuant to S.C. Code § 42-1-360(4), Plaintiff is not entitled to bring any worker's compensation action. Thus, Plaintiff's sole recourse and avenue for pursuing compensation for his damages is to bring this action tort action against his former employer.

Plaintiff has also directed a general negligence claim against Defendant Browning Farms.

This claim of negligence is similarly premised on the failure of Defendant Browning to exercise reasonable care in advising and protecting its employees while using and implementing Roundup in its farming operations. (Complaint, ¶¶ 109-37). Again, Plaintiff properly and adequately plead viable causes of action against Defendant Browning Farms on the grounds of negligence.

In challenging the validity of Plaintiff's claims, Defendant Monsanto relies on the affidavit of Wayne Browning which conclusively states that no one at Browning Farms "was aware of or had knowledge of the alleged dangers of Roundup." (Browning Aff. ¶ 10). As a preliminary matter, such an affidavit merely evidences the existence of a question of fact and cannot be interpreted as an un- equivocated absolution of liability. Arguably, by merely providing a statement in an affidavit that challenges the allegations of the complaint, Defendant Browning Farms recognizes and provides a factual basis to support the proposition that it is proper party to these proceedings and concedes the basic tenet of the fraudulent joinder inquiry that there is a possibility of a right of relief against it. That is to say, that taken in a light most favorable to the Plaintiff, it must be inferred that Defendant Browning Farms, through its own self-serving affidavit, has conceded that Plaintiff has established a cause of action against it since it is challenging such allegations.

Furthermore, Wayne Browning also states that he provided Mr. Bodiford with "gloves to wear by working with subject product," and that he "offered to purchase a coverall suit for Randy Bodiford to use while working with the subject product." (Browning Aff. ¶¶ 14-15). This testimony exhibits an apparent contradiction in the level of awareness and concern that Browning Farms had when handling Roundup. Certainly, if Wayne Browning admits that there was a reason to use gloves and a coverall suit as personal protective gear, then he must also admit that he believed that the chemicals being handled with such personal protective equipment was potentially harmful or injurious to the handler. At least that is the reasonable inference that a factfinder could draw –

giving rise to much more than the "slight glimmer of hope" that this jurisdictional inquiry requires. *Hartley*, 187 F.3d at 426. Nonetheless, these reasonable inferences are also supported by the Affidavit of the Plaintiff (Attached hereto as "Exhibit A") which sets forth additional factual bases supporting claims against Defendant Browning Farms. Plaintiff provides that he was completely reliant on Defendant Browning Farms and Wayne Browning for all instructions on when, where, and how to use Round Up. (Bodiford Aff. ¶¶ 4, 7, 9, 10-16). In fact, Plaintiff Bodiford is unable to read or write and he completely relied on Wayne Browning to warn him of any dangers in handling products. (Bodiford Aff. ¶ 4, 11, 12, 22). Although Plaintiff concedes that rubber gloves were made available on some instances for handling other chemicals, he explicitly denies that they were provided for use with Roundup and that Wayne Browning offered to purchase him a coverall suit for use with Roundup as well. (Bodiford Aff. ¶ 13).

Moreover, Defendant Monsanto has raised their own responsive allegations and affirmative defenses which will require the inclusion of Defendant Browning Farms. Defendant Browning Farms is a necessary and indispensable party to this litigation in order to appropriately and completely determine the questions of fact that Defendant Monsanto has raised by asserting the defenses of the conduct of third parties, the apportionment of damages amongst liable parties, the misuse of the product, the abnormal use of the product, the failure to follow instructions, the acts or omissions of others, and the sophisticated user doctrine. (Def. Monsanto Answer, Separate and Affirmative Defenses ¶¶ 5, 12, 14, 15, 24, and 26).

As previously mentioned, the duty to warn may be extended beyond the manufacturer to a purchaser-employer that provides it to their employees. *See Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 550 (Ct. App. 1995). If Defendant Monsanto intends to assert the Sophisticated User Doctrine as a counter argument to this duty to warn, then Defendant Browning Farms is an essential party

11

because of Plaintiff's inability to read or write and his reliance on Wayne Browning to relay such warnings. (Bodiford Aff. ¶ 22). Each of the aforementioned defenses will undeniably involve and implicate questions of fact related to Defendant Browning Farms. Unless Defendant Monsanto intends to abandon these affirmative defenses, Defendant Browning Farms remains a proper co-defendant to this action.

