JURY

# U.S. District Court
## District of South Carolina (Florence)
### CIVIL DOCKET FOR CASE #: 4:19-cv-03509-MDL

| | |
|---|---|
| Ward v. Monsanto Company | Date Filed: 12/17/2019 |
| Assigned to: Unassigned - MDL | Jury Demand: Both |
| Case in other court:  Florence County Common Pleas, 2019-CP-21-03214 | Nature of Suit: 365 Personal Inj. Prod. Liability |
| Cause: 28:1332 Diversity-Product Liability | Jurisdiction: Diversity |

**Plaintiff**

**Raleigh O Ward**     represented by     **H Steven DeBerry , IV**
DeBerry Law Firm
129 S Coit Street
Florence, SC 29501
843-676-6289
Email: sdeberry@deberrylawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M Saleeby , Jr**
Aiken Bridges
PO Drawer 1931
Florence, SC 29503
843-669-8787
Fax: 843-664-0097
Email: jms@aikenbridges.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**     represented by     **James Andrew Bradshaw**
Gallivan White and Boyd
55 Beattie Place
Suite 1200
Greenville, SC 29601
864-241-7003
Fax: 864-271-7502
Email: dbradshaw@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald K Wray , II**
Gallivan White and Boyd
55 Beattie Place
Suite 1200
Greenville, SC 29601

864-271-9580
Fax: 864-271-7502
Email: rwray@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/17/2019 | 1 | NOTICE OF REMOVAL from Florence County Common Pleas, case number 2019-CP-21-03214. (Filing fee $ 400 receipt number 0420-8833954), filed by Monsanto Company. (Attachments: # 1 Exhibit 1 - State Court Pleadings)(prou, ) (Entered: 12/18/2019) |
| 12/17/2019 | 3 | Local Rule 26.01 Answers to Interrogatories with jury demand by Monsanto Company. (prou, ) (Entered: 12/18/2019) |
| 12/18/2019 | 4 | ***DOCUMENTS E-MAILED: 1 Notice of Removal and a certified copy of the docket sheet to the Judicial Panel on Multidistrict Litigation. (prou, ) (Entered: 12/18/2019) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/18/2019 16:06:32 | | | |
| **PACER Login:** | hllp1982:2634105:4722683 | **Client Code:** | 1417.0049 |
| **Description:** | Docket Report | **Search Criteria:** | 4:19-cv-03509-MDL |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) <br> ) <br> COUNTY OF FLORENCE ) <br> ) <br> Raleigh O. Ward, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Monsanto Company, ) <br> ) <br> Defendant. ) <br> _____ ) | IN THE COURT OF COMMON PLEAS <br> C/A NO.: 2019-CP-21- <br> <br> **COMPLAINT** <br> <br> **(Jury Trial Demanded)** |

The Plaintiff alleges:

## PARTIES

1. That the Plaintiff, Raleigh O. Ward, is a citizen and resident of the County of Florence, State of South Carolina.

2. That upon information and belief, Defendant Monsanto Company ("Monsanto") is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri; at all times relevant to this complaint, Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup®. Monsanto has regularly transacted and conducted business within the State of South Carolina, and has derived substantial revenue from goods and products, including Roundup®, used in the State of South Carolina. Monsanto expected or should have expected their acts to have consequences within the State of South Carolina, and derived substantial revenue from interstate commerce.

3. Plaintiffs are informed and believe and based thereon allege that in committing the acts alleged herein, each and every agent, managing agent, representative, and/or employee of the Defendant was working within the course and scope of said agency, representation and/or

3

employment with the knowledge, consent, ratification, and authorization of the Defendant and their directors, officers and/or managing agents.

4. That the majority of Plaintiff Raleigh O. Ward contact with RoundUp® occurred while he was working in Florence County in the State of South Carolina.

5. Plaintiff Raleigh O. Ward was, at all relevant times, a farmer in Florence County, where his responsibilities included the mixing of concentrated containers of Roundup®, including other non-branded forms of Roundup®, as well as the direct application in connection with farming activities.

