JURY,LC02

# Eastern District of Washington
# U.S. District Court (Spokane)
## CIVIL DOCKET FOR CASE #: 2:20-cv-00016-SMJ

Angioi v. Monsanto Company et al
Assigned to: Judge Salvador Mendoza, Jr
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 01/10/2020
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Shelley Ann Angioi**

represented by **Scott Atkinson Gingras**
Winston & Cashatt
601 W Riverside Avenue
Suite 1900
Spokane, WA 99201
509-838-6131
Fax: 509-838-1416
Email: sag@winstoncashatt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*




**Plaintiff**

**Johnny Mickele Angioi**

represented by **Scott Atkinson Gingras**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/10/2020 | 4 | Summons Issued as to Monsanto Company. (AN, Courtroom Deputy) (Entered: 01/10/2020) |
| 01/10/2020 | | Notice of Judge Assignment. Judge Salvador Mendoza, Jr assigned to case. (AN, Courtroom Deputy) (Entered: 01/10/2020) |
| 01/10/2020 | 2 | Civil Cover Sheet by Johnny Mickele Angioi, Shelley Ann Angioi. (Gingras, Scott) (Entered: 01/10/2020) |
| 01/10/2020 | 1 | |

| | | COMPLAINT against Monsanto Company ( Filing fee $ 400; Receipt # 0980-3361728) Jury Demand. Filed by All Plaintiffs.(Gingras, Scott) (Entered: 01/10/2020) |

SCOTT A. GINGRAS, WSBA No. 43886
WINSTON & CASHATT, LAWYERS, a
Professional Service Corporation
601 W. Riverside, Ste. 1900
Spokane, WA  99201
Telephone:  (509) 838-6131

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHNNY MICKELE ANGIOI, individually, and  SHELLEY ANN ANGIOI, husband and wife and their marital community,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>MONSANTO COMPANY,<br><br>                    Defendant. | Case No.<br><br><br>**CIVIL COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND** |

COME NOW Plaintiffs, JOHNNY MICKELE ANGIOI, individually, and SHELLEY ANN ANGIOI, husband and wife and their marital community, by and through their attorneys of record, Scott A. Gingras and the law firm of Winston & Cashatt, Lawyers, and for causes of action against Defendant Monsanto Company, allege as follows:

CIVIL COMPLAINT FOR DAMAGES
PAGE -1

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

# I.  <u>NATURE OF THE CASE</u>

1.      This is an action for injuries and damages suffered by Plaintiffs Johnny Mickele Angioi and Shelley Ann Angioi as a direct and proximate result of Defendant Monsanto Company's alleged negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the herbicide Roundup®, containing the active ingredient glyphosate.

2.      Plaintiffs allege, as stated herein, that Roundup® and/or glyphosate is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked proper warnings and directions as to the dangers associated with its use, by Defendant Monsanto Company.

3.      Plaintiffs allege, as stated herein, that Plaintiff Johnny Mickele Angioi regularly used and was exposed to Roundup®, which was created and manufactured by Monsanto Company, at his personal residence for over twenty-five (25) years.

4.      Plaintiffs allege, as stated herein, that in or around March, 2018, doctors formally diagnosed Plaintiff Johnny Mickele Angioi with Non-Hodgkin Lymphoma ("NHL") of the B-cell type, and that furthermore Plaintiffs allege that Johnny Mickele Angioi's NHL was a direct and proximate result of his long-term use and exposure to Roundup®.

CIVIL COMPLAINT FOR DAMAGES
PAGE -2

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

5.    Plaintiffs' allege, as stated herein, that their injuries and damages caused in this case by Defendant Monsanto Company, like those as alleged by thousands of similarly situated individuals across the country, were avoidable by Defendant Monsanto Company.

## II.  JURISDICTION AND VENUE

6.    This Court has jurisdiction over Defendant Monsanto Company and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant.  Defendant Monsanto Company is either incorporated and/or has its principal place of business outside of the state in which the Plaintiffs reside, which is Washington.  The amount in controversy between Plaintiffs and Defendant exceeds $75,000.00, exclusive of interest and costs.

7.    Venue is proper within this District pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this District, and because Defendant Monsanto Company transacted business, sells, markets, and/or distributes Roundup® within the Eastern District of Washington.  Also, a substantial part of the acts and/or omissions giving rise to these claims occurred within this District.

## III.  PARTIES

8.    Plaintiffs Johnny Mickele Angioi and Shelley Ann Angioi, are husband and wife, and at all times relevant hereto, were residents of Spokane County, Washington,

CIVIL COMPLAINT FOR DAMAGES
PAGE -3

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

and live there today.  Plaintiffs bring this action for personal injuries sustained by Johnny Mickele Angioi's exposure to Roundup® containing the active ingredient glyphosate and the surfactant polyethoxylated tallow amine ("POEA").  On information and belief, and beginning in or around the year 1989, Plaintiff Johnny Mickele Angioi was directly exposed at least three (3) or four (4) times annually to Roundup® containing the active ingredient glyphosate and POEA in Spokane County Washington.  As a direct and proximate result of being exposed to Roundup®, Plaintiff Johnny Mickele Angioi developed Non-Hodgkin Lymphoma ("NHL") of the B-cell type, and was diagnosed with the same in March of 2018.  Plaintiff Shelley Ann Angioi has a claim for loss of consortium related to the injuries of her husband, Johnny Mickele Angioi.

9.     "Roundup®" as alleged herein refers to all formulations of Defendant Monsanto Company's Roundup® products, including but not limited to, Roundup® Concentrate Poison Ivy and Tough Brush Killer 1, Roundup® Custom Herbicide, Roundup® D-Pak herbicide, Roundup® Dry Concentrate, Roundup® Export Herbicide, Roundup® Fence & Hard Edger 1, Roundup® Garden Foam Weed & Grass Killer, Roundup® Grass and Weed Killer, Roundup® Herbicide, Roundup® Original 2k herbicide, Roundup® Original II Herbicide, Roundup® Pro Concentrate, Roundup® Prodry Herbicide, Roundup® Promax, Roundup® Quik Stik Grass and Weed Killer, Roundup® Quikpro Herbicide, Roundup® Rainfast Concentrate Weed & Grass Killer,

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

Roundup® Rainfast Super Concentrate Weed & Grass Killer, Roundup® Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup® Ready-to-Use Weed & Grass Killer, Roundup® Ready-to-Use Weed and Grass Killer 2, Roundup® Ultra Dry, Roundup® Ultra Herbicide, Roundup® Ultramax, Roundup® VM Herbicide, Roundup® Weed & Grass Killer Concentrate, Roundup® Weed & Grass Killer Concentrate Plus, Roundup® Weed & Grass Killer Ready-to-Use Plus, Roundup® Weed & Grass Killer Super Concentrate, Roundup® Weed & Grass Killer Ready-to-Use, Roundup® WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation of containing the active ingredient glyphosate.

