MDL,TRIAL−OMAHA

# U.S. District Court
## District of Nebraska (8 Omaha)
### CIVIL DOCKET FOR CASE #: 8:20−cv−00032−BCB−MDN

| | |
|---|---|
| Hinkle v. Monsanto Company<br>Assigned to: Judge Brian C. Buescher<br>Referred to: Magistrate Judge Michael D. Nelson<br>Case in other court: District Court of Hall County, 19−00625<br>Cause: 28:1332 Diversity−Product Liability | Date Filed: 01/21/2020<br>Jury Demand: None<br>Nature of Suit: 365 Personal Inj. Prod. Liability<br>Jurisdiction: Diversity |

**Plaintiff**

**John Hinkle**     represented by     **Kevin J. Schneider**
CLINE, WILLIAMS LAW FIRM − LINCOLN
233 South 13th Street
1900 US Bank Building
Lincoln, NE 68508−2095
(402) 474−6900
Fax: (402) 474−5393
Email: kschneider@clinewilliams.com
*ATTORNEY TO BE NOTICED*

**Sydney M. Huss**
CLINE, WILLIAMS LAW FIRM − OMAHA
12910 Pierce Street
Suite 200, Sterling Ridge
Omaha, NE 68144−1105
(402) 397−1700
Email: shuss@clinewilliams.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**     represented by     **Michael K. Huffer**
CASSEM, TIERNEY LAW FIRM
9290 West Dodge Road
Suite 302
Omaha, NE 68114−3320
(402) 390−0300
Fax: (402) 390−9676
Email: mhuffer@ctagd.com
*ATTORNEY TO BE NOTICED*

**Ronald F. Krause**
CASSEM, TIERNEY LAW FIRM
9290 West Dodge Road
Suite 302
Omaha, NE 68114−3320
(402) 390−0300
Fax: (402) 390−9676
Email: rkrause@ctagd.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/21/2020 | 1 | NOTICE OF REMOVAL against John Hinkle from District Court of Hall County, Case number 19−625 ( Filing fee $ 400, receipt number ANEDC−4094766) with attached state court pleadings, by Attorney Michael K. Huffer on behalf of Monsanto |

| | | |
|---|---|---|
| | | Company (Attachments:<br># 1 Exhibit 1)(Huffer, Michael) (Entered: 01/21/2020) |
| 01/21/2020 | 2 | NOTICE of *Request for Location of Trial* by Attorney Michael K. Huffer on behalf of Defendant Monsanto Company (Huffer, Michael) (Entered: 01/21/2020) |
| 01/21/2020 | 3 | TEXT NOTICE OF JUDGES ASSIGNED: Judge Brian C. Buescher and Magistrate Judge Michael D. Nelson assigned. In accordance with 28 U.S.C. 636(c)(2), the parties are notified that, if all parties consent, a magistrate judge may conduct a civil action or proceeding, including a jury or nonjury trial, subject to the courts rules and policies governing the assignment of judges in civil cases. See Fed. R. Civ. P. 73; NEGenR 1.4. (ADB) (Entered: 01/21/2020) |
| 01/21/2020 | 4 | LETTER by Clerk regarding Notice of Removal Attorney – Complaint 1 with copy of docket sheet e−mailed to Multidistrict Litigation Clerks Office. (ADB) (Entered: 01/21/2020) |
| 01/21/2020 | 5 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Monsanto Company. Pursuant to Fed. R. Civ. P. 7.1, non−governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, available on the Web site of the court at http://www.ned.uscourts.gov/forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(ADB) (Entered: 01/21/2020) |

Filed in Hall District Court
*** EFILED ***
Case Number: D08CI190000625
Transaction ID: 0009073696
Filing Date: 07/26/2019 03:00:03 PM CDT

IN THE DISTRICT COURT OF HALL COUNTY, NEBRASKA

| | | |
|---|---|---|
| JOHN HINKLE, | ) | CASE NO. CI _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff John Hinkle ("Plaintiff") and for his Complaint against Defendant Monsanto Company ("Defendant") states and alleges as follows:

1. Plaintiff is a resident of Hall County, Nebraska.

2. Defendant is a Delaware corporation with its principal place of business in St. Louis, Missouri.

3. This court has personal jurisdiction over Defendant pursuant to Neb. Rev. Stat. § 25-536 as Defendant conducts business and caused tortious injuries in Nebraska.

