# U.S. District Court
## Eastern District of Michigan (Detroit)
## CIVIL DOCKET FOR CASE #: 2:19–cv–13601–SJM–RSW

Sarafian et al v. Monsanto Company
Assigned to: District Judge Stephen J. Murphy, III
Referred to: Magistrate Judge R. Steven Whalen
Demand: $75,000
Cause: 28:1332 Diversity–Personal Injury

Date Filed: 12/06/2019
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Alexander Sarafian**

represented by **David B. Timmis**
Vandeveer Garzia
840 W. Long Lake Road
Ste. 600
Troy, MI 48098–6356
248–312–2800
Email: dtimmis@vgpclaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kara Sarafian**

represented by **David B. Timmis**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/06/2019 | 1 | COMPLAINT filed by All Plaintiffs against Monsanto Company with Jury Demand. Plaintiff requests summons issued. Receipt No: 0645–7515102 – Fee: $ 400. County of 1st Plaintiff: Wayne – County Where Action Arose: Wayne – County of 1st Defendant: Delaware. [Previously dismissed case: No] [Possible companion case(s): None] (Timmis, David) (Entered: 12/06/2019) |
| 01/10/2020 | 2 | SUMMONS Issued for *Monsanto Company* (LGra) (Entered: 01/10/2020) |
| 01/24/2020 | 3 | CERTIFICATE of Service/Summons Returned Executed. Monsanto Company served on 1/16/2020, answer due 2/6/2020. (Timmis, David) (Entered: 01/24/2020) |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Alexander Sarafian and Kara Sarafian,

        Plaintiffs,

-vs-

Monsanto Company, Inc.,

        Defendant.

Case no. 19-cv-
Hon.

**COMPLAINT AND
JURY DEMAND**

DAVID B. TIMMIS (P40539)
DAVID Q. HOUBECK (P77002)
VANDEVEER GARZIA, P.C.
Attorneys for Plaintiff
840 W. Long Lake Road
Suite 600
Troy, Michigan 48098
(248) 312-2800 – phone
(248) 879-0042 – fax
dhoubeck@vgpclaw.com

1

## COMPLAINT AND JURY DEMAND

NOW COME the Plaintiffs, ALEXNADER SARAFIAN and KARA SARAFIAN, by and through their attorneys, VANDEVEER GARZIA, P.C., and for their Complaint against Defendant Monsanto Company, Inc., state as follows:

### INTRODUCTION

1.     This is a civil action for damages suffered by Plaintiff, ALEXANDER SARAFIAN, as a direct and proximate result of Defendant's negligent, grossly negligent, intentional, and/or fraudulent conduct related to the design, development, manufacture, testing, packing, packaging, promoting, marketing, advertising, distributing, labeling, and/or sale of the herbicide Roundup®, which contains the active ingredient "glyphosate."

2.     Defendant Monsanto Company, Inc. ("Monsanto") began marketing glyphosate in products in 1974 under the brand name Roundup®.

3.     Roundup® is a non-selective herbicide used to kill unwanted weeds that deface landscape and commonly compete with the growing of crops.   In addition to the active ingredient glyphosate, Roundup® contains the surfactant Polyethoxylated tallow amine (POEA) and/or adjuvants and other so-called "inert" ingredients.

4.     Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri, and incorporated in Delaware. It is the world's leading producer of glyphosate.

5.     On or about March 20, 2015, the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), issued an evaluation of several herbicides, including glyphosate. The evaluation was based, in part, on studies of exposures to glyphosate in several countries around the world, and traces the health implications from exposure to glyphosate since 2001.

6.     The IARC Working Group classified glyphosate as a Group 2A herbicide, which means that it is carcinogenic to humans.

7.     Upon information and belief, the IARC Working Group concluded that the cancers most associated with glyphosate exposure are non-Hodgkin's lymphoma and other haematopoietic cancers, including lymphocytic lymphoma/chronic lymphocytic leukemia, B-cell lymphoma, and multiple myeloma.

8.     The IARC evaluation confirms that glyphosate is toxic to humans.

9.     Monsanto, on the other hand, has represented to consumers, including, but not limited to the Plaintiffs, that glyphosate is safe, for humans and the environment.

## JURISDICTION AND VENUE

10.   Federal diversity jurisdiction in this Court is proper under 28 U.S.C. §1332.   Plaintiffs are residents of Michigan.   Monsanto is incorporated in Delaware and maintains its headquarters in Missouri.   Further, the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.   This Court has personal jurisdiction over Monsanto because Monsanto transacts business in Michigan and is a corporation doing business within Michigan.   Further, Monsanto sold Roundup® products to the Plaintiffs in Michigan.

12.   Additionally, Monsanto maintains sufficient contacts with the State of Michigan such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

13.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the events or omissions giving rise to the claims occurred in this judicial district as set forth herein, in the County of Oakland, State of Michigan.

