impacts of glyphosate. The EPA subsequently audited IBT and determined that the toxicology studies conducted for Roundup® were invalid. An EPA reviewer stated, after finding "routine falsification of data" at IBT, that is was "hard to believe the scientific integrity of the studies when they took specimens of the uterus from male rabbits.

104. Three top executives of IBT were convicted of fraud in 1983.

105. In the second incident Monsanto hired Craven Laboratories ("Craven") in 1990 to perform pesticide and herbicide studies, including several studies on Roundup®.

106. In March of 1991, the EPA announced that it was investigating Craven for "allegedly falsifying test data used by chemical firms to win EPA approval of pesticides."

107. The investigation lead to the indictments of the laboratory owner and a handful of employees.

### MONSANTO'S CONTINUING DISREGARD FOR THE SAFETY OF PLAINTIFF AND THE PUBLIC

108. Monsanto claims on its website that "[r]egulatory authorities and independent experts around the world have reviewed numerous long-term/carcinogenicity and genotoxicity studies and agree that there is no evidence that glyphosate, the active ingredient in Roundup® brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic."[10]

109. Ironically, the primary source for this statement is a 1986 report by the WHO, the same organization that now considers glyphosate to be a probable carcinogen.

110. Glyphosate, and Defendant's Roundup® products in particular, have long been associated with serious side effects and many regulatory agencies around the globe have banned or are currently banning the use of glyphosate herbicide products.

---

[10] Backgrounder -- Glyphosate: No Evidence of Carcinogenicity. Updated November 2014. (downloaded October 9, 2015)

19

111. Defendant's statements proclaiming the safety of Roundup® and disregarding its dangers misled Plaintiff.

112. Despite Defendant's knowledge that Roundup® was associated with an elevated risk of developing cancer, Defendant's promotional campaigns focused on Roundup®'s purported "safety profile."

113. Defendant's failure to adequately warn Plaintiff resulted in (1) Plaintiff using and being exposed to glyphosate instead of using another acceptable and safe method of controlling unwanted weeds and pests; and (2) scientists and physicians failing to warn and instruct consumers about the risk cancer, including NHL, and other injuries associated with Roundup®.

114. Defendant failed to seek modification of the labeling of Roundup® to include relevant information regarding the risks and dangers associated with Roundup® exposure.

115. The failure of Defendant to appropriately warn and inform the EPA has resulted in inadequate warnings in safety information presented directly to users and consumers.

116. The failure of Defendant to appropriately warn and inform the EPA has resulted in the absence of warning or caution statements that are adequate to protect health and the environment.

117. The failure of Defendant to appropriately warn and inform the EPA has resulted in the directions for use that are not adequate to protect health and the environment.

118. By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages as a result of Plaintiff's use of, and exposure to, Roundup® which causes or was a substantial contributing factor in causing Plaintiff to suffer from cancer, specifically NHL, and Plaintiff suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

20

119. By reason of the foregoing, Plaintiff is severely and permanently injured.

120. By reason of the foregoing acts and omissions, Plaintiff has endured and, in some categories continues to suffer, emotional and mental anguish, medical expenses, and other economic and non-economic damages, as a result of the actions and inactions of the Defendant.

### PLAINTIFF'S EXPOSURE TO ROUNDUP®

121. Mary Goodman used Roundup® beginning approximately January 1, 2000.

122. For more than twenty (20) years, Mary Goodman sprayed Roundup® on his property on a regular basis approximately four times per month during the spring and summer months every year. Mary Goodman followed all safety and precautionary warning during the course of use.

123. Mary Goodman was subsequently diagnosed with a form of Non-Hodgkin's Lymphoma in approximately February 2019. The development of Ms. Goodman's Non-Hodgkin's Lymphoma was proximately and actually caused by exposure to Defendant's Roundup® products.

