LRA,NO_CMC

# U.S. District Court
## Southern District of Mississippi (Northern (Jackson))
## CIVIL DOCKET FOR CASE #: 3:20-cv-00060-HTW-LRA
## Internal Use Only

Skinner v. Monsanto Company
Assigned to: District Judge Henry T. Wingate
Referred to: Magistrate Judge Linda R. Anderson
Case in other court: Northern District of California, MDL
               No. 2741
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 01/31/2020
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Nelda Skinner**

represented by **John Raymond Tullos**
TULLOS, TULLOS & TULLOS
P. O. Box 74
Raleigh, MS 39153-0074
(601) 782-4242
Email: johntullos@tullosandtullos.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/31/2020 | 1 | COMPLAINT with JURY DEMAND against Monsanto Company ( Filing fee $ 400 receipt number 34643058180), filed by Nelda Skinner. (Attachments: # 1 Exhibit A- Conditional Transfer Order MDL No. 2741, # 2 Civil Cover Sheet)(LAT) (Entered: 01/31/2020) |
| 01/31/2020 | 🔒 | (Court only) ***Set: LRA and NO_CMC Flags (LAT) (Entered: 01/31/2020) |

John Raymond Tullos
TULLOS & TULLOS
P.O. Box 74
126 Main Street
Raleigh, MS 39153
Telephone:  601-782-4212
Facsimile:  601-782-4212
Attorneys for Plaintiff



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN 3 1 2020
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

NELDA SKINNER,

           Plaintiff,

vs.

MONSANTO COMPANY,

           Defendant.

Case No. 3:20cv 60-HTW-LRA

COMPLAINT AND DEMAND FOR
JURY TRIAL

Plaintiff, by and through his counsel, alleges as follows:

## INTRODUCTION

This is a product liability case brought by Plaintiff SKINNER against Monsanto

Company ("Monsanto") for injuries he suffered due to his exposure to Roundup®.  The

risk for injuries due to exposure were known and concealed by Monsanto.

Plaintiff is the wife of the deceased, Roger Clayton Skinner ("RCS").

## JURISDICTION AND VENUE

1.   Federal diversity jurisdiction in this Court is proper under 28 USC § 1332

because Plaintiff is a citizen of Mississippi, a different state than the Defendant's states

of citizenship, and the aggregate amount in controversy exceeds $75,000, exclusive of

interest and costs.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

2. This Court has personal jurisdiction over Monsanto because Monsanto knew or should have known that its Roundup® products are sold throughout the State of Mississippi and, more specifically, caused Roundup® to be sold to RCS in the State of Mississippi.

3. In addition, Monsanto maintains sufficient contacts with the State of Mississippi such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

4. Venue is proper within this District under 28 USC § 1391(b)(2) because RCS lives in and was diagnosed in this District.  Further, Monsanto, as a corporate entity, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

5.  Plaintiff respectfully notifies this Court that a transfer order, pertaining to Roundup®-related actions, has been issued by the United States Judicial Panel on Multi-District Litigation, In re: Roundup® Products Liability Litigation, MDL No. 2741.  The Order transfers related/tag-along actions pending outside the Northern District of California to the Northern District of California for coordinated or consolidated pretrial hearings.  See attached Order.

## THE PARTIES

### Plaintiff NELDA SKINNER

6.  Plaintiff Nelda Skinner is a citizen of Mississippi and resides in Mendenhall, Mississippi, and is the wife of the deceased RCS.   Prior to his diagnosis, RCS was exposed to Roundup® for approximately forty (40) years; he applied it to various areas on his farm using a tank of the back of his vehicle, hand spraying for weeds.  RCS was diagnosed with Multiple Myeloma on or about June 2014. RCS died on July 27, 2016.

<u>Defendant</u>

7.   Defendant Monsanto Company is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.

8.   At all times relevant to this Complaint, Monsanto was the entity that discovered the herbicidal properties of glyphosate, and the manufacturer of Roundup® , which contains active ingredient glyphosate and the surfactant POEA, as well as adjuvants and other "inert" ingredients.

<u>ALLEGATIONS RE: ROUNDUP®</u>

9.   Glyphosate is a broad-spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world.

10.   Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions, and fruit, where it interferes with the plant's inability to form aromatic amino acids necessary for protein synthesis.

