Query    Reports    Utilities    Help    Log Out

# U.S. District Court
## District of New Jersey [LIVE] (Trenton)
## CIVIL DOCKET FOR CASE #: 3:20-cv-01367-AET-TJB

COLLINS v. MONSANTO COMPANY et al
Assigned to: Judge Anne E. Thompson
Referred to: Magistrate Judge Tonianne J. Bongiovanni
Case in other court:   SUPERIOR COURT OF NEW JERSEY
                                    LAW DIVISION: SOMERSE, SOM-L174619
Cause: 28:1441 Notice of Removal- Product Liability

Date Filed: 02/10/2020
Jury Demand: Plaintiff
Nature of Suit: 367 Personal Injury: Health
Care/Pharmaceutical Personal Injury
Product Liability
Jurisdiction: Diversity

**Plaintiff**

**JAMES COLLINS**

represented by   **KEITH J. ROBERTS**
BRACH EICHLER LLC
101 EISENHOWER PARKWAY
ROSELAND, NJ 07068
973-364-5201
Fax: 973-618-5585
Email: kroberts@bracheichler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MONSANTO COMPANY**

represented by   **JOHN MICHAEL FIETKIEWICZ**
ARNOLD & PORTER
One Gateway Center
Suite 1025
Newark, NJ 07102
212-836-8154
Email: john.fietkiewicz@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN DOES 1-10**
*a person, persons, entity, o entities whose
identity is presently unknown*

**Defendant**

**XYZ CORPORATIONS 1-10**
*fictitious designations*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/10/2020 | 1 | NOTICE OF REMOVAL by MONSANTO COMPANY from SUPERIOR COURT OF |

| | | |
|---|---|---|
| | | NEW JERSEY LAW DIVISION: SOMERSET COUNTY, case number SOM-L174619. ( Filing and Admin fee $ 400 receipt number NEW041952), filed by MONSANTO COMPANY. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet, # 3 Certificate of Service, # 4 Reciept)(abr) (Entered: 02/11/2020) |
| 02/10/2020 | 2 | Corporate Disclosure Statement by MONSANTO COMPANY identifying BAYER AG as Corporate Parent. (abr) (Entered: 02/11/2020) |
| 02/11/2020 | 3 | ORDER SCHEDULING CONFERENCE: Scheduling Conference set for 3/23/2020 at 2:30 PM in Trenton - Courtroom 6E before Magistrate Judge Tonianne J. Bongiovanni. Signed by Magistrate Judge Tonianne J. Bongiovanni on 2/11/2020. (jem) (Entered: 02/11/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/11/2020 16:44:54 | | | |
| **PACER Login:** | hllp1982 | **Client Code:** | 1417.0049 |
| **Description:** | Docket Report | **Search Criteria:** | 3:20-cv-01367-AET-TJB Start date: 1/1/1971 End date: 2/11/2020 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**BRACH EICHLER L.L.C.**
Keith J. Roberts, Esq. (043681993)
Anthony M. Juliano, Esq. (202000)
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
*Attorneys for Plaintiff*

| | |
|---|---|
| JAMES COLLINS, | SUPERIOR COURT OF NEW JERSEY |
| *Plaintiff,* | LAW DIVISION: SOMERSET COUNTY |
| vs. | DOCKET NO.: |
| | Civil Action |
| MONSANTO COMPANY; JOHN DOES 1-10 (a person, persons, entity, or entities whose identity is presently unknown); XYZ CORPORATIONS 1-10 (fictitious designations) | COMPLAINT & JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, DEMAND FOR ANSWERS TO INTERROGATORIES, DEMAND FOR DISOVERY OF INSURANCE, and DEMAND FOR PRODUCTION OF DOCMENTS |
| *Defendants.* | |

Plaintiff, James Collins, residing at 607 State Route 28, Raritan, New Jersey, by way of Complaint against the Defendants, says:

<u>PARTIES</u>

1.    At all times material hereto, Plaintiff, James Collins, was a resident of the State of New Jersey, residing at 607 State Route 28, Raritan, New Jersey.

2.    Upon information and belief, at all times material hereto, Defendant Monsanto Company ("Monsanto") is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.

BE:10697289.1/COL285-277097

3.       Upon information and belief, at all times material hereto, Monsanto is authorized and licensed to conduct business in the State of New Jersey, maintains and carries on systematic and continuous contacts in New Jersey, regularly transacts business within New Jersey, and regularly avails itself of the benefits of doing business in New Jersey.

