# U.S. District Court
# Northern District of Alabama (Southern)
# CIVIL DOCKET FOR CASE #: 2:20−cv−00131−GMB

Thomas v. Monsanto Company Inc  
Assigned to: Magistrate Judge Gray M Borden  
Cause: 28:1332 Diversity−Product Liability  

Date Filed: 01/28/2020  
Jury Demand: Plaintiff  
Nature of Suit: 365 Personal Inj. Prod. Liability  
Jurisdiction: Diversity  

**Plaintiff**

**James L Thomas**     represented by     **William W Smith**  
SMITH & ALSPAUGH PC  
505 North 20th Street  
Suite 1100  
Birmingham, AL 35203  
205−324−8910  
Fax: 205−324−8929  
Email: wsmith@smithalspaugh.com  
*LEAD ATTORNEY*  
*ATTORNEY TO BE NOTICED*  

V.

**Defendant**

**Monsanto Company Inc**  
*a corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/28/2020 | 1 | COMPLAINT against Monsanto Company Inc (Filing fee $ 400 B4601103606.), filed by James L Thomas.(MRR, ) (Entered: 01/28/2020) |
| 01/28/2020 | 2 | Request for service by certified mail filed by James L Thomas. (MRR, ) (Entered: 01/28/2020) |
| 01/29/2020 | 3 | NOTICE REGARDING CONSENT to magistrate judge jurisdiction (MRR, ) (Entered: 01/29/2020) |
| 02/11/2020 | 4 | Summons Issued as to Monsanto Company Inc., sent via certified mail (MRR, ) (Entered: 02/11/2020) |
| 02/24/2020 | 5 | SUMMONS Returned Executed Monsanto Company Inc served on 2/17/2020, answer due 3/9/2020. (MRR, ) (Entered: 02/24/2020) |

Case MDL No. 2741 Document 1662-3 Filed 03/02/20 Page 2 of 10
Case 2:20-cv-00131-GMB Document 1 Filed 01/28/20 Page 1 of 10
FILED
2020 Jan-28 PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JAMES L. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | |
| MONSANTO COMPANY, INC., | ) | 2:20-cv-00131-GMB |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, James L. Thomas, by and through counsel complains as follows:

## INTRODUCTION
## PARTIES

1. The plaintiff is an Alabama citizen over the age of nineteen (19). His address is 7431 Old Springville Road, Trussville, Alabama 35173.

2. Defendant, Monsanto Company, is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri. Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup®, which contains the active ingredient glyphosate with other chemicals as well as other so-called "inert" ingredients.

## JURISDICTION AND VENUE

3. This lawsuit is brought pursuant to 28 U.S.C. §1332 inasmuch as the plaintiff is a citizen of the State of Alabama, as aforesaid. In addition, the amount

1

in controversy is in excess of the jurisdictional requirements of this Honorable Court, namely, Seventy-five Thousand Dollars ($75,000.00).

4. Further, defendant, Monsanto Company ("Monsanto") maintains sufficient contacts with the State of Alabama that the Court's exercise a personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

## FACTS AND GENERAL CIRCUMSTANCES

5. Glyphosate is a broad-spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world. Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions, and fruit, where it interferes with the plaint's ability to form aromatic amino acids necessary for protein synthesis. Treated plants generally die within two to three days after being exposed to said chemical. Inasmuch as the plants absorb glyphosate, it will not, and cannot be, completely removed by washing or peeling product or by milling, baking or brewing grains.

6. This dangerous and defective chemical has been on the market by this defendant for more than 40 years. The defendant marketed and advertised same as being a chemical that will kill almost every weed that does not, and will not, cause harm to people or to the environment. However, according to the World Health Organization, the main ingredient of Roundup®, glyphosate, is a probable cause of cancer. Nevertheless, this defendant, Monsanto, has advertised said product to be

2

completely safe. In order to prove their allegations, Monsanto has championed falsified data, spent millions of dollars involved in "ghost riding" untrue favorable articles, and has led to a prolonged campaign of misinformation to convince government agencies, farmers, and the general population and public that their product Roundup®, is safe for use in and around the household and the farm.

