ACO

# U.S. District Court
## Eastern District of New York (Central Islip)
### CIVIL DOCKET FOR CASE #: 2:20-cv-01229-SJF-AYS

| | |
|---|---|
| Valdemira v. Monsanto Company | Date Filed: 03/05/2020 |
| Assigned to: Judge Sandra J. Feuerstein | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Anne Y. Shields | Nature of Suit: 365 Personal Inj. Prod. Liability |
| Case in other court: Supreme Court of the State of NY, Ctny. of Suffolk, 601037/2020 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Notice of Removal | |

**Plaintiff**

**Frances Valdemira**    represented by    **Jennifer Ann Spellman**
Kujawski & Kujawski, Esqs.
1637 Deer Park Avenue
P.O. Box 661
Deer Park, NY 11729
(631) 242-1600
Fax: (631) 242-1814
Email: jspellman@bkmklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**    represented by    **Brett Covington**
Hollingsworth LLP
1350 I Street, NW
Washington, DC 20005
(202) 898-5800
Fax: (202) 682-1639
Email: bcovington@hollingsworthllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/05/2020 | 1 | NOTICE OF REMOVAL by Monsanto Company from Supreme Court of the State of New York, County of Suffolk, Case Number 601037/2020. ( Filing fee $ 400 receipt number ANYEDC-12495334). Was the Disclosure Statement on the Civil Cover Sheet completed - Yes. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1 (summons and complaint)) (Covington, Brett) Modified on 3/6/2020 (Flanagan, Doreen). (Entered: 03/05/2020) |
| 03/05/2020 | 2 | Corporate Disclosure Statement by Monsanto Company identifying Other Affiliate Bayer AG for Monsanto Company. (Covington, Brett) (Entered: 03/05/2020) |

| | | |
|---|---|---|
| 03/05/2020 | 3 | CERTIFICATE OF SERVICE by Monsanto Company re 1 Notice of Removal, 2 Corporate Disclosure Statement (Covington, Brett) (Entered: 03/05/2020) |
| 03/06/2020 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made. (Flanagan, Doreen) (Entered: 03/06/2020) |
| 03/06/2020 | | Case Assigned to Judge Sandra J. Feuerstein and Magistrate Judge Anne Y. Shields. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Flanagan, Doreen) (Entered: 03/06/2020) |
| 03/06/2020 | 5 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the consent unless all parties have signed the consent.** (Flanagan, Doreen) (Entered: 03/06/2020) |
| 03/06/2020 | 6 | ANSWER to Complaint by Monsanto Company. (Covington, Brett) (Entered: 03/06/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/06/2020 16:06:43 | | | |
| **PACER Login:** | hllp1982 | **Client Code:** | 1417.0049 |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-01229-SJF-AYS |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------X
FRANCES VALDEMIRA,

                              Plaintiff,

-against-

MONSANTO COMPANY,

                              Defendant.
-----------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index No.:

       Plaintiff complaining of the defendant through her attorney, KUJAWSKI & KUJAWSKI, ESQS., respectfully alleges upon information and belief:

## PARTIES and JURISDICTION

1. Frances Valdemira is an individual residing in Suffolk County, New York.

2. Monsanto Company is a Delaware Corporation with its principal place of business in St. Louis, Missouri. Monsanto sells its products throughout the United States, including in New York. Monsanto Company is registered with the New York Secretary of State and its registered agent is located at 80 State Street, Albany, New York, 12207-2543.

3. Monsanto designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the commercial herbicide Roundup.

4. This Court has personal jurisdiction over Monsanto because Monsanto transacts business in and is a corporation doing business within New York. Monsanto knows that its Roundup products are and were sold throughout New York, and, more specifically, caused Roundup to be sold to Plaintiff in New York. In addition, Monsanto maintains sufficient contacts with the State of New York such that this Court's exercise of personal jurisdiction

over it does not offend traditional notions of fair play and substantial justice.

5. Monsanto advertises and sells goods, specifically Roundup, throughout New York. It derived substantial revenue from goods and products used in New York. It expected its acts to have consequences within New York and derived substantial revenue from interstate commerce. Specific to this case, Monsanto engaged in the business of developing, manufacturing, testing, packaging, marketing, distributing, labeling, and selling Roundup. Monsanto purposefully availed itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.

6. This Court has jurisdiction over the subject matter of this litigation.

## GENERAL ALLEGATIONS

7. Glyphosate, which is an active ingredient in Roundup, is a carcinogen. It has been identified as causing various forms of cancer, in particular Non- Hodgkin Lymphoma.

8. Plaintiff, who used Roundup extensively, now suffers from the effects of Non-Hodgkin Lymphoma.

9. "Roundup" refers to all formulations of Monsanto's Roundup products, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam, Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate,

Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to- Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass Killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer Ready- to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation containing the active ingredient glyphosate.

