**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE:  ROUNDUP PRODUCTS LIABILITY                    MDL No. 2741

LITIGATION

  <u>This Filing Relates To The Following Cases Only</u>:

*Phillip Mowry v. Monsanto Company, et al., Alabama Middle, Case No. 2:20-cv-00215*

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO VACATE CTO-202**</u>

<u>**INTRODUCTION**</u>

In order for this case to be subject to transfer to MDL 2741, there must be a valid basis for subject-matter jurisdiction and a determination that such jurisdiction exists. Here, subject matter jurisdiction does not exist. This case began in state court in Montgomery County, Alabama where it remained for one year until Monsanto in an effort to avoid an upcoming trial abruptly removed the case to federal court. The removal was untimely as it should have been filed within thirty days of service (it was filed 363 days after the action was commenced). Monsanto attempted to explain its untimeliness by alleging that they discovered "new information" which was through "other paper" obtained from Defendant Harwell's. However, the pleadings and discovery in this action show the contrary.  As such, there is no "other paper" offered by Monsanto that that tells them anything new, and therefore, its removal is beyond untimely.  Further, Monsanto's theory that the Harwell's was fraudulently joined to defeat jurisdiction fails. Courts have consistently held that a plaintiff may combine claims against a seller dealer and a manufacturer for product liability claims and removal efforts of a defendant in such cases have proven unsuccessful. As shown below, the merit-based discussion held by Monsanto for fraudulent joinder is not allowed under a review of a Motion to Remand. Nevertheless, Monsanto's discussion about the viability of the claims against

a resident seller fail as a matter of law. Alabama law recognizes that a seller can be held liable under the AEMLD and can be held liable for breach of warranty, negligence, wantonness, and other state law claims.

## FACTUAL & PROCEDURAL BACKGROUND

In sum, while managing and operating a landscape company in Montgomery County and the surrounding area, Mr. Mowry sought the advice of his friend and fellow church member, Charles Elliott. Mr. Elliott was the long-time owner, operator, and most experienced consult for Harwell's Green Thumb as well as other employees of Harwell's. Mr. Mowry knew of Mr. Elliott and Harwell's extensive experience and knowledge of lawn care and landscaping. He knew Harwell's had a wealth of experience and knowledge in killing weeds. Using that knowledge and Mr. Mowry relying upon it, Harwell's introduced Mr. Mowry to Monsanto's product, Roundup. Mr. Mowry knew Mr. Elliott well and through their friendship knew Mr. Elliott was one of the most knowledgeable local individuals who understood landscaping, and in relevant part, weed control. As Harwell's advertises, they are a "trusted name in landscape design and installation", they are the "knowledgeable Green Team" who "will work with you to diagnose the problem and prescribe solutions". Mr. Elliott and other employees of Harwell did just that.

Mr. Elliott, on behalf of Harwell, and other employees of Harwell, met with Mr. Mowry on numerous occasions where they provided instructional advice to Mr. Mowry about how to mix, apply, and use Roundup. Mr. Mowry was dependent on Mr. Elliott and other employees of Harwell, to guide him on what product to use, how to use it, what equipment and protective gear to use, and when to use. Harwell, by and through Mr. Elliott and other employees, was not simply a distributor or innocent conduit as suggested by Monsanto. During Mr. Elliott's and other employees' instructions, they failed to offer for sale and instruct Mr. Mowry on the use of any

2

protective gear or equipment in order to reduce Mr. Mowry's exposure to chemicals, including Roundup. Mr. Elliott and the other Harwell employees were in the position and in fact had or should have had detailed information about, the risks involved with the product, and the necessity of using protective gear.  Harwell never informed Mr. Mowry that Roundup was a carcinogen and that protective gear was recommended. In Mr. Elliott's position, he should have and likely in fact knew that glyphosate was in Roundup and a carcinogen. Mr. Mowry, following the instructions of Mr. Elliott, mixed and used Roundup and developed a painful, debilitating, devastating and likely life-ending cancer.

On March 26, 2019, Mr. Mowry filed his Complaint in the Circuit Court of Montgomery County, Alabama. [Doc. #2] On May 29, 2019, Monsanto filed its Answer. [Doc. #23] On June 4, 2019, Harwell's filed its Answer to Mr. Mowry's Complaint wherein Harwell denied the allegations arguing that it did not sell Plaintiff the product and even if it did, it was an innocent seller. [Doc. #25] Specifically, Harwell claimed the following: Harwell has no evidence to support the Plaintiff's purchase of or exposure to Roundup products related to Harwell (p. 1, ¶4, Harwell Answer); Harwell's made no warranties of any kind or any representations of any nature whatsoever to Plaintiff. If any such warranties were made, which Harwell specifically denied then Plaintiff failed to give notice of any breach. (p.19, ¶16, Harwell Answer); and Plaintiff's strict liability claims against Harwell are barred in whole or in part by the Alabama Extended Manufacturer's Liability Doctrine. (p.21, ¶30, Harwell Answer).

