BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

_____

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION                                      MDL No. 2741

_____

**PLAINTIFF LOEFFLER'S BRIEF IN RESPONSE TO MONSANTO COMPANY'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER**

Monsanto seeks to improperly narrow the scope of the MDL by arguing that a diagnosable (and actually diagnosed) *precursor* of blood cancer should not be included in an MDL dealing with blood cancer. Monsanto admits that multiple myeloma is a proper diagnosis for inclusion in the MDL, yet arbitrarily draws the line to exclude the precursors of multiple myeloma—despite these stages being medically defined, recognized, and (in this case) diagnosed. If multiple myeloma diagnoses are properly admitted to the MDL, then smoldering myeloma should also be admitted, as both involve the same type of cellular damage and only differ in scale. Thus, while there may be a question of the *degree* of damage that Roundup caused to Ms. Loeffler, that is a topic that will be settled upon the remand of Ms. Loeffler's case—not at the outset, and not when it frustrates the purpose of the MDL. Furthermore, because smoldering myeloma is a closely related precursor to myeloma, this case should be included in the MDL because any discovery on this topic needlessly replicates the discovery in the MDL.

I.      **Smoldering Myeloma and Roundup's Connection to Myeloma**

Roundup causes carcinogenesis in the body's B cells, which is the cause of myeloma *and* myeloma's precursor, smoldering myeloma. Thus, to understand why smoldering myeloma should be included in this MDL, it is important to note the following three concepts: 1. the

definition of myeloma; 2. Roundup's connection to myeloma; and 3. the definition of smoldering myeloma. These concepts are discussed in turn.

Myeloma is defined as:

> [A] cancer that affects B cells, the immune cells responsible for the production of antibodies. Normal B cells develop in bone marrow, where myeloma grows. Multiple myeloma arises when the cancer cells travel through the body and form tumors in several bones. Affected bones may become brittle as the malignant cells proliferate and alter the chemical equilibrium in the marrow.[1]

As this Panel knows, there is a variety of evidence connecting Roundup to multiple myeloma. A 2005 study suggested an association between glyphosate exposure and multiple myeloma.[2] Epidemiological studies also support associations between glyphosate and multiple myeloma.[3][4]

Exposure to glyphosate can cause multiple myeloma because it affects B cell function. A recent toxicological study conducted by a team of scientists found multiple myeloma to have a positive and significant association with glyphosate exposure.[5] Specifically, glyphosate exposure was found to implicate a mechanism underlying the B cell-specificity of glyphosate-induced

---

[1] *Multiple Myeloma*, Cancer Quest, https://www.cancerquest.org/patients/cancer-type/multiple-myeloma.

[2] Anneclaire J. De Roos et. al., *Cancer Incidence Among Glyphosate-Exposed Pesticide Applicators in Agricultural Health Study*, Environmental Health Perspectives (Jan. 1, 2005), https://ehp.niehs.nih.gov/doi/full/10.1289/ehp.7340.

[3] L. Orsi et.al., *Occupational Exposure to Pesticides and Lymphoid Neoplasms Among Men: Results of French Case-Control Study*, Occupational and Environmental Medicine, https://oem.bmj.com/content/66/5/291.

[4] Linda Kachuri et al., *Multiple Pesticide Exposures and the Risk of Multiple Myeloma in Canadian Men*, International Journal of Cancer, https://onlinelibrary.wiley.com/doi/full/10.1002/ijc.28191.

[5] Lei Wang et al., *Glyphosate Induces Benign Monoclonal Gammopathy and Promotes Multiple Myeloma Progression in Mice*, Journal of Hematology and Oncology, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6612199/.

8103141v1/29575-0001

carcinogenesis in mice.[6] The study supported that glyphosate induces monoclonal gammopathy of undetermined significance ("MGUS") in mice and promotes disease progression to multiple myeloma.[7] The study uncovered a B cell-specific mutational mechanism for glyphosate exposure that increases multiple myeloma risk.[8]

MGUS, like smoldering myeloma, is a precursor condition to multiple myeloma. "A hallmark of [multiple myeloma] is that virtually all [multiple myeloma] cases are preceded by monoclonal gammopathy of undetermined significance."[9] Smoldering myeloma is a more advanced phase of MGUS; it is generally the phase between MGUS and multiple myeloma.[10] Thus, Roundup, due to its carcinogenic effect on B cells, can cause each of these diseases, which differ in severity. Nonetheless, those diagnosed with MGUS and smoldering myeloma are much more likely to develop multiple myeloma.[11]

## II.      Including smoldering myeloma cases preserves the purpose of the MDL.

Ms. Loeffler's case should be transferred to the MDL because it shares a common factual core with the cases already in the MDL. The MDL is designed to serve the convenience of the parties and promote the just and efficient conduct of the litigation. *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 787 F. Supp. 2d 1358, 1359–60 (U.S. Jud. Pan. Mult. Lit. 2011). The goals of centralization are to "eliminate duplicative discovery, prevent

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Dr. Daniel J. Bell and Dr. Hamish Smith et al., *Smoldering Multiple Myeloma*, Radiopaedia, https://radiopaedia.org/articles/smouldering-multiple-myeloma?lang=us; S. Vincent Rajkumar et al., *Smoldering Multiple Myeloma*, Journal of the American Society of Hematology, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4432003/.
[11] Rajkumar, *supra* note 10.

