JURYDEMAND

Query　　Reports　　Utilities　　Help　　Log Out

# U.S. District Court
# United States District Court for the Western District of Washington (Tacoma)
# CIVIL DOCKET FOR CASE #: 3:20-cv-05864

Kooi v. Monsanto Company

Assigned to:

Case in other court: Thurston County Superior Court, 20-00002-01837-34

Cause: 28:1332 Diversity

Date Filed: 08/26/2020
Jury Demand: Defendant
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Joslyn Ethel Kooi**
*individually an as personal representative of Douglas Kooi*

represented by **Daniel Foster Johnson**
BRESKIN JOHNSON & TOWNSEND PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
206-652-8660
Fax: 206-652-8290
Email: djohnson@bjtlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**
*a corporation*

represented by **Jennifer Campbell**
SCHWABE WILLIAMSON & WYATT (SEA)
1420 5TH AVE
STE 3400
SEATTLE, WA 98101-2339
206-622-1711
Email: jcampbell@schwabe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/26/2020 | 1 | NOTICE OF REMOVAL from Thurston County Superior Court, case number 20-2-01837-34; (Receipt # AWAWDC-6556373), filed by Monsanto Company. (Attachments: # 1 Civil Cover Sheet, # 2 Complaint)(Campbell, Jennifer) (Entered: 08/26/2020) |
| 08/26/2020 | 2 | CERTIFICATE OF SERVICE by Defendant Monsanto Company re 1 Notice of Removal (Campbell, Jennifer) (Entered: 08/26/2020) |
| 08/26/2020 | 3 | VERIFICATION OF STATE COURT RECORDS re 1 Notice of Removal by Defendant Monsanto Company (Campbell, Jennifer) (Entered: 08/26/2020) |

| 08/26/2020 | 4 | CORPORATE DISCLOSURE STATEMENT identifying Corporate Parent Bayer AG for Monsanto Company. Filed pursuant to Fed.R.Civ.P 7.1. Filed by Monsanto Company (Campbell, Jennifer) (Entered: 08/26/2020) |
| 08/26/2020 | 5 | ANSWER to Complaint; with JURY DEMAND by Monsanto Company.(Campbell, Jennifer) (Entered: 08/26/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/27/2020 12:46:13 | | |
| **PACER Login:** | hllp1982 | **Client Code:** | 1417.0005 |
| **Description:** | Docket Report | **Search Criteria:** | 3:20-cv-05864 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

1

2

3

4

5

6

7

**IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF THURSTON**

| | |
|---|---|
| 8 | Cause No.:  20-2-01837-34 |
| 9 | |
| 10 | JOSLYN ETHEL KOOI, individually and as personal representative of Douglas Kooi, | COMPLAINT FOR WRONGFUL DEATH FOR: |
| 11 | Plaintiff, | 1.  NEGLIGENCE |
| 12 | | 2.  STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| 13 | v. | 3.  STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| 14 | MONSANTO COMPANY, a corporation, | 4.  VIOLATION OF THE CONSUMER PROTECTION ACT |
| 15 | Defendant. | 5.  BREACH OF IMPLIED WARRANTIES |

16        Plaintiff hereby alleges as follows:

17                                    **NATURE OF THE CASE**

18        1.      This is an action for damages suffered by Plaintiff as a direct and

19   proximate result of Defendants' negligent and wrongful conduct in connection with the

20   design, development, manufacture, testing, packaging, promoting, marketing,

21   advertising, distribution, labeling, and/or sale of the herbicide Roundup®, containing the

22   active ingredient glyphosate.

23        2.      Plaintiff maintains that Roundup® and/or glyphosate is defective,

24   dangerous to human health, unfit and unsuitable to be marketed and sold in commerce,

25   and lacked proper warnings and directions as to the dangers associated with its use.

26

COMPLAINT FOR WRONGFUL DEATH - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1      3.     The injuries alleged herein, like those striking thousands of similarly

2   situated victims across the country, were avoidable.

3                      **JURISDICTION AND VENUE**

4      4.     This Court is the proper Court, and this action is properly filed in the

5   Superior Court of the State of Washington, County of Thurston, because the acts and

6   omissions alleged herein occured, at least in part, in the County of Thurston.

7                             **PLAINTIFF**

8      5.     Plaintiff Joslyn Ethel Kooi (hereinafter "Plaintiff") is a female citizen of the

9   United States, and is the widow of Douglas Kooi, Plaintiff's decedent (hereinafter

10   "Decedent"). Plaintiff brings this Action against Defendant Monsanto Company

11   (hereinafter "Defendant") to remedy the wrongful death of Douglas Kooi as a result a

12   defective product sold by Defendant under the brand name of "Roundup."

13      6.     Plaintiff is a resident of the County of Thurston, State of Washington. At

14   all relevant times, herein, Plaintiff's decedent resided in the County of Thurston, State of

15   Washington.

16      7.     Decedent is also survived by his children, Thomas Charles Kooi, James

17   Stanley Kooi, and Katherine Claire Kooi.

18                         **DEFENDANT**

19      8.     "Roundup" refers to all formulations of Defendant's roundup products,

20   including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1,

21   Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate,

22   Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam

23   Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup

24   Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate,

25   Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed

26   Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer,

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-toUse Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation of containing the active ingredient glyphosate.

9.      Defendant MONSANTO COMPANY ("Defendant") is a Delaware corporation with a principal place of business in St. Louis, Missouri.

