# United States District Court
## District of Nevada (Las Vegas)
### CIVIL DOCKET FOR CASE #: 2:21-cv-00072-GMN-BNW

| | |
|---|---|
| Hill v. Monsanto Company<br>Assigned to: Judge Gloria M. Navarro<br>Referred to: Magistrate Judge Brenda Weksler<br>Case in other court: District Court Clark County, Nevada, A-20-826163-C<br>Cause: 28:1441 Petition for Removal- Product Liability | Date Filed: 01/14/2021<br>Jury Demand: Defendant<br>Nature of Suit: 365 Personal Inj. Prod. Liability<br>Jurisdiction: Diversity |

**Plaintiff**

**Belinda Hill**     represented by     **Steven M. Burris**
Law Offices of Steven M. Burris
2810 W. Charleston Blvd., Ste. F-58
Las Vegas, NV 89102
702-258-6238
Fax: 702-258-8280
Email: sb@steveburrislaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**     represented by     **Jay Joseph Schuttert**
Evans Fears & Schuttert LLP
6720 Via Austi Parkway
Suite 300
Las Vegas, NV 89119
702-805-0290
Fax: 702-805-0291
Email: jschuttert@efstriallaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin S Hepworth**
Evans Fears & Schuttert LLP
6720 Via Austi Parkway
Suite 300
Las Vegas, NV 89119
702-805-0290
Fax: 702-805-0291
Email: jhepworth@efstriallaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelly A. Evans**
Evans Fears & Schuttert LLP
6720 Via Austi Parkway
Suite 300

Las Vegas, NV 89119
702-805-0290
Fax: 702-805-0291
Email: kevans@efstriallaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/14/2021 | 1 | PETITION FOR REMOVAL from Eighth Judicial District Court, Case Number A-20-826163-C, (Filing fee $ 402 receipt number 0978-6330003) by Monsanto Company. (Attachments: # 1 Exhibit 1 - Summons and Complaint served upon Monsanto in the State Court Action, # 2 Civil Cover Sheet) (Schuttert, Jay) <br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must **immediately** file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 01/14/2021) |
| 01/14/2021 | 2 | CERTIFICATE of Interested Parties by Monsanto Company that identifies all parties that have an interest in the outcome of this case. Corporate Parent Bayer AG for Monsanto Company added. (Schuttert, Jay) (Entered: 01/14/2021) |
| 01/14/2021 |  | Case randomly assigned to Judge Gloria M. Navarro and Magistrate Judge Brenda Weksler. (DRS) (Entered: 01/14/2021) |
| 01/14/2021 | 3 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Gloria M. Navarro on 1/14/2021. Statement regarding removed action is due by 1/29/2021. Joint Status Report regarding removed action is due by 2/13/2021. (Copies have been distributed pursuant to the NEF - DRS) (Entered: 01/14/2021) |
| 01/14/2021 | 4 | STANDING ORDER. This case has been assigned to the Honorable Judge Gloria M. Navarro. Judge Navarro's Chambers Practices, which are posted on the U.S. District Court, District of Nevada public website, may also be accessed directly via this hyperlink www.nvd.uscourts.gov. (Copies have been distributed pursuant to the NEF - DRS) (Entered: 01/14/2021) |
| 01/14/2021 | 5 | ANSWER with Jury Demand re 1 Petition for Removal,, filed by Monsanto Company. Discovery Plan/Scheduling Order due by 2/28/2021.(Schuttert, Jay) <br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must **immediately** file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 01/14/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/15/2021 12:11:44 | | | |
| **PACER Login:** | hllp1982:2634105:4722683 | **Client Code:** | 1417.0049 |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-00072-GMN-BNW |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Electronically Filed
12/10/2020 11:31 AM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
**STEVEN M. BURRIS, ESQ.**
Nevada Bar No. 000603
sb@steveburrislaw.com
**BURRIS & THOMAS, LLC**
2810 W. Charleston Boulevard, Suite F-58
Las Vegas, Nevada 89102
(702) 258-6238 - Telephone
(702) 258-8280 - Facsimile

