BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2741

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION

**MONSANTO COMPANY'S MOTION TO RECONSIDER TRANSFER ORDER FOR**
***NATIONAL BLACK FARMERS ASSOCIATION v. MONSANTO COMPANY***

Monsanto Company ("Monsanto") files this motion to reconsider pursuant to J.P.M.L. Rule 11.1(c) and Federal Rule of Civil Procedure 60 to respectfully ask the Panel to vacate its order dated February 4, 2021 transferring the *National Black Farmers Association* ("NBFA") action to the MDL. ECF No. 2189.

It appears that the Panel has misread the nature of the NBFA's Complaint—a misreading that forms the basis of the Panel's February 4, 2021 Transfer Order. The Panel concluded: "At its core, however, *NBFA* involves the same allegations that exposure to Roundup causes non-Hodgkin's lymphoma. *NBFA* merely seeks different relief." *Id.* at 2. But the NBFA's Complaint is not limited to non-Hodgkin's Lymphoma ("NHL") or other hematopoietic cancers. *Nat'l Black Farmers Ass'n v. Monsanto Co.*, 4:20-cv-1145-SRC (E.D. Mo. Aug. 26, 2020), ECF No. 1 (hereinafter "NBFA Compl.") at ¶ 77(f) (glyphosate "could result in cancer and other severe illnesses and injuries"). Indeed, three out of the NBFA's four claims do not mention NHL or other hematopoietic cancers *at all*, but instead allege broad, and unspecified, health effects of exposure to glyphosate. And the NBFA has expressly abandoned the one claim that does mention NHL and hematopoietic cancers.

This Panel has repeatedly held that claims based on injuries other than NHL or a similar hematopoietic cancer are not appropriate for inclusion in the MDL. ECF No. 2189 at 2 ("[W]e

1

have declined to transfer to the MDL actions in which plaintiffs allege that they suffered injuries other than non-Hodgkin's lymphoma or a similar haematopoietic cancer."). Additionally, none of the cases currently before the MDL involve organizational plaintiffs like the NBFA. Proceeding with such a case in the MDL will impose unique, and significant, legal and procedural hurdles.

In short, the NBFA action is fundamentally dissimilar to the personal-injury cases related to hematopoietic cancers currently in the MDL. Its inclusion in the MDL would add unnecessary legal, factual, and procedural complications into the already advanced, and complex, MDL action. For these reasons, and for the reasons stated further herein, Monsanto asks the Panel to vacate its February 4 order and deny transfer to the MDL.

## I. PROCEDURAL HISTORY

On October 3, 2016, this Panel created an MDL in the Northern District of California to efficiently manage the many personal injury cases around the country alleging that exposure to Monsanto's glyphosate-containing Roundup®-brand herbicides caused NHL.[1] ECF No. 57. Nearly four years later, the NBFA filed a complaint in the Eastern District of Missouri seeking a nationwide injunction to prevent Monsanto from selling Roundup® products, or require that warnings be added to their labeling, because exposure to glyphosate allegedly "could result in cancer and other severe illnesses and injuries." *See* NBFA Complaint ¶ 77(f).

The NBFA filed a "Notice of Potential Tag-Along Action" on October 29, 2020. ECF No. 2060. The very next day, the Clerk of this Panel rejected the NBFA's request for a transfer and determined that the action was "not appropriate for inclusion in this MDL." ECF No. 2062. Despite its previous denial of the first request for transfer, this Panel granted the NBFA's subsequent motion to transfer on February 4, 2021, ruling that the NBFA action "involves the same

---

[1] This Panel slightly expanded the scope of the MDL in December 2018 to include two additional hematopoietic cancers (acute lymphocytic leukemia and multiple myeloma). (ECF No. 757.)

allegations that exposure to Roundup causes non-Hodgkin's lymphoma" and that the inclusion of the NBFA action "in MDL No. 2741 is appropriate and will not undermine the efficiencies of the MDL." ECF No. 2189 at 2.

## II.  LEGAL STANDARD

"A motion for reconsideration is appropriate when the moving party believes the Court overlooked important 'matters or controlling decisions' that would have influenced the prior decision." *In re Gentiva Sec. Litig.*, 971 F. Supp. 2d 305, 332 (E.D.N.Y. 2013) (citation omitted).

