JURY,MDL

# U.S. District Court
## District of South Carolina (Beaufort)
### CIVIL DOCKET FOR CASE #: 9:21-cv-01907-MDL

Reiser v. Bayer Corporation
Assigned to: Unassigned - MDL
Case in other court: Jasper County Court of Common Pleas, 2021-CP-27-00192
Cause: 28:1441 Notice of Removal-Product Liability

Date Filed: 06/23/2021
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Brenda Reiser**     represented by     **John Keith Blincow , Jr**
Blincow Griffin
126 Meeting Street
Charleston, SC 29401
843-872-6779
Email: jblincow@blincowgriffin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**     represented by     **James Andrew Bradshaw**
Gallivan White and Boyd PA
55 Beattie Place
Suite 1200
Greenville, SC 29601
864-241-7003
Fax: 864-271-7502
Email: dbradshaw@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald K Wray , II**
Gallivan White and Boyd PA
55 Beattie Place
Suite 1200
Greenville, SC 29601
864-271-9580
Fax: 864-271-7502
Email: rwray@gwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/23/2021 | 1 | NOTICE OF REMOVAL from Jasper County Court of Common Pleas, case number 2021-CP-27-00192. (Filing fee $ 402 receipt number 0420-9921571), filed by Bayer Corporation. (Attachments: # 1 State Court Documents)(jbry, ) (Entered: 06/24/2021) |
| 06/23/2021 | 2 | Local Rule 26.01 Answers to Interrogatories by Bayer Corporation.(jbry, ) (Entered: 06/24/2021) |
| 06/23/2021 | 3 | ANSWER to Complaint (Notice of Removal) by Bayer Corporation. (jbry, ) (Entered: 06/24/2021) |
| 06/24/2021 | 5 | NOTICE and Acknowledgment of receipt of Notice of Removal by Clerk of Court for Jasper County. (Attachments: # 1 Acknowledgment of State Clerk of Court)(Wray, Ronald) (Entered: 06/24/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/24/2021 10:03:31 | | | |
| PACER Login: | sh0019sh:2634072:0 | Client Code: | 31943.356965 |
| Description: | Docket Report | Search Criteria: | 9:21-cv-01907-MDL |
| Billable Pages: | 1 | Cost: | 0.10 |

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF JASPER | ) | Case No. 21-CP-27-00192 |
| Brenda Reiser<br>　　　　Plaintiff | ) | **AMENDED COMPLAINT**<br>(Jury Trial Demanded) |
| v | ) | |
| Bayer Corporation<br>　　　　Defendant | ) | |

The Plaintiff, Brenda Reiser, amends her previously filed Complaint for damages and substitutes the Defendant, Bayer Corporation, and alleges as follows:

1. This case arises out of the Defendant's wrongful design, manufacture, testing and sale of the herbicide Roundup, containing the active ingredient glyphosate. Glyphosate has been found to be carcinogenic and linked to various forms of cancer, particularly non-Hodgkins Lymphoma. As such Roundup is dangerous to human health, and unfit to be marketed and sold especially without proper warnings and directions as to the dangers associated with its use. The Plaintiff, who used Roundup extensively, now suffers from a type of non-Hodgkins Lymphoma known as mantle cell lymphoma, a fatal disease, and brings this action for the harm she has incurred.

PARTIES, JURISDICTION AND VENUE

2. Plaintiff, Brenda Reiser was, at all times relevant to this action, a citizen and resident of Ridgeland, S.C. In September 2019 she moved to the New Braunfels, Texas in order to be nearer to her two adult children and grandchildren.

3. Defendant, Bayer Corporation (hereafter Bayer), is a German multinational pharmaceutical and life sciences company. Bayer is a corporation organized and existing in a state other than South Carolina and regularly does business in Jasper County, S.C. In 2018, Monsanto, the

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

manufacturer and seller of Roundup, became a wholly owned subsidiary of Bayer or its predecessors.

4. That jurisdiction and venue are proper in this Court.

## FACTUAL ALLEGATIONS

5. Defendant, through its wholly owned subsidiary Monsanto, designed, manufactured, tested and sold the weed killer Roundup. Roundup was first introduced in 1974 and is today one of the world's most widely used products for weed control.

6. Roundup, like other herbicides, is required to be registered with the Environmental Protection Agency (EPA). The EPA requires certain tests as part of the registration process to evaluate the potential for toxicity to people and other adverse effects on the environment.

7. Through its subsidiary Monsanto, the Defendant knew or should have known that the tests limited to Roundup's active ingredient, Glyphosate, were insufficient to prove the safety of the product.

8. Through its subsidiary Monsanto, the Defendant failed to appropriately and adequately test Roundup's active ingredient in conjunction with Roundup's other ingredients to protect the Plaintiff.

