Query    Reports▾    Utilities▾    Help    Log Out

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:20-cv-01085-MN

Gilmore v. Monsanto Company
Assigned to: Judge Maryellen Noreika
Demand: $5,000,000
Cause: 28:1332 Diversity-Fraud

Date Filed: 08/19/2020
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Scott Gilmore**                                represented by    **William J. Rhodunda , Jr.**
Rhodunda Williams & Kondraschow
1521 Concord Pike, Suite 205
Wilmington, DE 19803
(302) 576-2000
Email: bill@rawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
Rhodunda Williams & Kondraschow
1521 Concord Pike, Suite 205
Wilmington, DE 19803
302-576-2000
Fax: 302-576-2004
Email: Chandra@rawlaw.com
*ATTORNEY TO BE NOTICED*

**Gillian L. Wade**
Email: gwade@mjfwlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc A. Castaneda**
Email: mcastaneda@mjfwlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara D. Avila**
Email: savila@mjfwlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Julio Ezcurra**                                represented by    **William J. Rhodunda , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sherry Hanna**             represented by **William J. Rhodunda , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kristy Williams**           represented by **William J. Rhodunda , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amanda Boyette**         represented by **William J. Rhodunda , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Weeks**           represented by **William J. Rhodunda , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anthony Jewell**          represented by **William J. Rhodunda , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Taylor**            represented by **William J. Rhodunda , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chandra Joan Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**                          represented by **Jeff Wilkerson**
Email: jwilkerson@winston.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Rosenthal**
Email: jrosenthal@winston.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly E. Farnan**
Richards, Layton & Finger, PA
One Rodney Square
Suite 600
920 N. King Street
Wilmington, DE 19801
(302) 651-7705
Email: farnan@rlf.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Ryan Tomlinson**                            represented by **Cortlan S. Hitch**
Morris James LLP
500 Delaware Ave
Ste 1500
Wilmington, DE 19801
302-888-6988
Fax: 302-571-1750
Email: chitch@morrisjames.com
*ATTORNEY TO BE NOTICED*

**Don M. Downing**
Email: ddowning@grgpc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gretchen A. Garrison**
Email: ggarrison@grgpc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick J. Stueve**
Email: stueve@stuevesiegel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd E. Hilton**
Email: hilton@stuevesiegel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Carol Richardson**                          represented by **Cortlan S. Hitch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Don M. Downing**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gretchen A. Garrison**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick J. Stueve**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd E. Hilton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/19/2020 | 1 | COMPLAINT filed with Jury Demand against Monsanto Company - Magistrate Consent Notice to Pltf. ( Filing fee $ 400, receipt number ADEDC-3140065.) - filed by Scott Gilmore. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(myr) (Entered: 08/19/2020) |
| 08/19/2020 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (myr) (Entered: 08/19/2020) |
| 08/19/2020 | | No Summons Issued. (myr) (Entered: 08/19/2020) |
| 08/19/2020 | 4 | MOTION for Pro Hac Vice Appearance of Attorney Gillian L. Wade, Esq.; Sara D. Avila, Esq. and Marc A. Castaneda, Esq. - filed by Scott Gilmore. (Attachments: # 1 Affidavit Certificates of Gillian L. Wade, Esq; Sara D. Avila, Esq and Marc A. Castaneda, Esq. to be Admitted Pro Hac Vice)(Williams, Chandra) (Entered: 08/19/2020) |
| 08/19/2020 | | CORRECTING ENTRY: Counsel improperly filed summons to be issued at D.I. 3. This docket entry has since been deleted. (kmd) (Entered: 08/19/2020) |
| 08/20/2020 | 5 | Return of Service Executed by Scott Gilmore. Monsanto Company served on 8/20/2020, answer due 9/10/2020. (Williams, Chandra) (Entered: 08/20/2020) |
| 08/26/2020 | | Case Assigned to Judge Maryellen Noreika. Please include the initials of the Judge (MN) after the case number on all documents filed. (rjb) (Entered: 08/26/2020) |
| 08/27/2020 | | SO ORDERED re 4 MOTION for Pro Hac Vice Appearance of Attorney Gillian L. Wade, Esq.; Sara D. Avila, Esq. and Marc A. Castaneda, Esq. filed by Scott Gilmore. ORDERED by Judge Maryellen Noreika on 8/27/2020. (dlw) (Entered: 08/27/2020) |
| 09/04/2020 | 6 | STIPULATION TO EXTEND TIME to move, answer or otherwise respond to the Complaint to October 19, 2020 - filed by Monsanto Company. (Farnan, Kelly) (Entered: 09/04/2020) |
| 09/04/2020 | 7 | MOTION for Pro Hac Vice Appearance of Attorney John J. Rosenthal and Jeff Wilkerson - filed by Monsanto Company. (Farnan, Kelly) (Entered: 09/04/2020) |
| 09/08/2020 | | SO ORDERED re 6 STIPULATION TO EXTEND TIME to move, answer or otherwise respond to the Complaint to October 19, 2020 (Set/Reset Answer Deadlines: Monsanto Company answer due 10/19/2020). ORDERED by Judge Maryellen Noreika on 9/8/2020. (dlw) (Entered: 09/08/2020) |
| 09/08/2020 | | SO ORDERED re 7 MOTION for Pro Hac Vice Appearance of Attorney John J. Rosenthal and Jeff Wilkerson filed by Monsanto Company. ORDERED by Judge Maryellen Noreika on 9/8/2020. (dlw) (Entered: 09/08/2020) |
| 09/14/2020 | | Pro Hac Vice Attorney Jeff Wilkerson for Monsanto Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be |

