EXHIBIT
4

# EXHIBIT 1

# CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement" or "Settlement"), effective upon the date of the signatories below, is made by and between Monsanto Company and Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams, on behalf of themselves and the Settlement Class (defined below) (collectively, the "Parties"), in the matter *Gilmore et al. v. Monsanto Company*, Case No. 1:20-cv-01085-MN (D. Del.) ("the Action").

**WHEREAS**, Class Counsel commenced numerous Related Actions against Monsanto and certain retailers regarding alleged false advertising and consumer fraud in connection with Monsanto's Roundup® Products beginning in July 2019;

**WHEREAS**, Class Representative Scott Gilmore commenced the Action for violation of Delaware Consumer Fraud Act against Monsanto in the United States District Court for the District of Delaware on August 19, 2020;

**WHEREAS**, the Parties disagree on the merits and viability of the Claims set forth in the Action's complaint, Monsanto denies any and all liability or wrongdoing, and Plaintiffs believe that all Claims are viable;

**WHEREAS**, the Parties have engaged in both informal and formal discovery in various actions but have not yet briefed class certification;

**WHEREAS**, the Parties engaged in a mediation session before retired United States Magistrate Judge Diane Welsh to determine whether a settlement of the Action could be reached and, at the end of the more than 14-hour mediation session, the Parties reached an agreement in principle;

**WHEREAS**, Plaintiffs have concluded that it is in the best interest of the Class to settle the Action on the terms set forth in this Agreement in order to avoid further expense, inconvenience, and delay, and on the basis of other factors bearing on the merits of settlement;

**WHEREAS**, Monsanto enters into this Agreement in order to avoid further expense, inconvenience, delay, and interference with business operations, and to dispose of the Action and to put to rest all controversy concerning the Claims that have been or could have been asserted;

**WHEREAS**, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed Claims. This Agreement, and all related documents, shall not be construed as any admission or concession by Monsanto or by any Party of any fault, liability, wrongdoing, or damage whatsoever. Preliminary certification of the Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor would Monsanto be precluded from challenging class certification in further proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved. This Agreement is inadmissible as evidence against any Party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any

Party to this Agreement. It is the Parties' desire and intention to effect a full, complete, and final settlement and resolution of all existing disputes and Claims as set forth in the Action.

**WHEREAS**, the Settlement Class (as defined below) and Monsanto wish to resolve, on a nationwide basis, any and all past, present, and future Claims the Settlement Class has or may have against the Released Persons of any nature whatsoever, as they relate to the allegations in the Action, and to that end, the Settlement Class and Monsanto intend that the United States District Court for the District of Delaware conditionally certify the Settlement Class for settlement, and that this Agreement will encompass and end all related pending, threatened, or possible litigation and/or Claims by any Party against the Released Persons;

**NOW, THEREFORE**, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions:

## A. Definitions

As used in this Agreement, the following terms enclosed within quotation marks have the meanings specified below:

1. "Action" means the matter *Gilmore et al. v. Monsanto Company*, Case No. 1:20-cv-01085-MN (D. Del.).

2. "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies, whether through the ownership of voting shares, by contract, or otherwise.

3. "Agreement" means this Settlement Agreement and Release.

4. "Second Amended Complaint" means the Second Amended Complaint in the Action.

5. "Approved Claim" means a claim approved by the Claims Administrator, according to the terms of this Agreement.

6. "Authorized Claimant" means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator.

7. "Boyette" means the plaintiff in the Related Action *Boyette v. Lowe's Companies, Inc.* and one of the named plaintiffs in the Second Amended Complaint, Amanda Boyette.

8. "Claims" means past, present, and future claims, counterclaims, actions, rights, remedies, causes of action, liabilities, suits, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, including any of the foregoing for equitable or injunctive relief, direct damages, indirect damages, consequential damages, incidental damages, punitive or

exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages or relief whatsoever, and whether based upon breach of contract, warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common-law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations, and/or any other legal (including common-law), foreign, statutory, equitable, or other theory or right of action, whether in law or in equity, fixed, contingent or noncontingent, known or unknown, discovered or undiscovered, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, ripened or unripened, perfected or unperfected, choate or inchoate, developed or undeveloped, liquidated or unliquidated, now recognized by law or that may be created or recognized in the future by statute, regulation, or judicial decision or in any other manner, and whether direct, representative, derivative, class, or individual in nature, in any forum that any Person had, has, or may have in the future.

9. "Claim for Relief" means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

10. "Claimant" means any Class Member who submits a Claim for benefits as described in Section I of this Agreement.

11. "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement.

12. "Claims Administrator" means the company approved by the Court to provide the Class Notice and to administer the claims process. The parties anticipate that Postlethwaite & Netterville, APAC will be the Claims Administrator.

13. "Claims Administration Expenses" means the fees charged and expenses incurred by the Claims Administrator in completing the Class Notice and claims administration process set forth in this Agreement.

14. Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely. The Claims Deadline shall end one hundred twenty (120) days after the Preliminary Approval Date.

15. "Class Member(s)" means all Persons that are members of the Settlement Class.

16. "Class Counsel" means the following attorneys of record in the Action: Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP and any additional attorneys at those firms assisting in the representation of the Class in this Action.

17. "Class Counsel's Expenses" means the amount awarded by the Court for any costs or expenses, other than the Class Counsel's Fees, incurred by Class Counsel, Plaintiffs' Counsel, or Class Representatives for prosecution of the Action and Related Actions.

18.     "Class Counsel's Fees" means the amount awarded as attorneys' fees to Class Counsel by the Court for Class Counsel's and Plaintiffs' Counsel's prosecution of the Action and Related Actions.

19.     "Class Notice" means, collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

20.     "Class Period" shall mean and refer to a time period based upon the state or territory where each Class Member made his or her purchases of the Products.  A list of the applicable periods for each state, district, or territory included in this Agreement is appended hereto as Exhibit B.

21.     "Class Released Claims" means the Claims released by the Class Members via this Agreement.

22.     "Class Representatives" means the named plaintiffs in the Action—Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and Williams—and any other individuals who may be added as plaintiffs to any amended pleading.

