BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | § § § | MDL NO. 2741 |

**BRIEF IN SUPPORT OF MOTION TO TRANSFER *GILMORE V. MONSANTO* TO MDL 2741 PURSUANT TO 28 USC § 1407**

## I. BACKGROUND

On July 15, 2021, plaintiff Brian Webb filed a notice of potential tag-along action in MDL 2741, *In re Roundup Products Liability Litigation*, notifying the Panel of the potential inclusion of the putative class action *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN currently pending in the United States District Court for the District of Delaware (the "Delaware District Court"). Dkt. # 2381, 2381-1. On July 19, 2021, the Clerk for the Panel notified the parties that *Gilmore* was not appropriate for inclusion in MDL 2741 pursuant to Judicial Panel on Multidistrict Litigation ("JPML") Rule of Procedure 7.1(b)(1). Dkt. # 2384. As a result, in accordance with JPML Rule 7.1(b)(1), involved party Mr. Webb now brings the present motion to transfer the *Gilmore* putative class action to MDL 2741 pursuant to Rule 6.1.

## II. TRANSFER IS APPROPRIATE

Transfer of the *Gilmore* action to MDL 2741 (the "*Roundup* MDL") under section 1407 is warranted for three separate but interconnected reasons. First, the proposed class settlement in *Gilmore* would operate to bind almost all plaintiffs in the MDL, and would release a significant portion of their claims. Second, because *Gilmore* and the *Roundup* MDL are premised on the same common core of operative fact, namely the toxicity of Roundup, its potential to cause non-Hodgkin's lymphoma in users of the herbicide, and the failure to disclose those facts, transfer is

warranted under the Panel's section 1407 jurisprudence. Finally, because *Gilmore* is not procedurally advanced, transfer would not prejudice any of the parties to that action.

Title 28 U.S.C. § 1407(a) authorizes the Panel to transfer actions for consolidated pretrial proceedings when consolidation will be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." When the Panel considers whether to transfer an action to an MDL, "[t]he critical issue under Section 1407 is whether [the to-be-included action] shares common questions of fact with the actions in the MDL." *In re Aqueous Film-Forming Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083 at *3 (J.P.M.L. Feb. 4, 2021). Because the *Gilmore* action involves the same factual questions as those involved in the *Roundup* MDL, and the proposed class settlement will expressly affect all parties in the *Roundup* MDL, Mr. Webb respectfully requests that the Panel transfer the *Gilmore* action to the MDL.

### A. The Proposed Combined Request for Class Certification and Class Settlement in *Gilmore* Will Directly Impact the Plaintiffs and Claims in the *Roundup* MDL

It is important to note at the outset the impact the *Gilmore* action will have on all cases currently pending in the *Roundup* MDL, and thus why decisions on class certification and preliminary-settlement approval should be made by the MDL judge, rather than the currently assigned district judge who has not had experience with these issues. As more thoroughly discussed below, *Gilmore* is a proposed-class-action consumer-fraud case against Monsanto regarding its deceptive marketing and labeling of Roundup, Ex. 3 at ¶ 6, which are evidentiary facts in all Roundup cases pending in the MDL. The *Gilmore* complaint even specifically references the ongoing *Roundup* MDL as a basis for its claims. *Id*. at ¶ 5 n.1.

Except for those who follow the explicit opt-out procedures, the *Gilmore* settlement proposes to bind "all Persons in the United States who, during the Class Period, purchased [Roundup] Products . . . in the United States other than for resale or distribution." Ex. 4 at

¶ (A)(51).  This would necessarily implicate all plaintiffs in the *Roundup* MDL, provided they meet the state-law timing requirements as defined in Exhibit B to the *Gilmore* proposed settlement agreement.

In addition to binding all purchasers of Roundup in the U.S., the proposed *Gilmore* settlement also operates to release a significant portion of the claims pending within thousands of cases that have already been transferred to the MDL court.  The proposed settlement purports to release all claims against Monsanto for:

> any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate . . . or any scientific claims or debate regarding the same.

*Id*. at ¶ (L)(1)(a).  The proposed settlement also releases all claims for:

> any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

*Id*. ¶ (L)(1)(b).  This release expressly includes claims made within cases long pending before the MDL court.[1]

Finally, the proposed settlement broadly releases "any other alleged economic loss or injury (but not personal injury) allegedly suffered by or inflicted on any Class Member because of

---

[1] The proposed settlement agreement provides that "[t]o the extent that any action or proceeding includes both Personal Injury Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims will not be deemed released, but the other Claims will be released.
Similarly, to the extent that any Class Member asserts a cause of action or other Claim that would otherwise fall within the scope of this release, but asserts the right to recover both damages caused by personal injury and some other type of damages or relief (for example, but not limited to, economic or statutory damages), that cause of action or Claim will survive this release only to the extent of damages caused by personal injury." Ex. 4 ¶ (L)(1).

or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof." *Id*. ¶ (L)(1)(c). Depending on the jurisdiction in which a particular plaintiff's claim arises, this incredibly broad language has the potential to release numerous non-personal-injury claims that are central to the MDL, such as medical costs and other economic losses. Because the proposed *Gilmore* settlement will affect all plaintiffs in the *Roundup* MDL, and operates to release a significant portion of their claims, the Panel should transfer *Gilmore* to the MDL.

