BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ROUNDUP | ) | |
| PRODUCTS LIABILITY | ) | MDL No. 2741 |
| LITIGATION | ) | |

### *TOMLINSON* PLAINTIFFS' JOINDER/RESPONSE TO MOTION TO TRANSFER *GILMORE V. MONSANTO* TO MDL 2741 PURSUANT TO 28 U.S.C. § 1407

On July 27, 2021, plaintiff Brian Webb filed a Motion to Transfer an action currently pending in the United States District Court for the District of Delaware—*Gilmore v. Monsanto Co.*, No. 1:20-cv-1085-MN—to MDL 2741. Doc. 2397. Ryan Tomlinson and Carol Richardson (hereinafter "*Tomlinson* plaintiffs") are named plaintiffs in a certified class action in Missouri state court who have sought to intervene in the *Gilmore* case to oppose the proposed settlement of that case. For the reasons outlined in Webb's Motion to Transfer and Brief in Support, Doc. 2397-1, and below, *Tomlinson* plaintiffs agree that transfer of the *Gilmore* case to the MDL is appropriate.

By any measure, the threshold question for transfer—whether there are common questions of fact—is satisfied because (as Webb's motion sets out) both the economic-loss claims in *Gilmore* and the MDL involve questions surrounding the safety of Roundup™ and Monsanto's knowledge. Transfer, thus, turns on judicial efficiency. Yet, despite Monsanto's willful concealment of *Gilmore* from this Panel when it was filed last year (in contravention of Monsanto's duty to notify the Panel of any *potential* tag-along action) judicial efficiency nonetheless justifies transfer. The pending settlement was reached under highly suspicious circumstances—no discovery occurred against Monsanto in *Gilmore*; the case seeks nationwide consumer class certification under Delaware law even though *none* of the named plaintiffs purchased their Roundup™ products or resided in Delaware; and, the proposed settlement would extinguish *Tomlinson* plaintiffs' certified Missouri state-court class action without any Missouri representative. In short, the settlement

presents key issues of fairness and adequacy that require weighing the claims that Monsanto concealed information relating to Roundup™ from consumers. The *Gilmore* court never had occasion to render any rulings on the merits of any claims in *Gilmore*. It would, thus, have to extensively educate itself on the strength and weaknesses of the Roundup™ claims to determine if the pending settlement was akin to a "reverse auction" and was fair, reasonable and adequate. In contrast, Judge Chhabria is already familiar with the strength and weaknesses of Roundup™ claims, having presided over the MDL for years. He has twice considered whether to approve a class-action settlement in the MDL. Judicial efficiency favors transferring *Gilmore* to the MDL court for that determination given its unique knowledge.

## BACKGROUND

*Tomlinson* plaintiffs are named plaintiffs in *Tomlinson, et al. v. Monsanto Company*, Case No. 1916-CV22788, pending in the circuit court of Jackson County, Missouri, asserting economic damages for Monsanto's violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq*. ("MMPA"). *Tomlinson* plaintiffs sought, and have been granted, certification of a class of "all Missouri residents who purchased Roundup for personal, family, or household use" including those who purchased Monsanto's lawn & garden products as well as products marketed and sold for agricultural and professional use. *Gilmore*, Case No. 20-1085-MN (D. Del.), Doc. 41 at 6–9. Monsanto moved for both reconsideration of the trial court's class certification order and permission for interlocutory appeal of that order to the Missouri Court of Appeals. *Tomlinson* Plaintiffs successfully opposed these motions, which were denied. *Id.*, Doc. 41-1 at 12–13. On May 14, 2021, Monsanto petitioned for writ of prohibition to the Missouri Supreme Court, seeking an order decertifying the class, which also was denied. *Id.*, Doc. 45 at 2.

The proposed *Gilmore* settlement purports to broadly release, *inter alia*, "alleged economic losses or injury (but not personal injury) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glysophate, or any scientific claim or debate regarding the same." *Id*. *Tomlinson* plaintiffs purchased one or more of the Products and would, therefore, be covered by the proposed release if effectuated.

*Tomlinson* plaintiffs sought leave to intervene in the Delaware action pursuant to Rule 24 of the Federal Rules of Civil Procedure to preserve their ability to protect their interests and the interests of the Missouri class they represent. *Id.*, Doc. 39, 41. As set forth in support of their motion to intervene, the proposed class certification and settlement fail to comport with Rule 23 for many reasons, including indicia of collusion, and is otherwise not in the interest of *Tomlinson* plaintiffs or the entire Missouri class (or, for that matter, the nationwide class proposed). *Id.*, Doc. 41. As a result, *Tomlinson* plaintiffs seek to oppose preliminary approval.[1] The briefing on the Motion to Intervene is complete and awaiting decision.

## ARGUMENT

In his brief in support of transfer, Webb identifies three reasons why transfer under § 1407 is appropriate: (1) the proposed *Gilmore* settlement will directly impact the plaintiffs and claims in the MDL; (2) *Gilmore* arises from the same factual issues as the MDL; and (3) *Gilmore* is not procedurally advanced. *See* Doc. 2397-1. *Tomlinson* plaintiffs fully agree.

---

[1] *Gilmore* plaintiffs and Monsanto also jointly moved to "stay … all pending or future state and federal actions" asserting claims released by the proposed settlement and to "enjoin Settlement Class Members from initiating, maintaining, or participating in such proceedings" until the final fairness hearing. *Gilmore*, Case No. 20-1085-MN (D. Del.), Doc. 32. *Tomlinson* plaintiffs seek leave to intervene in *Gilmore* to oppose the stay request as well. *Id.*, Doc. 41-2.

