**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |

**BRIEF IN OPPOSITION TO MOTION TO TRANSFER *GILMORE V. MONSANTO* TO MDL 2741 PURSUANT TO 28 USC § 1407**

Plaintiffs Scott Gilmore, Julio Ezcurra, James Weeks, Amanda Boyette, Anthony Jewell, Paul Taylor, Sherry Hanna, and Kristy Williams ("Plaintiffs") in *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN, currently pending in the United States District Court for the District of Delaware ("Delaware District Court") ("*Gilmore*"), hereby submit this brief in opposition to Movant Brian Webb's ("Mr. Webb") Motion to Transfer *Gilmore v. Monsanto* to MDL 2741 ("MDL") Pursuant to 28 USC § 1407 (the "Motion" or "Webb Br.").[1]

## I.    INTRODUCTION

Mr. Webb—a non-party to *Gilmore* who does not even have standing to bring the instant Motion—fails to satisfy the standard set forth in 28 U.S.C. § 1407 ("Section 1407") and his Motion should be denied. [2] *Gilmore* is a false advertising consumer class action, arising under the Delaware Consumer Fraud Act ("DCFA"), seeking purely economic damages related to the

---

[1] Prior to the filing of the instant motion, the Panel determined that *Gilmore* should not be transferred to the MDL. *See* MDL Dkt. 2384.

[2] Under Section 1407(c)(ii), a motion to transfer may only be brought "by a party in any action in which transfer for coordinated or consolidated pretrial proceedings may be appropriate."

purchase price of certain Roundup products, and alleging class members are harmed *at the point of purchase* because there are no disclosures—on the Roundup label or anywhere—as to the potential health risks, including cancer, associated with the use of product.  In order to be a member of the putative *Gilmore* class, one need have only purchased the product. The post-purchase use, exposure, and manifestation of personal injuries allegedly caused by Roundup are not elements of Plaintiff's DCFA and warranty claims, nor need they be established for Plaintiff's to prevail on the merits under the DCFA.

*Gilmore* and the MDL differ significantly on the question of liability for any omissions and recoverable damages flowing therefrom: in other words, proving that use of Roundup Products caused a plaintiff's cancer (or other illness) on a failure to warn theory of liability is very different than proving, on a class-wide basis, that the lack of any kind of warning on the Products (or elsewhere) constitutes consumer fraud and caused putative class members to uniformly overpay for the Products.  It is because of these stark differences that the *Gilmore* Settlement has always carved out personal injury claims. The *Gilmore* Settlement has also been amended to further clarify—for the avoidance of any doubt—that damages arising from claims for personal injuries are expressly excluded from the release.  The *Gilmore* Settlement will have no impact on the pending (or future) personal injury claims in the MDL.

Transfer is thus inappropriate because it does not promote the just and efficient conduct of the *Gilmore* action, nor does it serve the convenience of the parties and witnesses—two critical requirements for transfer under Section 1407. Transfer is particularly unjust and inefficient because it would delay the approval of the proposed nationwide class action settlement in *Gilmore*—which, crucially, **would not** release or affect any aspects of the personal injury or medical monitoring claims (or claims for economic injury arising therefrom) at issue in the MDL.

Contrary to Mr. Webb's contentions, *Gilmore* is indeed procedurally advanced because it has resolved, and to the extent the settlement somehow affected the already-centralized actions, Mr. Webb (or any other party in the MDL) will have the opportunity to object when Plaintiffs move for final approval in the Delaware District Court. Transfer also would not serve the convenience of the parties and witnesses, particularly because Plaintiff's action is pending in Delaware, Monsanto's state of incorporation, and transfer will take the only issue pending before the court in Delaware—whether the settlement is fair, reasonable and adequate under Rule 23—away from the current Judge and cause undue delay. For these reasons, Plaintiffs respectfully request that the Panel decline to transfer the *Gilmore* action to the MDL.

## II.    BACKGROUND

Plaintiffs' Second Amended Complaint alleges Monsanto engaged in the marketing, labeling, and sale of its glyphosate-containing Roundup® products (the "Products") without disclosing—on the Roundup® label, on its webpages, on in-store advertisements, or through any other means of disclosure—that such products potentially cause cancer, or at the very least, that there is an ongoing scientific dispute concerning the Products' potential carcinogenicity. *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN (D. Del.) (filed Aug. 19, 2020), ECF No. 22 at ¶ 156. Plaintiffs allege Monsanto's conduct constitutes a violation of Delaware's Consumer Fraud Act ("DCFA"), Del. Code Ann. tit. 6, § 2513, and breach of warranty. Plaintiffs only seek recovery for economic loss resulting from their purchase of the Roundup product, an injury that occurs at the point of purchase—not for personal injuries (including economic or punitive damages arising therefrom) or the costs of medical monitoring or screening for potential physical injury or illness. *Id.* at ¶ 161-62, 170. Mr. Webb's repeated assertions Plaintiffs are required to prove that use of the Products caused them to develop cancer is wrong. Plaintiffs need only prove Monsanto's conduct

