**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In Re: Roundup Products Liability Litigation | )    MDL Docket No. 2741 |

**DEFENDANT MONSANTO COMPANY'S OPPOSITION TO TRANSFER FOR
COORDINATED AND CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO
28 U.S.C. § 1407**

In July, Brian Webb ("Movant") filed a notice of a potential tag-along action for *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN (D. Del.), a consumer class action in the District of Delaware seeking damages for alleged overcharges on certain of Monsanto's Roundup® products based on allegations of false advertising. The Panel initially determined that *Gilmore* was not appropriate for inclusion in the *In Re: Roundup Products Liability Litigation*, MDL No. 2741 (the "MDL"). MDL Dkt. 2384. Nonetheless, Movant filed the instant motion seeking transfer of *Gilmore* to the MDL. *Gilmore* is not appropriate for inclusion in the MDL, and the Panel should deny Movant's motion for several reasons.

First, 28 U.S.C. § 1407 provides that only a party to an action may move to transfer it into an MDL. § 1407(c)(ii) ("Proceedings for the transfer of an action under this section may be initiated by … motion filed with the panel ***by a party*** in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate.") (emphasis added). Movant is not a party to *Gilmore*, and thus lacks statutory standing to seek its transfer. And even if § 1407 allowed such motions by non-parties (and it does not), Movant would lack standing because the proposed settlement in *Gilmore* does not impact his claims in the MDL.

Second, and relatedly, *Gilmore* relies on dramatically different liability theories and alleges different injuries than the cases in the MDL, and thus involves distinct legal and factual issues. The MDL consolidates personal injury cases alleging that Roundup® products caused plaintiffs to suffer Non-Hodgkin's Lymphoma ("NHL") or certain other haematopoietic cancers. *Gilmore*, by contrast, does not allege any personal injury and seeks purely economic damages for alleged overcharges on certain Roundup® products.

Third, because the parties in *Gilmore* have reached a proposed nationwide settlement (the "Settlement"), the sole factual issues now before the Court in *Gilmore* are whether that Settlement is fair and reasonable and otherwise complies with Federal Rule 23. Movant's suggestion that the Settlement's release could impact pending personal injury claims in the MDL is legally and factually incorrect. The Settlement expressly carves out personal injury claims from the release. And to further clarify the absence of any impact on such claims, the parties have amended the Settlement to more clearly state that medical monitoring, personal injury, or any damages arising therefrom, are not released.

As a result, there are no issues or proceedings to coordinate and no benefits to consolidation. The *Gilmore* court is considering whether the proposed Settlement is fair and reasonable based on the alleged product overcharges pleaded in the consumer-protection actions, which of course is not being litigated in the MDL. The Settlement does not address issues such as whether the products cause any particular type of cancer. The Settlement of consumer-protection false advertising claims, therefore, does not impact any issues of liability or causation before the MDL. And if Movant has concerns about the Settlement, then he is free (assuming he is even a Class Member, which he has not asserted) to either object to final approval before the District of

Delaware or, since the parties are seeking certification under Rule 23(b)(3), to opt out of the Settlement altogether.

Finally, even if there were efficiency or coordination benefits to consolidation (and there are not), they would not outweigh the inconvenience and prejudice caused by delaying resolution of *Gilmore* and taking the decision on settlement approval away from Judge Noreika. Principles of comity counsel against transferring this important and potentially dispositive decision away from the *Gilmore* court.

## BACKGROUND

### A.  *In re Roundup Products Liability Litigation*

In 2016, this Panel issued a Transfer Order creating *In re Roundup Products Liability Litigation*, MDL No. 2741, and consolidating twenty-one actions alleging that Monsanto's glyphosate-based herbicides caused plaintiffs' NHL. Transfer Order, *In re Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016). Among the common factual allegations identified by the Panel were contentions that plaintiffs "developed [NHL] after using Roundup over the course of several or more years." *Id.* at 1348.

