**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE: ROUNDUP** | § | **MDL NO. 2741** |
| **PRODUCTS LIABILITY** | § | |
| **LITIGATION** | § | |

---

**CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER
*GILMORE v. MONSANTO* TO MDL 2741 PURSUANT TO 28 USC § 1407**

---

**<u>TABLE OF CONTENTS</u>**

I.      BACKGROUND ............................................................................................................. 1

II.     MONSANTO IS USING *GILMORE* TO ENJOIN LITIGATION IN JUDGE CHHABRIA'S COURT. .................................................................................................................. 3

    A.   The *Gilmore* Plaintiffs Agreed to a Legally Dubious, Overbroad Injunction, Which Includes asking the United States District Court Judge in the District of Delaware to Stay Cases Pending in the *Roundup* MDL. ................................................................... 4

    B.   Belying Monsanto's Argument that the *Gilmore* Class Claims Are "Dramatically" Different, Monsanto Had Asked Judge Chhabria to Release the Same Claims. ............... 7

    C.   Monsanto Is Forum Shopping. ............................................................................. 8

    D.   These Reasons Alone Demonstrate that Gilmore Should Be Transferred........................ 9

III.    RESPONDENTS DO NOT ADDRESS THE KEY RELEASE PROVISIONS. ................. 10

IV.     RESPONDENTS DO NOT ADDRESS THEIR RELIANCE ON THE MDL.................... 12

V.      RESPONDENTS' RELIANCE ON CASELAW WHERE CENTRALIZATION WAS DENIED IS INAPPOSITE ................................................................................... 13

VI.     MOVANT HAS STANDING. ......................................................................... 15

VII.    NEITHER COMITY NOR CONVENIENCE NECESSITATES THE LITIGATION OF *GILMORE* IN DELEWARE. ............................................................................ 18

VIII.   CONCLUSION. ............................................................................................... 20

## EXHIBITS

| Exhibit No. | |
|---|---|
| 1 | *Roundup* MDL docket sheet (excerpts) |
| 2 | *Gilmore v. Monsanto Co.,* Mot. to Stay Related Proceedings, Case 1:20-cv-01085-MN, Dkt. # 32 |
| 3 | *In re Roundup Prod. Liab. Litig., Ramirez, et al. v. Monsanto Co*., 2nd Am. Class Action Complaint, Case 3:19-cv-02224-VC, Dkt. # 19 |
| 4 | *Webb v. Monsanto Company et al*., Petition at Law, Case 3:20-cv-05624-CV, Dkt. # 4 |
| 5 | *Gilmore v. Monsanto Co.,* [Proposed] Order, Case 1:20-cv-01085-MN, Dkt. # 24-1, PageID # 2315 |
| 6 | *Gilmore v. Monsanto Co.,* Mem. in Supp. of Jt. Mot. to Stay Related Proceedings, Case 1:20-cv-01085-MN, Dkt. # 33 |
| 7 | *In re Roundup Prod. Liab. Litig.,* Amended Settlement Agreement (N.D. Cal. April 7, 2021), Case 3:16-md-02741-VC, Dkt. # 12911-1 (excerpts) |
| 8 | *In re Roundup Prod. Liab. Litig.,* Form of Release, Cabraser Decl. Exhibit A to Settlement Agreement, Exhibit 6 (N.D. Cal. Feb. 4, 2021), Case 3:16-md-02741-VC, Dkt. # 12531-2 |
| 9 | *In re Roundup Prod. Liab. Litig.,* Obj. Sloviter's Br. in Opp. to Mot. for Preliminary Approval (N.D. Cal. March 4, 2021), Case 3:16-md-02741-VC, Dkt. # 12682, Pages 25-26 of 57 (excerpts) |
| 10 | *In re Roundup Prod. Liab. Litig.,* Reply in Supp of Mot. for Preliminary Approval of Proposed Class Settlement, Case 3:16-md-02741-VC, Dkt. # 12911, Pages 22-23 of 102 (excerpts) |
| 11 | *In re Roundup Prod. Liab. Litig.,* Exhibit B Redline Against Settlement Agreement, Exhibit 6: form of Release (N.D. Cal. April 7, 2021), Case 3:16-md-02741-VC, Dkt. # 12911-2, Page 61-62 of 94 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Armstrong v. Manzo*,
    380 U.S. 545 (1965).........................................................................................................5

*In re Behr Deckover Mktg. & Sales Pracs. Litig.*,
    285 F. Supp. 3d 1356 (J.P.M.L. 2018).........................................................................14

*Gilmore v. Monsanto*,
    No. 1:20-cv-01085-MN ........................................................................... *passim*

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021) ..........................................................................................9

*In re HSBC Tel. Conversation Recording Litig.*,
    140 F. Supp. 3d 1356 (J.P.M.L. 2015).........................................................................14

*In re Hyundai and KIA GDI Engine Mktg., Sales, Practices, & Prods. Liab. Litig.*,
    412 F. Supp. 3d 1341 (J.P.M.L. 2019)................................................................14, 16

*In re J.P. Morgan Chase Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*,
    959 F. Supp. 2d 1372 (J.P.M.L. 2013).........................................................................14

*Johnson v. Monsanto Co.*,
    52 Cal. App. 5th 434 (2020), *as modified on denial of reh'g* (Aug. 18, 2020).......................9

*In re L.E. Lay & Co. Antitrust Litig.*,
    391 F. Supp. 1054 (J.P.M.L. 1975)........................................................................18, 19

*In re Ocwen Loan Servicing, LLC FDCPA Litig.*,
    988 F. Supp. 2d 1367 (J.P.M.L. 2013).........................................................................14

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).........................................................................................................5

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).........................................................................................................5

*Pilliod v. Monsanto Co.*,
    No. A158228, 2021 WL 3486893 (Cal. Ct. App. Aug. 9, 2021)..............................9

*In re Power Balance, LLC Mktg. & Sales Practices Litig.*,
    777 F. Supp. 2d 1345 (J.P.M.L. 2011).........................................................................14

*In re Resource Exploration, Inc., Sec. Litig.*,
    483 F. Supp. 817 (J.P.M.L. 1980)................................................................18, 19

*In re Roundup Prod. Liab. Litig.*,
    214 F. Supp. 3d 1346 (J.P.M.L. 2016)..........................................................1, 2

