# EXHIBIT 10

issuance of the Science Panel Determination, Monsanto and the settlement class may depose each member of the Panel, with that testimony admissible in follow-on tort cases, *id.* § 12.3(d); (7) the time period before the Panel's determination can be challenged under *Daubert*/*Frye* on the basis of new evidence has been reduced from three years to two, *id.* § 12.5(b); and (8) the Panel determination and depositions of Panel members will be posted on the settlement website. *Id.* § 30.20. The amendments also emphasize what we believe was clear to begin with: that the Panel determination has *no* issue-preclusive effect and does not limit judges or juries from considering competing or contradictory expert opinions or evidence. *Id.* § 12.3(c).

        3.     **Free Legal Services Program**. The LSP will begin after preliminary rather than final approval. As such, it will be available to provide free legal services to class members during the notice and opt-out period and thus advise them regarding their participation or opt-out decisions. *Id.* § 11.2. As provided for in the amended settlement, Plaintiffs will file a preliminary plan for operation of the LSP seven days before the preliminary approval hearing. Settlement § 11.3(a).

        4.     **Compensation Program**. The parties have agreed to three changes to the compensation program: (1) a class member in any tier may, upon a showing of extraordinary circumstances, receive an award in excess of the maximum for that tier, *id.* § 6.2(a)(ii)(1); (2) a rejected compensation award will no longer constitute an offer of judgment, *id.* § 7.13(e); and (3) Monsanto will certify that any appeal it takes of any compensation determination is made in good faith, *id.* § 7.10(b).

        5.     **Individual Release**. The form of individual release, which an individual class member must execute to receive a compensation award, has been clarified to (1) assure that the release encompasses *only* claims related to NHL, and does not extend to any other conditions;

and (2) remove the non-disparagement clause. *See id.*, Ex. 6.

6. **Litigation Stay**. The parties have agreed to add an exception to the litigation stay: a class member who was diagnosed with NHL after the end of the opt-out period and applies for and rejects a compensation award may petition the Settlement Administrator on a showing of exceptional hardship and certain other conditions to return to the tort system early. *Id.* §§ 7.13(e), 18.2(b)(iv), In addition, if a class member passes away during the period of the stay, Monsanto has agreed not to assert any limitation on their survivors' recovery for pain and suffering that state law might otherwise impose by reason of the class member's death. *Id.* § 7.13(f).

7. **Claims Deadline**. The deadline to make a claim with the compensation fund has been extended from 180 days after diagnosis to one year after diagnosis. *Id.* § 7.3(a). The remaining elements protecting the right to make a claim, including the tolling of the deadline until the Effective Date and for diagnoses late in the claims period, as well as the authority of the Claims Administrator to excuse tardiness for good cause or excusable neglect, are unaffected.

8. **Scope of Medical Monitoring Release**. The release has been clarified to make clear that compensatory damages that were increased because of the absence of medical monitoring are not released and to limit the release of medical monitoring claims in ways tied to the reasonable availability of DAGP services to the class member at issue. *Id.* § 17.1(b).

9. **Additional Community Involvement in DAGP**. The DAGP Administrator shall receive input from and consult with organizations representing historically-disadvantaged minority farmers and with unique knowledge of those populations to assure effective outreach and inclusion. *Id.* § 8.2(b).

10. **Posting Information and Resources for Class Members**. The settlement website will include, among its ongoing resources for class members, publicly available