Query    Reports    Utilities    Help    Log Out

4months,SUBMDJ

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:21-cv-01799-ELR

Swanson v. Monsanto Company et al
Assigned to: Judge Eleanor L. Ross
Cause: 28:1332 Diversity-Product Liability

Date Filed: 04/30/2021
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Naomi Swanson**                    represented by    **Nathan Edward Fitzpatrick**
The Fitzpatrick Firm, LLC
14 Lenox Pointe
Atlanta, GA 30324
678-607-5550
Fax: 404-920-4766
Email: nate@atlantasattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**
*a corporation*

**Defendant**

**Does 1-50**
*inclusive*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/30/2021 | 1 | COMPLAINT with Jury Demand filed by Naomi Swanson. (Filing fee $402, receipt number AGANDC-10940822) (Attachments: # 1 Civil Cover Sheet) (jpk) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 04/30/2021) |
| 04/30/2021 | 2 | Electronic Summons Issued as to Monsanto Company. (jpk) (Entered: 04/30/2021) |

| 04/30/2021 | 3 | NOTICE of Appearance by Nathan Edward Fitzpatrick on behalf of Naomi Swanson (jpk) (Entered: 04/30/2021) |
|---|---|---|
| 04/30/2021 | 4 | ELEVENTH AMENDMENT TO GENERAL ORDER 20-01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID-19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 3/9/2021. (jpk) (Entered: 04/30/2021) |
| 05/03/2021 | 5 | NOTICE FROM THE COURT: INSTRUCTIONS FOR CIVIL CASES ASSIGNED TO THE HONORABLE ELEANOR L. ROSS. (mlb) (Entered: 05/03/2021) |
| 08/27/2021 | 6 | ORDER: Plaintiff Naomi Swanson filed the Complaint in this action on April 30, 2021. 1 . As of today, Plaintiff has not filed proof of service of process upon Defendants, and there is no evidence in the record that demonstrates Plaintiff has properly served Defendants. Accordingly, within ten (10) days from the date of entry of this order, the Court DIRECTS Plaintiff to file a notice either showing that service has in fact been properly made or providing why Plaintiff has been unable to serve Defendants. The Court warns Plaintiff that her failure to file such a notice will result in dismissal of this action without prejudice. The Court DIRECTS the Clerk to submit this case after expiration of the ten (10)-day period. Signed by Judge Eleanor L. Ross on 08/27/21. (ceo) (Entered: 08/30/2021) |
| 09/01/2021 | 7 | Return of Service Executed by Naomi Swanson. Monsanto Company served on 8/30/2021, answer due 9/20/2021. (Fitzpatrick, Nathan) (Entered: 09/01/2021) |
| 09/10/2021 | | Submission of 6 Order, to District Judge Eleanor L. Ross. (ceo) (Entered: 09/10/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/21/2021 09:14:30 | | | |
| **PACER Login:** | sh0019sh | **Client Code:** | 31943.356965 |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-01799-ELR |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NAOMI SWANSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| v. | ) | |
| | ) | |
| MONSANTO COMPANY, a | ) | JURY TRIAL DEMANDED |
| corporation, and DOES 1-50, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### *COMPLAINT*

NOW COMES the Plaintiff, NAOMI SWANSON, who hereby brings this action for damages against Defendant MONSANTO COMPANY (MONSANTO) by showing the Court the following:

### *NATURE OF ACTION*

1.

This case arises out of the Defendant's wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling and sale of the herbicide "Roundup ®". "Roundup ®" contains the active ingredient glyphosate. Glyphosate has been found to be carcinogenic, linked to causing various forms of cancer. In addition to

1

containing glyphosate, "Roundup ®" contains surfactants that increase the danger of glyphosate exponentially. As such, "Roundup ®" is dangerous to human health and is unfit to be marketed and sold in commerce, particularly without proper warnings and directions as to the dangers associated with its use. Plaintiff brings this action for personal injuries suffered by exposure to Roundup® as a direct and proximate result of which she developed Stage IV non-Hodgkin's Lymphoma.

## *PARTIES*

2.

Plaintiff NAOMI SWANSON is a citizen of Georgia and a resident of Tucker, Georgia in DeKalb County.

3.

