**Query　Reports　Utilities　Help　Log Out**

# U.S. District Court
## Northern District of Iowa (Western Division)
### CIVIL DOCKET FOR CASE #: 5:21-cv-04043-LRR-KEM

Seleroe v. Monsanto Company  
Assigned to: Judge Linda R Reade  
Referred to: Chief Magistrate Judge Kelly K.E. Mahoney  
Cause: 28:1332 Diversity-Product Liability  

Date Filed: 09/27/2021  
Jury Demand: Plaintiff  
Nature of Suit: 365 Personal Inj. Prod. Liability  
Jurisdiction: Diversity  

**Plaintiff**

**David Seleroe**　　　　represented by　**Natalie Hein**  
　　　　　　　　　　　　　　　　　　　　Welch Law Firm PC  
　　　　　　　　　　　　　　　　　　　　1299 Farnam Street  
　　　　　　　　　　　　　　　　　　　　Suite 1220  
　　　　　　　　　　　　　　　　　　　　Omaha, NE 68102  
　　　　　　　　　　　　　　　　　　　　402 341 1200  
　　　　　　　　　　　　　　　　　　　　Email: natalie@welchlawfirm.com  
　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/27/2021 | 1 | COMPLAINT With Jury Demand against Monsanto Company ( Filing fee $ 402 receipt number AIANDC-3538226.), filed by David Seleroe. Scheduling Report due by 12/27/2021 (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet) (Hein, Natalie)(ksy). (Entered: 09/27/2021) |
| 09/28/2021 |  | Judge Linda R Reade and Chief Magistrate Judge Kelly K.E. Mahoney added. No conflicts identified. (ksy) (Entered: 09/28/2021) |
| 09/28/2021 |  | Set Deadline: Attorney Admission for Natalie Hein due by 9/30/2021. Attorney Hein admitted 10/06/2021. (ksy) Modified text on 10/7/2021 (ksy). (Entered: 09/28/2021) |
| 10/07/2021 | 2 | Summons Issued as to Monsanto Company. ****PLEASE MAKE COPIES OF SUMMONS FOR EACH DEFENDANT AND FILL IN REMAINING INFORMATION**** (Attachments: # 1 New Civil Case Packet) (ksy) (Entered: 10/07/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/09/2021 14:58:02 | | | |
| **PACER Login:** | sh0019sh | **Client Code:** | 31943.356965 |
| **Description:** | Docket Report | **Search Criteria:** | 5:21-cv-04043-LRR-KEM |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | | |
|---|---|---|
| DAVID SELEROE, | ) | CASE NO. _____ |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| MONSANTO COMPANY, | ) | **AND JURY DEMAND** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, David Seleroe, by and through the undersigned counsel, and for his Complaint against Defendant Monsanto Company, alleges and states as follows:

### Jurisdiction

1. Plaintiff David Seleroe is a citizen of the State of Iowa and a resident of Ute, Monona County, Iowa.

2. Defendant Monsanto Company ("Monsanto") is a multi-national agricultural biotechnology corporation based in St. Louis, Missouri, and incorporated in Delaware.

3. Monsanto transacts business in Iowa and knows or should have known that its Roundup products are and were sold throughout the State of Iowa. Monsanto has sufficient contacts with the State of Iowa such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

4. This Court has diversity jurisdiction over Plaintiff's claims because the aggregate amount in controversy exceeds the sum of $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

## Facts – Monsanto and Roundup

5.      Monsanto is the developer, designer, manufacturer, marketer, and commercial seller of pesticide products known as Roundup products.

6.      Hundreds of lawsuits have been filed against Monsanto, alleging claims of strict liability and negligence related to Monsanto's Roundup products.

7.      In those lawsuits in has been alleged that:

   a.      In 1970, Monsanto was the entity that discovered the herbicidal properties of Roundup's main ingredient, glyphosate.

   b.      Herbicides such as Roundup are required to be registered with the Environmental Protection Agency ("EPA"), which requires registrants to conduct studies on the herbicide's safety to people and the environment. The results of such studies must be submitted to the EPA for review and evaluation.

   c.      On two occasions, the EPA found that the laboratories hired by Monsanto to test the toxicity of its Roundup products for registration purposes committed fraud.

   d.      In 1976, the United States Food and Drug Administration performed an inspection of Industrial Bio-Test Laboratories ("IBT"), which Monsanto had hired to perform toxicology studies relating to Roundup. The FDA found discrepancies between the raw data and the final report relating to the toxicological impacts of glyphosate. The EPA subsequently audited IBT and also found that the toxicology studies conducted for the Roundup herbicide were invalid.

   e.      Three top executive of IBT were convicted of fraud in 1983.

