JURY

# U.S. District Court
## District of South Carolina (Anderson/Greenwood)
## CIVIL DOCKET FOR CASE #: 8:21-cv-04135-MDL
## Internal Use Only

Cann v. Monsanto Company et al
Assigned to: Unassigned - MDL
Cause: 28:1332 Diversity-Product Liability

Date Filed: 12/23/2021
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**John M Cann**

represented by **Joseph A Mooneyham**
Mooneyham Berry LLC
PO Box 8359
1225 S Church Street
Greenville, SC 29604
864-421-0036
Fax: 864-421-9060
Email: joe@mbllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

BY:

DEPUTY CLERK



V.

**Defendant**

**Monsanto Company**

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2021 | 1 | COMPLAINT against Bayer AG, Bayer Corporation, Monsanto Company ( Filing fee $ 402 receipt number ASCDC-10251470.), filed by John M Cann. Service due by 3/23/2022(alew, ) (Entered: 12/28/2021) |
| 12/23/2021 | 2 | (Court only) CIVIL COVER SHEET - Private Entry. (alew, ) (Entered: 12/28/2021) |
| 12/23/2021 | 3 | Local Rule 26.01 Answers to Interrogatories by John M Cann.(alew, ) (Entered: 12/28/2021) |

| 12/28/2021 | 4 | Summons Issued as to Bayer AG, Bayer Corporation, Monsanto Company. (Attachments: # 1 Summons Bayer Corporation, # 2 Summons Bayer AG c/o Bayer Corporation)(alew, ) (Entered: 12/28/2021) |

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | | |
|---|---|---|
| John M. Cann, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(JURY TRIAL DEMAND)** |
| Monsanto Company, | ) | |
| Bayer Corporation, and Bayer, A.G., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff John M. Cann (hereinafter, "Plaintiff"), by and through his undersigned attorneys, hereby brings this complaint for damages against Defendants Monsanto Company (hereinafter, "Defendant Monsanto"), and Defendants Bayer Corporation and Defendant Bayer A.G. (hereinafter collectively "Defendants Bayer"). and alleges the following:

## NATURE OF THE CASE

1.      This is an action for damages suffered by Plaintiff as a direct and proximate result  of Defendant Monsanto's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or  sale of the herbicide Roundup, containing the active ingredient glyphosate and of Defendants Bayer's continuance of this conduct after their purchase of Defendant Monsanto.

2.      Plaintiff maintains that Roundup and/or glyphosate is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked proper warnings and directions as to the dangers associated with its use.

1

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants. Defendant Monsanto and Defendants Bayer are either incorporated and/or have their principal places of business outside of the state in which Plaintiff resides.

4.      The amount in controversy between Plaintiff and Defendants exceeds $75,000.00, exclusive of interest and cost.

5.      The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Venue is proper within this district pursuant to 28 U.S.C. § 1391 in that Defendants conduct business here and are subject to personal jurisdiction in this district. Furthermore, Defendants sell, market, and/or distribute Roundup within the District of South Carolina.

## PARTIES AND DEFINITIONS

7.      Plaintiff is a natural person and is a resident and citizen of Anderson County, South Carolina. Plaintiff brings this action for personal injuries sustained as a result of exposure to Roundup, which contains the active ingredient glyphosate and the surfactant polyethoxylated tallow amine ("POEA"). As a direct and proximate result of being exposed to Roundup, Plaintiff developed chronic lymphocytic leukemia.

8.      "Roundup" refers to all formulations of Defendants' Round up products or formulations containing the active ingredient glyphosate.

9.      Defendant Monsanto is a Delaware corporation with a principal place of business in St. Louis, Missouri.

10.     Defendant Bayer Corporation is an American subsidiary of Defendant Bayer A.G., a German multinational pharmaceutical and life sciences company.  Bayer Corporation is incorporated in the state of New Jersey.  Upon information and belief, Defendants Bayer purchased Defendant Monsanto in or around June, 2018.

11.     Defendants engage in the business of designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup. Defendant transacted and conducted business within the State of South Carolina that relates to the allegations in this Complaint.

12.     Defendants are authorized to do business in South Carolina and transacted and conducted business in South Carolina that relates to the allegations in this Complaint.

13.     Upon information and belief, Defendants purposefully availed themselves of the privilege of conducting activities within the State of South Carolina.

14.     Defendants advertised and sold goods, specifically Roundup, in South Carolina, and specifically in Anderson County, Spartanburg County and Greenville County, South Carolina.

