UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **SUGGESTION OF REMAND TO TRANSFEROR COURT** |
| *Vosper v. Monsanto*, Case No. 19-cv-5525 | |

This suggestion of remand is for Plaintiffs Ira and Andrea Vosper whose case was transferred to this MDL from the Eastern District of Pennsylvania.

## I.

In March 2015, the International Agency for Research on Cancer (IARC) classified glyphosate as "probably carcinogenic to humans." The classification stemmed from scientific studies that found an association between glyphosate exposure and non-Hodgkin lymphoma (NHL). Glyphosate is the active ingredient in Monsanto's widely used weedkiller Roundup, and the IARC classification prompted people with NHL to file lawsuits against Monsanto in federal and state courts across the country, primarily alleging that Monsanto failed to warn them about the cancer risks posed by Roundup.

In October 2016, the Panel created this MDL for federal court cases in which plaintiffs allege that Roundup caused their NHL. *In re Roundup Products Liability Litigation*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016). To date, several thousand individual cases have been filed in judicial districts around the country and transferred to the MDL.

Bayer (which now owns Monsanto) began to settle these cases in June 2020. The company reached separate settlement agreements with individual law firms to resolve the cases

being handled by those firms. By this point, well over half the cases in the MDL are subject to agreements with firms. But for each individual case, the settlement is subject to approval by the plaintiff represented by the firm that signed the agreement.

Meanwhile, the cases in the MDL that are not subject to a settlement agreement continue to be worked up for trial. This is happening in waves, with a litigation schedule (through summary judgment) being set for each wave. Monsanto does not consent to cases from other districts being tried here in the Northern District of California. Thus far, most cases in a given wave have settled prior to summary judgment. Occasionally, a summary judgment ruling is necessary, but then the cases settle shortly after I rule, and before I can suggest that the case be remanded for trial. And on rare occasions, the case does not settle even after I rule on summary judgment.

This case, *Vosper v. Monsanto*, was originally filed in the Eastern District of Pennsylvania. It became part of the third wave. Discovery is complete, I have denied summary judgment for Monsanto, and the case did not settle immediately following my ruling. Accordingly, the case is ready for trial, and I suggest that the Panel remand it to the Eastern District of Pennsylvania. What follows is a summary of the pretrial proceedings and guidance for the judge who will be trying the case.

## II.

In the MDL, the proceedings were bifurcated and we focused first on general causation—that is, whether Roundup is capable of causing NHL at exposure levels that people can be expected to experience. Both sides (with the plaintiffs represented by leadership counsel) presented expert testimony at *Daubert* hearings. I ruled that some of the plaintiffs' experts satisfied *Daubert*, and that a reasonable jury could conclude that Roundup is capable of causing NHL. *In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018). There is a video recording of the *Daubert* hearings on general causation; they can be viewed at https://www.uscourts.gov/cameras-courts/re-roundup-products-liability-litigation.

We then worked up three bellwethers for trial. All three involved claims under California

law. After discovery, Monsanto moved for summary judgment on the question of specific causation—that is, whether a reasonable jury could conclude that Roundup caused NHL in these three particular plaintiffs. Following more *Daubert* hearings, I denied Monsanto's motion for summary judgment on specific causation, ruling that a reasonable jury could find that Roundup caused the plaintiffs' NHL. *See generally* Pretrial Trial Order No. 85 (Dkt. No. 85).[1] However, I ruled that certain portions of the testimony given by the plaintiffs' experts at the Daubert hearings crossed into the realm of junk science and could not be repeated to the jury at trial. *Id.* at 6–9.

The first of the three bellwether cases, *Hardeman v. Monsanto*, went to trial in February 2019. The claims in *Vosper*, which are brought under Pennsylvania state law, are similar to the claims that were brought by Hardeman—namely, that Monsanto failed to warn of the risk that Roundup could cause NHL and that Roundup is defective because it causes NHL. The *Hardeman* trial was bifurcated, with the first phase focusing solely on causation. *See* Pretrial Order No. 61 (Dkt. No. 2406). A jury concluded, after several days of deliberation, that Roundup caused Hardeman's NHL. The second phase of the trial focused primarily on damages. The jury awarded $5,066,667 in compensatory damages and $75,000,000 in punitive damages.

The size of the punitive damages award was based on evidence presented at trial that Monsanto was more concerned with tamping down safety inquiries and controlling public opinion around Roundup than it was with ensuring that its product is safe. California law provides for punitive damages where a defendant acts "with a willful and conscious disregard of the rights or safety of others." California Civil Code § 3294(c)(1).

After trial, I reduced the punitive damages award to $20,000,000 to comport with due process. *See* Pretrial Order No. 160 (Dkt. No. 4576). The verdict and post-trial rulings were upheld by the Ninth Circuit Court of Appeals. *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir. 2021). Monsanto has filed a cert petition with the U.S. Supreme Court, primarily arguing that

---

[1] All Pretrial Orders cited here are to docket entries in *In re Roundup Products Liability Litigation*, Case No. 3:16-md-02741-VC.

Hardeman's state law claims are preempted by federal law. The Supreme Court has called for the views of the Solicitor General on whether the Court should take the case. If the Court takes the case, I expect Monsanto will request that all cases be stayed pending a decision.

Following the *Hardeman* verdict, the two remaining bellwethers settled. Meanwhile, as previously mentioned, we established a system by which cases in the MDL would be worked up for trial in waves. In January 2020, I issued rulings on dispositive motions in the Wave 1 cases. I also concluded that it would serve the interest of judicial economy for me to rule on non-dispositive evidentiary motions that related to causation (for example, a motion to prevent a particular expert from making a particular point to the jury about causation). I concluded that other non-dispositive motions to limit or exclude testimony were better left to the judge who would be trying the cases, so I denied those motions without prejudice. *See* Pretrial Order No. 202 (Dkt. No. 9143).

