Query    Reports    Utilities    Help    Log Out

ARBITRATION

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
### CIVIL DOCKET FOR CASE #: 2:22-cv-01703-MCA-MAH

DAVIS v. MONSANTO COMPANY et al
Assigned to: Judge Madeline Cox Arleo
Referred to: Magistrate Judge Michael A. Hammer
Case in other court: Superior Court of New Jersey, Sussex County, SSX-L-000051-22
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 03/25/2022
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**LAURA DAVIS**
*agent of*
Executor of the Elizabeth V. DeKleine, Deceased

represented by **STEVEN ROBERT LEHR**
LAW OFFICES OF STEVEN ROBERT LEHR, PC
33 CLINTON ROAD
SUITE 100
WEST CALDWELL, NJ 07006
(973) 575-8002
Email: slehr@lehrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MONSANTO COMPANY**

represented by **JOSEPH H. BLUM**
Shook, Hardy & Bacon, L.L.P.
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 575-3115
Fax: (215) 278-2594
Email: jblum@shb.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN 1-50 DOES**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/25/2022 | 1 | |

|  |  | NOTICE OF REMOVAL by MONSANTO COMPANY from Superior Court of New Jersey, Sussex County, case number SSX-L-000051-22. ( Filing and Admin fee $ 402 receipt number ANJDC-13286775), filed by MONSANTO COMPANY. (Attachments: # 1 Certificate of Service, # 2 Exhibit 1, # 3 Civil Cover Sheet)(BLUM, JOSEPH) (Entered: 03/25/2022) |
| 03/25/2022 |  | Case Assigned to Judge Madeline Cox Arleo and Magistrate Judge Michael A. Hammer. (ak, ) (Entered: 03/28/2022) |
| 03/25/2022 |  | CASE REFERRED to Arbitration. (ak, ) (Entered: 03/28/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/28/2022 09:54:55 | | |
| **PACER Login:** | sh0019sh | **Client Code:** 31943.356965 |
| **Description:** | Docket Report | **Search Criteria:** 2:22-cv-01703-MCA-MAH Start date: 1/1/1980 End date: 3/28/2022 |
| **Billable Pages:** | 1 | **Cost:** 0.10 |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LAURA DAVIS, Executor of the Estate of
Elizabeth V. DeKleine, Deceased,

        Plaintiff,

    v.

MONSANTO COMPANY and JOHN DOES
1-50,

        Defendant.

Case No. _____

## DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws), Defendant Monsanto Company ("Monsanto"), hereby gives notice of removal of this action, captioned *Laura Davis, Executor of the Estate of Elizabeth V. DeKleine, Deceased v. Monsanto Company and John Does 1-50*, bearing Case Number SSX-L-000051-22, from the Superior Court of Sussex County, New Jersey, Law Division to the United States District Court for the District of New Jersey. Pursuant to 28 U.S.C. § 1446(a), Monsanto provides the following statement of grounds for removal.

### Introduction

1.     In this products liability lawsuit, Plaintiff Laura Davis sues Monsanto for decedent Elizabeth DeKleine's injuries and death allegedly caused by Monsanto's Roundup®-branded herbicides, which have glyphosate as their active ingredient. For decades, farmers have used glyphosate-based herbicides to increase crop yields, and home-owners, landscaping companies, and local government agencies have used these herbicides for highly effective weed control. Glyphosate is one of the most thoroughly studied herbicides in the world, and glyphosate-based

herbicides have received regulatory approval in more than 160 countries. Since 1974, when Monsanto first introduced a Roundup®-branded herbicide to the marketplace, the United States Environmental Protection Agency repeatedly has concluded that glyphosate does not cause cancer. Nevertheless, Plaintiff alleges that exposure to Monsanto's Roundup®-branded, glyphosate-based herbicides caused his cancer — specifically, non-Hodgkin's Lymphoma ("NHL").

2.      This is one of many lawsuits that have been filed against Monsanto involving Roundup®-branded herbicides. A multidistrict litigation ("MDL") proceeding is pending in the United States District Court for the Northern District of California, before the Honorable Vince G. Chhabria, pursuant to 28 U.S.C. § 1407. *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.); *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, 214 F. Supp. 3d 1346 (J.P.M.L. 2016).

3.      As discussed in more detail below, Monsanto removes this lawsuit because this Court has subject matter jurisdiction based on diversity of citizenship. Plaintiff is a New Jersey citizen, as was decedent before she died. For purposes of diversity jurisdiction, Monsanto is deemed to be a citizen of Missouri (where its principal place of business is located) and Delaware (Monsanto's state of incorporation). Accordingly, complete diversity of citizenship exists in this case as required by 28 U.S.C. § 1332. The statutory amount-in-controversy requirement is also satisfied because Plaintiff seeks damages for cancer and death allegedly caused by exposure to Monsanto's Roundup®-branded herbicides.

## Background and Procedural History

4.      In February 2022, Plaintiff commenced this lawsuit in the Superior Court of Sussex County, New Jersey, Law Division by filing a complaint, captioned *Laura Davis, Executor of the Estate of Elizabeth V. DeKleine, Deceased v. Monsanto Company and John Does 1-50*, Case No. SSX-L-000051-22 (the "State Court Action").

5.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint (and other pleadings) served in the State Court Action are attached collectively as **Exhibit 1.** Plaintiff seeks damages for NHL and death allegedly caused by exposure to Monsanto's glyphosate-based herbicides. *See, e.g.*, Complaint, ¶¶ 1–2, 6.

## Basis For Removal — Diversity Jurisdiction

6.     Plaintiff is, and was at the time the State Court Action was filed, a resident and citizen of New Jersey, and decedent was a resident and citizen of New Jersey before and when she died.  *See* Complaint ¶ 79.

