CASE-REFERRED,FRENSLEY

# U.S. District Court
## Middle District of Tennessee (Nashville)
## CIVIL DOCKET FOR CASE #: 3:22-cv-00357

| | |
|---|---|
| Vaughn v. Monsanto Company et al | Date Filed: 05/17/2022 |
| Assigned to: Chief Judge Waverly D. Crenshaw, Jr | Jury Demand: Both |
| Referred to: Magistrate Judge Jeffery S. Frensley | Nature of Suit: 365 Personal Inj. Prod. Liability |
| Case in other court: Circuit Court for Dickson County, 22CC-2022-CV-37 | Jurisdiction: Diversity |
| Cause: 28:1441 Notice of Removal- Product Liability | |

**Plaintiff**

**John Vaughn**                    represented by    **Thomas F. Mink , II**
Mink & Duke, PLLC
P O Box 198742
Nashville, TN 37219-8742
(615) 256-0138
Fax: (615) 730-5997
Email: tmink@tfmlawadr.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**                represented by    **Mark A. Smith**
Husch Blackwell LLP (Chattanooga)
736 Georgia Avenue
Suite 300
Chattanooga, TN 37402
(423) 266-5500
Fax: (423) 266-5499
Email: mark.smith@huschblackwell.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer Atkiengescellschaft**
*doing business as*
Bayer AG

**Defendant**

**John Doe**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/17/2022 | 1 | NOTICE OF REMOVAL by Monsanto Company from Circuit Court for Dickson County, case number 22CC-2022-CV-37. (Filing fee $402, receipt number ATNMDC-3595520). |

| | | (Attachments: # 1 Exhibit 1 - State Court File, # 2 Attachment 1 - Civil Cover Sheet)(ln) (Entered: 05/17/2022) |
|---|---|---|
| 05/17/2022 | 2 | BUSINESS ENTITY DISCLOSURE STATEMENT filed by Monsanto Company. (ln) (Entered: 05/17/2022) |
| 05/17/2022 | 3 | NOTICE/INFORMATION regarding Consent of the Parties to the Magistrate Judge. (ln) (Entered: 05/17/2022) |
| 05/17/2022 | 4 | NOTICE of Business Entity Disclosure Statement filing requirement. (ln) (Entered: 05/17/2022) |
| 05/17/2022 | | TN State Bar status verified as active for Mark A. Smith and Thomas F. Mink, II **admitted to this court**. (ln) (Entered: 05/17/2022) |
| 05/17/2022 | 5 | NOTICE of Initial Case Management Conference by Telephone is set for 7/19/2022 at 9:00 AM before Magistrate Judge Jeffery S. Frensley. (ln) (Entered: 05/17/2022) |
| 05/17/2022 | 6 | ANSWER to Complaint by Monsanto Company.(Smith, Mark) (Entered: 05/17/2022) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/18/2022 09:46:34 | | | |
| **PACER Login:** | sh0019sh | **Client Code:** | 31943.356965 rhb |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-00357 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| JOHN VAUGHN, | |
| Plaintiff, | |
| | Case No. _____ |
| v. | |
| MONSANTO COMPANY, BAYER ATKIENGESCELLSCHAFT, D/B/A BAYER AG, and JOHN DOE, | |
| Defendants. | |

### DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws), Defendant Monsanto Company ("Monsanto"), hereby gives notice of removal of this action, captioned *John Vaughn v. Monsanto Company et al.*, bearing Case Number 22CC-2022-CV-37, from the Circuit Court for Dickson County, Tennessee to this Court. Pursuant to 28 U.S.C. § 1446(a), Monsanto provides the following statement of grounds for removal.

### Introduction

1.      In this products liability lawsuit, Plaintiff John Vaughn sues Monsanto for injuries allegedly caused by Monsanto's Roundup®-branded herbicides, which have glyphosate as their active ingredient. For decades, farmers have used glyphosate-based herbicides to increase crop yields, and home-owners, landscaping companies, and local government agencies have used these herbicides for highly effective weed control. Glyphosate is one of the most thoroughly studied herbicides in the world, and glyphosate-based herbicides have received regulatory approval in more than 160 countries. Since 1974, when Monsanto first introduced a Roundup®-branded

herbicide to the marketplace, the United States Environmental Protection Agency repeatedly has concluded — including as recently as January 2020 — that glyphosate does not cause cancer. Nevertheless, Plaintiff alleges that exposure to Monsanto's Roundup®-branded, glyphosate-based herbicides caused his cancer — specifically, plasma cell myeloma ("PCM").

2.      This is one of many lawsuits that have been filed against Monsanto involving Roundup®-branded herbicides. A multidistrict litigation ("MDL") proceeding is pending in the United States District Court for the Northern District of California, before the Honorable Vince G. Chhabria, pursuant to 28 U.S.C. § 1407. *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.); *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, 214 F. Supp. 3d 1346 (J.P.M.L. 2016).

