DIRECTMJ,SCR

# United States District Court
# Middle District of Pennsylvania (Scranton)
## CIVIL DOCKET FOR CASE #: 3:22-cv-01108-KM

| | |
|---|---|
| Shaffer v. Bayer Corporation et al | Date Filed: 07/15/2022 |
| Assigned to: Chief MJ Karoline Mehalchick | Jury Demand: Both |
| Demand: $75,000 | Nature of Suit: 365 Personal Inj. Prod. Liability |
| Case in other court:  Court of Common Pleas of Pike County, 514-cv-2022 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Product Liability | |

**Plaintiff**

| | | |
|---|---|---|
| **Mary Metz Shaffer**<br>*Individually and as the Administratrix of the Estate of Robert H. Shaffer* | represented by | **Jason R. Ohliger**<br>Zimmerman & Ohliger, LLC<br>410 Broad Street<br>Milford, PA 18337<br>570-296-7300<br>Fax: 570-296-8600<br>Email: ohliger@tristatetrial.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Nicholas J. McIntyre**<br>410 Broad Street<br>Milford, PA 18337<br>570-296-7300<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Bayer Corporation** | represented by | **Erin Leffler**<br>Shook, Hardy & Bacon, L.L.P.<br>Two Commerce Square<br>2001 Market Street<br>Suite 3000<br>Philadelphia, PA 19103<br>215-278-2555<br>Email: eleffler@shb.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Joseph H Blum**<br>Shook, Hardy & Bacon, LLP<br>Two Commerce Square<br>2001 Market St. |

Suite 3000
Philadelphia, PA 19103
215-278-2555
Email: jblum@shb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katelyn A. Romeo**
Shook, Hardy & Bacon, LLP
Two Commerce Square
2001 Market St., Ste 3000
Philadelphia, PA 19103
215-278-2555
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicolai A. Schurko**
Shook, Hardy & Bacon, LLP
Two Commerce Square
2001 Market St., Ste 3000
Philadelphia, PA 19103
215-278-2555
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Monsanto Company**                              represented by   **Erin Leffler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph H Blum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katelyn A. Romeo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicolai A. Schurko**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Lowe's Home Improvement, LLC**                 represented by   **Erin Leffler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph H Blum**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katelyn A. Romeo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicolai A. Schurko**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/15/2022 | 1 | NOTICE OF REMOVAL by Bayer Corporation from Court of Common Pleas of Pike County, case number 514-cv-2022. (Filing fee $ 402 receipt number APAMDC-6003588), filed by Bayer Corporation. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Certificate of Service, # 5 Civil Cover Sheet)(ep) (Entered: 07/15/2022) |
| 07/15/2022 | 2 | ANSWER to Complaint by Monsanto Company. (Attachments: # 1 Certificate of Service) (Blum, Joseph) (Entered: 07/15/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/15/2022 16:43:49 | | | |
| **PACER Login:** | sh0019sh | **Client Code:** | 31943.356965 rhb |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-01108-KM |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARY METZ SHAFFER, individually,
and as the Administratrix of the Estate of
ROBERT H. SHAFFER,

        Plaintiffs,

        v.

BAYER CORPORATION, MONSANTO
COMPANY, and LOWE'S HOME
IMPROVEMENT, LLC, and JOHN
DOES 1-5,

        Defendants.

Civil Action No. _____

## **DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws), Defendant Monsanto Company ("Monsanto") hereby gives notice of removal of this action, captioned *Mary Metz Shaffer, et al. v. Bayer Corporation, et al.* bearing case number 514-CV-2022, from the Court of Common Pleas of Pike County, Pennsylvania, to the United States District Court for the Middle District of Pennsylvania. Pursuant to 28 U.S.C. § 1446(a), Monsanto provides the following statement of grounds for removal.

## **INTRODUCTION**

1.     In this products liability lawsuit, Mary Metz Shaffer sues Monsanto (and other defendants) for injuries and death allegedly caused by Monsanto's

Roundup®-branded herbicides, which have glyphosate as their active ingredient. For decades, farmers have used glyphosate-based herbicides to increase crop yields, and home-owners, landscaping companies, and local government agencies have used these herbicides for highly effective weed control. Glyphosate is one of the most thoroughly studied herbicides in the world, and glyphosate-based herbicides have received regulatory approval in more than 160 countries. Since 1974, when Monsanto first introduced a Roundup®-branded herbicide to the marketplace, the United States Environmental Protection Agency repeatedly has concluded that glyphosate does not cause cancer — including as recently as January 2020. Nevertheless, Ms. Shaffer alleges that exposure to Monsanto's glyphosate-based herbicides caused decedent Robert H. Shaffer's cancer — specifically, non-Hodgkin's lymphoma ("NHL") — and death.

2.     This is one of many lawsuits that have been filed against Monsanto involving Roundup®-branded herbicides. A multidistrict litigation proceeding is pending in the United States District Court for the Northern District of California, before the Honorable Vince G. Chhabria, pursuant to 28 U.S.C. § 1407. *See In re Roundup Prods. Liab. Litig.,* No. 3:16-md-02741-VC (N.D. Cal.); *In re Roundup Prods. Liab. Litig.,* MDL No. 2741, 214 F. Supp. 3d 1346 (J.P.M.L. 2016).

3.     As discussed in more detail below, Monsanto removes this lawsuit because this Court has subject matter jurisdiction based on diversity of citizenship.

2

Ms. Shaffer is a Pennsylvania citizen, as was decedent before his death. For purposes of diversity jurisdiction, none of the Defendants are citizens of Pennsylvania. Accordingly, complete diversity of citizenship exists in this case as required by 28 U.S.C. § 1332. The statutory amount-in-controversy requirement is also satisfied because Ms. Shaffer seeks damages for cancer and death allegedly caused by exposure to Monsanto's Roundup®-branded herbicides.

## **BACKGROUND AND PROCEDURAL HISTORY**

4.    Ms. Shaffer commenced this lawsuit, captioned *Mary Metz Shaffer, et al. v. Bayer Corporation, et al.*, Case No. 514-CV-2022 (the "Commonwealth Court Action"), in the Court of Common Pleas of Pike County, Pennsylvania, through the filing of a praecipe to issue summons on May 12, 2022. Monsanto caused a rule to file complaint to be issued upon Ms. Shaffer, and she filed her Complaint on or about June 27, 2022.

5.    Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Monsanto in the Commonwealth Court Action are attached as **Exhibit 1.** This lawsuit seeks damages for NHL and death allegedly caused by exposure to Monsanto's glyphosate-based herbicides. *See, e.g.*, Complaint ¶¶ 4, 18–30.

## **BASIS FOR REMOVAL — DIVERSITY JURISDICTION**

6.      Ms. Shaffer is, and was at the time the Commonwealth Court Action was filed, a Pennsylvania citizen, as was decedent before and when he died.  *See* Complaint ¶¶ 1–2, 3**.**

7.      Monsanto is, and was at the time the Commonwealth Court Action was filed, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Missouri.  *See* Complaint ¶ 3.  Thus, Monsanto is deemed to be a citizen of Missouri and Delaware for purposes of diversity jurisdiction.

8.      Bayer Corporation is, and was at the time the Commonwealth Court Action was filed, a corporation incorporated under the laws of the State of Indiana, with its principal place of business in the State of New Jersey.[1] Thus, Bayer Corporation is deemed to be a citizen of Indiana and New Jersey for purposes of federal diversity jurisdiction.

9.      Lowe's Home Improvement, LLC, is, and was at the time the Commonwealth Court Action was filed, a North Carolina limited liability company with its principal place of business in the State of North Carolina.  *See* Complaint ¶ 8; **Exhibit 2**, Declaration of Paul Lombardi ("Lombardi Dec.") ¶ 5.  Lowe's Home

---

[1]  Plaintiff's Complaint correctly recognizes that Bayer Corporation is a diverse defendant but incorrectly alleges that it "is a German business entity."  *See* Complaint ¶ 6.

Improvement, LLC, has, and had at the time the Commonwealth Court Action was filed, two members: Beth MacDonald and David Green.  *See* Lombardi Dec. ¶ 5. Both Ms. MacDonald and Mr. Green are, and were at the time the Commonwealth Court Action was filed, citizens of the State of North Carolina.  *Id.*  Thus, Lowe's Home Improvement, LLC is deemed to be a citizen of North Carolina for purposes of federal diversity jurisdiction.

10.     The Complaint seeks compensatory and punitive damages based on the allegations that Monsanto's Roundup®-branded herbicides caused decedent's cancer (NHL) and death.  Therefore, it is plausible from the face of the Complaint that this lawsuit seeks damages in excess of $75,000, exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy requirement.  28 U.S.C. § 1332(a); *see Dart Cherokee Basin Operating Co. v. Owens,* 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *see also Ross v. First Family Fin. Servs., Inc.,* No. 2:01CV218-P-B, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) ("[U]nspecified claims for punitive damage sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. § 1332.").  In fact, numerous other lawsuits seeking damages for NHL allegedly caused by Roundup®-branded herbicides have been filed against Monsanto

in other federal courts asserting jurisdiction under Section 1332(a) and alleging damages in excess of $75,000, exclusive of interest and costs.

11.    In sum, this Court has original subject matter jurisdiction over this action based on Section 1332(a) because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.[2]

## PROCEDURAL REQUIREMENTS

12.    The Court of Common Pleas of Pike County, Pennsylvania is located within the Middle District of Pennsylvania. Therefore, removal to this Court satisfies the venue requirement of 28 U.S.C. § 1446(a).

13.    Monsanto was first served with the Complaint in this case on June 28, 2022. This Notice of Removal is timely. *See* 28 U.S.C. § 1446; *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 223 (3d Cir. 2005).

14.    Bayer Corporation consents to this removal. *See* **Exhibit 3**.

15.    Lowe's Home Improvement, LLC, consents to this removal. *See* Lombardi Dec. ¶ 7.

16.    The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Court of Common Pleas of Pike County, Pennsylvania, and will be promptly served on Ms. Shaffer.

---

[2] The citizenship of "Doe" defendants must be disregarded when determining whether this lawsuit is removable based on § 1332(a). *See* 28 U.S.C. § 1441(b)(1).

17.    Monsanto does not waive any defenses and expressly reserves its right to raise any and all defenses in subsequent proceedings.

18.    If any question arises as to the propriety of this removal, Monsanto requests the opportunity to present written and oral argument in support of removal.

## **CONCLUSION**

For the foregoing reasons, Monsanto removes this lawsuit to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).

SHOOK, HARDY & BACON L.L.P.

