# U.S. District Court
## Northern District of Alabama (Eastern)
### CIVIL DOCKET FOR CASE #: 1:23-cv-00391-SGC

Harris et al v. Monsanto Company  
Assigned to: Magistrate Judge Staci G Cornelius  
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 03/24/2023  
Jury Demand: Plaintiff  
Nature of Suit: 365 Personal Inj. Prod. Liability  
Jurisdiction: Diversity

**Plaintiff**

**Sarah M Harris**  
*wife and Co-Executor of the Estate of Braxont B. Harris, Sr. , Deceased*

represented by **Douglas Brett Turnbull**  
TURNBULL LAW FIRM  
2 20th St. N. Suite 1600  
Suite 200  
Birmingham, AL 35203  
205-831-5040  
Email: bturnbull@turnbullfirm.com  
*LEAD ATTORNEY*  
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Braxton B Harris, Jr**  
*son, and Co-Executor of the Estate of Braxton B. Harris, Sr., deceased*

represented by **Douglas Brett Turnbull**  
(See above for address)  
*LEAD ATTORNEY*  
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/24/2023 | 1 | COMPLAINT against Monsanto Company, filed by Sarah M Harris, Braxton B Harris, Jr. (KAM) (Entered: 03/24/2023) |
| 03/24/2023 | 2 | Request for service by certified mail filed by Braxton B Harris, Jr, Sarah M Harris. (KAM) (Entered: 03/24/2023) |
| 03/27/2023 | | Filing Fee: Filing fee $ 402, receipt_number AALNDC-4302514. B-4440, related document 1 COMPLAINT against Monsanto Company, filed by Sarah M Harris, Braxton B Harris, Jr. (KAM). (Turnbull, Douglas) (Entered: 03/27/2023) |
| 03/27/2023 | 3 | NOTICE OF ASSIGNMENT of a case to a U. S. magistrate judge for trial. (CTF) (Entered: 03/27/2023) |
| 04/25/2023 | 4 | Summons Issued as to Monsanto Company. Plaintiff to serve. (CTF) (Entered: 04/25/2023) |

| 05/05/2023 | 5 | SUMMONS Returned Executed by Braxton B Harris, Jr. Monsanto Company served on 5/1/2023, answer due 5/22/2023. (Turnbull, Douglas) (Entered: 05/05/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/09/2023 12:28:34 | | | |
| **PACER Login:** | sh0019sh | **Client Code:** | 31943.356965 rhb |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00391-SGC |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SARAH M. HARRIS, wife and Co-Executor of the Estate of Braxton B. Harris, Sr., deceased<br><br>And<br><br>BRAXTON B. HARRIS, JR., son and Co-Executor of the Estate of Braxton B. Harris, Sr., deceased<br><br>Plaintiffs,<br>v.<br><br>MONSANTO COMPANY<br>Serve: CSC of St. Louis County, Inc.<br>      221 Bolivar Street<br>      Jefferson City, MO 65101<br><br>Defendant. | Case No. _____ |

# COMPLAINT

COME NOW Plaintiffs Sarah M. Harris and Braxton B. Harris, Sr., and for their claims and causes of action against Defendant Monsanto Company, states and alleges as follows:

1. Plaintiff Sarah M. Harris is a resident and citizen of the State of Alabama. Sarah M. Harris is the surviving wife of Braxton B. Harris, Sr. and co-executor of the Estate of Braxton B. Harris, Sr., deceased.

1

2. Plaintiff Braxton B. Harris, Jr. is a resident and citizen of the State of Alabama. Braxton B. Harris, Jr. is the surviving son of Braxton B. Harris, Sr. and the co-executor of the Estate of Braxton B. Harris, Sr., deceased.

3. At the time of his death, Braxton B. Harris, Sr. was a resident and citizen of the State of Alabama.

4. As the wife and co-executor of the Estate of Braxton B. Harris, Sr., Plaintiff Sarah M. Harris is the proper party to bring a claim for wrongful death of Braxton B. Harris, Sr.

5. As the son and co-executor of the Estate of Braxton B. Harris, Sr., Plaintiff Braxton B. Harris, Jr. is the proper party to bring a claim for wrongful death of Braxton B. Harris, Sr.

