**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

# U.S. District Court
## Eastern District of Louisiana (New Orleans)
## CIVIL DOCKET FOR CASE #: 2:23-cv-02653-GGG-DPC

Mistich et al v. Monsanto Company et al
Assigned to: Judge Greg Gerard Guidry
Referred to: Magistrate Judge Donna Phillips Currault
Case in other court: Civil District Court for Orleans Parish, 21-04605
Cause: 28:1332 Diversity-Product Liability

Date Filed: 07/21/2023
Jury Demand: Defendant
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Janeiece Yvonne Mistich**                represented by   **Janeiece Yvonne Mistich**
                                                            PRO SE

**Plaintiff**

**Russell Mistich**                        represented by   **Russell Mistich**
                                                            PRO SE

**Plaintiff**

**Christine Howell**                       represented by   **Christine Howell**
                                                            PRO SE

**Plaintiff**

**Christopher Mistich**                    represented by   **Christopher Mistich**
                                                            PRO SE

**Plaintiff**

**Jeffery Raymond Mistich**                represented by   **Jeffery Raymond Mistich**
                                                            PRO SE

**Plaintiff**

**Raymond Mistich**                        represented by   **Raymond Mistich**
                                                            PRO SE

V.

**Defendant**

**Monsanto Company**                       represented by   **Shaun P McFall**
                                                            Barrasso, Usdin, Kupperman, Freeman & Sarver, LLC
                                                            LL&E Tower
                                                            909 Poydras St.
                                                            Suite 2350
                                                            New Orleans, LA 70112
                                                            504-589-9700

Email: smcfall@barrassousdin.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Harry's Hardware Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2023 | 1 | NOTICE OF REMOVAL with jury demand from Civil District Court for Orleans Parish, case number 2021-4605 (Filing fee $ 402 receipt number ALAEDC-10040684) filed by Monsanto Company. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Exhibit 1- State Court Record, # 3 Exhibit Exhibit 2 - Death Certificate, # 4 Exhibit Exhibit 3 - Depo, # 5 Exhibit Exhibit 4 - Declaration, # 6 Exhibit Exhibit 5 - Depo, # 7 Proposed Pleading Notice to Adverse Party)Attorney Shaun P McFall added to party Monsanto Company(pty:dft). (McFall, Shaun) (Entered: 07/21/2023) |
| 07/21/2023 | 2 | NOTICE OF REMOVAL with jury demand from Civil District Court for Orleans Parish, case number 2021-4605 (Fee previously paid) filed by Monsanto Company. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1 - State Court Pleadings, # 3 Exhibit 2 - death certificate, # 4 Exhibit 3 - Jeffery Mistich depo, # 5 Exhibit 4 - Booker Declaration, # 6 Exhibit 5 - Janeiece Mistich depo, # 7 Proposed Pleading Notice of Removal to Adverse Party)(McFall, Shaun) (Entered: 07/21/2023) |
| 07/21/2023 | 3 | Initial Case Assignment to Judge Greg Gerard Guidry and Magistrate Judge Donna Phillips Currault. (kls) (Entered: 07/21/2023) |
| 07/21/2023 | 4 | Statement of Corporate Disclosure by Monsanto Company identifying Corporate Parent Bayer AG, Corporate Parent Monsanto Company for Monsanto Company (McFall, Shaun) (Entered: 07/21/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/21/2023 18:30:53 | | |
| **PACER Login:** | sh0019sh | **Client Code:** | 31943.356965 rhb |
| **Description:** | Docket Report | **Search Criteria:** | 2:23-cv-02653-GGG-DPC |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

RAYMOND MISTICH                                 CIVIL ACTION NO. 2:23-cv-02653

              Plaintiff,                   JUDGE:

VERSUS                                          MAGISTRATE JUDGE:

MONSANTO COMPANY, ET AL

           Defendants.

## DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws),
defendant Monsanto Company ("Monsanto") hereby gives notice of removal of this action,
captioned *Raymond Mistich v. Monsanto Company, et al.*, No. 2021-4605, from the Civil District
Court for the Parish of Orleans, Louisiana to this Court.[1]  Pursuant to 28 U.S.C. § 1446(a),
Monsanto provides the following statement of grounds for removal.

## INTRODUCTION

1.      In this products liability lawsuit, Raymond Mistich initially sued, and his widow
and adult children (collectively, "Plaintiffs") are now suing, Monsanto for injuries allegedly
caused by its Roundup®-branded herbicides, which have glyphosate as their active ingredient.
For decades, farmers have used glyphosate-based herbicides to increase crop yields, and home-
owners, landscaping companies, and local government agencies have used these herbicides for
highly effective weed control.  Glyphosate is one of the most thoroughly studied herbicides in
the world, and glyphosate-based herbicides have received regulatory approval in more than 160

---

[1] As discussed below, the original plaintiff (Raymond Mistich) died after he filed this lawsuit.
Thereafter, his family members (widow, adult children) were added as plaintiffs to this lawsuit
by supplements and amendments to the pleadings.

countries.  Since 1974, when Monsanto first introduced a Roundup®-branded herbicide to the marketplace, the United States Environmental Protection Agency ("EPA") repeatedly has concluded that glyphosate does not cause cancer and repeatedly has approved labeling for Roundup®-branded herbicides without a cancer warning.  Nevertheless, Raymond Mistich alleged that he developed cancer – specifically, cutaneous T-cell lymphoma, a type of non-Hodgkin's lymphoma ("NHL") – caused by exposure to Monsanto's Roundup®-branded herbicides, and Plaintiffs are alleging that such exposure caused Raymond Mistich's cancer and death.

2.  This is one of many lawsuits that have been filed against Monsanto involving Roundup®-branded herbicides.  A multidistrict litigation ("MDL") proceeding is pending in the United States District Court for the Northern District of California, before the Honorable Vince G. Chhabria, pursuant to 28 U.S.C. § 1407.  *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.); *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, 214 F. Supp. 3d 1346 (J.P.M.L. 2016).  This case properly belongs in federal court – and, more specifically, in the federal court presiding over the *Roundup* MDL proceeding.

