Query    Reports    Utilities    Help    Log Out

# U.S. District Court
## District of Montana (Missoula)
## CIVIL DOCKET FOR CASE #: 9:23-cv-00092-DLC-KLD

Sanders v. Monsanto Company et al
Assigned to: Judge Dana L. Christensen
Referred to: Magistrate Judge Kathleen L. DeSoto
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 08/22/2023
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Deborah Sanders**
*Individually and as a Personal Representative of the Estate of JAKE SANDERS, Deceased*

represented by **Dylan McFarland**
KNIGHT NICASTRO MACKAY, LLC
283 W. Front St.
Suite 203
Missoula, MT 59802
406-206-5747
Fax: 816-396-6233
Email: mcfarland@knightnicastro.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Adam Duerk**
KNIGHT NICASTRO MACKAY, LLC
283 W. Front St.
Suite 203
Missoula, MT 59802
406-546-0881
Email: duerk@knightnicastro.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Monsanto Company**

represented by **Natasha Prinzing Jones**
BOONE KARLBERG, P.C.
201 West Main Street, Suite 300
PO Box 9199
Missoula, MT 59807-9199
406-543-6646
Fax: 549-6804
Email: npjones@boonekarlberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer Corporation**

represented by **Natasha Prinzing Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Albaugh, LLC**

**Defendant**

**Does 1-10**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/22/2023 | 1 | NOTICE OF REMOVAL by Monsanto Company from Montana 21st Judicial District, Ravalli County, case number DV-41-2021-0000348. (Attachments: # 1 Exhibit SOP on Monsanto Company, # 2 Exhibit Bayer Corporation's Consent, # 3 Exhibit Albaugh LLC's Consent, # 4 Civil Cover Sheet) (TAG) (Entered: 08/22/2023) |
| 08/22/2023 | | Filing fee: $ 402, receipt number AMTDC-3116988 (TAG) (Entered: 08/22/2023) |
| 08/22/2023 | 2 | ANSWER to Complaint with Jury Demand by Monsanto Company. (Jones, Natasha) (Entered: 08/22/2023) |
| 08/22/2023 | 3 | Corporate Disclosure Statement by Monsanto Company identifying Corporate Parent Bayer AG for Monsanto Company.. (Jones, Natasha) (Entered: 08/22/2023) |
| 08/24/2023 | 4 | ANSWER to Complaint with Jury Demand by Bayer Corporation. (Jones, Natasha) (Entered: 08/24/2023) |
| 08/24/2023 | 5 | Corporate Disclosure Statement by Bayer Corporation identifying Corporate Parent Bayer AG for Bayer Corporation.. (Jones, Natasha) (Entered: 08/24/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/25/2023 07:14:34 | | |
| **PACER Login:** | sh0019sh | **Client Code:** | 31943.356965 rhb |
| **Description:** | Docket Report | **Search Criteria:** | 9:23-cv-00092-DLC-KLD |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Natasha Prinzing Jones
BOONE KARLBERG P.C.
201 West Main, Suite 300
P. O. Box 9199
Missoula, MT 59807-9199
Phone:  (406) 543-6646
Fax:      (406) 549-6804
npjones@boonekarlberg.com
*Attorneys for Defendants Monsanto Company*
*and Bayer Corporation*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| DEBORAH SANDERS, Individually and as a Personal Representative of the Estate of JAKE SANDERS, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY, BAYER CORPORATION, ALBAUGH, LLC and DOES 1-10.<br><br>Defendants. | Case No. _____<br><br><br><br>**DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws), Defendant Monsanto Company ("Monsanto"), hereby gives notice of removal of this action, captioned *Deborah Sanders, Individually and as a Personal Representative of the Estate of Jake Sanders, Deceased v. Monsanto Company et al.,* bearing Case Number DV-41-2021-0000348, from the Montana Twenty First

Judicial District Court, Ravalli County, to the United States District Court for the District of Montana. Pursuant to 28 U.S.C. § 1446(a), Monsanto provides the following statement of grounds for removal.

## **INTRODUCTION**

1.     In this products liability lawsuit, Plaintiff Deborah Sanders sues Monsanto, Bayer Corporation, and Albaugh, LLC for the injuries and death of Jake Sanders allegedly caused by glyphosate-based herbicides. For decades, farmers have used glyphosate-based herbicides to increase crop yields, and home-owners, landscaping companies, and local government agencies have used these herbicides for highly effective weed control. Glyphosate is one of the most thoroughly studied herbicides in the world, and glyphosate-based herbicides have received regulatory approval in more than 160 countries. Since 1974, when Monsanto first introduced a Roundup®-branded herbicide to the marketplace, the United States Environmental Protection Agency repeatedly has concluded that glyphosate does not cause cancer. Nevertheless, Plaintiff alleges that exposure to glyphosate-based herbicides caused decedent Jake Sanders' cancer—specifically, T-Cell Lymphoblastic Non-Hodgkin Lymphoma—and death.

2.     This is one of many lawsuits that have been filed against Monsanto involving Roundup®-branded herbicides. A multidistrict litigation proceeding is pending in the United States District Court for the Northern District of California,

before the Honorable Vince G. Chhabria, pursuant to 28 U.S.C. § 1407. *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.); *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, 214 F. Supp. 3d 1346 (J.P.M.L. 2016).

