BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2741

IN RE: ROUNDUP PRODUCTS

LIABILITY LITIGATION

**BRIEF IN SUPPORT OF MONSANTO COMPANY'S MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-417)**

The *In re: Roundup Products Liability Litigation* multi-district litigation proceeding (the "Roundup MDL") was created by the Panel in October 2016 and at its height was comprised of more than 4,000 cases involving (1) a single class of product—glyphosate-based herbicides—and (2) a single class of injuries—non-Hodgkin's lymphoma and certain other haematopoietic cancers.  The Roundup MDL is a mature MDL that has already moved past common discovery of Monsanto, has already conducted *Daubert*/Rule 702 hearings on general and specific causation experts, and has already begun the process of remanding cases back to transferor courts for trial.

Unlike plaintiffs with cases in the Roundup MDL, Plaintiff in the case at issue, *Infante v. Monsanto Company*, No. 23-00339 (D. Hi.), alleges that his cancer was caused by glyphosate-based herbicides and polychlorinated biphenyls (*PCBs*) that Monsanto "began making and selling" in the 1930s ("PCB + Roundup" cases).  *See* Pls. Notice of Potential Tag-Along Action, MDL No. 2741, ECF No. 3204-2 (Compl., p.3 & ¶ 4).  As more fully set forth below, inserting cases with this configuration of product allegations at this late stage of a nearly seven-year-old MDL would represent an unwarranted expansion of the litigation and will ***not*** "promote the just and efficient conduct" (*see* 28 U.S.C.A. § 1407) of the Roundup MDL proceeding.

1

Notably, since 2019 (over three years after the formation of the Roundup MDL), Plaintiff's counsel (a consortium of the same firms and interested lawyers[1]) has filed over 100 PCB + Roundup cases involving nearly 2,000 plaintiffs, across eight different venues in state court, including in Missouri, Hawaii, and Illinois, specifically structuring each of them to avoid federal court and any sort of consolidated proceeding. Two PCB + Roundup have gone to trial, including one, *Evard v. Monsanto Company*[2], that just ended with a unanimous defense verdict. While the PCB + Roundup cases are at various stages, shared discovery by Monsanto and these same plaintiffs' counsel provides the logistical benefits of MDL consolidation, meaning that consolidation is not "necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation." *In re: Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376 (J.P.M.L. 2013).

This Panel has already refused to establish a PCB-related MDL, in part because of the "maturity of discovery relating to the manufacture and sale of PCBs, its toxicity, and its alleged propensity to leach into the environment." *See In re Monsanto PCB Water Contamination Litig.*, 176 F. Supp. 3d 1379, 1381 (J.P.M.L. 2016). PCB + Roundup discovery (and litigation) is far more mature now than it was when the Panel initially rejected formation of a PCB MDL in 2016, or when Plaintiff's counsel began filing PCB + Roundup cases in 2019. Likewise, the Roundup MDL has also matured and is currently shrinking—closer to winding down than to gearing up. Fundamentally altering the make-up of the Roundup MDL by expanding it to include cases involving allegations relating to PCBs would require the presiding court, Judge Vince Chhabria,

---

[1] Plaintiff is represented by Galiher DeRobertis & Waxman, LLP, including Peter A. Kraus. Mr. Kraus is also a member of Waters Krause & Paul, who has filed all other PCB + Roundup cases in consortium with Allen Stewart, P.C. // Williams Hart & Boundas, LLP.

[2] The *Evard* plaintiffs are represented by the same attorneys that represent the Plaintiff here.

to essentially start from scratch, designing and instituting new procedures to address the many legal and factual issues unique to PCB litigation. This belated and fundamental alteration of the Roundup MDL (for the benefit of three[3] out of more than 3,000 cases) promotes neither convenience nor efficiency. CTO-417 should be vacated.

The Panel has previously refused to order transfers to the Roundup MDL that "would constitute an expansion of the litigation to non-cancerous conditions." *See* Order Vacating Conditional Transfer Order at 1, *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (J.P.M.L. Oct. 5, 2020), ECF No. 2027. It should likewise refuse to expand the litigation to include products beyond glyphosate-based herbicides, particularly under these circumstances.

