BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: ROUNDUP PRODUCTS                                       MDL No. 2741

LIABILITY LITIGATION

**PLAINTIFF'S RESPONSE TO DEFENDANT MONSANTO COMPANY'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO – 417)**

Comes now plaintiff in this tag-along action, *Infante v. Monsanto Co*., No. 23-00339 (D. Haw.), and files this response to defendant Monsanto Company's motion to vacate Conditional Transfer Order (CTO-417), and would respectfully show as follows:

This case comprises claims for damages for non-Hodgkin's lymphoma, contracted by plaintiff as a result of exposure to two products made by Monsanto: Roundup, and polychlorinated biphenyls, also known as PCBs. The Panel is of course familiar with Roundup. "PCBs, despite their beneficial uses, were also a scourge, leading to serious environmental contamination and health harms still being experienced today." *In re Solutia, Inc*., 653 B.R. 99, 102-03 (Bankr. S.D.N.Y. 2023).

Because this case involves claims for damages for NHL caused by Roundup use, plaintiff tagged it for transfer to MDL 2741, and it was conditionally transferred pursuant to CTO-417. Monsanto has moved to vacate CTO-417, contending that MDL 2741 is too "mature," and that the presence of issues involving PCBs makes this case ill-suited for transfer. Neither argument is correct, and the transfer of this case should be finalized.

1

## ARGUMENT

### I. MONSANTO'S ATTACKS ON PLAINTIFFS' COUNSEL ARE IRRELEVANT AND SHOULD BE IGNORED

Perhaps recognizing that there is no sound basis for opposing transfer in these cases, Monsanto instead begins, again, with an attack on plaintiff's counsel. At p. 4 of its brief, Monsanto criticizes counsel for filing other cases, alleging exposure to both Roundup and PCBs, in state courts. It also criticizes counsel's previous filing of *another* case, not this one – the *Mangoba* case -- in state court in Missouri. The procedural history of the *Mangoba* case is hardly relevant here, but in any event the present case has not been previously filed in any other state, and Mr. Infante is a Hawaii resident.

As the Panel knows by now, Monsanto's attacks on plaintiffs' counsel are nothing new; they are a standard feature of defendant's briefing on transfer issues. For example, Monsanto has consistently criticized plaintiffs' counsel in this MDL, for filing cases in state courts with no connections to the plaintiffs: "[D]espite repeated representations made to this Panel by plaintiffs' MDL leadership that 'thousands' of actions would join this MDL, plaintiffs have employed a strategy of litigation tourism in various state courts in an apparent effort to avoid the MDL Court…. In the cases originally filed in state court, most of the plaintiffs have no connection to the states in which their claims were filed." Monsanto's opposition to certain plaintiffs' motion to vacate CTO-15, Doc. 180, at 3. Yet here, Monsanto takes the opposite tack: it criticizes plaintiff's counsel for filing the case in state court in Hawaii, where the plaintiff lives.[1]

---

[1] Plaintiff's counsel quoted this filing in the response to Monsanto's motion to vacate CTO-413 in the other two recent Hawaii cases, *Mangoba* and *Adams*. Counsel mistakenly used the word "misrepresentations," not "representations." Counsel regrets this inadvertent error. The meaning of the quoted portion of Monsanto's filing, however, is of course the same: Monsanto accused plaintiffs' counsel of promising one thing and doing the opposite.

Monsanto continues to dwell on irrelevant issues by attacking plaintiff's counsel for trying to "crash the MDL with PCB cases." Brief at 4. But this case was filed in state court, not federal court. Nothing required Monsanto to remove this case to federal court. Plaintiff wished to proceed in state court, not in the MDL. But once defendant removed it, plaintiff tagged it as the related case it plainly is.

Suffice it to say that Monsanto's attacks on the venue choices of plaintiff's counsel and their other clients are irrelevant to the present motion and should be ignored. For the reasons detailed below, Monsanto's actual arguments against transfer of this case should be rejected.