## II. Defendant Monsanto's Notice of Removal is Untimely.

Plaintiff filed his complaint in the Court of Common Pleas for Allendale County on July 29, 2019. Defendant Monsanto requested an extension from Plaintiff's counsel to respond by October 7, 2019. Plaintiff's counsel provided the extension and Defendant Monsanto filed its responsive pleadings on October 7, 2019 as agreed amongst the parties. Pursuant to 28 U.S.C. 1446(b), a defendant has thirty days to file a notice of removal after being served with a complaint. Accordingly, as an initial matter, if Defendant Monsanto intended to challenge the Plaintiff's pleadings or raise another issue that already existed as its basis for removal, then a Notice of Removal on those basis had to of been filed by the agreed upon deadline which was October 7, 2019. Defendant Monsanto removed this action on November 4, 2019, and provided that the basis for the removal was derived from the Affidavit of Wayne Browning, EPA regulatory findings, and Plaintiff's allegations. (ECF #1 – Notice of Removal, ¶ 4). The Affidavit of Wayne Browning was produced by Defendant Browning Farms on October 4, 2019; however, the EPA regulatory findings dated August 8, 2019, and Plaintiff's allegations were beyond the point of consideration as a basis for removal after October 7, 2019. Thus, any argument by Defendant Monsanto that is premised on EPA regulatory findings and Plaintiff's allegations is untimely and waived. This specifically includes and requires that all legal grounds argued by Defendant Monsanto in Paragraphs 15-20, 22-26, and 28 of Defendant Monsanto's Notice of Removal should be

disregarded.

Defendant Monsanto is likely to argue that pursuant to 28 U.S.C. § 1446(b)(3), an opportunity for removal may arise after some information is ascertained that makes the case removable. A Defendant seeking removal based on the grounds of new information has thirty days from the date that the information "may first be ascertained." 28 U.S.C. § 1446(b)(3). Defendant Monsanto is likely to assert that the new information gleaned from the Affidavit of Wayne Browning allowed them to ascertain their grounds for removal. However, the burden of persuasion is on Defendant Monsanto to show that the action was duly removed, and any substantial doubts as to the propriety of removal must be resolved against them. *See Brown v. Kearse*, 481 F. Supp. 2d 515, 521 (D.S.C. March 19, 2007). The statements presented by the Affidavit of Wayne Browning and relied on by Defendant Monsanto in their Notice of Removal were already raised by the pleadings of the parties. No new information was ascertained or gleaned from the affidavit. Arguably, the well-informed and knowledgeable parties involved in these proceedings could have and should have intelligibly discovered the grounds that they are now relying on simply based off initial information that was publicly available and contained within the pleadings. The Affidavit of Wayne Browning merely reiterates the same general allegations and denials of the parties. Thus, no new information has been ascertained that would provide them with a basis for removal, and accordingly, their Notice of Removal is untimely.

### III.  A Transfer is Less Warranted when the Bulk of MDL Common Discovery is Complete and Common Issues have been Resolved and therefore Will Not add to the "Just and Efficient" Conduct of this Action

A conditional transfer order is an administrative act of the Panel Clerk "which can and will be vacated upon the showing of good cause by any party." *In re: Grain Shipment Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (*citing In re: IBM Antitrust Litig.*, 316 F. Supp.976 (J.P.M.L.

1970)). Good cause exists where consolidation fails to promote the "*just and efficient*" conduct of the action. *See* 28 U.S.C. § 1407(a) (emphasis added); *see also* H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968 USCCAN 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient conduct of such actions and be for the convenience of the parties and witnesses"). Congress intended for consolidation to be ordered "only where significant economy and efficiency in judicial administration may be obtained." H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1900 (emphasis added).

"Multidistrict litigation is not static." *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.,* 659 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009) (granting motion to vacate). This Panel has recognized that "[o]ver the course of time, the relative merits of transferring additional cases can change as the transferee court completes its primary tasks." *Id.* For that reason, "[a]fter a certain point . . . the benefits of transfer should not be assumed to continue." *Id.* As a result, motions to vacate are often granted where the transferee court "has reached an advanced stage." *Id*. Here, MDL No. 2741 is at an advanced stage and has already "accomplished essentially all of the primary objectives of centralization." *See In re Cessna 208 Series Aircraft Products Liability Litigation,* 655 F. Supp. 2d 1379 (J.P.M.L. 2009).

Where the "bulk" of common discovery has been completed (or is in the process of being completed) and can be made available to other parties, transfer is less warranted. *In re A.H. Robins Co., Inc.*, 610 F. Supp. 1099, 1100 (J.P.M.L. 1985) (denying motion to transfer); *see also In re Richardson-Merrell, Inc.*, 582 F. Supp. 890, 891 (J.P.M.L.), on reconsideration, 588 F. Supp. 1448 (J.P.M.L. 1984) (vacating transfer where "discovery pertaining to common issues has been completed in the transferee district" and "procedures exist whereby relevant discovery already completed in the transferee district may be made available to parties in newly filed actions").