6. Mr. Ward was diagnosed with non-Hodgkin's Lymphoma on or about October 8, 2018 at the age of 67.

### FIRST CAUSE OF ACTION
(Strict Liability – Design Defect)

7. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

8. Plaintiffs bring this strict liability claim against Defendant for defective design.

9. At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup® products into the stream of commerce. These actions were under the ultimate control and supervision of Defendant. At all times relevant to this litigation, Defendant designed, research, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Roundup® products that Plaintiff was exposed to, as described above.

10. At all times relevant to this litigation, Defendant's Roundup® products were manufactured,

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiff.

11. At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in South Carolina and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant and used in the manner as designed.

12. Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of the Defendant's manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

13. Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of Defendant's manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

14. At all times relevant to this action, Defendant knew or had reason to know that Roundup® products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendant.

15. Therefore, at all times relevant to this litigation, Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant were defective in design and formulation, in one or more of the

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

following ways:

    a. When placed in the stream of commerce, Defendant's Roundup® products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

    b. When placed in the stream of commerce, Defendant's Roundup® products were unreasonably dangerous in that they were hazardous and posed a risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

    c. When placed in the stream of commerce, Defendant's Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

    d. Defendant did not sufficiently test, investigate, or study its Roundup® products, to include the active ingredient glyphosate.

    e. Exposure to Roundup® and glyphosate-containing products presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

    f. Defendant knew or should have known at the time of marketing its Roundup® products that exposure to Roundup®, to include its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

    g. Defendant did not conduct adequate post-marketing surveillance of its Roundup® products.

    h. Defendant could have employed safer alternative designs and formulations

16. Plaintiff was exposed to Defendant's Roundup® products during the course of his work as a farmer, as described above, without knowledge of its dangerous characteristics.

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

17. At all times relevant to this litigation, Plaintiff was exposed to the use of Defendant's Roundup® products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

18. Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of exposure.

19. The harm caused by Defendant's Roundup® products far outweighed their benefit, rendering Defendant's products dangerous to an extent beyond that which an ordinary consumer would contemplate. Defendant's Roundup® products were and are more dangerous than alternative products and Defendant could have designed its Roundup® products to make them less dangerous. Indeed, at the time that Defendant designed its Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

20. At the time Roundup® products left Defendant's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's herbicides.

21. Defendant's defective design of its Roundup® products was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Roundup® products, including the Plaintiff herein.

22. Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Defendant is strictly liable to Plaintiff.

23. The defects in Defendant's Roundup® products were substantial and contributing factors in causing Plaintiff's grave injuries, and, but for Defendant's misconduct and omissions, Plaintiff would not have sustained his injuries.

24. Defendant's conduct, as described above, was reckless. Defendant risked the lives of

consumers and users of its products, including Plaintiff, with knowledge of the safety problems associated with Roundup® and glyphosate-containing products, and suppressed this knowledge from the general public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting public. Defendant's reckless conduct warrants an award of punitive damages.

25. As a direct and proximate result of Defendant's placing defective Roundup® products into the stream of commerce, Mr. Ward has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including chemotherapy), and surgery; Mrs. Ward has suffered loss of consortium.

## SECOND CAUSE OF ACTION
### (Strict Liability – Failure to Warn)

26. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

27. Plaintiffs bring this strict liability claim against Defendant for failure to warn.

28. At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, promoting and applying Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup®, including the active ingredient glyphosate. These actions were under the ultimate control and supervision of Defendant.

29. Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Roundup® products, and in the course of same, directly advertised or marketed the products to consumers and end users, including the Plaintiff, and persons responsible for consumers (such as employers), and therefore had a duty to warn of the risks associated with the use of Roundup® and

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

glyphosate-containing products.

30. At all times relevant to this litigation, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendant had a continuing duty to warn the Plaintiff of the dangers associated with Roundup® use and exposure. Defendant, as manufacturer, seller, or distributor of chemical herbicides, are held to the knowledge of an expert in the field.