10.     Defendant Monsanto Company (hereinafter "Monsanto" or "Defendant") is a Delaware corporation registered with the Secretary of State of the State of Washington under UBI No. 602 059 491, with a principle place of business located in St. Louis, Missouri.

11.     All references to the acts and omissions of Defendant Monsanto in this Complaint shall mean and refer to the actions of Monsanto by contract, common law, or otherwise.

12.     Monsanto is authorized, has transacted and conducted business within Washington State, which relates to the allegations in this Complaint, and has derived substantial revenue from goods and products used in this State.

CIVIL COMPLAINT FOR DAMAGES
PAGE -5

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

13.     Monsanto advertises and sells goods, specifically Roundup®, in the State of Washington.

14.     Monsanto expected or should have expected its acts to have consequences within the State of Washington, and derived substantial revenue from interstate commerce.

15.     Monsanto engaged in the business of designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup®.

16.     Upon information and belief, Monsanto purposefully availed itself of the privilege of conducting activities with the State of Washington, thus invoking the benefits and protections of its laws.

17.     Upon information and belief, Monsanto did design, sell, advertise, manufacture and/or distribute Roundup®, with full knowledge of its dangerous and defective nature.

## IV.  **FACTUAL ALLEGATIONS**

18.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 17 above.

19.     At all relevant times, Monsanto was in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or has acquired and is responsible for the commercial herbicide Roundup®.

CIVIL COMPLAINT FOR DAMAGES
PAGE -6

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

20.     Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate.  As of 2009, Monsanto was the world's leading producer of seeds, accounting for 27% of the world seed market.

21.     In or about 1970, Monsanto discovered the herbicidal properties of glyphosate, and subsequently began to design, research, manufacture, sell and distribute commercial product(s) with glyphosate.  In or about 1974, Monsanto began marketing said commercial product(s) under the name Roundup®.  The original Roundup®, containing the active ingredient glyphosate, was introduced in 1974. Roundup® is a broad-spectrum herbicide, used to kill weeds and grasses that commonly complete with the growing of crops, and glyphosate is the active ingredient in Roundup®.

22.     Glyphosate is a "non-selective" herbicide, meaning it kills indiscriminately based only on whether a given organism produces a specific enzyme, 5-enolpyruvylshikimic acid-3-phosphate synthase, known as EPSP synthase.  Glyphosate inhibits the enzyme 5-enolpyruvylshikimic acid-3-phosphate synthase that interferes with the shikimic pathway in plants, resulting in the accumulation of shikimic acid in plant tissue and ultimately plant death.

23.     Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots, and detectable quantities accumulate in the plant tissues.

CIVIL COMPLAINT FOR DAMAGES
PAGE -7

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

24.     Since the beginning of its use, the use of glyphosate has increased over time. The increase in use has been driven largely by the proliferation of genetically engineered crops, crops specifically tailored to resist the activity of glyphosate.  As of 2013, glyphosate was the world's most widely used herbicide.

25.     Each year, approximately 250 million pounds of glyphosate are sprayed on crops, commercial nurseries, suburban lawns, parks, and golf courses.

26.     Monsanto is intimately involved in the development, design, manufacture, marketing, sale, and/or distribution of genetically modified ("GMO") crops, many of which are marketed as being resistant to Roundup® i.e., "Roundup Ready®." As of 2009, Defendant was the world's leading producer of seeds designed to be Roundup Ready®.  In 2010, an estimated 70% of corn and cotton, and 90% of soybean fields in the United States contained Roundup Ready®.

27.     For nearly forty (40) years, consumers, farmers, and the public, including the Plaintiff Johnny Mickele Angioi, have used Roundup®, unaware of its carcinogenic properties, and unaware that glyphosate is toxic to humans.  Nevertheless, Monsanto, since it began selling Roundup®, and to the present, has represented it as safe to humans and the environment.

A.  **Registration of Herbicides under Federal Law**

CIVIL COMPLAINT FOR DAMAGES
PAGE -8

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

28. The manufacture, formulation and distribution of herbicides, such as Roundup®, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7. U.S.C. § 136 *et seq.* FIFRA requires that all pesticides be registered with the Environmental Protection Agency ("EPA) prior to their distribution, sale, or use, except as described by FIFRA 7 U.S.C. 136a(a).

29. The EPA requires as part of the registration process, among other requirements, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment. Registration by the EPA, however, is not an assurance or finding of safety. The determination the EPA makes in registering or re-registering a product is not that the product is "safe," but rather that use of the product in accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D).

30. FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). FIFRA thus requires the EPA to make a risk/benefit analysis in determining whether a registration should be granted or allowed to continue to be sold in commerce.

CIVIL COMPLAINT FOR DAMAGES
PAGE -9

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

31.     The EPA and the State of Washington registered Roundup® for distribution, sale, and manufacture in the United States and the State of Washington.

32.     FIFRA generally requires that the registrant, Monsanto, conduct health and safety testing of pesticide products. The government is not required, nor is it able, to perform the product tests that are required of the manufacturer.

33.     The evaluation of each pesticide product distributed, sold, or manufactured is completed at the time the product is initially registered. The data necessary for registration of a pesticide has changed over time. The EPA is now in the process of re-evaluating all pesticide products through a Congressionally-mandated process called "re-registration." 7 U.S.C. § 136a-1. In order to reevaluate these pesticides, the EPA demands the completion of additional tests and the submission of data for the EPA's review and evaluation.