4. Venue is proper pursuant to Neb. Rev. Stat. § 24-403.01.

### FACTS RELEVANT TO ALL CLAIMS

5. Prior to its acquisition by Bayer AG in 2018, Defendant was the world's largest seller and producer of glyphosate herbicides.

6. Glyphosate is a broad-spectrum, non-selective herbicide which enters the body of a plant, or a human, through respiration or absorption.

7. Defendant introduced the first glyphosate-based herbicide in the 1970s under the brand name Roundup®.

8. Since its introduction, Defendant has claimed that Roundup® poses no risk to humans.

9. Based on early studies showing that glyphosate could cause cancer in laboratory animals, the EPA classified glyphosate as possibly carcinogenic to humans in 1985. In response to the EPA's classification, Defendant provided the EPA with contrary studies and urged it to reclassify glyphosate. As a result, the EPA changed its classification of glyphosate to evidence of non-carcinogenicity in humans in 1991.

10. Since the introduction of Roundup®, on information and belief, Defendant has intentionally taken systemic and pervasive affirmative acts to prevent, suppress, conceal and discredit research studies linking glyphosate to cancer. Specifically, Defendant has spent millions of dollars in an effort to discredit and refute scientific studies linking glyphosate to several types of cancer, including multiple myeloma. Again, on information and belief, Defendant's intentional actions have been so extensive that it has effectively controlled the body of research and overwhelmed and suppressed nearly all of the independent research related to the causal connection between glyphosate and multiple myeloma.

11. Multiple myeloma is a blood cancer that affects plasma cells. Multiple myeloma causes malignant plasma cells to accumulate in the bone marrow, crowding out the normal plasma cells that help fight infection. These malignant plasma cells produce an abnormal antibody called M protein, which

offers no benefit to the body and can cause tumors, kidney damage, bone destruction and impaired immune function.

12. From the mid-1980s to the early 1990s, Plaintiff's regular and full time employment was for an agricultural company in Nebraska. Throughout the course of this agricultural employment, Plaintiff was exposed to highly concentrated forms of Roundup®.

13. In addition, Plaintiff was exposed to Roundup® in residential and light commercial applications.

14. Plaintiff's exposures occurred in Nebraska.

15. Subsequent to his exposures, Plaintiff was diagnosed with multiple myeloma.

16. On information and belief, despite Defendant's calculated and intentional ongoing efforts to prevent, suppress, conceal and discredit them, research and published studies are now confirming that exposures to glyphosate are carcinogenic to humans, and among the cancers now most associated with glyphosate exposure is multiple myeloma.

17. On information and belief, due to Defendant's continued affirmative acts to prevent, suppress, conceal and discredit scientific research linking glyphosate to multiple myeloma, Plaintiff was unable to discover the existence of a body of recognized scientific evidence linking his disease to Roundup® prior to the recent publication of Defendant's said affirmative acts.

18. As a proximate result of Defendant's wrongful acts and omissions in placing its defective Roundup® products into the stream of commerce without

adequate warnings of the hazardous and carcinogenic nature of glyphosate, and in breach of its warranties, negligence and strict liability, Plaintiff has suffered and continues to suffer severe and permanent physical and emotional injuries.

### FIRST CLAIM FOR RELIEF: DESIGN DEFECT

19. Plaintiff hereby incorporates by reference paragraphs 1-18 of the Complaint as if fully set forth herein.

20. At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing and promoting Roundup® products, which are defective and unreasonably dangerous to consumers and users, including Plaintiff, coming into contact with them.