## PARTIES
## PLAINTIFF ALEXANDER SARAFIAN

4

14.     Plaintiff, ALEXANDER SARAFIAN, is an adult male, who is, and at all pertinent times hereto was, a resident of the City of Livonia, County of Wayne, State of Michigan, and City of Northville, County of Oakland, State of Michigan.

15.     Plaintiff, KARA SARAFIAN, is an adult female, who is, and at all pertinent times hereto was, a resident of the City of Farmington, County of Oakland, State of Michigan and City of Northville, County of Oakland, State of Michigan.

16.     Plaintiff, ALEXANDER SARAFIAN, was continually exposed to Roundup® in and/or around Wayne and Oakland County, Michigan from at least the early 1990's, until recently hearing advertisements on the media referencing the hazards of Roundup®.

17.     Plaintiff, ALEXANDER SARAFIAN, was diagnosed with Stage 4 B-cell Non-Hodgkin's Lymphoma in 2006.

18.     Plaintiff, KARA SARAFIAN, is the lawful wife of Plaintiff, ALEXANDER SARAFIAN, and the two reside together.

### DEFENDANT MONSANTO COMPANY

19.     Upon information and belief, Defendant, Monsanto Company, Inc. ("Monsanto"), is a foreign corporation created under the laws of the State of Delaware, with its headquarters and principal place of business in St. Louis, Missouri.

## FACTS

20.     At all times pertinent hereto, upon information and belief, Monsanto discovered the herbicidal properties of glyphosate and manufactured Roundup®, which contains the active ingredient glyphosate and the surfactant POEA, as well as adjuvants and other "inert" ingredients.

21.     Upon information and belief, Glyphosate is a broad spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world.

22.     Upon information and belief, plants treated with glyphosate translocate the systemic herbicide to their roots, short regions, and fruit where it interferes with the plaintiff's ability to form aromatic amino acids necessary for protein synthesis.  Treated plants generally die within two to three days.  Because plants absorb glyphosate, it cannot be completely removed by washing or peeling produce or by milling, baking or brewing grains.

23.     For nearly 40 years, farmers and consumers across the world have used Roundup® without knowing of the danger its use poses. That is because when Monsanto first introduced Roundup®, Monsanto advertised glyphosate as a technological breakthrough that could kill almost every weed without causing harm to either people or to the environment.

24.    According to the World Health Organization (WHO), glyphosate is a probable cause of cancer.

25.    In an effort to sell more products, Monsanto has assured the consuming public that Roundup® was harmless.

26.    Monsanto has championed falsified data and has attacked legitimate studies that revealed the dangers of Roundup®.

27.    Monsanto continues to manufacture, sell and advertise Roundup® to the general public despite its devastating effects.

28.    Monsanto has recently launched an advertising campaign proclaiming an intention to "Draw the Line."

29.    Unfortunately, the line drawn by Monsanto has been the direct and proximate cause of devastating damages to the Plaintiff.

30.    Upon information and belief, the first glyphosate-based herbicide was introduced to the market in the mid-1970's under the brand name Roundup®.

31.    From the outset, Monsanto marketed Roundup® as a "safe" general purpose herbicide for widespread commercial and consumer use.

32.    Monsanto still markets Roundup® as safe today.

33.    Upon information and belief, based on early studies showing that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as possibly carcinogenic to humans (Group C) in 1985.

34.    Upon information and belief, after pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to evidence of non-carcinogenicity in humans (Group E) in 1991.

35.    Upon information and belief, on two occasions, the EPA found that the laboratories hired by Monsanto to test the toxicity of its Roundup® products for registration purposes committed fraud.

36.    Upon information and belief, in the first instance, Monsanto, in seeking initial registration of Roundup® by the EPA, hired Industrial Bio-Test laboratories ("IBT") to perform and evaluate pesticides toxicology studies relating to Roundup®.

37.    Upon information and belief, IBT performed about 30 tests on glyphosate and glyphosate containing products, including nine of the fifteen residue studies needed to register Roundup®.

38.    Upon information and belief, in 1976, the United States Food and Drug Administration ("FDA") performed an inspection of IBT that revealed discrepancies between the raw data and the final report relating to the toxicological impacts of glyphosate.

39.    Upon information and belief, the EPA subsequently audited IBT and also found the toxicology studies conducted for the Roundup® herbicide to be invalid.

8

40. Upon information and belief, three top executives of IBT were convicted of fraud in 1983.

41. In the second incident of data falsification, upon information and belief, Monsanto hired Craven Laboratories in 1991 to perform pesticide and herbicide studies, including for Roundup®.

42. Upon information and belief, that same year, the owner of Craven Laboratories and three of its employees were indicted, and later convicted, of fraudulent laboratory practices in the testing of pesticides and herbicides.