124. As a result of his injury, Mary Goodman has incurred significant economic and non-economic damages.

### FIRST CAUSE OF ACTION
### (NEGLIGENCE)

125. Plaintiff repeats, reiterates, and re-alleges each and every allegations of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

126. Defendant had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of

21

Roundup® into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

127. Defendant failed to exercise ordinary care in the designing, researching, testing, quality assurance, quality control, and/or distribution of Roundup® into interstate commerce in that Defendant knew or should have known that using Roundup® created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of NHL, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as a need for lifelong medical treatment, monitoring, and/or medications.

128. The negligence by the Defendant, its agent, servants, and/or employees, including but was not limited to the following acts and/or omissions:

   a) Manufacturing, producing, promoting, formulating, creating, and/or designing Roundup® without thoroughly testing it;

   b) Failing to test Roundup® and/or failing to adequately, sufficiently, and properly test Roundup®;

   c) Not Conducting sufficient testing programs to determine whether or not Roundup® was safe for use; in that Defendant herein knew or should have known that Roundup® was unsafe and unfit for use by reason of the dangers to its users;

   d) Not conducting sufficient testing programs and studies to determine Roundup®'s carcinogenic properties even after Defendant had knowledge that Roundup® is, was, or could be carcinogenic;

   e) Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup® and the propensity of these ingredients to render Roundup® toxic, increase the toxicity of Roundup®, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup® toxic, and whether or not "inert" ingredients and/or adjuvants were safe for use;

f) Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and agricultural professions, and the EPA of the dangers of Roundup®;

g) Negligently failing to petition the EPA to strengthen the warnings associated with Roundup®;

h) Failing to provide adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeable come into contact with Roundup®;

i) Negligently marketing, advertising, and recommending the use of Roundup® without sufficient knowledge as to its dangerous propensities;

j) Negligently representing that Roundup® was safe for use for its intended purpose, and/or that Roundup® was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

k) Negligently representing that Roundup® had equivalent safety and efficacy as other forms of herbicides;

l) Negligently designing Roundup® in a manner, which was dangerous to its users;

m) Negligently manufacturing Roundup® in a manner, which was dangerous to its users;

n) Negligently producing Roundup® in a manner, which was dangerous to its users;

o) Negligently formulating Roundup® in a manner, which was dangerous to its users;

p) Concealing information from the Plaintiff while knowing that Roundup® was unsafe, dangerous, and/or non-conforming with EPA regulations;

q) Improperly concealing and/or misrepresenting information from the Plaintiff, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Roundup® compared to other forms of herbicides; and

r) Negligently selling Roundup® with a false and misleading label.

129. Defendant under-reported, underestimated, and downplayed the serious dangers of Roundup®.

130. Defendant negligently and deceptively compared the safety risks and/or dangers of Roundup® with common everyday foods such as table salt, and other forms of herbicides.

131. At all times relevant, Defendant knew that Roundup® was dangerous and defective concealed the dangers and risks from Plaintiff, made misrepresentations to Plaintiff and the public in general as to the safety of Roundup® and with full knowledge of the risks associated with Roundup®, without adequate warnings of same, manufactured, designed, packaged, labeled, marketed, advertised, distributed, and sold Roundup® to the general public, and to Plaintiff. Defendant engaged in malicious, fraudulent and grossly negligent conduct toward Plaintiff and the public, acted with willful and wanton and/or reckless disregard for the safety of the general public and Plaintiff.

132. Defendant was negligent and/or violated Arkansas law in the designing, researching, supplying, manufacturing, promotion, packaging, distributing, testing, advertising, warning, marketing, and selling of Roundup® in that they:

   a) Failed to use ordinary care in designing and manufacturing Roundup® so as to avoid the aforementioned risks to individuals when Roundup® was use as an herbicide;

   b) Failed to accompany its product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Roundup®;

   c) Failed to accompany its product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Roundup®;

   d) Failed to accompany its product with accurate warnings regarding the risks of all possible adverse side effects concerning Roundup®;

   e) Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects including, but not limited to, the development of NHL;

   f) Failed to conduct adequate testing, clinical testing and post-marketing surveillance to determine the safety of Roundup®;

24

    g) Failed to conduct adequate testing, clinical testing and post-marketing surveillance to determine the safety of Roundup®'s "inert" ingredients and/or adjuvants;

    h) Negligently misrepresented the evidence of Roundup®'s genotoxicity and carcinogenicity; and

    i) Was otherwise careless and/or negligent.