11.   For nearly 40 years, farms across the world have used Roundup® without knowing of the dangers its use poses.  Monsanto introduced Roundup®, it marketed glyphosate as an ingredient that could kill almost every weed without causing harm either to people or to the environment.  However, the main chemical ingredient of Roundup® - glyphosate - is a probable cause of cancer.  In addition to the active ingredient glyphosate, Roundup® formulations also contain adjuvants and other chemicals, such as the surfactant POEA, which are considered "inert" and therefore protected as "trade secrets" in manufacturing.   Growing evidence suggests that these adjuvants and additional components of Roundup® formulations are not, in fact, inert and are toxic in their own right.

12. Monsanto has assured and continues to assure the public that Roundup® is harmless. Monsanto has falsified data and has attacked legitimate studies that revealed Roundup®'s dangers. Monsanto has led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup® is safe.

13. The manufacture, formulation, and distribution of herbicides, such as Roundup®, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA" or "Act"), 7 USC § 136a(a).

14. Because pesticides are toxic to plants, animals, and humans, the EPA requires as part of the registration process, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and the environment.

15. Based on early studies showing that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as *possibly carcinogenic to humans* in 1985. After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to *evidence of non-carcinogenicity in humans* in 1991. In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer.

16. On two occasions, the EPA found that the laboratories hired by Monsanto to test the toxicity of its Roundup® products for registration purposes committed fraud.

17. In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup® products. Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup®, were **"safer than table salt"** and **"practically non-toxic"** to mammals, birds, and fish.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

18.    On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication, that its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk.

19.   Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief, it still has not done so today.

20.   Glyphosate has been identified as the second-most used household herbicide in the United States for weed control between 2001 and 2007, and the most heavily used herbicide in the world in 2012.

21.   Exposure pathways are identified as air (especially during spraying), water, and food.  Community exposure to glyphosate is widespread and found in soil, air, surface water, and groundwater, as well as in food.

22.   In addition to the toxicity of the active ingredient, glyphosate, several studies support the finding that the glyphosate-based formulation in Defendant's Roundup® products is more dangerous and toxic than glyphosate alone

23.    There have been several studies completed examining the effects of Roundup®.  The results of these studies were at all times available to Defendant. Defendant knew or should have known that Roundup® is more toxic than glyphosate alone and that safety studies of Roundup®, Roundup®'s adjuvants and "inert" ingredients were necessary to protect Plaintiff from Roundup®.  Many countries now ban the use of Roundup® due to its toxic effects.

24.   Despite its knowledge that Roundup® is considerably more dangerous than glyphosate alone, Defendant continued to promote Roundup® as safe.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

25.   On February 17, 2016, a consensus statement published in the journal *Environmental Health*, entitled "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," assessed the safety of glyphosate-based herbicides (GBHs).[1] The paper's "focus is on the unanticipated effects arising from the worldwide increase in use of GBHs, coupled with recent discoveries about the toxicity and human health risks stemming from use of GBHs.[2] The researchers drew seven factual conclusions about GBHs:

> a.  GBHs are the most heavily applied herbicide in the world and usage continues to rise;

> b.   Worldwide, GBHs often contaminate drinking water sources, precipitation, and air, especially in agricultural regions;

> c.   The half-life of glyphosate in water and soil is longer than previously recognized;

> d.  Glyphosate and its metabolites are widely present in the global soybean supply;

> e.  Human exposures to GBHs are rising;

> f.  Glyphosate is now authoritatively classified as a probable human carcinogen; and

> g.   Regulatory estimates of tolerable daily intakes for glyphosate in the United States and European Union are based on outdated science.[3]

26.  The researchers noted that GBH use has increased approximately 100-fold since the 1970s.  Further, far from posing a limited hazard to vertebrates, as previously believed, two decades of evidence demonstrated that "several vertebrate pathways are

---

[1]John P. Myers, et al, *Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement*, Environmental Health (2016) available at http://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0.
[2]*Id.*
[3]*Id.*

likely targets of action, including hepatorenal damage, effects on nutrient balance through glyphosate chelating action and endocrine disruption.4

<u>ALLEGATIONS RE: PLAINTIFF AND EXPOSURE</u>

27.     Prior to his diagnosis, RCS was exposed to Roundup® for approximately forty (40) years; he applied it to various areas on his farm using a tank of the back of his vehicle, hand spraying for weeds.