4.       Upon information and belief, at all times material hereto, Monsanto was the entity that discovered the herbicidal properties of glyphosate and was the manufacturer of the product Roundup, at issue in this lawsuit.

5.       Upon information and belief, at all times material hereto, Defendants John Does 1-10; were and/or are fictitiously named individuals, the identity, addresses and culpable conduct of said defendants being presently unknown. Said defendants were the distributors and/or wholesalers and/or retailers of the dangerous product causing injury to the Plaintiff, and/or were responsible for the distribution and/or wholesale and/or retail of the dangerous product causing injury to the Plaintiff. The Plaintiff reserves the right to amend this Complaint upon obtaining knowledge of the identity, addresses and culpable conduct of said Defendants represented herein as John Does 1-10.

6.       Upon information and belief, at all times material hereto, Defendants John Does 1-10 were conducting business in the State of New Jersey.

7.       Upon information and belief, at all times material hereto, Defendants XYZ Corporations 1-10; were and/or are fictitiously named partnerships, professional associations and/or professional corporations (hereinafter "partnerships"), the identity, addresses and culpable conduct of said defendants being presently unknown. Said Defendants were the distributors and/or wholesalers and/or retailers of the dangerous product causing injury to the Plaintiff. and/or were responsible for the distribution and/or wholesale and/or retail of the dangerous

BE:10697289.1/COL285-277097

product causing injury to the Plaintiff. The Plaintiff reserves the right to amend this Complaint upon obtaining knowledge of the identity, addresses and culpable conduct of said Defendants represented herein as XYZ Corporations 1-10.

8.  Upon information and belief, at all times material hereto, Defendants XYZ Corporations 1-10 were conducting business in the State of New Jersey.

9.  Upon information and belief, all Defendants acted by and through their respective agents, servants, employees, officers, directors or others, actual and/or apparent, any and all of which were then and there acting within the course and scope of their employment, duties or agency, actual and/or apparent.

## FACTS COMMON TO ALL COUNTS

10. Plaintiff herein incorporate all previous paragraphs as though the same were set forth herein at length.

11. At all times material hereto, Monsanto was the entity that discovered the herbicidal properties of glyphosate and was the manufacturer of the product Roundup, at issue in this case.

12. At all times material hereto, Monsanto was the distributor and/or wholesaler of the product Roundup, at issue in this case.

13. Upon information and belief, Monsanto conducts activities within New Jersey; distributes its products in New Jersey; sells its products in New Jersey; delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in New Jersey; and engages in marketing of its products in New Jersey.

14. Upon information and belief, Defendants John Does 1-10 conducts activities within New Jersey; distributes its products in New Jersey; sells its products in New Jersey; delivers its

- 3 -

products into the stream of commerce with the expectation that they will be purchased by consumers in New Jersey; and engages in marketing of its products in New Jersey.

15.     Upon information and belief, Defendants XYZ Corporations 1-10 conducts activities within New Jersey; distributes its products in New Jersey; sells its products in New Jersey; delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in New Jersey; and engages in marketing of its products in New Jersey.

16.     Defendant Monsanto promoted and advertised Roundup as being harmless to humans for over thirty (30) years.

17.     The active chemical in Roundup, glyphosate, is a carcinogen, and Monsanto has known this fact for decades.

18.     Several countries around the world have instituted bans on the sale of Roundup and other glyphosate-containing herbicides, and more countries undoubtedly will follow suit as the dangers of the use of Roundup are more widely known.

19.     Plaintiff was regularly exposed to Roundup for many years while using it for its intended purpose, spraying it to prevent and kill weeds at properties he owned and operated.

20.     In January of 2018, Plaintiff was diagnosed with non-Hodgkin's lymphoma.

21.     Plaintiff would not have used Roundup if he knew it could cause cancer.

22.     Monsanto has affirmatively claimed and continues to claim that Roundup and glyphosate are safe to human users like Plaintiff.

23.     Monsanto has denied and continued to deny the probability that Roundup and glyphosate are carcinogenic to humans and are linked to blood born cancers including non-Hodgkin's lymphoma.

24.     Defendants were under a continuous duty to disclose to consumers, users and other persons coming into contact with its products, including Plaintiff, accurate safety information concerning its products and the risks associated with the use of and/or exposure to Roundup and glyphosate. Instead, Monsanto knowingly, affirmatively, and actively concealed safety information concerning Roundup and glyphosate and the risks associated with the use of and/or exposure to its products.