7. The manufacturer formulation and distribution of herbicides such as Roundup® are regulated under the FIFRA, 7 U.S.C. 136, et seq., which requires that all pesticides be registered with the EPA prior to their distribution, sale or use except as described by the FIFRA.

8. Although the EPA requires a variety of tests on herbicides such as Roundup® before registration by the EPA, it does not assure the general public of a finding of safety of said chemical product.

9. Although the EPA originally classified glyphosate as a carcinogenic, after considerable pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to evidence of non-carcinogenicity in 1991.

10. Further, on two occasions, the EPA has found that the labs used by Monsanto to test the toxicity of Roundup® products for registration purposes did, indeed, commit fraud.

3

11. In the first instance, Monsanto hired Industrial Bio-Test Laboratories (IBT) to perform and evaluate pesticide toxicology studies related to Roundup®. IBT performed about thirty (30) tests on glyphosate and glyphosate-containing products, including nine (9) of the fifteen (15) residue studies need to register Roundup®.

12. In 1976, the EPA performed an inspection of IBT that revealed discrepancies between the raw data and the final report relating to the toxicology impacts of glyphosate. The EPA subsequently audited IBT and found the studies that were conducted for the Roundup® herbicide to be invalid. This resulted in three top executives of IBT being convicted of fraud in 1983.

13. In the second incident of data falsification, Monsanto hired Craven Labs in 1991 to perform pesticide and herbicide studies including for Roundup®. In that same year, the owner of Craven Labs and three of his employees were indicted, and later convicted, of fraudulent laboratory practices in the testing of pesticides and herbicides.

14. In 1996, the New York attorney general filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup® products. They continued to advertise the product as being completely and totally safe to human health and the environment. Nevertheless, on November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York attorney general

4

in which Monsanto agreed, among other things, to stop publishing advertisements in New York that represented that the product was safe and harmless.

15. Likewise, in 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup®. The French court affirmed an earlier judgment that Monsanto had falsely advertised its herbicide Roundup® as biodegradable in that it left the soil clean.

16. In addition, several countries have instituted bans on the sale of Roundup® and other glyphosate-containing herbicides.

17. The plaintiff herein, James L. Thomas, is an elderly gentleman in his seventies. He has used Roundup® several times a year at his home in Trussville, Jefferson County, Alabama for the last twenty-three (23) years.

18. He purchased the Roundup® either from Home Depot and/or Lowe's in the Trussville, Jefferson County, area.

19. Inasmuch as, and because of, the advertising of the defendant herein, and its failure to warn of the hazards associated with the use of Roundup®, the plaintiff did not wear any protective gear while mixing, applying, or using the Roundup® for over a twenty-three (23) year period. There were no warnings on the packaging of the product, produced and distributed by the defendant herein, that would cause the plaintiff to be aware of the fact that this particular product could, and would, cause cancer.

5

20. As a result of his exposure to the unreasonably dangerous chemical, Roundup®, the plaintiff was diagnosed in the spring of 2019, with Non-Hodgkin's Lymphoma ("NHL").

21. Of course, during the entire time that the plaintiff was exposed to the Roundup® he did not know that exposure to same was injurious to his health, or possibly, to the health of others.

22. Within the time period of any applicable statute of limitations, plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to Roundup® and glyphosate is injurious to human health. Further, plaintiff shows unto this Honorable Court that he was last exposed to Roundup®, this Spring, after he discovered through the media that Roundup® was a carcinogenic that could, and probably did, cause his cancerous condition.

23. Plaintiff further avers and alleges that this defendant was under a continuous duty to disclose to customers, including the plaintiff, accurate safety information concerning the product and the risk associated with the use of the product.

24. Plaintiff, without question, avers and alleges that the defendant negligently, willfully, and wantonly, failed to warn the plaintiff, and other members of the public, of the hazards associated with the use of the defective chemical Roundup® and glyphosate.

25. Plaintiff now, as a proximate consequence of the actions, and inactions, of the defendant heretofore set forth has suffered, and will probably continue to suffer in the future, tremendous physical pain, mental anguish, emotional distress, and other sequala as a result of contracting cancer as heretofore described.