10. Monsanto is the world's leading producer of glyphosate.

11. Monsanto discovered the herbicidal properties of glyphosate during the 1970's and developed it as a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

12. Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots; and detectable quantities accumulate in the plant tissues.

13. Roundup was introduced in 1974 and is today one of the world's most widely used herbicides.

14. In all this time, farmers, ranchers and consumers have used Roundup unaware it is a carcinogen.

15. Monsanto represented to farmers, ranchers and consumers that its spray-on

glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish.

16. Monsanto also represented to farmers, ranchers and consumers:

    a. Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences.

    b. And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

    c. Roundup biodegrades into naturally occurring elements.

    d. You can apply Roundup with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Roundup into natural products.

    e. Glyphosate is less toxic to rats than table salt following acute oral ingestion.

    f. Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

    g. You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

    h. Roundup can be used where kids and pets will play and breaks down into natural material.

17. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York Attorney General, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

    a. its glyphosate-containing pesticide products or any

component thereof are safe, non-toxic, harmless or free from risk;

    b. its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable;

    c. its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means;

    d. its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics;"

    e. glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides; and

    f. its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

18. However, Monsanto did not alter its advertising in the same manner in any state other than New York, and, on information and belief, still has not done so today.

19. The International Agency for Research on Cancer ("IARC") is the specialized intergovernmental agency that the World Health Organization ("WHO") of the United Nations tasked with conducting and coordinating research into the causes of cancer.

20. An IARC Advisory Group to Recommend Priorities for IARC Monographs during 2015-2019 met in April 2014. IARC set glyphosate for review in 2015-2016.

21. On March 24, 2015, after IARC reviewed numerous studies, many of which had been in Monsanto's possession since as early as 1985, the IARC's working group published its conclusion that the glyphosate contained in Monsanto's Roundup herbicide, is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence (genotoxicity and oxidative stress) of carcinogenicity in humans and sufficient evidence of carcinogenicity

in animals.

22. The IARC's full Monograph was published on July 29, 2015, and established glyphosate as a class 2A probable carcinogen to humans. According to the authors, glyphosate demonstrated sufficient mechanistic evidence to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.

23. The IARC Working Group found an increased risk between exposure to glyphosate and Non-Hodgkin Lymphoma ("NHL") and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

24. The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

25. Despite the new classification by the IARC, Monsanto has had ample evidence of glyphosate and Roundup's genotoxic properties for decades.

26. Genotoxicity refers to chemical agents capable of damaging the DNA within a cell through genetic mutations, which is a process that is believed to lead to cancer.

27. In 1997, Chris Clements published "Genotoxicity of select herbicides in Rana catesbeiana tadpoles using the alkaline single-cell gel DNA electrophoresis (comet) assay." The study found that tadpoles exposed to Roundup showed significant DNA damage when compared with unexposed control animals.

28. In 2003, Lennart Hardell and Mikael Eriksson published the results of two case-controlled studies on pesticides as a risk factor for NHL and hairy cell leukemia. The study concluded that glyphosate had the most significant relationship to NHL among all herbicide studies with an increased odds ratio of 3:11.

29. In 2003, AJ De Roos published a study examining the pooled data of mid-western farmers, examining pesticides and herbicides as risk factors for NHL. The study, which controlled for potential confounders, found a relationship between increased NHL incidence and glyphosate.

30. In 2006, Cesar Paz-y-Mifio published a study examining DNA damage in human subjects exposed to glyphosate. The study produced evidence of chromosomal damage in blood cells showing significantly greater damage after exposure to glyphosate than before in the same individuals, suggesting that the glyphosate formulation used during aerial spraying had a genotoxic effect on exposed individuals.

35. In 2008, Mikael Eriksson published a population-based case-control study of exposure to various pesticides as a risk factor for NHL. This strengthened previous associations between glyphosate and NHL.

36. In spite of this knowledge, Monsanto continued to issue broad and sweeping statements suggesting that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

37. These statements and representations have been made with the intent of inducing Plaintiff, the agricultural community, and the public at large to purchase, and increase the use of, Roundup for Monsanto's pecuniary gain, and in fact did induce Plaintiff to use Roundup.

38. Monsanto failed to appropriately and adequately inform and warn Plaintiff of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or

Roundup, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring, and/or medications.

39. In November of 1999, after using and being exposed to Roundup for years, Plaintiff developed cancer. Specifically, Plaintiff was diagnosed with Non- Hodgkin Lymphoma.

40. Frances Valdemira underwent significant treatment for several years and incurred considerable medical expenses.

41. For years after Frances Valdemira developed cancer, she were unaware of any causal link between Roundup and cancer.

42. Recently, Frances Valdemira saw a news report wherein a suggestion was made that Roundup was not only a carcinogen, but was linked to Non- Hodgkin Lymphoma. It was not until then that the Plaintiff had any reason to suspect Roundup had caused her cancer.