On July 18, 2019, Plaintiff answered Harwell's Discovery. [See Plaintiff's Responses to Interrogatories and Request for Production, attached hereto as Exhibit A]; On  August  6,  2019, Harwell answered Plaintiff's discovery. [See Harwell's Responses to Plaintiff's Discovery, attached hereto as Exhibit B]. In Harwell's discovery responses, it again claimed it did not sell

Plaintiff the product and was an innocent seller; On September 5, 2019, all parties filed a Joint Motion for Scheduling Order with a proposed order. On September 6, 2019, the Circuit Court of Montgomery County, Alabama entered a Scheduling Order setting the matter for trial and imposing discovery and pre-trial deadlines. [Doc. #58] On March 2, 2020, Plaintiff answered Defendant Monsanto's Interrogatories and Request for Production. [See Plaintiff's Responses to Defendant Monsanto's Interrogatories and Request for Production, attached hereto as Exhibit C]. On March 12, 2020, Monsanto issued Harwell discovery. On March 19, 2020, Harwell answered Monsanto's discovery and Plaintiff supplemented his discovery responses [See Exhibits D and E]. The discovery submitted by Harwell again reiterated what it claimed in its Answer (filed on June 4, 2019) and in its discovery responses (submitted on August 6, 2019). On March 24, 2020, Monsanto filed its Notice of Removal for the reasons set forth above. [USDC ALM Doc. #1] Plaintiff filed his Motion to Remand on March 26, 2020. [USDC ALM Doc #3] Subsequently, Defendants filed their Opposition to Plaintiff's Remand on April 22, 2020. [USDC ALM Doc. #16] Plaintiff filed his Reply on April 28, 2020. [USDC ALM Doc. #17] On April 17, 2020 this Panel issued a Conditional Transfer Order o. 202. [MDL Doc. #1745] On April 17, 2020, Plaintiff filed his Notice of Opposition with the JPML. [MDL Doc. #1747]

## ARGUMENT AND AUTHORITY

A conditional transfer order is an administrative act of the Panel Clerk "which can and will be vacated upon the showing of good cause by any party." *In re: Grain Shipment Litig.*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (*citing In re: IBM Antitrust Litig.*, 316 F. Supp.976 (J.P.M.L. 1970)). Good cause exists where consolidation fails to promote the "just and efficient" conduct of the action. See 28 U.S.C. § 1407(a); see also H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968 USCCAN 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient

conduct of such actions and be for the convenience of the parties and witnesses"). Congress intended for consolidation to be ordered "only where significant economy and efficiency in judicial administration may be obtained." See H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1900 (emphasis added).

This Court should vacate the CTO- 202 regarding M.D. Alabama, C.A. No. 2:20-00215 and remand this matter to The Circuit Court of Montgomery County, Alabama, or to permit the United States District Court for the Middle District of Alabama to decide the threshold issue: whether removal was proper. A transfer pursuant to 28 U.S.C. §1407 is not proper when the transferring U.S. District Court does not have proper jurisdiction, as is the case here. *See BancOhio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir.1975). In addition, as to justice and efficiency, principles of comity would dictate against the transfer of any action that has an important motion under submission and/or pending especially a motion that will render the question of transfer under §1407 moot if decided in Plaintiff's favor.

## I.   MONSANTO'S REMOVAL IS UNTIMELY AND PROCEDURALLY FLAWED

A notice of removal of a civil action must be filed within thirty days after receipt by the defendant of the initial pleading. However, if the case by the initial pleading is not removable, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable". 28 U.S.C. 1446(b). The additional pleading, motion, or other paper must be "authored" by the plaintiff. "For instance, the "other paper" must be plaintiff's responses to requests for admissions, settlement offers made by plaintiffs, a plaintiff's interrogatory responses, or a plaintiff's deposition testimony." *See Whittington v. Watkins*, 2010 U.S. Dist. LEXIS 26652 (S.D. Ala. 2010)(citing

*Schools of Delaware, Inc.*, 2009 U.S. Dist. LEXIS 68087, 2009 WL 2423105, *5 (M.D. Fla. 2009)("The Eleventh Circuit has explained that the thirty-day time limit does not begin to run until a defendant receives an unambiguous statement from the plaintiff which clearly establishes federal jurisdiction. When not readily ascertainable from the complaint, this statement may come from any 'other paper' from the plaintiff, including deposition testimony. **Evidence independently gathered by the defendant 'from outside sources is not of the sort contemplated by §1446(b).'"))**