8103141v1/29575-0001

inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel, and the judiciary." *Id.* Importantly, transfer to the MDL:

> [D]oes not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not significant where the actions arise from a common factual core.

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353–54 (U.S. Jud. Pan. Mult. Lit. 2019). The benefits of transferring a case to the MDL includes making sure that common witnesses are not subjected to duplicative discovery demands. *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (U.S. Jud. Pan. Mult. Lit. 2014).

This Panel has already concluded that this MDL may properly admit "other hematopoietic cancers, including lymphocytic lymphoma/chronic lymphocytic leukemia, B-cell lymphoma, and multiple myeloma." *See* Transfer Order, In re Roundup Prods. Liab. Litig,, MDL No. 2741, at 1 (J.P.M.L. Dec. 6, 2018), ECF No. 757. Specifically, in ECF 757, the Panel was considering if a multiple myeloma case and an acute lymphocytic leukemia case should be transferred to the MDL. *Id.* The Panel concluded that the cases should be transferred and reasoned that, if the actions were not transferred, "the transferee court still would have to address the question of which blood cancers, if any, may be caused by exposure to Monsanto's products." *Id.* The Panel further reasoned that the cases should be transferred because the complaints "share numerous factual issues with the cases already in the MDL" and noted that not transferring the cases would likely result in the duplication of pretrial proceedings. *Id.*

The same holds true here. Smoldering myeloma is a stage of developing blood cancer, and is more properly in the MDL than any of the cases cited by Monsanto in their brief (testicular cancer, muscular cancers, etc.). The mutation in B cells is central to MGUS, smoldering

myeloma, multiple myeloma, and other hematopoietic cancers like B-cell lymphoma. Discovery in Ms. Loeffler's case will replicate what is being done in the MDL because it will explore Roundup's potential to cause blood cancers—the very topic of this MDL.

If Ms. Loeffler's case is not transferred, then the Arizona District Court will have to address the question of which blood cancers may be caused by exposure to Roundup— much like the result that the Panel explicitly avoided in ECF 757. This is duplicative of the work being done in the MDL, and it would better conserve resources and provide more consistent pretrial rulings if Ms. Loeffler's case was transferred to the MDL. If the transfer is denied, Ms. Loeffler will need to retake the depositions of each of Monsanto's witnesses who can speak to Roundup's capability to cause blood cancers—needlessly duplicating work for both parties and the judicial system. There will be no meaningful difference in any of the discovery that will need to be taken in Ms. Loeffler's case versus what has already occurred in the MDL. This is a major indicator that Ms. Loeffler's case should be transferred to the MDL.

As noted above by this Panel in *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, complete identity of common factual issues is not required for transfer, and the presence of additional facts are not significant as opposed to a common factual core. Here, there is a common factual core, with the additional fact that Ms. Loeffler has a medically recognized precursor to multiple myeloma. This small factual difference is easily resolved on remand because it is a question of scale and severity of damages—i.e., issues that are not an impediment to transfer. *See* Transfer Order, In re Roundup Prods. Liab. Litig., MDL No. 2741, at 2 (J.P.M.L. Oct. 3, 2016), ECF No. 57 ("In any event, almost all personal injury litigation involves plaintiff-

specific questions of causation and damages. Those differences are not an impediment to centralization when common questions of fact are multiple and complex, as they are here.")

### III.     Conclusion

Ms. Loeffler's case should be transferred to the MDL because doing so would preserve the entire purpose of the MDL. The discovery in Ms. Loeffler's case will be completely duplicative of the discovery in the MDL and there is no reason to require such duplication. The only difference between Ms. Loeffler's case and other blood cancer cases being openly admitted to the MDL is the scale of Ms. Loeffler's disease progression. That lone difference is easily resolved on remand and Ms. Loeffler's case should be transferred.

Dated this 31st day of July 2020.

*Respectfully Submitted,*

　　/s/ Robert W. Boatman
Robert W. Boatman
Daniel Z. Kolomitz
GALLAGHER & KENNEDY
2575 E. Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 530-8340
Facsimile: (602) 530-8500
rwb@gknet.com
danny.kolomitz@gknet.com
**Counsel for Plaintiff Lauren Loeffler**