10.      Defendant advertises and sells goods, specifically Roundup, in Thurston County, Washington.

11.      Defendant transacted and conducted business within the State of Washington that relates to the allegations in this Complaint.

12.      Defendant derived substantial revenue from goods and products used in the State of Washington.

13.      Defendant expected or should have expected its acts to have consequences within the State of Washington.

14.      Defendant engaged in the business of designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup.

15.      Upon information and belief, Defendant purposefully availed itself of the privilege of conducting activities with the State of Washington, thus invoking the benefits and protections of its laws.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

16. Upon information and belief, Defendant did act to design, sell, advertise, manufacture and/or distribute Roundup, with full knowledge of its dangerous and defective nature.

17. Defendant is a product seller under RCW 7.72.010(1) because it is engaged in the business of selling products.

18. Defendant is a manufacturer under RCW 7.72.010(2) because it designed, developed, and produced the product at issue in this action.

## STATEMENT OF FACTS

19. At all relevant times, Defendant was in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, the commercial herbicide Roundup.

20. Defendant is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate.

21. Defendant discovered the herbicidal properties of glyphosate during the 1970s and subsequently began to design, research, manufacture, sell and distribute glyphosate based "Roundup" as a broad-spectrum herbicide.

22. Glyphosate is the active ingredient in Roundup.

23. Glyphosate is a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

24. Glyphosate is a "non-selective" herbicide, meaning it kills indiscriminately based only on whether a given organism produces a specific enzyme, 5-enolpyruvylshikimic acid-3-phosphate synthase, known as EPSP synthase.

25. Glyphosate inhibits the enzyme 5-enolpyruvylshikimic acid-3-phosphate synthase that interferes with the shikimic pathway in plants, resulting in the accumulation of shikimic acid in plant tissue and ultimately plant death.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

26.     Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots, and detectable quantities accumulate in the plant tissues.

27.     Each year, approximately 250 million pounds of glyphosate are sprayed on crops, commercial nurseries, suburban lawns, parks, and golf courses.

## DEFENDANT'S FALSE REPRESENTATIONS REGARDING THE SAFETY OF ROUNDUP

28.     In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Defendant based on its false and misleading advertising of Roundup products. Specifically, the lawsuit challenged Defendant's general representations that its spray-on glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish. Among the representations by Defendant the NYAG found deceptive and misleading about the human and environmental safety of Roundup are the following:

a)     Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences ...

b)     And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

c)     Roundup biodegrades into naturally occurring elements.

d)     Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation.

e)     This non-residual herbicide will not wash or leach in the soil. It ... stays where you apply it.

COMPLAINT FOR WRONGFUL DEATH - 5

f) You can apply Accord with "confidence because it will stay where you put it" because it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Accord into natural products.

g) Glyphosate is less toxic to rats than table salt following acute oral ingestion.

h) Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

i) You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

j) "Roundup can be used where kids and pets will play and breaks down into natural material." (This ad depicts a person with his head in the ground and a pet dog standing in an area which has been treated with Roundup.)

29. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

a) its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk.

\*\*\*

b) its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable

\*\*\*

COMPLAINT FOR WRONGFUL DEATH - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

c) its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means.

\*\*\*

d) its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics."

\*\*\*

e) glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides;

\*\*\*

f) its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

30. Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief still has not done so today.

31. In 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup. The French court affirmed an earlier judgment that Monsanto had falsely advertised its herbicide Roundup as "biodegradable" and that it "left the soil clean."

COMPLAINT FOR WRONGFUL DEATH - 7

# EVIDENCE OF CARCINOGENICITY IN ROUNDUP

32. As early as the 1980's Monsanto was aware of glyphosate's carcinogenic properties.

33. On March 4, 1985, a group of the Environmental Protection Agency's ("EPA") Toxicology Branch published a memorandum classifying glyphosate as a Category C oncogene. Category C oncogenes are possible human carcinogens with limited evidence of carcinogenicity.

34. In 1986, the EPA issued a Registration Standard for glyphosate (NTIS PB87-103214). The Registration standard required additional phytotoxicity, environmental fate, toxicology, product chemistry, and residue chemistry studies.

35. In October 1991 the EPA published a Memorandum entitled "Second Peer Review of Glyphosate." The memorandum changed glyphosate's classification to Group E (evidence of non-carcinogenicity for humans). Two peer review committee members did not concur with the conclusions of the committee and one member refused to sign.

36. In addition to the toxicity of the active molecule, many studies support the hypothesis that glyphosate formulations found in Defendant's Roundup products are more dangerous and toxic than glyphosate alone. As early as 1991 evidence existed demonstrating that glyphosate formulations were significantly more toxic than glyphosate alone.

37. In 2002, Julie Marc published a study entitled "Pesticide Roundup Provokes Cell Division Dysfunction at the Level of CDK1/Cyclin B Activation."

38. The study found that Defendant's Roundup caused delays in the cell cycles of sea urchins, while the same concentrations of glyphosate alone proved ineffective and did not alter cell cycles.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

39. In 2004, Julie Marc published a study entitled "Glyphosate-based pesticides affect cell cycle regulation." The study demonstrated a molecular link between glyphosate-based products and cell cycle dysregulation.

40. The study noted that "cell-cycle dysregulation is a hallmark of tumor cells and human cancer. Failure in the cell-cycle checkpoints leads to genomic instability and subsequent development of cancers from the initial affected cell." Further, "[s]ince cell cycle disorders such as cancer result from dysfunction of unique cell, it was of interest to evaluate the threshold dose of glyphosate affecting cells."