*Attorneys for Plaintiff*

CASE NO: A-20-826163-C
Department 23

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| BELINDA HILL,<br><br>      Plaintiff,<br><br>vs.<br><br>MONSANTO COMPANY, a foreign corporation and DOES 1 through 10, inclusive; and ROE ENTITIES 1 through 10, inclusive;<br><br>      Defendants. | CASE NO.:<br>DEPT. NO.: |

### COMPLAINT

Plaintiff BELINDA HILL, an individual, by and through her attorneys, STEVEN M. BURRIS, Esq., of the law offices of BURRIS & THOMAS, LLC, and for her causes of action against Defendants, and each of them, complains and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.  At all times relevant herein, Plaintiff BELINDA HILL is and was a resident of Clark County, Nevada.

2.  At all times relevant herein, Defendant Monsanto Company ("Monsanto"), was a Delaware Corporation with its principal place of business located in St. Louis, Missouri.

Monsanto conducts business in Nevada and is registered as a foreign corporation with the Nevada Secretary of State.

3. Monsanto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the commercial/residential herbicide commonly known as Roundup.

4. This Court has personal jurisdiction over Monsanto because Monsanto transacts business in and is a corporation doing business within Nevada. Monsanto knows that its Roundup products are sold throughout Nevada. Monsanto maintains sufficient contacts with the State of Nevada such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

5. Monsanto advertises and sells Roundup throughout Nevada and derives substantial revenue from goods and products used in Nevada. Monsanto purposefully availed itself of the privilege of conducting activities within Nevada, thus invoking the benefits and protections of its laws. This Court has subject matter jurisdiction pursuant to Nev. Const. Art. 6 § 6.

6. Venue properly lies in Clark County.

**GENERAL ALLEGATIONS**

7. Glyphosate, which is an active ingredient in Roundup, is a carcinogen. It has been identified as causing various forms of cancer, in particular Non-Hodgkin Lymphoma ("NHL").

8. Plaintiff, who used Roundup extensively over a period of years, now suffers from NHL.

9. Roundup refers to all formulations of Monsanto's Roundup products, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger1, Roundup Garden Foam, Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quick Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Ready-to-Use Extended Control Weed & Grass Killer 1 Plus

Weed Preventer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ulltra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Round Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass Killer Ready-to Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer 1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation containing the active ingredient, Glyphosate.

10. At all times relevant herein, Monsanto was the world's leading producer of glyphosate.

11. Monsanto introduced Roundup in approximately 1974 and remains today as one of the world's most widely used herbicides.

12. Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots and detectable quantities of glyphosate accumulate in the plant tissues.

13. At all times relevant herein, farmers, ranchers, consumers and landscapers routinely used Roundup unaware it was a carcinogen.

14. Monsanto represented to farmers, ranchers, consumers, landscapers, commercial wholesalers and retailers that spray-on glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds and fish.

15. Monsanto further represented that Roundup poses no risk to human health, Roundup is unlikely to be carcinogenic to humans and that Roundup can be used where children play or are present and breaks down into natural material.

16. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York Attorney General, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New Your] that represent, directly or by implication" that:

    a. its glyphosate-containing products or any component thereof are safe, non-toxic, harmless or free from risk;

    b. its glyphosate-containing products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable;

c. its glyphosate-containing products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means;

d. its glyphosate-containing products or any component thereof are :good" for the environment or are "known for their environmental characteristics;"

e. its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

17. Monsanto did not alter its advertising in the same manner in any state other than New York and, on information and belief, only recently agreed to modify its advertising.

18. The International Agency for Research on Cancer (IARC") is the specialized intergovernmental agency that the World Health Organization ("WHO") of the United Nations tasked with conducting and coordinating research into the causes of cancer.

19. An IARC Advisory Group to Recommend Priorities for IARC Monographs during 2015-2019 met in April 2014. IARC set glyphosate for review in 2015-2016.