## III.  ARGUMENT

This Panel should vacate its February 4, 2021 order because transfer will undermine the efficiencies of the MDL in several ways.  First, the NBFA Complaint, on its face, is not limited to NHL or other hematopoietic cancers but seeks broad relief for "cancer and other serious illnesses." Second, introducing the first nationwide organizational plaintiff into the MDL conflicts with the MDL's current, and sensible, state-by-state approach to resolving cases.  Third, the NBFA action raises a unique subject-matter jurisdiction issue as to organizational standing, which the MDL will not have to address in any of the other individual personal injury cases.  For all these reasons, the Panel should vacate its determination to transfer the case into the MDL and issue an order denying such transfer.

**A.     On its face, the NBFA action is not limited NHL or other hematopoietic cancers.**

The NBFA claims that MDL transfer is warranted because the "action stems from the exact same premise as the existing claims within the MDL—namely, that plaintiffs have been exposed to Defendant Monsanto's glyphosate-containing products and have or will develop non-Hodgkin's lymphoma or related hematopoietic cancers as a result." ECF No. 2076, at 1.  That is plainly incorrect.  The NBFA's claims are not limited to hematopoietic cancers.  Three out of the four claims the NBFA asserts do not mention NHL or other hematopoietic cancers *at all*, but allege

broad, and unspecified, health effects of exposure to glyphosate. For example, for the NBFA's first claim of strict product liability, it alleges that "[W]hen placed in the stream of commerce, Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of [unspecified] cancer *and other serious illnesses*." See NBFA Compl. ¶ 77(b) (emphasis added); *see also id.* ¶ 96 (alleging that the "products created significant risks of serious bodily harm to consumers").

Nor does the NBFA allege, for these claims, that Monsanto specifically failed to disclose the potential link between glyphosate and hematopoietic cancers. Rather, it alleges that Monsanto generally failed to provide "adequate warning and instructions" and failed to disclose "the risks associated with Roundup products." *See, e.g.*, *id.* ¶ 107. The NBFA does not allege that any of its members have suffered from NHL or other hematopoietic cancers as result of their use of Roundup®, but only states conclusory allegations that its members "have suffered and continue to suffer grave injuries." *Id.* ¶ 87.

The only claim asserted by the NBFA that could *possibly* be limited to NHL or other hematopoietic cancers is its claim for "Unlawful Practices in Trade and Commerce Under Mo. Rev. Stat. §407.020," which alleges that Monsanto failed to disclose "Non-Hodgkin's Lymphoma, Hodgkin's Lymphoma, Lymphoma, Multiple Myeloma, and/or Leukemia," though even this may be read as a non-exhaustive list. *Id.* ¶ 112. But the NBFA has *expressly abandoned* this claim. *See* Plaintiff's Response to Motion to Dismiss at 11, *Nat'l Black Farmers Ass'n v. Monsanto Co.*, 4:20-cv-1145-SRC (E.D. Mo. Aug. 26, 2020), ECF No. 28 ("At this time, NBFA has decided . . . to concede dismissal of its claim under the MMPA."). And, in any event, the NBFA's specificity as to hematopoietic cancers in one and only one claim emphasizes that its other claims encompass allegations of negative health effects beyond hematopoietic cancers.

The operative claims in the NBFA Complaint are not limited to hematopoietic cancers, and thus, transfer to the MDL at this late stage is inappropriate. *See* ECF No. 2027, at 1 ("MDL No. 2741 is sufficiently mature that transfer of actions involving new injuries is not warranted."). The Panel has previously rejected claims based on injuries that do not fall within the limited scope of the MDL's focus (*see* ECF Nos. 1322, 1368, 1674, 2027 (rejecting actions alleging testicular seminoma, adenocarcinoma, leiomyosarcoma, and smoldering myeloma)), and thus should likewise reject the transfer of the NBFA's claims, which allege no specific injury at all and clearly are not focused exclusively or even primarily on NHL. Transferring this case would force the MDL court to address whether it was foreseeable that Roundup® would cause "other serious illnesses" to the NBFA's members, a vast expansion beyond the current scope of the MDL.

**B.    The potential inclusion of an organization such as NBFA, with members in 42 states, would disrupt the MDL's efficient state-by-state case management process.**

In addition to the far broader factual scope of the NBFA's claims, the NBFA's status as a nationwide organization purporting to bring its case on behalf of members in 42 separate states undermines any efficiencies that would be gained by the transfer of this case to the MDL.