9. For many years the Defendant had evidence of Roundup's genotoxic properties.

10. Genotoxicity refers to chemical agents capable of damaging DNA within a cell through genetic mutations, which is a process that is believed to lead to cancer.

11. In addition to Roundup's genotoxic properties, Roundup has long been associated with carcinogenicity and the development of numerous forms of cancer including non-Hodgkins Lymphoma, Hodgkins Lymphoma, Multiple Myeloma and soft tissue sarcoma.

12. The International Agency for Research on Cancer ("IARC") is a specialized agency that the World Health Organization ("WHO") tasked with conducting and coordinating research into the causes of cancer.

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

13. In 2015, after its year long, cumulative review of human, animal and DNA studies, many of which have been in the Defendant's possession since as early as 1985, the IARC established glyphosate as a probable carcinogen to humans.

14. Despite this knowledge, the Defendant has continued to represent that Roundup is safe.

15. These statements and representations have been made with the intent of inducing this Plaintiff and the public at large to purchase Roundup for the Defendant's financial gain and, in fact, did induce this Plaintiff to purchase and use Roundup.

16. The Defendant made these statements with complete disregard and reckless indifference to the safety of the Plaintiff and the general public.

17. Defendant knew or should have known what scientific evidence has established; that Glyphosate is associated with an increased risk of developing cancer.

18. The Defendant failed to appropriately and adequately inform and warn the Plaintiff of the serious and dangerous risks associated with the use of its product including the risk of developing cancer and other injuries and damages.

19. The Defendant's representations and statements proclaiming the safety of Roundup and disregarding its dangers have misled the Plaintiff.

20. The Defendant's warnings and directions for use are not adequate to protect human health and safety.

21. By reason of the foregoing acts and omissions, the Plaintiff seeks compensatory damages as a result of the Plaintiffs use of, and exposure to, Roundup which caused or was a substantial contributing factor in causing Plaintiff to develop a type on non-Hodgkins Lymphoma that is permanent and fatal.

22. By reason of the foregoing acts and omissions, the Plaintiff has suffered emotional and mental anguish, medical expenses, future medical expenses and other non-economic damages.

23. The Plaintiff is an avid and very accomplished gardener. She was an active member of the Ivy Garden Club and has served as its President and Vice president.

24. For many years the Plaintiff used the product Roundup to control weeds in her yard and garden. The Plaintiff enjoyed working in her yard and always did all of the yardwork herself, without any help.

25. In 2006 she purchased a home in Columbia, S.C. The yard had not been cleared or cut for many years and the Plaintiff used Roundup extensively in order to improve the yard.

26. In 2008, the Plaintiff purchased a home in Ridgeland, S.C. Parts of this large lot had never been cleared. Again using Roundup extensively, it took approximately four years to clear and improve the property.

27. The Plaintiff carefully followed all directions and warnings during the course of her use of the product.

28. On July 28, 2020 the Plaintiff was diagnosed with mantle cell carcinoma, a form on non-Hodgkins Lymphoma.

29. The Plaintiff receives treatment for her disease at MD Anderson in Houston, Texas. She has had a six month course of therapy using the drug Rituximab. Unfortunately, radiology studies following that treatment showed her cancer was still present in certain lymph nodes. Thereafter, in April 2021, she began an eleven (11) month clinical trial involving the drugs Ritbrutinib and Ibrutinib. Currently she is suffering painful and debilitating side effects from this treatment.

30. During the entire time the Plaintiff used Roundup she was unaware that it was carcinogenic or that Roundup was injurious to her health and could cause, and did cause, a serious and fatal illness.

FOR A FIRST CAUSE OF ACTION
(Negligence)

31. The Plaintiff reiterates and re-alleges each of her previous allegations as if set forth fully herein.

32. Defendant had a duty to exercise reasonable care in the design, manufacture, testing and sale of Roundup including a duty to assure that its product would not cause users to suffer unreasonable and dangerous side effects.

33. Defendant failed to exercise ordinary care in the design, testing, manufacture, marketing, sale and/or distribution of Roundup in that Defendant knew or should have known that using its product created a high risk of unreasonable and dangerous side effects including, but not

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

limited to, the development of forms of non-Hodgkins Lymphoma and other severe and permanent injuries and damages.