| | | |
|---|---|---|
| | | required to file all papers. (kmd) (Entered: 09/14/2020) |
| 09/14/2020 | | Pro Hac Vice Attorney John J. Rosenthal for Monsanto Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 09/14/2020) |
| 10/02/2020 | 8 | MOTION for Pro Hac Vice Appearance of Attorney Joel Oster - filed by Scott Gilmore. (Williams, Chandra) (Entered: 10/02/2020) |
| 10/05/2020 | | SO ORDERED re 8 MOTION for Pro Hac Vice Appearance of Attorney Joel Oster filed by Scott Gilmore. ORDERED by Judge Maryellen Noreika on 10/5/2020. (dlw) (Entered: 10/05/2020) |
| 10/19/2020 | 9 | STIPULATION TO EXTEND TIME re: Answer to Complaint to December 3, 2020 - filed by Monsanto Company. (Farnan, Kelly) (Entered: 10/19/2020) |
| 10/19/2020 | | SO ORDERED re 9 STIPULATION TO EXTEND TIME to answer, move, or otherwise respond to the Complaint to December 3, 2020 (Set/Reset Answer Deadlines: Monsanto Company answer due 12/3/2020). ORDERED by Judge Maryellen Noreika on 10/19/2020. (dlw) (Entered: 10/19/2020) |
| 12/03/2020 | 10 | MOTION to Dismiss for Lack of Jurisdiction Over the Subject Matter and Failure to State a Claim - filed by Monsanto Company. (Attachments: # 1 Text of Proposed Order Proposed Order)(Farnan, Kelly) Modified on 12/4/2020 (dlw). (Entered: 12/03/2020) |
| 12/03/2020 | 11 | OPENING BRIEF in Support re 10 MOTION to Dismiss for Lack of Jurisdiction Over the Subject Matter and Failure to State a Claim filed by Monsanto Company. Answering Brief/Response due date per Local Rules is 12/17/2020. (Farnan, Kelly) Modified on 12/4/2020 (dlw). (Entered: 12/03/2020) |
| 12/03/2020 | 12 | DECLARATION of Kelly E. Farnan re 10 MOTION to Dismiss for Lack of Jurisdiction Over the Subject Matter and Failure to State a Claim by Monsanto Company. (Attachments: # 1 Exhibit A-G) (Farnan, Kelly) Modified on 12/4/2020 (dlw). (Entered: 12/03/2020) |
| 12/14/2020 | 13 | STIPULATION TO EXTEND TIME Plaintiff's deadline to file First Amended Complaint to January 12, 2021 - filed by Scott Gilmore. (Williams, Chandra) (Entered: 12/14/2020) |
| 12/14/2020 | | SO ORDERED re 13 STIPULATION TO EXTEND TIME for Plaintiff to file First Amended Complaint to January 12, 2021. ORDERED by Judge Maryellen Noreika on 12/14/2020. (dlw) (Entered: 12/14/2020) |
| 01/12/2021 | 14 | First AMENDED COMPLAINT against All Defendants - filed by Scott Gilmore.(Williams, Chandra) Modified on 1/13/2021 (dlw). (Additional attachment(s) added on 1/13/2021: # 1 Redline Comparison) (dlw). (Entered: 01/12/2021) |
| 01/26/2021 | 15 | MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter - filed by Monsanto Company. (Attachments: # 1 Text of Proposed Order Proposed Order)(Farnan, Kelly) Modified on 1/27/2021 (dlw). (Entered: 01/26/2021) |
| 01/26/2021 | 16 | OPENING BRIEF in Support re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter filed by Monsanto Company. Answering Brief/Response due date per Local Rules is 2/9/2021. (Farnan, Kelly) Modified on 1/27/2021 (dlw). (Entered: 01/26/2021) |
| 01/26/2021 | 17 | DECLARATION of Kelly E. Farnan re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter by Monsanto Company. (Attachments: # 1 Exhibit A-G)(Farnan, Kelly) Modified on 1/27/2021 (dlw). (Entered: 01/26/2021) |
| 02/09/2021 | 18 | ANSWERING BRIEF in Opposition re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter filed by Scott Gilmore.Reply Brief due date per Local Rules is 2/16/2021. (Williams, Chandra) (Entered: 02/09/2021) |
| 02/16/2021 | 19 | REPLY BRIEF re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter filed by Monsanto Company. (Farnan, Kelly) (Entered: 02/16/2021) |
| 03/31/2021 | 20 | NOTICE of Change of Address by Chandra Joan Williams (Williams, Chandra) (Entered: 03/31/2021) |
| 06/10/2021 | 21 | STIPULATION for Leave to File Second Amended Complaint re 14 Amended Complaint, 1 Complaint by Scott Gilmore. (Attachments: # 1 Exhibit A to Stipulation (Second Amended Complaint), # 2 Exhibit B to Stipulation (blackline))(Williams, Chandra) (Entered: 06/10/2021) |

| 06/11/2021 | | SO ORDERED re 21 Stipulation for Leave to File Second Amended Complaint. ORDERED by Judge Maryellen Noreika on 6/11/2021. (dlw) (Entered: 06/11/2021) |
|---|---|---|
| 06/11/2021 | 22 | SECOND AMENDED COMPLAINT against Monsanto Company- filed by Scott Gilmore, Julio Ezcurra, Sherry Hanna, Kristy Williams, Amanda Boyette, James Weeks, Anthony Jewell, Paul Taylor. (Attachments: # 1 Exhibit A)(dlw) (Entered: 06/11/2021) |
| 06/11/2021 | 23 | ORAL ORDER re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter - In light of 22 Plaintiffs' Second Amended Complaint, the Court DENIES as MOOT 15 Defendant's Motion to Dismiss as it relates to 14 the First Amended Complaint. ORDERED by Judge Maryellen Noreika on 6/11/2021. (dlw) (Entered: 06/11/2021) |
| 06/14/2021 | | CORRECTING ENTRY: D.I. 24, 25, & 26 have been deleted from the docket. Counsel shall adjust the footnote font size to 12-point and shall re-file the documents in the proper way (motion, brief, declarations all as separate filings. (dlw) (Entered: 06/14/2021) |
| 06/14/2021 | 24 | MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement - filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Attachments: # 1 Text of Proposed Order)(Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 25 | MEMORANDUM in Support re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. Answering Brief/Response due date per Local Rules is 6/28/2021. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 26 | DECLARATION of Gillian L. Wade re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Attachments: # 1 Exhibit 1)(Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 27 | DECLARATION of United States Magistrate Judge Diane Welsh (Ret.) re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 28 | DECLARATION of Brandon Schwartz Regarding Proposed Notice Plan re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Additional attachment(s) added on 6/15/2021: # 1 Exhibit A - E) (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 29 | DECLARATION of D.C. Sharp, PhD re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 30 | DECLARATION of Kristina Shampanier re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Attachments: # 1 Exhibit A)(Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 31 | UNOPPOSED MOTION for Leave to File Excess Pages regarding Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for Purposes of Settlement [DI 24] - filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 32 | Joint MOTION to Stay all Related Proceedings re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support |

| | | - filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
|---|---|---|
| 06/14/2021 | 33 | MEMORANDUM in Support re 32 Joint MOTION to Stay All Related Proceedings re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. Answering Brief/Response due date per Local Rules is 6/28/2021. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/15/2021 | | SO ORDERED re 31 UNOPPOSED MOTION for Leave to File Excess Pages regarding Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for Purposes of Settlement. ORDERED by Judge Maryellen Noreika on 6/15/2021. (dlw) (Entered: 06/15/2021) |
| 06/15/2021 | | CORRECTING ENTRY: Exhibit A - E have been added to D.I. 28 - Schwartz Declaration. (dlw) (Entered: 06/15/2021) |
| 06/21/2021 | 34 | Letter to Honorable Maryellen Noreika from Kenneth L. Dorsney regarding Intention to Intervene. (Attachments: # 1 Exhibit Exhibit 1)(Dorsney, Kenneth) (Entered: 06/21/2021) |
| 06/24/2021 | 35 | Supplemental DECLARATION of D.C. Sharp, PhD. re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 29 Declaration by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/25/2021 (dlw). (Entered: 06/24/2021) |
| 06/24/2021 | 36 | Letter to The Honorable Maryellen Noreika from Kelly E. Farnan regarding response to Mr. Dorsney's June 21, 2021 letter regarding motion to intervene - re 34 Letter. (Farnan, Kelly) (Entered: 06/24/2021) |
| 06/28/2021 | 37 | ANSWERING BRIEF in Opposition re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement filed by Jason Rinehart. Reply Brief due date per Local Rules is 7/6/2021. (Ennis, Sarah) (Entered: 06/28/2021) |
| 06/28/2021 | 38 | DECLARATION of Jason Rinehart re 37 Answering Brief in Opposition by Jason Rinehart. (Ennis, Sarah) Modified on 6/29/2021 (dlw). (Entered: 06/28/2021) |
| 06/28/2021 | 39 | MOTION to Intervene - filed by Ryan Tomlinson, Carol Richardson. (Attachments: # 1 Text of Proposed Order)(Hitch, Cortlan) (Entered: 06/28/2021) |
| 06/28/2021 | 40 | MOTION for Leave to File Excess Pages - filed by Carol Richardson, Ryan Tomlinson. (Hitch, Cortlan) (Entered: 06/28/2021) |
| 06/28/2021 | 41 | OPENING BRIEF in Support re 39 MOTION to Intervene filed by Carol Richardson, Ryan Tomlinson. Answering Brief/Response due date per Local Rules is 7/12/2021. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hitch, Cortlan) Modified on 6/29/2021 (dlw). (Attachment 1 replaced on 6/29/2021) (dlw). (Entered: 06/28/2021) |
| 06/29/2021 | 42 | MOTION for Pro Hac Vice Appearance of Attorney Elizabeth Fegan, of Fegan Scott LLC - filed by Jason Rinehart. (Ennis, Sarah) (Entered: 06/29/2021) |
| 06/29/2021 | | CORRECTING ENTRY: Attachment #1 to D.I. 41 has been replaced on the docket to add slip sheets to the exhibits to Exhibit A. (dlw) (Entered: 06/29/2021) |
| 06/29/2021 | 43 | MOTION for Pro Hac Vice Appearance of Attorney Don M. Downing, Attorney Gretchen A. Garrison, Attorney Todd E. Hilton, and Attorney Patrick J. Stueve - filed by Carol Richardson, Ryan Tomlinson. (Hitch, Cortlan) (Entered: 06/29/2021) |
| 06/29/2021 | | SO ORDERED re 42 MOTION for Pro Hac Vice Appearance of Attorney Elizabeth Fegan, of Fegan Scott LLC filed by Jason Rinehart. ORDERED by Judge Maryellen Noreika on 6/29/2021. (dlw) (Entered: 06/29/2021) |
| 06/29/2021 | | SO ORDERED re 43 MOTION for Pro Hac Vice Appearance of Attorney Don M. Downing, Attorney Gretchen A. Garrison, Attorney Todd E. Hilton, and Attorney Patrick J. Stueve filed by Ryan Tomlinson, Carol Richardson. ORDERED by Judge Maryellen Noreika on 6/29/2021. (dlw) (Entered: 06/29/2021) |