23.     "Court" means the United States District Court for the District of Delaware.

24.     "Default Payment Amounts" has the meaning set forth in Paragraph F.1.

25.     "Effective Date" means the date on which the judgment approving this Agreement becomes final.  For purposes of this definition, the Final Settlement Approval Order and Judgment shall become final at the latest date of the following dates: (i) if no appeal from the Final Settlement Approval Order and Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Final Settlement Approval Order and Judgment; or (ii) if an appeal from the Final Settlement Approval Order and Judgment is filed, and the Final Settlement Approval Order and Judgment is affirmed or the appeal dismissed (including, if necessary, after the resolution of any petition for rehearing or rehearing *en banc* and, if applicable, the conclusion of any rehearing proceedings), the date that the deadline to file a petition for certiorari has passed; or (iii) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (iv) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

26.     "Ezcurra" means the plaintiff in the Related Action, *Ezcurra v. Monsanto Co.* and one of the named plaintiffs in the Second Amended Complaint, Julio Ezcurra.

27.     "Final Settlement Hearing" or "Final Approval Hearing" means the hearing to be conducted by the Court to determine whether to enter the Final Settlement Approval Order and Judgment.

28.     "Final Settlement Approval Order and Judgment" or "Judgment" means the Court's final order approving the Agreement; entering judgment; dismissing the Action with prejudice; discharging the Released Parties of and from all further liability for the Released Claims; and permanently barring and enjoining the Releasing Persons from instituting, filing, commencing,

prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in any state court, any federal court, before any regulatory body or authority, or in any other tribunal, forum, or proceeding of any kind, against the Released Persons that asserts any Released Claims.

29.    "Gilmore" means the plaintiff in the Action, Scott Gilmore.

30.    "Hanna" means the plaintiff in the Related Action *Hanna v. Walmart* and one of the named plaintiffs in the Second Amended Complaint, Sherry Hanna.

31.    "Jewell" means the plaintiff in the Related Action *Jewell v. Walmart, Inc.* and one of the named plaintiffs in the Second Amended Complaint, Anthony Jewell.

32.    "Monsanto" means Monsanto Company and Bayer AG and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

33.    "Notice Period" means the notice period to potential Class Members.  Class Notice shall run for a period of one hundred (100) days and shall commence within fourteen (14) days after the Preliminary Approval Date.

34.    "Notice Plan" means the plan for dissemination of the Class Notice to be designed by the Claims Administrator and agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

35.    "Objection Deadline" means the first business day on or after seven (7) calendar days from the filing of the Motion for Final Approval of the Settlement and Application for Fees, or such other date as the Court may order in its Preliminary Approval Order.  It is the date by which the Class Members must file with the Court and serve on all Parties (i) a written statement objecting to any terms of the Settlement or to Class Counsel's Fees and (ii) a written notice of intention to appear if they expect to present in person at the Final Approval Hearing objections to any terms of the Settlement or to Class Counsel's Fees.

36.    "Opt-Out Deadline" means one hundred twenty (120) days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order.

37.    "Other Counsel" means any other attorney or attorneys, representing any Class Member, who are not Class Counsel or Plaintiffs' Counsel.

38.    "Party" or "Parties" means Plaintiffs, to include the Class Members, and Monsanto.

39.    "Person" means any individual, corporation, partnership, association, or any other type of legal entity.

40. "Personal Injury Claims" shall mean Claims that assert a right to recover damages for the actual physical injury or illness of a natural person. It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims.

41. "Plaintiffs" means Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, Williams, and the other Class Members.

42. "Plaintiffs' Counsel" means the following additional counsel for Plaintiffs: (1) Rhodunda Williams & Kondraschow, LLC; (2) The Law Offices of Howard Rubinstein; (3) Southern Atlantic Law Group, PLLC; (4) The Casey Law Firm, LLC; (5) Sheehan & Associates, P.C.; and (6) Harrelson Law Firm, P.A.

43. "Preliminary Approval Date" means the date of entry of the Court's order granting preliminary approval of the Agreement substantially in the form of the Preliminary Approval Order that will be submitted in connection with the Motion for Preliminary Approval of Settlement.

44. "Products" means and includes the list of Products appended hereto as Exhibit A.

45. "Related Actions" include the following actions:

   a. *Gilmore v. Monsanto Co. et al.*, No. 3:19-cv-1123 (D. Or.)

   b. *Waters v. Home Depot U.S.A., Inc.*, No. 50-2019-CC-009140 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

   c. *Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

   d. *Weeks v. Home Depot U.S.A., Inc.*, No. 2:19-cv-6780 (C.D. Cal.)

   e. *Weeks v. Lowe's Home Centers, LLC*, No. 2:19-cv-6828 (C.D. Cal.)

   f. *Jewell v. Walmart Inc.*, No. 4:19-cv-4088 (W.D. Ark.)

   g. *Shelly v. Target Corp.*, No. 50-2019-CC-010718 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

   h. *Biddle v. Lowe's Home Centers, LLC*, No. 50-2019-CC-011405 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

   i. *Morley v. Ace Hardware Corp.*, No. CONO-19-01064 (Cnty. Ct. 2d Cir. in and for Broward Cnty., Fla.)

   j. *Boyette v. Lowe's Companies, Inc.*, No. 4:19-cv-04119 (W.D. Ark.)

   k. *Thomas v. Costco Wholesale Corp.*, No. 1:19-cv-05278 (E.D.N.Y.)

   l. *Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524 (S.D. Fla.)

    m. *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.)

    n. *Taylor v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.)

    o. *Hanna v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.)

    p. *Williams v. Lowe's Home Centers, LLC*, No. 5:20-cv-01356 (C.D. Cal.)

    q. *Hanna v. Walmart Inc.*, No. CIV SB 2100789 (Cal. Sup. Ct.)

    r. *Gregorio v. Home Depot U.S.A., Inc.*, No CACE-21-002428 (2d Cir. in and for Broward Cnty., Fla.)