In addition to the potential release of claims by almost all MDL plaintiffs, Judge Chhabria, presiding over the MDL, recently denied a broader attempt by Monsanto to certify a class in order to unilaterally resolve all of the present—and future—claims pending against it (which would have subsumed the class claims in *Gilmore*), because the proposed settlement did not adequately address either the litigation risk or future settlement value of the proposed class members. Dkt. # 87 in case 3:19-cv-02224-VC. In fact, although the proposed *Gilmore* class settlement was filed in Delaware District Court just 20 days after MDL Judge Chhabria's denial of a proposed class settlement in the MDL, it tellingly never even mentions the extensive preliminary approval and class certification proceedings in the MDL. *Id*.; Dkt. # 26-1 in case 1:20-CV-01085-MN.

In its review of the proposed class settlement, the MDL Court evaluated many of the same issues raised in the *Gilmore* litigation, including the adequacy of the class notice, adequacy of the relief proposed, and the ascertainability of class members, amongst other certification-related issues. Having already addressed the pitfalls of a potential class-action settlement involving Roundup plaintiffs, the MDL judge, already steeped in discovery, is in a superior position to the Delaware district judge to address the merits of the proposed *Gilmore* settlement and its potential to impact all Roundup plaintiffs, and especially the claims of plaintiffs *already before the MDL*

*judge*. Accordingly, the Panel should transfer *Gilmore* to the MDL to avoid inconsistent resolution of these crucial global issues.

### B. *Gilmore* Arises from the Same Factual Issues as the *Roundup* MDL Litigation

The Panel first created the *Roundup* MDL because "[r]egardless of the particular formulation of Roundup at issue (all of which employ glyphosate as the active ingredient), or the nature of plaintiff's exposure to glyphosate, all the actions entail an overarching query—whether glyphosate causes non-Hodgkin's lymphoma in persons exposed to it while using Roundup." Dkt. # 57 at p. 1-2. Furthermore, "Plaintiffs also allege that the use of glyphosate in conjunction with other ingredients, in particular the surfactant polyethoxylated tallow amine (POEA), renders Roundup even more toxic than glyphosate on its own." *Id*. at 2.

The Panel went on to note that centralization was appropriate because "[t]hese actions share common factual questions arising out of allegations that Monsanto's Roundup herbicide, particularly its active ingredient, glyphosate, causes non-Hodgkin's lymphoma." *Id*. Finally, the Panel based its decision to consolidate the Roundup cases into an MDL on the determination that "[i]ssues concerning general causation, the background science, and regulatory history will be common to all actions." *Id*.

Because these same factual enquires underpin the *Gilmore* action, transfer is necessary to avoid duplicative pretrial proceedings and to promote judicial efficiency and economy. According to the very first paragraph of Gilmore's complaint, "[t]his case arises from Monsanto's wrongful conduct in connection with its manufacture, promotion, marketing, advertising, distribution, labeling, and sale of the Lawn and Garden herbicide Roundup®, which contains the active ingredient glyphosate and other chemicals, including the surfactant polyethoxylated tallow amine

("POEA")." Ex. 3 at ¶ 1. Thus, the central factual issue presented in *Gilmore* is identical to that presented by the *Roundup* MDL.

The *Gilmore* complaint goes on to recite that "[a]t all relevant times, Monsanto was and is aware Roundup® has the potential to cause users to develop cancer. Monsanto is aware glyphosate is a Class 2A herbicide, meaning the World Health Organization's ("WHO") International Agency for Research on Cancer ("IARC") has determined it is probably carcinogenic to humans." *Id*. at ¶ 2. Finally, the *Gilmore* complaint notes that "Monsanto is also aware California has classified glyphosate as a chemical known to cause cancer, such as Non-Hodgkin's lymphoma ("NHL")." *Id*. at ¶ 3.

While the *Gilmore* action is premised upon statutory violations of the Delaware Consumer Fraud Act rather than personal injury, this distinction does not undermine the appropriateness of transfer to the *Roundup* MDL. Indeed, the settlement put before the Delaware District Court is a national global settlement. Moreover, as previously stated by the Panel, "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F.Supp.2d 1371, 1272 (J.P.M.L. 2005). Nevertheless, because the factual discovery underpinning *Gilmore* and the *Roundup* MDL is the same, transfer is appropriate. *See In re Aqueous Film-Forming Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083 at *3 ("The critical issue under Section 1407 is whether [the to-be-included action] shares common questions of fact with the actions in the MDL.").