*First*, the proposed *Gilmore* settlement purports to release claims that have long been a part of this MDL.[2] Many of the cases transferred to the MDL include consumer fraud claims like the one at issue in *Gilmore*. *See, e.g.*, *Ramirez, et al. v. Monsanto Co.*, No. 3:19-cv-02224 (N.D. Cal.), Doc. 19 at 32, 35; *Perez, et al. v. Monsanto Company*, No. 19-cv-6808 (N.D. Cal.), No. 8:19-cv-2234 (M.D. Fla.), Doc. 1 at 36-37. As amended, the *Gilmore* complaint also alleges breach of warranty (*Gilmore*, No. 20-1085-MN (D. Del.), Doc. 22 at 35-36), another claim prevalent in the MDL litigation. *See, e.g.*, *Ramirez*, No. 3:19-cv-02224 (N.D. Cal.), Doc. 19 at 40; *Perez*, No. 19-cv-6808 (N.D. Cal.), Doc. 1 at 35-36. As a result, the attempt to carve out personal injury claims is of no consequence, as the proposed settlement still will impact plaintiffs, claims and cases in the MDL. Moreover, that a settlement has been proposed in *Gilmore* does not counsel against centralization. After October 4, 2016, when the Panel created the Roundup MDL, Monsanto was thereafter required to "promptly notify" the Panel "of any potential tag-along actions" in which Monsanto was a defendant. JPML L.R. 7.1(a). A tagalong action is one that shares a common question of fact with a transferred action. *Id.* at 1.1. However, Monsanto failed to give the required notice, which is the probable reason this case was not long ago presented to the Panel for consolidation.

*Second*, *Gilmore* shares many common questions of fact with lawsuits in the MDL as all claims arise "out of allegations that Monsanto's Roundup herbicide, particularly its active

---

[2] The settling parties in *Gilmore* no doubt will say that their proposed settlement does not include persons with personal injury or medical monitoring claims. As an initial matter, medical monitoring addresses persons not yet diagnosed with non-Hodgkin's lymphoma (*i.e.*, "exposure-only" Roundup users without present personal injury), and is not actually excluded from the proposed settlement in *Gilmore*. Second, both types of injury are still grounded in fact and legal claims common with those in the MDL. Indeed, Monsanto sought to globally settle all claims of persons with and without diagnoses through a proposed settlement in *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224, which asserted both consumer protection act claims and breach of warranty claims. *See id.*, Dkt. No. 19.

ingredient, glyphosate, causes non-Hodgkin's lymphoma." *In re: Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (U.S. Jud. Pan. Mult. Lit. 2016). Indeed, that is a central issue in the MDL. Other common questions include Monsanto's representations and omissions regarding the dangers of Roundup, its knowledge thereof, and efforts to influence and manipulate scientific information, uniformly alleged in MDL cases, as well as the *Gilmore* complaint. *See Ramirez*, No. 3:19-cv-02224 (N.D. Cal.), Doc. 19; *Gilmore*, No. 20-1085-MN (D. Del.), Doc. 22. In *Gilmore*, the plaintiffs concede common questions, representing that they relied on "discovery from personal-injury litigation" in the MDL. *Gilmore*, Case No. 20-1085-MN (D. Del.), Doc. 25 at 44. That *Gilmore* involves a consumer fraud claim is no reason to deny transfer. The MDL also involves consumer fraud claims, and, moreover, the JPML commonly groups economic-loss claims with personal-injury claims in a single MDL once noticed. *E.g., In re: Yasmin, Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 655 F. Supp. 2d 1343, 1344 (U.S. Jud. Pan. Mult. Lit. 2009) ("the Panel has frequently combined actions involving claims relating to sales and marketing of medications with actions involving personal injury claims"); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1382 n.9 (U.S. Jud. Pan. Mult. Lit. 2019) (collecting cases in which Panel consolidated economic-loss claims with personal-injury claims).

*Third*, judicial efficiency favors transfer. *Gilmore* is in its infancy. *Gilmore* was filed in August 2020 and the proposed settlement reached without discovery, on a purported nationwide basis, with a mediator hired within a month. *Gilmore*, Case No. 20-1085 (D. Del.), Dkt. 41-1 at 34–37. Judge Chhabria has spent years overseeing this MDL, including presiding over jury trials involving the same issues presented by the *Gilmore* action. In addition, Judge Chhabria has already considered proposed class action settlements in the MDL, so he is well-versed in issues presented

by the proposed *Gilmore* settlement. *In re: Roundup Prods. Liab. Litig.*, MDL No. 2741 (N.D. Cal.), Doc. 11182; *Ramirez*, No. 3:19-cv-02224 (N.D. Cal.), Doc. 87. Judge Chhabria has experience not only with settlement issues (including associated certification) but merits issues, and centralization serves the efficiency goals of 28 U.S.C. § 1407 as to both consideration of the proposed settlement and ongoing litigation should approval be denied.

## CONCLUSION

For these reasons, and those set out in Webb's Motion and Brief in Support, *Tomlinson* plaintiffs request transfer of *Gilmore* to MDL 2741.

Date: August 19, 2021

Respectfully submitted,

**GRAY, RITTER & GRAHAM, P.C.**

*/s/ Don M. Downing*
Don M. Downing, Mo. Bar #30405
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
Facsimile: (314) 241-4140
ddowning@grgpc.com

and

**STUEVE SIEGEL HANSON LLP**
Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hilton@stuevesiegel.com
stueve@stuevesiegel.com