of not disclosing the ongoing scientific debate as to the Products' potential carcinogenicity on the Products' label or otherwise violated the DCFA, and caused Plaintiffs' to overpay for the Roundup products. *Id.* at ¶¶ 2-8, 161. Indeed, there are no allegations that any of the Plaintiffs in *Gilmore* developed cancer because of exposure to Roundup, nor are any damages sought for any kind of personal injuries.

On February 16, 2021, Plaintiffs and Monsanto participated in a mediation following briefing on a motion to dismiss in *Gilmore*, and years of litigation and discovery in several related consumer class actions against Monsanto and certain retailers of the products. *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN (D. Del.), ECF Nos. 25 to 10-11, 21. After extensive arm's length negotiations, the parties reached an agreement to settle the action, and the related actions, in principle on a nationwide basis. *Id.* On June 14, 2021, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for the Purposes of Settlement and their Joint Motion to Stay Related Proceedings with Monsanto. *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN (D. Del.), ECF Nos. 24-32. Plaintiffs' proposed settlement agreement is attached as Exhibit 4 to Mr. Webb's Motion ("Ex. 4").

The *Gilmore* Settlement would bind "all Persons in the United States who, during the Class Period, purchased [Roundup] Products . . . in the United States other than for resale or distribution"—during the applicable Class Period (which depends on the state in which each Class Member made their purchase of the Products).  Ex. 4 at ¶ (A)(51). Although certain plaintiffs in the MDL may fall within this Settlement Class, the release extends only to false advertising cases, breach of contract and breach of warranty cases, and any case seeking to recover for economic loss or injury as a result of Monsanto's misrepresentations or omissions concerning the carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the

Products or any ingredient or component thereof. *Id.* at ¶ (L)(1)

Having already agreed to clarify the scope of the release to confirm it does not include medical-monitoring claims before the instant motion was filed (*see Gilmore* ECF No. 49), the *Gilmore* parties agreed to also make amendments to provide further clarity that the release *does not include* any claims for personal injury or any alleged losses flowing therefrom. *See* Proposed Amended Settlement Agreement, filed August 19, 2021 (*Gilmore* ECF No. 59-1), at ¶¶ (A)(41), (A)(32), (L)(1), attached hereto as Ex. A.

Specifically, the proposed Amended Settlement Agreement defines "Personal Injury Claims" as:

> Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages, income, earnings, or earning capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions. It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims.

*Id.* at ¶ 41. Moreover, the Amended Settlement Agreement also contains the following disclaimer:

> [T]his release does not release any Personal Injury Claims or Medical Monitoring Claims. To the extent that any action or proceeding includes both Personal Injury Claims or Medical Monitoring Claims[3] and Claims that would otherwise be released by this Agreement, the Personal Injury Claims and/or Medical Monitoring Claims will not be deemed released, but the other Claims will be released. By way of example, if a Class Member brought an action asserting that he or she bought and used Roundup® products that failed to warn of an alleged risk of Non-Hodgkin Lymphoma and that this caused them to develop Non-Hodgkin Lymphoma, and sought to recover damages for their physical injury, for lost wages, and for medical bills, neither that Personal Injury Claim nor the related damages (including

---

[3] The proposed amended settlement agreement defines "Medical Monitoring Claims" as "Claims that seek to require, or recover damages amounting to the costs of, medical monitoring or screening for potential physical injury or illness of a natural person." *Id.* at (A)(32).

> economic damages such as lost wages or medical bills) would be released by this Settlement. For further avoidance of doubt, this release shall apply to Claims (other than Personal Injury Claims and Medical Monitoring Claims) arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future

*Id.* at ¶ (L)(1). As is made abundantly clear, the *Gilmore* Settlement has no impact on personal injury claims in the MDL and would only release claims seeking to recover economic losses related to the purchase of the Products. Any economic losses flowing from personal injury or medical monitoring claims (e.g., lost wages or medical bills) would still be recoverable in the MDL.