Since then, this Panel has transferred over three thousand more personal injury cases to the MDL for pretrial proceedings. *See* MDL ECF No. 2396. The Panel has broadened the criteria for inclusion in the multidistrict litigation only slightly since 2016, namely to include personal injury cases alleging that Roundup® products caused plaintiffs to develop certain haematopoietic cancers similar to NHL. *See generally* MDL ECF No. 757; *see also* MDL ECF No. 57 at 2. Like the original actions, however, the consolidated cases all allege that plaintiffs or their decedents "developed [NHL] or certain other haematopoietic cancers, including multiple myeloma, as a result of exposure to Monsanto's glyphosate-based herbicides." MDL ECF No. 2027; *see also*

MDL ECF No. 2741 (transferring case alleging medical monitoring damages because of allegedly increased risk of developing NHL).

### B.    The *Gilmore* False Advertising Litigation

On August 19, 2020, Scott Gilmore filed *Gilmore v. Monsanto Co.* in the District of Delaware, alleging **economic harm** under the Delaware Consumer Fraud Act on behalf of himself and a putative nationwide class of purchasers of Roundup® products since 2017.  *Gilmore* ECF No. 1.  Unlike the MDL cases, *Gilmore* does not allege personal injuries.  *See generally Gilmore* ECF No. 22.  None of the *Gilmore* plaintiffs claim to have contracted NHL, or any other type of cancer or illness, from exposure to Roundup® products.  Nor do they seek damages deriving from current or future personal injuries allegedly caused by Roundup® products.  Instead, *Gilmore* is one of several cases filed in state and federal courts around the country alleging violations of state consumer-protection and false advertising statutes related to the marketing and sale of Monsanto's Roundup® products.  All assert solely economic loss as a result of buying the products, claiming that, had they known the "truth," the plaintiffs would have paid less for the products.  Since July 2019, more than a dozen similar actions have been brought against Monsanto and various large retailers of glyphosate-containing Roundup® products.[1]

---

[1] *Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed July 15, 2019); *Shelly v. Target Corp.*, No. 50-2019-CC-010718 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed Aug. 14, 2019); *Biddle v. Lowe's Home Ctrs. LLC*, No. 50-2019-CC-011405 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed Aug. 27, 2019); *Morley v. Ace Hardware Corp.*, No. CONO-19-010648 (Cnty. Ct. 17th Cir. in and for Broward Cnty., Fla.) (filed Sept. 6, 2019); *Waters v. Home Depot USA, Inc.*, No. 50-2019-CC-009140 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed July 15, 2019); *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.) (filed Mar. 21, 2020); *Hanna et al. v. Walmart, Inc.*, CIV SB 2100789 (Super. Ct. Cal. for San Bernardino) (filed Jan. 12, 2021) ("*Hanna II*"); *Gregorio et al. v. Home Depot U.S.A., Inc.*, No. CACE-21-002428 (Cnty. Ct. 17th Cir. in and for Broward Cnty., Fla.) (filed Feb. 4, 2021); *Weeks et al. v. Lowe's Home Ctrs.*, LLC, No. 2:19-cv-06828 (C.D. Cal.) (filed Aug. 6, 2019); *Weeks v. Home Depot*, 2:19-cv-06780 (C.D. Cal.) (filed Aug. 8, 2019); *Jewell et al. v. Walmart, Inc.*, No. 4:19-cv-04088 (W.D. Ark.) (filed Aug. 12, 2019); *Boyette et al. v. Lowe's Cos., Inc.*, No. 4:19-cv-04119 (W.D. Ark.) (filed Sept. 13, 2019); *Taylor*

Counsel for Monsanto and the *Gilmore* plaintiffs conducted a mediation before the Honorable Diane Welsh of JAMS in February 2021 that led to an agreement in principle, and ultimately the execution of a settlement agreement on June 9, 2021. *See* June 9, 2021 Class Action Settlement Agreement ("Original Settlement Agreement"), *Gilmore* ECF No. 26-1, attached as Ex. 4 to Movant's Mtn. The parties subsequently submitted to Judge Noreika a motion for preliminary approval of the proposed nationwide, opt-out, claims-made Settlement.[2] *Gilmore* ECF No. 25. If approved, the Settlement would require Monsanto to pay between $23 million and $45 million to a nationwide class of purchasers of Roundup® Lawn & Garden products, which would be used to provide cash payments to Class Members who submit claims. *See* Original Settlement Agreement §§ D-E; *see also* Aug. 19, 2021 Amended Class Action Settlement Agreement ("Amended Settlement Agreement"), *Gilmore* ECF No. 59-1, attached hereto as Ex. A, §§ D-E.