*In re Roundup Prod. Liab. Litig.*,
    No. 16-MD-02741-VC, 2021 WL 2215463 (N.D. Cal. May 26, 2021) ...................2

*In re Roundup Prod. Liab. Litig.*,
    No. MDL 2741, 2020 WL 5865873 (J.P.M.L. Oct. 1, 2020) ..................................1

*In re Toyota Motor Corp. Prius HID Headlamp Prod. Liab. Litig.*,
    754 F. Supp. 2d 1380 (J.P.M.L. 2010)............................................................14

*In re Wells Fargo Fraudulent Account Opening Litig.*,
    282 F. Supp. 3d 1360 (J.P.M.L. 2017)............................................................14

**Statutes**

28 U.S.C. § 1407..........................................................................................1, 17, 20

28 U.S.C. § 1407(a) ...........................................................................................10

28 U.S.C. § 1407(c)(i)..........................................................................................17

28 U.S.C. § 1407(c)(ii) ........................................................................................15

28 U.S.C. § 2283................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 65 ...............................................................................................6

J.P.M.L. Rule 7.1(a)............................................................................................17

J.P.M.L. Rule 6.1 ...............................................................................................15

J.P.M.L. Rule 7.(1)(b)(i) ......................................................................................16

J.P.M.L. Rule 7.1(b)(i) ..............................................................................15, 16, 17

J.P.M.L. Rule 8.1 ...............................................................................................18

## I.   BACKGROUND

On July 28, 2021, plaintiff Brian Webb moved to transfer *Gilmore v. Monsanto*, No. 1:20-cv-01085-MN currently pending in the United States District Court for the District of Delaware to MDL No. 2741, *In re Roundup Prods. Liab. Litig.* ("the *Roundup* MDL") following the administrative denial of Mr. Webb's notice of potential tag-along action by the Clerk of the Panel. Dkt. # 2400 (Transfer Motion), # 2384 (Clerk's Notice of Denial).  On August 19, 2021, potential intervenors Ryan Tomlinson and Carol Richardson (collectively the "*Tomlinson* Plaintiffs") filed their brief in support of Mr. Webb's transfer motion.  Dkt. # 2436.  Also on that day, the plaintiffs in the *Gilmore* action—Scott Gilmore, Julio Ezcurra, James Weeks, Amanda Boyette, Anthony Jewell, Paul Taylor, Sherry Hanna, and Kristy Williams (collectively "the *Gilmore* Plaintiffs")—and the Monsanto Company filed their briefs in response to Mr. Webb's motion.  Dkt. # 2437, # 2438.  Mr. Webb submits this Consolidated Reply in further support of his motion to transfer the *Gilmore* action to the *Roundup* MDL.

Since this Panel's 2016 creation of the *Roundup* MDL, thousands of cases filed against Monsanto have been transferred to, and are pending before, the Honorable Vince Chhabria in the Northern District of California.[1]   Those cases and the proposed *Gilmore* settlement class action share the same core fact: according to scientific evidence, Roundup causes cancer. Without that core fact, Monsanto's marketing of Roundup would not be defective and there would be no liability

---

[1] *See In re Roundup Prod. Liab. Litig.*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016) (transferring pursuant to 28 U.S.C. § 1407). Since that time, 3,062 additional actions have been transferred to the Northern District of California and assigned to the Honorable Vince Chhabria. *In re Roundup Prod. Liab. Litig.*, No. MDL 2741, 2020 WL 5865873, at *1 (J.P.M.L. Oct. 1, 2020).

in *Gilmore*.[2] And, without that same core fact, the *Roundup* MDL would not exist.[3] Indeed, Respondents do not—because they cannot—deny that there is overlap between the plaintiffs in the *Roundup* MDL and the *Gilmore* settlement class.[4] As the MDL Judge selected by this Panel, Judge Chhabria presided over Monsanto's first two failed class-settlement attempts.[5] Despite the uncontested fact that the several thousand cases pending before Judge Chhabria in the *Roundup* MDL include members of the *Gilmore* proposed class action settlement, Monsanto and the *Gilmore* Plaintiffs insist that Judge Chhabria not preside over what is now Monsanto's third attempted class-settlement motion.

After entrusting Judge Chhabria with the thousands of Roundup cases he has adjudicated for five years, the Panel should not allow Monsanto to seek an injunction of most of those cases from a different federal court, particularly one inexperienced in this extraordinarily complicated litigation. Specifically, the *Gilmore* Plaintiffs joined Monsanto in a legally dubious, indefensibly overbroad motion that would, if granted, enjoin claims in *inter alia* Judge Chhabria's court (*see* section II below). This alone demonstrates the need for transfer. The *Tomlinson* Plaintiffs'

---

[2] *See* Gilmore Pl. Resp. Br. Dkt. # 2437, at p. 3 (citing Gilmore's Second Amended Complaint for the assertion that Monsanto marketed Roundup without disclosing "potential carcinogenicity").

[3] *See Roundup Prod. Liab. Litig.*, 214 F. Supp. 3d at 1348 ("These actions share common factual questions arising out of allegations that Monsanto's Roundup herbicide, particularly its active ingredient, glyphosate, causes non-Hodgkin's lymphoma.").

[4] *See* Gilmore Pl. Resp. Br. Dkt. # 2437, at p. 4 ("certain plaintiffs in the MDL may fall within this Settlement Class"); Monsanto Resp. Dkt. # 2438, at p. 10 ("some MDL plaintiffs are members of the proposed Settlement Class in *Gilmore*").

[5] Monsanto joined with certain plaintiffs' counsel (notably not court-appointed Plaintiffs Leadership in the *Roundup* MDL) in two failed attempts to settle a futures class. *See* PTO No. 214 in *Roundup* MDL (Court expressing doubts as to first futures settlement class action) [Case 3:16-md-02741-VC, Dkt. # 11182]; Notice of Withdrawal of Preliminary Approval Related Motions [Case 3:16-md-02741-VC, Dkt. # 11193] (withdrawing first failed attempt); *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2021 WL 2215463 (N.D. Cal. May 26, 2021) (denying preliminary approval of second settlement class action). The second failed class action settlement had been repeatedly amended in futile attempts to respond to the tsunami of objections. *See* Exhibit 1, excerpts of *Roundup* MDL docket sheet.

response in support, coupled with the failure of Monsanto and the *Gilmore* Plaintiffs to demonstrate that their proposed class settlement is not a prejudicial hindrance to the *Roundup* MDL, reveal that transfer is necessary to ensure the just and efficient conduct of the litigation.