Defendant MONSANTO is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri. Defendant is a foreign profit corporation that is registered to do business and, in fact, does business within this District in the State of Georgia.

## *JURISDICTION AND VENUE*

4.

This Court has subject matter jurisdiction over this action under 28 U.S.C. Section 1332 because there is a complete diversity of citizenship between Plaintiff

and Defendant. The Defendant corporation is a citizen of Delaware (where it is incorporated) and Missouri (where it maintains its principal place of business). Plaintiff is a citizen of the State of Georgia and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.

This Court has personal jurisdiction over Defendant pursuant to 28 U.S.C. Section 1332(a) because Defendant is a foreign corporation that is authorized to do business in the State of Georgia and is, in fact, conducting business within the State of Georgia. Defendant's product "Roundup®" is, and has been for several years, sold throughout the State of Georgia and, more specifically, Defendant has caused "Roundup®" to be sold to consumers such as Plaintiff NAOMI SWANSON in Georgia. Defendant maintains sufficient contacts with the State of Georgia such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

6.

At all times relevant, Defendant advertised and sold goods, specifically "Roundup ®" throughout the State of Georgia. Said Defendant has derived substantial revenue from goods and products used in the State of Georgia. Said Defendant corporation expected its acts to have consequences within the State of

Georgia and derived substantial revenue from interstate commerce coming into and out of the State of Georgia. Specific to this case, Defendant engaged in the business of developing, manufacturing, testing, packaging, marketing, distributing, labeling and selling the product "Roundup ®". Said Defendant purposefully availed itself of the privilege of conducting activities within the State of Georgia, thus invoking the benefits and protections of the laws of the State of Georgia.

7.

Venue is proper within this District under 28 U.S.C. Section 1391(b)(2) because Plaintiff was injured and diagnosed in Dekalb County, Georgia.

8.

Venue is proper in this District under 28 U.S.C. Section 1391(c) because the Defendant resides within this District.

9.

Further, for purposes of venue under 28 U.S.C. Section 1391(d), MONSANTO is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

***FACTS***
***The Discovery of Glyphosate***

10.

The herbicidal properties of glyphosate were discovered in 1970 by

4

MONSANTO. The first glyphosate-based herbicide was introduced to the market in the mid-1970s under the brand name Roundup®.

11.

Roundup ® refers to all formulations of MONSANTO's Roundup products including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Fence and Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Pro Concentrate, Roundup Promax, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ultramax,Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, or any other formulations containing the active ingredient glyphosate.

12.

Glyphosate is a "non-selective" herbicide, meaning it kills indiscriminately based only on whether a given organism produces a specific enzyme 5-enolpyruvyl-shikimic acid-3-phosphate synthase, also known as EPSP synthase. Glyphosate inhibits the enzyme 5-enolpyruvylshikimic acid-3-phosphate synthase that interferes with the shikimic pathway in plants, resulting in the accumulation of shikimic acid in plant tissue and, ultimately, plant death. Sprayed as a liquid, plants

absorb glyphosate directly through their leaves, stems and roots. Detectable quantities accumulate in the plant tissues. Because plants absorb glyphosate, it cannot be completely removed by washing or peeling produce or by milling, baking, or brewing grains.

13.

In addition to producing Roundup ®, the Defendant corporation is also responsible for developing, manufacturing, marketing, selling, and distributing "Roundup Ready" seeds. By 2009 to 2010, roughly 70% of all cotton fields in the United States were grown with "Roundup Ready" seeds manufactured and sold by the Defendant corporation. These "Roundup Ready" seeds genetically modify the plant to be resistant to the effects of "Roundup" being sprayed on the cotton plant.

14.

Each year, approximately 250 million pounds of glyphosate are sprayed on crops and other commercial applications. The increase in use of "Roundup" spray on commercial crops such as cotton is largely driven by the proliferation of "Roundup Ready" seeds also produced by the Defendant corporation.

15.

In addition to the active ingredient glyphosate, Roundup® formulations also contain adjuvants and other chemicals, such as the surfactant POEA, which are

considered "inert" and therefore protected as "trade secrets" in manufacturing. Growing evidence suggests that these adjuvants and additional components of Roundup® formulations are not, in fact, inert and are toxic in their own right.