2

f. In 1985, based on early studies showing that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as *possibly carnogenic to humans* (Group C).

g. In 1991, Monsanto hired Craven Laboratories to perform pesticide and herbicide studies for Roundup.

h. With the results of these studies, Monstanto pressured the EPA to change the classification of glyphosate to *evidence of non-carcinogenicity in humans* (Group E), which it did.

i. Later that same year, the owner of Craven Laboratories and three of its employees were indicted (and later convicted) of fraudulent laboratory practices in the testing of pesticides and herbicides.

j. Despite the falsity of the tests that underlie its registration, within a few years of its launch, Monsanto was marketing Roundup in 115 countries.

k. In addition to the early studies that showed glyphosate was carcinogenic, evidence became available in as early as 1991 that demonstrated that glyphosate formulations, like Roundup, were significantly more toxic than glyphosate alone.

l. In 1996, the New York Attorney General filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup products. Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish.

m. As a result of said lawsuit, Monsanto entered into an Assurance of Discontinuance, in which Monsanto agreed to, among other things, "cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk.

n. Monsanto did not alter its advertising in the same manner in any state other than New York and has still not done so today.

o. On March 20, 2015, the International Agency for Research on Cancer, an agency of the World Health Organization, issued an evaluation of glyphosate and classified it as a Group2A herbicide, meaning that it is *probably carcinogenic to humans*. The Agency concluded that the cancers most associated with glyphosate exposure are non-Hodgkin lymphoma and other haematopoietic cancers.

p. Both before and after March 2015, several countries around the world have instituted bans on the sale of Roundup and other glyphosate-containing herbicides.

q. On September 4, 2015, California's Office of Environmental Health Hazard Assessment ("OEHHA") published a notice of intent to include glyphosate on the state's list of known carcinogens under Proposition 65.

r. Monsanto disputed the listing decision and, in January 2016, filed a lawsuit against OEHHA, seeking declaratory and injunctive relief to prevent OEHHA from listing glyphosate.

8. Upon information and belief, the contents of Paragraph 7 of this Complaint are true.

## Facts – Plaintiff's Exposure to Roundup

9. Plaintiff was a life-long farmer and was exposed to Roundup products by using it himself in or around Ute, Iowa.

10. As a result of the use and exposure to Roundup products, Plaintiff developed Non-Hodgkin lymphoma, of which he was diagnosed in MercyOne Siouxland Medical Center in May, 2021.

## Claims for Relief

### Count One
### STRICT LIABILITY – DESIGN DEFECT

11. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges:

12. Roundup products are defective products that are inherently and unreasonably dangerous to consumers, users, and other persons coming into contact with them, including Plaintiff, in that the products are carcinogenic and cause non-Hodgkin lymphoma and other haematopoietic cancers.

13. The foreseeable risks of harm posed by the Roundup products could have been reduced or avoided by the adoption of a reasonable alternative design by Monsanto, and the omission of the alternative design renders the product not reasonably safe.

14. The defects inherent in Roundup products were the actual and proximate cause of Plaintiff's injuries.

15. As a direct and proximate cause of Defendant's defective product, defective warnings, and negligence, Plaintiff has sustained damages as follows:

5

a. Physical and mental pain and suffering experienced to date;

b. Physical and mental pain and suffering to be experienced in the future;

c. Disability experienced to date;

d. Disability to be experienced in the future;

e. Lost wages;

f. Impairment of earning capacity;

g. Past medical expenses; and

h. Medical expenses to be incurred in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands a jury trial on the issues contained herein.

## Count Two
## STRICT LIABILITY – FAILURE TO WARN

16. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein and further alleges:

17. The Roundup products had potential risks and side effects that were known or should have been known at the time of the manufacture, distribution, and sale of the products.

18. The potential risks and side effects presented a substantial danger when the Roundup products are used or misused in an intended or reasonably foreseeable way.

19. Plaintiff and other ordinary consumers had no way to know and would not have recognized the potential risks and side effects.

20. Monsanto failed to adequately warn consumers, including Plaintiff, of the potential risks and side effects; instead, Monsanto misrepresented to the general public, including Plaintiff, that the product was safe. To date, and despite overwhelming research to the contrary, Monsanto still represents that glyphosate and the other ingredients in its Roundup products are safe.

21. The foreseeable risks of harm posed by the Roundup products could have been reduced or avoided by the provision of a reasonable warning by Monsanto.

22. The omission of any such warning rendered the product not reasonably safe and was a substantial factor in causing Plaintiff's harm.

23. As a direct and proximate cause of Defendant's defective warnings, Plaintiff has sustained damages as follows:

   a. Physical and mental pain and suffering experienced to date;

   b. Physical and mental pain and suffering to be experienced in the future;

   c. Disability experienced to date;

   d. Disability to be experienced in the future;

   e. Lost wages;

   f. Impairment of earning capacity;

   g. Past medical expenses; and

   h. Medical expenses to be incurred in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands a jury trial on the issues contained herein.