15.     Defendants derived substantial revenue from good and products sold and used in in South Carolina and from interstate commerce.

16.     Defendants expected or should have expected their acts to have consequences in South Carolina.

17.     Upon information and belief, Defendants did design, sell, advertise, manufacture and/or distribute Roundup, with full knowledge of its dangerous and defective nature.

## FACTUAL ALLEGATIONS

18.     At all relevant times, Defendant Monsanto was in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or has acquired and is responsible for the commercial herbicide Roundup

19.     At all times relevant to this proceeding Defendant Monsanto was a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It was the world's leading producer of glyphosate at all times relevant to this proceeding.

20.     Defendant Monsanto discovered the herbicidal properties of glyphosate during the 1970's and subsequently began to design, research, manufacture, sell, and distribute glyphosate-based Roundup as a broad-spectrum herbicide.

21.     Glyphosate is the active ingredient in Roundup.

22.     Glyphosate is a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

23.     Glyphosate is a "non-selective" herbicide, meaning it kills indiscriminately based only on whether a given organism produces a specific enzyme, 5-enolpyruvylshikimic acide-3- phosphate synthase, known as EPSP synthase.

24.     Glyphosate inhibits the enzyme 5-enolpyruvylshikimic acid-3-phosphate synthase that interferes with the shikimic pathway in plants, resulting in the accumulation of shikimic acid in plant tissue and ultimately in plant death.

25.     When glyphosate-based products are sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots, and detectable quantities accumulate in the plant tissues.

26.     The original Roundup, containing the active ingredient glyphosate, was introduced in 1974, and became the world's most widely used herbicide.

27.     Since its release and since Monsanto placed Roundup into the stream of commerce, multiple studies have established that Roundup is carcinogenic and that Roundup, because of the inclusion of the surfactant POEA into its formulation, is more carcinogenic than glyphosate alone.

28.     Defendant Monsanto knew or should have known that Roundup is more toxic than glyphosate alone and that safety studies on Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Plaintiff from Roundup.

29.     Defendant Monsanto knew or should have known that tests limited to Roundup's active ingredient glyphosate were insufficient to prove the safety of Roundup.

30.     Defendant Monsanto failed to appropriately and adequately test Roundup, Roundup's adjuvants, and "inert" ingredients, and/or the surfactant POEA to protect Plaintiff from Roundup.

31.     Rather than performing appropriate tests, Defendant Monsanto relied on flawed industry- supported studies designed to protect Defendant's economic interests rather than Plaintiff and the consuming public.

32.     Despite its knowledge that Roundup was considerably more dangerous than glyphosate alone, Defendant Monsanto continued to promote Roundup as safe.

33.     Further, Defendant Monsanto has had evidence of glyphosate and Roundup's genotoxic properties for decades.

34.    Despite knowledge to the contrary, Defendant Monsanto has maintained that there is no evidence that Roundup is genotoxic, that regulatory authorities and independent experts are in agreement that Roundup is not genotoxic, and that there is no evidence that Roundup is genotoxic.

35.    Further, as early as 2003, studies establishes that pesticides were a risk factor for Non-Hodgkins Lymphoma (NHL) and hairy cell leukemia.

36.    Studies subsequently confirmed and buttressed the findings from the 2003 studies.

37.    In spite of this knowledge, Defendant Monsanto continued to issue broad and sweeping statements suggesting that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

38.    Upon information and belief, these statements and representations were made with the intent of inducing Plaintiff, the agricultural community, and the public at large to purchase and increase the use of Defendant Monsanto's Roundup for Defendant Monsanto's pecuniary gain, and these statements and representations did, in fact, did induce Plaintiff to use Roundup.

39.    Defendant Monsanto made these statements with complete disregard and reckless indifference to the safety of Plaintiff and the general public.

40.    Notwithstanding Defendant Monsanto's representations, scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of many cancers, including, but not limited to, NHL, sub-types of NHL such as chronic lymphocytic leukemia, multiple myeloma, and soft tissue sarcoma.

6

41.     Defendant Monsanto knew or should have known that glyphosate is associated with an increased risk of developing cancer, including, but not limited to, NHL, sub-types of NHL including chronic lymphocytic leukemia, multiple myeloma, and soft tissue sarcomas.

42.     Defendant Monsanto failed to appropriately and adequately inform and warn Plaintiff of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup, including but not limited to, the risk of developing NHL or subtypes of NHL including chronic lymphocytic leukemia as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring and/or medications.