For specific causation, I simply incorporated my ruling from the bellwether cases and applied it to the Wave 1 cases, thereby denying Monsanto's motion to exclude specific causation experts while identifying certain claims that the experts would not be permitted to make at trial. *See* Pretrial Order No. 85 (Dkt. No. 2799); Pretrial Order No. 203 (Dkt. No. 9144). I also issued a separate ruling limiting the testimony of a different plaintiff's expert, Dr. Sawyer. Pretrial Order No. 201 (Dkt. No. 9142).

I followed the same approach for subsequent waves. The *Vosper* case is part of the Wave 3 cases, and I issued rulings on dispositive motions in the Wave 3 cases in December 2021 and January 2022. For challenges to Vosper's specific causation expert, I denied Monsanto's motion to exclude, incorporating the reasoning from my prior rulings. *See* Pretrial Order No. 262 (Dkt. No. 14431). I similarly reincorporated the reasoning from prior rulings to deny Monsanto's motions for summary judgment on general causation and non-causation grounds. Pretrial Order No. 273 (Dkt. No. 14621).

One issue that came up during preparation for the bellwether trials was whether the parties should be permitted to present general causation testimony from someone other than an

expert whose opinions were tested during the general causation phase of the MDL. In particular, Monsanto argued that it should not be limited to using those experts, and that its specific causation experts (who were not part of the general causation phase) should be permitted to offer a general opinion that Roundup does not cause NHL (in addition to their specific opinion that Roundup did not cause NHL in a particular plaintiff). Although I agreed with Monsanto that it typically will make sense for a specific causation expert to include a general opinion about whether Roundup is a risk factor for NHL (assuming the specific causation expert is also qualified to give a general causation opinion), I rejected Monsanto's request as it related to the bellwether cases, because the parties and the Court had been operating under the assumption that general causation testimony at the bellwether trials would be from the experts who passed *Daubert* during the general causation phase. Pretrial Order No. 81 (Dkt. No. 2775). However, I subsequently ruled—in a different Wave 3 case—that it would be appropriate for specific causation experts to include in their opinions the kind of testimony given by the general causation experts during the general causation phase of the MDL, thus potentially obviating the need to call separate witnesses on general causation. *See* Pretrial Order No. 271 (Dkt. No. 14489).

The parties will need to refile motions *in limine* unrelated to causation, and the trial judge will need to consider those motions. My *in limine* rulings from the *Hardeman* trial may serve as guidance. *See generally* Pretrial Order No. 81 (Dkt. No. 2775). My post-trial ruling explaining the evidentiary issues that came up during trial may also be helpful. *See generally* Pretrial Order No. 159. The Ninth Circuit's ruling in *Hardeman* provides helpful guidance regarding damages and jury instructions (including an instructional error—albeit a harmless one—that the Circuit identified in the *Hardeman* case). Attached as Appendix A to this order is a longer list of documents that the trial judge may wish to read in preparation for trial.

The Clerk of Court is directed to provide a copy of the suggestion of remand to the Clerk of the United States Judicial Panel on Multidistrict Litigation and the Clerk of the Eastern District of Pennsylvania.

**IT IS SO ORDERED.**

Dated: February 25, 2022

_____
VINCE CHHABRIA
United States District Judge

Appendix A

There is a webpage dedicated to the Roundup MDL that includes the Pretrial Orders noted below in an easy-to-access format. Please see: https://www.cand.uscourts.gov/judges/chhabria-vince-vc/in-re-roundup-products-liability-litigation-mdl-no-2741/

Pretrial Order No. 236 (Order re Motion to Establish Holdback Percentage): This ruling on fees is not directly relevant but it describes the history of the MDL.

Pretrial Order No. 45 (General Causation): This order denies summary judgment for Monsanto on general causation grounds and applies the *Daubert* test to general causation experts. I recommend the trial judge skim this ruling to develop general familiarity with the science and to help understand the decision by the IARC to classify glyphosate as a probable carcinogen.

Pretrial Order No. 85 (Specific Causation): This ruling denies summary judgment for Monsanto on specific causation grounds and sets parameters for testimony by specific causation experts.

Pretrial Order No. 101 (Summary Judgment): This ruling rejects various arguments by Monsanto (other than those relating to causation) for summary judgment.

Pretrial Order No. 61 (Bifurcation): This ruling explains the rationale for bifurcating the Hardeman trial.

Pretrial Order No. 70 (Jury Questionnaire): This is the questionnaire we submitted to prospective jurors in advance of the Hardeman trial.

Pretrial Order No. 81 (Ruling on Motions in Limine for the Bellwether Trials): This ruling discusses many issues that will come up in any Roundup trial.

Pretrial Order No. 108 (Jury Instructions on Phase 1 of the Hardeman Trial)

Pretrial Order No. 139 (Jury Instructions on Phase 2 of the Hardeman Trial)

Pretrial Order No. 159 (Denying Monsanto's Post-Trial Motions Relating to Issues Other Than Damages): This ruling discusses evidentiary issues that came up at the Hardeman trial, some of which will likely recur in any Roundup trial.

Pretrial Order No. 160 (Ruling on Post-Trial Motions Relating to Damages): This ruling will be relevant if there is a damages award and a post-trial motion to reduce the award.

Ninth Circuit Ruling on Preemption, Damages, Evidentiary Issues, and Instructional Issues *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir. 2021): This ruling is generally helpful, but in particular the trial judge should make sure to review the discussion of jury instructions under California law. After trial, in the event of a damages award, the Ninth Circuit's discussion of punitive damages will be important.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **SUGGESTION OF REMAND TO TRANSFEROR COURT** |
| *Koen v. Monsanto*, Case No. 20-cv-3074 | |

This suggestion of remand is for Plaintiff Bradley Koen whose case was transferred to this MDL from the Western District of Texas.