7.     Monsanto is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Missouri. *See* Complaint ¶ 8. Thus, Monsanto is deemed to be a citizen of Missouri and Delaware, for purposes of federal diversity jurisdiction.[1]

8.     The Complaint seeks compensatory and exemplary damages based on the allegations that Monsanto's Roundup®-branded herbicides caused decedent's cancer (NHL) and death. Therefore, it is plausible from the face of the Complaint that plaintiff seeks damages in excess of $75,000, exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy requirement. 28 U.S.C. § 1332(a); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). Further, plaintiff's request for exemplary damages, Complaint, p. 34, "makes it virtually impossible to say that the claim is for less than the jurisdictional amount." *Woodward v. Newcourt Commercial Finance Corp.,* 60

---

[1] The citizenship of "Doe" defendants must be disregarded when determining whether this lawsuit is removable based on Section 1332(a).  *See* 28 U.S.C. § 1441(b)(1); *see also Scott v. Dollar Tree Stores, Inc.*, No. CV 17-9168 (JLL), 2017 WL 6447872, at *3 (D.N.J. Dec. 18, 2017).

F. Supp. 2d 530, 532 (D.S.C. 1999); *see also Ross v. First Family Fin. Servs., Inc.,* No. 2:01CV218-P-B, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) ("[U]nspecified claims for punitive damage sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. § 1332."). In fact, numerous other lawsuits seeking damages for cancer allegedly caused by Roundup®-branded herbicides have been filed against Monsanto in other federal courts asserting jurisdiction under §1332(a) and alleging damages in excess of $75,000, exclusive of interest and costs.

9.      In sum, this Court has original subject matter jurisdiction over this action based on § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs and interest.

### Procedural Requirements

10.      The Superior Court of Sussex County, New Jersey is located within the District of New Jersey. Therefore, removal to this Court satisfies the venue requirements of 28 U.S.C. § 1446(a).

11.      Monsanto received notice of process on February 25, 2022. This Notice of Removal is timely, in accordance with 28 U.S.C. § 1446(b)(1), because it is being filed within 30 days of February 25, 2022 (taking into account the additional time provided by Rule 6 of the Federal Rules of Civil Procedure when the last day of a deadline is a weekend day).

12.      The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Superior Court of Sussex County, New Jersey and will be promptly served on Plaintiff.

13.      Monsanto does not waive any defenses and expressly reserves its right to raise any and all defenses in future proceedings.

14.      If any question arises as to the propriety of this removal, Monsanto requests the opportunity to present written and oral argument in support of removal.

## Conclusion

For the foregoing reasons, Monsanto removes this lawsuit to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).

SHOOK, HARDY & BACON L.L.P.


Dated: March 25, 2022                    By:    */s/ Joseph H. Blum*
                                         Joseph H. Blum (NJ Attorney I.D. #010211984)
                                         Two Commerce Square
                                         2001 Market Street, Suite 3000
                                         Philadelphia, PA 19103
                                         Phone: 215-278-2555
                                         Fax: 215-278-2594
                                         jblum@shb.com

                                         ***Attorneys for Defendant Monsanto Company***

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph H. Blum, hereby certify that on March 25, 2022, I served a true and correct copy of the foregoing Notice of Removal by electronic mail and Federal Express on the following counsel of record:

> Steven Robert Lehr, Esquire
> Mark Joseph Scancarella, Esquire
> Steven Robert Lehr, P.C.
> 33 Clinton Road, Suite 100
> West Caldwell, NJ  07006
> slehr@lehrlaw.com
> mscancarella@lehrlaw.com
>
> ***Attorneys for Plaintiff***

By: ___/s/ Joseph H. Blum_____
      Joseph H. Blum

***Attorneys for Defendant Monsanto Company***

# EXHIBIT 1

# Case Summary

**Case Number:** SSX L-000051-22

**Case Caption:** Davis Laura Vs Monsanto Company

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Sussex | **Case Initiation Date:** 02/09/2022 |
| **Case Type:** Toxic Tort | **Case Status:** Active | **Jury Demand:** 12 Jurors |
| **Case Track:** 3 | **Judge:** William J Mcgovern | **Team:** 1 |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** | **Case Disposition:** Open | **Statewide Lien:** |

## Plaintiffs
### Laura Davis

| | |
|---|---|
| **Party Description:** | **Attorney Name:** Mark Joseph Scancarella |
| **Address Line 1:** 9 Glenside Drive | **Address Line 2:** | **Attorney Bar ID:** 090262014 |
| **City:** Budd Lake | **State:** NJ | **Zip:** 07828 | **Phone:** |
| **Attorney Email:** MSCANCARELLA@LEHRLAW.COM | | |

## Defendants
### John Does 1-50

| | | |
|---|---|---|
| **Party Description:** Fictitious | | **Attorney Name:** |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** | | |

### Monsanto Company

| | | |
|---|---|---|
| **Party Description:** Corp | | **Attorney Name:** |
| **Address Line 1:** 2270 Ball Drive | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** St. Louis | **State:** MO | **Zip:** 63146 | **Phone:** |
| **Attorney Email:** | | |

## Case Actions

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 02/09/2022 | Complaint with Jury Demand for SSX-L-000051-22 submitted by SCANCARELLA, MARK JOSEPH, STEVEN ROBERT LEHR, PC on behalf of LAURA DAVIS against MONSANTO COMPANY, JOHN DOES 1-50 | LCV2022580668 | 02/09/2022 |
| 02/10/2022 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV2022586370 | 02/10/2022 |



# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Anne Troupis (Monsanto)<br>Bayer U.S. LLC<br>800 N Lindbergh Blvd<br>Saint Louis, MO 63167-1000 |

| | |
|---|---|
| Entity: | Monsanto Company<br>Entity ID Number 2282193 |
| Entity Served: | Monsanto Corp |
| Title of Action: | Davis, Laura, executor of the Estate of DeKleine, Elizabeth V. vs. Monsanto Company |
| Matter Name/ID: | Davis, Laura, executor of the Estate of DeKleine, Elizabeth V. vs. Monsanto Company (12049114) |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Wrongful Death |
| Court/Agency: | Sussex County Superior Court, NJ |
| Case/Reference No: | SSX-L-000051-22 |
| Jurisdiction Served: | New Jersey |
| Date Served on CSC: | 02/25/2022 |
| Answer or Appearance Due: | 35 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Steven Robert Lehr, P.C.<br>973-575-8002 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

## SUMMONS

Attorney(s) Steven Robert Lehr, P.C.