3.      As discussed in more detail below, Monsanto removes this lawsuit because this Court has subject matter jurisdiction based on diversity of citizenship. Plaintiff is a citizen of Tennessee. For purposes of diversity jurisdiction, Monsanto is deemed to be a citizen of Missouri (where its principal place of business is located) and Delaware (Monsanto's state of incorporation). Defendant Bayer AG (incorrectly named in the Complaint as "Bayer Atkiengescellschaft Corporation, D/B/A Bayer AG") is deemed to be a citizen of Germany. Accordingly, complete diversity of citizenship exists in this case as required by 28 U.S.C. § 1332. The statutory amount-in-controversy requirement is also satisfied because Plaintiff seeks damages for cancer allegedly caused by exposure to Monsanto's Roundup®-branded herbicides.

## Background and Procedural History

4.      In April 2022, Plaintiff commenced this lawsuit in the Circuit Court for Dickson County, Tennessee by filing a complaint, captioned *John Vaughn v. Monsanto Company et al.*, Case Number 22CC-2022-CV-37 (the "State Court Action").

2

5.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint served in the State Court Action are attached collectively as **Exhibit 1.** Plaintiff seeks compensatory and punitive damages based on the allegation that Monsanto's Roundup®-branded herbicides caused his PCM. *See, e.g.*, Complaint ¶¶ 1–2, 34–35 & p. 22.

## Basis for Removal — Diversity Jurisdiction

6.     Plaintiff is, and was at the time the State Court Action was filed, a citizen of the State of Tennessee. *See* Complaint ¶ 6.

7.     Monsanto is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Missouri. *See* Complaint ¶ 9. Thus, Monsanto is deemed to be a citizen of Missouri and Delaware, for purposes of federal diversity jurisdiction.

8.     Bayer AG is, and was at the time the State Court Action was filed, a German stock company with its principal place of business in Germany.[1] Accordingly, Bayer AG is deemed to be a citizen of Germany and a foreign citizen for purposes of diversity jurisdiction. *See, e.g.*, *Jordan v. Bayer Corp.*, No. 4:17-CV-865 (CEJ), 2017 WL 3006993, at *1 & n.2 (E.D. Mo. July 14, 2017).

9.     The Complaint seeks compensatory and punitive damages based on the allegations that Roundup®-branded herbicides caused Plaintiff to develop cancer (PCM). Therefore, it is plausible from the face of the Complaint that Plaintiff seeks damages in excess of $75,000,

---

[1] Plaintiff incorrectly alleges that Bayer AG "is a Delaware Corporation with its principal place of business in Whippany N. J." This is incorrect. Bayer AG is "a German corporation headquartered in Leverkusen, Germany." *In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d 1063, 1065 (E.D. Mo. 2008). Indeed, as used in Bayer AG, "AG" means Aktiengesellschaft and is used to identity German public stock companies. *See Daimler AG v. Bauman*, 571 U.S. 117, 123 (2014). In any event, even if Plaintiff's allegations were correct, Bayer AG would still be a diverse defendant.

3

exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy requirement. 28 U.S.C. § 1332(a); *see Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *see also Am. Health & Life Ins. Co. v. Heyward,* 272 F. Supp. 2d 578, 581 (D.S.C. 2003) (holding that claims for punitive damages "must be included in the calculation of the amount in controversy"); *Ross v. First Family Fin. Servs., Inc.,* No. 2:01CV218-P-B, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) ("[U]nspecified claims for punitive damage sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. § 1332."); *Woodward v. Newcourt Comm. Fin. Corp.,* 60 F. Supp. 2d 530, 532 (D.S.C. 1999) (holding that "[plaintiff's] claim for punitive damages alone makes it virtually impossible to say that the claim is for less than the jurisdictional amount").  In fact, numerous other lawsuits seeking damages for cancer allegedly caused by Roundup®-branded herbicides have been filed in other federal courts asserting jurisdiction under §1332(a) and alleging damages in excess of $75,000, exclusive of interest and costs.

10.     In sum, this Court has original subject matter jurisdiction over this action based on § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs and interest.

### Procedural Requirements

11.     The Circuit Court for Dickson County, Tennessee is located within the Middle District of Tennessee. Therefore, removal to this Court satisfies the venue requirements of 28 U.S.C. § 1446(a).

12.     Monsanto received notice of process on April 18, 2022. This Notice of Removal is timely, in accordance with 28 U.S.C. § 1446(b)(1), because it is being filed within 30 days of April 18, 2022.

13.     Bayer AG's consent to removal is not required because Bayer AG has not been served in the State Court Action. 28 U.S.C. § 1446(b)(2)(A). Indeed, given Plaintiff's incorrect allegations regarding Bayer AG's place of incorporation and principal place of business, it appears that Plaintiff is unaware that Bayer AG is a foreign corporation that must be served pursuant to the Hague Convention.  *See, e.g.*, *In re Baycol Products Litig.*, No. CASE NO. 02-875, 2003 WL 24229818, at *4 (D. Minn. Dec. 12, 2003). Bayer AG's consent to removal also is not required because Bayer AG has not been "properly joined." *Id.* Courts in Tennessee lack personal jurisdiction over Bayer AG for the claims asserted against it in this case.