Dated:  July 15, 2022                    By: */s/ Joseph H. Blum*
                                                                Joseph H. Blum
                                                                Erin L. Leffler
                                                                Nicolai A. Schurko
                                                                Katelyn A. Romeo
                                                                Two Commerce Square
                                                                2001 Market Street, Suite 3000
                                                                Philadelphia, PA 19103
                                                                Phone: (215) 278-2555
                                                                Fax: (215) 278-2594
                                                                jblum@shb.com
                                                                eleffler@shb.com
                                                                nschurko@shb.com
                                                                kromeo@shb.com

                                                                *Attorneys for Defendant Monsanto Company*

# EXHIBIT 1

**Case No..........** 2022-00514  MARY METZ SHAFFER (vs) BAYER CORPORATION ET AL

| | |
|---|---|
| **Reference No......** | **Filed..........** 5/12/2022 |
| **Case Type.........** WRIT OF SUMMONS CIVIL | **Time...........** 10:06 |
| **Judgment..........** $.00 | **Execution Date.** 0/00/0000 |
| **Judge Assigned....** | **Jury Trial.....** |
| **Disposed Desc.....** | **Disposed Date..** 0/00/0000 |
| ----------- **Case Comments** ----------- | **Higher Crt 1...** |
| | **Higher Crt 2...** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

++ GENERAL INDEX ++

| Indexed Party | | Attorney Info |
|---|---|---|
| METZ SHAFFER MARY | PLAINTIFF | JASON R OHLIGER ESQUIRE |
| | | WEINSTEIN ZIMMERMAN & OHLIGER |
| | | 410 BROAD STREET |
| | | MILFORD, PA  18337 |
| | | |
| SHAFFER MARY METZ | PLAINTIFF | JASON R OHLIGER ESQUIRE |
| | | WEINSTEIN ZIMMERMAN & OHLIGER |
| | | 410 BROAD STREET |
| | | MILFORD, PA  18337 |
| | | |
| SCHAFFER ROBERT H | PLAINTIFF | JASON R OHLIGER ESQUIRE |
| | | WEINSTEIN ZIMMERMAN & OHLIGER |
| | | 410 BROAD STREET |
| | | MILFORD, PA  18337 |
| | | |
| BAYER CORPORATION | DEFENDANT | KATELYN A ROMEO ESQ |
| WHIPPANY, NJ 07981 | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET STE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | NICOLAI A SCHURKO ESQ |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET SUITE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | ERIN L LEFFLER ESQ |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET STE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | JOSEPH H BLUM ESQUIRE |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET SUITE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | |
| MONSANTO COMPANY | DEFENDANT | KATELYN A ROMEO ESQ |
| WILMINGTON, DE 19808 | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET STE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | NICOLAI A SCHURKO ESQ |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET SUITE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | ERIN L LEFFLER ESQ |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET STE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | JOSEPH H BLUM ESQUIRE |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET SUITE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | |
| LOWES HOME IMPROVEMENT LLC | DEFENDANT | KATELYN A ROMEO ESQ |
| MOORESVILLE, NC 28117-8520 | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET STE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | NICOLAI A SCHURKO ESQ |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET SUITE 3000 |
| | | PHILADELPHIA, PA  19103 |
| | | ERIN L LEFFLER ESQ |
| | | TWO COMMERCE SQUARE |
| | | 2001 MARKET STREET STE 3000 |
| | | PHILADELPHIA, PA  19103 |

Case No.......... 2022-00514  MARY METZ SHAFFER (vs) BAYER CORPORATION ET AL

| | | |
|---|---|---|
| Reference No...... | | |
| Case Type......... WRIT OF SUMMONS CIVIL | Filed........... | 5/12/2022 |
| Judgment.......... $.00 | Time........... | 10:06 |
| Judge Assigned.... | Execution Date. | 0/00/0000 |
| Disposed Desc..... | Jury Trial..... | |
| ------------ Case Comments ------------ | Disposed Date.. | 0/00/0000 |
| | Higher Crt 1... | |
| | Higher Crt 2... | |

```
                                            JOSEPH H BLUM ESQUIRE
                                            TWO COMMERCE SQUARE
                                            2001 MARKET STREET SUITE 3000
                                            PHILADELPHIA, PA  19103

DOES JOHN 1-5                        DEFENDANT
```

**********************************************************************************
++ DOCKET ENTRIES ++

| Date | Entry Text |
|---|---|
| | - - - - - - - - - - - - - FIRST ENTRY - - - - - - - - - - - - - |
| 5/12/2022 | PRAECIPE FOR WRIT OF SUMMONS IN CIVIL ACTION FILED WITH WRIT OF SUMMONS 4CC WRITS ATTY |
| | 3 Image page(s) exists for this entry |
| 5/20/2022 | AFFIDAVIT OF SERVICE FILED 1C ATTY |
| | 3 Image page(s) exists for this entry |
| 5/24/2022 | AFFIDAVIT OF SERVICE FILED 1C ATTY |
| | 3 Image page(s) exists for this entry |
| 5/25/2022 | AFFIDAVIT OF SERVICE FILED 1C ATTY |
| | 3 Image page(s) exists for this entry |
| 6/06/2022 | PRAECIPE FOR RULE TO FILE COMPLAINT FILED WITH RULE 1C PLNTF ATTY 1C DFDT ATTY |
| | 4 Image page(s) exists for this entry |
| 6/06/2022 | ENTRY OF APPEARANCE FILED BY KATELYN A ROMEO ESQ ON BEHALF OF MONSANTO COMPANY LOWES HOME INPROVEMENT LLC AND BAYER CORPORATION 3C ATTY |
| | 3 Image page(s) exists for this entry |
| 6/06/2022 | ENTRY OF APPEARANCE FILED BY NICOLAI A SCHURKO ESQ ON BEHALF OF BAYER CORPORATION MONSANTO COMPANY AND LOWES HOME IMPROVEMENT LLC 3C ATTY |
| | 3 Image page(s) exists for this entry |
| 6/06/2022 | ENTRY OF APPEARANCE FILED BY ERIN L LEFFLER ESQ ON BEHALF OF BAYER CORPORATION MANSANTO COMPANY AND LOWES HOME IMPROVEMENT LLC 3C ATTY |
| | 3 Image page(s) exists for this entry |
| 6/06/2022 | ENTRY OF APPEARANCE FILED BY JOSEPH H BLUM ESQ ON BEHALF OF BAYER CORPORATION MONSANTON COMPANY AND LOWES HOME IMPROVEMENT LLC 3C ATTY |
| | 3 Image page(s) exists for this entry |
| 6/27/2022 | COMPLAINT FILED 2C ATTY |
| | 47 Image page(s) exists for this entry |
| 6/29/2022 | PRAECIPE TO SUBSTITUTE VERIFICATION FILED 1C ATTY |
| | 2 Image page(s) exists for this entry |
| | - - - - - - - - - - - - - - LAST ENTRY - - - - - - - - - - - - - |

**********************************************************************************
++ Escrow Information ++

| Cost / Fee | Beg. Balance | Pymts/Adjmts | End. Balance |
|---|---|---|---|
| WRIT TAX | $.50 | | $.00 |
| JCS/ATJ FEE | $40.25 | $40.25 | $.00 |
| AUTOMATION FEE | $5.00 | $5.00 | $.00 |
| FILING FEE | $83.00 | $83.00 | $.00 |
| | ------------ | ------------ | ------------ |
| | $128.75 | $128.75 | $.00 |

**********************************************************************************
**End of Case Information**

# Supreme Court of Pennsylvania
## Court of Common Pleas
### Civil Cover Sheet

Pike _____ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: **S14-2022-CV** | *TIME STAMP* |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☐ Complaint
- ☒ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

Lead Plaintiff's Name: **Mary Mely Shetter**

Lead Defendant's Name: **Bayer Corporation**

**Are money damages requested?** ☒ Yes ☐ No

Dollar Amount Requested: ☐ within arbitration limits (check one) ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: **Jason R. Duliger, Esq.**

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

2022 MAY 11 AM 10: 10
PROTHONOTARY PIKE CO. PA

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☒ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- _____
- _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- _____
- _____
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- _____
- _____
- ☐ Zoning Board
- ☐ Other: _____
- _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

# IN THE COURT OF COMMON PLEAS OF
## PIKE COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| MARY METZ SHAFFER, individually, | : | |
| and as the Administratrix of the Estate of | : | |
| Robert H. Schaffer, | : | |
| | : | |
| Plaintiff, | : | |
| | : | DOCKET NO.: 514-2022-CV |
| vs. | : | |
| | : | JURY TRIAL DEMANDED |
| BAYER CORPORATION | : | |
| 100 Bayer Blvd, | : | |
| Whippany, NJ 07981, | : | |
| | : | |
| MONSANTO COMPANY | : | |
| Registered Agent: | : | |
| Corporation Service Company | : | |
| 251 Little Falls Drive | : | |
| Wilmington, DE 19808, | : | |
| | : | |
| LOWE'S HOME IMPROVEMENT, LLC | : | |
| 1000 Lowe's Blvd. | : | |
| Mooresville, NC 28117-8520, | : | |
| | : | |
| JOHN DOES 1-5, | : | |
| | : | |
| Defendants. | : | |

2022 MAY 12 AM 10: 06

---

## PRAECIPE FOR WRIT OF SUMMONS

TO THE PROTHONOTARY:

Please issue a writ of summons in the above-captioned civil action.

Respectfully Submitted,

ZIMMERMAN & OHLIGER

Jason R. Ohliger, Esq.
Attorney for Plaintiff
410 Broad St.
Milford, PA 18337
(570) 296-7300

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY PENNSYLVANIA

MARY METZ SHAFFER, individually,    :
and as the Administratrix of the Estate of    :
Robert H. Schaffer,    :
    :
        Plaintiff,    :    DOCKET NO.: 514-2022-CV
    :
vs.    :
    :    JURY TRIAL DEMANDED
Bayer Corporation, Monsanto Company,    :
Lowe's Home Improvement, LLC, and    :
John Does 1-5,    :
    :
        Defendants.    :
    :

---

## WRIT OF SUMMONS

To:    BAYER CORPORATION
    100 Bayer Blvd,
    Whippany, NJ 07981,

    MONSANTO COMPANY
    Registered Agent:
    Corporation Service Company
    251 Little Falls Drive
    Wilmington, DE 19808,

    LOWE'S HOME IMPROVEMENT, LLC
    1000 Lowe's Blvd.
    Mooresville, NC 28117-8520,

You are notified MARY METZ SHAFFER has commenced an action against you.

Date: 5/12/2022

_____
Prothonotary /Deputy Prothonotary

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY PENNSYLVANIA

MARY METZ SHAFFER, individually, :
and as the Administratrix of the Estate of :
Robert H. Schaffer, :
 :
  Plaintiff, :
 :  DOCKET NO.: 514-CV-2022
vs. :
 :  JURY TRIAL DEMANDED
Bayer Corporation, Monsanto Company, :
Lowe's Home Improvement, LLC, and :
John Does 1-5, :
 :
  Defendants. :
 :

---

<u>AFFIDAVIT OF SERVICE</u>

I, Jason R. Ohliger, Esq., hereby certify that pursuant to the Pennsylvania Rules of Civil

Procedure 403 and 404 et seq., a true and correct copy of the above-referenced Praecipe for

Writ of Summons and Writ of Summons was served upon defendant Monsanto Company at the

designated registered agent, Corporation Services Co., 251 Little Falls Dr., Wilmington, DE 19808,

by Certified Mail, return receipt requested as indicated by the U.S. Postal Service Domestic Return

Receipt attached and marked as Exhibit A, on the 22nd day of May 16, 2022.

          Jason R. Ohliger, Esq.

EXHIBIT "A"

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Monsanto Co.
Reg. Agent Corp. Serv. Co.
251 Little Falls Dr
Wilmington, DE 19808

9590 9402 7163 1251 2111 41

2. Article Number *(Transfer from service label)*

7020 3160 0000 8333 0341

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  Rashad Dickinson

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

MAY 16

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY PENNSYLVANIA

MARY METZ SHAFFER, individually,     :
and as the Administratrix of the Estate of     :
Robert H. Schaffer,     :
     :
       Plaintiff,     :
     :     DOCKET NO.: 514-CV-2022
vs.     :
     :     JURY TRIAL DEMANDED
Bayer Corporation, Monsanto Company,     :
Lowe's Home Improvement, LLC, and     :
John Does 1-5,     :
     :
       Defendants.     :
     :

---

## AFFIDAVIT OF SERVICE

    I, Jason R. Ohliger, Esq., hereby certify that pursuant to the Pennsylvania Rules of Civil

Procedure 403 and 404 et seq., a true and correct copy of the above-referenced Praecipe for Writ of

Summons and Writ of Summons was served upon defendant Bayer Corporation at 100 Bayer

Boulevard, Whippany, New Jersey 07981, by Certified Mail, return receipt requested as indicated by

the U.S. Postal Service Domestic Return Receipt attached and marked as Exhibit A, on the 20th day

of May, 2022.

                                  Jason R. Ohliger, Esq.