6. Defendant Monsanto Company ("Defendant") is a Delaware Corporation maintaining its principal place of business at 800 N. Lindbergh Blvd., St. Louis, Missouri 63167. Defendant is subject to service of process through its registered agent as indicated herein above.

7. At all times material hereto, Defendant designed, developed, manufactured, marketed, distributed, and/or sold a glyphosate herbicide product under the trade name Roundup.

8. This Court has subject matter jurisdiction in this case because complete diversity exists between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00.

9. This Court has jurisdiction over Defendant pursuant to Rule 4.2, Alabama Rules of Civil Procedure, in that Defendant transacted business and/or committed tortious acts within the State of Alabama from which Plaintiff's claims arise.

10. By manufacturing, distributing, and marketing Roundup and other glyphosate-based herbicides for use in the State of Alabama, Defendant has conducted business and has sufficient contact with the State of Alabama such that exercise of jurisdiction in this case does not offend traditional notions of fair play and substantial justice. The distribution sale and use of Roundup and other glyphosate-based herbicides manufactured, distributed and sold by Defendant was not a random or fortuitous event and, instead, was the result of systematic and continuous business activities of Defendant.

11. Venue is proper in that Plaintiffs allege tort claims, exposure and injury occurred in the Northern District of Alabama.

12. From approximately 1980 to 2020, Braxton B. Harris, Sr. was exposed to glyphosate products such as Roundup that were designed manufactured and sold by Defendant. Braxton B. Harris, Sr. was exposed through spraying,

3

handling, and use of Roundup and other glyphosate products manufactured by Defendant in the gardens and grounds that he maintained around his homes and business properties located in or near Anniston, Alabama.

13. Based upon information provided to Braxton B. Harris, Sr. from, among other sources, Monsanto marketing materials, he believed Roundup and other glyphosate-based herbicides manufactured by Defendant to be safe for its intended use. Braxton B. Harris, Sr. was not provided information to suggest Roundup, or other glyphosate-based herbicides, posed a risk of cancer such as non-Hodgkin's lymphoma (NHL)

14. Exposure to Roundup and glyphosate-based herbicides can cause disease in humans, including the development of NHL.

15. On or about May 5, 2020, Braxton B. Harris, Sr. was diagnosed with follicular lymphoma, a form of NHL.

16. Braxton B. Harris, Sr. died as a result of follicular lymphoma on March 25, 2021.

17. The exposure to Roundup and glyphosate-based herbicides designed, manufactured and sold by Defendant caused, or contributed to cause, Braxton B. Harris, Sr. to develop follicular lymphoma.

18. The exposure to Roundup and glyphosate-based herbicides designed, manufactured and sold by Defendant caused, or contributed to cause, the death of Braxton B. Harris, Sr.

19. At all times when he was using and exposed to Roundup and other glyphosate-based herbicides, Braxton B. Harris, Sr. was unaware that exposure to these products could cause development of cancer such as follicular lymphoma.

20. Defendant knew, or should have known, of the hazardous nature of Roundup and glyphosate-based herbicides both at the time of sale and when Braxton B. Harris, Sr. was exposed to the product while working with and using these products on his property and in his garden. Notwithstanding, Defendant failed to warn of the defective nature of Roundup and glyphosate-based products and failed to give adequate instructions on the safe use of Roundup and glyphosate-based products.

### Count I
### Strict Liability Design Defect Under the Alabama
### Extended Manufacturer Liability Doctrine

21. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

22. At all times material hereto, Defendant sold Roundup and other glyphosate-based products within the ordinary course of business.

5

23. When Braxton B. Harris, Sr. was exposed to Roundup and glyphosate-based herbicides while working at his home garden and spraying weeds on properties that he owned, the product was being used without substantial change and in a manner reasonably anticipated by Defendant.

24. At the time of the manufacture, distribution, sale and/or use of the Roundup and glyphosate-based products used by Braxton B. Harris, Sr., said products were in a defective condition unreasonably dangerous and not fit for the ordinary purpose for which they were intended when put to the use anticipated by Defendant in that they had the propensity to cause cancer, including follicular lymphoma.

25. At the time of the manufacture, distribution, sale and/or use of the Roundup and glyphosate-based products used by Braxton B. Harris, Sr., said products did not meet the ordinary expectations of an ordinary consumer such as Braxton B. Harris, Sr., in that the products had the propensity to cause cancer, including follicular lymphoma.