3.  Before his death, Raymond Mistich was a Louisiana citizen, and Plaintiffs are citizens of Louisiana and/or Florida, so there is complete diversity of citizenship based on Monsanto's citizenship (Delaware and Missouri).  Raymond Mistich tried to avoid complete diversity and defeat Monsanto's right to remove this lawsuit to federal court by asserting claims against a Louisiana defendant, Harry's Hardware, Inc. ("Harry's Hardware").  However, that strategy fails because the three claims asserted against Harry's Hardware are not viable, so that defendant has been improperly joined.  First, the Louisiana Product Liability Act ("LPLA") failure-to-warn claim fails because Harry's Hardware was merely a retail seller of Roundup®-

branded herbicides and was not a "manufacturer" of those products within the meaning of the LPLA. Second, the negligence claim fails because Harry's Hardware did not have actual or constructive knowledge, during the period relevant for this lawsuit (by or before 1991), of the alleged defect – that Roundup®-branded herbicides cause cancer. Third, the pre-LPLA "Professional Vendor" claim fails because Harry's Hardware never held Roundup®-branded herbicides out to the public as Harry's Hardware's own products and Harry's Hardware did not control the quality of Roundup®-branded herbicides, so it was not a professional vendor of those products under Louisiana law.

4. This Notice of Removal is timely because it is being filed within 30 days of Monsanto's receipt of the "other paper," 28 U.S.C § 1446(b)(3) – namely, the deposition transcript and/or the declaration discussed below that show that Harry's Hardware was fraudulently joined – "from which it may first be ascertained that [this] case is one which is or has become removable," *id*. Moreover, this removal is not barred by the one-year limitation on removals addressed in 28 U.S.C. § 1446(c)(1) because, as discussed below, Raymond Mistich and Plaintiffs "acted in bad faith in order to prevent a defendant [*i.e.*, Monsanto] from removing th[is] action," § 1446(c)(1).

5. As discussed in more detail below, this Court has subject matter jurisdiction based on diversity of citizenship because Harry's Hardware (the only defendant other than Monsanto) has been improperly joined, which means that the Court is required to disregard the presence of that defendant when the Court evaluates the issue of diversity jurisdiction and the propriety of this removal.

## BACKGROUND AND PROCEDURAL HISTORY

6.      On May 28, 2021, Raymond Mistich commenced this lawsuit in the Civil District Court for the Parish of Orleans, Louisiana by filing a Petition for Damages ("Petition"), captioned *Raymond Mistich v. Monsanto Company, et al.*, No. 2021-4605 (the "State Court Action"). That Petition was served on Monsanto on June 9, 2021. On June 23, 2021, before any answers were due or had been filed, Raymond Mistich amended the Petition by filing a "First Supplement and Amendment to the Original Petition for Damages" ("First Amendment to Petition"). Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Petition and other pleadings, process, and orders served upon Monsanto in the State Court Action are attached collectively as Exhibit 1.

7.      The Petition sought damages for cancer allegedly caused by exposure to Monsanto's Roundup®-branded, glyphosate-based herbicides. *See, e.g.*, Petition ¶¶ 6-7, 96, 117. The Petition alleged that Raymond Mistich's cancer was diagnosed in 2021. *Id.* ¶ 7.

8.      The Petition alleged that Raymond Mistich purchased Roundup®-branded herbicides from Harry's Hardware stores "between 1980-1991." Petition ¶ 7. Raymond Mistich initially asserted two claims against Harry's Hardware – a negligence claim and a Louisiana Product Liability Act ("LPLA") failure-to-warn claim. *Id.* ¶¶ 119-55.

9.      In his First Amendment to Petition, Raymond Mistich added an allegation regarding when he purchased Roundup®-branded herbicides from Harry's Hardware. That pleading alleged that he "purchased Roundup from Harry's Hardware in 2019, which was still selling cancer causing Roundup, after Harry's Hardware was sued for this product in *Yvette D'Aunoy v. Monsanto Company, Et Al*, Case No. 2019-10100, Orleans Parish Civil District Court." First Amendment to Petition ¶ 161 (included in Exhibit 1). Raymond Mistich also

added another claim against Harry's Hardware – a pre-LPLA "Professional Vendor" claim.  *Id*.
¶¶ 159-68.

10.     After Raymond Mistich died in May 2022 (without having been deposed), the
pleadings in the State Court Action were amended to add wrongful death and survival action
claims by his surviving wife and adult children.  *See* Plaintiff's Second Supplemental [*sic*] and
Amendment to the Original Petition for Damages and Incorporated Motion for Leave (included
in Exhibit 1); Plaintiff's Third Supplemental [*sic*] and Amendment to the Original Petition for
Damages and Incorporated Motion for Leave (included in Exhibit 1).  These amendments did not
include any new or different allegations regarding Raymond Mistich's purchases of Roundup®-
branded herbicides from Harry's Hardware.

11.     Fact discovery has been completed in the State Court Action.  The deadline for
the completion of fact discovery was July 14, 2023.  *See* May 8, 2023 Case Management Order
(included in Exhibit 1).

12.     Monsanto took the deposition of Raymond Mistich's widow, Plaintiff Janeiece
Mistich.  As discussed in more detail below, that deposition testimony provided new information
regarding when Raymond Mistich actually purchased Roundup®-branded herbicides from
Harry's Hardware and contradicted the allegation in the First Amendment to Petition regarding
that issue.

## BASIS FOR REMOVAL – DIVERSITY JURISDICTION

**I.  The Requirement for Complete Diversity of Citizenship is Satisfied.**

13.     Raymond Mistich was born in, and died at his home in, Mandeville, Louisiana.
Death Certificate (attached as Exhibit 2).  At the time the State Court Action was filed and before
his death, Raymond Mistich was a resident and citizen of the State of Louisiana.  *See id*.; Petition

¶ 1.  Plaintiffs Janeiece Mistich, Russell Mistich, Christine Howell, and Christopher Mistich are, and have been since their claims were added to this lawsuit, residents and citizens of the State of Louisiana.  Plaintiff's Second Supplemental [*sic*] and Amendment to the Original Petition for Damages and Incorporated Motion for Leave.  Plaintiff Jeffery Mistich is, and has been since his claims were added to this lawsuit, a resident and citizen of the State of Louisiana and/or the State of Florida.  Plaintiff's Third Supplemental [*sic*] and Amendment to the Original Petition for Damages and Incorporated Motion for Leave; Jeffery Mistich Deposition Transcript at 5:25-6:1 (attached as Exhibit 3).