3.      As discussed in more detail below, Monsanto removes this lawsuit because this Court has subject matter jurisdiction based on diversity of citizenship. Ms. Sanders is a citizen of Montana.  For purposes of diversity jurisdiction, none of the Defendants are citizens of Montana.   Accordingly, complete diversity of citizenship exists in this case as required by 28 U.S.C. § 1332.  The statutory amount-in-controversy requirement is also satisfied because Plaintiff seeks damages for cancer and death allegedly caused by exposure to glyphosate-based herbicides.

## BACKGROUND AND PROCEDURAL HISTORY

4.      Ms. Sanders commenced this lawsuit in the Montana Twenty First Judicial District Court, Ravalli County, by filing a complaint, captioned *Deborah Sanders, Individually and as a Personal Representative of the Estate of Jake Sanders, Deceased v. Monsanto Company et al.,* bearing Case Number DV-41-2021-0000348 (the "State Court Action"). On July 20, 2023, Ms. Sanders filed the Amended Complaint ("Complaint"), which is the operative complaint and the only complaint served on Monsanto in this case.

5.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Monsanto in the State Court Action are attached

as **Exhibit 1**. This lawsuit seeks damages for T-Cell Lymphoblastic Non-Hodgkin Lymphoma and death allegedly caused by exposure to glyphosate-based herbicides. *See, e.g.*, Complaint ¶¶ 52, 55.

## BASIS FOR REMOVAL — DIVERSITY JURISDICTION

6.    Plaintiff Deborah Sanders is, and was at the time the State Court Action was filed, a resident and citizen of the State of Montana.  *See* Complaint ¶ 1. Prior to and at the time of his death, Jake Sanders was also a resident and citizen of the State of Montana. *Id.*

7.    Monsanto is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Missouri.  Thus, Monsanto is deemed to be a citizen of Missouri and Delaware, for purposes of federal diversity jurisdiction.  Monsanto is not a citizen of the State of Montana. *See* Complaint ¶ 3.

8.    Bayer Corporation is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Indiana, with its principal place of business in the State of New Jersey. Thus, Bayer Corporation is deemed to be a citizen of Indiana and New Jersey for purposes of federal diversity jurisdiction.  Bayer Corporation is not a citizen of the State of Montana. *See* Complaint ¶ 2.

9.     Albaugh, LLC is a limited liability company with two members—Albaugh Family Holdings, Inc. and Nutrichem USA, Inc. Albaugh Family Holdings, Inc. is incorporated under the laws of the State of Iowa with its principal place of business in the State of Iowa.  Nutrichem USA, Inc. is incorporated under the laws of the State of Delaware with its principal place of business in the State of Delaware.  Thus, Albaugh, LLC is deemed to be a citizen of Iowa and Delaware for purposes of federal diversity jurisdiction.  *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens."). Albaugh, LLC is not a citizen of Montana. *Id*.

10.     The Complaint seeks compensatory and punitive damages based on the allegations that glyphosate-based herbicides caused Jake Sanders' cancer and death. Plaintiff also seeks reimbursement for "medical expenses, loss of income, funeral expenses and other economic and non-economic damages" and specifically alleged that "Jake Sanders and his family incurred a considerable amount of medical expenses and incidental expenses." *See* Complaint ¶¶ 55, 53.  Therefore, it is plausible from the face of the Complaint that Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy requirement.  28 U.S.C. § 1332(a); *see Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal

need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *see also Ross v. First Family Fin. Servs., Inc.*, No. 2:01CV218-P-B, 2002 WL 31059582, at \*8 (N.D. Miss. Aug. 29, 2002) ("[U]nspecified claims for punitive damage sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. § 1332."). In fact, numerous other lawsuits seeking damages for cancer allegedly caused by Roundup®-branded herbicides have been filed against Monsanto in other federal courts asserting jurisdiction under §1332(a) and alleging damages in excess of $75,000, exclusive of interest and costs.

11.    In sum, this Court has original subject matter jurisdiction over this action based on § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs and interest.[1]

## **PROCEDURAL REQUIREMENTS**

12.    The Montana Twenty First Judicial District Court is located within the District of Montana.    Therefore, removal to this Court satisfies the venue requirement of 28 U.S.C. § 1446(a).

13.    Monsanto was served with the Complaint on August 1, 2023. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1).

---

[1] The citizenship of "Doe" defendants must be disregarded when determining whether this lawsuit is removable based on § 1332(a). *See* 28 U.S.C. § 1441(b)(1).

14.     Bayer Corporation consents to this removal. *See* **Exhibit 2**.

15.     Albaugh, LLC consents to this removal. *See* **Exhibit 3**.

16.     The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Montana Twenty First Judicial District Court and will be promptly served on Plaintiff.

17.     Monsanto does not waive any defenses and expressly reserves its right to raise any and all defenses in subsequent proceedings.

18.     If any question arises as to the propriety of this removal, Monsanto requests the opportunity to present written and oral argument in support of removal.

## <u>CONCLUSION</u>

For the foregoing reasons, Monsanto removes this lawsuit to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).