**I.    STANDARD**

The Panel will grant a motion to vacate a conditional transfer order upon a finding that transfer "would not necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation at the present time." *In re Prempro Products Liab. Litig.*, 549 F. Supp. 2d 1398 (J.P.M.L. 2008); *see also In re Charles Schwab & Co., Inc.*, No. 1316, 2000 WL 35445239, at *1 (J.P.M.L. Apr. 26, 2000). And it does "not change the scope of an MDL lightly." *In re Google Play Store Simulated Casino-Style Games Litig.*, 544 F. Supp. 3d 1364, 1366 (J.P.M.L. 2021).

---

[3] In addition to this case, Plaintiff's counsel has also sought transfer of two other substantively identical PCB + Roundup cases, *Mangoba v. Monsanto Company*, No. 23-00248 (D. Hi.), and *Adams v. Monsanto Company*, No. 23-00285 (D. Hi.). Those cases are addressed with Monsanto's pending Motion to Vacation Conditional Transfer Order (CTO-413). *See In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (J.P.M.L. Aug. 23, 2023), ECF No. 3208.

II. **ARGUMENT**

   A. **Expanding the scope of the Roundup MDL to include PCB + Roundup cases will neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of the cases at issue.**

   1. *Plaintiff's counsel's strategy of avoiding federal court ensures that consolidation will not promote the just and efficient conduct of the cases at issue.*

Plaintiff's attorneys started filing PCB + Roundup cases roughly four years ago and have filed at least **103 cases naming 1,956 plaintiffs** in eight different courts, including Missouri, Hawaii and Illinois.[4] With only three exceptions—this case, *Mangoba* and *Adams*—the cases have been filed in state courts and specifically structured to avoid federal court. Indeed, Plaintiff Mangoba's federal court case demonstrates the inefficiency of consolidating these cases into the Roundup MDL. That plaintiff is already a plaintiff in a PCB + Roundup case, *Jumper*, that has been pending in Missouri state court for nearly two years, and Mr. Mangoba had already been deposed in that case when he improperly filed the duplicative case in federal court.

If counsel were truly interested in pursuing this litigation in a convenient and efficient manner, they would have filed their cases in a single court to allow for coordination. And if they truly believe that the Roundup MDL was the most appropriate forum for pre-trial proceedings, they would have commenced their cases in federal court and sought transfer long ago. Instead, they have filed more than 100 cases since the Roundup MDL was established in 2016, studiously avoided federal court until now, and then decided to try and crash the Roundup MDL with PCB cases.

MDLs exist to serve "the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions." 28 U.S.C.A. § 1407(a). Transferring to the MDL a mere

---

[4] A chart of the PCB + Roundup cases filed by Plaintiff's attorneys is appended to this brief.

4

trio of counsel's 100-plus PCB + Roundup cases—with those other cases involving nearly 2,000 plaintiffs—does nothing to serve these interests. The Panel should not indulge Plaintiff's counsel's arbitrary decision to attempt to funnel a few of their cases into the Roundup MDL.

### 2. Inclusion of PCB cases in the Roundup MDL would disrupt that mature proceeding.

The Roundup MDL is all about Roundup. In the words of this Panel: "Regardless of the particular formulation of Roundup at issue (all of which employ glyphosate as the active ingredient), or the nature of plaintiff's exposure to glyphosate, all the actions entail an overarching query—whether glyphosate causes non- Hodgkin's lymphoma in persons exposed to it while using Roundup." *See* Transfer Order at 1–2, *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (J.P.M.L. Oct. 3, 2016), ECF No. 57. In light of this overarching question, the MDL Court bifurcated discovery to first address the general causation question of "whether there is sufficient admissible evidence that glyphosate and/or Roundup is capable of causing cancer (specifically, Non-Hodgkin's Lymphoma) in humans." Pretrial Order No. 15: Third-Party Discovery and Pending Motions to Seal, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC, at 1-2 (N.D. Cal. Mar. 13, 2017), ECF No. 186; *see also* Order re Bifurcation and Agenda for First Case Management Conference, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC, at 1 (N.D. Cal. Nov. 14, 2016), ECF No. 25. This general causation phase culminated more than five years ago, in March 2018, with an evidentiary hearing and oral argument on the parties' *Daubert* motions focused on plaintiffs' NHL-based allegations, and a ruling by the MDL court limited to those allegations. *See* Pretrial Order No. 34: Modifying Schedule, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. Nov. 17, 2017), ECF No. 761; Pretrial Order No. 45: Summary Judgment and *Daubert* Motions, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. July 10, 2018), ECF No. 1596.