## II. THE "MATURITY" OF THIS MDL IS NO REASON TO DENY TRANSFER

Monsanto argues that this MDL is "mature" and is "currently shrinking – closer to winding down than to gearing up." Brief at 2. That this MDL is no longer "gearing up" is certainly true. But that does not mean the MDL is anywhere close to ending, nor does it mean that new cases are no longer being transferred into it. Indeed, just this week Monsanto designated another case as a tag-along, and the next day this Panel conditionally transferred it. See Doc. 3254, filed Oct. 2, 2023, and Doc. 3255 (CTO-422), filed Sept. 8, 2023.

Monsanto also notes that "the MDL Court has established a program to group the cases into 'waves' for case-specific fact and expert discovery, thus getting them ready for settlement or remand back to the transferor courts." Brief at 6. Defendant cites the MDL Court's recent order of Aug. 30th, Doc. 17234. But this order in fact shows that this MDL is nowhere close to being concluded, as it reflects a schedule for Wave 8 cases extending well into 2025.

In short, while great progress has obviously been made in the Roundup MDL, Monsanto continues to designate cases for transfer, and the MDL has a great deal of time yet to go before cases will no longer be transferred into it. The "maturity" of MDL 2741 is no bar to transfer here.

Monsanto cites *In re: Checking Account Overdraft Litig.*, 818 F.Supp. 2d 1373 (J.P.M.L 2011), for the proposition that "the relative merits of transferring new tag-along actions to an ongoing MDL can change over time as the transferee court completes its primary tasks and cases already in the centralized proceedings progress towards trial or other resolution." Brief at 7. But that MDL was hardly like the present one: it involved only "dozens" of actions. *Id*. at 1373. Here, by contrast, there are still over 4200 cases pending. See www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-September 15-2023.pdf, viewed on Oct. 3, 2023. Moreover, both the plaintiff and the defendant in *In re Checking Account Overdraft Litig.*, opposed transfer. *Id*.

Monsanto also cites *In re: Monsanto PCB Water Contamination Litig.*, 176 F.Supp.3d 1379 (J.P.M.L. 2016), and *In re: Electrolux Dryer Prods. Liab. Litig.*, 978 F.Supp.2d 1376 (J.P.M.L. 2013), as examples in which MDL centralization was denied where the litigation in question was "mature." But here, where an MDL has already been created to deal with central questions in this case, the considerations are obviously much different. In the *PCB* and *Electrolux* cases, no MDL had been created at all by the time the litigation was already advanced.

### III. THE PRESENCE OF ISSUES RELATING TO ANOTHER MONSANTO PRODUCT DOES NOT PRECLUDE TRANSFER

Defendant's main objection to transfer is that this case involves claims not only that exposure to Roundup caused plaintiff's disease, but also that exposure to PCBs contributed to cause it as well. Both of these products were manufactured and supplied by defendant. Monsanto in fact acknowledges that there has been litigation over PCBs in state and federal courts for decades, with "coordinated discovery" that has become "streamlined and comprehensive." Brief at 8.

4

Defendant nonetheless insists that adding this case to the MDL will require the MDL Court "(1) to develop new procedures relating to PCB discovery (including the identification of new company witnesses and the taking of their depositions), (2) establish a new general-causation phase specific to PCBs, and (3) preside over summary-judgment and *Daubert* motions specific to PCB issues and experts. Further, the Special Master would be required to formulate an entirely new method of valuing cases for the purposes of making settlement offers pursuant to the mandatory settlement program." Brief at 6-7. But if plaintiff's counsel and Monsanto already conduct streamlined, comprehensive, coordinated discovery, why would that be true? And as far as the notion that the Special Master would need to "formulate an entirely new method of valuing cases" goes, this makes no sense either. The injury claimed by this plaintiff, NHL, is still the same, and the defendant is still the same. Moreover, plaintiff's counsel and Monsanto counsel are familiar with each other and have recently settled several dozen cases.