This MDL proceeding has been pending before Judge Vince Chhabria in the Northern District of California since October 6, 2016. Currently, there are numerous cases pending before the MDL that were filed in other jurisdictions and transferred to this District pursuant to 28 U.S.C. § 1407. General discovery has been completed in MDL 2741, including *Daubert* hearings, and the completion of a bellwether trial. Pre-trial and post-trial motions were filed by both parties resulting in significant rulings on issues of facts and law that can properly be applied by the South Carolina Courts. Judge Chhabria has thus ordered a phased remand schedule based upon groupings by state. Exhibit B (PTO-150). In each group, only case-specific discovery and case- specific pre-trial motions needs to be completed at which point Judge Chhabria will suggest remand for those cases. *Id.* No further general discovery is contemplated. *Id.*

The specter of inconsistent rulings on identical issues or duplicative discovery no longer exists, and concomitantly, the benefits of being included in the multidistrict litigation have disappeared. The stated objective of an MDL transfer is to avoid duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort on the part of the parties, the attorneys, the witnesses, and the courts. *See In re Plumbing Fixture,* 298 F.Supp. 484 (J.P.M.L. 1968). This objective has now been served. The core or common discovery has been completed and further centralized pretrial proceedings are unnecessary, unwarranted and unhelpful. PTO-150 does not address the status of newly filed cases that have not yet been transferred. Adding new cases to the MDL would only slow down the phased remand process and create inefficiencies and inconvenience for those cases currently pending in the MDL. *In re: Checking Account Overdraft Litigation* (U.S. Jud. Pan. Mult. Lit. 2011) 818 F.Supp.2d 1373 (...the Panel must always consider the impact that transfer of that action could have on the cases already in the MDL.")

Given the current status of the MDL and the Court's own remand of actions in the MDL, Monsanto's generalized blanket statement for all cases that "pretrial consolidation promotes the just and efficient conduct of such actions" is not warranted or supported in this case. Especially, given the fact that the procedural rules for removal were not followed by Defendants making their removal untimely and invalid. These issues alone make this case distinguishable from other cases presently pending in the MDL. Therefore, based on the legal precedent above, the specific circumstances of this case, and good cause shown by Plaintiff in his Motion, this Panel should vacate CTO-166.

**IV.     Transfer of This Case Will Not Ensure Convenience for the Parties or the Witnesses**

Despite Monsanto's statements to the contrary, The Court of Common Pleas for Allendale County, South Carolina, is more convenient for the parties than the MDL in California. It is certainly more convenient to Plaintiff since he currently lives in South Carolina and was exposed to Roundup in South Carolina. Plaintiff suffered harm in Allendale and Barnwell Counties in South Carolina and filed his suit in the Court of Common Pleas in Allendale County, South Carolina. During his treatment, Plaintiff developed partial paralysis from the waist down due to neurological complications. Plaintiff struggles daily with the difficulties that this cancer has caused in his life. Plaintiff remains disabled and unable to walk despite ongoing physical therapy efforts, and it is anticipated he will continue to receive additional treatment although his prognosis is poor. A transfer would force Plaintiff to incur a huge delay to litigate his case in a distant court (California), and/or file motions to be remand in a distant court that involves South Carolina law. Any such litigation and delayed timetable in a court not of his choosing would be extremely prejudicial and inconvenient, given his condition. If this case is transferred by the MDL Panel, Plaintiff will not be able to litigate this case in a South Carolina state court where it was properly filed and the State

16

of South Carolina will not be able to decide this case, in which it holds a substantial interest. This Panel should prevent this extreme prejudice to Plaintiff by granting his Motion to Vacate CTO - 166.

In addition, the fact witnesses in this case, including Plaintiff's physicians and some of Defendants' potential witnesses, all reside in South Carolina, making it a more convenient venue for them than California. Also, the corporate witnesses for Monsanto have already testified via video depositions and these videos can be played at trial in the state court of South Carolina. Without any travel obligations for trial there is certainly no prejudice to Monsanto.

Furthermore, as referenced above, the bulk of the common discovery in the MDL cases has been completed and issues of fact and law have already been adjudicated by the MDL court. Therefore, transfer to the Northern District of California will not foster any additional convenience for the parties, and therefore CTO-166 should be vacated.

## **CONCLUSION**

There is no complete diversity among the parties. Consequently, the United States District Court for the District of South Carolina, Aiken Division, does not have jurisdiction in this case, and transfer to the Multidistrict Litigation is improper because it will not promote the "just and efficient" conduct of the action and will not ensure "convenience for the parties and witnesses". In addition, a transfer is no longer required as all common issues have been resolved and a phased transfer of cases has already been scheduled by the transferee court. Based upon the foregoing, Plaintiff respectfully requests the Judicial Panel on Multidistrict Litigation vacate CTO-166 and remand this matter to The Court of Common Pleas for Allendale County, South Carolina, or allow the U.S. District Court for the District of South Carolina, Aiken Division, to rule upon Plaintiff's Motion to Remand.

Dated: December 5, 2019

Respectfully submitted,

*/s/ John E. Tomlinson*
John E. Tomlinson
Rhon E. Jones
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.**
Post Office Box 4160
218 Commerce Street
Montgomery, Alabama 36103
Phone: (334) 269-2343
Fax: (334) 954-7555
john.tomlinson@beasleyallen.com
rhon.jones@beasleyallen.com

OF COUNSEL:

Mark D. Ball, Esq. (Fed ID# 5122)
Neil E. Alger, Esq. (Fed ID# 11903)
Peters Murdaugh Parker Eltzroth & Detrick, PA
101 Mulberry Street East
Post Office Box 457
Hampton, South Carolina 29924
Phone: (803) 943-2111
Fax: (803) 943-3943
nalger@pmped.com

*Attorneys for Plaintiff Randy Bodiford*