31. At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

32. At all times relevant to this litigation, Defendant failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of this product and to those who would foreseeably use or be harmed by Roundup®, including Plaintiff.

33. Despite the fact that Defendant knew or should have known that Roundup® posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of its products and the carcinogenic characteristics of glyphosate, as described above, were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied or sold the product, and not known to end users and consumers, such as Plaintiff.

34. Defendant knew or should have known that these products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn

consumers and reasonably foreseeable users of the risks of exposure to its products. Defendant has wrongfully concealed information concerning the dangerous nature of Roundup® and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

35. At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in California and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, marketed and sprayed/applied by Defendant.

36. Plaintiff was exposed to Roundup® products, as described above, without knowledge of their dangerous characteristics.

37. At all times relevant to this litigation, Plaintiff was exposed to the use of Defendant's Roundup® products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

38. Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products prior to or at the time of Plaintiff's exposure. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendant.

39. Defendant knew or should have known that the minimal warnings disseminated with or accompanying the application of Roundup® products were inadequate, but they failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses, including agricultural and horticultural applications.

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

40. The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled those exposed such as Plaintiff to utilize the products safely and with adequate protection. Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

41. To this day, Defendant has failed to adequately and accurately warn of the true risks of Plaintiff's injuries associated with the use of and exposure to Roundup® and its active ingredient glyphosate, a probable carcinogen.

42. As a result of their inadequate warnings, Roundup® products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were sold or distributed by Defendant, were applied by Defendant, and when Plaintiff became exposed.

43. Defendant is liable to Plaintiff for injuries caused by negligent or willful failure, as describe above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of their products and the risks associated with the use of or exposure to Roundup® and glyphosate; in addition, Defendant allowed others to manufacture the product without warnings or disclosing its knowledge of the dangers.

44. The defects in these Roundup® products were substantial and contributing factors in causing Plaintiff's injuries, and, but for Defendant's misconduct and omissions, Plaintiff would

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

not have sustained their injuries.

45. Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with Roundup® products and application, Plaintiff could have avoided the risk of developed injuries as alleged herein and the company who employed Plaintiff could have obtained alternative herbicides.

46. As a direct and proximate result of Defendant placing defective Roundup® products into the stream of commerce and exposing Plaintiff to them, Mr. Ward has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including chemotherapy), and surgery.

### THIRD CAUSE OF ACTION
### (Negligence)

47. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

48. Defendant, directly or indirectly, caused Roundup® products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.

49. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

50. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup® products. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information

concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup®, to include its active ingredient glyphosate.

51. At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup®, including the carcinogenic properties of the chemical glyphosate.

52. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that use of or exposure to Roundup® could cause or be associated with Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

53. Defendant also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup® and glyphosate-containing products.

54. As such, Defendant breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Defendant manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

55. Despite ability and means to investigate, study, and test products and to provide adequate warnings, Defendant has failed to do so. Indeed, Defendant wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

Roundup® and glyphosate.

56. Defendant's negligence included:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® products without thorough and adequate pre- and post-market testing;

b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failed to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;

c. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture and horticulture;

d. Failing to use reasonable and prudent care in the design, research, manufacture, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

e. Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

f. Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendants could reasonably foresee would use and be exposed to its Roundup® products;

g. Failing to disclose to Plaintiff, users/consumers, and the general public that use of and exposure to Roundup® presented risks of cancer and other grave illnesses;

h. Failing to want Plaintiff, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other consumers;

i. Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

j. Representing that its Roundup® products were safe for their intended use when, in fact, Defendants knew or should have known that the products were not safe for their intended purpose;

k. Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

l. Advertising, marketing, and recommending the use of the Roundup® products, while concealing and failing to disclose or warn of the dangers known by Defendants to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

m. Continuing to disseminate information to its consumers, which indicate or imply that Defendants' Roundup® products are not unsafe for use in the agricultural and horticultural industries; and

n. Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

57. Defendant knew and/or should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup®.

58. Plaintiff did not know the nature and extent of the injuries that could result from the

intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

59. Defendant's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer, as described herein.

60. Defendant's conduct, as described above, was reckless. Defendant regularly risked the lives of consumers and users of their products, including Plaintiff, will full knowledge of the dangers of its products. Defendant made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff. Defendant's reckless conduct therefore warrants an award of punitive damages.