34.     In the case of glyphosate, and therefore Roundup®, the EPA had planned on releasing its preliminary risk assessment in relation to the registration process, but by no later than July 2015. The EPA completed its review of glyphosate in early 2015 but delayed releasing the assessment pending further review in light of the World Health Organization's ("WHO") March 24, 2015 finding that glyphosate is a "probable carcinogen" as demonstrated by the mechanistic evidence carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

CIVIL COMPLAINT FOR DAMAGES
PAGE -10

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

**B.**   **Evidence of Carcinogenicity and Genotoxicity of Glyphosate and Roundup®**

35.   Monsanto has had ample evidence of glyphosate and Roundup's® carcinogenic and genotoxic properties since as early as the 1980s.

36.   Glyphosate and Roundup in particular, have long been associated with carcinogenicity and the development of numerous forms of cancer, including but not limited to non-Hodgkin's lymphoma (NHL), Hodgkin's lymphoma, multiple myeloma, and soft tissue sarcoma.

37.   Genotoxicity refers to chemical agents that are capable of damaging the DNA within a cell through genetic mutations which is a process that is believed to lead to cancer.

38.   On or about March 4, 1985, a group of the Environmental Protection Agency's ("EPA") Toxicology Branch published a memorandum classifying glyphosate as a "Category C oncogen."  Category "C" oncogenes are possible human carcinogens with limited evidence of carcinogenicity.

39.   In 1986, the EPA issued a Registration Standard for glyphosate (NTIS PB87- 103214).  The Registration Standard required additional phytotoxicity, environmental fate, toxicology, product chemistry, and residue chemistry studies.  All of the data required was submitted and reviewed and/or waived.

CIVIL COMPLAINT FOR DAMAGES
PAGE -11

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

40.     In or about October 1991 the EPA published a Memorandum entitled "Second Peer Review of Glyphosate." The memorandum changed glyphosate's classification to Group "E" (evidence of non-carcinogenicity for humans). In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer, and noted "It should be emphasized, however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances." Two peer review committee members did not concur with the conclusions of the committee and one member refused to sign.

41.     Despite the EPA's classification change to Group "E", both human and animal studies have continued to demonstrate that glyphosate and glyphosate-based foundations such as Roundup® were genotoxic and could induce carcinogenesis.

42.     In 1997, Chris Clements published "Genotoxicity of select herbicides in Rana catesbeiana tadpoles using the alkaline single-cell gel DNA electrophoresis (comet) assay." The study found that tadpoles exposed to Roundup® showed significant DNA damage when compared with unexposed control animals.

43.     Both human and animal studies have shown that glyphosate and glyphosate-based formulations such as Roundup® can induce oxidative stress. Oxidative stress and associated chronic inflammation are believed to be involved in carcinogenesis.

CIVIL COMPLAINT FOR DAMAGES
PAGE -12

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

44.     In addition to the toxicity of the active molecule, many studies support the hypothesis that glyphosate formulations found in Defendant's Roundup® products are more dangerous and toxic than glyphosate alone.  As early as 1991 evidence existed demonstrating that glyphosate formulations were significantly more toxic than glyphosate alone.

45.     In 2002, Julie Marc published a study entitled "Pesticide Roundup Provokes Cell Division Dysfunction at the Level of CDK1/Cyclin B Activation."  The study found that Defendant's Roundup® caused delays in the cell cycles of sea urchins, while the same concentrations of glyphosate alone proved ineffective and did not alter cell cycles. The study results caused the authors to question the safety of Roundup® on human health.

46.     In 2003, Lennart Hardell and Mikael Eriksson published the results of two case-controlled studies on pesticides as a risk factor for NHL and hairy cell leukemia. The study concluded that glyphosate had the most significant relationship to NHL among all herbicides studies with an increased odds ratio of 3.11.

47.     In 2003, AJ De Roos published a study examining the pooled data of mid-western farmers, examining pesticides and herbicides as risk factors for NHL.  The study, which controlled for potential confounders, found a relationship between increased NHL incidence and glyphosate.

CIVIL COMPLAINT FOR DAMAGES
PAGE -13

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

48.     In 2004, Julie Marc published a second study entitled "Glyphosate based pesticides affect cell cycle regulation." The study demonstrated a molecular link between glyphosate-based products and cell cycle dysregulation.  The study noted that "cell-cycle dysregulation is a hallmark of tumor cells and human cancer. Failure in the cell-cycle checkpoints leads to genomic instability and subsequent development of cancers from the initial affected cell."

49.     In 2005, Francisco Peixoto published a study showing that Roundup's effects on rat liver mitochondria are much more toxic and harmful than the same concentrations of glyphosate alone.  The Peixoto study suggested that the harmful effects of Roundup® on mitochondrial bioenergetics could not be exclusively attributed to glyphosate and could be the result of other chemicals, or alternatively due to the possible synergy between glyphosate and Roundup® formulation products.

50.     In 2006 César Paz-y-Miño published a study examining DNA damage in human subjects exposed to glyphosate. The study produced evidence of chromosomal damage in blood cells showing significantly greater damage after exposure to glyphosate than before in the same individuals, suggesting that the glyphosate formulation used during aerial spraying had a genotoxic effect on exposed individuals.

CIVIL COMPLAINT FOR DAMAGES
PAGE -14

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

51.     In 2008, Mikael Eriksson published a population-based case-control study of exposure to various pesticides as a risk factor for NHL.  This strengthened previous associates between glyphosate and NHL.

52.     In 2009, Nora Benachour and Gilles-Eric Seralini published a study examining the effects of Roundup® and glyphosate on human umbilical, embryonic, and placental cells.  The study suggested that determinations of glyphosate toxicity should take into account the presence of adjuvants, or those chemicals used in the formulation of the complete pesticide. The study confirmed that Roundup® was in all instances more toxic than its active ingredient, glyphosate, suggesting a synergistic effect provoked by the adjuvants present in Roundup®.

53.     In 2019 a meta-analysis published in *Mutation Research* pooled the data from six different studies and found regarding glyphosate-based herbicides ("GBH's") that: "a compelling link between exposures to GBHs and increased risk for NHL." L. Zhang, et al., "Exposure to Glyphosate-Based Herbicides and Risk for Non-Hodgkin Lymphoma: A Meta-Analysis and Supporting Evidence" *Mutation Research* (2019).

54.     The results of these studies were confirmed in recently published peer-reviewed studies and were at all times available and/or known to Defendant Monsanto.