21. Defendant's Roundup® products are manufactured, designed and labeled in an unsafe, defective and inherently dangerous manner.

22. Defendant placed its Roundup® products on the market for use and knew, or in the exercise of reasonable care should have known, that its glyphosate-containing products would be used by consumers, including Plaintiff, without inspection for defects.

23. Defendant's Roundup® products were in a defective condition when they were placed on the market and left Defendant's possession.

24. Defendant's Roundup® products reached the intended users, including Plaintiff, in Nebraska without substantial change to their condition and as designed, manufactured, sold, distributed, labeled and marketed by Defendant.

25. The defect in Defendant's Roundup® products rendered the products unreasonably dangerous and unsafe for its foreseeable and intended use and Plaintiff could not have reasonably discovered this danger before the time of exposure.

26. Roundup's® foreseeable risk to Plaintiff, and other foreseeable users, exceeded the alleged benefits associated with its design and formulation.

27. A practicable and feasible alternative existed to make Defendant's Roundup® products safe at the time the products left Defendant's control and ultimately used by Plaintiff.

28. Defendant's reckless design, perpetuation, and continuing denial of safety risks of Roundup® amounts to willful, wanton and/or reckless conduct.

29. The design defects in Defendant's Roundup® products was the proximate, and/or proximately contributing cause of, Plaintiff's injury sustained through his use of the product in the way, and for the general purpose, for which it was designed and intended.

SECOND CLAIM FOR RELIEF: STRICT LIABILITY—FAILURE TO WARN

30. Plaintiff hereby incorporates by reference paragraphs 1-29 of the Complaint as if fully set forth herein.

31. At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which were defective and unreasonably dangerous to consumers, including Plaintiff, because they did not contain adequate warnings or instructions concerning the dangerous

characteristics of Roundup® and glyphosate. These actions were under the ultimate control and supervision of Defendant.

32. Defendant had a duty to warn Roundup's® intended users, including Plaintiff, of the risks associated with the reasonably foreseeable uses of its glyphosate-containing Roundup® products but failed to do so.

33. Defendant's omission of warnings rendered its Roundup® products unreasonably dangerous.

34. Defendant's Roundup® products were unreasonably dangerous in that the products had the propensity for causing physical harm beyond that which would be contemplated by an ordinary user or consumer, including Plaintiff, with ordinary knowledge common to the foreseeable class of users as to its characteristics.

35. The dangers associated with using Defendant's product in a reasonably foreseeable manner were not open and obvious to the intended users, including Plaintiff.

36. Plaintiff used Defendant's Roundup® products in the intended and reasonably foreseeable manner.

37. Plaintiff had no way of knowing about the danger of Defendant's glyphosate-containing Roundup® products at the time of use.

38. The dangers imposed by Defendant's Roundup® products could have been avoided by the provision of reasonable instructions or warnings by Defendant.

39. The dangerous attributes of Defendant's Roundup® products were the proximate, and/or proximately contributing factor, to Plaintiff's injury.

## THIRD CLAIM FOR RELIEF: NEGLIGENCE

40. Plaintiff hereby incorporates by reference paragraphs 1-39 of the Complaint as if fully set forth herein.

41. Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale and distribution of its Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote and/or sell a product that was not unreasonably dangerous to Plaintiff as a consumer and user of it. Defendant further had a duty to not injure the intended users of its Roundup® products through a disregard for their safety.

42. Defendant breached its duty of reasonable care and failed to exercise reasonable care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale and distribution of its glyphosate-containing Roundup® products.

43. Defendant additionally breached its duty of reasonable care through its publication of false and misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

44. Defendant additionally breached its duty through its negligent and reckless suppression of independent scientific research with conscious disregard for the truth about the dangers of its Roundup® products and at the expense of the health of Roundup's® intended users, including Plaintiff.