43. Despite the falsity of the test that underlie its registration, within a few years of its launch, Monsanto was marketing Roundup® in 115 countries, including within this judicial district.

44. Upon information and belief, exposure pathways are identified as air (especially during spraying), water, and food.

45. Further, upon information and belief, community exposure to glyphosate is widespread and found in soil, air, surface water, and groundwater, as well as in food.

46. Upon information and belief, Monsanto knew and/or should have known that Roundup® is considerably more dangerous than glyphosate alone.

47. Upon information and belief, despite Monsanto's knowledge, Monsanto continued to promote Roundup® as safe to the general public, including, but not limited to, the Plaintiff.

48. Upon information and belief, on or about September 4, 2015, California's Office of Environmental Health Hazard Assessment ("OEHHA") published a notice of intent to include glyphosate on the state's list of known carcinogens under "Proposition 65."

49. Upon information and belief, California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), requires the state to maintain and, at least, once a year, revise and republish a list of chemicals "known to the State of California to cause cancer or reproductive toxicity."

50. Upon information and belief, the OEHHA determined that glyphosate met the criteria for the listing mechanism under the Labor Code following IARC's assessment of the chemical.

51. Upon information and belief, a business that deploys a listed chemical in its products must provide "clear and reasonable warnings" to the public prior to exposure to the chemical.

**PLAINTIFF ALEXANDER SARAFIAN'S EXPOSURE TO ROUNDUP**

52. Plaintiff, ALEXANDER SARAFIAN, used Roundup® on his properties in Michigan in excess of twenty-five (25) years.

53.   Plaintiff, ALEXANDER SARAFIAN, purchased Roundup® in its liquid and concentrated form in Michigan.

54.   In 2006, Plaintiff, ALEXANDER SARAFIAN, was diagnosed with Stave 4 B-Cell Non-Hodgkin's lymphoma.

55.   Since his diagnosis, Plaintiff, ALEXANDER SARAFIAN, has undergone extensive cancer treatment, including significant chemotherapy, body scans and a stem cell transplant.

56.   During the time that Plaintiff, ALEXANDER SARAFIAN, was exposed to Roundup®, he did not know that exposure to Roundup® was injurious to his health or the health of others as a direct and proximate result of Monsanto's false and/or misleading advertisement and promotion of the product in Michigan, in addition to Monsanto's failure to properly warn of the harmful effects of the product.

57.   Plaintiff, ALEXANDER SARAFIAN, first learned that Roundup can cause Non-Hodgkin's lymphoma and/or Chronic Lymphocytic Leukemia in or around 2019.

## TOLLING OF THE STATUTE OF LIMITATIONS
## DISCOVERY RULE TOLLING

58.   Plaintiff, ALEXANDER SARAFIAN, had no way of knowing the risk of serious illness associated with the use of and/or exposure to Roundup® and glyphosate as a result of the false, misleading, and/or fraudulent conduct of

Monsanto in its advertising, in addition to Monsanto's failure to properly warn of the harmful effects of the product.

59.     Within the time period of any applicable statute of limitations, Plaintiff, ALEXANDER SARAFIAN, could not have discovered, through the exercise of reasonable diligence, that Roundup® and glyphosate is injurious to human health as a direct and proximate result of the false, misleading, and/or fraudulent conduct of Monsanto.

60.     Accordingly, any and all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims, of which the Plaintiffs only recently became aware.

61.     Further, any and all applicable statutes of limitations have also been tolled by Monsanto's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

62.     Instead of disclosing critical safety information about Roundup® and glyphosate, Monsanto has consistently and falsely misrepresented the safety of its Roundup® products to the general public, including, but not limited, the Plaintiff.

63.     Monsanto was under a continuous duty to disclose to consumers, users and other persons coming into contact with its products, including, but not limited to, the Plaintiff, accurate safety information regarding its products and the risks associated with the use of and/or exposure to Roundup® and glyphosate.

64.     Despite its duty in this regard, Monsanto knowingly, affirmatively, and fraudulently concealed safety information concerning Roundup® and glyphosate and the serious risks associated with the use of and/or exposure to its products from the general public, including, but not limited to, the Plaintiff.

65.     Accordingly, Monsanto is estopped from relying on any statutes of limitations in defense of this action.

## COUNT ONE – PRODUCT LIABILITY
## DESIGN DEFECT

66.     Plaintiffs hereby restate, reallege, and incorporate by reference paragraphs 1 through 65, as though fully set forth herein.

67.     Plaintiffs bring this product liability claim against Defendant for defective design.

68.     At all times pertinent hereto, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, users and other persons coming into contact with these products, including, not limited to, the Plaintiffs thereby placing Roundup® products into the stream of commerce.