133. Despite the fact that Defendant knew or should have known that Roundup® caused or could cause, unreasonably dangerous side effects, Defendant continued and continues to market, manufacture, distribute, and/or sell Roundup® to consumers, including the Plaintiff.

134. Defendant knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as set forth above.

135. Defendant's violations of law and/or negligence were the proximate cause of Plaintiff's injuries, harm and economic loss, which Plaintiff suffered and/or will continue to suffer.

136. As a result of the foregoing acts and omissions, the Plaintiff suffered from serious and dangerous side effects including, but not limited to, NHL, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care. Further, Plaintiff suffered life-threatening NHL, and severe personal injuries, which are permanent and lasting in nature, physical pain and mental anguish including diminished enjoyment of life.

137. Defendant's conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

25

hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

192. Defendant's conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish and deter similar conduct in the future.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

### FIFTH CAUSE OF ACTION
### (VIOLATION OF ARKANSAS DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

193. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect all if more fully set forth herein.

194. Defendant is liable to the Plaintiff pursuant to the Arkansas Deceptive Trade Practices act. A.C.A. § 4-88-101, *et seq.*, (hereinafter, "ADTPA"). Defendant is and, at all relevant times was, in the business of manufacturing and marketing Roundup®. Defendant and/or its agents designed, formulated, manufactured, assembled, prepared for sale, distributed, marketed, and/or sold Roundup®, which was in a defective condition unreasonably dangerous when used as intended in the usual and customary manner.

195. Privity existed between Plaintiff and Defendant.

35

196. Defendant violated the ADTPA by the use of false and misleading misrepresentations and/or omissions of material fact in connection with the marketing, promotion, and sale of Roundup®. Defendant communicated the purported benefits of Roundup® while failing to disclose the serious and dangerous injuries related to the use of Roundup® with the intent that consumers, like Plaintiff, would rely upon the misrepresentations and purchase Roundup® believing it to be safe for use in the usual and customary manner.

197. Plaintiff, while using the product in the usual and customary manner as it was intended to be used, suffered injuries as a proximate result of Defendant placing the product on the market, which was unreasonably dangerous and defective at the time it was placed on the market by Defendant.

198. As a direct and proximate result of the Defendant's violations of the ADTPA, Plaintiff has suffered significant and permanent damages, including but not limited to physical injury, past and future medical expenses, past and future physical and mental pain and suffering, and will continue to suffer all such damages in the future. Additionally, Plaintiff is entitled to recover attorney's fees and punitive damages. Plaintiff demands a jury trial on all issues contained herein.

199. Defendant's conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish and deter similar conduct in the future.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred,

attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintif, Mary Goodman, demands judgment against the Defendant on each of the above-referenced claims and causes of action and as follows:

1. Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2. Awarding compensatory damages to Plaintiff for past and future damages, including, but not limited to, Plaintiff's pain and suffering and for severe and permanent personal injuries sustained by the Plaintiff including health care costs and economic loss;

3. Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determined at trial of this action;

4. Punitive damages;

5. Pre-judgment interest;

6. Post-judgment interest;

7. Awarding Plaintiff's reasonable attorneys' fees;

8. Awarding Plaintiff the costs of these proceedings; and

9. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Date: _January 28_, 2020.

37

Respectfully submitted,

_____
Kyle P. Ludwig, Ark. Bar No. 2012089
**LUDWIG LAW FIRM, PLC**
1217 W. 3rd St.
Little Rock, Arkansas 72201
Telephone: (501) 868-7500
Facsimile: (501) 868-7501
Email: kyle@ludwiglawfirm.com

**Attorney for Plaintiff**

38