28.  During this time frame, RCS mixed and applied Roundup® nearly year-round RCS bought the Roundup® from local retailers.  He used a commercial grade form of Roundup®.  He applied the Roundup® to weeds with a hand sprayer from a prepared tank.

29.  Because RCS did not know that Roundup® was injurious to his health and/or to the health of others, he did not always wear protective gear while mixing or spraying Roundup® or while Roundup® was being applied.

30.  RCS was diagnosed with Multiple Myeloma on or about June 2014.

31.  During the time that RCS was exposed to Roundup®, he did not know that exposure to Roundup® was injurious to his health or the health of others.

32.  Plaintiff and RCS first learned that exposure to Roundup® can cause Multiple Myeloma and other serious illnesses sometime during the latter part of 2014.

<u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

<u>Discovery Rule Tolling</u>

---

4 *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

33.   Plaintiff and/or RCS had no way of knowing of the risk of serious illness associated with the use of and/or exposure to Roundup® and until after he was diagnosed with Multiple Myeloma, and began researching the several studies on Roundup® and its cause of Multiple Myeloma, which studies have been concealed by Monsanto.

34.   Within the time period of any applicable statutes of limitation, Plaintiff and/or RCS could not have discovered, through the exercise of reasonable diligence, that exposure to Roundup® and glyphosate is injurious to human health.

35.   Plaintiff and/or RCS did not discover, and did not know of facts that would cause a reasonable person to suspect, the risks associated with the use of and/or exposure to Roundup® and glyphosate; nor would a reasonable and diligent investigation by him have disclosed that Roundup® and glyphosate would cause his illness.

36.   For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

37.   All applicable statutes of limitation have also been tolled by Monsanto's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

38.   Instead of disclosing critical safety information about Roundup® and glyphosate, Monsanto has consistently and falsely represented the safety of its Roundup® products.

### Estoppel

39. Monsanto was under a continuous duty to disclose to consumers, users and other persons coming into contact with its products, including RCS, accurate safety

information concerning its products and the risks associated with the use of and/or exposure to Roundup® and glyphosate.

40.   Instead, Monsanto knowingly, affirmatively, and actively concealed safety information concerning Roundup® and glyphosate and the serious risks associated with the use of and/or exposure to its products.

41.  Based on the foregoing, Monsanto is estopped from relying on any statutes of limitation in defense of this action.

<u>FIRST CAUSE OF ACTION</u>

<u>Product Liability (Design Defect)</u>

42.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

43.  Plaintiff brings this product liability claim against Defendant for defective design.

44.  At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers and users and other persons coming into contact with them, including RCS, thereby placing Roundup® products into the stream of commerce.  These actions were under the ultimate control and supervision of Defendant.  At all times relevant to this litigation, Defendant designed, researched, developed, formulated, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, or distributed the Roundup® products used by RCS, and/or to which RCS was exposed, as described above.

45. At all times relevant to this litigation, Defendant's Roundup® products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, RCS.

46. At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with those products in Idaho and throughout the United States, including RCS, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

47. Defendant's Roundup® products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of the Defendant's manufacturer's and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

48. Defendant's Roundup® products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when they left the hands of the Defendant's manufacturer's and/or suppliers, the foreseeable risks associated with these products' reasonably foreseeable uses exceeded the alleged benefits associated with their design and formulation.

49. Therefore, at all times relevant to this litigation, Defendant's Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant, were defective in design and formulation, in one or more of the following ways:

a. When placed in the stream of commerce, Defendant's Roundup® products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

b. When placed in the stream of commerce, Defendant's Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c. When placed in the stream of commerce, Defendant's Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

d. Defendant did not sufficiently test, investigate, or study its Roundup® products and, specifically, the active ingredient glyphosate.

e. Exposure to Roundup® and glyphosate-based products presents a risk of harmful side effects that outweighs any potential utility stemming from the use of the herbicide.

f. Defendant knew or should have known at the time of marketing its Roundup® products that exposure to Roundup® and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

g. Defendant did not conduct adequate post-marketing surveillance of its Roundup® products.

h. Defendant could have employed safer alternative designs and formulations.