25.     As a proximate result of Defendants' wrongful acts and omissions in placing its defective Roundup products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, and in breach of its warranties, negligence and strict liability, Plaintiff has suffered and continues to suffer severe and permanent physical and emotional injuries.  Plaintiff has endured the anguish of a cancer diagnosis, pain and suffering, and economic losses and special damages, which are continuing.

26.     As a proximate result of Defendants' wrongful acts and omissions, the Plaintiff was required to expend diverse sums of money for medical care and attention which was administered to him in attempt to cure and/or alleviate said injuries and the disabling effects resulting there from, and Plaintiff, in the future will be required to submit to further medical attention.

27.     As a proximate result of Defendants' wrongful acts and omissions, the Plaintiff was unable to perform his usual daily tasks including but not limited to his employment.

28.     As a proximate result of Defendants' wrongful acts and omissions, the Plaintiff has been prevented from participating in activities enjoyed by others like situated in life. all of which have prevented him from enjoying the normal fruits of his existence, both socially and economically.

BE:10697289.1/COL285-277097

## FIRST COUNT

29.     Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

30.     Plaintiff brings this strict liability claim against Monsanto for defective design.

31.     At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including the Plaintiff, thereby placing Roundup products into the stream of commerce. These actions were under the ultimate control and supervision of Monsanto.

32.     At all times relevant to this litigation, Monsanto designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Roundup products used by Plaintiff, as described above.

33.     At all times relevant to this litigation. Monsanto's Roundup products were manufactured. designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiff.

34.     At all times relevant to this litigation, Monsanto's Roundup products reached the intended consumers, handlers, and users or other persons coming into contact with these products in New Jersey and throughout the United States, including the Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Monsanto.

35.     Monsanto's Roundup products, as researched, tested, developed, designed, licensed. manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that, when they left the hands of Monsanto's manufacturers and/or

BE:10697289.1/COL285-277097

suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

36.   Monsanto's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that, when they left the hands of Monsanto's manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

37.   At all times relevant to this action, Monsanto knew or had reason to know that its Roundup products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Monsanto.

38.   Therefore, at all times relevant to this litigation, Monsanto's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Monsanto were defective in design and formulation.

39.   Monsanto knew or should have known at the time of marketing its Roundup products that exposure to Roundup and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

40.   Monsanto could have employed safer alternative designs and formulations.

41.   The Plaintiff was regularly exposed to Monsanto's Roundup products, as described above, without knowledge of Roundup's dangerous characteristics.

42.   At all times relevant to this litigation, the Plaintiff used and/or was exposed to the use of Monsanto's Roundup products in an intended or reasonably foreseeable manner, i.e., as a consumer, without knowledge of Roundup's dangerous characteristics.

- 7 -

43.    The Plaintiff could not reasonably have discovered the defects and risks associated with Roundup or glyphosate-containing products before or at the time of exposure due to Monsanto's suppression of scientific information linking glyphosate to cancer.

44.    The harm caused by Monsanto's Roundup products far outweighed their benefit, rendering Monsanto's product dangerous to an extent beyond that which an ordinary consumer would contemplate.

45.    Monsanto's defective design of its Roundup products was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Roundup products, including Plaintiff herein.

46.    Therefore, as a result of the unreasonably dangerous condition of its Roundup products, Monsanto is strictly liable to Plaintiff.

47.    The defects in Monsanto's Roundup products were substantial and contributing factors in causing Plaintiff's injuries and, but for Monsanto's misconduct and omissions, Plaintiff would not have sustained his injuries.

48.    As a direct and proximate result of Monsanto placing its defective Roundup products into the stream of commerce, Plaintiff developed Non-Hodgkin's lymphoma, and was otherwise damaged as set forth above.

49.    Monsanto is strictly liable for its actions.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

- 8 -

## SECOND COUNT

50.   Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

51.   Plaintiff brings this strict liability claim against Defendants for failure to warn.

52.   At all times relevant to this litigation, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup and specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Defendants.

53.   Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Roundup products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the use of Roundup and glyphosate-containing products.

54.   At all times relevant to this litigation, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure Roundup products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff of the dangers associated with Roundup use and exposure.

55.   Defendants could have provided warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

BE:10697289.1/COL285-277097

56.   At all times relevant to this litigation, Defendants failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by Roundup, including Plaintiff.

57.   Despite the fact that Defendants knew or should have known that Roundup posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure.