26. This defendant, as heretofore described concealed information about the risk of Roundup® and aggressively marketed the herbicide as safe for humans and the environment during the defendant championed falsified data while attacking legitimate research linking Roundup® to cancer. The defendant made a conscious decision not to redesign or withdraw from the market Roundup® so that it was less dangerous to humans and the environment. Defendant knew, or should have known, that Roundup® caused cancer but failed to adequately warn, as heretofore described above.

27. All of the actions heretofore set forth were done negligently, wantonly, and with reckless disregard for the lives and safety of the public, including the plaintiff, with knowledge that serious injury and death could, or would, likely result from the continuous use of the defective product Roundup®, hence this cause of action.

## FIRST CAUSE OF ACTION
### (Negligence Against the Defendant)

28. Plaintiff hereby adopts by reference and incorporates herein all of the material averments set forth above as though fully set out herein.

7

29. At all times relevant to this litigation, the defendant had a duty to reasonably and properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper and adequate warnings, and take other such steps as necessary to insure that the product, Roundup®, did not cause users and consumers to suffer unreasonable and dangerous risks such as cancer. Nevertheless, plaintiff avers and alleges that this defendant breached all the duties set forth above which proximately caused the injuries and damages associated with the contraction of cancer by the plaintiff, as heretofore described.

## SECOND CAUSE OF ACTION
### (Breach of Expressed or Implied Warranty)

30. Plaintiff hereby adopts by reference and incorporates herein all the material averments heretofore set forth as though fully set out herein.

31. The product in question, Roundup®, was designed, tested, manufactured, distributed, promoted and sold by the defendants, was expected to, and did, reach the plaintiff without any substantial change in its condition.

32. Defendant, through their advertising and promotional materials, expressly warranted and/or implied the warranty that Roundup® was safe for its intended use and not unreasonably dangerous for its intended purpose. Plaintiff further avers and alleges that defendant breached their expressed and/or implied warranties to the plaintiff in that the Roundup® was not safe for its intended use in light of the

8

unreasonably high risk of cancer associated with its use including the risk of Non-Hodgkin's lymphoma.

33. Plaintiff reasonably relied upon to his detriment on defendants' express and/or implied warranties, hence this claim.

### THIRD CAUSE OF ACTION
### (Alabama Extended Manufacturer's Liability Doctrine)

34. Plaintiff hereby adopts by reference and incorporates herein all the material averments set forth above as though fully set out herein.

35. Plaintiff further avers and alleges that this defendant is responsible to the plaintiff by virtue of the Alabama Extended Manufacturer's Liability Doctrine as set forth in the case law of the State of Alabama. Inasmuch as the defendant product, Roundup®, was manufactured, designed, labeled, marketed, sold, and placed into the channels of commerce in a defective and unreasonably dangerous condition for use by members of the public, including the plaintiff, hence this claim.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays that this Court will entertain this complaint and enter a judgment in favor of and against the defendant, as follows:

A. Award the plaintiff compensatory damages that are in excess of the jurisdictional requirements of this Honorable Court including, but not limited to,

9

pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at the trial of this action;

B.  Award the plaintiff medical expenses and other economic damages in an amount to be determined at the trial of this action;

C.  Award the plaintiff punitive damages in an amount necessary to punish this defendant, Monsanto, for the egregious, grossly negligent, wanton, willful and reckless misconduct heretofore described.

D.  Further, grant the plaintiff any other relief that the Court may deem to be just and proper under the facts and circumstances of this particular matter.

This the 27th day of January, 2020.

### JURY DEMAND

Plaintiff hereby demands a trial by jury with all the issues that are so triable.

/s/ William W. Smith
William W. Smith (asb-7064-h45W)

OF COUNSEL:
SMITH & ALSPAUGH, P.C.
4 Office Park Circle, Suite 212
Birmingham, AL 35223
Phone: (205) 324-8910
Fax: (205) 324-8929
Email: wsmith@smithalspaugh.com

Please serve Defendant at the following address:
Monsanto Company, Inc., a corporation
800 North Lindbergh Blvd.
St. Louis, MO 63167

10