43. By reason of the foregoing acts and omissions, Plaintiff seek compensatory damages as a result of Plaintiff's use of, and exposure to, Roundup, which caused or was a substantial contributing factor in causing Frances Valdemira to suffer from cancer. Plaintiff has endured and continues to suffer pain, emotional and mental anguish, medical expenses, loss of consortium and other economic and non-economic damages.

## COUNT I - Strict Products Liability (Design Defect)

44. Plaintiff re-alleges each paragraph above as if fully set forth herein.

45. At all times relevant, Monsanto designed, researched, manufactured, tested, advertised, promoted, sold, and distributed Roundup as hereinabove described that was used by Plaintiff.

46. Roundup was expected to and did reach consumers and persons coming into contact with it without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed.

47. Roundup was and is defective because it was and is dangerous to an extent beyond that which an ordinary consumer would anticipate.

48. Plaintiff was exposed to Roundup without knowledge of Roundup's dangerous characteristics.

49. At the time of Plaintiff's use of and exposure to Roundup, Roundup was being used for the purposes and in a manner normally intended, as a broad-spectrum herbicide.

50. Plaintiff's use of, and exposure to, Roundup caused or was a substantial contributing factor in causing Plaintiff to suffer from cancer. Plaintiff has endured and continues to suffer pain, emotional and mental anguish, medical expenses, loss of consortium and other economic and non-economic damages.

## COUNT II - Strict Products Liability (Failure to Warn)

51. Plaintiff re-alleges each paragraph above as if fully set forth herein.

52. At all times relevant, Monsanto designed, researched, manufactured, tested, advertised, promoted, sold, and distributed Roundup as hereinabove described that was used by Plaintiff.

53. Warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products should have been prominently included with Roundup because of the risks of harm associated with the use of and/or exposure to such products.

54. At all relevant times, Roundup was defective because it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, but not limited to, developing NHL as a result of exposure and use.

55. Had Plaintiff been appropriately warned, she would not have used Roundup or would have taken additional precautions to limit Roundup exposure.

56. Plaintiff's use of, and exposure to, Roundup caused or was a substantial contributing factor in causing Plaintiff to suffer from cancer. Plaintiff has endured and continues to suffer pain, emotional and mental anguish, medical expenses, loss of consortium and other economic and non-economic damages.

## COUNT III – Violation of New York's Consumer Protection Act

57. Plaintiff re-alleges each paragraph above as if fully set forth herein.

58. At the time that Plaintiff was using and being exposed to Roundup, Defendant Monsanto was aware of the risk that Roundup posed to consumers, such as Plaintiff, related to cancer and specifically NHL.

59. In violation of New York's Consumer Protection Act, Defendant Monsanto engaged in deceptive trade practices described herein in the marketing and sale of Roundup by misrepresenting and/or failing to warn about the risk of cancer posed by Roundup.

60. Plaintiff have been injured as a direct and proximate result of

Defendant's conduct.

## COUNT IV - Punitive Damages

61. Plaintiff re-alleges each paragraph as if fully set forth herein.

62. Defendant knew or should have known about the risks posed by Roundup, but recklessly failed to warn consumers. Instead, as alleged above, Monsanto promoted Roundup without regard for its toxic effects. Defendant deliberately proceeded to act in conscious disregard or indifference to a high probability of injury. Defendant's acts demonstrate indifference to the health and well-being of consumers, including Plaintiff.

63. Plaintiff is entitled to punitive damages in an amount sufficient to punish Monsanto and deter it and other companies from acting in this manner in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demand judgment against Defendant jointly and severally for all the damages allowed by law, including but not limited to:

1. All damages, special and general, recoverable under New York law, including but not limited to all economic and non-economic damages in a reasonable sum to be proven at trial;

2. Punitive damages in a sufficient amount to discourage Defendant Monsanto and others from engaging in like conduct in the future; and,

3. Such other relief, including attorneys' fees and pre or post-judgment interest, as the Court deems just and proper under the circumstances, or that is appropriate under law or equity.

KUJAWSKI & KUJAWSKI, ESQS.

_____
JENNIFER A. SPELLMAN
Attorneys for Plaintiff
1637 Deer Park Avenue
P.O. Box 661
Deer Park, New York 11729-0661
631-242-1600

STATE OF NEW YORK         )
                                              ss.:
COUNTY OF SUFFOLK      )

FRANCES VALDEMIRA, being duly sworn, deposes and says:

That deponent is the plaintiff in the within action; that deponent has read the foregoing Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes it to be true.

*Frances Valdemira*
FRANCES VALDEMIRA

Sworn to before me this

14 day of January, 2020

*Josephine M. Vagelatos*
Notary Public

JOSEPHINE M. VAGELATOS
Notary Public, State of New York
No. 01VA4912081
Qualified in Suffolk County
Commission Expires April 4, 2022