The traditional rule is that only a voluntary act by the plaintiff may convert a non-removable case into a removable one. *See Insinga v. LaBella,* 845 F. 2d 249, 252 (11th Cir. 1988)(explaining the judicially created "voluntary-involuntary" rule that applies in diversity cases); *see also Weems v. Louis Dreyfus Corp.,* 380 F. 2d 545, 547 (5th Cir. 1967). Thus, "[a] defendant cannot show that a previously non-removable case 'has become removable' as a result of a document created by the defendant." *Pretka v. Kolter City Plaza II, Inc.,* 608 F. 3d 744, 761 (11th Cir. 2010)(citing 28 U.S.C. 1446(b)(second paragraph)). Here, Monsanto relies solely on Defendant Harwell's discovery responses to support its removal. Monsanto does not rely on "other paper" from the Plaintiff. Its removal was procedurally improper and untimely. Co-Defendant's discovery responses are not the "other paper" contemplated under Section 1446(b). The Defendant's discovery responses are not authored by the Plaintiff as required[1]. Secondly, Monsanto is not relying upon Plaintiff's deposition, Plaintiff's interrogatory responses, or Plaintiff's responses to request for admission. The co-Defendant's answers to interrogatories

---

[1] Monsanto relies on a California case to suggest they can rely on co-defendant's answers to discovery as "other paper" to justify untimely removal. The controlling law here is the Eleventh Circuit which has held that the "other paper" must be authored by Plaintiff.

submitted by Monsanto does not qualify as "other paper". The absence of "other paper" requires remand.

In *Lowery v. Alabama Power Co., i*nterpreting § 1446(b)(3)'s predecessor statute, the Eleventh Circuit has stated that "a case becomes removable [as a procedural matter] when three conditions are present: there must be (1) 'an amended pleading, motion, order or other paper,' which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can 'first ascertain' that federal jurisdiction exists." *Lowery,* 483 F.3d at 1213 n. 63. Monsanto states that the "other paper" upon which it relies is the co-Defendant's responses to interrogatories. Those documents do not satisfy the "'receipt from the plaintiff' rule [.]" *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 756 (11th Cir.2010); *see also Lowery,* 483 F.3d at 1213 (stating that in evaluating the procedural propriety of removal, "the court considers the document received by the defendant from the plaintiff ... and determines whether that document and the notice of removal unambiguously establish federal jurisdiction"). The "other paper" designated by Monsanto -- Harwell's Verified Interrogatory Answers, and Harwell Affidavit [2] – were not received by Monsanto from the Plaintiff. Remand is mandated because of the procedural defect.

Moreover, Harwell's discovery responses and affidavit do not constitute "an unambiguous statement" which clearly establishes federal jurisdiction. Harwell's answers to the discovery and affidavit do not eliminate the possibility of a valid claim or ultimately a judgment against Harwell. The information provided is not different than the allegations of the Plaintiff's Complaint and Harwell's previously submitted Answer (filed June 4, 2019) and discovery responses (filed August 6, 2019). In each of those pleadings prepared by Defendant Harwell, Harwell pleads the Innocent

---

[2] ¶32, Notice of Removal.

Seller Doctrine and denies having even provided Mr. Mowry with the product in question. Monsanto's removal fails as it was not based on "other paper" provided by Plaintiff which establishes an "unambiguous statement" which clearly establishes federal jurisdiction. Harwell's discovery responses and affidavit cannot and do not constitute "other paper" nor do they constitute a statement formatively revealing federal jurisdiction. Federal jurisdiction does not exist here and the procedural flaws in Monsanto's removal warrant remand.