41. In 2005, Francisco Peixoto published a study showing that Roundup's effects on rat liver mitochondria are much more toxic and harmful than the same concentrations of glyphosate alone.

42. The Peixoto study suggested that the harmful effects of Roundup on mitochondrial bioenergetics could not be exclusively attributed to glyphosate and could be the result of other chemicals, namely the surfactant POEA, or alternatively due to the possible synergy between glyphosate and Roundup formulation products.

43. In 2009, Nora Benachour and Gilles-Eric Seralini published a study examining the effects of Roundup and glyphosate on human umbilical, embryonic, and placental cells.

44. The study used dilution levels of Roundup and glyphosate far below agricultural recommendations, corresponding with low levels of residues in food. The study concluded that supposed "inert" ingredients, and possibly POEA, change human cell permeability and amplify toxicity of glyphosate alone. The study further suggested that determinations of glyphosate toxicity should take into account the presence of adjuvants, or those chemicals used in the formulation of the complete pesticide. The study confirmed that the adjuvants in Roundup are not inert and that Roundup is always more toxic than its active ingredient glyphosate.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

45.     The results of these studies were confirmed in recently published peer-reviewed studies and were at all times available and/or known to Defendant.

46. Defendant knew or should have known that Roundup is more toxic than glyphosate alone and that safety studies on Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to determine whether Defendant's products endangered its customers, including Decedent.

47. Defendant knew or should have known that tests limited to Roundup's active ingredient glyphosate were insufficient to prove the safety of Roundup.

48. Defendant failed to appropriately and adequately test Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Decedent from Roundup.

49. Rather than performing appropriate tests, Defendant relied upon flawed industry-supported studies designed to protect Defendant's economic interests rather than Decedent and the consuming public.

50. Despite its knowledge that Roundup was considerably more dangerous than glyphosate alone, Defendant continued to promote Roundup as safe.

**IARC CLASSIFICATION OF GLYPHOSATE**

51.     The International Agency for Research on Cancer ("IARC") is the specialized intergovernmental cancer agency the World Health Organization ("WHO") of the United Nations tasked with conducting and coordinating research into the causes of cancer.

52. An IARC Advisory Group to Recommend Priorities for IARC Monographs during 2015–2019 met in April 2014. Though nominations for the review were solicited, a substance must meet two criteria to be eligible for review by the IARC Monographs: there must already be some evidence of carcinogenicity of the substance, and there must be evidence that humans are exposed to the substance.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

53. IARC set glyphosate for review in 2015-2016. IARC uses five criteria for determining priority in reviewing chemicals. The substance must have a potential for direct impact on public health; scientific literature to support suspicion of carcinogenicity; evidence of significant human exposure; high public interest and/or potential to bring clarity to a controversial area and/or reduce public anxiety or concern; related agents similar to one given high priority by the above considerations. Data reviewed is sourced preferably from publicly accessible, peer-reviewed data.

54. On March 24, 2015, after its cumulative review of human, animal, and DNA studies for more than one (1) year, many of which have been in Defendants' possession since as early as 1985, the IARC's working group published its conclusion that the glyphosate contained in Defendants' Roundup herbicide, is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

55. The IARC's full Monograph was published on July 29, 2015 and established glyphosate as a class 2A probable carcinogen to humans. According to the authors glyphosate demonstrated sufficient mechanistic evidence (genotoxicity and oxidative stress) to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.

56. The IARC Working Group found an increased risk between exposure to glyphosate and non-Hodgkin's lymphoma ("NHL") and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

57. The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

### EARLIER EVIDEDENCE OF GLYPHOSATE'S DANGER

58.     Despite the new classification by the IARC, Defendant has had ample evidence of glyphosate and Roundup's genotoxic properties for decades.

COMPLAINT FOR WRONGFUL DEATH - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

59. Genotoxicity refers to chemical agents that are capable of damaging the DNA within a cell through genetic mutations, which is a process that is believed to lead to cancer.

60. In 1997, Chris Clements published "Genotoxicity of select herbicides in Rana catesbeiana tadpoles using the alkaline single-cell gel DNA electrophoresis (comet) assay."

61. The study found that tadpoles exposed to Roundup showed significant DNA damage when compared with unexposed control animals.

62. Both human and animal studies have shown that glyphosate and glyphosate-based formulations such as Roundup can induce oxidative stress.

63. Oxidative stress and associated chronic inflammation are believed to be involved in carcinogenesis.

64. The IARC Monograph notes that "[s]trong evidence exists that glyphosate, AMPA and glyphosate-based formulations can induce oxidative stress."

65. In 2006 César Paz-y-Miño published a study examining DNA damage in human subjects exposed to glyphosate.

66. The study produced evidence of chromosomal damage in blood cells showing significantly greater damage after exposure to glyphosate than before in the same individuals, suggesting that the glyphosate formulation used during aerial spraying had a genotoxic effect on exposed individuals.

67. The IARC Monograph reflects the volume of evidence of glyphosate pesticides' genotoxicity noting "[t]he evidence for genotoxicity caused by glyphosate-based formulations is strong."

68. Despite knowledge to the contrary, Defendant maintains that there is no evidence that Roundup is genotoxic, that regulatory authorities and independent experts

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  are in agreement that Roundup is not genotoxic, and that there is no evidence that

2  Roundup is genotoxic.

3       69. In addition to glyphosate and Roundup's genotoxic properties, Defendant has

4  long been aware of glyphosate's carcinogenic properties.