20. On March 24, 2015 after IARC reviewed numerous studies, many of which had been in Monsanto's possession since as early as 1985, IARC's working group published its conclusion that the glyphosate contained in Monsanto's Roundup herbicide is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence (genotoxicity and oxidative stress) of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

21. IARC's full Monograph was published on July 29, 2015 and established glyphosate as a class 2A probable carcinogen to humans. According to the authors, glyphosate demonstrated sufficient mechanist evidence to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.

22. The IARC Working Group found an increased risk between exposure to glyphosate and NHL and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

23. IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

24. In addition to the new classification by IARC, Monsanto has had ample evidence of

glyphosate and Roundup's genotoxic properties for decades.

25. Genotoxicity refers to chemical agents capable of damaging the DNA within a cell through genetic mutations, which is a process that is believed to lead to cancer.

26. In 1997 Chris Clements published "Genotoxicty of select herbicides in Rana catesbeiana tadpoles using the alkaline single-cell DNA electrophoresis (comet) assay." The study found that tadpoles exposed to Roundup showed significant DNA damage when compared with unexposed control animals.

27. In 2003 Lennart Hardell and Mikael Eriksson published the results of two case controlled studies on pesticides as a risk factor for NHL and hairy cell leukemia. The study concluded that glyphosate had the most significant relationship to NHL among all herbicide studies with an increased odds ratio of 3:11.

28. In 2003, AJ De Roos published a study examining the pooled data of mid-western farmers, examining pesticides and herbicides as risk factors for NHL. The study, which controlled for potential confounders, found a relationship between increased NHL incidence and glyphosate.

29. In 2006 Cesar Paz-y-Mino published a study examining DNA damage in human subjects exposed to glyphosate. The study produced evidence of chromosomal damage in blood cells showing significantly greater damage after exposure to glyphosate than before in the same individuals, suggesting that the glyphosate formulation used during aerial spraying had a genotoxic effect on exposed individuals.

30. In 2008, Mikael Eriksson published a population based case-control study of exposure to various pesticides as a risk factor for NHL. This strengthened previous associations between glyphosate and NHL.

31. In spite of this knowledge Monsanto continued to issue broad and sweeping statement suggesting that Roundup was safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and voluminous evidence to the contrary.

32. These statements and representations have been made with intent to inducing Plaintiff and the public at large to purchase, and increase the use of Roundup for Monsanto's

1  pecuniary gain, and in fact did induce Plaintiff to use Roundup.

2      33.    Monsanto failed to appropriately and adequately inform and warn Plaintiff of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need fro medical treatment, monitoring, and/or medications.

    34.    In 2020 after using and being exposed to Roundup for years, Plaintiff developed cancer. Specifically, Plaintiff was diagnosed with Multiple Myeloma.

    35.    Plaintiff has undergone significant treatment over several years and incurred significant medical expenses.

    36.    Plaintiff was unaware of and causal link between her exposure to Roundup and cancer until October 2018 when Plaintiff was first informed of media reports wherein a suggestion was made that Roundup was not only a carcinogen, but was linked to NHL under certain circumstances. It was not until that time that Plaintiff had any reason to suspect that Roundup had caused her cancer.

    37.    By reason of the foregoing acts and omissions, including Monsanto's concealment of the risks of use and continued exposure to Roundup, which caused or was a substantial contributing factor in the cause of Plaintiff's cancer, Plaintiff has endured and continues to endure pain, emotional and mental suffering, medical expenses and other economic and non-economic damages in an amount in excess of $15,000.00.

### FIRST CAUSE OF ACTION
### (Strict Products Liability - Design Defect)

    38.    Plaintiff repeats and realleges each Paragraph above and incorporates same as if fully stated herein.

    39.    At all times relevant herein, Monsanto designed, researched, manufactured, tested, advertised, promoted, sold, and distributed Roundup that was used by Plaintiff.

40. Roundup was expected to and did reach consumers and persons coming into contact with it without substantial change in the condition in which it was produced, manufactured, sold, distributed and marketed.