The MDL already faces a daunting task of managing the many personal injury cases before it—as of December 2, 2020, there were 3,832 plaintiffs with pending cases in the MDL. *See* Joint Case Management Statement and Litigation Plan at 1, *In re Roundup Prods. Liab. Litig.*, 3:16-md-02741-vc (N.D. Cal. filed Dec. 2, 2020), ECF No. 12163. In trying to organize these disparate cases, the MDL has arranged plaintiffs into "waves" on a state-by-state basis. *See id.* at 3–5 (designating "Wave 3" cases as cases transferred from Pennsylvania and Texas District Courts). Furthermore, counsel in the MDL have engaged in a fact-based analysis of individual claims to further organize these cases—for example, three cases were assigned to Wave 3 because, despite not being transferred from Pennsylvania or Texas courts, the plaintiffs in those cases resided in

and used Roundup® in either Pennsylvania or Texas. *Id.* at 5. And this state-by-state approach makes sense, as personal injury law significantly differs between the states.

This approach conflicts with the NBFA action, which is brought by a nationwide organization. As stated in the NBFA Complaint, "[t]he NBFA is comprised of over 100,000 members *across 42 states*." NBFA Compl. ¶ 4 (emphasis added). Not only will it be impossible to organize the NBFA action into any state-specific categories, but the NBFA action itself alleges state-based causes of actions (e.g., negligence, product liability), which will differ in application depending on the state in which its members resided, purchased, and used Roundup®. *See Carney v. Guerbet, LLC*, 2018 WL 6524003, at *7 (E.D. Mo. Dec. 12, 2018) (noting multi-factor "most significant relationship" test applied in tort case). The MDL's state-by-state process simply does not fit with a case by a nationwide organizational plaintiff alleging a variety of disparate state-law claims on behalf of over 100,000 members.

Monsanto acknowledges the Panel's conclusion in its February 4 Transfer Order that the "transferee judge has the discretion to employ separate tracks or other appropriate pretrial management techniques to address the unique issues presented by" this case. ECF No. 2189 at 3. But while creation of a new and distinct track within the MDL is certainly *possible*, that does not make tranfer the most efficient path forward. Given the significant factual differences between this case and the NHL-focused personal-injury claims, transferring this case to the MDL, only to derail it from the existing procedures, would not realize any meaningful efficiencies. Proceeding under the normal civil rules in the original forum—with coordination of discovery if and when relevant—is the better approach.

**C.      Transfer of the NBFA action will require the MDL judge to make legal determinations on organizational standing, a complex factual and legal analysis not shared by any other MDL case.**

Transfer of the NBFA action would also require the MDL court to consider whether the NBFA has organizational standing to bring the suit—an issue which has already been fully briefed before the Eastern District of Missouri and which the MDL court has not had to consider in any other case. This determination will require an individualized, factual analysis of whether the NBFA's individual members face the concrete and particularized threat of ongoing or future harm, *see ARRM v. Piper*, 367 F. Supp. 3d 944, 951 (D. Minn. 2019. Furthermore, this issue is not a tangential one that the MDL court can wait to address at a later time. Instead, standing goes to a court's subject matter jurisdiction and the MDL court therefore must address it before it takes any action on the merits. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

**D.      Given these factual and procedural obstacles, coordination of discovery will be far more efficient than transfer.**

The NBFA can obtain any discovery on issues relevant to hematopoietic cancers through coordination and shared discovery. This approach will allow the NBFA to efficiently proceed on the hematopoietic cancer-specific aspects of its claims, while not requiring the MDL court to address and resolve the NBFA's unique legal and procedural issues and much broader claims. The Panel often recommends such coordination efforts when transfer into the MDL is inefficient or impracticable. *See* ECF No. 2027 at 2 ("In particular, relevant discovery of Monsanto obtained in the MDL can be made available to plaintiff."); *see also In re Cymbalta (Duloxetine) Prods. Liab. Litig. (No. II)*, 138 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015); *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 38 F. Supp. 3d 1380, 1381 (J.P.M.L. 2014); *In re OxyElite Pro & Jack3d Prods. Liab. Litig. (No. II)*, 65 F. Supp. 3d 1412, 1413–14 (J.P.M.L. 2014) (same).

## IV.  CONCLUSION

For all these reasons, Monsanto asks this Panel to vacate its transfer order dated February 4, 2021 (ECF No. 2189) and deny the NBFA's request to transfer to the MDL.


Dated: February 18, 2021

Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth
(jhollingsworth@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street NW
Washington D.C., 20005
Phone: (202) 898-5800
Fax: (202) 682-1639

*Attorneys for Defendant*
*Monsanto Company*