34. The negligence of the Defendant, through its subsidiaries, agents, and employees includes, but is not limited to, the following acts and/or omissions:

    a. Designing, manufacturing and selling Roundup without thoroughly testing it:

    b. Failing to adequately, properly and sufficiently test Roundup;

    c. Not conducting sufficient testing to determine whether or not Roundup was safe for use;

    d. Not conducting sufficient testing to determine Roundup's carcinogenic properties even after Defendant had knowledge that its product is, was, or could be carcinogenic;

    e. Failing to conduct sufficient testing to determine the safety of other, "inert" ingredients besides Glyphosate contained in its product, and the propensity of those ingredients to render Roundup toxic, to increase its toxicity, whether those ingredients are carcinogenic and/or are safe for use, and whether those ingredients magnify the carcinogenic properties of Roundup;

    f. Negligently failing to adequately and correctly warn the Plaintiff and the public of the dangers of Roundup;

    g. Negligently failing to request that the EPA to strengthen the warnings associated with Roundup;

    h. Failing to provide adequate cautions, warnings and instructions to protect the health and safety of users and persons who would reasonably and foreseeably come into contact with Roundup;

    i. Negligently marketing, advertising and recommending the use of Roundup when it knew or should have known of its dangerous propensities;

    j. Negligently representing that Roundup was safe for use for its intended purposes and/or that Roundup was safer than ordinary and common household products when, in fact, it was unsafe;

    k. Negligently representing that Roundup was as safe and as efficacious as other forms of herbicides;

    l. Negligently designing Roundup in a manner that was dangerous to its users;

m. Negligently manufacturing Roundup in a way that was dangerous to its users;

n. Improperly concealing information from the Plaintiff and/or misrepresenting information to the Plaintiff as the risks and dangers of Roundup;

o. Negligently selling Roundup with a false and misleading label;

p. In such other particulars as will be proven at trial.

35. Despite the fact that the Defendant knew or should have known of the dangerous side effects caused by its product, the Defendant continues to manufacture, market, sell and/or distribute its product to consumers.

36. Defendant knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of the Defendants' failure to exercise ordinary care.

37. Defendant's negligence was the proximate cause of the Plaintiff's injuries and damages, which the Plaintiff has suffered and will continue to suffer.

38. As a result of the foregoing acts and omissions, the Plaintiff has suffered a life threatening and ultimately fatal disease, mantle cell lymphoma, and respectfully requests that this Court enter a judgment in Plaintiff's favor for compensatory and punitive damages and all other relief this Court deems just and proper.

## FOR A SECOND CAUSE OF ACTION
### (Strict Liability Defective Design)

39. The Plaintiff reiterates and re-alleges each of her previous allegations as if set forth fully herein.

40. The Defendant's product, Roundup, was expected to and did reach the usual customers and consumers coming into contact with it, including this Plaintiff, without substantial change in the condition in which it was manufactured, marketed and sold.

41. The Defendant's product, Roundup, was a defective product, unreasonably dangerous to users including the Plaintiff.

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

42. Roundup as designed, manufactured, marketed, and sold was defective in design or formulation in that, when it left the hands of the Defendant, the foreseeable risks of using the product exceeded the benefits associated with the design of the product.

43. Roundup as designed, manufactured, marketed and sold was unreasonably dangerous in that, when it left the hands of the Defendant, it was unreasonably dangerous in normal use and was more dangerous than an ordinary consumer, and this Plaintiff, would expect.

44. The Plaintiff was exposed to and used Roundup without knowledge of its dangerous characteristics.

45. At all times of the Plaintiff's use of the product Roundup, she used it for the purposes for which the product was intended and in a manner normally intended, as a broad spectrum herbicide.

46. The Plaintiff, in the exercise of ordinary care, could not have discovered the defects in the product herein mentioned or perceived its dangers.

47. The Defendant is strictly liable for the design, manufacture and sale of its defective product.

48. The defects in the Defendant's product, Roundup, are the proximate cause of the Plaintiff's injuries and damages.

49. As a result of the Defendant's defective product, the Plaintiff has suffered a life threatening and ultimately fatal disease, mantle cell lymphoma, and respectfully requests that this Court enter a judgment in Plaintiff's favor for compensatory damages and all other relief this Court deems just and proper.

## FOR A THIRD CAUSE OF ACTION
(Strict Liability Failure to Warn)

50. The Plaintiff reiterates and re-alleges each of her previous allegations as if set forth fully herein.

51. The Defendant was in the business of designing, manufacturing, marketing and selling its product Roundup.

52. In that process, the product did reach consumers, including this Plaintiff, without any change in the condition of the product from when it left the hands of the Defendant.

53. The Defendant could have, and should have, provided instructions and warnings regarding the full and complete risks of Roundup and Glyphosate containing products because it knew or should have known of the unreasonable risks of harm with the use of its product.

54. At all relevant times the Defendant's product, Roundup, was a defective product, unreasonably dangerous because it did not contain a proper warning regarding its dangerous side effects including the risk of developing cancer as a result of exposure and use.

55. Roundup's warnings, caution statements and instructions did not comply with federal law, state law or industry standards and were inadequate to protect the health and safety of consumers, including this Plaintiff.

56. The Defendant could have, and should have, revised Roundup's label to provide additional warnings.

57. The Defendant failed to exercise reasonable care in the development of its warnings and label in that it did not warn that the product was carcinogenic and could cause, or be a substantial contributing factor, in the development of cancer.