| 06/30/2021 | | Pro Hac Vice Attorney Gretchen A. Garrison, Don M. Downing, Patrick J. Stueve, Todd E. Hilton for Carol Richardson; Pro Hac Vice Attorney Gretchen A. Garrison, Don M. Downing, Patrick J. Stueve, Todd E. Hilton for Ryan Tomlinson added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (twk) (Entered: 06/30/2021) |
|---|---|---|
| 06/30/2021 | 44 | DECLARATION of Gretchen Garrison re 41 Opening Brief in Support, 39 MOTION to Intervene by Carol Richardson, Ryan Tomlinson. (Hitch, Cortlan) Modified on 6/30/2021 (dlw). (Entered: 06/30/2021) |
| 07/01/2021 | 45 | NOTICE of Supplemental Authority by Carol Richardson, Ryan Tomlinson (Dorsney, Kenneth) (Entered: 07/01/2021) |
| 07/12/2021 | 46 | ANSWERING BRIEF in Opposition re 39 MOTION to Intervene filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams.Reply Brief due date per Local Rules is 7/19/2021. (Kondraschow, Nicholas) (Entered: 07/12/2021) |
| 07/12/2021 | 47 | ANSWERING BRIEF in Opposition re 39 MOTION to Intervene filed by Monsanto Company.Reply Brief due date per Local Rules is 7/19/2021. (Farnan, Kelly) (Entered: 07/12/2021) |
| 07/12/2021 | 48 | DECLARATION re 47 Answering Brief in Opposition *John J. Rosenthal* by Monsanto Company. (Attachments: # 1 Exhibit A-F)(Farnan, Kelly) (Entered: 07/12/2021) |
| 07/14/2021 | 49 | Letter to The Honorable Maryellen Noreika from Kelly E. Farnan regarding Rinehart Opposition - re 37 Answering Brief in Opposition,. (Farnan, Kelly) (Entered: 07/14/2021) |
| 07/14/2021 | | Pro Hac Vice Attorneys Marc A. Castaneda, Gillian L. Wade, Sara D. Avila for Scott Gilmore added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (twk) (Entered: 07/14/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/15/2021 10:33:02 | | |
| **PACER Login:** | sasaucer5662 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-01085-MN Start date: 1/1/1972 End date: 7/15/2021 |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCOTT GILMORE, | |
| Plaintiff, | Case No.: |
| vs. | **JURY TRIAL DEMANDED** |
| MONSANTO COMPANY, | |
| Defendant. | |

## COMPLAINT

Plaintiff, SCOTT GILMORE ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through the undersigned counsel, hereby brings this Class Action Complaint against Defendant, MONSANTO COMPANY ("Defendant" or "Monsanto") and alleges as follows:

## INTRODUCTION

1.      This case arises from Monsanto's wrongful conduct in connection with its manufacture, promotion, marketing, advertising, distribution, labeling, and sale of the Lawn and Garden herbicide Roundup®, which contains the active ingredient glyphosate and other chemicals, including the surfactant polyethoxylated tallow amine ("POEA").

2.      At all relevant times, Monsanto was and is aware Roundup® has the potential to cause users to develop cancer. Monsanto is aware glyphosate is a Class 2A herbicide, meaning the World Health Organization's ("WHO") International Agency for Research on Cancer ("IARC") has determined it is probably carcinogenic to humans.

3.     Monsanto is also aware California has classified glyphosate as a chemical known to cause cancer, such as Non-Hodgkin's lymphoma ("NHL").

4.     Monsanto has also known Roundup® and other glyphosate-based herbicides have been banned by many countries, regions, and municipalities throughout the United States and the world because it is dangerous to human health.

5.     Monsanto is the defendant in tens of thousands personal injury cases brought by individuals who allege exposure to Roundup® caused their cancer.[1] Three juries found Roundup® likely caused some of those plaintiffs to develop NHL, and awarded nearly $100 million in compensatory damages and over $2 billion in punitive damages collectively.[2]

6.     Despite Monsanto's knowledge of Roundup®'s potential carcinogenicity, Monsanto has failed to convey this information to consumers in its promotion, marketing, advertising, distribution, labeling, and sale of Roundup®.

7.     Although the Environmental Protection Agency ("EPA") under the current administration has stated glyphosate is not likely to be carcinogenic to humans, Defendant, at the very least, should inform consumers there has been an ongoing scientific dispute over its potential carcinogenicity.

8.     Monsanto's concealment, suppression, or omission of material facts (*i.e.* the possibility that exposure to Roundup may cause cancer and the ongoing scientific debate about same), with intent that others rely upon such concealment, suppression or omission in connection

---

[1] Most of these cases were consolidated in a multi-district litigation ("MDL") before Judge Vince Chhabria in the Northern District of California and have recently settled for a total of approximately $10 billion.

[2] As discussed herein, these awards were later reduced by the trial court. One verdict was recently upheld, and the other two are presently on appeal.

with its promotion, marketing, advertising, distribution, labeling, and sale of Roundup®, constitutes a violation of Delaware's Consumer Fraud Act ("DCFA"), Del. Code Ann. tit. 6, § 2513.

9.     Defendant's violation of the DCFA has caused Plaintiff and members of the Class to suffer an ascertainable loss.

## JURISDICTION AND VENUE

10.    Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Defendant is either incorporated and/or has its principal place of business outside the state in which Plaintiff and members of the proposed Class reside. Furthermore, there are more than 100 Class Members and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

11.    This Court has personal jurisdiction over Defendant because Defendant is a citizen of Delaware and transacts business in the state. Defendant knows that its Roundup products are and were sold throughout Delaware, and caused Roundup to be sold across the United States, including Delaware. In addition, Defendant maintains sufficient contacts with the Delaware such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

12.    Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant is a resident of this judicial district and the material omissions giving rise to Plaintiff's claim arose, in part, in Delaware.

## PARTIES

13.    Plaintiff SCOTT GILMORE is an individual who resides in the State of Washington. Plaintiff seeks injunctive relief and damages on behalf of himself and the Class.

14.    Defendant MONSANTO is a Delaware corporation, Delaware Department of State File No. 3174788, with a registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, and a principal place of business in St. Louis, Missouri. Defendant is engaged in the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Roundup® products at issue in this case.

15.    Defendant is a subsidiary of nonparty Bayer AG, a German corporation ("Bayer"). Bayer acquired Monsanto in June 2018 and the merger agreement is governed by Delaware law.