The term "Related Actions" is meant only as a shorthand to refer to these cases in the course of this Agreement and is not intended, and shall not be construed, to limit in any way the scope of the releases provided by the Agreement or the effect of this Agreement in actions other than the Related Actions.  It is expressly contemplated that certain actions not included within the definition of Related Actions contain Claims that shall be released by virtue of this Agreement.

    46. "Related Parties" means the past, present, and future manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, Retailers, clinical researchers, agents, licensees, contractors, joint ventures, joint venturers, and consultants of or with respect to the Products, and any and all past, present, or future suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale, or marketing of the Products, including the labeling and packaging thereof, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, divisions, joint ventures, and joint venturers; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

    47. "Released Persons" means, respectively, Monsanto; Scotts; any distributors and/or Retailers of the Products; Related Parties; any Persons that are currently, may in the future be, or have in the past been, marketing, advertising, distributing, selling, or reselling the Products and any past, current, or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, Affiliates, predecessors, successors, and assigns, and each of their respective past, present, or future officers, directors, employees, agents, members, franchisees, franchisors, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors, and assigns; and any other Person acting on behalf of Monsanto, Scotts, or any other Released Person.

    48. "Releasing Persons" means Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, Williams, and each Class Member and any Person claiming by or through each Class Member, or on their behalf, including, but not limited to, spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or Affiliates.

    49. "Retailers" means any person or entity that has offered, is presently offering, or may in the future offer the Products for sale or resale (including, without limitation, wholesale

distributors, private-label distributors, and all retailers and retail distributors), and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above. "Retailers" shall include, but is in no way limited by, Ace Hardware Corporation; Costco Wholesale Corporation; Home Depot U.S.A., Inc.; The Home Depot, Inc.; Lowe's Companies, Inc.; Lowe's Home Centers, LLC; Target Corporation; Walmart Inc.; and Wal-Mart Stores, Inc., and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

50.     "Scotts" means The Scotts Company LLC, Monsanto's exclusive marketing and distribution agent for Roundup® consumer products, and each and all of its respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

51.     "Settlement Class" means all Persons in the United States who, during the Class Period, purchased Products (as defined above) in the United States other than for resale or distribution. Excluded from the Settlement Class are (i) judicial officers and associated court staff assigned to this case, and their immediate family members; (ii) past and present (as of the Effective Date) officers, directors, and employees of Monsanto; (iii) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class pursuant to this Agreement and in the manner approved by the Court and set forth in the Class Notice.

52.     "Settlement Website" means a website maintained by the Claims Administrator to provide the Settlement Class with information relating to the Settlement.

53.     "Taylor" means the named plaintiff in the Related Action *Taylor v. Costco Wholesale Corp.* and one of the named Plaintiffs in the Second Amended Complaint, Paul Taylor.

54.     "United States" means the fifty states of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United States, the Commonwealth of the Northern Mariana Islands, any other territory or possession of the United States, and any United States military or diplomatic establishment wherever located.

55.     "Weeks" means the named plaintiff in the Related Action *Weeks v. Home Depot U.S.A., Inc.* and one of the named Plaintiffs in the Second Amended Complaint, James Weeks.

56.     "Williams" means the named plaintiff in the Related Action *Williams v. Lowe's Home Centers, LLC* and one of the named Plaintiffs in the Second Amended Complaint, Kristy Williams.

### B. Conditional Class Certification for Settlement Purposes Only

1.      For settlement purposes only, Plaintiffs agree to ask the Court to certify the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.      This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of (1) the validity of any Claim or allegation by Plaintiffs, or of any defense asserted by Monsanto, in this Action or any other actions or proceedings; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Party, Class Member, or their respective counsel; or (3) the propriety of class certification in the Action, Related Actions, or any other action or proceeding.

3.      For the sole and limited purpose of settlement only, the Parties stipulate to and request that the Court conditionally certify the Settlement Class under Rule 23(b)(3), which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as an admission of any kind or be used for any purpose in the Action or Related Actions or in any other pending or future action.  In the event that the Agreement is terminated pursuant to its terms or the Final Settlement Hearing does not occur for any reason, the certification of the Settlement Class shall be vacated, and the Action shall proceed as it existed prior to execution of this Agreement.

4.      The Court's certification of the Settlement Class shall not be deemed an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement and shall not be considered the law of the case, res judicata, or collateral estoppel in the Action, Related Actions, or any other proceeding unless and until the Court enters a Judgment.  Regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar Claims.

5.      In the event that the Court does not enter a Judgment, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Settlement Class for settlement purposes shall be null and void and the Court's certification order (if any is ordered) shall be vacated, and thereafter no new class or classes will remain certified.

6.      Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any new class in this Court or any other court if the Court does not enter a Judgment, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

7.      Subject to the Court's approval, and for settlement purposes only, Monsanto consents to the appointment of Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and

Williams as Class Representatives of the Settlement Class, and the appointment of Class Counsel as counsel for the Settlement Class.

8.     The Preliminary Approval Order shall contain a provision enjoining Class Members who have not opted out of the Agreement from proceeding with any Released Claims.

9.     Promptly following the filing of a motion for preliminary approval of this Agreement, Class Counsel shall make all reasonable and lawful efforts to ensure that plaintiffs in any pending Related Action or any other pending case with allegations and Claims similar to those in the Action consent to this Agreement and agree to stay or dismiss any such actions pending final approval of this Agreement.  If for any reason, after Class Counsel's reasonable efforts, such other plaintiffs will not consent to this Agreement and agree to stay or dismiss any such actions, or in the event that the court before which any such action is pending will not agree to a stipulated stay or dismissal, then Class Counsel shall reasonably cooperate with Monsanto in any effort to seek a stay of such actions so that notice, administration, and approval of this Agreement may proceed in an organized and efficient manner.

10.     Upon final approval of the Agreement by the Court, a Judgment substantially in the form agreed by the Parties, and conforming with the definition of Final Settlement Approval Order and Judgment above, will be entered by the Court.

## C.  Benefits of the Agreement

Class Counsel and the Class Representatives believe the Agreement confers substantial benefits upon the Settlement Class, particularly as weighed against the risk associated with the inherently uncertain nature of a litigated outcome; the complex nature of the Action; and the expense of continued proceedings through the completion of fact and expert discovery, class certification briefing, summary-judgment briefing, trial, and appeals.  On the basis of their evaluation of such factors, Class Counsel and Class Representatives have determined that settlement, based on the terms in this Agreement, is in the best interests of the Settlement Class.