The following allegations are central to Gilmore's consumer fraud action, which are premised on the same factual questions as those presented in the *Roundup* MDL. "Specifically, Defendant failed to disclose—on the Roundup label, on its webpages, on in-store advertisements, and through other means of disclosure—Roundup's potential to cause cancer including, at the very

least, the existence of an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans." Ex. 3 at ¶ 132. "Plaintiff did not know exposure to Roundup has the potential to cause cancer at the time he purchased it. Plaintiff would not have purchased Roundup had he known it had the potential to cause cancer, or that there has been an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans." *Id*. at ¶ 136.

Thus, both *Gilmore* and the *Roundup* MDL turn on the same factual issues of whether Roundup has the potential to cause non-Hodgkin's lymphoma, and whether Monsanto was aware of this fact but nevertheless continued to sell Roundup without an adequate warning. In order to promote judicial efficiency and avoid duplicative and potentially inconsistent proceedings, the Panel respectfully should transfer *Gilmore* to MDL 2741 for centralized pretrial proceedings.

Finally, the Panel has recently approved the transfer of putative class actions where they share common factual questions with previously consolidated individual proceedings. *See, e.g.*, Transfer Order at 2, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* MDL No. 2873 (J.P.M.L. June 7, 2021) ECF No. 1020 (denying the plaintiffs' motion to vacate CTO of class-action medical-monitoring claim because it was premised on the same underlying factual questions as the larger Aqueous Film-Forming Foams litigation). Here, where the putative class action has the potential to affect nearly all cases currently in the *Roundup* MDL for the reasons set forth above, transfer of the *Gilmore* putative class action is especially warranted.

### C. *Gilmore* is Not Procedurally Advanced

A review of the *Gilmore* docket shows that, except for the currently pending motion for class certification and preliminary settlement approval, nothing significant has occurred in the Delaware District Court. The Delaware District Court has not ruled on any motion, as both motions to dismiss were mooted by the filing of stipulated amended complaints. The Delaware

District Court has not entered any discovery orders. Nor has it entered any confidentiality orders or ESI protocols. Accordingly, no formal discovery has taken place. Finally, the Delaware District Court has not entered a single case-management order. Thus, despite the filing of the class certification and preliminary settlement approval motion, nothing has actually happened in the Delaware District Court to advance the *Gilmore* litigation.

Further, unlike MDL Judge Chhabria, who has spent years overseeing the *Roundup* MDL litigation, and has even presided over a bellwether trial, the Delaware District Court has no familiarity with the *Roundup* litigation at all. This lack of intimate experience with the nuances of the underlying MDL cases is crucial, because if *Gilmore* is not transferred, the Delaware District Court will have to make numerous decisions related to class certification and settlement approval. These would include the adequacy of the notice, the fairness of the settlement, the nuances of the release language and its impact on thousands of cases that have been part of the MDL, and other issues, despite the Delaware District Court lacking any underlying familiarity with the complex procedural, scientific, and liability issues which Judge Chhabria has spent years immersed in. Therefore, transfer of *Gilmore* to the MDL will result in a global approach to these interconnected issues not possible in the Delaware District Court.

### III.   CONCLUSION

Both the *Gilmore* action and the *Roundup* MDL are premised on the same factual enquiry: whether Roundup has the potential to cause NHL. The *Gilmore* action proposes to bind all purchasers of Roundup in the U.S. now and in the future,[2] and, if the settlement were approved, would release all claims sounding in fraud, breach of contract, or otherwise related to non-personal

---

[2] As stated in the proposed settlement agreement: "For further avoidance of doubt, this release shall apply to Claims arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future." Ex. 4 ¶ (L)(1).

injuries stemming from Roundup's toxicity, which would necessarily impact the claims of individual plaintiffs already long pending before Judge Chhabria. It would do this despite the fact that the certification and preliminary approval motion is the first substantive motion placed before the Delaware District Court, where the case is in its infancy. Transfer is therefore necessary to promote judicial efficiency and to avoid the inconsistent results that would ensue if a Delaware district judge were to decide matters affecting all plaintiffs in the MDL. Accordingly, the Panel respectfully should transfer the *Gilmore* action to MDL 2741.

Dated: July 28, 2021               Respectfully Submitted,

*/s/ N. Majed Nachawati*
N. Majed Nachawati (TX SBN: 24038319)
mn@fnlawfirm.com
S. Ann Saucer (LA SBN: 21368; TX: 00797885)
asaucer@fnlawfirm.com
Michael Gorwitz (MN SBN: 0400362)
mgorwitz@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

*Fears Nachawati, PLLC is counsel of record for Movant Brian Webb*