## III.    LAW AND ARGUMENT

### A.    Legal Standard

Section 1407 provides for transfer of "civil actions involving one or more common questions of fact" where such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. "Regarding these three criteria—common factual questions, convenience of parties and witnesses, and just and efficient conduct—"[b]efore transfer will be ordered, the Panel must be satisfied that ***all*** of the statutory criteria have been met." *In re Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) (emphasis added). While petitioners suggest the 'critical' (i.e., determinative) issue is whether the actions share common factual questions (Webb Br. at 2), this is simply not the case.

These three criteria are not analyzed in a vacuum. Rather, "'[t]he Panel's statutory mandate is to weigh the interests of all the plaintiffs and all the defendants, and to consider multidistrict litigation as a whole in light of the purposes of the law.'" *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 437 F. Supp. 3d 1365, 1366 (J.P.M.L. 2020) (quoting *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1229 (J.P.M.L. 1977)). The basic purpose

underlying Section 1407 is to secure the "just, speedy and inexpensive determination of every action." *In re National Student Marketing Litigation*, 368 F. Supp. 1311, 1316 (J.P.M.L. 1973) (citing Fed. R. Civ. P. 1).

      **B.**    **Transfer Will Not Promote the Just and Efficient Conduct of the *Gilmore* Action.**

Here, transfer will not 'promote the just and efficient conduct' of such actions (namely the *Gilmore* action). Also, transfer would not only fail to promote but actually impede the 'speedy and inexpensive determination' of the *Gilmore* action.

      **1.**    **Transfer is unjust because it will delay the approval of a settlement that does not release any aspects of the personal injury claims at issue in the MDL.**

The Panel has not hesitated to deny transfer motions on grounds it would delay approval of a nationwide class action settlement. *See In re Wells Fargo Fraudulent Account Opening Litig*., 282 F. Supp. 3d 1360, 1361 (J.P.M.L. 2017) (denying a motion to transfer where parties "recently reached a nationwide class settlement in principle, a motion for preliminary approval of their proposed settlement [was] due in less than a month, and a hearing on the motion [was] set to take place in less than two months"); *In re JPMorgan Chase Bank, N.A.*, 959 F. Supp. 2d 1372, 1372-73 (J.P.M.L. 2013) (centralization not appropriate where parties reached a settlement in principle and "intend[ed] to file a motion for preliminary approval of their proposed nationwide class settlement"); *In re Power Balance, LLC, Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1345, 1346 (J.P.M.L. 2011) (denying transfer motion where parties "recently [] moved for preliminary approval of a proposed nationwide class settlement").

Although delay to the approval of Plaintiffs' proposed settlement is a sufficient reason to deny Mr. Webb's Motion, transfer would be particularly unjust because it would delay approval of a settlement that ***does not release any aspects of the personal injury or medical monitoring***

***claims at issue in the MDL****. See* Section 1407 (transfer is appropriate only where it would "promote the just and efficient conduct of such actions"). Mr. Webb is incorrect that the proposed settlement would have the potential to release claims for medical costs and other economic losses related to personal injuries. Webb Br. at 4. Such claims are (and always have been) expressly excluded from the release. *See* Proposed Amended Settlement Agreement at ¶ (L)(1). As articulated *supra*, the proposed settlement would release only such claims that seek to recover economic losses related to the purchase of the product which, contrary to Mr. Webb's contentions, is not "a significant portion of the [Roundup MDL plaintiffs'] claims." Webb Br. at 4. Transfer should be the "last solution after considered review of all other options," *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012), and the circumstances militate against it here.

> **2.     Transfer is inefficient because the *Gilmore* action is settled, and the Rules already provide a mechanism for petitioners to raise their concerns.**

Mr. Webb's argument that '*Gilmore* is not procedurally advanced' is both legally inapposite and factually inaccurate. Webb Br. at 7-8. Though Section 1407 is meant to secure the 'just, speedy and inexpensive determination of every action,' Mr. Webb argues the fact that an action was settled in an inexpensive and efficient manner is grounds to delay approval of the settlement. This is not the standard, and analyzed properly in the context of Section 1407's efficiency requirement, the fact that this case has *settled* makes transfer even less desirable.

Even if the *Gilmore* settlement somehow affected the already-centralized actions (it does not), it does not follow that efficiency requires transfer. Rather, the opposite is true. The *Gilmore* case was settled after years of litigating related matters, extensive negotiations, and the filing of a motion for preliminary approval. There is nothing 'efficient' about delaying and frustrating efforts

to resolve litigation that has no impact on the cases in the MDL and the preliminary approval process established by Rule 23. Nor is any efficiency gained by delaying class notice, the opportunity for class members to express their opinion of the settlement, and the timely payment of claims.