---

*et al. v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.) (filed Mar. 27, 2020); *Hanna et al. v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) (filed May 22, 2020) ("*Hanna I*"); *Williams et al. v. Lowe's Home Ctrs., LLC*, No. 5:20-cv-01356 (C.D. Cal.) (filed July 6, 2020); *Tomlinson v. Monsanto*, 1916-CV22788 (Cty. Ct. in and for Jackson Cty., Mo.) (filed Aug. 19, 2019).

[2] Plaintiffs in the *Tomlinson* action, Ryan Tomlinson and Carol Richardson, moved to intervene in *Gilmore*, and have now filed a "Joinder/Response" in this proceeding. But *Tomlinson* Plaintiffs, like Movant, lack standing to seek transfer of this action. They are not parties to *Gilmore* (despite styling themselves as "Intervenor Parties" on the docket, their motion to intervene has not been granted) and they are not parties to any action in the MDL. Their "Joinder" should be viewed for what it is—a self-serving attempt to delay and disrupt a nationwide settlement because it would release nearly all of their false advertising claims in Missouri state court and interfere with their counsel's claim for attorney's fees. Their allusions to "judicial efficiency" are absurd, as they have themselves gone to great lengths to avoid federal jurisdiction by filing in state court, and fail to mention that they have pursued, and will continue to pursue regardless of the Panel's ruling, false advertising claims related to Roundup® outside of the MDL—apparently not wishing to pursue their own case via what they claim is the most "efficient" route. As for their arguments that there are "indicia of collusion" and that there was a "reverse auction" to reach the Settlement, these allegations are both false and completely unsupported by evidence, as Monsanto has already explained to Judge Noreika. *See Gilmore* ECF No. 47 at 9-14.

In exchange, Class Members release claims based on the alleged misrepresentations and omissions at issue, Ex. A § L(1), "but they do *not* release any claims for personal injury—which are expressly preserved by the Settlement." *Gilmore* ECF No. 25 at 2 (emphasis in original); *see also* Ex. A § L(1) ("For avoidance of doubt, this release does not release any Personal Injury Claims or Medical Monitoring Claims."); *id.* ("By way of example, if a Class Member brought an action asserting that he or she bought and used Roundup® products that failed to warn of an alleged risk of Non-Hodgkin Lymphoma and that this caused them to develop Non-Hodgkin Lymphoma, and sought to recover damages for their physical injury, for lost wages, and for medical bills, neither that Personal Injury Claim nor the related damages (including economic damages such as lost wages or medical bills) would be released by this Settlement."); *id*. L(1)(c) (releasing economic injuries but expressly excluding "those economic losses or injuries encompassed within the definitions of Personal Injury Claims or Medical Monitoring Claims"). This exclusion of personal injury claims from the release has always been part of the Settlement—which has never been intended to affect personal injury claims. *See* Original Settlement Agreement §§ A(40); L(1).

On June 24, 2021, before Movant filed the motion at issue here, Monsanto wrote a letter to Judge Noreika in response to a concern by a plaintiff in a state court action alleging personal injuries related to glyphosate exposure (Rinehart) about the scope of the release and whether it would include medical-monitoring claims. *Gilmore* ECF No. 49. Monsanto explained that the parties had always intended "that the term 'Personal Injury Claims' would include medical-monitoring claims" and that "the parties ha[d] conferred and agreed to make minor amendments to the language of the proposed Settlement Agreement to clarify" this point. *Id*. at 1. In light of the decision to amend the Settlement to address Rinehart's concerns about the scope of the release, the parties in *Gilmore* have also amended the proposed Settlement to make even clearer that the

release excludes claims for medical monitoring, personal injury, or any alleged losses resulting therefrom.   Ex. A § A(41) ("'Personal Injury Claims' shall mean Claims that assert a right to recover damages for the actual physical injury or illness … [or] compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical injury or illness …."); *id*. § L(1)(c) (class members release "alleged economic loss or injury (other than those economic losses or injuries encompassed within the definitions of Personal Injury Claims or Medical Monitoring Claims) ….").