## II.   MONSANTO IS USING *GILMORE* TO ENJOIN LITIGATION IN JUDGE CHHABRIA'S COURT.

Monsanto argues that "*Gilmore* relies on dramatically different liability theories and alleges different injuries" than cases in the *Roundup* MDL,[6] that the serially amended class action settlement resoundingly rejected by Judge Chhabria was allegedly "dramatically different,"[7] and that, "[t]here is no reason to believe that the assessment of the proposed Settlement in *Gilmore* will meaningfully overlap with the settlement previously proposed in the MDL."[8] These claims are a foundation of Monsanto's opposition to transfer. They are also demonstrably false.

If the *Roundup* MDL and the *Gilmore* class action were truly as dramatically different as Monsanto claims, and if the injuries alleged were really dramatically different, then Monsanto would not have attempted to attain class-wide releases of the same claims in both federal courts, and certainly it would not ask one federal court to enjoin claims pending in another. But Monsanto is doing both. As explained below, Monsanto is pursuing a temporary injunction of litigation pending in Judge Chhabria's court (section II.A below), and is seeking to have the *Gilmore* court release some of the same claims that Monsanto had asked Judge Chhabria to adjudicate and release in the class action settlement he ultimately rejected (section II.B below).  Considering that none of the prior litigation, nor any actual discovery against Monsanto, has occurred in Delaware, Monsanto is clearly forum shopping (section II.C below).

---

[6] Monsanto Resp. Dkt. # 2438, at p. 2.
[7] *Id*. at p. 12.
[8] *Id*. at p. 11.

**A. The *Gilmore* Plaintiffs Agreed to a Legally Dubious, Overbroad Injunction, Which Includes asking the United States District Court Judge in the District of Delaware to Stay Cases Pending in the *Roundup* MDL.**

The *Gilmore* Plaintiffs joined Monsanto in seeking a temporary injunction of past and future cases, without due process, without regard to the limits of federal subject matter jurisdiction, without citation much less compliance with the Anti-Injunction Act, and without respect for Judge Chhabria's authority over the cases transferred to him in the *Roundup* MDL.

As pointed out by the *Tomlinson* Plaintiffs in their response brief, one of the bases for their motion to intervene in the *Gilmore* action is the joint stay sought by the *Gilmore* Plaintiffs and Monsanto in the Delaware District Court.[9]   In their joint motion, both the *Gilmore* Plaintiffs and Monsanto seek an order staying "***all*** pending ***or future*** state and federal proceedings asserting Released Claims."[10] The class release "extends . . . to . . . any case seeking to recover for economic loss or injury as a result of Monsanto's misrepresentations or omissions concerning the carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of" Roundup.[11] Such economic loss or injury claims are pending before Judge Chhabria in the *Roundup* MDL,[12] and  Monsanto and the *Gilmore* Plaintiffs admit that the *Gilmore* proposed

---

[9]  *Tomlinson* Pl. Resp. Dkt. # 2436 at p. 3 n. 1.

[10]  Exhibit 2, Jt. Mot. to Stay Related Proceedings, at p. 1 [Case 1:20-cv-01085-MN, Dkt. # 32, PageID # 2460] (emphasis added).

[11]  Gilmore Pl. Resp. Br. Dkt. # 2437, at p. 4.

[12]  The Ramirez Class Action Complaint, which was the subject of the failed futures class action settlement in the *Roundup* MDL, included a Fraudulent Concealment count that requested plaintiffs' out of pocket costs incurred as a result of reasonable reliance on Monsanto's representations and omissions regarding Roundup. Exhibit 3, *In re Roundup Prod. Liab. Litig., Ramirez, et al. v. Monsanto Co.*, 2nd Am. Class Action Complaint at pp. 46-47, Count IX and ¶ 221 [Case 3:19-cv-02224-VC, Dkt. # 19].  Movant Webb also pled economic loss. *See also* Exhibit 4, *Webb v. Monsanto Company et al.*, Petition at Law ¶ 131 ("as well as economic hardship"), ¶ 150(e) (same), ¶ 170 (same), ¶ 183 ("Monsanto's negligence was the proximate cause of the injuries and/or death, harm, and economic losses that Plaintiff suffered, as described herein."), ¶ 185 (referencing economic losses), ¶ 197 ("as well as economic hardship"), ¶ 210 (referencing economic loss), ¶ 214 ("as well as economic hardship") [Case 3:20-cv-05624-CV, Dkt. # 4].

class and the plaintiffs in the *Roundup* MDL overlap.[13] Moreover, the temporary injunction that Monsanto and the *Gilmore* Plaintiffs proposed would enjoin "[a]ny and all actions or proceedings pending **in any court** in the United States involving, based on, **or relating to** the Released Claims" of the settlement class.[14] The inescapable conclusion is that the *Gilmore* case is being used by Monsanto to halt claims pending before Judge Chhabria.

The brief filed jointly by Monsanto and its preferred plaintiffs, the *Gilmore* Plaintiffs,[15] conspicuously fails to justify the demanded injunction. The brief fails to even cite the Anti-Injunction Act notwithstanding that past and future state cases are to be enjoined by the federal court.[16] The brief also is cavalier on the subject of due process, which entitles parties to notice and an opportunity to be heard.[17] No matter. There is no mention of due process at all, notwithstanding that a temporary injunction is to be imposed before the class notice is given.[18]

---

[13] *See* note 4 *supra*.

[14] *See* Exhibit 5, [Proposed] Order at p. 5 ¶ 17.a [Case 1:20-cv-01085-MN, Dkt. # 24-1, PageID # 2315] (emphasis added). The proposed order does not allow opt outs from the settlement class until after the injunction is already effective, i.e., after the court-approved opt out announced in the class notice. *See id*. at ¶ 3 (defining Settlement Class).

[15] Exhibit 6, Mem. in Supp. of Jt. Mot. to Stay Related Proceedings [Case 1:20-cv-01085-MN, Dkt. # 33].

[16] *See* Anti-Injunction Act, 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").