*General Causation*

16.

Numerous studies and assessments have linked Roundup® as the cause of various cancers in humans.

17.

Studies and assessments linking surfactant, glyphosate and Roundup® to DNA/chromosomal damage in human cells and Non-Hodgkin's Lymphoma include but are not limited to: Cox. C., Northwest Coalition for Alternatives to Pesticides, Journal of Pesticide Reform, Volume 15, No. 3, Fall 1995; Marc J, et al., Glyphosate-based pesticides affect cell cycle regulation. Biol Cell. 2004 April; 96(3):245-9; Peixoto F., Comparative effects of the Roundup and glyphosate on mitochondrial oxidative phosphorylation, Chemosphere, Dec 61(8), 2005, pp. 1115-22; Benachour N, Séralini GE, Glyphosate formulations induce apoptosis and necrosis in human umbilical, embryonic, and placental cells. Chem Res Toxicol. 2009 Jan. 22(1): pp. 97-105; Myers JP, et al., Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement.

Environ. Health, 2016, 15:19, Luoping Zhang, et al., Exposure to glyphosate-based herbicides and risk for non-Hodgkin lymphoma: A meta-analysis and supporting evidence, Mutation Research, Volume 781, 2019, pp. 186-206; IARC Working Group, Some Organophosphate Insecticides and Herbicides - IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, Volume 112, July 29, 2015, pp. 321, 412; Portier, CJ, et al., Open letter: Review of the Carcinogenicity of Glyphosate by EFSA and BfR, Nov. 27, 2015.

18.

The results of these studies and assessments, and more, were at all times available to Defendant. Defendant thus knew or should have known that glyphosate is toxic and that Roundup® is more toxic than glyphosate alone.

19.

Despite its knowledge that Roundup® is dangerous and that Roundup® is considerably more dangerous than glyphosate alone, Defendant continued to promote Roundup® as safe.

### *Plaintiff's Exposure to Roundup®*

20.

Between approximately 1998 and 2018, Plaintiff NAOMI SWANSON frequently used Roundup® at her residence and during her employment in

landscaping, agriculture, and horticulture. During that time, Plaintiff was regularly and repeatedly exposed to "Roundup" through direct contact and use.

21.

Plaintiff used Roundup® on lawns, landscaping, drive-ways, sidewalks, home foundations, gardens, sport fields, swimming pools, and tennis courts.

22.

Plaintiff used the Roundup® brand of herbicide because it was the best-known brand, and she understood it to be safe and effective.

23.

Plaintiff read and followed the labels and instructions that came with Roundup®.

24.

In March of 2018, Plaintiff was diagnosed with Stage IV non-Hodgkin's Lymphoma and began treatment immediately thereafter. This treatment included radiation and chemotherapy.

25.

The sole and proximate cause of Plaintiff NAOMI SWANSON's non-Hodgkin's Lymphoma was her exposure to Roundup®.

26.

As the direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, Plaintiff incurred the damages and losses set forth herein.

### COUNT I
### Strict Liability - Design Defect

27.

Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

28.

At all times relevant, Plaintiff was a member of the consuming public who would use Roundup® in the manner expected by the Defendant.

29.

At all times relevant, Plaintiff used Roundup® properly and in a manner consistent with the instructions provided by Defendant for the use of Roundup®.

30.

At all times relevant, Defendant engaged in the business of developing, designing, manufacturing, marketing, selling, distributing, labeling, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup® into the stream of

commerce. These actions were under the ultimate control and supervision of Defendant.

31.

At all times relevant, Defendant's Roundup® was manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, including Plaintiff.

32.

At all times relevant, Defendant's Roundup® reached the intended consumers, handlers, and users or other persons coming into contact with Roundup® products in Georgia and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

33.

Defendant's Roundup®, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant was defective in design and formulation in that, when it left the control of Defendant's manufacturers and/or suppliers, it was unreasonably dangerous and dangerous to an extent beyond which an ordinary consumer would contemplate.

34.

Defendant's Roundup®, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant was defective in design and formulation in that, when it left the hands of Defendants' manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with its design and formulation.

35.