## Count Three
## NEGLIGENCE

24. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further allege:

25. Defendant had a duty to exercise reasonable care in the design, manufacture, marketing, distribution, and sale of its Roundup products, including the duty to take all reasonable steps to manufacture, market, and sell a product that was not unreasonably dangerous to consumers, users, and other persons coming into contact with the product.

26. Defendant breached the above duties of care in one or more of the followings ways:

    a. Manufacturing and causing to be sold an inherently and unreasonably dangerous product;

    b. Failing to use reasonable and prudent care in the design, research, manufacture, formulation, and development of Roundup products so as to avoid the risk of serious harm associated with the prevalent use of Roundup products as an herbicide;

    c. Failing to provide accurate information concerning the risks and side effects of Roundup products;

    d. Failing to warn users, consumers, and those coming into contact with its Roundup products of the risks and side effects;

    e. Failing to adequately test Roundup products;

    f. Concealing the results of trials and tests and other information about the safety of glyphosate and Roundup products;

8

g. Participating in the publication of altered studies to support the safety of glyphosate and Roundup products; and

h. Representing that Roundup products were safe for their intended use, when Defendant knew or should have known that the products were not safe for their intended use.

27. Defendant's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer.

28. As a direct and proximate cause of Defendant's negligence, Plaintiff has sustained damages as follows:

a. Physical and mental pain and suffering experienced to date;

b. Physical and mental pain and suffering to be experienced in the future;

c. Disability experienced to date;

d. Disability to be experienced in the future;

e. Lost wages;

f. Impairment of earning capacity;

g. Past medical expenses; and

h. Medical expenses to be incurred in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands a jury trial on the issues contained herein.

## Count Four
## BREACH OF EXPRESS WARRANTY

29.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further allege:

30.     Defendant expressly represented and warranted to the purchasers of its Roundup products, by and through statements made by Defendant in labels, publications, package inserts, and other materials intended for consumers and the general public, that its Roundup products were safe to human health and the environment, effective, fit, and proper for their intended use. Defendant represented the quality of its Roundup products to the public in such a way as to induce their purchase or use, thereby making an express warranty that its Roundup products would conform to the representations.

31.     Defendant breached these warranties, by, among other things:

a.      Representing through its labeling, advertising, and marketing materials that its Roundup products were safe;

b.      Withholding and concealing information about the risks of serious injury associated with the use of and/or exposure to glyphosate and Roundup products;

32.     Plaintiff and his employers justifiably and detrimentally relied on the express warranties and representations of Defendant in the purchase and use of its Roundup products.

33.     Defendant's breach of express warranty was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer.

34.     As a direct and proximate cause of Defendant's breach of warranty, Plaintiff has sustained damages as follows:

    a. Physical and mental pain and suffering experienced to date;

    b. Physical and mental pain and suffering to be experienced in the future;

    c. Disability experienced to date;

    d. Disability to be experienced in the future;

    e. Lost wages;

    f. Impairment of earning capacity;

    g. Past medical expenses; and

    h. Medical expenses to be incurred in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands a jury trial on the issues contained herein.

### Count Five
### BREACH OF
### IMPLIED WARRANTY OF MERCHANTABILITY

1. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further alleges:

2. Defendant impliedly warranted to its consumers and users, including Plaintiff, that its Roundup products were of merchantable quality and safe and fit for its intended use.

3. Defendant breached its implied warranty of merchantability by, among other things, failing to disclose the dangerous propensities of glyphosate and Roundup products and by misrepresenting its safety.

4. Defendant's breach of implied warranty of merchantability was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, and will continue to suffer.

5. As a direct and proximate cause of Defendant's breach of implied warranty of merchantability, Plaintiff has sustained damages as follows:

    a. Physical and mental pain and suffering experienced to date;

    b. Physical and mental pain and suffering to be experienced in the future;

    c. Disability experienced to date;

    d. Disability to be experienced in the future;

    e. Lost wages;

    f. Impairment of earning capacity;

    g. Past medical expenses; and

    h. Medical expenses to be incurred in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands a jury trial on the issues contained herein.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all of the triable issues within this pleading.

DATED this 17th day of September, 2021.

DAVID SELEROE, Plaintiff,

By: _____/s/ Natalie Hein_____
NATALIE HEIN, #AT0012790
DAMIEN J. WRIGHT, #AT0012088
WELCH LAW FIRM, P.C.
1299 FARNAM ST., SUITE 1220
OMAHA, NE  68102
(402) 341-1200
(402) 341-1515 (FAX)

13