43.     Defendant Monsanto claimed and all Defendants continue to claim that Roundup is safe, non- carcinogenic, and non-genotoxic.  These misrepresentations are consistent with Defendant Monsanto's cavalier approach to investigating and ensuring the safety of its products, the safety of the public at large, and the safety of Plaintiff.

44.     Further, Defendant Monsanto has failed to seek modification of the labeling of Roundup to include relevant information regarding the risks and dangers associated with Roundup exposure.

45.     The failure of Defendant Monsanto to appropriately warn has resulted in inadequate warnings in safety information presented directly to users and consumers.

46.     The failure of Defendant Monsanto to appropriately warn has resulted in the absence of warning or caution statements that are adequate to protect health and the environment.

47.     The failure of Defendant Monsanto to appropriately warn has resulted in directions for use that were not adequate to protect health and the environment.

48.     By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages as a result of Plaintiff's use of, and exposure to, Roundup which caused or was a substantial contributing factor in causing Plaintiff to suffer from cancer, chronic lymphocytic leukemia, and Plaintiff has suffered severe personal injuries which are permanent and lasting in nature, and physical  pain and mental anguish, including diminished enjoyment of life.

49.     By reason of the foregoing, Plaintiff is severely and permanently injured.

50.     By reason of the foregoing acts and omissions of Defendant Monsanto Plaintiff has endured and, continues to suffer, emotional and mental anguish, medical expenses, and other economic and non-economic damages, as a result of the actions and inactions of the defendant.

## PLAINTIFF'S EXPOSURE TO ROUNDUP

51.     Plaintiff formerly coached football for schools and organizations all over upstate South Carolina.  At several schools where he worked, Plaintiff used Roundup frequently to control weeds on practice and play fields.  He was thus exposed to Roundup on a regular basis for decades. Because of the size of those schools, he often acted as his own "grounds crew" and in that capacity applied Roundup to very large areas.  Because the application was commercial, school districts purchased Roundup in volume and Plaintiff mixed Roundup concentrate with water to dilute it prior to use, thereby exposing himself to the concentrated formulation

52.     Further, Plaintiff has repeatedly used Roundup at his personal residences. He has lived in homes next to forests and fields and has used Roundup to maintain the boundaries of his properties.

53.     Plaintiff was diagnosed with chronic lymphocytic lymphoma, a sub-type of NHL, in 2018.  Plaintiff did not become aware of the connection between the use of Roundup and the development of chronic lymphocytic leukemia until 2021.

54.     The development of Plaintiff's chronic lymphocytic leukemia was proximately caused by exposure to Defendants' Roundup products.

55.     As a result of his injury, Plaintiff has incurred significant economic and non-economic damages.

## EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

56.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

57.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff the true risks associated with Roundup and glyphosate.

58.     At all relevant times, Defendants have maintained that Roundup is safe, non-toxic, and non-carcinogenic.

59.     Indeed, even as of July 2016, Defendant Monsanto continued to represent to the public that "regulatory authorities and independent experts around the world have reviewed numerous long- term/carcinogenicity and genotoxicity studies and *agree* that there is *no evidence* that glyphosate, the active ingredient in Roundup brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic" (emphasis added).[1]

---

[1] Backgrounder – Glyphosate: No Evidence of Carcinogenicity. Updated November 2014.

60.     After the purchase of Defendant Monsanto by Defendants Bayer, Defendants Bayer implicitly and explicitly adopted the false and fraudulent claims of Defendant Monsanto that Roundup products were safe for use by Plaintiff and by the public.

61.     As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably known or have learned through reasonable diligence that Roundup and/or glyphosate contact exposed Plaintiff to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

62.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the true character, quality, and nature of Roundup. Defendants were under a duty to disclose the true character, quality, and nature of Roundup because this was non-public information over which Defendants had and continue to have exclusive control, and because Defendants knew that this information was not available to Plaintiff or to distributors of Roundup. In addition, Defendants are estopped from relying on any statute of limitations because of their intentional concealment of these facts.

63.     Plaintiff had no knowledge that Defendants were engaged in the wrongdoing alleged herein.  Because of the fraudulent acts of concealment of wrongdoing by Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks. Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks, and were forced to rely on only the Defendants' representations.

64.    Accordingly, Defendants are precluded by the discovery rule and/or the doctrine of fraudulent concealment from relying on any statute of limitations.

## ASSUMPTION OF LIABILITY BY DEFENDANTS BAYER

65.    Defendants Bayer had a responsibility to use due diligence in their investigation of the Defendant Monsanto and their products sold, statements, assets, and liabilities before purchasing Defendant Monsanto.