## I.

In March 2015, the International Agency for Research on Cancer (IARC) classified glyphosate as "probably carcinogenic to humans." The classification stemmed from scientific studies that found an association between glyphosate exposure and non-Hodgkin lymphoma (NHL). Glyphosate is the active ingredient in Monsanto's widely used weedkiller Roundup, and the IARC classification prompted people with NHL to file lawsuits against Monsanto in federal and state courts across the country, primarily alleging that Monsanto failed to warn them about the cancer risks posed by Roundup.

In October 2016, the Panel created this MDL for federal court cases in which plaintiffs allege that Roundup caused their NHL. *In re Roundup Products Liability Litigation*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016). To date, several thousand individual cases have been filed in judicial districts around the country and transferred to the MDL.

Bayer (which now owns Monsanto) began to settle these cases in June 2020. The

company reached separate settlement agreements with individual law firms to resolve the cases being handled by those firms. By this point, well over half the cases in the MDL are subject to agreements with firms. But for each individual case, the settlement is subject to approval by the plaintiff represented by the firm that signed the agreement.

Meanwhile, the cases in the MDL that are not subject to a settlement agreement continue to be worked up for trial. This is happening in waves, with a litigation schedule (through summary judgment) being set for each wave. Monsanto does not consent to cases from other districts being tried here in the Northern District of California. Thus far, most cases in a given wave have settled prior to summary judgment. Occasionally, a summary judgment ruling is necessary, but then the cases settle shortly after I rule, and before I can suggest that the case be remanded for trial. And on rare occasions, the case does not settle even after I rule on summary judgment.

This case, *Koen v. Monsanto*, was originally filed in the Western District of Texas. It became part of the third wave. Discovery is complete, I have denied summary judgment for Monsanto, and the case did not settle immediately following my ruling. Accordingly, the case is ready for trial, and I suggest that the Panel remand it to the Western District of Texas. What follows is a summary of the pretrial proceedings and guidance for the judge who will be trying the case.

## II.

In the MDL, the proceedings were bifurcated and we focused first on general causation—that is, whether Roundup is capable of causing NHL at exposure levels that people can be expected to experience. Both sides (with the plaintiffs represented by leadership counsel) presented expert testimony at *Daubert* hearings. I ruled that some of the plaintiffs' experts satisfied *Daubert*, and that a reasonable jury could conclude that Roundup is capable of causing NHL. *In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018). There is a video recording of the *Daubert* hearings on general causation; they can be viewed at https://www.uscourts.gov/cameras-courts/re-roundup-products-liability-litigation.

We then worked up three bellwethers for trial. All three involved claims under California law. After discovery, Monsanto moved for summary judgment on the question of specific causation—that is, whether a reasonable jury could conclude that Roundup caused NHL in these three particular plaintiffs. Following more *Daubert* hearings, I denied Monsanto's motion for summary judgment on specific causation, ruling that a reasonable jury could find that Roundup caused the plaintiffs' NHL. *See generally* Pretrial Trial Order No. 85 (Dkt. No. 85).[1] However, I ruled that certain portions of the testimony given by the plaintiffs' experts at the Daubert hearings crossed into the realm of junk science and could not be repeated to the jury at trial. *Id*. at 6–9.

The first of the three bellwether cases, *Hardeman v. Monsanto*, went to trial in February 2019. The claims in *Koen*, which are brought under Texas state law, are similar to the claims that were brought by Hardeman—namely, that Monsanto failed to warn of the risk that Roundup could cause NHL and that Roundup is defective because it causes NHL. The *Hardeman* trial was bifurcated, with the first phase focusing solely on causation. *See* Pretrial Order No. 61 (Dkt. No. 2406). A jury concluded, after several days of deliberation, that Roundup caused Hardeman's NHL. The second phase of the trial focused primarily on damages. The jury awarded $5,066,667 in compensatory damages and $75,000,000 in punitive damages.

The size of the punitive damages award was based on evidence presented at trial that Monsanto was more concerned with tamping down safety inquiries and controlling public opinion around Roundup than it was with ensuring that its product is safe. California law provides for punitive damages where a defendant acts "with a willful and conscious disregard of the rights or safety of others." California Civil Code § 3294(c)(1).

After trial, I reduced the punitive damages award to $20,000,000 to comport with due process. *See* Pretrial Order No. 160 (Dkt. No. 4576). The verdict and post-trial rulings were upheld by the Ninth Circuit Court of Appeals. *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir.

---

[1] All Pretrial Orders cited here are to docket entries in *In re Roundup Products Liability Litigation*, Case No. 3:16-md-02741-VC.

2021). Monsanto has filed a cert petition with the U.S. Supreme Court, primarily arguing that Hardeman's state law claims are preempted by federal law. The Supreme Court has called for the views of the Solicitor General on whether the Court should take the case. If the Court takes the case, I expect Monsanto will request that all cases be stayed pending a decision.

Following the *Hardeman* verdict, the two remaining bellwethers settled. Meanwhile, as previously mentioned, we established a system by which cases in the MDL would be worked up for trial in waves. In January 2020, I issued rulings on dispositive motions in the Wave 1 cases. I also concluded that it would serve the interest of judicial economy for me to rule on non-dispositive evidentiary motions that related to causation (for example, a motion to prevent a particular expert from making a particular point to the jury about causation). I concluded that other non-dispositive motions to limit or exclude testimony were better left to the judge who would be trying the cases, so I denied those motions without prejudice. *See* Pretrial Order No. 202 (Dkt. No. 9143).