Office Address   33 Clinton Road, Suite 100

Town, State, Zip Code   West Caldwell, NJ 07006

Telephone Number   973-575-8002

Attorney(s) for Plaintiff Laura DeKleine

Laura Davis, Executor of the Estate of

Elizabeth V. DeKleine

        Plaintiff(s)

        vs.

Monsanto Corporation and John Does

1-50

        Defendant(s)

# Superior Court of New Jersey

Sussex            County

Law            Division

Docket No: SSX-L-000051-22

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                                    Clerk of the Superior Court

DATED: 02/24/2022

Name of Defendant to Be Served: Monsanto Corp c/o Corporation Service Company

Address of Defendant to Be Served: Princeton S Corp. Center, Ste 160, 100 Charles Ewing Blvd, Ewing, NJ 08628

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

STEVEN ROBERT LEHR, P.C.
33 Clinton Road, Suite 100
West Caldwell, NJ 07006
(973) 575-8002
Attorneys for Plaintiff

|  |  |
|---|---|
| LAURA DAVIS, Executor of the Estate of Elizabeth V. DeKleine, Deceased,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MONSANTO COMPANY and JOHN DOES 1-50,<br>　　　　　　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>SUSSEX COUNTY<br><br>DOCKET NO.<br><br>Civil Action<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Laura Davis, Executor of the Estate of Elizabeth V. DeKleine ("Plaintiff"), by and through her undersigned attorneys, hereby brings this Complaint for damages against Defendants Monsanto Company and John Does 1-50, and alleges the following:

## NATURE OF THE CASE

1.　This is an action for damages suffered by Elizabeth DeKleine (hereinafter referred to as the "Decedent") as a direct and proximate result of Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the herbicide Roundup, containing the active ingredient glyphosate.

2.　Plaintiff maintains that Roundup and/or glyphosate is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce, and lacked proper warnings and directions as to the dangers associated with its use.

3.　Decedent's injuries, like those striking thousands of similarly situated victims across the country, were avoidable.

**JURISDICTION AND VENUE**

4.    This Court has jurisdiction over Defendants and this action pursuant to R. 4:3-2(a)(3), as the cause of action arose in this county.

5.    Venue is also proper pursuant to R. 4:3-2(b) in that Defendants are actually doing business in this county.

**PARTIES**

6.    Plaintiff, Laura Davis, is the Executor of the Estate of Elizabeth DeKleine (hereinafter referred to as the "Decedent"). Plaintiff brings this action on behalf of the Decedent for personal injuries she sustained by exposure to Roundup (hereinafter referred to as "Roundup") containing the active ingredient glyphosate and the surfactant POEA. As a direct and proximate result of being exposed to Roundup, Decedent developed and subsequently passed away from diffuse large B-cell lymphoma.

7.    "Roundup" refers to all formulations of Defendants' roundup products, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed &

Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation of containing the active ingredient glyphosate.

8.     Defendant, Monsanto Company, is a Delaware corporation in "active" status, with a principal place of business in St. Louis, Missouri.

9.     Upon information and belief, Defendants John Does 1-50 are subsidiaries, partners, or other entities that were involved in the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the herbicide Roundup, containing the active ingredient glyphosate. The identities of John Does 1-50 are unknown to Plaintiff at this time. Plaintiff will move the Court to specifically name John Does 1-50 as their identities become known to Plaintiff through discovery.

10.    Defendant Monsanto Company and John Does 1-50 are collectively referred to as "Monsanto Defendants" or "Defendants."

11.    Defendants advertise and sell goods, specifically Roundup, in Sussex County, New Jersey.

12.    Defendants transacted and conducted business within Sussex County that relates to the allegations in this Complaint.

13.    Defendants derived substantial revenue from goods and products used in Sussex County.

14.    Defendants expected or should have expected their acts to have consequences within Sussex County.

3

15.     Defendants engaged in the business of designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup.

16.     Defendants are authorized to do business in Sussex County and derive substantial income from doing business in this county.

17.     Upon information and belief, Defendants purposefully availed themselves of the privilege of conducting activities with Sussex County, thus invoking the benefits and protections of the laws of the State of New Jersey.

18.     Upon information and belief, Defendants did act together to design, sell, advertise, manufacture and/or distribute Roundup, with full knowledge of its dangerous and defective nature.

## FACTUAL ALLEGATIONS

19.     At all relevant times, Defendants were in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have acquired and are responsible for Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the commercial herbicide Roundup.

20.     Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate.

21.     Defendants discovered the herbicidal properties of glyphosate during the 1970's and subsequently began to design, research, manufacture, sell and distribute glyphosate based "Roundup" as a broad spectrum herbicide.

22.     Glyphosate is the active ingredient in Roundup.

23.     Glyphosate is a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

4

24.     Glyphosate is a "non-selective" herbicide, meaning it kills indiscriminately based only on whether a given organism produces a specific enzyme.

25.     For nearly 40 years, consumers across the globe have used Roundup, unaware of its carcinogenic properties.

## EVIDENCE OF CARCINOGENICITY IN ROUNDUP

26.     As early as the 1980's Monsanto was aware of glyphosate's carcinogenic properties.

27.     In 1985, the Environmental Protection Agency's (hereinafter referred to as the "EPA") Toxicology Branch published a memorandum classifying glyphosate as a Category C oncogene. Category C oncogenes are possible human carcinogens with limited evidence of carcinogenicity.

28.     In 1986, the EPA issued a Registration Standard for glyphosate (NTIS PB87-103214). The Registration standard required additional phytotoxicity, environmental fate, toxicology, product chemistry, and residue chemistry studies. All of the data required was submitted and reviewed and/or waived.

29.     In addition to the toxicity of the active molecule, many studies support the hypothesis that glyphosate formulations found in Defendants' Roundup products are more dangerous and toxic than glyphosate alone. As early as 1991 evidence existed demonstrating that glyphosate formulations were significantly more toxic than glyphosate alone.

30.     In 2002, a study found that Defendants' Roundup caused delays in the cell cycles of sea urchins, while the same concentrations of glyphosate alone proved ineffective and did not alter cell cycles.

5

31.     In 2005, another study was published suggesting that the harmful effects of Roundup on mitochondrial bioenergetics could not be exclusively attributed to glyphosate and could be the result of other chemicals, namely the surfactant POEA, or alternatively due to the possible synergy between glyphosate and Roundup formulation products.