14.     The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Circuit Court for Dickson County, Tennessee and will be promptly served on Plaintiff.

15.     Monsanto does not waive any defenses and expressly reserves its right to raise any and all defenses in future proceedings.

16.     If any question arises as to the propriety of this removal, Monsanto requests the opportunity to present written and oral argument in support of removal.

<u>**Conclusion**</u>

For the foregoing reasons, Monsanto removes this lawsuit to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).

Dated: May 17, 2022                  Respectfully submitted,

                                  **HUSCH BLACKWELL LLP**

By:     */s/ Mark A. Smith*
           Mark A. Smith, BPR No. 021780
           736 Georgia Ave., Suite 300
           Chattanooga, TN  37402
           Phone:  (423) 266-5500
           Fax:  (423) 266-5499
           Email: mark.smith@huschblackwell.com

           *Attorneys for Defendant, Monsanto Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 17th day of May, 2022, I electronically transmitted the foregoing **DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL** to the Clerk of the court using the ECF system for filing and transmittal, and a true and correct copy of the foregoing document was served electronically and by U.S. Mail to the following:

> Thomas F. Mink, II
> THOMAS F. MINK & ASSOCIATES
> P.O. Box 707
> Lawrenceburg, TN 38464
> *Counsel for Plaintiff*

> */s/ Mark A. Smith*
> Mark A. Smith

# EXHIBIT 1

# CIVIL TRIAL DOCKET, CIRCUIT COURT

NO. 22 CC - 2022 _CV-37

NTY RECORD SERVICES, LLC

| NAME OF PARTIES | ATTORNEYS | KIND OF ACTION | DATE OF FILING | | |
|---|---|---|---|---|---|
| | | | Month | Day | Year |
| John Vaughn | Thomas F. Mink  **For Plaintiff,** | Damages and Torts | April | 8th | 2022 |
| vs. | | | **Rule Docket** | | **Page** |
| Monsanto Company, Bayer At Kiengescell Schoft Corporation, D/B/A Bayer Ag, And John Doe | **For Defendant,** | | **Executive Docket** | | **Page** |

| Date of Orders | | ORDERS OF COURT | Minute Book | |
|---|---|---|---|---|
| | | | Volume | Page |
| April | 8, 2022 | Complaint filed by Attny: Thomas F. Mink | | |
| April | 8, 2022 | Summons issued to Monsanto Company to be Served C/O Registered Agent Corporation Service through Secretary of State | | |
| April | 8, 2022 | Summons issued to Bayer C/O Registered Agent through Secretary OF State | | |

| DICKSON County | **STATE OF TENNESSEE CIVIL SUMMONS** page 1 of 1 | Case Number |
|---|---|---|
| John Vaughn | **Vs.** Monsanto, Bayer Atkiengescellschaft Corporation & John Doe | *22CC-2022-CV-37* |

Served On:

Monsanto Company    C/o Registered Agent: Corporation Service Co, 251 Little Falls Drive, Wilmington, DE 19808

You are hereby summoned to defend a civil action filed against you in Circuit _____ Court, Dickson _____ County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: *April 8 2022*          *Pam Lewis H.*
                                       Clerk / Deputy Clerk

Attorney for Plaintiff: THOMAS F. MINK, II, P.O. Box 707, Lawrenceburg, TN 38464
931-762-7112

**NOTICE OF PERSONAL PROPERTY EXEMPTION**

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____, _____ Clerk, _____ County

**CERTIFICATION (IF APPLICABLE)**

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

_____
Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

_____

Date:_____          By:_____
                                           Please Print: Officer, Title

_____          _____
Agency Address                          Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

_____          _____
Signature of Plaintiff                   Notary Public / Deputy Clerk (Comm. Expires _____ )

                                       Plaintiff's Attorney (or Person Authorized to Serve Process)
                                       **(Attach return receipt on back)**

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____.*

*Rev. 03/11*



# IN THE CIRCUIT COURT FOR DICKSON COUNTY, TENNESSEE
## AT CHARLOTTE

JOHN VAUGHN,                      )      NO.: 22CC-2022-CV-37
                                  )
                                  )      JURY DEMAND
                    Plaintiff,    )      Division:
                                  )      Section:
v.                                )
                                  )      Judge:
MONSANTO COMPANY,                 )
BAYER ATKIENGESCELLSCHAFT         )      FILED April 8 20 22
CORPORATION, D/B/A BAYER AG,      )              3:24 P M
AND JOHN DOE,                     )
                                  )           Pamela A. Lewis
                    Defendant.    )           Circuit Court Clerk
                                  )
                                  )
_____)

## COMPLAINT

Plaintiff, John Vaugh ("Plaintiff"), by and through his undersigned counsel, hereby brings

this Complaint for damages against Defendants Bayer Atkiengescellschaft Corporation D/B/A

Bayer AG and its subsidiary corporation Monsanto Company and alleges the following:

## NATURE OF THE CASE

1. This is an action for damages suffered by the plaintiff, as a direct and proximate result

of Defendants' negligent and wrongful conduct in connection with the design, development,

manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or

sale of herbicide Roundup®, containing the active ingredient glyphosate.