ENTERED FOR RECORD
PIKE COUNTY, PA
2022 MAY 24 AM 10:39
OFFICE OF
PROTHONOTARY
CLERK OF COURTS

EXHIBIT "A"

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bayer Corp.
100 Bayer Blvd.
Whippany, NJ 07981

9590 9402 7163 1251 2111 65

2. Article Number (Transfer from service label)

7020 3160 0000 8333 0327

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery
5-20-22

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY PENNSYLVANIA

MARY METZ SHAFFER, individually,                  :
and as the Administratrix of the Estate of        :
Robert H. Schaffer,                               :
                                                  :
      Plaintiff,                                  :
                                                  :       DOCKET NO.: 514-CV-2022
vs.                                               :
                                                  :       JURY TRIAL DEMANDED
Bayer Corporation, Monsanto Company,              :
Lowe's Home Improvement, LLC, and                 :
John Does 1-5,                                    :
                                                  :
      Defendants.                                 :
                                                  :

---

<u>AFFIDAVIT OF SERVICE</u>

    I, Jason R. Ohliger, Esq., hereby certify that pursuant to the Pennsylvania Rules of Civil

Procedure 403 and 404 et seq., a true and correct copy of the above-referenced Praecipe for Writ of

Summons and Writ of Summons was served upon defendant Lowe's Home Improvement at 1000

Lowe's Blvd., Mooresville, North Carolina 28117-8520, by Certified Mail, return receipt requested as

indicated by the U.S. Postal Service Domestic Return Receipt attached and marked as Exhibit A, on

the 16th day of May, 2022.


                                       Jason R. Ohliger, Esq.

ENTERED FOR RECORD
PIKE COUNTY, PA

OFFICE OF
PROTHONOTARY
CLERK OF COURTS

2022 MAY 25 AM 10:39

EXHIBIT "A"

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lowe's Home Improvement
1000 Lowe's Blvd.
Mooresville, NC
28117-8520

9590 9402 7163 1251 2111 58

2. Article Number (Transfer from service label)

7020 3160 0000 8333 0334

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  Lowe's SSC  ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

MAY 1 8 REC'D

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

**SHOOK, HARDY & BACON L.L.P.**
By:    Joseph H. Blum (Attorney I.D. No. 36874)
       Erin L. Leffler (Attorney I.D. No. 204507)
       Nicolai A. Schurko (Attorney I.D. No. 309548)
       Katelyn A. Romeo (Attorney I.D. No. 325215)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
Email: jblum@shb.com
       eleffler@shb.com
       nschurko@shb.com
       kromeo@shb.com

*Attorneys for Defendants, Bayer Corporation,*
*Monsanto Company and Lowe's Home Improvement, LLC*

## IN THE COURT OF COMMON PLEAS OF PIKE COUNTY, PENNSYLVANIA

| | |
|---|---|
| MARY METZ SHAFFER, individually, and as Administratrix of the Estate of Robert H. Shaffer, | : |
| Plaintiff, | : |
| vs. | :    CIVIL DIVISION<br>:    NO. 514-2022-CV |
| BAYER CORPORATION, MONSANTO COMPANY, LOWE'S HOME IMPROVEMENT, LLC, and JOHN DOES 1-5, | :    JURY TRIAL DEMANDED |
| Defendants. | : |

OFFICE OF PROTHONOTARY CLERK OF COURTS
ENTERED FOR RECORD PIKE COUNTY, PA
2022 JUN -6 AM 11: 09

## <u>PRAECIPE FOR RULE TO FILE A COMPLAINT</u>

**TO THE PROTHONOTARY:**

      Kindly issue a Rule upon Plaintiff, Mary Metz Shaffer, Administratrix of the Estate of

Robert H. Shaffer, directing her to file a Complaint within twenty (20) days of the service of the

Rule or suffer the entry of a judgment of *non pros.*

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: _____

    Joseph H. Blum, Esq. (PA ID 36874)
    Erin L. Leffler, Esq. (PA ID 204507)
    Nicolai A. Schurko, Esq. (PA ID 309548)
    Katelyn A. Romeo, Esq. (PA ID 325215)
    Two Commerce Square
    2001 Market Street, Suite 3000
    Philadelphia, PA 19103
    Phone: 215-278-2555
    jblum@shb.com
    eleffler@shb.com
    nschurko@shb.com
    kromeo@shb.com

    ***Attorneys for Defendants, Bayer Corporation,***
    ***Monsanto Company and Lowe's Home***
    ***Improvement, LLC***

Dated: June 3, 2022

## IN THE COURT OF COMMON PLEAS OF
## PIKE COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARY METZ SHAFFER, individually, and as Administratrix of the Estate of Robert H. Shaffer, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL DIVISION<br>NO. 514-2022-CV |
| BAYER CORPORATION, MONSANTO COMPANY, LOWE'S HOME IMPROVEMENT, LLC, and JOHN DOES 1-5, | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

### RULE TO FILE A COMPLAINT

**AND NOW**, this _6th_ day of _June_____, 2022, a Rule is hereby granted

upon Plaintiff, Mary Metz Shaffer, Administratrix of the Estate of Robert H. Shaffer, to file a

Complaint herein within twenty (20) days after service hereof or suffer the entry of a Judgment of

*Non Pros*.

~~BY THE COURT:~~

_____

## IN THE COURT OF COMMON PLEAS OF
## PIKE COUNTY, PENNSYLVANIA

MARY METZ SHAFFER, individually,
and as Administratrix of the Estate of
Robert H. Shaffer,

        Plaintiff,

        vs.

BAYER CORPORATION, MONSANTO
COMPANY, LOWE'S HOME
IMPROVEMENT, LLC, and JOHN DOES
1-5,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL DIVISION
NO. 514-2022-CV

JURY TRIAL DEMANDED

### CERTIFICATE OF SERVICE

I, Joseph Blum, Esquire, hereby certify that I filed the foregoing Praecipe for Rule to File

a Complaint with the Prothonotary's Office and served upon the following via First Class United

States Mail:

        Jason R. Ohliger, Esq.
        Zimmerman & Ohliger
        410 Broad Street
        Milford, PA 18337

        *Attorney for Plaintiff*

Dated: June 3, 2022

By: _____
    Joseph H. Blum

*Attorneys for Defendants, Bayer Corporation,*
*Monsanto Company and Lowe's Home*
*Improvement, LLC*

OFFICE OF
PROTHONOTARY
CLERK OF COURTS
2022 JUN -6 AM 11: 09
ENTERED FOR RECORD
PIKE COUNTY, PA

**SHOOK, HARDY & BACON L.L.P.**
By:     Joseph H. Blum (Attorney I.D. No. 36874)
        Erin L. Leffler (Attorney I.D. No. 204507)
        Nicolai A. Schurko (Attorney I.D. No. 309548)
        Katelyn A. Romeo (Attorney I.D. No. 325215)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
Email: jblum@shb.com
       eleffler@shb.com
       nschurko@shb.com
       kromeo@shb.com

*Attorneys for Defendants, Bayer Corporation,*
*Monsanto Company and Lowe's Home Improvement, LLC*

### IN THE COURT OF COMMON PLEAS OF
### PIKE COUNTY, PENNSYLVANIA

|  |  |
|---|---|
| MARY METZ SHAFFER, individually, and as Administratrix of the Estate of Robert H. Shaffer, | |
| Plaintiff, | |
| vs. | CIVIL DIVISION<br>NO. 514-2022-CV |
| BAYER CORPORATION, MONSANTO COMPANY, LOWE'S HOME IMPROVEMENT, LLC, and JOHN DOES 1-5, | JURY TRIAL DEMANDED |
| Defendants. | |



### <u>ENTRY OF APPEARANCE</u>

**TO THE PROTHONOTARY:**

Kindly enter the appearance of Katelyn A. Romeo (PA Bar No. 325215) on behalf of

Defendants Bayer Corporation, Monsanto Company and Lowe's Home Improvement, LLC, in the

above-captioned action.

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: _Katelyn A. Romeo_

Katelyn A. Romeo, Esq. (PA ID 325215)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: 215-278-2555
kromeo@shb.com

*Attorneys for Defendants, Bayer Corporation,
Monsanto Company and Lowe's Home
Improvement, LLC*

Dated:  June 3, 2022

## IN THE COURT OF COMMON PLEAS OF
## PIKE COUNTY, PENNSYLVANIA

MARY METZ SHAFFER, individually,    :
and as Administratrix of the Estate of    :
Robert H. Shaffer,    :

           Plaintiff,    :

           vs.    :

BAYER CORPORATION, MONSANTO    :
COMPANY, LOWE'S HOME    :
IMPROVEMENT, LLC, and JOHN DOES    :
1-5,    :

           Defendants.    :

CIVIL DIVISION
NO. 514-2022-CV

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

I, Katelyn A. Romeo, Esquire, hereby certify that I served a true and correct copy of the

foregoing Entry of Appearance by U.S. First Class Mail on the following counsel of record:

    Jason R. Ohliger, Esq.
    Zimmerman & Ohliger
    410 Broad Street
    Milford, PA 18337

    *Attorney for Plaintiff*

*ENTERED FOR RECORD*
*PIKE COUNTY, PA*
*2022 JUN -6 AM 11:20*
*OFFICE OF PROTHONOTARY CLERK OF COURTS*

Dated: June 3, 2022

By: *Katelyn A. Romeo*
    Katelyn A. Romeo

**Attorneys for Defendants, Bayer Corporation,**
**Monsanto Company and Lowe's Home**
**Improvement, LLC**

3

**SHOOK, HARDY & BACON L.L.P.**
By:   Joseph H. Blum (Attorney I.D. No. 36874)
      Erin L. Leffler (Attorney I.D. No. 204507)
      Nicolai A. Schurko (Attorney I.D. No. 309548)
      Katelyn A. Romeo (Attorney I.D. No. 325215)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
Email: jblum@shb.com
       eleffler@shb.com
       nschurko@shb.com
       kromeo@shb.com

*Attorneys for Defendants, Bayer Corporation,*
*Monsanto Company and Lowe's Home Improvement, LLC*

## IN THE COURT OF COMMON PLEAS OF
## PIKE COUNTY, PENNSYLVANIA

| | |
|---|---|
| MARY METZ SHAFFER, individually, and as Administratrix of the Estate of Robert H. Shaffer, | : |
| Plaintiff, | : |
| vs. | : CIVIL DIVISION<br>: NO. 514-2022-CV |
| BAYER CORPORATION, MONSANTO COMPANY, LOWE'S HOME IMPROVEMENT, LLC, and JOHN DOES 1-5, | : JURY TRIAL DEMANDED |
| Defendants. | : |

ENTERED FOR RECORD
PIKE COUNTY, PA
2022 JUN -6 AM 11:18
OFFICE OF
PROTHONOTARY
CLERK OF COURTS

## ENTRY OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly enter the appearance of Nicolai A. Schurko (PA Bar No. 309548) on behalf of

Defendants Bayer Corporation, Monsanto Company and Lowe's Home Improvement, LLC, in the

above-captioned action.