26. At the time Defendant designed, manufactured distributed and sold Roundup and other glyphosate-based herbicides used by Braxton B. Harris, Sr., safer alternative designs for such products were available and the utility of those alternative design products outweighed the design of glyphosate-based products

in that the alternative designs did not have the propensity to cause cancers such as follicular lymphoma.

27. The unreasonably dangerous and defective condition of the Roundup and glyphosate-based products designed, developed, marketed, distributed and/or sold by Defendant, and the failure to warn of the dangers thereof, caused or contributed to cause Braxton B. Harris, Sr. to develop follicular lymphoma.

28. Roundup and glyphosate-based products designed, developed, marketed, distributed and/or sold by Defendant, and the failure to warn of the dangers thereof, caused or contributed to cause Braxton B. Harris, Sr. to develop follicular lymphoma.

29. The unreasonably dangerous and defective condition of the Roundup and glyphosate-based products designed, developed, marketed, distributed and/or sold by Defendant, and the failure to warn of the dangers thereof, caused or contributed to cause the death of Braxton B. Harris, Sr.

30. The unreasonably dangerous and defective condition of the Roundup designed, developed, marketed, distributed and/or sold by Monsanto, with or without the failure to warn of the dangers thereof, caused or contributed to cause Braxton B. Harris, Sr. to suffer physical pain, mental and emotional distress, loss of enjoyment of life, and to incur medical expenses for treatment, medication, and medical devices.

31. At the time Defendant designed, manufactured and sold Roundup and other glyphosate-based herbicides, it knew, or should have known of the propensity to cause cancer. Defendant designed, manufactured and sold Roundup and glyphosate-based products without disclosing the results of testing and studies of Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants.

32. At the time Defendant designed, manufactured and sold Roundup and other glyphosate-based herbicides, it provided incorrect or inaccurate information and/or mis-information to users of Roundup and the scientific community regarding the health effects of exposure to Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants.

33. Based upon the culpable conduct of Defendant in this instance and the need to deter this Defendant and other similar defendants from engaging in similar conduct, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendant Monsanto Company in an amount in excess of the jurisdictional limit as determined by a jury and for the costs of this action, and for such further relief deemed fair and just under the circumstances.

### Count II
### Strict Liability Failure to Warn Under the Alabama
### Extended Manufacturer Liability Doctrine

8

34. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

35. Defendant designed, developed, manufactured, distributed, marketed, sold and/or supplied Roundup and glyphosate-based herbicides without adequate instructions and/or warnings on safe use to reduce and/or eliminate exposure thereto, and/or without adequate warnings that the products were dangerous to health and life and capable of causing cancer including follicular lymphoma.

36. As a result of Defendant's failure to adequately instruct and/or warn of the dangerous characteristics of Roundup and glyphosate-based products, the products were defective and unreasonably dangerous when put to the use reasonably anticipated by Defendant.

37. The unreasonably dangerous and defective condition of the Roundup and glyphosate-based products designed, developed, manufactured, marketed, distributed and/or sold by Defendant and the failure to warn of those dangers and/or provide adequate instructions, caused or contributed to cause Braxton B. Harris, Sr. to develop follicular lymphoma.

38. The unreasonably dangerous and defective condition of the Roundup and glyphosate-based products designed, developed, manufactured, marketed, distributed and/or sold by Defendant and the failure to warn of those dangers

9

and/or provide adequate instructions, caused or contributed to cause the death of Braxton B. Harris, Sr.

39. The unreasonably dangerous and defective condition of Roundup and glyphosate-based products and the failure to warn of those dangers, caused or contributed to cause Braxton B. Harris, Sr. to suffer physical pain, mental and emotional distress, loss of enjoyment of life, and caused him to incur medical expenses for treatment, medication, and medical devices.

40. At the time Defendant designed, manufactured and sold Roundup and other glyphosate-based herbicides, it knew, or should have known of the propensity to cause cancer. Defendant designed, manufactured and sold Roundup and glyphosate-based products without disclosing the results of testing and studies of Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants.

41. At the time Defendant designed, manufactured and sold Roundup and other glyphosate-based herbicides, it provided incorrect or inaccurate information and/or mis-information to users of Roundup and the scientific community regarding the health effects of exposure to Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants.