14.     Monsanto is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Missouri.  Petition ¶ 10.  Accordingly, Monsanto is deemed to be a citizen of Missouri and Delaware for purposes of federal diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

15.     As discussed below, the citizenship of defendant Harry's Hardware must be disregarded because that defendant has been improperly joined.

16.     The improper joinder doctrine is an exception to the general rule that complete diversity of citizenship is required for a federal court to have diversity-based subject matter jurisdiction.  "[A] defendant may remove by showing that the nondiverse party was joined improperly."  *Serrano v. Otis Elevator Co.*, Civil Action No. 16-15460, 2017 WL 479576, at *2 (E.D. La. Feb. 6, 2017).  When a nondiverse defendant has been improperly joined, that defendant's citizenship is disregarded when a court assesses whether diversity jurisdiction exists.  *See, e.g.*, *id.* at *6-7 (disregarding citizenship of improperly joined nondiverse defendant and holding that diversity jurisdiction exists).  Improper joinder also renders the so-called "forum defendant rule" inapplicable because that statutory provision applies only to "properly joined"

defendants. 28 U.S.C. § 1441(b)(2).[2]

17.     To establish improper joinder, the removing defendant is required to show that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).[3] This standard – "whether there is arguably a reasonable basis for predicting that state law might impose liability" – "means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (emphasis in original); *see Smallwood*, 385 F.3d at 573 n.9 ("A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000))).

18.     Moreover, as the removing defendant, Monsanto is not bound by the allegations in Plaintiffs' pleadings and can present removal arguments based on affidavits or declarations and other evidence. *See, e.g.*, *Gulotta v. GE Capital Modular Space*, No. Civ.A. 03-1669, 2003 WL 21991717, at *1 (E.D. La. Aug. 19, 2003) (citing *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994)). A defendant is allowed to remove based on the improper joinder doctrine "by piercing the pleadings in a summary judgment type procedure" and showing that "there is no arguably reasonable basis for predicting that the plaintiff would produce sufficient evidence to sustain a finding necessary to recover against [the local] defendant." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 545 (5th Cir. 2004). As the Fifth Circuit stated, "[w]ere this not the rule, the

---

[2] A lawsuit that is "otherwise removable solely on the basis of [diversity of citizenship] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

[3] Although the Fifth Circuit stated in 2004 that the term "improper joinder" is "preferred," the court recognized that "there is no substantive difference" between that term and the term "fraudulent joinder" that has been used by other courts. *Smallwood*, 385 F.3d at 571 n.1.

removal rights of out-of-state defendants would largely be theoretical and practically meaningless." *Id.* at 545-46; *see Augustine v. Employers Mut. Cas. Co.*, No. 2:08-cv-1102, 2010 WL 4930317, at *12 (W.D. La. Nov. 30, 2010) ("We routinely consider summary judgment-type evidence to determine whether there has been proper joinder of a defendant, whether that issue is considered in the context of whether diversity exists or whether the consent of a non-diverse co-defendant is necessary.").

19.     Plaintiffs assert three causes of action against Harry's Hardware: (A) an LPLA failure-to-warn claim; (B) a common law negligence claim; and (C) a pre-LPLA "Professional Vendor" claim.  As discussed below, these claims are not viable because there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover on any of those claims against Harry's Hardware.[4]

A.     Plaintiffs Do Not Have a Viable LPLA Claim Against Harry's Hardware.

20.     Under the LPLA, a "***manufacturer*** of a product" can be held liable for damages caused by that product in certain circumstances addressed in the LPLA.  *Alexander v. Toyota Motor Sales, U.S.A.*, 123 So.3d 712, 714 (La. 2013) (quoting La. R.S. § 2800.54(A)) (emphasis added).  The "LPLA does not provide a cause of action against sellers of products not falling under the LPLA's definition of 'manufacturer.'"  *Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 245 (5th Cir. 2014) (quoting La. R.S. § 2800.53).

---

[4] The three substantive claims at issue here are asserted by Plaintiffs in the context of wrongful death and/or survival action claims, but that does not change the underlying elements of those three substantive claims because wrongful death and survival action claims arise from a common tort and are based on the substantive claim(s) that the decedent had (or did not have) when the decedent died.  *See Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993); *Lennie v. Exxon Mobil Corp.*, 251 So.3d 637, 649-50 (La. Ct. App. 2018).  In other words, if the three claims asserted against Harry's Hardware are not viable, then the fact that they are being asserted in the context of wrongful death and/or survival action claims does not change the conclusion that those three claims are not viable.

21.     As defined in the LPLA, a "[m]anufacturer" is "a person or entity who is in the business of manufacturing a product for placement into trade or commerce," and "[m]anufacturing a product" means "producing, making, fabricating, constructing, designing, remanufacturing, reconditioning, or refurbishing a product."  La. R.S. § 2800.53(1).

22.     The Declaration of Cary Becker (President of Harry's Hardware) establishes that Harry's Hardware has owned and operated hardware stores but has never been a manufacturer under the LPLA.  Declaration of Cary Becker ¶¶ 4, 9 ("Becker Declaration") (attached as Exhibit 4); *accord* Petition ¶ 7 (alleging that Raymond Mistich purchased Roundup®-branded herbicides at Harry's Hardware stores in New Orleans).  Harry's Hardware had no involvement with – and had no control over – the process of developing, designing, researching, testing, inspecting, manufacturing, or packaging Roundup®-branded herbicides.  Becker Declaration ¶ 9.  Harry's Hardware had no involvement with – and had no control over – the decision that was made to select glyphosate as an ingredient in Roundup®-branded herbicides or any other decisions that were made as to which ingredients should be included in the various formulations of Roundup®-branded herbicides that Monsanto has developed and manufactured since these herbicides became available for sale in the 1970's.  *Id.*  Harry's Hardware had no involvement with – and had no control over – the process of deciding what warnings or other statements would be made on the labels of Roundup®-branded herbicides.  *Id.*