DATED:  August 22, 2023                    Respectfully submitted,

                                            */s/ Natasha Prinzing Jones*
                                            Natasha Prinzing Jones
                                            BOONE KARLBERG P.C.
                                            *Attorneys for Defendant*
                                            *MONSANTO COMPANY*

CERTIFICATE OF SERVICE

This is to certify that on the 22nd day of August, 2023, the foregoing was

duly served on the following by the means indicated:

| | |
|---|---|
| __1__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery |
| _____ | Facsimile |
| __2__ | E-Mail |

1.   Clerk of U.S. District Court

2.   Dylan M. McFarland
W. Adam Duerk
KNIGHT NICASTRO MACKAY, LLC
283 West Front Street, Suite 203
Missoula, MT 59802
mcfarland@knightnicastro.com
duerk@knightnicastro.com
*Attorneys for Plaintiff*

/s/ Natasha Prinzing Jones
Natasha Prinzing Jones
BOONE KARLBERG P.C.
*Attorneys for Defendant*
*MONSANTO COMPANY*

8



**null / ALL**
**Transmittal Number: 27392855**
**Date Processed: 08/02/2023**

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Anne Troupis (Monsanto)<br>Bayer U.S. LLC<br>800 N Lindbergh Blvd<br>Saint Louis, MO 63167-1000 |

| | |
|---|---|
| **Entity:** | Monsanto Company<br>Entity ID Number  2282193 |
| **Entity Served:** | Monsanto Company |
| **Title of Action:** | Sanders, Deborah vs. Monsanto Company |
| **Matter Name/ID:** | Sanders, Deborah vs. Monsanto Company (14414668) |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Wrongful Death |
| **Court/Agency:** | Ravalli County District Court, MT |
| **Case/Reference No:** | DV-41-2021-0000348 |
| **Jurisdiction Served:** | Montana |
| **Date Served on CSC:** | 08/01/2023 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Knight NiCastro MacKay, LLC<br>406-206-5747 |
| **Client Requested Information:** | Filed Date: 07/20/2023 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**EXHIBIT 1**

Dylan M. McFarland
W. Adam Duerk
KNIGHT NICASTRO MACKAY, LLC
283 West Front Street, Suite 203
Missoula, Montana 59802
Telephone:  (406) 206-5747
Facsimile:   (816) 396-6233
mcfarland@knightnicastro.com
duerk@knightnicastro.com
         *Attorneys for Plaintiff*

# **Issued**

## MONTANA TWENTY FIRST JUDICIAL DISTRICT COURT
## RAVALLI COUNTY

| | |
|---|---|
| DEBORAH SANDERS, Individually and as Personal Representative of the Estate of JAKE SANDERS, Deceased,<br><br>Plaintiff,<br><br>-vs.-<br><br>MONSANTO COMPANY, BAYER CORPORATION, ALBAUGH, LLC and DOES 1-10.<br><br>Defendants. | Cause No.: DV-41-2021-0000348<br><br>**SUMMONS – MONSANTO COMPANY** |

SUMMONS – MONSANTO COMPANY

Page 1 of 2

**EXHIBIT 1**

**THE STATE OF MONTANA SENDS GREETINGS TO THE ABOVE-NAMED DEFENDANT: MONSANTO COMPANY**

A lawsuit has been filed against you.

YOU ARE HEREBY SUMMONED to answer the Amended Complaint in this action within 21 days after service of this summons on you. You must serve on the plaintiff an answer to the attached Amended Complaint or a motion under Rule 12 of the Montana Rules of Civil Procedure. Do not include the day you were served in your calculation of time. The answer or motion must be served on the plaintiff's attorney, whose name and address are listed above.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.

You also must file your answer or motion with the court.

DATE: ___July 20, 2023_____

Paige Trautwein

Clerk of Court
_____
CLERK OF THE DISTRICT COURT

By: _____
Deputy / Clerk of Court
Kimberly Provence, Deputy

(Seal)

_____

**EXHIBIT 1**

FILED
07/20/2023
Paige Trautwein
CLERK
Ravalli County District Court
STATE OF MONTANA
By: Kim Provence
DV-41-2021-0000348-DS
Recht, Howard F.
2.00

Dylan M. McFarland
W. Adam Duerk
KNIGHT NICASTRO MACKAY, LLC
283 West Front Street, Suite 203
Missoula, Montana 59802
Telephone:  (406) 206-5747
Facsimile:  (816) 396-6233
mcfarland@knightnicastro.com
duerk@knightnicastro.com
*Attorneys for Plaintiff*

## MONTANA TWENTY FIRST JUDICIAL DISTRICT COURT
## RAVALLI COUNTY

| | |
|---|---|
| DEBORAH SANDERS, Individually and as Personal Representative of the Estate of JAKE SANDERS, Deceased,<br><br>Plaintiff,<br><br>-vs.-<br><br>MONSANTO COMPANY, BAYER CORPORATION, ALBAUGH, LLC and DOES 1-10.<br><br>Defendants. | Cause No.: DV-41-2021-0000348<br><br>**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff, Deborah Sanders, as Personal Representative of the Estate of Jake Sanders, deceased, amends her complaint for damages against defendants Monsanto Company, Bayer Corporation, and Albaugh, LLC and Does 1-10 as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Deborah Sanders is the biological mother of Jake Sanders, deceased, and the Personal Representative of his Estate. Ms. Sanders  resides and is a citizen

**EXHIBIT 1**

of Ravalli County, Montana.  Prior to his death on October 10, 2018, Jake Sanders was also a resident and citizen of Ravalli County, Montana.