The MDL Court has also established a mandatory settlement program pursuant to which court-appointed Special Master Ken Feinberg makes settlement recommendations based on his "independent analysis" of the plaintiffs' claims. Pretrial Order No. 240: Order Requiring Participation in Special Mater Program, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. July 23, 2021), ECF No. 13323.  This analysis is based on "information requested by the Special Master" and information provided by Monsanto.  *Id.*  But neither the information requested nor the Special Master's analysis accounts for allegations and claims relating to PCBs exposure.

Finally, to guide them to resolution, the MDL Court has established a program to group the cases into "waves" for case-specific fact and expert discovery, thus getting them ready for settlement or remand back to the transferor courts.  Dispositive motions will be due in December 2023 for Wave 6 cases, with Waves 7 and 8 following behind.  *See* Order Granting Joint Request for Revised Schedule for Wave 6-7 Cases and Adding Wave 8 Schedule, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. Aug. 30, 2023), ECF No. 17234.  "The litigation, in other words, is quite mature."  *In re: Checking Account Overdraft Litig.*, 818 F. Supp. 2d 1373 (J.P.M.L. 2011).

This extensive procedural infrastructure greatly aids the efficient progression of Roundup cases but would be entirely inadequate for cases involving allegations that a plaintiff's cancer was caused by some combination of PCBs and Roundup.  For these cases, the MDL Court would need to (1) develop new procedures relating to PCB discovery (including the identification of new company witnesses and the taking of their depositions), (2) establish a new general-causation phase specific to PCBs, and (3) preside over summary-judgment and *Daubert* motions specific to PCB issues and experts.  Further, the Special Master would be required to formulate an entirely

new method of valuing cases for the purposes of making settlement offers pursuant to the mandatory settlement program.

In *In re: Checking Account Overdraft Litigation*, the Panel recognized that "the relative merits of transferring new tag-along actions to an ongoing MDL can change over time as the transferee court completes its primary tasks and cases already in the centralized proceedings progress towards trial or other resolution." 818 F. Supp. 2d at 1373. Once an MDL has matured, "the benefits of transfer should not be assumed to continue," and "even when those benefits may still exist with respect to the particular tag-along action in question, the Panel must always consider the impact that transfer of that action could have on the cases already in the MDL." *Id.* That MDL was much like the Roundup MDL in that the transferee court had made numerous substantive rulings and had organized the cases into waves, establishing "a detailed schedule governing the conduct of all pretrial events." *Id.* Ultimately, despite the existence of common questions of fact, the Panel vacated a conditional transfer order based on its determination that transfer "threatens to significantly hinder the resolution of the already-centralized actions." *Id.* at 1374.

So too here. The Roundup MDL is even more mature than was the *In re: Checking Account Overdraft Litigation* MDL, which had only been pending for a little more than two years when the Panel denied transfer. And the stark difference between the PCB + Roundup cases at issue and the cases presently in the MDL means, as explained above, that the inclusion of cases with such additional allegations would impede the Roundup MDL's progression. Permitting the transfer of PCB + Roundup cases to the Roundup MDL would neither serve "the convenience of parties and witnesses" nor "promote the just and efficient conduct of" the cases at issue. 28 U.S.C.A. § 1407. CTO-417 should be vacated for this reason alone. *See In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1229 (J.P.M.L.1977) ("The Panel's statutory mandate is to weigh the interests

of all the plaintiffs and all the defendants, and to consider multidistrict litigation as a whole in light of the purposes of the law.").