This Panel has recognized on many occasions that the presence of unique plaintiff-specific issues, or multiple different defendants, or different claims, is no bar to creation of, or inclusion in, an MDL. For example, in *In re: Digital Advertising Antitrust Litig.*, 555 F.Supp.3d 1372, 1376 (J.P.M.L. 2021), this Panel consolidated into a single MDL antitrust actions brought against multiple defendants by disparate plaintiffs including advertisers, publishers and state governments. Similarly, in *In re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 410 F.Supp.3d 1357 (J.P.M.L. 2019), the Panel created a single MDL for claims concerning one defendant's products, used in millions of vehicles sold by five other defendants. The Panel concluded that "individual issues—such as those concerning the design of each automaker's vehicles and their susceptibility to… failure and each automaker's relationship with [the manufacturer]" did not bar consolidation. "[T]he existence of individual issues, which is relatively commonplace in product liability MDLs,

does not negate the common ones, which appear to be sufficiently substantial and complex to warrant creation of an MDL…. The [automakers'] alternative suggestion that the Panel create separate, automaker-specific MDLs is impracticable." *Id*. at 1360.  In *In re: Valsartan Prods. Liab. Litig.*, 433 F.Supp. 3d 1349 (J.P.M.L. 2019), the Panel *expanded* an MDL to include claims involving two additional drugs. *Id*. at 1351.

In *In re: Ford Motors Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 289 F.Supp. 3d 1350 (J.P.M.L. 2018), the Panel created an MDL involving an allegedly defective transmission in certain models of Ford cars.  Certain plaintiffs opposed centralization "because the actions… involve[d] individualized questions of fact regarding the problems experienced by each plaintiff's vehicles, the nature and number of repairs, the efficacy of the repairs, and the extent to which the alleged defect impaired each plaintiff's use of the vehicle."  The Panel rejected this argument, however, concluding that" [p]roduct liability litigation typically involves some plaintiff-specific factual issues, but centralization still may be warranted where the actions allege a common defect involving similar products manufactured by the same company." *Id*. at 1352.

So too here.  The presence of issues related to another product made by the same company hardly can amount to a reason to deny transfer.  There are always individual issues related to a plaintiff's individual medical conditions or the causes of those conditions.  Usually, of course, it is Monsanto that is raising alternative causation theories.  See e.g., pretrial order no. 74, Doc. 2682, attached as Appendix A at 1, in which Judge Chhabria noted that "it would be appropriate for [Monsanto's specific causation experts] to testify that even if Roundup were a risk factor, it nonetheless would not have caused a particular plaintiff's NHL, either because it's a weak risk factor at best given the studies that the plaintiff's experts rely on, or because there are much stronger risk factors."

6

Defendant regularly makes alternative causation arguments in Roundup cases that implicate many other causes, exposures, products, and so on. The notion that when a plaintiff includes another product *made by Monsanto* as a possible cause, it hopelessly complicates the case such that transfer is unwarranted, is meritless.

Finally, it is important to note that many of the experts in Roundup and PCB cases are identical. Plaintiffs, for example, call Drs. Aronson, DeGrandchamp, and Levy as experts in both kinds of cases. In the recent *Evard* trial noted by Monsanto on p. 2 of its brief, Monsanto listed Drs. Franzblau, Saba, Erter and Kuzel, all of whom opine about both Roundup and PCBs.

In sum, the notion that the MDL Court will need to "develop new procedures relating to PCB discovery," and "establish" a new PCB causation "phase," and develop new settlement valuation guidelines, is specious. These plaintiff-specific issues can be handled just like such plaintiff-specific issues are being handled in all of the other Roundup cases.

This Panel has repeatedly reaffirmed that the presence of atypical individual issues is no bar to inclusion in the Roundup MDL. For example, one plaintiff argued that transfer was inappropriate "because he allege[d] unique facts regarding how he obtained undiluted concentrated Roundup from a Monsanto plant and assert[ed] claims against unique defendants involved in that transaction." This Panel disagreed, holding that "[t]ransfer under Section 1407 does not require a complete identity of factual issues or parties when the actions arise from a common factual core." Transfer Order of Oct. 2, 2019, Doc. 1283, at 1. Even where the plaintiff was not a person alleging a personal injury, but an organization seeking injunctive relief, transfer was ordered over Monsanto's own objection. Transfer Order of Feb. 4, 2021, Doc. 2189, at 2. When Monsanto sought reconsideration of this order, the Panel denied it, specifically rejecting defendant's insistence that transfer was inappropriate since the claim did not "fit easily within the current

pretrial structure of MDL 2741, such that it is likely [to] have to be placed on its own litigation track." Order denying Motion for Reconsideration, April 1, 2021, Doc. 2252, at 2. The same baseless argument should be rejected here.