61. As a proximate result of Defendant's wrongful acts and omissions in placing defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Mr. Ward has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including chemotherapy), and surgery.

### FOURTH CAUSE OF ACTION
### (Breach of Implied Warranties)

62. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

63. At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup® products into the stream of commerce. These actions were under the ultimate control and supervision of Defendant.

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

64. Before the time that Plaintiff was exposed to the use of the aforementioned Roundup® product, Defendant's impliedly warranted to consumers and those exposed – including Plaintiff – that Roundup® products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as horticultural herbicides.

65. Defendant, however, failed to disclose that Roundup® has dangerous propensities when used as intended and that the use of and/or exposure to Roundup® and glyphosate-containing products carries an increased risk of developing severe injuries, including Plaintiff's injuries.

66. Plaintiff reasonably relied upon the skill, superior knowledge and judgment of Defendant and upon their implied warranties that the Roundup® products were of merchantable quality and fit for their intended purpose or use.

67. Plaintiff is the intended third-party beneficiary of implied warranties made by Defendant to the purchasers of their horticultural herbicides, and as such Plaintiff is entitled to assert this claim.

68. The Roundup® products were expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by Defendant.

69. At all times relevant to this litigation, Defendant was aware that consumers and users of their products, including Plaintiff, would use Roundup® products as marketed by Defendant, which is to say that Plaintiff was a foreseeable user of Roundup®.

70. Defendant intended that Roundup® products be used in the manner in which Plaintiff was exposed to them and Defendant impliedly warranted each product to be of merchantable quality, safe, and fit for this use, despite the fact that Roundup® was not adequately tested or researched.

71. In reliance upon Defendant's implied warranty, Plaintiff used or was exposed to Roundup®

as instructed and labeled and in the foreseeable manner intended, recommended, promoted and marketed by Defendant.

72. Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Roundup® or glyphosate and, in fact, was deceived by the Defendant's assertion of safety.

73. Defendant breached their implied warranty to Plaintiff in that Roundup® products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Roundup® has dangerous propensities when used as intended and can caused serious injuries, including those injuries complained of herein.

74. The harm caused by Roundup® products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

75. As a direct and proximate result of Defendants' wrongful acts and omissions, Mr. Ward has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, treatment (including chemotherapy), and surgery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, awarding as follows:

a. Compensatory damages in an amount to be proven at trial;

b. Punitive damages;

c. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

d. Any other relief the Court may deem just and proper.

ELECTRONICALLY FILED - 2019 Nov 14 10:32 AM - FLORENCE - COMMON PLEAS - CASE#2019CP2103214

                    AIKEN, BRIDGES, ELLIOTT, TYLER
                                & SALEEBY, P.A.


By: **s/James M. Saleeby, Jr.**
     JAMES M. SALEEBY, JR.
     Bar No.: 9258
     181 E. Evans Street, Suite 409
     P. O. Drawer 1931
     Florence, South Carolina 29503
     Phone: (843) 669-8787
     Facsimile: (843) 664-0097
     jms@aikenbridges.com



DEBERRY LAW FIRM


By: **s/H. Steven Deberry, IV**
     H. STEVEN DEBERRY, IV
     Bar No.: 75373
     179 S. Coit St.
     Florence, SC 29501
     Phone: (843) 676-6289
     Facsimile: (843) 676-6221
     sedeberry@deberrylawfirm.com

Florence, SC
October 29, 2019                 ATTORNEYS FOR THE PLAINTIFF