55.     In spite of this knowledge, Defendant Monsanto has continued to issue broad and sweeping statements suggesting that Roundup® was, and is, safer than

CIVIL COMPLAINT FOR DAMAGES
PAGE -15

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary. Monsanto further maintains, despite knowledge to the contrary, that there is no evidence that Roundup® is genotoxic, that regulatory authorities and independent experts agree that Roundup® is not genotoxic, and that there is no evidence that Roundup® is genotoxic.

56.     Upon information and belief, these statements and representations have been made with the intent of inducing Plaintiffs, the agricultural community, and the public at large to purchase and increase the use of Defendant's Roundup® for Monsanto's pecuniary gain, and in fact, did induce Plaintiff Johnny Mickele Angioi to use Roundup®.

57.     Defendant Monsanto made these statements maliciously and with complete disregard and reckless indifference to the safety of Plaintiff Johnny Mickele Angioi and the general public.

58.     Notwithstanding Defendant's representations, scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of many cancers, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcoma.

CIVIL COMPLAINT FOR DAMAGES
PAGE -16

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

59.     Defendant Monsanto knew or should have known that glyphosate is associated with an increased risk of developing cancer, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcomas.

60.     Defendant Monsanto failed to appropriately and adequately inform and warn Plaintiffs of these dangerous risks associated with the use of and exposure to glyphosate and/or Roundup®, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring and/or medications.

### C. __The IARC Classification of Glyphosate__

61.     The International Agency for Research on Cancer ("IARC") is the specialized intergovernmental cancer agency tasked by the WHO with conducting and coordinating research into the causes of cancer.

62.     An IARC Advisory Group to Recommend Priorities for IARC Monographs during 2015–2019 met in April 2014. Though nominations for the review were solicited, a substance must meet two criteria to be eligible for review by the IARC Monographs: there must already be some evidence of carcinogenicity of the substance, and there must be evidence that humans are exposed to the substance.

CIVIL COMPLAINT FOR DAMAGES
PAGE -17

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

63.     IARC set glyphosate for review in 2015-2016. IARC uses five criteria for determining priority in reviewing chemicals. The substance must have a potential for direct impact on public health; scientific literature to support suspicion of carcinogenicity; evidence of significant human exposure; high public interest and/or potential to bring clarity to a controversial area and/or reduce public anxiety or concern; related agents similar to one given high priority by the above considerations. Data reviewed is sourced preferably from publicly accessible, peer-reviewed data.

64.     On March 24, 2015, after its cumulative review of human, animal, and DNA studies for more than one (1) year, many of which have been in Defendant's possession since as early as 1985, the IARC's working group published its conclusion that the glyphosate contained in Defendant's Roundup® herbicide, is a Class "2A" "probable carcinogen" as demonstrated by the mechanistic evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

65.     The IARC's full Monograph was published on July 29, 2015 and established glyphosate as a Class "2A" probable carcinogen to humans. According to the authors glyphosate demonstrated sufficient mechanistic evidence (genotoxicity and oxidative stress) to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.   The IARC Monographs notes that "[s]trong evidence exists that glyphosate,

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

AMPA and glyphosate-based formulations can induce oxidative stress" and that "[t]he evidence for genotoxicity caused by glyphosate-based formulations is strong."

66. The IARC Working Group found an increased risk between exposure to glyphosate and NHL and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

67. The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

D. **Scientific Fraud Underlying the Safety Determinations of Glyphosate**

68. After the EPA's 1985 classification of glyphosate as possibly carcinogenic to humans (Group "C"), Monsanto exerted pressure upon the EPA to change its classification.

69. This culminated in the EPA's reclassification of glyphosate to Group "E", which was based upon evidence of non-carcinogenicity in humans. In so classifying, the EPA stated that "[i]t should be emphasized, however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

CIVIL COMPLAINT FOR DAMAGES
PAGE -19

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

70. On two occasions, the EPA found that laboratories hired by Monsanto to test the toxicity of its Roundup® products for registration purposes committed scientific fraud.

71. In the first instance, Monsanto hired Industrial Bio-Test Laboratories ("IBT") to perform and evaluate pesticide toxicology studies relating to Roundup®. IBT performed approximately 30 tests on glyphosate and glyphosate-containing products, including 11 of the 19 chronic toxicology studies needed to register Roundup® with the EPA.

72. In 1976, the Food and Drug Administration ("FDA") performed an inspection of IBT. The inspection revealed IBT's fabrication of data, removal of health effect findings from reports, replacement of dead study animals with healthy ones, and changes in report conclusions to make them look more favorable were repeated occurrences at IBT. The FDA inspection also discovered discrepancies between the raw data and the final report relating to toxicological impacts of pesticides including glyphosate. The EPA subsequently audited IBT and determined that the toxicology studies conducted for Roundup® were invalid. An EPA reviewer stated, after finding "routine falsification of data" at IBT, that it was "hard to believe the scientific integrity of the studies when they said they took specimens of the uterus from male rabbits." Three top executives of IBT were convicted of fraud in 1983.

CIVIL COMPLAINT FOR DAMAGES
PAGE -20

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

73.     In the second incident, the EPA was alerted in 1990 that another laboratory hired by Monsanto to conduct studies of its pesticide, Craven Laboratories ("Craven"), also had irregularities in its testing.  After an investigation, the EPA alleged that Craven employed a variety of "tricks" including "falsifying laboratory notebook entries" and "manually manipulating scientific equipment to produce false reports." The falsified studies included Roundup® residue studies on plums, potatoes, grapes and sugar beets.

74.     In 1994, the laboratory owner and fourteen other employees received punishments ranging from fines to prison terms for their roles in falsifying these pesticide studies.

## E.   Monsanto's False Representations Regarding the Safety of Roundup®

75.     In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup® products. Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup®, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish. Among the representations the NYAG found deceptive and misleading about the human and environmental safety of Roundup® are the following:

   a. "Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup

CIVIL COMPLAINT FOR DAMAGES
PAGE -21

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

with confidence along customers' driveways, sidewalks and fences . . . ."

b. "And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem."

c. "Roundup biodegrades into naturally occurring elements."

d. "Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation."

e. "This non-residual herbicide will not wash or leach in the soil. It . . . stays where you apply it."

f. "You can apply Accord with confidence because it will stay where you put it. It bonds tightly to soil particles, preventing leaching. Then, soon after application, soil micro-organisms biodegrade Accord into natural products."

g. "Glyphosate is less toxic to rats than table salt following acute oral ingestion."

h. "Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it."

i. "You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically nontoxic' as it pertains to mammals, birds and fish."

j. "Roundup can be used where kids and pets will play and breaks down into natural material." This ad depicts a person with his head in the ground and a pet dog standing in an area which has been treated with Roundup.