45. Defendant's breach of its duty of reasonable care proximately caused Plaintiff's injury.

46. Plaintiff suffered damages, in an amount to be proved at trial, as a result of Defendant's breach.

## FOURTH CLAIM FOR RELIEF: BREACH OF EXPRESS WARRANTY

47. Plaintiff hereby incorporates by reference paragraphs 1-46 of the Complaint as if fully set forth herein.

48. Defendant expressly represented and warranted matters to Plaintiff through statements made by Defendant in labels, publication, package inserts and other written materials that its Roundup® products were safe to human health and environment. Specifically, Defendant expressly represented and warranted that its Roundup® products had no connection to cancer.

49. Defendant's Roundup® products did not comply with the warranty, that is, that they were defective.

50. Plaintiff justifiably and detrimentally relied on the express warranties and representations made by Defendant.

51. Plaintiff had no knowledge of the falsity or incompleteness of Defendant's statements and representations concerning its glyphosate-containing Roundup® products.

52. Plaintiff's injury was caused by the defective nature of Defendant's Roundup® products.

## FIFTH CLAIM FOR RELIEF: BREACH OF IMPLIED WARRANTY

53. Plaintiff hereby incorporates paragraphs 1-52 of the Complaint as if fully set forth herein.

54. Defendant had reason to know that Plaintiff was relying on its skill or judgment to furnish appropriate goods. Specifically, Defendant had reason to know that Plaintiff was relying on Defendant's skill and judgment when it made representations concerning the safety of its Roundup® products.

55. Plaintiff did in fact rely upon the Defendant's skill and judgment with regard to its statements concerning the safety of its glyphosate-containing Roundup® products.

56. Defendant deviated from the standard of care in its design, research, development, manufacture, testing, marketing, supplying, promotion, advertisement, packaging, sale and distribution of its Roundup® products at the time they were used by Plaintiff.

57. Defendant's Roundup® products failed to perform adequately because of a lack of quality inherent in the items themselves—namely their inclusion of glyphosate and failure to warn of the potential risks associated with glyphosate use and exposure.

58. Defendant's deviation caused Plaintiff's injury both proximately and in fact.

## SIXTH CLAIM FOR RELIEF: FRAUDULENT CONCEALMENT

59. Plaintiff hereby incorporates by reference paragraphs 1-58 of the Complaint as if fully set forth herein.

9

60. Defendant had a duty to disclose the material facts surrounding its glyphosate-containing Roundup® products—namely that continued exposure to glyphosate can cause cancer including multiple myeloma.

61. At all times relevant to this litigation, Defendant both possessed knowledge of and concealed glyphosate's carcinogenic attributes

62. The carcinogenic attributes of Defendant's glyphosate-containing Roundup® were not in Plaintiff's reasonably diligent attention, observation and/or judgment at the time he used said products.

63. Defendant concealed the carcinogenic attributes of glyphosate with the intention that Plaintiff would use the product believing it to be safe to humans.

64. Plaintiff reasonably relied on the facts as he believed them to be (i.e., that Roundup® posed no risk to human health or safety) as a result of Defendant's concealment which induced Plaintiff to use Defendant's product.

65. Plaintiff suffered damage due to Defendant's fraudulent concealment of the carcinogenic attributes of its glyphosate-containing Roundup® products.

WHEREFORE, Plaintiff John Hinkle prays that judgment be entered against Defendant Monsanto Company and in favor of Plaintiff in an amount to be proved a trial, for Plaintiff's costs herein and for such other and further relief as the Court deems just and proper.

DATED this 26th day of July, 2019.

JOHN HINKLE, Plaintiff

By:   <u>/s/ *Sydney M. Huss*</u>
     Kevin J. Schneider - #18898
     Sydney M. Huss - #26581
     CLINE WILLIAMS WRIGHT
     JOHNSON & OLDFATHER, L.L.P.
     Sterling Ridge
     12910 Pierce St., Suite 200
     Omaha, NE 68144
     Phone: (402) 397-1700
     Fax: (402) 397-1806
     kschneider@clinewilliams.com
     shuss@clinewilliams.com

4811-6653-1741, v. 1