69.     At all times pertinent hereto, Defendant designed, researched, developed, formulated, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold and distributed the Roundup® products used

by Plaintiff, ALEXANDER SARAFIAN, and/or to which Plaintiff, ALEXANDER SARAFIAN, was exposed, as described above.

70.    At all times pertinent hereto, Defendant's Roundup® products were manufactured, designed and labeled in an unsafe, defective, and/or inherently dangerous manner that was dangerous for use by or exposure to the general public, including, but not limited to, the Plaintiff.

71.    At all times pertinent hereto, Defendant's Roundup® products reached the intended consumers, handlers, and/or users or other persons coming into contact with these products in Michigan and throughout the United States, including, but not limited to, the Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

72.    Defendant's Roundup® products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant, were defective in design and formulation in that when they left the hands of the Defendant's manufacturers and/or suppliers, they were unreasonably dangerous because they were not as safe as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

73.    Defendant's Roundup® products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold,

14

and marketed by Defendant, were defective in design and formulation in that when they left the hands of Defendants' manufacturers and/or suppliers, the foreseeable risks associated with these products' reasonably foreseeable uses exceeded and alleged benefits associated with their design and formulation.

74.     Therefore, at all times pertinent hereto, Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant, were defective in design and formulation, in one or more of the following ways:

a)  When placed in the stream of commerce, Defendant's Roundup® products were defective in design and formulation, and consequently, dangerous to an extent beyond that which an ordinary consumer would expect.

b)  When placed in the stream of commerce, Defendant's Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in the intended manner and/or a reasonably anticipated manner.

c)  When placed in the stream of commerce, Defendant's Roundup® products contained unreasonably dangerous design defects and

were not reasonably safe when used in the intended manner and/or
a reasonably anticipated manner.

d) Defendant did not sufficiently test, investigate, and/or study its
Roundup® products and, specifically, the active ingredient
glyphosate to identify any and all harmful effects caused by use
and/or exposure to the product by human beings.

e) Exposure to Roundup® and glyphosate-containing products
presents a risk of harmful side effects that outweighs any potential
utility stemming from the use of the herbicide.

f) Defendant knew and/or should have known at the time of
marketing and/or otherwise placing its Roundup® products into
the stream of commerce that exposure to Roundup® and
specifically, its active ingredient glyphosate, could result in cancer
and other severe illnesses and injuries to human beings, including,
but not limited to, the Plaintiff.

g) Defendant did not conduct adequate post-marketing surveillance of
its Roundup® products.

h) Defendant could have employed safer alternative designs and
formulations.

75.     At all times pertinent hereto, Plaintiff, ALEXANDER SARAFIAN, used and/or was exposed to the use of Defendant's Roundup® products in an intended manner and/or a reasonably foreseeable manner without knowledge of the products' dangerous characteristics.

76.     Plaintiff, ALEXANDER SARAFIAN, could not have reasonably discovered the defects and/or risks associated with use of and/or exposure to Roundup® or glyphosate-containing products before or at the time of exposure.

77.     The harm caused by Defendant's Roundup® products far outweighed their benefit, rendering Defendant's products dangerous to an extent beyond that which an ordinary consumer would anticipate.

78.     Defendant's Roundup® products were and are more dangerous than alternative products and Defendant could have designed its Roundup® products to make them less dangerous.

79.     At the time that Defendant designed its Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

80.     At the time Roundup® products left Defendant's control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's Roundup® herbicides.

81.   Defendant's defective design of Roundup® amounts to willful, wanton, and/or reckless conduct by Defendant.

82.   Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Defendant is strictly liable to Plaintiffs.

83.   The defects in Defendant's Roundup® products were substantial and contributing factors in causing Plaintiff's grave injuries, and, but for Defendant's misconduct and omissions, Plaintiffs would not have sustained their injuries.

84.   As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, Plaintiff, ALEXANDER SARAFIAN, has suffered and continues to suffer grave injuries, and he has endured pain and discomfort, as well as economic hardship, including loss of income and earning capacity, considerable financial expenses, including, but not limited to, for medical care and treatment, all of which Plaintiff will continue to incur in the future.

WHEREFORE, Plaintiff, ALEXANDER SARAFIAN, requests that the Court enter judgment in his favor in an amount in excess of $75,000 in actual damages, in addition to an award of exemplary damages and/or treble damages, compensatory damages, special damages, punitive damages, noneconomic damages, including pain and suffering, mortification, emotional distress, shock, etc., economic damages, including lost wages, loss of earning capacity, medical

18

and related expenses, costs, interest, and attorney fees to which the Plaintiff is entitled, as well as any and all equitable damages available at law, including, but not limited to, declaratory and/or injunctive relief.