50. At all times relevant to this litigation, RCS used and/or was exposed to the use of Defendant's Roundup® products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

51. RCS could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of exposure.

52. The harm caused by Defendant's Roundup® products far outweighed their benefit, rendering Defendant's products dangerous to an extent beyond that which an ordinary consumer would contemplate. Defendant's Roundup® products were and are

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

more dangerous than alternative products and Defendant could have designed its Roundup® products to make them less dangerous. Indeed, at the time that Defendant designed its Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

53. At the time Roundup® products left Defendant's control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's Roundup® herbicides.

54. Defendant's defective design of Roundup® amounts to willful, wanton, and/or reckless conduct by Defendant.

55. Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Defendant is liable to Plaintiff.

56. The defects in Defendant's Roundup® products were substantial and contributing factors in causing Plaintiff's grave injuries, and, but for Defendant's misconduct and omissions, RCS would not have sustained his injuries or death.

57. As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, RCS suffered from grave injuries, and endured pain and discomfort, and Plaintiff has suffered economic hardship, including considerable financial expenses for medical care and treatment of RCS and the loss of financial and emotional support of RCS. Plaintiff has incurred these expenses and other damages and will incur them in the future.

## SECOND CAUSE OF ACTION

### Products Liability (Failure to Warn)

58.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

59.  Plaintiff brings this products liability claim against Defendant for failure to warn.

60.  At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup® and specifically, the active ingredient glyphosate.   These actions were under the ultimate control and supervision of Defendant.

61.   Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Roundup® products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and Defendant therefore had a duty to warn of the risks associated with the reasonably foreseeable uses of Roundup® and glyphosate-containing products.

62.  At all times relevant to this litigation, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that its Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks.  Defendant had a continuing duty to warn RCS of the dangers associated with Roundup® use and exposure.

63.  At the time of manufacture, Defendant could have provided warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing

products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to these products.

64.   At all times relevant to this litigation, Defendant failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its Roundup® products and to those who would foreseeably use or be harmed by Defendant's herbicides, including RCS.

65.   Despite the fact that Defendant knew or should have known that Roundup® products posed a grave risk of harm, it failed to warn of the dangerous risks associated with their use and exposure.   The dangerous propensities of its products and the carcinogenic characteristics of glyphosate, as described above, were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied, or sold the product, and not known to end users and consumers, such as Plaintiff.

66.   Defendant knew or should have known that its Roundup® and glyphosate-containing products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to these products.   Defendant has wrongfully concealed information concerning the dangerous nature of Roundup® and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

67.   At all times relevant to this litigation, Defendant's Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products throughout the United States, including Plaintiff, without substantial

change in their condition as designed, manufactured, sold, distributed, labeled and marketed by Defendant.

68. At all times relevant to this litigation, RCS used and/or was exposed to the use of Defendant's Roundup® products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

69. RCS would not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of RCS's exposure. RCS relied upon the skill, superior knowledge, and judgment of Defendant.

70. Defendant knew or should have known that the minimal warnings disseminated with its Roundup® products were inadequate, but it failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses.

71. The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled at-home users such as RCS to utilize the products safely and with adequate protection.   Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

72. To this day, Defendant has failed to adequately and accurately warn of the true risks associated with the use of and exposure to Roundup® and its active ingredient glyphosate, a probable carcinogen.

73. As a result of their inadequate warnings, Defendant's Roundup® products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by RCS.

74. Defendant is liable to Plaintiff for injuries caused to RCS by its failure, as described above, to provide adequate warnings or other clinically relevant information and data concerning the appropriate use of its Roundup® products and the risks associated with the use of or exposure to Roundup® and glyphosate.

75. The defects in Defendant's Roundup® products were substantial and contributing factors in causing RCS's injuries, and, but for Defendant's misconduct and omissions, RCS would not have sustained his injuries or death.

76. Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with its Roundup® products, RCS could have avoided the risk of developing injuries as alleged herein and could have taken necessary precautions and/or obtained alternative herbicides.

77. As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, RCS suffered from grave injuries, and endured pain and discomfort, and Plaintiff has suffered economic hardship, including considerable financial expenses for medical care and treatment of RCS and the loss of financial and emotional support of RCS. Plaintiff has incurred these expenses and other damages and will incur them in the future.

## THIRD CAUSE OF ACTION

### Negligence

78. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

79. Defendant, directly or indirectly, caused Roundup® products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by RCS.

80. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of its Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or cell a product that was not unreasonably dangerous to consumers, users, and other persons coming into contact with the product.

81. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the marketing, advertisement, and sale of its Roundup® products. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup® and, in particular, its active ingredient glyphosate.

82. At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and specifically, the carcinogenic properties of the chemical glyphosate.

83. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that use of or exposure to its Roundup®

products could cause RCS's injuries and death and thus created a dangerous and unreasonable risk of injury to the users of these products, including RCS.

84. Defendant knew or, in the exercise of reasonable care, should have known that Roundup® is more toxic than glyphosate alone and that safety studies on Roundup®, Roundup®'s adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect RK from Roundup® .

85. Defendant knew or, in the exercise of reasonable care, should have known that tests limited to Roundup®'s active ingredient glyphosate were insufficient to prove the safety of Roundup®.

86. Defendant also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with the use of and/or exposure to Roundup® and glyphosate-containing products.

87. As such, Defendant breached its duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Defendant manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

88. Defendant failed to appropriately and adequately test Roundup®, Roundup®'s adjuvants and "inert" ingredients, and/or the surfactant POEA to protect RCS from Roundup®.

89. Despite its ability and means to investigate, study, and test its products and to provide adequate warnings, Defendant has failed to do so. Indeed, Defendant has wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

90. Defendant's negligence included.

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup® products without thorough and adequate pre- and post-testing;

b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;

c. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture, horticulture, and at-home use;

d. Failing to undertake sufficient studies and conduct necessary tests to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup®, and the propensity of these ingredients to render Roundup® toxic, increase the toxicity of Roundup®, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup®, and whether or not the "inert" ingredients and/or adjuvants were safe for use;

e. Failing to use reasonable and prudent care I the design, research, manufacture, formulation, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

f. Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

g. Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendant could reasonably foresee would use and/or be exposed to its Roundup® products;

h. Failing to disclose to Plaintiff, users, consumers, and the general public that the use of and exposure to Roundup® presented severe risks of cancer and other grave illnesses;

I. Failing to warn Plaintiff, users, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other users or consumers;

j. Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

k. Representing that its Roundup® products were safe for their intended use when, in fact, Defendant knew or should have known that the products were not safe for their intended use;

l. Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

m. Advertising, marketing, and recommending the use of Roundup® products, while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

n. Continuing to disseminate information to its consumers, which indicate or imply that Defendant's Roundup® products are not unsafe for use in the agricultural, horticultural industries, and/or home use; and

o. Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

91. Defendant knew and/or should have known that it was foreseeable that consumers and/or users, such as RCS, would suffer injuries as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup®.

92. Plaintiff and/or RCS did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

93. Defendant's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff and/or RCS suffered, and Plaintiff will continue to suffer, as described herein.

94. Defendant's conduct, as described above, was reckless. Defendant regularly risks the lives of consumers and users of its products, including RCS, with full knowledge of the dangers of its products. Defendant has made conscious decisions not to redesign, relabel, warn, or inform the unsuspecting public, including RCS. Defendant's reckless conduct therefore warrants an award of punitive damages.

95. As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, RCS suffered from grave injuries, and endured pain and discomfort, and Plaintiff has suffered economic hardship, including considerable financial expenses for medical care and treatment of RCS and the loss of financial and emotional support of RCS. Plaintiff has incurred these expenses and other damages and will incur them in the future.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

96. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

97. Roundup® which was designed, tested, manufactured, distributed, promoted and sold by Defendant, was expected to, and did, reach RCS without any substantial change in its condition.

98. Defendant, through its advertising and promotional materials, expressly warranted that Roundup® was safe for its intended use and was not unreasonably dangerous for its intended purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL - 21

99.  Defendant breached its express warranties in that Roundup® was not safe for its intended use in light of the unreasonably high risk of cancer associated with its use, including the risk of NHL.

100.  RCS reasonably relied to his detriment on Defendant's express warranties.

101.  As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, RCS suffered from grave injuries, and endured pain and discomfort, and Plaintiff has suffered economic hardship, including considerable financial expenses for medical care and treatment of RCS and the loss of financial and emotional support of RCS.  Plaintiff has incurred these expenses and other damages and will incur them in the future.