58.   Defendants failed to adequately warn consumers of the risks of exposure to Roundup and wrongfully concealed information concerning the dangerous nature of Roundup.

59.   At all times relevant to this litigation, Roundup reached the intended consumers, handlers, and users or other persons coming into contact with these products in New Jersey and throughout the United States, including Plaintiff, without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

60.   Plaintiff was exposed to Roundup as set forth above, without knowledge of its dangerous characteristics.

61.   At all times relevant to this litigation, Plaintiff used and/or was exposed to the use of Roundup while using it for its intended or reasonably foreseeable purposes, without knowledge of its dangerous characteristics.

62.   Plaintiff could not have reasonably discovered the defects and risks associated with Roundup prior to or at the time of Plaintiff's exposure. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendants to know about and disclose serious health risks associated with using the products.

63.   Defendants failure to warn includes their failure to disclose known risks associated with Roundup through other non-labeling mediums, i.e., promotion, advertisements, public service

- 10 -

announcements, and/or public information sources. Defendants did not disclose these known risks through any medium.

64.     Defendants continue to fail to adequately and accurately warn of the risks of cancer associated with the use of and exposure to Roundup and its active ingredient glyphosate.

65.     As a result of the Defendants inadequate warnings, Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Monsanto, were distributed, and used by Plaintiff as set forth above.

66.     Defendants are liable to Plaintiff for injuries caused by their negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of its products and the risks associated with the use of or exposure to Roundup.

67.     Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with Roundup, Plaintiff could have avoided the risk of developing injuries and could have obtained or used alternative herbicides.

68.     As a direct and proximate result of Defendants placing Roundup into the stream of commerce, Plaintiff developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

69.     The Defendants are strictly liable for their actions.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

BE:10697289.1/COL285-277097

## THIRD COUNT

70.     Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

71.     Defendants directly or indirectly caused Roundup to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.

72.     At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

73.     At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of Roundup products including providing accurate, true, and correct information concerning the risks of using Roundup and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup.

74.     At all times relevant to this litigation, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and specifically, the carcinogenic properties of the chemical glyphosate.

75.     Accordingly, at all times relevant to this litigation, Defendants knew or, in the exercise of reasonable care, should have known that use of or exposure to Roundup products could cause or be associated with Plaintiff's injuries and thus, created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

76.     As such, the Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply,

- 12 -

promotion, advertisement, packaging, sale, and distribution of the Roundup products, knew or had reason to know of the defects inherent in the products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

77.     As such, Defendants were negligent in producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup products.

78.     Defendants knew and/or should have known that it was foreseeable consumers such as the Plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Roundup.

79.     Plaintiff did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup or its active ingredient glyphosate.

80.     Defendants' negligence was the proximate cause of Plaintiff's injuries.

81.

82.     As a proximate result of Monsanto's negligence, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

83.     As a direct and proximate result of Defendants' negligence, Plaintiff developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

   **WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

BE:10697289.1/COL285-277097

## FOURTH COUNT

84.   Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

85.   At all times relevant to this litigation, Defendants engaged in the business of testing developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including the Plaintiff, thereby placing Roundup products into the stream of commerce.

86.   At all times relevant to this litigation, Defendants impliedly warranted to its consumers including the Plaintiff, that Roundup products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as agricultural herbicides.

87.   Defendants, however, failed to disclose that Roundup has dangerous propensities when used as intended and that use of and/or exposure to Roundup and glyphosate-containing products carries an increased risk of developing severe injuries and death, including Plaintiff's cancer.

88.   Plaintiff was the intended beneficiary of the implied warranties made by the Defendants.

89.   At all times relevant to this litigation, Plaintiff was a foreseeable user of Roundup.

90.   Defendants intended the Roundup products be used in the manner in which Plaintiff in fact used them and which Defendants impliedly warranted each product to be of merchantable quality, safe, and fit for this use.

91.   In reliance upon Defendants' implied warranty, Plaintiff used Roundup as instructed and labeled and in the foreseeable manner intended, recommended, promoted and marketed by Defendants.

BE:10697289.1/COL285-277097

92.     Defendants breached their implied warranty to the Plaintiff in that Roundup products were not of merchantable quality, safe, or fit for their intended use.

93.     The harm caused by Roundup products far outweigh their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

94.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

**WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

## FIFTH COUNT

95.     Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

96.     Monsanto has special knowledge skill and expertise germane to herbicides and their design, manufacture testing, and marketing.

97.     At all times relevant, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup products into the stream of commerce.