The transferor Court, and its Circuit, have consistently held that a removal is improper and untimely when the initial pleading provides at least a clue that the action is removable and the Defendant fails to remove within thirty days. *See Golden Apple Mgmt. Co. v. Geac Computers, Inc.,* 990 F. Supp. 1364, 1366 (M.D. Ala. 1998); *Jeffcoat v. Am. Gen. Life & Accident, Ins. Co.,* 2001 U.S. Dist. LEXIS 7256, No. 01-E-325-N at *4 (M.D. Ala. May 16, 2001); *Naef v. Masonite Corp.,* 923 F. Supp. 1504, 1511 (S.D. Ala. 1996); *Morgan v. Estate of Cook,* 180 F. Supp. 2d 1301, 1306 (M.D. Ala. 2001); *Newman v. Spectrum Stores, Inc.,* 109 F. Supp. 2d 1342, 1345 (M.D. Ala. 2000); *Turner v. Wilson Foods Corp.,* 711 F. Supp. 624 (N.D. Ga. 1989); *Englett v. Armstrong World Industries, Inc.* 1998 U.S. Dist. LEXIS 20998 (S.D. Ala. 1998); *Mitchell v. Investors Guaranty Life Ins. Co.,*  868 F. Supp. 1344 (N.D. Ala. 1944); *Neal v. Scarborough,* 2018 WL 4521029 (M.D. Ga. 2018). The Court in *Clingan v. Celtic Life Insurance Company,* 244 F. Supp. 2d 1298 (M.D. Ala. 2003) reiterated that removal is a privilege and a removing party must comply with the statutory requirements in order to invoke the statutorily afforded privilege. Further, the discussion in *Clingan* emphasized that the time limit in 28 U.S.C. 1446(b) is "mandatory and must be strictly applied." *Id.* at 1365 (citing *Jeffcoat v. Am. Gen. Life & Accident, Ins. Co.,* 2001 U.S. Dist. LEXIS 7256, No. 01-E-325-N at *4 (M.D. Ala. May 16, 2001)(citing *Webster v. Dow United Techs Composite Prods., Inc.,* 925 F. Supp. 727, 729 (M.D. Ala. 1996)). This Court stated that

when considering the timing of a removal, a defendant cannot base the timing of its notice of removal on information allegedly obtained for the first time in a deposition when it legally possessed that information at an earlier date. *Id* (citing *Golden Apple Mgmt. Co v. Geac Computers, Inc.* 990 F. Supp. 1364, 1368 (M.D. Ala. 1998)). As found in *Clingan,* Defendant Monsanto's removal was untimely and this case is due to be remanded to the Circuit Court of Montgomery County, Alabama where it has been for the past year.

## II.    MONSANTO CANNOT MEET THE HIGH LEGAL STANDARD REQUIRED TO ESTABLISH FRAUDULENT JOINDER

When the defendant fails to remove in a timely manner, the court need not address the substantive arguments. If a defendant does not comply with the thirty- day removal period set forth in 1446(b), then the court does not need to address the substantive grounds for removal. See, e.g., *McHugh v. Physicians Health Plan of Greater St. Lewis, Inc., et al,* 953 F. Supp. 296, 297 (E.D. Mo. 1997) ("The Court finds that defendants did not timely remove the plaintiff's class action petition to federal court. Because the case will be remanded to the state court, this Court will not consider the substantive ERISA arguments."). *Link Telecommunications, Inc. v. Sapperstein,* 119 F. Supp. 2d 536, 541-542 (D. Md. 2000). However, Monsanto has made substantive arguments, and Plaintiff will address them.

Monsanto's sole basis for removal is the alleged existence of diversity jurisdiction based on fraudulent joinder. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity [,]" when a plaintiff pleads an illegitimate cause of action against a non-diverse defendant merely to escape federal subject matter jurisdiction. *See Triggs*, 154 F.3d at 1287. A very heavy burden, *Davis v. GMC*, 353 F.Supp.2d 1203, 1207 (M.D. Ala. 2005); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), the removing party must

establish fraudulent joinder by clear and convincing evidence. *Henderson v. Washington Ins. Co.,* 454 F.3d 1278, 1284 (11th Cir. 2006).

In *Triggs*, the Eleventh Circuit Court of Appeals discussed three contexts in which fraudulent joinder may be established: (1) when there is **no possibility** that the plaintiff can prove a cause of action against the non-diverse defendant; (2) when there is **fraud in the plaintiff's pleading of jurisdictional facts**; and (3) when a diverse defendant is joined with a non-diverse defendant with whom there is **no joint, several, or alternative liability; when the claim against the diverse defendant has no legitimate connection** to the claim against the non-diverse defendant. *See Triggs*, 154 F.3d at 1288.

"When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538. The Eleventh Circuit emphasized, in *Crowe*,

> For Plaintiffs to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the **Plaintiffs need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant.** For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there **need only be a "reasonable basis for predicting that the state law might impose liability on the facts involved."**

*Id.* at 1541–42 (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981)) (emphasis added).

Stated differently, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the

federal court must find that joinder was proper and remand the case to state court." *Crowe*, 113 F.3d at 1538; *see also Naef v. Masonite Corp.*, 923 F. Supp. 1504, 1508 (S.D. Ala. 1996) (holding the defendant must prove that there is absolutely **"no possibility" that the plaintiff can establish a claim against the alleged improper party**) (emphasis added). Monsanto's fraudulent joinder argument must fail because Mowry has alleged valid claims against Harwell's—a forum Defendant—and such claims have a legitimate connection to Mowry's claims against Monsanto.