5       70. Glyphosate and Roundup in particular have long been associated with

6  carcinogenicity and the development of numerous forms of cancer, including, but not

7  limited to, non-Hodgkin's lymphoma, Hodgkin's lymphoma, multiple myeloma, and soft

8  tissue sarcoma.

9       71. Defendant has known of this association since the early to mid-1980s and

10  numerous human and animal studies have evidenced the carcinogenicity of glyphosate

11  and/or Roundup.

12       72. In 1985 the EPA studied the effects of glyphosate in mice finding a dose

13  related response in male mice linked to renal tubal adenomas, a rare tumor. The study

14  concluded the glyphosate was oncogenic.

15       73. In 2003 Lennart Hardell and Mikael Eriksson published the results of two

16  case controlled studies on pesticides as a risk factor for NHL and hairy cell leukemia.

17       74. The study concluded that glyphosate had the most significant relationship to

18  NHL among all herbicides studies with an increased odds ratio of 3.11.

19       75. In 2003 AJ De Roos published a study examining the pooled data of mid-

20  western farmers, examining pesticides and herbicides as risk factors for NHL.

21       76. The study, which controlled for potential confounders, found a relationship

22  between increased NHL incidence and glyphosate.

23       77. In 2008 Mikael Eriksson published a study a population based case-control

24  study of exposure to various pesticides as a risk factor for NHL.

25       78. This strengthened previous associations between glyphosate and NHL.

26

COMPLAINT FOR WRONGFUL DEATH - 13

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

79. In spite of this knowledge, Defendant continued to issue broad and sweeping statements suggesting that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

80. Upon information and belief, these statements and representations have been made with the intent of inducing Decedent, the agricultural community, and the public at large to purchase, and increase the use of, Defendant's Roundup for Defendant's pecuniary gain, and in fact did induce Decedent to use Roundup.

81. Defendant made these statements with complete disregard and reckless indifference to the safety of Decedent and the general public.

82. Notwithstanding Defendant's representations, scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of many cancers, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcoma.

83. Defendant knew or should have known that glyphosate is associated with an increased risk of developing cancer, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcomas.

84. Defendant failed to appropriately and adequately inform and warn Decedent of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring and/or medications.

85. Despite the IARC's classification of glyphosate as a class 2A probable carcinogen, Defendant continues to maintain that glyphosate and/or Roundup is safe, non-carcinogenic, non-genotoxic, and falsely warrants to users and the general public

COMPLAINT FOR WRONGFUL DEATH - 14

that independent experts and regulatory agencies agree that there is no evidence of carcinogenicity or genotoxicity in glyphosate and Roundup.

86. Defendant has claimed and continues to claim that Roundup is safe, non-carcinogenic, and non-genotoxic.

87. Monsanto claims on its website that "[r]egulatory authorities and independent experts around the world have reviewed numerous long-term/carcinogenicity and genotoxicity studies and agree that there is no evidence that glyphosate, the active ingredient in Roundup brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic".

88. Ironically, the primary source for this statement is a 1986 report by the WHO, the same organization that now considers glyphosate to be a probable carcinogen.

89. Glyphosate, and Defendant's Roundup products in particular, have long been associated with serious side effects and many regulatory agencies around the globe have banned or are currently banning the use of glyphosate herbicide products.

90. Defendant's statements proclaiming the safety of Roundup and disregarding its dangers misled Decedent.

91. Despite Defendant's knowledge that Roundup was associated with an elevated risk of developing cancer, Defendant's promotional campaigns focused on Roundup's purported "safety profile."

92. Defendant's failure to adequately warn Decedent resulted in (1) Decedent using and being exposed to glyphosate instead of using another acceptable and safe method of controlling unwanted weeds and pests; and (2) scientists and physicians failing to warn and instruct consumers about the risk of cancer, including NHL, and other injuries associated with Roundup.

COMPLAINT FOR WRONGFUL DEATH - 15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

93. Defendant failed to seek modification of the labeling of Roundup to include relevant information regarding the risks and dangers associated with Roundup exposure.

94. The failure of Defendant to appropriately warn and inform the EPA has resulted in inadequate warnings in safety information presented directly to users and consumers.

95. The failure of Defendant to appropriately warn and inform the EPA has resulted in the absence of warning or caution statements that are adequate to protect health and the environment.

96. The failure of Defendant to appropriately warn and inform the EPA has resulted in the directions for use that are not adequate to protect health and the environment.

97. By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages as a result of Decedent's use of, and exposure to, Roundup which caused in causing Decedent to suffer from cancer, specifically NHL, and Decedent suffered severe and personal injuries, physical pain and mental anguish, including diminished enjoyment of life, and ultimately, death.

98. By reason of the foregoing, Decedent was severely and permanently injured, and ultimately suffered death.

99. By reason of the foregoing acts and omissions, Plaintiff has endured and, in some categories continues to suffer, emotional and mental anguish, medical expenses, and other economic and non-economic damages, as a result of the actions and inactions of the Defendant.

## DECEDENT'S EXPOSURE TO ROUNDUP

100.    Decedent used Roundup beginning in the 1980's to control weeds on his properties.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1     101. For many years, Decedent sprayed Roundup on a regular basis. Decedent
2   followed all safety and precautionary warnings during the course of use.