41. Roundup was and is defective because it was and is dangerous to an extent beyond that which an ordinary consumer would anticipate.

42. Plaintiff was exposed to Roundup without knowledge of Roundup's dangerous characteristics.

43. At the time of Plaintiff's use of and exposure to Roundup, Roundup was being used for the purposes in a manner normally intended, as a broad-spectrum herbicide.

44. Plaintiff's use of, and exposure to, Roundup caused or was a substantial contributing factor in causing Plaintiff to suffer from cancer. Plaintiff has suffered and continues to suffer pain, emotional and mental anguish, medical expenses and other economic and non-economic damages, all of which are in excess of $15,000.00.

45. Monsanto knew or should have known about the risks posed by Roundup but, despite that knowledge, Monsanto deliberately proceeded to promote Roundup as a safe product knowing that it had a high probability of causing injury, including cancer. Monsanto's intentional actions constitute oppression and malice, both express and implied, and demonstrate a conscious disregard of the rights and safety of others, including Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Monsanto and hold it out as an example to deter others from engaging in similar actions in the future.

**SECOND CAUSE OF ACTION**
**(Strict Products Liability - Failure to Warn)**

46. Plaintiff repeats and realleges each Paragraph above and incorporates same as if fully stated herein.

47. At all times relevant herein, Monsanto designed, researched, manufactured, tested, advertised, promoted, sold and distributed Roundup as described above that was used by Plaintiff.

48. Warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products should have been prominently included with Roundup because of

the risks of harm associated with the use of and/or exposure to such products.

49. Had Plaintiff been properly warned, she would not have used Roundup or would have taken additional precautions to limit Roundup exposure.

50. Plaintiff's use of, and exposure to, Roundup caused or was a substantial contributing factor in causing Plaintiff to develop and suffer from cancer. Plaintiff has suffered and continues to suffer pain, emotional and mental anguish, medical expenses and other economic and non-economic damages, all of which are in excess of $15,000.00.

51. Monsanto knew or should have known about the risks posed by Roundup but, despite that knowledge, failed to warn consumers of the risks. Instead, Monsanto deliberately proceeded to promote Roundup as a safe product knowing that it had a high probability of causing injury, including cancer. Monsanto's intentional actions constitute oppression and malice, both express and implied, and demonstrate a conscious disregard of the rights and safety of others, including Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Monsanto and hold it out as an example to deter others from engaging in similar actions in the future.

## THIRD CAUSE OF ACTION
### (Negligence)

52. Plaintiff repeats and realleges each Paragraph above and incorporates same as if fully stated herein.

53. Monsanto, directly or indirectly, caused Roundup products to be sold, distributed, packaged, labeled, marketed, promoted and/or used by Plaintiff.

54. At all times relevant herein, Monsanto had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of Roundup products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

55. At all times relevant herein, Monsanto had a duty to exercise reasonable care in the marketing, advertisement and sale of Roundup products. Monsanto's duty of care owed to consumers, such as Plaintiff, included the duty to provide accurate, true and correct information

concerning the risks of using Roundup and appropriate, complete and accurate warnings concerning the potential adverse effects of exposure to Roundup and, in particular, its active ingredient glyphosate.

56. At all times relevant herein, Monsanto knew, or in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and specifically the carcinogenic properties of the chemical glyphosate.

57. Accordingly, Monsanto knew, or in the exercise of reasonable care, should have known that use of or exposure to Roundup products could cause or be associated with Plaintiff's injuries, and thus created a dangerous and unreasonable risk of injury to the users of Roundup products, including Plaintiff.

58. Monsanto also knew, or in the exercise of reasonable care should have known that users and consumers of Roundup were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup and glyphosate-containing products.

59. Monsanto breached its duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale and distribution of its Roundup products, in that Monsanto manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects and failed to prevent or adequately warn of these risks and injuries.

60. Despite ability and means to investigate, study and test products and to provide adequate warnings, Monsanto failed to do so. Indeed, Monsanto wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup and glyphosate.