58. At the time of her exposure, the Plaintiff could not have reasonably discovered any defect in Roundup through the exercise of reasonable care.

59. The Plaintiff relied on the skill, knowledge and judgment of the Defendant to develop a warning that was complete and adequately warned of the dangers of using its product.

60. If the Defendant had properly disclosed the risks of using Roundup, the Plaintiff would have avoided the risk of developing cancer by not using the product.

61. The Defendant's inaccurate, false and misleading warnings, instructions and label is a proximate cause of the Plaintiff's injuries and damages.

62. As a result of the Defendant's inadequate warnings, the Plaintiff has suffered a life threatening and ultimately fatal disease, mantle cell lymphoma, and respectfully requests that this Court enter a judgment in Plaintiff's favor for compensatory damages and all other relief this Court deems just and proper.

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

## FOR A FORTH CAUSE OR ACTION
(Breach of Warranties)

63. The Plaintiff reiterates and re-alleges each of her previous allegations as if set forth fully herein.

64. Defendant engaged in the business of designing, testing, manufacturing and selling Roundup, which is defective and unreasonably dangerous to consumers, including this Plaintiff, thereby placing Roundup into the stream of commerce.

65. Defendant expressly and impliedly warranted to purchasers that Roundup is safe to human health and the environment, effective, fit and proper for its intended use.

66. Defendant's advertising, labeling, marketing and other representations induced consumers, including this Plaintiff, to purchase the product.

67. Roundup does not conform to the Defendant's representations and warranties in that the warning and instructions are incomplete and fail to convey the risks associated with the use of and exposure to Roundup and Glyphosate.

68. The Defendant's representations that it's product is safe created an express and implied warranty and became part of the basis of the bargain.

67. The Defendant breached these warranties because Roundup is defective and dangerous and not safe for its intended use.  Further, the Defendant withheld and concealed information about the risks of using its product.

69. The Plaintiff had no knowledge of the falsity or incompleteness of the Defendant's representations concerning Roundup.  If the Defendant's warnings and label had accurately and adequately set forth the risks of using Roundup, the Plaintiff could have avoided the injuries and damages she alleges herein.

70. As a proximate result of the Defendant's breach of warranties, the Plaintiff has suffered a life threatening and ultimately fatal disease, mantle cell lymphoma, and respectfully requests that this Court enter a judgment in Plaintiff's favor for compensatory and punitive damages and all other relief this Court deems just and proper.

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

## FOR A FIFTH CAUSE OF ACTION
(Breach of Implied Warranty of Merchantability)

72. The Plaintiff reiterates and re-alleges each of her previous allegations as if fully set forth herein.

73. Defendant engaged in the business of designing, testing, manufacturing and selling Roundup, which is defective and unreasonably dangerous to consumers, including this Plaintiff, thereby placing Roundup into the stream of commerce.

74. Defendant impliedly warranted to consumers, including this Plaintiff, that Roundup was of merchantable quality and safe and fit for the use for which it was intended; specifically, as a broad spectrum weed killer.

75. The Plaintiff relied on the superior skill, knowledge and judgment of the Defendant and on its implied warranty that Roundup was of merchantable quality and fit for its intended use.

76. The Plaintiff could not have reasonably discovered or known of the risks associated with using Roundup.

77. The Defendant breached its implied warranty in that Roundup is not of merchantable quality, safe, or fit for its intended use and is instead a dangerous product when used for its intended purpose.

78. As a proximate result of the Defendant's breach its warranty of merchantability, the Plaintiff has suffered a life threatening and ultimately fatal disease, mantle cell lymphoma, and respectfully requests that this Court enter a judgment in Plaintiff's favor for compensatory and punitive damages and all other relief this Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests a jury trial and that this Court enter a judgment in the plaintiff's favor for compensatory and punitive damages, together with interest, costs and attorney's fees and for all other and further relief that this Court deems just and proper.

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

ELECTRONICALLY FILED - 2021 May 18 10:28 AM - JASPER - COMMON PLEAS - CASE#2021CP2700192

Blincow Griffin Law Firm

<u>s/John Blincow, Jr.</u>
126 Meeting St.
Charleston, S.C. 29401
843-872-6449
jblincow@blincowgriffin.com

*Attorneys for the Plaintiff*

Date: May 18, 2021



**BLINCOW GRIFFIN**
ATTORNEYS AT LAW

126 MEETING STREET
CHARLESTON, SC 29401



CERTIFIED MAIL

7020 1810 0001 3910 2452





1000    29169

U.S. POSTAGE PAID
FCM LG ENV
CHARLESTON, SC
29403
MAY 19, 21
AMOUNT

**$7.85**

R2305M148519-09

Corporation Service Company
508 Meeting St.
West Columbia, S.C. 29169

RETURN RECEIPT
REQUESTED