16.    The terms "Roundup" and the "Product" refer to all Lawn and Garden formulations of the Roundup® products containing glyphosate sold in the United States, including but not limited to Roundup Ready-To-Use Killer III, Roundup Ready-To-Use Killer III with Sure Shot Wand, Roundup Ready-To-Use Weed & Grass Killer III with Comfort Wand, Roundup Ready-to-Use Weed & Grass Killer III with Pump 'N Go 2 Sprayer, Roundup Precision Gel Weed & Grass Killer, Roundup Ready-To-Use Max Control 365 with Comfort Wand, Roundup Concentrate MAX Control 365, Roundup Ready-To-Use Extended Control Weed & Grass Killer Plus Weed Preventer II with Comfort Wand, Roundup Ready-To-Use Extended Control Weed & Grass Killer Plus Weed Preventer II with Pump 'N Go 2 Sprayer, Roundup Ready-To-Use Extended Control Weed & Grass Killer Plus Weed Preventer II with Trigger Sprayer, Roundup Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer, Roundup Ready-To-Use Poison Ivy Plus Tough Brush Killer with Trigger Sprayer, Roundup Ready-To-Use Poison

Ivy Plus Tough Brush Killer with Comfort Wand, Roundup Concentrate Poison Ivy Plus Tough Brush Killer, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass Killer Super Concentrate, or any other formulation thereof containing the active ingredient glyphosate.

17.     Defendant has an agreement with its distributor of Roundup, nonparty The Scotts Company, LLC ("Scotts"). Under that agreement, Scotts is responsible for in-store merchandising, store set-up, and other services related to the in-store promotion of Roundup, in a manner consistent with Defendant's Annual Business Plan. The distribution agreement is governed by Delaware law.

18.     Defendant has made and continues to make representations regarding Roundup's potential health risks through various means of disclosure—for example, representations on its website, in-store advertising, its labeling of Roundup, and through its distribution relationship with Scotts. These means of disclosure originate, in part, in the State of Delaware.

19.     During all relevant times, Defendant transacted and conducted business throughout the United States and is responsible for the representations it makes, with respect to Roundup's potential health risks, throughout the country.

20.     Defendant does business in Delaware by consistently selecting its law and forums with respect to Roundup.

## FACTUAL ALLEGATIONS

**A.      Monsanto's Manufacturing, Promotion, Marketing, Advertising, Distribution, Labeling, and Sale of Roundup.**

21.     Monsanto was the first company to recognize potential in the chemical glyphosate, a nonselective herbicide that inhibits plant growth through interference with the production of essential aromatic amino acids.

22.     Monsanto discovered glyphosate to be an herbicide in 1970 and brought it into the market as Roundup in 1974.

23.     All of the Roundup products at issue in this case contain the active ingredient glyphosate, and other components, such as the surfactant POEA,[3] which helps glyphosate penetrate plant cells.

24.     Roundup is marketed for home and personal use to kill weeds, including weeds in home lawns and gardens. Roundup is sold at retail locations throughout the United States.

25.     Monsanto has and continues to promote, market, advertise, and label Roundup as a safe general-purpose herbicide for consumer use. Monsanto has admitted in other legal proceedings that Roundup products are valued by consumers because of their efficacy and safety.

26.     Monsanto's promotion, marketing, advertising, and labeling of Roundup leads reasonable consumers into believing Roundup is safe for its intended use.

27.     Monsanto, for example, designs the labeling for Roundup. Exemplar photographs of Roundup's front and back labels for the Roundup Ready-to-Use Weed and Grass Killer III are attached hereto as **"Exhibit A."**

---

[3] Monsanto considers POEA to be inert because it does not directly kill plants, it merely enhances glyphosate's ability to do so.

28. Roundup's labeling provides certain warnings, such as, "Keep Out of Reach of Children" and "Caution." But the only hazard identified is that it may cause "moderate eye irritation." *See id*.

29. Roundup's warning gives the false impression eye irritation is the only risk posed by Roundup, when in fact, Roundup has the potential to cause cancer, as discussed more fully herein.

**B.     The IARC Classification of Glyphosate.**

30. The IARC is an intergovernmental cancer agency within the WHO which, in 2015, was tasked with conducting and coordinating research into the causes of cancer as it pertained to glyphosate.

31. In March 2015, an IARC "Working Group" of 17 experts from 11 countries convened to evaluate several insecticides and herbicides, including diazinon, tetrachlorvinphos, malathion, parathion, and glyphosate. The evaluation was based on a cumulative review of all publicly available and pertinent scientific studies. Some of the studies pertained to people exposed to glyphosate through their jobs, such as farmers. Others were experimental studies on cancer and cancer-related effects in experimental systems. The IARC Working Group's full monograph was published on July 29, 2015.

32. In its monograph, the IARC Working Group classified glyphosate as a <u>Class 2A herbicide</u>, which means it is <u>probably carcinogenic to humans</u>. It concluded NHL was most associated with glyphosate exposure.

33. The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

34. The IARC's conclusions were consistent with scientific developments that had occurred in prior decades.

## C. Early Studies and Developments Pertaining to Glyphosate and Roundup's Carcinogenicity and Genotoxicity.

35. As early as the 1980's, Monsanto should have been aware of glyphosate's carcinogenic and genotoxic properties.

36. On March 4, 1985, a group of the EPA's Toxicology Branch published a "consensus review" based on a mouse study conducted by Monsanto in 1983. The review "classified Glyphosate as a Category C oncogen," meaning it is a possible human carcinogen.

37. However in June 1991, EPA published a memorandum entitled, "Second Peer Review of Glyphosate," which changed glyphosate's classification to Group E (evidence of non-carcinogenicity for humans). Two peer review committee members did not concur with the conclusions, and the Memorandum itself "emphasized however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

38. In 1996, the New York Attorney General sued Monsanto for false and misleading advertising by touting its glyphosate-based Roundup products as, e.g., "safer than table salt" and "practically non-toxic" to mammals, birds, and fish.

39. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York Attorney General, in which Monsanto agreed to alter the advertising, removing from advertisements that represent, directly or by implication, that the weed killers were biodegradable

and environmentally friendly. Monsanto also agreed to pay $50,000 toward New York's costs of pursuing the case. At the time, New York was the only state to object to the advertising claims.

40.    In 1997, Chris Clements, *et al.* published a study entitled, "Genotoxicity of Select Herbicides in *Rana catesbeiana* Tadpoles Using the Alkaline Single-Cell Gel DNA Electrophoresis (Comet) Assay." Genotoxicity refers to the property of chemical agents which cause damage to genetic information within a cell causing mutations, which may lead to cancer.  In Clements' publication, tadpoles were exposed to various herbicides, including Roundup, for a 24-hour period. Roundup-treated tadpoles showed "significant DNA damage when compared with unexposed control animals."

41.    In 1999, Lennart Hardell and Mikael Eriksson published a study entitled, "A Case–Control Study of Non-Hodgkin Lymphoma and Exposure to Pesticides," which consisted of a population-based case–control study in northern and middle Sweden encompassing 442 cases and twice as many controls was performed. Exposure data were ascertained by comprehensive questionnaires, and the questionnaires were supplemented by telephone interviews. The results indicated exposure to glyphosate and other herbicides yielded increased risks for NHL.

42.    In 2002, Julie Marc, *et al.* published a study entitled, "Pesticide Roundup Provokes Cell Division Dysfunction at the Level of CDK1/Cyclin B Activation." The study found Roundup caused delays in the cell cycles of sea urchins. It further noted the deregulations of cell cycle checkpoints are *directly linked* to genomic instability, which can generate diseases and cause cancer. The findings led to the conclusion Roundup "causes changes in cell cycle regulation that may raise questions about the effect of this pesticide on human health."

43.     In 2003, A. J. De Roos, et al. published a study entitled, "Integrative assessment of multiple pesticides as risk factors for non-Hodgkin's lymphoma among men," which "[r]eported use of several individual pesticides was associated with increased NHL incidence, including . . . glyphosate. A subanalysis of these 'potentially carcinogenic' pesticides suggested a positive trend of risk with exposure to increasing numbers."