## D.  Settlement Consideration

1.     The total cash consideration to be paid by Monsanto pursuant to this Agreement shall be an amount not less than **$23 million** (the "Floor Amount") and not greater than **$45 million** (the "Ceiling Amount"), which shall include all amounts that Monsanto has paid or is to pay under or in connection with this Agreement, including, but not limited to, all costs of Class Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

2.     Prior to the Effective Date, Monsanto's only monetary obligation shall be to pay those amounts necessary to cover the costs of Class Notice and Claims Administration Expenses. Monsanto shall pay such amounts promptly and as necessary to cover such costs.

3.     In no event shall Monsanto be required to contribute or pay an amount greater than the Ceiling Amount, when taking into account all amounts that Monsanto has paid or is to pay under or in connection with this Agreement, including, but not limited to, payments of or for Class

Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

     4.    The payment obligations set forth in this Agreement will not be subject to any interest obligation or inflation adjustment.

**E. Class Member Claims**

     1.    If the Ceiling Amount is sufficient to allow such payments (and subject to the further limitations and requirements set forth below) after payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, then for each unit of the Products purchased by an Authorized Claimant during the Class Period, that Authorized Claimant shall receive a standardized payment of the below amounts (the "Default Payment Amounts") for each Product purchased:

| Product | Default Payment Amounts Per Unit |
|---|---|
| 16 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 22 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 24 oz. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $1.50 |
| 24 oz. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.00 |

Settlement Agreement in *Gilmore et al. v. Monsanto*

| | |
|---|---|
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.00 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Weed and Grass Killer | $2.50 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.50 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.50 |
| 5 oz. Roundup® Precision Gel Weed and Grass Killer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.00 |
| 16 oz. Roundup® Weed & Grass Killer Concentrate Plus | $3.50 |

| | |
|---|---|
| 1.33 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.50 |
| 1.1 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 1.25 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $5.50 |

| | |
|---|---|
| 3-pack – 6 oz. Roundup® Weed & Grass Killer Concentrate Plus | $5.50 |
| 32 oz. Roundup® Concentrate Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $5.50 |
| 1.25 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $6.00 |
| 36.8 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 40 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 1.1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $6.00 |
| 1.33 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $7.00 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 2 × 7 oz. Roundup® Weed & Grass Killer Concentrate Plus | $7.50 |

| | |
|---|---|
| 0.5 gal. (64 oz.) Roundup® Concentrate Plus Weed & Grass Killer | $7.50 |
| 32 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $8.00 |
| 32 oz. Roundup® Concentrate Max Control 365 | $8.50 |
| Combination pack – 1.33 gal. Roundup® Ready-to-Use Max Control 365 and 8 oz. Roundup® Concentrate Max Control 365. | $9.00 |
| 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $9.50 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 8 oz. Roundup® Weed & Grass Killer Super Concentrate | $9.50 |
| Combination pack – 1.33 gal. Roundup® Extended Control Weed & Grass Killer Plus Weed Preventer and 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $10.50 |
| 35.2 oz. Roundup® Weed & Grass Killer Super Concentrate | $11.50 |

| | |
|---|---|
| 2-pack – 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $12.50 |
| 0.42 gal. Roundup® Weed & Grass Killer Super Concentrate | $14.00 |
| 0.5 gal. (64 oz.) Roundup® Weed & Grass Killer Super Concentrate | $15.00 |
| 1 gal. Roundup® Weed & Grass Killer Super Concentrate | $21.50 |
| 2.5 gal. Roundup® Pro Concentrate | $33.00 |
| 24 oz. Ace® Ready-to-Use Weed & Grass Killer | $0.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer | $1.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer with battery-operated sprayer | $3.00 |

| 32 oz. Ace® Concentrate Weed & Grass Killer | $3.00 |
|---|---|
| 1 gal. Ace® Concentrate Weed & Grass Killer | $5.50 |
| 32 oz. HDX® Concentrate Weed & Grass Killer | $1.50 |
| 0.5 gal. HDX® Concentrate Weed & Grass Killer | $3.00 |
| 2.5 gal. HDX® Concentrate Weed & Grass Killer | $12.50 |

2.     If, after accounting for payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, the Ceiling Amount is insufficient to allow the payments to Authorized Claimants of the Default Payment Amounts, then the payments to Authorized Claimants shall be adjusted downward on a pro rata basis to the extent necessary to permit the payment of all Claims for Relief by Authorized Claimants without exceeding the Ceiling Amount.

3.     If, after accounting for payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, and considering the Default Payment Amounts that would otherwise be paid to Authorized Claimants, the total amount to be paid by Monsanto under or in connection with this Agreement would be less than the Floor Amount, then the payment to Authorized Claimants shall be adjusted upward on a pro rata basis to the extent necessary to exhaust the Floor Amount.

4.     If, after all Approved Claims are paid, checks sent to Authorized Claimants remain unclaimed, uncashed, or otherwise not redeemed after one hundred eighty (180) days from the date of the checks, then (1) if a reversion to Monsanto of the full amount of the unclaimed, uncashed, or otherwise unredeemed checks would not cause the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount, then the full amount of those

checks shall revert to Monsanto; (2) if a reversion to Monsanto of the full amount of the unclaimed, uncashed, or otherwise unredeemed checks would cause the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount, then (a) whatsoever amount of unclaimed, uncashed, or otherwise unredeemed checks that can revert to Monsanto without causing the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount shall revert to Monsanto; (b) as to the remaining amount of unclaimed, uncashed, or otherwise unredeemed checks, (i) if a further pro rata payment to Authorized Claimants (other than those Authorized Claimants who did not cash or redeem their checks) is economically feasible in the judgment of the Claims Administrator, then such further payments shall be made; and (ii) if a further payment as described above is not economically feasible in the judgment of the Claims Administrator, then such amount shall be donated to the National Consumer Law Center.