Indeed, with respect to class actions where a settlement has been reached, the Panel routinely rejects arguments "that centralization is necessary to protect the interests of the class members with respect to the proposed settlement." *In re Hyundai & Kia GDI Engine Mktg., Sales Pracs., & Prod. Liab. Litig.*, 412 F. Supp. 3d 1341, 1343 (J.P.M.L. 2019). That is because the parties making such arguments "may file objections in the [transferor court] if and when the parties there move for court approval of the proposed class settlement." *Id.* at 1343-44; *see also In re Wells Fargo Fraudulent Account Opening Litig.*, 282 F. Supp. 3d at 1361 (denying centralization, in part, because the parties would have the opportunity to object to the adequacy of the proposed settlement).

> **3.      Transfer is inefficient because the resolution of the *Gilmore* action only involves economic loss related to the purchase of the product—not proof of personal injury causation.**

Transfer should be denied for the additional reason that it would thwart judicial economy and efficiency, given *Gilmore* involves notably different legal issues than those in the MDL on the issues of causation and injury. Although there is some overlap regarding Monsanto's marketing, labeling, and sale of Roundup without any disclosures, the common factual and legal questions end there. The *Gilmore* Plaintiffs need only prove Monsanto caused them to suffer an economic injury by inducing them to purchase the Products, which are worth less than the economic benefit for which they bargained due to Monsanto's inadequate disclosures (i.e., its failure to disclose the existence of an ongoing scientific dispute concerning the Products' carcinogenicity). *See Harnish*

*v. Widener Univ. Sch. Of Law*, 833 F.3d 298, 308 (3d Cir. 2016) (economic damages under "benefit-of-the-bargain" theory is available under the DCFA). On the other hand, plaintiffs pursuing personal injury claims in the MDL are required to prove their use of the Products and related exposure to glyphosate caused them to develop cancer and/or other personal injuries. These injuries are not related to the injury incurred at the point of purchase (by the purchaser), but rather, each particular plaintiffs' use of the Products and exposure to Roundup *after* purchase (and regardless of who purchased it). The Panel has refused to centralize proceedings where the "injuries suffered vary among the[] actions," *In re Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343, 1343 (J.P.M.L. 2012), and should do so here.

### C.   Transfer will not Serve the Convenience of the Parties and Witnesses.

Mr. Webb cannot meet his burden that transfer serves the convenience of the parties and witnesses. Tellingly, Mr. Webb makes no effort to meet their burden, opting to ignore the requirement in its entirety. Here, it is axiomatic that subjecting Plaintiffs, the putative class, and their counsel to further proceedings following their successful efforts to settle those proceedings is not 'convenient.' Mr. Gilmore chose to file in the state of Delaware, a state that also doubles as Defendant's home district. Transferring a resolved case from the plaintiff's choice of forum and Defendant's home forum is not convenient. This obvious inconvenience is compounded by the fact that the settlement contains a Delaware choice-of-law clause. Moreover, transfer to the MDL for the sole purpose of determining whether the *Gilmore* Settlement is fair, reasonable and adequate and otherwise complies with Rule 23 is not convenient or efficient. Petitioners' failure to establish this Section 1407 requirement separately warrants denial of their motion.

### IV.  CONCLUSION

*Gilmore* is a false advertising case seeking purely economic damages incurred at the point of

purchase. The matter has settled and the only issue currently pending before the court in Delaware is whether the settlement should be preliminarily approved. The *Gilmore* Settlement has always excluded personal-injury claims from the release, and the parties in *Gilmore* have amended the settlement agreement to further confirm and clarify that _any_ claims for personal injury are excluded from the release. The *Gilmore* Settlement will have no impact on the pending (or future) personal injury claims in the MDL, and transfer will only cause delay and is certainly not "convenient" nor efficient.   Accordingly, transfer is inappropriate under Section 1407, would not serve the underlying purpose of the statute, and should be denied.

         Respectfully submitted,

DATE: August 19, 2021      MILSTEIN JACKSON
             FAIRCHILD & WADE, LLP


       By:  */s/ Gillian L. Wade*
         MILSTEIN JACKSON
         FAIRCHILD & WADE, LLP
         Gillian L. Wade (Cal. State Bar No. 229124)
         gwade@mjfwlaw.com
         Sara D. Avila (Cal. State Bar No. 263213)
         savila@mjfwlaw.com
         Marc A. Castaneda (Cal. State Bar No. 299001)
         mcastaneda@mjfwlaw.com
         10250 Constellation Boulevard
         14th Floor
         Los Angeles, California 90067
         Telephone: (310) 396-9600
         Facsimile: (310) 396-9635