## LEGAL STANDARDS

28 U.S.C. § 1407 enables the Panel to transfer, of its own accord or on the motion of a *party*, federal civil actions for pretrial coordination or consolidation when: (1) the cases involve "common questions of fact"; (2) the transfer is convenient for the parties and witnesses; and (3) the transfer "promote[s] the just and efficient conduct" of the cases.   28 U.S.C. §§ 1407(a), 1407(c)(ii).  Section 1407's purpose is to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  *Manual for Complex Litig.* § 20.131 (4th ed. Westlaw 2016); *see also  In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968) (Section 1407 seeks to eliminate "delay, confusion, conflict, inordinate expense and inefficiency" during the pretrial period).

Even if there is some factual overlap between cases, consolidation is unnecessary where litigation of those cases will focus on "unique factual and legal issues" and "informal coordination is sufficient to minimize any overlap in pretrial proceedings."  *In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017).

**ARGUMENT**

**I.    Movant Lacks Standing to Seek Transfer of *Gilmore*.**

Because Movant is not a party in *Gilmore*, he lacks standing to seek transfer under § 1407's plain language.  Section 1407(c)(ii) provides that "[p]roceedings for the transfer of an action under this section may be initiated by … motion filed with the panel ***by a party*** in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate" (emphasis added).  The Panel confirmed decades ago that § 1407(c)(ii)'s plain language precludes motions to transfer by individuals that are "not parties in any action in which transfer is contemplated."  *In re W. Liquid Asphalt*, 303 F. Supp. 1053, 1053–54 (J.P.M.L. 1969); *see also In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2:18-mn-02873, ECF No. 631 at 1 n.1 (J.P.M.L. 2020) (noting the "validity" of the argument that "parties moving for transfer under Section 1407" must be parties to an action they seek to transfer).  *Liquid Asphalt*'s holding is squarely applicable here—Movant is not a party to *Gilmore* (or any other case in which transfer is contemplated), and he thus lacks standing to move for its transfer.[3]

This case illustrates the reason for § 1407(c)(ii)'s party restriction.  As explained below, Movant's claims in the MDL will not be impacted by the Settlement, which expressly carves such claims out of the release.  And if Movant believes he is a member of the *Gilmore* Settlement Class and is concerned about other false advertising claims that he has not yet asserted, he is free to opt out of or object to the Settlement without transfer and consolidation.  *See In re Ocwen Loan Servicing, LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.*, 988 F. Supp. 2d 1367, 1368

---

[3] Even if Movant is a member of the proposed Settlement Class, which he has not asserted, he is not a party to *Gilmore*.  *See In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 169, n.3 (3d Cir. 2013) (absent class members are not "parties to the underlying action"); *Rescigno v. Statoil USA Onshore Props., Inc.*, 2020 WL 3830931, at *6 & n.5 (M.D. Pa. Jul. 8, 2020) (unnamed class members who have not intervened are "nonparties").

(J.P.M.L. 2013). ("If plaintiffs who have not participated in settlement discussions wish to object to or opt out of the proposed settlement, there are suitable mechanisms in place by which they may do so without the need for centralization."); *In re Toyota Motor Corp. Prius HID Headlamp Prod. Liab. Litig.*, 754 F. Supp. 2d 1380, 1381 (J.P.M.L. 2010) (transferring an action because of Movant's objection to a settlement "does not advance the purposes of Section 1407[, because] [t]here are more suitable mechanisms in place by which class members can object to or opt out of a class settlement"). The *Gilmore* Settlement therefore does not threaten any of Movant's interests, and he lacks standing to seek transfer.[4]

## II.   Transfer Will Not Facilitate the Just and Efficient Conduct of These Cases

### A.   The Proposed Settlement Will Not Release the Claims in the MDL

Movant's lead argument is that *Gilmore* should be transferred to the MDL because the proposed Settlement "would operate to bind almost all plaintiffs in the MDL, and would release a significant portion of their claims." ECF No. 2400-1 at 1. That contention is factually and legally incorrect. The *Gilmore* settlement purports to release false advertising, breach-of-warranty, and similar claims seeking economic damages based on alleged overcharges—it does not reach personal injury claims or any claims seeking damages flowing from the alleged health effects of glyphosate. To the contrary, such claims have always been expressly carved out of the Settlement's release. *See* Original Settlement Agreement § L(1) ( "For avoidance of doubt, this release does not release any Personal Injury Claims."). The Amended Settlement Agreement