[17] *See, generally, Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard.' . . . It is an opportunity which must be granted at a meaningful time and in a meaningful manner.") (citation omitted); *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 847-48 (1999) (discussing due process implications in class action context and analyzing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

[18] *See* Exhibit 5, [Proposed] Order at pp. 4-5 ¶ 17 [Case 1:20-cv-01085-MN, Dkt. # 24-1, PageID # 2315] (temporary injunction is issued before class notice).

The motion is styled as a stay request, yet the filings admit that an injunction is sought.[19] The prerequisites for injunctive relief are:

> **(a) Preliminary Injunction**.
> **(1)** *Notice.* The court may issue a preliminary injunction <u>only on notice</u> to the adverse party. . . .
> . . . .
> **(c) Security**. The court may issue a preliminary injunction or a temporary restraining <u>order only if the movant gives security</u> in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.
> **(d) Contents and Scope of Every Injunction and Restraining Order**.
> . . . .
> **(2)** *Persons Bound*. <u>The order binds only the following who receive actual notice</u> of it by personal service or otherwise:
> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

FED. R. CIV. P. 65 (underlined emphasis supplied). The injunction Monsanto seeks in *Gilmore* violates Rule 65 by enjoining litigants without notice and without any security bond.  Again, the brief in support of the injunction fails to cite Federal Rule of Civil Procedure 65 or explain why Monsanto need not post a bond.  While Monsanto omitted any discussion of the bond requirement from its brief, it nevertheless snuck entirely unsupported findings—that no bond was required-- into the proposed order.[20]

Monsanto claims that "the parties [i.e. Monsanto and the *Gilmore* Plaintiffs' counsel] have already demonstrated th[e] ability" to resolve "potential conflicts between the MDL and

---

[19]  Exhibit 6, Mem. in Supp. of Jt. Mot. to Stay Related Proceedings, at p. 3 [Case 1:20-cv-01085-MN, Dkt. # 33, PageID # 2464]; Exhibit 5, [Proposed] Order at pp. 4-5 ¶ 17 [Case 1:20-cv-01085-MN, Dkt. # 24-1, PageID # 2314-15].
[20]  *See* Exhibit 5, [Proposed] Order at p. 5 ¶ 17 [Case 1:20-cv-01085-MN, Dkt. # 24-1, PageID # 2315].

*Gilmore.*"[21]   That is what the undersigned is afraid of.   Monsanto has found in the *Gilmore*

Plaintiffs a willing partner in ignoring due process, the Federal Rules of Civil Procedure, the Anti-

Injunction Act, Monsanto's past failures to obtain class-action approval, and the rights of the

*Roundup* MDL plaintiffs.

> **B.   Belying Monsanto's Argument that the *Gilmore* Class Claims Are "Dramatically" Different, Monsanto Had Asked Judge Chhabria to Release the Same Claims.**

Monsanto's argument that Judge Chhabria should not, and cannot, adjudicate the contract

and consumer-fraud claims pending in the District of Delaware is belied by the fact that Monsanto

already asked Judge Chhabria to do so. In the failed *Roundup* MDL class settlement, Monsanto

explicitly included claims at issue in the *Gilmore* class settlement.[22]   Specifically, both class

settlements were engineered to release contract and consumer fraud claims of Non-Hodgkin's

Lymphoma sufferers exposed to Roundup that they purchased.[23] Monsanto tenaciously insisted on

including and then extinguishing these claims in its (failed) *Roundup* MDL futures class settlement

even after conceding on other release terms.[24]   Notably, Monsanto was negotiating these

---

[21] Monsanto Resp. Dkt. # 2438, 12.

[22]   *See* Exhibit 7, Am. Settlement Agreement at pp. 4-5 § 2.1(6) [Case 3:16-md-02741-VC, Dkt. # 12911-1] ("Claims" is broadly defined to include *inter alia* "any kind, or any other form of damages whatsoever, and whether based upon breach of contract, warranty or covenant, . . . failure to warn, fault, misrepresentation, common law fraud, statutory consumer fraud . . . .").

[23] The futures class action Monsanto attempted in Judge Chhabria's court would have released *inter alia* breach of contract claims and claims for statutory consumer fraud. *See* Exhibit 8, Form of Release, Cabraser Decl. Exhibit A to Settlement Agreement, Exhibit 6, at p. 3 ¶ 8 (N.D. Cal. Feb. 4, 2021) [Case 3:16-md-02741-VC, Dkt. # 12531-2, Page 194 of 266].

[24]   *Roundup* MDL Objectors argued that the release was too broad. *See* Exhibit 9, Obj. Sloviter's Br. in Opp. to Mot. for Preliminary Approval, pp. 17-18 (N.D. Cal. March 4, 2021) [Case 3:16-md-02741-VC, Dkt. # 12682, Pages 25-26 of 57] (objecting that release is overbroad because *inter alia* it releases all contract claims and all claims under California Section 17200 and any comparable other states' laws). In response, the class action settlement was revised (again) to make some corrections to the overbroad release, but the revised release *still* provided that contract and statutory consumer fraud claims were to be released in the (failed) *Roundup* settlement.   *See* Exhibit 10, Reply in Supp of Mot. for Preliminary Approval of Proposed Class Settlement, pp. 12-13 ¶ 5[Case 3:16-md-02741-VC, Dkt. # 12911, Pages 22-23 of 102]; Exhibit 11, Exhibit B Redline

overlapping class-settlement releases in two different forums during the same time period, apparently without disclosing this to either court.[25]

### C.  Monsanto Is Forum Shopping.

Monsanto points to the scourge of forum shopping.[26] The undersigned embrace Monsanto's criticism of forum shopping.  But the forum-shopping here is being done by Monsanto. It does not like the fact that its overbroad class settlement failed in the Northern District of California, so it is now attempting to litigate as far away as possible from the State of California. The District of Delaware had not been the forum of any relevant Roundup litigation prior to *Gilmore*.  Monsanto attempted class-action settlements in Judge Chhabria's court and repeatedly failed.[27]  In addition to the *Roundup* MDL, there are eighteen other cases listed as related in the *Gilmore* class action settlement, including one by a *Gilmore* plaintiff, but none were filed in Delaware.[28] Six were filed in California state or federal courts. The state with the most filings overall is Florida and the state with the most federal cases is California. Monsanto has suffered crushing defeats in Roundup trials in California courts, and the state appeals court and the United

---

Against Settlement Agreement, Exhibit 6: form of Release, at pp. 3-4 ¶ 8 (N.D. Cal. April 7, 2021) [Case 3:16-md-02741-VC, Dkt. # 12911-2, Page 61-62 of 94].