This defect in design and formulation was in one or more of the following ways: (a) when placed in the stream of commerce, Roundup® products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate; (b) when placed in the stream of commerce, Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner; (c) when placed in the stream of commerce, Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner; (d) Defendant did not sufficiently test, investigate, or study its Roundup® products and, specifically, the active ingredient glyphosate; (e) exposure to Roundup® and glyphosate-containing products presents a risk of harmful side

effects that outweigh any potential utility stemming from the use of the herbicide; (f) Defendant knew or should have known at the time of marketing Roundup® products that exposure to Roundup® and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries; (g) Defendant did not conduct adequate post-marketing surveillance of Roundup®; and (h) Defendant could have employed safer alternative designs and formulations.

36.

Plaintiff was exposed to Defendant's Roundup® products without knowledge of Roundup®'s dangerous characteristics.

37.

At all times relevant, Plaintiff used and/or was exposed to the use of Defendant's Roundup® in an intended or reasonably foreseeable manner without knowledge of Roundup®'s dangerous characteristics.

38.

Plaintiff could not reasonably have discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of exposure due to Defendant's suppression of scientific information linking glyphosate to cancer.

39.

The harm caused by Defendant's Roundup® far outweighed its benefit, rendering Defendant's product dangerous to an extent beyond that which an ordinary consumer would contemplate. Roundup® products were and are more dangerous than alternative products, and Defendant could have designed Roundup® products to make them less dangerous. Indeed, at the time Defendant designed Roundup®, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

40.

At the time Roundup® products left Defendant's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's herbicides.

41.

Defendant's defective design of Roundup® was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of Roundup®, including Plaintiff herein.

42.

The defects in Defendant's Roundup® products were substantial and

contributing factors in causing Plaintiff's injuries, and, but for Defendant's misconduct and omissions, Plaintiff would not have sustained injuries.

43.

Defendant's conduct, as described above, was reckless. Defendant risked the lives of consumers and users of its products, including Plaintiff, with knowledge of the safety problems associated with Roundup® and glyphosate-containing products, and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages.

44.

As the direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce, Plaintiff incurred the damages and losses set forth herein.

## COUNT II
### Strict Liability - Failure to Warn

45.

Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

46.

At all times relevant, Defendant's Roundup® products were defective and

unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup® and specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Defendant.

47.

Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Roundup® products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiffs, and therefore had a duty to warn of the risks associated with the use of Roundup® and glyphosate-containing products.

48.

At all times relevant, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiffs of dangers associated with Roundup® use and exposure. Defendant, as manufacturer, seller, or distributor of chemical herbicides are held to the

knowledge of an expert in the field.

49.

At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

50.

At all times relevant, Defendant failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their product and to those who would foreseeably use or be harmed by Defendant's herbicides, including Plaintiff.

51.

The dangerous propensities of Roundup® and the carcinogenic characteristics of glyphosate were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time they distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiff.

52.

Despite the fact that Defendant knew or should have known that Roundup®

posed a grave risk of harm, it failed to adequately warn consumers, i.e., the reasonably foreseeable users, of the risks associated with its use and exposure.

53.

Defendant has wrongfully concealed information concerning the dangerous nature of Roundup® and its active ingredient glyphosate and, further, has made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

54.

At all times relevant, Defendant's Roundup® reached the intended consumers, handlers, and users or other persons coming into contact with these products in Georgia and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

55.

Plaintiff was exposed to Defendant's Roundup® without knowledge of its dangerous characteristics.

56.

At all times relevant, Plaintiff used and/or was exposed to the use of Defendant's Roundup® products while using them for their intended or reasonably

foreseeable purposes, without knowledge of their dangerous characteristics.

57.

Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products prior to or at the time of Plaintiff's exposure. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendant to know about and disclose serious health risks associated with using Defendant's products.

58.

Defendant knew or should have known that the minimal warnings disseminated with their Roundup® products were inadequate, failed to communicate adequate information on the dangers and safe use/exposure, and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses.

59.

The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff to utilize the products safely and with adequate protection. Instead, Defendant disseminated information that was inaccurate, false

and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after they knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

60.

This alleged failure to warn is not limited to the information contained on Roundup®'s labeling. The Defendant was able to disclose the known risks associated with Roundup® through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. But the Defendant did not disclose these known risks through any medium.