66.    By the exercise of due diligence, Defendants Bayer knew, or should have known, of the negligent and fraudulent actions of Defendant Monsanto as set forth above.

67.    By their purchase of Defendant Monsanto, Defendants Bayer implicitly and explicitly adopted the position of Defendant Monsanto with respect to their products, assets, and liabilities.

68.    By their purchase of Defendant Monsanto, Defendants Bayer are vicariously responsible for the negligent and fraudulent actions of Defendant Monsanto as set forth above.

## FOR A FIRST CAUSE OF ACTION
### (Negligence)

69.    Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

70.    Defendants had a duty to exercise reasonable care in designing, researching, testing, manufacturing marketing, supplying, promoting, packaging, sale, and/or distribution of Roundup into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable dangerous side effects.

71.    Defendants failed to exercise ordinary care in designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Roundup into interstate commerce in that Defendants knew

or should have known that using Roundup created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of NHL, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as need for lifelong medical treatment, monitoring, and/or medications.

72.     The negligence of Defendants, through their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a.     Manufacturing, producing, promoting, formulating, creating, and/or designing Roundup without thoroughly testing it;

b.     Failing to test Roundup and/or failing to adequately, sufficiently, and properly test Roundup;

c.     Not conducting sufficient testing programs to determine whether Roundup was safe for use; in that Defendants knew or should have known that Roundup was unsafe and unfit for use by reason of the dangers to its users;

d.     Not conducting sufficient testing programs and studies to determine Roundup's carcinogenic properties even after Defendants had knowledge that Roundup is, was, or could be, carcinogenic;

e.     Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup, and the propensity of these ingredients to render Roundup toxic, increase the toxicity of Roundup, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether "inert" ingredients and/or adjuvants were safe for use;

f.    Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and agricultural professions, and the EPA of the dangers of Roundup;

g.    Negligently failing to petition the EPA to strengthen the warnings associated with Roundup;

h.    Failing to provide adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

i.    Negligently marketing, advertising, and recommending the use of Roundup without sufficient knowledge as to its dangerous propensities.

j.    Negligently representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

k    Negligently representing that Roundup was as safe and effective as other herbicides;

l.    Negligently designing Roundup in a manner which was dangerous to its users;

m.    Negligently manufacturing Roundup in a manner which was dangerous to its users;

n.    Negligently producing Roundup in a manner which was dangerous to its users;

o.    Negligently formulating Roundup in a manner which was dangerous to its users;

p.    Concealing information from Plaintiff while knowing that Roundup was unsafe, dangerous, and/or non-conforming to EPA regulations;

q.    Improperly concealing and/or misrepresenting information concerning the severity of risks and dangers of Roundup compared to other forms of herbicides.

r.       Negligently selling Roundup with a false and misleading label.

73.      Defendants underreported, underestimated, and downplayed the serious dangers of Roundup.

74.      Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

75.      Defendants' violations of law and/or negligence were the proximate cause of Plaintiff's injuries, harm and economic loss, which Plaintiff suffered and/or will continue to suffer.

76.      As a result of the foregoing acts and omissions, the Plaintiff suffered from serious  and dangerous side effects including, but not limited to, chronic lymphocytic leukemia as well as other severe  injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care.

### FOR A SECOND CAUSE OF ACTION
### (Strict Products Liability – Design Defect)

77.      Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

78.      At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, sold, and distributed the Roundup that was used by the Plaintiff.

79.      Defendants' Roundup was expected to and did reach the usual consumers coming into contact with it without substantial change in the condition in which it was produced, manufactured, sold distributed, and marketed by Defendants.

80.     At those times, Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

81.     The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation, in that, when  it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Roundup.

82.     The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendant manufacturers and/or suppliers, it was unreasonably dangerous in normal use and more dangerous than an ordinary consumer would expect.

83.     At all times herein mentioned, Roundup was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants. In particular, Defendant's Roundup was defective in the following ways:

a.     When placed in the steam of commerce, Defendants' Roundup products were defective in design and formulation and, consequently, dangerous to an extent beyond that  which an ordinary consumer would anticipate;

b.     When placed in the stream of commerce, Defendants' Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

c.     When placed in the stream of commerce, Defendants' Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner;

15

     d.     Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide;

     e.     Defendants knew or should have known at the time of marketing its Roundup products that exposure to Roundup could result in cancer and other severe illnesses and injuries; and

     f.     Defendants did not conduct adequate post-marketing surveillance of its Roundup products.