For specific causation, I simply incorporated my ruling from the bellwether cases and applied it to the Wave 1 cases, thereby denying Monsanto's motion to exclude specific causation experts while identifying certain claims that the experts would not be permitted to make at trial. *See* Pretrial Order No. 85 (Dkt. No. 2799); Pretrial Order No. 203 (Dkt. No. 9144). I also issued a separate ruling limiting the testimony of a different plaintiff's expert, Dr. Sawyer. Pretrial Order No. 201 (Dkt. No. 9142).

I followed the same approach for subsequent waves. The *Koen* case is part of the Wave 3 cases, and I issued rulings on dispositive motions in the Wave 3 cases in December 2021 and January 2022. I denied Monsanto's motion for summary judgment based on Texas law relating to presumption of liability. *See* Pretrial Order No. 259 (Dkt. No. 14415). For challenges to Koen's specific causation experts, I granted Monsanto's motion to exclude the testimony of Koen's expert Dr. Scola, finding that Dr. Scola's testimony was not based on a reliable methodology and that it was likely to confuse the jury. *See* Pretrial Order No. 263 (Dkt. No. 14432). However, Koen offered Dr. Freeman as a separate specific causation expert and I denied

Monsanto's motion to exclude Dr. Freeman, incorporating the reasoning from my prior rulings. Pretrial Order No. 262 (Dkt. No. 14431). I similarly reincorporated the reasoning from prior rulings to deny Monsanto's motions for summary judgment on general causation and non-causation grounds. Pretrial Order No. 273 (Dkt. No. 14621).

One issue that came up during preparation for the bellwether trials was whether the parties should be permitted to present general causation testimony from someone other than an expert whose opinions were tested during the general causation phase of the MDL. In particular, Monsanto argued that it should not be limited to using those experts, and that its specific causation experts (who were not part of the general causation phase) should be permitted to offer a general opinion that Roundup does not cause NHL (in addition to their specific opinion that Roundup did not cause NHL in a particular plaintiff). Although I agreed with Monsanto that it typically will make sense for a specific causation expert to include a general opinion about whether Roundup is a risk factor for NHL (assuming the specific causation expert is also qualified to give a general causation opinion), I rejected Monsanto's request as it related to the bellwether cases, because the parties and the Court had been operating under the assumption that general causation testimony at the bellwether trials would be from the experts who passed *Daubert* during the general causation phase. Pretrial Order No. 81 (Dkt. No. 2775). However, I subsequently ruled—in a different Wave 3 case—that it would be appropriate for specific causation experts to include in their opinions the kind of testimony given by the general causation experts during the general causation phase of the MDL, thus potentially obviating the need to call separate witnesses on general causation. *See* Pretrial Order No. 271 (Dkt. No. 14489).

The parties will need to refile motions *in limine* unrelated to causation, and the trial judge will need to consider those motions. My *in limine* rulings from the *Hardeman* trial may serve as guidance. *See generally* Pretrial Order No. 81 (Dkt. No. 2775). My post-trial ruling explaining the evidentiary issues that came up during trial may also be helpful. *See generally* Pretrial Order No. 159. The Ninth Circuit's ruling in *Hardeman* provides helpful guidance regarding damages

and jury instructions (including an instructional error—albeit a harmless one—that the Circuit identified in the *Hardeman* case). Attached as Appendix A to this order is a longer list of documents that the trial judge may wish to read in preparation for trial.

The Clerk of Court is directed to provide a copy of the suggestion of remand to the Clerk of the United States Judicial Panel on Multidistrict Litigation and the Clerk of the Western District of Texas.

**IT IS SO ORDERED.**

Dated: February 25, 2022

_____

VINCE CHHABRIA
United States District Judge

Appendix A

There is a webpage dedicated to the Roundup MDL that includes the Pretrial Orders noted below in an easy-to-access format.  Please see: https://www.cand.uscourts.gov/judges/chhabria-vince-vc/in-re-roundup-products-liability-litigation-mdl-no-2741/

Pretrial Order No. 236 (Order re Motion to Establish Holdback Percentage): This ruling on fees is not directly relevant but it describes the history of the MDL.

Pretrial Order No. 45 (General Causation): This order denies summary judgment for Monsanto on general causation grounds and applies the *Daubert* test to general causation experts. I recommend the trial judge skim this ruling to develop general familiarity with the science and to help understand the decision by the IARC to classify glyphosate as a probable carcinogen.

Pretrial Order No. 85 (Specific Causation): This ruling denies summary judgment for Monsanto on specific causation grounds and sets parameters for testimony by specific causation experts.

Pretrial Order No. 101 (Summary Judgment): This ruling rejects various arguments by Monsanto (other than those relating to causation) for summary judgment.

Pretrial Order No. 61 (Bifurcation): This ruling explains the rationale for bifurcating the Hardeman trial.

Pretrial Order No. 70 (Jury Questionnaire): This is the questionnaire we submitted to prospective jurors in advance of the Hardeman trial.

Pretrial Order No. 81 (Ruling on Motions in Limine for the Bellwether Trials): This ruling discusses many issues that will come up in any Roundup trial.

Pretrial Order No. 108 (Jury Instructions on Phase 1 of the Hardeman Trial)

Pretrial Order No. 139 (Jury Instructions on Phase 2 of the Hardeman Trial)

Pretrial Order No. 159 (Denying Monsanto's Post-Trial Motions Relating to Issues Other Than Damages): This ruling discusses evidentiary issues that came up at the Hardeman trial, some of which will likely recur in any Roundup trial.

Pretrial Order No. 160 (Ruling on Post-Trial Motions Relating to Damages): This ruling will be relevant if there is a damages award and a post-trial motion to reduce the award.