32.     A 2009 study further suggested that determinations of glyphosate toxicity should take into account the presence of adjuvants, or those chemicals used in the formulation of the complete pesticide. The study confirmed that the adjuvants in roundup are not inert and that Roundup is always more toxic than its active ingredient glyphosate.

33.     The results of these studies were confirmed in recently published peer-reviewed studies and were at all times available and/or known to Defendants.

34.     Defendants knew or should have known that Roundup is more toxic than glyphosate alone and that safety studies on Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Decedent from Roundup.

35.     Defendants knew or should have known that tests limited to Roundup's active ingredient glyphosate were insufficient to prove the safety of Roundup.

36.     Defendants failed to appropriately and adequately test Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Plaintiff from Roundup.

37.     Rather than performing appropriate tests, Defendants relied upon flawed industry-supported studies designed to protect Defendants' economic interests rather than Plaintiff and the consuming public.

38.     Despite their knowledge that Roundup was considerably more dangerous than glyphosate alone, Defendants continued to promote Roundup as safe.

## IARC CLASSIFICATION OF GLYPHOSATE

39.      The International Agency for Research on Cancer (hereinafter referred to as the "IARC") is the specialized intergovernmental cancer agency the World Health Organization (hereinafter referred to as the "WHO") of the United Nations tasked with conducting and coordinating research into the causes of cancer.

40.      In 2015, after its cumulative review of human, animal, and DNA studies for more than one (1) year, many of which have been in Defendants' possession since as early as 1985, the IARC published its conclusion that the glyphosate contained in Defendants' Roundup herbicide, is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals. According to the authors glyphosate demonstrated sufficient mechanistic evidence (genotoxicity and oxidative stress) to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.

41.      The IARC found an increased risk between exposure to glyphosate and non-Hodgkin's lymphoma (hereinafter referred to as "NHL") and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

42.      The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

## EARLIER EVIDENCE OF GLYPHOSATE'S DANGER

43.      Despite the new classification by the IARC, Defendants have had ample evidence of glyphosate and Roundup's genotoxic properties for decades.

44.      Genotoxicity refers to chemical agents that are capable of damaging the DNA within a cell through genetic mutations, which is a process that is believed to lead to cancer.

7

45.    In 1997, a study found that tadpoles exposed to Roundup showed significant DNA damage when compared with unexposed control animals.

46.    Both human and animal studies have shown that glyphosate and glyphosate-based formulations such as Roundup can induce oxidative stress.

47.    Oxidative stress and associated chronic inflammation are believed to be involved in carcinogenesis.

48.    The IARC noted that "strong evidence exists that glyphosate, AMPA and glyphosate-based formulations can induce oxidative stress."

49.    In 2006, another study produced evidence of chromosomal damage in blood cells showing significantly greater damage after exposure to glyphosate than before in the same individuals, suggesting that the glyphosate formulation used during aerial spraying had a genotoxic effect on exposed individuals.

50.    The IARC study reflects the volume of evidence of glyphosate pesticides' genotoxicity noting that the evidence for genotoxicity caused by glyphosate-based formulations is strong.

51.    Despite knowledge to the contrary, Defendants maintain that there is no evidence that Roundup is genotoxic, that regulatory authorities and independent experts are in agreement that Roundup is not genotoxic, and that there is no evidence that Roundup is genotoxic.

52.    In addition to glyphosate and Roundup's genotoxic properties, Defendants have long been aware of glyphosate's carcinogenic properties.

53.    Glyphosate and Roundup in particular have long been associated with carcinogenicity and the development of numerous forms of cancer, including, but not limited to, non-Hodgkin's lymphoma, Hodgkin's lymphoma, multiple myeloma, and soft tissue sarcoma.

8

54.     Defendants have known of this association since the early to mid-1980s and numerous human and animal studies have evidenced the carcinogenicity of glyphosate and/or Roundup.

55.     In 1985 the EPA studied the effects of glyphosate in mice finding a dose related response in male mice linked to renal tubal adenomas, a rare tumor. The study concluded the glyphosate was oncogenic.

56.     In 2003, a study was published that concluded that glyphosate had the most significant relationship to NHL among all herbicides studies with an increased odds ratio of 3.11.

57.     Further studies in 2003 and 2008 found a relationship between increased NHL incidence and glyphosate.

58.     These strengthened previous associations between glyphosate and NHL.

59.     In spite of this knowledge, Defendants continued to issue broad and sweeping statements suggesting that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

60.     Upon information and belief, these statements and representations have been made with the intent of inducing Decedent and the public at large to purchase, and increase the use of, Defendants' roundup for Defendants' pecuniary gain, and in fact did induce Decedent to use Roundup.

61.     Defendants made these statements with complete disregard and reckless indifference to the safety of Decedent and the general public.

62. Notwithstanding Defendants' representations, scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of many cancers, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcoma.

63. Defendants knew or should have known that glyphosate is associated with an increased risk of developing cancer, including, but not limited to, NHL, Multiple Myeloma, and soft tissue sarcomas.

64. Defendants failed to appropriately and adequately inform and warn Decedent of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring and/or medications.

65. Despite the IARC's classification of glyphosate as a class 2A probable carcinogen, Defendants continue to maintain that glyphosate and/or Roundup is safe, non-carcinogenic, non-genotoxic, and falsely warrant to users and the general public that independent experts and regulatory agencies agree that there is no evidence of carcinogenicity or genotoxicity in glyphosate and Roundup.

66. Defendants have claimed that Roundup is safe, non-carcinogenic, and non-genotoxic.

67. Ironically, the primary source for this claim is a 1986 report by the WHO, the same organization that now considers glyphosate to be a probable carcinogen.

68.     Glyphosate, and Defendants' Roundup products in particular, have long been associated with serious side effects and many regulatory agencies around the globe have banned or are currently banning the use of glyphosate herbicide products.

69.     Defendants' statements proclaiming the safety of Roundup and disregarding its dangers misled Decedent.

70.     Despite Defendants' knowledge that Roundup was associated with an elevated risk of developing cancer, Defendants' promotional campaigns focused on Roundup's purported "safety profile."