2. Plaintiff maintains that Roundup ® and o/or glyphosate is defective, dangerous to human

health, unfit and unsuitable to be marketed and sold in commerce, and lacked proper warnings and

directions as to the dangers associated with is us.

3. Plaintiffs' injuries, like those striking thousands of similarly situated victims across the

country, were avoidable.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Defendants and this action in that the Defendants conduct business in the state of Tennessee and Dickson County

5. Venue is proper within Dickson County because the event which has caused the damage occurred in Dickson County where the Plaintiff resides..

## PARTIES

6. Plaintiff, John Vaughn, is a natural person and is a resident of Dickson County, Tennessee. At all times relevant to this action, Plaintiff was a resident of Tennessee.

7. Plaintiff brings this action for personal injuries sustained by exposure to Roundup®, ("Roundup"), which contains the active ingredient glyphosate and the surfactant polyethoxylated tallow amine ("POEA"). As a direct and proximate result of being exposed to Roundup, Plaintiff developed Cancer known as plasma cell myeloma.

8. "Roundup" refers to all formulations of Defendants' Roundup products, including but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak Herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence and Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Week Killer, Roundup Herbicide, Roundup Original 2k Herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Pro Dry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, roundup Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry,

Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, roundup Weed & Grass Killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, roundup Weed & Grass Killer 1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation of containing the active ingredient glyphosate.

9. Defendant MONSATO COMPANY is a Delaware Corporation with its headquarters and principal place of business in St. Louis, Missouri. Defendant Monsanto is a fully owned subsidiary of Bayer Aktiengescellschaft Corp. D/B/A Bayer AG. Defendant Monsanto Company is in the business of researching, testing, developing, designing, formulating, manufacturing, producing, assembling, packaging, labeling, advertising, promoting, marketing, selling, supplying and distributing herbicides, including Roundup ® products.

10. Defendant Bayer Aktiengescellschaft Corp. D/B/A Bayer AG hereinafter "Bayer" is a Delaware Corporation with its principal place of business in Whippany N. J. Bayer owns Monsanto and is vicariously liable for the misdeeds of Monsanto.

11. John Doe 1 is any other part of Bayer which exercises control over Monsanto.

12. Defendant MONSANTO COMPANY is collectively referred to as "Monsanto".

13. At all times relevant to this complaint, Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup ® products, which contain the active ingredient glyphosate and the surfactant POEA, as well as adjuvants and other "inert" ingredients.

14. Defendant advertises and sells goods, specifically Roundup, in Dickson County, Tennessee.

15. Defendant transacted and conducted business within the State of Tennessee that relates to the allegations in this Complaint.

16. Defendants derived substantial revenue from goods and products used in the State of Tennessee.

17. Defendants expected or should have expected their acts to have consequences within the State of Tennessee and derived substantial revenue from interstate commerce.

18. Defendants engaged in the business of designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and/or selling Roundup.

19. Defendants are authorized to do business in Tennessee and derives substantial income from doing business in this state.

20. Upon information and belief, Defendant Monsanto purposefully availed itself of the privilege of conducting activities with the State of Tennessee, thus invoking the benefits and protections of its laws.

21. Upon information and belief, Defendant did design, sell, advertise, manufacture and/or distribute Roundup, with full knowledge of its dangerous and defective nature.

## FACTUAL ALLEGATIONS

22. At all relevant times, Defendant Monsanto was in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or has acquired and is responsible for the commercial herbicide Roundup.

23. Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate.

24. Defendant discovered the herbicidal properties of glyphosate during the 1970's and subsequently began to design, research, manufacture, sell and distribute glyphosate based "Roundup" as a broad-spectrum herbicide.

25. Glyphosate is the active ingredient in Roundup.

26. Glyphosate is a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops ground around the globe.

27. Glyphosate is a "non-selective" herbicide, meaning it kills indiscriminately based on whether a given organism produces a specific enzyme, 5-enolpyruvylshikimic acid-3-phospate synthase, known as EPSP synthase.

28. Glyphosate inhibits the enzyme, 5-enolpyruvylshikimic acid-3-phospate synthase that interferes with the shikimic pathway in plants resulting in the accumulation of shikimic acid in plant tissue and ultimately plant death.

29. Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems and roots, and detectable quantities accumulate in the plant tissues.