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: _____

Nicolai A. Schurko, Esq. (PA ID 309548)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: 215-278-2555
nschurko@shb.com

*Attorneys for Defendants, Bayer Corporation,
Monsanto Company and Lowe's Home
Improvement, LLC*

Dated:  June 3, 2022

**IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA**

MARY METZ SHAFFER, individually,    :
and as Administratrix of the Estate of    :
Robert H. Shaffer,    :
    :
    Plaintiff,    :
    :    CIVIL DIVISION
    vs.    :    NO. 514-2022-CV
    :
BAYER CORPORATION, MONSANTO    :    JURY TRIAL DEMANDED
COMPANY, LOWE'S HOME    :
IMPROVEMENT, LLC, and JOHN DOES    :
1-5,    :
    :
    Defendants.    :

## CERTIFICATE OF SERVICE

I, Nicolai A. Schurko, Esquire, hereby certify that I served a true and correct copy of the

foregoing Entry of Appearance by U.S. First Class Mail on the following counsel of record:

Jason R. Ohliger, Esq.
Zimmerman & Ohliger
410 Broad Street
Milford, PA 18337

*Attorney for Plaintiff*

Dated:  June 3, 2022    By: _____
    Nicolai A. Schurko

**Attorneys for Defendants, Bayer Corporation,
Monsanto Company and Lowe's Home
Improvement, LLC**

**SHOOK, HARDY & BACON L.L.P.**
By:    Joseph H. Blum (Attorney I.D. No. 36874)
        Erin L. Leffler (Attorney I.D. No. 204507)
        Nicolai A. Schurko (Attorney I.D. No. 309548)
        Katelyn A. Romeo (Attorney I.D. No. 325215)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
Email: jblum@shb.com
       eleffler@shb.com
       nschurko@shb.com
       kromeo@shb.com

*Attorneys for Defendants, Bayer Corporation,*
*Monsanto Company and Lowe's Home Improvement, LLC*

## IN THE COURT OF COMMON PLEAS OF
## PIKE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| MARY METZ SHAFFER, individually, and as Administratrix of the Estate of Robert H. Shaffer, | : : : : | |
| Plaintiff, | : : | |
| vs. | : : | CIVIL DIVISION NO. 514-2022-CV |
| BAYER CORPORATION, MONSANTO COMPANY, LOWE'S HOME IMPROVEMENT, LLC, and JOHN DOES 1-5, | : : : : | JURY TRIAL DEMANDED |
| Defendants. | : : | |

ENTERED FOR RECORD PIKE COUNTY, PA — 2022 JUN -6 AM 11:17 — OFFICE OF PROTHONOTARY CLERK OF COURTS

## ENTRY OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly enter the appearance of Erin L. Leffler (PA Bar No. 204507) on behalf of

Defendants Bayer Corporation, Monsanto Company and Lowe's Home Improvement, LLC, in the

above-captioned action.

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: _____

Erin L. Leffler, Esq. (PA ID 204507)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: 215-278-2555
eleffler@shb.com

*Attorneys for Defendants, Bayer Corporation, Monsanto Company and Lowe's Home Improvement, LLC*

Dated: June 3, 2022

**IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA**

MARY METZ SHAFFER, individually,
and as Administratrix of the Estate of
Robert H. Shaffer,

      Plaintiff,

        vs.

BAYER CORPORATION, MONSANTO
COMPANY, LOWE'S HOME
IMPROVEMENT, LLC, and JOHN DOES
1-5,

      Defendants.

CIVIL DIVISION
NO. 514-2022-CV

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

I, Erin L. Leffler, Esquire, hereby certify that I served a true and correct copy of the

foregoing Entry of Appearance by U.S. First Class Mail on the following counsel of record:

> Jason R. Ohliger, Esq.
> Zimmerman & Ohliger
> 410 Broad Street
> Milford, PA 18337
>
> *Attorney for Plaintiff*

Dated: June 3, 2022

By: _Erin L. Leffler_
    Erin L. Leffler

**Attorneys for Defendants, Bayer Corporation,
Monsanto Company and Lowe's Home
Improvement, LLC**

**SHOOK, HARDY & BACON L.L.P.**
By:    Joseph H. Blum (Attorney I.D. No. 36874)
       Erin L. Leffler (Attorney I.D. No. 204507)
       Nicolai A. Schurko (Attorney I.D. No. 309548)
       Katelyn A. Romeo (Attorney I.D. No. 325215)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
Email: jblum@shb.com
       eleffler@shb.com
       nschurko@shb.com
       kromeo@shb.com

*Attorneys for Defendants, Bayer Corporation,*
*Monsanto Company and Lowe's Home Improvement, LLC*

**IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| MARY METZ SHAFFER, individually, and as Administratrix of the Estate of Robert H. Shaffer,<br><br>Plaintiff,<br><br>vs.<br><br>BAYER CORPORATION, MONSANTO COMPANY, LOWE'S HOME IMPROVEMENT, LLC, and JOHN DOES 1-5,<br><br>Defendants. | CIVIL DIVISION<br>NO. 514-2022-CV<br><br>JURY TRIAL DEMANDED |

**ENTRY OF APPEARANCE**

**TO THE PROTHONOTARY:**

Kindly enter the appearance of Joseph H. Blum (PA Bar No. 36874) on behalf of

Defendants Bayer Corporation, Monsanto Company and Lowe's Home Improvement, LLC, in the

above-captioned action.

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: _____
     Joseph H. Blum, Esq. (PA ID 36874)
     Two Commerce Square
     2001 Market Street, Suite 3000
     Philadelphia, PA 19103
     Phone: 215-278-2555
     jblum@shb.com

*Attorneys for Defendants, Bayer Corporation, Monsanto Company and Lowe's Home Improvement, LLC*

Dated:  June 3, 2022

**IN THE COURT OF COMMON PLEAS OF**
**PIKE COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| MARY METZ SHAFFER, individually, and as Administratrix of the Estate of Robert H. Shaffer, | : : : : | |
| Plaintiff, | : : | CIVIL DIVISION |
| vs. | : : | NO. 514-2022-CV |
| BAYER CORPORATION, MONSANTO COMPANY, LOWE'S HOME IMPROVEMENT, LLC, and JOHN DOES 1-5, | : : : : : | JURY TRIAL DEMANDED |
| Defendants. | : : | |

## CERTIFICATE OF SERVICE

I, Joseph Blum, Esquire, hereby certify that I served a true and correct copy of the foregoing

Entry of Appearance by U.S. First Class Mail on the following counsel of record:

> Jason R. Ohliger, Esq.
> Zimmerman & Ohliger
> 410 Broad Street
> Milford, PA 18337
>
> *Attorney for Plaintiff*

OFFICE OF
PROTHONOTARY
CLERK OF COURTS
2022 JUN -6 AM 11: 15
ENTERED FOR RECORD
PIKE COUNTY, PA

Dated: June 3, 2022

By: _____
Joseph H. Blum

**Attorneys for Defendants, Bayer Corporation,**
**Monsanto Company and Lowe's Home**
**Improvement, LLC**

3

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY PENNSYLVANIA

MARY METZ SHAFFER, individually, :
and as the Administratrix of the Estate of :
ROBERT H. SHAFFER, :
 :
   Plaintiff, :
 :    DOCKET NO.: 514-CV-2022
  v. :
 :    JURY TRIAL DEMANDED
 :
BAYER CORPORATION, MONSANTO :
COMPANY, and LOWE'S HOME :
IMPROVEMENT, LLC, and :
JOHN DOES 1-5, :
 :
   Defendants. :
 :

---

<u>NOTICE</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

North Penn Legal Services
10 N. Tenth Street
Stroudsburg, PA 18360
570-424-5338

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY PENNSYLVANIA

MARY METZ SHAFFER, individually,                    :
and as the Administratrix of the Estate of          :
ROBERT H. SHAFFER,                                  :
                                                    :
            Plaintiff,                              :
                                                    :        DOCKET NO.: 514-CV-2022
    v.                                              :
                                                    :        JURY TRIAL DEMANDED
BAYER CORPORATION, MONSANTO                         :
COMPANY, and LOWE'S HOME                            :
IMPROVEMENT, LLC, and                               :
JOHN DOES 1-5,                                      :
                                                    :
            Defendants.                             :
                                                    :

COMPLAINT

AND NOW COMES FORTH Plaintiff, MARY METZ SHAFFER, as the Administratrix

of the ESTATE OF ROBERT H. SHAFFER, by and through her attorneys, ZIMMERMAN &

OHLIGER, and Complain of Defendants as follows:

1.      Plaintiff MARY METZ SHAFFER was and is an adult individual residing at 1226

Delaware Dr., Matamoras, PA 18336

2.      Robert H. Shaffer was an adult individual residing at 1226 Delaware Dr.,

Matamoras, PA 18336.

3.      At all times relevant hereto, until his passing, Plaintiff Mary Metz Shaffer and

Robert H. Shaffer were lawfully married to each other.

4.      Robert H. Shaffer passed away on June 16, 2020 due to complications of non-

Hodgkins lymphoma.

5.      On July 24, 2020, Plaintiff was duly appointed as the personal representative of the Estate of Robert H. Shaffer by he Pike County, Pennsylvania Register of Wills.

6.      Defendant BAYER CORPORATION ("BAYER") was and is a German business entity with a headquarters within the United States of America at 100 Bayer Blvd, Whippany, NJ 07981.

7.      Defendant MONSTANTO COMPANY ("MONSANTO") was and is a Delaware business entity with a registered agent for service of: MC - CSC1 9666 Olive Blvd., Suite 690, St. Louis, MO 63132-3026.

8.      Defendant LOWE'S HOME IMPROVEMENT, LLC (hereinafter "LOWE'S") was and is a North Carolina limited liability company with a principal office located at 1000 Lowe's Blvd. Mooresville, NC 28117-8520.

9.      On or about June 7, 2018, Defendant BAYER purchased Defendant MONSANTO including all of its assets and liabilities.

10.     Defendants Joe Does 1-5, are subsidiaries and partners of the named Defendants, or other persons or entities, that were involved in the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Roundup line of herbicides, containing the active ingredient glyphosate. The identities of JOHN DOES 1-5 are unknown to Plaintiff at this time.

11.     At all relevant times, Defendants were in the business of, and did, design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have acquired and are responsible for Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the commercial herbicide Roundup.

12.     Defendants continue to design, research, manufacture, sell and distribute "Roundup."

13.     Defendants advertise and sell goods, specifically Roundup, in Pike County, Pennsylvania.

14.     At all times relevant hereto, Robert H. Shaffer resided in Pike County, Pennsylvania and worked in Pike County and in Orange County, New York, purchasing and using Roundup products in Pike County, Pennsylvania and surrounding counties.

15.     Robert H. Shaffer regularly purchased Roundup products from Defendant LOWE'S at its store in Matamoras (Westfall Township), Pennsylvania since 2011.

16.     Glyphosate is the active ingredient in Roundup brand products.

17.     Glyphosate is a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

18.     Glyphosate is associated with carcinogenicity and the development of numerous forms of cancer, including, but not limited to, non-Hodgkin's lymphoma.

19.     This association has been made since the early-to-mid-1980s, and numerous human and animal studies have evidenced the carcinogenicity of glyphosate and/or Roundup.

20.     Despite knowledge derived from scientific experiments, regulatory testing, and/or other academic studies that glyphostate was dangerous and posed substantial and elevated risks of the development of cancer, Defendants continued to advertise, market, and/or represent to the public, including Plaintiff's Decedent, that Roundup is safe for use despite voluminous evidence to the contrary.

21.     Upon information and belief, these statements and representations have been made with the intent of inducing Plaintiff's Decedent, the agricultural community, and the public at large to purchase Roundup for Defendants' pecuniary gain, and in fact did induce Decedent to use Roundup.

22. Defendants made these statements with complete disregard and reckless indifference to the safety of Plaintiff's Decedent and the general public.

23. Notwithstanding Defendants' representations, scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of cancers including non-Hodgkins lymphoma.

24. Defendants knew or should have known, based upon this scientific evidence, that glyphosate is unreasonably dangerous to the consumer/user in that it is associated with an increased risk of developing cancer including non-Hodgkins lymphoma.

25. Defendants failed to appropriately and adequately inform and warn consumers, including Plaintiff's Decedent, of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup, including, but not limited to, the risk of developing cancer including non-Hodgkins lymphoma.

26. Defendants' failure to warn of known risks of glyphosate and/or Roundup, the ubiquitous marketing and availability of the products to consumers, and statements proclaiming the safety of Roundup and disregarding its dangers were all factors in misleading consumers and the public at large, including Plaintiff, to believe that the subject products were safe.

27. Defendants' failure to adequately warn Plaintiff caused severe and permanent injury to Plaintiff's Decedent, namely the development of B-cell cutaneous lymphoma, and ultimately caused his death from that disease.

28. Defendants failed to modify the labeling of Roundup to include relevant information regarding the risks and dangers associated with Roundup exposure despite their knowledge of same.