42. Based upon the culpable conduct of Defendant in this instance and the need to deter this Defendant and other similar defendants from engaging in similar conduct, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs prays for judgment against Defendant Monsanto Company in an amount in excess of the jurisdictional limit as determined by a jury and for the costs of this action, and for such further relief deemed fair and just under the circumstances.

### Count III
### Negligence

43. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

44. As a designer, developer, manufacturer, marketer, distributor, and seller of Roundup and other glyphosate-based herbicides, Defendant had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of processors, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to acquire and maintain the knowledge of an expert, in processing, distribution, marketing, sale, and/or supply of products free from defects and/or latent defects;

11

and the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products.

45. Defendant breached its duty of care in one or more of the following ways:

   a. Designing, developing, manufacturing, marketing, distributing and selling Roundup and glyphosate-based products without properly testing the product;

   b. Designing, developing, manufacturing, marketing, distributing and selling Roundup and glyphosate-based products without disclosing the results of testing and studies of Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants;

   c. Providing incorrect or inaccurate information and/or mis-information to users of Roundup and the scientific community regarding the health effects of exposure to Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants;

   d. Designing, developing, manufacturing, marketing, distributing and selling Roundup and glyphosate-based products that included an ingredient that could cause cancer in persons using the product as intended;

12

e. Designing, developing, manufacturing, marketing, distributing and selling Roundup and glyphosate-based products without adequate warnings and instructions;

f. Failing to disclose the risk of cancer to users of the product;

g. Representing that Roundup and glyphosate-based products were safe for use; and

h. In other respects that are unknown at this time but may be determined through discovery in this case.

46. Defendant failed to use due care under the circumstances and was thereby negligent in the performance of its duties to Braxton B. Harris, Sr.

47. The negligent conduct of Defendant caused, or contributed to cause, Braxton B. Harris, Sr. to develop follicular lymphoma.

48. The negligent conduct of Defendant caused, or contributed to cause, the death of Braxton B. Harris, Sr.

49. The negligent conduct of Defendant caused or contributed to cause Braxton B. Harris, Sr. to suffer physical pain, mental and emotional distress, loss of enjoyment of life, and caused him to incur medical expenses for treatment, medication, and medical devices.

50. At the time Defendant designed, manufactured and sold Roundup and other glyphosate-based herbicides, it knew, or should have known of the

13

propensity to cause cancer. Defendant designed, manufactured and sold Roundup and glyphosate-based products without disclosing the results of testing and studies of Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants.

51. At the time Defendant designed, manufactured and sold Roundup and other glyphosate-based herbicides, it provided incorrect or inaccurate information and/or mis-information to users of Roundup and the scientific community regarding the health effects of exposure to Roundup and/or its ingredients, including glyphosate, surfactants and/or adjuvants.

52. Based upon the culpable conduct of Defendant in this instance and the need to deter this Defendant and other similar defendants from engaging in similar conduct, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendant Monsanto Company in an amount in excess of the jurisdictional limit as determined by a jury and for the costs of this action, and for such further relief deemed fair and just under the circumstances.

## DEMAND FOR JURY TRIAL

53. Plaintiffs demand a trial by jury for all issues herein.

14

Respectfully submitted,

TURNBULL, HOLCOMB & LEMOINE, PC

*/s/ Douglas Brett Turnbull*
Douglas Brett Turnbull
Turnbull Law Firm, P.C.
2101 6th Avenue N., Ste. 1100
Birmingham, AL 35203
P: (205) 831-5040
F: (205) 848-6300
E: bturnbull@turnbullfirm.com

And

HUMPHREY, FARRINGTON & McCLAIN, P.C.

KENNETH B. McCLAIN *(to be admitted via PHV)*
KEVIN D. STANLEY     *(to be admitted via PHV)*
221 W. Lexington, Suite 400
Independence, Missouri 64050
kbm@hfmlegal.com
kds@hfmlegal.com
(816) 836-5050
(816) 836-8966 (FAX)

**ATTORNEYS FOR PLAINTIFFS**

**TO CLERK:  PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:**

MONSANTO COMPANY
Serve: CSC of St. Louis County, Inc.
       221 Bolivar Street
       Jefferson City, MO 65101

15