23.     Thus, Monsanto, not Harry's Hardware, was the manufacturer of Roundup®-branded herbicides.  As established above, Harry's Hardware was a mere conduit for Roundup®-branded herbicides – *i.e.*, selling products manufactured by Monsanto without exercising any control over the manufacturing process, the ingredients, or the content of warnings or other statements made on the labeling for these products.  In this case, "[t]here are no facts asserted [in

the pleadings] which would support a finding that [Harry's Hardware] manufactured the product[s] in question." *Strickland v. Brown Morris Pharmacy, Inc.*, Civ. A. No. 96-815, 1996 WL 537736, at *2 (E.D. La. Sept. 20, 1996) (denying remand motion and holding that pharmacy was improperly joined).[5]

24.     Because Harry's Hardware does not qualify as a "manufacturer" of Roundup®-branded herbicides within the meaning of the LPLA definition discussed above, Harry's Hardware was a "non-manufacturing seller" of those products under Louisiana law. Accordingly, Plaintiffs clearly do not have a viable LPLA claim against Harry's Hardware. *See, e.g.*, *Ayala*, 569 F. App'x at 245 (holding that retailer defendant Gabriel was improperly joined and affirming denial of plaintiff's remand motion; stating: "Gabriel is a non-manufacturing seller of the [allegedly defective product]. Thus, [plaintiff] cannot allege a viable cause of action against Gabriel under the LPLA.").[6]

---

[5] The Petition does not directly allege that Harry's Hardware manufactured Roundup®-branded herbicides, but certain conclusory allegations – mere legal conclusions made without any factual support – assert that Harry's Hardware had the duties of a manufacturer. *See* Petition ¶ 123 ("Harry's Hardware had a duty to properly test, develop, design, manufacture, inspect, package, [and] label" Roundup®-branded herbicides). Of course, it is absurd to claim that a hardware store had those kinds of duties with respect to herbicides that the store did not manufacture, as made clear in the Becker Declaration. This Court is not required to – and should not – accept Plaintiffs' conclusory allegations or legal conclusions. *See Strickland*, 1996 WL 537736, at *2 ("All the plaintiff has done in her petition is make conclusory allegations or legal conclusions put forward as factual findings which do not go toward establishing a cause of action [against the pharmacy]."); *see also, e.g.*, *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD), 2003 WL 22331294, at *5 (D. Minn. May 19, 2003) (denying remand motion and stating that "[c]onclusory allegations . . . will not defeat a finding of fraudulent joinder" (citing, *inter alia*, *Strickland*, 1996 WL 537736, at *2)).

[6] Although the LPLA includes other definitions of "manufacturer," La. R.S. § 2800.53(1)(a)-(d), none of them apply here. Harry's Hardware never labeled Roundup®-branded herbicides as its own products; never exercised control over or influenced a characteristic of the design, construction, or quality of Roundup®-branded herbicides; never manufactured these herbicides by incorporating into them a component or part manufactured by another manufacturer; never had a contractual relationship with Monsanto related to Roundup®-branded herbicides; and never imported these herbicides or distributed them for re-sale. *See* Becker Declaration ¶ 10.

B.    Plaintiffs Do Not Have A Viable Negligence Claim Against Harry's Hardware.

25.    Under Louisiana law, a non-manufacturing seller "is not liable for damages in negligence unless it knew or should have known that the product sold was defective and failed to declare it." *Diaz v. Goodyear Tire and Rubber Co.*, Civil Action No. 07-353-FJP-CN, 2008 WL 4528186, at *6 (M.D. La. Oct. 1, 2008) (citing *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408 (5th Cir. 1993)); *see Alexander*, 123 So.3d at 714 (stating that, for non-manufacturing seller to be held liable, it "must have had actual or constructive knowledge that the product it sold was defective" and "failed to declare the defect"); *Kelley*, 992 F.2d at 1413-14 (distinguishing between strict liability claims against manufacturers and negligence claims against non-manufacturing sellers; stating that "the seller of a defective product may be liable in tort if he knew or should have known that the product was defective, and he failed to declare it").

26.    Under Louisiana law, non-manufacturing sellers are not held to high standards regarding their knowledge of the products they sell. For example, "a non-manufacturing seller of a product is not presumed to have knowledge of a product's vices." *Brown v. Johnson & Johnson, Inc.*, Civil Action No. 15-2308, 2015 WL 6128706, at *2 (E.D. La. Oct. 16, 2015) (quoting *Diaz*, 2008 WL 4528186, at *6); *Kelley*, 992 F.2d at 1414 ("the seller is not presumed to have knowledge of a product's vices"). Moreover, a "seller is not required . . . to inspect a product prior to sale to determine the possibility of inherent vices or defects ***which are not apparent***." *Kelley*, 992 F.2d at 1414 (emphasis added); *see Nelton v. Astro-Lounger Mfg. Co.*, 542 So.2d 128, 131 (La. Ct. App. 1989) ("[A] non-manufacturer seller is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects." (quotation marks omitted)); *see also Diaz,* 2008 WL 4528186, at *6 (citing *Kelley*, 992 F.2d at 1414-15); *Strickland*, 1996 WL 537736, at *2 (citing *Nelton*, 542 So.2d at 131).

27.     The "defect" alleged in this lawsuit is that Roundup®-branded herbicides and/or glyphosate cause cancer.  Monsanto denies that there is any causal connection between exposure to these products and cancer, but, even if there were such a connection, it would be a latent defect – *i.e.*, a defect that is "not apparent" to a retailer like Harry's Hardware that merely sold Roundup®-branded herbicides.

28.     Harry's Hardware did not have actual or constructive knowledge of that purported defect before or during the period that Raymond Mistich allegedly purchased Roundup®-branded herbicides from the store.  As discussed below, his last such purchase occurred no later than 1991.  *See infra* Paragraphs 42-43.