2.     Defendant Bayer Corporation is an Indiana Corporation with its principal place of business and main offices located in Whippany, New Jersey. Bayer Corporation, through its acquisition of Defendant Monsanto, was at all times responsible   for   the   research,   testing,   development,   manufacturing,   sales, distribution, promotion, labeling and marketing of Roundup, which it placed into the stream of commerce and continues to place in the stream of commerce in the United States. At all times relevant hereto, Defendant Bayer Corporation regularly conducted business in the State of Montana and in Ravalli County and is authorized and duly certified to transact business and conduct affairs as a Montana Foreign Profit Corporation in Montana, with its registered agent located at 26 W Sixth Ave, Helena, MT 59624.

3.     Defendant Monsanto Company is a Delaware Corporation with its principal place of business in St. Louis, Missouri. Monsanto Company sells its products throughout the United States, including in Montana. Monsanto Company is registered with the Montana Secretary of State and its registered agent is located at 26 W Sixth Ave, Helena, MT 59624.  On or about June 8, 2018, Defendant Bayer Corporation acquired Monsanto Company and assumed all responsibility for the actions, liabilities and any and all matters relating to Monsanto.

**EXHIBIT 1**

4.      Defendant Albaugh, LLC ("Albaugh") is an Iowa Domestic Limited Liability Company with its principal place of business in Ankeny, Iowa. Albaugh sells its products, specifically GlyStar Plus, throughout the United States, including in Ravalli County, Montana.

5.      Defendant Monsanto designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the commercial herbicide Roundup.

6.      Defendant Albaugh manufactures the product GlyStar Plus, a commercial herbicide with the exact or nearly the exact active ingredients and chemical composition as Roundup. This includes the active ingredient Glyphosate.

7.      Does 1-10 are parties and/or persons that potentially contributed to the injuries, damages and losses suffered by the Plaintiff, and whose true identities are presently unknown to Plaintiff. The true identities of these Doe defendants will be provided by way of amendment when they and the facts surrounding their involvement are ascertained.

8.      This Court has personal jurisdiction over Defendants Monsanto Company and Bayer Corporation (collectively "Monsanto") because Monsanto transacts business in and is a corporation doing business within Montana. Monsanto knows that its Roundup products are and were sold throughout Montana, and, more specifically, caused Roundup to be sold and used by entities which would expose

**EXHIBIT 1**

Roundup to Montana consumers and students, including Jake Sanders. In addition, Monsanto maintains sufficient contacts with the State of Montana such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

9. Monsanto advertises and sells goods, specifically Roundup, throughout Montana. It derived substantial revenue from goods and products used in Montana. It expected its acts to have consequences within Montana and derived substantial revenue from interstate commerce. Specific to this case, Monsanto engaged in the business of developing, manufacturing, testing, packaging, marketing, distributing, labeling, and selling Roundup. Monsanto purposefully availed itself of the privilege of conducting activities within Montana, thus invoking the benefits and protections of its laws.

10. This Court has personal jurisdiction over Defendant Albaugh as Albaugh transacts business in and is a corporation doing business within Montana. Albaugh knows that its GlyStar Plus products are and were sold throughout Montana, and, more specifically, caused GlyStar Plus products to be sold and used by entities which would expose GlyStar Plus products to Montana consumers, including Jake Sanders. In addition, Defendant Albaugh maintains sufficient contacts with the State of Montana such that this Court's exercise of personal

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
Page 4

**EXHIBIT 1**

jurisdiction over it does not offend traditional notions of fair play and substantial justice.

11.     Albaugh advertises and sells goods, specifically GlyStar Plus, throughout Montana. It derived substantial revenue from goods and products used in Montana. It expected its acts to have consequences within Montana and derived substantial revenue from interstate commerce. Specific to this case, GlyStar Plus engaged in the business of developing, manufacturing, testing, packaging, marketing, distributing, labeling, and selling GlyStar Plus. Defendant Albaugh purposefully availed itself of the privilege of conducting activities within Montana, thus invoking the benefits and protections of its laws.

12.     This Court has jurisdiction over the subject matter of this litigation pursuant to Mont. Code Ann. § 3-5-302.

13.     Venue properly lies in Ravalli County pursuant to Mont. Code Ann. § 25-2-122, because at least one Defendant is located in Ravalli County, the tort was committed in Ravalli County and Plaintiff resides in Ravalli County.

## GENERAL ALLEGATIONS

14.     "Roundup" refers to all formulations of Monsanto's Roundup products, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1,

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
Page 5

**EXHIBIT 1**

Roundup Garden Foam, Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to- Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer Ready- to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation containing the active ingredient glyphosate.

15.    "GlyStar Plus" refers to all formulations of Albaugh's GlyStar Plus products. GlyStar Plus is believed to be a generic version of Roundup, and contains many of the same, similar or exact formulas and active ingredients, including glyphosate, as Roundup.

**EXHIBIT 1**

16.     Roundup and GlyStar Plus are herbicides designed to kill weeds, especially broadleaf weeds and grasses. These herbicides are also deadly to humans and contain multiple well-known carcinogens.

17.     Glyphosate, which is an active ingredient in Roundup and GlyStar Plus, is a carcinogen. It has been identified as causing various forms of cancer, in particular, Non-Hodgkin Lymphoma ("NHL"), specifically an aggressive form of NHL identified as T-Cell Lymphoblastic Lymphoma, the same cancer that caused Plaintiff's death.

18.     2, 4-dichlorophenoxyacetic acid is a carcinogen. It has been identified as causing various forms of cancer and is used in a number of Roundup products including those used by Jake Sanders.