> 3. **PCB litigation is itself already mature, making already-ongoing informal coordination more efficient than MDL consolidation.**

Just as the age of the Roundup MDL militates against the expansion of its scope, so too does the age of PCB litigation. This Panel was asked to create an MDL for certain PCB cases more than *seven years ago* and found centralization inappropriate for reasons that still apply and, indeed, are much stronger now than they were in 2016:

> Monsanto ceased manufacture of PCBs nearly four decades ago, and there have been a number of personal injury and other lawsuits brought against Monsanto in the intervening years. The resulting maturity of discovery relating to the manufacture and sale of PCBs, its toxicity, and its alleged propensity to leach into the environment will facilitate informal coordination of the discovery in these actions, as will the fact that all of these actions share common plaintiffs' and defense counsel. Monsanto has stated in its papers and at oral argument that it is committed to cooperating with plaintiffs' counsel to avoid duplicative discovery.

*In re Monsanto PCB Water Contamination Litig.*, 176 F. Supp. 3d at 138 (footnote omitted).

It has now been nearly half a century since Monsanto stopped manufacturing PCBs, and it has defended against PCB-related suits in state and federal courts for decades. The informal coordination the Panel described in 2016 has only become more streamlined and comprehensive since then. And these very Plaintiff's attorneys already benefit from, and influence, that coordinated discovery, which will continue regardless of how the Panel rules on this Motion.

The Panel's decision in *In re Monsanto PCB Water Contamination Litigation* does not stand alone. Despite finding common questions of fact, this Panel denied Section 1407 centralization of cases involving Electrolux dryers because the litigation involved "a product that has been on the market since the mid–1990s" and was "quite mature," with "numerous trials that have reached jury verdicts." *In re: Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d at 1377. Moreover, while some of the Electrolux cases in question were still "in early discovery,"

consolidation offered few benefits because "existing discovery sharing agreements pertain[ed] 'effectively to all cases,' and" defense counsel maintained "its commitment to sharing common discovery." *Id.*

While the PCB + Roundup cases are at various stages, existing shared discovery between Monsanto and Plaintiff's consortium of counsel provides the logistical benefits of MDL consolidation, meaning that formal consolidation is not "necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation." *Id.* at 1376.

**B. If the cases are consolidated, the transfer order should make clear that the only "common issues" in the Roundup MDL are issues involving glyphosate-based herbicides.**

Plaintiff's only potential argument in favor of transfer is that his case and the cases in the Roundup MDL have common issues. *See* Transfer Order at 2, *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, ECF No. 57. But those common issues would be limited to issues involving glyphosate-based herbicides. *See id.* (stating that the Roundup MDL "actions entail an overarching query—whether glyphosate causes non-Hodgkin's lymphoma in persons exposed to it while using Roundup").

In its order establishing the Roundup MDL, the Panel stated that once "**discovery and other pretrial proceedings related to the common issues** have been completed, the transferee judge may suggest Section 1407 remand of the actions to their transferor courts for more individual discovery and trial, if necessary." *Id.* (emphasis added). Here, if the Panel finds this case sufficiently similar to the MDL cases to warrant transfer, the only "common issues" supporting transfer involve the Roundup-related aspects of the cases. Issues relating to PCBs are not "common issues" but are instead individual issues that should be addressed only upon remand. The alternative—establishing complex PCB-specific procedures for a few cases out of more than

9

3,000—would be neither convenient nor efficient. *See* 28 U.S.C.A. § 1407(a). Considering "the impact that transfer of [this] action could have on the cases already in the MDL," if the Panel orders the transfer, it should also designate the PCB issues individual issues that must wait for remand to be addressed and thus are not permitted to interfere with the Roundup MDL. *See In re: Checking Account Overdraft Litig.*, 818 F. Supp. 2d at 1373.[5]

### III.    CONCLUSION

For these reasons, Monsanto requests that the Panel vacate Conditional Transfer Order (CTO-417) as it relates to *Infante v. Monsanto Company*, No. 23-00339 (D. Hi.).).

---

[5] If the Panel should order transfer and does not indicate that PCB issues should await remand, the transferee court can decide the appropriate pretrial management procedures to address the unique issues presented by these PCB + Roundup cases.

DATED:  September 15, 2023	Respectfully submitted,

        SHOOK, HARDY & BACON L.L.P.

        BY: */s/ Jennise W. Stubbs*
            Jennise W. Stubbs
            Ryan S. Killian
            600 Travis Street, Suite 3400
            Houston, TX 77002-2926
            Telephone:   (713) 227-8008
            Facsimile:    (713) 227-9508
            Email:          jstubbs@shb.com
                          rkillian@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*