## CONCLUSION

For all of the above reasons, plaintiff respectfully prays that Monsanto's motion to vacate the Conditional Transfer Order (CTO-417) be denied, and the transfer of this case to MDL 2741 be finalized.

DATED: October 6, 2023.

Respectfully submitted,

GALIHER DeROBERTIS & WAXMAN

*/s/ Alyssa R. Segawa*
Ilana Waxman
Ilana.waxman@galiherlaw.com
Alyssa Segawa
Alyssa.segawa@galiherlaw.com
Allison Aoki
Allison.aoki@galiherlaw.com
820 Mililani Street, Suite 505
Honolulu, HI  96813
Telephone: 808-597-1400
Fax: 808-591-2608

# APPENDIX "A"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITGATION<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 2741<br>Case No. 16-md-02741-VC<br><br>**PRETRIAL ORDER NO. 74: TENTATIVE VIEW ON MONSANTO'S SPECIFIC CAUSATION EXPERTS** |

The Court's tentative view with respect to Monsanto's specific causation experts is as follows: In October 2018, the Court stated, without objection, that only the experts whose opinions were put to the test at Phase I would be permitted to present opinions on general causation at trial. The plaintiffs and their specific causation witnesses appear to be operating consistent with that approach. Yet in November 2018, Monsanto disclosed reports from specific causation experts that effectively included opinions on general causation – i.e., that Roundup is simply not a risk factor for NHL. It appears that these opinions should, in large part, be excluded. Presumably it would be appropriate for these experts to attack the decisions by the plaintiffs' experts to exclude other risk factors such as hepatitis C. Perhaps these experts may testify briefly that they do not believe NHL is a risk factor at all for the reasons given by Monsanto's general causation experts, but without elaboration. Presumably it would be appropriate for them to testify that even if Roundup were a risk factor, it nonetheless would not have caused a particular plaintiff's NHL, either because it's a weak risk factor at best given the studies that the plaintiffs' experts rely on, or because there are much stronger risk factors. What these experts may not do, however, is offer an analysis of the epidemiological literature to support an opinion that NHL is not a risk factor, since they offered no such analysis at Phase I. The parties should be prepared to discuss this tentative ruling at

Wednesday's hearing. In particular, Monsanto should be prepared to explain how it could be prejudiced by this ruling in light of its ability to present general causation testimony from numerous other witnesses (and how it would not be a waste of the jury's time to have more than those witnesses testifying on the topic of general causation).

**IT IS SO ORDERED.**

Date: February 11, 2019

_____
Honorable Vince Chhabria
United States District Court

**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: ROUNDUP PRODUCTS     MDL No. 2741

LIABILITY LITIGATION

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that the foregoing *Plaintiff's Response to Defendant Monsanto Company's Motion to Vacate Conditional Transfer Order (CTO – 417)* was electronically filed on October 6, 2023 with the Clerk of the JPML using the CM/ECF system and was sent via electronic mail on October 6, 2023 to counsel for Defendants as follows:

Jennise W. Stubbs
Ryan S. Killian
Shook, Hardy & Bacon L.L.P.
600 Travis Street, Suite 3400
Houston, TX 77002-2926
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
Email: jstubbs@shb.com
          rkillian@shb.com
*Attorneys for Defendant*
      *MONSANTO COMPANY*

Counsel for Defendant in *Infante v. Monsanto Company et al.*, No. 1:23-cv-00339-SOM-WRP (D. HI.).

DATED:  October 6, 2023.

                Respectfully submitted,

                GALIHER DeROBERTIS & WAXMAN

                */s/ Alyssa R. Segawa*
                Ilana Waxman
                Ilana.waxman@galiherlaw.com
                Alyssa Segawa
                Alyssa.segawa@galiherlaw.com
                Allison Aoki
                Allison.aoki@galiherlaw.com
                820 Mililani Street, Suite 505
                Honolulu, HI  96813
                Telephone: 808-597-1400
                Fax: 808-591-2608