76.     On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

CIVIL COMPLAINT FOR DAMAGES
PAGE -22

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

    a. its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk.

    b. its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable.

    c. its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means.

    d. its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics."

    e. glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides;

    f. its glyphosate-containing products or any component thereof might be classified as "practically non-toxic.

77. Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief still has not done so today.

78. In 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup®. The French court affirmed an earlier judgment that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean."

**F. Monsanto's Continuing Disregard for the Safety of Plaintiffs and the Public**

79. Despite the repeated concerns expressed by the scientific community and governmental entities, Monsanto has continued to represent to the public that "[r]egulatory authorities and independent experts around the world have reviewed

CIVIL COMPLAINT FOR DAMAGES
PAGE -23

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

numerous long-term/carcinogenicity and genotoxicity studies and agree that there is no evidence that glyphosate, the active ingredient in Roundup® brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic." However, the primary source for this statement is a 1986 report by the WHO, the same organization that now considers glyphosate to be a probable carcinogen.

80. Glyphosate, and Monsanto's Roundup® products in particular, have long been associated with serious side effects and many regulatory agencies around the globe have banned or are currently banning the use of glyphosate herbicide products.

81. Despite Defendant Monsanto's knowledge that Roundup® was associated with an elevated risk of developing cancer, Monsanto's promotional campaigns focused on Roundup's® purported "safety profile" with the intent that consumers believe that Roundup® was safe for use.

82. Defendant Monsanto's statements proclaiming the safety of Roundup® and disregarding its dangers misled Plaintiff Johnny Mickele Angioi.

83. Defendant Monsanto's failure to adequately warn Plaintiff Johnny Mickele Angioi resulted in (1) Plaintiff using and being exposed to glyphosate and Roundup® instead of using another acceptable and safe method of controlling unwanted weeds and pests; and (2) scientists and physicians failing to warn and instruct consumers about the risk of cancer, including NHL, and other injuries associated with Roundup®.

CIVIL COMPLAINT FOR DAMAGES
PAGE -24

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

84.     Defendant Monsanto failed to seek modification of the labeling of Roundup® to include relevant information regarding the risks and dangers associated with Roundup® exposure.  The failure of Defendant Monsanto to appropriately warn and inform the EPA has resulted in inadequate warnings in safety information presented directly to users and consumers.

85.     The failure of Defendant Monsanto to appropriately warn and inform the EPA has resulted in the absence of warning or caution statements that are adequate to protect health and the environment.

86.     The failure of Defendant Monsanto to appropriately warn and inform the EPA has resulted in the directions for use that are not adequate to protect health and the environment.

87.     By reason of the foregoing acts and omissions, Plaintiffs Johnny Mickele Angioi and Shelley Ann Angioi seek compensatory and punitive damages as a result of Plaintiff Johnny Mickele Angioi's use of, and exposure to, Roundup® which caused or was a substantial contributing factor in causing Plaintiff to suffer from cancer, specifically Non-Hodgkin Lymphoma of the B-cell type, and Plaintiffs suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life and loss of consortium.

CIVIL COMPLAINT FOR DAMAGES
PAGE -25

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

88.    By reason of the foregoing acts and omissions, Plaintiffs have sustained severe and permanent injuries and losses.

89.    By reason of the foregoing acts and omissions, Plaintiffs have endured and, in some categories, continue to suffer emotional and mental anguish, medical expenses, and other economic and non-economic damages as a result of the actions and inactions of Defendant Monsanto.

## G.    Plaintiff's Exposure to Roundup®

90.    Plaintiff Johnny Mickele Angioi has at all times material hereto been a resident of Spokane County, Washington.  Since approximately 1989 to 2018, Johnny Mickele Angioi has purchased and used Roundup® regularly on his residence in Spokane County, Washington.

91.    During this time period, Plaintiff Johnny Mickele Angioi has applied, and been around the application of Roundup® on his residence for agricultural and/or personal use, via by hand sprayer, and with backpack sprayers.  During this time period for use and exposure of Roundup® at his residence, Plaintiff Johnny Mickele Angioi reasonably estimates that he used a four (4) gallon sprayer, which he filled up and used completely at least approximately three (3) or four (4) times per year, and which during each spray session he would use the entire four (4) gallon amount.  Occasionally Plaintiff Johnny Mickele Angioi would also mix up and use a two (2) gallon sprayer in addition to

CIVIL COMPLAINT FOR DAMAGES
PAGE -26

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

the four (4) gallon sprayer.  Despite Plaintiff Johnny Mickele Angioi's best efforts to contain the Roundup® within the sprayer backpack container, often times the Roundup® would spill out directly onto Plaintiff Johnny Mickele Angioi's back and skin.  During this time period, when Plaintiff purchased Roundup®, he did not know, could not have known, and had no reason to believe Roundup was carcinogen; instead, he understood Roundup® was safe.

92.    For all years, use, and exposure to Roundup®, Plaintiff Johnny Mickele Angioi would attempt to follow reasonable safety and precautionary warnings, if any existed, during the course of his usage.

93.    Plaintiff Johnny Mickele Angioi was formally diagnosed with Non-Hodgkin Lymphoma ("NHL") of the B-cell type, in or around March of 2018.  Plaintiff's subject illness was proximately and actually caused by his exposure to Defendant's Roundup® products.

94.    As a result of Plaintiff Johnny Mickele Angioi's illness, Plaintiffs have incurred economic and non-economic damages.

95.    Plaintiff Johnny Mickele Angioi first learned that exposure to Roundup® can cause his illness on the news in 2019.

## V. TOLLING OF ANY APPLICABLE STATUTE OF LIMITATIONS

CIVIL COMPLAINT FOR DAMAGES
PAGE -27

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

96.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 95 above.

97.    The running of any statute of limitations, if any, has been tolled by reason of Defendant's fraudulent concealment.    Defendant Monsanto, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs the true risks associated with Roundup® and glyphosate.

98.    At all relevant times hereto, Defendant Monsanto has maintained that Roundup® is safe, non-toxic, and non-carcinogenic.