## COUNT TWO – PRODUCT LIABILITY
## FAILURE TO WARN

85.     Plaintiffs hereby restate, reallege, and incorporate by reference paragraphs 1 through 84, as though fully set forth herein.

86.     Plaintiff brings this product liability claim against Defendant for failure to warn.

87.     At all times pertinent hereto, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, users and other persons coming into contact with these products, including, not limited to, the Plaintiffs, because they did not and do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup® and specifically, the active ingredient glyphosate.

88.     Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Roundup® products, and in the course of the same, directly advertised or marketed the products to consumers and end users, including but not limited to, the Plaintiffs, and Defendant therefore had a duty to warn of the

risks associated with the reasonably foreseeable uses (and misuses) of Roundup® and glyphosate-containing products and a duty to instruct on the proper, safe use of these products.

89. At all times pertinent hereto, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that its Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks.

90. Defendant has a continuing duty to instruct on the proper, safe use of these products.

91. Defendant, as manufacturer, seller, or distributor of chemical herbicides, is held to the knowledge of an expert in the field.

92. At the time of manufacture, Defendant could have provided warnings and/or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because it knew and/or should have known of the unreasonable risks of harm associated with the use of and/or exposure to these products.

93. At all times pertinent hereto, Defendant failed to investigate, study, test, or promote the safety of its Roundup® products.

94. Defendant also failed to minimize the dangers to users and consumers of its Roundup® products.

95. Defendant also failed to minimize the dangers to users and consumers of its Roundup® products and to those who would foreseeably use or be harmed by Defendant's herbicides, including, but not limited to, the Plaintiffs.

96. Despite the fact that Defendant knew or should have known that Roundup® products posed a grave risk of harm, it failed to warn the general public and/or the Plaintiff of the dangerous risks associated with their use and exposure.

97. The dangerous propensities of Defendant's products and the carcinogenic characteristics of glyphosate, as described above, were known to Defendant, or scientifically, knowable to Defendant through appropriate research and testing by known methods, at the time Defendant distributed, suppled, or sold the products, and not known to end users and consumers, such as Plaintiffs.

98. Defendant knew or should have known that its Roundup® and glyphosate-containing products created significant risks or serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to these products.

99. Defendant wrongfully, intentionally, and/or fraudulently concealed information concerning the dangerous nature of Roundup® and its active

ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

100. At all times pertinent hereto, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

101. At all times pertinent hereto, Plaintiff, ALEXANDER SARAFIAN, used and/or was exposed to the use of Defendant's products with any knowledge of the products' dangerous characteristics.

102. Plaintiffs could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of Plaintiff's exposure.

103. Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of Defendant.

104. Defendant failed to communicate adequate information related to the dangers, use, and/or exposure of Defendant's products, and Defendant failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including agricultural and horticultural applications.

22

105. The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers and/or users of the products to utilize the products safely and with adequate protection.

106. Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup® and glyphosate.

107. Defendant continued to promote the efficacy of its products, even after it knew and/or should have known of the unreasonable risks from use or exposure.

108. Defendant concealed or otherwise suppressed, through marketing and promotion, relevant information and/or research about the risks and dangers of exposure to Roundup® and glyphosate.

109. To this day, Defendant has failed to adequately and accurately warn of the true risks of Plaintiff's injuries associated with the use of and exposure to Roundup® and its active ingredient glyphosate, a probable carcinogen.

110. As a result of Defendant's inadequate warnings, Defendant's Roundup® products were defective and unreasonably dangerous when they left the

possession and/or control of Defendant, were distributed by Defendant, and sold to Plaintiff.

111.   Defendant is liable to Plaintiffs for injuries caused by its failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of its Roundup® products and the risks associated with the use of or exposure to Roundup® and glyphosate.

112.   The defects in Defendant's Roundup® products were substantial and contributing factors in causing Plaintiffs' injuries, and, but for Defendant's misconduct and omissions, Plaintiff would not have sustained his injuries.

113.   Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with its Roundup® products, Plaintiffs could have avoided the risk of developing injuries as alleged herein and Plaintiffs could have obtained alternative herbicides.

114.   As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, Plaintiff, ALEXANDER SARAFIAN, has suffered and continues to suffer severe injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses, including, but not limited to, for medical care and treatment. Plaintiff will continue to incur these expenses in the future.

WHEREFORE, Plaintiff, ALEXANDER SARAFIAN, requests that the Court enter judgment in his favor in an amount in excess of $75,000 in actual damages, in addition to an award of exemplary damages and/or treble damages, compensatory damages, special damages, punitive damages, noneconomic damages, including pain and suffering, mortification, emotional distress, shock, etc., economic damages, including lost wages, loss of earning capacity, medical and related expenses, costs, interest, and attorney fees to which the Plaintiff is entitled, as well as any and all equitable damages available at law, including, but not limited to, declaratory and/or injunctive relief.