### FIFTH CAUSE OF ACTION

#### Breach of Implied Warranty

102.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

103.  Roundup® which was designed, tested, manufactured, distributed, promoted and sold by Defendant, was expected to, and did, reach RCS without any substantial change in its condition.

104.   At the time Defendant manufactured, marketed, sold, and distributed Roundup®, Defendant knew of the use for which Roundup® was intended and impliedly warranted, through their advertising and promotional materials, that Roundup® was of merchantable quality, fitness, and safe for the use for which it was intended.

105.   RCS reasonably relied upon the skill and judgment of Defendant as to whether Roundup® was of merchantable quality and safe for its intended use and upon Defendant's implied warranty as to such matters.

106.  Contrary to the implied warranty, Defendant's product Roundup® was not of merchantable quality or safe for its intended use because it was unreasonably dangerous as described herein.

107.  As a direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, RCS suffered from grave injuries, and endured pain and discomfort, and Plaintiff has suffered economic hardship, including considerable financial expenses for medical care and treatment of RCS and the loss of financial and emotional support of RCS.  Plaintiff has incurred these expenses and other damages and will incur them in the future.

SIXTH CAUSE OF ACTION

Negligent Misrepresentation and/or Fraud

108.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

109.  Defendant is the manufacturer, designer, distributor, seller or supplier of Roundup® and, while engaged in the course of such business, made representations to Plaintiff regarding the character and/or quality of, for guidance in his decision to select Roundup for use.

110.  Defendant had a duty to disclose material information about serious health effects to consumers such as RCS.  Defendant intentionally failed to disclose this information for the purpose of inducing consumers, including Plaintiff, to purchase Defendant's dangerous products.

111.    Specifically, Defendant's advertisements regarding Roundup® made material  misrepresentations  to  the  effect  that  Roundup®  was  safe,  which misrepresentations Defendant knew to be false, for the purpose of fraudulently inducing

consumers, such as RCS, to purchase said product. Defendant further misrepresented that its products were just as safe, and just as effective or more effective, than other weed control products on the market.

112. Defendant's representations regarding the character or quality of Roundup® were untrue. In addition, Defendant fraudulently suppressed material information regarding the safety of Roundup®, including the dangers known by Defendant to be associated with or caused by the use of or exposure to Roundup® and glyphosate.

113. Defendant had actual knowledge based on the results of trials, tests, and studies of exposure to glyphosate, of the risk of serious harm associated with human use of and exposure to Roundup®.

114. Defendant negligently and or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its products as safe and effective in order to avoid losses and sustain profits in its sales to consumers.

115. In supplying the false information, Defendant failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including RCS.

116. RCS reasonably relied to his detriment upon Defendant's misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. RCS reasonably relied upon Defendant's representations to his that Roundup® was safe for use and that Defendant's labeling, advertisements and promotions fully described all known risks of the product.

117. Defendant is estopped from relying on any statute of limitations defenses because Defendant actively concealed the defects from consumers, such as. RCS

COMPLAINT AND DEMAND FOR JURY TRIAL - 24

Instead of revealing the defects, Defendant continued to represent its product as safe for its intended use.

118.   As a direct and proximate result of Plaintiff's use of Roundup® as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendant, RCS suffered personal injury, non-economic damages, and will continue to suffer such harm and damages in the future.

SEVENTH CAUSE OF ACTION

Unfair and Deceptive Trade Practices

119.   Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

120.   By reason of its conduct as alleged herein, Defendant violated the provisions of Title 48, Chapter 6 of the Idaho Code by inducing the RCS to use Roundup® through the use of false and/or misleading advertising, representations and statements.

121.   By engaging in the conduct described herein, Defendants violated Title 48, Chapter 6 of the Idaho Code by, among other things:

a.  engaging in unfair or deceptive trade practices as defined in this statute by making false and misleading oral and written statements that had the capacity, tendency, or effect of deceiving or misleading consumers.

b.  engaging in unfair or deceptive trade practices as defined in this statute by making representations that its products had an approval, characteristic, ingredient, use or benefit which they did not have, including but not limited to statements concerning the health consequences of the use of Roundup®.

c.  engaging in unfair or deceptive trade practices as defined in this statute by failing to state material facts, the omission of which deceived or tended to deceive, including but not limited to facts relating to the health consequences of the use of Roundup®.