98.     Defendants expressly represented and warranted to the Plaintiff and other consumers and users, that Roundup products were safe to human health and the environment, effective, fit, and proper for their intended use.

BE:10697289.1/COL285-277097

99.     Defendants advertised, labeled, marketed, and promoted Roundup products, representing the quality to consumers and the public in such a way as to induce purchase or use, thereby making an express warranty that its Roundup products would conform to the representations.

100.    Defendants' actions breached their express warranties to the Plaintiff.

101.    Plaintiff justifiably and detrimentally relied on the express warranties and representations of Defendants in the purchase and use of Roundup products.

102.    As a direct and proximate result of Defendants' breach of these express warranties, Plaintiff developed Non-Hodgkin Lymphoma and sustained other losses as set forth above.

        **WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages, and any other relief the Court shall deem fair and just.

## SIXTH COUNT

103.    Plaintiff herein incorporates all prior paragraphs as though the same were set forth herein at length.

104.    Monsanto's conduct as alleged herein was done with oppression and malice.  Monsanto was fully aware of Roundup's safety risks.  Nonetheless, Monsanto deliberately crafted its label, marketing, and promotion to mislead consumers, including the Plaintiff.

105.    This was accomplished through misleading labeling, and a comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions as set forth herein.

106.    Plaintiff was unable to make an informed decision about whether to purchase and use Roundup as set forth above.  Monsanto's conduct was done with conscious disregard of Plaintiff's rights.

- 16 -

107.    Based on the foregoing, Plaintiff requests punitive damages against Monsanto for the harms caused as set forth above.

**WHEREFORE,** Plaintiff demands judgment for damages against the Defendants, together with costs, disbursements of suit and interest, attorneys' fees, punitive damages. and any other relief the Court shall deem fair and just.

## JURY DEMAND

Pursuant to R. 1:8-2(b), Plaintiff hereby demands a trial by jury on all the issues raised in the within pleadings.

BRACH EICHLER L.L.C.
*Attorneys for Plaintiff*

By:     _____
KEITH J. ROBERTS, ESQ.

Dated:  December 30, 2019

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Keith J. Roberts. Esq. is designated as trial counsel.

BRACH EICHLER L.L.C.
*Attorneys for Plaintiff*

By:     _____
KEITH J. ROBERTS, ESQ.

Dated:  December 30, 2019

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any such action or proceeding presently contemplated.

BRACH EICHLER L.L.C.
*Attorneys for Plaintiff*

By:     _____
KEITH J. ROBERTS, ESQ.

Dated:  December 30, 2019

BE:10697289.1/COL285-277097

- 17 -

## DEMAND FOR ANSWERS TO INTERROGATORIES

Pursuant to R. 4:17-1(b)(ii), Plaintiff hereby demands that, in lieu of service of interrogatories, Defendants, each provide answers to the uniform interrogatories set forth in Form C and C(1) of Appendix IL pursuant to R. 4:17-4(b), Defendants shall serve answers upon Plaintiff within sixty (60) days from the date of receipt of this Demand.

Pursuant to R. 4:17-1(b)(i), Plaintiff reserves the right to propound supplemental interrogatories

BRACH EICHLER L.L.C.
*Attorneys for Plaintiff*

By: _____
KEITH J. ROBERTS, ESQ.

Dated: December 30, 2019

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to R. 4:10-2(b) demand is hereby made that the Defendants disclose to the undersigned whether there are any insurance agreements or policies under which any person of firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payment made to satisfy the judgment.

This request applies also to information regarding excess, umbrella or other supplemental insurance policies available to each defendant.

As to each policy available whether primary, excess, umbrella or otherwise supplemental coverage, please provide the following information under oath or certification. in the space provided: (If additional space is required, kindly attach a rider to this demand) (a) number (b) name and address of insurer or issuer (c) inception and expiration dates (d) names and addresses of all person insured thereunder (e) personal injury limits property damage limits (g) medical payment limits (h) name and

- 18 -

address of person who has custody and possession thereof (i) where and when each policy or agreement can be inspected and copied.

BRACH EICHLER L.L.C.
*Attorneys for Plaintiff*

By:   _____
KEITH J. ROBERTS, ESQ.