Mr. Mowry's Complaint included the following causes of action against Harwell's: product liability (count one); failure to warn (count two); negligence (count three); breach of express warranty (count four); breach of implied warranty (count five); negligent misrepresentation and/or fraud (count six); unfair & deceptive trade practices (count seven); combined & concurring (count eight); conspiracy (count nine); and wantonness (count ten).

**(a) Plaintiff has Stated Viable Claims Against Harwell Under AEMLD**

Mr. Mowry's claims against Harwell and Monsanto partly arise out of their role in designing, manufacturing, supplying, training and providing the necessary equipment to Mr. Mowry, and selling him Roundup which contained a carcinogen known to cause Non-Hodgkin's Lymphoma. The claims against these defendants are based in part on Alabama's Extended Manufacturer's Liability Doctrine (AEMLD). The AEMLD establishes a cause of action against a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, thereby constituting negligence as a matter of law.

Here, the issue is whether Mr. Mowry can bring a claim against Harwell. Harwell can be held liable under the AEMLD and other state law causes of action. To establish liability under the AEMLD, plaintiff must prove he suffered injury or damages to himself or his property by one who

sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (1) the seller was engaged in the business of selling such a product, and (2) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold. Restatement (Second) of Torts 402A; *Casrell v. Altec Industries, Inc.,* 335 So. 2d 128 (Ala. 1976); *Atkins v. American Motors Corp.,* 335 So. 2d 134 (Ala. 1976).

Under Alabama law, a seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner is exposed to liability under the AEMLD as long as there is a causal relationship between the defendant's conduct and the defective product. *Seaborn v. RJ Reynolds Tobacco Co.,* 1996 WL 943621, Civil Action No. 96-T-1540-N (M.D. Ala. 1996) (court held claims could be brought against seller/distributor of product and as such the resident defendants was not fraudulently joined – remand granted).

In order to establish fraudulent joinder, the removing defendant must establish that the plaintiff cannot bring a cause of action against the forum defendant. The issue is not the survivability of the claims but rather whether a claim in fact can exist. In a clear reading of the AEMLD, it is unquestionably clear that Harwell can face liability under the AEMLD. Their role in providing, educating, training and equipment, and selling Mr. Mowry this carcinogen product places them at risk for liability.

The Eleventh Circuit has specifically stated that if a plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are resolved in favor of returning the matter to state court. *Burns v. Windsor Insurance Co.,* 31 F. 3d 1092 (11th Cir. 1994). The burden on the defendants to prove fraudulent joinder is a heavy one and its presentation must be one that compels the conclusion that the joinder is without right and made in bad faith. *Coker v. Amoco Oil Co.,* 709 F. 2d 1433, 1440 (11th Cir. 1983). In this case, Defendant Monsanto claims that Plaintiff has

fraudulently joined Defendant Harwell as a party to merely defeat diversity. A cause of action, however, is due to be remanded to state court after removal unless fraudulent joinder is absolutely clear. *Lambert v. Mail Handlers Benefit Pan,* 886 F. Supp. 830 (M.D. Ala. 1995). All doubts of fraudulent joinder should be resolved in favor of remand. *Naef, supra; Bedford v. Connecticut Mutual Life Insurance Co.,* 916 F. Supp. 1211 (M.D. Ala. 1996). The defendant must prove that there is absolutely "no possibility" that the plaintiff can establish a claim against the alleged improper party. *Naef,* 923 F. Supp. at 1511.

Plaintiff directs the Panel's attention to the decision in *Judson v. Nissan Motor Co., Inc.* 52 F. Supp. 2d 1352 (M.D. Ala. 1999). In that case, the plaintiff alleged claims under AEMLD against the manufacturer and the dealership that sold the vehicle. *Judson,* 52 F. Supp. 2d at 1352. Defendants argued in that case that the dealership was fraudulently joined and asserted the defense of lack of causal connection. *Id.* at 1358. Defendants argued that the dealership did not alter the product, did not contribute to the alleged defect, or inspect the condition of the vehicle. *Id.* This Court held that the dealership was not fraudulently joined noting that under *Casrell* a seller may be held liable under AEMLD:   *Id.* at 1359 (quoting *Casrell,* 335 So. 2d at 132) The District Court in *Judson* found that defendants failed to prove as matter of law the affirmative defense of lack of causal connection. *Id.* at 1362; *see Clay v. Brown & Williamson Tobacco Corp., 11* F.Supp.2d 1220, 1224 (M.D. Ala. 1999) (finding that a defendant distributor may be held liable under AEMLD where retailer received superior information to the public about the products defects).