3     102. Decedent was subsequently diagnosed with Non-Hodgkin Lymphoma, and
4   passed away on March 23, 2006.

5     103. As a result of Decedent injuries and death, Plaintiff has incurred significant
6   economic and non-economic damages.

7   **EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS**

8     104.   Plaintiff incorporates by reference all prior paragraphs of this Complaint as
9   if fully set forth herein.

10     105. The running of any statute of limitations has been tolled by reason of
11  Defendant's fraudulent concealment. Defendant, through affirmative misrepresentations
12  and omissions, actively concealed from Decedent and Plaintiff the true risks associated
13  with Roundup and glyphosate. Indeed, Defendant continues to represent to the public
14  that "Scientists are in agreement that there is no evidence glyphosate causes cancer."

15     106. As a result of Defendant's actions, Decedent and Plaintiff were unaware,
16  and could not reasonably know or have learned through reasonable diligence that
17  Roundup and/or glyphosate contact, exposed Decedent to the risks alleged herein and
18  that those risks were the direct and proximate result of Defendant's acts and omissions.

19     107. Furthermore, Defendant is estopped from relying on any statute of
20  limitations because of its fraudulent concealment of the true character, quality and
21  nature of Roundup. Defendant was under a duty to disclose the true character, quality,
22  and nature of Roundup because this was non-public information over which Defendant
23  had and continues to have exclusive control, and because Defendant knew that this
24  information was not available to Decedent, Plaintiff or to distributors of Roundup. In
25  addition, Defendant is estopped from relying on any statute of limitations because of its
26  intentional concealment of these facts.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1     108. Plaintiff had no knowledge that Defendant was engaged in the wrongdoing

2   alleged herein. Because of the fraudulent acts of concealment of wrongdoing by

3   Defendant, Plaintiff could not have reasonably discovered the wrongdoing at any time

4   prior. Also, the economics of this fraud should be considered. Defendant had the ability

5   to and did spend enormous amounts of money in furtherance of its purpose of

6   marketing, promoting and/or distributing a profitable herbicide, notwithstanding the

7   known or reasonably known risks. Decedent, Plaintiff and medical professionals could

8   not have afforded and could not have possibly conducted studies to determine the

9   nature, extent, and identity of related health risks, and were forced to rely on only the

10   Defendant's representations. Accordingly, Defendant is precluded by the discovery rule

11   and/or the doctrine of fraudulent concealment from relying upon any statute of

12   limitations.

13                              **FIRST CAUSE OF ACTION**

14                                  **(NEGLIGENCE)**

15     109.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of

16   this Complaint contained in each of the foregoing paragraphs inclusive, with the same

17   force and effect as if more fully set forth herein.

18     110. Defendant had a duty to exercise reasonable care in the designing,

19   researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale,

20   and/or distribution of Roundup into the stream of commerce, including a duty to assure

21   that the product would not cause users to suffer unreasonable, dangerous side effects.

22     111. Defendant failed to exercise ordinary care in the designing, researching,

23   testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing,

24   quality assurance, quality control, and/or distribution of Roundup into interstate

25   commerce in that Defendant knew or should have known that using Roundup created a

26   risk of death, and of unreasonable, dangerous side effects, including, but not limited to,

COMPLAINT FOR WRONGFUL DEATH - 18

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  the development of NHL, as well as other severe and personal injuries which are

2  permanent and lasting in nature, physical pain and mental anguish, including diminished

3  enjoyment of life, as well as need for medical treatment, monitoring, and/or medications.

4      112. The negligence by the Defendant, its agents, servants, and/or employees,

5  included but was not limited to the following acts and/or omissions:

6      a.    Manufacturing, producing, promoting, formulating, creating, and/or

7          designing Roundup without thoroughly testing it;

8      b.    Failing to test Roundup and/or failing to adequately, sufficiently, and

9          properly test Roundup;

10      c.    Not conducting sufficient testing programs to determine whether or not

11          Roundup was safe for use; in that Defendant herein knew or should have

12          known that Roundup was unsafe and unfit for use by reason of the

13          dangers to its users;

14      d.    Not conducting sufficient testing programs and studies to determine

15          Roundup's carcinogenic properties even after Defendant had knowledge

16          that Roundup is, was, or could be carcinogenic;

17      e.    Failing to conduct sufficient testing programs to determine the safety of

18          "inert" ingredients and/or adjuvants contained within Roundup, and the

19          propensity of these ingredients to render Roundup toxic, increase the

20          toxicity of Roundup, whether these ingredients are carcinogenic, magnify

21          the carcinogenic properties of Roundup, and whether or not "inert"

22          ingredients and/or adjuvants were safe for use;

23      f.    Negligently failing to adequately and correctly warn the Decedent, the

24          public, the medical and agricultural professions, and the EPA of the

25          dangers of Roundup;

26

COMPLAINT FOR WRONGFUL DEATH - 19

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

g.  Negligently failing to petition the EPA to strengthen the warnings associated with Roundup;

h.  Failing to provide adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

i.  Negligently marketing, advertising, and recommending the use of Roundup without sufficient knowledge as to its dangerous propensities;

j.  Negligently representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

k.  Negligently representing that Roundup had equivalent safety and efficacy as other forms of herbicides;

l.  Negligently designing Roundup in a manner, which was dangerous to its users;

m.  Negligently manufacturing Roundup in a manner, which was dangerous to its users;

n.  Negligently producing Roundup in a manner, which was dangerous to its users;

o.  Negligently formulating Roundup in a manner, which was dangerous to its users;

p.  Concealing information from Decedent while knowing that Roundup was unsafe, dangerous, and/or non-conforming with EPA regulations;

q.  Improperly concealing and/or misrepresenting information from Decedent, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Roundup compared to other forms of herbicides; and

COMPLAINT FOR WRONGFUL DEATH - 20

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1      r.     Negligently selling Roundup with a false and misleading label.