61. Monsanto knew or should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Monsanto's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution and sale of Roundup.

62. Plaintiff did not know the nature and extent of the injures that could result from the

intended use of and/or exposure to Roundup or its active ingredient glyphosate.

63. Monsanto's negligence caused or was a substantial contributing factor in causing Plaintiff to develop and suffer from cancer. Plaintiff has suffered and continues to suffer pain, emotional and mental anguish, medical expenses and other economic and non-economic damages, all of which are in excess of $15,000.00.

64. Monsanto's intentional actions constitute oppression and malice, both express and implied, and demonstrate a conscious disregard of the rights and safety of others, including Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Monsanto and hold it out as an example to deter others from engaging in similar actions in the future.

**FOURTH CAUSE OF ACTION**
**(Breach of Implied Warranties)**

65. Plaintiff repeats and realleges each Paragraph above and incorporates same as if fully stated herein.

66. At all times relevant herein, Monsanto engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup products into the stream of commerce. These actions were under the ultimate control and supervision of Monsanto.

67. Before the time Plaintiff was exposed to the use of Roundup products, Monsanto impliedly warranted to consumers and those exposed, including Plaintiff, that Roundup products were of merchantable quality and safe and fit for the use for which they were intended - specifically as horticultural herbicides.

68. Monsanto failed to disclose that Roundup has dangerous propensities when used as intended and that the use of and/or exposure to Roundup and glyphosate-containing products carries an increased risk of developing severe injuries, including cancer.

69. Plaintiff reasonably relied upon the skill, superior knowledge and judgment of Monsanto and upon its implied warranties that Roundup products were of merchantable quality

and fit for their intended purpose or use.

70. Upon information and belief, Plaintiff was at all relevant times in privity with Monsanto

71. Plaintiff is the intended third-party beneficiary of implied warranties made by Monsanto to the purchasers of its horticultural herbicides and, as such, Plaintiff is entitled to assert this claim.

72. The Roundup products were expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by Monsanto.

73. At all times relevant herein, Monsanto was aware that consumers and user of its products, including Plaintiff, would use Roundup products as marketed by Monsanto, which is to say that Plaintiff was a foreseeable user of Roundup.

74. Monsanto intended that Roundup products were to be used in the manner in which Plaintiff was exposed to them and Monsanto impliedly warranted each product to be of merchantable quality, safe and fit for this use, despite the fact that Roundup was not adequately tested or researched.

75. In reliance upon Monsanto's implied warranty, Plaintiff used or was exposed to Roundup as instructed and labeled and in the foreseeable manner intended, recommended, promoted and marketed by Monsanto.

76. Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Roundup or glyphosate.

77. Monsanto breached its implied warranty to Plaintiff in that Roundup products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Roundup has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

78. The harms caused by Roundup products far outweighed its benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

79. As a direct and proximate cause of Monsanto's wrongful acts and omissions, Plaintiff has suffered and continues to suffer pain, emotional and mental anguish, medical expenses and other economic and non-economic damages, all of which are in excess of $15,000.00.

WHEREFORE, Plaintiff, expressly reserving the right to amend this Complaint at the time of trial of the action herein to include all items of damages not yet ascertained, demands judgment against Defendants, and each of them, as follows.

1. For general and compensatory damages against Defendants, including, but not limited to, damages for physical and emotional injury and pain in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

2. For special damages, including medical expenses, in an amount in excess of Fifteen Thousand Dollars ($15,000.00);

3. For punitive damages in an amount in excess of Fifteen Thousand Dollars ($15,000.00);

4. For an award of attorney's fees and costs;

5. For such other and further relief as this Court deems just and proper.

DATED this 10th day of December, 2020.

BURRIS & THOMAS, LLC

By: /s/ Steve M. Burris
Steven M. Burris, Esq.
Nevada Bar No. 000603
sb@steveburrislaw.com
2810 W. Charleston Boulevard, Suite F-58
Las Vegas, Nevada 89102
*Attorney for Plaintiff*