44.     In 2004, Julie Marc, *et al.* published a study entitled, "Glyphosate-based pesticides affect cell cycle regulation." In that study, which tested Roundup 3plus on sea urchin eggs, determined "glyphosate-based pesticides are clearly of human health concern by inhalation in the vicinity of spraying," given the "molecular link between glyphosate and cell cycle dysregulation." It observed, "roundup may be related to increased frequency of non-Hodgkin's lymphoma among farmers," citing the study by A. J. De Roos., *et al.*

45.     In 2005, Francisco Peixo published a study entitled, "Comparative effects of the Roundup and glyphosate on mitochondrial oxidative phosphorylation," which suggested the harmful effects of Roundup could be the result of Roundup's specific combination of chemicals, and the interaction of glyphosate and the surfactant POEA.

46.     In 2008, Mikael Eriksson, *et al.* published a study entitled, "Pesticide exposure as risk factor for NHL including histopathological subgroup analysis," based on a case-control study of exposure to various pesticides as a risk factor for NHL. Eriksson's study strengthened previous associations between glyphosate and NHL.

47.     In 2009, Nora Benachour and Gilles-Eric Seralini published a study entitled, "Glyphosate formulations induce apoptosis and necrosis in human umbilical, embryonic, and placental cells," which examined the effects of four different Roundup formulations on human

umbilical, embryonic, and placental cells—at dilution levels far below agricultural recommendations. The study found the formations caused cell death in a few hours in a cumulative manner, caused DNA damage, and found that the formulations inhibit cell respiration. In addition, it was shown the mixture of the components used as Roundup adjuvants, particularly POEA *amplified the action of the glyphosate*. The Roundup adjuvants actually changed human cell permeability and increased the toxicity of glyphosate alone.

48. This study suggests Roundup poses even greater risks than glyphosate alone, as a result of Roundup's specific combination of chemicals, and the interaction of glyphosate and POEA.

**D.      Glyphosate-Based Herbicides, Including Roundup, are Banned Throughout the World.**

49. Following the IARC's report on glyphosate, several countries have issued outright bans or restrictions on glyphosate herbicides, including Roundup.

50. In May 2015, the Netherlands banned all non-commercial use of glyphosate. *See* https://www.collective-evolution.com/2015/05/30/why-the-netherlands-just-banned-monsantos-glyphosate-based-herbicides/.

51. In 2016, Italy adopted a law prohibiting the use of glyphosate in areas frequented by the public or by "vulnerable groups" including children and the elderly and in the pre-harvest phase in agriculture. *See* https://www.soilassociation.org/news/2016/august/italy-bans-toxic-glyphosate/.

52.     In June 2017, the Flemish government approved a ban on glyphosate for individual-use. *See* https://www.brusselstimes.com/all-news/belgium-all-news/43150/flemish-government-approves-ban-on-glyphosate-for-individuals/.

53.     In September 2018, the agriculture ministry of the Czech Republic stated the country would ban the blanket use of glyphosate as a weedkiller and as a drying agent. *See* https://phys.org/news/2018-09-czech-republic-restrict-glyphosate-weedkiller.html. The ban came into effect on January 1, 2019. *See* http://www.arc2020.eu/czech-out-this-roundabout-way-to-not-ban-roundup/.

54.     In October 2018, the Indian state of Punjab banned the sale of glyphosate. *See* https://www.thehindu.com/news/national/other-states/punjab-government-bans-sale-of-herbicide/article25314146.ece. And in February of 2019, the Indian state of Kerala followed suit, issuing a ban on the sale, distribution and use of glyphosate. *See* https://www.thenewsminute.com/article/kerala-government-bans-glyphosate-deadly-weed-killer-96220.

55.     In January 2019, French authorities banned the sale of Roundup following a court ruling that regulators failed to take safety concerns into account when clearing the widely used herbicide. *See* https://www.france24.com/en/20190116-weedkiller-roundup-banned-france-after-court-ruling. In April 2019, a French appeals court ruled Bayer's Monsanto business was liable for the health problems of a farmer who inhaled Roundup. *See* https://www.insurancejournal.com/news/international/2019/04/11/523456.htm.

56.     In March 2019, Vietnam announced it has banned the import of all glyphosate-based herbicides.  *See*  https://sustainablepulse.com/2019/03/25/vietnam-bans-import-of-glyphosate-herbicides-after-us-cancer-trial-verdict/#.XS-xCT9Kh9O.

57.     In July 2019, Austria's Parliament passed a bill banning all uses of glyphosate. *See* https://www.reuters.com/article/us-austria-glyphosate/austrian-parliament-backs-eus-first-total-ban-of-weedkiller-glyphosate-idUSKCN1TX1JR. Although the ban was supposed to take effect on January 1, 2020, Austria's Chancellor refused to sign it into law due to a legal technicality. *See* https://www.reuters.com/article/us-austria-glyphosate/austrian-leader-blocks-ban-on-weedkiller-glyphosate-citing-technicality-idUSKBN1YD11Z.

58.     In January 2020, Luxembourg issued a total ban on glyphosate.  *See* https://www.brusselstimes.com/all-news/eu-affairs/92006/luxembourg-will-be-first-eu-country-to-totally-ban-glyphosate/.

59.     Several municipalities and regions in Spain, the United Kingdom, and the United States, have also banned glyphosate herbicides.

**E.      Monsanto Loses Three Verdicts after Roundup is Found to Cause Cancer in Humans.**

60.     On August 10, 2018, a unanimous California jury in *Johnson v. Monsanto Co.,* No. CGC16550128 (Cal. Super. Ct., Cnty. of S.F.) found Monsanto's Roundup and Ranger Pro herbicides were unsafe and were a substantial factor in causing harm to the plaintiff.  The jury also found Monsanto failed to adequately warn customers of the risks associated with its Roundup and Ranger Pro products, and that the company acted with malice or oppression. The jury awarded the plaintiff a total of $289 million, with $250 million in punitive damages and $39.25 million in

compensatory damages. The court later reduced the punitive damages award, bringing the total award to $78.5 million. Monsanto appealed the judgment and the California Court of Appeal, on July 20, 2020, affirmed the trial court's judgment, but reduced the total award to $20.6 million.

61.     On March 27, 2019, a unanimous California jury in *Hardeman v. Monsanto Co.*, No. 3:16-cv-00525-VC (N.D. Cal.) found Monsanto liable for failing to warn Roundup could cause cancer, liable for negligence, and liable in a design defect claim. The jury awarded the plaintiff a total of $80.27 million, with $75 million in punitive damages and $5.27 million in compensatory damages. The trial judge later reduced the punitive damages award, bringing the total award to $25.27 million. Monsanto has appealed the judgment and the matter is currently before the Ninth Circuit Court of Appeals.

62.     On May 13, 2019, a California jury found Monsanto likely caused a couple's cancer in *Pilliod v. Monsanto Co.,* No. RG17862702 (Cal. Super. Ct., Cnty. of Alameda). The jury found on a preponderance of the evidence Roundup was a significant contributing factor in causing the plaintiff's NHL. The jury awarded the plaintiffs a total of $2.055 billion, with $2 billion in punitive damages and $55 million in compensatory damages. The court later reduced the punitive and compensatory damages awards, bringing the total award to $87 million. Monsanto has appealed the judgment and the matter is currently before the California Court of Appeal.

**F.      Bayer Agrees to Pay Over $10 Billion to Settle Personal Injury Suits**

63.     Thousands of other personal injury (including wrongful death) claims have been filed against Monsanto claiming the Product caused the plaintiffs to develop cancer. They have been coordinated in a multi-district litigation, specifically: *In re Roundup Products Liability Litigation*, Case No. 3:16-md-02741 (N.D. Cal.).

64. On June 24, 2020, Bayer Corporation, the maker of Roundup and owner of Monsanto, announced it had reached a $10.1 billion settlement to resolve tens of thousands of personal injury cases coordinated in a multi-district litigation ("MDL") in the Northern District of California. These cases were brought by individuals who claim their use of Roundup caused their non-Hodgkin's (i.e., "NHL"). *See In re Roundup Products Liability Litigation,* Case No. 3:16-md-02741, at Dkt. No. 11042 (N.D. Cal. June 24, 2020) (Motion for Preliminary Approval of Class Action Settlement).