5.      In the event that a further pro rata distribution to Authorized Claimants (other than those Authorized Claimants who did not cash or redeem their checks) is made pursuant to the above Clause E.4(2)(b)(i), the amount of any checks from that further pro rata distribution that remain unclaimed, uncashed, or otherwise not redeemed after one hundred eighty (180) days from the date of such checks shall be donated to the National Consumer Law Center.

## F.  Attorneys' Fees, Expenses, and Costs

1.      Class Counsel and Class Representatives shall request attorneys' fees and costs, including Class Counsel's Fees, and service awards, to be paid by Monsanto.  Monsanto will not contest a request for Class Counsel's Fees that do not exceed 25% of the Ceiling Amount. Monsanto will not oppose reasonable service awards, in an amount not to exceed $5,000 each, for the Class Representatives.  Notwithstanding the foregoing, the amount of Class Counsel's Fees and service awards to Class Representatives awarded by the Court is within the Court's discretion, and the amount awarded by the Court shall have no impact on the validity of this Agreement.

2.      The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of this matter, as well as the risk assumed by Class Counsel in investing years of labor and resources into gaining relief for the Settlement Class without guarantee of return. The Parties recognize also that litigation pursued in the Related Actions contributed significantly to bringing about the mediation in this matter and this Agreement and is appropriately considered by the Court in assessing the reasonableness of Class Counsel's Fees and Expenses.

3.      Monsanto shall pay to Class Counsel the amount of Class Counsel's Fees and Expenses awarded by the Court within twenty-one (21) calendar days after the Effective Date.

## G.  Retention of Claims Administrator

Monsanto shall retain the Claims Administrator to effect Class Notice and administration. The Claims Administrator shall assist with various administrative tasks, including, without limitation:

1.      arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

2. answering written inquiries from Class Members and/or forwarding such inquiries to Class Counsel;

3. receiving and maintaining forms of Class Members who wish to opt out of and be excluded from the Agreement;

4. establishing a Settlement Website;

5. establishing and staffing a toll-free informational telephone number for Class Members;

6. receiving and processing Claims for Relief and distributing payments to Authorized Claimants; and

7. otherwise assisting with administration of the Agreement.

**H. Timing**

All Claim Forms must be postmarked or received by the Claims Administrator by the Claims Deadline to be considered timely. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, in the Class Notice, on the Settlement Website, and on the front of the Claim Form.

**I. Procedure**

1. Class Notice will be designed to meet the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and due process. Class Notice shall include print and nationwide digital publication.

2. All Claims for Relief must be submitted with a Claim Form and received by the Claims Administrator.

3. The Claim Form will be available on the Settlement Website. The Claim Form will be available to fill out and submit online, for download, or will be mailed to Class Members upon request by calling or writing to the Claims Administrator. Class Members may submit their completed and signed Claim Forms to the Claims Administrator by mail or online, postmarked or submitted online, and on or before the Claims Deadline.

4. The Claim Form must include either valid proof of purchase or, subject to the limitations set forth below, an affirmation of the identity and quantity of the Products purchased. All Claim Forms must include:

a. Class Member name, address, email address, and telephone number;

b. identification of the quantity and type of Product(s) the Class Member purchased;

c. the Retailer and location (city and state) where the Products were purchased; and

d. the approximate date(s) or date ranges on or during which the Product or Products were purchased.

5. The Claims Administrator shall retain sole discretion in accepting or rejecting Claim Forms.

6.     Claims for Relief that are based only on an affirmation (i.e., that do not include valid proof of purchase) shall be limited to a maximum allowance (the "Maximum Allowance") of one (1) Product for each year or partial year (e.g., if the Class Period is five (5) years and three (3) months, this shall be treated as six (6) years for purposes of calculating the Maximum Allowance) of the Class Period (the number of years for each Class Member being determined by the state of that Class Member's purchases as set forth in the definition of Class Period above) with the exception of Claims for Relief for 1 gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 gal. Roundup® Pro Concentrate, and/or 2.5 gal. HDX® Weed & Grass Killer Concentrate.  Claims for Relief for 1 gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 gal. Roundup® Pro Concentrate, and/or 2.5 gal. HDX® Weed & Grass Killer Concentrate will require valid proof of purchase.

7.     Claims for Relief based on a valid proof of purchase are not subject to the Maximum Allowance, but for such Claims for Relief, it shall be in the Claims Administrator's discretion to determine whether the proof of purchase provided is genuine and sufficient.  The Claims Administrator may, at its discretion, require a declaration signed under penalty of perjury that provides additional information to confirm that the proof of purchase is genuine and sufficient. If the Claims Administrator is not satisfied with the proof of purchase provided, it may, in its discretion, deny or reduce the Claim for Relief.

8.     Monsanto shall fund, and the Claims Administrator shall pay out, approved Claims for Relief in accordance with the terms of this Agreement commencing sixty (60) calendar days after the Effective Date or as otherwise ordered by the Court.

9.     Class Members who do not submit a Claim for Relief or opt out (i.e., do nothing) will be subject to this Agreement and all of its terms, including, but not limited to, the releases, and will receive no payment.

### J.   Opt-Out Procedure

1.     Class Members who wish to opt out of and be excluded from the Agreement must download from the Settlement Website, or request from the Claims Administrator, an Opt-Out Form, which form shall be created by the Claims Administrator, and Class Members must complete and mail the form to the Claims Administrator, at the mailing address stated on the Opt-Out Form, postmarked no later than one hundred twenty (120) days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order (the "Opt-Out Deadline").

2.     The Opt-Out Form must be personally completed and submitted by the Class Member, and multiple-Class-Member "mass" or "class" opt-outs shall not be permitted.

3.     The written request to opt out must contain the Class Member's printed name, address, telephone number, and date of birth, and it must contain the dated personal signature of the Class Member seeking to exclude himself or herself from the Agreement.

4.     The Claims Administrator shall be responsible for processing opt-outs and objections, if any, including promptly providing Class Counsel and counsel for Monsanto with copies of same.