---

[4] While parties to an MDL have standing to *oppose* transfer of a case to which they are not parties because inclusion of an inappropriate action "can affect the efficient conduct of the actions as a whole," *In re Aqueous*, 2:18-mn-02873, ECF No. 631 at 1 n.1, that logic has no application here, where Movant is seeking to transfer an action into the MDL. If *Gilmore* were appropriate for transfer (and it is not), only Monsanto would endure any potential inefficiencies from its exclusion and separate litigation, and both Monsanto and the Plaintiffs in *Gilmore* oppose transfer.

makes this even clearer, repeatedly providing that "Personal Injury Claims" and "Medical Monitoring Claims" are excluded from the release and defining "Personal Injury Claims" as:

> Claims that assert a right to recover damages for the actual physical injury or illness of a natural person or that seek to recover compensatory, punitive, or exemplary damages, or attorney's fees, allegedly resulting or arising from the actual physical injury or illness of a natural person, including, for example, claims for mental or physical pain or suffering; emotional or mental harm; loss of enjoyment of life; loss of wages, income, earnings, or earning capacity; medical expenses; doctor, hospital, nursing, or drug bills; loss of support, services, consortium, companionship, society, or affection; damage to familial relations; and wrongful death and survival actions.

Ex. A, § A(41).[5] Thus, while some MDL plaintiffs are members of the proposed Settlement Class in *Gilmore* by virtue of purchasing relevant products, their MDL claims are not within the scope of the release.

Movant's confusion appears to be based on an incorrect assumption that the proposed Settlement would release breach of warranty or similar claims even when the plaintiff asserts damages for personal injury. But as discussed above, *any* claim for damages allegedly resulting or arising from personal injury is excluded from the *Gilmore* Settlement's release. Movant's MDL complaint, for example, claims, among other things, breach of express warranty, breach of implied warranty of merchantability, and fraud (Counts VI-VIII), but for each he seeks damages related to health effects he allegedly suffered as a result of exposure to glyphosate, including economic expenses for medical care and treatment. *See In re Roundup Products Liability Litigation*, 3:16-md-2741, ECF No. 2400-5 ¶ 197 (*Webb* Compl.) ("As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff developed NHL and suffered injuries that are permanent

---

[5] As explained above, the Amended Settlement Agreement also expressly provides that "Medical Monitoring Claims" are excluded from the Settlement's release. *See id.* § L(1)("For avoidance of doubt, this release does not release any Personal Injury Claims or Medical Monitoring Claims."); *see also id.* § A(32) (defining medical monitoring claims).

and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as economic hardship, including financial expenses for medical care and treatment.”). Those damages deriving from injuries allegedly caused by the alleged health effects of glyphosate are not, and never were, within the scope of the proposed *Gilmore* release.  Movant’s professed concerns about the *Gilmore* settlement’s impact on the MDL proceedings are thus unfounded.

Alternatively, Movant argues the *Gilmore* might impact or conflict with the MDL because Judge Chhabria denied preliminary approval of a settlement proposed in the MDL and “evaluated many of the same issues raised in the *Gilmore* litigation, including the adequacy of the class notice, adequacy of the relief proposed, and the ascertainability of class members, amongst other certification-related issues.”  ECF No. 2400-1 at 4.  But this argument only underscores the important differences between the MDL and *Gilmore*.  Judge Chhabria denied a proposed settlement of future personal injury claims because of concerns with the proposed settlement’s ability to account for future and latent health injuries and related economic expenses.  MDL ECF No. 12531.  Such concerns are relevant, however, only to claims for personal injury damages and are unrelated to assessing whether the *Gilmore* settlement adequately compensates the proposed Settlement Class for alleged past overcharges on Roundup® products.