[25] Monsanto now claims that its February 2021 mediation led to an agreement in principle in *Gilmore*. Monsanto Resp. Dkt. # 2438, at p. 5. The second attempted class action settlement, and its two subsequent rounds of revisions, were filed in Judge Chhabria's court in February through April. *See* Exhibit 1, *Roundup* MDL docket sheet excerpts.  Monsanto is therefore representing that it was attempting to negotiate the same claims with two different groups of attorneys at the same time with the intention of bringing those nation-wide claims to two different federal courts.

[26] Monsanto Resp., Dkt. # 2438 at p. 12 n. 6 (hypothesizing that, "[i]f Movant simply wants Judge Chhabria to make the decision on settlement approval, this amounts to impermissible judge/forum shopping . . . .").

[27]  *See* note 5 *supra*.

[28]  *See* Gilmore Pl. Resp. Br. at Exhibit A Dkt. # 2437-1, Am. Class Action Settlement Agreement, pp. 6-7 ¶ 46. (California federal court (5), California state court (1), Florida federal court (2), Florida state court (6), Oregon federal court (1), Arkansas federal court (2), New York federal court (1)).

States Ninth Circuit Court of Appeals affirmed per-plaintiff damage awards that dwarf the relatively paltry $23 to $45 million nationwide total that Monsanto proposes to pay in *Gilmore*.[29] Thus, Monsanto was on the market for a forum where it would be exposed to less liability for the damages awarded to victims exposed to its products.

### D.  These Reasons Alone Demonstrate that Gilmore Should Be Transferred.

Despite the nationwide injunction that would interfere with Judge Chhabria's MDL docket, the *Gilmore* Plaintiffs and Monsanto rely on their assertions that transfer of the *Gilmore* action is inappropriate because *Gilmore* is limited to the narrow issue of economic damages related to sale of Roundup products.[30] Not only would the temporary injunction proposed in *Gilmore* affect the *Tomlinson* plaintiffs for all the reasons set forth in their Response Brief, but it would stay proceedings in most cases in the *Roundup* MDL.  Monsanto and the *Gilmore* Plaintiffs cannot in good faith assert on one hand that the *Gilmore* action has no bearing on the *Roundup* MDL, and on the other (unclean) hand seek to stay and enjoin all state and federal litigation involving released claims, which is tantamount to a stay on most Roundup litigation in the United States.

Transfer is therefore appropriate because any temporary injunction should be considered by the MDL judge, not the judge overseeing only the Delaware district court matter in which neither litigation nor substantive discovery has yet occurred (as further discussed in sections IV and VII below).

---

[29]  *Compare* Dkt. # 2437-1, Am. Settlement Agreement p. 10 ¶ D.1 *with Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) ($25,267,634.10); *Pilliod v. Monsanto Co.*, No. A158228, 2021 WL 3486893 (Cal. Ct. App. Aug. 9, 2021) ($87 million); *Johnson v. Monsanto Co.*, 52 Cal. App. 5th 434, 463 (2020), *as modified on denial of reh'g* (Aug. 18, 2020) ($20,506,418.64).

[30]  *See, e.g.*, Gilmore Pl. Resp. Br. Dkt. # 2437 at p. 1-2 ("*Gilmore* is a false advertising consumer class action, arising under the Delaware Consumer Fraud Act ('DCFA'), seeking purely economic damages related to the purchase price of certain Roundup products.").

### III.   RESPONDENTS DO NOT ADDRESS THE KEY RELEASE PROVISIONS.

Both Monsanto and the *Gilmore* Plaintiffs make much of the fact that the proposed settlement agreement contains a broad definition of the term "Personal Injury Claims," but this argument fails to respond to the substantive-release provisions that, as Mr. Webb explained,[31] will impact cases in the *Roundup* MDL.[32]   Because both Monsanto and the *Gilmore* Plaintiffs fail to address the substantive release provisions relied on by Mr. Webb,[33] this issue alone should be dispositive of the need to transfer the *Gilmore* action to the *Roundup* MDL.

All parties appear to agree that the central question regarding transfer under Title 28 U.S.C. § 1407(a) is whether it will promote judicial efficiency to consolidate cases "involving one or more common questions of fact."   Relying on the definitional provision regarding the meaning of the term "Personal Injury Claims," Monsanto and the *Gilmore* Plaintiffs assert that there is no common question of fact between *Gilmore* and the *Roundup* MDL because ¶ L(1) of the proposed settlement agreement expressly excludes claims for "Personal Injury"—as broadly defined in ¶ A(41)—and "Medical Monitoring" from its released claims.   Because this argument fails to respond to the broad swath of claims released in provisions ¶ (L)(1)(a)-(c) discussed in Mr. Webb's principal brief, common questions of fact exist between *Gilmore* and the *Roundup* MDL and transfer is thus warranted.

Without repeating arguments already presented to the Panel in the principal brief (and ignored in the responsive briefing), Paragraph L(1)(a) of the settlement agreement broadly releases all claims related to Monsanto's false or misleading statements regarding the toxicity of Roundup.

---

[31]  Br. in Supp. of Mot. to Transfer *Gilmore v. Monsanto* to MDL 2741 Dkt. # 2400-1 at pp. 3-4.
[32]  Dkt. # 59-1 at ¶ 41 in Case 1:20-cv-01085-MN (filed in this record at Gilmore Pl. Resp. Br. Exhibit A Dkt. # 2437-1) (defining "Personal Injury Claims").
[33]  Monsanto does briefly address release clause ¶ L(1)(c) in the background section, but not argument section, of its brief, but only to the narrow extent that it purports to carve out claims for personal injury and medical monitoring.  Monsanto Resp. Dkt. # 2438, at p. 6-7.

Paragraph L(1)(b) broadly releases all claims related to breach of contract or breach of warranty due to the health effects of Roundup.  And Paragraph L(1)(c) broadly releases all other economic losses or injuries—besides personal injuries and medical monitoring—related to Roundup's toxicity.  Dkt. # 59-1 in case 1:20-cv-01085-MN at p. 22.