61.

As a result of these inadequate warnings, Defendant's Roundup® products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Plaintiff.

62.

Had Defendant provided adequate warnings and instructions and properly

disclosed and disseminated the risks associated with their Roundup® products, Plaintiff could have avoided the risk of developing injuries and could have obtained or used alternative herbicides.

63.

As the direct and proximate result of Defendant placing its defective Roundup® products into the stream of commerce without providing adequate warning, Plaintiff incurred the damages and losses set forth herein.

## COUNT III
### Negligence

64.

Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

65.

At the time Defendant designed, manufactured, engineered, tested, inspected and sold Roundup®, said Defendant had a duty under Georgia law and common law to exercise reasonable care not to subject consumers of Roundup® to an unreasonable risk of harm and injuries as the result of use of Roundup®.

66.

Defendant breached its duty to exercise reasonable care in the design, manufacture, engineering, testing, inspection and sale without adequate warning of

the risks associated with the use of Roundup®.

67.

As the direct and proximate result of the negligence of the Defendant, Plaintiff incurred the damages and losses set forth herein.

## COUNT IV
### Breach of the Warranty of Merchantability

68.

Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

69.

At the time the Defendant sold Roundup® for use by the general public, Defendant impliedly warranted that the herbicide was fit for the ordinary purposes for which it was intended to be used.

70.

At the time the Defendant sold Roundup®, the herbicide was defective in that it carried the unreasonable risk of causing serious health conditions including non-Hodgkin's lymphoma. At all times relevant, the Defendant was aware of the defect and sold Roundup® without proper warning about this defect. Thus, by placing the defective herbicide in the stream of commerce for resale to the general public including Plaintiff, Defendant breached the implied warranty of

merchantability.

71.

As the direct and proximate result of the negligence of the Defendant, Plaintiff incurred the damages and losses set forth herein.

### COUNT V
### Punitive damages

72.

Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

73.

At all times relevant, the Defendant was aware of the fact that Roundup® was unreasonably dangerous.

74.

Defendant's actions as set forth herein manifest willful, wanton, fraudulent behavior, and a reckless, callous indifference to the safety and welfare of the general public and to the Plaintiff.

75.

The actions of the Defendant are so egregious that they show, by clear and convincing evidence, justification for the imposition of punitive damages.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff demands a trial by jury and pray for judgment against the Defendant as follows:

A. compensatory damages in excess of the jurisdictional amount, including but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

B. compensatory damages to Plaintiff for past and future damages, including but not limited to Plaintiff's pain and suffering and for severe and permanent personal injuries sustained by Plaintiff, including health care costs and economic loss;

C. economic damages in the form of medical expenses, out-of-pocket expenses, lost earnings and other economic damages in an amount to be determined at trial of this action;

D. punitive damages for the wanton, willful, fraudulent, and reckless acts of the Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct, to the extent allowed by applicable law;

E. pre- and post-judgment interest;

F. costs including reasonable attorneys' fees, court costs, and other litigation

expenses; and

G. any other relief the Court deems just and proper.

This 30th day of April, 2021.                    /s/ *Nathan Fitzpatrick*
                                                  Nathan Fitzpatrick
                                                  Georgia Bar No. 193119
                                                  THE FITZPATRICK FIRM, LLC
                                                  14 Lenox Pointe NE
                                                  Atlanta, GA  30324

Rule 11 Representations to the Court

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of

my knowledge, information and belief that this complaint: 1) is not being presented

for an improper purpose, such as to harass, cause unnecessary delay, or needlessly

increase the cost of litigation, 2) is supported by existing law or by a nonfrivolous

argument for extending, modifying or reversing existing law, 3) the factual

contentions have evidentiary support or, if specifically so identified, will likely

have evidentiary support after a reasonable opportunity for further investigation or

discovery; and 4) the complaint otherwise complies with the requirements of Rule

11.

This 30th day of April, 2021.                    /s/ *Nathan Fitzpatrick*
                                                  Nathan Fitzpatrick
                                                  Georgia Bar No. 193119
                                                  THE FITZPATRICK FIRM, LLC
                                                  14 Lenox Pointe NE
                                                  Atlanta, GA  30324