84.     Defendants knew, or should have known, that at all times herein mentioned, its Roundup products were in a defective condition and were and would remain inherently dangerous and unsafe.

85.     Plaintiff was exposed to Defendants' Roundup, as described above, without knowledge of Roundup's dangerous characteristics.

86.     At the time of Plaintiff's use of and exposure to Roundup, he used it for the purposes of, and in a manner normally intended as, a broad-spectrum herbicide.

87.     By reason of the foregoing, Defendants are strictly liable to Plaintiff.

88.     Defects in Defendants' Roundup were the cause or a substantial factor in causing Plaintiff's injuries.

89.     As a result of the foregoing acts and omissions, the Plaintiff developed chronic lymphocytic leukemia and suffered severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

## FOR A THIRD CAUSE OF ACTION
### (Strict Products Liability – Failure to Warn)

90.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

91.     Defendants have engaged in the business of selling, testing, distributing, supplying, manufacturing marketing, and/or promoting Roundup, and through that conduct have knowingly and intentionally placed Roundup into the stream of commerce with full knowledge that it reaches  consumers, such as Plaintiff, who are exposed to it through ordinary and reasonably foreseeable uses.

92.     Defendants did in fact sell, distribute, supply, manufacture, and/or promote Roundup to Plaintiff. Additionally, Defendants expected the Roundup that it was selling, distributing, supplying, manufacturing, and/or promoting to reach – and Roundup did in fact reach – consumers,  including Plaintiff, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

93.     At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

94.     At all times herein mentioned, the product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user and was so at the time it was distributed by Defendants and at the time Plaintiff was exposed to the product. The  defective condition of Roundup was due in part to the fact that it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, but not limited to, its propensity to cause sub-types of non-Hodgkin's lymphoma, including chronic lymphocytic

leukemia, as a result of exposure and use.

95.      Roundup did not contain a warning or caution statement, which was necessary to protect the health of those exposed in violation of 7 U.S.C. § 136j(a)(1)(E).

96.      Defendants' failure to include a warning or caution statement which was necessary to protect the health of those exposed, violated 7 U.S.C. § 136j(a)(1)(E) as well as the laws of the State of South Carolina.

97.      Defendants could have amended the label of Roundup to provide additional warnings.

98.      This defect caused serious injury to Plaintiff, who used Roundup in its intended and foreseeable manner.

99.      As a result of its inadequate warnings, Defendants' Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Defendants, were distributed by Defendants, and used by Plaintiff.

100.     As a direct and proximate result of Defendants' actions as alleged herein, and in such other ways to be later shown, the product caused Plaintiff to sustain injuries as herein alleged.

**FOR A FOURTH CAUSE OF ACTION**
**(Breach of Implied Warranties)**

101.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

102.     At all times herein mentioned, Defendants manufactured, distributed, compounded, recommended, merchandized, advertised, promoted, and sold Roundup as a broad-spectrum herbicide. These actions were under the ultimate control and supervision of Defendants.

103.    At the time Defendants marketed, sold, and distributed Roundup for use by Plaintiff, Defendants knew of Roundup's intended use and impliedly warranted the product to be of merchantable quality and safe and fit for this use.

104.    The Defendants impliedly represented and warranted to Plaintiff and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

105.    These representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality, and defective.

106.    Plaintiff did rely on the Defendants' implied warranty of merchantability of fitness for particular use and purpose.

107.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether Round was of merchantable quality and safe and fit for its intended use.

108.    Roundup was placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition, and the products' materials were expected to and did reach users, handlers, and persons coming into contact with the products without substantial change in the condition in which they were sold.

109.    Defendants breached their implied warranties, as Roundup was not fit for its intended purposes and uses.

110.    As a result of the foregoing acts and omissions, Plaintiff suffers from chronic lymphocytic leukemia, a subtype of NHL, and Plaintiff suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non- economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and causes of action and respectfully requests that the Court award him actual damages in an amount to be determined by a jury, punitive damages, the costs of this action, and such other and further relief as the Court may deem just and proper.

MOONEYHAM BERRY, LLC


/s/ Joe Mooneyham
Joe Mooneyham, Fed. ID 03965
Post Office Box 8359
 Greenville, SC 29604
P: (864) 421-0036 | F: (864) 421-9060
joe@mbllc.com

*Attorneys for Plaintiff*

Greenville, South Carolina

December 22, 2021