Ninth Circuit Ruling on Preemption, Damages, Evidentiary Issues, and Instructional Issues *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir. 2021): This ruling is generally helpful, but in particular the trial judge should make sure to review the discussion of jury instructions under California law. After trial, in the event of a damages award, the Ninth Circuit's discussion of punitive damages will be important.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Schaffner v. Monsanto*, Case No. 19-cv-7526 | **SUGGESTION OF REMAND TO TRANSFEROR COURT** |

This suggestion of remand is for Plaintiffs David Schaffner and Theresa Sue Schaffner whose case was transferred to this MDL from the Western District of Pennsylvania.

**I.**

In March 2015, the International Agency for Research on Cancer (IARC) classified glyphosate as "probably carcinogenic to humans." The classification stemmed from scientific studies that found an association between glyphosate exposure and non-Hodgkin lymphoma (NHL). Glyphosate is the active ingredient in Monsanto's widely used weedkiller Roundup, and the IARC classification prompted people with NHL to file lawsuits against Monsanto in federal and state courts across the country, primarily alleging that Monsanto failed to warn them about the cancer risks posed by Roundup.

In October 2016, the Panel created this MDL for federal court cases in which plaintiffs allege that Roundup caused their NHL. *In re Roundup Products Liability Litigation*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016). To date, several thousand individual cases have been filed in judicial districts around the country and transferred to the MDL.

Bayer (which now owns Monsanto) began to settle these cases in June 2020. The

company reached separate settlement agreements with individual law firms to resolve the cases being handled by those firms. By this point, well over half the cases in the MDL are subject to agreements with firms. But for each individual case, the settlement is subject to approval by the plaintiff represented by the firm that signed the agreement.

Meanwhile, the cases in the MDL that are not subject to a settlement agreement continue to be worked up for trial. This is happening in waves, with a litigation schedule (through summary judgment) being set for each wave. Monsanto does not consent to cases from other districts being tried here in the Northern District of California. Thus far, most cases in a given wave have settled prior to summary judgment. Occasionally, a summary judgment ruling is necessary, but then the cases settle shortly after I rule, and before I can suggest that the case be remanded for trial. And on rare occasions, the case does not settle even after I rule on summary judgment.

This case, *Schaffner v. Monsanto*, was originally filed in the Western District of Pennsylvania. It became part of the third wave. Discovery is complete, I have denied summary judgment for Monsanto, and the case did not settle immediately following my ruling. Accordingly, the case is ready for trial, and I suggest that the Panel remand it to the Western District of Pennsylvania. What follows is a summary of the pretrial proceedings and guidance for the judge who will be trying the case.

## II.

In the MDL, the proceedings were bifurcated and we focused first on general causation—that is, whether Roundup is capable of causing NHL at exposure levels that people can be expected to experience. Both sides (with the plaintiffs represented by leadership counsel) presented expert testimony at *Daubert* hearings. I ruled that some of the plaintiffs' experts satisfied *Daubert*, and that a reasonable jury could conclude that Roundup is capable of causing NHL. *In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018). There is a video recording of the *Daubert* hearings on general causation; they can be viewed at https://www.uscourts.gov/cameras-courts/re-roundup-products-liability-litigation.

We then worked up three bellwethers for trial. All three involved claims under California law. After discovery, Monsanto moved for summary judgment on the question of specific causation—that is, whether a reasonable jury could conclude that Roundup caused NHL in these three particular plaintiffs. Following more *Daubert* hearings, I denied Monsanto's motion for summary judgment on specific causation, ruling that a reasonable jury could find that Roundup caused the plaintiffs' NHL. *See generally* Pretrial Trial Order No. 85 (Dkt. No. 85).[1] However, I ruled that certain portions of the testimony given by the plaintiffs' experts at the Daubert hearings crossed into the realm of junk science and could not be repeated to the jury at trial. *Id*. at 6–9.

The first of the three bellwether cases, *Hardeman v. Monsanto*, went to trial in February 2019. The claims in *Schaffner*, which are brought under Pennsylvania state law, are similar to the claims that were brought by Hardeman—namely, that Monsanto failed to warn of the risk that Roundup could cause NHL and that Roundup is defective because it causes NHL. The *Hardeman* trial was bifurcated, with the first phase focusing solely on causation. *See* Pretrial Order No. 61 (Dkt. No. 2406). A jury concluded, after several days of deliberation, that Roundup caused Hardeman's NHL. The second phase of the trial focused primarily on damages. The jury awarded $5,066,667 in compensatory damages and $75,000,000 in punitive damages.

The size of the punitive damages award was based on evidence presented at trial that Monsanto was more concerned with tamping down safety inquiries and controlling public opinion around Roundup than it was with ensuring that its product is safe. California law provides for punitive damages where a defendant acts "with a willful and conscious disregard of the rights or safety of others." California Civil Code § 3294(c)(1).

After trial, I reduced the punitive damages award to $20,000,000 to comport with due process. *See* Pretrial Order No. 160 (Dkt. No. 4576). The verdict and post-trial rulings were upheld by the Ninth Circuit Court of Appeals. *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir.

---

[1] All Pretrial Orders cited here are to docket entries in *In re Roundup Products Liability Litigation*, Case No. 3:16-md-02741-VC.

2021). Monsanto has filed a cert petition with the U.S. Supreme Court, primarily arguing that Hardeman's state law claims are preempted by federal law. The Supreme Court has called for the views of the Solicitor General on whether the Court should take the case. If the Court takes the case, I expect Monsanto will request that all cases be stayed pending a decision.

Following the *Hardeman* verdict, the two remaining bellwethers settled. Meanwhile, as previously mentioned, we established a system by which cases in the MDL would be worked up for trial in waves. In January 2020, I issued rulings on dispositive motions in the Wave 1 cases. I also concluded that it would serve the interest of judicial economy for me to rule on non-dispositive evidentiary motions that related to causation (for example, a motion to prevent a particular expert from making a particular point to the jury about causation). I concluded that other non-dispositive motions to limit or exclude testimony were better left to the judge who would be trying the cases, so I denied those motions without prejudice. *See* Pretrial Order No. 202 (Dkt. No. 9143).