71.     Defendants' failure to adequately warn Decedent resulted in (1) Decedent using and being exposed to glyphosate instead of using another acceptable and safe method of controlling unwanted weeds and pests; and (2) scientists and physicians failing to warn and instruct consumers about the risk of cancer, including NHL, and other injuries associated with Roundup.

72.     Defendants failed to seek modification of the labeling of Roundup to include relevant information regarding the risks and dangers associated with roundup exposure.

73.     The failure of Defendants to appropriately warn and inform the EPA has resulted in inadequate warnings in safety information presented directly to users and consumers.

74.     The failure of Defendants to appropriately warn and inform the EPA has resulted in the absence of warning or caution statements that are adequate to protect health and the environment.

75.     The failure of Defendants to appropriately warn and inform the EPA has resulted in the directions for use that are not adequate to protect health and the environment.

76.     By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages as a result of Decedent's use of, and exposure to, Roundup which caused or was a substantial contributing factor in causing Decedent to suffer from cancer, specifically diffuse large B-cell lymphoma, and Decedent suffered physical pain and mental anguish, and severe and personal injuries which ultimately resulted in her death.

77.     By reason of the foregoing, Plaintiff has been severely and permanently injured.

78.     By reason of the foregoing acts and omissions, Plaintiff has endured and, in some categories continues to suffer, emotional and mental anguish, medical expenses, and other economic and non-economic damages, as a result of the actions and inactions of the Defendants.

## DECEDENT'S EXPOSURE TO ROUNDUP

79.     Decedent owned the premises located at 7 Zeek Way, Hopatcong Borough, New Jersey.

80.     During Decedent's ownership of the premises, Decedent sprayed Roundup on weeds and other vegetation around the property on a regular basis. Decedent followed all safety and precautionary warnings during the course of use.

81.     Following a period of declining health, Decedent was diagnosed with diffuse large B cell lymphoma in November 2019.

82.     The Decedent subsequently passed away on March 20, 2020.

83.     As a result of Decedent's injuries and death, she incurred significant economic and non-economic damages.

## EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

84.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

12

85.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Decedent the true risks associated with Roundup and glyphosate.

86.     As a result of Defendants' actions, Decedent was unaware, and could not reasonably know or have learned through reasonable diligence that Roundup and/or glyphosate contact, exposed Decedent to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

87.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the true character, quality and nature of Roundup. Defendants were under a duty to disclose the true character, quality, and nature of Roundup because this was non-public information over which Defendants had and continue to have exclusive control, and because Defendants knew that this information was not available to Decedent or to distributors of Roundup. In addition, Defendants are estopped from relying on any statute of limitations because of their intentional concealment of these facts.

88.     Decedent had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by Defendants, Decedent could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks. Decedent and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks, and were forced to rely on only the Defendants' representations. Accordingly, Defendants are precluded

13

by the discovery rule and/or the doctrine of fraudulent concealment from relying upon any statute of limitations.

**FIRST CAUSE OF ACTION
(NEGLIGENCE)**

89.     Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

90.     Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of Roundup into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

91.     Defendants failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Roundup into interstate commerce in that Defendants knew or should have known that using Roundup created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as need for lifelong medical treatment, monitoring, and/or medications.

92.     The negligence by the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

      a.     Manufacturing, producing, promoting, formulating, creating, and/or designing Roundup without thoroughly testing it;

14

b.    Failing to test Roundup and/or failing to adequately, sufficiently, and properly test Roundup;

c.    Not conducting sufficient testing programs to determine whether or not Roundup was safe for use; in that Defendants herein knew or should have known that Roundup was unsafe and unfit for use by reason of the dangers to its users;

d.    Not conducting sufficient testing programs and studies to determine Roundup's carcinogenic properties even after Defendants had knowledge that Roundup is, was, or could be carcinogenic;

e.    Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup, and the propensity of these ingredients to render Roundup toxic, increase the toxicity of roundup, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether or not "inert" ingredients and/or adjuvants were safe for use;

f.    Negligently failing to adequately and correctly warn the Decedent, the public, the medical and agricultural professions, and the EPA of the dangers of Roundup;

g.    Failing to provide adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

h.    Negligently marketing, advertising, and recommending the use of Roundup without sufficient knowledge as to its dangerous propensities;

i.    Negligently representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

j.    Negligently representing that Roundup had equivalent safety and efficacy as other forms of herbicides;

k.    Negligently designing Roundup in a manner, which was dangerous to its users;

l.    Negligently manufacturing Roundup in a manner, which was dangerous to its users;

m.    Negligently producing Roundup in a manner, which was dangerous to its users;

n.    Negligently formulating Roundup in a manner, which was dangerous to its users;

o.    Concealing information from Decedent while knowing that Roundup was unsafe, dangerous, and/or non-conforming with EPA regulations; and

p.    Improperly concealing and/or misrepresenting information from the Decedent, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Roundup compared to other forms of herbicides.

q.    Negligently selling Roundup with a false and misleading label.

93.    Defendants under-reported, underestimated, and downplayed the serious dangers of Roundup.

94.    Defendants negligently and deceptively compared the safety risks and/or dangers of Roundup with common everyday foods such as table salt, and other forms of herbicides.

16

95.     Defendants were negligent and/or violated New Jersey law in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Roundup in that they:

a.      Failed to use ordinary care in designing and manufacturing Roundup so as to avoid the aforementioned risks to individuals when Roundup was used as an herbicide;

b.      Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Roundup;

c.      Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Roundup;

d.      Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Roundup;

e.      Failed to warn Decedent of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects including, but not limited to, the development of cancer;

f.      Failed to conduct adequate testing, clinical testing and post-marketing surveillance to determine the safety of Roundup;

g.      Failed to conduct adequate testing, clinical testing, and post-marketing surveillance to determine the safety of Roundup's "inert" ingredients and/or adjuvants;

h.      Negligently misrepresented the evidence of Roundup's genotoxicity and carcinogenicity;

17

     i.     Were otherwise careless and/or negligent.

96.     Despite the fact that Defendants knew or should have known that Roundup caused, or could cause, unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell Roundup to consumers, including the Decedent.