30. Each year, approximately 250 million pounds of glyphosate are sprayed on crops, commercial nurseries, suburban lawns, parks and golf course. This increase in use has been driven largely by the proliferation of genetically engineered crops, crops specifically tailored to resist the activity of glyphosate.

31. Defendants are intimately involved in the development, design, manufacture, marketing, sale, and/or distribution of genetically modified ("GMO") crops, any of which are marketed as being resistant to Roundup i.e., "Roundup Ready®". As of 2009, Defendants were the world's leading producer of seeds designed to be Roundup Ready®. In 2010, an estimated

70% of corn and cotton, and 90% of soybean fields in the United States contained Roundup Ready® seeds.

32. The original Roundup, containing the active ingredient glyphosate, was introduced in 1974. Today, glyphosate products are among the worlds most widely used herbicides. [1]

33. For nearly 40 years, consumers, farmers, and the public have used Roundup. Unaware of its carcinogenic properties.

34. Plaintiff John Vaughn used Roundup on almost a daily basis in performing his work and has developed Plasma Cell Myeloma.

35. Plaintiff alleges this cancer was caused by exposure to Roundup.

36. Plaintiff avers based upon information and belief that Roundup and other herbicides are highly regulated by the Federal Government (EPA) and the State of Tennessee.

37. In order to evaluate the safety or dangers of herbicides, including Roundup, the manufacturer who seeks registration of their products by the EPA are required to perform test on the product and furnish the data for the EPA to review.

38. In the past, Monsanto has misrepresented the safety of Roundup and engaged in deceptive representations regarding the safety of Roundup.

39. For many years, Monsanto has been aware that glyphosate, a key ingredient in Roundup has carcinogenic properties.

40. Studies have been performed to show the dangerous side effects of glyphosate.

41. In order to show the true toxicity of Roundup, test should have been performed to show the true danger of not only glyphosate, but also the other inert ingredients in Roundup.

---

[1] Backgrounder, History of Monsanto's Glyphosate Herbicides, June 2005.

42. Monsanto failed to appropriately and adequately test Roundup and the products adjuvants and inert ingredients to protect plaintiff from the risk of harm he has suffered.

43. Monsanto knew or should have known that the test performed on Roundup's active ingredient glyphosate were insufficient to protect plaintiff from Roundup.

44. Rather than performing appropriate tests, Monsanto relied upon flawed industry supported studies designed to protect Monsanto's economic interests rather than plaintiff and the consuming public.

45. Despite Monsanto's knowledge that Roundup was dangerous, Monsanto continued to promote Roundup as safe.

46. Monsanto has in the past hired test laboratories to perform and evaluate toxicology studies related to Roundup.   The results of these test were provided to the EPA for registration purposes.

47. The toxicology studies were subsequently inspected by the EPA and found to be intentionally falsified.   Top executives of both laboratories were indicted for scientific fraud.

48. Despite the knowledge that Monsanto had related to the danger of Roundup, Monsanto failed to appropriately warn and inform the EPA of the true dangers of Roundup which has resulted in inadequate labeling and warning.

### EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

49. Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

50. The running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment.   Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff the true risks associated with Roundup and glyphosate.

51. At all relevant times, Defendant has maintained that Roundup is safe, non-toxic and non-carcinogenic.

52. "Regulatory authorities and independent experts around the world have reviewed numerous long-term/carcinogenicity and genotoxicity studies and agree that there is no evidence that glyphosate, the active ingredient in Roundup® brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses and that it is not genotoxic" (emphasis added).[2] But these studies relied upon by Regulatory Authorities and independent experts were flawed and were not accurate.

53. As a result of Defendant's actions, Plaintiff was unaware and could not reasonably know or have learned through reasonable diligence that Roundup and/or glyphosate contact, exposed Plaintiff to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

54. Furthermore, Defendant is estopped from relying on any statute of limitations because of fraudulent concealment of the true character, quality and nature of Roundup. Defendant was under a duty to disclose the trues character, quality and nature of Roundup because this was non-public information over which Defendant had and continues to have exclusive control, and because Defendant knew that this information was not available to Plaintiff or to distributors of Roundup. In addition, Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

55. Plaintiff had knowledge that Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by defendant, Plaintiff could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud

---

[2] Backgrounder – Glyphosate No Evidence of Carcinogenicity: Updated November 2014.

should be considered. Defendant had the ability to and did spend enormous amounts of money in the furtherance of its purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks.  Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on only the Defendant's representations. Accordingly, Defendant is precluded by the discovery rule and/or the doctrine of fraudulent concealment from relying upon any statute of limitations.

### FIRST CAUSE OF ACTION (NEGLIGENCE)

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

57. Defendant had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Roundup into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

58. Defendant failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Roundup into interstate commerce in that Defendant knew or should have known that using Roundup created a high risk of unreasonable, dangerous side effects, including but not limited to, the development of cancer, as well as other sever and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications.