29. By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages as a result of Plaintiff's Decedent's use of, and exposure to, Roundup which caused or was

a substantial contributing factor in causing Plaintiff's Decedent to suffer from cancer, specifically B-cell cutaneous lymphoma, and Plaintiff suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

30.     By reason of the foregoing acts and omissions, Plaintiff has also suffered the wrongful death of her husband, and has thereby suffered a loss of his comfort, society, consortium, companionship, and support.

31.     Decedent used and sprayed Roundup products for approximately 42 years in the course of his residential and light commercial landscaping business, beginning in 1972 and ending in 2018.

32.     Decedent was diagnosed with B-cell cutaneous lymphoma in 2016, and died as aforesaid on June 16, 2020.

## COUNT I: NEGLIGENCE

### Mary Metz Shaffer, individually and as the Administratrix of the Estate of Robert H. Shaffer v. Bayer Corporation

33.     Plaintiff repeats, reiterates and realleges all those allegations contained in the foregoing paragraphs as if more fully restated herein.

34.     At all times relevant hereto, Decedent was utilizing the aforementioned herbicide in a manner which it was originally intended and/or reasonably foreseeable by Defendant, consistent with the purpose for which it was designed, manufactured, assembled, distributed, promoted, and/or sold by Defendant.

35.     At all times relevant hereto Defendant BAYER, and/or its predecessors in interest, engaged in the testing, development, design, manufacture, marketing, distribution, and promotion of Roundup products which were defective and unreasonably dangerous to consumers, specifically Decedent, who was exposed to said products as described above.

36.     At all times relevant hereto Defendant BAYER, and/or its predecessors in interest, manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner Roundup products for use by or exposure to the public, specifically Decedent.

37.     At all times relevant hereto Defendant BAYER, and/or its predecessors in interest, reached intended consumers, handlers, and users or other persons, specifically Decedent, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant BAYER and/or its predecessors.

38.     Defendant BAYER, and/or its predecessors in interest, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed Roundup products which were defective in design from their inception, and thus unreasonably dangerous.

39.     Defendant BAYER, and/or its predecessors in interest, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed Roundup products despite the foreseeable risks associated with peddling carcinogenic products, namely Roundup products, to consumers, including Decedent.

40.     At all times relevant hereto Defendant BAYER, and/or its predecessors in interest, knew, or should have known, Roundup products were defective and inherently dangerous and unsafe when used in the manner instructed by advertising, labeling, and packaging.

41.     At all times relevant hereto, Defendant BAYER's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant BAYER, and/or its predecessors in interest, were negligently manufactured, produced, promoted, formulated, created, and/or sold as follows:

    a.      Without sufficient testing;

    b.      Being unsafe to use;

    c.      Despite Defendant's knowledge that it was unsafe to use;

d.  Without first undergoing sufficient testing programs to determine the safety of all ingredients, including glyphosate as well as its inactive/inert ingredients and/or adjuvants contained within Roundup, including testing to determine the propensity of these ingredients to render Roundup toxic, increase the toxicity of Roundup, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether or not the product as formulated was safe for use;

e.  Without warnings or notifications to consumers, the public, the medical and agricultural professions, and various agencies of the State and Federal governments of the United States of America of the dangers of glyphosate (and therefore, of Roundup);

f.  Without adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

g.  Without duly acknowledging and appreciating the dangerousness of glyphosate (and, therefore, of Roundup) and taking appropriate actions thereon;

h.  Representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

i.  Representing that Roundup had equivalent safety and efficacy as other forms of herbicides;

j.  While Defendant concealed information in its possession indicating that Roundup was unsafe, dangerous, and/or non-conforming with EPA

regulations; and

k.     Being dangerous to an extent beyond that which an ordinary consumer would contemplate;

l.     Being so unreasonably dangerous in that it posed a grave risk of cancer and other serious illnesses when used as intended and/or as reasonably foreseeable;

m.     Being constructed containing an unreasonably dangerous design defect so as to render the Roundup products unsafe when used as intended and/or reasonably foreseeable; and

n.     Being sold in an unsafe and defective condition despite safer alternative herbicide formulations being available.

42.    The subject Roundup product was in a defective condition at the time they left the possession and control of Defendant BAYER and/or its predecessors in interest, and were not substantially changed prior to the time of Decedent's injury.

43.    The design, manufacture, assembly, distribution, promotion, and sales of the subject Roundup products in a dangerous and defective condition caused Decedent's and Plaintiff's injuries.

44.    As a result of the aforesaid accident, Decedent suffered grievous and severe bodily injuries and death, and his damages, in addition to Plaintiff's damages, include but are not limited to pain and suffering, medical expenses, loss of emotional and financial support, funeral expenses, loss of enjoyment of life and life's pleasures, and all other relief deemed just by this Honorable Court.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert H. Schaffer respectfully requests judgment in her favor against Defendant BAYER CORPORATION, jointly and severally, for the full amount of her damages as aforesaid,

together with punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

## COUNT II: STRICT LIABILITY; DESIGN DEFECT

### Mary Metz Shaffer, individually and as the Administratrix of the Estate of Robert H. Schaffer v. Bayer Corporation

45.   Plaintiff repeats, reiterates and, re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

46.   At all times herein mentioned, the Defendant BAYER and/or its predecessors in interest designed, researched, manufactured, tested, advertised, promoted, and/or distributed and sold Roundup products containing glyphosate

47.   Defendant BAYER's Roundup was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

48.   At those times, Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, including Plaintiff's Decedent.

49.   The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant BAYER and/or its predecessors in interest was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Roundup.

50.   The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant BAYER and/or its predecessors in

interest was defective in design and/or formulation, in that, when it left the hands of the Defendant manufacturers and/or suppliers, it was unreasonably dangerous during normal use, and it was more dangerous than an ordinary consumer would expect.

51.    At all times herein mentioned, Roundup was in a defective condition and unsafe, and Defendant BAYER and/or its predecessors in interest knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendant. In particular, Defendant's Roundup was defective in the following ways:

a.    When placed in the stream of commerce, Defendant's Roundup Products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate;

b.    When placed in the stream of commerce, Defendant's Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

c.    When placed in the stream of commerce, Defendant's Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner;

d.    Defendants did not sufficiently test, investigate, or study its Roundup products;

e.    Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide;

f.    Defendant new or should have known at the time of marketing its Roundup products that exposure to Roundup and could result in cancer and other severe illnesses and injuries;

g.  Defendant did not conduct adequate post-marketing testing, tracking, and
observation of the health and environmental effects of Roundup products.

52.  Defendant BAYER and/or its predecessors in interest knew, or should have known
that at all times herein mentioned its Roundup was in a defective condition, and was and is
inherently dangerous and unsafe.

53.  Plaintiff was exposed to Defendant BAYER's Roundup in the course of his
vocation as a landscaper, without knowledge of Roundup's dangerous characteristics.

54.  At the time of the Plaintiff's use of and exposure to Roundup, Roundup was being
used for the purposes and in a manner normally intended, as a broad-spectrum herbicide.

55.  Defendant BAYER and/or its predecessors in interest had a duty to create a product
that was not unreasonably dangerous for its normal, intended use.

56.  Defendant BAYER and/or its predecessors in interest created a product that was
and is unreasonably dangerous for its normal, intended use.

57.  Defendant BAYER and/or its predecessors in interest marketed and promoted a
product in such a manner so as to make it inherently defective as the product downplayed its
suspected, probable, and established health risks inherent with its normal, intended use.

58.  The Roundup designed, researched, manufactured, tested, advertised, promoted,
marketed, sold, and distributed by Defendant BAYER and/or its predecessors in interest was
manufactured defectively in that Roundup left the hands of Defendant in a defective condition and
was unreasonably dangerous to its intended users.

59.  The Roundup designed, researched, manufactured, tested, advertised, promoted,
marketed, sold, and distributed by Defendant reached their intended users in the same defective and
unreasonably dangerous condition in which the Defendant's Roundup was manufactured.

60.     Defendant BAYER and/or its predecessors in interest designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product, which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendant are therefore strictly liable for the injuries sustained by the Plaintiff.

61.     The Plaintiff's Decedent could not, by the exercise of reasonable care, have discovered Roundup's defects herein mentioned or perceived its danger.

62.     By reason of the foregoing, the Defendant is strictly liable to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Roundup.

63.     Defendant BAYER's defective design, of Roundup amounts to willful, wanton, and/or reckless conduct by Defendants.

64.     Defects in Defendant BAYER's Roundup were the cause or a substantial factor in causing Plaintiff's injuries and death.

65.     As a result of the foregoing acts and omission, Plaintiff and Plaintiff's decedent suffered injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert H. Shaffer respectfully requests judgment in her favor against Defendant BAYER CORPORATION, jointly and severally, for the full amount of her damages, together with punitive damages, as aforesaid in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

COUNT III: STRICT LIABILITY; FAILURE TO WARN

Mary Metz Shaffer as the Administratrix of the Estate of Robert H. Shaffer v. Bayer Corporation

66.     Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

67.     Defendant BAYER and/or its predecessors in interest has engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Roundup, and through that conduct have knowingly and intentionally placed Roundup into the stream of commerce with full knowledge that it reaches consumers such as Plaintiff who are exposed to it through ordinary and reasonably foreseeable uses.

68.     Defendant BAYER and/or its predecessors in interest did in fact sell, distribute, supply, manufacture, and/or promote Roundup to Plaintiff. Additionally, Defendant expected the Roundup that they were selling, distributing, supplying, manufacturing, and/or promoting to reach – and Roundup did in fact reach consumers, including Plaintiff's Decedent, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

69.     At the time of manufacture, Defendant BAYER and/or its predecessors in interest could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

70.     At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendant BAYER and/or its predecessors in interest and at the time Plaintiff's Decedent was exposed to and/or ingested the product. The defective condition of Roundup was due in part to the fact that it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, but not limited to, developing non-Hodgkin's lymphoma as a result of exposure and use.

71.     Roundup did not contain a warning or caution statement, which was necessary and, if complied with, was adequate to protect health those exposed in violation of 7 U.S.C. § 136j(a)(1)(E).

72. Defendant's failure to include a warning or caution statement which was necessary and, if complied with, was adequate to protect the health of those exposed, violated 7 U.S.C. § 136j(a)(1)(E) as well as the laws of the Commonwealth of Pennsylvania.

73. Defendant could have amended the label of Roundup to provide additional warnings.

74. This defect caused serious injury to Plaintiff's Decedent, who used Roundup in its intended and foreseeable manner.

75. At all times herein mentioned, Defendant BAYER and/or its predecessors in interest had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

76. Defendant BAYER and/or its predecessors in interest labeled, distributed, and promoted the aforesaid product despite knowledge that it was dangerous and unsafe when used for the purpose for which it was intended.

77. Defendant BAYER and/or its predecessors in interest failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of NHL.

78. Despite the fact that Defendant BAYER and/or its predecessors in interest knew or should have known that Roundup caused serious injuries, Defendant failed to exercise reasonable care to warn of the dangerous carcinogenic properties and side effect of developing non-Hodgkins lymphoma from Roundup exposure, even though these side effects were known or reasonably scientifically knowable at the time of distribution. Defendant willfully and deliberately failed to avoid the consequences associated with their failure to warn, and in doing so, Defendant acted with a conscious disregard for the safety of consumers, including Plaintiff's Decedent.

79. At the time of exposure, Plaintiff's Decedent could not have reasonably discovered any defect in Roundup prior through the exercise of reasonable care.

80. Defendant BAYER and/or its predecessors in interest , as the manufacturer and/or distributor of the subject product, is held to the level of knowledge of an expert in the field.

81. Consumers, including Plaintiff's Decedent, reasonably relied upon the skill, superior knowledge, and judgment of Defendant BAYER and/or its predecessors in interest .

82. Had Defendant BAYER and/or its predecessors in interest properly disclosed the risks associated with Roundup, Plaintiff's Decedent would have avoided the risk of NHL by not using Roundup.