29.     ***First***, by or before 1991, Harry's Hardware did not have knowledge that there was an alleged causal connection – let alone an actual causal connection – between Roundup®-branded herbicides and cancer.  Becker Declaration ¶ 12.  Throughout the period that Harry's Hardware sold Roundup®-branded herbicides, they were approved by the federal agency that regulates those products – the Environmental Protection Agency ("EPA") – with EPA-approved labeling that does not include any cancer warnings.  *Id.* ¶ 13.  In deciding to sell Roundup®-branded herbicides, Harry's Hardware relied on the EPA's ongoing regulatory determination that these herbicides are approved for sale to the public without a cancer warning.  *Id.*

30.     Moreover, the pleadings do not contain any factual allegations to support the conclusion that Harry's Hardware had actual knowledge, by or before 1991, of the purported defect (carcinogenicity of Roundup®-branded herbicides).  Many of the factual allegations – including allegations regarding Monsanto's (not Harry's Hardware's) alleged knowledge and Monsanto's (not Harry's Hardware's) alleged misconduct – involve events that allegedly occurred years after 1991.  *See, e.g.*, Petition ¶¶ 16-18, 50-62 (allegations regarding 2015

events), ¶¶ 42-43 (allegations regarding 1996 events), 45 (allegations regarding 2009 event), 65 (allegations regarding 1995 event), 66 (allegations regarding 2014 event).  And, to the extent that some factual allegations address events that allegedly occurred before 1991, those allegations involve Monsanto – not Harry's Hardware – and there are no factual allegations to show that Harry's Hardware had any knowledge of those events.  Plaintiffs present nothing more than conclusory, boiler-plate allegations about Harry's Hardware's actual knowledge that lack any factual support.  *See, e.g.*, *id.* ¶¶ 144 (alleging that, at all relevant times, Harry's Hardware "knew . . . of the hazards and dangers of Roundup® and specifically, the carcinogenic properties of the chemical glyphosate"), 145 (alleging that, at all relevant times, Harry's Hardware "knew . . . that use of or exposure to its Roundup® products could cause or be associated with Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff").  Those conclusory, unsupported allegations fail to establish that Plaintiffs have a viable negligence claim against Harry's Hardware.  *See Strickland*, 1996 WL 537736, at \*2; *In re Baycol*, 2003 WL 22331294, at \*5.

31.    Moreover, the litany of allegations in the Petition regarding concealment, failures to warn, and other misconduct by Monsanto directly undermine any argument that Harry's Hardware had actual knowledge, during the relevant period (by or before 1991), that Roundup®-branded herbicides and/or glyphosate cause cancer.  Although Monsanto denies these allegations, the Petition is replete with accusations that Monsanto engaged in a decades-long cover-up that fraudulently concealed the dangers of Roundup®-branded herbicides, including allegedly "champion[ing] falsified data and attack[ing] legitimate studies that revealed [these herbicides'] dangers" and allegedly leading "a prolonged campaign of misinformation to convince government agencies, farmers, and the general population that Roundup® was safe."

Petition ¶ 23; *see also id.* ¶¶ 20, 32-38, 42-45, 72-77, 95, 104-05, 110-12.  Plaintiffs also allege that "the true character, quality, and nature of Roundup" was "non-public information over which Defendant [Monsanto] had and continues to have exclusive control" and that Monsanto "knew that this information was not available to . . . distributors of Roundup." *Id.* ¶ 76.  Thus, according to the Petition, Harry's Hardware was kept in the dark about the alleged dangers of Roundup®-branded herbicides, which further supports the conclusion that Harry's Hardware did not have the requisite actual knowledge to be held liable on Plaintiffs' negligence claim.

32.     ***Second***, there also is no basis to conclude that Harry's Hardware reasonably should have known, during the relevant period (by or before 1991), of the latent defect alleged in the Petition – that Roundup®-branded herbicides and/or glyphosate can cause cancer.  The same allegations discussed above regarding Monsanto's decades-long cover-up of the purported carcinogenicity of these products show that there is no basis to conclude that Harry's Hardware was in a position to know during the relevant period, through reasonable diligence, that these products can cause cancer.

33.     The conclusion that Harry's Hardware did not have reason to know, by or before 1991, of the cancer risk alleged by Plaintiffs is further bolstered by key facts:  (a) throughout the period that Harry's Hardware sold Roundup®-branded herbicides, they were approved by the EPA, with EPA-approved labeling that does not include any cancer warnings, Becker Declaration ¶ 13; and (b) in deciding whether to sell these herbicides, Harry's Hardware relied on the EPA's ongoing regulatory determination that these herbicides are approved for sale to the public without a cancer warning, *id.*  In light of the fact that the federal agency with the Congressional mandate to regulate glyphosate-based herbicides – and the scientific expertise, manpower, and funding needed to assess the complex question of whether these herbicides cause

cancer – repeatedly has concluded that they do **not** cause cancer, there is no basis to impute contrary knowledge to Harry's Hardware by or before 1991.

34.     In sum, Plaintiffs' conclusory, boiler-plate allegations that Harry's Hardware, in the exercise of reasonable care, should have known of the purported defect at issue here, *see* Petition ¶¶ 142-143, fail to establish that Plaintiffs have a viable negligence claim against Harry's Hardware.  *See Ayala*, 569 F. App'x at 246 (holding that retailer defendant Gabriel was improperly joined and affirming denial of plaintiff's remand motion; stating that plaintiff's complaint "contains only the conclusory allegation that Gabriel was negligent" and does not allege any factual basis for Gabriel's negligence); *Brown*, 2015 WL 6128706, at *3 (denying remand motion and holding that "[m]ere *alleged* constructive knowledge is not enough to establish a negligence claim" (emphasis added; brackets in original; quotation marks omitted)); *Daniels v. Touro Infirmary*, Civil Action No. 11-1586, 2011 WL 6140869, at *2 (E.D. La. Dec. 9, 2011) (denying remand motion and holding that "[m]ere alleged constructive knowledge is not enough to establish a negligence claim"); *Diaz*, 2008 WL 4528186, at *6 (rejecting plaintiffs' constructive knowledge argument because "the alleged defects in the tire [were] latent," which "precludes a finding that [the non-manufacturing seller defendant] had constructive knowledge of such defects since they could not have been detected based upon a simple inspection"); *Strickland v. Brown Morris Pharmacy, Inc.*, Civ. A. No. 96-815, 1997 WL 587760, at *3 (E.D. La. Sept. 19, 1997) (rejecting plaintiffs' reliance on articles raising concerns about safety of product at issue because plaintiffs did not show that pharmacy defendant should have been aware of those articles); *Strickland*, 1996 WL 537736, at *2 (denying remand motion because, *inter alia*, "[t]here are no facts asserted [in the petition] which would support a finding that [the pharmacy defendant] . . . should have known that use of [the product at issue] by [plaintiff]

15

would cause the harm which occurred"; holding that plaintiff's conclusory allegations "do not go toward establishing a cause of action [against the pharmacy]").