19.     Monsanto is the world's leading producer of glyphosate.

20.     Monsanto discovered the herbicidal properties of glyphosate during the 1970s and developed it as a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

21.     Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots; and detectable quantities accumulate in the plant tissues.

22.     Roundup was introduced in 1974 and is today one of the world's most widely used herbicides.

**EXHIBIT 1**

23.    Since it was introduced in 1974, farmers, ranchers, and consumers have used Roundup unaware it is a carcinogen.

24.    Monsanto represented to farmers, ranchers, school districts, and consumers that its spray-on glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish.

25.    Monsanto also represented to farmers, ranchers, school districts, and consumers:

a.  Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks, and fences.

b.  And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

c.  Roundup biodegrades into naturally occurring elements.

d.  You can apply Roundup with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Roundup into natural products.

e.  Glyphosate is less toxic to rats than table salt following acute oral ingestion.

f.  Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

g.  You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

**EXHIBIT 1**

    h. Roundup can be used where kids and pets will play and breaks down into natural material.

26.    On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York Attorney General, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

    a.    Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks, and fences.

    b.    its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable;

    c.    its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means;

    d.    its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics;"

    e.    glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides; and

    f.    its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

27.    However, Monsanto did not alter its advertising in the same manner in any state other than New York and continued to make those misrepresentations to the citizens and consumers in Montana, including Jake Sanders.

28.    The International Agency for Research on Cancer ("IARC") is the specialized intergovernmental agency that the World Health Organization ("WHO") of the United Nations tasked with conducting and coordinating research into the causes of cancer.

29.    An IARC Advisory Group to report on the Recommend Priorities for IARC Monographs during 2015-2019, met in April 2014. The IARC noted an association between glyphosate and NHL and the IARC set glyphosate for review in 2015-2016.

30.    On March 24, 2015, after IARC reviewed numerous studies, many of which had been in Monsanto's possession since as early as 1985, the IARC's Working Group published its conclusion that the glyphosate contained in Monsanto's Roundup herbicide, is classified as a Group 2A chemical ("probably carcinogenic to humans") as demonstrated by the mechanistic evidence (genotoxicity and oxidative stress) of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

31.    The IARC's full Monograph was published on July 29, 2015, and established glyphosate as a Group 2A probable carcinogen to humans. According to the authors, glyphosate demonstrated sufficient mechanistic evidence to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.

**EXHIBIT 1**

32.     The IARC Working Group found an increased risk between exposure to glyphosate and NHL and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

33.     The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

34.     Despite the relatively new classification by the IARC, Defendants Monsanto and Albaugh had ample evidence of the dangers of glyphosate in humans and Roundup's genotoxic properties for decades prior to the IARC's classification.

35.     Genotoxicity refers to chemical agents capable of damaging the DNA within a cell through genetic mutations, which is a process that is believed to lead to cancer.

36.     In 1997, Chris Clements published "Genotoxicity of select herbicides in Rana catesbeiana tadpoles using the alkaline single-cell gel DNA electrophoresis (comet) assay." The study found that tadpoles exposed to Roundup showed significant DNA damage when compared with unexposed control animals.

37.     In 2003, Lennart Hardell and Mikael Eriksson published the results of two case-controlled studies on pesticides as a risk factor for NHL and hairy cell leukemia. The study concluded that glyphosate had the most significant relationship to NHL among all herbicide studies with an increased odds ratio of 3:11.

**EXHIBIT 1**

38.    In 2003, AJ De Roos published a study examining the pooled data of mid-western farmers, examining pesticides and herbicides as risk factors for NHL. The study, which controlled for potential confounders, found a relationship between increased NHL incidence and glyphosate.

39.    In 2006, Cesar Paz-y-Mino published a study examining DNA damage in human subjects exposed to glyphosate. The study produced evidence of chromosomal damage in blood cells showing significantly greater damage after exposure to glyphosate than before in the same individuals, suggesting that the glyphosate formulation used during aerial spraying had a genotoxic effect on exposed individuals.

40.    In 2008, Mikael Eriksson published a population-based case-control study of exposure to various pesticides as a risk factor for NHL. This strengthened previous associations between glyphosate and NHL.

41.    In spite of this knowledge, Monsanto continued to issue broad and sweeping statements suggesting that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

42.    These statements and representations have been made with the intent of inducing Montana consumers, Montana School Districts, the agricultural

**EXHIBIT 1**

community, and the public at large, to purchase and increase the use of Roundup

for Monsanto's pecuniary gain, and in fact did induce Jake Sanders to use and be

exposed to Roundup and GlyStar Plus.

43.    Monsanto failed to appropriately and adequately inform and warn Jake

Sanders of the serious and dangerous risks associated with the use of and exposure

to glyphosate and/or Roundup/GlyStar Plus, including, but not limited to, the risk

of developing NHL, as well as other severe and personal injuries, which are

permanent and/or long-lasting in nature, cause significant physical pain and mental

anguish, diminished enjoyment of life, the need for significant medical treatment,

and potentially death.

44.    For years, as Jake Sanders was exposed to Roundup and GlyStar Plus,

he was unaware of any causal link between those glyphosate containing products

and cancer or any health risks related to Defendants' product. To the contrary,

Defendant Monsanto regularly advertised that Roundup was safe to use.

45.    Jake Sanders did not regularly use personal protective equipment when

spraying Roundup or GlyStar Plus.