99.    Indeed, even as of July 2016, Defendant continues to represent to the public that "Regulatory authorities and independent experts around the world have reviewed numerous long-term/carcinogenicity and genotoxicity studies and agree that there is no evidence that glyphosate, the active ingredient in Roundup® brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic."

100.    As a result of Defendant's actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that Roundup® or glyphosate contact, exposed Plaintiffs to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

CIVIL COMPLAINT FOR DAMAGES
PAGE -28

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

101.   Furthermore, Defendant Monsanto is estopped from relying on any statute of limitations because of its fraudulent concealment of the true character, quality, and nature of Roundup®.

102.   Defendant Monsanto was under a duty to disclose the true character, quality, and nature of Roundup® because this was non-public information over which Defendant had and continues to have exclusive control, and because Defendant Monsanto knew that this information was not available to Plaintiffs or to distributors of Roundup®. In addition, Defendant Monsanto is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

103.   Plaintiffs had no knowledge that Defendant Monsanto was engaged in the wrongdoing alleged herein.   Because of the fraudulent acts of concealment of wrongdoing by Defendant Monsanto, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. Defendant had the ability to and did spend enormous amounts of money in furtherance of its purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks. Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks, and were forced to rely on only the Defendant's representations. Accordingly, Defendant Monsanto is precluded

CIVIL COMPLAINT FOR DAMAGES
PAGE -29

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

by the discovery rule and/or the doctrine of fraudulent concealment from relying upon any statute of limitations.

## VI.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Violations of the Washington Product Liability Act

104.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 103 above.

105.   At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products.

106.   At all times relevant to this litigation, Defendant designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Roundup® products used by Plaintiffs as described above.

107.   At all times relevant to this litigation, Defendant's Roundup® products were expected to reach and did reach the intended consumers, handlers, and users or other persons coming into contact with these products in Washington and throughout the United States, including Plaintiffs, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

CIVIL COMPLAINT FOR DAMAGES
PAGE -30

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

108. In violation of the Washington Products Liability Act ("WPLA"), RCW 7.72, et seq., at all times relevant to this action, at the time Defendant's Roundup® products left control of Defendant, they were defective and not reasonably safe. These defects include, but are not limited to, the following:

a. Defendant is strictly liable for Plaintiffs' injuries and damages because at the time of manufacture, and at the time Defendant's Roundup® products left control of Defendant, the likelihood that Defendant's Roundup® products would cause injury or damage similar to that suffered by Plaintiffs, and the seriousness of such injury or damage had been known by Defendant and outweighed the burden on Defendant to design a product that would have prevented Plaintiffs' injuries and damages and outweighed the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the subject product.

b. Defendant's Roundup® products were unsafe to an extent beyond that which would be contemplated by an ordinary consumer, in one or more of the following particulars: exposure to Roundup® and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries, making Roundup® not reasonably safe when used in the way it is ordinarily used and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

c. The Roundup® products manufactured and/or supplied by Defendant were defective in design in that, an alternative design and/or formulation exists that would prevent severe and permanent injury. Indeed, at the time that Defendant designed the Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

d. The Roundup® products were not reasonably safe in design under the WPLA.

e. The Roundup® products manufactured and/or supplied by Defendant were not reasonably safe because Defendant did not provide an adequate warning or instruction about the product. At the time the

CIVIL COMPLAINT FOR DAMAGES
PAGE -31

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

Roundup® products left Defendant's control, they possessed dangerous characteristics and Defendant failed to use reasonable care to provide an adequate warning of such characteristics and their danger to users and handlers of the product. The Roundup® products are not safe and cause severe and permanent injuries. The Roundup® products were not reasonably safe because the warning was inadequate, and Defendant could have provided adequate warnings or instructions.

f.  The Roundup® products manufactured and/or supplied by Defendant were not reasonably safe because adequate warnings or manufacturer instructions were not provided after the Roundup® products were manufactured and when Defendant learned of, or should have learned of, the dangers connected with the Roundup® products.

g.  The Roundup® products manufactured and/or supplied by Defendant was not reasonably safe because they did not conform to an express warranty made by Defendant regarding the product's safety and fitness for use. Defendant expressly warranted that the Roundup® products were safe and fit for their intended purposes, that they were of merchantable quality, that they did not produce any dangerous side effects, that they were adequately tested, and that their Roundup® products were safe to human health and the environment, and effective, fit, and proper for their intended use. Defendant did not disclose the material risks that Defendant's Roundup® products could cause severe and permanent injury. Defendant's express warranty regarding the Roundup® products induced Plaintiffs to use the products, and Plaintiffs' damages were proximately caused because Defendant's express warranty was untrue. The Roundup® products were not reasonably safe because of nonconformity to express warranty under the WPLA.

109. As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, Plaintiffs Johnny Mickele Angioi and Shelley Ann Angioi suffered injuries and damages, and endured physical and emotional pain and discomfort, and loss of consortium, as well as economic damages, including

CIVIL COMPLAINT FOR DAMAGES
PAGE -32

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

financial expenses for past and future medical care and treatment, along with other damages further discussed in herein.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Warranties

110.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 109 above.

111.   At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting its Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiffs, thereby placing Roundup® products into the stream of commerce. These actions were under the ultimate control and supervision of Defendant.

112.   Before the time that Plaintiff Johnny Mickele Angioi was exposed to the use of the aforementioned Roundup® products, Defendant impliedly warranted to its consumers—including Plaintiff—that its Roundup® products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as agricultural and horticultural herbicides.

113.   Defendant, however, failed to disclose that Roundup® has dangerous propensities when used as intended and that the use of and/or exposure to Roundup® and

CIVIL COMPLAINT FOR DAMAGES
PAGE -33

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

glyphosate-containing products carries an increased risk of developing severe injuries, including Plaintiffs' injuries.

114.    Upon information and belief, Plaintiffs reasonably relied upon the skill, superior knowledge and judgment of Defendant and upon its implied warranties that the Roundup® products were of merchantable quality and fit for their intended purpose or use.

115.    Upon information and belief, Plaintiff Johnny Mickele Angioi at all relevant times in privity with Defendant.

116.    Plaintiff is the intended third-party beneficiary of implied warranties made by Defendant to the purchasers of their agricultural and horticultural herbicides and as such they are entitled to assert this claim.

117.    The Roundup® products were expected to reach and did in fact reach consumers and users, including Plaintiff Johnny Mickele Angioi, without substantial change in the condition in which they were manufactured and sold by Defendant.