## COUNT THREE -
## NEGLIGENCE AND/OR GROSS NEGLIGENCE

115. Plaintiff hereby restates, realleges, and incorporates by reference paragraphs 1 through 114, as though fully set forth herein.

116. Defendant, directly and/or indirectly, caused Roundup® products to be sold to and/or used by Plaintiffs.

117. Defendant, directly and/or indirectly, caused Roundup® products to be sold to and/or used by Plaintiffs.

118. At all times pertinent hereto, Defendant had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of its Roundup® products,

including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers, users, and other persons coming into contact with the product.

119. At all times pertinent hereto, Defendant had a duty to exercise reasonable care in the marketing, advertising, and sale of its Roundup® products.

120. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup® and, in particular, its active ingredient glyphosate.

121. At all times pertinent hereto, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and specifically, the carcinogenic properties of the chemical glyphosate.

122. Accordingly, at all times pertinent hereto, Defendant knew or, in the exercise of reasonable care, should have known that use of or exposure to its Roundup® products could cause Plaintiffs' injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

123. Defendant knew or, in the exercise of reasonable care, should have known that Roundup® is more toxic than glyphosate alone and that safety studies

on Roundup®'s adjuvants and "inert" ingredient, and/or the surfactant POEA were necessary to protect Plaintiff from Roundup®.

124.    Defendant knew or, in the exercise of reasonable care, should have known that tests limited to Roundup®'s active ingredient glyphosate were insufficient to prove the safety of Roundup®.

125.    Defendant also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with the use of and/or exposure to Roundup® and glyphosate-containing products.

126.    As such, Defendant breached its duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Defendant manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

127. Defendant failed to appropriately and adequately test Roundup®, Roundup®'s adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Plaintiffs from Roundup®.

128. Despite the ability and means to investigate, study, and test its products and to provide adequate warnings, Defendant failed to do so.

129. Defendant has wrongfully, intentionally, and/or fraudulently concealed information and has further made false and/or misleading statements concerning the safety of and/or exposure to Roundup® and glyphosate.

130. Defendant was negligent and/or grossly negligent by:

    a) Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup® products without thorough and adequate pre- and post-market testing;

    b) Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;

c) Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture, horticulture, and at-home use;

d) Failing to undertake sufficient studies and conduct necessary tests to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup®, and the propensity of these ingredients to render Roundup® toxic, increase the toxicity of Roundup®, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup®, and whether or not "inert" ingredients and/or adjuvants were safe for use;

e) Failing to use reasonable and prudent care in the design, research, manufacture, formulation, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

f) Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

g) Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendant could reasonably foresee would use and/or be exposed to its Roundup® products;

h) Failing to disclose to Plaintiff, users, consumers, and the general public that the use of and exposure of Roundup® presented severe risks of cancer and other grave illnesses;

i) Failing to warn Plaintiff, users, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other users and consumers;

j) Systemically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

k) Representing that its Roundup® products were safe for their intended use when in fact, Defendant knew or should have known that the products were not safe for their intended use;

l) Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

m) Advertising, marketing, and recommending the use of Roundup® products, while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

n) Continuing to disseminate information to its consumers, which indicate or imply that Defendant's Roundup® products are not unsafe for use in the agricultural, horticultural industries, and/or home use; and

o) Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

131. Defendant knew and/or should have known that it was foreseeable that consumers and/or users, such as Plaintiff, would suffer injuries as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup®.

132. Plaintiff did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

31

133. Defendant's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer, as described herein.

134. Defendant's conduct, as described above, was demonstrates conduct so reckless as to demonstrate an extreme disregard for the safety of others.

135. Defendant regularly risks the lives of consumers and users of its products, including Plaintiff, despite Defendant's full and/or imputed knowledge of the dangers of its products.

136. Defendant has made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff, with regard to the dangers known by Defendant.

137. Defendant's reckless conduct therefore warrants an award of punitive damages.

138. As a proximate result of Defendant's wrongful acts and omissions in placing its defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Plaintiff, ALEXANDER SARAFIAN, has suffered and continues to suffer severe and permanent physical and emotional injuries. Plaintiff has endured pain and suffering, has suffered economic losses, including, but not limited to, significant

expenses for medical care and treatment and will continue to incur these expenses in the future.

WHEREFORE, Plaintiff, ALEXANDER SARAFIAN, requests that the Court enter judgment in his favor in an amount in excess of $75,000 in actual damages, in addition to an award of exemplary damages and/or treble damages, compensatory damages, special damages, punitive damages, noneconomic damages, including pain and suffering, mortification, emotional distress, shock, etc., economic damages, including lost wages, loss of earning capacity, medical and related expenses, costs, interest, and attorney fees to which the Plaintiff is entitled, as well as any and all equitable damages available at law, including, but not limited to, declaratory and/or injunctive relief.