d.  engaging in unfair or deceptive trade practices as defined in this statute through deception, fraud, misrepresentation and knowing concealment, suppression and omission of material facts with the intent that

consumers rely upon the same in connection with the use and continued use of Roundup®.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Monsanto, awarding as follows:

  a.  compensatory damages in excess of the jurisdictional amount, including, but not limited to emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

  b.  medical expenses and other economic damages in an amount to be determined at trial of this action;

  c.  treble damages and attorney fees pursuant to Title 48 Chapter 6 of the Idaho Code.

  d.  costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

  e.  any other relief the Court may deem just and proper,

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this _____ day of _____, 2020.

TULLOS & TULLOS

By:   /s/John Raymond Tullos
Attorneys for Plaintiff

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

3:20cv60-HTW-CRA

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| NELDA SKINNER | MONSANTO COMPANY |

| (b) County of Residence of First Listed Plaintiff  Simpson County | County of Residence of First Listed Defendant  St. Louis |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* SOUTHERN DISTRICT OF MISSISSIPPI |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| John Tullos, TULLOS & TULLOS P.O. Box 74, 126 Main Street Raleigh, MS 39153 | JAN 31 2020  ARTHUR JOHNSTON BY_____ DEPUTY |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government Plaintiff

❏ 3  Federal Question *(U.S. Government Not a Party)*

❏ 2  U.S. Government Defendant

☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane   **PERSONAL INJURY** | of Property 21 USC 881 | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product  ☒ 365 Personal Injury - | ❏ 690 Other | 28 USC 157 | 3729(a)) |
| ❏ 140 Negotiable Instrument | Liability   Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &  ❏ 367 Health Care/ | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| & Enforcement of Judgment | Slander   Pharmaceutical | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'   Personal Injury | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted | Liability   Product Liability | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
| Student Loans | ❏ 340 Marine  ❏ 368 Asbestos Personal | | New Drug Application | ❏ 470 Racketeer Influenced and |
| (Excludes Veterans) | ❏ 345 Marine Product   Injury Product | | ❏ 840 Trademark | Corrupt Organizations |
| ❏ 153 Recovery of Overpayment | Liability   Liability | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| of Veteran's Benefits | ❏ 350 Motor Vehicle  **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | (15 USC 1681 or 1692) |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle  ❏ 370 Other Fraud | Act | ❏ 862 Black Lung (923) | ❏ 485 Telephone Consumer |
| ❏ 190 Other Contract | Product Liability  ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | Protection Act |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal  ❏ 380 Other Personal | Relations | ❏ 864 SSID Title XVI | ❏ 490 Cable/Sat TV |
| ❏ 196 Franchise | Injury   Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 850 Securities/Commodities/ |
| | ❏ 362 Personal Injury -  ❏ 385 Property Damage | ❏ 751 Family and Medical | | Exchange |
| | Medical Malpractice   Product Liability | Leave Act | | ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 891 Agricultural Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights  **Habeas Corpus:** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 441 Voting  ❏ 463 Alien Detainee | Income Security Act | or Defendant) | ❏ 895 Freedom of Information |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment  ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | Act |
| ❏ 240 Torts to Land | ❏ 443 Housing/   Sentence | | 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 245 Tort Product Liability | Accommodations  ❏ 530 General | | | ❏ 899 Administrative Procedure |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -  ❏ 535 Death Penalty | **IMMIGRATION** | | Act/Review or Appeal of |
| | Employment   **Other:** | ❏ 462 Naturalization Application | | Agency Decision |
| | ❏ 446 Amer. w/Disabilities -  ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | ❏ 950 Constitutionality of |
| | Other  ❏ 550 Civil Rights | Actions | | State Statutes |
| | ❏ 448 Education  ❏ 555 Prison Condition | | | |
| | ❏ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

❏ 2 Removed from State Court

❏ 3 Remanded from Appellate Court

❏ 4 Reinstated or Reopened

❏ 5 Transferred from Another District *(specify)*

❏ 6 Multidistrict Litigation - Transfer

❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S. Code Section 1332

Brief description of cause:
Wrongful death of spouse as a result of exposure to Roundup.

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE  Jeffery N. Luthi

DOCKET NUMBER  MDL No. 2741

DATE

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE

34643058180