Dated:  December 30, 2019

## DEMAND FOR PRODUCTION OF DOCUMENTS

**PLEASE TAKE NOTICE** that in accordance with the R. 4:18-1 of the Rules Governing the Court of the State of New Jersey, Plaintiff hereby request that Defendants produce within thirty (30) days of receipt hereof, copies of the documents described herein and deliver same to the office of **BRACH EICHLER L.L.C.**, 101 Eisenhower Parkway, Roseland, New Jersey 07068.

## DEFINITIONS AND INSTRUCTIONS

These requests are intended to be continuing and you are instructed to make prompt, further and supplemental production whenever an additional document is discovered responsive hereto.

If any document called for by these request is withheld on the ground that it is privileged. constitutes attorney work product, or is for any other reason exempt from discovery, set forth the ground or grounds for withholding such documents, its present location and custodian and such additional information as may be required to enable it to be identified and to enable the Court to adjudicate the proprietary of the withholding, including but not limited to the type of documents, its date, author(s), addresses(s), if different its recipient(s), and its general subject matter.

Documents produced in response to these requests shall be produced in such a manner so as to identify the specific request to which they relate.

BE:10697289.1/COL285-277097

- 19 -

As used herein, the term "document" means, by way of illustration and not by way of limitation, the following items, whether printed or records or reproduced by any other mechanical process, written produced by hand, produced or stored in a computer, regardless of origin or location: books, records, communications, reports, correspondence, letters, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins, instructions, minutes, other communications (including, but not limited to, inter- and intra-office communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts, agreements, options to purchase, memoranda of agreements, licenses, books of account, orders invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, canceled checks, bank statements, bank passbooks, confirmations, statements of accounts, analysis, diaries, graphs, notebooks, charts, tables, working papers, plans, indices, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, data sheets, data processing cards, photographs, photographic negatives, phone-records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind or any other and all other data compilations from which information can be obtained and translated if necessary.

As used herein, the term, "person" means an individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

As used herein, any term in the singular shall be deemed to include the plural where appropriate and vice versa.

BE:10697289.1/COL285-277097

As used herein, all terms including "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to include the response any document that might be deemed non-responsive by any other construction.

As used herein, "communication" means any written or verbal communication or other statement from one person to another, including, but not limited to, any letter, interview, conference, meeting or telephone conversation.

- 21 -

## DOCUMENTS TO BE PRODUCED

1. Any and all written statements, as well as oral statements reduced to writing, of any and all other parties to this action.

2. Any and all written statements or oral statements reduced to writing of any/all witnesses to any aspects of the incident complained of, as well as of any aspects of plaintiff's claims.

3. Copies of all videos, photographs, motion pictures, charts, sketches, illustrations, diagrams and/or pictures relating to the incident complained of, as well as any and all aspects of the plaintiff's claim.

4. Copies of any and all written reports and/or oral reports reduced to writing, which in any way concerns the subject incident, and/or any/all claims of the plaintiff, made to/by a police official/department and/or any governmental authority.

5. Copies of all documents and any other information obtained through subpoenas, and/or medical authorizations signed by the plaintiff.

6. Any and all photographs, charts, drawings, motion pictures, videos and/or surveillance reports of the plaintiff.

7. Copy of the Curriculum Vitae of each proposed expert witness of Defendants.

8. The name and address and title of each agent, servant and/or employee of any and all of Defendants' medical experts who were are present during any/all examinations and/or interviews or any other aspects of defense medical/psychiatric examinations of the plaintiff.

9. Any and all intake sheets, patient questionnaire forms or other documents filled out and/or completed or drafted pursuant to any and all defense examinations of the plaintiff, taken or to be taken in this matter.

- 22 -

10.     Clear and complete copies of any and all reports of any and all defense experts, whether or not intended to be called at the time of trial.

11.     Any and all documents regarding or relating to any other injuries, illnesses, medical conditions and/or psychiatric conditions sustained by the plaintiff, whether before or after the date of the incident complained of.

12.     Any and all documents, including but not limited to, photographs, videos, films, diagrams and/or sketches in your possession, custody and/or control that refer or relate in any way to plaintiff's physical condition on or after the date of the incident complained of.

13.     Any and all records, reports, and/or other documents upon which Defendants will rely upon at the time of trial.

14.     Any and all photographs, and/or videotapes depicting defendant's property since the incident described in the complaint.

15.     True and complete copy of the insurance policy covering the Defendants regarding the incident complained of.

BRACH EICHLER L.L.C.
*Attorneys for Plaintiff*

By:     _____
KEITH J. ROBERTS, ESQ.

Dated:  December 30, 2019

BE:10697289.1/COL285-277097