The same is true in this case. Even without depositions being taken yet in this matter, the evidence before the Court establishes that Mr. Elliott, a long-time employee and owner and consult for Harwell, as well as friend of Mr. Mowry, and other Harwell employees, had superior knowledge of the Roundup product than Mr. Mowry (a textile and art salesperson). Mr. Elliott

13

selected Roundup for Mr. Mowry's landscaping jobs, instructed him on how to mix it when, where, and how to apply it, including whether or not to use protective gear and equipment that would reduce his exposure. Mr. Elliott, on behalf of Harwell, provided Mr. Mowry separate instructions beyond those simply provided by Monsanto. Harwell does not defeat nor can it defeat Mr. Mowry's recollections of his own meetings with Mr. Elliott and other employees who worked for Harwell. Harwell did not offer an affidavit from Mr. Elliott. The simple fact is – Harwell under Alabama law may be liable for a product they marketed and sold under the AEMLD. Viewing the allegations in a light most favorable to Plaintiff, Defendant Monsanto has failed to establish as a matter of law there is no possibility that Plaintiff can prove a cause of action under AEMLD against Harwell.

Essentially Defendant Monsanto seeks an adjudication of the merits of Plaintiff's Complaint. As set forth above, the "heavy" burden on the defendant claiming fraudulently joinder to show the allegations of the complaint stated no cause of action against the resident defendant, Harwell. The plaintiff does not have the burden of establishing a colorable cause of action. *Cabalceta v. Standard Fruit Co.,* 883 F. 2d 1553, 1562 (11th Cir. 1989). The burden, however, is on the removing defendant to show that the allegations of the complaint state no possible cause of action against, in this case, Harwell. This they cannot do. Defendant Monsanto essentially seeks through their cries of fraudulent joinder an adjudication of the merits of Plaintiff's claims. It is not appropriate for the Court to delve into the merits of the Plaintiff's claims when ruling upon a motion to remand.

In *Crowe v. Coleman,* 113 F. 3d 1536 (11th Cir. 1997), the court reiterated that in a motion to remand the jurisdictional inquiry 'must not subsume substantive determination' finding that:

> Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits…When considering a motion for remand, **federal courts are not to weigh**

**the merits of a plaintiffs claim beyond determining whether it is an arguable one under state law**…If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.

*Id.* at 1538 (emphasis added).

The removing Defendant's position that Plaintiff cannot sustain a claim against Defendant Harwell based on discovery Harwell provided at the request of Monsanto is in essence a motion for summary judgment argument – an inquiry not appropriate for removal analysis and an argument that could have and should have been made within thirty days of the filing of the complaint. The decision in *Crowe* makes clear that when faced with a motion to remand the district court must not adjudicate the merits of cases that do not appear readily frivolous or fraudulent. Because Mr. Mowry's claims against Defendant Harwell are not frivolous or fraudulent, and there is a reasonable basis for predicting that state law might impose liability against it based upon the facts involved, this action is due to be remanded.

**(b) Plaintiff has Alleged Valid Claims of Negligence, Wantonness, Fraudulent Suppression, and Breach of Warranty Against Harwell**

In addition to claims under AEMLD, Plaintiff has also asserted valid claims of negligence, breach of warranty, and fraudulent suppression against Harwell. First, the absence of a direct or contractual relationship between Defendant Harwell and Plaintiff does not bar a claim of negligence *or* a breach of warranty claim. *King v. National Spa and Pool Institute, Inc.,* 570 So. 2d 612 (Ala. 1990)(case involved a claim of negligence where the Supreme Court held that those who undertake action have a duty to act with due care); *Bishop v. Faroy Sales,* 336 So. 2d 1340, 1345 (Ala. 1976) (involving breach of warranty where the Court noted that a "seller" under the Uniform Commercial Code is "a person who sells or contracts to sell goods"). Under Alabama law, claims are available against Harwell for negligence, fraudulent suppression, and breach of warranty.

15

This Court previously described a defendant's burden of demonstrating fraudulent joinder in *Bromberg v. Metropolitan Life Ins. Co.,* 50 F. Supp. 2d 1208, 1213 (M.D. Ala. 1999) as follows:

> The fact that the Plaintiffs may not ultimately prevail against the individual defendants because of insufficient causal link between the defendant's actions and the Plaintiff's injuries does not mean that the Plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a Plaintiff's claim beyond determining whether it is an arguable one under state law.