2      113. Defendant under-reported, underestimated, and downplayed the serious

3 dangers of Roundup.

4      114. Defendant negligently and deceptively compared the safety risks and/or

5 dangers of Roundup with common everyday foods such as table salt, and other

6 forms of herbicides.

7      115. Defendant was negligent and/or violated Washington law in the

8 designing, researching, supplying, manufacturing, promoting, packaging,

9 distributing, testing, advertising, warning, marketing, and selling of Roundup in that

10 it:

11      a.     Failed to use ordinary care in designing and manufacturing Roundup

12              so as to avoid the aforementioned risks to individuals when Roundup

13              was used as an herbicide;

14      b.     Failed to accompany its product with proper and/or accurate warnings

15              regarding all possible adverse side effects associated with the use of

16              Roundup;

17      c.     Failed to accompany its product with proper warnings regarding all

18              possible adverse side effects concerning the failure and/or malfunction

19              of Roundup;

20      d.     Failed to accompany its product with accurate warnings regarding the

21              risks of all possible adverse side effects concerning Roundup;

22      e.     Failed to warn Decedent of the severity and duration of such adverse

23              effects, as the warnings given did not accurately reflect the symptoms,

24              or severity of the side effects including, but not limited to, the

25              development of NHL;

26

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

f.     Failed to conduct adequate testing, clinical testing and post-marketing surveillance to determine the safety of Roundup;

g.     Failed to conduct adequate testing, clinical testing, and post-marketing surveillance to determine the safety of Roundup's "inert" ingredients and/or adjuvants;

h.     Negligently misrepresented the evidence of Roundup's genotoxicity and carcinogenicity;

i.     Was otherwise careless and/or negligent.

116. Despite the fact that Defendant knew or should have known that Roundup caused, or could cause, unreasonably dangerous side effects, Defendant continued and continues to market, manufacture, distribute, and/or sell Roundup to consumers, including Decedent.

117. Defendant knew or should have known that consumers such as Decedent would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care, as set forth above.

118. Defendant's violations of law and/or negligence were the proximate cause of Decedent's injuries, harm, death, and economic loss.

119. As a result of the foregoing acts and omissions, Decedent suffered from serious and dangerous side effects including, but not limited to, NHL, as well as other severe and personal injuries which were permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care. Further, Decedent suffered life-threatening NHL, and severe personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, and ultimately, death.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

## SECOND CAUSE OF ACTION

## (STRICT PRODUCTS LIABILITY – DESIGN DEFECT)

120. Plaintiff repeats, reiterates and, re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

121. At all times herein mentioned, the Defendant designed, researched, manufactured, tested, advertised, promoted, sold, distributed, and/or has acquired the Defendant who has designed, researched, tested, advertised, promoted, marketed, sold, and distributed Roundup as hereinabove described that was used by the Decedent.

122. Defendant's Roundup was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendant.

123. At those times, Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Decedent herein.

124. The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Roundup.

125. The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant was defective in design and/or formulation, in that, when it left the hands of the Defendant, it was unreasonably dangerous, unreasonably dangerous in normal use, and it was more dangerous than an ordinary consumer would expect.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

126. At all times herein mentioned, Roundup was in a defective condition and unsafe, and Defendant knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendant. In particular, Defendant's Roundup was defective in the following ways:

a. When placed in the stream of commerce, Defendant's Roundup Products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate.

b. When placed in the stream of commerce, Defendant's Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c. When placed in the stream of commerce, Defendant's Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner.

d. Defendant did not sufficiently test, investigate, or study its Roundup products.

e. Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

f. Defendant knew or should have known at the time of marketing its Roundup products that exposure to Roundup and could result in cancer and other severe illnesses and injuries.

g. Defendant did not conduct adequate post-marketing surveillance of its Roundup products.

127. Defendant knew or should have known that at all times herein mentioned its Roundup was in a defective condition, and was and is inherently dangerous and unsafe.

128. Decedent was exposed to Defendant's Roundup as described above, without knowledge of Roundup's dangerous characteristics.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    129. At the time of the Decedent's use of and exposure to Roundup, Roundup was
2  being used for the purposes and in a manner normally intended, as a broad-spectrum
3  herbicide.

4    130. Defendant with this knowledge voluntarily designed its Roundup with a
5  dangerous condition for use by the public, and in particular the Decedent.

6    131. Defendant had a duty to create a product that was not unreasonably
7  dangerous for its normal, intended use.

8    132. Defendant created a product that was and is unreasonably dangerous for its
9  normal, intended use.

10    133. Defendant marketed and promoted a product in such a manner so as to make
11  it inherently defective as the product downplayed its suspected, probable, and established
12  health risks inherent with its normal, intended use.

13    134. The Roundup designed, researched, manufactured, tested, advertised,
14  promoted, marketed, sold, and distributed by Defendant was manufactured defectively in
15  that Roundup left the hands of Defendant in a defective condition and was unreasonably
16  dangerous to its intended users.