65. In addition to the settlement of the individual personal injury cases, was a proposed $1.1 billion class settlement to resolve a class case seeking certification of an issue class under Rules 23(b) and (c)(4) "to seek a litigated determination of the general causation dispute on a class-wide basis." *Id.* The MDL class settlement was withdrawn after the judge in the MDL expressed concerns about the terms. Had the MDL class settlement not been withdrawn and approved, it would have bound all individuals who were exposed to Roundup but who had not yet retained counsel. *Id.*

66. Certain MDL class settlement terms and the proposed class notice support Plaintiffs claims in the instant lawsuit. For example, in the $50 million Monsanto-funded notice plan for the class settlement, Monsanto agreed to notify the MDL class members of Roundup's potential to cause cancer by direct mail, email, posters for retailers to display in their stores, and through multi-national and local media. *Id.* As later discussed herein, this is essentially *the same form of relief Plaintiff seeks here*: disclosure of Roundup's potential carcinogenicity in a manner not involving a label change.

67. If approved, the proposed MDL class notice plan would have alerted MDL class members to the creation of a registration process to encourage MDL class to come forward and identify themselves and establish eligibility for certain "class benefits." *Id.* The class benefits in the MDL class settlement included a Diagnostic Accessibility Grant Program ("DAGP"), which is a medical outreach and assistance program that would have distributed grants to existing medical clinics and healthcare providers offering diagnostic services to class members who have not been diagnosed with NHL (representing 18% of the settlement fund). *Id.* The MDL settlement also included Interim Assistance Grants ("IAGs") to compensate class members diagnosed with NHL for the effects of the delay during the litigation standstill on an as-needed basis (representing 77% of the settlement fund). *Id.* Furthermore, the class benefits included a Research Funding Program ("RFP"), which would have funded medical and scientific research into the diagnosis and treatment of NHL (representing 5% of the settlement fund). *Id.* Notice would have been targeted to "large groups of individuals who may be itinerant, lack exposure to traditional media, or do not speak English as a first language." *Id.*

68. The approximately 200-page MDL class settlement agreement also included the creation of an independent "Class Science Panel," which would have considered a closed set of materials and issue "a binding and determinative" answer to the question of whether exposure to Roundup can cause non-Hodgkin's lymphoma in humans.. *Id.* The Class Science Panel would have been required, under the terms of the proposed class settlement, to issue its causation finding in four years, but not may do so earlier. *Id.* In exchange, MDL class members—broadly defined as anyone ever exposed to Roundup (who, as of June 24, 2020, had not retained counsel)—would have forever waived their right to punitive damages and be barred from filing a case against

Monsanto during this four-year period. *Id.* In the meantime, the $1.1 billion would have been used to provide immediate relief to diagnose or ameliorate NHL and compensate for delay (by providing the aforementioned "class benefits"). *Id.*

69.     The Class Science Panel's decision would have been binding on future litigants, and, in exchange, class members would have forever waived their right to punitive damages. By agreeing to the creation of this panel and by *agreeing to be bound* by the result in all future personal injury litigation, Monsanto acknowledged the existence of an ongoing scientific dispute as to whether exposure to Roundup has the potential to cause NHL.[4]

**G.     California's Classification of Glyphosate as a Chemical Known to Cause Cancer.**

70.     On July 7, 2017, following the IARC's classification of glyphosate, California's Office of Environmental Health Hazard Assessment (OEHHA) listed glyphosate as a chemical known to the State of California to cause cancer, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65").

71.     Proposition 65 prohibits retailers and manufacturers from knowingly and intentionally exposing California consumers to a chemical known to the State of California to cause cancer or developmental or reproductive harm without first providing a "clear and reasonable warning."

---

[4] Putative Class Counsel's swift withdrawal of the motion for preliminary approval of the class settlement following Judge Chhabria's comments questioning the viability of the settlement does not change the fact that Bayer filed a document in Federal Court acknowledging there is a possibility that exposure to Roundup may in fact cause cancer (and agreed to pay $1.1 billion in an effort to resolve this dispute).

72.    In response to OEHHA's inclusion of glyphosate on the Proposition 65 list, Monsanto, CropLife America, and several growers associations filed a motion alleging the IARC classification of glyphosate is contrary to the international scientific consensus and that requiring a Proposition 65 warning would be misleading to the ordinary consumer.

73.    On February 26, 2018, the Eastern District Court of California issued a preliminary injunction precluding OEHHA from enforcing its Proposition 65 warning requirements against glyphosate registrants, which would have taken effect on July 7, 2018. This injunction was made permanent on June 22, 2020. The Court however did not rule that glyphosate should be removed from the Proposition 65 list.

74.    On August 7, 2019, EPA's Office of Pesticide Program ("OPP") issued a letter to registrants of glyphosate products (the "OPP Letter") stating a Proposition 65 warning statement on glyphosate-based products would be "false and misleading" and would render them misbranded under FIFRA. The OPP letter was not the product of any formal proceedings, nor was it published in the Federal Register.

**H.        The EPA's Registration Review for Glyphosate**

75.    Since glyphosate's first registration, EPA has reviewed and reassessed its safety and uses, including undergoing registration review, a program that re-evaluates each registered pesticide on a 15-year cycle.

76.    In January 2020, after receiving and considering public comments, EPA issued its Interim Registration Review Decision for glyphosate, finding "there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." EPA stated it "will continue to monitor the open literature for studies that use

scientifically sound and appropriate methodology and relevant routes of exposure that have the potential to impact the risk evaluation of glyphosate."[5]

77.     EPA's review of glyphosate, however, was based on an incomplete and distorted factual record, largely due to efforts on the part of Monsanto to conceal glyphosate's risks. As described herein, Monsanto withheld relevant scientific evidence from EPA, in violation of federal law, and manipulated the scientific debate about glyphosate-based herbicides by "ghostwriting" scientific papers.

78.     Through the numerous personal injury and wrongful death lawsuits filed against Monsanto, which total in the tens of thousands, Monsanto obtained extensive medical documentation showing a link between Roundup and various types of cancer.

79.     The plaintiffs in the three California cases resulting in favorable jury verdicts for the plaintiffs (as described above) submitted medical records and expert testimony showing that Roundup caused those plaintiffs to develop cancer. Importantly, all of this medical documentation and information would have been provided to the Monsanto.

80.     Despite the exorbitant amount of medical information in Monsanto's possession that Roundup and/or glyphosate can cause cancer, as generated just by the three California cases, Monsanto did not turn any of this information over to EPA.

81.     Monsanto failed to comply 40 C.F.R. § 159.152, which requires "applicants to submit, as part of an application for registration, any factual information of which [it] is aware

---

[5] As of March 2020, multiple groups have sued EPA over its Interim Registration Review Decision for glyphosate. These groups include Center for Food Safety, Beyond Pesticides, the Rural Coalition, Organización en California de Lideres Campesinas, the Farmworker Association of Florida, Natural Resources Defense Council, and Pesticide Action Network North America.

regarding unreasonable adverse effects of the pesticide on humans or the environment." *Id.* Defendant's refusal to provide such information, including medical records and information provided to Monsanto in the thousands of personal injury lawsuits, to EPA constituted deception by omission and deprived this agency from making an informed decision as to whether Roundup is safe for human exposure and further deprived the opportunity for EPA from reaching an informed conclusion regarding Roundup's potential carcinogenicity.

82.    Defendant indeed has had a history of misleading the EPA regarding Roundup's potential carcinogenicity, by deception and omission.

83.    Beginning in the 1990s, as numerous studies found an association between Roundup and Non-Hodgkin Lymphoma (as described herein *supra*), Monsanto hired Dr. James Parry, a world-renowned genotoxicologist, to rebut the growing scientific consensus Roundup is genotoxic. This tactic backfired: Following his review, Dr. Parry provided a report to Monsanto that "glyphosate is capable of producing genotoxicity both in vivo and in vitro . . . ." Dr. Parry recommended that Monsanto conduct research on the genotoxicity of glyphosate-based herbicides; the mechanisms giving rise to genotoxicity; and the relevance of these mechanisms to the safety of glyphosate-based herbicides.