### K. Procedures for Objecting to the Settlement

Class Members have the right to appear and show cause why the Agreement should not be granted final approval, subject to each of the provisions of this paragraph:

1.  *Written Objection Required.* Any objection to the Agreement must be in writing, filed with the Court, and with a copy served on Class Counsel and counsel for Monsanto at the addresses set forth in the Class Notice and in Miscellaneous Provision Paragraph R.2 below, by the Objection Deadline.

2.  *Form of Written Objection.* Any objection regarding or related to the Agreement shall contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member and his or her attorney, and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection (the "Objection").

3.  *Authorization of Objections Filed by Attorneys Representing Objectors.* Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must either sign the Objection himself or herself or execute a separate declaration stating that the Class Member authorizes the filing of the Objection.

4.  *Effect of Both Opt-Out and Objection.* If a Class Member submits an Opt-Out Form, the Class Member will be deemed to have opted out of the Agreement, and thus to be ineligible to object. However, any objecting Class Member who has not timely submitted a completed Opt-Out Form for exclusion from the Agreement will be bound by the terms of the Agreement upon the Court's final approval of the Agreement.

### L. Release by Class Members

1.  Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged, and covenanted not to sue, the Released Parties from any and all Claims (with the exception of Personal Injury Claims), whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity, existing under federal or state law, regardless of legal theory or relief claimed, that any Class Member has or may in the future have against any Released Party arising out of or related in any way to:

    a.  any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate (whether or not such statement or alleged omission regarding an ingredient or component thereof is made specifically with regard to the Products, with regard to the ingredient or component thereof separately, or with regard to other products), or any scientific claims or debate regarding the same;

    b.  any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any

other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same; or

c.  any other alleged economic loss or injury (but not personal injury) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

Collectively, the foregoing are "Released Claims." For avoidance of doubt, this release does not release any Personal Injury Claims. To the extent that any action or proceeding includes both Personal Injury Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims will not be deemed released, but the other Claims will be released. Similarly, to the extent that any Class Member asserts a cause of action or other Claim that would otherwise fall within the scope of this release, but asserts the right to recover both damages caused by personal injury and some other type of damages or relief (for example, but not limited to, economic or statutory damages), that cause of action or Claim will survive this release only to the extent of damages caused by personal injury. For further avoidance of doubt, this release shall apply to Claims arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future.

2.  Upon the Effective Date, each of the Class Members shall be deemed to acknowledge and agree that the releases set forth in this Agreement are irrevocable and unconditional, inure to the benefit of Monsanto and all other Released Persons (which are intended third-party beneficiaries), and are intended to be construed as broadly as reasonably possible so that the Released Persons shall never be called upon to pay any further sums or expenses or be liable, directly or indirectly, to any person seeking contribution and/or indemnity from the Released Persons, or any of them, by reason of any legal actions brought against them pertaining in any way to, or arising from, or connected with the Released Claims.

3.  If any part or provision of the releases included in this Agreement is adjudicated to be invalid, illegal, or unenforceable in any jurisdiction, the relevant part or provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, the releases shall be deemed amended to delete herefrom the invalid or unenforceable part or provision, and the releases shall be in full force and effect as so modified. Any such modification or amendment shall apply only to the operation of that part or provision in the particular jurisdiction in which such adjudication was made and shall not affect such part or provision in any other jurisdiction. To the fullest extent permitted by applicable law, the Class Members hereby specifically and expressly waive any provision of law that renders any part or provision of the releases herein invalid, illegal, or unenforceable in any respect.

### M. Release of Plaintiffs

Upon the Effective Date, Monsanto will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, the

Class, and Class Counsel from any and all Claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Monsanto has or may have against any of them arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action and, in connection with the filing and conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

### N.  Section 1542 Waiver

ALL PARTIES ACKNOWLEDGE SECTION 1542 OF THE CALIFORNIA CIVIL CODE.  THE CLASS MEMBERS EXPRESSLY WAIVE AND RELINQUISH ANY RIGHTS OR BENEFITS AVAILABLE TO THEM UNDER THIS STATUTE.  CALIFORNIA CIVIL CODE SECTION 1542 PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."  NOTWITHSTANDING CALIFORNIA CIVIL CODE SECTION 1542 OR ANY OTHER FEDERAL OR STATE STATUTE OR RULE OF LAW OF SIMILAR EFFECT, THIS AGREEMENT SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH AND ALL OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING THOSE RELATED TO ANY UNKNOWN OR UNSUSPECTED CLAIMS, LIABILITIES, DEMANDS, OR CAUSES OF ACTION THAT ARE BASED ON, ARISE FROM, OR ARE IN ANY WAY CONNECTED WITH THE ACTION.

### O.  Class Action Fairness Act

1.      The Class Action Fairness Act of 2005 ("CAFA") requires Monsanto to inform certain federal and state officials about this Agreement.  *See* 28 U.S.C. § 1715.

2.      Under the provisions of CAFA, the Claims Administrator, on behalf of Monsanto, will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Agreement with the Court.  *See* 28 U.S.C. § 1715(b).

3.      The Parties agree that either the Claims Administrator or Monsanto is permitted to provide CAFA notice as required by law and that any such notice shall be done to effectuate the Agreement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

4.      If any of the notified federal or state officials takes any action adversely affecting the validity or enforceability of the Agreement or seeks to impose additional terms or liability on Monsanto for the matters resolved by the Class Released Claims, Monsanto may, at its option, suspend the implementation of the Agreement pending the outcome of the action initiated by the notified federal or state official or, provided that the Court has not yet entered the Final Settlement Approval Order and Judgment, may elect to void the Agreement by written notice to Class Counsel.

### P. Court Approval

1. Promptly after executing this Agreement, the Parties will submit to the Court the Agreement, together with its exhibits, and will request that the Court grant preliminary approval of the proposed Agreement, issue a Preliminary Approval Order, and schedule a Final Approval Hearing to determine whether the Agreement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for service awards should be granted. As part of the preliminary-approval motion, the Parties will request that the Court certify the Settlement Class provisionally for settlement purposes and formally to appoint Class Counsel. The Parties intend and acknowledge that any such certification and appointment would be for purposes of the Agreement only, and not effective in continuing litigation between the Parties, if any.