There is no reason to believe that the assessment of the proposed Settlement in *Gilmore* will meaningfully overlap with the settlement previously proposed in the MDL.  A notice program, for example, tailored to effectively identify and notice Roundup® users (including agricultural and industrial users) about cancer claims will not resemble one designed to reach all purchasers of Roundup® Lawn & Garden products during relevant periods.  Nor will an assessment of appropriate compensation for personal injuries and related expenses, including those that may manifest in the future, be akin to an assessment of claims that class members were overcharged as

a result of alleged labelling omissions.  The same is true of other issues relevant to class certification, such as whether individual issues predominate or whether plaintiffs can prove the alleged damages on a classwide basis.  In any event, Judge Chhabria has already denied approval of the settlement proposed in the MDL, and that decision, on a separate and dramatically different settlement, has no bearing on the proper resolution of the settlement approval before Judge Noreika.

Finally, to the extent any potential conflicts between the MDL and *Gilmore* arise in the future, the parties have already demonstrated an ability and willingness to resolve these issues informally.  And any overlapping class members concerned with the terms or scope of the *Gilmore* settlement retain the right to opt-out or challenge the settlement.  These feasible alternatives to consolidation make transfer inappropriate.[6]  *See In re Stockx Customer Data Sec. Breach Litig.*, 412 F. Supp. 3d 1363, 1365 (U.S. Jud. Pan. Mult. Lit. 2019) ("Section 1407 should be the last solution after considered review of all other options. . .") (citations omitted); *Toyota Motor*, 754 F. Supp. 2d at 1381 (declining to transfer an action "on the cusp of settlement" despite concerns that "preliminary approval" was "premature" because transfer "to prevent the approval of a settlement does not advance the purposes of Section 1407" and "[t]here are more suitable mechanisms in place by which class members can object to or opt out of a class settlement").

---

[6] If Movant simply wants Judge Chhabria to make the decision on settlement approval, this amounts to impermissible judge/forum shopping, which is not an appropriate ground for transfer. *See In re Isidoro Rodriguez Litig.*, 829 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) ("'the prospect of an unfavorable ruling by the transferee court or the possibility that another district judge may be more favorably disposed to a litigant's contention is clearly not a factor considered by the Panel in exercising its discretion under Section 1407'") (quoting *In re Glenn W. Turner Enters. Litig.*, 368 F. Supp. 805, 806 (J.P.M.L. 1973)).

**B.      There Are No Common Factual or Legal Issues to Coordinate**

Movant's second argument is that transfer is appropriate because *Gilmore* arises from the same factual issues as the Roundup® MDL litigation.  Monsanto does not dispute that the allegation that glyphosate causes cancer is common among the actions (though the MDL has been restricted to a particular type of cancer—NHL and similar haematopoietic cancers—while *Gilmore* alleges more broadly that the product causes cancer and other health effects).  But that partial factual overlap is not enough.  The important point is that the MDL plaintiffs allege that they were physically harmed (or, for medical monitoring claims, may in the future be harmed) by the products.  The *Gilmore* class, on the other hand, disclaims any physical harm and alleges only that they paid more for a product than they would have but for the alleged omissions.  *See supra*, Sections I, II.  Given the differing theories of alleged harm and differing alleged injuries, relevant evidence and discovery would significantly differ between the two proceedings—a common reason for denying transfer.  *See In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Mktg. & Sales Pracs. Litig.*, 190 F. Supp. 3d 1349, 1350 (J.P.M.L. 2016) ("These putative nationwide class actions without doubt share some factual questions, but we find that those questions are neither sufficiently complex nor numerous to justify centralization."); *In re Moroccanoil Trademark Litig.*, 777 F. Supp. 2d 1340, 1341 (J.P.M.L. 2011) (despite "existence of some factual overlap among the actions," unique and individualized factual issues including as to "extent of damages" rendered "centralization particularly inconvenient and unattractive"); *In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1340–41 (J.P.M.L. 2016) ("[C]ase-specific issues are likely to undermine the alleged efficiencies that could be gained from centralizing. . .").