The impact of these three provisions on the *Roundup* MDL is not addressed by either Monsanto or the *Gilmore* Plaintiffs because they believe the carve out of personal-injury and medical-monitoring sufficiently limits the releases in *Gilmore* to only claims pertaining to the purchase price of Roundup, but that representation simply overlooks the breath of these three clauses as written in their documentation.  As also noted by the *Tomlinson* Plaintiffs in their response, the *Roundup* MDL involves claims for fraud—which would be released by paragraph L(1)(a)—and breach of warranty—would be released by Paragraph L(1)(b)—thus common questions of fact between *Gilmore* and the MDL abound.  Monsanto Resp. Dkt. # 2438 at p. 4.  At the very minimum, an ambiguity exists between the Settlement Agreement's definitional and substantive-release provisions.  This ambiguity should be addressed by a judge familiar with the universe of claims currently pending in the *Roundup* MDL.

This ambiguity is further complicated by the agreement's definition of "Personal Injury Claim" itself.  According to Paragraph A(41) of the proposed Settlement Agreement, "[i]t is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims."[34]  Dkt. # 59-1 at p. 7 in Case 1:20-cv-01085-MN.  Thus, even if Monsanto and the *Gilmore* Plaintiffs' interpretation of the contractual

---

[34] The definition of "Medical Monitoring Claim" contains the same language: "It is expressly contemplated that a cause of action could include both Claims that are Medical Monitoring Claims and Claims that are not Medical Monitoring Claims." Dkt. # 59-1 at ¶ A(32) in Case 1:20-cv-01085-MN.

ambiguity is the correct one—a point Mr. Webb does not concede because their interpretation is inconsistent with the actual wording of the settlement agreement and proposed release—then portions of a given claim could be wiped out by the broad settlement releases of Paragraphs L(1)(a)-(c) while portions of those claims could also be preserved under the definitional provisions.

This splitting of causes of action into released and non-released portions would only further complicate the factual overlap between the *Roundup* MDL and the *Gilmore* action, and necessitates transferring *Gilmore* to the MDL so one judge can take a universal approach to settlement issues affecting litigation involving all purchasers of Roundup products.   This is precisely why MDL consolidation exits in the first place.

## IV.   RESPONDENTS DO NOT ADDRESS THEIR RELIANCE ON THE MDL.

To elide over the relatively nascent status of the *Gilmore* litigation, respondents point to litigation other than *Gilmore*. The "years of litigation and discovery" that the Gilmore Plaintiffs invoke[35] did not occur in the *Gilmore* case, which had been on file less than a year before Mr. Webb moved to transfer it to the *Roundup* MDL.[36]   Both Monsanto and the *Gilmore* Plaintiffs incorrectly assert that *Gilmore* is procedurally advanced because it draws on the work conducted in numerous other suits involving Monsanto and the dangers of Roundup.   This argument is premised on their reliance on the MDL, and therefore supports transfer rather than refuting it.

The *Gilmore* Plaintiffs admit in their brief that "[t]he *Gilmore* case was settled after years of *litigating related matters*, extensive negotiations, and the filing of a motion for preliminary approval."  Dkt. # 2437  at p. 8 (emphasis added).  Monsanto similarly states its reliance on other (unspecified) litigation in resolving the *Gilmore* action: "Movant's final argument is that transfer

---

[35]  Gilmore Pl. Resp. Br. Dkt. # 2437 at p. 4.
[36]  *Gilmore v. Monsanto Co*. was filed August 19, 2020. No. 1:20-cv-01085-MN (D. Del.).

is appropriate because *Gilmore* is not procedurally advanced.  But this argument depends solely on the lack of formal discovery in the *Gilmore* action and ignores *the litigation and discovery in related false advertising cases* that led to the global resolution proposed in Gilmore."  Monsanto Resp. Dkt. # 2438 at pp. 14-15 (emphasis added).

These unspecified related cases include the *Roundup* MDL where far more discovery has taken place than in any other court.  This is undeniable on the face of the *Gilmore* pleadings, which explicitly rely upon the MDL: "Monsanto is the defendant in tens of thousands personal injury cases brought by individuals who allege exposure to Roundup® caused their cancer."  Dkt. # 1 at ¶ 5 in case 1:20-cv-01085-MN.  That sentence is then followed by this explanatory footnote: "Most of these cases were consolidated in a multi-district litigation ("MDL") before Judge Vince Chhabria in the Northern District of California."  *Id*. at n. 1.

Respondents cannot have it both ways.  They assert that *Gilmore* should not be transferred because it is procedurally advanced, but they also concede that procedural advancement is only as a result of related litigation, specifically the *Roundup* MDL cited in the *Gilmore* complaint.   Thus, rather than being an argument against transfer, Monsanto and the *Gilmore* Plaintiffs' arguments regarding the alleged procedural advancement of their case militate in favor of transferring *Gilmore* to the MDL where the settlement can be properly analyzed within the context of the litigation upon which the settlement is based.

## V.   RESPONDENTS' RELIANCE ON CASELAW WHERE CENTRALIZATION WAS DENIED IS INAPPOSITE.

Throughout their briefing, Respondents cite a number of cases where the Panel declined to consolidate cases into an MDL.  This authority is inapposite to the matter of hand, because the question presented is not whether it would be appropriate to transfer *Gilmore* to a newly fashioned centralized MDL proceeding, but is instead whether the more procedurally advanced MDL court

should consider the approval of a nationwide class action settlement affecting all Roundup cases throughout the country.

The *Gilmore* Plaintiffs cite *In re Wells Fargo Fraudulent Account Opening Litig.*, 282 F. Supp. 3d 1360 (J.P.M.L. 2017); *In re J.P. Morgan Chase Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1372 (J.P.M.L. 2013); and *In re Power Balance, LLC Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1345 (J.P.M.L. 2011) all for the asserted proposition that transfer should be denied when a class-action settlement is pending.  However, in each of these three cases, initial centralization into an MDL was only sought after an initial class-action settlement was already reached in one of the to-be consolidated cases.  Thus, if approved, the settlements obviated any need for centralized pretrial proceedings.  Unlike these three cases, the *Gilmore* action has the potential to affect portions of cases in an MDL that has already existed for five years, without resolving the entirety of that litigation.  Therefore, these three cases have no bearing on the Panel's consideration of whether to transfer *Gilmore* to the more procedurally advanced MDL.