For specific causation, I simply incorporated my ruling from the bellwether cases and applied it to the Wave 1 cases, thereby denying Monsanto's motion to exclude specific causation experts while identifying certain claims that the experts would not be permitted to make at trial. *See* Pretrial Order No. 85 (Dkt. No. 2799); Pretrial Order No. 203 (Dkt. No. 9144). I also issued a separate ruling limiting the testimony of a different plaintiff's expert, Dr. Sawyer. Pretrial Order No. 201 (Dkt. No. 9142).

I followed the same approach for subsequent waves. The *Schaffner* case is part of the Wave 3 cases, and I issued rulings on dispositive motions in the Wave 3 cases in December 2021 and January 2022. For challenges to Schaffner's specific causation expert, I denied Monsanto's motion to exclude, incorporating the reasoning from my prior rulings. *See* Pretrial Order No. 262 (Dkt. No. 14431). I similarly reincorporated the reasoning from prior rulings to deny Monsanto's motions for summary judgment on general causation and non-causation grounds. Pretrial Order No. 273 (Dkt. No. 14621).

One issue that came up during preparation for the bellwether trials was whether the

parties should be permitted to present general causation testimony from someone other than an expert whose opinions were tested during the general causation phase of the MDL. In particular, Monsanto argued that it should not be limited to using those experts, and that its specific causation experts (who were not part of the general causation phase) should be permitted to offer a general opinion that Roundup does not cause NHL (in addition to their specific opinion that Roundup did not cause NHL in a particular plaintiff). Although I agreed with Monsanto that it typically will make sense for a specific causation expert to include a general opinion about whether Roundup is a risk factor for NHL (assuming the specific causation expert is also qualified to give a general causation opinion), I rejected Monsanto's request as it related to the bellwether cases, because the parties and the Court had been operating under the assumption that general causation testimony at the bellwether trials would be from the experts who passed *Daubert* during the general causation phase. Pretrial Order No. 81 (Dkt. No. 2775). However, I subsequently ruled—in a different Wave 3 case—that it would be appropriate for specific causation experts to include in their opinions the kind of testimony given by the general causation experts during the general causation phase of the MDL, thus potentially obviating the need to call separate witnesses on general causation. *See* Pretrial Order No. 271 (Dkt. No. 14489).

The parties will need to refile motions *in limine* unrelated to causation, and the trial judge will need to consider those motions. My *in limine* rulings from the *Hardeman* trial may serve as guidance. *See generally* Pretrial Order No. 81 (Dkt. No. 2775). My post-trial ruling explaining the evidentiary issues that came up during trial may also be helpful. *See generally* Pretrial Order No. 159. The Ninth Circuit's ruling in *Hardeman* provides helpful guidance regarding damages and jury instructions (including an instructional error—albeit a harmless one—that the Circuit identified in the *Hardeman* case). Attached as Appendix A to this order is a longer list of documents that the trial judge may wish to read in preparation for trial.

The Clerk of Court is directed to provide a copy of the suggestion of remand to the Clerk of the United States Judicial Panel on Multidistrict Litigation and the Clerk of the Western

District of Pennsylvania.

**IT IS SO ORDERED.**

Dated: February 25, 2022

VINCE CHHABRIA
United States District Judge

<u>Appendix A</u>

There is a webpage dedicated to the Roundup MDL that includes the Pretrial Orders noted below in an easy-to-access format. Please see: https://www.cand.uscourts.gov/judges/chhabria-vince-vc/in-re-roundup-products-liability-litigation-mdl-no-2741/

Pretrial Order No. 236 (Order re Motion to Establish Holdback Percentage): This ruling on fees is not directly relevant but it describes the history of the MDL.

Pretrial Order No. 45 (General Causation): This order denies summary judgment for Monsanto on general causation grounds and applies the *Daubert* test to general causation experts. I recommend the trial judge skim this ruling to develop general familiarity with the science and to help understand the decision by the IARC to classify glyphosate as a probable carcinogen.

Pretrial Order No. 85 (Specific Causation): This ruling denies summary judgment for Monsanto on specific causation grounds and sets parameters for testimony by specific causation experts.

Pretrial Order No. 101 (Summary Judgment): This ruling rejects various arguments by Monsanto (other than those relating to causation) for summary judgment.

Pretrial Order No. 61 (Bifurcation): This ruling explains the rationale for bifurcating the Hardeman trial.

Pretrial Order No. 70 (Jury Questionnaire): This is the questionnaire we submitted to prospective jurors in advance of the Hardeman trial.

Pretrial Order No. 81 (Ruling on Motions in Limine for the Bellwether Trials): This ruling discusses many issues that will come up in any Roundup trial.

Pretrial Order No. 108 (Jury Instructions on Phase 1 of the Hardeman Trial)

Pretrial Order No. 139 (Jury Instructions on Phase 2 of the Hardeman Trial)

Pretrial Order No. 159 (Denying Monsanto's Post-Trial Motions Relating to Issues Other Than Damages): This ruling discusses evidentiary issues that came up at the Hardeman trial, some of which will likely recur in any Roundup trial.

Pretrial Order No. 160 (Ruling on Post-Trial Motions Relating to Damages): This ruling will be relevant if there is a damages award and a post-trial motion to reduce the award.

Ninth Circuit Ruling on Preemption, Damages, Evidentiary Issues, and Instructional Issues *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir. 2021): This ruling is generally helpful, but in particular the trial judge should make sure to review the discussion of jury instructions under California law. After trial, in the event of a damages award, the Ninth Circuit's discussion of punitive damages will be important.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Chapman v. Monsanto*, Case No. 20-cv-1277 | **SUGGESTION OF REMAND TO TRANSFEROR COURT** |

This suggestion of remand is for Plaintiffs Otis Lindell Chapman and Kim Chapman whose case was transferred to this MDL from the Southern District of Texas.