97.     Defendants knew or should have known that consumers such as the Decedent would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

98.     Defendants' violations of law and/or negligence were the proximate cause of Decedent's injuries, harm and economic loss, which Decedent suffered.

99.     As a result of the foregoing acts and omissions, the Decedent suffered from serious and dangerous side effects including, but not limited to, diffuse large B cell lymphoma, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care. Further, Decedent suffered severe physical pain and mental anguish, including diminished enjoyment of life and ultimately death.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

## SECOND CAUSE OF ACTION
## (WRONGFUL DEATH)

100.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

101.    On May 4, 2020, Letters Testamentary were granted to Plaintiff by the Surrogate of Sussex County.

102.    Decedent leaves surviving Plaintiff, Laura Davis, who was dependent upon the Decedent and who has sustained pecuniary injuries resulting from her death.

103.    This action has been commenced within two years of the death of Elizabeth V. DeKleine.

104.    Despite the fact that Defendants knew or should have known that Roundup caused, or could cause, unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell Roundup to consumers, including the Decedent, in a careless, reckless and negligent manner, ultimately causing the Decedent to develop diffuse large B cell lymphoma.

105.    As a result of Defendants' negligence, Decedent was caused to sustain mortal injuries, which ultimately proved fatal, and she was pronounced dead on March 20, 2020, all to the pecuniary damage, injury and economic loss to decedent's heirs at law.

106.    As a result of the acts, carelessness and negligence of Defendants, Decedent was caused to suffer great pain from the time of the occurrence until the time of her death. During that time, she suffered greatly and endured excruciating pain and suffering and incurred substantial medical and other expenses as a result thereof.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

**THIRD CAUSE OF ACTION**
**(STRICT PRODUCTS LIABILITY – DESIGN DEFECT)**

107.   Plaintiff repeats, reiterates and, re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

108.   At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, sold, distributed, and/or have acquired the Defendants who have designed, researched, tested, advertised, promoted, marketed, sold, and distributed Roundup as hereinabove described that was used by the Decedent.

109.   Defendants' Roundup was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

110.   At those times, Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Decedent herein.

111.   The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Roundup.

112.    The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants manufacturers and/or suppliers, it was unreasonably dangerous, unreasonably dangerous in normal use, and it was more dangerous than an ordinary consumer would expect.

113.    At all times herein mentioned, Roundup was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants. In particular, Defendants' Roundup was defective in the following ways:

a.      When placed in the stream of commerce, Defendants' Roundup Products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate.

b.      When placed in the stream of commerce, Defendants' Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c.      When placed in the stream of commerce, Defendants' Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner.

d.      Defendants did not sufficiently test, investigate, or study its Roundup products.

e. Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

21

f. Defendants new or should have known at the time of marketing its Roundup products that exposure to Roundup and could result in cancer and other severe illnesses and injuries.

g. Defendants did not conduct adequate post-marketing surveillance of its Roundup products.

114.   Defendants knew, or should have known that at all times herein mentioned its Roundup was in a defective condition, and was and is inherently dangerous and unsafe.

115.   Decedent was exposed to Defendants' Roundup in the course of normal household use, as described above, without knowledge of Roundup's dangerous characteristics.

116.   At the time of the Decedent's use of and exposure to Roundup, Roundup was being used for the purposes and in a manner normally intended, as a broad-spectrum herbicide.

117.   Defendants with this knowledge voluntarily designed its Roundup with a dangerous condition for use by the public, and in particular the Decedent.

118.   Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

119.   Defendants created a product that was and is unreasonably dangerous for its normal, intended use.

120.   Defendants marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established health risks inherent with its normal, intended use.

121.   The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively in that Roundup left

22

the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

122.   The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Roundup was manufactured.

123.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product, which created an unreasonable risk to the health of consumers and to the Decedent in particular, and Defendants are therefore strictly liable for the injuries sustained by the Decedent.

124.   The Decedent could not, by the exercise of reasonable care, have discovered Roundup's defects herein mentioned or perceived its danger.

125.   By reason of the foregoing, the Defendants have become strictly liable to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Roundup.

126.   Defendants' defective design, of Roundup amounts to willful, wanton, and/or reckless conduct by Defendants.

127.   Defects in Defendants' Roundup were the cause or a substantial factor in causing Decedent's injuries.

128.   As a result of the foregoing acts and omission, the Decedent developed diffuse large B cell lymphoma, and suffered severe and personal injuries including death, physical pain and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

## FOURTH CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY – FAILURE TO WARN)

129. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

130. Defendants have engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Roundup, and through that conduct have knowingly and intentionally placed Roundup into the stream of commerce with full knowledge that it reaches consumers such as Decedent who are exposed to it through ordinary and reasonably foreseeable uses.

131. Defendants did in fact sell, distribute, supply, manufacture, and/or promote Roundup to Decedent. Additionally, Defendants expected the Roundup that they were selling, distributing, supplying, manufacturing, and/or promoting to reach – and Roundup did in fact reach – consumers, including Decedent, without any substantial change in the condition of the product from when it was initially distributed by Defendants.

132. At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

24

133.   At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendants and at the time Decedent was exposed to and/or ingested the product. The defective condition of Roundup was due in part to the fact that it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, but not limited to, developing diffuse large B cell lymphoma as a result of exposure and use.

134.   Roundup did not contain a warning or caution statement, which was necessary and, if complied with, was adequate to protect health those exposed in violation of the laws of the State of New Jersey.

135.   Defendants' failure to include a warning or caution statement which was necessary and, if complied with, was adequate to protect the health of those exposed, violated the laws of the State of New Jersey.

136.   Defendants could have amended the label of Roundup to provide additional warnings.

137.   This defect caused serious injury to Decedent, who used Roundup in its intended and foreseeable manner.

138.   At all times herein mentioned, Defendants had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

139.   Defendants labeled, distributed, and promoted the aforesaid product that it was dangerous and unsafe for the use and purpose for which it was intended.

140.   Defendants failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of diffuse large B cell lymphoma.

141.   Defendants were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew or should have known that Roundup caused serious injuries, Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic properties and side effect of developing diffuse large B cell lymphoma from Roundup exposure, even though these side effects were known or reasonably scientifically knowable at the time of distribution. Defendants willfully and deliberately failed to avoid the consequences associated with their failure to warn, and in doing so, Defendants acted with a conscious disregard for the safety of Decedent.