59. The negligence by the Defendant, its agents, servants, and/or employees, included but was not limited to the following acts and/or omissions.

a.   Manufacturing, producing, promoting, formulating, creating and/or designing Roundup without thoroughly testing it;

b.   Failing to test Roundup and/or failing to adequately, sufficiently, and properly test Roundup;

c.   Not conducting sufficient testing programs to determine whether or not Roundup was sage for use; in that Defendant herein knew or should have now that Roundup was unsafe and unfit for use by reason of the dangers to its users.

d.   Not conducting sufficient testing programs and studies to determine Roundup's carcinogenic properties even after Defendant had knowledge that Roundup is, was, or could be carcinogenic;

e.   Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup, and the propensity of these ingredients to render Roundup toxic, increase the toxicity of Roundup, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether or not "inert" ingredients and/or adjuvants were safe for use;

f.   Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and agricultural professions, and the EPA of the dangers of Roundup;

g.   Negligently failing to petition the EPA to strengthen the warnings associates with Roundup;

h.   Failing to provide adequate cautions and warnings to protect health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

i.   Negligently marketing, advertising, and recommending the use of Roundup without sufficient knowledge as to its dangerous properties;

j.   Negligently representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when in fact, it was unsafe:

k.   Negligently representing that Roundup had equivalent safety and efficacy as other forms of herbicides:

l.   Negligently designing Roundup in a manner, which was dangerous to its users:

m.    Negligently manufacturing Roundup in a manner, which was dangerous to its users:

n.    Negligently producing Roundup in a manner, which was dangerous to its users:

o.    Negligently formulating Roundup in a manner, which was dangerous to its users;

p.    Concealing information from the Plaintiff while knowing that Roundup was unsafe, dangerous, and/or non-conforming with EPA regulations:

q.    Improperly concealing and/or misrepresenting information from the Plaintiff, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Roundup compared to other forms of herbicides; and

r.    Negligently selling Roundup with false misleading label.

60. Defendant under-reported, underestimated, and downplayed the serious dangers of Roundup.

61. Defendant negligently and deceptively compared the safety risks and/or damages of Roundup with common everyday foods such as table salt, and other forms of herbicides.

62. Defendant was negligent and/or violated Tennessee law in the designing, researching, supplying, manufacturing, promoting, packaging, distribution, testing, advertising, warning, marketing, and selling of Roundup in that they;

a.    Failed to use ordinary care in designing and manufacturing Roundup so as to avoid the aforementioned risks to individuals when Roundup was used as an herbicide;

b.    Failed to accompany its product with proper and/or accurate warnings regarding all possible adverse effects associated with the use of Roundup;

c.    Failed to accompany its product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Roundup;

d.    Failed to accompany its product with accurate warnings regarding the risks of all possible adverse side effects concerning Roundup;

e.    Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects including, but not limited to, the development of NHL;

f.      Failed to conduct adequate testing, clinical testing and post-marketing surveillance to determine the safety of Roundup;

h.     Negligently misrepresented the evidence of Roundup's genotoxicity and carcinogenicity; and

I.      Was otherwise careless and/or negligent.

63. Despite the fact that Defendants knew or should have known that Roundup caused, or could cause, unreasonably dangerous side effects, Defendant continued and continues to market, manufacture, distribute, and/or sell Roundup to consumers, including the Plaintiff.

64. Defendant knew or should have known that consumers such as the plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care, as set forth above.

65. Defendant's violations of law and/or negligence were the proximate cause of Plaintiff's injuries, harm and economic loss, with Plaintiff suffered.

66. As a result of the foregoing acts and omissions, Plaintiff suffered from cancer sever and personal injuries, and included physical pain and mental anguish, diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory damages, together with interest, costs herein incurred, attorney's fees and all relief as the Court deems just and proper.   Additionally, Plaintiff demands a jury trial on all issues contained herein.

## SECOND CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY – DESIGN DEFECT)

67. Plaintiff repeats, reiterates and, re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

68. At all times herein mentioned, the Defendant designed, researched, manufactured, testes, advertised, promoted, sold, distributed Roundup as hereinabove described that was used by the Plaintiff.

69. Defendant's Roundup was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the conditions in which it was produced, manufactured, sold distributed, and marketed by the Defendant.

70. At those times, Roundup was in an unsafe, defective and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff herein.

71. The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the unforeseeable risks exceeded the benefits associated with the design or formulation of Roundup.

72. The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant was defective in design and/or formulation, in that, when it left the hands of the Defendant manufacturers and/or suppliers, it was unreasonably dangerous, unreasonably dangerous in normal use, and it was more dangerous than an ordinary consumer would expect.