83. The information that Defendant BAYER and/or its predecessors in interest did provide or communicate failed to contain adequate warnings and precautions that would have enabled Plaintiff's Decedent, and similarly situated individuals, to utilize the product safely and with adequate protection. Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup and glyphosate; continued to promote the efficacy of Roundup, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

84. To this day, Defendant BAYER has failed to adequately warn of the true risks of injury and disease associated with the use of and exposure to Roundup.

85. As a result of their inadequate warnings, Defendant BAYER's Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Plaintiff's Decedent in a foreseeable and

appropriate manner.

86.     As a direct and proximate result of the acts and omissions of Defendant BAYER and/or its predecessors in interest as alleged herein, and in such other ways to be later shown, the subject product caused Plaintiff and Plaintiff's Decedent to sustain injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert Schaffer respectfully requests judgment in her favor against Defendant BAYER CORPORATION, jointly and severally, for the full amount of her damages as aforesaid, including punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

## COUNT IV: BREACH OF IMPLIED WARRANTIES

### Mary Metz Shaffer, individually and as the Administratrix of the Estate of Robert H. Schaffer v. Bayer Corporation

87.     Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect all if more fully set forth herein.

88.     At all times herein mentioned, the Defendant BAYER and/or its predecessors in interest manufactured, distributed, compounded, recommended, merchandized, advertised, promoted, and sold Roundup and/or have recently acquired the Defendant who have manufactured, compound portrayed, distributed, recommended, merchandized, advertised, promoted, and sold Roundup, as a broad spectrum herbicide. These actions were under the ultimate control and supervision of Defendant.

89.     At the time Defendant BAYER and/or its predecessors in interest marketed, sold, and distributed Roundup for use by Plaintiff's Decedent, Defendant knew of Roundup's intended

use and impliedly warranted the product to be or merchantable quality and safe and fit for this use.

90.     The Defendant BAYER impliedly represented and warranted to Plaintiff's Decedent and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

91.     These representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality, and defective.

92.     Plaintiff's Decedent did rely on said implied warranty of merchantability of fitness for particular use and purpose.

93.     Decedent reasonably relied upon the skill and judgment of Defendant as to whether Roundup was of merchantable quality and safe and fit for its intended use.

94.     Roundup was injected into the stream of commerce by the Defendant BAYER and/or its predecessors in interest in a defective, unsafe, and inherently dangerous condition, and the products' materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

95.     The Defendant BAYER and/or its predecessors in interest breached the aforesaid implied warranties, as their herbicide Roundup was not fit for its intended purposes and uses.

96.     As a result of the foregoing acts and omissions, Plaintiff's Decedent suffered from non-Hodgkins lymphoma and Decedent suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages and ultimately his death.

97.     As a result of the foregoing acts and omissions, Plaintiff and Plaintiff's Decedent suffered injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix

of the Estate of Robert Schaffer, respectfully requests judgment in her favor against Defendant

BAYER CORPORATION, jointly and severally, for the full amount of her damages as aforesaid,

including punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration,

together with all costs, disbursements and interest thereon.

## COUNT I: NEGLIGENCE

<u>Mary Metz Shaffer, individually and as the Administratrix of the
Estate of Robert H. Shaffer v. Monsanto Company</u>

98.     Plaintiff repeats, reiterates and realleges all those allegations contained in the

foregoing paragraphs as if more fully restated herein.

99.     At all times relevant hereto, Decedent was utilizing the aforementioned herbicide

in a manner which it was originally intended and/or reasonably foreseeable by Defendant, consistent

with the purpose for which it was designed, manufactured, assembled, distributed, promoted,

and/or sold by Defendant.

100.    At all times relevant hereto Defendant MONSANTO, and/or its predecessors in

interest, engaged in the testing, development, design, manufacture, marketing, distribution, and

promotion of Roundup products which were defective and unreasonably dangerous to consumers,

specifically Decedent, who was exposed to said products as described above.

101.    At all times relevant hereto Defendant MONSANTO, and/or its predecessors in

interest, manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous

manner Roundup products for use by or exposure to the public, specifically Decedent.

102.    At all times relevant hereto Defendant MONSANTO, and/or its predecessors in

interest, reached intended consumers, handlers, and users or other persons, specifically Decedent,

without substantial change in their condition as designed, manufactured, sold, distributed, labeled,

and marketed by Defendant MONSANTO and/or its predecessors.

103. Defendant MONSANTO, and/or its predecessors in interest, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed Roundup products which were defective in design from their inception, and thus unreasonably dangerous.

104. Defendant MONSANTO, and/or its predecessors in interest, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed Roundup products despite the foreseeable risks associated with peddling carcinogenic products, namely Roundup products, to consumers, including Decedent.

105. At all times relevant hereto Defendant MONSANTO, and/or its predecessors in interest, knew, or should have known, Roundup products were defective and inherently dangerous and unsafe when used in the manner instructed by advertising, labeling, and packaging.

106. At all times relevant hereto, Defendant MONSANTO's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant MONSANTO, and/or its predecessors in interest, were negligently manufactured, produced, promoted, formulated, created, and/or sold as follows:

   a. Without sufficient testing;

   b. Being unsafe to use;

   c. Despite Defendant's knowledge that it was unsafe to use;

   d. Without first undergoing sufficient testing programs to determine the safety of all ingredients, including glyphosate as well as its inactive/inert ingredients and/or adjuvants contained within Roundup, including testing to determine the propensity of these ingredients to render Roundup toxic, increase the toxicity of Roundup, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether or not the product as

formulated was safe for use;

e.   Without warnings or notifications to consumers, the public, the medical and agricultural professions, and various agencies of the State and Federal governments of the United States of America of the dangers of glyphosate (and therefore, of Roundup);

f.   Without adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

g.   Without duly acknowledging and appreciating the dangerousness of glyphosate (and, therefore, of Roundup) and taking appropriate actions thereon;

h.   Representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

i.   Representing that Roundup had equivalent safety and efficacy as other forms of herbicides;

j.   While Defendant concealed information in its possession indicating that Roundup was unsafe, dangerous, and/or non-conforming with EPA regulations; and

k.   Being dangerous to an extent beyond that which an ordinary consumer would contemplate;

l.   Being so unreasonably dangerous in that it posed a grave risk of cancer and other serious illnesses when used as intended and/or as reasonably foreseeable;

m. Being constructed containing an unreasonably dangerous design defect so as to render the Roundup products unsafe when used as intended and/or reasonably foreseeable; and

n. Being sold in an unsafe and defective condition despite safer alternative herbicide formulations being available.

107. The subject Roundup product was in a defective condition at the time they left the possession and control of Defendant MONSANTO and/or its predecessors in interest, and were not substantially changed prior to the time of Decedent's injury.

108. The design, manufacture, assembly, distribution, promotion, and sales of the subject Roundup products in a dangerous and defective condition caused Decedent's and Plaintiff's injuries.

109. As a result of the aforesaid accident, Decedent suffered grievous and severe bodily injuries and death, and his damages, in addition to Plaintiff's damages, include but are not limited to pain and suffering, medical expenses, loss of emotional and financial support, funeral expenses, loss of enjoyment of life and life's pleasures, and all other relief deemed just by this Honorable Court.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert H. Schaffer respectfully requests judgment in her favor against Defendant MONSANTO COMPANY, jointly and severally, for the full amount of her damages as aforesaid, together with punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

## COUNT VI: STRICT LIABILITY; DESIGN DEFECT

### Mary Metz Shaffer, individually and as the Administratrix of the Estate of Robert H. Schaffer v. Monsanto Company

110. Plaintiff repeats, reiterates and, re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more

fully set forth herein.

111.    At all times herein mentioned, the Defendant MONSANTO and/or its predecessors in interest designed, researched, manufactured, tested, advertised, promoted, and/or distributed and sold Roundup products containing glyphosate

112.    Defendant MONSANTO's Roundup was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

113.    At those times, Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, including Plaintiff's Decedent.

114.    The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant MONSANTO and/or its predecessors in interest was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Roundup.

115.    The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant MONSANTO and/or its predecessors in interest was defective in design and/or formulation, in that, when it left the hands of the Defendant manufacturers and/or suppliers, it was unreasonably dangerous during normal use, and it was more dangerous than an ordinary consumer would expect.

116.    At all times herein mentioned, Roundup was in a defective condition and unsafe, and Defendant MONSANTO and/or its predecessors in interest knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendant. In particular, Defendant's Roundup was defective in the following ways:

a. When placed in the stream of commerce, Defendant's Roundup Products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate;

b. When placed in the stream of commerce, Defendant's Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

c. When placed in the stream of commerce, Defendant's Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner;

d. Defendants did not sufficiently test, investigate, or study its Roundup products;

e. Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide;

f. Defendant new or should have known at the time of marketing its Roundup products that exposure to Roundup and could result in cancer and other severe illnesses and injuries;

g. Defendant did not conduct adequate post-marketing testing, tracking, and observation of the health and environmental effects of Roundup products.

117. Defendant MONSANTO and/or its predecessors in interest knew, or should have known that at all times herein mentioned its Roundup was in a defective condition, and was and is inherently dangerous and unsafe.

118. Plaintiff was exposed to Defendant MONSANTO's Roundup in the course of his vocation as a landscaper, without knowledge of Roundup's dangerous characteristics.

119.    At the time of the Plaintiff's use of and exposure to Roundup, Roundup was being used for the purposes and in a manner normally intended, as a broad-spectrum herbicide.

120.    Defendant MONSANTO and/or its predecessors in interest had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

121.    Defendant MONSANTO and/or its predecessors in interest created a product that was and is unreasonably dangerous for its normal, intended use.

122.    Defendant MONSANTO and/or its predecessors in interest marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established health risks inherent with its normal, intended use.

123.    The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant MONSANTO and/or its predecessors in interest was manufactured defectively in that Roundup left the hands of Defendant in a defective condition and was unreasonably dangerous to its intended users.

124.    The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant reached their intended users in the same defective and unreasonably dangerous condition in which the Defendant's Roundup was manufactured.

125.    Defendant MONSANTO and/or its predecessors in interest designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product, which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendant are therefore strictly liable for the injuries sustained by the Plaintiff.

126.    The Plaintiff's Decedent could not, by the exercise of reasonable care, have discovered Roundup's defects herein mentioned or perceived its danger.

127. By reason of the foregoing, the Defendant is strictly liable to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Roundup.

128. Defendant MONSANTO's defective design, of Roundup amounts to willful, wanton, and/or reckless conduct by Defendants.

129. Defects in Defendant MONSANTO's Roundup were the cause or a substantial factor in causing Plaintiff's injuries and death.

130. As a result of the foregoing acts and omission, Plaintiff and Plaintiff's decedent suffered injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert H. Shaffer respectfully requests judgment in her favor against Defendant MONSANTO COMPANY, jointly and severally, for the full amount of her damages, together with punitive damages, as aforesaid in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

## COUNT VII: STRICT LIABILITY; FAILURE TO WARN

Mary Metz Shaffer as the Administratrix of the Estate of Robert H. Shaffer v. Monsanto Company

131. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

132. Defendant MONSANTO and/or its predecessors in interest has engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Roundup, and through that conduct have knowingly and intentionally placed Roundup into the stream of commerce with full knowledge that it reaches consumers such as Plaintiff who are exposed to it through ordinary and reasonably foreseeable uses.

133. Defendant MONSANTO and/or its predecessors in interest did in fact sell, distribute, supply, manufacture, and/or promote Roundup to Plaintiff. Additionally, Defendant expected the Roundup that they were selling, distributing, supplying, manufacturing, and/or promoting to reach – and Roundup did in fact reach consumers, including Plaintiff's Decedent, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

134. At the time of manufacture, Defendant MONSANTO and/or its predecessors in interest could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

135. At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendant MONSANTO and/or its predecessors in interest and at the time Plaintiff's Decedent was exposed to and/or ingested the product. The defective condition of Roundup was due in part to the fact that it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, but not limited to, developing non-Hodgkin's lymphoma as a result of exposure and use.