    C.    <u>Plaintiffs Do Not Have A Viable Pre-LPA Professional Vendor Claim Against Harry's Hardware.</u>

    35.    The First Amendment to Petition asserts a pre-LPLA claim that seeks to hold Harry's Hardware liable as a "professional vendor" of Roundup®-branded herbicides, but that claim also is not viable. For purposes of this claim, "a professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that the courts are justified in treating the retailer like a manufacturer." *Nelton*, 542 So.2d at 132. In other words, a "professional vendor" claim does not "impose manufacturer liability on *all* retailers who are simply in the business of selling a product." *Id.* (emphasis in original); *see Dunn v. Nat'l Mfg. Co.*, CIV. A. No. 88-0642, 1990 WL 66373, at *1 (E.D. La. May 14, 1990) (stating that defendant "is not a professional vendor simply because it is [in] the business of selling hardware such as the S-hook in question") (citing *Nelton*, 542 So.2d at 132).

    36.    For Harry's Hardware to be deemed a "professional vendor," Plaintiffs would be required to prove that: (a) Harry's Hardware "market[ed] [Roundup®-branded herbicide] products as [its] own [products]"; and (b) that Harry's Hardware's "relationship[] with [the] manufacturer[] [*i.e.*, Monsanto] ma[d]e the seller[] [*i.e.*, Harry's Hardware] capable of controlling the quality of [its] merchandise." *Molett v. Penrod Drilling Co.*, 826 F.2d 1419, 1428 (5th Cir. 1987) (citing *Chappuis v. Sears, Roebuck & Co.*, 358 So.2d 926, 930 (La. 1978)), *abrogated in part on other grounds by Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995); *see Dunn*, 1990 WL 66373, at *1 (considering whether "the non-manufacturer seller h[e]ld out the product to the public as its own" and whether, "considering

16

size, volume, and merchandizing practices, . . . the non-manufacturer seller ha[d] the capabilities for controlling the quality of its merchandise").

37.     Plaintiffs' professional vendor claim fails on both counts.  Harry's Hardware never held Roundup®-branded herbicides out to the public as Harry's Hardware's own products. Becker Declaration ¶ 11.  Those products were labeled with the well-known "Roundup®" brand that was closely associated with Monsanto.  *Id*.  As the manufacturer, Monsanto controlled the quality of its Roundup®-branded herbicides.  *Id*.  Harry's Hardware was not capable of controlling – and did not control – the quality of Roundup®-branded herbicides.  *Id*. Accordingly, under Louisiana law, Harry's Hardware was merely a seller – not a professional vendor – of Roundup®-branded herbicides.

                    *                    *                    *                    *

38.     As established above, Plaintiffs improperly joined Harry's Hardware.  Therefore, the Court should disregard that defendant; hold that the requirement of complete diversity of citizenship is satisfied; and conclude that no properly joined defendant is a Louisiana citizen.

## II.  The Jurisdictional-Amount-in-Controversy Requirement is Satisfied.

39.     Plaintiffs seek compensatory and punitive damages based on the allegations that Monsanto's Roundup®-branded herbicides caused Raymond Mistich's cancer (NHL) and death. Therefore, it is plausible from the face of the pleadings that Plaintiffs seek damages in excess of $75,000, exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy requirement.  28 U.S.C. § 1332(a); *see Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *Ross v. First Family Fin. Servs., Inc.,* No. 2:01CV218-P-B, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002)

("[U]nspecified claims for punitive damage sufficiently serve to bring the amount in controversy

over the requisite jurisdictional threshold set out in 28 U.S.C. § 1332.").  In fact, other lawsuits

seeking damages for NHL allegedly caused by Roundup®-branded herbicides have been filed

against Monsanto in other federal courts asserting jurisdiction under Section 1332(a) and

alleging damages in excess of $75,000, exclusive of interest and costs.

### PROCEDURAL REQUIREMENTS

40.     The Civil District Court for the Parish of Orleans, Louisiana is located within the

Eastern District of Louisiana.  Therefore, removal to this Court satisfies the venue requirements

of 28 U.S.C. § 1446(a).

41.     This Notice of Removal is timely, in accordance with 28 U.S.C § 1446(b)(3).

Before Monsanto took the deposition of Plaintiff Janeiece Mistich (Raymond Mistich's widow),

the State Court Action was not removable, because the First Amendment to Petition (filed two

weeks after the Petition was served on Monsanto) alleged that Raymond Mistich purchased

Roundup®-branded herbicides from Harry's Hardware in 2019, after Harry's Hardware was sued

in another lawsuit alleging cancer caused by Roundup®-branded herbicides.

42.     At her deposition, Janeiece Mistich testified that she and Raymond Mistich

moved to Mandeville, Louisiana on the north shore of Lake Pontchartrain in 1991 (after having

lived in New Orleans) and that 1991 was the last time that Raymond Mistich purchased

Roundup®-branded herbicides in New Orleans:

> Q.  Am I correct your husband would not go to New Orleans East to
>      purchase Roundup after you moved to Mandeville?
> A.  Correct.
> Q.  Okay.  When would be the last time your husband purchased
>      Roundup in New Orleans to your knowledge?
> A.  Probably before we moved.  We moved to the Northshore in 1991.
>      So I would say 1991.

Janeiece Mistich Deposition Transcript at 119:7-119:15 (attached as Exhibit 5).