46.    Jake Sanders regularly sprayed Roundup and GlyStar Plus with a

backpack sprayer.

**EXHIBIT 1**

47.     During the entire time in which Jake Sanders was exposed to Roundup and/or GlyStar Plus, he did not know exposure to those products was injurious to his health or the health of others.

48.     Defendants Monsanto and GlyStar Plus did not warn Jake Sanders that the use of personal protective equipment when using those products was required or even recommended.

49.     Defendants Monsanto and Albaugh did not warn Jake Sanders that exposure to their products was dangerous and potentially fatal.

50.     Jake Sanders routinely sprayed Roundup and GlyStar Plus on various private properties throughout Ravalli County.

51.     Landowners in Ravalli County specifically purchased GlyStar Plus. Jake Sanders would then apply that GlyStar Plus on the property and at the direction of those Ravalli County landowners without any knowledge or warning that the GlyStar Plus product contained carcinogens.

52.     After years of his exposure to Roundup and GlyStar Plus, on or about August 21, 2017, doctors diagnosed Jake Sanders with T-Cell Lymphoblastic Non-Hodgkin Lymphoma.

53.     As a result of the NHL diagnosis caused by Defendants, Jake Sanders underwent a significant amount of treatment in his attempt to combat cancer. In

doing so, Jake Sanders and his family incurred a considerable amount of medical expenses and incidental expenses.

54.   Jake Sanders ultimately succumbed to NHL on October 10, 2018, at the age of 20.

55.   By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages as a result of Jake Sanders' use of, and exposure to, Roundup and GlyStar Plus, which caused or was a substantial contributing factor in causing Jake Sanders to suffer from cancer and ultimately, his death. Plaintiff endured pain and suffering, emotional and mental anguish, medical expenses, loss of income, funeral expenses and other economic and non-economic damages. His family and heirs, specifically his mother, has experienced significant grief, sorrow and mental anguish.

## <u>COUNT I - Negligence</u>
### (Against Monsanto Defendants)

56.   Plaintiff re-alleges each paragraph above as if fully set forth herein.

57.   Monsanto Defendants had a duty to exercise reasonable care in designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of Roundup to ordinary consumers such as Plaintiff.

58.   Monsanto Defendants failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging,

**EXHIBIT 1**

sale, testing, quality assurance, quality control, and/or distribution of Roundup to ordinary consumers such as Jake Sanders, in that Monsanto Defendants knew or should have known that using Roundup created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of NHL, as well as other severe and personal injuries which are permanent and lasting in nature, result in physical pain and suffering, diminished enjoyment of life, the need for significant medical treatment and potentially death.

59.     Monsanto Defendants breached their duty to Jake Sanders when it introduced, marketed and sold a product that they knew or should have known was a carcinogen dangerous to humans without proper warning, adequate testing and a failure to use of ordinary care in the design or manufacture of Roundup.

60.     Despite the fact that Monsanto Defendants knew or should have known that Roundup caused, or could cause, harm to humans and consumers like Jake Sanders, Monsanto Defendants continued and continues to market, manufacture, distribute, and/or sell Roundup to consumers.

61.     Monsanto Defendants knew or should have known that consumers such as the Jake Sanders would foreseeably suffer injury or death as a result of Monsanto Defendants' failure to exercise ordinary care, as set forth above.

**EXHIBIT 1**

62.   Monsanto Defendants' violations of law and/or negligence were the proximate cause of the injuries, harm, damages and economic losses suffered by Plaintiff and Jake Sanders.

63.   As a result of the foregoing acts and omissions, Jake Sanders suffered from – and ultimately died from – NHL. As a result of Monsanto Defendants' negligence, Jake Sanders suffered physical pain and suffering, past medical care, loss of income and ultimately, death. These damages will be determined by a jury at trial.

### COUNT II - Negligence
### (Against Defendant Albaugh, LLC)

64.   Plaintiff re-alleges each paragraph above as if fully set forth herein.

65.   Defendant Albaugh had a duty to exercise reasonable care in designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of GlyStar Plus to ordinary consumers such as Plaintiff.

66.   Defendant Albaugh failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of GlyStar Plus to ordinary consumers such as Jake Sanders, in that Defendant Albaugh knew or should have known that using GlyStar Plus created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of NHL, as

**EXHIBIT 1**

well as other severe and personal injuries which are permanent and lasting in nature, result in physical pain and suffering, diminished enjoyment of life, the need for significant medical treatment and potentially death.

67.    Defendant Albaugh breached its duty to Jake Sanders when it introduced, marketed and sold a product that it knew or should have known was a carcinogen dangerous to humans without proper warning, adequate testing and a failure to use of ordinary care in the design or manufacture of GlyStar Plus.

68.    Despite the fact that Defendant Albaugh knew or should have known that GlyStar Plus caused, or could cause, harm to humans and consumers like Jake Sanders, Defendant continued and continues to market, manufacture, distribute, and/or sell GlyStar Plus to consumers.

69.    Defendant Albaugh knew or should have known that consumers such as the Jake Sanders would foreseeably suffer injury as a result of Defendant Albaugh's failure to exercise ordinary care, as set forth above.

70.    Defendant Albaugh's violations of law and/or negligence were the proximate cause of the injuries, harm, damages, and economic losses suffered by Plaintiff and Jake Sanders.