118.    At all times relevant to this litigation, Defendant was aware that consumers and users of its products, including Plaintiff Johnny Mickele Angioi, would use Roundup® products as marketed by Defendant, which is to say that Plaintiff was a foreseeable user of Roundup®.

CIVIL COMPLAINT FOR DAMAGES
PAGE -34

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

119.   Defendant intended that its Roundup® products be used in the manner in which Plaintiff Johnny Mickele Angioi in fact used them and Defendant impliedly warranted each product to be merchantable quality, safe, and fit for this use, despite the fact that Roundup® was not adequately tested or researched.

120.   In reliance upon Defendant's implied warranty, Plaintiff Johnny Mickele Angioi used Roundup® as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendant.

121.   Plaintiff Johnny Mickele Angioi could not have reasonably discovered or known of the risks of serious injury associated with Roundup® or glyphosate.

122.   Defendant breached its implied warranty to Plaintiff Johnny Mickele Angioi in that its Roundup® products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Roundup® has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

123.   The harm caused by Defendant's Roundup® products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

124.   As a direct and proximate result of Defendant's placing their defective Roundup® products into the stream of commerce, Plaintiffs Johnny Mickele Angioi and Shelley Ann Angioi suffered injuries and damages, and endured physical and emotional

CIVIL COMPLAINT FOR DAMAGES
PAGE -35

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

pain and discomfort, and loss of consortium, as well as economic damages, including financial expenses for past and future medical care and treatment, along with other damages further discussed in herein.

### THIRD CLAIM FOR RELIEF
### Violations of the Washington Consumer Protection Act

125.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 124 above.

126.   Defendant violated the Washington Consumer Protection Act ("CPA").

127.   Defendant engaged in unfair or deceptive acts or practices including, but not limited to, the following:

    a.   engaging in acts and practices by willfully failing and refusing to timely report information that reasonably suggested Roundup®, like that used by Plaintiff Johnny Mickele Angioi, may cause or contribute to cause cancer and other serious illnesses;

    b.   representing knowingly or with reason to know that Roundup® has approval, characteristics, uses, or benefits that it does not have;

    c.   representing knowingly or with reason to know that Roundup® is of a particular standard, quality, or grade when it differs materially from that representation; and/or

    d.   representing knowingly or with reason to know that Roundup® has uses, benefits, or characteristics that have been otherwise proven incorrect;

128.   Defendant's unfair and deceptive acts or practices described above were committed in the course of Defendant's trade or commerce.

CIVIL COMPLAINT FOR DAMAGES
PAGE -36

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

129.   Defendant's unfair and deceptive acts or practices described above affected public interest.

130.   Defendant's violation of the Washington CPA caused Plaintiffs' injuries and damages set forth herein.

## FOURTH CLAIM FOR RELIEF
### Negligence

131.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 130 above.

132.   Monsanto, directly or indirectly, caused Roundup® products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff Johnny Mickele Angioi.

133.   At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

134.   At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup® products. Monsanto's duty of care owed to consumers and the general public included providing

CIVIL COMPLAINT FOR DAMAGES
PAGE -37

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup®, and, in particular, its active ingredient glyphosate.

135.   At all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and specifically, the carcinogenic properties of the chemical glyphosate.

136.   Accordingly, at all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known that use of or exposure to its Roundup® products could cause or be associated with Plaintiffs injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs.

137.   Monsanto also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup® and glyphosate-containing products.

138.   As such, Monsanto breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Monsanto manufactured, marketed, promoted, and sold

CIVIL COMPLAINT FOR DAMAGES
PAGE -38

Winston & Cashatt
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in these products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

139. Despite an ability and means to investigate, study, and test these products and to provide adequate warnings, Monsanto has failed to do so. Indeed, Monsanto has wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

140. Monsanto was negligent in the following respects:

   a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup® products without thorough and adequate pre- and post-market testing;
   b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;
   c. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture and horticulture;
   d. Failing to use reasonable and prudent care in the design, research, manufacture, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

CIVIL COMPLAINT FOR DAMAGES
PAGE -39

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

e.  Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

f.  Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Monsanto could reasonably foresee would use and be exposed to its Roundup® products;

g.  Failing to disclose to Plaintiffs, users/consumers, and the general public that use of and exposure to Roundup® presented severe risks of cancer and other grave illnesses;

h.  Failing to warn Plaintiff, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other consumers;

i.  Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate- containing products;

j.  Representing that its Roundup® products were safe for their intended use when, in fact, Monsanto knew or should have known that the products were not safe for their intended purpose;

k.  Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

l.  Advertising, marketing, and recommending the use of the Roundup® products, while concealing and failing to disclose or warn of the dangers known by Monsanto to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

m. Continuing to disseminate information to its consumers, which indicate or imply that Monsanto's Roundup® products are not unsafe for use in the agricultural and horticultural industries; and

n.  Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

141.  Monsanto knew and/or should have known that it was foreseeable that consumers such as Plaintiffs would suffer injuries as a result of Monsanto's failure to

CIVIL COMPLAINT FOR DAMAGES
PAGE -40

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution, and sale of Roundup®.

142.   Plaintiffs did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

143.   Monsanto's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiffs suffered, as described herein.

144.   Monsanto's conduct, as described above, was reckless. Monsanto regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of these products. Monsanto has made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiffs. Monsanto's reckless conduct therefore warrants an award of aggravated or punitive damages.

145.   As a proximate result of Monsanto's wrongful acts and omissions in placing defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Plaintiffs Johnny Mickele Angioi and Shelley Ann Angioi suffered injuries and damages, and endured physical and emotional pain and discomfort, and loss of consortium, as well as economic damages,

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

including financial expenses for past and future medical care and treatment, along with other damages further discussed in herein.

## FIFTH CLAIM FOR RELIEF
### Fraud, Misrepresentation, and Suppression

146. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 145 above.

147. Defendant fraudulently, intentionally, and/or negligently misrepresented to the public, and to the Plaintiffs, both directly and by and through the media, the scientific literature and purported "community outreach" programs, the safety of Roundup® products, and/or fraudulently, intentionally, and/or negligently concealed, suppressed, or omitted material, adverse information regarding the safety of Roundup®.