## COUNT FOUR –
## BREACH OF EXPRESS WARRANTY

139.  Plaintiffs hereby restate, reallege, and incorporate by reference paragraphs 1 through 138, as though fully set forth herein.

140.  At all times pertinent hereto, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting its Roundup® products, which are defective and unreasonably dangerous to consumers, including, but not limited to, the Plaintiffs, thereby placing Roundup® products into the stream of commerce.

141. These actions were under the ultimate control and supervision of Defendant.

142. At all times pertinent hereto, Defendant expressly represented and warranted to the purchasers of its Roundup® products, including the Plaintiffs, by and through statements made by Defendant in labels, publications, package inserts, and other written materials intended for consumers and the general public, that its Roundup® products were safe to human health and the environment, effective, fit, and proper for their intended use.

143. Defendant advertised, labeled, marketed, and promoted Roundup® products, representing the quality to consumers and the public in such a way as to induce their purchase or use, thereby making an express warranty that its Roundup® products would conform to the representations.

144. These express representations include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to Roundup® and glyphosate.

145. Defendant knew and/or should have known that the risks expressly included in Roundup® warnings and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein.

146. Nevertheless, Defendant expressly represented that its Roundup® products were safe and effective, that they were safe and effective for use by individuals such as Plaintiffs, and/or that they were safe and effective as agricultural herbicides.

147. The representations about Roundup®, as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

148. Defendant places its Roundup® products into the stream of commerce for sale and recommended their use to consumers and the public without adequate warning of the true risks of developing the injuries associated with the use of the exposure to Roundup® and its active ingredient glyphosate.

149. Defendant breached these warranties because, among other things, its Roundup® products were defective, dangerous, unfit for their intended and/or reasonably foreseeable use, did not contain label representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose.

150. Specifically, Defendant breached the warranties in the following ways:

a) Defendant represented through its labeling, advertising, and marketing materials that its Roundup® products were safe, and fraudulently withheld and concealed information about the risks of serious injury associated with use of and/or exposure to Roundup® and glyphosate by expressly limiting the risks associated with use and/or exposure within its warnings and labels; and

b) Defendant represented that its Roundup® products were safe for use and fraudulently concealed information that demonstrated that glyphosate, the active ingredient in Roundup®, had carcinogenic properties, and that its Roundup® products, therefore, were not safer than any alternative available on the market.

151. Defendant had sole access to material facts concerning the nature of the risks with its Roundup® products as expressly stated within its warnings and labels, and Defendant knew that consumers and users such as Plaintiffs could not have reasonably discovered that the risks expressly included in Roundup® warnings and labels were inadequate and inaccurate.

152. Plaintiff had no knowledge of the falsity or incompleteness of Defendant's statements and representations concerning Roundup®.

153. Plaintiff used and/or was exposed to the use of Roundup® as researched, developed, designed, tested, formulated, manufactured, inspected,

labeled, distributed, packaged, marketed, promoted, sold, or otherwise released into the stream of commerce by Defendant.

154. Had the warnings and labels for Roundup® products accurately and adequately set forth the true risks associated with the use of such products, including Plaintiff's injuries, rather than expressly excluding such information and warranting that the products were safe for their intended use, Plaintiff scould have avoided the injuries complained of herein.

155. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has suffered severe injuries.

156. Plaintiff, ALEXANDER SARAFIAN, has endured pain and suffering, has suffered economic losses, including, but not limited to, significant expenses for medical care and treatment, and will continue to incur these expenses in the future.

WHEREFORE, Plaintiff, ALEXANDER SARAFIAN, requests that the Court enter judgment in his favor in an amount in excess of $75,000 in actual damages, in addition to an award of exemplary damages and/or treble damages, compensatory damages, special damages, punitive damages, noneconomic damages, including pain and suffering, mortification, emotional distress, shock, etc., economic damages, including lost wages, loss of earning capacity, medical and related expenses, costs, interest, and attorney fees to which the Plaintiff is

entitled, as well as any and all equitable damages available at law, including, but
not limited to, declaratory and/or injunctive relief.

## COUNT FIVE –
## BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY

157.  Plaintiffs hereby restate, reallege, and incorporate by reference
paragraphs 1 through 156, as though fully set forth herein.

158.  At all times relevant to this litigation, Defendant engaged in the
business of testing, developing, designing, formulating, manufacturing, marketing,
selling, distributing, and promoting its Roundup® products, which are defective
and unreasonably dangerous to users and consumers, including Plaintiff, thereby
placing Roundup® products into the stream of commerce.

159.  These actions were under the ultimate control and supervision of
Defendant.

160.  Before the time that Plaintiff was exposed to the use of the
aforementioned Roundup® products, Defendant warranted to its consumers and
users, including Plaintiff, that its Roundup® products were merchantable quality
and safe and fit for the use for which they were intended, as horticultural
herbicides.