An evaluation of a removal does not allow an inquiry into the merits of plaintiff's underlying claims but rather should look to whether the Complaint states a colorable claim against the non-diverse defendant. Further, and importantly, a plaintiff does not have to have a winning case to defeat removal jurisdiction. Further, in trying to establish removal jurisdiction, a defendant cannot use as a basis for a fraudulent joinder argument a defense that is common to the diverse and nondiverse defendants. In *Mattie Wright v. Metropolitan Life Ins. Co.,* CV-99-T-1241-N, Judge Thompson addressed this issue:

> Here, the contention – the fact that the claims were so weak or even meritless reflects the right sought to join Stinson with specific intent to defeat removal jurisdiction – is undermined by what would be the additional fact that Wright brings the same weak or meritless claims against Metropolitan Life. In other words, Wright brings the same so-called weak or meritless claims against both the resident Defendant (Stinson) and a nonresident Defendant (Metropolitan Life). Thus, the fact that Wright's case against Stinson may be weak or meritless tells us nothing regarding "why" a state resident was joined as a Defendant because Wright's case against Metropolitan Life is equally as weak or meritless.

The test to determine whether this Court has proper jurisdiction is to determine whether the amount in controversy has been met and whether the Plaintiff has stated a cause of action (whether or not he will prevail) against a non-diverse defendant. A defendant is not fraudulently joined if the claim and the recovery is debatable even if the state court might dismiss the claim on summary judgment or refuse to award damages. *El Dorado Springs R-2 School District v. Moos,*

16

264 F. Supp. 814 (D.C. Mo. 1967). Defendant Monsanto has not and cannot meet this heavy burden as it is required to do.

As alleged in his Complaint, Harwell sold Plaintiff the subject product Roundup and that Harwell and Monsanto all had significantly greater knowledge of the product than did the consuming public, including Plaintiff, by virtue of the fact that these defendants worked in the agricultural industry. [Complaint, ¶51-52] Further, Mr. Mowry has alleged that Harwell engaged in its own independent acts of negligence by failing to provide adequate training, making assurances, and by failing to provide and sell Mr. Mowry appropriate equipment and protective gear that could have provided less exposure to Roundup.:

> Defendant Harwell's Green Thumb Nursery, Inc. provided Plaintiff instructions and assisted Plaintiff with the usage, handling, mixing, applying, and spreading of Roundup® and in doing so provided Plaintiff assurances of the safety of Roundup®. Defendant Harwell's Green Thumb Nursery, Inc., … did not recommend safety gear, did not provide nor sell to Plaintiff protective gear and did not provide, recommend or sale to Plaintiff applicators, sprayers or other equipment or products which would have provided less exposure to Plaintiff to glyphosate.

[Complaint, ¶34]

Harwell owed a duty to Mr. Mowry, but even when there is no duty initially, a well-recognized principle in tort law is that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for any negligence in connection with those acts. *Walden v. United States Steel Corp*., 759 F. 2d 834 (11th Cir. 1985). It is clear in this case that Harwell set out to provide Plaintiff with the services set out above, and had, and/or assumed, the duty of acting with due care in providing those services.

Furthermore, Alabama law recognizes breach of warranty claims against the sellers of defective goods. It is well established that a seller of goods can be liable under the AEMLD and for breach of warranty in Alabama. *Horton Homes, Inc. v. Brooks,* 2001 WL 1520623 (Ala. Nov.

30, 2001)(purchaser of a special order manufactured home was allowed to bring suit against both the seller and the manufacturer); *Ex parte General Motors,* 769 So. 2d 903, 912 (Ala. 2000)(buyer of a car which repeatedly stalled was allowed to bring a breach of warranty claim against the seller of the automobile); *Weaver v. Dan Jones Ford, Inc.,* 679 So. 2d 1106, 1113 (Ala. Civ. App. 1996)(implied warranty set forth in Uniform Commercial Code placed obligations on the sellers of goods. "As the seller of the truck, Dan Jones Ford may be held liable for breach of the implied warranties.").

Here, the inclusion of Defendant Harwell who sold the product Plaintiff used is a proper party to the litigation and the Plaintiff has viable claims against Harwell. Even further in this case, Harwell worked directly with Mr. Mowry and provided to him directly instructions on the product including how to mix it, use it, how it was made and for the purpose of the product. Harwell knew that Plaintiff was one of the ultimate users/consumers of the product. Plaintiff was not simply a "pick up" or "delivery" person as Mr. Mowry's Complaint and discovery responses clearly show. Therefore, Harwell was not fraudulently joined and remand is appropriate. The last-ditch effort by Monsanto to remove this case fails as the Plaintiff has set forth viable claims against Harwell.