17    135. The Roundup designed, researched, manufactured, tested, advertised,
18  promoted, marketed, sold, and distributed by Defendant reached the intended users in
19  the same defective and unreasonably dangerous condition in which the Defendant's
20  Roundup was manufactured.

21    136. Defendant designed, researched, manufactured, tested, advertised,
22  promoted, marketed, sold, and distributed a defective product, which created an
23  unreasonable risk to the health of consumers and to the Decedent in particular, and
24  Defendant is therefore strictly liable for the injuries sustained by the Decedent.

25    137. The Decedent could not, by the exercise of reasonable care, have discovered
26  Roundup's defects herein mentioned or perceived its danger.

COMPLAINT FOR WRONGFUL DEATH - 25

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

138. By reason of the foregoing, the Defendant has become strictly liable to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Roundup.

139. Defendant's defective design of Roundup amounts to willful, wanton, and/or reckless conduct by Defendant.

140. Defects in Defendant's Roundup were the cause or a substantial factor in causing Decedent's injuries and death.

141. As a result of the foregoing acts and omission, the Decedent developed NHL, and suffered severe and personal injuries, which were permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care, and ultimately, death.

## THIRD CAUSE OF ACTION

## (STRICT PRODUCTS LIABILITY – FAILURE TO WARN)

142. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

143. Defendant has engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Roundup, and through that conduct has knowingly and intentionally placed Roundup into the stream of commerce with full knowledge that it reaches consumers such as Decedent who are exposed to it through ordinary and reasonably foreseeable uses.

144. Defendant did in fact sell, distribute, supply, manufacture, and/or promote Roundup to Decedent. Additionally, Defendant expected the Roundup that they were selling, distributing, supplying, manufacturing, and/or promoting to reach – and Roundup did in fact reach – consumers, including Decedent, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1        145. At the time of manufacture, Defendant could have provided the warnings or

2   instructions regarding the full and complete risks of Roundup and glyphosate-containing

3   products because it knew or should have known of the unreasonable risks of harm

4   associated with the use of and/or exposure to such products.

5        146. At all times herein mentioned, the aforesaid product was defective and unsafe

6   in manufacture such that it was unreasonably dangerous to the user, and was so at the

7   time it was distributed by Defendants and at the time Decedent was exposed to and/or

8   ingested the product. The defective condition of Roundup was due in part to the fact that

9   it was not accompanied by proper warnings regarding its carcinogenic qualities and

10  possible side effects, including, but not limited to, developing non-Hodgkin's lymphoma

11  as a result of exposure and use.

12       147. Roundup did not contain a warning or caution statement adequate to protect

13  the health of those exposed.

14       148. Defendant's failure to include a warning or caution statement adequate to

15  protect the health of those exposed violated the laws of the State of Washington.

16       149. Defendant could have amended the label of Roundup to provide additional

17  warnings.

18       150. This defect caused serious injury and ultimately death to Decedent, who used

19  Roundup in its intended and foreseeable manner.

20       151. At all times herein mentioned, Defendant had a duty to properly design,

21  manufacture, compound, test, inspect, package, label, distribute, market, examine,

22  maintain supply, provide proper warnings, and take such steps to assure that the product

23  did not cause users to suffer from unreasonable and dangerous side effects.

24       152. Defendant labeled, distributed, and promoted the aforesaid product without

25  warning consumers that it was dangerous and unsafe for the use and purpose for which

26  it was intended.

COMPLAINT FOR WRONGFUL DEATH - 27

153. Defendant failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause the development of NHL.

154. Defendant was aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendant knew or should have known that Roundup caused serious injuries, Defendant failed to exercise reasonable care to warn of the dangerous carcinogenic properties and side effect of developing NHL from Roundup exposure, even though these side effects were known or reasonably scientifically knowable at the time of distribution. Defendant willfully and deliberately failed to avoid the consequences associated with the failure to warn, and in doing so, Defendant acted with a conscious disregard for the safety of Decedent.

155. At the time of exposure, Decedent could not have reasonably discovered any defect in Roundup prior through the exercise of reasonable care.

156. Defendant, as the manufacturer and/or distributor of the subject product, is held to the level of knowledge of an expert in the field.

157. Decedent reasonably relied upon the skill, superior knowledge, and judgment of Defendant.

158. Had Defendant properly disclosed the risks associated with Roundup, Decedent would have avoided the risk of NHL by not using Roundup.

159. The information that Defendant did provide or communicate failed to contain adequate warnings and precautions that would have enabled Decedent to utilize the product safely and with adequate protection. Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries and death associated with use of and/or exposure to Roundup and glyphosate; continued to promote the efficacy of Roundup, even after it knew or should have known

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

160. To this day, Defendant has failed to adequately warn of the true risks of injury and death associated with the use of and exposure to Roundup.

161. As a result of their inadequate warnings, Defendant's Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Decedent.

162. As a direct and proximate result of Defendant's actions as alleged herein, and in such other ways to be later shown, the subject product caused Decedent to sustain injuries, and ultimately death, as herein alleged.

**FOURTH CAUSE OF ACTION**

**(VIOLATION OF THE CONSUMER PROTECTION ACT)**

163. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

164. Defendants' advertising, promotion, and sale of Roundup was a deceptive and unfair act or practice under the Washington Consumer Protection Act, RCW 19.86.020.

165. Defendant's advertising, promotion, and sale of Roundup had the capacity to deceive a substantial portion of the public by failing to warn or notify consumers of the risk of injuries and death associated with use of and/or exposure to Roundup and glyphosate.