84.    Monsanto decided not to conduct the research Dr. Parry asked it to perform. Dr. Parry offered to conduct the research himself, but Monsanto refused. Monsanto's goal was not actually to determine whether glyphosate-based herbicides caused cancer but rather to find an expert that could influence regulators when genotoxicity issues arise. Monsanto failed to produce the Parry Report to EPA as required under 40 C.F.R. § 159.158. Because Dr. Parry never came around to

Monsanto's view of the science, Monsanto would not let him speak to regulators and his report was never submitted to EPA.

85.    Monsanto has also engaged in the practice of "ghostwriting" scientific papers to establish the safety of glyphosate-based herbicides, which, when published, appear to be authored by independent academic scientists.

86.    A noteworthy example is a paper published in 2000 purportedly written by G. M. Williams, *et al.* entitled, "Safety evaluation and risk assessment of the herbicide roundup and its active ingredient, glyphosate, for humans." This paper concluded "Roundup herbicide does not pose a health risk to humans." Although no Monsanto employee is listed as an author, William Heydens, a Monsanto employee, admits that he wrote the manuscript and provided final edits to the paper. EPA has consistently relied on this paper when considering the safety of glyphosate-based herbicides.

87.    Another example of Monsanto's surreptitious involvement in the science of glyphosate can be found in a memo dated August 4, 2015 by Monsanto scientist David Saltmiras, stating he "ghost wrote cancer review paper Greim, et al. (2015)." That paper, entitled, "Evaluation of carcinogenic potential of the herbicide glyphosate, drawing on tumor incidence data from fourteen chronic/carcinogenicity rodent studies," concluded "glyphosate does not present concern with respect to carcinogenic potential in humans." EPA has consistently relied on this paper when considering the safety of glyphosate-based herbicides.

88.    Immediately after IARC deemed glyphosate a probable carcinogen, Monsanto devised a response plan that included convening an expert panel to "[p]ublish comprehensive evaluation of carcinogenic potential by credible scientists" that could later be used for litigation

support. It worked with Intertek, an industry consultancy firm, to create a false impression that the expert panel was independent.

89.     On September 28, 2016, the "independent" expert panel published its conclusions in the journal Critical Reviews in Toxicology, in a paper entitled "A review of the carcinogenic potential of glyphosate by four independent expert panels and comparison to the IARC assessment." The paper concluded glyphosate was "unlikely to pose a carcinogenic risk to humans."

90.     Included in the paper was a "Declaration of Interest," which stated: "[t]he Expert Panelists . . . were not directly contacted by the Monsanto Company" and that "neither any Monsanto company employees nor any attorneys reviewed any of the Expert Panel's manuscripts prior to submission to the journal." These statements were blatantly false. Monsanto recruited, selected, and had direct contact with the experts, some of them receiving payments from Monsanto. Moreover, Monsanto was engaged in organizing, reviewing, and editing of the drafts, and had ultimate authority over the paper's content.

91.     The foregoing represent just a handful of the many scientific articles ghostwritten by Monsanto to manipulate the scientific debate about glyphosate-based herbicides, including Roundup, and to prevent regulators like EPA from learning their true risks.

## I.     Monsanto's Failure to Warn Consumers of Roundup's Carcinogenic Properties.

92.     Defendant's promotion, marketing, advertising, distribution, and labeling of Roundup leads reasonable consumers into believing Roundup is safe for its intended use, when it is not. Exposure to Roundup has the potential to cause cancer in humans, as explained herein.

93.     Defendant does not warn consumers of Roundup's potential to cause cancer or, at least, that there is a vigorous scientific dispute about Roundup's potential to cause NHL in humans.

94.     Customers rely on Defendants to offer quality and safe products. But instead of putting its customers' safety first and informing consumers about Roundup's potential health risks, Defendant manufactured, labeled, and marketed a potentially deadly product without any warning, all for its own financial benefit.

95.     Defendant's focus on its own financial gain is evidenced by its refusal to submit medical information evidencing a link between Roundup and cancer to EPA.

96.     Defendant was aware of the substantial danger to consumers while using Roundup, however Defendant did not notify consumers that exposure to Roundup could potentially cause cancer, including NHL.

97.     Defendant could and can notify consumers of the potential health risks by, among other things, providing information on its webpages for Roundup, in television and radio commercials, in-store signage, such as point-of-sale or shelf tags, posters, or press releases—yet has not done so.

98.     Plaintiff and other consumers were not warned by Monsanto and therefore did not know that using Roundup exposed them to chemicals that are hazardous and potentially carcinogenic to humans.

99.     Whether exposure to Roundup has the potential to cause cancer in humans would be important in a consumer's decision whether to purchase Roundup.

100.    The existence of an ongoing scientific debate about whether exposure to Roundup Products can cause NHL in humans would also be important in a consumer's decision whether to

purchase Roundup.

**J.      Plaintiff's Purchase of Roundup**

101.  During the Class Period,[6] Plaintiff has resided in Oregon and the State of Washington.

102.  Plaintiff has purchased Roundup Ready-to-Use Weed & Grass Killer III on multiple occasions, and his most recent purchase was in December 2018 from a Home Depot[7] located in Multnomah County, Oregon.

103.  When Plaintiff purchased the Roundup Ready-to-Use Weed & Grass Killer III, neither the Roundup label, nor in-store advertisements, nor Monsanto's webpages disclosed Roundup had the potential to cause cancer or, at the very least, that there was an ongoing scientific dispute concerning its potential carcinogenicity.

104.  Had Plaintiff known exposure to Roundup had the potential to cause cancer, or that there was an ongoing scientific dispute concerning its potential carcinogenicity, he would not have purchased it.

105.  Plaintiff suffered an economic injury because the economic benefit he received in purchasing the Roundup Ready-to-Use Weed & Grass Killer III was worth less than the economic benefit for which he bargained due to its potential carcinogenicity.

106.  Plaintiff learned Roundup had the potential to cause cancer after purchasing the Roundup Ready-to-Use Weed & Grass Killer III. At that time, Plaintiff stopped using the Product, which had not yet been consumed in its entirety.

---

[6] The "Class Period" is defined as August 19, 2017 through the date a class is certified.
[7] Home Depot U.S.A., Inc. is a Delaware corporation.

107. Plaintiff may purchase Roundup again if he believes Roundup has been reformulated to remove or mitigate its potential risks. Any such belief would be plausible given that Bayer recently announced plans to invest $5.6 billion over the next decade developing weed killers that do not contain glyphosate.

108. Plaintiff and the Class have been, are, and will continue to be aggrieved by Defendant's material omissions. Plaintiff and the Class are being deprived of the benefit of the bargain because Roundup is worth less than the economic benefit for which they bargained due to its potential carcinogenicity.

109. Defendant's concealment, suppression, or omission of material facts—not only from Roundup's label itself but also on the Roundup website in any advertising, marketing, or other disclosures to consumers—is material because Plaintiff and the Class purchased a product they believed to be safe, when in fact, Roundup is known to have links to cancer.

## CLASS ALLEGATIONS

110. Plaintiff re-alleges an incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

111. Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class (the "Class"):

**All persons who purchased at least one Product in the United States since August 19, 2017.**

112. The following are excluded from the Class: Defendant, its parent company, subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

113. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's' claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

**A.      Federal Rules of Civil Procedure, Rule 23(a) Factors.**

114. **Numerosity**: The members of the Class are so numerous that individual joinder of all class members is impracticable. The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network throughout the United States.

115. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, in-store signage, shelf tags, and/or published notice in newspapers, magazines, or other periodicals.