2. A Final Settlement Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than one hundred fifty (150) days after the Preliminary Approval Date. Upon final approval of the Agreement by the Court at or after the Final Settlement Hearing, the Parties shall seek and obtain from the Court the Final Settlement Approval Order and Judgment.

3. Objecting Class Members may appear at the Final Approval Hearing and be heard, subject to the provisions of paragraph K above. The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection.

4. If this Agreement is not given final approval by the Court, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval. Failing this, the Parties will be restored to their respective places in the litigation. In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Parties and will not be used in this or in any other proceeding for any purposes, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated.

### Q. No Public Statements and Media or Public Inquiry Plan

1. Other than as expressly permitted below, the Parties will refrain (directly, or through counsel or third parties) from making any public statements regarding the fact of or the terms of this settlement, absent written agreement signed by both Parties.

2. In responding to any inquiries from the public media concerning the Action and/or the Agreement, the Plaintiff and Class Counsel will limit their comments to the effect that "the matter has been settled to the satisfaction of all Parties subject to Court approval" unless a prior written agreement has been signed by both Parties. Nothing in this paragraph shall limit Class

Counsel's ability to communicate privately with a Class Member concerning this Action or the Agreement.

      3.    Monsanto or the Claims Administrator may make such public disclosures about the Action and Agreement as any applicable laws require.

      4.    Monsanto shall be permitted to respond to questions from media outlets to provide truthful information regarding the scope of this Agreement and the distinction between this Agreement and other class action settlements entered into by Monsanto.

      5.    Prior to filing the motion for preliminary approval, the Parties shall agree on the language of a press release regarding this Agreement.

## R. Miscellaneous Provision

      1.    *Entire Agreement*.  This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein.  This Agreement supersedes any prior agreement between the Parties, including the Term Sheet executed by the Parties.

      2.    *Notices Under This Agreement*.  All notices or mailings required by this Agreement to be provided to or approved by Class Counsel and Monsanto, or otherwise made pursuant to this Agreement, shall be provided as follows:

| Class Counsel | Monsanto |
|---|---|
| Gillian L. Wade<br>Milstein, Jackson, Fairchild & Wade, LLP<br>10990 Wilshire Boulevard, 8th Floor<br>Los Angeles, CA 90024<br>Telephone: (310) 396-9600<br>gwade@mjfwlaw.com | John J. Rosenthal<br>Winston & Strawn LLP<br>1901 L St. NW<br>Washington, DC 20036<br>Telephone: (202) 282-5785<br>jrosenthal@winston.com |

      4.    *Good Faith*.  The Parties acknowledge that each intends to implement the Agreement.  The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

      5.    *Binding on Successors*.  This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the Released Parties.

6.    *Arm's-Length Negotiations*.    The Agreement compromises Claims that are contested, and the Parties agree that the consideration provided to the Settlement Class and other terms of the Agreement were negotiated in good faith and at arm's length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' earlier private mediation session with Judge Diane Welsh, an experienced mediator.  The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.  Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.  All Parties agree that this Agreement was drafted by Class Counsel and Monsanto's counsel at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

7.    *Waiver*.  The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

8.    *Modification in Writing Only*.  This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties.

9.    *Headings*.  The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

10.    *Governing Law*.  This Agreement shall be interpreted, construed, and enforced according to the laws of the State of Delaware, without regard to conflicts of law.

11.    *Continuing Jurisdiction*.  After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement-administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law, including under the All Writs Act.

12.    *Agreement Constitutes a Complete Defense*.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.    *Execution*.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____ Date: June ___, 2021
SCOTT GILMORE


_____ Date: June ___, 2021

SHERRY HANNA


_____ Date: June ___, 2021

PAUL TAYLOR


_____ Date: June ___, 2021
JAMES WEEKS


_____ Date: June ___, 2021
KRISTY WILLIAMS


_____ Date: June ___, 2021
AMANDA BOYETTE


_____ Date: June ___, 2021
JULIO EZCURRA


_____ Date: June ___, 2021
ANTHONY JEWELL



THE MONSANTO COMPANY

*John Rosenthal*
_____
BY: John J. Rosnethal on behalf
of Monsanto Company

Date:  June 9, 2021

_____ Date: June __9__, 2021
SCOTT GILMORE


_____ Date: June ___, 2021
SHERRY HANNA


_____ Date: June ___, 2021
PAUL TAYLOR


_____ Date: June ___, 2021
JAMES WEEKS


_____ Date: June ___, 2021
KRISTY WILLIAMS


_____ Date: June ___, 2021
AMANDA BOYETTE


_____ Date: June ___, 2021
JULIO EZCURRA


_____ Date: June ___, 2021
ANTHONY JEWELL



THE MONSANTO COMPANY


/s/_____

BY:_____

TITLE:_____

Date:  June __, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June ___, 2021
SCOTT GILMORE

_____ Date: June 10, 2021
SHERRY HANNA

_____ Date: June ___, 2021
PAUL TAYLOR

_____ Date: June ___, 2021
JAMES WEEKS

_____ Date: June ___, 2021
KRISTY WILLIAMS

_____ Date: June ___, 2021
AMANDA BOYETTE

_____ Date: June ___, 2021
JULIO EZCURRA

_____ Date: June ___, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June ___, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June \_\_, 2021
SCOTT GILMORE

_____ Date: June \_\_, 2021
SHERRY HANNA

_____ Date: June \_\_, 2021
PAUL TAYLOR

_____ Date: June \_\_, 2021
JAMES WEEKS

_____ Date: June \_\_, 2021
KRISTY WILLIAMS

_____ Date: June \_\_, 2021
AMANDA BOYETTE

_____ Date: June \_\_, 2021
JULIO EZCURRA

_____ Date: June \_\_, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date: June \_\_, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June ___, 2021
SCOTT GILMORE

_____ Date: June ___, 2021
SHERRY HANNA

_____ Date: June ___, 2021
PAUL TAYLOR

_____ Date: June ___, 2021
JAMES WEEKS

_____ Date: June ___, 2021
KRISTY WILLIAMS

_____ Date: June ___, 2021
AMANDA BOYETTE

_____ Date: June ___, 2021
JULIO EZCURRA

_____ Date: June ___, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date: June ___, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June ___, 2021
SCOTT GILMORE