In fact, given the procedural posture of *Gilmore*, no overlapping issues are being litigated. The District Court for the District of Delaware has been presented with a motion for preliminary

approval of a nationwide settlement.  As a result, the only substantive question presently at issue in *Gilmore* is whether the proposed nationwide class and the proposed Settlement satisfy Rule 23's requirements.  Judge Noreika need not—and is not being asked to—adjudicate whether Roundup® products in fact pose the health risks alleged in the complaint.[7]  *See In re Tesco PLC Sec. Litig.*, 158 F. Supp. 3d 1368, 1369 (J.P.M.L. 2016) (it does not matter "that the settlement might not receive final approval," because "those arguments are, at best, speculative.").  And as discussed in Section II, there is little to no overlap between the assessment of whether the Settlement satisfies Rule 23's requirements and the issues in the MDL.

Finally, as noted above, if there is ever a need for coordination between the MDL and *Gilmore*, there is no reason the parties cannot (as they have in the past) informally coordinate to avoid any duplication or inefficiency.  There is, after all, a common Defendant.  And even if coordination of some future issue failed, the utility of transfer and consolidation could be revisited at that time.  *See In re Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.*, 939 F. Supp. 2d 1372, 1373 (J.P.M.L. 2013) (if "voluntary coordination is unsuccessful, the parties may file another Section 1407 motion, and the Panel may revisit the question of centralization at that time").  Transfer should be denied.

### C.    The Procedural Disparity Between These Proceedings Weighs Against Transfer

Movant's final argument is that transfer is appropriate because *Gilmore* is not procedurally advanced.  But this argument depends solely on the lack of formal discovery in the *Gilmore* action

---

[7] Even if this issue was before the *Gilmore* court (and it is not), it still differs significantly between the cases.  The *Gilmore* parties would need to litigate the extent to which the products' alleged health risks (again not limited to cancer, let alone NHL) affect purchase behavior and pricing.  The MDL plaintiffs, on the other hand, must litigate the nuances of what types of cancer risks glyphosate poses (if any) and whether individual cases of NHL were caused by glyphosate exposure.

and ignores the litigation and discovery in related false advertising cases that led to the global resolution proposed in *Gilmore*.

*Gilmore* counsel has pressed claims much like those in *Gilmore* for more than two years across more than a dozen related actions that involved significant briefing and both formal and informal discovery, including *Gilmore* counsel's preparation of an expert report, responses to dozens of interrogatories, and Monsanto's production of thousands of pages of documents. *Gilmore* counsel has had access to the discovery taken in the related cases, and even in *Gilmore*, the parties engaged in informal discovery where Monsanto produced nationwide sales data for its Roundup® Products to facilitate settlement discussions. The settlement discussions were also extensive, including hundreds of pages of mediation submissions and a fourteen-hour mediation session before retired United States Magistrate Judge Diane Welsh, an experienced class action mediator. And the settlement agreement was reached only after Monsanto successfully moved to dismiss two of the related actions and subsequent appeals were filed. Thus, the parties and courts have devoted substantial time and resources to litigating these issues and arriving at the agreement proposed. The false advertising litigation is not, as Movant suggests, in its infancy.

In truth, the procedural disparity between *Gilmore* and the MDL proceeding cuts *against* transfer. The Panel has frequently found that where a settlement that would soon resolve a case is pending, transfer would achieve nothing but delay. *See In re HSBC Tel. Conversation Recording Litig.*, 140 F. Supp. 3d 1356, 1356–57 (J.P.M.L. 2015) (declining motion to transfer because a "settlement is the subject of a pending motion for preliminary approval" and if "preliminarily approved, then moving plaintiffs presumably can raise their objections to the settlement and any other concerns that they may have at a fairness hearing regarding the proposed settlement"); *In re Behr Deckover Mktg. & Sales Pracs. Litig.*, 285 F. Supp. 3d 1356, 1357 (J.P.M.L. 2018) ("[T]he

15

parties in two actions on the motion recently reached an agreement on a nationwide class settlement, [and] … [c]entralization at this time could delay the settlement approval proceedings with little or no benefit to the parties and putative class members.").[8]  Because the *Gilmore* settlement is nearing resolution and follows years of protracted litigation, discovery, and negotiation, consolidating it with the MDL would undermine the just and efficient conduct of these cases.  Transfer should be denied.