Similarly, both Monsanto and the *Gilmore* Plaintiffs cite a number of cases for the avowed proposition that centralization is not necessary when plaintiffs may challenge the merits of a proposed class-action settlement at a fairness hearing, or may opt out of the settlement.  Monsanto cites *In re Ocwen Loan Servicing, LLC FDCPA Litig.*, 988 F. Supp. 2d 1367 (J.P.M.L. 2013); *In re Toyota Motor Corp. Prius HID Headlamp Prod. Liab. Litig.*, 754 F. Supp. 2d 1380 (J.P.M.L. 2010); *In re HSBC Tel. Conversation Recording Litig.*, 140 F. Supp. 3d 1356 (J.P.M.L. 2015); and *In re Behr Deckover Mktg. & Sales Pracs. Litig.*, 285 F. Supp. 3d 1356 (J.P.M.L. 2018) in support of this asserted proposition, and the *Gilmore* Plaintiffs cite *In re Hyundai and KIA GDI Engine Mktg., Sales, Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341 (J.P.M.L. 2019).

Again, like in all the cases discussed previously in this section, in each case cited by Respondents the Panel denied centralization because the proposed class-actions settlements obviated the need for consolidated pretrial procedures within an MDL.  Here, where an ongoing MDL has already existed for five years, the question is a different one:  Should the potential tag-along action be transferred to the already existing MDL in order to avoid inconsistent results and to promote judicial efficiency.

It is precisely because of the potential impact that the proposed class settlement will have on the MDL that Movant seeks transfer of *Gilmore* to the *Roundup* MDL so that the motion may be considered by the more procedurally advanced court.  Any case dealing with instances where the Panel declined to create an MDL in the first place is therefore inapposite.

## VI.   MOVANT HAS STANDING.

Both Monsanto and the *Gilmore* Plaintiffs rely on the wrong procedural rule as the basis for their assertion that Mr. Webb lacks standing.  While Respondents are correct that Title 28 U.S.C. § 1407(c)(ii) states that transfer may be initiated by "a party in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate," this argument does not address the rule of JPML Procedure actually relied on by Mr. Webb in initiating the present motion.

Under JPML Rule 7.1(b)(i), "[i]f the Clerk of the Panel determines that a potential tag-along action is not appropriate for inclusion in an MDL proceeding and does not enter a CTO, an involved party may move for its transfer pursuant to Rule 6.1."  That is precisely what has occurred here.  Mr. Webb filed a notice of tag-along action, alerting the panel to the potential inclusion of *Gilmore* in the *Roundup* MDL.  Dkt. # 2381.  The Clerk then determined *Gilmore* was not appropriate for inclusion and did not enter a CTO.  Dkt. # 2384.  On this basis, Mr. Webb, as an

"involved party" due to the impact of the proposed *Gilmore* settlement on his case in the MDL,[37] brought the present transfer motion pursuant to JPML Rule 7.1(b)(i).

Mr. Webb is not aware of any caselaw construing the meaning of the phrase "involved party" for the purposes of Rule 7.1(b)(i).  The only citation to the rule Movant could locate comes from *In re Nexium (Esomeprazole) Prods. Liab. Litig.*, where the panel invoked the rule in the broad, ordinary meaning of the phrase:

> However, based on the injury described in the complaint (hypomagnesemia) and the parties' arguments, it is apparent that *Goodman* does not fall within the scope of this MDL. Accordingly, we will not conditionally transfer that action to the MDL. If any involved party believes that *Goodman* should be centralized, it may file a separate motion to that effect. *See* Panel Rule 7.1(b)(i).

908 F. Supp. 2d 1362, 1364 (J.P.M.L. 2012).  There, the Panel appeared to use the phrase "any involved party" from Rule 7.1(b)(i) in accordance with its plain and ordinary meaning.  The reference is broad, in that the Panel does not appear to limit the applicability of a Rule 7.(1)(b)(i) motion to either the defendant in the underlying action (Jansen) who successfully excluded the case from the MDL, or the plaintiff, but states that any party who believes *Goodman* should be included in the newly created MDL may so move under the rule.

This reading of *Nexium* and Rule 7.1(b)(i) is further supported by the holding in *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, where the Panel held that "[w]hether an action involving common questions of fact with actions in the MDL proceeds separately can affect the efficient conduct of the actions as a whole. Parties in an MDL, therefore, have an interest in seeing that actions involving common factual questions are transferred to the MDL."  Dkt. # 631 at p. 1 n. 1 in case 2:18-mn-02873.  It is on this basis that Mr. Webb, a party in the *Roundup* MDL, asserts

---

[37] *See* note 12 *supra* (citing Webb's Petition, which would be subject to the overbroad injunction Monsanto and the *Gilmore* Plaintiffs are seeking in the Delaware court).

his interest in transferring *Gilmore* to the *Roundup* MDL due to its effect on the Roundup litigation as a whole.

The need to construe Rule 7.1(b)(i) in accordance with its plain ordinary meaning is even more important in matters such as this, where a party to the underlying litigation has violated their procedural responsibility to notify the Panel of potential tag-along actions.  As noted by the *Tomlinson* Plaintiffs in their response, Dkt. # 2438 at p. 4, Monsanto violated its procedural obligation to notify the Panel of its involvement in a potentially related action.

Under J.P.M.L. Rule 7.1(a), "Any party or counsel in actions previously transferred under Section 1407 shall promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named or in which that counsel appears."  Monsanto did not follow this obligation, and, therefore, Mr. Webb, as an "involved party," provided the notice under Rule 7.1(a) that Monsanto should have provided.  Following the Clerk's notice of non-inclusion, Mr. Webb next, as an involved party in the *Roundup* MDL, moved for the transfer of *Gilmore* pursuant to Rule 7.1(b)(i).  If Monsanto had not sought to hide its involvement in *Gilmore* from the Panel and followed the procedure mandated in the Panel Rules, Mr. Webb would not have needed to bring the existence of the *Gilmore* matter to the Panel's attention.