## I.

In March 2015, the International Agency for Research on Cancer (IARC) classified glyphosate as "probably carcinogenic to humans." The classification stemmed from scientific studies that found an association between glyphosate exposure and non-Hodgkin lymphoma (NHL). Glyphosate is the active ingredient in Monsanto's widely used weedkiller Roundup, and the IARC classification prompted people with NHL to file lawsuits against Monsanto in federal and state courts across the country, primarily alleging that Monsanto failed to warn them about the cancer risks posed by Roundup.

In October 2016, the Panel created this MDL for federal court cases in which plaintiffs allege that Roundup caused their NHL. *In re Roundup Products Liability Litigation*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016). To date, several thousand individual cases have been filed in judicial districts around the country and transferred to the MDL.

Bayer (which now owns Monsanto) began to settle these cases in June 2020. The

company reached separate settlement agreements with individual law firms to resolve the cases being handled by those firms. By this point, well over half the cases in the MDL are subject to agreements with firms. But for each individual case, the settlement is subject to approval by the plaintiff represented by the firm that signed the agreement.

Meanwhile, the cases in the MDL that are not subject to a settlement agreement continue to be worked up for trial. This is happening in waves, with a litigation schedule (through summary judgment) being set for each wave. Monsanto does not consent to cases from other districts being tried here in the Northern District of California. Thus far, most cases in a given wave have settled prior to summary judgment. Occasionally, a summary judgment ruling is necessary, but then the cases settle shortly after I rule, and before I can suggest that the case be remanded for trial. And on rare occasions, the case does not settle even after I rule on summary judgment.

This case, *Chapman v. Monsanto*, was originally filed in the Southern District of Texas. It became part of the third wave. Discovery is complete, I have denied summary judgment for Monsanto, and the case did not settle immediately following my ruling. Accordingly, the case is ready for trial, and I suggest that the Panel remand it to the Southern District of Texas. What follows is a summary of the pretrial proceedings and guidance for the judge who will be trying the case.

## II.

In the MDL, the proceedings were bifurcated and we focused first on general causation—that is, whether Roundup is capable of causing NHL at exposure levels that people can be expected to experience. Both sides (with the plaintiffs represented by leadership counsel) presented expert testimony at *Daubert* hearings. I ruled that some of the plaintiffs' experts satisfied *Daubert*, and that a reasonable jury could conclude that Roundup is capable of causing NHL. *In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018). There is a video recording of the *Daubert* hearings on general causation; they can be viewed at https://www.uscourts.gov/cameras-courts/re-roundup-products-liability-litigation.

We then worked up three bellwethers for trial. All three involved claims under California law. After discovery, Monsanto moved for summary judgment on the question of specific causation—that is, whether a reasonable jury could conclude that Roundup caused NHL in these three particular plaintiffs. Following more *Daubert* hearings, I denied Monsanto's motion for summary judgment on specific causation, ruling that a reasonable jury could find that Roundup caused the plaintiffs' NHL. *See generally* Pretrial Trial Order No. 85 (Dkt. No. 85).[1] However, I ruled that certain portions of the testimony given by the plaintiffs' experts at the Daubert hearings crossed into the realm of junk science and could not be repeated to the jury at trial. *Id*. at 6–9.

The first of the three bellwether cases, *Hardeman v. Monsanto*, went to trial in February 2019. The claims in *Chapman*, which are brought under Texas state law, are similar to the claims that were brought by Hardeman—namely, that Monsanto failed to warn of the risk that Roundup could cause NHL and that Roundup is defective because it causes NHL. The *Hardeman* trial was bifurcated, with the first phase focusing solely on causation. *See* Pretrial Order No. 61 (Dkt. No. 2406). A jury concluded, after several days of deliberation, that Roundup caused Hardeman's NHL. The second phase of the trial focused primarily on damages. The jury awarded $5,066,667 in compensatory damages and $75,000,000 in punitive damages.

The size of the punitive damages award was based on evidence presented at trial that Monsanto was more concerned with tamping down safety inquiries and controlling public opinion around Roundup than it was with ensuring that its product is safe. California law provides for punitive damages where a defendant acts "with a willful and conscious disregard of the rights or safety of others." California Civil Code § 3294(c)(1).

After trial, I reduced the punitive damages award to $20,000,000 to comport with due process. *See* Pretrial Order No. 160 (Dkt. No. 4576). The verdict and post-trial rulings were upheld by the Ninth Circuit Court of Appeals. *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir.

---

[1] All Pretrial Orders cited here are to docket entries in *In re Roundup Products Liability Litigation*, Case No. 3:16-md-02741-VC.

2021). Monsanto has filed a cert petition with the U.S. Supreme Court, primarily arguing that Hardeman's state law claims are preempted by federal law. The Supreme Court has called for the views of the Solicitor General on whether the Court should take the case. If the Court takes the case, I expect Monsanto will request that all cases be stayed pending a decision.

Following the *Hardeman* verdict, the two remaining bellwethers settled. Meanwhile, as previously mentioned, we established a system by which cases in the MDL would be worked up for trial in waves. In January 2020, I issued rulings on dispositive motions in the Wave 1 cases. I also concluded that it would serve the interest of judicial economy for me to rule on non-dispositive evidentiary motions that related to causation (for example, a motion to prevent a particular expert from making a particular point to the jury about causation). I concluded that other non-dispositive motions to limit or exclude testimony were better left to the judge who would be trying the cases, so I denied those motions without prejudice. *See* Pretrial Order No. 202 (Dkt. No. 9143).