142.   At the time of exposure, Decedent could not have reasonably discovered any defect in Roundup prior through the exercise of reasonable care.

143.   Defendants, as the manufacturers and/or distributors of the subject product, are held to the level of knowledge of an expert in the field.

144.   Decedent reasonably relied upon the skill, superior knowledge, and judgment of Defendants.

145.   Had Defendants properly disclosed the risks associated with Roundup, Decedent would have avoided the risk of diffuse large B cell lymphoma by not using Roundup.

146.   The information that Defendants did provide or communicate failed to contain adequate warnings and precautions that would have enabled Decedent, and similarly situated individuals, to utilize the product safely and with adequate protection. Instead, Defendants disseminated information that was inaccurate, false, and misleading and which failed to

communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup and glyphosate; continued to promote the efficacy of Roundup, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

147. To this day, Defendants have failed to adequately warn of the true risks of Decedent's injuries associated with the use of and exposure to Roundup.

148. As a result of their inadequate warnings, Defendants' Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Decedent.

149. As a direct and proximate result of Defendants' actions as alleged herein, and in such other ways to be later shown, the subject product caused Decedent to sustain injuries as herein alleged.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

## FIFTH CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY)

150. Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

151. At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold Roundup.

152. At all relevant times, Defendants intended that the Defendants' Roundup be used in the manner that Decedent used it, and Defendants expressly warranted that each Roundup product was safe and fit for use by consumers, that it was of merchantable quality, that its health and side effects were minimal, and that it was adequately tested and fit for tis intended use.

153. At all relevant times, Defendants were aware that consumers, including Decedent, would use Roundup products; which is to say that Decedent was a foreseeable user of the Defendants' Roundup products.

154. Decedent purchased Roundup manufactured by Defendants.

155. Defendants' Roundup products were expected to reach and did in fact reach consumers, including Decedent, without any substantial change in the condition in which it was manufactured and sold by Defendants.

156. Defendants expressly warranted that Roundup was safe and not dangerous to users.

157. Defendants expressly represented to Decedent, scientists, the agricultural community, and/or the EPA that Roundup was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce dangerous side effects in excess of those risks associated with other forms of herbicides, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

158. Defendants breached various express warranties with respect to Roundup including the following particulars:

a) Defendant Monsanto's website expressly stated that "[r]egulatory authorities and independent experts around the world have reviewed numerous long-term/carcinogenicity and genotoxicity studies and agree that there is no evidence that glyphosate, the active ingredient in Roundup brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic";

b) Defendants have expressly warranted that Roundup is "safer than table salt" and "practically nontoxic."

159.    Roundup did not conform to these express representations because Roundup was not safe and had, at all relevant times, an increased risk of serious side effects, including diffuse large B cell lymphoma, when used according to Defendants' instructions.

160.    Defendants fraudulently concealed information from Decedent regarding the true dangers and relative risks of Roundup.

161.    The global scientific community is not, and was never, in agreement that Roundup is non-carcinogenic.

162.    Decedent did rely on the express warranties of the Defendants herein.

163.    Decedent, consumers, and members of the agricultural community relied upon the representation and warranties of the Defendants for use of Roundup in recommending, using, purchasing, mixing, handling, applying, and/or dispensing Roundup.

164.    The Defendants herein breached the aforesaid express warranties, as their product Roundup was defective.

165.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that Roundup was not safe and fit for the use

29

intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

166.    Defendants knew or should have known that, in fact, said warranties were false, misleading, and untrue in that there is evidence that Roundup is toxic, genotoxic, and carcinogenic and that scientists and/or regulatory authorities around the world are not in agreement that Roundup is not carcinogenic or genotoxic and that it is safe.

167.    As a result of the foregoing acts and omissions, the Decedent died from diffuse large B cell lymphoma, physical pain and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

168.    As a result of the foregoing acts and omissions, Decedent has suffered and incurred damages, including medical expenses and other economic and non-economic damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

<u>SIXTH CAUSE OF ACTION</u>
<u>(BREACH OF IMPLIED WARRANTIES)</u>

169.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect all if more fully set forth herein.

170.    At all times herein mentioned, the Defendants manufactured, distributed, compounded, recommended, merchandized, advertised, promoted, and sold Roundup and/or have recently acquired the Defendants who have manufactured, compound portrayed,

distributed, recommended, merchandized, advertised, promoted, and sold Roundup, as a broad spectrum herbicide. These actions were under the ultimate control and supervision of Defendants.

171.    At the time Defendants marketed, sold, and distributed Roundup for use by Decedent, Defendants knew of Roundup's intended use and impliedly warranted the product to be or merchantable quality and safe and fit for this use.

172.    The Defendants impliedly represented and warranted to Decedent and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

173.    These representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality, and defective.

174.    Decedent and/or the EPA did rely on said implied warranty of merchantability of fitness for particular use and purpose.

175.    Decedent reasonably relied upon the skill and judgment of Defendants as to whether Roundup was of merchantable quality and safe and fit for its intended use.

176.    Roundup was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition, and the products' materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

177.    The Defendants breached the aforesaid implied warranties, as their herbicide Roundup was not fit for its intended purposes and uses.

178.    As a result of the foregoing acts and omissions, Decedent suffered and died from diffuse large B cell lymphoma, physical pain and mental anguish, including diminished

31

enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

## SEVENTH CAUSE OF ACTION
## (NEGLIGENT MISREPRESENTATION)

179.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

180.    Defendants represented to Decedent, the EPA, and the public in general that said product, Roundup:

> a) had been tested and found to be safe and effective for ordinary use as a broad spectrum herbicide;
>
> b) was safer than regular household items and contained no carcinogenic and/or genotoxic properties;
>
> c) that there is no evidence that glyphosate was carcinogenic and/or genotoxic;
>
> d) that regulatory authorities and independent experts were, at all relevant times, in agreement that there is and was no evidence that glyphosate is carcinogenic and/or genotoxic.