73. At all times herein mentioned, Roundup was in a defective condition and unsafe, and Defendant knew or had reason to know that said product was defective and unsafe, especially when

used in the form and manner s provided by the Defendant. In particular, Defendant's Roundup was

defective in the following ways:

a.   When placed in the stream of commerce, Defendant's Roundup products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate.

b.   When placed in the stream of commerce, Defendant's Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of concern and other serious illnesses when used in a reasonably anticipated matter.

c.   When placed in the stream of commerce, Defendants' Roundup products contained unreasonably dangerous design defects and were not reasonably sage when used in a reasonably anticipated manner.

d.   Defendant did not sufficiently test, investigate, or study its Roundup products.

e.   Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

f.   Defendant knew or should have known at the time of marketing its Roundup products that exposure to Roundup and could result in cancer and other severe illnesses or injuries.

g.   Defendant did not conduct adequate post-marketing surveillance of its Roundup products.

74. Defendant knew or should have known that at all times herein mentioned its Roundup

was in a defective condition, and was and is inherently dangerous and unsafe.

75. Plaintiff was exposed to Defendant's Roundup, as described above, without knowledge

of Roundup's dangerous characteristics.

76. At the time of the Plaintiff's use of and exposures to Roundup, Roundup was being

used for the purposes and in a manner normally intended as a broad-spectrum herbicide.

77. Defendant with this knowledge voluntarily designed its Roundup with a dangerous

condition for use by the public, and in particular the Plaintiff.

78. Defendant had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

79. Defendant created a product that was and is unreasonably dangerous for its normal intended use.

80. Defendant marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established health risks inherent with its normal intended use.

81. The Roundup designed. Researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was manufactured defectively in that Roundup left the hands of the Defendant in a defective condition and was unreasonably dangerous to its intended users.

82. The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached its intended users in the same defective and unreasonably dangerous condition in which the Defendant's Roundup was manufactured.

83. Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product, which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendant is therefore strictly liable for the injuries sustained by the Plaintiff.

84. Monsanto could have employed a safer alternative design to render Roundup® safe or, in the alternative, provided proper instructions for use on how to limit the potential risk associated with Roundup's® defective design. Monsanto's Roundup® products were and are more dangerous than alternative products and Monsanto could have designed its Roundup® products to make them less dangerous. At the time Monsanto designed its Roundup® products, the state of

the industry's scientific knowledge was such that a less risky design or formulation was attainable. Thus, at the time Roundup® products left Monsanto's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Monsanto's herbicides.

85. The Plaintiff could not, by the exercise of reasonable care, have discovered Roundup's defects herein mentioned or perceived its danger.

86. By reason of the foregoing, the Defendant has become strictly liable to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Roundup.

87. Defendant's defective design of Roundup amounts to willful, wanton, and/or reckless conduct by Defendant.

88. Defects in Defendant's Roundup were the cause or a substantial factor in causing Plaintiff's injuries.

89. As a result of the foregoing acts and omissions, Plaintiff suffered from NHL and suffered severe and personal injuries which are permanent and lasting in nature, and included physical pain and mental anguish, diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor compensatory, together with interest, costs herein incurred, attorney's fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

## THIRD CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY – FAILURE TO WARN

90. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

91. Defendant has engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Roundup, and through that conduct have knowingly and intentionally placed Roundup into the stream of commerce with full knowledge that it reaches consumers such as Plaintiff who are exposed to it through ordinary reasonable foreseeable uses.

92. Defendant did in fact sell, distribute, supply, manufacture, and/or promote Roundup to Plaintiff. Additionally, Defendant expected supplying, manufacturing, and/or promoting to reach – and Roundup did in fact reach – consumers, including Plaintiff, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

93. At the time of manufacture, Defendant could have provided the warnings or instructions regarding the fill and complete risks of Roundup and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

94. At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at time it was distributed by Defendant and at the time Plaintiff was exposed to and/or ingested the product. The defective condition of Roundup was due in part to the fact that it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including but not limited to, developing cancer as a result of exposures and use.

95. Roundup did not contain a warning or caution statement, which was necessary and, I complied with, was adequate to protect the health of those exposed in violation of 7. U.S.C. § 136j(a)(1)(E).

96. Defendant's failure to include a warning or caution statement which was necessary and, if complied with, was adequate to protect the health of those exposed, violated 7. U.S.C. § 136j(a)(1)€ as well as the laws of the State of Tennessee.

97. Defendant could have amended the label of Roundup to provide additional warnings.

98. This defect caused serious injury to Plaintiff, who used Roundup in its intended and foreseeable manner.

99. At all times herein mentioned, Defendant had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

100. Defendant labeled, distributed, and promoted the aforesaid product that it was dangerous and unsafe for the use and purposed for which it was intended.

101. Defendant failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of NHL.

102. Defendant was aware of the probable consequences of the aforesaid conduct.

103. Despite the fact that Defendant knew or should have known that Roundup caused serious injuries, Defendant failed to exercise reasonable care to warn of the dangerous carcinogenic properties and side effect of developing cancer from Roundup exposure, even though these side effects were known or reasonably scientifically knowable at the time of distribution.