136. Roundup did not contain a warning or caution statement, which was necessary and, if complied with, was adequate to protect health those exposed in violation of 7 U.S.C. § 136j(a)(1)(E).

137. Defendant's failure to include a warning or caution statement which was necessary and, if complied with, was adequate to protect the health of those exposed, violated 7 U.S.C. § 136j(a)(1)(E) as well as the laws of the Commonwealth of Pennsylvania.

138.    Defendant could have amended the label of Roundup to provide additional warnings.

139.    This defect caused serious injury to Plaintiff's Decedent, who used Roundup in its intended and foreseeable manner.

140.    At all times herein mentioned, Defendant MONSANTO and/or its predecessors in interest had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

141.    Defendant MONSANTO and/or its predecessors in interest labeled, distributed, and promoted the aforesaid product despite knowledge that it was dangerous and unsafe when used for the purpose for which it was intended.

142.    Defendant MONSANTO and/or its predecessors in interest failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of NHL.

143.    Despite the fact that Defendant MONSANTO and/or its predecessors in interest knew or should have known that Roundup caused serious injuries, Defendant failed to exercise reasonable care to warn of the dangerous carcinogenic properties and side effect of developing non-Hodgkins lymphoma from Roundup exposure, even though these side effects were known or reasonably scientifically knowable at the time of distribution. Defendant willfully and deliberately failed to avoid the consequences associated with their failure to warn, and in doing so, Defendant acted with a conscious disregard for the safety of consumers, including Plaintiff's Decedent.

144.    At the time of exposure, Plaintiff's Decedent could not have reasonably discovered any defect in Roundup prior through the exercise of reasonable care.

145. Defendant MONSANTO and/or its predecessors in interest , as the manufacturer and/or distributor of the subject product, is held to the level of knowledge of an expert in the field.

146. Consumers, including Plaintiff's Decedent, reasonably relied upon the skill, superior knowledge, and judgment of Defendant MONSANTO and/or its predecessors in interest .

147. Had Defendant MONSANTO and/or its predecessors in interest  properly disclosed the risks associated with Roundup, Plaintiff's Decedent would have avoided the risk of NHL by not using Roundup.

148. The information that Defendant MONSANTO and/or its predecessors in interest did provide or communicate failed to contain adequate warnings and precautions that would have enabled Plaintiff's Decedent, and similarly situated individuals, to utilize the product safely and with adequate protection. Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup and glyphosate; continued to promote the efficacy of Roundup, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

149. To this day, Defendant MONSANTO has failed to adequately warn of the true risks of injury and disease associated with the use of and exposure to Roundup.

150. As a result of their inadequate warnings, Defendant MONSANTO's Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Plaintiff's Decedent in a foreseeable and appropriate manner.

151.    As a direct and proximate result of the acts and omissions of Defendant

MONSANTO and/or its predecessors in interest as alleged herein, and in such other ways to be

later shown, the subject product caused Plaintiff and Plaintiff's Decedent to sustain injuries and

damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix

of the Estate of Robert Schaffer respectfully requests judgment in her favor against Defendant

MONSANTO COMPANY, jointly and severally, for the full amount of her damages as aforesaid,

including punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration,

together with all costs, disbursements and interest thereon.


COUNT VIII: BREACH OF IMPLIED WARRANTIES

Mary Metz Shaffer, individually and as the Administratrix of the
Estate of Robert H. Schaffer v. Monsanto Company

152.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect

all if more fully set forth herein.

153.    At all times herein mentioned, the Defendant MONSANTO and/or its predecessors

in interest manufactured, distributed, compounded, recommended, merchandized, advertised,

promoted, and sold Roundup and/or have recently acquired the Defendant who have

manufactured, compound portrayed, distributed, recommended, merchandized, advertised,

promoted, and sold Roundup, as a broad spectrum herbicide. These actions were under the ultimate

control and supervision of Defendant.

154.    At the time Defendant MONSANTO and/or its predecessors in interest  marketed,

sold, and distributed Roundup for use by Plaintiff's Decedent, Defendant knew of Roundup's

intended use and impliedly warranted the product to be or merchantable quality and safe and fit for this use.

155.    The Defendant MONSANTO impliedly represented and warranted to Plaintiff's Decedent and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

156.    These representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality, and defective.

157.    Plaintiff's Decedent did rely on said implied warranty of merchantability of fitness for particular use and purpose.

158.    Decedent reasonably relied upon the skill and judgment of Defendant as to whether Roundup was of merchantable quality and safe and fit for its intended use.

159.    Roundup was injected into the stream of commerce by the Defendant MONSANTO and/or its predecessors in interest in a defective, unsafe, and inherently dangerous condition, and the products' materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

160.    The Defendant MONSANTO and/or its predecessors in interest breached the aforesaid implied warranties, as their herbicide Roundup was not fit for its intended purposes and uses.

161.    As a result of the foregoing acts and omissions, Plaintiff's Decedent suffered from non-Hodgkins lymphoma and Decedent suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages and ultimately his death.

162.     As a result of the foregoing acts and omissions, Plaintiff and Plaintiff's Decedent suffered injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert Schaffer, respectfully requests judgment in her favor against Defendant MONSANTO COMPANY, jointly and severally, for the full amount of her damages as aforesaid, including punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

## COUNT IX: STRICT LIABILITY

Mary Metz Shaffer as the Administratrix of the
Estate of Robert H. Schaffer vs. Lowe's Home Improvement, LLC

163.     Plaintiff repeats, reiterates and, re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

164.     At all times herein mentioned, the Defendant LOWE'S advertised, promoted, marketed, distributed, and/or sold Roundup as hereinabove described that was used by the Plaintiff's Decedent.

165.     At those times, Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users including Plaintiff's Decedent.

166.     By reason of the foregoing, Defendant is strictly liable to the Plaintiff for the its repeated sales to Plaintiff's Decedent of a defective product, Roundup.

167.     As a result of Defendant's sale of Roundup to Plaintiff's Decedent, Plaintiff and Plaintiff's decedent suffered injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert Schaffer, respectfully requests judgment in her favor against Defendant

LOWE'S HOME IMPROVEMENT, LLC, jointly and severally, for the full amount of her damages as aforesaid, including punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

## COUNT X: NEGLIGENCE

<u>Mary Metz Shaffer, individually and as the Administratrix of the
Estate of Robert H. Shaffer v. John Does 1-5</u>

168.     Plaintiff repeats, reiterates and realleges all those allegations contained in the foregoing paragraphs as if more fully restated herein.

169.     At all times relevant hereto, Decedent was utilizing the aforementioned herbicide in a manner which it was originally intended and/or reasonably foreseeable by Defendant, consistent with the purpose for which it was designed, manufactured, assembled, distributed, promoted, and/or sold by Defendant.

170.     At all times relevant hereto Defendant JOHN DOES 1-5, and/or its predecessors in interest, engaged in the testing, development, design, manufacture, marketing, distribution, and promotion of Roundup products which were defective and unreasonably dangerous to consumers, specifically Decedent, who was exposed to said products as described above.

171.     At all times relevant hereto Defendant JOHN DOES 1-5, and/or its predecessors in interest, manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner Roundup products for use by or exposure to the public, specifically Decedent.

172.     At all times relevant hereto Defendant JOHN DOES 1-5, and/or its predecessors in interest, reached intended consumers, handlers, and users or other persons, specifically Decedent, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant JOHN DOES 1-5 and/or its predecessors.

173.    Defendant JOHN DOES 1-5, and/or its predecessors in interest, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed Roundup products which were defective in design from their inception, and thus unreasonably dangerous.

174.    Defendant JOHN DOES 1-5, and/or its predecessors in interest, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed Roundup products despite the foreseeable risks associated with peddling carcinogenic products, namely Roundup products, to consumers, including Decedent.

175.    At all times relevant hereto Defendant JOHN DOES 1-5, and/or its predecessors in interest, knew, or should have known, Roundup products were defective and inherently dangerous and unsafe when used in the manner instructed by advertising, labeling, and packaging.

176.    At all times relevant hereto, Defendant JOHN DOES 1-5's Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant JOHN DOES 1-5, and/or its predecessors in interest, were negligently manufactured, produced, promoted, formulated, created, and/or sold as follows:

      a.    Without sufficient testing;

      b.    Being unsafe to use;

      c.    Despite Defendant's knowledge that it was unsafe to use;

      d.    Without first undergoing sufficient testing programs to determine the safety of all ingredients, including glyphosate as well as its inactive/inert ingredients and/or adjuvants contained within Roundup, including testing to determine the propensity of these ingredients to render Roundup toxic, increase the toxicity of Roundup, whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether or not the product as formulated was safe for use;

e.  Without warnings or notifications to consumers, the public, the medical and agricultural professions, and various agencies of the State and Federal governments of the United States of America of the dangers of glyphosate (and therefore, of Roundup);

f.  Without adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

g.  Without duly acknowledging and appreciating the dangerousness of glyphosate (and, therefore, of Roundup) and taking appropriate actions thereon;

h.  Representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

i.  Representing that Roundup had equivalent safety and efficacy as other forms of herbicides;

j.  While Defendant concealed information in its possession indicating that Roundup was unsafe, dangerous, and/or non-conforming with EPA regulations; and

k.  Being dangerous to an extent beyond that which an ordinary consumer would contemplate;

l.  Being so unreasonably dangerous in that it posed a grave risk of cancer and other serious illnesses when used as intended and/or as reasonably foreseeable;

m.    Being constructed containing an unreasonably dangerous design defect so as to render the Roundup products unsafe when used as intended and/or reasonably foreseeable; and

n.    Being sold in an unsafe and defective condition despite safer alternative herbicide formulations being available.

177.    The subject Roundup product was in a defective condition at the time they left the possession and control of Defendant JOHN DOES 1-5 and/or its predecessors in interest, and were not substantially changed prior to the time of Decedent's injury.

178.    The design, manufacture, assembly, distribution, promotion, and sales of the subject Roundup products in a dangerous and defective condition caused Decedent's and Plaintiff's injuries.

179.    As a result of the aforesaid accident, Decedent suffered grievous and severe bodily injuries and death, and his damages, in addition to Plaintiff's damages, include but are not limited to pain and suffering, medical expenses, loss of emotional and financial support, funeral expenses, loss of enjoyment of life and life's pleasures, and all other relief deemed just by this Honorable Court.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert H. Schaffer respectfully requests judgment in her favor against Defendant JOHN DOES 1-5, jointly and severally, for the full amount of her damages as aforesaid, together with punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

COUNT XI: STRICT LIABILITY; DESIGN DEFECT

Mary Metz Shaffer, individually and as the Administratrix of the
Estate of Robert H. Schaffer v. John Does 1-5

180.    Plaintiff repeats, reiterates and, re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more

fully set forth herein.

181.    At all times herein mentioned, the Defendant JOHN DOES 1-5 and/or its predecessors in interest designed, researched, manufactured, tested, advertised, promoted, and/or distributed and sold Roundup products containing glyphosate

182.    Defendant JOHN DOES 1-5's Roundup was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

183.    At those times, Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, including Plaintiff's Decedent.

184.    The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant JOHN DOES 1-5 and/or its predecessors in interest was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Roundup.

185.    The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant JOHN DOES 1-5 and/or its predecessors in interest was defective in design and/or formulation, in that, when it left the hands of the Defendant manufacturers and/or suppliers, it was unreasonably dangerous during normal use, and it was more dangerous than an ordinary consumer would expect.