43.     Mandeville is located across Lake Pontchartrain from New Orleans.  Becker Declaration ¶ 6.  New Orleans is on the south side of Lake Pontchartrain, and Mandeville is on the north shore of the lake.  *Id*.  It takes approximately 30-45 minutes (depending on traffic) to drive between New Orleans and Mandeville.  *Id*.  Harry's Hardware never owned or operated any stores in Mandeville or anywhere else on the north shore of Lake Pontchartrain.  *Id*. ¶ 7.  Harry's Hardware owned and operated Hardware Stores at the two New Orleans locations alleged in the Petition – on General Meyer Street (in the Algiers neighborhood of New Orleans) and on Magazine Street (in New Orleans).  *Compare* Petition ¶ 7 *with* Becker Declaration ¶ 4.  Thus, any purchases by Raymond Mistich of Roundup®-branded herbicides from Harry's Hardware occurred no later than 1991 and any later purchases by him of those herbicides occurred at other stores – ***not*** Harry's Hardware stores – in Mandeville or elsewhere on the north shore of Lake Pontchartrain.  Other Ace Hardware stores (not owned or operated by Harry's Hardware) have been located in (and around) New Orleans and in Mandeville and elsewhere on the north shore of Lake Pontchartrain.  Becker Declaration ¶ 8.

44.     The transcript of Janeiece Mistich's deposition (received by Monsanto on June 23, 2023) and/or the July 2023 Becker Declaration are the "other paper from which it may first be ascertained that [this] case is one which is or has become removable," § 1446(b)(3), because that information allowed Monsanto to ascertain for the first time that Raymond Mistich's latest purchase of Roundup®-branded herbicides from Harry's Hardware occurred in 1991 – not 2019 – and that Harry's Hardware was fraudulently joined.  This Notice of Removal is timely because it is being filed within 30 days of June 23, 2023.  *See* § 1446(b)(3); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 612 (5th Cir. 2018).

45.     Although this removal notice is being filed more than one year after the State
Court Action was commenced, this removal is not barred by the one-year limitation on removals
addressed in 28 U.S.C. § 1446(c)(1) because Raymond Mistich and Plaintiffs "acted in bad faith
in order to prevent a defendant [*i.e.*, Monsanto] from removing th[is] action," § 1446(c)(1).
Raymond Mistich actively thwarted Monsanto's removal of this case by affirmatively amending
the Petition to add an allegation that he purchased Roundup®-branded herbicides from Harry's
Hardware in 2019, after Harry's Hardware had been sued in another Roundup lawsuit and
therefore was on notice of the alleged connection between Roundup®-branded herbicides and
cancer.  However, the deposition of Janeiece Mistich revealed that this allegation was false.

46.     Moreover, Raymond Mistich and Plaintiffs did not actively litigate their claims
against Harry's Hardware.  They did not take any depositions of Harry's Hardware or its
employees and did not otherwise develop any information during discovery to establish that
Harry's Hardware had actual or constructive knowledge, during the relevant period, that
Roundup®-branded herbicides cause cancer or that the labeling for those herbicides was
inadequate.  This failure to pursue their claims against Harry's Hardware further demonstrates
that Raymond Mistich and Plaintiffs have fraudulently joined Harry's Hardware solely to defeat
diversity jurisdiction and that they never had an intent to prosecute those claims to judgment.

47.     In sum, Raymond Mistich and Plaintiffs engaged in removal-thwarting
gamesmanship, so the Section 1446(c)(1) bad-faith exception applies here.  *See, e.g.*, *In re
Roundup Products Liab. Litig. (Renteria)*, No. 16-MD-02741-VC, 2022 WL 17839995, at *3
(N.D. Cal. Aug. 30, 2022) (making Section 1446(c)(l) bad-faith finding and denying remand
motion because plaintiff engaged in "removal-thwarting gamesmanship"); *Aguayo v. AMCO Ins.
Co.*, 59 F. Supp. 3d 1225, 1256 (D.N.M. 2014) (stating that, when evaluating whether Section

1446(c)(1) bad-faith exception applies, court looks to whether plaintiff asserted valid claims against removal-spoiling defendant and whether plaintiff actively litigated against that defendant in state court).

48.    Consent to removal is not required from Harry's Hardware because it has not been "properly joined," 28 U.S.C. § 1446(b)(2)(A).

49.    The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Civil District Court for the Parish of Orleans, Louisiana and will be promptly served on Plaintiffs.

50.    Monsanto does not waive any defenses and expressly reserves its right to raise any and all defenses in subsequent proceedings.

51.    If any question arises as to the propriety of this removal, Monsanto requests the opportunity to present written and oral argument in support of removal.

## **CONCLUSION**

For the foregoing reasons, Monsanto removes this lawsuit to the Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).

Dated: July 21, 2023

Respectfully submitted,

/s/ *Shaun P. McFall*
Judy Y. Barrasso, T.A. (Bar No. 02814)
Shaun P. McFall (Bar No. 37225)
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  504-589-9700
Facsimile:  504-589-9701
jbarrasso@barrassousdin.com
smcfall@barrassousdin.com

Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF systems which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail and/or served by electronic mail to counsel for plaintiffs.

*/s/ Shaun P. McFall*

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2021-04605                                                    DIVISION A

RAYMOND MISTICH

VERSUS

MONSANTO COMPANY, ET AL

FILED: _____          _____
                                                    DEPUTY CLERK

## RAYMOND MISTICHS' FIRST SUPPLEMENT AND AMENDMENT
## TO THE ORIGINAL PETITION FOR DAMAGES

NOW INTO COURT, by and through undersigned counsel, come Raymond Mistich,, Raymond Mistich, who file this, the First Supplement and Amendment and respectfully shows onto the Court for the following:

### I.

For the purpose of supplementing and amending and adding Count Four against Monsanto:

### COUNT FOUR:
### PUNITIVE DAMAGES
#### (Monsanto Only)

156.     Petitioner repeats and reiterates the prior allegations of this complaint as if alleged more fully below.

157.     Defendants acted maliciously, wantonly and recklessly, and demonstrated a conscious indifference and utter disregard of the health, safety and rights of others, by acting with an improper motive or vindictiveness and with outrageous or oppressively intentional misconduct, such actions representing a high degree of immorality and showing wanton dishonesty as to imply a criminal indifference to civil obligations, in one or more of the following ways:

a.     Defendants knew of the unreasonably high risk of Non Hodgkins Lymphoma and the associated subtypes posed by the Roundup before manufacturing, marketing, distributing and/or selling Roundup, yet purposefully proceeded with such action;

b.     Despite their knowledge of the high risk of Non Hodgkins Lymphoma and the associated subtypes associated with the ROUNDUP, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling.

c.     Through ROUNDUP, yet purposefully proceeded with such action; to the safety of users of the ROUNDUP, including Petitioner, Defendants' conduct, as described herein, knowing the dangers and risks of the ROUNDUP, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action

was and continues to be outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the ROUNDUP.