71.    As a result of the foregoing acts and omissions, Jake Sanders suffered from – and ultimately died from – NHL. As a result of Defendant Albaugh's negligence, Jake Sanders suffered physical pain and suffering, past medical care,

**EXHIBIT 1**

loss of income and ultimately, death. These damages will be determined by a jury at trial.

## COUNT III – Negligent Misrepresentation

72.     Plaintiff re-alleges each paragraph above as if fully set forth herein.

73.     Defendant Monsanto made representations as to material fact regarding its product Roundup. Specifically, Defendant Monsanto made the following representations:

a.     Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences.

b.     And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

c.     Roundup biodegrades into naturally occurring elements.

d.     You can apply Roundup with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Roundup into natural products.

e.     Glyphosate is less toxic to rats than table salt following acute oral ingestion.

f.     Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

g.     You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

**EXHIBIT 1**

    h.    Roundup can be used where kids and pets will play and breaks down into natural material.

74.    These representations by Defendant Monsanto were untruthful when they were made, and Defendant Monsanto knew or should have known they were untruthful.

75.    Jake Sanders relied on Defendant Monsanto's representations and as a result did not use any personal protective equipment when using, applying, mixing, or cleaning up Roundup.

76.    Jake Sanders' reliance on Defendant Monsanto's representations caused him damages, specifically it caused a carcinogen to come in contact with his skin on multiple occasions and ultimately caused NHL and his untimely death.

## COUNT IV - Strict Products Liability (Failure to Warn)

77.    Plaintiff re-alleges each paragraph above as if fully set forth herein.

78.    At all times relevant, Monsanto and Albaugh designed, researched, manufactured, tested, advertised, promoted, sold, and distributed Roundup and GlyStar Plus as hereinabove described that was used by Jake Sanders.

79.    Warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products, such as GlyStar Plus, should have been prominently included with the products because of the risks of harm associated with the use of and/or exposure to such products.

**EXHIBIT 1**

80.     At all relevant times, both Roundup and GlyStar Plus were defective because neither were accompanied by proper warnings regarding carcinogenic qualities and possible side effects, including, but not limited to, developing NHL as a result of exposure and use.

81.     Had Jake Sanders been appropriately warned, he would not have used Roundup or GlyStar Plus or would have taken additional precautions to limit exposure to the product.

82.     Jake Sanders' use of, and exposure to, Roundup and GlyStar Plus caused or was a substantial contributing factor in causing his cancer. Plaintiff endured pain and suffering, emotional and mental anguish, medical expenses, loss of income, funeral expenses and other economic and non-economic damages.

## COUNT V - Strict Products Liability (Design Defect)

83.     Plaintiff re-alleges each paragraph above as if fully set forth herein.

84.     At all times relevant, Monsanto and Albaugh designed, researched, manufactured, tested, advertised, promoted, sold, and distributed Roundup and GlyStar Plus as hereinabove described that was used by Jake Sanders.

85.     Both Roundup and GlyStar Plus were expected to and did reach consumers and persons coming into contact with it without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed.

86. Both Roundup and GlyStar Plus were and continue to be defective products because they are dangerous to an extent beyond that which an ordinary consumer would anticipate.

87. Jake Sanders was exposed to Roundup and GlyStar Plus without knowledge of the dangerous characteristics of those products.

88. At the time of Jake Sanders' use of and exposure to Roundup and GlyStar Plus, the products were being used for the purposes and in a manner normally intended, as a broad-spectrum herbicide.

89. Jake Sanders' use of, and exposure to, Roundup and GlyStar Plus caused or was a substantial contributing factor in causing Jake Sanders to suffer from cancer. Plaintiff has endured pain and suffering, emotional and mental anguish, medical expenses, loss of income, funeral expenses and other economic and non-economic damages.

## **COUNT VI - Violation of Montana's Consumer Protection Act**

90. Plaintiff re-alleges each paragraph above as if fully set forth herein.

91. At the time that Jake Sanders was using and being exposed to Roundup and GlyStar Plus, Defendants were aware or should have been aware of the risk that those products posed to consumers, such as Jake Sanders, related to cancer and specifically NHL.

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
Page 22

**EXHIBIT 1**

92.     In violation of Montana's Consumer Protection Act, Defendants engaged in deceptive trade practices described herein in the marketing and sale of their respective products by misrepresenting and/or failing to warn about the risk of cancer posed by Roundup and GlyStar Plus.

93.     Plaintiff was injured as a direct and proximate result of Defendants' conduct.

## COUNT X – Wrongful Death

94.     Plaintiff re-alleges and re-states each paragraph as if fully set forth herein.

95.     Jake Sanders' death was caused, in whole or in part, by Defendants' acts and omissions as alleged above.

96.     Jake Sanders is survived heirs, specifically his mother, Deborah Sanders.

97.     As a result of Defendants' acts and omissions, Defendants are liable for Plaintiff's damages of grief, sorrow, and mental anguish, emotional distress damages and funeral expenses arising from the death of Jake Sanders.

98.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiff has sustained damages in amounts to be determined at trial.

**EXHIBIT 1**

### COUNT XI – Survivorship

99.    Plaintiff re-alleges each paragraph as if fully set forth herein.

100.    As a result of Defendants' acts and omissions, Jake Sanders sustained damages, including but not limited to pain and suffering, medical expenses, funeral expenses, and emotional distress damages from the time he was diagnosed with NHL on August 21, 2017 until his death on October 10, 2018.