148. The intentional and/or negligent misrepresentations and omissions of Defendant regarding the safety of Roundup® products were communicated to Plaintiffs and the public directly through ghostwritten articles, editorials, national and regional advertising, marketing and promotion efforts, as well as the packaging and sales aids. The safety of Roundup® products was also intentionally and/or negligently misrepresented to Plaintiffs and the public with the intent that such misrepresentations would cause Plaintiffs and other potential consumers to purchase and use or continue to purchase and use Roundup® products.

CIVIL COMPLAINT FOR DAMAGES
PAGE -42

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

149.   Defendant either knew or should have known of the material representations they were making regarding the safety and relative utility of Roundup® products.

150.   Defendant fraudulently, intentionally, and/or negligently made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the specific desire to induce Plaintiffs and the consuming public to purchase and use Roundup® products. Defendant fraudulently, intentionally, and/or negligently, knew or should have known that Plaintiffs and the consuming public would rely on such material misrepresentations and/or omissions in selecting and applying Roundup® products. Defendant knew or should have known that Plaintiffs would rely on their false representations and omissions.

151.   Defendant made these misrepresentations and actively concealed adverse information including the risk of Non-Hodgkin's Lymphoma, at a time when, their agents and/or employees knew or should have known, the product had defects, dangers, and characteristics that were other than what was represented to the consuming public.

152.   Despite the fact that Defendant knew or should have known of reports of severe risks including Non-Hodgkin's Lymphoma, with Roundup® use and exposure, this information was strategically minimized, understated, or omitted in order to create the impression that the human dangers of Roundup® were nonexistent, particularly in light of its purported utility.

CIVIL COMPLAINT FOR DAMAGES
PAGE -43

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

153. The fraudulent, intentional and/or negligent material misrepresentations and/or active concealment, suppression, and omissions by Defendant were perpetuated directly and/or indirectly through the advertisements, packaging, sales aids, furtive public relations efforts, and other marketing and promotional pieces authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published, and supplied.

154. If Plaintiff had known the true facts concerning the risks associated with Roundup® exposure, Plaintiff would have likely attempted to use a safer alternative.

155. Plaintiff's reliance upon the material misrepresentations and omissions was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Roundup® while Plaintiff was not in a position to know the true facts because Defendant overstated the benefits and safety of Roundup® and downplayed the risk of lymphoma, thereby inducing Plaintiff to use the herbicide rather than safer alternatives.

156. As a direct and proximate result of Defendant's actions and inactions, Plaintiff was exposed to Roundup® and Plaintiffs Johnny Mickele Angioi and Shelley Ann Angioi suffered injuries and damages, and endured physical and emotional pain and discomfort, and loss of consortium, as well as economic damages, including financial

CIVIL COMPLAINT FOR DAMAGES
PAGE -44

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

expenses for past and future medical care and treatment, along with other damages further discussed in herein.

## SIXTH CLAIM FOR RELIEF
### Punitive Damages

157.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 156 above.

158.   Defendant is liable for punitive and/or exemplary damages under choice of law principles. Defendant acted with willful disregard of the rights of the Plaintiffs and the public. Defendant's conduct was outrageous and reckless toward the safety of the Plaintiffs and the public.

## SEVENTH CLAIM FOR RELIEF
### Loss of Consortium

159.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 158 above.

160.   Plaintiff Shelley Ann Angioi, at all times relevant, was and is the lawful wife of Plaintiff Johnny Mickele Angioi.

161.   As a direct, legal, and proximate result of the culpability and fault of Defendant as alleged herein, be such fault through strict liability, negligence or otherwise, Plaintiff Shelley Ann Angioi, spouse of Plaintiff Johnny Mickele Angioi, suffered the loss of support, services, love, companionship, affection, society, intimate

CIVIL COMPLAINT FOR DAMAGES
PAGE -45

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

relations, and other elements of consortium, all to her general damage in an amount in excess of the jurisdictional minimum of this Court.

162. Plaintiffs demand judgment against Defendant for compensatory and punitive damages such as a jury may award, and such other relief as the Court deems just and proper in order to remedy Plaintiff Shelley Ann Angioi's loss of consortium.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against the Defendant on each of the above claims and causes of action, as follows:

1. By awarding Plaintiffs general compensatory non-economic damages in excess of the jurisdictional amount, including but not limited to past and future pain, suffering, emotional distress, disability, loss of enjoyment of life, loss of consortium, and other non-economic damages and losses in an amount to be determined at trial;

2. By awarding Plaintiffs their special economic damages and losses, including but not limited to past and future medical expenses, out of pocket expenses, lost earnings and/or lost earning capacity, lost household services, and other economic damages in the an amount to be determined at trial;

3. By awarding Plaintiffs punitive damages in an amount sufficient to both punish Defendant for it misconduct and to deter such actions in the future;

CIVIL COMPLAINT FOR DAMAGES
PAGE -46

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

4.      By awarding Plaintiffs treble damages in the maximum amounts permitted by law, including but not limited to RCW 19.86.090;

5.      By awarding Plaintiffs pre judgment interest;

6.      By awarding Plaintiffs post judgment interest;

7.      By awarding Plaintiffs their attorneys' fees, costs and expenses as allowed by law; and

8.      By awarding Plaintiffs such other legal or equitable relief as the Court deems appropriate.

DATED this 10th   day of January, 2020.

s/Scott A. Gingras, WSBA No. 43886
WINSTON & CASHATT, LAWYERS
Attorneys for Plaintiffs
601 W. Riverside, Ste. 1900
Spokane, WA 99201
(509) 838-6131
Facsimile:  (509) 838-1416
E-mail Address:  sag@winstoncashatt.com

CIVIL COMPLAINT FOR DAMAGES
PAGE -47

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all triable issues.

DATED this 10th   day of January, 2020.

s/Scott A. Gingras, WSBA No. 43886
WINSTON & CASHATT, LAWYERS
Attorneys for Plaintiffs
601 W. Riverside, Ste. 1900
Spokane, WA 99201
(509) 838-6131
Facsimile:  (509) 838-1416
E-mail Address:  sag@winstoncashatt.com



**Certified Copy**
2:20-CV-016-SMJ

4:43 pm, Jan 10, 2020



CIVIL COMPLAINT FOR DAMAGES
PAGE -48

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
1900 Bank of America Financial Center
601 West Riverside
Spokane, Washington 99201
(509) 838-6131