161.  Defendant, however, failed to disclose that Roundup® has dangerous
propensities when used as intended and that the use of and/or exposure to

Roundup® and glyphosate-containing products carries an increased risk of developing severe injuries, including Plaintiffs' injuries.

162. Upon information and belief, Plaintiffs reasonably relied upon the skill, superior knowledge and judgment of Defendant and upon its implied warranties that the Roundup® products were of merchantable quality and fit for their intended purpose or use.

163. The Roundup® products were expected to reach and did in fact reach consumers and users, including Plaintiffs, without substantial change in the condition in which they were manufactured and sold by Defendant.

164. At all times pertinent hereto, Defendant was aware that consumers and users of its products, including Plaintiffs, would use Roundup® products as marketed by Defendant, which is to say that Plaintiffs were the foreseeable users of Roundup®.

165. Defendant intended that its Roundup® products be used in the manner in which Plaintiff in fact used them and Defendant warranted each product to be of merchantable quality, safe, and fit for its intended use, despite the fact that Roundup® was not adequately tested or researched.

166. In reliance upon Defendant's express and/or implied warranties, Plaintiff used Roundup® as instructed and labeled and in the foreseeable manner intended, recommended, promoted and marketed by Defendant.

167. Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Roundup® or glyphosate.

168. Defendant breached its express and/or implied warranties to Plaintiffs in that its Roundup® products were not of merchantable quality, safe, or fit for their intended use, or adequately tested.

169. Roundup® has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

170. The harm caused by Defendant's Roundup® products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

171. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiffs have suffered severe and permanent physical and emotional injuries.

172. Plaintiff, ALEXANDER SARAFIAN, has endured pain and suffering, has suffered economic loss, including, but not limited to, significant expenses for medical care and treatment, and will continue to incur these expenses in the future.

WHEREFORE, Plaintiff, ALEXANDER SARAFIAN, requests that the Court enter judgment in his favor in an amount in excess of $75,000 in actual damages, in addition to an award of exemplary damages and/or treble damages, compensatory damages, special damages, punitive damages, noneconomic

damages, including pain and suffering, mortification, emotional distress, shock, etc., economic damages, including lost wages, loss of earning capacity, medical and related expenses, costs, interest, and attorney fees to which the Plaintiff is entitled, as well as any and all equitable damages available at law, including, but not limited to, declaratory and/or injunctive relief.

## COUNT SIX- LOSS OF CONSORTIUM

173. Plaintiffs hereby restate, reallege, and incorporate by reference paragraphs 1 through 172, as though fully set forth herein.

174. As a result of the product liability, breach of express warranties, breach of implied warranties, and/or gross negligence of the Defendant, Monsanto, Plaintiff, KARA SARAFIAN, has suffered a loss of consortium, including but not limited to the loss of society and companionship of her husband, ALEXANDER SARAFIAN, as well as a loss of the household services that he provided, the loss of financial support and the loss of the incidents of the marital relationship that they previously enjoyed.

WHEREFORE, Plaintiff, KARA SARAFIAN, requests that the Court enter judgment in her favor in an amount in excess of $75,000 in actual damages, in addition to an award of exemplary damages and/or treble damages, compensatory damages, special damages, punitive damages, damages associated with this Plaintiff's loss of consortium claim, costs, interest, and attorney fees to which the

Plaintiff is entitled, as well as any and all equitable damages available at law, including, but not limited to, declaratory and/or injunctive relief.

<div style="margin-left:40%">

Respectfully submitted,

VANDEVEER GARZIA, P.C.

*/s/ David B. Timmis*

By: _____
DAVID B. TIMMIS (P40539)
DAVID Q. HOUBECK (P77002)
Attorneys for Plaintiff
840 West Long Lake Road, Suite 600
Troy, MI 48098
(248) 312-2800 – phone
(248) 879-0042 – facsimile
dtimmis@vgpclaw.com
dhoubeck@vgpclaw.com

</div>

DATED: December 6, 2019

## DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs, ALEXANDER SARAFIAN and KARA

SARAFIAN, by and through their attorneys, VANDEVEER GARZIA, P.C., and

hereby demand a trial by jury in said cause.

Respectfully submitted,

VANDEVEER GARZIA, P.C.

*/s/ David B. Timmis*

By: _____

DAVID B. TIMMIS (P40539)
DAVID Q. HOUBECK (P77002)
Attorneys for Plaintiff
840 West Long Lake Road, Suite 600
Troy, MI 48098
(248) 312-2800 – phone
(248) 879-0042 – facsimile
dtimmis@vgpclaw.com

DATED: December 6, 2019        dhoubeck@vgpclaw.com