Plaintiff also alleges valid claims of negligent misrepresentation and fraudulent suppression. In *Wright v. American General Life and Acc. Ins. Co.,* 136 F. Supp. 2d 1207 (M.D. Ala. 2001), the defendant argued that the resident agents had no knowledge of the facts allegedly suppressed. Affidavits were filed in which agents swore they had no knowledge of different rates being charged whites and African-Americans and that they had no involvement in setting rates. The Court held that for purposes of fraudulent joinder analysis, lack of knowledge had not been proven. The question before this court therefore in whether this evidence is sufficient to establish

that there is no possibility that a state court could find that a fraudulent suppression claim can be established against the individual defendants. *Id* at 1214.

Similarly, in *Bedford v. Connecticut Mutual Life Ins. Co.,* 916 F. Supp. 1211 (M.D. Ala. 1996), the plaintiff alleged that the resident agent suppressed facts upon which he relief. The company denied that the agent had such knowledge and filed his affidavit in which he denied discussing the insurance policy or representations made by others. This Court held that the affidavit of the resident insurance agent defeated the fraudulent joinder claim by creating a fact issue.

Alabama common law and Ala. Code Sections 6-5-101, 102, 103 and 104 provide causes of action for varying degrees of fraud, including claims for misrepresentation and fraudulent concealment. Alabama law recognizes that "fraud by one accompanied by damage to the party defrauded in all cases gives a right of action." See Ala. Code 6-5-100 (1975). In Alabama, a fraud action may be commenced against an agent, as well as the principal, for the agent's fraudulent acts. *Standard Oil Co. v. Gunn,* 176 So. 332 (Ala. 1937). Mr. Mowry sets out facts in his Complaint and interrogatory responses which would constitute fraud under Alabama law pursuant to Alabama statutes and common law theories.

The resolution of the issues raised by Defendant Monsanto in its Notice of Removal requires a merit-based analysis of issues something not permitted in determining removal jurisdiction. Defendant Monsanto has failed to establish that there is no possibility that the Mr. Mowry has stated a claim in his Complaint. In determining whether Defendant Monsanto met its burden of persuasion on the issue of fraudulent joinder, this Court must resolve all uncertainties in favor of the Plaintiff. *Coker,* 709 F. 2d at 1440-41. *See also Cahalceta v. Standard Fruit Co.,* 883 F. 2d 1553, 1561 (11th Cir. 1989); *Gaunt v. United Ins. Co. of America,* 853 F. Supp. 1382 (M.D. Ala. 1994). Remand is warranted here.

Plaintiff has well-recognized causes of action against Harwell under AEMLD, among other state law claims.  A seller can be held liable for claims related to a product it sold. It is without question Plaintiff can maintain such a cause of action (and all the others as well) and the inclusion of Harwell cannot be considered fraudulent joinder. Accordingly, the citizenship of the non-diverse defendant cannot be ignored. Plaintiff's Motion to Remand is due to be granted.

<u>**CONCLUSION**</u>

First, Monsanto's removal was untimely and not its effort to justify the untimeliness fails. Monsanto's removal comes at nearly the one-year anniversary of the filing of the Complaint. The "other paper" it utilizes to justify its late removal was not provided to Monsanto by the Plaintiff as is required. Consequently, the United States District Court for the Middle District of Alabama does not have jurisdiction in this case, and transfer to the Multidistrict Litigation is improper. Second, the removal also fails because Monsanto cannot meet its hefty burden of proof to show Harwell was fraudulently joined. Monsanto cannot show that Plaintiff cannot bring a cause of action against Harwell. As such, the case is due to be remanded. In addition, a transfer is no longer required as all common issues have been resolved and a phased transfer of cases has already been scheduled by the transferee court.

Based upon the foregoing, Plaintiff respectfully requests the Judicial Panel on Multidistrict Litigation vacate CTO- 202 and remand this matter to The Circuit Court of Montgomery County, Alabama, or allow the U.S. District Court for the Middle District of Alabama to rule upon Plaintiff's Motion to Remand.

DATED: May 1, 2020

Respectfully submitted,

/s/John E. Tomlinson
John E. Tomlinson (TOM014)

Jere L. Beasley (BEA020)
Rhon E. Jones (JON093)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Fax: (334) 954-7555
john.tomlinson@beasleyallen.com
jere.beasley@beasleyallen.com
rhon.jones@beasleyallen.com

OF COUNSEL:

Jamie A. Johnston (JOH164)
Jamie A. Johnston, P.C.
509 Cloverdale Road
Suite 101
Montgomery, Alabama 36106
Telephone:  334.202.9228
Facsimile:   334.265.8789
jamie@jjohnstonpc.com

*Attorneys for Plaintiff Phillip Mowry*