166. Defendant's advertising, promotion, and sale of Roundup was an unfair act or practice because it offends public policy as established by statutes or the common law or is unethical, oppressive, or unscrupulous.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

167.   Defendant's advertising, promotion, and sale of Roundup occurred in trade or commerce and affect the public interest.

168.   Defendant's advertising, promotion, and sale of Roundup caused Plaintiff and Decedent injury to business or property in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages.

### FIFTH CAUSE OF ACTION

### (BREACH OF IMPLIED WARRANTIES)

169. Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect all if more fully set forth herein.

170. At all times herein mentioned, the Defendant manufactured, distributed, compounded, recommended, merchandized, advertised, promoted, and sold Roundup and/or has recently acquired the Defendant who has manufactured, compound portrayed, distributed, recommended, merchandized, advertised, promoted, and sold Roundup, as a broad spectrum herbicide. These actions were under the ultimate control and supervision of Defendant.

171. At the time Defendant marketed, sold, and distributed Roundup for use by Plaintiff, Defendant knew of Roundup's intended use and impliedly warranted the product to be or merchantable quality and safe and fit for this use.

172. The Defendant impliedly represented and warranted to Decedent and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

173. These representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality, and defective.

COMPLAINT FOR WRONGFUL DEATH - 30

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   174. Decedent and/or the EPA did rely on said implied warranty of merchantability
2   of fitness for particular use and purpose.

3   175. Decedent reasonably relied upon the skill and judgment of Defendant as to
4   whether Roundup was of merchantable quality and safe and fit for its intended use.

5   176. Roundup was placed into the stream of commerce by the Defendant in a
6   defective, unsafe, and inherently dangerous condition, and the products' materials were
7   expected to and did reach users, handlers, and persons coming into contact with said
8   products without substantial change in the condition in which they were sold.

9   177. The Defendant breached the aforesaid implied warranties, as its herbicide
10  Roundup was not fit for its intended purposes and uses.

11  178. As a result of the foregoing acts and omissions, Decedent suffered from NHL
12  and severe and personal injuries which were permanent and lasting in nature, physical
13  pain and mental anguish, including diminished enjoyment of life, financial expenses for
14  hospitalization and medical care, including medical expenses and other economic, and
15  non-economic damages, and ultimately, death.

16  **DAMAGES**

17  179.  As a direct and proximate result of Defendant's acts and omissions
18  described above, plaintiff is entitled to the following damages, in amounts to be proven
19  at trial:

20       a.      Decedent's own medical expenses, disability, conscious pain and
21  suffering, emotional distress, loss of enjoyment of life, and death.

22       b.      The loss of companionship, services, and consortium suffered by
23  the Dededent's statutory beneficiaries under RCW 4.20.020, namely Plaintiff Joslyn
24  Kooi and her children, Thomas Charles Kooi, James Stanley Kooi, and Katherine Claire
25  Kooi.

26

COMPLAINT FOR WRONGFUL DEATH - 31

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1           c.      Damages suffered by Joslyn, Thomas, James, and Katherine Kooi

2 on account of the suffering and death of the Decedent, for the loss of love, care,

3 affection, companionship, guidance and society, of the Decedent.

4           d.      The Estate of Decedent's medical expenses, funeral expenses, the

5 loss of future earnings and other economic losses.

6           e.      All other rights and remedies arising from Decedent's injuries.

7                        **PRAYER FOR RELIEF**

8 WHEREFORE, Plaintiff demands judgment against the Defendant on each of the

9 above-referenced claims and causes of action and as follows:

10    1. Awarding compensatory damages, including, but not limited to pain, suffering,

11 emotional distress, loss of enjoyment of life, and other non-economic damages in an

12 amount to be determined at trial of this action;

13    2. Awarding compensatory damages to Plaintiff for past and future damages,

14 including, but not limited to, pain and suffering and for severe and permanent personal

15 injuries sustained by the Decedent including health care costs and economic loss;

16    3. Awarding economic damages in the form of medical expenses, out of pocket

17 expenses, lost earnings and other economic damages in an amount to be determined at

18 trial of this action;

19    4. Treble and/or exemplary damages under the Consumer Protection Act;

20    5. Pre-judgment interest at the highest rate available under the law;

21    6. Post-judgment interest at the highest rate available under the law;

22    7. Awarding Plaintiff reasonable attorneys' fees under RCW 19.86.090 and any

23 other applicable law;

24    8. Awarding Plaintiff the costs of these proceedings under RCW 19.86.090and any

25 other applicable law; and

26    9. Such other and further relief as this Court deems just and proper.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1

Dated: August 5, 2020

2

BRESKIN JOHNSON & TOWNSEND, PLLC

3

4    By:  *s/ Daniel Johnson*
         Daniel F. Johnson, WSBA #27848

5        1000 Second Avenue, Suite 3670
         Seattle, WA 98104

6        Tel: (206) 652-8660
         Fax: (206) 652-8290

7        djohnson@bjtlegal.com

8        Farzad Rastegar, (*pro hac vice pending*)
         Douglas W. Perlman, (*pro hac vice pending*)

9        RASTEGAR LAW GROUP, APC
         22760 Hawthorne Blvd., Suite 200

10       Torrance, California 90505
         Telephone: (310) 961-9600

11       Facsimile: (310) 961-9094
         *farzad@rastegarlawgroup.com*

12       *douglas@rastegarlawgroup.com*

13       *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26