116. **Commonality.** This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. All members of the Class were exposed to Defendants' deceptive and misleading advertising and marketing claims and/or omissions alleged herein. Common questions of law or fact include:

  a.   whether Defendant, in its promotion, marketing, advertising, and labeling of Roundup, concealed, suppressed, or omitted material facts—i.e. Roundup's potential to cause cancer;

  b.   whether Defendant acted with the intention that others rely on such concealment, suppression or omission;

c. whether Defendant's concealment, suppression or omission of Roundup's potential to cause cancer is material to reasonable consumers;

d. whether Defendant's promotion, marketing, advertising, and labeling of Roundup caused Plaintiff and the Class to suffer an ascertainable loss;

e. whether Defendant violated the DCFA;

f. whether Plaintiff and the other members of the Class are entitled to damages under the DCFA; and

g. whether Plaintiff and the other members of the Class are entitled to injunctive relief and/or declaratory relief under the DCFA.

117. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually, and on behalf of the other members of the Class. Similar or identical statutory legal violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

118. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the same uniform misconduct described herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

119. **Adequacy.** Plaintiff, SCOTT GILMORE, is an adequate representative of the members of the Class because his interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously.

The Class' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**B.     Federal Rules of Civil Procedure, Rule 23(b)(2) Factors.**

120.   Defendant has acted or refused to act on grounds generally applicable to Plaintiff and members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

121.   Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant. Money alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to sell Roundup without informing its customers that using Roundup may be carcinogenic.

**C.     Federal Rules of Civil Procedure, Rule 23(b)(3) Factors.**

122.   **Common Issues Predominate**: As set forth in detail hereinabove, common issues of fact and law predominate because Plaintiff's claims are based on a deceptive common course of conduct. Whether Defendant's conduct is likely to harm reasonable consumers and violate the UCL is common to all members of the Class and are the predominating issues, and Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

123.   **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Given the size of the claims of individual Class members, as well as the resources of Defendant, few Class members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b. This action will permit an orderly and expeditious administration of the claims of Class members, will foster economies of time, effort, and expense ad will ensure uniformity of decisions;

c. Any interest of Class members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system; and

d. Without a class action, Class members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

## CAUSE OF ACTION

## COUNT I:  VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT ("DCFA"), Del. Code Ann. tit. 6, § 2511, *et seq.*

124. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

125.  The Delaware Consumer Fraud Act ("DCFA") prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the

concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." Del. Code Ann. tit. 6, § 2513.

126. The purpose of the DCFA is "to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State." Del. Code Ann. tit. 6, § 2512.

127. Defendant was, at all times relevant hereto, a "person" as defined by Del. Code Ann. tit. 6, § 2511(7).

128. Roundup was, at all times relevant hereto, "merchandise" as defined by Del. Code Ann. tit. 6, § 2511(6).

129. Defendant engaged in the "sale" and "advertisement" of Roundup as defined by Del. Code Ann. tit. 6, §§ 2511(1), (8), 2513.

130. Defendant indeed was responsible for the manufacture, promotion, marketing, advertising, distribution, labeling, and sale of Roundup.

131. Defendant concealed, suppressed, or omitted material facts with intent that others rely upon such concealment, suppression or omission, in violation of Del. Code Ann. tit. 6, § 2513.

132. Specifically, Defendant failed to disclose—on the Roundup label, on its webpages, on in-store advertisements, and through other means of disclosure—Roundup's potential to cause cancer including, at the very least, the existence of an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans.

133. Defendant should have been aware of the risks of Roundup due to the information

available to it, particularly since Defendant manufactures the Products, *supra*.

134.  The facts Defendant concealed, suppressed, or omitted are material because a reasonable consumer would consider them important factors in deciding whether to purchase Roundup.

135.  Defendant's omissions were uniform and material and constituted a continuing course of conduct of misleading and deceptive business practices.

136.  Plaintiff did not know exposure to Roundup has the potential to cause cancer at the time he purchased it. Plaintiff would not have purchased Roundup had he known it had the potential to cause cancer, or that there has been an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans.

137.  Plaintiff suffered an economic injury because the economic benefit he received in purchasing Roundup was worth less than the economic benefit for which he bargained due to its potential carcinogenicity.

138.  Plaintiff may purchase Roundup again if he believes it has been reformulated to remove or mitigate its potential risks.

139.  Plaintiff is entitled to bring this Action under the DCFA for damages. *See* <u>Del. Code Ann.</u> tit. 6, § 2525 ("A private cause of action shall be available to any victim of a violation of this subchapter").

140.  Plaintiff is also entitled to injunctive relief under the DFCA. *See* <u>Del. Code Ann.</u> tit. 6, § 2523. For example, Plaintiff alleges an order requiring Defendant to notify consumers of Roundup's potential to cause cancer (or, at least, the existence of a scientific dispute about whether exposure to Roundup causes NHL) may be appropriate. Defendant could disclose this information

on its webpages for the Roundup products, by asking retailers to post notice near where Roundup is sold, and/or presenting this information through various media, for example, on local television and radio, in consumers magazines, and on social media—all of which may be accomplished without changing the Roundup label.

141.   Plaintiff is entitled to reasonable costs and attorneys' fees in pursuit of this Action.

142.   Plaintiff seeks all available remedies, damages, and awards as a result of Defendants violations of DCFA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

i.   For an award of equitable relief for the cause of action set forth in Count I as follows:

  a.   Enjoining Defendant from continuing to engage, use, or employ any unlawful business acts or practices related to the manufacture, promotion, marketing, advertising, distribution, and sale of Roundup in violation of the DCFA;

ii.   For actual damages in an amount to be determined at trial for the cause of action set forth in Count I;

iii. For an award of attorney's fees and costs;

iv. For any other relief the Court might deem just, appropriate, or proper; and

v. For an award of pre- and post-judgment interest on any amounts awarded.

Respectfully submitted,

DATE: August 19, 2020

RHODUNDA WILLIAMS & KONDRASCHOW

*/s/ William J. Rhodunda, Jr.*
William J. Rhodunda, Jr. (No. 2774)
Chandra J. Williams (No. 4907)
Brandywine Plaza West
1521 Concord Pike, Suite 205
Wilmington, DE 19803
(302) 576-2000 (telephone)
(302) 576-2004 (facsimile)
Bill@rawlaw.com
Chandra@rawlaw.com

-and-

MILSTEIN JACKSON
FAIRCHILD & WADE, LLP
Gillian L. Wade (to be admitted *pro hac vice*)
gwade@mjfwlaw.com
Sara D. Avila (to be admitted *pro hac vice*)
savila@mjfwlaw.com
Marc A. Castaneda (to be admitted *pro hac vice*)
mcastaneda@mjfwlaw.com
10250 Constellation Boulevard
14th Floor
Los Angeles, California 90067
Telephone: (310)396-9600
Facsimile: (310)396-9635

***Counsel for Plaintiff, Scott Gilmore***

Scott Gilmore v. Monsanto Company
Class Action Complaint
Date of Filing: August 19, 2020
Page 33 of 33





# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Scott Gilmore

**DEFENDANTS**

Monsanto Company

**(b)** County of Residence of First Listed Plaintiff    Clark County, WA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New Castle County, DE
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
William J. Rhodunda, Jr. & Chandra J. Williams (No. 4907)
Rhodunda Williams & Kondraschow
1521 Concord Pike, Suite 205, Wilmington, DE 19803    [302-576-2000]

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☒ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | Liability / ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 340 Marine / Injury Product | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / Liability | | **LABOR** / **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 371 Truth in Lending | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 360 Other Personal / ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | Exchange |
| | Injury / Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - / ☐ 385 Property Damage | Leave Act | | ☐ 891 Agricultural Acts |
| | Medical Malpractice / Product Liability | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence | | | Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | State Statutes |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - | | | |
| | / Conditions of | | | |
| | / Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Delaware's Consumer Fraud Act ("DCFA"), Del. Code Ann. tit. 6, § 2511, et seq.

Brief description of cause:
Consumer Class Action

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
08/19/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ William J. Rhodunda, Jr. (No. 2774)

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____