_____ Date: June ___, 2021
SHERRY HANNA


_____ Date: June ___, 2021
PAUL TAYLOR


_____ Date: June ___, 2021
JAMES WEEKS


_____ Date: June 9, 2021
KRISTY WILLIAMS


_____ Date: June ___, 2021
AMANDA BOYETTE


_____ Date: June ___, 2021
JULIO EZCURRA


_____ Date: June ___, 2021
ANTHONY JEWELL



THE MONSANTO COMPANY


/s/_____

BY:_____

TITLE:_____

Date:  June ___, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____  Date: June ___, 2021
SCOTT GILMORE


_____  Date: June ___, 2021
SHERRY HANNA


_____  Date: June ___, 2021
PAUL TAYLOR


_____  Date: June ___, 2021
JAMES WEEKS


_____  Date: June ___, 2021
KRISTY WILLIAMS


_____  Date: June 10, 2021
AMANDA BOYETTE


_____  Date: June ___, 2021
JULIO EZCURRA


_____  Date: June ___, 2021
ANTHONY JEWELL



THE MONSANTO COMPANY


/s/_____

BY:_____

TITLE:_____

Date:  June ___, 2021

_____ Date: June __, 2021
SCOTT GILMORE


_____ Date: June __, 2021
SHERRY HANNA


_____ Date: June __, 2021
PAUL TAYLOR


_____ Date: June __, 2021
JAMES WEEKS


_____ Date: June __, 2021
KRISTY WILLIAMS


_____ Date: June __, 2021
AMANDA BOYETTE


_____ Date: June 10, 2021
JULIO EZCURRA


_____ Date: June __, 2021
ANTHONY JEWELL



THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June __, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June ___, 2021
SCOTT GILMORE

_____ Date: June ___, 2021
SHERRY HANNA

_____ Date: June ___, 2021
PAUL TAYLOR

_____ Date: June ___, 2021
JAMES WEEKS

_____ Date: June ___, 2021
KRISTY WILLIAMS

_____ Date: June ___, 2021
AMANDA BOYETTE

_____ Date: June ___, 2021
JULIO EZCURRA

_____ Date: June 9, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June ___, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

*Settlement Agreement in Gilmore et al. v. Monsanto*

MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP
Gillian L. Wade

_____ Date: June 9, 2021
GILLIAN L. WADE
10990 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90024

WINSTON & STRAWN LLP
John J. Rosenthal:

_____ Date: June 9, 2021
JOHN J. ROSENTHAL
1901 L. St. NW
Washington, DC 20036

Settlement Agreement in *Gilmore et al. v. Monsanto*

## EXHIBIT A

Products

Roundup® Ready-to-Use Weed & Grass Killer (all sizes, applicators, and varieties)
Roundup® Ready-to-Use Weed & Grass Killer Plus (all sizes, applicators, and varieties)
Roundup® Weed & Grass Killer Concentrate Plus (all sizes and varieties)
Roundup® Weed & Grass Killer Super Concentrate (all sizes and varieties)
Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
Roundup® Ready-to-Use Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
Roundup® Concentrate Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
Roundup® Concentrate Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
Roundup® Ready-to-Use Max Control 365 (all sizes and varieties)
Roundup® Concentrate Max Control 365 (all sizes and varieties)
Roundup® Weed & Grass Killer Sure Shot Foam (all sizes and varieties)
Roundup® Precision Gel Weed & Grass Killer (all sizes and varieties)
Roundup® Pro Concentrate (2.5 gal.)
HDX® Weed & Grass Killer Ready-to-Use (all sizes and varieties)
HDX® Weed & Grass Killer Concentrate (all sizes and varieties)
Ace® Ready-to-Use Weed & Grass Killer (all sizes and varieties)
Ace® Weed & Grass Killer Concentrate (all sizes and varieties)

Settlement Agreement in *Gilmore et al. v. Monsanto*

## **EXHIBIT B**

Class Period for Each State/Territory

| State or Territory | Beginning of Class Period |
|---|---|
| Alabama | February 2017 |
| Alaska | February 2017 |
| American Samoa | February 2018 |
| Arizona | February 2017 |
| Arkansas | February 2016 |
| California | August 2015 |
| Colorado | February 2018 |
| Connecticut | February 2016 |
| Delaware | February 2017 |
| District of Columbia | February 2017 |
| Florida | February 2016 |
| Georgia | October 2016 |
| Guam | August 2016 |
| Hawaii | February 2017 |
| Idaho | February 2017 |
| Illinois | February 2017 |
| Indiana | February 2017 |
| Iowa | February 2017 |
| Kansas | December 2015 |
| Kentucky | February 2017 |
| Louisiana | February 2017 |
| Maine | February 2015 |
| Maryland | August 2016 |
| Massachusetts | October 2016 |
| Michigan | October 2014 |
| Minnesota | December 2013 |
| Mississippi | February 2015 |
| Missouri | August 2014 |
| Montana | February 2017 |
| Nebraska | February 2017 |
| Nevada | October 2016 |
| New Hampshire | February 2017 |
| New Jersey | November 2014 |
| New Mexico | February 2017 |
| New York | June 2011 |
| North Carolina | February 2017 |
| North Dakota | February 2015 |

| | |
|---|---|
| Northern Mariana Islands | February 2015 |
| Ohio | February 2017 |
| Oklahoma | November 2015 |
| Oregon | November 2015 |
| Pennsylvania | February 2015 |
| Puerto Rico | December 2019 |
| Rhode Island | February 2017 |
| South Carolina | February 2015 |
| South Dakota | February 2017 |
| Tennessee | February 2017 |
| Texas | March 2016 |
| Utah | February 2016 |
| Vermont | November 2013 |
| Virgin Islands | February 2015 |
| Virginia | September 2016 |
| Washington | February 2017 |
| West Virginia | February 2017 |
| Wisconsin | February 2015 |
| Wyoming | February 2017 |