### III.    Transfer Would Prejudice the Parties and the Class

With little overlap between these proceedings—particularly at this procedural juncture— transfer and consolidation with the MDL would only delay resolution of these cases—prejudicing both the parties and class members.  The named plaintiffs in *Gilmore* are not parties in the MDL and the *Gilmore* settlement carves out the personal injury claims in the MDL.  Any MDL plaintiffs who are members of the *Gilmore* class are free to participate in, opt out of, or object to the *Gilmore* settlement, a choice they can make no matter what court has the case and without transfer and consolidation.  *See In re Toyota Motor*, 754 F. Supp. 2d at 1381 (declining to transfer because overlapping "class members can object to or opt out of a class settlement" in its original court).

It would be highly prejudicial to the parties and class in *Gilmore* to delay settlement and global resolution by transferring the case away from Judge Noreika to a crowded MDL docket. The motion for preliminary approval is briefed and before Judge Noreika, and the Settlement stands to swiftly provide significant financial benefits to class members.  Transferring this case

---

[8] *See also In re JumpSport, Inc., ('845 & '207) Pat. Litig.*, 338 F. Supp. 3d 1356, 1357–58 (J.P.M.L. 2018) ("Centralization is not necessary where the actions are being litigated in a manner that is likely to lead to their resolution, whether through settlement or other means, within a relatively short period of time."); *In re Tesco PLC Sec. Litig.*, 158 F. Supp. 3d 1368, 1368 (J.P.M.L. 2016) ("More importantly, the New York action appears to be nearing its conclusion, as a proposed class settlement was given preliminary approval …, and a fairness hearing is scheduled ….").  This is particularly true where "the proposed settlement. . . expressly excludes," and therefore will not affect, the other actions.  *In re Tesco*, 158 F. Supp. 3d at 1368.

would only inject unrelated claims and issues into the MDL, complicate those proceedings and add further burden on the MDL court, and delay approval proceedings and the provision of monetary benefits to the class, with no corresponding benefit.  This factor therefore weighs against transfer.

## IV.    The Case Should Not Be Transferred as a Matter of Comity

The Panel has held that "on principles of comity, we are reluctant to transfer any action that has an important motion under submission with a court."  *In re L. E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054, 1056 (J.P.M.L. 1975); *In re Res. Expl., Inc., Sec. Litig.*, 483 F. Supp. 817, 822 (J.P.M.L. 1980) ("We are persuaded, on principles of comity, to defer our decision concerning transfer of the Pennsylvania action because of the pendency of the defendants' motion for summary judgment, which is fully submitted to the potential transferor judge.").  Here, we have a motion for preliminary approval of a nationwide settlement that, if approved, will provide prompt relief to purchasers of Roundup® Lawn & Garden products for their alleged damages and global resolution of these cases.  The parties in *Gilmore* have expended considerable effort and resources negotiating this agreement, preparing a notice plan, and briefing preliminary approval under Third Circuit law.  Judge Noreika has likewise devoted substantial time to this case and the claims and issues.  Comity counsels against taking away this important decision about whether the proposed Settlement should be approved—particularly when, as discussed, there is no efficiency benefit to doing so.

## CONCLUSION

Given the foregoing, Monsanto requests that the Panel deny Movant's motion to transfer.

Dated: August 19, 2021                    */s/ Rakesh Kilaru*
                                          Rakesh Kilaru
                                          WILKINSON STEKLOFF LLP
                                          2001 M Street NW
                                          Washington DC 20036
                                          Tel: (202) 847-4046
                                          Fax: (202) 847-4005
                                          rkilaru@wilkinsonstekloff.com

                                          John J. Rosenthal
                                          WINSTON & STRAWN LLP
                                          1901 L Street NW
                                          Washington, DC 20036
                                          Tel: (202) 282-5000
                                          Fax: (202) 282-5100
                                          jrosenthal@winston.com

                                          Jeff Wilkerson
                                          WINSTON & STRAWN LLP
                                          300 S. Tryon Street, Suite 1600
                                          Charlotte, NC 28202
                                          Tel: (704) 350-7714
                                          Fax: (704) 350-7800
                                          jwilkerson@winston.com

                                          *Counsel for Monsanto Company*