Finally, even if arguendo Mr. Webb is not deemed an "involved party" within the broad meaning of Rule 7.1(b)(i), the Panel still possesses the statutory authority to address this important issue under its own power to initiate transfer proceedings.  Under Title 28 U.S.C. § 1407(c)(i), "[p]roceedings for the transfer of an action under this section may be initiated by—(i) the judicial panel on multidistrict litigation upon its own initiative." Monsanto's failure to disclose its attempt to wipe away its liability for a nationwide class of claims which are also asserted by plaintiffs within the *Roundup* MDL provides precisely the situation where the Panel should invoke its sua

sponte powers to order Monsanto to show cause as to why *Gilmore* should not be included in the *Roundup* MDL in accordance with JPML Rule 8.1.

## VII.   NEITHER COMITY NOR CONVENIENCE NECESSITATES THE LITIGATION OF *GILMORE* IN DELEWARE.

Both *Monsanto* and the *Gilmore* Plaintiffs incorrectly assert that it would be either inconvenient or inefficient to litigate their proposed nationwide class settlement within the *Roundup* MDL in the Northern District of California rather than in the Delaware District Court. First, besides the bare facts that Monsanto is incorporated in Delaware, and the proposed settlement contains a Delaware choice-of-law provision, there is no connection by any party to Delaware that makes transfer to the Northern District of California inconvenient.

According to the second-amended class-action complaint in *Gilmore*, no party has any connection to Delaware, while *half* of the named plaintiffs are California residents.  Plaintiffs James Weeks, Paul Taylor, Sherry Hanna, and Kristy Williams all reside in California, while the other named plaintiffs reside in Washington, Arkansas, and Florida.  Dkt. # 22 at ¶¶ 13-20 in case 1:20-cv-01085-MN.  Thus, not a single named plaintiff even resides in the northeast, while half reside in the state of consolidation.  Monsanto is incorporated in Delaware, but it has its principal place of business in St. Louis, Missouri.  *Id*. at § 21.   Thus, it would be *more convenient* to the parties to transfer *Gilmore* to the Northern District of California, not less so.

Finally, Monsanto's comity-based argument actually supports transfer, rather than disfavoring it.  Citing *In re L.E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054, 1056 (J.P.M.L. 1975) and *In re Resource Exploration, Inc., Sec. Litig.*, 483 F. Supp. 817, 822 (J.P.M.L. 1980) Monsanto asserts that transfer should be denied out of comity so that the Delaware District Court may resolve the motion currently pending before it.  Contrary to Monsanto's assertions, the *L.E.*

18

*Lay & Co.* case presents the argument for exactly why *Gilmore* should be transferred to the *Roundup* MDL.[38]

In *L.E. Lay & Co.*, the plaintiff brought two class action suits—one in the Eastern District of Texas, one in the Eastern District of Arkansas—and no party opposed consolidation; rather, the only question was which was the more appropriate district to hear the consolidated class-actions. 391 F. Supp. at 1055-56.  Plaintiff favored the Eastern District of Texas, where the matter was more procedurally advanced, whereas defendants favored the Eastern District of Arkansas out of convenience to the parties.  *Id.* at 1056.  The Panel consolidated the actions in the Eastern District of Texas because

> the pretrial Proceedings in the Texas action have progressed to a relatively advanced stage in contrast to those in the Arkansas action and, indeed, an imminent trial of the Texas action has been set. Moreover, Judge William Wayne Justice, who is assigned to the Texas action, has become thoroughly acquainted with the issues in this litigation and, therefore, is in the best position to supervise these actions toward their most expeditious termination.

*Id.*  Comity thus favored transfer to the district where the matter was more procedurally advanced with a Judge who was more familiar with the factual and procedural development of the related actions. Therefore, comity favors transferring *Gilmore* to the Northern District of California, where the *Roundup* actions are more advanced, and where Judge Chhabria is more familiar with the class-certification issues.

In a footnote, Monsanto goes so far as to accuse Movant of forum shopping, when precisely the converse is true here.  Monsanto Resp. Dkt. #  2438 at p. 12 n. 6.  Having already lost two

---

[38] The *Resource Exploration* case is similarly unpersuasive for Monsanto's "comity" arguments. There, the Panel consolidated eight of nine securities fraud cases into an MDL, but *deferred* ruling on the transfer of one case out of comity because the motion for summary judgment had been pending for six months at the time of the consolidation order.  483 F.Supp. at 820, 822.  Here there is nothing to defer on, as the only question is which court should consider the preliminary-class-settlement approval question.

motions for preliminary-class-settlement approval in the *Roundup* MDL,[39] it is Monsanto who is on the market for a more favorable forum in which to rid itself of liability on a class-wide basis, not Mr. Webb, who only seeks to prevent Monsanto from taking actions in the Delaware District Court which will affect the cases long pending before the MDL, including his own.

## VIII.   CONCLUSION.

For all of the reasons set forth above, Movant respectfully requests that the Panel transfer the *Gilmore* action to the *Roundup* MDL.  The key consolidation questions under section 1407—whether the cases involve common questions of fact and whether transfer will promote their just and efficient conduct—are both satisfied only if *Gilmore* is transferred to the ongoing *Roundup* MDL.  Despite Respondents' attempt to carve out personal-injury and medical-monitoring claims from the settlement release, Respondents' failure to even address the key settlement provisions shows the broad impact the proposed settlement will have on cases already pending in the MDL.  Respondents also do not mention their attempt to enjoin all related litigation in state and federal courts throughout the country, nor do they disclose that the reason they were able to reach a settlement in the Delaware District Court action without either discovery or motion practice is because of their reliance on the work already done in the *Roundup* MDL for the last five years.  Finally, both comity and the convenience of the parties are served by transferring *Gilmore* to the *Roundup* MDL so that the more procedurally advanced court—which is advanced by a full five years of bellwether litigation—may determine the appropriateness of the proposed class settlement.  In light of all these reasons, transfer and consolidation of *Gilmore* is appropriate.

Dated: August 26, 2021                    Respectfully Submitted,

                                          */s/ N. Majed Nachawati*
                                          N. Majed Nachawati (TX SBN: 24038319)
                                          mn@fnlawfirm.com

---

[39] *See* note 5 *supra.*

S. Ann Saucer (LA SBN: 21368; TX: 00797885)
asaucer@fnlawfirm.com
Michael Gorwitz (MN SBN: 0400362)
mgorwitz@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

*Fears Nachawati, PLLC is counsel of record for Movant Brian Webb*