For specific causation, I simply incorporated my ruling from the bellwether cases and applied it to the Wave 1 cases, thereby denying Monsanto's motion to exclude specific causation experts while identifying certain claims that the experts would not be permitted to make at trial. *See* Pretrial Order No. 85 (Dkt. No. 2799); Pretrial Order No. 203 (Dkt. No. 9144). I also issued a separate ruling limiting the testimony of a different plaintiff's expert, Dr. Sawyer. Pretrial Order No. 201 (Dkt. No. 9142).

I followed the same approach for subsequent waves. The *Chapman* case was part of the Wave 3 cases, and I issued rulings on dispositive motions in the Wave 3 cases in December 2021 and January 2022. I denied Monsanto's motion for summary judgment based on Texas law relating to presumption of liability. *See* Pretrial Order No. 259 (Dkt. No. 14415). For challenges to Chapman's specific causation experts, I incorporated the reasoning from my prior rulings and denied Monsanto's motions. *See* Pretrial Order No. 260 (Dkt. No. 14417); Pretrial Order No. 262 (Dkt. No. 14431). I similarly reincorporated the reasoning from prior rulings to deny Monsanto's motions for summary judgment on general causation and non-causation grounds. Pretrial Order

No. 273 (Dkt. No. 14621).

One issue that came up during preparation for the bellwether trials was whether the parties should be permitted to present general causation testimony from someone other than an expert whose opinions were tested during the general causation phase of the MDL. In particular, Monsanto argued that it should not be limited to using those experts, and that its specific causation experts (who were not part of the general causation phase) should be permitted to offer a general opinion that Roundup does not cause NHL (in addition to their specific opinion that Roundup did not cause NHL in a particular plaintiff). Although I agreed with Monsanto that it typically will make sense for a specific causation expert to include a general opinion about whether Roundup is a risk factor for NHL (assuming the specific causation expert is also qualified to give a general causation opinion), I rejected Monsanto's request as it related to the bellwether cases, because the parties and the Court had been operating under the assumption that general causation testimony at the bellwether trials would be from the experts who passed *Daubert* during the general causation phase. Pretrial Order No. 81 (Dkt. No. 2775). In *Chapman*, however, I subsequently ruled that it would be appropriate for specific causation experts to include in their opinions the kind of testimony given by the general causation experts during the general causation phase of the MDL, thus potentially obviating the need to call separate witnesses on general causation. *See* Pretrial Order No. 271 (Dkt. No. 14489).

The parties will need to refile motions *in limine* unrelated to causation, and the trial judge will need to consider those motions. My *in limine* rulings from the *Hardeman* trial may serve as guidance. *See generally* Pretrial Order No. 81 (Dkt. No. 2775). My post-trial ruling explaining the evidentiary issues that came up during trial may also be helpful. *See generally* Pretrial Order No. 159. The Ninth Circuit's ruling in *Hardeman* provides helpful guidance regarding damages and jury instructions (including an instructional error—albeit a harmless one—that the Circuit identified in the *Hardeman* case). Attached as Appendix A to this order is a longer list of documents that the trial judge may wish to read in preparation for trial.

The Clerk of Court is directed to provide a copy of the suggestion of remand to the Clerk of the United States Judicial Panel on Multidistrict Litigation and the Clerk of the Southern District of Texas.

**IT IS SO ORDERED.**

Dated: February 25, 2022

_____

VINCE CHHABRIA
United States District Judge

Appendix A

There is a webpage dedicated to the Roundup MDL that includes the Pretrial Orders noted below in an easy-to-access format.  Please see: https://www.cand.uscourts.gov/judges/chhabria-vince-vc/in-re-roundup-products-liability-litigation-mdl-no-2741/

Pretrial Order No. 236 (Order re Motion to Establish Holdback Percentage): This ruling on fees is not directly relevant but it describes the history of the MDL.

Pretrial Order No. 45 (General Causation): This order denies summary judgment for Monsanto on general causation grounds and applies the *Daubert* test to general causation experts. I recommend the trial judge skim this ruling to develop general familiarity with the science and to help understand the decision by the IARC to classify glyphosate as a probable carcinogen.

Pretrial Order No. 85 (Specific Causation): This ruling denies summary judgment for Monsanto on specific causation grounds and sets parameters for testimony by specific causation experts.

Pretrial Order No. 101 (Summary Judgment): This ruling rejects various arguments by Monsanto (other than those relating to causation) for summary judgment.

Pretrial Order No. 61 (Bifurcation): This ruling explains the rationale for bifurcating the Hardeman trial.

Pretrial Order No. 70 (Jury Questionnaire): This is the questionnaire we submitted to prospective jurors in advance of the Hardeman trial.

Pretrial Order No. 81 (Ruling on Motions in Limine for the Bellwether Trials): This ruling discusses many issues that will come up in any Roundup trial.

Pretrial Order No. 108 (Jury Instructions on Phase 1 of the Hardeman Trial)

Pretrial Order No. 139 (Jury Instructions on Phase 2 of the Hardeman Trial)

Pretrial Order No. 159 (Denying Monsanto's Post-Trial Motions Relating to Issues Other Than Damages): This ruling discusses evidentiary issues that came up at the Hardeman trial, some of which will likely recur in any Roundup trial.

Pretrial Order No. 160 (Ruling on Post-Trial Motions Relating to Damages): This ruling will be relevant if there is a damages award and a post-trial motion to reduce the award.

Ninth Circuit Ruling on Preemption, Damages, Evidentiary Issues, and Instructional Issues *Hardeman v. Monsanto*, 997 F.3d 941 (9th Cir. 2021): This ruling is generally helpful, but in particular the trial judge should make sure to review the discussion of jury instructions under California law. After trial, in the event of a damages award, the Ninth Circuit's discussion of punitive damages will be important.