181.    The representations made by Defendants were, in fact, false.

182.    Defendants failed to exercise ordinary care in the representation of Roundup, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented:

a) Roundup's high risk of unreasonable, dangerous side effects.

b) That credible evidence existed that Roundup was carcinogenic

c) That many regulatory authorities and/or independent experts did not agree that no evidence of glyphosate's carcinogenicity existed.

183.    Defendants breached their duty in representing Roundup's serious side effects, and the nature of the evidence of these side effects, to the medical and healthcare community, to the Decedent, the EPA and the public in general.

184.    As a result of the foregoing acts and omissions, the Decedent developed and died from diffuse large B cell lymphoma, suffered physical pain and mental anguish, including diminished enjoyment of life and financial expenses for hospitalization and medical care.

185.    As a result of the foregoing acts and omissions, Decedent has suffered and incurred damages, including medical expenses and other economic and non-economic damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and causes of action and as follows:

1.  Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.  Awarding compensatory damages to Plaintiff for past and future damages, including, but not limited to, Plaintiff's pain and suffering, and for death sustained by the Plaintiff including health care costs and economic loss;

3.  Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

4.  Punitive and/or exemplary damages for the wanton, willful, fraudulent, and reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct, to the extent allowed by applicable law;

5.  Pre-judgment interest;

6.  Post-judgment interest;

7.  Awarding Plaintiff reasonable attorneys' fees;

8.  Awarding Plaintiff the costs of these proceedings; and

9.  Such other and further relief as this Court deems just and proper.

STEVEN ROBERT LEHR, P.C.
Attorneys for the Plaintiff

Dated: 2/5/22

By: _____
STEVEN ROBERT LEHR, ESQ.
For the Firm

34

## DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that **STEVEN ROBERT LEHR, ESQ.**, of Steven Robert Lehr, P.C., attorneys for Plaintiff, is hereby designated as trial counsel for Plaintiff pursuant to *R.* 4:25-4.

**STEVEN ROBERT LEHR, P.C.**
Attorneys for Plaintiff

Dated:  2/5/22

By: _____
**STEVEN ROBERT LEHR, ESQ.**
For the Firm

## CERTIFICATION PURSUANT TO RULE 4:5-1

I certify that the matter in controversy in the above-titled action is not the subject of any other action or arbitration proceeding, nor is any such action contemplated. Further, I am not aware of any person who should be joined into the above-entitled at this time.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  2/5/22

**STEVEN ROBERT LEHR, P.C.**
Attorneys for the Plaintiff

By: _____
**STEVEN ROBERT LEHR, ESQ.**
For the Firm

## CERTIFICATION PURSUANT TO RULE 1:38-7

I certify that confidential personal identifiers have been redacted from the documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b)

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  2/5/22

**STEVEN ROBERT LEHR, P.C.**
Attorneys for the Plaintiff

By: _____
**STEVEN ROBERT LEHR, ESQ.**
For the Firm

35

## VERIFICATION

STATE OF NEW JERSEY     }
                        } ss.

COUNTY OF  ESSEX          }


**LAURA DAVIS, Executor of the Estate of Elizabeth V. DeKleine**, being duly sworn, states:

1. I am the Plaintiff in the foregoing Verified Complaint.

2. The allegations set forth in the foregoing Verified Complaint are true to the best of my personal knowledge and belief.

3. I certify that the above statements made by me are true. I am aware that if any of the foregoing is willfully false, I am subject to punishment.


_____
**LAURA DAVIS, Executor**
**Estate of Elizabeth V. DeKleine**


Sworn to and subscribed
before me this 5th day
of February _____, 2022.

_____

**Gregg Marcano IV**
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires May 9, 2022

# Civil Case Information Statement

## Case Details: SUSSEX | Civil Part Docket# L-000051-22

**Case Caption:** DAVIS LAURA VS MONSANTO COMPANY

**Case Initiation Date:** 02/09/2022

**Attorney Name:** MARK JOSEPH SCANCARELLA

**Firm Name:** STEVEN ROBERT LEHR, PC

**Address:** 33 CLINTON RD STE 100

WEST CALDWELL NJ 07006

**Phone:** 9735758002

**Name of Party:** PLAINTIFF : Davis, Laura

**Name of Defendant's Primary Insurance Company**

**(if known):** Unknown

**Case Type:** TOXIC TORT

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Laura Davis?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain)   Customer

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO   **Title 59?** NO   **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/09/2022
Dated

/s/ MARK JOSEPH SCANCARELLA
Signed

SSX L 000051-22  02/10/2022 4:44:05 AM  Pg 1 of 1 Trans ID: LCV2022586370
Case 2:24-cv-00374 Document 1-2 Filed 03/16/23 Page 25 Page ID: 48

SUSSEX COUNTY SUPERIOR COURT
SUSSEX COUNTY JUDICIAL CENTER
43-47 HIGH STREET
NEWTON        NJ 07860-1738

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (862) 397-5700
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:   FEBRUARY 09, 2022
                    RE:     DAVIS LAURA  VS MONSANTO COMPANY
                    DOCKET: SSX L -000051 22

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

    DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON WILLIAM J. MCGOVERN

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (862) 397-5700.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: MARK J. SCANCARELLA
                              STEVEN ROBERT LEHR, PC
                              33 CLINTON RD
                              STE 100
                              WEST CALDWELL    NJ 07006


ECOURTS

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LAURA DAVIS, Executor of the Estate of
Elizabeth V. DeKleine, Deceased,

**DEFENDANTS**
MONSANTO COMPANY and JOHN DOES 1-50,

**(b)** County of Residence of First Listed Plaintiff    Morris County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    St. Louis County, MO
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Steven Robert Lehr, Esquire and Mark Joseph Scancarella, Esquire
Steven Robert Lehr, P.C.
33 Clinton Road, Suite 100
West Caldwell, NJ 07006

Attorneys *(If Known)*
Joseph H. Blum, Esquire, Shook, Hardy & Bacon L.L.P.
Two Commerce Square, 2001 Market St., Suite 3000
Philadelphia, PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441, and 1446
Brief description of cause:
Cancer allegedly caused by Roundup

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
In excess of $75,000
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE
March 25, 2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Joseph H. Blum

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV. **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

V. **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.