Defendant willfully and deliberately failed to avoid the consequences associated with is failure to warn, and in doing so, Defendant acted with conscious disregard for the safety of Plaintiff.

104. At the time of exposure, Plaintiff could not have reasonably discovered any defect in Roundup prior through the exercise of reasonable care.

105. Defendant, as the manufacturer and/or distributor of the subject product, is held to the level of knowledge of an expert in the field.

106. Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of Defendant.

107. Had Defendant properly disclosed the risks associated with Roundup products, Plaintiff would have avoided the risk of cancer by not using Roundup products.

108. The information that Defendant did provide or communicate failed to contain adequate warnings and precautions that would have enabled Plaintiff, and similarly situated individuals, to utilize the product safely and with adequate protection. Instead, Defendant disseminated information that inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup and glyphosate; continued to promote efficacy of Roundup, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

109. To this day, Defendant has failed to adequately warn of the true risks of Plaintiff's injuries associated with the use of and exposure to Roundup.

110. As a result of its inadequate warnings, Defendant's Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant and used by Plaintiff.

111. As a direct and proximate result of Defendant's actions as alleged herein, and in such other ways to be later shown, the subject product caused Plaintiff to sustain injuries as herein alleged.

112. As a result of the foregoing act and omissions, Plaintiff suffered from NHL and suffered severe and personal injuries which are permanent and lasting in natures, and included physical pain and mental anguish, diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic and non-economic damages.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorney's fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury on all issues contained herein.

## FOURTH CAUSE OF ACTION
## (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

113. Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect all if more fully set forth herein.

114. At all times herein mentioned, the Defendant manufactured, distributed, compounded, recommended, merchandized, advertised, promoted, and sold Roundup as a broad-spectrum herbicide.   These actions were under the ultimate control and supervision of Defendant.

115. At the time Defendant marketed, sold, and distributed Roundup for use by Plaintiff, Defendant knew of Roundup's intended used and impliedly warranted the product to be or merchantable quality and safe and fit for this use.

116. The Defendant expressly and impliedly represented and warranted to Plaintiff and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

117. These representations and warranties were false, misleading and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality and defective.

118. Plaintiff and/or the EPA did rely on said implied warranty of merchantability of fitness for particular use and purpose.

119. Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether Roundup was or merchantable quality and safe and fit for its intended use.

120. Roundup was injected into the stream of commerce by the defendant in a defective, unsafe, and inherently dangerous conditions, and the products' materials were expected to and did reach users, handlers and persons encountering said products without substantial change in the condition in which they were sold.

121. The defendant breached the aforesaid implied warranties, as its herbicide Roundup was not fit for its intended purposes and uses.

122. As a result of the foregoing acts and omissions, Plaintiff suffered from cancer and suffered severe and personal injuries which are permanent and lasting in nature, and included physical pain and mental anguish, diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

Respectfully submitted,

THOMAS F. MINK & ASSOCIATES

Thomas F. Mink, II, BPR # 6067
P.O. Box 707
Lawrenceburg, TN 38464
(931) 762-7112
(931) 762-1318
tmink@tfmlawadr.com

CERTIFIED MAIL

7016 0510 0002 1083 8484

U.S. POSTAGE PAID
LAWRENCEBURG, TN
$8.76

Monsanto
c/o Corporation Services Co
251 Little Falls Drive
Wilmington DE 19808

| DICKSON   County | **STATE OF TENNESSEE**<br>**CIVIL SUMMONS**<br>page 1 of 1 | **Case Number**<br>22CC-2022-CV-37 |
| --- | --- | --- |

| John Vaughn | **Vs.** | Monsanto, Bayer Atkiengescellschaft Corporation & John Doe |

Served On:

Bayer                              C/o Registered Agent: Corporation Service Co, 251 Little Falls Drive, Wilmington, DE 19808

Atkiengescellschaft Corporation

You are hereby summoned to defend a civil action filed against you in _Circuit_ Court, _Dickson_ County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: _April 8 2022_                              _Pam Lewis - R_
                                                                                      Clerk / Deputy Clerk

Attorney for Plaintiff:   THOMAS F. MINK, II, P.O. Box 707, Lawrenceburg, TN 38464
                                            931-762-7112

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles containing such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____ , _____ Clerk, _____ County
                        _____

### CERTIFICATION (IF APPLICABLE)

I, _____ , _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____                              _____
                                                                          Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

_____

Date:_____                              By:_____
                                                                          Please Print: Officer, Title

_____                                          _____
Agency Address                                              Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____ , I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____ . On _____ I received the return receipt, which had been signed by _____ on _____ . The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

_____                              Notary Public / Deputy Clerk (Comm. Expires _____ )

_____                              _____
Signature of Plaintiff                              Plaintiff's Attorney (or Person Authorized to Serve Process)
                                            **(Attach return receipt on back)**

_ADA: If you need assistance or accommodations because of a disability, please call _____ , ADA Coordinator, at ( ) _____ ._

_Rev. 03/11_