186.    At all times herein mentioned, Roundup was in a defective condition and unsafe, and Defendant JOHN DOES 1-5 and/or its predecessors in interest knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendant. In particular, Defendant's Roundup was defective in the following ways:

a. When placed in the stream of commerce, Defendant's Roundup Products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate;

b. When placed in the stream of commerce, Defendant's Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

c. When placed in the stream of commerce, Defendant's Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner;

d. Defendants did not sufficiently test, investigate, or study its Roundup products;

e. Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide;

f. Defendant new or should have known at the time of marketing its Roundup products that exposure to Roundup and could result in cancer and other severe illnesses and injuries;

g. Defendant did not conduct adequate post-marketing testing, tracking, and observation of the health and environmental effects of Roundup products.

187. Defendant JOHN DOES 1-5 and/or its predecessors in interest knew, or should have known that at all times herein mentioned its Roundup was in a defective condition, and was and is inherently dangerous and unsafe.

188. Plaintiff was exposed to Defendant JOHN DOES 1-5's Roundup in the course of his vocation as a landscaper, without knowledge of Roundup's dangerous characteristics.

189. At the time of the Plaintiff's use of and exposure to Roundup, Roundup was being used for the purposes and in a manner normally intended, as a broad-spectrum herbicide.

190. Defendant JOHN DOES 1-5 and/or its predecessors in interest had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

191. Defendant JOHN DOES 1-5 and/or its predecessors in interest created a product \ that was and is unreasonably dangerous for its normal, intended use.

192. Defendant JOHN DOES 1-5 and/or its predecessors in interest marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established health risks inherent with its normal, intended use.

193. The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant JOHN DOES 1-5 and/or its predecessors in interest was manufactured defectively in that Roundup left the hands of Defendant in a defective condition and was unreasonably dangerous to its intended users.

194. The Roundup designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendant reached their intended users in the same defective and unreasonably dangerous condition in which the Defendant's Roundup was manufactured.

195. Defendant JOHN DOES 1-5 and/or its predecessors in interest designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product, which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendant are therefore strictly liable for the injuries sustained by the Plaintiff.

196. The Plaintiff's Decedent could not, by the exercise of reasonable care, have discovered Roundup's defects herein mentioned or perceived its danger.

197.     By reason of the foregoing, the Defendant is strictly liable to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Roundup.

198.     Defendant JOHN DOES 1-5's defective design, of Roundup amounts to willful, wanton, and/or reckless conduct by Defendants.

199.     Defects in Defendant JOHN DOES 1-5's Roundup were the cause or a substantial factor in causing Plaintiff's injuries and death.

200.     As a result of the foregoing acts and omission, Plaintiff and Plaintiff's decedent suffered injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert H. Shaffer respectfully requests judgment in her favor against Defendant JOHN DOES 1-5, jointly and severally, for the full amount of her damages, together with punitive damages, as aforesaid in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

## COUNT XII: STRICT LIABILITY; FAILURE TO WARN

Mary Metz Shaffer as the Administratrix of the Estate of Robert H. Shaffer v. John Does 1-5

201.     Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

202.     Defendant JOHN DOES 1-5 and/or its predecessors in interest  has engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Roundup, and through that conduct have knowingly and intentionally placed Roundup into the stream of commerce with full knowledge that it reaches consumers such as Plaintiff who are exposed to it through ordinary and reasonably foreseeable uses.

203.     Defendant JOHN DOES 1-5 and/or its predecessors in interest did in fact sell, distribute, supply, manufacture, and/or promote Roundup to Plaintiff. Additionally, Defendant expected the Roundup that they were selling, distributing, supplying, manufacturing, and/or promoting to reach – and Roundup did in fact reach consumers, including Plaintiff's Decedent, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

204.     At the time of manufacture, Defendant JOHN DOES 1-5 and/or its predecessors in interest could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

205.     At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendant JOHN DOES 1-5 and/or its predecessors in interest and at the time Plaintiff's Decedent was exposed to and/or ingested the product. The defective condition of Roundup was due in part to the fact that it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, but not limited to, developing non-Hodgkin's lymphoma as a result of exposure and use.

206.     Roundup did not contain a warning or caution statement, which was necessary and, if complied with, was adequate to protect health those exposed in violation of 7 U.S.C. § 136j(a)(1)(E).

207.     Defendant's failure to include a warning or caution statement which was necessary and, if complied with, was adequate to protect the health of those exposed, violated 7 U.S.C. § 136j(a)(1)(E) as well as the laws of the Commonwealth of Pennsylvania.

208.     Defendant could have amended the label of Roundup to provide additional warnings.

209.     This defect caused serious injury to Plaintiff's Decedent, who used Roundup in its intended and foreseeable manner.

210.     At all times herein mentioned, Defendant JOHN DOES 1-5 and/or its predecessors in interest had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

211.     Defendant JOHN DOES 1-5 and/or its predecessors in interest labeled, distributed, and promoted the aforesaid product despite knowledge that it was dangerous and unsafe when used for the purpose for which it was intended.

212.     Defendant JOHN DOES 1-5 and/or its predecessors in interest failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of NHL.

213.     Despite the fact that Defendant JOHN DOES 1-5 and/or its predecessors in interest knew or should have known that Roundup caused serious injuries, Defendant failed to exercise reasonable care to warn of the dangerous carcinogenic properties and side effect of developing non-Hodgkins lymphoma from Roundup exposure, even though these side effects were known or reasonably scientifically knowable at the time of distribution. Defendant willfully and deliberately failed to avoid the consequences associated with their failure to warn, and in doing so, Defendant acted with a conscious disregard for the safety of consumers, including Plaintiff's Decedent.

214.     At the time of exposure, Plaintiff's Decedent could not have reasonably discovered any defect in Roundup prior through the exercise of reasonable care.

215. Defendant JOHN DOES 1-5 and/or its predecessors in interest , as the manufacturer and/or distributor of the subject product, is held to the level of knowledge of an expert in the field.

216. Consumers, including Plaintiff's Decedent, reasonably relied upon the skill, superior knowledge, and judgment of Defendant JOHN DOES 1-5 and/or its predecessors in interest .

217. Had Defendant JOHN DOES 1-5 and/or its predecessors in interest  properly disclosed the risks associated with Roundup, Plaintiff's Decedent would have avoided the risk of NHL by not using Roundup.

218. The information that Defendant JOHN DOES 1-5 and/or its predecessors in interest did provide or communicate failed to contain adequate warnings and precautions that would have enabled Plaintiff's Decedent, and similarly situated individuals, to utilize the product safely and with adequate protection. Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Roundup and glyphosate; continued to promote the efficacy of Roundup, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

219. To this day, Defendant JOHN DOES 1-5 has failed to adequately warn of the true risks of injury and disease associated with the use of and exposure to Roundup.

220. As a result of their inadequate warnings, Defendant JOHN DOES 1-5's Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Plaintiff's Decedent in a foreseeable and appropriate manner.

221.    As a direct and proximate result of the acts and omissions of Defendant

JOHN DOES 1-5 and/or its predecessors in interest as alleged herein, and in such other ways to be

later shown, the subject product caused Plaintiff and Plaintiff's Decedent to sustain injuries and

damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix

of the Estate of Robert Schaffer respectfully requests judgment in her favor against Defendant

JOHN DOES 1-5, jointly and severally, for the full amount of her damages as aforesaid, including

punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together

with all costs, disbursements and interest thereon.

## COUNT XIII: BREACH OF IMPLIED WARRANTIES

### Mary Metz Shaffer, individually and as the Administratrix of the Estate of Robert H. Schaffer v. John Does 1-5

222.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect

all if more fully set forth herein.

223.    At all times herein mentioned, the Defendant JOHN DOES 1-5 and/or its

predecessors in interest manufactured, distributed, compounded, recommended, merchandized,

advertised, promoted, and sold Roundup and/or have recently acquired the Defendant who have

manufactured, compound portrayed, distributed, recommended, merchandized, advertised,

promoted, and sold Roundup, as a broad spectrum herbicide. These actions were under the ultimate

control and supervision of Defendant.

224.    At the time Defendant JOHN DOES 1-5 and/or its predecessors in interest

marketed, sold, and distributed Roundup for use by Plaintiff's Decedent, Defendant knew of

Roundup's intended use and impliedly warranted the product to be or merchantable quality and safe and fit for this use.

225. The Defendant JOHN DOES 1-5 impliedly represented and warranted to Plaintiff's Decedent and users of Roundup, the agricultural community, and/or the EPA that Roundup was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

226. These representations and warranties were false, misleading, and inaccurate in that Roundup was unsafe, unreasonably dangerous, not of merchantable quality, and defective.

227. Plaintiff's Decedent did rely on said implied warranty of merchantability of fitness for particular use and purpose.

228. Decedent reasonably relied upon the skill and judgment of Defendant as to whether Roundup was of merchantable quality and safe and fit for its intended use.

229. Roundup was injected into the stream of commerce by the Defendant JOHN DOES 1-5 and/or its predecessors in interest in a defective, unsafe, and inherently dangerous condition, and the products' materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

230. The Defendant JOHN DOES 1-5 and/or its predecessors in interest breached the aforesaid implied warranties, as their herbicide Roundup was not fit for its intended purposes and uses.

231. As a result of the foregoing acts and omissions, Plaintiff's Decedent suffered from non-Hodgkins lymphoma and Decedent suffered severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial expenses for hospitalization and medical care, including medical expenses and other economic, and non-economic damages and ultimately his death.

232.    As a result of the foregoing acts and omissions, Plaintiff and Plaintiff's Decedent suffered injuries and damages as aforesaid.

WHEREFORE Plaintiff MARY METZ SHAFFER, individually and as the Administratrix of the Estate of Robert Schaffer, respectfully requests judgment in her favor against Defendant JOHN DOES 1-5, jointly and severally, for the full amount of her damages as aforesaid, including punitive damages, in an amount in excess of the jurisdictional limits for judicial arbitration, together with all costs, disbursements and interest thereon.

Respectfully Submitted,

ZIMMERMAN & OHLIGER

Jason R. Ohliger, Esquire
Nicholas J. McIntyre, Esquire
410 Broad Street
Milford, Pennsylvania 18337
(570) 296-7300
Attorneys for Plaintiff

## VERIFICATION

I, JASON R. OHLIGER, ESQ., Attorney for Plaintiff, certify that I have prepared the

foregoing Complaint based upon information provided by my client and information obtained

through other sources, and that the facts contained therein are true and correct to the best of my

knowledge, information and belief.

I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. §

4904 relating to unsworn falsification to authorities.

_____

Jason R. Ohliger, Esquire

2022 JUN 27 PM 4: 19

ENTERED FOR RECORD
PIKE COUNTY, PA

PROTHONOTARY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY PENNSYLVANIA

MARY METZ SHAFFER, individually, :
and as the Administratrix of the Estate of :
Robert H. Shaffer, :
 :
   Plaintiff, :
 :  DOCKET NO.: 514-CV-2022
 :
vs. :
 :  JURY TRIAL DEMANDED
 :
Bayer Corporation, Monsanto Company, :
Lowe's Home Improvement, LLC, and :
John Does 1-5, :
 :
   Defendants. :
 :

## PRAECIPE TO SUBSTITUTE VERIFICATION

TO THE PROTHONOTARY:

 Kindly substitute the attached Verification executed by Plaintiff, Mary Metz Shaffer, as the Administratrix of the Estate of Robert Shaffer, for the Attorney Verification filed in the above-captioned matter.

      Jason R. Ohliger, Esq.
      Attorney for the Plaintiff

 The Plaintiff's Verification is hereby substituted.

Pike County Prothonotary    Date: 6-29-2022

## VERIFICATION

I, MARY METZ SHAFFER as the Administratrix of the Estate of Robert Schaffer, certify that I have read the foregoing Complaint and that the facts contained therein are true and correct to the best of my knowledge, information and belief.

I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

*Mary Metz Shaffer*

MARY METZ SHAFFER as the
Administratrix of the Estate of Robert
Shaffer

2022 JUN 29 PM 4:09

...D FOR RECORD
PIKE COUNTY, PA

OFFICE OF
PROTHONOTARY
CLERK OF COURTS