158.   As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, an award of punitive damages is warranted.

## II.

For the purpose of supplementing and amending to add Count V against Harry's Hardware, Inc.

## COUNT FIVE:
### THE LOUISIANA PRODUCT LIABILITY ACT PROFESSIONAL VENDOR CLAIM
### (Harry's Hardware, Inc. Only)

159.   For all pertinent times, Harry's Hardware, Inc. purchased, sold, and distributed ROUNDUP, which Petitioner Raymond Mistich purchased, used and applied to weeds, grass and driveways including but not limited to 1980-2019, causing his injuries and illnesses.

160.   At all pertinent times, Harry's Hardware had a duty to exercise reasonable care to consumers, including Petitioner herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the Roundup.

161.   Raymond Mistich purchased Roundup from Harry's Hardware in 2019, which was still selling cancer causing Roundup, after Harry's Hardware was sued for this product in *Ivene D Amme vs. Monsanto Company, Et Al,* Case No. 2019-10100, Orleans Parish Civil District Court.

162.   At all pertinent times, Harry's Hardware knew or should have known that the use of Roundup in its significantly increases the risk of Non-Hodgkins Lymphoma and the associated subtypes based upon scientific knowledge dating back to the 1970s.

163.   At all pertinent times, the Harry's Hardware knew or should have known that the use of Roundup contaminated with glyphosphate significantly increases the risk of Non-Hodgkins Lymphoma and the associated subtypes based upon scientific knowledge dating back to the 1970s and well prior.

164.   At all pertinent times, the Harry's Hardware knew or should have known that Monsanto was not providing and still has not provided warnings to consumers of ROUNDUP of the risk of Non-Hodgkins Lymphoma and the associated subtypes therein.

165.   As a direct and proximate result of the Harry's Hardware negligence, Petitioner purchased and used, as aforesaid, the ROUNDUP that directly and proximately caused Petitioner to develop Non-Hodgkins Lymphoma and the associated subtypes; Petitioner was caused to incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

166.    Harry's Hardware are liable to Raymond Mistich as a professional vendor of ROUNDUP, and as such, because of the Harry's Hardware size, volume of business and merchandising practices, knew or should have known of the defects of the Roundup they sold, and are strictly liable and negligent for failing to warn the users or potential health hazards from the use of said Roundup. According to Harry's own website, Harry's has two of the largest retail stores in the Ace Hardware Organization. http://www.harrysacehardware.com/location.htm. In the past Harry's has had numerous locations across the New Orleans, Louisiana metroplex.

167.    Further, Harry's Hardware knew the specific use for which Roundup would be used and had unique expertise into the physical and chemical properties of Roundup and it's health hazards. Harry's Hardware unsafely marketed Roundup as uniquely safe and non-carcinogenic, at times when Defendants knew or should have known such claims were false and/or without adequate scientific support. Even today, Harry's Ace Hardware is selling all types of Roundup in store and online without warnings and as uniquely safe and non-carcinogenic. As a consequence of the Defendants' misrepresentations, customers and ultimate users of the Roundup (users, including Petitioner Raymond Mistich) were deceived as to the true nature and extent of the health hazards posed by Defendants' ROUNDUP. Harry's Hardware is liable to Petitioner Raymond Mistich for the suffering and injuries from a disease, namely, Non Hodgkin's Lymphoma, caused by his foreseeable use of Harry's Hardware Roundup, because the Defendant's fraudulent misrepresentations were detrimentally relied upon by Raymond Mistich who was exposed to their Roundup.

168.    Finally, Harry's Hardware are liable to Petitioner Raymond Mistich because they knew or should have known that the Roundup, which they sold and supplied, from 1980 to today were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Petitioner Raymond Mistich's injuries including, but not limited to, non Hodgkin's lymphoma and other ill health effects.

### III.

The Raymond Mistichs reiterate all other matters contained in the original Petition for Damages including the prayer of the original petition as though set forth at length herein.

### IV.

Raymond Mistichs request leave of court to file this First Supplement and Amendment to the Original Petition.

**WHEREFORE**, the petitioners pray for leave of court, and that their original Petition be

supplemented and amended in the above particulars and that, after due proceedings had, there be

judgment herein in favor of Raymond Mistich and against the defendants as originally prayed for

herein.

Respectfully submitted,
**BOLING LAW FIRM, LLC**

Jeremiah Boling (Bar No. 34249)
1100 Poydras Street, Suite 2900
New Orleans, LA 70163
Telephone: (504) 615-6309
Fax: (504) 369-3421
jboling@bolingfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing First Supplement and Amendment
to Original Petition for Damages was this day served by electronic mail, United States Mail, and/or
by facsimile upon all parties as indicated on the service list attached hereto.

New Orleans, Louisiana this 23rd day of June, 2021.

JEREMIAH BOLING

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2021-04605                                                          DIVISION A

RAYMOND MISTICH

VERSUS

MONSANTO COMPANY, ET AL

FILED: _____                  _____
                                                   DEPUTY CLERK

### ORDER GRANTING LEAVE OF COURT

Plaintiffs are hereby granted leave of court to file the above and foregoing First Supplement

and Amendment to the Original Petition for Damages as prayed for.

SO ORDERED this the ___ day of _____ ___, 2021.


_____
JUDGE, CIVIL DISTRICT COURT

PLEASE SERVE THE FOLLOWING WITH THE FIRST SUPPLEMENTAL AND
AMENDING PETITION FOR DAMAGES:

1. **MONSANTO COMPANY**
   Through its Registered Agent:
   Corporation Service Company
   501 Louisiana Avenue
   Baton Rouge, LA 70802

2. **HARRY'S HARDWARE, INC.**
   Through its Registered Agent:
   Lehmann Norman & Marcus, LC
   400 Poydras St., Ste. 2050
   New Orleans, LA 70130-3251

PLAINTIFF WILL SERVE DEFENDANTS VIA LA CCP 1313 AS WELL.