101.    As a direct and proximate cause of Defendants' acts and omissions, Jake Sanders suffered damages in amounts to be determined at trial.

### COUNT II - Punitive Damages

102.    Plaintiff re-alleges each paragraph above as if fully set forth herein.

103.    Defendants knew or should have known about the risks posed by Roundup and GlyStar Plus, specifically that glyphosate is carcinogenic to humans and a relationship existed between glyphosate and NHL.

104.    Despite this knowledge, Defendants recklessly failed to warn consumers of the dangerous nature of the respective glyphosate containing products.

105.    Instead, as alleged above, these companies promoted Roundup and GlyStar Plus without regard for its toxic effects, including making misstatements regarding the safety of the products.

**EXHIBIT 1**

106.   Defendant Monsanto intentionally and deliberately attempted to conceal any findings linking glyphosate to cancer in humans.

107.   Defendants deliberately proceeded to act in conscious disregard or indifference to a high probability of injury to individuals, including Plaintiff.

108.   Defendants' acts demonstrate indifference to the health and well-being of consumers, including Jake Sanders, and a high probability of injury to the Plaintiff.

109.   Plaintiff is entitled to punitive damages in an amount sufficient to punish Monsanto and Albaugh and deter them and other companies from acting in the same or similar manner in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally for all the damages allowed by law, including but not limited to:

1.   Survivorship damages, including but not limited to pain and suffering, loss of earnings, past medical expenses and funeral expenses.

2.   Wrongful death damages, including but not limited to the grief, sorrow and mental anguish experienced by the heirs of Jake Sanders.

3.   Punitive damages pursuant to Mont. Code Ann. § 27-1-220;

4.   Attorney fees and costs of suit; and,

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
Page 25

**EXHIBIT 1**

5.     Any such other relief as the Court deems just and proper under the circumstances, or that is appropriate under law or equity.

## REQUEST FOR JURY TRIAL

Plaintiff request that all issues of fact be determined by a twelve-person jury.

DATED this 20th day of July, 2023

**KNIGHT NICASTRO MACKAY, LLC**

By: _____
        Dylan M. McFarland
        W. Adam Duerk
        283 West Front Street, Suite 203
        Missoula, Montana 59802
        Telephone:  (406) 206-5747
        Facsimile:    (816) 396-6233
        mcfarland@knightnicastro.com
        duerk@knightnicastro.com
        *Attorneys for Plaintiff*

**EXHIBIT 1**

## CERTIFICATE OF SERVICE

I, Dylan McFarland, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 07-20-2023:

James E. Roberts (Attorney)
283 West Front Street
Suite 203
Missoula MT 59802
Representing: Estate of Jake Sanders, Deborah Sanders
Service Method: eService

William Adam Duerk (Attorney)
283 W Front, Ste 203
Missoula MT 59802
Representing: Estate of Jake Sanders, Deborah Sanders
Service Method: eService

Electronically signed by Andrea Laine on behalf of Dylan McFarland
Dated: 07-20-2023

**EXHIBIT 1**

Natasha Prinzing Jones
BOONE KARLBERG P.C.
201 West Main, Suite 300
P. O. Box 9199
Missoula, MT 59807-9199
Phone:  (406) 543-6646
Fax:      (406) 549-6804
npjones@boonekarlberg.com
*Attorneys for Defendants Monsanto Company*
*and Bayer Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DEBORAH SANDERS, Individually and as a Personal Representative of the Estate of JAKE SANDERS, Deceased, | Case No. _____ |
| Plaintiffs, | |
| v. | **DEFENDANT BAYER CORPORATION'S CONSENT TO NOTICE OF REMOVAL** |
| MONSANTO COMPANY, BAYER CORPORATION, ALBAUGH, LLC and DOES 1-10. | |
| Defendants. | |

Bayer Corporation hereby consents to Monsanto Company's removal of this lawsuit to this Court. Bayer Corporation does not waive – and reserves the right to assert – any and all defenses, including but not limited to lack of personal jurisdiction.

**EXHIBIT 2**

DATED:  August 22, 2023                    Respectfully submitted,

                                           */s/ Natasha Prinzing Jones*
                                           Natasha Prinzing Jones
                                           BOONE KARLABERG P.C.
                                           *Attorneys for Defendant*
                                           *BAYER CORPORATION*

**EXHIBIT 2**

Ian McIntosh
CROWLEY FLECK PLLP
1915 S. 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
imcintosh@crowleyfleck.com

*Attorneys for Albaugh, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| DEBORAH SANDERS, Individually and as Personal Representative of the Estate of Jake Sanders, Deceased, | CASE NO: _____ |
| Plaintiff, | **DEFENDANT ALBAUGH, LLC'S CONSENT TO REMOVAL** |
| v. | |
| MONSANTO COMPANY, BAYER CORPORATION, ALBAUGH, LLC and DOES 1-10. | |
| Defendants. | |

Albaugh, LLC hereby consents to Monsanto Company's removal of this lawsuit to this Court. Albaugh, LLC does not waive – and reserves the right to assert – any and all defenses, including but not limited to lack of personal jurisdiction.

**EXHIBIT 3**

CROWLEY FLECK PLLP

By /s/Ian McIntosh
     Ian McIntosh
     P.O. Box 10969
     Bozeman, MT 59719-0969
     Attorneys for Albaugh, LLC

**EXHIBIT 3**